**CALLAHAN & BLAINE, APLC**
Daniel J. Callahan (SBN 91490)
Edward Susolik (SBN 151081)
Esusolik@callahan-law.com
Michael S. LeBoff (SBN 204612)
Mleboff@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for NEWPORT TRIAL GROUP; SCOTT J.
FERRELL; RYAN M. FERRELL; VICTORIA C.
KNOWLES; DAVID REID and ANDREW LEE
BASLOW

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., a Florida corporation , <br><br> Plaintiff, <br><br> v. <br><br> NEWPORT TRIAL GROUP, et al., <br><br> Defendants. | Judge:   Hon. James V. Selna <br> **CASE NO.  8:15-cv-02034-JVS-JCG** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF IN FIRST AMENDED COMPLAINT** <br><br> Hearing: <br> Date:      April 4, 2016 <br> Time:      1:30 p.m. <br> Courtroom:   10C <br><br> Complaint Filed:   December 7, 2015 <br> Trial Date:      None |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    SUMMARY OF ALLEGATIONS .................................................... 2

III.   NIC FAILED TO STATE A CLAIM UNDER SECTION 1962(c) ............. 3

       A.   NIC Lacks Standing to Base Its RICO Claims on Unrelated
            Lawsuits ........................................................................................ 4

       B.   The FAC Fails to Identify the Acts of the Individual Defendants
            with Specificity ............................................................................ 5

       C.   The FAC Fails to Allege Each Defendant Engaged In Two or
            More Predicate Acts ...................................................................... 7

       D.   The FAC Fails to Allege Each "NTG Defendant" Directed the
            Affairs of the Enterprise ............................................................ 10

       E.   Allegations of Frivolous Litigation Do Not Support A RICO
            Claim ............................................................................................ 10

       F.   The RICO Claims Are Barred by the Noerr-Pennington Doctrine ..... 14

       G.   The Complaint Fails to Allege a Concrete Financial Injury
            Proximately Caused by the Underlying Predicate Acts ..................... 18

IV.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION
       1962(d) ............................................................................................ 20

V.     CONCLUSION ................................................................................ 21

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

In re 3COM Sec. Litigation,
    761 F.Supp. 1411 (N.D. Cal. 1990)...................................................20

Adobe Sys., Inc. v. Software Tech,
    2015 U.S. Dist. LEXIS 152801 (N.D. Cal. Nov. 10, 2015)...................9

Anza v. Ideal Steel Supply Corp.,
    547 U.S. 451 (2006) ............................................................................5

Ashcroft v. Iqbal,
    556 U.S. 662 (U.S. 2009) ...............................................................5, 10

Balt. Scrap Corp. v. David J. Joseph Co.,
    237 F.3d 394 (4th Cir. 2001) .............................................................17

Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.
    2000 U.S. App. LEXIS 25440 (2d Cir. Oct. 11, 2000) ......................15

Bowen v. Oistead,
    125 F.3d 800 (9th Cir. 1997) .............................................................18

Canyon County v. Syngenta Seeds, Inc.,
    519 F.3d 969 (9th Cir. 2008) .........................................................4, 18

Chaset v. Fleer/Skybox Int'l,
    300 F.3d 1083 (9th Cir. 2002) ...........................................................18

Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,
    776 F.3d 1343 (Fed. Cir. 2014) .........................................................12

Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.,
    528 F.3d 1001 (8th Cir. 2008) .............................................................7

Curtis & Associates, P.C. v. The Law Offices of David Bushman,
    758 F.Supp.2d 153 (E.D.N.Y. 2010) .............................................10, 11

Deck v. Engineered Laminates,
    349 F.3d 1253 (10th Cir. 2003) .........................................................12

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Den Hollander v. Flash Dancers Topless Club,
    173 Fed.Appx. 15 (2d Cir. 2006)...................................................19

FindTheBest.com, Inc. v. Lumen View Tech. LLC,
    20 F.Supp.3d 451, 457 (S.D.N.Y. 2014) ......................................12

G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.,
    460 F.Supp.2d 1246 (D. Nev. 2006) .........................................12, 20

Hamm v. Rhone-Poulenc Rorer Pharms.,
    187 F.3d 941 (8th Cir. 1999) .......................................................18

Holloway v. Clackamas River Water,
    2014 U.S. Dist. LEXIS 170616 (D. Or. Dec. 9, 2014)..................18

Holmes v. Sec. Investor Prot. Corp.,
    503 U.S. 258 (1992)........................................................................5

Kottle v. Northwest Kidney Ctrs.,
    146 F.3d 1056 (9th Cir. 1998) ................................................15, 16

LaChapelle v. Dong Kwan Kim,
    2015 U.S. Dist. LEXIS 161801 (N.D. Cal. Dec. 1, 2015) .............20

Lakonia Mgmt., Ltd. v. Meriwether,
    106 F. Supp.2d 540 (S.D.N.Y. 2000) .............................................7

Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,
    940 F.2d 397 (9th Cir. 1991) .........................................................5

Liberty Lake Invs. v. Magnuson,
    12 F.3d 155 (9th Cir. 1993) ..........................................................16

Limestone Dev. Corp. v. Vill. of Lemont,
    520 F.3d 797 (7th Cir. 2008) .........................................................3

Living Designs, Inc. v. E.I. DuPont de Nemours and Co.,
    431 F.3d 353 (9th Cir. 2005) ...................................................12, 13

Mattel, Inc. v. MGA Entertainment, Inc.,
    782 F. Supp. 2d 911 (C.D. Cal. 2011)...........................................19

Moore v. Kayport Package Express,
    885 F.2d 531 (9th Cir. 1989) ..........................................................6

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- iii -

Neubronner v. Milken,
   6 F.3d 666 (9th Cir. 1993) ............................................................................... 19

Nolan v. Galaxy Sci. Corp,
   269 F.Supp.2d 635 (E.D. Pa. 2003).............................................................. 12

Northeast Revenue, Servs, LLC v. Maps Indeed, Inc.,
   2015 U.S. Dist. LEXIS 139253 (M.D. Pa. Oct. 13, 2015) ........................... 7

Octane Fitness, LLC v. ICON Health & Fitness, Inc.,
   134 S.Ct. 1749 (2014)................................................................................... 15

Odom v. Microsoft Corp.,
   486 F.3d 541 (9th Cir. 2007) ......................................................................... 4

Reves v. Ernst & Young,
   507 U.S. 170,179 (1993) .............................................................................. 10

Ruiz v. Alegria,
   896 F.2d 645 (1st Cir. 1990)........................................................................... 4

Rupert v. Bond,
   2013 U.S. Dist. LEXIS 132972 (N.D. Cal. Sept. 17, 2013).......................... 15

Saldate v. Wilshire Credit Corp.,
   686 F.Supp.2d 1051 (E.D. Cal. 2010) ........................................................... 9

Sanchez v. Triple-S Mgmt.,
   492 F.3d 1 (1st Cir. 2007)............................................................................... 4

Sebastian Int'l, Inc. v. Russolillo,
   186 F.Supp.2d 1055 (C.D. Cal. 2000) ......................................................... 20

Snow Ingredients, Inc. v. SnoWizard, Inc.,
   2014 U.S. Dist. LEXIS 41129 (E.D. La. Mar. 27, 2014) ............................. 11

Snyder v. United States Equities Corp.,
   2014 U.S. Dist. LEXIS 10348 (W.D.N.Y. Jan. 27, 2014) ........................... 11

Sosa v. DirecTV, Inc.,
   437 F.3d 923 (2006) ............................................................................... 14, 15

Swartz v. KPMG LLP,
   476 F.3d 756 (9th Cir. 2007) ......................................................................... 6

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- iv -

Tal v. Hogan,
    453 F.3d 1244 (10th Cir. 2006) ........................................................ 18

Tatung Co. v. Shu Tze Hsu,
    43 F.Supp.3d 1036, 1061-1062 (C.D. Cal. 2014) ............................. 6, 19

The Knit With v. Knitting Fever, Inc.,
    2012 U.S. Dist. LEXIS 100368 (E.D. Pa. July 19, 2012) .................. 19

Thomas v. Baca,
    308 Fed.Appx. 87 (9th Cir. 2009) ..................................................... 18

In re Toyota Motor Corp.,
    785 F.Supp.2d 883 (C.D. Cal. 2011) ............................................ 5, 9, 21

In re Toyota Motor Corp. Unintended Acceleration Mktg.,
    826 F.Supp.2d 1180 (C.D. Cal. 2011) ............................................... 10

Ungureanu v. A. Teichert & Son,
    2012 U.S. Dist. LEXIS 46440 (E.D. Cal. Apr. 2, 2012) .................... 16

United States v. Joseph,
    1990 U.S. App. LEXIS 22099 (9th Cir. Dec. 18, 1990) ..................... 9

United States v. Pendergraft,
    297 F.3d 1198 (11th Cir. 2002) ................................................... 11, 12

Walter v. Drayson,
    538 F.3d 1244 (9th Cir. 2008) .......................................................... 10

In re Wellpoint, Inc.,
    903 F.Supp.2d 880 (C.D. Cal. 2012) .............................................. 7, 21

Williams v. Jones & Jones Mgmt. Group,
    2014 U.S. Dist. LEXIS 181128 (C.D. Cal. Oct. 6, 2014) ............... 15,17

Yagman v. Galipo,
    2013 U.S. Dist. LEXIS 6978 (C.D. Cal. Jan. 7, 2013) ....................... 15

**FEDERAL STATUTES**

18 U.S.C. § 1951(b)(2) ........................................................................ 12

18 U.S.C. § 1962(c) ....................................................................... *passim*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

18 U.S.C. § 1962(d)...................................................................................20

18 U.S.C. § 1964(c)....................................................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 8................................................................................8, 10

Fed. R. Civ. Proc. 9(b)......................................................................*passim*

Fed. R. Civ. Proc. 23....................................................................................4

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MEMO OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION TO DISMISS

## I.      INTRODUCTION

Plaintiff Natural-Immunogenics Corporation ("NIC") markets and sells a dietary supplement, colloidal silver, under the brand Sovereign Silver.  NIC falsely markets its products as having the ability to boost the body's immune system and support the body's healing powers.  The science however shows otherwise, as colloidal silver has no known function in the body.  The simple truth is that colloidal silver is not safe or effective for any of the health claims NIC makes.  The National Institute of Health called colloidal silver "dangerous."  Nevertheless, NIC has misrepresented the health benefits of colloidal silver and made millions selling this "dangerous" product to unsuspecting consumers.

In 2012, the Newport Trial Group brought a class action lawsuit on behalf of its client, Andrew Nilon, challenging NIC's false claims and seeking compensation for California consumers deceived by NIC's misrepresentations.  After the class was certified, class representative Nilon decided he no longer wanted to take on the responsibilities of being lead plaintiff.  Nilon was substituted out and replaced with another class representative, Giovanni Sandoval.  After his deposition, facts were uncovered suggesting Sandoval may not be a proper lead plaintiff and the lawsuit was ultimately dismissed.  There was never any decision on the substantive issue of whether NIC falsely represents the health benefits of its colloidal silver products.

After prevailing on a procedural issue, NIC launched a full-scale assault on one of Orange County's most respected lawyers and law firms.  The purpose of this despicable attack of Scott Ferrell and the Newport Trial Group is obvious.  NIC wants to bully and intimidate Newport Trial Group and other consumer advocates from filing any further litigation challenging NIC's false advertising claims, so NIC can continue to reap massive profits selling poison to an unsuspecting public.  In attacking Newport Trial Group, NIC engaged in mobster-style tactics, including using fear and intimidation to coerce false confessions, creating fraudulent websites

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 1 -

1  defaming Nilon's company which had nothing to with the underlying suit, harassing

2  innocent people affiliated with Newport Trial Group and filing a complaint with

3  page after page of false allegations fed to them by a disreputable private

4  investigator.

5       To the extent the complaint survives a motion to dismiss, the false and

6  malicious allegations will be disproven.  Before we get to that point, however, we

7  must first address whether NIC's contrived RICO claims should get past the

8  pleading stage.

9  **II.    SUMMARY OF ALLEGATIONS**

10      NIC's First Amended Complaint ("FAC"), excluding exhibits, is 112 pages

11  and over 500 paragraphs.  Despite its length, the FAC is lacking in substance and

12  plausibility.  As it relates to NIC, the allegations are relatively straight-forward.

13      NIC alleges that, prior to Nilon agreeing to serve as plaintiff, Newport Trial

14  Group sent a letter to NIC threatening legal action for false advertising.  (FAC at ¶

15  56)  Several months later, Newport Trial Group filed a lawsuit against NIC in the

16  Southern District of California on behalf of Nilon.  (Id. at ¶ 61)  NIC contends

17  Newport Trial Group and Nilon falsely represented that Nilon purchased Sovereign

18  Silver in reliance on NIC's marketing representations, when, in fact, Nilon had not

19  purchased the Sovereign Silver product prior to the commencement of the lawsuit.

20  (Id. at ¶ 62)  NIC further alleges Newport Trial Group paid Nilon to participate in

21  the litigation.  (Id. at ¶ 65)

22      In July 2014, after Nilon decided he was unable to devote the time necessary

23  to serving as lead plaintiff, Newport Trial Group filed a motion to substitute

24  Giovanni Sandoval as the class representative.  (FAC at ¶ 79)  NIC alleges Nilon

25  submitted a false declaration in connection with that motion as to why he did not

26  want to proceed as the class representative.  (Id. at ¶ 79)  Nevertheless, on August

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 2 -

1    20, 2014, the court granted the motion to substitute and subsequently granted

2    Newport Trial Group's motion to withdraw as Nilon's counsel.  (Id. at ¶¶ 82, 83)

3         Giovanni Sandoval substituted in as a class representative.  NIC alleges

4    Sandoval falsely represented that he was a California resident and that Newport

5    Trial Group failed to conduct a reasonable inquiry into Sandoval's residency.  (FAC

6    at ¶¶ 85, 86)  NIC further alleges that Sandoval "appeared" to have been led by

7    Newport Trial Group to testify falsely.  (Id. at ¶ 89)  NIC further alleges "on

8    information and belief" that Newport Trial Group paid Sandoval to serve as a

9    plaintiff and to conform his fraudulent allegations to fit Newport Trial Group's

10   statement of the case.  (Id. at ¶ 99)  The Southern District, finding that Sandoval was

11   not an adequate class representative, dismissed his claims with prejudice and the

12   class claims without prejudice.  (Id. at ¶ 100)  NIC claims it suffered damages in the

13   form of attorney's fees and reputational harm as a result of the underlying lawsuit.

14   (Id. at ¶ 287)

15        The remainder of the allegations in the FAC have absolutely nothing to do

16   with NIC or the underlying lawsuit.  The allegations are an unsubstantiated and

17   malicious attack on other lawsuits Newport Trial Group has been involved with over

18   the past several years.  The false allegations reflect NIC's general distaste for

19   consumer class actions and the attorneys who advocate for consumer rights.  NIC,

20   who has made millions by misleading the public as to the purported benefits of its

21   dietary supplements, has a reason to dislike consumer protection laws and the

22   people who enforce those laws.  Nevertheless, for purposes of this 12(b)(6) motion,

23   NIC's allegations about unrelated lawsuits are entirely irrelevant.

24   **III.   NIC FAILED TO STATE A CLAIM UNDER SECTION 1962(c)**

25        "RICO cases, like antitrust cases, are 'big' cases and the defendant should not

26   be put to the expense of big-case discovery on the basis of a thread-bare claim."

27   Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

District courts must closely assess the merits of a RICO claim at the pleading stage. "The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants. In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990). To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. See, e.g. Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007). For the reasons discussed below, NIC failed to state a RICO claim under Section 1962(c), and its second cause of action should be dismissed.

### A. NIC Lacks Standing to Base Its RICO Claims on Unrelated Lawsuits

The majority of the allegations in the FAC erroneously chronicle other cases filed by Newport Trial Group. NIC was not involved in any of those cases and did not suffer any injury because of any other lawsuits. NIC has not plead this case as a class action under Rule 23, nor is it purporting to somehow represent the interests of other corporations sued by Newport Trial Group's clients. As a result, NIC lacks standing to assert RICO claims based on what it thinks may have happened in other cases. Nor should NIC be permitted to use overbroad RICO allegations to force Newport Trial Group and the court to re-litigate the 40+ cases identified in the FAC that have absolutely nothing to do with NIC or its alleged injuries.

To have standing, "a civil RICO plaintiff must show … that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008). There is no plausible theory in which NIC was injured by conduct in lawsuits in which it was not a party. See Sanchez v. Triple-S Mgmt., 492 F.3d 1, 14 (1st Cir. 2007) ("The plaintiffs cannot press a RICO claim based on attempts at

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   extortion that did not succeed in harming them."). "[A] plaintiff who complained of

2   harm flowing merely from the misfortunes visited upon a third person by the

3   defendant's acts was generally said to stand at too remote a distance to recover."

4   Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268-269 (1992). "The

5   requirement of a direct causal connection is especially warranted where the

6   immediate victims of an alleged RICO violation can be expected to vindicate the

7   laws by pursuing their own claims." Anza v. Ideal Steel Supply Corp., 547 U.S.

8   451, 460 (2006).

9       As a result, to the extent NIC's RICO claim is based on what allegedly

10  occurred in other cases that did not harm NIC, those allegations are irrelevant and

11  should be disregarded.

12      **B.      The FAC Fails to Identify the Acts of the Individual Defendants**

13      **with Specificity**

14      Where, as here, RICO claims are premised on fraud, the heightened pleading

15  standards of Fed. R. Civ. Proc. 9(b) apply.  See, e.g., Lancaster Community Hosp. v.

16  Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991) ("Federal Rule of

17  Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time,

18  place, and manner of each act of fraud, plus the role of each defendant in each

19  scheme. .... The Ninth Circuit has repeatedly insisted that this rule be followed in

20  RICO actions alleging the predicate act of mail fraud.").  Moreover, even under the

21  basic pleading requirements set forth in Ashcroft v. Iqbal, 556 U.S. 662, 679 (U.S.

22  2009), "a court considering a motion to dismiss can choose to begin by identifying

23  pleadings that, because they are no more than conclusions, are not entitled to the

24  assumption of truth. While legal conclusions can provide the framework of a

25  complaint, they must be supported by factual allegations."

26      In In re Toyota Motor Corp., 785 F.Supp.2d 883, 919 (C.D. Cal. 2011), this

27  court held, "[a] plaintiff may not simply lump together multiple defendants without

28

- 5 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

specifying the role of each defendant in the fraud." "Allegations of fraud under section 1962(c) must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." Moore v. Kayport Package Express, 885 F.2d 531, 541 (9th Cir. 1989) (internal citations omitted). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Tatung Co. v. Shu Tze Hsu, 43 F.Supp.3d 1036, 1061-1062 (C.D. Cal. 2014) (quoting Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007)).

NIC does exactly what the above cases forbid. The operative RICO allegations repeatedly lump the NTG Defendants[1] together without identifying the specific conduct of each defendant that gives rise to liability. For example, NIC makes the following allegations as part of its RICO claim:

- "In late 2011 through early 2012, Defendant Andrew Nilon and *the NTG Defendants* developed a scheme or artifice to defraud NIC ..." (FAC at ¶ 291) (emphasis added)

- "In furtherance of that scheme, Nilon and *the NTG Defendants* falsely represented to NIC that Nilon had purchased and used NIC's sovereign silver product..." (Id. at ¶ 293) (emphasis added)

- "Nilon and *the NTG Defendants* on two or more occasions, used or caused to be used, the interstate mails and the interstate wire in furtherance of the fraudulent scheme described herein." (Id. at ¶ 295) (emphasis added)

---

[1] The term "NTG Defendants" is not formally defined in the FAC, but presumably refers to the Newport Trial Group, and those individuals currently or formerly employed by Newport Trial Group, namely Scott Ferrell, Ryan Ferrell, Victoria Knowles, David Reid, Andrew Baslow and James Hardin. Mr. Hardin no longer works for Newport Trial Group and is represented by separate counsel.

- "Nilon and *the NTG Defendants* attempted to extort money from NIC…"  (Id. at ¶ 296) (emphasis added)
- "From early 2012 until May of 2013, Nilon and *the NTG Defendants* committed numerous predicate acts of obstruction of justice…"  (Id. at ¶ 298) (emphasis added)

These are just a few illustrations of the multiple allegations throughout the complaint that fail to identify the specific individual's role in the underlying scheme as required by Rule 9(b).  These allegations against the "NTG Defendants" are contained throughout the RICO sections of the FAC.  (See generally FAC at ¶¶ 290-487)

Therefore, the FAC should be dismissed because NIC failed to plead its RICO claims with sufficient specificity.

## C.   The FAC Fails to Allege Each Defendant Engaged In Two or More Predicate Acts

"[W]here RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." In re Wellpoint, Inc., 903 F.Supp.2d 880, 914 (C.D. Cal. 2012).  To put in another way, "[t]he requirements of § 1962(c) must be established as to each individual defendant."  Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1027 (8th Cir. 2008); see also Lakonia Mgmt., Ltd. v. Meriwether, 106 F. Supp.2d 540, 550 (S.D.N.Y. 2000) ("To plead a 'pattern of racketeering activity,' plaintiff must establish that each defendant committed at least two acts of racketeering -- or two 'predicate acts' -- within a ten-year period."); Northeast Revenue, Servs, LLC v. Maps Indeed, Inc., 2015 U.S. Dist. LEXIS 139253, at *20 (M.D. Pa. Oct. 13, 2015) ("For a RICO claim, Plaintiff must still plead at least two predicate acts by each Defendant and the required nexus between the alleged predicate acts and the control of the alleged RICO enterprise.").

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    In this case, the FAC fails to allege with specificity facts showing *each defendant*

2    engaged in two predicate acts.

3        For example, what did Victoria Knowles, do in furtherance of the alleged

4    scheme to defraud NIC?  The boilerplate allegations in Paragraphs 11 and 455 of the

5    FAC do not satisfy the minimal pleading requirements of Rule 8, let alone the

6    heightened pleading requirements of Rule 9(b).  The only specific allegation against

7    Knowles is that she moved to dismiss the <u>Chromadex</u> case, an unrelated lawsuit, at

8    the request of Nilon.  (FAC at ¶ 74)  NIC also alleges she was one of many attorneys

9    of record in other unrelated lawsuits.  (<u>Id.</u> at ¶ 131, 154)  These allegations come

10   nowhere near stating a RICO claim against Ms. Knowles.

11       The allegations against David Reid are even less substantial.  The only

12   allegations against Mr. Reid are the boilerplate allegations contained at Paragraphs

13   12 and 453.  Again, the allegations are woefully insufficient to allow a RICO claim

14   to proceed against Mr. Reid.

15       Likewise, there are no specific allegations against Scott Ferrell involving the

16   lawsuit against NIC.  The boilerplate allegations in Paragraphs 8 and 452, which are

17   virtually identical to allegations made against the other "NTG Defendants" do not

18   come close to satisfying the federal pleading requirements.  While NIC makes

19   numerous accusatory allegations against Scott Ferrell relating to other lawsuits, for

20   reasons discussed below, those allegations are immaterial to whether NIC can sue

21   Scott Ferrell for RICO violations.

22       As to Ryan Ferrell, in addition to the same boilerplate allegations that NIC

23   cut-and-paste for all "NTG Defendants," the FAC merely alleges that he submitted a

24   declaration in support of the motion to withdraw as Nilon's counsel stating that

25   Nilon was "unresponsive to counsel."  (FAC at ¶ 83)  NIC also alleges that Ryan

26   Ferrell asserted privilege objections during Sandoval's deposition.  (<u>Id.</u> at ¶¶ 97-98)

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  These contentions, even if true, are insufficient to support a RICO claim against

2  Ryan Ferrell.

3       As to Mr. Baslow, while the allegations against him are more detailed, when

4  it comes to the principal allegations underlying the RICO claims, NIC still

5  impermissibly defaults to making allegations against the "NTG Defendants."  As

6  this Court held in In re Toyota Motor Corp., 785 F. Supp. 2d at 919, NIC cannot

7  simply lump multiple defendants together.

8       Finally, as a corporation, Newport Trial Group can only act through its

9  individual employees and agents.  See United States v. Joseph, 1990 U.S. App.

10  LEXIS 22099, at *18 (9th Cir. Dec. 18, 1990) (noting "corporation can only act

11  through an individual"); Adobe Sys., Inc. v. Software Tech, 2015 U.S. Dist. LEXIS

12  152801, at *11 (N.D. Cal. Nov. 10, 2015) ("A corporation can only act through its

13  employees, agents, directors or officers …").  "[I]n a fraud action against a

14  corporation, a plaintiff must 'allege the names of the persons who made the

15  allegedly fraudulent representations, their authority to speak, to whom they spoke,

16  what they said or wrote, and when it was said or written.'"  Saldate v. Wilshire

17  Credit Corp., 686 F.Supp.2d 1051, 1065 (E.D. Cal. 2010) (quoting Tarmann v. State

18  Farm Mut. Auto. Ins. Co. (1991) 2 Cal.App.4th 153, 157).  Therefore, because NIC

19  failed to allege the specific roles any individual NTG Defendant played in the

20  underlying predicate acts as they relate to NIC, it necessarily failed to plead the

21  claims against Newport Trial Group with specificity.

22       Hence, the FAC should be dismissed as to each "NTG Defendant" because

23  NIC did not adequately plead their individual involvement in an alleged scheme to

24  defraud NIC.

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**D.  The FAC Fails to Allege Each "NTG Defendant" Directed the Affairs of the Enterprise**

The United States Supreme Court held that to be liable under RICO, a person must have some part in directing the affairs of the enterprise. See Reves v. Ernst & Young, 507 U.S. 170,179 (1993).  Though the Supreme Court held RICO liability is not limited to those with "primary responsibility for the enterprise's affairs," "*some* part in directing the enterprises affairs is required." Reves, 507 U.S. at 179. "Simply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside.'" Walter v. Drayson, 538 F.3d 1244, 1249 (9th Cir. 2008).  In Paragraphs 451-457, NIC makes conclusory allegations that the "NTG Defendants" "managed" the enterprise, but these conclusory allegations, unsupported by any *facts,* are insufficient under either Rule 8 or 9(b). See In re Toyota Motor Corp. Unintended Acceleration Mktg., 826 F.Supp.2d 1180, 1202 (C.D. Cal. 2011) ("Because mere legal labels lack the requisite 'factual content' that Iqbal and Twombly require, the court must disregard Plaintiffs' conclusory allegations.")  The complaint, therefore fails to allege any well-plead *facts* showing each NTG Defendant directed or exercised control over the alleged "enterprise."

**E.  Allegations of Frivolous Litigation Do Not Support A RICO Claim**

NIC cannot state a RICO claim based on allegedly frivolous or phony litigation.  The case of Curtis & Associates, P.C. v. The Law Offices of David Bushman, 758 F.Supp.2d 153 (E.D.N.Y. 2010) is instructive.  In that case, plaintiff alleged defendants violated RICO by defending against plaintiff's fee claims and initiating legal malpractice actions thereby forcing plaintiff to litigate "phony" and "frivolous" lawsuits.  In granting the motion to dismiss, the district court held "allegations that the state court litigation is frivolous, fraudulent or baseless – essentially claims of malicious prosecution – without more, cannot constitute a viable RICO predicate act." Id. at 172.  A contrary ruling would lead to "absurd

results," such that "almost every state or federal action could lead to corollary federal RICO claims." <u>Id.</u> at 173. "[T]his absurd result would chill litigants and lawyers and frustrate the well-established public policy goals of maintaining open access to the courts."  The Court further held that if plaintiffs' vague allegations of "phony" and "frivolous" litigation, "suborned perjury" and "deceit of court" have merit, plaintiffs should direct such claims to the court where the underlying litigation is pending. <u>Id.</u> at 173-174.  Finally, the court held that "the Congressional intent in enacting RICO does not square with the absurd consequences and contraventions of well-settled public policy which would inevitably result from allowing RICO predicate acts to be based upon the type of malicious prosecution claims alleged here." <u>Id.</u> at 174.  For these reasons, the court "join[ed] a long line of cases in finding, as a matter of law, that the 'litigation activities' pleaded in the Complaint cannot constitute predicate acts for the purposes of RICO." <u>Id.</u> (see also cases cited therein).

   <u>Curtis</u> is consistent with the great weight of authority throughout the country that has addressed this exact same issue. <u>See, e.g.</u>, <u>United States v. Pendergraft</u>, 297 F.3d 1198, 1208 (11th Cir. 2002) ("Serving a motion by mail is an ordinary litigation practice. A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility."); <u>Snow Ingredients, Inc. v. SnoWizard, Inc.</u>, 2014 U.S. Dist. LEXIS 41129, at *37 (E.D. La. Mar. 27, 2014) ("Plaintiffs' allegations of orchestrating a litigation scheme, engaging in sham litigation, and making material misstatements in court, while extremely serious, are not the types of conduct that support obstruction of justice and a violation of RICO."); <u>Snyder v. United States Equities Corp.</u>, 2014 U.S. Dist. LEXIS 10348, at *24-25 (W.D.N.Y. Jan. 27, 2014) ("There are, in fact, a significant number of decisions, in this Circuit and in other Circuits, which hold, in the context of Civil RICO claims based on fraudulent litigation, that a defendant's

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    use of mail and wire to conduct allegedly fraudulent 'litigation activities' is

2    insufficient to establish predicate acts of racketeering.") (and cases cited therein).

3         Likewise, the case law throughout the country overwhelmingly establishes

4    that a threat to file a lawsuit, even if frivolous and made in bad faith, will not

5    support a predicate act of extortion or obstruction of justice.  See, e.g., Content

6    Extraction & Transmission LLC v. Wells Fargo Bank, N.A., 776 F.3d 1343, 1349 n.

7    2 (Fed. Cir. 2014) ("We note that other circuits have held that the act of filing a

8    lawsuit, even one which is frivolous, does not by itself constitute an act of

9    'extortion' under the Hobbs Act, 18 U.S.C. § 1951(b)(2), and therefore cannot

10   constitute a predicate act under RICO."); Deck v. Engineered Laminates, 349 F.3d

11   1253, 1258 (10th Cir. 2003) ("[W]e join a multitude of other courts in holding that

12   meritless litigation is not extortion under § 1951."); Pendergraft, supra, 297 F.3d at

13   1208 ("We hold that Pendergraft and Spielvogel's threat to file litigation against

14   Marion County, even if made in bad faith and supported by false affidavits, was not

15   'wrongful' within the meaning of the Hobbs Act."); Nolan v. Galaxy Sci. Corp, 269

16   F.Supp.2d 635, 644 (E.D. Pa. 2003) (holding Congress did not contemplate that

17   "run-of-the-mill disputes that plague much litigation should be regarded as rising to

18   the level of obstruction of justice."); FindTheBest.com, Inc. v. Lumen View Tech.

19   LLC, 20 F.Supp.3d 451, 457 (S.D.N.Y. 2014) ("[T]he instigation of meritless

20   litigation cannot constitute extortion under the Hobbs Act."); G.K. Las Vegas Ltd.

21   P'ship v. Simon Prop. Group, Inc., 460 F.Supp.2d 1246, 1256 (D. Nev. 2006) ("[A]

22   threat of suit generally does not constitute a predicate act of extortion upon which to

23   stake a RICO claim.").

24        While some courts have held criminal activity taken during the course of a

25   prior lawsuit may support a RICO claim, none of those cases are applicable here.

26   For example, in Living Designs, Inc. v. E.I. DuPont de Nemours and Co., 431 F.3d

27   353, 365 (9th Cir. 2005), the Ninth Circuit reversed a judgment on the pleadings

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 12 -

1   finding that, in some circumstances, a plaintiff could state a RICO claim based on

2   conduct in prior litigation.  In that case, plaintiff alleged defendant falsified and

3   destroyed material evidence, and defrauded plaintiff into accepting a much lower

4   settlement in the prior litigation than it otherwise would have accepted.  Importantly,

5   the Ninth Circuit did not conclude that the litigation in the prior lawsuit supported a

6   RICO claim, only that the district court applied the wrong standard by adopting a

7   *per se* rule of litigation immunity.  Although it reversed, the Ninth Circuit did agree

8   with the district court that the plaintiff could not base the predicate act of obstruction

9   of justice on things that happened in other lawsuits involving other parties.  See id.

10  at 362 n.7.  Accordingly, the Living Designs case is not controlling here and the

11  "NTG Defendants" could not locate any controlling case law finding a plaintiff

12  adequately stated a RICO claim based on the same conclusory and thread-bare

13  allegations asserted in the FAC.

14          As a matter of public policy, this court should not open the floodgates by

15  allowing aggrieved defendants to file RICO claims based on a mere belief that a

16  prior lawsuit was brought in bad faith or to "extort" a settlement.  In virtually every

17  contested civil lawsuit, the defendant will deny factual allegations asserted by the

18  plaintiff.  If a defendant can base a subsequent RICO claim on the mere theory that

19  the underlying lawsuit was based on a false factual allegation, then virtually every

20  case would be susceptible to subsequent RICO claims.  For example, a plaintiff may

21  allege she was wrongfully terminated from her employment because of her race or

22  gender.  If the defendant ultimately prevails in that case, or even settles, there is

23  nothing to stop that defendant from filing a subsequent RICO claim alleging the

24  employee knew she was not terminated because of her race or gender and made

25  false allegations to "extort" a settlement from her former employer.  Even if the

26  former employee and her counsel eventually prevail in the RICO action at summary

27  judgment or trial, they are likely to have wound up spending hundreds of thousands

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   of dollars in legal fees defending the action.  The *in terrorem* effect of a broad

2   expansion of civil RICO liability on the Constitutional right to petition the courts

3   cannot be overstated.

4          This case provides another example of why the court should not expand

5   RICO liability to cover claims that prior litigation was phony or fraudulent.  In this

6   case, the FAC is replete with false and fraudulent allegations, and NIC has used the

7   mails and wires on multiple occasions to further its fraudulent scheme.  If this court

8   allows NIC to expand the reach of RICO to cover the fraudulent and phony lawsuits,

9   then "NTG Defendants" could file a RICO cross-complaint against NIC, its

10  attorneys and investigator, based on the false and fraudulent allegations in the FAC.

11  The burdens on the courts, parties and the administration of justice are obvious and

12  overwhelming.  Accordingly, this court should follow the long-line of courts

13  throughout the country that have refused to allow an aggrieved litigant to turn a

14  simple claim of frivolous litigation into a federal RICO action.

15          **F.    The RICO Claims Are Barred by the Noerr-Pennington Doctrine**

16          The claims are barred by the Noerr-Pennington doctrine.  See Sosa v.

17  DirecTV, Inc., 437 F.3d 923 (2006).  In Sosa, the Ninth Circuit held the Noerr-

18  Pennington doctrine barred similar allegations against DirecTV.  In that case,

19  plaintiff alleged DirecTV obtained the names and addresses of numerous individuals

20  that obtained equipment allowing them to gain unauthorized access to DirecTV's

21  signal.  DirecTV sent letters to 100,000 individuals asserting that it had records

22  showing the recipient used equipment to steal its signal, accusing the recipient of

23  violating federal criminal statutes and threatening civil legal action unless the

24  recipient paid DirecTV an unspecified sum to settle the claim.  Plaintiff alleged

25  these demand letters were sent to innocent recipients who paid DirecTV thousands

26  to settle the claims.  As here, plaintiff alleged DirecTV made false representations of

27  fact and law, and that a result, plaintiff settled his claim with DirecTV.  Plaintiff

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 14 -

then filed a RICO action alleging DirecTV engaged in wire and mail fraud and extortion.

The district court dismissed the complaint based on the Noerr-Pennington doctrine and the Ninth Circuit affirmed, holding "[u]nder the Noerr-Pennington doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." 437 F.3d at 929. Other cases are in accord holding that legal claims, even those based on alleged false representations, are immune from liability under the Noerr-Pennington doctrine. See, e.g. Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P. 2000 U.S. App. LEXIS 25440, at *3 (2d Cir. Oct. 11, 2000) ("Noerr-Pennington immunity is applicable to RICO actions and to state-law claims such as fraud and tortious interference."); Williams v. Jones & Jones Mgmt. Group, 2014 U.S. Dist. LEXIS 181128, at *28 (C.D. Cal. Oct. 6, 2014) (holding Noerr-Pennington doctrine barred Plaintiffs' RICO claims against the attorney defendants); Rupert v. Bond, 2013 U.S. Dist. LEXIS 132972, at *25-26 (N.D. Cal. Sept. 17, 2013) (holding RICO claims based on "representing parties in a court proceeding and for filing papers with the court" was barred by Noerr-Pennington doctrine); Yagman v. Galipo, 2013 U.S. Dist. LEXIS 6978, at *23-24 (C.D. Cal. Jan. 7, 2013) (holding RICO claims against attorneys for conduct taken in litigation "runs afoul of the Noerr-Pennington doctrine.").

NIC is likely to argue the sham litigation exception applies. The United States Supreme Court has described the sham litigation exception as a "narrow exception." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S.Ct. 1749, 1757 (2014). The Ninth Circuit has limited the sham litigation exception to only three instances, none of which apply here. "First, if the alleged anticompetitive behavior consists of bringing a single sham lawsuit (or a small number of such suits), the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    baseless, and (2) a concealed attempt to interfere with the plaintiff's business

2    relationships." Kottle v. Northwest Kidney Ctrs., 146 F.3d 1056, 1060 (9th Cir.

3    1998)  Here, even if you accept for purposes of a pleading motion that the NIC

4    complaint was "objectively baseless" (which it was not), there are no facts alleged

5    suggesting the lawsuit was bought for any anti-competitive purposes or to interfere

6    with NIC's business relationships.  When analyzing the doctrine under this prong,

7    "the court should focus on whether the baseless lawsuit conceals an attempt to

8    *interfere directly with the business relationships of a competitor*, through the use of

9    the governmental process - as opposed to the outcome of that process - *as an*

10   *anticompetitive weapon*." Liberty Lake Invs. v. Magnuson, 12 F.3d 155, 157 (9th

11   Cir. 1993) (emphasis added).  The allegations here do not satisfy this application of

12   the sham litigation exception.

13       The second circumstance in which the sham litigation exception applies is "if

14   the alleged anticompetitive behavior is the filing of a series of lawsuits, the question

15   is not whether any one of them has merit - some may turn out to, just as a matter of

16   chance - but whether they are brought pursuant to a policy of starting legal

17   proceedings without regard to the merits and *for the purpose of injuring a market*

18   *rival*." Kottle, 146 F.2d at 1060 (emphasis added).  That circumstance is

19   inapplicable here because there is no plausible contention that NIC is a "market

20   rival" with any of the "NTG Defendants."

21       Finally, "in the context of a judicial proceeding, if the alleged anticompetitive

22   behavior consists of making intentional misrepresentations to the court, litigation

23   can be deemed a sham if a party's knowing fraud upon, or its intentional

24   misrepresentations to, the court deprive the litigation of its legitimacy." Id.  This

25   final circumstance does not apply because the underlying lawsuit was dismissed.

26   Thus, it cannot be argued anything the "NTG Defendants" are alleged to have done

27   in that case deprived the litigation of its legitimacy.  In Ungureanu v. A. Teichert &

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 16 -

1  Son, 2012 U.S. Dist. LEXIS 46440, at *23 (E.D. Cal. Apr. 2, 2012), the district

2  court rejected the application of the sham litigation exception where the alleged

3  misrepresentations by defendant came to light during the litigation, and therefore did

4  not deprive the litigation of its legitimacy.  See also Jones & Jones Mgmt. Group,

5  supra, 2014 U.S. Dist. LEXIS 181128, at *27 28 ("[A]lthough Plaintiffs state that

6  JJMG and the attorney defendants intentionally misrepresented the basis of

7  Plaintiffs' state court complaint in their papers, such misrepresentations could not

8  have deprived the litigation of its legitimacy given that the content of Plaintiffs' state

9  court complaint was accessible to all involved in the state court litigation."); Balt.

10  Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 402 (4th Cir. 2001) ("If a

11  judgment is not procured by fraud or deceit, it cannot fall within any fraud exception

12  to Noerr-Pennington.").  Accordingly, the sham litigation exception does not apply

13  and the RICO claims here are barred by the Noerr-Pennington doctrine.

14          On a more practical note, in virtually every contested case, somebody wins

15  and somebody loses.  Invariably, a factual claim made by the losing party is proven

16  to be untrue.  Exposing the losing party and his attorneys to potential RICO claims

17  by merely alleging that the party or counsel made intentional representations or tried

18  to "extort" a settlement will have a devastatingly chilling effect on parties'

19  willingness to bring or defend cases where the facts are in dispute by effectively

20  turning RICO into a federal malicious prosecution statute.  Even if the RICO claim

21  is ultimately dismissed or unsuccessful, the mere allegations have devastating

22  effects on the attorneys' careers and can cost the parties and their attorneys millions

23  in legal fees.  The Noerr-Pennington doctrine was created to provide those parties

24  and their attorneys with some level of protection when they pursue the difficult

25  cases

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 17 -

**G.    The Complaint Fails to Allege a Concrete Financial Injury**
**Proximately Caused by the Underlying Predicate Acts**

Finally, a civil RICO plaintiff can only recover to the extent that it has been injured in his business or property by the conduct constituting the violation.  See Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 975 (9th Cir. 2008).  "To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1086-87 (9th Cir. 2002).  NIC alleges it was injured through legal fees incurred in the underlying action.  (FAC at ¶ 479) The Ninth Circuit, however, has "not recognized the incurment of legal fees as an injury cognizable under RICO."  Thomas v. Baca, 308 Fed.Appx. 87, 88 (9th Cir. 2009); see also Holloway v. Clackamas River Water, 2014 U.S. Dist. LEXIS 170616, *21 (D. Or. Dec. 9, 2014) (holding "legal fees expended to defend against sham lawsuits are not the type of injury to business or property interests which confer standing to bring a civil RICO claim.").

NIC also alleges "on information and belief" that it suffered reduced corporate earnings and harm to its reputation and goodwill.  (FAC at ¶ 479)  Courts have consistently held that injury to reputation is a personal injury, not a concrete financial loss compensable under RICO.  See Bowen v. Oistead, 125 F.3d 800, 806 (9th Cir. 1997) ("Civil rights violations and injury to reputation do not fall within the statutory definition of 'racketeering activity.'"); Tal v. Hogan, 453 F.3d 1244, 1254 (10th Cir. 2006) ("[I]njury to his reputation, dignity and emotional damages are not the type of injuries redressable by the antitrust laws or RICO which are expressly limited to injuries to 'business or property.'); Hamm v. Rhone-Poulenc Rorer Pharms., 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c).").

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Nor can NIC satisfy the RICO injury requirement by including a generalized

2 allegation of "reduced corporate earnings." NIC must allege a specific and

3 identifiable loss of earnings that is not too speculative. See, e.g., Mattel, Inc. v.

4 MGA Entertainment, Inc., 782 F. Supp. 2d 911, 1022 (C.D. Cal. 2011) (holding that

5 allegations of lost "future profits and business opportunities" as a result of alleged

6 RICO predicate acts did not satisfy the concrete financial loss requirement for an

7 injury to a property interest where plaintiff could not "identify any relationships or

8 contracts that substantiate the concreteness of its lost profits."); The Knit With v.

9 Knitting Fever, Inc., 2012 U.S. Dist. LEXIS 100368, at *38 (E.D. Pa. July 19, 2012)

10 ("The burden, however, falls on the plaintiff to establish that the profits are both

11 specific and identifiable, and are not speculative in nature.").

12    Furthermore, NIC's allegation of reduced corporate earnings and harm to its

13 reputation and goodwill is based on "information and belief." It should know

14 whether it actually suffered harm as a result of the alleged misconduct. Moreover,

15 when pleading facts on "information and belief," NIC must plead *facts* supporting

16 its information and belief. Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)

17 ("[A] plaintiff who makes allegations on information and belief must state the

18 factual basis for the belief.") In Tatung Co., Ltd., supra, 43 F.Supp.3d 1036, 1062-

19 63, Judge Carter, relying on Neubronner, granted a RICO defendant's motion to

20 dismiss where the complaint was similarly premised upon allegations made on

21 information and belief without a supporting factual basis. The court should do the

22 same here.

23    Finally, NIC alleges it is entitled to recover damages because the "NTG

24 Defendants" have injured the legal profession. (Id. at ¶ 481) NIC, a dietary

25 supplement company, cannot seek damages for some vague injury to the legal

26 profession. See Den Hollander v. Flash Dancers Topless Club, 173 Fed.Appx. 15,

27 18 (2d Cir. 2006) (holding "injury to the administration of law" is "not compensable

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  under RICO.").  As a result, NIC has failed to allege a recognized injury to its

2  business sufficient to support a RICO claim.

3  **IV.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION**

4          **1962(d)**

5          In order to plead a RICO conspiracy under Section 1962(d), "the complaint

6  must allege some factual basis for the finding of a conscious agreement among the

7  defendants." <u>Sebastian Int'l, Inc. v. Russolillo</u>, 186 F.Supp.2d 1055, 1068 (C.D. Cal.

8  2000) (quoting <u>Hecht v. Commerce Clearing House</u>, 897 F.2d 21, 26 n. 4 (2d Cir.

9  1990)).  Moreover, "a conspiracy to commit fraud must satisfy the particularity

10  requirement of rule 9(b)."  <u>In re 3COM Sec. Litigation</u>, 761 F.Supp. 1411, 1418

11  (N.D. Cal. 1990); <u>see also</u> <u>Swartz, supra,</u> 476 F.3d at 765 ("Rule 9(b) imposes

12  heightened pleading requirements where 'the object of the conspiracy is

13  fraudulent.'") (citation omitted); <u>LaChapelle v. Dong Kwan Kim</u>, 2015 U.S. Dist.

14  LEXIS 161801, at *23 (N.D. Cal. Dec. 1, 2015) ("Conspiracy to defraud must be

15  pleaded with particularity under Rule 9(b).").

16          NIC's claim under Section 1962(d) fails because NIC has not pled the

17  elements of a conspiracy with specificity.  The FAC contains only conclusory

18  allegations of an agreement or conspiracy, such as: "The Defendants have each

19  conspired to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d)."  (FAC

20  at ¶ 484)  NIC further alleges, in the most general terms imaginable, "Defendants

21  each agreed to facilitate all or some of the predicate acts described in paragraph 289

22  through 445 herein."  (<u>Id.</u> at ¶ 485)  These boilerplate allegations are insufficient to

23  state a conspiracy claims against any of the "NTG Defendants."

24          NIC's 1962(d) claim also fails because NIC has not properly alleged an

25  underlying RICO violation.  <u>See, e.g., Simon, supra,</u> 208 F.3d at 1084 (Plaintiff's

26  "failure to plead the requisite elements of either a Section 1962(a) or Section

27  1962(c) violation implicitly means that he cannot plead a conspiracy to violate either

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  section."); <u>In re WellPoint, Inc.</u>, <u>supra</u>, 903 F.Supp.2d at 918 ("Having failed to

2  adequately plead a substantive violation of RICO, the Subscribers' necessarily have

3  failed to plead that they were injured by an 'overt act' that was itself a substantive

4  RICO violation."); <u>In re Toyota Motor Corp.</u>, <u>supra</u>, 785 F.Supp.2d at 922

5  ("Because Plaintiffs have failed to state a claim under subsections (a), (b), or (c),

6  their claim under subsection (d) likewise fails.").

7  **V.      CONCLUSION**

8          For the reasons set forth above, this motion to dismiss NIC's second and third

9  claims for relief under the RICO statutes should be granted.

10

11  Dated:  February 22, 2016                    **CALLAHAN & BLAINE, APLC**

12

13                                        By:  */s/ Michael S. LeBoff*
                                              Edward Susolik
14                                            Michael S. LeBoff
                                              Attorneys for NEWPORT TRIAL
15                                            GROUP; SCOTT J. FERRELL; RYAN
                                              M. FERRELL; VICTORIA C.
16                                            KNOWLES; DAVID REID and
                                              ANDREW LEE BASLOW
17

18

19

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MEMO OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION TO DISMISS