**CALLAHAN & BLAINE, APLC**
Daniel J. Callahan (SBN 91490)
Edward Susolik (SBN 151081)
Esusolik@callahan-law.com
Michael S. LeBoff (SBN 204612)
Mleboff@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for NEWPORT TRIAL GROUP; SCOTT J.
FERRELL; RYAN M. FERRELL; VICTORIA C.
KNOWLES; DAVID REID and ANDREW LEE
BASLOW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., a Florida corporation , <br><br> Plaintiff, <br><br> v. <br><br> NEWPORT TRIAL GROUP, et al., <br><br> Defendants. | Judge:    Hon. James V. Selna <br> **CASE NO.  8:15-cv-02034-JVS-JCG** <br><br> **DEFENDANTS' EVIDENTIARY OBJECTION IN SUPPORT OF MOTION TO STRIKE FIRST AND FOURTH CAUSES OF ACTION IN THE FIRST AMENDED COMPLAINT UNDER CAL. CIV. PROC. CODE § 425.16** <br><br> Hearing: <br> Date:        April 4, 2016 <br> Time:        1:30 p.m. <br> Courtroom:   10C <br><br> Complaint Filed:  December 7, 2015 <br> Trial Date:        None |

DEFENDANTS NEWPORT TRIAL GROUP, SCOTT FERRELL, RYAN FERRELL, DAVID REID, VICTORIA KNOWLES and ANDREW BASLOW (collectively "Defendants"), object to the "evidence" submitted by Plaintiff Natural-Immunogenics Corporation in opposition to Defendants Motion to Strike the First and Fourth cause of action sought to be stated in the First Amended Complaint:

## DECLARATION OF CLARK BAKER

| | Evidence | Objection |
|---|---|---|
| 1. | "Benjamin said that as the NTG case progressed, Plaintiff Andrew Nilon had avoided depositions and eventually filed papers alleging that he could no longer participate in the case because he had to relocate to Northern California to care for his sick grandmother." (p. 2:18-21) | Hearsay. |
| 2. | "By December 10, 2014, I had discovered that among NTG's caseload were the following:<br><br>a.  Offensive class action litigation against homeopathic and dietary supplement businesses, including consumer protection claims and false marketing of patents.<br><br>b. Patent litigation on behalf of companies that might be managed or owned by NTG lawyers or affiliates (which earned the law firm the | Relevance.  Lacks Foundation. |

DEFENDANTS' EVID. OBJECIONS ISO MOTION TO STRIKE FIRST AND FOURTH CAUSES OF ACTION

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | designation of "patent troll" on the internet). c. A second suit also involving Andrew Nilon as a plaintiff against another natural supplement company brought by Mr. Ferrell in Ventura County in May 2013, only to be withdrawn or suspended the next day." (pg. 3:1-11) | |
| 3. | "I completed my preliminary report establishing that Nilon was one of five financially-stressed college graduates who had filed questionable claims against five different companies during or shortly after they incorporated their company, Electric Family. NTG had filed most of those claims. The relationships between the Electric Family members, the similarities of the claims described in each lawsuit, and the timing of those lawsuits created profound coincidences."  (pg. 3:16-22) | Relevance.  Hearsay.  Lacks Foundation.  Improper Expert Witness Opinion.  Mr. Baker's summary of his "preliminary report" is not competent or admissible evidence. |
| 4. | "The ISP reported that they were repeated targets of directed denial of service (DDOS) attacks."  (pg. 4:15-15) | Hearsay.  Relevance. |
| 5. | "NIC later deposed Sandoval and obtained his date of birth, which allowed me to discover Sandoval's suspended California driver license D7508405 and his Arizona | Hearsay.  Relevance.  Lacks Foundation.  Improper Legal Conclusion. |

- 2 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | driver license #D05574847. I then gathered facts concerning Sandoval's extensive criminal history that established Sandoval was not a California resident when he allegedly purchased Sovereign Silver in San Diego County."  (pg. 4:18-23) | |
| | 6. | "On April 29, 2015, Yuma County Probation Officer Jody Frehn confirmed that Sandoval never had permission to visit California when he claimed to have purchased the NIC product Sovereign Silver and that, as an Arizona resident on criminal probation, Sandoval had never requested permission from the court to travel to California as his conditions of probation required." | Hearsay.  Relevance. |
| | 7. | "According to McNair, Nilon said that he had examined the website and found that all of the content on the website was true and accurate. Mr. McNair's conversation with Andrew Nilon is described in McNair's declaration. *See* Declaration of John McNair ("McNair Decl."). I have reviewed that declaration and I confirm that the content expressed therein by Mr. McNair is consistent with the information McNair reported to me in August 2015." | Hearsay. |

| | | |
|---|---|---|
| 8. | "The next day on August 21, 2015, I called Nilon on his phone as we had arranged. During the call that lasted 30-40 minutes, Nilon conveyed the following : | Hearsay. |
| | a. That he attended Arizona State University (ASU) between 2007 and 2011 at the W. P. Carey School of Business. During his time there he became close friends with fellow ASU students Sam Pfleg and Taylor Demulder. After graduating from ASU, Pfleg, Demulder and Nilon moved to a San Diego apartment in August 2011. With student loans, liabilities and limited prospects, they were 'essentially broke' by January 2012 and 'desperate for money.' | |
| | b. Around that time, a mutual friend introduced his girlfriend 'Talee' to Pfleg, Demulder and Nilon. Talee said 'I think I might have some work for you' and provided the name Andrew Baslow and a phone number that Nilon is no longer in possession of. When Nilon called, he was directed to Andrew Baslow who identified himself as an employee of the Newport Trial Group (NTG). After a brief conversation, Baslow suggested that they | |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 4 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

meet.

c. Several days later, Nilon met Baslow at a coffee shop located between Newport Beach and San Diego. During their meeting, Baslow told Nilon that many natural food and supplement companies falsely advertise products that don't do what their advertising claims say they do. Baslow said that the Newport Trial Group needed 'a lot of people' and that he would sign Nilon up for a suit, saying that all Nilon had to do was try some products and, if Nilon got back to Baslow, NTG would pay Nilon for his time.

d. Nilon described the NTG operation as 'casual and laid back.' Baslow told Nilon that 'these cases are already going through – you can come on to support them and we'll pay you some money.' Baslow later said, '[Nilon] didn't even need to buy or try the product" and that Nilon would be paid if he signed papers that NTG sent to him.

e. Nilon said that NTG paid him about $900 or $1000, which Nilon then used to pay the rent. Nilon said that he took no other money from NTG and that Nilon,

- 5 -

Demulder, and Pfleg only had to sign papers to get paid.

f. Nilon said that sometime around May 2012, he 'got a weird feeling' about the arrangement and told Baslow that he didn't want to have anything more to do with the lawsuit or NTG. Baslow pressured Nilon to stay put but, when Nilon persisted, Baslow agreed.

g. NTG drafted and sent a declaration for Nilon's signature in which Nilon declared that his grandmother was ill and that Nilon had to move to Northern California to take care of her, which prevented Nilon from participating in the lawsuit. Nilon said that when he signed the declaration he knew it was false, that his grandmother was not sick, and that she didn't need Nilon's company or time. According to Nilon, the declaration was written by NTG solely to give Nilon a plausible reason to leave the NIC lawsuit without disclosing to the court that Nilon had been paid to sign onto a class-action lawsuit.

h. Despite all of the false claims, Nilon signed Baslow's false declaration.

- 6 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | i. Nilon also said that he learned sometime around May 2013 that NTG had used Nilon's name to file another false claim against ChromaDex – a company whose products Nilon never purchased or used. Nilon said that when he discovered this, he contacted Baslow and told him to remove his name from the lawsuit. Nilon said that he learned that the lawsuit had been withdrawn the next day.  j. Nilon said that his friends Pfleg, Demulder, Dronkers, and Brudzewski had told Nilon that they were similarly recruited by NTG to file false lawsuits against companies. Although Nilon did not recall the particulars of their cases, he said that they each described to Nilon similar experiences with NTG and Baslow – that NTG paid each of them to file false claims against natural health product companies." (pg. 6:9-8:8) | |
| 9. | "Based on my conversation with Nilon, I became aware that the Newport Trial Group had enlisted members of the Electric Family to fabricate legal allegations against several businesses, including Natural-Immunogenics, Corp. Nilon's narrative was | Hearsay.  Lacks Foundation. Unreasonable and Illogical Inference.  The testimony is improperly conclusory and lacks any supporting facts. |

DEFENDANTS' EVID. OBJECIONS ISO MOTION TO STRIKE FIRST AND FOURTH CAUSES OF ACTION

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | consistent with other publicly available information concerning the NTG lawsuits." (pg. 8:13-17) | |
| 10. | "On December 4, 2015 at approximately 10:25, former NTG plaintiff Sam Schoonover took my call while exercising at the gym. I identified myself as an investigator licensed by the California Bureau of Security and Investigative Services. When I mentioned his lawsuit against the Himalaya Drug Company and Andrew Baslow, Mr. Schoonover laughed and said 'THAT was an interesting experience.' I asked him to expound and Schoonover disclosed the following: <br><br> a. In 2012, Talee Rooney was Schoonover's girlfriend. At the time, Schoonover lived in an apartment with Nilon, Pfleg, and other male friends who eventually formed Electric Family. <br><br> b. Talee told Schoonover and his roommates that Baslow used her to 'recruit young men to file claims' for lawyers Baslow worked for. Talee told Schoonover that Baslow works for a law firm that 'goes after other companies and makes false claims against companies,' saying that they | Hearsay. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

won money by stopping the companies from making false claims.

    c. Schoonover said Baslow asked us if we wanted to get involved. Schoonover said that he didn't remember much about his claim but that he has documents at home about his case.

    d. Schoonover said that when he and his roommates received court documents, 'we looked them over and they looked okay, so we signed them. The lawsuits were for shampoo and other products. We were young and didn't know any better. About six months after filing the claims we got money – some of us got paid twice.'

    e. Schoonover stated that he was essentially hired to sponsor the lawsuits regardless of his experience (or purchase) with the products. Schoonover recalled receiving one payment of about $800-$1500.

    f. Schoonover continued: 'A year or two later the IRS told us that we were supposed to have reported the settlement and that NTG had failed to report it.'

    g. Schoonover said that, after that experience, Baslow and/or 'his boss' told us

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' EVID. OBJECIONS ISO MOTION TO STRIKE FIRST AND FOURTH CAUSES OF ACTION

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

about companies that recorded telephone calls. Baslow and his boss wanted us to get the person who answered to not say they were being recorded. That sounded odd and we became suspicious. Schoonover said that he 'got the feeling that Baslow was naïve - probably influenced by his bosses at NTG'.

       h. Schoonover later told Baslow that his boss is 'sketchy.' Baslow became defensive and they ended their relationship." (pg. 10:12-11:9).

## DECLARATION OF JOHN MCNAIR

| | Evidence | Objection |
|---|---|---|
| 11. | "Nilon said that he had examined the website and found that all of the content of the website was true and accurate." (pg. 2:17-18) | Hearsay.  Lacks Foundation. |
| 12. | "Nilon told me that he was afraid that his customers would see the website and that he would be humiliated and persecuted by his customers if they discovered the truth about his past conduct as it related to the facts presented on the website." | Hearsay. |
| 13. | "Mr. Nilon said that the content was 'very well written,' congratulated me for doing a | Hearsay. |

| | | |
|---|---|---|
| 1<br>2 | 'great job,' and admitted that 'everything posted on the website was true.'" | |

## DECLARATION OF PETER A. ARHANGELSKY

| | Evidence | Objection |
|---|---|---|
| 14. | "Mr. Reid discussed potential settlement. He tendered an offer by email. Mr. Reid's proposal sought to have NIC waive its right to sue or seek relief. NIC rejected the offer." (pg. 2:5-8) | Improper Evidence of Settlement Communication per Fed. R. Evid. 408. |
| 15. | "At the time, my conversations with Andrew Nilon's civil and criminal attorneys involved discussions of possible immunity and release of liability in exchange for Nilon's testimony against NTG. Mr. McCormick requested that I speak with prosecuting agencies. He indicated that Nilon would cooperate only if he received immunity from criminal prosecution (e.g., for perjury and/or RICO counts)." | Hearsay.  Relevance. |
| 16. | "I was informed that immunity would be unavailable to Mr. Nilon outside of a formal criminal matter. I communicated that information to Nilon's counsel. Subsequently, Nilon's counsel informed me that Nilon would exercise his right | Hearsay.  Relevance.  The Court cannot draw any adverse inferences from Nilon's alleged assertion of the privilege against self-incrimination.  See Doe v. Glanzer, 232 F.3d 1258, 1264 (9th |

CALLAHAN & BLAINE<br>A PROFESSIONAL LAW CORPORATION<br>3 HUTTON CENTRE DRIVE, NINTH FLOOR<br>SANTA ANA, CALIFORNIA 92707<br>TELEPHONE: (714) 241-4444<br>WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| against self-incrimination." | Cir. 2000) (holding an "adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.")  Moreover, because there was no formal proceeding which sought to compel Nilon's testimony, there was actual assertion of the privilege against self-incrimination.  A potential defendant's refusal to speak to plaintiff's counsel does not permit an adverse inference against Nilon.  Moreover, under no circumstances, could Nilon's assertion of the privilege result in an adverse inference against any other party. |
|---|---|

## EXHIBITS

| | Evidence | Objection |
|---|---|---|
| 17. | Exhibit "C."  Clark Baker a/k/a AJ Lyon's August 21, 2005 email to Andrew Nilon. | Hearsay. |
| 18. | Exhibit "D."  Andrew Nilon's August 24, 2015 email to Clark Baker a/k/a AJ Lyon. | Hearsay. |

| 19. | Exhibit "M."  David Reid's May 12, 2015 email to Peter Arhangelsky. | Improper Evidence of Settlement Communication per Fed. R. Evid. 408. |
| --- | --- | --- |

Dated:  March 21, 2016

**CALLAHAN & BLAINE, APLC**

By:  */s/ Michael S. LeBoff*
Edward Susolik
Michael S. LeBoff
Attorneys for NEWPORT TRIAL GROUP; SCOTT J. FERRELL; RYAN M. FERRELL; VICTORIA C. KNOWLES; DAVID REID and ANDREW LEE BASLOW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' EVID. OBJECIONS ISO MOTION TO STRIKE FIRST AND FOURTH CAUSES OF ACTION