1  **CALLAHAN & BLAINE, APLC**
Daniel J. Callahan (SBN 91490)
2  Edward Susolik (SBN 151081)
Esusolik@callahan-law.com
3  Michael S. LeBoff (SBN 204612)
Mleboff@callahan-law.com
4  3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
5  Telephone: (714) 241-4444
Facsimile: (714) 241-4445
6
7  Attorneys for NEWPORT TRIAL GROUP; SCOTT J.
FERRELL; RYAN M. FERRELL; VICTORIA C.
8  KNOWLES; DAVID REID and ANDREW LEE
BASLOW

9
10                    **UNITED STATES DISTRICT COURT**

                      **CENTRAL DISTRICT OF CALIFORNIA**
11
                      **SOUTHERN DIVISION**
12

13  NATURAL IMMUNOGENICS          **CASE NO.  8:15-cv-02034-JVS-JCG**
    CORP., a Florida corporation ,
14                                **NTG DEFENDANTS' OPPOSITION
                    Plaintiff,    TO PLAINTIFF'S APPLICATION**
15                                **FOR A TEMPORARY
         v.                       RESTRAINING ORDER AND/OR
16                                PRELIMINARY INJUNCTION;
    NEWPORT TRIAL GROUP, et al.,  DECLARATIONS OF SCOTT
17                                FERRELL AND MICHAEL
                    Defendants.   LEBOFF; EXHIBITS**
18
                                  Judge:     Hon. James Selna
19
                                  Complaint Filed:  December 7, 2015
20                                Trial Date:       December 6, 2017

21
22
23
24
25
26
27
28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF CONTENTS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   THE DRAFT COMPLAINT IS PRIVILEGED ................................ 3

III.  PLAINTIFF'S COUNSEL BREACHED THEIR LEGAL AND
      ETHICAL DUTIES AFTER IMPROPERLY RECEIVING
      PRIVILEGED DOCUMENTS ......................................................... 6

IV.   THERE IS NO EVIDENCE THE EMAIL CAME FROM
      DEFENDANTS; AN INDEPENDENT INVESTIGATION IN
      NECESSARY ..................................................................................... 8

V.    PLAINTIFF HAS NOT ESTABLISHED SUFFICIENT
      EMERGENCY FOR THE ISSUANCE OF A TRO ....................... 10

VI.   NIC IS NOT ENTITLED TO THE RELIEF SOUGHT IN ITS
      APPLICATION ................................................................................. 12

      A.   The Court Cannot Issue a Prior Restraint in Violation of the First
           Amendment to the United States Constitution ................................... 12

      B.   The Court Cannot Prevent Mr. Ferrell and His Clients From
           Seeking Legal Representation and Advice ......................................... 13

      C.   The Court Cannot Refer this Matter to the State Bar Absent Any
           Evidence of an Ethical Violation by Mr. Ferrell ............................... 14

      D.   NIC Is Not Entitled to Leave to Amend Its Complaint ..................... 15

      E.   NIC's Request Relating to a "Collateral Challenge" to This
           Court's Authority if Vague and Unintelligible ................................. 16

VII.  THE COURT SHOULD ISSUE ORDERS PRESERVING THE
      PRIVILEGE UNTIL THE SOURCE OF THE RICHARD MARTIN
      EMAIL CAN BE DETERMINED ................................................... 16

VIII. CONCLUSION ................................................................................. 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers,
    398 U.S. 281 (1970) .................................................................. 13

Barton v. United States Dist. Court,
    410 F.3d 1104 (9th Cir. 2005) .................................................. 4

CBS v. Davis,
    510 U.S. 1315 (U.S. 1994) ....................................................... 12

Del Webb Cmtys., Inc. v. Partington,
    652 F.3d 1145 (9th Cir. 2011) .................................................. 16

Goldie's Bookstore, Inc. v. Superior Court of State of Cal.,
    739 F.2d 466 (9th Cir. 1984) .................................................... 11

In re Grand Jury Investigation,
    974 F.2d 1068 (9th Cir. 1992) .................................................. 4

In re Grand Jury Proceedings Under Seal,
    947 F.2d 1188 (4th Cir. 1991) .................................................. 4

In re Grand Jury Subpoena(Torf),
    357 F.3d 900 (9th Cir. 2003) .................................................... 5

Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.,
    669 F. Supp. 2d 1084 (N.D. Cal. 2009).................................... 3

Ideal Elec. Co. v. Flowserve Corp.,
    230 F.R.D. 603 (D. Nev. 2005) ............................................. 4, 5

Layton v. Ocwen Loan Servicing, LLC,
    2015 U.S. Dist. LEXIS 97097 (C.D. Cal. July 23, 2015) ..................... 11

Meggitt (San Juan Capistrano), Inc. v. Nie Yongzhong,
    2013 U.S. Dist. LEXIS 19503 (C.D. Cal. Feb. 13, 2013).................... 11

- ii -

Miller v. California,
    413 U.S. 15 (1973) ................................................................................. 12

Nebraska Press Ass'n v. Stuart,
    427 U.S. 539 (1976) ............................................................................... 12

New York Times Co. v. United States,
    403 U.S. 713 (1971) ............................................................................... 12

Oakley, Inc. v. McWilliams,
    879 F. Supp. 2d 1087 (C.D. Cal. 2012) ................................................. 12

P&G v. Bankers Trust Co.,
    78 F.3d 219 (1996) ................................................................................. 11

Rodriguez v. Disner,
    688 F.3d 645 (9th Cir. 2012) ................................................................... 3

Swidler & Berlin v. United States,
    524 U.S. 399 (1998) ................................................................................. 4

Tater-Alexander v. Amerjan,
    2008 U.S. Dist. LEXIS 123289 (E.D. Cal. Apr. 4, 2008) ...................... 4

United States v. Bauer,
    132 F.3d 504 (9th Cir. 1997) ................................................................... 3

United States v. Mesadieu,
    2015 U.S. Dist. LEXIS 177569 (M.D. Fla. Sept. 30, 2015) ................... 5

Wilcox v. Arpaio,
    753 F.3d 872 (9th Cir. 2014) ................................................................... 3

**CALIFORNIA CASES**

Bak v. MCL Fin. Group, Inc.,
    170 Cal.App.4th 1118 ............................................................................. 8

Rico v. Mitsubishi Motors Corp.,
    42 Cal.4th 807 (2007) .............................................................................. 1

State Compensation Ins. Fund v. WPS, Inc.
    70 Cal.App.4th 644 (1999) ...................................................................... 1

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- iii -

**FEDERAL STATUTES**

Fed. R. Civ. P. 65(b)(1)(A) ....................................................................... 10

Fed. R. Civ. P. § 26(b)(3) ........................................................................... 5

**OTHER AUTHORITIES**

Cal. State Bar Opinion No. 2013-188 ................................................... 6, 7

California Rule of Professional Conduct 5-100 ...................................... 14

NTG DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND/OR
PRELIMINARY INJUNCTION; DECLARATIONS OF SCOTT FERRELL AND MICHAEL LEBOFF; EXHIBITS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## I.    **INTRODUCTION**

NIC's counsel improperly (and potentially unlawfully) received a clearly privileged document from a purported "anonymous" source.   Counsels' obligation when it comes into possession of privileged documents is crystal clear.   Counsel was ethically and legally obligated to (1) "refrain from examining the materials any more than is essential to ascertain if the materials are privileged"; (2) "immediately notify the sender that he or she possesses material that appears to be privileged"; and (3) not seek any litigation advantage from their receipt of the document.   Rico v. Mitsubishi Motors Corp., 42 Cal.4th 807, 817 (2007) (quoting State Compensation Ins. Fund v. WPS, Inc. 70 Cal.App.4th 644, 656-657 (1999)).   In a shocking dereliction of these ethical and legal obligations, NIC's lawyers did precisely the opposite: they studied the draft complaint in detail, did not notify its author that they were in possession of it, and used the purloined draft as a basis to seek a Temporary Restraining Order attempting to gain some tactical litigation advantage in this case. Counsel's severe ethical lapse requires swift and immediate attention, and may warrant significant sanctions and potentially disqualification.

At issue in this motion is a draft complaint Scott Ferrell prepared in contemplation of a potential separate action against NIC, its lawyers and its investigator arising out of the fraudulent and malicious lawsuit they brought against one of the former defendants in this case, Isabella Janovick. The document was a draft complaint, which was never intended to be filed in its current form.  Mr. Ferrell shared his privileged work-product with a small number of other attorneys, to seek their legal advice regarding the merits of the claims and to discuss their interest (if any) in serving as counsel of record.   The document is clearly privileged. It is watermarked "DRAFT – Attorney Work Product." Mr. Ferrell's discussions with prospective co-counsel regarding the draft complaint are also privileged. Counsel's claim that it received the document in a purportedly anonymous email is highly suspicious, and tends to indicate that someone may have hacked into Mr.

Ferrell's computer.  Scott Ferrell did not send the email to opposing counsel.  On its face, this appears to be the calling card of NIC's expert, Clark Baker, however further investigation is required in order to confirm or disprove these suspicions.

Substantively, NIC's request for a temporary restraining order and/or preliminary injunction is completely improper, and demonstrates why they should have attempted to resolve the issue with opposing counsel rather than unethically exploit an improperly obtained privilege document.  NIC has failed to establish the existence of an emergency or other exigent circumstance that would justify the issuance of a temporary retaining order.   Furthermore, NIC is asking this Court for a gag order preventing any of the NTG Defendants from generally making any defamatory comments about NIC, its counsel or its investigator.[1]  This is an unlawful prior restraint.  Additionally, even though Mr. Ferrell currently has no plans to file the complaint in its current form, this Court should not prevent Mr. Ferrell or his clients from seeking legal advice and representation regarding a potentially different lawsuit.  Nor should the Court dictate which allegations may eventually be asserted in a separate action.  The Court should also not refer Mr. Ferrell to the State Bar given the complete absence of any evidence showing Mr. Ferrell committed any ethical violation in preparing a draft complaint that was never filed and is clearly privileged.  Finally, NIC's request to amend its complaint is absurd, as a draft complaint cannot possibly form the basis of a RICO action.

For each of these reasons, the NTG Defendants request the following:

1.    That the Application for a Temporary Restraining Order and Preliminary Injunction be denied with prejudice;

2.    That the Court set an immediate in-person hearing to address the issues raised in this opposition;

---

[1] Ironically, virtually every document NIC files in this case includes page after page of false and defamatory statements against Mr. Ferrell and the other defendants.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

3.      That the Court set an OSC Re: Sanctions/Disqualification as to why Plaintiff's counsel should not be sanctioned or disqualified based on their unethical mishandling of improperly obtained privileged;

4. That, in order to preserve the privileges relating to this document, NIC and its counsel be ordered not to disseminate the draft complaint to anyone and that NIC and its counsel refrain from reviewing, restating, citing or in any way relying on the privileged document; and

5.  That the Court appoint an independent forensic expert to investigate the source of the email at issue in this motion, and to preserve the integrity of the independent investigation, that the Court order NIC's counsel cease any investigations concerning the source of the disputed email and that NIC's preserve in full – in electronic form with all metadata intact – the email it received from a purported "anonymous source."

## II.    THE DRAFT COMPLAINT IS PRIVILEGED

NIC's motion should be denied because the draft complaint on which it is based is protected by both the attorney-client privilege and the attorney work-doctrine.[2]

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice as well as an attorney's advice in response to such disclosures." United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997) (internal quotations and ellipses omitted). "The attorney client privilege is one of the oldest recognized privileges for confidential communications. The privilege is

---

[2] Because this case involves both federal and state claims, federal law governs the application of the attorney-client privilege.  Wilcox v. Arpaio, 753 F.3d 872, 876 (9th Cir. 2014).  Federal law governs the application of the work-product doctrine. Great Am. Assur. Co. v. Liberty Surplus Ins. Corp., 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009).  California law governs whether NIC's counsel violated their ethical obligations in connection with the email. L.R. 83-3.1.2; Rodriguez v. Disner, 688 F.3d 645, 656 (9th Cir. 2012) (Under the district court's local rules, California law governs a district court's determination whether an ethical violation has occurred.").

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  intended to encourage full and frank communication between attorneys and their
2  clients and thereby promote broader public interests in the observance of law and
3  the administration of justice."  Swidler & Berlin v. United States, 524 U.S. 399, 403
4  (1998) (citations omitted).  The attorney-client privilege applies:  "(1) Where legal
5  advice of any kind is sought (2) from a professional legal adviser in his capacity as
6  such, (3) the communications relating to that purpose, (4) made in confidence (5) by
7  the client, (6) are at his instance permanently protected (7) from disclosure by
8  himself or by the legal adviser, (8) unless the protection be waived."  In re Grand
9  Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992).

10       The attorney-client privilege governs draft documents like the draft
11  complaint.  Ideal Elec. Co. v. Flowserve Corp., 230 F.R.D. 603, 608 (D. Nev. 2005).
12  Indeed, allowing disclosure of draft documents would frustrate the purpose of the
13  privilege "by stifling the attorney's ability to advise the client at the time when the
14  attorney's advice is most useful -- i.e., before the client takes an action that could
15  ultimately lead to a costly dispute in the courts."  Id.  Moreover, "[s]tatements made
16  while intending to employ a lawyer are privileged even though the lawyer is not
17  employed."  In re Grand Jury Proceedings Under Seal, 947 F.2d 1188, 1190 (4th Cir.
18  1991); see also Tater-Alexander v. Amerjan, 2008 U.S. Dist. LEXIS 123289, * 8-9
19  (E.D. Cal. Apr. 4, 2008) ("It is established that statements made while intending to
20  employ a lawyer are privileged even though the lawyer is not employed.").  "There
21  is nothing anomalous about applying the privilege to such preliminary consultations.
22  Without it, people could not safely bring their problems to lawyers unless the
23  lawyers had already been retained."  Barton v. United States Dist. Court, 410 F.3d
24  1104, 1111-1112 (9th Cir. 2005).

25       The draft complaint is protected by the attorney-client privilege because it
26  was the subject of confidential communications between Mr. Ferrell and other
27  counsel on behalf of his client, Ms. Janovick, made for the purpose of seeking legal
28  advice and legal representation.  See Declaration of Scott Ferrell ("S. Ferrell Decl.")

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 4 -

1   at ¶ 6.  NTG does not know how NIC received a copy of the draft complaint, but

2   NTG never sent it to NIC, and did not authorize anyone to disclose it to NIC's

3   counsel.  See id. at ¶¶ 7-9.  NIC's receipt of the draft complaint is inexplicable

4   unless, as NTG suspects, someone (possibly NIC's private investigator, Clark

5   Baker) hacked into Mr. Ferrell's email system and then sent it to NIC's counsel

6   using the phony email address that even NIC deems suspicious.

7          The draft complaint is also protected by the attorney work-product doctrine.

8   The work product doctrine protects "from discovery documents and tangible things

9   prepared by a party or his representative in anticipation of litigation."  In re Grand

10  Jury Subpoena(Torf), 357 F.3d 900, 906 (9th Cir. 2003); see Fed. R. Civ. P.

11  § 26(b)(3).   The work-product doctrine applies to draft documents prepared in the

12  course of, or in anticipation of, litigation.  Ideal Elec. Co., supra, 230 F.R.D. at 608

13  ("Here, the draft affidavits were prepared in anticipation of litigation by both

14  Jennings and counsel, and thus properly constitute work product.").  The work-

15  product doctrine also applies to materials conveyed to prospective counsel as part of

16  a potential referral of a prospective lawsuit.  See United States v. Mesadieu, 2015

17  U.S. Dist. LEXIS 177569, * 7-8 (M.D. Fla. Sept. 30, 2015) ("The referral letter

18  contains attorneys Hochman and Daigle's views, mental impressions and analysis.

19  The Court finds this information is absolutely immune from discovery by

20  Defendant.").

21          The draft complaint unquestionably was prepared in anticipation of potential

22  litigation—the filing of a lawsuit by Ms. Janovick against NTG.  Indeed, every page

23  of the draft complaint contains a prominent watermark stating:  "Draft—Attorney

24  Work Product."  Accordingly, NIC may not rely on the draft complaint as a basis for

25  seeking a TRO.

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 5 -

## III.   PLAINTIFF'S COUNSEL BREACHED THEIR LEGAL AND ETHICAL DUTIES AFTER IMPROPERLY RECEIVING PRIVILEGED DOCUMENTS

Counsel's duties upon receiving privileged materials are clear:

> When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged.

State Comp. Ins. Fund, supra, 70 Cal.App.4th at 656 (adopted by Rico, supra, 42 Cal.4th at 817).  Further, the recipient of a privileged communication may not examine in it an effort to take advantage of the privileged information against its litigation adversary.  "Once [it is apparent] that the writing contains an attorney's impressions, conclusions, opinions, legal research or theories, ***the reading stops and the contents of the document for all practical purposes are off limits.***"  Rico, supra, 42 Cal.4th at 820.

The same rules apply to unsolicited email communications received by opposing counsel.  In The State Bar of California Standing Committee on Professional Responsibility and Conduct Formal Opinion No. 2013-188 (filed herewith as Exh. "G"), the California State Bar considered an attorney's ethical duties upon receipt of an unsolicited email that attached "a confidential communication between Company and your opposing counsel."  The State Bar concluded:

> If an attorney receives an unsolicited intentionally transmitted written communication between opposing counsel and opposing counsel's client under circumstances reasonably suggesting that it is a confidential communication apparently sent without the consent of its owner, the attorney may not ethically read the communication, even if she suspects the crime-fraud exception might vitiate the privilege. The attorney must

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   notify opposing counsel as soon as possible that the
2   attorney has possession of the communication. The two
    attorneys should try to resolve the privilege issue or, if that
3   fails, obtain the assistance of a court. ***Attorney may not
    read, disseminate, or otherwise use the communication***
4   ***or its contents absent court approval or consent of its***
    ***owner.***

5   Cal. State Bar Opinion No. 2013-188, at 1 (emphasis added).

6       NIC knew, or should have known, that the draft complaint was privileged.

7   Even a cursory examination would have revealed that its author intended the draft to

8   be confidential, given the watermark on every page of the draft complaint stating

9   "Draft—Attorney Work Product."  Given the admittedly suspicious circumstances

10  of NIC's receipt of the draft complaint—NIC has admitted that the "email address

11  for 'Richard Martin' is not registered with the PACER system or linked with any

12  individual with the California profession" and is not "registered with the State Bar"

13  (*see* Mot. at 1)—and its realization that the draft complaint was almost certainly

14  drafted by NTG, NIC should then have immediately advised NTG of its receipt of

15  the privileged communication.  NIC should not have further read the draft complaint

16  or made any other effort to take advantage of its contents.

17      NIC's counsel did the exact opposite.  NIC's counsel closely examined the

18  content of the complaint and then filed this *ex parte* application, seeking to take

19  advantage of the draft complaint in the instant litigation.  NIC's counsel's ethical

20  violations raise serious questions about whether they should be sanctioned and/or

21  disqualified for taking improper advantage of the privileged communication.

22  "Improper handling of an opposing party's confidential document(s) may result in

23  serious adverse consequences to that lawyer and his or her client, such as

24  disqualification of the lawyer and/or co-counsel, as well as the assessment of

25  monetary or evidentiary sanctions."  Cal. State Bar Opinion No. 2013-188, at 3.

26  Disqualification of counsel is an appropriate remedy when an attorney improperly

27  relies upon, further discloses, and attempts to take advantage of information counsel

28  knows was protected by the attorney-client privilege and work-product doctrine.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  <u>Rico</u>, 42 Cal.4th at 820.  Sanctions are also appropriate.  <u>See Bak v. MCL Fin.</u>

2  <u>Group, Inc.</u>, 170 Cal.App.4th 1118, 1126-27 (affirming arbitrator's sanctions award

3  based upon counsel's refusal to return privileged documents).  Accordingly, in

4  addition to denying this motion, NTG further requests that the Court enter an OSC

5  Re: Sanctions/Disqualification as to why NIC's counsel should not be sanctioned or

6  disqualified for their unethical mishandling of improperly obtained privileged

7  information.

8  **IV.    <u>THERE IS NO EVIDENCE THE EMAIL CAME FROM</u>**

9  **<u>DEFENDANTS; AN INDEPENDENT INVESTIGATION IN</u>**

10  **<u>NECESSARY</u>**

11         NIC's application assumes, without any supporting facts or evidence

12  whatsoever, that Scott Ferrell or someone acting on his behalf is "Richard Martin."

13  That is another false assertion by NIC and its counsel, who regularly disregard the

14  truth when it does not fit their false narrative.  ***Scott Ferrell did not sent the***

15  ***"Richard Martin" e-mail.***  <u>See</u> S. Ferrell Decl. at ¶ 8.  ***Scott Ferrell did not***

16  ***authorize or instruct anyone to send the "Richard Martin" e-mail.***  <u>See id.</u>  There

17  is no evidence, and nothing in the email itself suggests that Mr. Ferrell authorized

18  the disclosure of privileged information to NIC's counsel.  He did not.  <u>See id.</u> at ¶

19  9. Thus, to seek injunctive relief based on the unsupported assumption the email

20  came from the NTG Defendants is improper and reckless.

21         The email suggests that the "anonymous" sender may have hacked into Mr.

22  Ferrell's emails or NTG system, which is a serious criminal offense.  Such cyber-

23  espionage appears to be the calling card of Clark Baker, NIC's agent and

24  investigator.  Mr. Baker lives and works in California, where NIC claims the

25  "anonymous" email originated.  In addition, Mr. Baker has been accused of similar

26  misconduct on many other occasions.

27         For example, in the matter of <u>James Murtaugh v. Clark Baker</u>, Superior Court

28  of California, County of Los Angeles, Case No. BC527716, Mr. Baker was sued for

multiple acts of cyber-bullying and espionage, including (i) hacking into and defacing a third-party website (Compl. at ¶¶ 24-27); (ii) email spoofing, which is sending an email with misleading or false sender information to disguise or trick the recipient into believing the sender was someone other than the actual sender (Id. at ¶¶ 30-34); pinging cell phones, which unlawfully allows a person to determine the location of a person using their cell phone (Id. at ¶¶ 35-38); and hacking into email and iCloud accounts (Id. at ¶¶ 39-40). A true and correct copy of the Third Amended Complaint is filed herewith as Exhibit "A."

The Murtaugh action is currently pending in Bankruptcy Court for the Central District, Murtaugh v. Baker, United States Bankruptcy Court, Central District of California, 15-AP-01535 BB. A true and correct copy of the adversary complaint is attached is filed herewith as Exhibit "B." In that matter, Baker is further accused of "sending emails to Dr. Murtaugh anonymously – through multiple accounts at 'Hush.com' and Czech server, both of which facilitate the sending of anonymous email which cannot be traced." (Id. at ¶ 66) Baker is also accused of sending emails with "tracers" which inform the sender of information such as when the email is opened and to whom it was forwarded. (Id. at ¶ 67) Baker is even accused of sending a "tracer" to one of Murtaugh's attorneys. (Id. at ¶ 68) The adversary complaint also contains allegations relating to computer hacking (Id. at ¶¶ 82-84); website hacking (Id. at ¶¶ 85-88); pinging (Id. at ¶¶ 90-92); and spoofing (Id. at ¶¶ 93-108).

More recently, Murtaugh's attorney, John Wallace, filed a motion for relief from the automatic stay to assert claims against Baker for hacking into Mr. Wallace's iPhone. A true and correct copy of Mr. Wallace's motion is attached is filed herewith as Exhibit "C."

Even in our case, Mr. Baker and his cohort John McNair, demonstrated the ability and inclination to create and use phony email accounts. For example, when they attempted to coerce a false declaration from Andrew Nilon, both Mr. McNair

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  and Mr. Baker used a phony email account.  Baker used the alias "A.J. Lyon" and

2  both McNair and Baker used the same phony "hush.com" account.  A true and

3  correct copy of an example of Mr. McNair's phony hush.com email to Mr. Nilon is

4  filed herewith as Exhibit "D."  An example of Mr. Baker's phony email to Nilon is

5  filed herewith as Exhibit "E."  Mr. Nilon previously authenticated these emails in

6  other filings and Mr. Baker admitted in his prior declaration (filed herewith as

7  Exhibit "F") that he created the phony email to conceal his identity.  (See ¶ 13)

8  Conversely, there is no evidence that anyone from NTG has ever used a phony

9  email account to send "anonymous" emails.

10      This is a serious matter that needs to be properly investigation.  The NTG

11  Defendants request that the Court appoint an independent forensic expert to

12  investigate the source of the Richard Miller email.  While NIC contends it is doing

13  its own "investigation," that investigation is inherently biased and unreliable.  NIC

14  also already reached the incorrect conclusion that Scott Ferrell sent the email, and

15  are now working backwards to fabricate a case against him.  NIC cannot be

16  expected to objectively and reasonably investigate whether it or its own agent

17  committed a crime.  If anything, NIC may attempt to cover-up Baker's wrongdoing.

18  Furthermore, the NTG Defendants do not have equal access to the information

19  needed to conduct their own investigation.  NIC's counsel refused to turn over an

20  electronic copy of the email, which means we will have to subpoena NIC's counsel.

21  (Declaration of Michael S. LeBoff at ¶ 7)  It may be several weeks before the NTG

22  Defendants have access to the email, and the trail could be cold by that time.  Thus,

23  the NTG Defendants believe that an immediate independent investigation is the only

24  way to get to the truth of the matter.

25  **V.    PLAINTIFF HAS NOT ESTABLISHED SUFFICIENT EMERGENCY**

26  **FOR THE ISSUANCE OF A TRO**

27      NIC has failed to show that it will suffer "immediate and irreparable injury,

28  loss, or damage" in the absence of a TRO.  Fed. R. Civ. P. 65(b)(1)(A); see also

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 10 -

1   <u>Meggitt (San Juan Capistrano), Inc. v. Nie Yongzhong</u>, 2013 U.S. Dist. LEXIS
2   19503, * 4 (C.D. Cal. Feb. 13, 2013) ("The standard for issuing a temporary
3   restraining order without notice to the adverse party is very stringent.").  "An
4   application for a temporary restraining order involves the invocation of a drastic
5   remedy which a court of equity ordinarily does not grant, unless a very strong
6   showing is made of a necessity and desirability of such action." <u>Layton v. Ocwen</u>
7   <u>Loan Servicing, LLC</u>, 2015 U.S. Dist. LEXIS 97097, * 19 (C.D. Cal. July 23, 2015)
8   (quoting <u>Youngstown Sheet & Tube Co. v. Sawyer</u>, 103 F. Supp. 978, 980 (D.D.C.
9   1952)).  To be entitled to a TRO, a party must present more than mere speculation
10  that it will suffer an injury that cannot be compensated by an award of money
11  damages.  See <u>Goldie's Bookstore, Inc. v. Superior Court of State of Cal.</u>, 739 F.2d
12  466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable
13  injury.").  Further, where, as here, a party seeks to obtain a TRO that amounts to a
14  prior restraint on free speech (as explained below), "the hurdle is substantially
15  higher: publication must threaten an interest more fundamental than the First
16  Amendment itself."  <u>P&G v. Bankers Trust Co.</u>, 78 F.3d 219, 227 (1996).

17       NIC's speculation that it or its counsel will suffer reputational injury absent a
18  TRO does not come close to meeting these standards—let alone the entry of a prior
19  restraint in violation of the First Amendment.  The requested TRO is based on a
20  "threat of a suit against NIC."  The draft complaint was just that—a draft—that is
21  presently not intended to be filed in the form attached to the application for a TRO.
22  <u>See</u> S. Ferrell Decl. at ¶ 3.  The draft complaint was prepared based upon Mr.
23  Ferrell's investigations into NIC's baseless claims against Isabella Janovick in this
24  case.   Regardless, Mr. Ferrell does not have any present intention of filing the
25  complaint in its current form and is unsure if he will *ever* file a claim on behalf of
26  Ms. Janovick.  In these circumstances, NIC has not come close to showing that it is
27  entitled to the "drastic remedy" of a TRO, and its application should be denied.
28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## VI. NIC IS NOT ENTITLED TO THE RELIEF SOUGHT IN ITS APPLICATION

### A. The Court Cannot Issue a Prior Restraint in Violation of the First Amendment to the United States Constitution

The United States Supreme Court has regarded prior restraints as "the most serious and least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976). The U.S. Supreme Court allows the imposition of prior restraint in extreme circumstances such as obscenity[3] or when national security is threatened.[4] "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." New York Times Co. v. United States, 403 U.S. 713, 714 (1971). The government censor "carries the heavy burden of showing justification for the imposition of such a restraint." New York Times Co., 403 U.S. at 714 (quoting Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971)). This burden amounts to an almost "blanket prohibition" against prior restraints. Nebraska Press Ass'n, 427 U.S. at 594 (Brennan, J., concurring).

In this application, NIC is seeking a broad injunction preventing the NTG Defendants from making any statements in connection with a potential lawsuit that NIC considers defamatory. This is a classic example of a prior restraint. "Injunctions against any speech, even libel, constitute prior restraints: they prevent speech before it occurs, by requiring court permission before that speech can be repeated. Oakley, Inc. v. McWilliams, 879 F. Supp. 2d 1087, 1089-90 (C.D. Cal. 2012) (citations and quotations omitted); see also CBS v. Davis, 510 U.S. 1315, 1318 (U.S. 1994)("Subsequent civil or criminal proceedings, rather than prior

---

[3] See Miller v. California, 413 U.S. 15 (1973).

[4] See New York Times Co. v. United States, 403 U.S. 713, 714 (1971) (Pentagon Papers case).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  restraints, ordinarily are the appropriate sanction for calculated defamation or other

2  misdeeds in the First Amendment context.").

3      NIC is also seeking to deny Ms. Janovick and Defendants access to the courts

4  and the right to consult with legal counsel.  NIC's conduct constitutes interference

5  with Ms. Janovick's and Defendants' freedom of association as protected by the

6  First Amendment, right to free speech and Ms. Janovick's and Defendants' petition

7  for a redress of grievances about the conduct of NIC and its agents including its

8  attorneys, and right of access to the state court.  NIC seeks to chill protected

9  expression in a transparent attempt to disrupt Ms. Janovick's access to counsel by

10  seeking to intimidate any and all prospective attorneys of Ms. Janovick that they

11  will immediately face a retaliatory proceeding brought against them.  As such, this

12  Court should not issue any prior restraints on any Defendants' or on Ms. Janovick's

13  first amendment rights.

14  **B.**   **The Court Cannot Prevent Mr. Ferrell and His Clients From**

15      **Seeking Legal Representation and Advice**

16      In its Application, NIC is effectively seeking an order that prevents Mr.

17  Ferrell, any NTG Defendant, or any of their clients from seeking legal advice and

18  assistance in relation to the potential Janovick lawsuit.  It is a ridiculous notion to

19  suggest the Court should prevent a party from consulting with lawyers.  The right to

20  counsel is *the* fundamental tenet of the American legal system.

21      Nor should the Court enjoin a non-party from filing a state court lawsuit

22  seeking to vindicate important legal rights.  As a matter of comity, "[a]ny doubts as

23  to the propriety of a federal injunction against state court proceedings should be

24  resolved in favor of permitting the state courts to proceed in an orderly fashion to

25  finally determine the controversy."  Atlantic C. L. R. Co. v. Brotherhood of

26  Locomotive Engineers, 398 U.S. 281, 297 (1970).  Importantly, the draft complaint

27  was on behalf of Ms. Janovick who is no longer a party to this case.  The Court

28  dismissed the case against Ms. Janovick with leave to amend.  When NIC declined

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 13 -

1   to amend the complaint against Ms. Janovick, the claims against her terminated.  As

2   noted in Mr. Ferrell's Declaration, there is presently no intention to file the

3   complaint in its current form; however, if and when the parties elect to pursue those

4   claims, the merits of the case should be addressed by the court with jurisdiction over

5   that case.

C.    **The Court Cannot Refer this Matter to the State Bar Absent Any**

**Evidence of an Ethical Violation by Mr. Ferrell**

8       NIC asks this Court to refer the matter to the State Bar, but it has not

9   presented any evidence that any NTG Defendant committed any ethical violation.

10  They did not.  NIC cites California Rule of Professional Conduct 5-100 which

11  prohibits a licensed attorney from threatening to "present criminal, administrative,

12  or disciplinary charges to obtain an advantage in a civil dispute." Rule 5-100 has no

13  application here, as neither Mr. Ferrell nor any of the other NTG Defendants nor

14  anyone acting on their behalf has ever threatened anyone.  The NTG Defendants

15  have had no direct contact with NIC's counsel since this case was filed.  Even the

16  "Richard Miller" email does not contain any threats.

17      Likewise, Rule 5-200, which provides that counsel advance claims before any

18  tribunal "only as consistent with the truth," has no application here.  First, NIC is

19  objecting to a preliminary draft of a complaint that has never been filed.  The NTG

20  Defendants have not "advanced any claims" relative to the draft complaint and have

21  not presented the draft complaint to any "tribunal."  Furthermore, Ms. Janovick

22  should have an opportunity to prove the truth of whatever allegations she eventually

23  asserts, if any.  NIC's desire to litigate the merits of the draft complaint on an

24  application for a temporary restraining order is not appropriate, as there is no action

25  pending or imminently threatened.

26      Indeed, the only ethical violation that has been proven beyond dispute is

27  NIC's counsel ethical violations when it improperly and unlawfully received a

28  clearly privileged document and when it recklessly and in clear disregard of the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 14 -

1    truth accused Mr. Ferrell of unethical conduct. We will leave it to the Court's

2    discretion whether to refer NIC's counsel to the State Bar.  In any event, there is no

3    evidence of any ethical violation by any NTG Defendant.

4         **D.    NIC Is Not Entitled to Leave to Amend Its Complaint**

5         NIC further seeks leave to amend its complaint to add allegations relating to

6    the draft complaint that its counsel improperly obtained and utilized.  The request

7    fails for several reasons.  First, there is no non-frivolous argument that a draft

8    complaint that was never filed and only shown to counsel constitutes a RICO

9    allegation, and the draft does not remotely fit into the purported pattern alleged in

10   the actual complaint.

11        Second, as noted above, the draft complaint itself is privileged.  NIC cannot

12   base a RICO claim on an improperly obtained privileged document.  The fact that

13   NIC's counsel would attempt to exploit a privileged document it received under

14   very suspicious circumstances and then threaten to take discovery on allegations that

15   have never been made emphasize why disqualification may be the only appropriate

16   remedy for NIC's counsels' ethical lapse.

17        Third, it is procedurally improper to seek leave to amend a complaint through

18   a temporary restraining order or permanent injunction.  If NIC wishes to amend its

19   complaint, it should file a noticed motion to amend that includes a proposed

20   amended complaint identifying the amended or additional allegations.  <u>See</u> Local

21   Rule 15-1.

22        Fourth, the threat to file an amended complaint is a transparent attempt to

23   intimidate the NTG Defendants and to scare Ms. Janovick from potentially pursuing

24   her legal rights against NIC for filing a frivolous lawsuit against her.  The only party

25   engaging in witness tampering, extortion, obstruction of justice and wire fraud is

26   NIC.

27        Accordingly, NIC's request to amend the complaint for a fourth time should

28   be denied.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

E.    **NIC's Request Relating to a "Collateral Challenge" to This Court's Authority if Vague and Unintelligible**

NIC also asks the Court for a temporary restraining order and preliminary injunction preventing the Defendants from using the "Richard Martin" email and its attachment as a "collateral challenge" to this Court's authority. This request does not make any sense. The NTG Defendants do not understand exactly what conduct NIC is seeking to enjoin; and therefore, the request is too vague and ambiguous to permit a TRO or injunction. See Del Webb Cmtys., Inc. v. Partington, 652 F.3d 1145, 1149-1150 (9th Cir. 2011) ("Rule 65(d) requires an injunction to 'state its terms specifically' and 'describe in reasonable detail . . . the act or acts restrained.'").

VII.   **THE COURT SHOULD ISSUE ORDERS PRESERVING THE PRIVILEGE UNTIL THE SOURCE OF THE RICHARD MARTIN EMAIL CAN BE DETERMINED**

As noted above, the draft complaint is quintessential work product that never should have been disclosed to NIC's counsel. Until the independent investigation reveals the source of the "Richard Martin" email, the Court should require NIC to take all necessary steps to preserve the privilege, including requiring NIC's counsel to sequester the privileged document, preventing NIC's counsel from further disseminating the privileged document, and preventing NIC's counsel from citing, referring or disclosing the contents of the privileged document in any way whatsoever.

VIII.  **CONCLUSION**

For the reasons set forth above, the NTG Defendants request the following:

1.    That the Application for a Temporary Restraining Order and Preliminary Injunction be denied with prejudice;

2.    That the Court set an immediate in-person hearing to address the issues raised in this opposition;

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 16 -

3.     That the Court set an OSC Re: Sanctions/Disqualification as to why Plaintiff's counsel should not be sanctioned or disqualified for their unethical mishandling of improperly obtained privileged

4.     That, in order to preserve the privilege relating to this document, NIC and its counsel be ordered not to disseminate the privileged document to anyone and that NIC and its counsel refrain from reviewing, restating, citing or in any way relying on the privileged document; and

5.     That the Court appoint an independent forensic expert to investigate the source of the email at issue in this motion, and to preserve the integrity of the independent investigation, that the Court order NIC's counsel cease any investigations concerning the source of the disputed email and that NIC's preserve in full the email it received from a purported "anonymous source."


Dated:  May 13, 2016                    **CALLAHAN & BLAINE, APLC**


By:   */s/ Michael S. LeBoff*
_____
Michael S. LeBoff
Attorneys for NEWPORT TRIAL
GROUP; SCOTT J. FERRELL; RYAN
M. FERRELL; VICTORIA C.
KNOWLES; DAVID REID and
ANDREW LEE BASLOW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 17 -

## DECLARATION OF SCOTT FERRELL

I, SCOTT FERRELL, declare:

1.      I am a defendant in this lawsuit.  I am an attorney licensed to practice law in the State of California and before the Central District of California.  I am also the founding partner of Newport Trial Group.  The following facts are based upon my personal knowledge and if called as a witness, I would and could competently testify as follows.

2.      After the Court dismissed Ms. Janovick from this lawsuit and NIC elected not to amend the allegations against her, on behalf of my client, I examined Ms. Janovick's legal options against NIC and its attorneys for improperly suing her. With the assistance of another attorney in my office, I prepared the draft complaint ("Draft Complaint") that NIC's lawyers claim was attached to the "Richard Martin" email at issue on this application for a temporary restraining order.

3.      The Draft Complaint is just that – a draft.  I presently have no intention of filing the draft complaint in its current form.  I believe all of the facts alleged in the Draft Complaint are true and that all of the legal theories asserted in the Draft Complaint are meritorious.  The Draft Complaint was carefully-researched and, as a work-in-progress, had been revised numerous times throughout the drafting process. Moreover, certain allegations are still being investigated, and to the extent further investigation reveals certain allegations are false or unsupported by sufficient evidence, those allegations would be removed from any complaint that might eventually be filed in the future.

4.      The Draft Complaint reflects my mental impressions, legal strategy, opinions, and conclusions.  That is why I marked every page of the Draft Complaint as "DRAFT – Attorney Work Product."  It is highly confidential and very sensitive.

5.      The Draft Complaint was not prepared to bully or intimidate NIC, its counsel or any witnesses.  I never threatened NIC, its counsel or any witnesses in any way with regard to the Draft Complaint.  The Draft Complaint was prepared to

CALLAHAN & BLAINE
A PROFESSIONAL CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

explore the possibility of vindicating a client's legal rights after she was wrongfully sued in a lawsuit containing numerous fraudulent allegations.  The Draft Complaint reflects my impressions, strategy, opinions, conclusions and research relating to potential claims my client may have against NIC and others.

6.    I did not "shop around" the complaint as falsely claimed in the purportedly anonymous email.  Between May 10, 2016 and May 12, 2016, I shared the Draft Complaint (or prior versions of the same document) with some attorneys with whom I have a previous relationship.  In each communication, I advised counsel that I was contacting them about a confidential referral.  I shared the complaint with these other lawyers to inquire as to their interest in potentially representing my client as counsel of record in that case should it be filed.  As I would be a potential witness in that case should a complaint ever be filed, I would not want to be the trial attorney.  Therefore, in order to pursue these legal claims, it would be necessary to retain co-counsel; and therefore, met with a small number of attorneys to discuss the possibility of retaining those lawyers.  I also sought the legal advice of attorneys concerning the merits of the draft complaint, its potential for success, and strategies for pursuing such claims, if the claims are ever pursued.

7.    I intended for both the existence and the content of the Draft Complaint to remain absolutely confidential between myself, my client, and the lawyers I consulted.  I did not share the Draft Complaint with any non-lawyers nor did I discuss the draft Complaint with any non-lawyers.

8.    I did not send the "Richard Martin" email.  I did not authorize or instruct anyone to send the "Richard Martin" email.  I have no knowledge of who sent the "Richard Martin" email.

9.    The privileged Draft Complaint was sent to plaintiffs' counsel without my authorization.

10.    The Draft Complaint provided a "road map" of my thoughts and strategy about how to maximize the value of Ms. Janovick's potential claims against

CALLAHAN & BLAINE
A PROFESSIONAL CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  NIC and its counsel.  Not only is it privileged, it is highly sensitive, and it is

2  shocking to me that NIC's lawyers obtained it without my authorization or

3  permission.  It is also shocking to me that NIC's lawyers did not follow their ethical

4  obligations (commonly known as the "State Fund Protocol"), and instead presented

5  the Draft Complaint to this Court as the basis for seeking a Temporary Restraining

6  Order against me.

7        11.    To be clear, I did not publicize or distribute the Draft Complaint except

8  as described above.  I intended each transmission of the Draft Complaint and each

9  discussion about it to be private and privileged communication.

10        12.    The possession, analysis, and use of the Draft Complaint by NIC's

11  lawyers to obtain a litigation advantage in this case significantly injured my position

12  in this case as well as my relationship with Ms. Janovick.

13

14        I declare under penalty of perjury under the laws of the United States of

15  America that the foregoing is true and correct.  Executed this 13th day of May 2016.

16

17                              */s/ Scott Ferrell*

18                                Scott Ferrell

19

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## DECLARATION OF MICHAEL S. LEBOFF

I, MICHAEL LEBOFF, declare:

1.     I am an attorney licensed to practice in the State of California and in the Central District of California.  I am an attorney at Callahan & Blaine, attorneys of record for defendants Newport Trial Group, Scott Ferrell, Ryan Ferrell, Victoria Knowles, David Reid and Andrew Baslow in this action.  The following facts are based upon my personal knowledge and if called as a witness, I would and could competently testify as follows.

2.     Filed herewith as Exhibit "A" is a true and correct of the Third Amended Complaint in the matter of <u>James Murtaugh v. Clark Baker</u>, Superior Court of California, County of Los Angeles, Case No. BC527716, which my firm obtained from the Los Angeles County Superior Court.

3.     Filed herewith as Exhibit "B" is a true and correct of the Adversary Complaint in the matter of <u>Murtaugh v. Baker</u>, United States Bankruptcy Court, Central District of California, 15-AP-01535 BB, which my firm obtained from PACER.

4.     Filed herewith as Exhibit "C is a true and correct of a Notice and Motion for Relief from the Automatic Stay filed by, John Wallace of Rosen & Associates, Dr. Murtaugh's attorney, in the matter of <u>Murtaugh v. Baker</u>, United States Bankruptcy Court, Central District of California, 15-AP-01535 BB, which my firm obtained from PACER.

5.     Filed herewith as Exhibit "D is a true and correct copy of an email exchange between Andrew Nilon and John McNair, in which Mr. McNair used a phony email address, electricfamily@nym.hush.com, falsely purporting to be affiliated with Electric Family LLC.

6.     Filed herewith as Exhibit "E is a true and correct copy of an email exchange between Andrew Nilon and Clark Baker, in which Mr. Baker used the same phony email address, falsely claiming to be "A.J. Lyon" an apparently

CALLAHAN & BLAINE
A PROFESSIONAL CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    fictitious individual like "Richard Miller."  Filed herewith as Exhibit "F" is a true

2    and correct of the relevant portions of the declaration Mr. Baker submitted in

3    opposition to the NTG Defendants' anti-SLAPP Motion to Strike.  In Paragraph 13

4    of the Declaration, Mr. Baker admits to using the fake persona and phony email

5    address.

6          7.    At or about 6:00 p.m. on Thursday, May 12, 2016, I spoke via

7    telephone with NIC's counsel, Eric Awerbuch, who advised me that his firm

8    received a document from an "anonymous" source.  He generally described the

9    document and his description matches the document attached to the "Richard

10   Miller" email at issue in this Application.  However, although I requested a copy of

11   the email over the phone, Mr. Awerbuch told me he was not authorized to provide

12   me with the email and he would have to get authorization from someone "above his

13   pay grade."  As of the date of this declaration, I still have not been provided with the

14   native, electronic version of the "Richard Miller" email.

15          8.    Filed herewith as Exhibit "G" is a true and correct copy of The State

16   Bar of California, Standing Committee on Professional Responsibility and Conduct

17   Formal Opinion No. 2013-188.

18          I declare under penalty of perjury under the laws of the United States of

19   America that the foregoing is true and correct.  Executed this 13th day of May 2016

20   at Santa Ana, California.

21                                   _____/s/ Michael S. LeBoff_____

22                                         Michael LeBoff

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

**NATURAL IMMUNOGENICS CORP., V. NEWPORT TRIAL GROUP, ET AL.**

**U.S.D.C. CASE NO. 8:15-CV-02034-JVS-JCG**

I am employed in the County of Orange, state of California.  I am over the age of 18 years and am not a party to the within action; my business address is **3 Hutton Centre Drive, Ninth Floor, Santa Ana, California 92707**.

On May 13, 2016, I served the following document(s) described as **NTG DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION; DECLARATIONS OF SCOTT FERRELL AND MICHAEL LEBOFF; EXHIBITS**

☒     **BY ELECTRONIC MAIL:** I electronically filed such document with the Clerk of the Court  using the CM/ECF system, which sent electronic notification of such filing  to all other parties appearing on the docket sheet as listed below:

Peter A. Arhangelsky; Eric J. Awerbuch; and Joshua S. Furman:
parhangelsky@emord.com
eawerbuch@emord.com
jfurman@emord.com

Leah M Kaufman: leah@leahmkaufman.com

Gillian L. Wade; Marc Castaneda;  Mayo L. Makarczyk; and Sara D. Avila:
gwade@majfw.com
mcastaneda@milsteinadelman.com
savila@majfw.com
mmakarczyk@milsteindelman.com

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on May 13, 2016, at Santa Ana, California.

_/s/ Maria Martinez_
Maria Martinez

CALLAHAN & BLAINE
A PROFESSIONAL CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM