# EXHIBIT B

```
1  [INSERT LAW FIRM NAME]
   [INSERT ATTORNEY NAME, Bar No. _____
2  _____@___.com
   [INSERT ADDRESS]
3  Tel: () -
   Fax: () -
4
   Attorneys for Plaintiff ISABELLA JANOVICK
5
```

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ISABELLA JANOVICK, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NATURAL IMMUNOGENICS CORP., a Florida corporation; EMORD & ASSOCIATES, P.C., a District of Columbia corporation; JONATHAN W. EMORD; PETER A. ARHANGELSKY; ERIC J. AWERBUCH; JOSHUA S. FURMAN; CLARK BAKER and DOES 1-25, Inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**(1) Malicious Prosecution;**<br>**(2) Violation of RICO (18 U.S.C. §§ 1962(c), 1964(c)) by:**<br>  **a. Wire Fraud (18 U.S.C. § 1343);**<br>  **b. Extortion (18 U.S.C. § 1951);**<br>  **c. Obstruction of Justice (18 U.S.C. § 1503);**<br>  **d. Bribery (18 U.S.C. § 201); and**<br>  **e. Witness Tampering (18 U.S.C. § 1512); and**<br>**(3) Violation of RICO (18 U.S.C. §§ 1962(d), 1964(c))**<br><br>**JURY TRIAL DEMANDED** |

DRAFT - Attorney Work Product

Plaintiff Isabella Janovick ("Plaintiff" or "Ms. Janovick") alleges:

## INTRODUCTION

This lawsuit arises out of the failed attempt of three Defendants -- an "Unholy Trinity" of ruthless criminals – to extort over $50 million from a law-abiding homemaker.

Until December of 2015, Plaintiff Isabella Janovick had absolutely no interaction with any of the Defendants – she had never even heard of any of them, much less ever encountered or interacted with them. All of that changed in December 2015, when the Defendants tried to ruin her life: they threatened to accuse her of various crimes, criminal prosecution, and liability of over $50 million – unless she provided them with false testimony designed to assist in "shaking down" a competing law firm. When Ms. Janovick refused, Defendants sued her for $50 million – a malicious, outrageous lawsuit that was promptly dismissed by a Federal Judge.

## THE PARTIES

1.  Plaintiff is a resident of the state of California.

2.  Defendant Natural Immunogenics Corp. ("NIC") f/k/a Natural-Immunogenics Corp. is a Florida corporation whose principal place of business is the state of Florida. It sells a variety of dangerous, discredited "snake oil" remedies and employs at least one convicted felon, Seth Quinto.

3.  Defendant Emord & Associates, P.C. ("Emord & Associates") is a District of Columbia corporation whose principal place of business is the state of Virginia.

4.  Defendant Jonathan W. Emord ("Emord") is a resident of the state of Virginia.

5.  Defendant Peter A. Arhangelsky ("Arhangelsky") is a resident of the state of Arizona and an employee of Emord. Arhangelsky has attempted, without success, to develop a commercial litigation practice defending dietary supplement companies. He has solicited work, unsuccessfully, from a variety of companies represented by a competing law firm, Newport Trial Group. Arhangelsky has also been accused of serious sexual misconduct that he did not report to the State Bar of California when applying to practice.

6.  Defendant Eric J. Awerbuch ("Awerbuch") is a resident of the state of Arizona. In 2011, Awerbuch plagiarized large swaths of an article to which he contributed entitled *"Beyond the standard of care: A new model to judge medical negligence."*

1  7. Defendant Joshua S. Furman ("Furman") is a resident of the state of Arizona. Furman represents a company named Lunada Biomedical, which previously filed a frivolous lawsuit against Newport Trial Group and was ordered to pay over $150,000.00 in attorneys' fees as a result.

8. Defendant Clark Baker ("Baker") is a convicted felon who is currently in bankruptcy after being adjudged a malicious litigant.

9. Defendants NIC, Emord & Associates, Baker, Arhangelsky, Awerbuch, Furman and Does 1-25 are collectively referred to hereinafter as "Defendants".

10. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 to 25, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible as hereinafter shown for the occurrences and injuries alleged in this complaint.

11. Defendants NIC, Emord & Associates, Emord, Arhangelsky, Awerbuch, Furman, and Does 1-25 are collectively referred to hereinafter as "Defendants".

12. At all times mentioned herein, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership, and common enterprise, and acted within the course and scope of, and in pursuance of, said joint venture, partnership, and common enterprise.

13. At all times mentioned herein, the acts and omissions of Defendants, and each of them, contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as alleged herein.

14. At all times mentioned herein, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times mentioned herein, Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages as alleged herein.

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over all causes of action asserted herein.

16. Venue is proper in the County of Los Angeles because none of the defendants reside in the state of California pursuant to section 395(a) of the Code of Civil Procedure.

17. Defendants and other out-of-state participants can be brought before this Court pursuant to California's "long-arm" jurisdictional statute.

18. On December 7, 2015, Defendants Emord & Associates, Emord, Arhangelsky, Awerbuch, and Furman caused Defendant NIC to initiate a civil action against Ms. Janovick in the United States District Court for the Central District of California in Orange County, California. The complaint claimed that the amount in controversy, which included damages, was "over $50 million" for multiple violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a), (c), (d), 1964(c). The action was entitled *Natural Immunogenics Corp. v. Newport Trial Group, et al.*, No. 8:15-cv-02034 (C.D. Cal. filed Dec. 7, 2015) (the "*NIC* Action").

19. On December 11, 2015, Ms. Janovick, by and through her counsel of record in the *NIC* Action, Gillian L. Wade, sent Defendant Arhangelsky via email and overnight delivery a two-page, single-spaced detailed meet and confer letter identifying precisely why the various RICO causes of action were groundless against Ms. Janovick and warranted sanctions against Defendants NIC, Arhangelsky, and Emord & Associates under Rule 11 of the Federal Rules of Civil Procedure.

20. On December 15, 2015, Defendant Arhangelsky sent a letter via email to Ms. Wade acknowledging receipt of Ms. Wade's letter of December 11, 2015.

21. On January 7, 2016, Ms. Wade sent a four-page, single-spaced letter to Defendant Arhangelsky via email and U.S. mail expressing Ms. Janovick's intention to move to dismiss the various RICO claims pled against Ms. Janovick. Ms. Wade's letter identified precisely why the various RICO causes of action were groundless against Ms. Janovick including the RICO cause of action for violation of 18 U.S.C. § 1962(a), which was pled at that time as the third cause of action in the original complaint in the *NIC* Action.

22. [insert Defendant Arhangelsky's response to Wade's letter, if any, acknowledging receipt of such letter]

23. On January 28, 2016, Defendants Emord & Associates, Emord, Arhangelsky, Awerbuch, and Furman caused Defendant NIC to file a first amended complaint against Ms. Janovick in the *NIC* Action, which omitted the RICO cause of action for violation of 18 U.S.C. § 1962(a), *i.e.*, the third cause of action in the original complaint in the *NIC* Action. That first amended complaint

- 4 -
COMPLAINT

1  continued, however, to plead RICO violations against Ms. Janovick, as before, under 18 U.S.C. §§
2  1962(c), (d), 1964(c).

3  24. On February 10, 2016, Defendant Arhangelsky and Ms. Wade further met and
4  conferred as to Ms. Janovick's intention to file a motion to dismiss the RICO claims in the first
5  amended complaint. [insert whether this was via letter or a phone call] Such meet and confer efforts
6  were unsuccessful.

7  25. On February 22, 2016, Ms. Janovick filed her motion to dismiss the first amended
8  complaint in the *NIC* Action seeking the dismissal of the RICO claims against her. On March 14,
9  2016, Defendant NIC filed an Opposition to Ms. Janovick's motion to dismiss. Ms. Janovick filed her
10 reply on March 21, 2016.

11 26. On April 19, 2016, the federal district court in the *NIC* Action granted Ms. Janovick's
12 motion to dismiss all pending RICO claims against Ms. Janovick in a lengthy order, but granted
13 Defendant NIC leave to amend to file a second amended complaint, as per Defendant NIC's request.
14 Such second amended complaint was required to be filed by no later than May 10, 2016.

15 27. On May __, 2016, Defendant NIC filed a second amended complaint against certain
16 defendants in the *NIC* Action, but did not include any claims against Ms. Janovick.

17 28. Defendants acted without probable cause in bringing the above-mentioned *NIC* Action
18 against Ms. Janovick alleging various RICO causes of action. Defendant NIC did not honestly and
19 reasonably believe that there were grounds for the *NIC* Action against Ms. Janovick. Any reasonable
20 attorney would not have thought that any of the RICO claims against Ms. Janovick were legally
21 tenable.

22 29. At the time that the *NIC* Action was filed against Ms. Janovick, Ms. Janovick had never
23 purchased a product manufactured, distributed or sold by Defendant NIC, had never met an NIC
24 employee, had never threatened a claim against NIC, had never communicated with any NIC
25 employee, agent, or representative, and had never had anything to do with NIC.

26 30. At the time that the *NIC* Action was filed against Ms. Janovick, the Defendants either
27 knew or should have known that they could not satisfactorily plead the required element of "an
28 investment injury separate and distinct from the injury flowing from the predicate act, as required for a

1  RICO claim brought under § 1962(a)." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149
2  (9th Cir. 2008).

3        31. At the time that the *NIC* Action was filed against her, the Defendants either knew or
4  should have known that they could not satisfactorily plead the requisite predicate acts against Ms.
5  Janovick and/or other required elements in order to plead a viable RICO claim against Ms. Janovick.

6        32. Defendants acted without probable cause in continuing the above-mentioned *NIC*
7  Action against Ms. Janovick alleging various RICO causes of action after discovering the baseless
8  nature of the RICO claims against Ms. Janovick.

9        33. Defendants acted maliciously in bringing the above-mentioned *NIC* Action against Ms.
10 Janovick in that Defendants sought to pressure her to cooperate with them in Defendant NIC's dispute
11 with Newport Trial Group, APC ("NTG") – a dispute in which Ms. Janovick had absolutely no
12 involvement.

13       34. In fact, Clark Baker, a disreputable private investigator hired by Defendants,[1] freely
14 admitted this to Ms. Janovick – telling her that Defendant NIC would not sue her if she provided them
15 with (false) testimony against NTG, *i.e.*, the law firm that represented her in a totally unrelated civil
16 matter. When she refused to do so, Defendants proceeded to include her as a named party to various
17 RICO claims in the *NIC* Action in order to punish her for her lack of cooperation with their planned
18 case against NTG, its attorneys, and staff.

19       35. Defendants also acted maliciously in bringing the above-mentioned *NIC* Action against
20 Ms. Janovick in that it was filed against her in retaliation for the fact that Defendant NIC had to defend
21 against a prior civil action filed by a different client of NTG (*i.e.*, not Ms. Janovick) in a prior federal
22 district court action entitled *Nilon v. Natural-Immunogenics Corp.*, No. 3:12-CV-00930-LAB (BGS)
23 (S.D. Cal. Judgment entered on May 22, 2015).

---

[1] Mr. Baker, a committed AIDS denialist, created a niche practice of defending criminals charged with intentionally infecting their sexual partners with the HIV virus. Mr. Baker has a history of using defamation, scare tactics, and frivolous litigation to intimidate and bully his detractors. *See Baker v. Deshong*, 90 F. Supp. 3d 659, 661 (N.D. Tex. 2014).

36. As a proximate result of the Defendants bringing the above-mentioned action against Ms. Janovick, Ms. Janovick has been damaged in the sum of $_____ [or allege damages according to proof].

37. As a further proximate result of the action initiated by Defendants, Ms. Janovick incurred costs in the sum of $___ and the sum of $____ [or allege according to proof] as attorneys' fees in defending against the *NIC* Action.

38. Defendants' acts were willful, wanton, malicious, and oppressive in that Defendants were motivated by hatred of or ill will toward Ms. Janovick. For example, Defendants' agent, Clark Baker, freely admitted to Ms. Janovick that Defendant NIC would not sue her if she provided Defendants with (false) testimony against NTG. Thus, Defendants sought to punish Ms. Janovick for her lack of cooperation with their planned case against NTG, its attorneys, and staff. These acts therefore justify the awarding of punitive damages.

## FIRST CAUSE OF ACTION

## Malicious Prosecution

## (By Plaintiff Against Defendants)

39. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

40. The *NIC* Action alleging various RICO claims was commenced by or at the direction of the Defendants and was pursued to a legal termination in Plaintiff's favor.

41. The *NIC* Action against Plaintiff was brought without probable cause. In addition, Defendants lacked probable cause to continue the *NIC* Action after discovering the baseless nature of the RICO claims against Plaintiff.

42. Defendants initiated the *NIC* Action against Plaintiff with malice.

43. Plaintiff suffered an injury or damage as a result.

## SECOND CAUSE OF ACTION

### Violation of RICO (18 U.S.C. §§ 1962(c), 1964(c))

### (By Plaintiff Against Defendants)

44. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

45. Defendants have engaged in a pattern of racketeering activity comprised of the predicate acts of wire fraud (18 U.S.C. § 1343), extortion (18 U.S.C. § 1951), obstruction of justice (18 U.S.C. § 1503), bribery of a witness (18 U.S.C. § 201), and witness tampering (18 U.S.C. § 1512). The specifics of those predicate acts are as follows:

46. In late 2014 or early 2015, Defendants concocted a plan whereby Clark Baker, acting as the agent and representative of NIC and Emord & Associates, would offer to release NTG's existing or former clients from personal liability for potential, future litigation in exchange for their fraudulent/false testimony against NTG and its employees and/or agents, including sworn declarations under penalty of perjury, in future litigation against NTG and its employees and agents.

47. Defendants' plan was for Mr. Baker to repeatedly assure the individuals he would speak with that Defendants were only interested in pursuing litigation against NTG and/or its employees and were not targeting the specific individual with whom he was speaking with in order to lure such individual into a false sense of security despite the fact that, in reality, Defendants were open to suing such existing or former clients of NTG in hopes of gaining leverage against NTG vis-à-vis a future global settlement to be funded by NTG or its employees.

48. Defendants' intent was to have Mr. Baker use intimidation and threats of unfounded, baseless, frivolous, legal action based on an objectively unreasonable and defective RICO theory of liability against NTG's existing or former clients in order to coerce NTG's existing or former clients into cooperating with Defendants' unlawful scheme.

49. Mr. Baker carried out such unlawful scheme by communicating with multiple former and/or existing NTG clients via email or telephone calls, *i.e.*, interstate wires, under the alias of "AJ Lyon" or other names from approximately August 2015 through the fall of 2015. During this time, Mr. Baker pressured former or existing NTG clients to sign false declarations for use in future

Case 8:15-cv-02034-JVS-JCG   Document 103-7   Filed 05/17/16   Page 10 of 13   Page ID #:3479

litigation against NTG and/or its employees and agents in exchange for the witnesses' releases from personal liability in connection with such future litigation.

50. During Mr. Baker's telephone calls and/or emails with NTG's former or existing clients, Mr. Baker intentionally sought to deceive such individuals by repeatedly assuring them that Defendants were interested in pursuing litigation against NTG and/or its employees only and were not targeting the specific individual with whom he was speaking with in order to lure such individuals into a false sense of security. In reality, Defendants were open to suing such existing or former clients of NTG in hopes of gaining leverage against NTG vis-à-vis a future settlement to be funded by NTG or its employees.

51. During Mr. Baker's telephone calls with NTG's former or existing clients, Mr. Baker intentionally sought to deceive such individuals by referencing his status as a private investigator licensed by the California Bureau of Security and Investigative Services in a confusing manner in hopes that the individuals that he called would mistakenly believe that he was, in fact, an investigator working under color of law of the State of California in order to add further pressure on the individuals that he called to cooperate with Defendants' scheme to obtain declarations from NTG's former or existing clients under false pretenses.

52. At all relevant times, Mr. Baker was acting within the scope of his authority as Defendants' agent and representatives who financed and paid for Mr. Baker's services related to Defendants' unlawful scheme.

53. As a result of Defendants' unlawful scheme, multiple former or existing clients spoke with Mr. Baker about their roles as clients of NTG in reliance upon Mr. Baker's assurances that Defendants were not targeting the specific individual with whom he was speaking with, which they would not have otherwise done so had Mr. Baker disclosed upfront Defendants' unlawful scheme to obtain declarations and false testimony from NTG's former or existing clients under false pretenses, and the fact that Mr. Baker's assurances that Defendants were only targeting NTG and its employees were fraudulent.

54. Despite the fact that Mr. Baker's communications with NTG's former or existing clients did not result in a single signed declaration, Defendants still benefited from their unlawful

scheme by obtaining written communications with multiple former or existing NTG clients that were then used as purported evidence and as the factual basis for their allegations in the complaints filed in the *NIC* Action. Defendants would not have obtained such written communications but for the predicate acts carrying out their unlawful scheme.

55. All Defendants in this action were part of an associated-in-fact enterprise consisting of NIC, Emord & Associates, Emord, Arhangelsky, Awerbuch, and Furman.

56. Defendants, and each of them, played a role in directing the affairs of the RICO enterprise. For example, Defendants closely monitored and/or guided the substantive content of Mr. Baker's communications with NTG's former or existing clients.

57. Defendants' activities affect interstate commerce.

58. Plaintiff has suffered a concrete financial injury via attorneys' fees and costs incurred as a proximate result of Defendants' predicate acts.

59. Plaintiff requests that the Court enter judgment against Defendants including actual damages, treble damages, punitive damages, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

## Violation of RICO (18 U.S.C. §§ 1962(d), 1964(c))

### (By Plaintiff Against Defendants)

60. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

61. Defendants have each conspired to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

62. Defendants each agreed to facilitate all or some of the predicate acts described in paragraphs 44 through 52 herein.

63. Defendants each intended to further, facilitate, or engage in some or all of the predicats acts described in paragraphs 44 through 52 herein. Those acts satisfy the elements of the substantive criminal offenses of wire fraud, extortion, obstruction of justice, witness tampering, and bribery and, taken together, constitute a violation of 18 U.S.C. § 1962(c).

64. As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in her property as set forth above.

65. Plaintiff request that the Court enter judgment against Defendants including actual damages, treble damages, punitive damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. For general damages according to proof;
2. For treble damages;
3. For punitive damages;
4. For reasonable attorneys' fees;
5. For costs of suit herein incurred; and
6. For such other and further relief as the Court may deem proper.

Dated: May 11, 2016                         [INSERT FIRM NAME]

By: _____
    [INSERT NAME]
    Attorney for Plaintiff
    ISABELLA JANOVICK

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

```
 1   Dated:  May 11, 2016                    [INSERT FIRM NAME]
 2
 3
 4                                           By: _____
 5                                               [INSERT NAME]
                                                 Attorney for Plaintiff
 6                                               ISABELLA JANOVICK
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

*DRAFT - Attorney Work Product*

- 12 -
COMPLAINT