Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch (pro hac vice)
eawerbuch@emord.com
EMORD & ASSOCIATES, P.C.
3210 S. Gilbert Road, Suite 4
Chandler, AZ 85286
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff Natural Immunogenics*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., <br><br> Plaintiff, <br><br> v. <br><br> NEWPORT TRIAL GROUP, et al., <br><br> Defendants. | Case No. 8:15-cv-02034-JVS (JCG) <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS UNDER FRCP 11, FRCP 56(h), LR 83-7, LR 11-9, AND THE COURT'S INHERENT POWERS** <br><br> Hearing Date: June 13, 2016 <br><br> Time: 1:30pm <br><br> Judge: Hon. James V. Selna |

///

///

///

///

///

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. ARGUMENT .................................................................................................... 5

    A.  While *Any* Involvement Is Sufficient to Confer Liability, *No* Involvement Is Insufficient ............................................................... 5

    B.  NIC's Motion Is Timely and Was Not Mooted ............................... 8

    C.  The Court May Apply Rule 56(h) ....................................................... 9

    D.  NIC's Requested Remedies Are Appropriate ................................ 10

III. CONCLUSION ............................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Advanced Multilevel Concepts, Inc. v. Stalt, Inc.*, 2012 WL 3249512 (N.D. Cal. Aug. 7, 2012) ................................................................. 10

*Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998) ..................................................... 8

*Beck v. Intravaia Rock & Sand Corp.*, 2006 WL 1660737 (Cal. Ct. App. June 16, 2006) ............................................................................... 6

*Blanton v. Womancare, Inc.*, 696 P.2d 645 (Cal. 1985) ..................................... 1

*California Sportfishing Prot. All. v. Matheson Tri-Gas, Inc.*, 2013 WL 5597177 (E.D. Cal. Oct. 11, 2013) ............................................... 10

*Emerald Bay Fin., Inc. v. Stojsavljevic*, 2008 WL 2601371 (Cal. Ct. App. July 2, 2008) .................................................................................... 6

*Hindin v. Wehner & Perlman,* 2012 WL 3709844 (Cal. Ct. App. Aug. 28, 2012) ....................................................................................... 6

*Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870 (9th Cir. 2014) ....................................................................................... 8

*Jacques Interiors v. Petrak*, 188 Cal. App. 3d 1363, 234 Cal. Rptr. 44 (Ct. App. 1987) ................................................................................. 6

*Lauter v. Anoufrieva*, 642 F.Supp.2d 1060 (C.D. Cal. 2009) ........................... 10

*Lujan v. Gordon*, 70 Cal. App. 3d 260, 138 Cal. Rptr. 654 (Ct. App. 1977) ................................................................................................. 6

*McCune v. Gold Country Foods, Inc.*, 2014 WL 2807645 (E.D. Cal. June 19, 2014) ................................................................................ 8

*Nat'l Ass'n of Bus. Representatives v. Teamsters Local Union 948*, 2008 WL 1970748 (E.D. Cal. May 2, 2008) ....................................... 8

*Sycamore Ridge Apartments, LLC v. Naumann*, 157 Cal. App. 4th 1385, 69 Cal. Rptr. 3d 561 (2007) ........................................................ 2

*Williams v. Hartford Ins. Co.*, 147 Cal. App. 3d 893, 195 Cal. Rptr.

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS

iii

448 (Ct. App. 1983) ........................................................................................... 6

**Rules**

Fed. R. Civ. P. 56 .......................................................................................... ii, 9

Fed. R. Civ. P. 11 ........................................................................................passim

Fed. R. Evid. 408 ................................................................................................ 7

I. **INTRODUCTION**

Plaintiff Natural Immunogenics Corp. ("NIC") hereby replies to Defendants' Opposition to Plaintiff's Motion for Sanctions Under FRCP 11, FRCP 56(h), LR 11-9, and the Court's Inherent Powers ("NTG Opp.") filed by Defendants Newport Trial Group, Scott Ferrell, Ryan Ferrell, Victoria Knowles, David Reid and Andrew Baslow ("NTG" or "Defendants"). *See* Dkt. 112.

Defendant Reid filed two directly conflicting declarations with the federal courts. Reid sought to avoid liability in this case by claiming he had "no involvement" in a prior NTG lawsuit, but in a sworn statement submitted in that prior suit, Reid stated that he was "fully versed" in the matter litigated and was the managing partner with full authority over the matter. Reid attended at least one "meet and confer" in the case, and was ostensibly part of (and at least aware of) similar discovery meetings at other times.[1] He engaged in settlement negotiations, and held himself out as a supervising attorney with full knowledge and authority to settle the case on his client's behalf. Under any reasonable interpretation, that activity is more than "no involvement." The fact that Reid had settlement authority[2] and attempted to negotiate a settlement does not constitute "no involvement." Submission of a sworn declaration in support of a motion does not constitute "no involvement." Attendance at a meet and confer does not constitute "no involvement." Those facts, which contradict Reid's latest affidavit in this

---

[1] In responding here to NTG's Opposition which relates statements by NIC's attorneys, NIC counsel should clarify that from March 2012 through February 2015, Natural Immunogenics was represented by the Law Offices of Carlos Negrete. NIC's present counsel substituted into the matter in February 2015.

[2] Reid also swears that he has never had direct contact with Andrew Nilon or Giovanni Sandoval. Dkt. 41 at 9 ¶ 3. Yet, he engaged in settlement negotiations. The ethical rules require that an attorney receive express authority from the client to settle a claim. *Blanton v. Womancare, Inc.*, 696 P.2d 645, 650-51 (Cal. 1985) ("[T]he law is well settled that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of his employment he has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation.").

case, were material and relevant to liability for malicious prosecution. *See Sycamore Ridge Apartments, LLC v. Naumann*, 157 Cal. App. 4th 1385, 1406, 69 Cal. Rptr. 3d 561, 579 (2007) (finding that liability can attach to an attorney who aids or abets in the prosecution of a malicious action and who knew or should have known that it lacked probable cause).

Reid's affidavit filed before this Court was a significant affirmative false statement made under oath. He filed that declaration in support of dispositive motions at a time when, had this Court accepted his statements as true, he could have evaded liability completely. He therefore prepared an affidavit that he knew to be false, and his attorneys relied on that statement in briefing. When confronted by NIC with the obvious inconsistency with his prior affidavit and a request that he withdraw the false affidavit before this Court, Reid refused to do so.

Materially false or misleading statements made to a court of law under oath by an attorney cannot be condoned without creating dangerous precedent. The attorney responsible who is allowed to get away with the filing of a false sworn statement has thereafter no incentive to correct his behavior and avoid false submissions in the future. Thus a failure to sanction for the misconduct is the same as an invitation for the filing of additional false submissions. To ensure the integrity of the judicial process, counsel may never lie to the Court and, if brazen enough to do so, particularly when they do so under oath, Rule 11 sanctions are an essential corrective.

Unable to dispute the false content of Mr. Reid's declaration, NTG instead asks the court to consider the falsity trivial. In addition, they follow a now dedicated pattern of casting aspersion upon the party responsible for bringing NTG's misconduct to the Court's attention.

The case law records repeated instances of NTG false submissions to the courts, including false affidavits. In *Morales v. Magna, Inc.*, the court was "troubled by [Scott Ferrell's] misleading of the [c]ourt" through submission of an

ostensibly misleading affidavit. *Morales*, No. 3:10-1601-EDL (N.D. Cal.), Dkt. 68 at 16. Another NTG attorney defendant, Victoria Knowles, filed a prior affidavit that apparently conflicted with the facts. *See* Dkt. 92-2 ¶ 3 (Knowles swears that "[n]either [Nilon] nor his counsel has received, or will receive, any direct or indirect consideration in connection with this case or as a result of this dismissal") *but see* Dkt. 62 (Nilon and NTG received payment in connection with the case). The Honorable Judge Burns of the Southern District of California found that another NTG Defendant, Ryan Ferrell, had behaved in a manner that fell short of Rule 11's standard by filing pleadings containing false statements. *Nilon v. NIC*, No. 3:12-3380-LAB-BGS (S.D. Cal.), Dkt. 117 at 5. Judge Burns found that NTG defendant Ryan Ferrell violated his duty of candor to the tribunal by failing to correct those statements even after he became aware of their falsity. *Id.* at 4, n. 1. Now David Reid, the managing partner at NTG, follows that pattern with his submission of an objectively false affidavit to this Court for the purpose of avoiding liability in the present matter. Not an isolated event, the behavior is far from inadvertent. The affidavit submitted here is close in time to the one filed in the prior case. There is no foundation for the conclusion that the affidavit filed here was anything but an intentionally false submission.

    In the prior cited cases, as here, it is the NTG pattern to file attorney affidavits that make factual representations for which evidentiary support is necessary, yet strikingly affidavit after affidavit is submitted void of exhibits containing the confirmatory evidentiary support. To date, in this case alone over the first several months, NTG has submitted 11 declarations by NTG attorneys, employees or former clients that attach **no documentary evidence** in support.[3]

---

[3] *See, e.g.,* Dkt. 35-2, 35-3, Dkt. 41 (seven unsupported, conclusory, and self-serving affidavits without documentary support); Dkt. 66 (NTG files unsupported and conclusory affidavit from Schoonover); Dkt. 97 at 23 (Scott Ferrell submits self-serving declaration attaching no evidence); Dkt. 106 at 26 (same); Dkt. 112-5 (Reid self-serving affidavit without any exhibit support).

3

It is significant that the affidavit here in issue comes from a licensed attorney. Unlike a layman, an attorney appreciates that his or her own affidavit must be accurate and complete in every particular. The attorney is, after all, an officer of the court. The omission of material information in an attorney affidavit, let alone the insertion of a demonstrably false statement, constitutes an act of deception for which attorneys must be directly liable.

No reasonable attorney would ever execute an affidavit without first undertaking a review of the relevant record. In doing so, he or she is apprised of the facts and can then insure that the affidavit itself is an accurate and complete explication of the facts. The argument presented by NTG, therefore, falls flat and is specious, precisely because it is incumbent upon an officer of the court to assiduously avoid false submissions. And when confronted with the falsity by opposing counsel and asked to withdraw the false submission (as was the case here) any reasonable attorney would correct the record volitionally rather than, as here, force opposing counsel to move for relief to set the record straight and compel opposing counsel to account for the false submission.

NIC variously identified the inconsistencies in prior pleadings responding to the Defendants' Anti-SLAPP Motion, but the Court never reached that matter and ruled on other grounds. *See generally* Dkt. 88. NIC met and conferred in person with NTG Counsel and requested withdrawal of the false statement. NTG refused. NIC served its motion on opposing counsel, and provided two separate letters, consistent with Rule 11(c), again requesting that NTG remedy the factual misstatement in Reid's declaration by volitionally withdrawing the false submission from the record. NTG again refused.

David Reid presented his affidavit in this case for the purpose of fully exculpating himself. Dkt. 41 at 9 ¶ 2. His statement was asserted to defeat a prima facie element of NIC's malicious prosecution claim: that the case was "brought by" David Reid. Liability for malicious prosecution can be imposed on an attorney

with "limited involvement," but not on one who has "no involvement." *See infra* at Section II(A). As attorneys, NTG and Reid understood that legal distinction and, thus, Reid falsely swore under oath that he had "no involvement" in the Nilon action, directly contradicting his affidavit in the Nilon action wherein he explained that he was "fully versed" in the matter and was involved. He did not state in his affidavit to this Court, as did Defendant Knowles in her companion affidavit, that he had "limited" involvement." *See* Dkt. 41 at 7 ¶ 3 (Declaration of Victoria Knowles, stating that her "involvement in the Nilon Action was very limited") and compare to Dkt. 41 at 9 ¶ 2 (Declaration of David Reid, stating that "[he] had no involvement in the Nilon Action"). Reid instead was unequivocal to avoid liability on a false factual basis.

It defies credulity to think that Reid—a licensed attorney—was unaware of the gravity of his statements. Reid cannot plausibly plead inadvertence or ignorance. He is a defendant in a civil RICO case revealing a pattern of RICO activity by his law firm over at least five years. Reid certainly would be expected to pay careful attention to the evidence and statements proffered in his defense.

Finally, NTG argues that this motion is "untimely" because the Court already ruled on the Anti-SLAPP motion. *See* NTG Opp. at Section III. That argument fails because this Court never considered the declarations submitted in that briefing. The Court found sufficient public information to support NIC's claim for malicious prosecution and, so, never addressed the declarations in Docket No. 41.

## II. ARGUMENT

### A. While *Any* Involvement Is Sufficient to Confer Liability, *No* Involvement Is Insufficient

Traditionally, malicious prosecution liability attaches to one who "instigates or procures the [malicious] action." *Jacques Interiors v. Petrak*, 188 Cal. App. 3d 1363, 1372, 234 Cal. Rptr. 44, 49 (Ct. App. 1987). California courts have imposed

liability for less substantial involvement in a malicious action. *Hindin v. Wehner & Perlman,* 2012 WL 3709844, at *19 (Cal. Ct. App. Aug. 28, 2012) (finding allegations that corporate officer had authority over the case and knowledge of its facts sufficient, if true, to warrant liability for malicious prosecution). An attorney can be liable for conspiracy to commit malicious prosecution, or for aiding and abetting a malicious prosecution. *Williams v. Hartford Ins. Co.*, 147 Cal. App. 3d 893, 898, 195 Cal. Rptr. 448, 451 (Ct. App. 1983) (conspiracy); *Lujan v. Gordon*, 70 Cal. App. 3d 260, 264, 138 Cal. Rptr. 654, 656 (Ct. App. 1977) (aiding and abetting). The requisite level of involvement is low, in fact, a recent California court explained that "there is no requirement of a certain level of involvement in litigating an action for an attorney to be subject to a malicious prosecution action." *See Emerald Bay Fin., Inc. v. Stojsavljevic*, 2008 WL 2601371, at *6 (Cal. Ct. App. July 2, 2008), *as modified on denial of reh'g* (July 30, 2008). Thus, *any* level of attorney involvement confers liability, but the law is still clear that *no involvement* is exculpatory. *Beck v. Intravaia Rock & Sand Corp.*, 2006 WL 1660737, at *3 (Cal. Ct. App. June 16, 2006) (granting anti-SLAPP motion where defendants had "no involvement whatsoever in initiating the [action] brought by the district attorney"). Therefore, the distinction between Reid's unequivocal statement of "no involvement" and the truthful statement that he had *at least some* involvement is critical and material, and the refusal of Reid to tell the truth in the first instance or come before this Court volitionally in the second and correct the record are remarkable facts indeed.

Here the circumstances leave no question that Reid's false statement was proffered for the purpose of exculpation from malicious prosecution on a false factual basis. In Defendants' Anti-SLAPP Motion (Dkts. 39 & 40), they argued—based on his declaration—that Reid could not be liable for malicious prosecution because he "had *no involvement* in the Nilon Action." Dkt. 40 at 3, n. 1 (citing to Reid's Declaration) (emphasis added). In NTG's Reply in Support of Defendants'

Anti-SLAPP motion, they again argued that Reid was not liable for malicious prosecution because he was completely "uninvolved." *See* Dkt. 64 at 9 (arguing that the email between NIC's counsel and Reid is "not evidence that Reid had *any* involvement in the Nilon litigation") (emphasis added). The intentional deception is palpable.

Defendants argue their use of language is but semantic, pointing this Court to a definition of the term "involvement" in an inapposite New Jersey Court of Appeals decision that was unrelated to the tort of malicious prosecution. Dkt. 112 at 9. The meaning of Reid's words "no involvement" must be considered within the context for which they were offered, *i.e.*, as grounds for total exculpation from liability for malicious prosecution under California law. The Defendants' labored attempt to reconcile Reid's two conflicting declarations is unpersuasive. Defendants now endeavor to downplay the *level* of involvement as opposed to establish total non-involvement, which was their consistently false representation to this Court in the Reid affidavit.

It is beyond dispute that Reid filed a declaration in the Nilon action, attended and participated in a meet and confer, engaged in settlement discussions with NIC's counsel,[4] and maintained total authority over that case. By any reasonable measure, that is "involvement" within the meaning of California malicious prosecution precedent.

---

[4] NIC counsel did nothing improper by citing a so-called "Rule 408" email from Mr. Reid. NIC never presented that evidence to establish the validity of NTG's prior claim. NTG apparently misunderstands the limits of FRE 408, and ignores the permissible purposes under Rule 408(b), which includes use of the document to establish Mr. Reid's involvement in the case. *See* Advisory Committee Notes to 2006 Amendment to FRE 408 ("Rule 408 [is] inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim") (collecting cases).

## B. NIC's Motion Is Timely and Was Not Mooted

NTG argues that NIC's motion is untimely under Rule 11 because the Court ruled on the Motion for which the unlawful declaration was offered in support. That position is unsupported by the law and facts.

Motions under Rule 11 are inappropriate only where the Court has already "resolved the merits of the underlying dispute…" *Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014). A court has "resolved the merits of the underlying dispute" upon "judicial rejection of **the offending contention**." *Id.* (citing the Advisory Committee's Notes to the 1993 Amendments to Rule 11) (emphasis added). Therefore, Courts have only applied that prohibition in circumstances where the need to correct the record was vitiated by a Court finding, order, or judgment that resolved or addressed the problematic document or contention. *McCune v. Gold Country Foods, Inc.*, 2014 WL 2807645, at *2 (E.D. Cal. June 19, 2014) (Rule 11 issue mooted because the Court granted summary judgment in favor of the movant); *Nat'l Ass'n of Bus. Representatives v. Teamsters Local Union 948*, 2008 WL 1970748, at *3 (E.D. Cal. May 2, 2008) (explaining that service of a Rule 11 motion may not occur after termination of a case). The purpose of Rule 11 is to "give the offending party an opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading *and thereby escape sanctions*." *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (emphasis in the original). That policy bars Rule 11 motions when filed after the conclusion of the case or following a "judicial rejection of the offending contention." *Id*. But, where, as here, the case is still active, summary judgment has not been granted, and the Court has not addressed the "offending contention," no precedent supports the conclusion that a Rule 11 motion is improper.

Here, the case continues and we have had no "judicial rejection of the offending contention." The record has not been corrected or even addressed by

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS
8

any finding or Order. The Court, in its April 19, 2016 Order, made no findings related to the Declarations submitted in Docket No. 41 (including the Reid declaration). The Court never even cited those declarations in its Order. *See generally* Dkt. 88-1. The Court never reached those evidentiary issues because it found sufficient publicly available information in prior Court rulings and findings to deny Defendants' Anti-SLAPP motion. *Id*. at 21-25. Thus, NTG could cite no "judicial rejection of the offending contention." Accordingly, the policy behind Rule 11 is supported here because the declaration is an as yet unaddressed part of the record, and the improper statements have not been resolved.

Finally, NIC has not "delayed" its Rule 11 motion or brought same for any improper purpose. NIC presented facts that clearly contradict the false Reid statement during the Anti-SLAPP briefing, inviting NTG to correct the record. *See* Dkt. 54 at 25; Dkt. 71 at 8. NIC provided NTG counsel with three separate opportunities to correct the record over a five week period. NTG counsel refused, compelling NIC to file its motion to correct the record and guard against recurrence of the NTG pattern of false submissions in this case.

### C. The Court May Apply Rule 56(h)

NIC did not move for sanctions primarily under Rule 56(h). However, the Court has a basis to impose sanctions under Rule 56(h) because the affidavit at issue was presented in support of a dispositive motion. Defendants asserted a "lack of evidence" theory under their Special Motion to Strike. Under Ninth Circuit precedent, that theory must be supported by evidence and reviewed under the Rule 56 standard. *Lauter v. Anoufrieva*, 642 F.Supp.2d 1060, 1109 (C.D. Cal. 2009) (Selna, J.) ("If a defendant makes an anti-SLAPP motion based on the plaintiff's failure to submit evidence … the motion is treated as a motion for summary judgment…"). The motion is treated as a Rule 56 motion for relief. For

that reason, NIC has a basis to request that the Court invoke Rule 56(h) in connection with the sham affidavit at issue.

### D. NIC's Requested Remedies Are Appropriate

NIC requested its fees associated in bringing this motion. It requested that the Court reject the false statement contained in the 2016 Reid Declaration, and instead credit the sworn declaration of David Reid from 2015 along with the available extrinsic evidence establishing Mr. Reid's involvement in the action sufficient to satisfy the malicious prosecution standard. NIC's request is consistent with precedent and mirrors judicial need to maintain a factually accurate docket, and hold parties accountable for false or misleading statements under oath.

NIC's request for fees incurred in preparing and pursuing this motion is expressly contemplated by Rule 11(c)(2) and is within the discretion of the trial court. *California Sportfishing Prot. All. v. Matheson Tri-Gas, Inc.*, 2013 WL 5597177, at *1 (E.D. Cal. Oct. 11, 2013) (trial court has total discretion to award fees that the movant incurs in bringing the motion) (citing Fed. R. Civ. P. 11(c)(2)).[5] NTG's argument in response is simply an incorrect application of law. NTG erroneously conflates the standards for an award of "monetary sanctions" under Rule 11(c)(4) with an award to the prevailing party of attorney's fees related to bringing the motion itself under Rule 11(c)(2). Dkt. 112 at 17. Based on that error, NTG argues that NIC failed to show such an award will deter the conduct at issue. *Id*. Note, however, that the problematic conduct here involves *more* than Reid's false statement. This motion also involves NTG's refusal to withdraw the outright false statement when confronted with clear evidence that the Reid affidavit was contradicted and undermined by extraneous facts.

---

[5] But if the non-movant prevails on the motion, fees should not be awarded against the movant unless the motion was more than just "unavailing." *Advanced Multilevel Concepts, Inc. v. Stalt, Inc.*, 2012 WL 3249512, at *1 (N.D. Cal. Aug. 7, 2012).

An award of fees is also warranted here because NIC engaged in a good faith effort to resolve this issue short of filing this motion. Indeed, had NTG acted responsibly and corrected the record volitionally, the matter would have been resolved. NIC met and conferred with NTG regarding the false declaration once in person and twice by letter prior to serving the instant motion and after providing a 21-day cure period. NTG's failure to take responsibility for directly conflicting affidavits from attorney Reid necessitated this filing.

NIC's request to have the Court strike the sham affidavit is also well-founded. David Reid's 2016 affidavit (Dkt. 41) is directly contradicted by prior facts and evidence, including his own affidavit filed in the prior case. This Court can readily determine the conflicting nature of attorney Reid's various statements under oath. NTG's argument that Reid's declaration has not been shown to be "devoid of a factual basis" or "false" is specious in light of the facial conflict in the two affidavits on the material point of involvement. Dkt. 112 at 17. The record must be corrected and attorney Reid given reason to honor his duty to be forthright in his dealings with the court.

NIC's request that the Court issue an order finding that David Reid "brought" the underlying action is also appropriate. NIC asks the Court to credit Reid's prior declaration over the 2016 document, and credit the factual evidence of Reid's involvement in the case. Those findings would necessarily mean that Reid was *involved* and was the managing partner with full authority over the case. That level of involvement is sufficient to meet the "brought by" element under malicious prosecution. Thus, the request is fully within the power of the Court, which also has inherent powers to control and regulate its docket. That finding is not a dispositive sanction (although such a sanction would be appropriate for false testimony under oath).

### III. CONCLUSION

For the foregoing reasons and those explained in NIC's original motion, the requested Rule 11 sanctions should be imposed forthwith.

Respectfully submitted,

DATED: May 27, 2016

 /s/ Peter A. Arhangelsky
Peter A. Arhangelsky
parhangelsky@emord.com
Joshua S. Furman
jfurman@emord.com
Eric J. Awerbuch
eawerbuch@emord.com
EMORD & ASSOCIATES, P.C.
3210 S. Gilbert Road, Ste 4
Chandler, AZ 85286
P: 602-388-8899
F: 602-393-4361

*Attorneys for Plaintiff NIC*

# CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2016, the foregoing, **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS UNDER FRCP 11, FRCP 56(h), LR 83-7, LR 11-9, AND THE COURT'S INHERENT POWERS** was electronically filed using the Court's CM/ECF system and was sent via email to the following:

Gillian L. Wade, Esq.
gwade@majfw.com
Sara D. Avila, Esq.
savila@majfw.com
Milstein, Adelman, Jackson, Fairchild & Wade LLP
10250 Constellation Boulevard
Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635
*Attorney for Andrew Nilon,*
*Giovanni Sandoval, Sam Schoonover,*
*Matthew Dronkers, Taylor Demulder, Sam Pfleg,*

Michael S. LeBoff, Esq.
mleboff@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
*Attorney for Newport Trial Group, Andrew Baslow,*
*Scott Ferrell, Ryan Ferrell, Victoria Knowles*

  /s/ Peter A. Arhangelsky
Peter A. Arhangelsky, Esq.