## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |

| | |
|---|---|
| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |

Present: The Honorable    James V. Selna

| Ivette Gomez | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **(In Chambers) Order GRANTING IN PART and DENYING IN PART Rule 12(b)(6) Motions to Dismiss and Anti-SLAPP Motion to Strike**

Before the Court are three motions:

First, Defendants Newport Trial Group, Andrew Baslow ("Baslow"), Ryan Ferrell, Scott Ferrell, Victoria Knowles ("Knowles"), and David Reid ("Reid") (collectively, the "NTG Defendants") filed a motion to dismiss Plaintiff Natural-Immunogenics Corporation's ("Natural-Immunogenics") second amended complaint under Federal Rule of Civil Procedure 12(b)(6). Docket No. 120. Natural-Immunogenics filed an opposition. Docket No. 132. The NTG Defendants filed a reply. Docket No. 139.

Second, the NTG Defendants filed an anti-SLAPP motion to strike Natural-Immunogenics's second amended complaint under the California Anti-SLAPP Law, Cal. Civil Proc. Code § 425.16. Docket No. 122. Natural-Immunogenics filed an opposition. Docket No. 131. The NTG Defendants filed a reply. Docket No. 138.

Third, Defendants Taylor Demulder ("Demulder"), Matthew Dronkers ("Dronkers"), Andrew Nilon ("Nilon"), Sam Pfleg ("Pfleg"), Giovanni Sandoval ("Sandoval"), and Sam Schoonover ("Schoonover") (collectively, the "non-NTG Defendants") filed a Rule 12(b)(6) motion to dismiss Natural-Immunogenics's second amended complaint. Docket No. 126. Natural-Immunogenics filed an opposition. Docket No. 133. The non-NTG Defendants filed a reply. Docket No. 141. The non-NTG Defendants have also joined the NTG Defendants' motion to dismiss and anti-SLAPP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

motion to strike. Docket Nos. 124, 125.

For the reasons stated below, the Court **grants in part** and **denies in part** the pending motions.

## 1.    Background

### 1.1.    Factual background

Natural-Immunogenics is a Florida corporation that sells dietary supplements and homeopathic products, including a national line of colloidal silver products marketed under the brand name "Sovereign Silver." Docket No. 92 ¶ 1. Newport Trial Group is a law firm based in Newport Beach, California. Id. ¶ 20.

In March 2012, Newport Trial Group and its attorneys Scott Ferrell, Ryan Ferrell, Knowles, and Reid filed a consumer class action lawsuit against Natural-Immunogenics for making false and misleading statements in connection with its Sovereign Silver products. Id. ¶ 13. Nilon served as lead plaintiff and class representative. Id. Natural-Immunogenics alleges that the lawsuit was fraudulent: Newport Trial Group bribed Nilon to both (1) serve as the lead plaintiff and class representative and (2) fraudulently allege that he purchased Natural-Immunogenics's products and relied on Natural-Immunogenics's false and misleading statements when purchasing the product. Id. Natural-Immunogenics further alleges that this action was part of Newport Trial Group's broader scheme to bring fraudulent consumer class action lawsuits against corporate defendants for the improper purpose of extracting out-of-court settlements from these defendants. Id. ¶¶ 21-25.

Natural-Immunogenics's complaint describes two such schemes: (1) the false advertising scheme and (2) the wiretapping scheme. Id. ¶ 25.

In the false advertising scheme, the Newport Trial Group and its investigator Baslow would identify individuals to serve as lead plaintiffs in consumer fraud class actions against companies selling products in California. Newport Trial Group would then bribe these individuals to make intentional false representations that (1) they purchased the defendant's product in reliance on the representations made in defendant's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

product advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the advertisements. Id. ¶ 29. Using these false allegations, the Newport Trial Group would threaten companies with statewide class actions under various California consumer protection statutes,[1] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id. ¶ 27.

The wiretapping scheme functioned similarly. Under the wiretapping scheme, the Newport Trial Group and Baslow would identify individuals to serve as potential lead plaintiffs in consumer privacy class actions. Newport Trial Group would then bribe these individuals to stage private phone calls to various companies, and then later make intentionally false representations that (1) they were not aware that the call was being recorded; (2) they did not consent to the recording; and (3) they later learned that the company recorded all incoming calls only after completing the call. Id. ¶ 34. Using these false allegations, the Newport Trial Group would threaten companies with statewide class actions under the California Invasion of Privacy Act, Cal. Pen. Code § 632 et seq.,[2] and,

---

[1]  Natural-Immunogenics's second amended complaint identifies four lawsuits filed in connection with the false advertising scheme: (1) Nilon v. Natural-Immunogenics Corp., Case No. 3:12-cv-00930-LAB-BGS (C.D. Cal. 2012) ("Nilon"); (2) Pfleg v. Nature's Way Products, Inc., Case No. 37-2012-0051979-CU-MT-NC (San Diego Cty. Sup. Ct. 2012) ("Nature's Way"); (3) Dronkers v. Kiss My Face, LLC, Case No. 3:12-01151-JAH (S.D. Cal. 2012) ("Kiss My Face"); and (4) Morales v. Magna, Inc., Case No. 3:10-cv-01601-EDL (N.D. Cal. 2010) ("Bobba"). Id. ¶¶ 49-147, 175-221, 265-281. Nilon, Pfleg, and Dronkers served as the lead plaintiffs in Nilon, Nature's Way, and Kiss My Face, respectively. Id. Sandoval later substituted in as lead plaintiff and class representative in Nilon. Docket No. 92 ¶¶ 105-113.

[2]  Natural-Immunogenics's second amended complaint identifies four lawsuits filed in connection with the wiretapping scheme: (1) Nilon v. Chromadex, Inc., Case No. 56-2013-00436790-CU-MT-VTA (Ventura Cty. Sup. Ct. 2013) ("Chromadex"); (2) Demulder v. Carter-Reed Co., LLC, Case No. 3:12-cv-0333-BTM (S.D. Cal. 2012) ("Carter-Reed"); (3) Schoonover v. Himalaya Drug Co., Case No. 12-cv-1782 (S.D. Cal. 2012) ("Himalaya Drug"); and (4) Torres v. Nutrisystem, Case No. 8:12-cv-01854-CJC-JPR (C.D. Cal. 2012) ("Nutrisystem"). Id. ¶¶ 148-174, 222-264, 282-317. Nilon, Demulder, and Schoonover served as the lead plaintiffs in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id.

1.2.    Procedural background

In May 2016, Natural-Immunogenics filed its second amended complaint in this action.[3] Docket No. 92. The second amended complaint alleges: (1) malicious prosecution against the NTG Defendants, Nilon, and Sandoval; (2) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., against all defendants; (3) conspiracy to violate RICO against all defendants; and (4) unfair competition in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., against all defendants. Id.

The NTG Defendants now move to dismiss the second and third claims for substantive RICO violations and conspiracy to violate RICO. Docket No. 120. The NTG Defendants also move to strike the fourth claim for unfair competition under the California anti-SLAPP statute. Docket No. 122. The non-NTG Defendants join both motions. Docket Nos. 124, 125. Separately, Sandoval moves to dismiss certain racketeering allegations for failure to state a claim, and Defendants Pfleg, Schnoonover, Demulder, and Dronkers move to dismiss the action in its entirety for failure to state a claim. Docket No. 126.

2.    **Legal Standards**

2.1.    Rule 12(b)(6) motion to dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 12(b)(6) requires courts to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To defeat a

_____

Chromadex, Carter-Reed, and Himalaya Drug, respectively. Id.

[3] Natural-Immunogenics filed its first complaint in December 2015. Docket No. 1. Natural-Immunogenics filed its first amended complaint in January 2016. Docket Nos. 29, 30. After motion and oral argument, the Court dismissed Natural-Immunogenics's first amended complaint without prejudice. Docket No. 88.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)              Date    August 1, 2016

Title       Natural Immunogenics Corp. v. Newport Trial Group, et al.

motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Fraud claims require more. Fed. R. Civ. P. 9(b). To allege fraud, the plaintiff must also allege the circumstances constituting fraud "with particularity." Id. This requires the plaintiff to allege the "who, what, when, where, and how" of the alleged fraud. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).

To resolve a 12(b)(6) motion under Iqbal and Twombly, courts must follow a two-pronged approach. First, courts must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. Iqbal, 556 U.S. at 678. At this step, the court can only consider allegations in the complaint, documents attached to the complaint, matters subject to judicial notice,[4] and "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). Second, assuming the well-pleaded factual allegations are true, courts must "determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. This determination is "context-specific," requiring courts to draw on their experience and common sense. Id. There is no plausibility, however, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

2.2.    Anti-SLAPP motion

"The anti-SLAPP statute was enacted to allow early dismissal of meritless first amendment cases aimed at chilling express through costly, time-consuming litigation." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001). "Under the statute, a

---

[4] In support of their respective motions to dismiss, the NTG Defendants and the non-NTG Defendants request judicial notice of notices of voluntary dismissals filed in Bobba and Carter-Reed, as well as the complaints filed in Nature's Way, Kiss My Face, Carter-Reed, and Himalaya Drug. Docket Nos. 121, 127. Courts may take judicial notice of federal and state court filings. Harris v. Cty of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012). The Court therefore **grants** the requests for judicial notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|----------|-------------------------|------|----------------|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|-------|-----------------------------------------------------------|

civil defendant may move to strike a cause of action based on an 'act in furtherance of [the] right to petition or free speech.'" Id. at 840 (quoting Cal. Civ. Proc. Code § 425.16(b)). Courts use a two-step burden-shifting approach when reviewing anti-SLAPP motions. First, the defendant must show that the activity challenged by the plaintiff was "taken in furtherance of the defendant's right of petition or free speech under the United States or California Constitution in connection with a public issue." Hilton v. Hallmark Cards, 599 F.3d 894, 903 (9th Cir. 2009) (internal quotation marks omitted). Second, if the defendant meets its initial burden, the plaintiff must show that it has "a reasonable probability that the plaintiff will prevail on his or her . . . claim." In re NCAA Student-Athlete Name & Likeness Licensing Litig., 724 F.3d 1268, 1273 (9th Cir. 2013) (internal quotation marks omitted). At this second step, the plaintiff must show that "the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if [any admissible] evidence submitted by plaintiff is credited." Id. "This burden is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff." Metabolife, 264 F.3d at 840 (internal quotation marks omitted). "Thus, a defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff." Id. (internal quotation marks omitted).

## 3.    NTG Defendants' Rule 12(b)(6) motion to dismiss

### 3.1.        RICO claims

A plaintiff may bring a private civil action for RICO violations. 18 U.S.C. § 1964(c). The RICO statute prohibits various type of activities. As relevant here, section 1962(c) of the RICO statute prohibits any person from conducting or participating in an enterprise with income derived from a pattern of racketeering activity. Id. § 1962(c). To state a claim for violation of section 1962(c), the plaintiff must allege that the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

Here, Natural-Immunogenics's second amended complaint alleges that the NTG Defendants violated section 1962(c) when prosecuting the Nilon, Chromadex, Carter-Reed, Himalaya Drug, Nutrisystem, Nature's Way, Kiss My Face, and Bobba actions. Docket No. 1 ¶ 336. The NTG Defendants now move to dismiss the section 1962(c) claims for failure to allege either predicate racketeering activity or a pattern of racketeering activity. Docket No. 120. As explained below, the Court grants the NTG Defendants' motion to dismiss as to Knowles. The Court otherwise denies the NTG Defendants' motion to dismiss.

### 3.1.1. Racketeering activity

The NTG Defendants first move to dismiss Natural-Immunogenics's RICO claims for failure to allege racketeering activity. Docket No. 120 at 8-16. To allege racketeering activity, the plaintiff must allege that the defendant committed at least one of the predicate acts listed in 18 U.S.C. § 1961(1). Sedima, S.P.R.L v. Imrex Co, Inc., 473 U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate act."). Natural-Immunogenics's second amended complaint alleges six such predicate acts: mail fraud, wire fraud, extortion, bribery, obstruction of justice, and witness tampering. Docket No. 92 ¶¶ 49-147. As explained below, Natural-Immunogenics has adequately alleged that the NTG Defendants, with the exception of Knowles, have committed these predicate acts.

#### 3.1.1.1. Noerr-Pennington doctrine

As an initial matter, the NTG Defendants argue that, under the Noerr-Pennington doctrine, they are immune from RICO liability for their alleged RICO activity. Docket No. 120 at 9-16. The Court disagrees.

The Noerr-Pennington doctrine provides absolute immunity for statutory liability for conduct when petitioning the government for redress. Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006). Immunity under the Noerr-Pennington doctrine includes communications made to the court during the course of a lawsuit. Such communications include "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something." Id. at 933. "Conduct

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                        Date   August 1, 2016

Title   Natural Immunogenics Corp. v. Newport Trial Group, et al.

incidental to a lawsuit, including a pre-suit demand letter, [also] falls within the protection of the Noerr-Pennington doctrine." Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1007 (9th Cir. 2008).

The Ninth Circuit has recognized an exception to the Noerr-Pennington doctrine, however. Noerr-Pennington immunity does not apply to conduct that, although "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere" with the defendant's business practices. Sosa, 437 F.3d at 938. As a result, "'[s]ham' petitions don't fall within the protection of the doctrine." Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1183-84 (9th Cir. 2005). The Ninth Circuit has identified three circumstances when the so-called sham litigation exception applies:

> (1)   the lawsuit is objectively baseless and the defendant's motive in bringing it is unlawful;

> (2)   the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; or

> (3)   if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

Sosa, 437 F.3d at 936 (internal quotation marks omitted).

At minimum, the first sham litigation exception applies here. The first sham litigation exception "contains both an objective and a subjective component." Freeman, 410 F.3d at 1185. On the first prong, the plaintiff must first show that the lawsuit was "objectively baseless." Id. This requires the plaintiff to show that there is no "probable cause" to support the lawsuit. Id. (quoting Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 62 (1993)). A lawsuit lacks probable cause when "no reasonable litigant could realistically expect success on the merits." UMG Recordings,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

Inc., v. Glob. Eagle Entm't., Inc., 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015) (quoting Prof'l Real Estate Investors, 508 U.S. at 60-61). On the second prong, the plaintiff must show that the defendant brought the lawsuit "with the specific intent to further wrongful conduct through the use of governmental process -- as opposed to the outcome of that process." Nader v. Democratic Nat'l Comm., 567 F.3d 692, 696 (D.C. Cir. 2009).

Here, Natural-Immunogenics specifically alleges that (1) the Nilon, Chromadex, Carter-Reed, Himalaya Drug, Nutrisystem, Nature's Way, Kiss My Face, and Bobba actions all lacked probable cause because the material allegations supporting the class representative's claims in the operative complaint were intentionally false; and (2) the NTG Defendants filed these fraudulent lawsuits with the improper purpose to extract out-of-court settlement from the corporate defendants in these lawsuits. See, e.g., Docket No. 92 ¶¶ 51, 60-62. At the pleading stage, these allegations are sufficient to invoke the first sham litigation exception. The NTG Defendants may attack the truth of these allegations on summary judgment.

In their reply, the NTG Defendants argue that the first and second sham litigation exceptions do not apply outside the antitrust cases, and Natural-Immunogenics has otherwise failed to adequately allege reliance in the context of the third sham exception. Docket No. 139 at 8-12. The Court disagrees.

"The [Noerr-Pennington] doctrine derives from two Supreme Court cases holding that the First Amendment Petition Clause immunizes acts of petitioning the legislature from antitrust liability." UMG Recordings, 117 F. Supp. 3d at 1112 (citing Sosa, 437 F.3d at 929). "The classic case included one company's petitioning a branch of government to influence legislation or law regulating that company. In response, companies in the same market would bring suit against the petitioning company, alleging its efforts to influence legislation violated the Sherman Act." Moore v. Saniefar, 2016 WL 2764768, at *5 (E.D. Cal. May 12, 2016) (internal citations omitted). However, "[t]he doctrine has since been applied to actions petitioning each of the three branches of government, and has been expanded beyond its original antitrust context." Theme Promotions, Inc. v. News America Marketing FSI, 546 F.3d 991, 1007 (9th Cir. 2008). As the Ninth Circuit has made clear, "the Noerr-Pennington doctrine [now] stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." Sosa, 437 F.3d at 931.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

As courts have expanded the scope of the <u>Noerr-Pennington</u> doctrine, courts have also expanded the scope of the sham litigation exception. In <u>Kottle v. Northwest Kidney Centers</u>, the Ninth Circuit reviewed then-prevailing U.S. Supreme Court and Ninth Circuit to summarize the sham litigation exception in the antitrust context. 146 F.3d 1056, 1060-61 (9th Cir. 1998). To that end, <u>Kottle</u> formulated the sham litigation exception as follows:

> When the branch of government involved is a court of law, this circuit recognizes three circumstances in which an antitrust defendant's activities might fall into the sham exception.
>
> *First*, if the alleged anticompetitive behavior consists of bringing a single sham lawsuit (or a small number of such suits), the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships.
>
> *Second*, if the alleged anticompetitive behavior is the filing of a series of lawsuits, the question is not whether any one of them has merit-some may turn out to, just as a matter of chance-but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival.
>
> [*Third*], in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

<u>Id.</u> at 1060 (internal citations and quotation marks omitted) (emphases added). Eight years later in <u>Sosa</u>, the Ninth Circuit re-formulated the sham litigation exception to apply broadly outside the antitrust context:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date    August 1, 2016

Title       Natural Immunogenics Corp. v. Newport Trial Group, et al.

> In <u>Kottle</u>, we identified three circumstances in which the sham litigation exception might apply: *first*, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful, *second*, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose, and *third*, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

<u>Sosa</u>, 437 F.3d at 938 (internal citations and quotation marks omitted) (emphases added). Unlike <u>Kottle</u>'s narrow antitrust formulation, which required the plaintiff to allege intent to harm competition, <u>Sosa</u>'s broader formulation does not require the plaintiff to allege anticompetitive intent to invoke the first sham litigation exception. Instead, <u>Sosa</u> requires only an unlawful motive or purpose generally. <u>Id.</u> Then, approximately three years later in <u>Kearney</u>, the Ninth Circuit confirmed that the sham litigation exception applied to RICO claims. <u>Kearney v. Foley & Lardner LLP</u>, 590 F.3d 638, 648 (9th Cir. 2008) ("In <u>Kottle</u> . . ., the Ninth Circuit identified three circumstances in which the sham litigation exception might apply. . . . We are persuaded that Defendants' alleged misconduct here was precisely the sort the sham exception was created to address."); <u>Moore v. Saniefar</u>, 2016 WL 2764768, at *6 (E.D. Cal. May 12, 2016) ("The Circuit later clarified that the sham exception does apply to RICO claims in <u>Kearney v. Foley & Lardner LLP</u>, 590 F.3d 638 (9th Cir. 2009)."). In doing so, <u>Kearney</u> nowhere stated that the first and second sham litigation exceptions do not apply to RICO claims.[5] Rather, <u>Kearney</u> expressly stated that the sham litigation exception will apply when the defendant's alleged misconduct raises the problems that the exception was created to address: namely, filing baseless lawsuits for improper purposes. <u>Kearney</u>, 590 F.3d at 646 ("We are persuaded that Defendants' alleged misconduct here was precisely the sort the sham exception was

---

[5]  In <u>Kearney</u>, the only ground raised by the parties was the third exception. 590 F.3d at 646 ("[T]he Ninth Circuit identified three circumstances in which the sham litigation exception might apply. Kearney argues for the third here[.]").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

created to address."). Consistent with <u>Sosa</u> and <u>Kearney</u>, federal district courts have since applied the first and second sham litigation exceptions outside the antitrust context. <u>See, e.g.</u>, <u>UMG Recordings</u>, 117 F. Supp. 3d at 1113-14 (applying such exceptions to federal and state law claims for copyright infringement). The NTG Defendants have provided no reason showing why, under <u>Sosa</u> and <u>Kearney</u>, the first sham litigation exception should not also apply here. The Court therefore rejects the NTG Defendants' argument that the first sham litigation exception does not apply here.

### 3.1.1.2.        Predicate acts

The NTG Defendants next argue that, even if the <u>Noerr-Pennington</u> doctrine does not apply, Natural-Immunogenics's second amended complaint has failed to allege that they committed any predicate RICO acts in connection with the <u>Nilon</u>, <u>Chromadex</u>, <u>Nature's Way</u>, <u>Kiss My Face</u>, <u>Carter-Reed</u>, <u>Himalaya Drug</u>, <u>Bobba</u>, and <u>Nutrisystem</u> actions. The Court disagrees.

#### 3.1.1.2.1.    Mail and wire fraud

Natural-Immunogenics alleges mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343. Docket No. 92 ¶¶ 368(b),(d)-(f), (h), (l), 369(c), 370(b)-(c), 371(b), 372(b), 373(b)-(d), 374(b)-(j), 375(b). The federal mail fraud statute prohibits parties from using the United States mails to carry out fraudulent schemes. 18 U.S.C. § 1341. The federal wire fraud statute similarly prohibits parties from using the United States wires to carry out fraudulent schemes. <u>Id.</u> § 1343. "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud . . . ." <u>Eclectic Properties E., LLC v. Marcus & Millichap Co.</u>, 751 F.3d 990, 997 (9th Cir. 2014). To allege mail and wire fraud, the plaintiff must allege the defendant (1) formed a scheme to defraud; (2) used the United States mails or wires to carry out the scheme; and (3) had the specific intent to defraud. <u>Id.</u> Moreover, mail and wire fraud claims are subject to the heightened pleading requirements under Rule 9(b). <u>Cty. of Marin v. Deloitte Consulting LLP</u>, 836 F. Supp. 2d 1030, 1038 (N.D. Cal. 2011). Accordingly, to survive dismissal under Rule 9(b), the plaintiff must allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 558 (9th Cir. 2010) (internal quotation marks and citations omitted). The complaint must also allege "why [the] statement or omission complained of was false

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

and misleading." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

Here, Natural-Immunogenics adequately alleges mail and wire fraud under Rule 9(b). For each lawsuit identified in Natural-Immunogenics's second amended complaint, Natural-Immunogenics alleges that (1) the NTG Defendants created a scheme to file or threaten to file fraudulent lawsuits against corporate defendants to extract out-of-court settlements from these corporations; (2) the NTG Defendants used the United States mails and wires to carry out the scheme; and (3) the NTG Defendants had the specific intent to defraud these corporations. E.g., Docket No. 92 ¶¶ 52-56. Natural-Immunogenics's mail and wire fraud allegations also satisfy Rule 9(b)'s heightened pleading standards. Again, for each lawsuit identified in Natural-Immunogenics's second amended complaint, Natural-Immunogenics specifically alleges (1) who committed the alleged fraud: the Newport Trial Group, Scott Ferrell, Ryan Ferrell, Reid, or Knowles; (2) what the alleged fraudulent conduct was: sending demand letters and/or filing court documents that contained intentional false representations; (3) where the alleged fraud took place: via mail communications between the NTG Defendants and defendant corporations or via electronic court filings; and (4) when the alleged fraud occurred: at specific dates and times from July 2010 to April 2015. E.g., Id. ¶¶ 57-67. Natural-Immunogenics further alleges why the NTG Defendants' conduct was fraudulent. For example, in the false advertising cases, the plaintiffs would falsely represent that (1) they purchased the defendant's product in reliance on the defendant's product labels and advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance. E.g., id. ¶¶ 60-65. Likewise, in the wiretapping cases, the plaintiffs would falsely represent that (1) they were not aware that their call to the defendants was being recorded; (2) they did not consent to the recording; and (3) they later learned that the company recorded all incoming calls only after completing the call. E.g., id. ¶¶ 154-158. These allegations are sufficient to allege mail and wire fraud.

The NTG Defendants' motion to dismiss primarily argues that Natural-Immunogenics has failed to allege reliance. See, e.g., Docket No. 120 at 10 ("Moreover, since [Natural-Immunogenics] did not settle the case, it could not have relied on the statements in the demand letter . . . ."); id. at 18 ("[Natural-Immunogenics], however, fails to allege any facts showing that Nature's Way relied on the allegedly false statements in the demand letter in deciding to settlement with Pfleg."); id. at 26 ("While

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

[Natural-Immunogenics] alleges that the Demulder complaint contained false allegations, it does not allege the defendant Carter-Reed relied on those allegations as part of any settlement."). This argument misstates the law. Natural-Immunogenics does not need to allege reliance under the federal mail and wire fraud statutes. Neder v. United States, 527 U.S. 1, 24, 25 (1999) ("The common-law requirements of 'justifiable reliance' and 'damages,' for example, plainly have no place in the federal fraud statutes."); United States v. Lindsey, --- F.3d ---, 2016 WL 3536659, at *3 (9th Cir. June 28, 2016) ("In sum, the government does not have to prove actual reliance upon the defendant's misrepresentations to satisfy the element of materiality." (internal quotation marks omitted)). United States v. Williams, 492 F. App'x 777, 778 (9th Cir. 2012) (unpublished) ("It is well-established that reliance is not a required element of wire fraud."). Rather, Natural-Immunogenics need only provide specific allegations about who engaged in the alleged fraud, what the alleged fraudulent conduct was, where the alleged fraud took place, when the alleged fraud took place, and why the conduct was fraudulent. Sanford, 625 F.3d at 558; In re GlenFed, Inc. Sec. Litig., 42 F.3d at 1548. Natural-Immunogenics has done that here.

The NTG Defendants' motion to dismiss also argues that Natural-Immunogenics has failed to allege that the presiding courts in each action relied on the NTG Defendants' fraudulent representations. See, e.g., Docket No. 120 at 12 ("[Natural-Immunogenics] fails to allege facts showing how the District Court relied on any particular false statements in the Motion to Certify or that any particular false statement deprived the litigation of its legitimacy."). This argument is misplaced. The presiding court's reliance is only relevant under the third sham litigation exception to the Noerr-Pennington doctrine. This is because, under the third sham litigation exception, the plaintiff must allege that the "party's knowing fraud upon, or its intentional misrepresentations to, the court deprive[d] the litigation of its legitimacy." Sosa, 437 F.3d at 938 (internal quotation marks omitted). Here, however, Natural-Immunogenics has successfully invoked the first sham litigation exception. See Section 3.1.1.1, supra. And under the first sham litigation exception, the plaintiff does not need to allege reliance; rather, the plaintiff need only allege that "the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful." Sosa, 437 F.3d at 938. Accordingly, Natural-Immunogenics's alleged failure to allege reliance by the presiding court does not affect the viability of its fraud claims here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 15-02034 JVS(JCGx)          Date    August 1, 2016

Title        Natural Immunogenics Corp. v. Newport Trial Group, et al.

### 3.1.1.2.2. Extortion

In addition to mail and wire fraud, Natural-Immunogenics also alleges that the NTG Defendants engaged in extortion in violation of the federal Hobbs Act, 18 U.S.C. § 1951. Docket No. 92 ¶¶ 369(b), 370(d), 371(c), 372(c), 373(e), 374(n), 375(c). To state a claim for extortion, the plaintiff must allege that (1) the defendant took or attempted to take another person's property using the threat of nonviolent, economic harm; (2) the defendant intended to take the property; and (3) the extortion affected interstate commerce. Id. In the Ninth Circuit, threatening to file costly lawsuits will constitute extortion so long as the threatened lawsuit is a sham. See Sosa, 437 F.3d at 939-40 ("Applying the Noerr-Pennington statutory construction presumption, we do not believe the Hobbs Act imposes liability for threats of litigation *where the asserted claims do not rise to the level of a sham*." (emphasis added)). In their motion to dismiss, the NTG Defendants argue that Natural-Immunogenics has not alleged extortion in connection with the Chromadex and Kiss My Face actions because Natural-Immunogenics has failed to specifically allege the circumstances regarding the NTG Defendants' alleged threats in both actions.[6] Docket No. 120 at 21, 26. The Court disagrees.

Typically, extortion claims are not subject to Rule 9(b)'s heightened pleading standard. Chiropractic All. of New Jersey v. Parisi, 854 F. Supp. 299, 308 (D. N.J. 1994) ("The allegations of theft by extortion, for example, are properly governed by the more lenient pleading requirement of Fed. R. Civ. P. 8."); see Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists, 945 F. Supp. 1355, 1379-80 (D. Or. 1996) ("[W]here the alleged RICO predicate acts do not involve fraud, the more lenient pleading standard in Rule 8(a) applies."). However, as the Court explained in its previous dismissal order, Rule 9(b)'s heightened pleading standard will apply to extortion allegations when, as here, the alleged extortion is based on fraudulent conduct. Docket No. 88-1 at 11 n.8. Natural-Immunogenics has specifically alleged extortion under Rule 9(b).

---

[6] Apart from Chromadex and Kiss My Face, the NTG Defendants' motion to dismiss does not challenge the sufficiency of Natural-Immunogenics's extortion allegations regarding the Nilon, Carter-Reed, Himalaya Drug, Nutrisystem, Nature's Way, and Bobba actions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

Regarding <u>Chromadex</u>, Natural-Immunogenics has specifically alleged (1) who threatened Chromadex: Scott Ferrell; (2) what the alleged wrongful threat was: a threat to file another fraudulent class action lawsuit against Chromadex on behalf of a new class representative; (3) where the alleged threat was made: via wire communication from Scott Ferrell to Chromadex representatives; (4) when the alleged threat was made: after Newport Trial Group, Scott Ferrell, Reid, and Knowles voluntarily dismissed their first putative class action complaint against Chromadex on May 23, 2013, but before the parties entered into a settlement agreement on August 2013; and (5) why the alleged threat was fraudulent: Ferrell falsely represented that the Newport Trial Group could pursue class litigation on behalf of a new class representative. Docket No. 92 ¶¶ 161-167. These allegations satisfy Rule 9(b).

Regarding <u>Kiss My Face</u>, Natural-Immunogenics has specifically alleged (1) who threatened Kiss My Face: the Newport Trial Group, Scott Ferrell, and Knowles; (2) what the alleged wrongful threat was: a threat to file a fraudulent class action lawsuit against Kiss My Face; (3) where the alleged threat was made: via a demand letter from Newport Trial Group, Scott Ferrell, and Knowles to representatives for Kiss My Face; and (4) when the alleged threat was made: after the Newport Trial Group, Scott Ferrell, Reid, and Knowles developed the scheme to defraud Kiss My Face in early 2012, but before they filed the complaint against Kiss My Face on May 11, 2012; and (5) why the alleged threat was fraudulent: the demand letter made intentional false representations regarding the named plaintiff's claims in the potential lawsuit.[7] <u>Id.</u> ¶¶ 204, 207-08. Again, these allegations satisfy Rule 9(b).

### 3.1.1.2.3.    Obstruction of justice and witness tampering

Natural-Immunogenics alleges obstruction of justice and witness tampering in violation of 18 U.S.C. §§ 1503, 1512(b)-(c) against the NTG Defendants. Docket No. 92 ¶¶ 368(g), (i), (m)-(n), 374(k)-(m). To allege obstruction of justice in violation of section 1503, the plaintiff must allege that (1) the defendant influenced, obstructed, or impeded,

---

[7] Natural-Immunogenics's second amended complaint alleges that the demand letter "communicate[d] the false claims to Kiss My Face and demand settlement." Docket No. 92 ¶ 208. The following paragraph then specifically identifies four such false claims. <u>See id.</u> ¶ 209.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                    Date   August 1, 2016

Title     Natural Immunogenics Corp. v. Newport Trial Group, et al.

or attempted to influence, obstruct, or impede, the due administration of justice (2) with the corrupt intent to obstruct justice. 18 U.S.C. § 1503. Similarly, to allege obstruction of justice in violation of section 1512(c), the plaintiff must allege that the defendant (1) corruptly (2) obstructed, influenced, or impeded, or attempted to influence, obstruct or impede (3) any official proceeding. Id. § 1512(c). Lastly, to allege witness tampering in violation of section 1512(b), the plaintiff must allege that the defendant (1) persuaded or attempted to persuade a witness (2) with the corrupt intent to either influence the witness's testimony or cause that witness to withhold testimonial or documentary evidence. 18 U.S.C. § 1512(b). To allege obstruction of justice or witness tampering under sections 1503 or 1512(b)-(c), the plaintiff does not need to show that the defendant's attempts to obstruct justice or tamper with witnesses actually affected the outcome of the legal proceedings. See United States v. Reich, 479 F.3d 179, 186 (2d Cir. 2007) (Sotomayor, J.).

In their motion to dismiss, the NTG Defendants argue, on various grounds, that Natural-Immunogenics has failed to allege obstruction of justice or witness tampering in connection with the Nilon action. The Court rejects this argument.

The NTG Defendants first argue that Natural-Immunogenics has failed to allege obstruction of justice or witness tampering in connection with Nilon's four missed depositions, for three independent reasons: (1) missing depositions is not an indictable offense; (2) Natural-Immunogenics fails to allege how Ryan Ferrell engaged in misleading conduct; and (3) Natural-Immunogenics alleges obstruction of justice and witness tampering against Ryan Ferrell on information and belief, but fails to identify the specific information forming the basis for its belief. Docket No. 120 at 13-14. All three arguments fail. Regarding Nilon's four missed depositions, Natural-Immunogenics's second amended complaint alleges on information and belief that (1) Ryan Ferrell fraudulently cancelled four scheduled depositions with Nilon (2) with the specific intent to prevent Nilon from testifying and producing documents showing that the allegations in the the Nilon complaint were intentionally false. Docket No. 92 ¶¶ 81-93. Fraudulently canceling depositions to prevent the deponent from testifying constitutes obstruction of justice and witness tampering under federal law. See United States v. Washington Water Power Co., 793 F.2d 1079, 1085 (9th Cir. 1986) (rejecting argument that "section 1503 . . . but does not apply to cases in which the witness asks a defendant to aid him in an attempt to avoid testifying"); United States v. Lester, 749 F.2d 1288, 1293 (9th Cir. 1984)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

("The omnibus clause of section 1503, by contrast, is broader. It reaches conduct that corruptly . . . endeavors to influence, obstruct, or impede, the due administration of justice . . . . This provision includes noncoercive witness tampering[.]" (internal quotation marks omitted)). Natural-Immunogenics also alleges the various specific information that forms its belief, including an order sanctioning Ryan Ferrell for his role in Nilon's unjustified pattern of cancelling depositions. Id. ¶ 93.

The NTG Defendants next argue that Natural-Immunogenics has failed to allege obstruction of justice or witness tampering against Ryan Ferrell in connection with the declaration that Nilon submitted in support of his motion to substitute as class representative. Docket No. 120 at 14. Specifically, the NTG Defendants argue that Natural-Immunogenics has failed to allege the information forming the basis for its allegations against Ryan Ferrell. Id. This argument too fails. Regarding Nilon's declaration, Natural-Immunogenics alleges on information and belief that (1) in connection with his substitution motion, Nilon executed a false declaration stating that he was no longer able to serve as class representative because of his sick grandmother; (2) Ryan Ferrell drafted the false declaration with the specific intent of avoiding dismissal of the Nilon action for lack of a valid class representative; (3) Ryan Ferrell instructed Baslow to inform Nilon that he must execute the false declaration if he wished to withdraw as class representative; and (4) Nilon executed the false declaration to withdraw as class representative. Id. ¶¶ 94-104. Natural-Immunogenics also alleges the specific information that forms its belief, including that Ryan Ferrell signed the motion and Demulder, another member of the alleged RICO enterprise, filed a similar false affidavit in connection with a remand motion in the Carter-Reed action. Id. ¶ 98.

Lastly, the NTG Defendants argue that Natural-Immunogenics has failed to allege obstruction of justice or witness tampering against Ryan Ferrell in connection with Sandoval's April 2015 deposition testimony because Natural-Immunogenics fails to identify the specific information forming the basis for these allegations against Ryan Ferrell. Docket No. 120 at 15. Like the previous two, this argument also fails. Regarding Sandoval's deposition, Natural-Immunogenics has alleged on information and belief that (1) during the deposition, Sandoval repeatedly lied under oath about his residency in California, purchase of Sovereign Silver products, and reliance on Sovereign Silver advertisements and labels, and (2) Ryan Ferrell suborned Sandoval's perjury by bribing him to make this false testimony. Docket No. 92 ¶ 132. Natural-Immunogenics also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

alleges the specific information that forms the basis for these allegations, including that Ryan Ferrell was counsel for Sandoval in the <u>Nilon</u> action, he defended Sandoval at the deposition, and, throughout the deposition, Sandoval misrepresented basic facts establishing his fitness to serve as class representative in <u>Nilon</u> (including, for example, by misrepresenting his residency in California and failing to produce any proof supporting his allegation that he purchased Sovereign Silver products in California). <u>Id.</u> ¶¶ 127-130.

### 3.1.1.2.4.    Bribery

Lastly, Natural-Immunogenics alleges bribery in violation of 18 U.S.C. § 201 against the NTG Defendants. Docket No. 92 ¶¶ 368(c), (j), 369(a), 370(a), 371(a), 372(a), 373(a), 374(a), 375(a). The federal bribery statute prohibits parties from promising witnesses money with the intent to influence witness testimony. <u>See</u> 18 U.S.C. § 201. To allege bribery in violation of section 201, the plaintiff must allege that (1) the defendant gave, offered, or promised to give the witness something of value (2) with the corrupt intent to influence the witness's testimony. 18 U.S.C. § 201(b)(3). This requires the plaintiff to allege "what testimony was obtained, what item of value was exchanged, or what promises were made." <u>E. Sav. Bank, FSB v. Papageorge</u>, 31 F. Supp. 3d 1, 15 (D.D.C. 2014), <u>aff'd</u>, 629 F. App'x 1 (D.C. Cir. 2015).

Natural-Immunogenics has adequately alleged bribery here. For each lawsuit identified in Natural-Immunogenics' second amended complaint, Natural-Immunogenics alleges that (1) certain NTG Defendants paid or promised to pay the named plaintiffs and class representatives in each action (2) in exchange for their promise to provide intentionally false testimony supporting the NTG Defendants' claims in that action. <u>E.g.</u>, Docket No. 289. This is sufficient to allege bribery.

The NTG Defendants' motion to dismiss argues that Natural-Immunogenics does not allege bribery because it has failed to identify the specific false testimony that the NTG Defendants intended to corruptly influence. <u>E.g.</u>, Docket No. 120 at 10 ("[Natural-Immunogenics] does not identify any specific 'testimony under oath' that the NTG Defendants intended to corruptly influence, referring instead only generally to 'false declarations,' 'false deposition testimony' 'and/or' 'false trial testimony.'" (quoting Docket No. 92 ¶ 56)). The Court rejects this argument. The Court has found no case

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |

applying Rule 9(b)'s heightened pleading standards to bribery. Current case law provides that, to allege bribery, Natural-Immunogenics need only identify "what [false] testimony was obtained" in exchange for the NTG Defendants' promise of payment. Papageorge, 31 F. Supp. 3d at 15. Here, on the basis of the second amended complaint's allegations, the Court can reasonably infer that the alleged false testimony includes, at minimum, deposition, declaration, and trial testimony supporting the material allegations in the NTG Defendants' complaint in that particular action. This testimony will be different from action to action. For example, in Nilon, the false testimony would necessarily include testimony that (1) Nilon purchased the Sovereign Silver product in California; (2) Nilon relied on representations made by Natural-Immunogenics when purchasing the Sovereign Silver product; and (3) Nilon's experience purchasing the Sovereign Silver product was similar to that of other class members. See Docket No. 92 ¶¶ 60-66 (describing allegations in the Nilon state court complaint). This level of specificity is sufficient here.

### 3.1.2.        Pattern of racketeering activity

The NTG Defendants next move to dismiss for failure to allege a pattern of racketeering activity. Docket No. 120 at 16-28. The RICO statute defines "pattern of racketeering activity" to require that the defendant at least commit "two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). By itself, proving two predicate acts isn't sufficient to establish a pattern, however. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 238 (1989). To allege a "pattern of racketeering activity," the plaintiff must also allege that the predicate acts were "related" and "continuous." Id. Here, the NTG Defendants argue that there is no pattern of racketeering activity because the false advertising scheme, the wiretapping scheme, and the individual lawsuits making up both schemes were not "related." Docket No. 120 at 16-28.[8] The Court disagrees.

---

[8] The NTG Defendants also argue that there is no pattern of racketeering activity because Natural-Immunogenics has failed to allege any predicate acts in connection with the Chromadex, Carter-Reed, Himalaya Drug, Nutrisystem, Nature's Way, Kiss My Face, and Bobba actions. Docket No. 120 at 16-28. The Court considered these arguments in Section 3.1.2, supra.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
| --- | --- | --- | --- |

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
| --- | --- |

"The relatedness test is not a cumbersome one for a RICO plaintiff." Feinstein v. Resolution Trust Corp., 942 F.2d 34, 44 (1st Cir. 1991). Accordingly, "[w]hether the predicate acts alleged or proven are sufficiently related is seldom at issue." Medallion Television Enter., Inc. v. SelecTV of Cal., Inc., 833 F.2d 1360, 1364 (9th Cir. 1987). To determine whether predicate acts are related, courts must take a "flexible" approach that considers whether the alleged predicate acts have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J., 492 U.S. at 240 (quoting former 18 U.S.C. § 3575(e)).

Natural-Immunogenics has alleged relatedness here. The NTG Defendants' alleged fraudulent scheme involves similar participants (Newport Trial Group and certain of its attorneys, an investigator employed by the Newport Trial Group, and a group of friends, associates, and family members serving as named plaintiffs) through similar methods of commission (using fraudulent plaintiffs to file or threaten to file class action lawsuits against corporate defendants under California consumer protection statutes) with similar victims (corporations doing business in California) for similar purposes (to extract out-of-court settlements). These allegations are sufficient to show relatedness under the U.S. Supreme Court's "flexible" approach to relatedness. See Medallion Television Enterprises, Inc. v. SelecTV of California, Inc., 833 F.2d 1360, 1363 (9th Cir. 1987) ("There is no question that the predicate acts were related: all were directed toward inducing Medallion to enter the joint venture and to provide funds to obtain the telecast rights."); Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466 (9th Cir. 1987) (finding relatedness when defendant tile manufacturer induced plaintiff ceramic tile dealers to stock tile based on false promises that it would continue to supply tile); Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC, 116 F. Supp. 3d 1010, 1047 (N.D. Cal. 2015), order vacated in part on reconsideration on unrelated grounds, 2015 WL 4624678 (N.D. Cal. Aug. 3, 2015) (finding relatedness when alleged insurance fraud scheme involved similar participants to defraud plaintiff by purposefully concealing overcharges in connection with contracted-for services under the defendant's control). The fact that the false advertisement scheme and the wiretapping scheme involved different legal claims requiring different kinds of proof, and that the individual actions were resolved differently, does not show that the schemes were unrelated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

The NTG Defendants' motion to dismiss focuses on one case in particular, Carter-Reed. Docket No. 120 at 27. The NTG Defendants argue that, at mininum, the Carter-Reed action does not belong to the same pattern of racketeering activity as the other lawsuits identified in the second amended complaint because, unlike the others, the Newport Trial Group did not represent Demulder in Carter-Reed; rather, Demulder was represented by the non-party law firm Kirtland & Packard LLP in that action. Id. The Court rejects this argument. Under the "flexible" approach for relatedness, Natural-Immunogenics has alleged enough facts establishing that, despite Kirtland & Packard's representation of Demulder, the Carter-Reed action nevertheless belongs to the same pattern of racketeering activity as the others. H.J., 492 U.S. at 240. For example, as with the other wiretapping actions, Natural-Immunogenics alleges that Baslow instructed Demulder on how to bypass Carter-Reed's automatic disclosure recording, and then bribed Demulder to stage private phone calls to Carter-Reed. Docket No. 92 ¶¶ 222-31. Moreover, Natural-Immunogenics has also alleged extensive facts suggesting that Newport Trial Group worked closely with Kirtland & Packard to carry out the NTG Defendants' fraudulent scheme. This includes allegations that (1) Newport Trial Group served as co-counsel with Kirtland & Packard in Kiss My Face; (2) Newport Trial Group provided Kirtland & Packard with information about Demulder's fraudulent claims approximately one week before Kirtland & Packard filed suit on Demulder's behalf in Carter-Reed; and (3) Newport Trial Group represented Demulder as the defendant in Carter-Reed Co. v. Demulder, No. 130903002 (Dist. Ct. Salt Lake Cty. 2013), an action alleging abuse of process for his false claims in Carter-Reed. Id. ¶¶ 205, 232, 246-47. Taken together, these allegations show that Carter-Reed is sufficiently related to the other actions identified in the second amended complaint. Moreover, even if the Court's conclusion were to the contrary, Natural-Immunogenics has still pled an actionable pattern of racketeering activity.

3.2.     RICO claims against Knowles

In addition to the arguments above, the NTG Defendants seek to dismiss all RICO claims against Knowles for failure to allege that (1) Knowles committed two or more predicate RICO acts or (2) Knowles directed the alleged fraudulent scheme. Docket No. 120 at 28-30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date    August 1, 2016

Title       Natural Immunogenics Corp. v. Newport Trial Group, et al.

The Court dismisses Natural-Immunogenics's RICO claims against Knowles for two reasons. First, Natural Immunogenics did not respond to this argument in its opposition. "[T]he Local Rules permit the Court [to] deem failure to oppose as consent to the granting of the motion." Oakley, Inc. v. Nike, Inc., 988 F. Supp. 2d 1130, 1138 (C.D. Cal. 2013) (Selna, J.) (granting motion to judgment on the pleadings on the plaintiff's unfair competition and declaratory relief claims for failure to oppose). Second, and relatedly, without an opposition, resolving the NTG Defendants' arguments may require the Court to manufacture complex legal arguments for Natural-Immunogenics regarding the scope of an attorney's RICO liability for nominal participation in the alleged fraudulent litigation schemes. The Court will not do so here. See Western Radio Services Co. v. Qwest Corp., 678 F.3d 970, 979 (9th Cir. 2012) ("We will not do an appellant's work for it . . . by manufacturing its legal arguments . . . ."). Accordingly, the Court dismisses Natural-Immunogenics's RICO claims against Knowles.

3.3.        RICO conspiracy claims

Section 1962(d) of the RICO statute allows plaintiffs to bring claims for conspiracy to commit substantive RICO violations. Id. § 1962(d). To allege a RICO conspiracy under section 1962(d), the plaintiff need only allege an agreement to commit a substantive RICO violation. Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 774-75 (9th Cir. 2002) ("It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy."). "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." Id. at 775. Moreover, when, as here, the object of the conspiracy is fraudulent, the plaintiff must allege conspiracy under Rule 9(b)'s heightened pleading standards. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

In their motion to dismiss, the NTG Defendants argue that Natural-Immunogenics failed to allege a RICO conspiracy between the NTG Defendants under Rule 9(b)'s heightened pleading requirement. Docket No. 120 at 31-32. Like the NTG Defendants' arguments regarding Knowles, Natural-Immunogenics did not address this argument in its opposition. Natural-Immunogenics's failure to oppose therefore is grounds to dismiss the RICO conspiracy claims. Oakley, 988 F. Supp. 2d at 1138. However, the Court declines to dismiss the RICO conspiracy claims on this basis, for two reasons. First,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

unlike with Knowles, the Court does not need to manufacture complex legal arguments to determine whether Natural-Immunogenics adequately alleges RICO conspiracy under Rule 9(b). Rather, the Court need only conduct an independent review of the allegations in the second amended complaint. And, as described in Section 3.1.1.2, <u>supra</u>, Natural-Immunogenics's second amended complaint has exhaustively alleged that the NTG Defendants engaged in widespread misconduct involving bribery, mail and wire fraud, extortion, obstruction of justice, and witness tampering. The corresponding allegations specifically describing the "words, actions, [and] interdependence of activities" performed by the NTG Defendants in connection with this misconduct is sufficient to allege a RICO conspiracy under Rule 9(b). <u>Oki</u>, 298 F.3d at 775. Second, and separately, Natural-Immunogenics did address whether a RICO conspiracy was adequately alleged in its opposition to the non-NTG Defendants' Rule 12(b)(6) motion to dismiss. Docket No. 133 at 19. These arguments provide the Court with a sufficient basis for ruling on the NTG Defendants' corresponding Rule 12(b)(6) motion to dismiss. The Court therefore denies the NTG Defendants' motion to dismiss the RICO conspiracy claims.

**4.     NTG Defendants' anti-SLAPP motion to strike**

In addition to their Rule 12(b)(6) motion to dismiss, the NTG Defendants move to strike Natural-Immunogenics's UCL claim under the California anti-SLAPP statute. Docket No. 122. As explained below, the Court denies the NTG Defendants' anti-SLAPP motion to strike in substantial part.

4.1.   Protected Activity

As an initial matter, the parties dispute whether the NTG Defendants meet their initial burden of showing that their alleged misconduct was "taken in furtherance of the[ir] right of petition or free speech." <u>Hilton</u> v. <u>Hallmark Cards</u>, 599 F.3d 894, 903 (9th Cir. 2009); <u>see</u> Docket No. 122 at 9; Docket No. 131 at 8. The Court need not address this issue here. As explained below, even if the NTG Defendants meet their initial burden, Natural-Immunogenics's UCL claim is nevertheless "legally sufficient" to avoid dismissal under the NTG Defendants' anti-SLAPP motion. <u>In re NCAA Student-Athlete Name & Likeness Licensing Litig.</u>, 724 F.3d at 1273.

4.2.   Claim on behalf of the public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |

| | |
|---|---|
| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |

    In its second amended complaint, Natural-Immunogenics purports to bring its UCL claim "on behalf of themselves and on behalf of the public." Docket No. 92 at 93 ¶ 406 (emphasis added). The NTG Defendants argue that Natural-Immunogenics's UCL claim should be stricken to the extent it pursues claims on behalf of the general public. Docket No. 122 at 17. The Court agrees. Section 17203 of the UCL allows plaintiffs to pursue representative UCL claims on behalf of the general public so long as the plaintiff both meets the UCL's standing requirements and satisfies California's class action requirements under Civil Procedure Code section 382. Cal. Bus. & Prof. Code § 17203; Arias v. Sup. Ct., 46 Cal. 4th 969, 980 (2009) ("[T]he statement in section 17203 . . . that a private party may pursue a representative action under the [UCL] only if the party 'complies with Section 382 of the Code of Civil Procedure' . . . mean[s] that such an action must meet the requirements for a class action."). Here, however, Natural-Immunogenics has provided no basis for the Court to find that class certification under California law is appropriate here. Accordingly, the Court strikes the allegations in Natural-Immunogenics's second amended complaint that purport to bring claims on behalf of the general public.

    4.3.   The California litigation privilege

    The NTG Defendants next argue that Natural-Immunogenics's UCL claim should be stricken because it is barred by California's litigation privilege, Cal. Civ. Code § 47(b). Docket No. 122 at 10. The Court disagrees.

    California's litigation privilege provides absolute immunity for communications made during litigation. Cal. Civ. Code § 47(b); Rubin v. Green, 4 Cal. 4th 1187, 1193 (1993). California's litigation privilege applies broadly, and has been "held applicable to any communication, whether or not it amounts to a publication." Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990) (citations omitted). Courts have recognized two exceptions to the litigation provision, however. First, the litigation privilege does not apply to state law malicious prosecution claims. Id.; Pacific Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118 (1990). Second, the litigation privilege does not apply to federal law claims, including RICO. William Villa v. Heller, 885 F. Supp. 2d 1042, 1051-52 (S.D. Cal. 2012) ("RICO preempts the state litigation privilege."). Here, Natural-Immunogenics's UCL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

claim is based entirely on its malicious prosecution and RICO claims.[9] Docket No. 92 at 93 ¶¶ 404-04. Accordingly, the litigation privilege does not apply to either claim. Silberg, 50 Cal. 3d at 212; William Villa, 885 F. Supp. 2d at 1051-52.

    In their anti-SLAPP motion, the NTG Defendants argue that the UCL claim remains subject to the litigation privilege because UCL claims, even when based on underlying federal and state law claims that are themselves not subject to the litigation privilege, are still subject to California state law regarding privileges. This is incorrect. Courts routinely hold that when the underlying unlawful conduct is not protected by the litigation privilege, the corresponding UCL claim is also not protected by the litigation privilege. See Ansari v. Elec. Document Processing Inc., 2013 WL 4647621, at *10 (N.D. Cal. Aug. 29, 2013) ("Since Plaintiff's UCL claim rises and falls with the viability of the UCL claim's predicate acts, and Plaintiff's [other] claims do not fall under the litigation privilege at this stage, Plaintiff's UCL claim also does not fall under the litigation privilege."); Blackburn v. ABC Legal Servs., Inc., 2011 WL 8609453, at *3 (N.D. Cal. June 16, 2011) ("[B]ecause Plaintiff's Section 17200 claim is premised on violations of the [California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq.], which this Court has determined is not barred by the litigation privilege, and on violations of the FDCPA, a federal claim to which California's litigation privilege is inapplicable, Plaintiff's Section 17200 claim is not barred by the litigation privilege either."); Johnson v. JP Morgan Chase Bank DBA Chase Manhattan, 536 F. Supp. 2d 1207, 1213 (E.D. Cal. 2008) (denying motion to dismiss a UCL claim premised on other federal claims because "the federal claims preempt the litigation privilege"). Accordingly, the litigation privilege does not bar Natural-Immunogenics's UCL claim here.

### 4.4.    Standing for injunctive relief

    In the second amended complaint, Natural-Immunogenics's UCL claim requests injunctive relief (1) enjoining the NTG Defendants from continuing to file or threaten to

---

        [9]    Natural-Immunogenics's UCL claim is brought under the unfair, unlawful, and fraudulent prongs. Docket No. 92 at 92 ¶ 403. In their motion, the NTG Defendants do not specify whether they seek to strike the UCL claim in its entirety or only to the extent that it is brought under the "unlawful" prong. However, because the UCL claim is predicate solely on the litigation misconduct giving rise to the RICO and malicious prosecution claims, this does not affect the Court's analysis here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |
|---|---|---|---|

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

file fraudulent consumer class action lawsuits against corporate defendants, and (2) imposing pre-filing requirements on the NTG Defendants, including but not limited to (a) pleading all future claims with Rule 9(b) particularity and (b) requiring disclosure of any relevant order in this case to the court and opposing parties in any future case where the NTG Defendants seek class certification. Docket No. 92 ¶¶ 408-09. The NTG Defendants argue that Natural-Immunogenics lacks standing to seek injunctive relief under the UCL. Docket No. 122 at 17. The Court disagrees.

The plaintiff bears the burden of establishing "standing for each type of relief sought." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). To establish Article III standing, the plaintiff must allege that (1) they suffered an injury-in-fact; (2) the defendant's conduct caused the plaintiff's injury; and (3) the relief that plaintiff requests will likely redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Moreover, when, as here, the plaintiff seeks injunctive relief, the plaintiff must also demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)).

Here, Natural-Immunogenics has sufficiently shown a threat of future harm against the NTG Defendants. To show a threat of future harm of fraudulent litigation by the NTG Defendants, Natural-Immunogenics alleges that (1) Natural-Immunogenics continues to sell the Sovereign Silver products at issue in Nilon in California; (2) the NTG Defendants continue to work as either attorneys and investigators for the Newport Trial Group; (3) the NTG Defendants continue to prosecute fraudulent consumer protection actions against corporate defendants; and (4) the putative class action claims in Nilon were dismissed without prejudice with no settlement, waiver, or bar on the NTG Defendants' right to bring subsequent consumer protection actions against Natural-Immunogenics regarding its Sovereign Silver products. Docket No. 92 at 2-4 ¶¶ 1, 3-7, 144, 407. Taken together, these allegations establish "sufficient likelihood" that the NTG Defendants could again pursue fraudulent litigation against Natural-Immunogenics. Lyons, 461 U.S. at 111. Indeed, as the NTG Defendants expressly state in their reply, "[t]he court in the underlying case never ruled on the false advertising issue, and *nothing in the prior judgment grants Plaintiff a free pass to continue to falsely advertise its product*." Docket

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |

| | |
|---|---|
| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |

No. 138 at 13 (emphasis added). Natural-Immunogenics has therefore established Article III standing to seek injunctive relief at the pleading stage.

The NTG Defendants further argue that, even if Natural-Immunogenics has standing to pursue injunctive relief generally, Natural-Immunogenics nevertheless lacks standing to pursue the particular injunctive relief requested in its second amended complaint. Docket No. 122 at 18. Specifically, the NTG Defendants argue that Natural-Immunogenics cannot seek an injunction merely "requir[ing] the party enjoined to comply with existing law." Id. at 18-19 (citing EEOC v. AutoZone, Inc., 707 F.3d 824, 841 (7th Cir. 2013) ("An obey-the-law injunction departs from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation.")). The Court disagrees.

District courts have "broad latitude in fashioning equitable relief when necessary to remedy an established wrong." Alaska Ctr. For the Env't v. Browner, 20 F.3d 981, 986 (9th Cir. 1994) (citing Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982)). This includes, as requested here, prophylactic pre-filing requirements necessary to prevent the filing of fraudulent lawsuits. See Weissman v. Quail Lodge, Inc., 179 F.3d 1194, 1197 (9th Cir. 1999) ("District courts have the inherent power to file restrictive pre-filing orders against vexatious litigants with abusive and lengthy histories of litigation."). Such an injunction would not be an "obey-the-law injunction." AutoZone, 707 F.3d at 841. However, at this stage, the Court need not determine whether Natural-Immunogenics is entitled to the requested relief in the event there is a finding of liability. See United States v. Citgo Petroleum Corp., 697 F. Supp. 2d 670, 674 (W.D. La. 2010) ("CITGO presents no legal authority that the request for injunctive relief must be narrowly tailored or specific . . . . [T]he mere request for injunctive relief must only meet the requirements of Rule 8 of the Federal Rules of Civil Procedure. . . . Should the court determine after trial that injunctive relief is necessary, such relief will be made specific and in accordance with the law."). Rather, it is enough for Natural-Immunogenics to show that it has standing to pursue injunctive relief under the UCL generally. Id. And, as discussed above, Natural-Immunogenics has done so here.

**5.     Non-NTG Defendants' Rule 12(b)(6) motion to dismiss**

5.1.          RICO claims against Pfleg, Dronkers, Demulder, and Schoonover

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                     Date   August 1, 2016

Title   Natural Immunogenics Corp. v. Newport Trial Group, et al.

Natural-Immunogenics's second amended complaint alleges substantive RICO violations under section 1962(c) against Pfleg, Dronkers, Demulder, and Schoonover for their conduct in the Nature's Way, Kiss My Face, Carter-Reed, and Himalaya Drug actions. Docket No. 1 ¶ 336. The non-NTG Defendants move to dismiss Natural-Immunogenics's section 1962(c) claims against Pfleg, Dronkers, Demulder, and Schoonover for failure to allege, among other things,[11] that they engaged in a "pattern of racketeering activity." Docket No. 126-1 at 18-20. The Court grants the non-NTG Defendants' motion to dismiss on this ground.

### 5.1.1.        Continuity

To establish a "pattern of racketeering activity," the plaintiff must allege that the defendants engaged in racketeering activity that was "related" and "continuous." H.J., 492 U.S. at 238. "The pattern requirement must be satisfied as to each defendant individually." Eclectic Properties E., LLC v. The Marcus & Millichap Co., 2012 WL 713289, at *9 (N.D. Cal. Mar. 5, 2012), aff'd sub nom. Eclectic Properties E., LLC v. Marcus & Millichap Co., 751 F.3d 990 (9th Cir. 2014) (citing Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1027 (8th Cir. 2008); United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987)). Under RICO, continuity may be either "open-ended" or "close-ended." Id. at 241. Close-ended conduct consists of a "series of related predicates extending over a substantial period of time." Id. Open-ended conduct, by contrast, consists of "past conduct that by its nature projects into the future with a threat of repetition." Id. As explained below, Natural-Immunogenics has not alleged either open-ended or close-ended continuity against Pfleg, Dronkers, Demulder, and Schnoover. Accordingly, the Court dismisses the RICO claims against these defendants.

### 5.1.1.        Close-ended continuity

There is no bright-line rule for determining the period of time required for close-ended continuity. Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1528 (9th Cir. 1995) (declining

---

[11] Because the Court grants the non-NTG Defendants' motion to dismiss for failure to allege a pattern of racketeering activity, the Court need not consider the non-NTG Defendants' other arguments for dismissal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date    August 1, 2016

Title    Natural Immunogenics Corp. v. Newport Trial Group, et al.

to establish a "hard and fast, bright line, one-year rule" for close-ended continuity because "such a rigid requirement . . . would contradict the fluid concept of continuity enunciated by the Supreme Court in H.J., Inc."). However, courts virtually always find that activity spanning less than one year does not satisfy the close-ended continuity requirement. Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 366-67 (9th Cir. 1992) ("We have found no case in which a court has held the [close-ended continuity] requirement to be satisfied by a pattern of activity lasting less than a year."); Eclectic Properties E., 2012 WL 713289, at *10 ("[C]ourts have rarely if ever found activity lasting less than a year sufficient.").

Here, Natural-Immunogenics's RICO claims against Pfleg, Dronkers, Demulder, and Schoonover are based solely on their participation in the Nature's Way, Kiss My Face, Carter-Reed, and Himalaya Drug actions, with each lawsuit lasting no more than approximately six months. Compare, e.g., Docket No. 92 ¶ 202 ("*In early 2012*, Defendant Andrew Baslow offered a bribe to Matthew Dronkers.") (emphasis added), with id. ¶ 205 ("*On May 11, 2012*, . . . [Newport Trial Group, Scott Ferrell, and Victoria Knowles] filed a Verified Class Action Complaint against Kiss My Face, LLC on behalf of plaintiff and class representative Dronkers.") (emphasis added), and id. ¶ 219 ("*In November of 2012,* Kiss My Face entered into a confidential settlement agreement with the NTG and Dronkers . . . .") (emphasis added). As the great weight of case law makes clear, see Religious Tech. Ctr., 971 F.2d at 366-67, Pfleg's, Dronker's, Demulder's, and Schoonover's participation in the lawsuits, extending no longer than approximately six months, is insufficient for close-ended continuity.

### 5.1.2.    Open-ended continuity

To allege open-ended continuity, the plaintiff must allege that the predicate RICO acts either "specifically threaten repetition" or "[have] become a regular way of doing business" for the defendants. Allwaste, 65 F.3d at 1528 (internal quotation marks omitted). Here, there is no basis for the Court to find that Pfleg, Dronkers, Demulder, and Schoonover will prosecute fraudulent class action lawsuits in the future. Accordingly, Natural-Immunogenics has also failed to allege open-ended continuity.

### 5.2.    RICO claims against Sandoval

Natural-Immunogenics's second amended complaint alleges substantive RICO

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | August 1, 2016 |

| Title | Natural Immunogenics Corp. v. Newport Trial Group, et al. |

violations under section 1962(c) against Sandoval for his conduct in the Nilon action. Docket No. 1 ¶ 336. As with the other defendants, the substantive RICO claims against Sandoval are based on predicate mail fraud, wire fraud, bribery, extortion, obstruction of justice, and witness tampering allegations. Docket No. 92 ¶ 368. The non-NTG Defendants argue that the mail fraud, wire fraud, and extortion allegations must be dismissed because these allegations are pled on "information and belief," and Natural-Immunogenics has failed to allege the specific information that forms its belief. Docket No. 126-1 at 16. Specifically, the non-NTG Defendants argue that Natural-Immunogenics has failed to allege why it believes that (1) Sandoval never purchased Sovereign Silver; (2) Sandoval did not purchase Sovereign Silver in El Cajon, California; (3) Sandoval did not purchase Sovereign Silver in reliance on Sovereign Silver labels or advertisements; and (4) Sandoval agreed to accept a bribe from Ryan Ferrell or Baslow in exchange for providing false testimony as class representative in Nilon. Id.

The Court disagrees. In its second amended complaint, Natural-Immunogenics alleges specific information that forms the basis of each belief, including that (1) Sandoval produced no proof of purchase in discovery or at deposition; (2) at the time Sandoval allegedly purchased the Sovereign Silver product in California, he was prohibited from leaving Arizona under the terms of supervised probation for a prior felony conviction; (3) Sandoval testified at his deposition that he had no knowledge about any health effects related to Sovereign Silver products; and (4) Ryan Ferrell was lead counsel in the Nilon action at the time Sandoval substituted as class representative, and Baslow is the individual who offers bribes to people on the Newport Trial Group's behalf. Docket No. 92 ¶¶ 47-48, 76, 117, 119-120, 128. Together, these allegations are sufficient to support the mail fraud, wire fraud, and extortion allegations against Sandoval made on information and belief. The Court therefore denies the non-NTG Defendants' motion to dismiss on this ground.

5.3.       RICO conspiracy claims

In addition to the substantive RICO violations, Natural-Immunogenics also alleges RICO conspiracy against the non-NTG Defendants. Docket No. 92 ¶¶ 392-400. The non-NTG Defendants move to dismiss the RICO conspiracy claims against Pfleg, Demulder, Dronkers, and Schoonover on the grounds that they are predicated on defective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                    Date   August 1, 2016

Title   Natural Immunogenics Corp. v. Newport Trial Group, et al.

---

substantive RICO violations. Docket No. 126-1 at 20. The Court rejects this argument. To
allege conspiracy to violate RICO, the plaintiff need only allege an agreement to commit
a substantive violation of RICO. Oki, 298 F.3d at 774-75. To allege RICO conspiracy
against a particular defendant under this standard, the plaintiff need not also allege the
elements of a substantive RICO violation against the same defendant. Salinas v. United
States, 522 U.S. 52, 65 (1997) ("It is elementary that a conspiracy may exist and be
punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil,
dangerous to the public, and so punishable in itself."); Carlin v. Dairy Am., Inc., 2016
WL 3447827, at *4 (E.D. Cal. June 23, 2016) ("[No] appellate case this court can find
ha[s] held that a plaintiff must be able to plead the elements of a substantive RICO
violation against the same defendant that any conspiracy claim is plead against."). Rather,
the plaintiff need only allege that the defendant "knowingly agreed to facilitate a scheme
which includes the operation or management of a RICO enterprise." United States v.
Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004), as modified by 425 F.3d 1248 (9th Cir.
2005). Here, Natural-Immunogenics has adequately alleged that Pfleg, Demulder,
Dronkers, and Schoonover all agreed to participate in the NTG Defendants' fraudulent
litigation scheme. Docket No. 92 ¶¶ 175-76, 202-03, 222-23, 249-50. Accordingly, the
Court declines to dismiss the RICO conspiracy claims against Pfleg, Demulder,
Dronkers, and Schoonover.

### 5.4.      UCL claims

Natural-Immunogenics also brings UCL claims against the non-NTG Defendants.
Docket No. 92 ¶¶ 401-412. The non-NTG Defendants move to dismiss the UCL claims to
the extent they are based on defective predicate RICO violations. Docket No. 126-1 at 20.
Because Natural-Immunogenics has failed to adequately allege substantive RICO
violations under 18 U.S.C. § 1962(c) against Pfleg, Dronkers, Demulder, and
Schoonover, the Court dismisses the UCL claims against Pfleg, Dronkers, Demulder, and
Schoonover. See Rubio v. Capital One Bank (USA), N.A., 572 F. Supp. 2d 1157, 1168
(C.D. Cal. 2008) ("Where a plaintiff cannot state a claim under the 'borrowed' law, she
cannot state a UCL claim either."). However, the Court dismisses the UCL claims against
Pfleg, Dronkers, Demulder, and Schoonover only to the extent they are based on
substantive RICO violations under 18 U.S.C. § 1962(c). Natural-Immunogenics may
proceed with its UCL claims to the extent they are based on malicious prosecution and
RICO conspiracy claims under 18 U.S.C. § 1962(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 15-02034 JVS(JCGx)                    Date   August 1, 2016

Title     Natural Immunogenics Corp. v. Newport Trial Group, et al.

**6.     Conclusion**

For the reasons stated above, the Court **grants** the motions as follows:

(1)     The Court **grants** the NTG Defendants' Rule 12(b)(6) motion to dismiss the 18 U.S.C. § 1962(c)-(d) claims against Knowles;

(2)     The Court **grants** the NTG Defendants' anti-SLAPP motion to strike all allegations purporting to bring UCL claims on behalf of the general public; and

(3)     The Court **grants** the non-NTG Defendants' Rule 12(b)(6) motion to dismiss the 18 U.S.C. § 1962(c) and corresponding UCL claims against Pfleg, Dronkers, Demulder, and Schoonover.

The Court otherwise **denies** the pending motions.

IT IS SO ORDERED.

                                                    :        00

                            Initials of Preparer    ig for kjt