Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
3210 S. Gilbert Road, Suite 4
Chandler, AZ 85286
Phone: (602) 388-8899
Fax: (602) 393-4361
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>Defendants. | Case No.: 8:15-cv-02034-JVS (JCG)<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO TAKE FURTHER DISCOVERY AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>Hearing Date:  Oct. 17, 2016<br>Time:    1:30 PM<br>Judge:  James V. Selna |

# TABLE OF CONTENTS

I.    FACTS ................................................................................................................ 2

  A.  The Fraudulent Circumstances Surrounding Kristyne Hanberg's
      Lawsuit Against DeviantArt, Inc. .................................................................. 4

  B.  The NTG Email to Continuity Research Demonstrates the
      Routine Manufacture of Plaintiffs and Litigation ........................................ 7

  C.  Facts Surrounding NIC's Request to Extend the Deadline to
      Amend the Complaint .................................................................................... 8

II.   LAW AND ARGUMENT FOR ADDITIONAL DISCOVERY ................... 10

  A.  Standard of Review ...................................................................................... 10

  B.  The Requests for Further Discovery Should Be Granted Because
      Each One Is Relevant and Proportional to this Case ................................... 11

    1.  Kristyne Hanberg Lawsuit and Continuity Research's Email
        Are All Highly Relevant Evidence of NTG Manufacture of
        Fraudulent Litigation ............................................................................... 11

    2.  Every Proportionality Factor Weighs in Support of Granting
        Discovery into the Hanberg Case and the Continuity Research
        Email ........................................................................................................ 12

III.  LAW AND ARGUMENT FOR LEAVE TO AMEND ............................... 15

  A.  Standard of Review ...................................................................................... 15

  B.  NIC Satisfies the Good Cause Showing for Modification .......................... 16

  C.  All of the *Foman* Factors Weigh in Favor of Granting NIC
      Leave to Amend ........................................................................................... 19

IV.   CONCLUSION ................................................................................................ 21

# **TABLE OF AUTHORITIES**

**Cases**

*City of Rialto v. U.S. Dep't of Def.*, 492 F. Supp. 2d 1193, 1202 (C.D. Cal. 2007) ...................................................................................... - 14 -

*DCD Programs Ltd. v. Leighton,* 833 F.2d 183, 187 (9th Cir.1987................ - 22 -

*Dixon v. Magna-RX, Inc.*, No. CV1407196BROGJSX, 2016 WL 1397584, at *3 (C.D. Cal. Mar. 31, 2016).........................................- 18 -, - 22 -

*Donohoe v. Bonneville Int'l Corp.*, 602 F. Supp. 2d 1, 3 (D.D.C. 2009) ....................................................................................................... - 13 -

*Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003) ................................................................................................ - 22 -

*Fed. Trade Comm'n v. DIRECTV, Inc.*, No. 15-CV-01129-HSG(MEJ), 2015 WL 8302932, at *3 (N.D. Cal. Dec. 9, 2015) (............... - 14 -

*Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2014 WL 6626227, at *2 (N.D. Cal. Nov. 20, 2014) ............................................ - 19 -

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ..................................................... - 22 -

*Goes Int'l, AB v. Dodur Ltd.*, No. 14-CV-05666-LB, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) ........................................................ - 14 -

*Hickman v. Taylor*, 329 U.S. 495, 507 (1947)................................................. - 13 -

*In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2015 WL 9694792, at *3 (N.D. Ala. Dec. 9, 2015) .......................... - 16 -

*In re Fritz Cos. Sec. Litig.,* 282 F.Supp.2d 1105, 1109 (N.D. Cal. Aug. 27.2003) .............................................................................................. - 22 -

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992).........................................................................................- 18 -, - 19 -

*LifeScan, Inc. v. Shasta Techs., LLC*, No. 5:11-CV-04494-EJD, 2012 WL 6045897, at *2 (N.D. Cal. Dec. 5, 2012) .................................... - 18 -

*Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990) ...................................................................................- 22 -, - 23 -

*Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).............................. - 14 -

*See Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1103–04 (C.D. Cal. 2011) ....................................................................................... - 23 -

*Shuey v. Cty. of Ventura*, No. 2:14-cv-09520-ODW-SHX, 2016 WL 4367224, at \*2 (C.D. Cal. Aug. 11, 2016) ............................................ - 18 -

*Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002) ............. - 19 -

**Statutes**

Cal. Bus. & Prof. Code § 17602 ...................................................................... - 8 -

**Rules**

Fed. R. Civ. P. 26 ........................................................................- 13 -, - 14 -, - 16 -

Fed. R. Evid. 401 ........................................................................................... - 14 -

Rule 16 ............................................................................................................ - 19 -

## I.   Introduction

Plaintiff Natural-Immunogenics Corp. ("Plaintiff" or "NIC"), by counsel, hereby seeks leave to take additional discovery beyond the limitation set in Dkt. 155.  In addition, NIC respectfully moves this Court to alter the Scheduling Order (Dkt. 91) to permit NIC to file a Third Amended Complaint, including recent, additional evidence of predicate acts arising from *Hanberg v. DeviantArt, Inc.*, No. BC 615184, (Super. Ct. L.A. Cnty. Mar. 28, 2016).

In its July 20, 2016 order, the Court "limited the scope of discovery to the specific prior suits alleged in the Second Amended Complaint."  Dkt. 155.  The Court further instructed that if "Natural-Immunogenics Corp. believes it has a basis to conduct discovery –whether of defendants or any third party–beyond the cases pled, it shall first apply to the Court for leave to do so." *Id.*  Consistent with those instructions, NIC hereby seeks leave to perform additional discovery related to: (1) Kristyne Hanberg's lawsuit against DeviantArt, Inc. and (2) Continuity Research documents concerning the creation of sham corporations for litigation purposes.[1]  Rule 26(b)(1) permits discovery where the pursuit of information is proportional to the scope and needs of the case.  Every factor of that proportionality analysis weighs in favor of NIC's requested relief here.

In addition, NIC seeks modification of the Court's Scheduling Order to extend the deadline for an amended complaint so that NIC may plead a narrow set of facts and predicate acts based on recent evidence.  That amended complaint will not substantially expand the scope of discovery, will not extend discovery or include new parties, and it will not prejudice Defendants.  The amended complaint

---

[1] Local Rule 16-14 requires NIC to advance this motion before the District Court.  "Any application to modify an order pursuant to F.R.Civ.P. 16 shall be made to the judicial officer who entered the order."  L.R. 16-14.

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO TAKE DISCOVERY
AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

1

would include predicate acts involving NTG's use of Kristyne Hanberg in litigation against DeviantArt, Inc.  NIC will prove, inter alia, that Kristyne Hanberg never purchased her DeviantArt, Inc. subscription, contrary to what she alleged in her NTG complaint.  Kristyne Hanberg was at work (teaching in a high school) at 9:31 am on October 15, 2015, when NTG's attorneys, not Hanberg, actually purchased a DeviantArt, Inc. subscription in her name from NTG's corporate offices in Newport Beach, California.  It is thus not the case, contrary to allegations in the Hanberg complaint, that Hanberg relied on DeviantArt representations in making a purchase.  That conduct is consistent with NIC's overarching allegations in this case, to wit, that NTG manufactures fraudulent litigation on behalf of "for hire" plaintiffs.

## II.    FACTS

NIC has sued NTG, several of its attorneys, its investigator ("the NTG defendants"), and six of the law firm's hired plaintiffs ("the non-NTG defendants").  Dkt. 92.  NIC alleges both malicious prosecution and federal racketeering violations.  *See id.*  NIC's RICO case concerns NTG's use of "for hire" plaintiffs in consumer class action lawsuits.  *See generally id.*  According to NTG's promotional statements, from those lawsuits it has recovered over $300 million, primarily through settlements.  *Id.* at 94.  NTG recruited individuals willing to sponsor fraudulent or extortionate legal claims in exchange for payment or the promise of payment from NTG.  *See generally id.*  NTG investigated and created legal claims, then hired individuals to serve as Plaintiffs who in fact suffered no injury.  *Id.*  Those legal pleadings included materially false representations concerning the plaintiffs' experiences with defendant company

services or products.  NTG never revealed in any of its cases that its plaintiffs were "testers" who in fact suffered none of the alleged injuries and were hired by NTG solely to be plaintiffs in litigation NTG fabricated.  NTG and its "clients" took significant measures to conceal their relationship with NTG, including, inter alia, submitting false affidavits and testimony in depositions and to the courts and withholding information responsive to discovery requests.  All of the non-NTG Defendants were contacted by NTG agents, and cooperated with NTG, *prior* to their alleged legal injuries.  Certain Defendants testified falsely concerning their engagement with NTG and the circumstances of their consumer purchases.

NTG has also conspired with other law firms which then pursue litigation on NTG's behalf, relying on NTG's "for hire" plaintiffs.  For example, Taylor Demulder's lawsuit against Carter-Reed, LLC was not brought by NTG; rather, the case was filed by Kirtland & Packard, another Los Angeles area firm, at NTG's request.  Dkt. 92 at ¶ 205.  While the suit itself was filed by another firm, phone records of NTG's investigator, Andrew Baslow, conclusively establish that NTG recruited Demulder and communicated with him before, during, and after he incurred his alleged legal "injury" that served as the vehicle for his lawsuit.  Dkt. 131 pp. 26-27.  NTG's discovery responses indicate that NTG's Scott Ferrell interacted with Kirtland Packard before Kirtland Packer filed the Demulder lawsuit.  Exh. B at 11.  Demulder's lawsuit was almost identical to other claims filed by his associates Andrew Nilon and Sam Schoonover, which involved claims under the California Invasion of Privacy Act ("CIPA").  Demulder alleged that he suffered his legal injury and filed his lawsuit within one calendar week.  *Demulder*

*v. Carter-Reed Company, LLC*, No. 3:12-cv-2232-BTM-MDD, Dkt. 1 p. 3 (S.D. Cal. Sept. 13, 2012).

Kristyne Hanberg's case against DeviantArt.com is another example of NTG manufactured litigation involving a Plaintiff for hire. In June 2011, NIC discovered Ms. Hanberg's lawsuit after DeviantArt's attorney, Scott Vick, contacted NIC counsel to advise NIC counsel of the suspicious irregularities in the suit against his client. NIC reiterates those circumstances below. NIC has discovered an additional area that bears on NTG's RICO enterprise: Continuity Research, LLC's email communication from NTG wherein NTG attorneys instruct Continuity employees to establish and register dummy corporations used by NTG thereafter as sham "plaintiffs" in federal litigation.

## A. The Fraudulent Circumstances Surrounding Kristyne Hanberg's Lawsuit Against DeviantArt, Inc.

On Saturday, June 11, 2016, counsel for NIC received an unsolicited email from attorney Scott Vick marked "Common Interest Privilege." Decl. Peter A. Arhangelsky ¶ 6 ("PAA Decl."). Therein Mr. Vick disclosed to NIC suspicious circumstances surrounding five cases brought on behalf of Kristyne Hanberg, one of which was against his client, DeviantArt, Inc., styled *Hanberg v. DeviantArt, Inc.*, No. BC 615184, (Super. Ct. L.A. Cnty. Mar. 28, 2016). NIC later served a subpoena on Scott Vick for all relevant information. Dkt. 131-1 ¶ 28. The information produced, which NIC filed with this Court in Dkt. 131, confirmed that NTG had manufactured fraudulent litigation and then relied on Ms. Hanberg as its for hire plaintiff. In pleadings filed with this Court, NTG later described Ms. Hanberg as a "tester" plaintiff who entered a transaction solely to support litigation. Dkt. 138 p. 17. The facts reveal that contrary to the Hanberg complaint

Ms. Hanberg never actually purchased her DeviantArt.com subscription. That purchase was completed at NTG's Newport Beach offices while Ms. Hanberg was located miles away at work teaching students on a Thursday. *See generally* Exh. C. Hanberg's complaint, which alleged that she suffered a UCL/CLRA injury through her personal purchase, was baseless and fraudulent. NTG thus used Kristyne Hanberg to further its RICO enterprise by filing false claims naming her as the plaintiff and class representative.

Ms. Hanberg is a 29-year-old teacher in the greater Los Angeles area. In late October of 2015, NTG began threatening and filing lawsuits in her name. Exh. D at 27. By April 22, 2016, Ms. Hanberg had been listed as the named plaintiff in five class action lawsuits. Dkt. 131 p. 22. Scott Ferrell, founding partner of NTG, sent the initial demand letter to one of the five companies that Ms. Hanberg sued, DeviantArt, Inc., on October 27, 2016. *Id.* That letter threatened a class action lawsuit against DeviantArt for violating California's Auto-Renewal Statute (Cal. Bus. & Prof. Code § 17602(a)(1)), allegedly because DeviantArt failed to present terms of an automatic renewal policy. *Id.* Scott Ferrell later handed that case to Gillian L. Wade, who filed suit on Ms. Hanberg's behalf on March 28, 2016. Exh. E at 30. Gillian Wade is a partner at the firm, Milstein, Adelman, Jackson, Fairchild, and Wade, LLP, and counsel of record for the non-NTG defendants in this case. Despite the handoff, Ferrell remained Hanberg's counsel. The DeviantArt case settled quickly after Hanberg's deposition revealed highly questionable conduct. Scott Ferrell signed Ms. Hanberg's settlement agreement in June of 2016, identifying himself as Ms. Hanberg's counsel. Dkt. 140 p. 20.

NTG fabricated the Hanberg case by purchasing the product in her name from their offices and then falsely representing in the Hanberg complaint that Hanberg had made the purchase herself. DeviantArt discovered during litigation that the IP address associated with Hanberg's online purchase from October 15, 2016 traced to NTG's law firm servers in Newport Beach, California. Exh. C. The transaction via credit card occurred at 9:31 am on a Thursday, while Hanberg was teaching Biology more than twenty miles away at Santa Margarita High School.[2] Hanberg's legal claim against DeviantArt was thus illegitimate. Hanberg never made the purchase that was said to be the basis of her injury. She never suffered a cognizable legal injury. The purchase was executed by NTG solely to support litigation.

Ms. Hanberg's June 10, 2016 deposition later revealed a broader picture of NTG's unlawful business practices. *See generally* Exh. H. Based on that testimony, no evidence of a proper attorney-client relationship ever existed between Scott Ferrell and Kristyne Hanberg. Hanberg's testimony revealed that she was unaware NTG had filed four other lawsuits on her behalf. *Id*. at pp. 86-95. She could not recall any information about the services or products that she had allegedly purchased to support the four other lawsuits in which she was listed as a plaintiff. *See e.g., id*. at pp. 95, 98. She allegedly purchased services that she

---

[2] NIC's counsel understands that Hanberg's employment records confirm that she was at work on the morning of Thursday, October 15, 2015. DeviantArt's counsel has acknowledged that fact based on the subpoenaed records received in discovery in the Hanberg case. The records prove that Ms. Hanberg could not have made her purchase from NTG's office. NIC was unable to obtain physical copies of those records from DeviantArt's counsel because the Court limited discovery on July 20, 2016, while NIC's subpoena to DeviantArt remained pending. NIC requires leave to serve discovery, in part, to obtain those records.

admitted were of no use to her, including, e.g., a corporate-level Information Technology package, including server support and domain logins, that was designed for businesses with at least five employees.  Although Hanberg (a high school biology teacher) filed a lawsuit based on those services, she could not recognize the name of the company, and had no knowledge of the services.  *Id*. at 95. She was another NTG sham plaintiff.

Her testimony revealed that NTG sent demand letters and filed lawsuits in her name without ever communicating with her.  Hanberg testified that she first met her current counsel in the *DeviantArt* matter two days before her deposition, and more than six months after NTG served her demand letter on *DeviantArt*.  *Id*. at 102-03.  After just one hour in deposition, wherein Hanberg's counsel instructed her not to answer basic questions concerning how she became a plaintiff, Hanberg's counsel terminated the deposition.  *Id*. at 111.  A complete copy of that deposition, replete with objections on relevance and privilege grounds, is attached for this Court's review.  Exh. H.  As of this filing, each of the fabricated Hanberg cases has been voluntarily dismissed or settled.

### B. The NTG Email to Continuity Research Demonstrates the Routine Manufacture of Litigation

On February 5, 2016, counsel for NIC received an unsolicited call from Allison Borts, an in-house attorney for Continuity Research, LLC.  PAA Decl. at ¶ 3; *see also* Exh. A at 6.  Ms. Borts informed NIC that she had discovered unprivileged email correspondence sent to Continuity Research by NTG attorneys Scott Ferrell and David Reid.  PAA Decl. at ¶ 3.  That correspondence allegedly contained NTG's instructions to employees of Continuity Research to form dummy corporations that would facially appear to be legitimate "competitors."  *Id*.

NTG allegedly selected individuals to front as corporate officers in the corporate filings. *Id*. at ¶ 4. NTG later used those dummy corporations as sham "plaintiffs" in litigation involving intellectual property claims against corporate defendants. *Id*.

Continuity Research has expressed a willingness to supply information if subject to subpoena. *Id*. at ¶ 5. NIC therefore requests leave of Court to pursue that subpoena. To the extent discovery reveals that NTG attorneys fabricated and then used dummy corporations as plaintiffs, that information is highly relevant to NIC's RICO claims in this case. The fabrication of shell corporations for litigation purposes reveals a method of operation, common scheme or plan, and exposes NTG's willingness to manufacture baseless legal claims. That information is relevant to the NTG defendants' states of mind.

### C. Facts Surrounding NIC's Request to File a Third Amended Complaint

This Court entered its scheduling order on May 9, 2016. Dkt. 91. NIC filed its Second Amended Complaint ("SAC") on May 10, 2016. Dkt. 92. The NTG defendants filed their second round of dispositive motions on May 31, 2016 and the non-NTG defendants followed on June 6, 2016. *See* Dkts. 120, 122, 124–26. The hearing on the dispositive motions was originally scheduled for July 11th, but was subsequently delayed by two weeks to July 25th. In the interim, on July 20th, Scott Vick notified NIC that he was in receipt of the subpoena response from Hanberg's employer documenting that she was at work when the purchase from NTG's offices occurred. Following the late July hearing, the Court issued its August 1, 2016 Order, and denied the dispositive motions, thus permitting NIC's

claims to continue under RICO, the UCL statute, and malicious prosecution. Dkt. 157.

The Defendants' Answers to the SAC were originally due on August 16. NIC stipulated to a ten-day extension of that deadline, making defendants' Answers and Affirmative defenses due instead on August 26, 2016. Dkt. 160. Under the original May 9, 2016 Scheduling Order, NIC was required to amend its complaint by August 24th. Dkt. 91. As explained below, that deadline was impractical given that this Court had not resolved dispositive motions on the Second Amended Complaint until August 2, 2016. Dkt. 157. It would have been impractical for NIC to notice a motion for leave to amend the complaint before having received the Court's August 2 Order on dispositive motions, and then without having the Defendants' Answers and Affirmative Defenses on August 26.

Given those concerns, on August 18, 2016, NIC sent NTG a letter asking if defendants would jointly stipulate to a request modifying the schedule to give NIC an additional forty five (45) days to amend the Complaint. Exh. F. NTG replied via email, four days later, indicating that they would not stipulate. Exh. G. NTG has not identified any prejudice to NTG through the proposed amendment. *See id.* The parties were unable to reach an agreement. NIC thus files this request seeking leave to add new facts into the operative complaint.

As relevant to the proposed amended complaint, NIC has also been hindered in its ability to plead new evidence and facts because Defendants have failed to respond to NIC discovery in good faith. In response to Defendants' discovery requests to date, NIC has produced over 6,600 documents and over 7,000 pages of additional nonparty documents responsive to NIC's Rule 45 subpoenas. NIC has

produced detailed privilege logs listing over 3,700 documents potentially responsive to the Defendants broad discovery requests.  By contrast, after having months to complete responses with multiple extensions, the Defendants have supplied only <u>twelve</u> (12) responsive documents to NIC, and two of those were reprints of public legal filings available through CM/ECF.  We are now nine months into litigation, and Defendants have collectively produced no more than ten legitimate files in a federal RICO action that focuses on at least eight separate consumer class action cases. The Defendants have also failed to meet their mandatory disclosure obligations under 26(a)(1) by withholding the names of individuals with relevant information, and by failing to produce addresses and telephone numbers for any potential witness (e.g., Brooks Barding, Trycia Carlberg, Richard Richardson, and others).  NIC intends to brief those significant discovery transgressions in a separate pleading.  Nonetheless, as relevant here, the delays inherent to this process have now prompted this instant motion.  There is good cause for a short extension of the date for an amendment and that extension is in the interests of justice.

## III.    ARGUMENT

### A. Standard of Review Concerning Leave to Obtain Discovery

The discovery rules "are to be accorded a broad and liberal treatment." *Donohoe v. Bonneville Int'l Corp.*, 602 F. Supp. 2d 1, 3 (D.D.C. 2009) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case…."  Fed. R. Civ. P. 26(b)(1). Generally "a request for discovery should be considered relevant if there is any

possibility that the information sought may be relevant to the claim or defense of any party." *City of Rialto v. U.S. Dep't of Def.*, 492 F. Supp. 2d 1193, 1202 (C.D. Cal. 2007). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Goes Int'l, AB v. Dodur Ltd.*, No. 14-CV-05666-LB, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016).

### B. The Requests for Further Discovery Should Be Granted Because Each Subject Is Relevant and Proportional to this Case

#### 1. Kristyne Hanberg's Lawsuit and Continuity Research's Email Are All Highly Relevant Evidence of NTG Manufacture of Fraudulent Litigation

NIC seeks leave to take additional discovery into two discrete and targeted areas of inquiry, which directly support the operative complaint's allegations. The scope of discoverable information is limited to relevant evidence. Fed. R. Civ. P. 26(b)(1). Even at trial, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes." *Fed. Trade Comm'n v. DIRECTV, Inc.*, No. 15-CV-01129-HSG(MEJ), 2015 WL 8302932, at *3 (N.D. Cal. Dec. 9, 2015) (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).

The Hanberg evidence establishes that NTG manufactures fraudulent litigation as NIC has alleged throughout its SAC. That evidence proves that NTG staged the online purchase that later became the foundation for NTG's false allegations in the DeviantArt complaint and false representations in the DeviantArt case.

The Hanberg evidence also establishes open-ended continuity under RICO, which is an element of NIC's complaint.  Hanberg's lawsuit against DeviantArt proves that NTG is still engaged in the RICO enterprise, to wit, the fabrication of sham lawsuits.  Hanberg's purported purchase and the initial NTG demand letter prove that the RICO scheme presents ongoing risk of public harm.

The Hanberg evidence is prima facie evidence of fraud by the same or similar primary actors and, therefore, directly relevant to the RICO case.  NTG's strawman purchase on Hanberg's behalf establishes NTG's state of mind, active role in the scheme, and general awareness of the fraudulent allegations in these lawsuits.  Evidence from the Hanberg case is also relevant to NIC's malicious prosecution count, because it proves that NTG had a common scheme to defraud and, thus, the requisite scienter to confer liability.

Evidence concerning NTG's scheme to form dummy corporations to serve as sham plaintiffs in NTG fabricated litigation is relevant to NIC's general RICO claims.  While NIC's SAC generally focused on eight former NTG cases, NIC should have flexibility in discovery to explore leads related to other cases that clearly fall within NTG's pattern of unlawful conduct.  NTG's potential use of dummy corporations generally fits the same common scheme and method of operation.  Indeed, the act of *creating* a corporate plaintiff for litigation purposes is sufficiently related to NTG's use of "for hire" individuals.

### 2. All Proportionality Factors Support NIC's Request for Leave to Take Discovery

The factors considered by the court in the proportionality analysis are as follows:

> [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "[P]erhaps the most persuasive factor in the proportionality analysis" requires a balancing of the burden imposed against the likely benefit of discovery.  *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2015 WL 9694792, at *3 (N.D. Ala. Dec. 9, 2015).  The burden here is insignificant, but the likely benefit is substantial:  direct evidence that NTG manufactures false legal claims to shake down corporate defendants.

Limited discovery into Hanberg does not represent any noticeable increase in time or money; the cost of compliance will result in a small increase of expense and obligation beyond what the defendants are already duty bound to perform. NIC intends to take Hanberg's deposition, include questions related to Hanberg in depositions of the NTG Defendants, serve a third party subpoena on Hanberg's employer concerning her whereabouts on October 15, 2015, and serve written discovery on NTG and Hanberg regarding the circumstances surrounding her recruitment, retainer agreement, the hand-off to Milstein Adelman, and the settlement agreement.  Hanberg's deposition and written discovery would not cause the number of depositions in this case to exceed the prior limits imposed by the Court.  Sched. Conf. H'rg Tr. 5, May 9, 2016 ("The proposal is the defendants plus seven.  That sounds reasonable to me.").  The Rule 45 subpoena to Hanberg's employer would not require any substantial work because the nonparty has already collected and produced that information once to DeviantArt's counsel.

The Continuity Research subpoena requests just several specific email chains.  The burden of that discovery is negligible.  Like Hanberg, that evidence directly supports NIC's RICO claims.  It would be admissible statements of a party opponent.  The evidence is relevant to impeachment, and supports the circumstantial inference that NTG is willing to manufacture other lawsuits.

Furthermore, as of the date this motion is filed, "the parties' relative access to relevant information" has disproportionately favored the NTG Defendants who have access to (and control over) the non-NTG Defendants, have access to the information requested by this motion, and have generally failed to respond to discovery.

Finally, there are critical issues at stake in this litigation and the requested evidence directly establishes RICO predicates which reveal that the routine practice of the Newport Trial Group *is* to manufacture fraudulent lawsuits to extort settlement money from businesses.  That evidence is relevant to the overarching thrust of NIC's case because it demonstrates the breadth and flagrant nature of NTG's RICO enterprise.  NTG hired a school teacher in her twenties to be a plaintiff in a lawsuit regarding a product she never purchased, was not injured by, and even lacked knowledge that a lawsuit on her behalf had occurred.  NTG coached Janovick to make a donation to a charity solely to file a lawsuit intended to extort settlement money from that charity.  NTG caused the creation of dummy corporations for the sole purpose of filing sham lawsuits against legitimate businesses.

These issues are important.  Whether the Defendants are liable for maliciously prosecuting NIC and operating a RICO enterprise is significant.  NIC

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO TAKE DISCOVERY
AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

14

was forced to spend over $245,000 defending itself against that unlawful enterprise, while DeviantArt, as well as dozens of other companies have faced the same Hobbesian choice:  pay off the party bringing a frivolous suit or pay much more to defend yourself.  This case places before the Court a simple question regarding whether it should allow the judicial system to continue to be co-opted into a vehicle to further NTG's RICO enterprise.  The truthful resolution of such a substantive issue is of significant importance to the judiciary, the parties, and the public at large.  NIC requests additional discovery to investigate these relevant issues.

In sum, the court should grant the requested relief because this discovery is targeted to highly relevant information that will substantiate NIC's claims and the proportionality analysis demonstrates that each factor weighs in favor of granting this discovery.

## IV.    LAW AND ARGUMENT FOR LEAVE TO AMEND

### A. Standard of Review

Under Federal Rule of Civil Procedure 15(a)(2), the court should "freely give leave when justice so requires" to a party that requests leave to amend its pleadings.  *Dixon v. Magna-RX, Inc.*, No. CV1407196BROGJSX, 2016 WL 1397584, at *3 (C.D. Cal. Mar. 31, 2016); *see also LifeScan, Inc. v. Shasta Techs., LLC*, No. 5:11-CV-04494-EJD, 2012 WL 6045897, at *2 (N.D. Cal. Dec. 5, 2012) ("Leave to amend is generally granted with liberality.").  Whether justice requires leave to amend is determined by analysis of the five *Foman* factors.  *Id*.  However, Rule 16(b)(4) requires that "[w]hen a party moves to amend a pleading beyond the deadline set in the scheduling order, it must first show 'good cause' for relief from

the deadline." *Shuey v. Cty. of Ventura*, No. 2:14-cv-09520-ODW-SHX, 2016 WL 4367224, at *2 (C.D. Cal. Aug. 11, 2016) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Once the movant satisfies its burden to establish good cause under Rule 16(b), the Court will then consider the permissibility of amendment under Rule 15. *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2014 WL 6626227, at *2 (N.D. Cal. Nov. 20, 2014) (citing *Johnson*, 975 F.2d at 608). Modification of the schedule here is proper because NIC has good cause and leave to amend is in the interests of justice.

### B. NIC Has Good Cause for the Scheduling Modification

NIC has diligently advanced its claims. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id*. at 1 (quoting *Johnson*, 975 F.2d at 609); *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002) (stating that motion should be denied if the moving party has not been diligent). Modification is proper when the deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609; *see also Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 (9th Cir. 2007) (taking financial and practical hardships into account under a good cause analysis).

In *Finjan*, the District Court found that the party seeking amendment was diligent because it promptly sought a joint stipulation for amendment and moved to amend unilaterally only one week after opposing counsel refused to stipulate to the motion. *Finjan*, No. 13-CV-03999-BLF, 2014 WL 6626227, at *2; *but see Zivkovic*, 302 F.3d at 1088–89 (denying amendment when party waited four months to file). Here, NIC diligently pursued its motion to amend. It requested a stipulation from defendants just six days following the earliest possible moment

when a motion to amend could have been filed, e.g., the difference between Aug. 18th (NIC's meet and confer letter), and Aug. 12th (the earliest possible filing date).  The Hanberg evidence first came to NIC's attention while dispositive motions were pending on the Second Amended Complaint.  NIC brought those new facts to the Court's attention in its pleadings, and expressed its intent to amend the complaint at a later time without then knowing that the status of the RICO claims would not be resolved until August.  Dkt. 131, p. 19 n.5.

Defendants argued in pleadings that Hanberg's purchase was legitimate because NIC mistakenly referred to the October 15th purchase date as a Monday when in fact it was a Thursday.  Dkt. 138, p. 17 (June 27, 2016).  NTG argued Hanberg's purchase was irrelevant because there was "no evidence that Hamburg [sic] did not make the purchase as alleged in her complaint."  *Id*.  Just over three weeks later, on July 20th, NIC discovered that Hanberg was in fact at school at 9:31 am, on October 15, 2015, when the purchase took place.  NIC thereupon obtained *new evidence* affirming its position in Dkt. 131:  Hanberg was at work on October 15, and NTG fabricated the DeviantArt case.  The new information received on July 20 justifies the amended complaint.

The Court ruled on dispositive motions on August 2, 2016.  Until then, NIC could not have sought leave to amend predicate acts to its RICO allegations without first having the Court's decision on pending motions.  The Hanberg allegations add to existing RICO counts that were subject to the pending dispositive motions.  The August 2 Order was thus dispositive of the Hanberg RICO predicates, and a motion for leave would have been premature before the RICO motions were resolved.

Following the Court's August 2 Order, and accounting for Local Rule 7-3's required seven-day waiting period, the earliest conceivable moment to amend the complaint (through motion) would have been August 10, 2016 (which was a Saturday, meaning the filing date would have been Monday, August 12). Accordingly, NIC could not have had a 28-day motion noticed and briefed before the August 24 deadline to amend pleadings.  NIC notified defendants of its intent to amend the complaint on August 18, 2016.  Claiming that NIC should have instead filed its motion earlier—while dispositive motions were pending—NTG refused to stipulate to NIC's proposed scheduling change, and NIC now brings the instant motion.

The impracticality of seeking a third amended complaint before having received the Defendants' Answers and Affirmative Defenses also merits consideration in this analysis.  The Defendants were required to answer on August 16th, but requested on August 11th that NIC stipulate to a 10-day extension.  NIC immediately extended that courtesy and stipulated to the extension, making Defendants' Answers due on August 26.  Dkt. 160.  The following week, on August 18, NIC requested from defendants a reciprocal stipulation to modify the schedule that would extend NIC's deadline to amend the complaint.  The defendants waited four days to respond, and then refused to stipulate.  Defendants agreed to meet and confer another four days later, and then argued that NIC must wait another seven days to file its motion under Local Rule 7-3.  PAA Decl. at ¶ __.  NIC filed the instant motion as soon as practicable and in compliance with Local Rule 7-3's seven day waiting requirement–seven days after the August 26th conference of the parties.

NIC has diligently sought to comply with the scheduling order, and therefore, meets the good cause standard for modification.

### C. All of the *Foman* Factors Weigh in Favor of Granting NIC Leave to Amend

District courts weigh five factors in deciding whether leave to amend is proper:  (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to opposing party; and (5) futility of the amendment.  *Dixon v. Magna-RX, Inc.*, No. 14-cv-07196-BRO-GJSx, 2016 WL 1397584, at *3 (C.D. Cal. Mar. 31, 2016) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  It is factor four, however, "the consideration of prejudice to the opposing party that carries the greatest weight."  *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003).  "[T]he party opposing the amendment bears the burden of showing prejudice."  *In re Fritz Cos. Sec. Litig.,* 282 F.Supp.2d 1105, 1109 (N.D. Cal. Aug. 27.2003) (citing *DCD Programs Ltd. v. Leighton,* 833 F.2d 183, 187 (9th Cir.1987)).  NIC is not presently aware of good faith arguments that would place factors one, two, three, or five in dispute because a sixty day extension to the deadline to amend will not delay any other aspect of this litigation; there is no sound argument that NIC seeks this extension in bad faith; nor is NIC seeking to cure a deficiency in the SAC.  Adding the Hanberg DeviantArt allegations complements the predicate acts related to NIC's other RICO allegations.

No defendant is prejudiced by this request.  Prejudice, the touchstone of a Rule 15(a) inquiry, exists where the amended claims would significantly alter "the nature of the litigation" and require a last minute adjustment in defense strategy.  *Dixon*, No. 14-cv-07196-BRO-GJSx, 2016 WL 1397584, at *5 (C.D. Cal. Mar. 31,

2016) (quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990)).  Prejudice can come from an unnecessary increase in costs or a diminution in the ability of the opposing party to respond.  *Id.*  And where a party seeks to change claims close to trial, prejudice can be found by reducing the other party's ability to prosecute its case.  *See Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1103–04 (C.D. Cal. 2011).

NIC's proposed addition of the Hanberg facts does not implicate any of the concerns referenced above.  Inclusion of Hanberg as an example of the RICO enterprise and an additional predicate act requires no significant adjustment by the Defendants.  NIC's proposed amendment is narrow.  NIC will not add new parties, or raise new Counts.  Hanberg is a witness within NTG's apparent control.  Trial is set for December 2017, and discovery will not close until August 2017—one year from this motion.  Under that schedule, Defendants suffer no prejudice through an amended complaint now.

Additionally, NIC notes that certain facts regarding the underlying cases pled in the SAC (e.g., the ChromaDex matter) have come to light during nonparty discovery.  Minor alterations to the sequence and factual circumstances of those cases is necessary based on that new evidence.  Those changes do not affect the legal claims pled, but facts should be updated to promote a precise record.

In sum, for all the reasons stated above, NIC respectfully requests that this Court permit NIC to file an Amended Complaint by no later than fourteen days from the date of the order.

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO TAKE DISCOVERY
AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

20

## V.    CONCLUSION

Based on the good cause showing above, the Court should grant NIC's motions for leave to take additional discovery and to modify the schedule to amend the complaint for the limited purposes described herein.


DATED:  September 2, 2016

Respectfully submitted,


NATURAL-IMMUNOGENICS CORP.


By:    /s/ Peter A. Arhangelsky
Peter A. Arhangelsky, Esq. (SBN 291325)
E-mail: parhangelsky@emord.com
Emord & Associates, P.C.
3210 S. Gilbert Road, Suite 4
Chandler, AZ 85286
Phone: (602) 388-8899
Fax: (602) 393-4361