# EXHIBIT H

Atkinson-Baker Court Reporters
www.depo.com

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DIVISION

- - -

KRISTYNE HANBERG, individually )
and on behalf of all others )
similarly situated, )
)
           Plaintiff, )
)
vs                     ) CASE NO: BC 615184
)
DEVIANTART, INC., a Delaware )
corporation; and DOES 1 - 10, )
inclusive, )
)
           Defendants. )
)

DEPOSITION OF

KRISTYNE HANBERG

LOS ANGELES, CALIFORNIA

JUNE 10, 2016

ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com

REPORTED BY:   ANNA MARIE SPINELLI, CSR NO. 11805

FILE NO:   AA062D7

Kristyne Hanberg
June 10, 2016
Plaintiff's Motion for Leave to Take Discovery and for Leave to File Third Amended Complaint
Exh. H
Page 60

Atkinson-Baker Court Reporters
www.depo.com

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DIVISION

- - -

KRISTYNE HANBERG, individually )
and on behalf of all others )
similarly situated, )
)
                Plaintiff, )
)
vs )  CASE NO: BC 615184
)
DEVIANTART, INC., a Delaware )
corporation; and DOES 1 - 10, )
inclusive, )
)
                Defendants. )
)

Deposition of KRISTYNE HANBERG, taken on behalf of

Defendant, at 800 West 6th Street, Suite 1220, Los

Angeles, California, commencing at 10:01 a.m., Friday,

June 10, 2016, before Anna Marie Spinelli, CSR No.

11805.

Atkinson-Baker Court Reporters
www.depo.com

A P P E A R A N C E S:


FOR PLAINTIFF:

MILSTEIN ADELMAN, LLP
BY:   SARA AVILA, ESQ.
      MARC A. CASTANEDA, ESQ.
2800 Donald Douglas Loop North
Santa Monica, California 90405
(310) 396-9600




FOR DEFENDANT:

VICK LAW GROUP
BY:   SCOTT VICK, ESQ.
      CATHERINE KIM, ESQ.
800 West 6th Street
Suite 1220
Los Angeles, California 90017
(213) 784-6227




ALSO PRESENT:

Joshua S. Wattles, DeviantArt

3

Atkinson-Baker Court Reporters
www.depo.com

I N D E X


WITNESS:  KRISTYNE HANBERG

EXAMINATION                                                PAGE

    By Mr. Vick                                              5




EXHIBITS:

                            DEFENDANT'S
NUMBER                      DESCRIPTION                     PAGE

1   -   25-page document                                    29




QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:

                        Page      Line

                         11        20
                         13        12
                         20        23
                         31        10
                         32         9
                         33        17
                         35         6
                         37        14
                         37        20
                         44        15
                         51         7


INFORMATION TO BE SUPPLIED:

                        (None)

4

Plaintiff's Motion for Leave to Take Discovery and for Leave to File Third Amended Complaint
Exh. H
Page 63

Atkinson-Baker Court Reporters
www.depo.com

KRISTYNE HANBERG,

having been first duly sworn, was

examined and testified as follows:

EXAMINATION

BY MR. VICK:

    Q.   Good morning?

    A.   Good morning.

    Q.   Could you state and spell your name for the record?

    A.   Kristyne Hanberg, K-r-i-s-t-y-n-e.

    Q.   Uh-huh.

    A.   Hanberg, H-a-n-b-e-r-g.

    Q.   Do you have a middle name?

    A.   Yes, Jo.  J-o.

    Q.   J-o?

    A.   Yes.

    Q.   Okay.  Have you had your deposition taken before?

    A.   No.

    Q.   This is the first?

    A.   This is the first.

5

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

Q.    Oh, great.

So, do you know have you been explained how this process works?

MS. AVILA:  Objection.  To the extent it calls for you to disclose any attorney client privilege.  You can say yes or no.

THE WITNESS:  Oh, yes.

Q.    BY MR. VICK:  Okay.  So the court reporter here she is going to be transcribing what you say and what I say and it will be in question/answer format.

She'll prepare a little book when this is done and because she can only type what one person says at a time it is important that you let me finish the question before you answer the question.  Okay?

A.    Okay.

Q.    You understand that your testimony today is under oath?

A.    Yes.

Q.    And it is the same force and effect as if you were in court?

A.    Yes.

Q.    You are under the penalty of perjury?

A.    Yes.

Q.    Okay.  So, if you answer a question I'm going to assume that you understand the question, but if you

6

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

don't understand the question will you tell me?

A.    Yes.

Q.    Okay.  One of the things that lawyers do during depositions is they may object to a question.  So your lawyer may object to a particular question and state the reason for the objection.

Unless she instructs you not to answer you still have to answer the question; do you understand that?

A.    Yes.

Q.    Okay.  Another thing to keep in mind is in routine conversation we may use "uh-huh" or "huh-uh" to respond to questions, but when you look at that in a typewritten transcript it can be confusing because we don't know well does that mean yes or does that mean no.

So, when you answer a question if you can answer yes or no that would be very helpful?

A.    Okay.

Q.    We'll take a lunch break, obviously, but if you need to take a restroom break or something before then feel free to do so.

Also, if you want water or coffee or tea or snacks we have some over there you can feel free to do that.

A.    Thank you.

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

Q.   Did you prepare for today's deposition?

A.   Yes.

Q.   Did you meet with your lawyers?

A.   Yes.

Q.   How long did you meet?

A.   Like an hour.

Q.   Okay.  Did you meet today?

A.   No.

Q.   Yesterday?

A.   No.

Q.   This week?

A.   Yes.

Q.   Okay.  And were you shown any documents?

MS. AVILA:  Objection.  You can answer the question to extent it doesn't disclose attorney client communications.

Q.   BY MR. VICK:  Okay.  Did any of those document refresh your recollection?

MS. AVILA:  Objection.  Attorney client privilege.

THE WITNESS:  No.

Q.   BY MR. VICK:  Okay.  What documents did you look at?

MS. AVILA:  Objection.  Attorney client privilege.  Don't answer that question.

8

Atkinson-Baker Court Reporters
www.depo.com

Q.    BY MR. VICK:  Who was at your preparation?

A.    I'm not sure what you mean.

Q.    Was Mr. Wade at your preparation, deposition preparation?

A.    No.

Q.    Was Mr. Castaneda at your preparation?

A.    Yes.

Q.    And who else was there?

A.    Sara.

Q.    Okay.  Anyone else?

A.    No.

Q.    Okay.  Do you have any documents at home or anywhere else concerning Deviant Art?

MS. AVILA:  Objection.  Vague and ambiguous.

THE WITNESS:  No.

Q.    BY MR. VICK:  You don't?

A.    No.

Q.    In the complaint there was some screen shots printouts of the Deviant Art website, did you print those out?

A.    No.

MS. AVILA:  Objection.  The document speaks for itself.  Vague and ambiguous as to the complaint screen shots that are not before the witness right now.

Q.    BY MR. VICK:  Okay.  Did you ever receive any

9

Atkinson-Baker Court Reporters
www.depo.com

e-mail confirmation from Deviant Art?

MS. AVILA:  Objection.  Vague and ambiguous as to "confirmation."  Do you understand the question?

THE WITNESS:  No.

Q.   BY MR. VICK:  Did you ever receive any e-mails from Deviant Art?

A.   Yes.

Q.   Okay.  What e-mails did you receive?

A.   I received an e-mail once I cancelled --

Q.   Okay.

A.   -- then, yes.

Q.   Okay.  When you signed up did you get a confirmation in the mail?

A.   I do not remember.

Q.   Okay.  Do you have any files at home related to Deviant Art?

MS. AVILA:  Objection.

MR. VICK:  Okay.  Can you let her finish the question.

MS. AVILA:  Your questions are a little bit confusion.  Files to a normal person is different than what, you know, we say for files so it might be easier to break it down.

Q.   BY MR. VICK:  Okay.  Do you have any files related to Deviant Art?

10

Atkinson-Baker Court Reporters
www.depo.com

A.   No.

Q.   Okay.  Do you have a Drop Box account?

A.   Yes.

Q.   Okay.  Do you have any documents in your Drop Box account related to Deviant Art?

A.   No.

Q.   What e-mail -- do you use Outlook for your e-mail?

A.   My work e-mail, yes.

Q.   Okay.  What about your personal e-mail?

A.   No.

Q.   Do you have any folders in your e-mails, you know, little folders that you keep in your e-mails?

MS. AVILA:  Objection.  Not relevant.  You can answer the question.

THE WITNESS:  Yes.

Q.   BY MR. VICK:  Okay.  Are any of those folders for Deviant Art?

A.   No.

Q.   Are any of those folders for litigation that you are involved in?

MS. AVILA:  Objection.  Don't answer that question.  It is not relevant.

MR. VICK:  Okay.  So, just for the record, you understand that you can instruct the witness in two and

11

Atkinson-Baker Court Reporters
www.depo.com

only two circumstance under California Law:  One is privilege and another is if you are prepared to end the deposition because you think it is harassment at which point you are obligated to go to the Court and seek a protective order.

Under California Law you can't instruct the witness not to answer in terms of relevance it is sanctionable conduct.

MS. AVILA:  Thank you.

MR. VICK:  Okay.  Can I have the question read back, please.

MS. AVILA:  I do want to just caution you that you're getting into irrelevant territory that is a little bit vague and ambiguous so I'm just trying to get you to slow it down a little.

MR. VICK:  Okay.

(Question read.)

THE WITNESS:  No.

Q.   BY MR. VICK:  Okay.  Have you ever been known by any other name?

A.   No.

Q.   Okay.  Are you married?

A.   No.

Q.   When were you born?

A.   September 3rd, 1987.

12

Atkinson-Baker Court Reporters
www.depo.com

Q.   Okay.  Do you have any children?

A.   No.

Q.   Okay.  And you live at 21361 High Country Road in Trabucco Canyon?

A.   No longer.

Q.   Okay.  Where is your current address?

A.   14 Elmbrook.

Q.   Can you spell that for the court reporter?

A.   E-l-m-b-r-o-o-k, Aliso Viejo.

Q.   Okay.  Do you live there alone?

A.   Yes.

Q.   Can you tell me what telephone numbers you've used over the last three years?

MS. AVILA:  Objection.  What's the relevance of that?  You can contact her through counsel.

MR. VICK:  Oh, it's not to contact her it's to check for telephone records and who is calling who.

MS. AVILA:  Don't answer that.

MR. VICK:  You.

MS. AVILA:  You can ask the Court to compel me to...

Q.   BY MR. VICK:  Is one of your telephone numbers (949) 292-8332?

A.   Yes.

Q.   Do you have any other telephone numbers?

13

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

A.    No.

Q.    Is that your cell phone number?

A.    Yes.

Q.    What e-mail addresses do you use?

A.    My personal one is Kristynejh@yahoo.com.

Q.    Okay.  Do you have a work e-mail as well?

A.    I do.

Q.    Okay.  Do you have any other e-mails other than those two e-mails?

A.    No.

Q.    What is your work e-mail?

A.    Well, I'm not sure it is in use anymore.

Q.    Okay.

A.    Each year they switch it.

Q.    They do?

A.    Well, depending.

Q.    So for last semester what was your work e-mail?

A.    Hanbergk@smhs.org.

Q.    Okay.  And is Yahoo your internet provider?  Wait, strike that.

Who is your internet provider?

A.    AT&T.

Q.    Okay.  How long have you had the Yahoo e-mail address?

MS. AVILA:  Objection.  Irrelevant.

14

Kristyne Hanberg
June 10, 2016

THE WITNESS:  I believe between six and eight years, somewhere around there.

Q.   BY MR. VICK:  Okay.  Do you belong to any social networking websites?

MS. AVILA:  Vague and ambiguous.

THE WITNESS:  I'm not understanding.

Q.   BY MR. VICK:  Do you know what a social networking site is?

A.   I believe so.

Q.   Okay.  Do you belong to any?

A.   Can you give me an example?

Q.   LinkedIn?

A.   Oh, no.

Q.   Facebook?

A.   Yes.

Q.   Okay.  Any others?

A.   Yes.

Q.   What others?

A.   Instagram.

Q.   Instagram?

A.   (Nod of head)

Q.   Anything else?  SnapChat?

A.   Oh, yes.

Q.   SnapChat e-mails?

A.   Twitter.

15

Atkinson-Baker Court Reporters
www.depo.com

Q.    Twitter?

A.    Yes.

Q.    Anything else?

A.    No.

Q.    What is your username on Instagram?

MS. AVILA:  Objection.  How is that relevant?

MR. VICK:  It is relevant to adequacy of plaintiff in this case.

MS. AVILA:  I don't --

MR. VICK:  Counsel, you can't lawfully instruct the witness not to answer under relevance grounds.

MS. AVILA:  I'm not instructing her not to answer, I'm trying to understand how --

MR. VICK:  Well, you can state your objection and let's move on.  I'm hoping we can finish this deposition quickly, but if the more objections you have then it will last much longer.

So, I would like to get you, particularly, since the witness lives in Orange County, I'd like to get her out before rush hour traffic.

I mean if you're in Santa Monica you probably would appreciate the same thing.

MS. AVILA:  I would appreciate sticking to relevant issues.

Q.    BY MR. VICK:  Okay.  So, what's the username in

16

Kristyne Hanberg
June 10, 2016
Plaintiff's Motion for Leave to Take Discovery and for Leave to File Third Amended Complaint
Exh. H
Page 75

Atkinson-Baker Court Reporters
www.depo.com

your Instagram account?

MS. AVILA:  You can answer.

THE WITNESS:  KristyneJH.

Q.    BY MR. VICK:  Okay.  Have you ever had any other username on SnapChat?

A.    No.

Q.    What about SnapChat same username?

A.    I don't remember.  It is either KristyneJH or KristyneJo.

Q.    And Twitter?

A.    I don't use Twitter.  I'm sorry, I have an account but I don't use it.

Q.    Don't actively use it?

A.    I believe it is KristyneJH.

Q.    Okay.  Do you actively use Instagram and SnapChat?

A.    Correct.

Q.    Okay.  And Facebook?

A.    Correct.

Q.    Do you use any internet message boards?

A.    I'm not sure what that is.

Q.    The answer is probably no.

You have a degree from CS Fullerton?

A.    Yes.

Q.    When did you graduate?

17

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

A.    2010.

Q.    When did you start attending the school?

A.    2005.

Q.    Graduated from high school in 2005?

A.    Correct.

Q.    Okay.  And that was Mission Viejo High School?

A.    Correct.

Q.    And you grew up in Orange County?

A.    Correct.

Q.    And what were your degrees at Fullerton?

A.    Kinesiology.

Q.    Okay.  Anything else?

A.    No.

Q.    And you have a BS degree?

A.    Correct.

Q.    Okay.  Did you attend any other colleges?

A.    The University of Redlands.

Q.    Redlands.  What years?

A.    I believe it was 2011 or 2012 sorry.

Q.    One of those two years?

A.    Yes.

Q.    And what did you study?

A.    Teaching credential.

Q.    Okay.  Did you earn a teaching credential?

A.    Yes.

18

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

Q.   What year?

A.   2012, I believe.

Q.   Okay.  Any other post high school education other than CS Fullerton and the University of Redlands?

A.   No.

Q.   Do you have any licenses or certifications?

A.   No.

Q.   Other than a driver's license?

A.   No.

Q.   Okay.  Do you belong to any professional or business clubs?

A.   I'm not sure I understand.

Q.   You've heard of Rotary or things like that, any teachers clubs?  Professional clubs?  Business clubs?

A.   No.

Q.   Are you a member of any social clubs or charities or non profit organizations?

A.   I'm not sure what you mean by "member."

Q.   What is it you don't -- do you know what a social club is?

A.   No.

Q.   So, I take it, you're into athletics?

A.   Correct.

Q.   And you were in track at Fullerton; correct?

A.   Correct.

19

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

Q.   Do you belong to any clubs related to track?

A.   No.

Q.   Okay.  Do you belong to any charities?

A.   No.

Q.   Do you participate in any charities?

MS. AVILA:  Objection.

THE WITNESS:  I have.

Q.   BY MR. VICK:  Okay.  In the past three years?

A.   Yes.

Q.   Okay.  What would those be?

A.   Helped out at OC Marathon.

Q.   Okay.  And is that to benefit -- what is that?

A.   It was charity -- actually, you know, I'm not quite sure what it was for it was three years ago.

Q.   Okay.  OC refers to Orange County Marathon?

A.   Correct.

Q.   Is that where you met Mr. Ferrell?

MS. AVILA:  Objection.  Lacks foundation. Vague and ambiguous.  Attorney many client privilege. Can you restate that question?

MR. VICK:  You can answer the question.

THE WITNESS:  No.

Q.   BY MR. VICK:  When did you meet Mr. Ferrell?

MS. AVILA:  Objection.  Lacks foundation. Attorney client privilege.  Do not answer that question.

20

Atkinson-Baker Court Reporters
www.depo.com

THE WITNESS:  Uh-huh.

MR. VICK:  Excuse me?  How is when she met Mr. Ferrell privileged?

MS. AVILA:  He is her attorney.

MR. VICK:  It is not -- confidential communication is the only thing that is privileged.

Do you need to make a phone call?

MS. AVILA:  Do you need to make a phone call?

MR. VICK:  No.  I'm quite certain it's not privileged.

MS. AVILA:  Okay.  Fine.

Q.   BY MR. VICK:  So, when did you first meet Mr. Ferrell?

MS. AVILA:  Assumes facts not in evidence. Lacks foundation.

THE WITNESS:  Mr. Ferrell is Scott; correct?

MR. VICK:  Yes.

MS. AVILA:  Yes.

THE WITNESS:  This year.

Q.   BY MR. VICK:  You met him this year?

A.   Yes.  What were the circumstances in which you met him?

MS. AVILA:  Objection.  Lacks foundation.

Q.   BY MR. VICK:  So by "this year" you mean 2016?

A.   Yes.

21

Atkinson-Baker Court Reporters
www.depo.com

Q.    Okay.  Were you aware that he was your counsel in 2015?

A.    No.

MS. AVILA:  Objection.  Lacks foundation. Assumes facts not in evidence.  Vague and ambiguous. Speculative.

MR. VICK:  Okay.  So, Counsel, you know that those aren't objections for depositions.  I assume --

MS. AVILA:  Well, I'm --

MR. VICK:   -- you know that.

MS. AVILA:   -- objecting to the form of your question because you are assuming -- you're stating facts that are not in evidence.

MR. VICK:  Okay.  So, we'll get back to Mr. Ferrell in just a minute.

Q.    Any other charities or non profit organizations that you participated in?

A.    Yes.

Q.    What else?

A.    It's called Sara Demille Run.

Q.    S-a-r-a-h?

A.    No "h."

Q.    S-a-r-a?

A.    Yes.

Q.    D-e-m-i-l-l-e?

22

Atkinson-Baker Court Reporters
www.depo.com

A.    Yes.

Q.    Okay.  Is that also in Orange County?

A.    Yes.

Q.    Okay.  And what year were you involved in that?

A.    2015.

Q.    Okay.  Anything else?

A.    No.

Q.    Okay.  So, since graduating from Fullerton have you had any employment?

A.    Yes.

Q.    With who?

A.    I worked at Beach Fire Bar and Grill.

Q.    Okay.

A.    The Ranch Sports Bar.

Q.    Okay.

A.    And then, Santa Margarita Catholic High School.

Q.    And is that -- where is that, is that in Mission Viejo?

A.    Rancho Santa Margarita.

Q.    Okay.  Any place else?

A.    Irvine High School.

Q.    Okay.  Any place else?

A.    No.

Q.    Okay.  What years did you work for Beach Fire Bar and Grill?

23

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

A.   2010, I believe, to 2014, I believe.

Q.   Okay.  And what did you do?

A.   I was a waitress.

Q.   Okay.  What about Ranch Sports Bar?

A.   Year -- I'm sorry, On The Beach Fire?

Q.   Yeah.

A.   That was 2010 to 2012.

Q.   '12, okay.

A.   And then, The Ranch 2012 --

Q.   Yeah.

A.   -- to 2000 -- beginning of 2014.

Q.   Okay.  Were you a food server as well?

A.   Correct.

Q.   Okay.  And then, did you go to Irvine High School after that?

A.   No.  I worked at Irvine High School while I was working At The Ranch.

Q.   So, what years?

A.   2012 to currently.

Q.   Okay.  And what is your position -- well, what is your position there?

A.   Soccer coach.

Q.   Any other positions?

A.   No.

Q.   Okay.  Men's or women's?

24

Kristyne Hanberg
June 10, 2016
Plaintiff's Motion for Leave to Take Discovery and for Leave to File Third Amended Complaint
Exh. H
Page 83

Atkinson-Baker Court Reporters
www.depo.com

A.    Women's.

Q.    Is that where you met Mr. Reid?

      MS. AVILA:  Objection.

      THE WITNESS:  No.

Q.    BY MR. VICK:  Okay.  When did you begin working at Santa Margarita High School?

A.    2000 -- the end of 2012.

Q.    Okay.  To the present?

A.    Correct.

Q.    Okay.  What is your position?

A.    Biology teacher.

Q.    Anything else?

A.    Anatomy and Physiology teacher.

Q.    Anything else?

A.    Track coach.

Q.    Men's or women's?

A.    Both.

Q.    Anything else?

A.    No.

Q.    Boys and girls cross country is that the same thing?

A.    Oh, yes.

Q.    Okay.

A.    Sorry, yes.  That was in the fall.

Q.    Okay.  And that is a full-time position?

25

A.   What is?

Q.   Your teaching/coaching position?

A.   Yes.

Q.   And you are doing that also while you were working with Irvine High School?

A.   Correct.

Q.   Okay.  Have you ever been a defendant in any lawsuit?

A.   No.

Q.   What about a respondent?

A.   I'm not sure I understand.

Q.   Okay.  Have you ever given testimony before?

Listen, we're in a deposition today but testimony could be where you've testified in court or testified at an Administration Agency or something of that nature.

Have you ever given testimony before?

A.   No.

Q.   This is your first time?

A.   Correct.

Q.   Have you ever been a plaintiff in any case?

A.   I'm not sure.

Q.   So, are you currently suing Deviant Art?

A.   Yes.

Q.   Okay.  And in your capacity as suing Deviant

26

Atkinson-Baker Court Reporters
www.depo.com

Art, do you have an understanding whether you are the plaintiff or the defendant?

A.   Yes.

Q.   Okay.  Then what is your understanding?

A.   I'm defendant -- I'm sorry, plaintiff.

Q.   Okay.  So, you are the plaintiff and you are suing Deviant Art?

A.   Correct.

Q.   Okay.  Are you a plaintiff in any other case?

A.   No.

Q.   Have you ever been a plaintiff in any other case?

A.   No.

Q.   And by case I mean lawsuit?

A.   Oh, yes.

Q.   What other lawsuits have you been a plaintiff in?

A.   800 Raisers.

Q.   Anything else?

A.   No.

Q.   Pretty sure?

A.   I was in a car accident a couple of years ago but and I got my medical bills paid for.  I don't know if that is.

Q.   You don't know if a lawsuit was filed?

27

Atkinson-Baker Court Reporters
www.depo.com

A.   No.  With the insurance company I know they paid for it.

Q.   Okay.  Did you ever sue drugstore.com?

A.   Drugstore.com.  Yes, I have.

Q.   Okay.  Remember when I asked you if you'd been a plaintiff and you said 800 Raisers?

A.   Yes.

Q.   And then, I said anything else and you said no?

A.   Yes.

Q.   Okay.  But then you just remembered drugstore.com?

A.   Yes.

Q.   Okay.  Do you remember any other cases where you've been a plaintiff?

MS. AVILA:  Vague and ambiguous.

THE WITNESS:  No.

Q.   BY MR. VICK:  Have you ever been involved in any other lawsuits?

A.   No.

Q.   Are you familiar with a company called Egnyte?

A.   Sounds familiar.

Q.   Okay.  Did you ever sue Egnyte?

MS. AVILA:  Vague and ambiguous.

THE WITNESS:  I'm not sure.

Q.   BY MR. VICK:  Do you know what Egnyte is?

28

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

A.   I'm not sure.  No.

(Exhibit No. 1 is marked.)

Q.   I'm going to hand the court reporter a document to mark as Deposition Exhibit No. 1.

This is an exhibit that has three parts to it the first part is four pages it is the so-called Docket?

A.   Okay.

Q.   Okay.  Then, there is a purple sheet that separates the second document which is a Complaint, purported Class Action Complaint.

That is, approximately, 15 pages long and then there is a purple sheet and there is a third document called Notice of Voluntary Dismissal it is three pages long.

Now, I would like to direct your attention to page two of the second page here page two of the docket report.

In the upper left-hand corner there is the word plaintiff and it says "Kristyne Hanberg," do you see that?  The second page, right, top left?

A.   Uh-huh.

Q.   Okay.  Do you see the name Kristyne Hanberg there?

A.   Yes.

Q.   Is that your name?

29

Atkinson-Baker Court Reporters
www.depo.com

A.    Yes.

Q.    And were you ever involved in any litigation involving Egnyte?

MS. AVILA:  Objection.  The document speaks for itself.

Q.    BY MR. VICK:  I'm sorry, you can answer the question?

A.    Yes.

Q.    Okay.  So you were a plaintiff in the Egnyte litigation?

A.    Yes.

Q.    Okay.  So, remember when I asked you if you were involved in any litigation and then you mentioned 800 Raisers and I said were you involved in any other litigation and you said no and then you remembered drugstores?

A.    Yes.

Q.    And then, I said were you involved in any other litigation and you said no and now I've showed you Egnyte.

Do you see that?

A.    Yes.

Q.    Okay.  Have you been in any other litigation other than Egnyte?

MS. AVILA:  Asked and answered.

30

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

THE WITNESS:  I don't recall.

Q.   BY MR. VICK:  Okay.  If you wanted to find out if you were involved in any other litigation, what would you do?

A.   I guess, it's online.

Q.   Okay.  Do you have lawyers that you might ask?

A.   Oh, I guess.

Q.   Who might you ask?

A.   I can ask Sara.

Q.   Okay.  Can you help me understand why if you were involved in other litigation why you wouldn't know if you were involved in any other litigation?

MS. AVILA:  Objection.  Argumentative. Harassing.  Don't answer that.

MR. VICK:  That is not argumentative.

MS. AVILA:  It is.  She is not a lawyer.

Q.   BY MR. VICK:  Are you a plaintiff in any other lawsuit?

MS. AVILA:  Asked and answered.

MR. VICK:  Okay.  You can answer.

THE WITNESS:  Other than?

Q.   BY MR. VICK:  Other than the ones that we've talked about drugstore.com, Deviant Art and Egnyte any other lawsuits you are involved in?

MS. AVILA:  Asked and answered.

31

THE WITNESS:  I'm not sure.

Q.   BY MR. VICK:  Okay.  How did you become a plaintiff in this lawsuit, and I'm referring to Exhibit One?

MS. AVILA:  Objection.  Vague and ambiguous. You can answer that if you can answer it without disclosing any attorney client communications.

THE WITNESS:  Can you repeat the question?

Q.   BY MR. VICK:  How was it you became the plaintiff in this lawsuit Egnyte Exhibit One?

MS. AVILA:  Objection.  That case is irrelevant to this case.  Attorney client privilege.  Don't answer that.

THE WITNESS:  (Nod of head)

MR. VICK:  How she became a plaintiff is not attorney client privilege.  It is not so --

MS. AVILA:  I think it is.

MR. VICK:  We can go to court and call the judge if you'd like at a break.  Maybe we'll do that.

MS. AVILA:  Good luck getting the court on the phone.

MR. VICK:  Yeah, I think so.  I think that would be helpful or maybe you could make a phone call to a more senior lawyer.

MS. AVILA:  But that case is not relevant to

32

this case we're here for Deviant Art not some other case.

MR. VICK:  It bears directly on the adequacy of the plaintiff.  This is a punitive class action lawsuit of course it is relevant.

MS. AVILA:  How is that relevant?

MR. VICK:  It goes to adequacy of plaintiff.

MS. AVILA:  That does not.  How does that go to adequacy of plaintiff?

MR. VICK:  I'm not here to give you an education I'm here to take a deposition.

MS. AVILA:  Counsel, I would instruct you to --

MR. VICK:  Yes.

MS. AVILA:  -- be more courtesy and processional.

MR. VICK:  I just don't know what to say.

Q.  Ms. Hanberg, how is it you became a plaintiff in the Egnyte lawsuit?

MS. AVILA:  Don't answer that question.  You've asked and answered.  You've asked that question.  I've instructed the witness not to answer, please move on.

Q.  BY MR. VICK:  Why did you sue Egnyte?

MS. AVILA:  Vague and ambiguous.  Calls for a legal conclusion.

THE WITNESS:  I'm not understanding.

33

Atkinson-Baker Court Reporters
www.depo.com

Q.   BY MR. VICK:  Why did you sue a Egnyte?

A.   I believe I was auto-renewed.

Q.   Okay.  And when did you make a decision to sue Egnyte?

A.   I don't remember.

MS. AVILA:  Vague.

Q.   BY MR. VICK:  Okay.  So, do you recall -- do you know what the disposition of the case was?

MS. AVILA:  Objection.  Calls for a legal conclusion.

THE WITNESS:  I'm not sure I understand.

Q.   BY MR. VICK:  Is the case still on-going?

MS. AVILA:  Same objection.

THE WITNESS:  I don't believe so.

Q.   BY MR. VICK:  Okay.  What happened to it?

MS. AVILA:  Calls for a legal conclusion.  If you know, you can answer.

THE WITNESS:  I don't really know.

Q.   BY MR. VICK:  Do you know if the case settled or not?

A.   I believe it did.

Q.   Why do you believe that?

A.   Because I haven't heard anything about it.

Q.   Okay.  Did you get your money back?

A.   I did.

34

Atkinson-Baker Court Reporters
www.depo.com

Q.    Did you get anything else?

MS. AVILA:  Objection.  To the extent there is any confidential settlement agreement you can't disclose that.

MR. VICK:  Oh, it absolutely bears on this.

Q.    Did you get any incentive compensation in connection with that settlement?

MS. AVILA:  Objection.  Confidential settlement.  Don't answer that.

THE WITNESS:  (Nod of head)

MS. AVILA:  To the extent there is a confidential settlement --

MR. VICK:  Okay.

MS. AVILA:  Excuse me.

MR. VICK:  I was talking with my colleague.

Q.    Can you please turn to the second portion of this document and go to page four of the Complaint?

Okay.  Do you see paragraph 15 there it says "Defendant's business"?

A.    Yes.

Q.    Okay.  What was your understanding of what Egnyte's business is?

MS. AVILA:  Objection.  Calls for a legal conclusion.  This is entirely irrelevant.  This is not the subject of this case.  This is an entirely different

Kristyne Hanberg
June 10, 2016
Plaintiff's Motion for Leave to Take Discovery and for Leave to File Third Amended Complaint
Exh. H
Page 94

Atkinson-Baker Court Reporters
www.depo.com

lawsuit.

Q.   BY MR. VICK:  What is your -- sitting here today, do you have an understanding of what Egnyte even does, without looking at the Complaint?

A.   I don't remember.

Q.   Okay.  Did you ever use Egnyte's services?

A.   No longer.

Q.   Did you ever use it?

A.   Yes.

Q.   What did you use it for?

A.   I don't remember.

Q.   Other than signing up, did you ever use it?

MS. AVILA:  Objection.  Argumentative.

THE WITNESS:  I don't remember.

Q.   BY MR. VICK:  Do you share files online with people?

A.   I'm not sure I understand.

Q.   Do you ever send documents via e-mail to people, documents or pictures or anything of the sort?

A.   For work, yes.

Q.   Okay.  What about personally?

A.   No.

Q.   Do you know what a secure file transfer is?

A.   No.

Q.   Have you ever used a secure file transfer?

36

Atkinson-Baker Court Reporters
www.depo.com

MS. AVILA:  Objection.  Misstates characterizes testimony.

THE WITNESS:  I don't know what that is.

MS. AVILA:  Yeah.

Q.   BY MR. VICK:  Do you know what secure file sharing is?

A.   I may.  I'm not sure.

Q.   Okay.  Have you ever used secured file sharing?

A.   I don't know.

Q.   Okay.  Can you turn to page five of this complaint.

Do you see this?

A.   Yes.

Q.   Did you personally sign up for services from Egnyte or did someone sign up for you?

MS. AVILA:  Objection.  Lacks foundation. Completely irrelevant.  Harassing.  Counsel, I request that you stop this line questioning.  Don't answer that question.

Q.   BY MR. VICK:  Did you sign up or did you have someone else sign up for you?

MS. AVILA:  Objection.  Harassing.  Move on or we're ending this deposition.  Don't answer.

THE WITNESS:  (Nod of head)

MS. AVILA:  Do you have another question?

37

Atkinson-Baker Court Reporters
www.depo.com

Q.    BY MR. VICK:   Did you print this invoice out?

A.    No.

Q.    Do you have any understanding of how this invoice got printed out?

A.    No.

MS. AVILA:   Objection.   Vague and ambiguous. Counsel, I'm requesting once again to stop this line of questioning.

This Egnyte lawsuit is completely irrelevant to the instant lawsuit.  Ms. Hanberg is not a lawyer.

MR. VICK:   So, I have a treatise on class actions in my office and during the lunch break I'm happy to share it with you so that you can review the law in class action depositions.

Because this is totally appropriate and relevant to whether she is an adequate plaintiff and, frankly, it is also relevant to whether your law firm is an appropriate adequate counsel and, also, potentially, conflict of interest.  So, of course, it is relevant.

MS. AVILA:   Counsel, your demeanor and your --

MR. VICK:   My demeanor.

MS. AVILA:   You have repeatedly stated throughout the last month that you believe this to be a manufactured shakedown.  We cautioned you against harassing our client.

38

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

You are you insulting our client.  You are insulting our client's integrity, her ethics, counsel's ethics and integrity and unless you plan on changing your line of questioning we're going to end this deposition.

Q.  BY MR. VICK:  Okay.  So, did you ever sue a company called Tresta?

A.  Can you repeat that?

Q.  Did you ever sue a company called Tresta?

A.  I'm not sure.

Q.  Do you know what Tresta is?

A.  No.

Q.  Okay.  Do you have any -- have you ever signed up for telephone answering services?

A.  Yes.

Q.  Okay.  With whom did you sign up?

A.  It was a while ago, I don't remember the company.

Q.  Was it Paclife?

A.  Yes.

Q.  Okay.  Why did you sign up for telephone answering services?

A.  For training purposes athletes.

Q.  Treating for, can you explain?

A.  Can you repeat your question?

39

Atkinson-Baker Court Reporters
www.depo.com

Q.   Yeah.  Why did you sign up for telephone answering services?

A.   Yes, so I could have a line separate from my home line or my cell phone line to work with training athletes and others.

Q.   Did anyone tell you to sign up for the program?

MS. AVILA:  Objection.  Vague and ambiguous.

THE WITNESS:  No.

Q.   BY MR. VICK:  Did you know it had an automatic renewal, at the time you signed up?

A.   No.  I don't recall.

Q.   Okay.  What happened to the Tresta lawsuit that you were involved in?

MS. AVILA:  Objection.  Lacks foundation. Calls for a legal conclusion.

THE WITNESS:  I don't remember.  I don't know.

Q.   BY MR. VICK:  Okay.  Did you get any -- did you get a refund of your money?

A.   I don't remember.

Q.   Did you get any other payments?

A.   From Tresta?

Q.   Yeah.

A.   I don't remember.

Q.   Did you sign an engagement agreement -- do you no what an engagement agreement is with a law firm?

40

Atkinson-Baker Court Reporters
www.depo.com

A.   No.

Q.   Retainer Agreement?

A.   Yes.

Q.   Did you sign a Retainer Agreement with any law firm in connection with any of the litigation we've discussed?

MS. AVILA:  Objection.  Overbroad.  Vague and ambiguous.

THE WITNESS:  I believe just for --

MS. AVILA:  Oh, did you -- just answer his question yes or no.

THE WITNESS:  Can you repeat the question?

Q.   BY MR. VICK:  Did you sign an engagement agreement with any law firm in connection with representing you?

A.   Yes.

Q.   How many?

A.   One.

Q.   Okay.  With whom?

MS. AVILA:  Objection.  Attorney client privilege.  You can answer the question but only if you can do so without revealing any communications you've had with your lawyers.

THE WITNESS:  Yes, with Sara's law firm.

Q.   BY MR. VICK:  Okay.  Did you ever sign an

41

Atkinson-Baker Court Reporters
www.depo.com

engagement agreement with the Newport Trial Group?

A.   No.

Q.   Do you know who they are?

A.   Yes.

Q.   Okay.  Who are they?

A.   A law firm.

MS. AVILA:  Vague and ambiguous.

Q.   BY MR. VICK:  Okay.  And when did you first --
did you meet Newport Trial Group through Milstein
Adelman?

A.   No.

Q.   Who was the first lawyer you knew at Milstein
Adelman?

MS. AVILA:  Objection.

THE WITNESS:  I'm not sure I understand your
question.  "Knew," as in?

Q.   BY MR. VICK:  So, you are represented in this
case by Milstein Adelman; right?

A.   Yes.

Q.   Okay.  And you introduced two of the lawyers
here with you today --

A.   Uh-huh.

Q.   -- at the beginning of the deposition:  Do you
recall that?

A.   Yes.

42

Atkinson-Baker Court Reporters
www.depo.com

Q.    Okay.   Who is the first lawyer at Milstein Adelman that you knew?

A.    I was in contact first with Sara.

Q.    Okay.   Sara was the first lawyer you met at Milstein Adelman?

MS. AVILA:   Objection.   Attorney client privilege.   You can answer but only if you don't disclose -- don't reveal any communications you've had with us.

THE WITNESS:   Yes.

Q.   BY MR. VICK:   Okay.   When did you meet Sara?

A.    On Wednesday this week.

Q.    So, this week so that would be June 8th, 2016?

A.    Yes.

Q.    That's the first time you met Sara?

MS. AVILA:   Vague and ambiguous. Mischaracterizes testimony.

THE WITNESS:   Yes.

Q.   BY MR. VICK:   Okay.   Had you met Gillian before?

A.    Yes.

Q.    Okay.   So, Gillian is a lawyer at Milstein Adelman; right?

A.    Yes.

Q.    Okay.   When did you first meet Gillian?

43

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

A.    Wednesday, June 8th.

Q.    Okay.  All right.  Is that the first Milstein Adelman lawyer you'd ever met?

A.    Yes.

MS. AVILA:  Objection.  Vague and ambiguous.

Q.    BY MR. VICK:  Okay.  Have you met any lawyers at the Newport Trial Group?

A.    Yes.

Q.    Who have you met?

MS. AVILA:  Attorney client privilege.  You can tell him who you met as long as you don't disclose any communications with them.

THE WITNESS:  I'm not sure I have the last names correct.  Andrew Baslow and Dave Reid.

Q.    BY MR. VICK:  Okay.  When did you first meet David Reid.

MS. AVILA:  Objection.  Attorney client privilege.  Don't answer that.

THE WITNESS:  (Nod of head)

MR. VICK:  So, Counsel, I can get you a book if you'd like.  Attorney client privilege is a confidential communication between an attorney and a client.

Confidential communication is not when a lawyer first met a client that is not confidential so I'm going to ask the question again.

44

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

Q.   When did you first meet Mr. Reid?

MS. AVILA:   Same objection.   You can answer if you want.

THE WITNESS:   I met Mr. Reid, I believe, around two weeks ago.

Q.   BY MR. VICK:   So, also, in June of 2016?

A.   Yes.

Q.   So have you met Scott Ferrell?

A.   I don't believe so.

Q.   Have you met Victoria Knowles?

A.   No.

Q.   Have you met Richard Hikida?

A.   No.

Q.   Have you met Andrew Baslow?

A.   Yes.

Q.   When did you first meet Andrew Baslow?

A.   About two weeks ago.

Q.   So Exhibit One is the Egnyte lawsuit, do you see that?

A.   Yes.

Q.   Okay.   It indicates the records here indicate that the lawsuit was filed in November of 2015.

Does that sound right?

A.   Sounds about right.

Q.   Okay.   So, did you know any of the lawyers

45

Atkinson-Baker Court Reporters
www.depo.com

representing you in that case at the time?

MS. AVILA:  Objection.  Argumentative.  The document speaks for itself.

THE WITNESS:  Yes.

Q.   BY MR. VICK:  Okay.  So, in November of 2015, what lawyer did you know at the time who was representing you?

MS. AVILA:  Objection.  That is completely irrelevant to this case.

THE WITNESS:  I knew of Scott and Dave.

Q.   BY MR. VICK:  Did you actually know any of the lawyers who were representing you?

A.   No.

MS. AVILA:  Vague and ambiguous.

Q.   BY MR. VICK:  Did you know any of the lawyers at the Newport Trial Group or Milstein Adelman at the time --

MS. AVILA:  Objection.

THE WITNESS:  I kind of knew that.

MR. VICK:   -- as of November 2015?

MS. AVILA:  Objection.  It's harassing.  Argumentative.  Mischaracterizes her testimony.

THE WITNESS:  I'm not sure I understand.

Q.   BY MR. VICK:  So, in November 2015 --

A.   Uh-huh.

46

Atkinson-Baker Court Reporters
www.depo.com

Q.    -- you brought this lawsuit against Egnyte; right?

A.    Correct.

Q.    For having to do with automatic renewal; right?

A.    Correct.

Q.    Okay.  And in connection with that case you had lawyers representing you; right?

A.    Yes.

Q.    Okay.  Did you know any of those lawyers at the time you brought suit?

MS. AVILA:  Asked and answered.  Vague and ambiguous.

THE WITNESS:  Yes.

Q.    BY MR. VICK:  Who?

A.    I believe it was Scott.

Q.    Scott?

A.    Or Dave, I don't recall which one first.

Q.    So, now, a second ago you said you knew of Scott?

A.    I've never met Scott.

Q.    You've never met Scott?

MS. AVILA:  Argumentative.  Only answer questions when he's asking.  You're mischaracterizing her testimony.

Q.    BY MR. VICK:  Have you ever spoken to Scott,

47

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

Mr. Ferrell, on the phone?

MS. AVILA:  Objection.  You can answer the question only if you can do so without revealing any communications between you or your attorneys.

THE WITNESS:  Yes.

Q.  BY MR. VICK:  Okay.  How many times did you speak with him on the phone?

MS. AVILA:  Objection.  Irrelevant.  Vague and ambiguous.

THE WITNESS:  I don't remember.

Q.  BY MR. VICK:  Did he call you or did you call him?

MS. AVILA:  Objection.  Lacks foundation. Argumentative.  Harassing.

THE WITNESS:  I don't remember.

Q.  BY MR. VICK:  Okay.  Have you ever met David Reid?

A.  Yes.

Q.  What were the circumstances in which you met David Reid?

MS. AVILA:  Objection.

Q.  BY MR. VICK:  Did you meet him at a church event?  Did you meet him at his business office?

Where did you first meet him?

MS. AVILA:  Objection.  Vague and ambiguous.

48

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

Irrelevant.  Attorney client privilege.  Harassing.
Lacks foundation.

THE WITNESS:  Met him at his law firm.

Q.  BY MR. VICK:  Okay.  Is that the first time you met him there in his law firm?

A.  Yes.

Q.  Did you know him before then?

A.  No.

Q.  When did you first meet him?

MS. AVILA:  Objection.  Asked and answered. Attorney client privilege.

THE WITNESS:  About two weeks ago.

Q.  BY MR. VICK:  So, two weeks ago is, again, June 2016.

MS. AVILA:  Counsel, asked and answered. Harassing.  Mischaracterizing her testimony.

THE WITNESS:  Yes, today is June...

Q.  BY MR. VICK:  Okay.  So, this is an important question:  In November of 2015 --

A.  Yes.

Q.  -- you brought a lawsuit and the lawsuit is Exhibit One right in front of you?

A.  Yes.

Q.  And the lawsuit if you look at the front page of the lawsuit lists a law firm that represented you

49

Newport Trial Group and a number of lawyers including Scott Ferrell, Richard Hikida, David Reid and Victoria Knowles.

Do you see that?

A.    Yes.

MS. AVILA:  Objection.  The document speaks for itself.  She is not a lawyer.

Q.    BY MR. VICK:  At the time this lawsuit was brought in November of 2015, did you know any of those lawyers?

MS. AVILA:  Objection.  Vague and ambiguous. Calls for attorney client communications.

THE WITNESS:  Before --

MS. AVILA:  This is irrelevant.  I'm not sure the client understands.

Q.    BY MR. VICK:  When this lawsuit was filed on --

A.    Yes.

Q.    -- November 6th, 2015?

A.    Correct.

Q.    Had you spoken to any of these lawyers?

A.    Yes.

Q.    Okay.  So a few minutes ago you said the first time you spoke with Mr. Reid was at his law firm two weeks ago?

A.    Correct.

50

Kristyne Hanberg
June 10, 2016

Atkinson-Baker Court Reporters
www.depo.com

Q.    Okay.

MS. AVILA:  Mischaracterizes testimony.

MR. VICK:  Okay.

MS. AVILA:  Misstates her testimony.

Q.    BY MR. VICK:  Is that correct?

A.    Yes.

Q.    Okay.  So, this lawsuit Egnyte that was filed in November of 2015, had you met any of the lawyers representing you on this case at the time this case was filed in November of 2015?

MS. AVILA:  Asked and answered. Mischaracterizes testimony.  Attorney client privilege.

THE WITNESS:  So --

MS. AVILA:  Don't answer that.

THE WITNESS:  Okay.

Q.    BY MR. VICK:  Had you met any of the lawyers as of the time you filed this lawsuit?

MS. AVILA:  Asked and answered.  Counsel, if you're going to continue asking the same question again we're going to terminate this deposition so we can seek a protective order.

MR. VICK:  You can answer the question.

THE WITNESS:  No.

MS. AVILA:  No.  You can't answer the question.

MR. VICK:  She said no.

51

Atkinson-Baker Court Reporters
www.depo.com

THE WITNESS:  I'm not sure I understand your question.

MR. VICK:  Okay.

MS. AVILA:  We're ending the deposition at this time so that we can seek a protective order from your harassing behavior.

You are misconstruing Ms. Hanberg's testimony and I believe you will realize it once you read the transcript.  Until then, we are going to have to terminate the deposition and seek a protective order from your harassing behavior.

MR. VICK:  Okay.

MS. AVILA:  Based on your e-mails from this last week we anticipated that this would be an issue. In fact, your e-mail from the beginning of this case so, unfortunately, we're going to have to terminate the deposition.

MR. VICK:  Okay.  Just a couple other things, then.  So, we'll also go in and seek a Motion to Compel. We're going to be filing a demure to your compliant.

MS. AVILA:  Right.

MR. VICK:  The demure will be --

MS. AVILA:  Yeah, we're off the record.

MR. VICK:  Yes, off the record.

52

Kristyne Hanberg
June 10, 2016

Plaintiff's Motion for Leave to Take Discovery and for Leave to File Third Amended Complaint
Exh. H
Page 111

Atkinson-Baker Court Reporters
www.depo.com

(The deposition proceedings

adjourned at 10:52 a.m.)

53

Atkinson-Baker Court Reporters
www.depo.com

PENALTY OF PERJURY CERTIFICATE

I, the undersigned, declare under penalty of perjury that I have read the foregoing transcript, and I have made any corrections, additions or deletions that I was desirous of making; that the foregoing is a true and correct transcript of my testimony contained therein.

EXECUTED this                   day of            , 20 , at                                    , _____.


_____
                KRISTYNE HANBERG

54

Atkinson-Baker Court Reporters
www.depo.com

REPORTER'S CERTIFICATE

I, ANNA MARIE SPINELLI, CSR No. 11805, a Certified Shorthand Reporter, certify;

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the foregoing proceedings were recorded stenographically by me and were thereafter transcribed;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated this 10th day of June, 2016.


_____                              __
ANNA MARIE SPINELLI, CSR NO. 11805

55

Kristyne Hanberg
June 10, 2016