1  **CALLAHAN & BLAINE, APLC**
   3 Hutton Centre Drive, Ninth Floor
2  Edward Susolik (SBN 151081)
   ES@callahan-law.com
3  David J. Darnell (SBN 210166)
   ddarnell@callahan-law.com
4  Robert Scott Lawrence (SBN 207099)
   rlawrence@callahan-law.com
5  3 Hutton Centre Drive, Ninth Floor
   Santa Ana, California 92707
6  Telephone: (714) 241-4444
   Facsimile: (714) 241-4445
7
   Attorneys for DEFENDANTS NEWPORT TRIAL
8  GROUP, SCOTT J. FERRELL, RYAN M. FERRELL
   VICTORIA C. KNOWLES, DAVID REID and
9  ANDREW LEE BASLOW

10           UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12              SOUTHERN DIVISION

13  NATURAL IMMUNOGENICS          **CASE NO.  8:15-cv-02034-JVS-JCG**
    CORP., a Florida corporation,
14                                **DISCOVERY MATTER**
             Plaintiff,
15                                **JOINT STIPULATION**
        v.                        **REGARDING DEFENDANTS**
16                                **SCOTT FERRELL AND DAVID**
    NEWPORT TRIAL GROUP, et al.,  **REID'S, AND NON-PARTY JOSH**
17                                **WEISS'S, MOTION TO QUASH**
             Defendants.          **SUBPOENA TO CONTINUITY**
18                                **PRODUCTS LLC**

19

20                                Hearing Date:    December 15, 2016
                                  Hearing Time:    10:00 a.m.
21                                Judge:           Hon. James V. Selna
                                  Magistrate:      Hon. Jay C. Gandhi
22
                                  Complaint Filed:       Dec. 7, 2015
23                                Fact Discovery Cut-off: Aug. 20, 2017
                                  Expert Disc. Cut-off:  Aug. 14, 2017
24                                Pretrial Conf. Date:   Nov. 20, 2017
                                  Trial Date:            Dec. 5, 2017
25

26

27

28

*(left margin, vertical text)* CALLAHAN & BLAINE  A PROFESSIONAL LAW CORPORATION  3 HUTTON CENTRE DRIVE, NINTH FLOOR  SANTA ANA, CALIFORNIA 92707  TELEPHONE (714) 241-4444  WWW.CALLAHAN-LAW.COM

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTORY STATEMENTS ................................................. 1

    A.    Defendants Ferrell and Reid's Introductory Statement ...................... 1

    B.    Non-Party Weiss's Introductory Statement ............................................ 2

    C.    Plaintiff NIC's Introductory Statement ................................................ 3

        1.    The document is not attorney-client privileged. ....................... 4

        2.    The document is not work product. ........................................ 4

        3.    Weiss waived any privilege that might apply ............................. 4

        4.    Finally, any privilege that might exist is subject to the crime-fraud exception. ........................................................ 5

II.   ISSUES IN DISPUTE: WHETHER THE SUBPOENA IS DEFECTIVE OR ENFORCEABLE ............................................... 5

III.  DEFENDANTS FERRELL AND REID'S POSITION ................................ 6

    A.    Relevant Facts re: Meet and Confer Process ........................................ 6

    B.    Factual Basis for Ferrell and Reid's Objections ................................... 7

    C.    Legal Argument ................................................................ 8

        1.    The Email String Is Protected by Attorney-Client Privilege ...... 8

        2.    The Email String Is Protected by the Joint Client Doctrine ....... 9

        3.    Inadvertent Disclosure Does Not Waive Privilege ................... 10

        4.    Plaintiff Fails to Meet Its Burden to Show That the Crime-Fraud Exception Applies ........................................ 12

        5.    The Subpoena is Incomprehensibly Vague and Overbroad ..... 14

        6.    The Subpoena Seeks Irrelevant Information and is Not Proportional to the Needs of the Case ................................. 15

IV.   NON-PARTY WEISS'S POSITION ............................................... 17

    A.    Pre-Filing Conference of Counsel (L.R. 37-1) ................................... 17

    B.    Factual Background ........................................................ 18

    C.    Weiss's Contentions and Points and Authorities ................................ 19

        1.    The Email Is Privileged ........................................... 19

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE NTG DEFENDANTS' MOTION TO COMPEL

## TABLE OF CONTENTS
### (CONTINUED)

**Page**

2.   Ferrell, Reid, and Weiss Did Not Waive Privilege ................. 20

V.   PLAINTIFF NIC'S POSITION ...................................................... 21

FACTS AND PROCEDURE ................................................................... 21

A.   NTG and Weiss Formed Shell Corporations to Extort Corporate Defendants ........................................... 22

B.   Strataluz Pursues Litigation Based on Sham Products ..................................................................... 24

C.   Continuity Discovers Weiss's Emails in His Corporate Email Folders ...................................... 28

ARGUMENT ........................................................................................ 29

A.   The Emails on Continuity's Server Are Not Subject to the Attorney-Client Privilege ............................. 29

1.   Movants Have Not Established the Elements of Privilege ................................. 29

2.   Mr. Weiss's Emails Sent Through Continuity's Corporate Email Account Were Not "Confidential" Communications ......................................... 31

3.   The Emails Include Business Discussions That Are Not Privileged ........ 34

B.   The Emails Are Not Protected by the Work Product Privilege ..................................................... 36

C.   Even Were The Weiss Emails Privileged, Weiss and Continuity Waived That Privilege ................. 36

D.   The Weiss Emails Are Discoverable Under the Crime-Fraud Exception to the Attorney-Client and Work Product Privileges ........................... 39

E.   The Documents Are Relevant and The Subpoena Is Not Overbroad ...................................... 42

NIC'S CONCLUSION ................................................................. 43

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Pursuant to Local Rule 37-2, Defendants Scott J. Ferrell ("Ferrell"), David Reid ("Reid"), non-party Josh Weiss ("Weiss"), and Plaintiff Natural Immunogenics Corporation ("NIC") submit this Joint Stipulation in connection with Ferrell, Reid, and Weiss's motion to quash the subpoena issued by NIC to third party Continuity Products LLC.

## I. INTRODUCTORY STATEMENTS

### A. Defendants Ferrell and Reid's Introductory Statement

Plaintiff has filed a spurious lawsuit based on absurd conspiracy theories that belong in a B-grade Hollywood movie rather than this Court. In the absence of proof of its allegations about a RICO conspiracy, Plaintiff has opted for the blunderbuss approach to discovery – having issued 27 third-party subpoenas to date – seeking to harass and annoy the Defendants. The instant subpoena issued to Continuity Products LLC ("Continuity") suffers from numerous defects, and unequivocally demonstrates that Plaintiff is not seeking the narrow, focused discovery it has repeatedly promised to the Court, but instead has gone far beyond the bounds of what this lawsuit is ostensibly about.

In its subpoena to Continuity, NIC seeks access to "all email" that was allegedly discussed during a series of phone calls between Continuity's General Counsel Allison Borts and attorneys at Emord & Associates (i.e., Plaintiff's counsel). Plaintiff contends – without having seen it – that this email is evidence of a supposed predicate bad act by Defendants. The subpoena itself is grossly overbroad, as it calls for (a) all email discussed by Allison Borts during these conversations with NIC's counsel, (b) all documents relating to these email, (c) all information regarding the formation of any business entities at the NTG Defendants request, (d) all documents showing who the corporate officers were to be at these unknown business entities, and (e) all retainer agreements between NTG and Continuity.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Defendants Ferrell and Reid are only aware of a single email chain that may

2    be responsive to Plaintiff's subpoena, and have asserted on numerous occasions both

3    to Continuity and to Plaintiff's counsel that the email at issue is an attorney-client

4    privileged communication between Ferrell, Reid, their business partner Josh Weiss

5    (Continuity's former General Counsel) and their corporate attorneys, and that this

6    email was inadvertently forwarded to Weiss's Continuity email address rather than

7    his private email address. Despite being supplied with a privilege log that identifies

8    the senders, recipients, subject line, email addresses, and names of the attorneys to

9    whom the email is addressed, Plaintiff insists that the email is not privileged because

10   Reid waived attorney-client privilege by accidentally sending it to Weiss at his

11   Continuity email address. The law on waiver holds otherwise. The email chain at

12   issue is absolutely privileged and Plaintiff's arguments are simply makeweight

13   attempts to access communications that it has no right to, and that have absolutely

14   nothing to do with the allegations in this lawsuit.

15   As shown below, Plaintiff's attempts to vitiate the privilege are without merit

16   and the subpoena should be quashed in its entirety.

17   **B.**    **Non-Party Weiss's Introductory Statement**

18   This motion presents a straightforward application of inadvertent disclosure

19   law.  The undisputed facts are as follows: Ferrell, Reid, and Weiss had privileged

20   email communications with their attorneys.  As part of these privileged discussions,

21   Reid accidentally sent an email to Weiss's work email instead of his personal email.

22   Weiss immediately forwarded the email to his personal account, deleted the email

23   from his work account, and called Reid to ask him not to send any further emails to

24   his work account.  Upon learning that his former employer (Continuity) still had the

25   email, Weiss, through counsel, demanded that the email be destroyed.  In light of

26   these undisputed facts, the question before the Court is this: was the email

27   inadvertently disclosed, thus preserving the privileged nature of the

28   communications?  Because the answer is unequivocally "yes," Weiss respectfully

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    requests that this Court quash the subpoena to Continuity Products.

2    ## C.    Plaintiff NIC's Introductory Statement

3        Movants' motion should be denied.  Natural Immunogenics' ("NIC")

4    subpoena seeks a document stored on Continuity Products' ("Continuity's") non-

5    private, corporate email system (NTG004939-4942).  Movants have failed to prove

6    the document privileged.  Former Continuity General Counsel Josh Weiss sent the

7    document through Continuity's non-private email system, rendering it not

8    privileged; he left it in that non-private system for nearly two years before

9    attempting to deem it privileged, post hoc.  Mr. Weiss was aware at the time he sent

10   the email that his corporate email was not private.

11        Even were the Court to determine the privilege potentially applicable, it

12   should compel *in camera* production so that the Court can evaluate the parties'

13   respective positions.  The document implicates the crime/fraud exception, and Ninth

14   Circuit precedent compels *in camera* review in these circumstances.  *In re Grand*

15   *Jury Investigation*, 810 F.3d 1110, 1114 (9th Cir. 2016) (quoting *In re Napster, Inc.*

16   *Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007).

17         In the present RICO action, Plaintiff alleges that Defendant NTG operates an

18   unlawful enterprise (hiring plaintiffs to file sham legal claims to extort settlement

19   proceeds from corporate defendants).  NTG's complaints state that these plaintiffs

20   (which it hired in secret) suffered actual legal injury when, in fact, they did not.  In

21   addition, NTG has formed corporate entities to serve as plaintiffs in sham suits it has

22   brought under the Lanham Act, also for the purpose of extorting settlement

23   proceeds.  On August 1, 2016, Judge Selna held that NIC adequately pled its RICO

24   claims against NTG and several of NTG's former clients who were involved in the

25   staged legal cases.  Exh. A.

26        NTG and Weiss now allege that the email Weiss left on Continuity's

27   computers for nearly two years is now privileged despite it being sent and held on a

28   non-private, corporate server.  For the following reasons, the email is not privileged

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

and should be produced to NIC forthwith:

### 1.   The document is not attorney-client privileged.

Neither NTG nor Weiss have met their burden to show privilege under federal law.  To the extent the email contains business chatter, discussions, or instructions, that content is not privileged.  The attorney-client privilege is applied narrowly; basic facts or business information relevant to "corporate formation" are not privileged.  A document does not become privileged solely because those corresponding are licensed attorneys.  *See In re Ampicillin Antitrust Litig.*, 81 F.R.D. 377, 389 (D.D.C. 1978).  In addition, the email chain was not a "confidential" communication.  *See Holmes v. Petrovich Development Co.*, 191 Cal.App.4th 1047 (2011).  The relevant correspondence was sent by Weiss on January 8, 2014 using Continuity's corporate email system.  Weiss had no expectation of privacy in that email.  State and federal courts hold uniformly that use of corporate email is not "confidential" and conveys no expectation of privacy where, as here, the corporate policy placed employees on notice that their emails were not confidential.  Because the privilege only attaches to confidential communications, and the documents here were not, no privilege attaches.  Moreover, even were a privilege present, that privilege was waived when Weiss voluntarily sent the files through a corporate email system.

### 2.   The document is not work product.

Movants' assert the work product privilege in their "privilege" log.  Lawrence Decl., Exh. 4.  They provide no affirmative argument to support that position in their motion and, thus, waive it.  Invocation of "work product" also suggests a fraudulent purpose, because NTG must argue that it formed the corporations "in anticipation of litigation," thus admitting a central purpose other than the sale of commercial goods.

### 3.   Weiss waived any privilege that might apply.

Even assuming the documents were privileged, the privilege was waived. Weiss took no reasonable steps to preserve confidentiality.  He left the document on

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Continuity's corporate computer for nearly two years, making no effort to claim

2  privilege until March 9, 2016.  The subject of the email and Weiss's relationship

3  with NTG attorneys are now public, having been revealed in pleadings filed by

4  Continuity against Weiss.  Continuity sued Weiss in July 2015 alleging unlawful

5  ethical violations and tortious activity based on his interactions with NTG.  Exh. E

6  (*Obesity Research Institute, LLC v. Weiss*, No. 37-2016-020883-CU-NP-CTL (Cal.

7  Super. Ct. S. D. Cnty, June 21, 2016).

8      **4.    Finally, any privilege that might exist is subject to the crime-**

9  **fraud exception.**

10     The document subpoenaed concerns the formation of shell corporations that

11  NTG used to pursue sham "competitor" lawsuits under the Lanham Act.  NTG

12  formed the entities to file shakedown lawsuits in order to extort settlement proceeds.

13  The sham corporations never actually sold the products they advertised for sale.  In

14  some instances, agents registered websites for these entities just *days* before NTG

15  began sending its settlement demand letters.  The evidence reveals a pattern of law

16  violation and ethical misconduct in furtherance of the RICO enterprise.  The legal

17  and ethical issues raised by NTG's "business" partnership with Weiss are

18  independently the subject of Continuity's suit against Weiss, concerning NTG's and

19  Weiss's misappropriation of their client's resources to form corporations to compete

20  against that client.  Exh. E.  Ethical violations of the kind Continuity has pled are

21  grounds to invoke crime-fraud.  *See e.g., Rambus, Inc. v. Infineon Techs. AG*, 220

22  F.R.D. 264, 281 (E.D. Va. 2004) (citing *Parrott v. Wilson*, 707 F.2d 1262, 1271

23  (11th Cir.1983); *see also infra* § II.D.

24

25  **II.    ISSUES IN DISPUTE: WHETHER THE SUBPOENA IS DEFECTIVE**

26  **OR ENFORCEABLE**

27  Plaintiff has issued a subpoena that demands that Continuity:

28  1.    Produce all emails referenced by you in your communications with

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Emord & Associates on February 5, 2016, and July 7, 2016, that you represented occurred between NTG and your former employee, Josh Weiss, regarding the formation, creation, or establishment of business entities.

2.      Produce all documents concerning or relating to the formation, creation, or establishment of business entities at NTG's request, direction, or behest. This request does not seek, and should not be interpreted to seek, documents in YOUR possession that relate to the formation, creation, or establishment of business entities originally at YOUR request and within the scope of YOUR ordinary or customary business operations.

3.      Produce all documents concerning or relating to communications identified in response to Request No. 1 supra.

4.      Produce all documents that identify, describe, name, or reveal the identities of corporate officers (actual or proposed) named or to be named in the corporate filings relevant to Requests Nos. 1 and 2 supra.

5.      Produce all retainer agreements and contracts executed by YOU that concern, involve, or relate to the Newport Trial Group or any of its agents.

Defendants Ferrell and Reid, and non-party Weiss, contend that the subpoena is defective and must be quashed for the reasons set forth below, and Plaintiff NIC contends that the subpoena is appropriate and should be enforced.

## III.    **DEFENDANTS FERRELL AND REID'S POSITION**

### A.      **Relevant Facts re: Meet and Confer Process**

On October 26, 2016, Plaintiff's counsel served (via email) a Notice of Subpoena to Produce Documents, Information, or Objects to Continuity Products LLC. [Lawrence Decl., ¶2, Exh. 1].

On October 28, 2016, counsel for the Defendants served objections to the subpoena on Continuity with a copy to Plaintiff's counsel. [Lawrence Decl., ¶3, Exh. 2].

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   During the afternoon of October 28, 2016, counsel for the Defendants
2   exchanged email with Continuity's outside counsel at Gordon & Rees regarding the
3   subpoena. [Lawrence Decl., ¶4].

4   That same afternoon, counsel for the parties exchanged further email
5   correspondence regarding the Continuity subpoena, and scheduled a conference call
6   for the following week. [Lawrence Decl., ¶5].

7   On November 1, 2016, counsel for the parties and non-party Josh Weiss met
8   and conferred about the propriety of the Continuity subpoena, and NIC's counsel
9   requested a formal letter detailing the Defendants' specific objections pursuant to
10  Local Rule 37-1. [Lawrence Decl., ¶6].

11  On November 2, 2016, counsel for the Defendants provided NIC's counsel
12  with the requested meet-and-confer letter detailing Ferrell and Reid's objections and
13  laying out the factual and legal basis for such objections. [Lawrence Decl., ¶7, Exh.
14  3].

15  On November 4, 2016, after the Defendants supplied NIC's counsel with a
16  detailed privilege log concerning the email string at issue, the parties concluded that
17  the instant dispute was not subject to informal resolution and agreed on a hearing
18  and briefing schedule for this joint stipulation. [Lawrence Decl., ¶8, Exh. 4].

19  **B.    Factual Basis for Ferrell and Reid's Objections**

20  Defendants Scott Ferrell, Dave Reid and non-party Josh Weiss were formerly
21  part-owners of a now-defunct Nevada corporation named Strataluz, LLC. [Ferrell
22  Decl., Exh. 5, ¶2]. The company was formed in 2014, and sold a variety of beauty
23  products to consumers, including 2 Minute Booty, Glutia, EverSilk, and Promaxal.
24  [Ferrell Decl., Exh. 5, ¶3].

25  In early 2014, Ferrell engaged the services of attorney Craig Etem of Lionel
26  Sawyer & Collins to act as corporate counsel for the as-yet-to-be-formed Strataluz.
27  One of Etem's associates at Lionel Sawyer & Collins, Brian H. Schusterman, also
28  assisted in the formation of the company. [Ferrell Decl., Exh. 5, ¶4].

- 7 -

1   The email string at issue begins with a January 8, 2014 email from Ferrell to

2   his lawyers Etem and Schusterman, with a copy to his business partners Dave Reid

3   and Josh Weiss. The subject of the email is "Corporate Formation." [Ferrell Decl.,

4   Exh. 5, ¶5]

5   Later that same day, Reid sent a follow up email to Josh Weiss regarding the

6   same subject matter, but inadvertently sent the email to Weiss's corporate email

7   account at Continuity instead of his private email account. [Reid Decl., Exh. 6, ¶¶2-

8   5].

9   Weiss then forwarded the email to his private email account, and deleted the

10  email string from his Continuity email account. [Weiss Decl., ¶2]. On information

11  and belief, Continuity only has a copy of the email string because it continues to

12  reside on their email server despite being deleted from Weiss's Inbox.

13  **C.    Legal Argument**

14      **1.    The Email String Is Protected by Attorney-Client Privilege**

15  The attorney-client privilege protects confidential communications between

16  attorneys and clients made for the purpose of giving legal advice. *United States v.*

17  *Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449

18  U.S. 383, 389 (1981)). The party asserting the attorney-client privilege has the

19  burden of establishing the relationship and privileged nature of the communication.

20  *Id.* The privilege attaches when the following conditions are met: (1) legal advice of

21  any kind is sought (2) from a professional legal adviser in his capacity as such, (3)

22  the communications relating to that purpose, (4) made in confidence (5) by the

23  client, (6) are at his instance permanently protected (7) from disclosure by himself

24  or by the legal adviser, (8) unless the protection be waived. *Id.* (quotation omitted).

25  Here, the email string is unquestionably between owners of the corporate

26  entity (Ferrell, Reid, and Weiss) and the attorneys who were retained to incorporate

27  Strataluz and perform other legal services (i.e., Etem and Schusterman), and seeks

28  legal advice. [*See* Ferrell Decl., Exh. 5; Reid Decl., Exh. 6; Weiss Decl., ¶2]. As

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  such, it is presumptively privileged, and Plaintiff has no valid argument for

2  abrogating the privilege.

### 2.    The Email String Is Protected by the Joint Client Doctrine

4        Where two clients or more clients share the same lawyer, the joint client

5  doctrine provides that "communications made to the shared attorney to establish a

6  defense strategy remain privileged as to the rest of the world." *See e.g., Bank*

7  *Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 1995 WL 86450 (S.D.N.Y.

8  1995). Under this doctrine, communications among joint clients and their counsel

9  are not privileged in disputes between the joint clients, but are protected from

10  disclosure to others. Like the common defense doctrine, the joint client doctrine

11  does not create an independent privilege, but depends upon a proper showing of the

12  other elements of the attorney-client privilege. Thus, the joint client doctrine

13  typically has been applied to overcome what would otherwise have constituted a

14  waiver of confidentiality because a communication had been shared between two

15  clients. *See, e.g., Metro Wastewater Reclamation v. Continental Cas.*, 142 F.R.D.

16  471, 476 (D. Colo. 1992) ("communications shared with third persons who have a

17  common legal interest with respect to the subject matter thereof will be deemed

18  neither a breach nor a waiver of the confidentiality surrounding the attorney-client

19  relationship").

20        Just as the attorney-client privilege exists to encourage the fullest possible

21  communications between a client and his lawyer, the principal purpose of the joint

22  client privilege is, similarly, to encourage the fullest possible communication

23  between joint clients – and between them and their joint lawyer – with respect to

24  matters related to the joint representation. *See, e.g., Sky Valley Ltd. Partnership v.*

25  *ATX Sky Valley*, 150 F.R.D. 648, 653 (N.D. Cal. 1993). In the case at bar, Ferrell,

26  Reid, and Weiss were all owners of Strataluz, and communications between them

27  and their lawyers regarding the company's formation and any other legal issue are

28  absolutely privileged by the joint client doctrine.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

### 3.    <u>Inadvertent Disclosure Does Not Waive Privilege</u>

Plaintiff claims that Ferrell and Reid have waived attorney-client privilege over this January 8, 2014 email string because Reid mistakenly forwarded it to Weiss at his Continuity email address. This is incorrect. The fact that it was mistakenly sent to Weiss at Continuity because of an autofill error does not serve to vitiate the attorney-client privilege.

Waiver of attorney-client privilege or work product protection requires an affirmative act that evidences intent by the holder of the privilege to waive that protection. *The Home Indemnity Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (finding waiver of the attorney-client privilege occurs only where the party asserting the privilege makes an "affirmative act" that places the privileged information at issue); *Walker v. County of Contra Costa*, 227 F.R.D. 529, 536 (N.D. Cal. 2005) (finding privilege waived by the defendants' stated intent to rely on the privileged material as a defense). Because of the importance of the protection of the privilege, courts will find a waiver only on a clear indication of such intent. *Lorenz v. Valley Forge Insurance Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). Here, neither Ferrell, Reid nor any other holder of the privilege have intentionally or knowingly waived any privilege in documents that were inadvertently sent to Weiss's Continuity email address.

The law regarding inadvertent production of privileged documents is well-established in California, and Continuity had absolutely no right to review, read, disclose or keep any of this privileged email string. Under the holdings of *Rico v. Mitsubishi Motors Corp*. (2007) 42 Cal.4th 807 and *State Compensation Insurance Fund v. WPS Inc*. (1999) 70 Cal.App.4th 644, an attorney may only read as much of a document as is necessary to determine whether the document is privileged. Once that is determined, the attorney must notify opposing counsel immediately and make an effort to resolve the situation.

In the case at bar, Continuity discovered the January 8, 2014 email string on

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 10 -

its servers after it became embroiled in wrongful termination litigation with its former General Counsel, Josh Weiss. [Weiss Decl., ¶3]. Weiss's counsel in that litigation notified Continuity that the email string was attorney-client privileged and had been inadvertently sent to Weiss at Continuity, and that Continuity and its counsel were required under the holdings of *Rico* and *State Fund* to return the email. [Weiss Decl., ¶4, Exh. 1]. Continuity's counsel refused to do so, despite the fact that *Rico* and *State Fund* apply with equal force to in-house counsel. *See Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 U.S. Dist. LEXIS 108664 * (S.D. Cal. Aug. 16, 2016) ("Members of corporate legal departments are as fully subject to the demands of the privilege as their outside colleagues."). Instead, Continuity's counsel compounded their ethical violations by notifying NIC of the existence of the email string.

Plaintiff's argument that Ferrell and Reid have waived attorney-client privilege does not pass the Ninth Circuit's inadvertent waiver test. Pursuant to Rule 502(b), disclosure of attorney-client privileged materials does not operate as a waiver if: (1) the disclosure was inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took legal steps to rectify the error. In the Ninth Circuit, a totality of circumstances approach is taken to determine whether "inadvertent" disclosure of privileged information results in a waiver of applicable privileges. *United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 177 (C.D. Cal. 2001). Factors to be considered in determining whether the disclosure was inadvertent include: (a) the reasonableness of precautions used to prevent inadvertent disclosure; (b) the time taken to rectify the error; (c) the scope of discovery; (d) the extent of the disclosures; and (e) the overriding issue of fairness. *In re McKesson*, 264 F.R.D. 595, 599 (N.D. Cal. 2009); *accord United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1045 (D. Nev. 2006), *affirmed in part, reversed in part on unrelated grounds*, 568 F.3d 684 (9th Cir. 2009); *see also* Fed. R. Evid. 502, Advisory Committee Note (b).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 11 -

Here, we are not dealing with a publicly disclosed document, but with an email string that was inadvertently sent to the business email address of Weiss – a holder of the privilege – then immediately forwarded by Weiss to his own private email account, and then minutes thereafter deleted from Weiss's Continuity email account. [Weiss Decl., ¶2]. These facts do not indicate an intention to waive privilege, but rather show that Weiss took reasonable steps to protect the privileged document [i.e., by deleting it from his Continuity email account]. Furthermore, it is undisputed that when Weiss was informed that Continuity was in possession of the January 8, 2014 email string (because a copy of it still resided on Continuity's servers), Weiss demanded that Continuity return the privileged documents pursuant to *Rico* and *State Fund*. [Weiss Decl., ¶4, Exh. 1]. The fact that Continuity still possesses the email string speaks only to their counsel's ethical violations, and does not indicate any waiver of the privilege by Ferrell, Reid or Weiss.

Given that the inadvertent waiver analysis must give due weight to the "overriding issue of fairness," the Court should recognize that it is simply fundamentally unfair for NIC to gain access to privileged documents that should have been returned by Continuity upon discovery of their existence, and that only remain in Continuity's possession because its lawyers have flouted controlling caselaw regarding the return of privileged documents. The totality of the circumstances dictates that the January 8, 2014 email string remain privileged and that NIC be denied access to the email string.

### 4. Plaintiff Fails to Meet Its Burden to Show That the Crime-Fraud Exception Applies

A party invoking the crime-fraud exception must meet a two-part test: First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  [the] intended, or present, continuing illegality." *In re Napster, Inc. Copyright Litig*.,

2  479 F.3d 1078, 1090 (9th Cir. 2007) (quoting *In re Grand Jury Proceedings*, 87

3  F.3d 377, 381-83 (9th Cir. 1996)). The moving party must establish the existence of

4  the crime-fraud exception by a preponderance of the evidence. *Id*. at 1095. Mere

5  assertion of fraud is insufficient – "there must be a showing the fraud has some

6  foundation in fact." *BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.

7  App. 3d 1240, 1262. A prima facie case is "one which will suffice for proof of a

8  particular fact unless contradicted and overcome by other evidence. In other words,

9  evidence from which reasonable inferences can be drawn to establish the fact

10  asserted, i.e., the fraud." *Id*.

11       The application of the crime-fraud exception to the attorney-client privilege is

12  a drastic remedy. The Court must "exercise considerable caution when pressed

13  during the discovery stage of complex litigation to find a showing of crime or fraud

14  that is sufficient to justify penetrating the privilege." *Laser Indus., Ltd. v. Reliant*

15  *Techs., Inc*., 167 F.R.D. 417, 436 (N.D. Cal. 1996). A judge sitting in a civil case

16  "must deny a motion to penetrate the attorney-client privilege rule under the crime-

17  fraud exception if, after considering all the evidence and argument . . . the judge

18  cannot say that it is more likely than not that the party resisting the disclosures

19  sought or used legal advice to commit or try to commit a crime or fraud." *Id*. at 443.

20       In the case at bar, Plaintiff has no evidence of wrongdoing by the NTG

21  Defendants, and absolutely no evidence that the January 8, 2014 email string is

22  subject to the crime-fraud exception. The party invoking the "fraud" portion of the

23  crime-fraud exception must prove all the elements of common law fraud, and

24  Plaintiff cannot muster any evidence to show that a fraud was perpetrated by the

25  NTG Defendants. Plaintiff cannot make a prima facie case that a fraud has been

26  committed by Ferrell or Reid that justifies abrogating the attorney-client privilege,

27  nor meet its burden to show that this email string is "sufficiently related to" and

28  made "in furtherance of" a fraudulent scheme. *See Napster, supra*. None of the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    evidence proffered by Plaintiff shows indicia of fraud at all.

2    **5.     The Subpoena is Incomprehensibly Vague and Overbroad**

3    The general rule is that "a party has no standing to seek to quash a subpoena

4    issued to someone who is not a party to the action, unless the objecting party claims

5    some personal right or privilege with regard to the documents sought." 9A Charles

6    A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008);

7    *Knoll, Inc. v. Moderno, Inc.*, 2012 U.S. Dist. LEXIS 138497 at *2 (N.D. Cal. 2012)

8    ("A party moving to quash a non-party subpoena has standing when the party has a

9    personal right or privilege in the information sought to be disclosed."); *Chevron*

10   *Corp. v. Donzinger*, 2013 U.S. Dist. LEXIS 119622 at *4 (N.D. Cal. 2013) (same);

11   *Am. Broadcasting Cos. Inc. v. Aereo, Inc*., 2013 U.S. Dist. LEXIS 51894 at *2 (N.D.

12   Cal. 2013) (same).

13   Here, the Continuity Subpoena requests "all emails" between NTG and Josh

14   Weiss that Allison Borts referenced in her alleged conversations with Plaintiff's

15   counsel on February 5, 2016 and July 7, 2016 [Continuity Subpoena, Exh. 1, pp. 6-

16   7]. The NTG Defendants are not aware of any responsive email in Continuity's

17   possession other than the privileged January 8, 2014 email string addressed above.

18   However, to the extent that Continuity has other attorney-client privileged email

19   belonging to Ferrell and Reid, these email communications may not be produced

20   and Continuity is duty-bound to return or destroy them.

21   Discovery is not supposed to be a game of hide and seek, yet Plaintiff is

22   playing coy with the description of the documents it seeks. In addition to its request

23   for "all emails" Plaintiff's counsel discussed with Allison Borts (Continuity's

24   General Counsel), Plaintiff adds another layer of vagueness by demanding "all

25   documents concerning or relating to communications identified in response to

26   Request No. 1." [Continuity Subpoena, Exh. 1, p. 7]. Parsing these requests,

27   Plaintiff is demanding all email discussed during their counsel's phone calls with

28   Allison Borts, plus all documents relating to those emails. Defendants Ferrell and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: MOTION TO QUASH CONTINUITY SUBPOENA

1  Reid – not having been privy to these phone conversations – have no way of

2  knowing what was discussed, and thus have no way of knowing what documents are

3  responsive to the subpoena.

4         When a third party subpoena is defectively vague and overbroad on its face, a

5  party to the litigation has standing to move to quash even when the third party fails

6  to object. *See Moon v. SCP Pool Corporation*, 232 F.R.D. 633, 636-37 (C.D. Cal.

7  2005). Here, the requests as phrased are intentionally vague and overbroad; are not

8  bounded in any way by time; and are not bounded by any subject matter. Plaintiff

9  literally has asked for all emails discussed during a private conversation and all

10  documents relating to those emails. Nothing could be vaguer or more overbroad.

11         Given the vagueness and facial overbreadth of the subpoena's requests, and

12  the utter lack of any attempt by Plaintiff to specifically identify which documents it

13  is seeking, the Court should quash the subpoena in its entirety.

14         **6.    The Subpoena Seeks Irrelevant Information and is Not**

15  **Proportional to the Needs of the Case**

16         Although irrelevance is not among the litany of enumerated reasons for

17  quashing a subpoena found in Rule 45, courts have incorporated relevance as a

18  factor when determining motions to quash a subpoena. *Goodyear Tire & Rubber Co.*

19  *v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662 (D. Kan. 2003). Specifically,

20  under Rule 45(c)(3)(A), "an evaluation of undue burden requires the court to weigh

21  the burden to the subpoenaed party against the value of the information to the

22  serving party," and, in particular, requires the court to consider "such factors as

23  relevance, the need of the party for the documents, the breadth of the document

24  request, the time period covered by it, the particularity with which the documents

25  are described and the burden imposed." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633,

26  637 (C.D. Cal. 2005) (internal citations omitted).

27         Here, Plaintiff has made no attempt to show that any of the information

28  sought is relevant in any way to its claims. When Plaintiff's counsel sought

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    permission from the Court to issue a subpoena to Continuity, they argued to Judge

2    Selna that their phone conversations with Allison Borts provided a basis to seek the

3    January 8, 2014 email string. What was said during those conversations is disputed

4    by the parties, and by Ms. Borts herself, who in an email to Plaintiff's counsel

5    specifically denied telling Mr. Arhangelsky any of the facts he included in his prior

6    declaration. [See Dkt. 179-1 and Exh. A thereto].

7         Moreover, while the January 8, 2014 email string is absolutely protected by

8    attorney-client privilege (*see* argument *infra*), Plaintiff did not limit its subpoena to

9    that email string, but broadened its requests to seek any documents related in any

10   way to the email string *or to any other emails discussed with Ms. Borts*; added a

11   request for any corporate documents or draft corporate documents relating to any

12   entities the NTG Defendants may have contemplated incorporating; and added a

13   wholly gratuitous request for the retainer agreement from a case in which NTG

14   defended Continuity. This is not the narrow discovery Plaintiff promised the Court it

15   would seek when it sought leave to issue a subpoena to Continuity, but an

16   intentionally unbounded subpoena calculated to sweep as many documents into

17   Plaintiff's net as possible.

18        Not only are the documents sought not relevant to Plaintiff's allegations, but

19   the subpoena's requests are not proportional to the needs of the case. *See* FRCP

20   26(b)(1). Plaintiff has now issued 27 third-party subpoenas seeking information that

21   has little or no bearing on any of Plaintiff's allegations, and the Continuity

22   Subpoena is calculated to broaden and multiply the disputes between the parties

23   without any legitimate reason for doing so. This is a prime example of the adage

24   "give someone an inch and they'll take a mile." Plaintiff's counsel told the Court

25   they were seeking limited discovery, and then issued a subpoena that exceeded the

26   bounds of what they told the Court they were seeking. Plaintiff can show no

27   legitimate need for information and documents regarding the corporate structure of

28   entities that may have been formed by various of the NTG Defendants, nor any

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    legitimate need for the retainer agreement for a case in which NTG defended

2    Continuity. Though relevance is a broad door, it is not as broad as Plaintiff would

3    have it here, and proportionality demands that the Court put a halt to Plaintiff's wild

4    fishing expedition.[1] The subpoena should be quashed in its entirety.

5

6    **IV.    NON-PARTY WEISS'S POSITION**

7         **A.    Pre-Filing Conference of Counsel (L.R. 37-1)**

8         On October 26, 2016, Plaintiff's counsel served (via email) a Notice of

9    Subpoena to Produce Documents, Information, or Objects to Continuity Products

10   LLC. [Lawrence Decl., ¶2, Exh. 1].

11        On October 28, 2016, Weiss's counsel served objections to the subpoena on

12   Continuity with a copy to Plaintiff's counsel. [Ford Decl., ¶2, Exh. 1].

13        That same afternoon, counsel for the parties exchanged further email

14   correspondence regarding the Continuity subpoena, and scheduled a conference call

15   for the following week. [Lawrence Decl., ¶5].

16        On November 1, 2016, counsel for the parties and Weiss met and conferred

17   about the propriety of the Continuity subpoena, and NIC's counsel requested a

18   formal letter detailing the Defendants' specific objections pursuant to Local Rule

19   37-1. [Lawrence Decl., ¶6].

20        On November 2, 2016, counsel for the Defendants provided NIC's counsel

21   with the requested meet-and-confer letter detailing Ferrell and Reid's objections and

22   laying out the factual and legal basis for such objections. [Lawrence Decl., ¶7, Exh.

23   _____

24   [1] The Court has already expressed grave concerns about the scope of discovery in
     this case, and thus issued a limiting order whereby "[f]or purposes of discovery with
25   regard to the elements of any of the claims asserted in the Second Amended
     Complaint on the basis of defendants' prior litigation practices, the Court limits the
26   scope of discovery to the specific prior suits alleged in the Second Amended
     Complaint. This is consistent with Natural-Immunogenics Corp.'s representations at
27   the May 9, 2016 hearing." [See Dkt1 155]. Continuing, the Court's limiting order
     specifically noted that "[w]hether third parties object or not, discovery outside the
28   approved scope increases the cost and complexity of the case for all." *Id.*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 17 -

3]. On November 4, 2016, counsel for Weiss sent the parties an email joining in the Defendants' meet-and-confer letters. [Ford Decl., ¶3, Exh. 2.]

On November 4, 2016, after the Defendants supplied NIC's counsel with a detailed privilege log concerning the email string at issue, the parties and non-party Weiss concluded that the instant dispute was not subject to informal resolution and agreed on a hearing and briefing schedule for this joint stipulation. [Lawrence Decl., ¶8, Exh. 4; Ford Decl., ¶3, Ex. 2].

**B.   Factual Background**

Defendants Scott Ferrell, Dave Reid and non-party Josh Weiss were formerly part-owners of a now-defunct Nevada corporation named Strataluz, LLC. [Ferrell Decl., Exh. 5, ¶2]. The company was formed in 2014, and sold a variety of beauty products to consumers, including 2 Minute Booty, Glutia, EverSilk, and Promaxal. [Ferrell Decl., Exh. 5, ¶3].

In early 2014, Ferrell engaged the services of attorney Craig Etem of Lionel Sawyer & Collins to act as corporate counsel for the as-yet-to-be-formed Strataluz. One of Etem's associates at Lionel Sawyer & Collins, Brian H. Schusterman, also assisted in the formation of the company. [Ferrell Decl., Exh. 5, ¶4].

The email string at issue begins with a January 8, 2014 email from Ferrell to his lawyers Etem and Schusterman, with a copy to his business partners Dave Reid and Josh Weiss. The subject of the email is "Corporate Formation." [Ferrell Decl., Exh. 5, ¶5]

Later that same day, Reid sent a follow up email to Josh Weiss regarding the same subject matter, but inadvertently sent the email to Weiss's corporate email account at Continuity instead of his private email account. [Reid Decl., Exh. 6, ¶¶2-5].

As soon as Weiss discovered that Reid had sent the email to Weiss's Continuity email account, he (a) forwarded the email to his private email account, (b) deleted the email from his Continuity account, and (c) called and asked Reid not

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   to send any more emails to Weiss's Continuity email account.  [Weiss Decl., ¶2].

2   On information and belief, Continuity only has a copy of the email string because it

3   continues to reside on their email server despite being deleted from Weiss's Inbox.

4   Upon learning that Continuity still had a copy of the email, Weiss sent Continuity's

5   counsel a letter demanding that the email be destroyed.  [Weiss Decl., ¶4, Exh. 1.]

6       **C.    Weiss's Contentions and Points and Authorities**

7           **1.    The Email Is Privileged**

8           "The attorney-client privilege protects confidential communications between

9   attorneys and clients, which are made for the purpose of giving legal advice."

10  *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).  The privilege exists

11  where "(1) legal advice of any kind is sought (2) from a professional legal adviser in

12  his capacity as such, (3) the communications relating to that purpose, (4) made in

13  confidence (5) by the client, (6) are at his instance permanently protected (7) from

14  disclosure by himself or by the legal adviser, (8) unless the protection be waived."

15  *Id.*   (internal quotation and citation omitted).  The attorney-client privilege extends

16  to confidential communications between employees of a corporation and the

17  corporation's attorney.  *United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010).

18  The attorney-client privilege also applies to confidential communications among

19  corporate employees relating to legal advice obtained from the corporation's

20  attorney.  *See Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 863 (D.C.

21  Cir. 1980) ("When the client is by nature a group…the courts have agreed that the

22  privilege should not be defeated by some limited circulation beyond the attorney and

23  the person within the group who requested the advice."); *In re Teleglobe*

24  *Communications Corp.,* 493 F3d 345, 369 (3d Cir. 2007) ("[C]ourts almost

25  universally hold that intra-group information sharing does not implicate the

26  disclosure rule."); *see also Admiral Ins. Co. v. U.S. Dist. Court for the Dist. of*

27  *Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989) ("[T]he privilege applies to

28  communications by any corporate employee regardless of position when the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 19 -

communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation") (citing *Upjohn Co. v. United States,* 449 U.S. 383, 394 (1981)).

Here, the email string at issue includes communications between a client (Ferrell, Reid, and Weiss) and its attorneys (Etem and Schusterman), along with an email from Reid to Weiss concerning the same subject matter.  [Ferrell Decl., Exh. 5, ¶5.]  It is without question privileged.

### 2.    Ferrell, Reid, and Weiss Did Not Waive Privilege

Because the email is privileged, the next issue for determination is whether the privilege was waived.  Plaintiff contends that Ferrell, Reid, and Weiss waived any claim of privilege because Reid inadvertently forwarded the email to Weiss's Continuity email account.

Plaintiff is mistaken.

Disclosure does not result in waiver if "(1) the disclosure is inadvertent; (2) the holder of the privilege took reasonable steps to prevent disclosure; and (3) the holder took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).  Fed. R. Evid. 502(b).  In other words, "inadvertent disclosure of protected communications or information…does not constitute a waiver if the holder took reasonable steps to prevent disclosure and also promptly took reasonable steps to rectify the error."  Advisory Committee Note to Fed. R. Evid. 502(b).

In this case, Ferrell, Reid, and Weiss satisfy Federal Rule of Evidence 502(b)'s inadvertent disclosure requirements.  There is no dispute that the disclosure was inadvertent.  A holder of the privilege – Weiss – took reasonable steps to prevent disclosure.  As soon as Weiss discovered that Reid had sent the email to Weiss's Continuity email account, he (a) forwarded the email to his private email account, (b) deleted the email from his Continuity account, and (c) called Reid to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

ask him not to send any more emails to Weiss's Continuity email account. [Weiss Decl., ¶2.]  Finally, there is no dispute that Weiss acted promptly to rectify the inadvertent disclosure after discovering it – Weiss's attorney in his wrongful termination suit sent Continuity a letter demanding that the email be destroyed. [Weiss Decl., ¶4, Exh. 1.]

## V.   PLAINTIFF NIC'S POSITION

### FACTS AND PROCEDURE

Josh Weiss was hired by Continuity Products in November 2011 as its general counsel.  *See* Exh. E ¶ 4.[2]  In 2012, NTG attorneys sued Continuity's subsidiary, Obesity Research Institute ("ORI"), through an alleged consumer plaintiff.  *See* Declaration of Joshua A. Weiss ("Weiss Decl."), Exh. G ¶ 3.  That was the *second* consumer case NTG filed against Continuity.  *Id.*  Continuity agreed to settle with NTG's attorneys.  To avoid additional NTG shakedown lawsuits, Mr. Weiss agreed to have Continuity "retain" NTG as its counsel for $30,000.  While the retention would on its face appear to constitute a conflict of interest, NTG nevertheless used the existence of that "conflict" to convince Weiss that by retaining NTG, NTG would be "conflicted" out of future lawsuits against Continuity or ORI.  The $30,000 retainer was thus protection money.  Mr. Weiss described that arrangement in his sworn declaration:

> After ORI … had been twice sued in 2012 by consumers represented by Newport Trial Group ("NTG") in consumer protection lawsuits, after settling such lawsuits with NTG's clients, in my capacity as [Continuity's] in house counsel, I contacted NTG and came up with what I considered to be a creative solution to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

[2] NIC has not had an opportunity to take discovery from Mr. Weiss or Continuity Products, having been recently granted permission from Judge Selna in October.  The facts set forth in NIC's responsive sections here are based on publicly available information filed in related cases, public documentation, and evidence collected through third party sources.

avoid future litigation involving NTG as opposing counsel by proposing that NTG be retained by ORI to provide legal services to ORI so that it would be a conflict of interest for NTG to be adverse to [Continuity] during such representation of ORI. ORI's owner and Managing Member, Henny den Uijl, agreed with and approved such strategy and so ORI paid NTG a substantial $30,000 retainer for future legal services.

*See* Weiss Decl., Exh. G at ¶ 4. Through that relationship, Mr. Weiss and NTG principals Scott Ferrell and David Reid became close acquaintances. According to Continuity:

While NTG represented [Continuity], Weiss permitted and on information and belief encouraged NTG to bill [Continuity] for unnecessary and excessive legal fees and costs. For its part NTG in the meantime provided Weiss with gifts including meals and a trip to Hawaii and on information and belief may have provided Weiss with other benefits and consideration.

*See* Exh. E at ¶ 21.[3]

### A. NTG and Weiss Formed Shell Corporations to Extort Corporate Defendants

Having discovered that Weiss colluded with NTG attorneys to form sham corporations, Continuity Products sued Weiss in June 2016. Exh. E. Continuity alleged that Weiss violated his ethical duties, misappropriated Continuity's trade secret information through his relationship with NTG, and helped NTG form shell corporations to extort corporate defendants. *See generally id.*

Around January of 2014, while Weiss still worked for Continuity, Weiss and NTG owners Scott Ferrell and David Reid conspired to form, own, and manage a Nevada limited liability company called Strataluz LLC ("Strataluz"). *Id.* at ¶ 22. In its pleadings Continuity explained that "Weiss attempted to hide the true owners of Strataluz by forming several more 'shell' Nevada LLCs to serve as the ostensible

[3]

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

members/owners of Strataluz." Exh. E at ¶ 24. The corporate formation documents corroborate those allegations. Exhs. I-L.

Ferrell, Reid, and Weiss exchanged a series of emails describing the formation of "Strataluz LLC." The very document containing those emails is the one NTG seeks to quash in the present motion. On Wednesday, January 8, 2014 at 2:42 PM (while working at Continuity and on Continuity's time), Mr. Weiss sent an outbound message containing the relevant correspondence regarding Strataluz to the following email address: "jaws1717@gmail.com." *Id*. (with the subject of "Corporate Formation"). Weiss did not delete the version of that message sent through his Continuity corporate email. Exh. W at ¶ 6. The file marked as NTG004939-4942 remains in Continuity's possession. Weiss left that file on his local computer in his outbound Outlook message box, where Continuity eventually found the file. *Id*. The underlying messages included business discussions between NTG's managing attorneys, Ferrell and Reid, and Weiss, along with instructions to local counsel concerning the formation of several corporations under which NTG would later pursue sham litigation.

Weiss sent the message via Continuity's email account, which was subject to a corporate email policy. Exh. H. Continuity specifically informs employees that the company may take actions including "**routinely recording, monitoring, conducting surveillance, inspecting and/or reviewing Internet, e-mail, and intranet usage.**" Exh. H at 2 (emphasis added) (noting that "Authorized company personnel" may use those monitoring practices to "uncover any activity that may jeopardize the security or integrity of the company's information or information systems, and any activity that is illegal, impermissible or inappropriate"). Mr. Weiss personally received those terms in his Employee Handbook and signed for them on April 26, 2013. *Id*. at 3.

Within three weeks after that January 8, 2014 correspondence, on January 28th, NTG incorporated Strataluz LLC through local counsel in Nevada. Exh. I at 1.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 23 -

Consistent with their plan to defraud defendant corporations, Ferrell, Reid, and Weiss structured Strataluz LLC so that their ownership interests would be difficult to discover.  Strataluz was owned by:  (1) Binary Resource Management, LLC (*Id*.); which was then owned by (2) International Brandery, LLC (Exh. J); which was then owned by (3) Qintogos, LLC (Exh. K).  All of those entities were incorporated on the same date of January 28, 2014.  *See* Exhs. I-L.  Other than masking Strataluz's true owners, those intervening companies appear to have had no functionality:  no holdings and no commercial interests.  Scott Ferrell signed the corporate documents. *Id*.  But Mr. Ferrell did not reveal that he was also the "President" and "Manager or Member" of each corporation until over a year later in subsequent corporate filings. *Id*.  Josh Weiss held a "17% minority equity stake in the holding company that owned Strataluz."  *See* Weiss Decl. Exh. G at ¶ 9.  Ferrell and Reid have described this corporate arrangement with Weiss as a "business partnership."  Lawrence Decl., Exh. 3 at 2.

## B. Strataluz Pursues Litigation Based on Sham Products

Strataluz was established by NTG attorneys Ferrell and Reid along with Weiss to support lawsuits that could be litigated by NTG counsel for the purpose of extorting settlement from corporate defendants.  Continuity alleged in 2015 that:

> Weiss … profited from Strataluz by engaging in a scheme akin to 'patent trolling,' whereby Strataluz, represented by NTG as legal counsel of record, threatened to sue other companies for alleged Lanham Act violations to extort monetary settlements from them. In other words, … Weiss and NTG created a corporation client with the goal of filing and threatening to file cookie-cutter lawsuits against competitors by misappropriating and misusing [Continuity's] intellectual property and proprietary information.

> During his workday, and using company resources, Weiss colluded with NTG and Bentley to identify their next defendant and invent their next "competing product."

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   *See* Exh. E at ¶¶ 29-30.

2        Through Strataluz, NTG attorney Defendants Reid and Ferrell did pursue

3   sham competitor suits under the Lanham Act. They created "competing" dietary

4   supplement products as predicates for demand letters seeking $200k in quick

5   settlement cash. Exh. F at 21; Exh. N at ¶ 22. The Strataluz products were

6   fictitious. *See* Exh. E at ¶ 22.[4] NIC counsel has been unable to locate any publicly

7   available evidence that these products were actually sold by Strataluz to consumers.

8   Little information exists about Strataluz online. Exh. V. Other than several

9   placeholder websites published by Strataluz for its fictional or non-participating

10  products, the corporation appears to have had no commercial identity or presence

11  and it apparently existed only during the period when it was used as a plaintiff in

12  suits or threatened suits against corporate defendants.

13        Continuity is not the only entity to accuse Strataluz's founders of pursuing

14  sham lawsuits. Exh. F at 6-9. In 2015, Scott Ferrell sued TruDerma, the makers of

15  a male sexual performance dietary supplement called "Viaxus." Exh. M. Ferrell

16  claimed that his "client," Strataluz, sold a competing male enhancement product by

17  the name of "ProMAXAL," which was allegedly damaged by TruDerma's sales of

18  Viaxus. Exh. M at ¶¶ 4, 12. Ferrell claimed that Strataluz's competitive damages

19  were "significant" because "Strataluz ha[d] invested a significant amount of

20  resources in researching, formulating, developing, and obtaining the exclusive rights

21  to [its] Patented technology." Exh. F at 20. Ferrell and Reid threatened TruDerma

22  with litigation unless TruDerma purchased a "license" for Strataluz's purportedly

23  patented technology for a flat fee of $200,000. *Id.* at 21. A material allegation

24  supporting their Lanham Act claim was that Strataluz had a legitimately competitive

25  product and, thus, an actual legal injury. Exh. M at ¶ 1.

26  ─────────────────────

27      [4] Strataluz claimed to have owned many products, most of which were
    apparently fictional or never sold commercially. Strataluz never legitimately
28  participated in the commercial market.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 25 -

TruDerma counterclaimed, explaining that it was "familiar with competing products in the industry, but prior to the filing of the lawsuit by Strataluz, TruDerma had never heard of this purported product." Exh. F at ¶ 5. Strataluz had registered its website (www.promaxal.com) just *days* before it filed suit against TruDerma. *Id*. at ¶ 6. "ProMAXAL [was] not even a real product but instead the 'product' and the website [had] been created solely for the purpose of bringing claims against businesses who sell products in the supplement industry." *Id*. at ¶ 6, ¶ 7 (explaining that "the very existence of this product is a sham").[5] Strataluz's ProMAXAL website was designed to display an error message whenever potential customers attempted to purchase product. *Id*. at ¶¶ 7-8. The website had no e-commerce engine in its underlying HTML code. *Id*. The website included a purported customer service phone number which was answered by a recorded message claiming to be associated with a different brand or product. *Id*. The product was purportedly "not available in stores" according to ProMAXAL's website and, so, there was literally no way for consumers to obtain the fictional product. *Id*. at p. 16. The website referenced a U.S. Patent in support of ProMAXAL, but the cited patent was not one for the product purportedly sold. *Id*. at ¶ 11.[6] Scott Ferrell and David Reid promptly dismissed their Strataluz claim against TruDerma after receiving TruDerma's counterclaims.

TruDerma ultimately concluded, as did Continuity and NIC here, that "Strataluz [was] not engaged in the actual manufacturer or marketing of legitimate products, but [was] instead operating solely as a 'Lanham Act Troll' seeking to extract payoffs from legitimate businesses by setting up façade operations, the sole

[5] TruDerma supported its allegations with exhibits. Exh. F. It also noted that "simultaneous with the filing of the [TruDerma] lawsuit, Strataluz has been sending demand letters to other competitors demanding payment of $200,000 for a 'license'" to use the Strataluz technology. Exh. F at ¶¶ 14-15 (describing other litigation involving Strataluz).

[6] *See* U.S. Patent No. 5,817,364 (the '364 Patent). The '364 Patent was assigned to Harcol Research LLC on Dec. 17, 2012. Exh. O.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

purpose of which [was] to file suits against 'competitors' in hopes of obtaining payments to avoid litigation and costly fees." *Id*. ¶ 16. That conclusion is supported by Weiss's own declaration, wherein he admits that Strataluz had no profits. Exh. G at ¶¶ 10-13 (stating that "Strataluz did not make any profit on its minimal sales of its products, which resulted in it being dissolved as of February 2016.").

For its part, Continuity Products later discovered that the advertising claims used on those bogus Strataluz websites were drawn from Continuity's own confidential and proprietary research files—which apparently evidenced a misappropriation of Continuity's information by Ferrell, Reid, and Weiss, all of whom were attorneys representing Continuity at the time. Exh. E at ¶ 56. The Strataluz corporation was designed to purportedly compete against Continuity.

On information and belief, NTG has operated multiple shell corporations in similar fashion. NTG began creating corporate clients in 2012 through the Tawnsaura Group LLC, which was another Nevada corporation owned and operated by NTG principal Scott Ferrell. Exh. R. NTG's Tawnsaura cases used what were ultimately determined to be invalid and unenforceable patents to mount nuisance infringement claims. *See Tawnsaura Group, LLC v. Maximum Human Performance, LLC*, No. 2:12-cv-07189 (C.D. Cal. filed Aug. 21, 2012) (granting summary judgment in favor of all defendants because Tawnsaura's patents were invalid and unenforceable). NTG filed ninety (90) cases using Tawnsaura as a plaintiff over the short span of thirteen months. In October of 2012, another NTG attorney formed Harcol Research LLC. Exh. P. That NTG attorney was also listed as the managing agent for the corporation. *Id*. Through Harcol, NTG launched twenty-seven (27) cases within eighteen months. NTG appears to have followed the Tawnsaura and Harcol model with Strataluz LLC. These sham corporations reveal that NTG attorneys created their clients from whole cloth (either hiring plaintiffs to file false claims or creating corporate entities to pursue false claims). Those practices support NIC's RICO allegations, which focus on NTG's use of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

manufactured claims in consumer protection lawsuits.

On January 28, 2016, NIC filed its Corrected First Amended Complaint in this case.  Exh. S.  That pleading alleged that NTG had used sham corporations to file bogus lawsuits.  *Id*. at ¶¶ 37-40.  Within one week after that filing, on January 31, 2016, Scott Ferrell filed with the Nevada Corporate Commission to dissolve all corporations within the Strataluz lineage.  Exhs. I-L (listing Ferrell as "President" of each entity).  Strataluz also de-listed and promptly removed all of its websites that purported to sell the fictitious products.

### C. Continuity Discovers Weiss's Emails in His Corporate Email Folders

Mr. Weiss abruptly left Continuity Products in July 2015.  Exh. E at ¶ 4.  Continuity discovered the emails with NTG's Scott Ferrell and David Reid during its review of Weiss's corporate files.  On February 5, 2016, after discovering Mr. Weiss's email communications, a representative from Continuity contacted NIC attorneys Josh Furman and Peter Arhangelsky.  Decl. of Peter A. Arhangelsky ("PAA Decl.") ¶ 3; *see also* Exh. T.  NIC counsel had three separate phone calls with Continuity's in-house counsel concerning Mr. Weiss's conduct.  *Id*.  On October 25, 2016, Judge Selna granted NIC's motion to take discovery from Continuity related to that conduct.  Exh. B.  The Court held that "the alleged correspondence contains conversations between Newport Trial Group attorneys about a plan to form sham corporate entities solely to pursue legal claims . . . [S]uch allegations are at the heart of this case.  If true, this evidence would support Natural-Immunogenics' claim of a pattern of RICO activity."  *See id*. at 4-5.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

# **ARGUMENT**

## **A. The Emails on Continuity's Server Are Not Subject to the Attorney-Client Privilege**

"The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications.  To meet this burden, a party must demonstrate that its documents [or communications] adhere to the essential elements of the attorney-client privilege adopted by this court." *U.S. v. The Corporation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (listing eight essential elements).  Federal law governs the availability and scope of the privilege in non-diversity actions like the instant RICO case.  *See Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989).  "The eight essential elements necessary to assert an attorney-client privilege are: (1) legal advice of any kind was sought, (2) the legal advice was sought from a professional legal adviser in his capacity as an advisor, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at the client's instance, permanently protected (7) from disclosure by the client or by the legal advisor, (8) unless the protection is waived." *Garcia v. City of El Centro*, 214 F.R.D. 587, 590 (S.D. Cal. 2003) (citing *The Corporation*, 974 F.2d at 1071, n.2 (9th Cir. 1992) and *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).  The "privilege is to be strictly construed." *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990); *Fisher v. U.S.*, 425 U.S. 391, 403 (1976) ("only those disclosures necessary to obtain informed legal advice" are protected).

The movants have not established the requisite elements.

## **1.  Movants Have Not Established the Elements of Privilege**

NTG depends on the content of NTG's "privilege" log titled "Revised "privilege" log (11-4-2016) re: Continuity Subpoena & Privileged Emails" as its basis for privilege assertion.  Lawrence Decl., Exh. 4.  That document provides no content germane to the elements of the attorney-client privilege.  *Id*.  The

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  description NTG gives of the email contents is *in toto*:  "Corporate Formation."  *Id.*

2  Omitting essential elements, Movants instead state in conclusory fashion that the

3  email "seeks legal advice."  *See* § III.C.1.  But what type of "advice" was Ferrell—a

4  licensed attorney—soliciting from his Nevada local counsel?  For instance, if

5  Ferrell's email was just a list of instructions to his local agent in Nevada, the thrust

6  of which would become public record after the corporations were filed, that content

7  would not appear privileged.  Ferrell has not demonstrated that counsel in Nevada

8  was hired as his attorney, as Strataluz's attorney, or as a mere agent to carry out

9  basic business services.

10      If Ferrell's email contains instructions to a mere agent and not a solicitation of

11  legal "advice," it would be ineligible for the privilege.  Movants have not explained

12  how the communication relates to legal advice as opposed to "communications

13  between business partners," which is not privileged.  *See* Lawrence Decl, Exh. 3 at

14  2.  "Conclusory assertions of the attorney-client privilege are insufficient to invoke

15  the privilege" and, here, all we have are conclusions.  *USA v. Martinez*, No.

16  15CR00314YGR1KAW, 2016 WL 1756216 at *3 (N.D. Cal. May 3, 2016); *see also*

17  *United States v. Ruehle*, 583 F.3d 600, 607–09 (9th Cir. 2009) (finding that the

18  asserting party "bears the burden of proving each essential element.").

19      The Ninth Circuit rejects privilege *ab initio* unless the movant presents to the

20  court and opposing counsel proof of each of the *required* elements, including:  the

21  identity and capacity of all individuals who authored, sent, and received each

22  allegedly privileged document or communication; a brief description of each

23  document; and a brief description of its contents or subject matter sufficient to

24  determine whether the privilege applies.  *See, e.g., In re Grand Jury Investigation*,

25  974 F.2d 1068, 1071 (9th Cir. 1992); *Club Level, Inc. v. City of Wenatchee*, 618

26  F.App'x 316, 319 (9th Cir. 2015); Fed. R. Civ. P. 26(b)(5).  Movants have failed to

27  give this court and opposing counsel any of that required information, let alone a

28  substantive presentation sufficient to satisfy the eight elements of privilege.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Because defendants have failed to present requisite bases for assertion of the

2    privilege, they have failed their burden and the motion should be denied.

3

### 2.   Mr. Weiss's Emails Sent Through Continuity's Corporate Email Account Were Not "Confidential" Communications

5        For privilege to attach, movants must prove that the communication was

6    "confidential."  *See, e.g., Garcia*, 214 F.R.D. at 590.  Where, as here, a corporation

7    has an email policy that allows monitoring of corporate email, courts uniformly hold

8    that email traffic through those accounts is not privileged because the messages are

9    not "confidential."  *See, e.g., Holmes v. Petrovich Development Co.*, 191

10   Cal.App.4th 1047 (2011).  In *Holmes*, the Court held that corporate emails

11   exchanged with outside counsel were not privileged because the client never had a

12   reasonable expectation of privacy in her communications when using corporate

13   email.  *Id.* at 1069.  The Court reached that conclusion even though the privilege

14   holder (the employee) had used a private password to access her computer and had

15   deleted her emails after sending them.  *Id.*  Holmes' subjective belief in the privacy

16   of her email was insufficient to avoid disclosure:

17           Holmes emphasizes that she believed her personal e-mail would be
18           private because she utilized a private password to use the company
             computer and she deleted the e-mails after they were sent.
19           However, her belief was unreasonable because she was warned that
20           the company would monitor e-mail to ensure employees were
             complying with office policy…
21

22   *Id.* at 1069.  Under these circumstances, a "company computer was not a means by

23   which to communicate in confidence any information to [an] attorney."  *Id.* at 1071.

24        Here, the privilege claim at issue is substantively indistinguishable from that

25   in *Holmes*.  Weiss used Continuity's corporate email to receive and send the

26   content, Document No. NTG004939-4942.  Continuity had an express provision in

27   its Employee Handbook informing Weiss that his email was not private.  Exh. H at

28   2.  Continuity's handbook explained that the corporation would monitor his email,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

including "routinely recording, monitoring, conducting surveillance, inspecting and/or reviewing Internet, e-mail, and intranet usage." *Id.* Weiss specifically acknowledged his receipt of that policy, signing for it in 2013. *Id.* at 3. He was also Continuity's in-house counsel and, thus, he had a sophisticated understanding of the corporation's employee handbook and policies.

Moreover, unlike in *Holmes*, Weiss took no reasonable measures to protect his information. He received the email and then forwarded that same information through the corporate account, duplicating the email content and creating another independent record, all using his corporate devices. Weiss made a voluntary, deliberate choice to transmit information through his non-private corporate system, aware that the system was not confidential and that Continuity would likely have a record. Weiss then left those emails on his corporate email account for over two years. *See* Exh. E ¶ 30 ("During his workday, and using company resources, Weiss colluded with NTG and Bentley to identify their next defendant and invent their next 'competing product.'"). Weiss now claims in a declaration that he deleted the Reid email (Weiss Decl. at ¶ 2), but, even if true, he still left a copy of the sent email in his Outlook email box (which makes it fully discoverable from Continuity). Exh. W at ¶ 5. His efforts at "deletion" were at best incomplete and belied by the fact that Continuity still retains a copy of the message. *Id.*

If in *Holmes* the employee's attempt to actively delete emails was still inadequate to preserve her privilege, then certainly Mr. Weiss's ineffective attempt here is likewise inadequate. *See Holmes*, 191 Cal.App.4th at 1069.

The issue of "inadvertent disclosure" now raised by movants is mooted by Weiss's use of corporate communication channels. Because Weiss's communications were not through confidential channels, the Court need not reach

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Mr. Reid's* post hoc argument of "inadvertence" when sending the original file.[7] Weiss disclosed the content himself. *See Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D. Cal. 1995) ("courts have consistently refused to apply the privilege to information that the client intends or understands may be conveyed to others") (collecting cases).

Courts have likened the use of corporate email to shouting from a conference room with the door open, or writing an email with one's supervisor looking on. *Holmes*, 191 Cal.App.4th at 1051; *Scott v. Beth Israel Med. Ctr. Inc.*, 847 N.Y.S.2d 436, 440 (Sup. Ct. 2007). Regardless of whether the speaker intended to maintain confidentiality under the circumstances, the use of public means to transmit content renders those intentions unreasonable according to state and federal courts across the nation. *See, e.g., Holmes,* 191 Cal.App.4th at 1069-71.[8] Here Weiss's corporate

---

[7] Movants' argument concerning "inadvertent" disclosure depends on a factually false assumption: that "we are not dealing with a publicly disclosed document…" *See* § III.C.3. To the contrary, under the law the document is indeed public. The document was found in Weiss's corporate email boxes. When Weiss sent that document through his corporate email, he effectively sent that document throughout his corporation and, particularly, to all corporate officers with access to his computer.

[8] *United States v. Simons,* 206 F.3d 392, 398 & n. 8 (4th Cir.2000) (no privilege or reasonable expectation of privacy in office computer and downloaded Internet files where employer had a policy of auditing employee's use of the Internet, and the employee did not assert that he was unaware of or had not consented to the policy); *Muick v. Glenayre Elec.,* 280 F.3d 741, 743 (7th Cir.2002) (no privilege or reasonable expectation of privacy in workplace computer files where employer had announced that he could inspect the computer); *Thygeson v. U.S. Bancorp,* No. CV–03–467, 2004 WL 2066746, at *20 (D.Or. Sept. 15, 2004) (no privilege or reasonable expectation of privacy in computer files and e-mail where employee handbook explicitly warned of employer's right to monitor files and e-mail); *Kelleher v. City of Reading,* No. Civ. A. 01–3386, 2002 WL 1067442, at *8 (E.D.Pa. May 29, 2002) (no privilege or reasonable expectation of privacy in workplace e-mail where employer's guidelines "explicitly informed employees that there was no such expectation of privacy"); *Garrity v. John Hancock Mutual Life Ins. Co.,* No. Civ. A. 00–12143, 2002 WL 974676, at *1–2 (D.Mass. May 7, 2002) (no privilege or reasonable expectation of privacy even where company did not intentionally inspect e-mail usage); *see also Smyth v. Pillsbury Co.,* 914 F.Supp. 97, 101 (E.D.Pa.1996) (no privilege or reasonable expectation of privacy where employee voluntarily sends an e-mail over the employer's e-mail system); *Scott v.*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    email is akin to writing with his boss overlooking, or openly discussing these issues

2    with NTG in Continuity's lobby.

3         Thus, because the Weiss emails are not "confidential" under Continuity's

4    policies, no privilege applied to them and the motion to quash may be denied

5    summarily.

6

7         **3. The Emails Include Business Discussions That Are Not Privileged**

8         The Defendants have failed to prove that the communications in issue were

9    made to obtain legal advice; they therefore fail to satisfy another essential element

10   of attorney-client privilege. *The Corporation*, 974 F.2d at 1071, n.2. The attorney-

11   client privilege "does not protect an attorney's business advice. Corporations may

12   not conduct their business affairs in private simply by staffing a transaction with

13   attorneys." *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076

14   (N.D. Cal. 2002). "In order to show that a communication relates to *legal* advice,

15   the proponent of the privilege must demonstrate that the 'primary purpose' of the

16   communication was securing legal advice." *Id.* (explaining that "[e]xtending

17   protection to communications primarily and sufficiently animated by some other

18   purpose would not be necessary to encourage forthright disclosures by clients to

19   lawyers—so such communications should not be privileged") (emphasis original).

20   Communications are "not privileged where the principal purpose for making the

21   communication was not to secure legal advice but to secure what was essentially a

22

23   *Beth Israel Med. Ctr. Inc.*, 847 N.Y.S.2d 436 (Sup. Ct. 2007) (e-mails sent to
     personal attorney were not privileged because hospital had e-mail policy warning
24   that employee emails were not private); *Long v. Marubeni Am. Corp.*, No.
     05CIV.639(GEL)(KNF), 2006 WL 2998671, at *1 (S.D.N.Y. Oct. 19, 2006) (same);
25   *In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247 (Bankr. S.D.N.Y. 2005) (same);
     *Miller v. Blattner,* 676 F.Supp.2d 485, 497 (E.D.La.2009) (same); *United States v.*
26   *Etkin,* No. 07-CR-913(KMK), 2008 WL 482281, at *4 (S.D.N.Y. Feb. 20, 2008)
     (same); *Sims v. Lakeside School,* No. C06–1412(RSM), 2007 WL 2745367, *1
27   (W.D.Wash. Sept. 20, 2007) (same).

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: MOTION TO QUASH CONTINUITY SUBPOENA

business service." *Genentech, Inc. v. Trustees of the Univ. of Pennsylvania*, 2011 WL 5079531, *2 (N.D.Cal. October 24, 2011) (internal quotations omitted); *see also U.S. v. Cote*, 456 F.2d 142, 145 n.3 (8th Cir. 1972) (collecting authorities and holding that privilege does not apply to information intended to be submitted to government, like tax filings).

The Ninth Circuit has explained that privilege does not extend to business discussions, records, or financial information, even when prepared by or for counsel. *See Matter of Fishel*, 557 F.2d 209, 211–12 (9th Cir. 1977) ("An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction."). In *Fischel*, the Ninth Circuit held that the attorney-client and work product privileges did not extend to "summaries of a client's business transactions with third parties compiled by an attorney from unprivileged facts" even when the summaries "constitute[d] a communication of sorts by the attorney to the client." *Id.*

Here, the information in Weiss's email chain apparently included instructions or factual information related to "corporate formation." Lawrence Decl., Exh. 4. In responding to Weiss's March 9, 2016 letter concerning the document at issue, counsel for Continuity Products (who had reviewed the document) represented that the document "**does not contain any legal advice**" and was merely a "**factual discussion**." Exh. U (emphasis added). If the documents list names for corporations that were publicly filed, or describe common business services unrelated to legal advice, then privilege would not apply. *Genentech,* 2011 WL 5079531 *2. These emails were then exchanged between "business partners" Scott Ferrell, Dave Reid, and Josh Weiss.[9]  Lawrence Decl., Exh. 3 at 2. The fact of incorporation is, of course, not a confidential matter. There are no messages at issue

---

[9] The second email in the chain is sent from David Reid to Joshua Weiss without copying counsel. There are no attorneys included on that communication; it is merely an email between two "business partners." Such business discussions cannot form the basis of attorney-client privilege.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

from the attorneys to the clients themselves. Movants do not state that the emails even involved issues concerning Nevada law. Upon reviewing the files *in camera*, if the Court determines that no legal advice was conveyed or requested, then it should compel production.

Because the movants have not shown precisely how these emails convey, solicit, or further legal advice, their privilege claim is incompetent.

### B. The Emails Are Not Protected by the Work Product Privilege.

"Work product must be in anticipation of litigation," and the privilege "does not protect facts concerning the creation of work product or facts contained within the work product." To be "in anticipation of litigation," the documents must be prepared or obtained because of a prospect of actual litigation such that the document "would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004); *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011).

Movants do not assert work product in their motion. They list "work product" in their "privilege" log, but they include no substantive support. They have thus waived that position. Nonetheless, NTG's invocation of the work product privilege (even in the "privilege" log) raises serious concerns. If "corporate formation" files were in "anticipation of litigation," then the crime/fraud doctrine applies. Evidence that NTG anticipated litigation at the time of corporate formation supports NIC's RICO allegations concerning staged litigation because it proves that NTG intended to pursue legal proceedings without regard to the business's actual commercial interests.

### C. Even Were The Weiss Emails Privileged, Weiss and Continuity Waived That Privilege

A waiver occurs "where the disclosure substantially increases the opportunity

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   for potential adversaries to obtain the information." *See Griffith v. Davis*, 161

2   F.R.D. 687, 699-700 (C.D. Cal. 1995); *Bd. of Trs. of the Leland Stanford Junior*

3   *Univ. v. Roche Molecular Sys., Inc.,* 237 F.R.D. 618, 624 n. 3 (N.D. Cal. 2006)

4   ("[W]ork product protection is forfeited by disclosure in circumstances in which the

5   attorney cannot reasonably expect to limit the future use of the otherwise protected

6   material."). "[O]nce documents have been turned over to another party voluntarily,

7   the privilege is gone." *See Bittaker v. Woodford*, 331 F.3d 715, 719-20 (9th Cir.

8   2003). Movants have the burden to prove that no waiver occurred. *The*

9   *Corporation*, 974 F.2d at 1071, n.2 (9th Cir. 1992).

10  Movants now argue "inadvertent disclosure," but the facts do not support

11  application of that doctrine. Weiss may have desired to keep information away from

12  his employer when he forwarded content through his corporate email, but he

13  certainly *intended* to send the file through that corporate email account, aware that

14  the account was not private. Exh. H at 3. Because Continuity had an email policy

15  specifically informing Weiss that his emails would be monitored, Weiss had actual

16  knowledge that his sent messages would be disclosed. By transmitting the file,

17  Weiss effectively sent his email to the entire corporation. Weiss left this email on

18  that corporate system for eighteen months before he departed Continuity in July

19  2015. Exh. E at ¶ 4. He departed Continuity undoubtedly aware that his

20  replacement would have access to and would be obliged to review his prior

21  communications using the corporate email account.

22  By definition, that conduct "substantially increases the opportunity" for

23  adversaries and third parties to obtain the information. *See Griffith v. Davis*, 161

24  F.R.D. at 699-700. The movants here have the burden to prove that no waiver

25  occurred. *Great American Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F.Supp. 2d

26  1084, 1092-93 (N.D. Cal. 2009) (explaining that the burden is on movant to

27  establish that privilege was not waived). Other than self-serving declarations, which

28  cannot be reliably examined here, movants have no credible evidence to support the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: MOTION TO QUASH CONTINUITY SUBPOENA

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

conclusion that Mr. Weiss's communication through his corporate email account was inadvertent, or that Mr. Weiss's failure to remedy the disclosures was reasonable.  In fact, Reid now claims that his message to Weiss was inadvertent, but Reid himself apparently undertook no efforts to recall that document.  Weiss had to phone Reid and inform him that the corporate account should not be used.

Public disclosure of information, even if unwitting as to consequence, vitiates the privilege.  *See Bittaker v. Woodford*, 331 F.3d 715, 719-20 (9th Cir. 2003) ("once documents have been turned over to another party voluntarily, the privilege is gone"); *Great American Assur. Co.*, 669 F.Supp. 2d at 1092-93 (waiver occurs through the "intentional emailing of a single document to a third-party"); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *6 (N.D. Cal. Aug. 5, 2005) (quoting *Westinghouse Elec. Corp. v. Repub. of Phillipines*, 951 F.2d 1414, 1423-27 (3d Cir. 1991)) ("[V]oluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else."); *Griffith v. Davis*, 161 F.R.D. 687, 699-700 (C.D. Cal. 1995) ("waiver is found where the disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'"); *Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,* 237 F.R.D. 618, 624 n. 3 (N.D. Cal. 2006) (privilege "is forfeited by disclosure in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material.").

Continuity sued Mr. Weiss in June of 2016 alleging that Weiss used Continuity company resources to "collude[] with NTG and Bentley."  Exh. E at ¶ 30.  Even when sued, Weiss did not file pleadings with the court attempting to recover the document he now claims was confidential; he apparently did not seek any such relief in either of the other two lawsuits.  Only now, after Judge Selna granted discovery relevant to NIC's RICO allegations, has Weiss claimed privilege. Those inconsistencies call into question the sincerity of one who now for the first time seeks relief based on privilege.

Finally, Continuity does not consider the documents at issue here to be privileged, which is dispositive because Scott Ferrell and Dave Reid were Continuity's retained counsel at the time the emails were created and sent.  Exh. G at ¶ 3.  Weiss was also Continuity's general counsel in 2014.  *Id*. at 2.  The attorney client privilege is the client's to waive.  *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001).  NTG communicated with Weiss on matters related to NTG's representation of Continuity while Weiss was counsel to Continuity.  *Id*. at ¶ 5.  To the extent NTG was communicating with Continuity's in-house counsel on Wednesday, January 8, 2014 at 2:19 PM, when Mr. Weiss was on corporate time, any emails received and sent by Continuity's general counsel on corporate email accounts were those of the corporation.  To the extent any attorney-client relationship existed at all, Continuity was the client because it had an open retainer agreement with NTG and Continuity has never asserted privilege regarding them.

Continuity Products placed Weiss's conduct directly at issue in its pending state litigation against Weiss.  Exh. E at ¶ 30.  The nature of Weiss's dealings with NTG are the subject of that public litigation.  NIC can (and has) described the content contained in these emails with reasonable particularity.  The subject matter has been disclosed and, so, movants have no reasonable basis to withhold the documentation that remained on Continuity's servers for years.

### D. The Weiss Emails Are Discoverable Under the Crime-Fraud Exception to the Attorney-Client and Work Product Privileges

"Under the crime-fraud exception, communications are not privileged when the client consults an attorney for advice that will serve him in the commission of a fraud or crime."  *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) (internal quotations and citations omitted).  Unethical conduct can satisfy the crime-fraud elements.  *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 281 (E.D. Va. 2004) (explaining that term 'crime/fraud exception' … is 'a bit of a misnomer,' as many courts have applied the exception to situations falling well outside of the definitions of crime or fraud" (internal citation omitted)) (citing

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir.1983) (stating that crime/fraud exception applies to work product created as result of lawyer's "unprofessional conduct"); *Cleveland Hair Clinic, Inc. v. Puig*, 968 F.Supp. 1227, 1241 (N.D. Ill. 1996) (holding crime/fraud exception applicable to communications made in furtherance of "bad faith litigation conduct")).  Courts have found that the exception applies to crime, fraud, "or other type[s] of misconduct fundamentally inconsistent with the basic premises of the adversary system."  *In re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982).[10]

To invoke the crime-fraud exception, the Ninth Circuit employs a two-part test.  *In re Grand Jury Investigation*, 810 F.3d at 1113.  First, the court determines whether the client may have been "engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme."  *Id.*  (quoting *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated in part on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 130 S.Ct. 599 (2009)).  The standard on that first prong is simply **<u>reasonable cause,</u>** not preponderance of the evidence as movants incorrectly assert.  *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996) ("Reasonable cause is more than suspicion but less than a preponderance of evidence."); *see also In re Grand Jury Investigation*, 810 F.3d at 1113.  Second, the court must determine whether the privileged communications are "sufficiently related to and were made in furtherance of the intended, or present, continuing illegality."  *Id* (internal quotations omitted).

Step two of the Ninth Circuit's procedure requires *in camera* review of each

---

[10] *See also In re Sealed Case*, 754 F.2d 395, 400 (D.C. Cir. 1985) (applying exception to communications and work product in furtherance of spoliation); *In re St. Johnsbury Trucking Co. v. Bankers Trust Co.*, 184 B.R. 446, 456 (Bankr. D. Vt. 1995) (applying exception to materials created "in furtherance of some sufficiently malignant purpose"); *International Tel. & Tel. Corp. v. United Tel. Co. of Fla.*, 60 F.R.D. 177, 180 (M.D. Fla. 1973) (applying exception to materials created in furtherance of "other substantial abuses of the attorney-client relationship"); *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 661 F.Supp. 1482, 1486 (N.D. Ill. 1987) (same).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

document purportedly within the exception. *In re Grand Jury Investigation*, 810 F.3d at 1114 (quoting *In re Napster*, 479 F.3d at 1090) ("a district court must examine the individual documents themselves to determine that the specific attorney-client communications [or work-product documents] for which production is sought are 'sufficiently related to' and were made 'in furtherance of the intended, or present, continuing illegality.'").

The conduct here falls within the crime/fraud exception.  Two potential scenarios are apparent:  (1) either Ferrell, Reid, and Weiss conspired to form a competing business against their existing client's interest and misappropriated resources from that client (Continuity) in furtherance of that endeavor (Exh. E at ¶¶ 27-30); or (2) they conspired to create non-practicing "shell" corporations used solely to pursue baseless and fraudulent litigation (Exh. F pp. 6-9).  Whichever of those circumstances apply, the emails among Reid, Ferrell, and Weiss implicate unlawful and unethical conduct under the crime/fraud exception.  *See* Cal. Rules of Prof. Conduct 1-120, 3-300, 3-310, 3-600, 3-700; Cal. Bus. & Prof. Code § 6068(e).  Weiss, Ferrell, and Reid represented Continuity Products while they simultaneously conspired to use Continuity resources—including Continuity trade secrets, employees, and marketing content—to build their competing Strataluz LLC venture.  Exh. E at ¶¶ 27-30.  If that business was actually in competition with Continuity, then that reveals unethical conduct supporting application of the crime-fraud doctrine.

The evidence reveals that Ferrell, Reid, and Weiss actually created sham corporations and pursued litigation through fictitious products.  Two other entities have independently concluded that the Strataluz LLC products and lawsuits were shams.  *See generally* Exhs. E & F.  The use of fictitious products and shell corporations to pursue shakedown Lanham Act cases is fraudulent, unlawful, and unethical activity.  Judge Selna has held that "this evidence would support Natural-Immunogenics' claim of a pattern of RICO activity."  *See* Exh. B at pp. 4-5.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: MOTION TO QUASH CONTINUITY SUBPOENA

Pursuing litigation on behalf of a fictitious product, or without having actual legal injury, constitutes a material misrepresentation to the defendant intended to cause detrimental reliance by securing settlement money.

### E. The Documents Are Relevant and The Subpoena Is Not Overbroad

Movants improperly argue that "Plaintiff has made no attempt to show that any of the information sought is relevant in any way to its claims." *See* § III.C.5. To the contrary, that position *directly conflicts* with Judge Selna's October 25, 2016 Order; it must therefore be categorically rejected. *See* Dkt. 198. The Court granted NIC leave specifically to investigate these Continuity documents:

> The Court finds that discovery is appropriate with respect to Continuity. The alleged correspondence contains conversations between Newport Trial Group attorneys about a plan to form sham corporate entities solely to pursue legal claims... [S]uch allegations are at the heart of this case. If true, this evidence would support Natural-Immunogenics' claim of a pattern of RICO activity. Therefore, the Court finds that the importance of this discovery outweighs the burden on the parties and is proportional to the case's needs.

*Id.* at 5. Information discovered concerning "Strataluz LLC" and its shell parent corporations shows that NTG-owned entities were shams in support of NTG's shakedown lawsuits. Movants admit to their role in the creation and operation of the corporations, which sponsored these lawsuits. Exh. G at ¶¶ 10-13. NTG's conduct depended on objectively false threats and statements of legal injuries that evidently never existed. Judge Selna properly concluded in his Oct. 25 Order that NTG's willingness to create corporate clients goes to "the heart" of NIC's RICO allegations.

NIC's subpoena was limited to information revealed in NIC's investigation, carefully tailored so as not to be overbroad. The description in NIC's subpoena gives Continuity notice of the precise documents requested (the motion to quash

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  reveals its awareness of the specific documents in issue).  That subpoena also

2  follows a briefing cycle before Judge Selna, wherein the parties presented detailed

3  argument concerning the responsive information sought, thus providing even greater

4  detail.  NTG counsel, too, was apparently able to identify documents based on the

5  subpoena, revealing the overbroad argument vacuous and disingenuous.

6

7  ### NIC'S CONCLUSION

8  For the foregoing reasons, NIC respectfully requests that this Court take the

9  following action:  (1) DENY movants' motion to quash the subpoena issued to

10  Continuity Products; (2) COMPEL the production of responsive documents within

11  14 days following the Court's Order; and (3) award NIC its reasonable attorney fees

12  because movants' motion, asserting privilege without even addressing the requisite

13  elements, was not substantially justified under FRCP 37(a)(5)(A).

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  Dated:  November 22, 2016          **EMORD & ASSOCIATES**

22

23  By:  _/s/ Peter A. Arhangelsky_
       Peter A. Arhangelsky
24     Attorneys for DEFENDANTS
       NEWPORT TRIAL GROUP, SCOTT J.
25     FERRELL, RYAN M. FERRELL
       VICTORIA C. KNOWLES, DAVID
26     REID and ANDREW LEE BASLOW

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1

Dated:  November 22, 2016          **CALLAHAN & BLAINE, APLC**

2

3                                                By:   _/s/ David J. Darnell_
                                                      Edward Susolik
4                                                      David J. Darnell
                                                      Robert Scott Lawrence
5                                                      Attorneys for DEFENDANTS
                                                      NEWPORT TRIAL GROUP, SCOTT J.
6                                                      FERRELL, RYAN M. FERRELL
                                                      VICTORIA C. KNOWLES, DAVID
7                                                      REID and ANDREW LEE BASLOW

8

9

Dated:  November 22, 2016          **FORD & DIULIO PC**

10

11                                               By:   _/s/ Brendan M. Ford_
                                                      Brendan M. Ford
12                                                     Kristopher P. Diulio
                                                      Tyler E. Sanchez
13                                                     Attorneys for DEFENDANTS
                                                      NEWPORT TRIAL GROUP, SCOTT J.
14                                                     FERRELL, RYAN M. FERRELL
                                                      VICTORIA C. KNOWLES, DAVID
15                                                     REID and ANDREW LEE
                                                      BASLOWNon-Party JOSHUA A. WEISS
16

17

18

19

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: MOTION TO QUASH CONTINUITY SUBPOENA