Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street, 32nd Floor
Los Angeles, CA 90013
213-253-9776
SPECIAL MASTER

FILED
CLERK, U.S. DISTRICT COURT

March 6, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: _Karla Tunis_ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., a Florida corporation, <br><br> Plaintiff, <br><br> v. <br><br> NEWPORT TRIAL GROUP, a California corporation; SCOTT J. FERRELL, a California resident; RYAN M. FERRELL, an Arizona resident; VICTORIA C. KNOWLES, a California resident; DAVID REID, a California Resident; ANDREW LEE BASLOW, a California resident; ANDREW NILON, a California resident; SAM PFLEG, a California resident; MATTHEW DRONKERS, a California resident;  TAYLOR DEMULDER, a Nevada resident; SAM SCHOONOVER, a California resident; GIOVANNI SANDOVAL, an Arizona resident; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No: 15 CV-02034-JVS (JCGx) <br><br> (JAMS Ref. No: 1220053347) |

## ORDER DENYING MOTION TO QUASH SUBPOENA TO CONTINUITY

On November 22, 2016, Defendants Scott J. Ferrell ("S.Ferrell") and David Reid ("Reid") and non-party Joshua A. Weiss ("Weiss") filed a Notice of Motion and Motion to

1

Quash Subpoena to Continuity Products LLC [Dkt. 203], a Joint Stipulation, the opposing declaration of Peter Arhangelsky with numerous exhibits, and the supporting declarations of Weiss with exhibits, Robert Lawrence with exhibits, and Brendan Ford with exhibits. [Dkt. 202-1-202-4]. On December 29, 2016, Defendants S.Ferrell and Reid filed a supplemental memorandum. [Dkt. 208].

On February 6, 2017, the Special Master ordered Defendants S.Ferrell and Reid to provide the Special Master with NTG 0004939-42 ("the Document") for *in camera* review, as requested by PLAINTIFF NIC, and on February 7, 2017, Defendants S.Ferrell and Reid complied with the Order.

On February 15, 2017, the Special Master issued a Tentative Order denying the pending discovery motion, and JAMS served the Tentative Order on the parties. On February 25, 2017, JAMS served the parties with notice of the time and place for an in-person oral argument on the discovery motion, setting the date of March 6, 2017.

On March 6, 2017, Defendants S. Ferrell and Reid sought permission to file Objections to the Declaration of Peter A. Arhangelsky and Exhibits Thereto on Motion to Quash Subpoena to Continuity Products LLC ("Objections"). The Special Master **denies** the request of Defendants S. Ferrell and Reid to file Objections, finding the request is untimely. Defendants S. Ferrell and Reid offer no explanation why the Objections were not filed at the time they filed their supplemental memorandum on December 29, 2016, and the Special Master finds inapposite the authority they rely on to support the late filing, *Sheehy v. So. Pac. Trans. Co.*, 631 F.2d 649 (9th

2

Cir. 1980).

Oral argument was held on March 6, 2017, before Hon. Rosalyn Chapman, Special Master.[1]  Peter A. Arhangelsky and Joshua Furman, attorneys with the law firm Emord & Associates, appeared on behalf of Plaintiff Natural-Immunogenics Corp. ("NIC").  Edward Susolik and David Darnell, attorneys with the law firm Callahan & Blaine APLC, appeared on behalf of  Defendants S.Ferrell and Reid and Brendan M. Ford, partner with the law firm Ford & Diulio PC, appeared on behalf of non-party Weiss.

## I.

## Relevant Procedural History.

This action commenced on December 7, 2015, when NIC filed its original complaint against Defendant Newport Trial Group ("NTG"), individual attorneys and an investigator affiliated with Defendant NTG (collectively with NTG, "NTG Defendants"), and other individuals who served as plaintiffs in litigation brought by NTG (collectively, "non-NTG Defendants").

On May 10, 2016,  NIC filed its Second Amended Complaint for Damages and Injunctive Relief ("SAC") against defendants, raising claims for:  (1) malicious prosecution, against Defendants NTG, S. Ferrell, Ryan M. Ferrell, Victoria C. Knowles, Andrew Lee Baslow, Andrew Nilon and Giovanni Sandoval; (2) violation of RICO (Racketeering Influenced and

---

[1]   The Special Master is of the opinion that Defendants S.Ferrell and Reid and non-party Weiss should be afforded the opportunity for  an in-person oral argument, pursuant to *In re Napster, Inc. Copyright Litig.*, 479 F3d. 1078, 1093 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indust. Inc. v. Carpenter,* 558 U.S. 100 (2009).

Corrupt Organizations   Act), 18 U.S.C. §§ 1961, 1962c & 1964, by wire fraud, mail fraud, extortion, obstruction of justice, bribery and witness tampering, against all defendants; (3) conspiracy to violate RICO, 18 U.S.C. §§ 1961, 1962(d) & 1964(c), against all defendants; and unfair competition in violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., against all defendants. [Dkt. 92].

On August 1, 2016, District Judge James V. Selna granted, in part, and denied, in part, defendants' motions to dismiss and Defendant NTG's anti-SLAPP motion to strike.  [Dkt. 157]. Specifically, Judge Selna granted NTG defendants' motion to dismiss the claims under 18 U.S.C. § 1962(c)-(d) against Defendant Victoria Knowles and non-NTG Defendants' motion to dismiss the claims against Defendants Sam Pfleg, Matthew Dronkers, Taylor Demulder and Sam Schoonover under 18 U.S.C. § 1962(c) and the UCL; and granted NTG Defendants' anti-SLAPP motion to strike all allegations under the UCL on behalf of the general public.  Id.

On October 25, 2016, Judge Selna granted NIC's motion to conduct third-party discovery with respect to Continuity Research, LLC ("Continuity"), stating:

> [NIC] … seeks discovery of correspondence allegedly in [Continuity]'s possession.  That correspondence allegedly contained NTG's instructions from David Reid and Scott Ferrell to create corporations solely to pursue legal claims. … [NIC] developed this belief after communication between its counsel and Allison Borts ("Borts"), an in-house attorney at Continuity….

The Court finds that discovery is appropriate with respect to Continuity. The alleged correspondence contains conversations between [NTG] attorneys about a plan to form sham corporate entities solely to pursue legal claims…. [S]uch allegations are at the heart of this case. If true, this evidence would support [NIC]'s claim of a pattern of RICO activity. Therefore the Court finds that the importance of this discovery outweighs the burden on the parties and it's proportional to the case's needs.

[Dkt. 198].

## II.

### The Subpoena *Duces Tecum*.

On October 27, 2016, NIC served Continuity with a Rule 45 subpoena *duces tecum*, and gave notice to defendants of its intention to serve a subpoena, with a copy of the subpoena. Declaration of Peter Arhangelsky ("Arhangelsky Declaration" ("Decl.")) ¶ 5, Exh. C [Dkt. 202-1]; Declaration of Robert S. Lawrence ("Lawrence Declaration" ("Decl.")) ¶ 2, Exh. 1. [Dkt. 202-3]. The subpoena, which issued from the Central District of California, orders Continuity to produce:

1. … all emails referenced by you in your communications with [NIC's attorneys] on February 5, 2016, and July 7, 2016, that you represented occurred between NTG and your former employee, Josh Weiss, regarding the formation, creation, or establishment of business entities.

2. … all documents concerning or relating to the formation, creation, or establishment of business entities at NTG's request, direction, or behest. …

3. … all documents concerning or relating to communications identified in response to Request No. 1 *supra*.

4. … all documents that identify, describe, name, or reveal the identities of corporate officers (actual or proposed) named or to be named in the corporate filing relevant to Request Nos. 1 and 2 *supra*.

5. … all retainer agreements and contracts executed by YOU that concern, involve, or relate to [NTG] or any of its agents.

[Dkt. 202-1, 202-3].

On October 27, 2016, Ms. Borts, on behalf of Continuity, sent NIC's counsel an email regarding the subpoena, stating:

Continuity is not asserting any privilege over the documents.

We will be producing the documents you are requesting and not asserting any privilege on behalf of Continuity (or any other entity/person).

Please withdraw your request for NTG's retainer agreements as those are subject to the Attorney Client Privilege.

Arhangelsky Decl. ¶ 6, Exh. D.[2]  [Dkt. 202-1].

---

[2]  The Special Master does not know whether NIC withdrew its request for retainer agreements.  Nevertheless, as the Joint Stipulation focuses on the Document, the Special Master considers all objections to the subpoena as referring to the Document.

6

On October 28, 2016, NTG Defendants served Continuity with objections to the subpoena *duces tecum* and advised Continuity that, if the matter was not resolved, they intended to file a motion to quash.  Lawrence Decl. ¶ 3, Exh. 2. [Dkt. 202-3].

On November 4, 2016,  NTG Defendants provided NIC with a privilege log identifying the Document as an email chain consisting of three emails dated January 8, 2014, all of which contain the subject line "Corporate Formation."  Lawrence Decl. ¶ 8, Exh. 4.  [Dkt. 202-3]. According to the privilege log, the first email was sent at 2:12 p.m. from Defendant S.Ferrell to Craig Etem and Brian Schusterman, with copies to Defendant Reid and Saria Para (an NTG attorney) and Weiss (at a personal email address); the second email was a forward of the first email, at 2: 19 p.m., from  Defendant Reid to Weiss at his Continuity email address, where Weiss was employed as General Counsel; and the third email was a forward of the second email, at 2:42 p.m., from Weiss to his personal email address. [Dkt. 202-3]  Defendants S.Ferrell and Reid claim attorney-client privilege and work product protection for the three emails, and also claim common interest doctrine for the last email.  Id.

### III.

### The Discovery Dispute.

Defendants S.Ferrell and Reid seek to quash the subpoena *duces tecum* on the following grounds:  (1) it is a confidential communication protected by the attorney-client privilege; (2) it is a confidential communication protected by the joint client doctrine; (3) the attorney-client privilege is not waived by inadvertent disclosure; (4) NIC has not met its burden to show that the crime-fraud exception to attorney-client privilege applies; (5) the subpoena is incomprehensively

vague and overbroad; and (6) the subpoena seeks irrelevant information and is not proportional to the needs of the case. Non-party Weiss also seeks to quash the subpoena on the grounds the email is a confidential communication protected by the attorney-client privilege, which has not been waived.

On the other hand, NIC contends that: (1) the Document is not a communication protected by the attorney-client privilege, as the moving parties have not established the essential elements of attorney-client privilege; (2) the Document sent to Weiss's corporate email account cannot be considered a confidential communication; (3) the Document pertains to business discussions, which are not privileged; (4) the Document is not protected by the work-product doctrine; (5) even if the Document is protected by the attorney-client privilege, the privilege has been waived; (6) even if the Document is protected by the attorney-client privileged, it may be discovered under the crime-fraud exception; and (7) the Document is relevant and the subpoena is not overbroad.

## IV.

### Legal Standard.

*(i) Discovery*

Rule 26(b)(1) of the Rules of Civil Procedure provides, in part:

> … Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. 1998).

### (ii) Rule 45 Subpoenas Duces Tecum

Federal Rule of Civil Procedure 45 governs discovery on nonparties by the issuance of subpoenas *duces tecum* for the production of documents, with or without the taking of a deposition.  Fed.R.Civ.P. 45;  *see also* Fed.R.Civ.P. 34(c)( "As provided in Rule 45, a non-party may be compelled to produce documents.…").

One of the purposes of Rule 45 is "to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties...." Advisory Committee Notes to 1991 Amendment. "The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." Id.  Under Rule 34, a party "may serve … a request within the scope of Rule 26(b)…."  Fed.R.Civ.P. 34(a).  The party who moves to quash a

subpoena has the "burden of persuasion" under Rule 45(d). *Moon*, 232 F.R.D. at 637.

## DISCUSSION

## V.

When Judge Selna granted NIC's motion to conduct third-party discovery with respect to Continuity, he specifically ruled that such discovery was "appropriate" or relevant and "proportional to the needs of the case." [Dkt. 198]. This ruling is the law of the case, and the Special Master will not revisit it. *See, e.g., Kimberlin v. Quinllan*, 199 F.3d 496, 500 (D.C. Cir. 1999 ("The law-of-the-case doctrine rests on a simple premise: 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'" (citation omitted).). Accordingly, the frivolous relevancy and proportionality objections of Defendants S.Ferrell and Reid are denied.

## VI.

Defendants S.Ferrell and Reid contend that the subpoena is "incomprehensibly vague and overbroad." There is no doubt that the subpoena is drafted unartfully or in a convoluted manner. Nevertheless, it appears that Defendants S.Ferrell and Reid understand that it encompasses the Document, as demonstrated by the privilege log, and Continuity raised objections only to paragraph 5 of the subpoena (pertaining to retainer agreements), which indicates that it too has no difficulty understanding which documents NIC seeks. Accordingly, the "incomprehensibly vague and overbroad" objections by Defendants S.Ferrell and Reid are denied.

# VII.

## Attorney-Client Privilege.

*(i) Does the Privilege Exist?*

Questions of evidentiary privilege arising in the course of the adjudication of federal rights, such as here, are governed by the principles of federal common law. *United States v. Zolin*, 491 U.S. 554, 562 (1989); Fed.R.Evid. 501. The attorney-client privilege "is one of the oldest recognized privileges for confidential communications." *Mohawk Indust. Inc. v. Carpenter,* 558 U.S. 100, 108 (2009) (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).). "By assuring confidentiality, the privilege encourages clients to make 'full and frank' disclosures to their attorneys, who are then better able to provide candid advice and effective representation." *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).).

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship *and* the privileged nature of the communication." *United States v. Bauer,* 132 F.3d 504, 507 (9th Cir. 1997); *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009); *In re Ampicillin Antitrust Lit.*, 81 F.R.D. 377, 384 (D. D.C. 1978).

The Ninth Circuit recognizes that "[t]he attorney-client privilege may be divided into eight essential elements: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such (3) the communication relating to that purpose, (4) made in

confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 n. 2 (9th Cir. 1992) (citation omitted); *Graf*, 610 F.3d at 1156. "The party asserting the privilege bears the burden of proving each essential element." *Ruehl*, 583 F.3d at 607; *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000), *superseded on other grounds as stated in United States v. Van Alstyne*, 584 F.3d 803, 817 (9th Cir. 2009).

In our case, the claim of attorney-client privilege for the email chain depends upon whether the first email from Defendant S.Ferrell to Messrs. Etem and Schusterman is privileged; the other emails in the chain merely forward the first email. The moving parties rely on their own declarations to support their claims of attorney-client privilege. Of particular importance is the declaration of Defendant S.Ferrell, who authored the first email:

> … I was formerly a member of an entity called Strataluz LLC ("Strataluz"), which was a Nevada LLC formed in 2014. David Reid, Josh Weiss, and several other individuals also were members of Strataluz. The company marketed and sold a number of personal health products….

> … In early 2014, I retained the services of attorney Craig Etem … on behalf of myself and the to-be members of Strataluz for the purposes of forming Strataluz and for related legal work. One of Etem's associates, Brian H. Schusterman, also assisted in the formation of Strataluz.

…The January 8, 2014 … email from me to attorneys Etem and Schusterman … conveys instructions to my counsel regarding the formation of Strataluz and seeks legal advice from counsel regarding the structure of the transaction.

Lawrence Decl. ¶ 9, Exh. 5.  [Dkt. 202-3].  Defendant Reid similarly states that he "was formerly a member of an entity called Strataluz LLC …, which was a Nevada LLC formed in 2014.  Scott Ferrell, Josh Weiss, and several other individuals also were members of Strataluz…."  Id. ¶ 10, Exh. 6. [Dkt. 202-3].

Based on these declarations, the Special Master concludes that the moving parties have established that the Document meets the essential eight elements required of a communication protected by the attorney-client privilege.  Defendant S.Ferrell was conveying vital information and directions to his attorneys (Etem and Schusterman) on how to proceed on specific legal matters affecting him, Defendant Reid and Weiss, all of whom for purposes of our analysis of the attorney-client privilege are the "client" within the meaning of the fifth element.

In light of the foregoing conclusion, the Special Master finds it is not necessary to determine whether the third email also is protected by joint client privilege, which would afford no greater protection than attorney-client privilege and would be subject to the same challenges of waiver and the crime-fraud exception raised by NIC.

*(ii) Was the privilege waived?*

"Voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege…." *Icenhower v. Diaz-Barba*, 755 F.3d 1130, 1141 (9th Cir. 2014); *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).  The Ninth Circuit has noted that "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship, not the holder's intent to waive the privilege."  *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996).  As such, the Special Master discredits the self-serving statements in the declarations of Defendants S.Ferrell and Reid that they did not intend to waive the attorney-client privilege.

In our case, NIC argues that any attorney-client privilege which might attach to the Document was waived when Defendant Reid forwarded it to Weiss's work email address at his place of employment – Continuity.   On the other hand, the moving parties argue that Defendant Reid's act was "inadvertent" and, thus, cannot be considered a waiver of the attorney-client privilege. Cf. Fed.R.Evid. 502(b) ("When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error….").[3]

---

[3]  Rule 502(b) is not applicable to our case as the disclosure to Continuity did not occur in a federal proceeding or to a federal office or agency.  Thus, as the Explanatory Note states:

> The rule makes no attempt to alter federal or state law on whether a communication or information is protected under the attorney-client privilege or work-product immunity as an initial matter.  Moreover, while establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally.[¶] The rule governs only certain waivers by disclosure.

To support the argument of "inadvertent" disclosure, the moving parties rely on the declarations of Defendant Reid and non-party Weiss.  In his declaration, Defendant Reid states:

> … After [S.] Ferrell's email was sent, I sent a follow up email to our partner Josh Weiss … but inadvertently sent the email to Weiss's business email address at Continuity rather than his personal email address.  I did not intentionally send this email to Weiss at his Continuity email address.  This was an autofill error when I typed in Weiss's name, as my email contacts include a number of email addresses for Weiss.

Lawrence Decl. ¶ 10, Exh. 6. [Dkt. 202-3].  In turn, non-party Weiss states:

> … On January 8, 2014, I received an email string with the subject line "Corporate Formation" between Scott Ferrell and his lawyers Craig Etem and Brian H. Schusterman. … Later that day David Reid inadvertently sent the email string to my corporate email account at Continuity instead of my private email account.  I immediately forwarded this email to my private email account and minutes after deleted the email string from my Continuity account.  In addition, I called and asked Reid not to send any more emails to my Continuity email account.

… The January 8, 2014 email string was discovered by Continuity on its servers during the course of a  wrongful termination litigation between myself and Continuity.

… Once I discovered that Continuity was in possession of the email string because it still existed on their servers, Counsel representing me against Continuity in that wrongful termination litigation notified Continuity that the email string was attorney-client privileged and had been inadvertently sent to [me] at Continuity, and that Continuity and its counsel were required … to return the email….

Declaration of Joshua A. Weiss ¶¶ 2-4. [Dkt. 202-2].

Initially, the mere presence of the Document on the Continuity email server does not demonstrate that either Defendant Reid or Weiss voluntarily disclosed a confidential document to a third party -- Continuity.  The Special Master accepts Defendant Reid's unrebutted characterization of the disclosure as "inadvertent"; forwarding Defendant S.Ferrell's email to Weiss at Continuity was neither an express nor voluntary waiver of the attorney-client privilege.

Moreover, the Special Master does not find that the facts that Continuity had a policy prohibiting its employees from conducting personal business on its email server, and that Weiss was aware of the policy, *see* Arhangelsky Decl. ¶10, Exh. H [Dkt. 202-1], to be determinative of the issue of waiver.  *See e.g., O'Connor v. Ortega*, 480 U.S. 709, 718 (1987) (holding whether

employee has reasonable expectation of privacy must be decided on case-by-case basis); *In re Asia Global Crossing Ltd.*, 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005) ("The question of privilege comes down to 'whether the [employee's] intent to communicate in confidence was objectively reasonable.'"). And the Special Master does not find persuasive the cases upon which NIC relies, *Muick v. Glenayre*, 280 F.3d 741 (7th Cir. 2002) and *United States v. Simons*, 206 F.3d 392 (4th Cir. 2000). *Muick* pertains to waiver under tort law and *Simons* discusses waiver under the Fourth Amendment in the criminal law context.

In our case, Weiss was not an employee who voluntarily used his employer Continuity's email for personal business. To the contrary, Weiss's work email server was the *recipient* of a confidential communication sent by Defendant Reid. Weiss immediately took reasonable steps to protect the confidentiality of the email by forwarding it to his personal email address, deleting it from Continuity's email server, and telling Defendant Reid not to send personal emails to him at Continuity. Lastly, when he discovered the email remained on Continuity's email server, Weiss took further steps with Continuity to protect the dissemination of the communication. Considering the totality of these circumstances, the Special Master does not find that either Defendant Reid or non-party Weiss waived the attorney-client privilege attached to the Document.

*(iii) Does the crime-fraud exception to privilege apply?*

"Notwithstanding its importance, the attorney-client privilege is not absolute. The 'crime-fraud exception' to the privilege protects against abuse of the attorney-client relationship…." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007),

17

*abrogated on other grounds by Mohawk*, 558 U.S. 100 (2009).  There is a two-part test for a party seeking to vitiate the attorney-client privilege under the crime-fraud exception:

> First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "*in furtherance of* [the] intended, or present, continuing illegality."

*Id.* (quoting *In re Grand Jury Proceedings*, 87 F.3d 377, 381-83 (9th Cir. 1996)  (internal quotation marks omitted) (emphasis added).); *Icenhower*, 755 F.3d at 1141.  Moreover, "[t]he attorney need not have been aware that the client harbored an improper purpose.  Because both the legal advice and the privilege are for the benefit of the client, it is the client's knowledge and intent that are relevant." *In re Napster, Inc.*, 479 F.3d at 1090*; In re Grand Jury Proceedings*, 87 F.3d at 381.

"[I]n a civil case the burden of proof that must be carried by a party seeking outright disclosure of attorney-client communications under the crime fraud exception should be preponderance of the evidence." *In re Napster, Inc. Copyright Litig.,* 479 F.3d   at 1094-95.  As the Ninth Circuit has noted, "judicious use of *in camera* review, combined with a preponderance burden for terminating privilege, strikes a better balance between the importance of the attorney-client privilege and deterrence of its abuse than a low threshold for outright disclosure." *Id.* at 1096.

"The first step in the *Zolin* analysis [for *in camera* crime-fraud review] sets the threshold for the evidentiary showing necessary before a court can conduct *in camera* review.   In establishing the standard, the [Supreme] Court recognized that *in camera* review of documents is a much smaller intrusion on the attorney-client privilege than full disclosure[.]"   *In re Grand Jury Investigation,* 974 F.2d at 1072.  Quoting *Zolin*, the Ninth Circuit stated:

> The threshold we set, in other words, need not be a stringent one.

> We think the following standard strikes the correct balance.  Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person," that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

*Id*. (quoting *Zolin*, 491 U.S. at 572) (internal citation omitted)).  "Once the threshold showing is made to allow *in camera* review, courts should make the decision to review in light of the amount of material they have been asked to review, the relevance of the alleged privilege material to the case, and the likelihood that *in camera* review will reveal evidence to establish the applicability of the crime-fraud exception." *Id*. at 1073.

The Special Master, having applied the standards for *in camera* review set forth in *In re Grand Jury Investigation*, determined that NIC made a factual showing sufficient to support *in*

*camera* review of the Document and that *in camera* review was appropriate in light of the amount of material (three emails), the relevance to the RICO claims, and the likelihood that the review would establish the applicability of the crime-fraud exception. *Id*. at 1072-73. In concluding that NIC made a sufficient factual showing, the Special Master relied on some of the documents attached to the Arhangelsky declaration, particularly Exhibit G, of which the Special Master takes *sua sponte* judicial notice, pursuant to Federal Rule of Evidence 201. (Exhibit G is a declaration filed by Weiss in *Obesity Research Institute, LLC, et al. v. Joshua A. Weiss,* Superior Court for the County of San Diego, case no. 37-2016-0020883-CU-NP-CTL.) There is no need for an evidentiary hearing, as Defendants S. Ferrell and Reid urged at oral argument.

Having conducted an *in camera* review of the Document and having considered all evidence presented by NIC, Defendants S.Ferrell and Reid and non-party Weiss, the Special Master determines that the preponderance of the evidence shows that the Document comes within the crime-fraud exception to the attorney-client privilege. *In re Grand Jury Proceedings*, 87 F.3d at 382-83. In other words, the Special Master finds that it is more likely than not that the Document contains instructions from Defendant S.Ferrell to counsel in furtherance of a scheme to defraud by forming sham corporate entities. Such evidence supports Plaintiff NIC's RICO claims. For these reasons, the motion to quash the subpoena to Continuity on the ground of attorney-client privilege **is denied**.

//

## VIII.

### Work Product Doctrine.

Rule 26(b)(3) provides:

> Ordinarily, a party may not discover documents … that are prepared in anticipation of litigation or for trial by or for another party or its representative.… But, subject to Rule 26(b)(4) [pertaining to experts], those materials may be discovered if: (i) they are otherwise discoverable under rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed.R.Civ.P.26(b)(3)(A);  *see also United States v. Richey*, 632 F.3d 559, 567-8 (9th Cir. 2011 ("To qualify for work-product protection, documents must:  (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" (citation omitted).).

"Like the attorney-client privilege, the party claiming work product immunity has the burden of proving the applicability of the doctrine."  *Kandel v. Brother Intern. Corp.*, 683 F.Supp.2d 1076, 1083-4 (C.D. Cal. 2010) (citations omitted).  However, unlike the attorney-client privilege, the work product doctrine establishes a qualified immunity which is to be determined upon a showing of necessity or good cause. *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989); *see also United States v. Nobles*, 422 U.S. 225, 239 (1975)

("The privilege derived from the work-product doctrine is not absolute.").

Although Defendants S.Ferrell and Reid do not address the work product doctrine in their papers, it is listed on their privilege log. Thus, the Special Master has considered the moving parties' evidence, and determines that they have not established that the Document is protected by the work product doctrine. There is nothing in S.Ferrell's declaration that supports a finding that the Document was prepared in anticipation of litigation or for trial. Accordingly, the motion to quash the subpoena on the ground of work product doctrine is denied.

## ORDER

1.    The motion to quash the Rule 45 subpoena *duces tecum* served by Natural-Immunogenics, Inc. on Continuity Products LLC **is denied**.

2.   Natural-Immunogenics, Inc. shall promptly serve a copy of this Order on Continuity Products LLC and advise Continuity Products LLC to comply with the previously served subpoena, no later than ten (10) days from the date it receives this Order.

3.   The Case Manager shall promptly file and serve the Order on the parties and the District Court for the Central District of California.

March 6, 2017                    By: ___Rosalyn M Chapman_____

1220053347.2                     Hon. Rosalyn Chapman (Ret.)
                                 Special Master

22