Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street, 32nd Floor
Los Angeles, CA 90013
213-253-9776
SPECIAL MASTER

FILED
CLERK, U.S. DISTRICT COURT

March 6, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: ___Karla Tunis___ DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NATURAL-IMMUNOGENICS CORP., a
Florida  corporation,

               Plaintiff,

        v.

NEWPORT TRIAL GROUP, a California
corporation; SCOTT J. FERRELL, a California
resident; RYAN M. FERRELL, an Arizona
resident; VICTORIA C. KNOWLES, a
California resident; DAVID REID, a California
Resident; ANDREW LEE BASLOW, a
California resident; ANDREW NILON, a
California resident; SAM PFLEG, a
California resident; MATTHEW DRONKERS,
a California resident;  TAYLOR DEMULDER,
a Nevada resident; SAM SCHOONOVER,
a California resident; GIOVANNI SANDOVAL,
an Arizona resident; and DOES 1 through 10,
inclusive,

              Defendants.

Case No: 15 CV-02034-JVS (JCGx)

(JAMS Ref. No: 1220053347)

1

**(1) ORDER DENYING NTG DEFENDANTS' MOTION FOR PROTECTIVE ORDER OR, ALTERNATIVELY, MOTION TO QUASH SUBPOENA TO TRACFONE; AND ORDER DENYING NIC'S REQUEST FOR REASONABLE EXPENSES;**

**(2) ORDER DENYING DEFENDANT SANDOVAL'S MOTION FOR PROTECTIVE ORDER OR, ALTERNATIVELY, MOTION TO QUASH SUBPOENA TO TRACFONE; AND ORDER DENYING NIC'S REQUEST FOR REASONABLE EXPENSES; AND**

**(3) ORDER DISMISSING NON-PARTY FRANCO'S MOTION TO QUASH SUBPOENA TO TRACFONE; AND ORDER GRANTING NIC'S REQUEST FOR REASONABLE EXPENSES**

On December 22, 2016, Defendants Newport Trial Group ("NTG"), Scott J. Ferrell, Ryan M. Ferrell, Victoria C. Knowles, David Reid and Andrew Lee Baslow (collectively with NTG, "NTG Defendants") filed a Notice of Motion and Motion for Protective Order Enforcing July 20, 2016 Order Limiting Discovery or, in the Alternative, Motion to Quash Subpoena to Tracfone Wireless, Inc. [Dkt. 206], a Joint Stipulation, the supporting declaration of Robert Lawrence with numerous documents, and the opposing declaration of Charles Markle with numerous exhibits. [Dkt. 205-205-2]. On December 29, 2016, NTG Defendants filed a supplemental memorandum. [Dkt. 209].

On December 22, 2016, Defendant Giovanni Sandoval ("Sandoval") and non-party Heidi Franco ("Franco") filed a Notice of Motion and Motion for Protective Order or, in the Alternative, to Quash Subpoena to Tracfone Wireless, Inc., Joint Stipulation, and the supporting

declarations of Brendan M. Ford[1] and Franco [Dkt. 207-207-3], and on December 30, 2016, filed the corrected opposing declaration of Charles Markle with numerous exhibits. [Dkt. 210-1].

On February 15, 2017, the Special Master issued a Tentative Order addressing the pending discovery motions, and JAMS served the Tentative Order on the parties.  On February 25, 2017, JAMS served the parties with notice of the time and place of the in-person oral argument on the discovery motions, setting the date of March 6, 2017.

Oral argument was held on March 6, 2017, before Hon. Rosalyn Chapman, Special Master.  Peter A. Arhangelsky and Joshua Furman, attorneys with the law firm Emord *&* Associates, appeared on behalf of Plaintiff Natural-Immunogenics, Inc. ("NIC").  Edward Susolik and David Darnell, attorneys with the law firm Callahan & Blaine APLC, appeared on behalf of NTG Defendants and Brendan M. Ford, partner with the law firm Ford & Diulio PC, appeared on behalf of Defendant Sandoval and non-party Franco.

## I.

### Relevant Procedural History.

This action commenced on December 7, 2015, when NIC filed its original complaint against NTG Defendants  and other individuals who served as plaintiffs in litigation brought by NTG (collectively, "non-NTG Defendants").

On April 18, 2016, Magistrate Judge Jay C. Ghandi ordered adoption of the parties'

---

[1]  There are no exhibits attached to Mr. Ford's declaration, although he refers to attached exhibits.

Stipulated Protective Order. [Dkt. 87].

On May 10, 2016, NIC filed its Second Amended Complaint for Damages and Injunctive Relief ("SAC") against defendants, raising claims for: (1) malicious prosecution, against Defendants NTG, Scott J. Ferrell, Ryan M. Ferrell, Victoria C. Knowles, Andrew Lee Baslow, Andrew Nilon and Sandoval; (2) violation of RICO (Racketeering Influenced and Corrupt Organizations Act), 18 U.S.C. §§ 1961, 1962c & 1964, by wire fraud, mail fraud, extortion, obstruction of justice, bribery and witness tampering, against all defendants; (3) conspiracy to violate RICO, 18 U.S.C. §§ 1961, 1962(d) & 1964(c), against all defendants; and unfair competition in violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., against all defendants.[2]  [Dkt. 92].

District Judge James V. Selna has described the gravamen of NIC's claims, as follows:

> In March 2012, [NTG] and its attorneys Scott Ferrell, Ryan Ferrell, Knowles and Reid filed a consumer class action lawsuit against [NIC] for making false and misleading statements in connection with its [dietary supplement and homeopathic] Sovereign Silver product. Nilon served as lead plaintiff and class representative. [NIC] alleges that the lawsuit was fraudulent: [NTG] bribed

---

[2]  On August 1, 2016, District Judge Selna granted, in part, and denied, in part, Defendants' motions to dismiss and Defendant NTG's anti-SLAPP motion to strike. [Dkt. 157]. Specifically, Judge Selna granted NTG Defendants' motion to dismiss the claims under 18 U.S.C. § 1962(c)-(d) against Defendant Victoria Knowles and non-NTG Defendants' motion to dismiss the claims against Defendants Sam Pfleg, Matthew Dronkers, Taylor Demulder and Sam Schoonover under 18 U.S.C. § 1962(c) and the UCL; and granted NTG Defendants' anti-SLAPP motion to strike all allegations under the UCL on behalf of the general public. Id.

Nilon to both (1) serve as the lead plaintiff and class representative and (2) fraudulently allege that he purchased [NIC]'s products and relied on [NIC]'s false and misleading statements when purchasing the product. [NIC] further alleges that this action was part of [NTG]'s broader scheme to bring fraudulent consumer class action lawsuits against corporate defendants for the improper purpose of extracting out-of-court settlements from these defendants.

[NIC]'s complaint describes two such schemes: (1) false advertising scheme and (2) the wiretapping scheme.

In the false advertising scheme, [NTG] and its investigator Baslow would identify individuals to serve as lead plaintiffs in consumer fraud class actions against companies selling products in California. [NTG] would then bribe these individuals to make intentional false representations that (1) they purchased the defendant's product in reliance on representations made in defendant's product advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the advertisements. Using these false allegations, [NTG] would threaten companies with statewide class actions under various California consumer protection statutes, and before the companies could discover that the allegations were false, extort out-of-court settlements from these companies.

The wiretapping scheme functioned similarly. Under the wiretapping scheme,

[NTG] and Baslow would identify individuals to serve as potential lead plaintiffs in consumer privacy class actions. [NTG] would then bribe these individuals to stage private phone calls to various companies, and then later make intentionally false representations that (1) they were not aware that the call was being recorded; (2) they did not consent to the recording; and (3) they later learned that the company recorded all incoming calls only after completing the call. Using these false allegations, [NTG] would threaten companies with statewide class actions under the California Invasion of Privacy Act, Cal. Pen. Code § 632 et seq., and before the companies could discover that the allegations were false, extort out-of-court settlements form these companies. (citations and footnote omitted)

[Dkt. 157].

Additionally, Judge Selna noted that the SAC identifies four lawsuits filed in connection with the false advertising scheme: (1) *Andrew Nilon v. Natural-Immunogenics Corp.*, 12 CV-0930-LAB-BGSx ( S.D. Cal. 2012 (removed from San Diego County Superior Court)(*"Nilon"*); (2) *Sam Pfleg v. Nature's Way Products, Inc.*, 12 CV 01018-LAB-BLM (S.D. Cal. 2012 (removed from San Diego County Superior Court) (*"Nature's Way"*); (3) *Matthew Dronkers v. Kiss My Face LLC*, 12 CV 01151-JAH (S.D. Cal. 2012) (*"Kiss My Face"*); and (4) *Morales, et al. v. Magna Inc.*, 10 CV 1601-EDL (N.D. Cal. 2010) (*"Bobba"*). [Dkt. 157]. And Judge Selna further noted that "Sandoval later substituted in as lead plaintiff and class representative in Nilon." Id.

Judge Selna also noted that the SAC identifies four lawsuits filed in connection with the wiretapping scheme:  (1) *Andrew Nilon v. ChromaDex Inc.*, No. 56-2013-00436790-CU (Ventura County Superior Court) (*"ChromaDex"*);  (2) *Taylor Demulder v. Carter-Reed Co.*, 12 CV 0333-BTM-MDD (S.D. Cal. 2012) ("*Carter-Reed"*); (3) *Sam Schoonover v. Himalaya Drug. Co.*, 12 CV 1782-JLS-RBB (S.D. Cal. 2012)(*"Himalaya Drug"*); and (4) *Raquel Torres v. Nutrisystem Inc.,* 12 CV 1854-CJC-JPR    (C.D. Cal. 2012 (removed from Orange County Superior Court) (*"Nutrisystem"*).  Id.

On July 20, 2016, Judge Selna issued an order clarifying the discovery plan ("July 20 Order"), stating:

> For purposes of discovery with regard to the elements of any of the claims asserted in the Second Amended Complaint on the basis of defendants' prior litigation practices, the Court limits the scope of discovery to the specific prior suits alleged in the Second Amended Complaint.  This is consistent with [NIC]'s representations at the May 9, 2016 hearing.

[Dkt. 155].  At the hearing on May 9, 2016, NIC's counsel represented that his firm would be filing a third amended complaint,[3] which:

> will inquire into about seven to eight specific cases.  [And] [w]e are reducing the

---

[3]   On October 9, 2016, Judge Selna denied NIC's motion to file a Third Amended Complaint.  [Dkt. 195].

number of RICO defendants. [¶] The discovery [to be] taken with respect to those cases within those cases is also narrow.… *We are looking only at recruitment, acquisition, those types of aspects of the relationship early before the cases are often even filed.*

Declaration of Robert S. Lawrence ("Lawrence Declaration ("Decl.")) ¶ 11, Exh. 7 (emphasis added). [Dkt. 205-1].


## II.

### The Subpoena Duces Tecum.

The parties agree that the subpoena to TracFone Wireless, Inc. ("TracFone"), the service provider for the cellular telephone number ((xxx) xxx-9832), seeks records belonging to  Franco, the mother of Defendant Sandoval and Cinthia Sandoval.  [Dkt. 205 at p. 2].


On November 8, 2016, NIC served TracFone with a Rule 45 subpoena *duces tecum*, and gave notice to defendants of its intention to serve the subpoena, with a copy of the subpoena. Declaration of Charles Markle ("Markle Declaration" ("Decl.")) ¶ 12 [Dkt. 205-2]; Lawrence Decl. ¶ 3, Exh. 1. [Dkt. 205-1].   The subpoena, which issued from the Central District of California, orders TracFone to produce:


documents sufficient to show the date, time, originating and receiving telephone number, and duration (e.g. telephone call logs or call histories) for all incoming and outgoing calls associated with the telephone number … for the period

covering **September 1 2013 through June 30, 2014.**

[Dkt. 205-1].

On November 16, 2016, NTG Defendants served objections to the subpoena, claiming the subpoena "violates the District Court's July 20, 2016 Order Clarifying Discovery Plan … and seeks records that are not relevant and not proportional to the needs of the case…." Lawrence Decl. ¶ 4, Exh. 2. [Dkt. 205-1]. TracFone agreed to delay production of the documents until the objections were resolved. Id.

On November 18, 2016, counsel for non-NTG Defendants notified NIC's counsel that Franco was now represented by his law firm. Markle Decl. ¶ 26, Exh. 22. [Dkt. 205-2] . On November 18, 2016, non-NTG Defendants "served objections to the subpoena on Tracfone…." Declaration of Brendan M. Ford ("Ford Declaration" ("Decl.")) ¶ 3. [Dkt. 207-2].

### III.

### The Discovery Disputes.

The NTG Defendants seek a protective order to enforce the July 20 Order because "Ms. Franco is not a party or a witness to any of those [eight] proceedings [listed in the SAC], but is instead simply the mother of Defendant Giovanni Sandoval." NTG Defendants also seek sanctions against NIC under Rule 37 for violating the July 20 Order. Alternatively, NTG Defendants move to quash the Rule 45 subpoena on the grounds that it seeks irrelevant information that has no bearing on the case, harasses Franco by seeking confidential records, and

increases the cost and complexity of the case.

Defendant Sandoval and non-party Franco also seek a protective order to prevent the violation of the July 20 Order, arguing the subpoena has the improper purpose of harassing and invading Franco's privacy. Alternatively, non-party Franco moves to quash the subpoena on the grounds that it seeks irrelevant information, is not proportional to the needs of the case, and is overbroad. She also argues that she has standing to move to quash the subpoena as her right to privacy is affected and she does not want her phone records disclosed. Finally, non-party Franco contends that TracFone has consented to the Court exercising jurisdiction over her motion to quash; thus, the Court has jurisdiction to consider her motion.

On the other hand, NIC argues that the motions for a protective order should be denied as the Rule 45 subpoena seeks information within the scope of the July 20 Order, which specifically allows discovery on the *Nilon* case in which Defendant Sandoval substituted-in as lead plaintiff and class representative. Thus, sanctions against NIC are not appropriate. Further, NIC contends that the motions to quash should be denied as the TracFone information: relates to NTG's recruitment of Defendant Sandoval as plaintiff in the *Nilon* case, and may lead to admissible evidence in the instant case; may be used to impeach Defendants Barlow and Sandoval; and may substantiate NTG's waiver of the attorney-client privilege if it reflects conversations between NTG and Franco about the *Nilon* case.

NIC contends that the Court does not have jurisdiction to address non-party Franco's motion to quash. And, in any event, the records sought by the subpoena do not implicate

Franco's privacy rights as the content of the telephone calls is not requested. Moreover, NIC argues, the existing Protective Order would protect Franco and limit the dissemination of the phone records. Finally, NIC requests reasonable expenses and attorney fees.

## IV.

## Legal Standard.

*(i) Discovery*

Rule 26(b)(1) of the Rules of Civil Procedure provides, in part:

> *Unless otherwise limited by court order*, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1) (emphasis added). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. 1998). The moving parties assert that the

July 20 Order limits the scope of discovery under Rule 26(b).

### (ii) Protective Orders

Rule 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending…. The court may, for good cause, issue an order to protect a party of person from annoyance, embarrassment, oppression, or undue burden or expense…." Fed.R.Civ.P. 26(c)(1). The moving parties argue that a protective order is needed to prevent the violation of the July 20 Order and to protect non-party Franco from harassment and invasion of her right to privacy.

### (iii)  Rule 45 Subpoenas Duces Tecum

Federal Rule of Civil Procedure 45 governs discovery on nonparties by the issuance of subpoenas *duces tecum* for the production of documents, with or without the taking of a deposition. Fed.R.Civ.P. 45; *see also* Fed.R.Civ.P. 34(c)( "As provided in Rule 45, a non-party may be compelled to produce documents.…").

One of the purposes of Rule 45 is "to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties...." Advisory Committee Notes to 1991 Amendment. "The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." Id. Pursuant to Rule 34, a party "may serve … a request within the scope of Rule 26(b)…." Fed.R.Civ.P. 34(a).

Under Rule 45(a), "[a] subpoena must issue from the court where the action is pending." Fed.R.Civ.P. 45(a)(2).  However,  Rule 45(d)(3) provides that a motion to quash or modify a subpoena must be brought "[o]n timely motion, [before] the court for the district *where compliance is required….*" Fed.R.Civ.P. 45(d)(3)(A)(iii) (emphasis added).  "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed.R.Civ.P. 45(f).

The Advisory Committee Notes to the 2013 Amendments to Rule 45 explain that subdivision (f) is new, stating:

> Under Rules 45(d)(2)(B), 45(d)(3), and 45(e)(2)(B), subpoena-related motions and applications are to be made to the court where compliance is required under Rule 45(c). Rule 45(f) provides authority for that court to transfer the motion to the court where the action is pending. It applies to all motions under this rule, including an application under Rule 45(e)(2)(B) for a privilege determination.

> Subpoenas are essential to obtain discovery from nonparties. To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c). But transfer to the court where the action is pending is sometimes warranted. If the person subject to the subpoena consents to transfer, Rule 45(f) provides that the court where compliance is required may do so.

13

In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion. Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.

## DISCUSSION

## V.

The Special Master does not interpret the July 20 Order regarding the scope of discovery as narrowly as the moving parties. To the contrary, the Special Master determines that the July 20 Order does not preclude NIC from seeking Franco's telephone records. Although the July 20 Order limits discovery to the eight specific litigation cases set forth in the Second Amended Complaint, those eight litigation cases include the *Nilon* case, in which "Sandoval later substituted in as lead plaintiff and class representative…." [Dkt. 157]. As such, discovery

related to Defendant Sandoval's contacts with NTG is relevant to NIC's claims regarding the *Nilon* case.

Indeed, the Tracfone information generally is relevant to NIC's malicious prosecution and RICO claims, i.e., that Defendant Sandoval was bribed to act as plaintiff by NTG, was a sham plaintiff, made false representations about purchasing NIC's product, and so on. Establishing telephone contacts between NTG and Defendant Sandoval that predate his purported purchase of NIC's product also is consistent with the representations made by NIC's counsel at the hearing before Judge Selna on May 9, 2016; not inconsistent.

The evidence produced herein further demonstrates the relevancy of Franco's telephone records to the *Nilon* case.  Specifically, Franco acknowledges allowing her children, including Defendant Sandoval, to use her cellular telephone when she states in her declaration that during a telephone conversation with Charles Markle  "… [h]e asked me if any of my children ever used her [sic] phone.  I said yes."  Declaration of Heidi Franco, ¶ 7. [Dkt. 207-3].  Mr. Markle states that in his conversation with Franco, she "said that [Sandoval] had used her phone to communicate with NTG's Wynn Ferrell on multiple occasions."  Markle Decl. ¶ 6. [Dkt. 205-2].

Although Mr. Markle's version of his conversation with Franco differs considerably from her version, the Special Master need not determine which version is correct.  Suffice it to say, *both* declarations support the conclusion that TracFone's information is relevant to the *Nilon* case and, thus, is within the scope of Judge Selna's July 20 Order.  Accordingly, the moving parties have *not* met their burden to show that the subpoena to TracFone is prohibited by, or in

violation of, the July 20 Order.  To the contrary, as discussed above, the TracFone records are relevant to the *Nilon* case, NIC's malicious prosecution and RICO claims, and to impeach Defendant Sandoval's credibility.

Finally, the Special Master also determines that the temporal period (September 1, 2013 through June 30, 2014) set forth in the subpoena is relevant to the *Nilon* case and Defendant Sandoval's credibility in that case.  NIC has shown that NTG prepared a retainer agreement to represent Sandoval on October 7, 2013, and Sandoval signed the agreement on May 22, 2014.  Markle Decl. ¶ 22, Exh. 18. [Dkt. 205-2].  On May 12, 2015, District Judge Larry A. Burns tentatively vacated class certification and dismissed the *Nilon* case without prejudice, finding that Sandoval lived in Arizona since 2008, had lied about being a California resident when NTG moved to substitute him in as lead plaintiff and class representative, and "the evidence indicates that Sandoval may have made several other false statements during his deposition testimony." Id. ¶ 19, Exh. 15. [Dkt. 205-2].  Thus, the moving parties have not shown that the temporal period set forth in the subpoena is beyond the discovery allowed by the July 20 Order.

For these reasons, the motions for a protective order **are denied**.  Additionally, assuming prevention of the violation of the July 20 Order is the sole basis for the alternative motions to quash,[4] the alternative motions to quash also **are denied**.  Accordingly, the moving parties' and

---

[4]    In the Joint Stipulation with NTG Defendants, NIC obliquely raises the issue of the Court's jurisdiction to consider the motion to quash. In response, NTG Defendants merely state that TracFone has "consented" to having *Franco's motion to quash* heard by the Court.  As such, the Special Master infers that NTG Defendants are not arguing that the Court has jurisdiction under Rule 45 to hear their motion to quash. Rather, it appears that, as a Protective Order already exists in the instant case, NTG Defendants consider their motion to quash as an alternative to their request for a protective order to prevent the violation of the July 20 Order; thus, they may consider their motion to quash to be exempt from the provisions of Rule 45(d).  The Special Master need not determine whether

non-party Franco's requests for sanctions against NIC based on NIC's alleged violation of the July 20 Order **are denied**.

**VI.**

NIC raises the issue of whether the Court has jurisdiction over non-party Franco's motion to quash.  It would not be proper to consider any of the objections to the subpoena made by non-party Franco without first addressing this jurisdictional issue.  Rule 45(d)(3) governs which district court has jurisdiction to hear a motion to quash, providing that a motion to quash  a subpoena must be brought before "the court for the district *where compliance is required*…." Fed.R.Civ.P. 45(d)(3)(A)(iii) (emphasis added).

In our case, NIC represents that "TracFone, Inc. … maintains its subpoena compliance center at 9700 NW 112th Avenue, Miami, Florida 33178[,] … [in] the District Court for the Southern District of Florida…."  [Dkt. 207-1 at 14].  Non-party Franco does not rebut this representation.  Thus, Rule 45 mandates that the District Court for the Southern District of Florida is the court which would have jurisdiction to hear a motion to quash the subpoena to TracFone; not the Court.

The 2013 amendments to Rule 45 altered jurisdiction over motions to quash subpoenas to nonparties:

this is legally correct in light of her ruling that NIC's subpoena does not violate the July 20 Order.   On the other hand, if NTG Defendants' alternative motion to quash is not solely to prevent the violation of the July 20 Order, but is based on other, additional grounds, the Special Master's ruling set forth in Part VI below applies and the motion to quash is dismissed for lack of jurisdiction.

The December 1, 2013 amendments to Rule 45 allow litigants to have Rule 45 subpoenas issued from one court – the court where the action is pending. The amendments also provide for nationwide service. Both of these changes are undoubtedly more convenient to the parties in any civil litigation.

Those conveniences are still balanced by safeguards against undue burden on the nonparties subject to such subpoenas…. Consistent with those protections, enforcement of subpoenas to nonparties is still directed to the district court of the place of compliance. This ensures that the nonparty is not subject to the burden and expense of enforcing its rights and interests in every state and federal district merely because a party to a lawsuit in that state or district wants records in the nonparty's possession.

*Shaw Group, Inc. v. Zurich American Ins. Co.*, 2014 WL 204244, at *2 (M.D. La. Jan. 17, 2014) (footnote omitted); *see also AngioScore, Inc. v. TriReme Med., Inc.*, 2014 WL 6706873, at *1 (N.D. Cal. Nov. 15, 2014) ("The amended version of Rule 45 requires that subpoenas be issued from the court where the action is pending. Fed.R.Civ.P. 45(a)(2). Although the prior version of the Rule gave the issuing court jurisdiction over motions to quash subpoenas, see Fed.R.Civ.P. 45(c)(3) (2012), the current version provides that 'the court for the district where compliance is required' has jurisdiction to quash or modify subpoenas, see Fed.R.Civ.P. 45(d)(3) (2014).").

Nevertheless, non-party Franco asserts that the motion to quash is properly before the Court because "TracFone has consented to have the motion heard in this Court." [Dkt. 207-1 at

10].  To support this assertion, she relies on the declaration of her attorney, Mr. Ford, who states:

On or about November 30, 2016, I contacted Tracfone Wireless to discuss if Tracfone would object to the issuing Court in the Central District of California hearing the Motion to Quash Plaintiff's subpoena to Tracfone.  On or about December 2, 2016, Tracfone confirmed that it would not object to the Motion being heard in the Central District of California.

Ford Decl. ¶ 5. [Dkt. 207-2].

Apart from the hearsay nature of Mr. Ford's statement, Fed.R.Evid. 801(c), Mr. Ford does not identify the individual at TracFone who gave the "confirmation" or state the position of that individual or explain his or her authority to give "consent" under Rule 45(f).  In any event, a casual communication between counsel and a subpoenaed non-party is not how consent is obtained under Rule 45(f).  As one district court has noted:

While it is true that Rule 45(f) permits the court in the district where compliance is required to transfer a subpoena-related motion to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances, the motion must be filed in the first instance with the court in the district where compliance is required.  If that occurs, that court may exercise its discretion to transfer the motion to the issuing court if the court finds the conditions set forth in the Rule are satisfied.

*Trover Group, Inc. v. Dedicated Micros USA*, 2015 WL 11117083, at \*2 (E.D. Tex. March 27, 2015).

In our case, the District Court for the Southern District of Florida, as the court sitting in the district where TracFone's compliance is required, has jurisdiction to hear a motion to quash under Rule 45(d). However, non-party Franco did not file a motion to quash in the Southern District of Florida. Thus, there is no motion that could be transferred to the Central District of California, and it is not possible to obtain TracFone's "consent" for the Court to hear non-party Franco's motion to quash. Accordingly, the Special Master determines that the Court does not have jurisdiction to hear non-party Franco's motion to quash and the motion **is dismissed**.

**VII.**

Rule 37(a)(5) of the Federal Rules of Civil Procedure provides for the recovery of reasonable expenses, including attorney fees, when a discovery motion is denied, stating:

> The court … *must*, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(5)(B) (emphasis added). NIC requests reasonable attorney fees if the Court

"determines that Defendants brought the instant motion[s] without substantial basis under Rule 37(a)(5) but [sic] as part of a pattern of obstructionism…." [Dkt. 205 at 38; Dkt. 207 at 25].

The Special Master finds that the motions for protective order were not substantially justified. However, the Special Master further finds that an award of reasonable expenses would be "unjust" in light of the totality of the circumstances surrounding the motions for protective order, including the private nature of the records sought by NIC.

The Special Master also finds that non-party Franco's motion to quash the subpoena was not substantially justified.  The clear language of Rule 45(d) and (f), the cases interpreting the 2013 amendments to Rule 45, and Mr. Ford's own declaration show that Mr. Ford, as counsel for non-party Franco, was well-aware that any motion to quash the subpoena to TracFone must be brought in the Southern District of Florida, where TracFone's compliance office is located. Despite his knowlege that he had no legal authority to support filing Franco's motion to quash in this district court, Mr. Ford nevertheless filed the pending motion. Accordingly, the Special Master **grants** NIC's request for reasonable attorney fees and assesses those fees against Brendan M. Ford, counsel for non-party Franco, and not against Franco.

## ORDER

1.  NTG Defendants' motion for protective order or, alternatively, motion to quash the Rule 45 subpoena *duces tecum* served on TracFone **is denied.**  And NIC's request for reasonable expenses related to NTG Defendants' motion **is denied.**

2. Defendant Sandoval's motion for protective order or, alternatively, motion to quash the

Rule 45 subpoena *duces tecum* served on TracFone **is denied.**  And NIC's motion for reasonable expenses related to Defendant Sandoval's motion **is denied.**

3.  Non-Party Franco's motion to quash the Rule 45 subpoena *duces tecum* served on TracFone is dismissed for lack of jurisdiction.

4.  NIC's request for reasonable expenses related to non-party Franco's motion to quash the Rule 45 subpoena *duces tecum* served on Tracfone **is granted** against Brendan M. Ford, non-party Franco's attorney**.**

No later than ten (10) calendar days from the date of the issuance of this Order, NIC shall file declarations supporting its request for reasonable attorney fees related to defending against non-party Franco's motion to quash; Mr. Ford may file an opposition, no later than ten (10) calendar days from the date NIC files its declarations; and NIC may file a reply, no later than five (5) calendar days from the date the opposition is filed.  The Special Master will set a date for telephonic oral argument on the attorney fees motion, after consulting with the parties.

6.  The Case Manager shall promptly file and serve this Order on the parties and the District Court for the Central District of California.

March 6, 2017                           By: _____
1220053347.3                                  Hon. Rosalyn Chapman (Ret.)
                                              Special Master