Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street, 32nd Floor
Los Angeles, CA 90013
213-253-9776
SPECIAL MASTER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., a Florida corporation,<br><br>               Plaintiff,<br>      v.<br><br>NEWPORT TRIAL GROUP, a California corporation; SCOTT J. FERRELL, a California resident; RYAN M. FERRELL, an Arizona resident; VICTORIA C. KNOWLES, a California resident; DAVID REID, a California Resident; ANDREW LEE BASLOW, a California resident; ANDREW NILON, a California resident; SAM PFLEG, a California resident; MATTHEW DRONKERS, a California resident;  TAYLOR DEMULDER, a Nevada resident; SAM SCHOONOVER, a California resident; GIOVANNI SANDOVAL, an Arizona resident; and DOES 1 through 10, inclusive,<br><br>               Defendants. | Case No: 15 CV-02034-JVS (JCGx)<br><br>(JAMS Ref. No: 1220053347) |

## ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFF'S MOTION TO COMPEL DOCUMENTS OR A PRIVILEGE LOG AND GRANTING FEES

On February 10, 2017, Plaintiff Natural-Immunogenics Corp. ("NIC") filed a Notice of Motion and Motion to Compel Production of Documents, Joint Stipulation, the supporting

declaration of Joshua A. Furman with numerous exhibits ("Furman Declaration" (Decl.")) and the opposing declaration of David J. Darnell with exhibits ("Darnell Declaration" ("Decl.")).  On February 23, 2017, NIC filed a supplemental memorandum ("NIC Supp. Memo.") and the supplemental declaration of Joshua A. Furman with numerous exhibits ("Furman Supplemental Declaration" ("Supp. Decl.")) and Defendant Newport Trial Group ("NTG") and its affiliated attorney defendants (collectively with NTG, "NTG Defendants") filed a supplemental memorandum ("NTG Supp. Memo.") and the declaration of Robert S. Lawrence with numerous exhibits ("Lawrence Declaration" ("Decl.")).

Immediately prior to oral argument on March 9, 2017, NTG Defendants sought permission to file the supplemental declaration of David J. Darnell; however, NIC objects.  The Special Master **denies** the request, finding that it is untimely and NTG Defendants offer no explanation why the supplemental declaration was not filed on February 23, 2017.

Oral argument was held telephonically on March 9, 2017, before Hon. Rosalyn Chapman, Special Master.  Joshua Furman, Peter A. Arhangelsky and Charles Markle, attorneys with the law firm Emord & Associates, appeared on behalf of Plaintiff NIC.  Edward Susolik and David Darnell, attorneys with the law firm Callahan & Blaine APLC, appeared on behalf of NTG Defendants.

## I.

### Relevant Procedural History.

This action commenced on December 7, 2015, when Plaintiff NIC filed its original complaint against NTG Defendants and other individuals who served as plaintiffs in litigation

brought by NTG (collectively, "non-NTG Defendants").      On May 10, 2016, Plaintiff NIC filed its Second Amended Complaint for Damages and Injunctive Relief ("SAC") against all defendants, raising claims for:   (1) malicious prosecution, against Defendants NTG, Scott J. Ferrell, Ryan M. Ferrell, Victoria C. Knowles, Andrew Lee Baslow, Andrew Nilon and Giovanni Sandoval; (2) violation of RICO (Racketeering Influenced and Corrupt Organizations  Act), 18 U.S.C. §§ 1961, 1962c & 1964, by wire fraud, mail fraud, extortion, obstruction of justice, bribery and witness tampering, against all defendants; (3) conspiracy to violate RICO, 18 U.S.C. §§ 1961, 1962(d) & 1964(c), against all defendants; and unfair competition in violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., against all defendants.[1]  [Dkt. 92].

District Judge James V. Selna has described the gravamen of NIC's claims, as follows:

> In March 2012, [NTG]  and its attorneys Scott Ferrell, Ryan Ferrell, Knowles and Reid filed a consumer class action lawsuit against [NIC] for making false and misleading statements in connection with its [dietary supplement and homeopathic] Sovereign Silver product.  Nilon served as lead plaintiff and class representative.   [NIC] alleges that the lawsuit was fraudulent:  [NTG] bribed Nilon to both (1) serve as the lead plaintiff and class representative and (2)

---

[1]  On August 1, 2016, District Judge Selna granted, in part, and denied, in part, defendants' motions to dismiss and Defendant NTG's anti-SLAPP motion to strike.  [Dkt. 157].  Specifically, Judge Selna granted NTG Defendants' motion to dismiss the claims under 18 U.S.C. § 1962(c)-(d)  against Defendant Victoria Knowles and non-NTG Defendants' motion to dismiss the claims against Defendants Sam Pfleg, Matthew Dronkers, Taylor Demulder and Sam Schoonover under 18 U.S.C. § 1962(c) and the UCL; and granted NTG Defendants' anti-SLAPP motion to strike all allegations under the UCL on behalf of the general public.  Id.

fraudulently allege that he purchased [NIC]'s products and relied on [NIC]'s false and misleading statements when purchasing the product.  [NIC]  further alleges that this action was part of [NTG]'s broader scheme to bring fraudulent consumer class action lawsuits against corporate defendants for the improper purpose of extracting out-of-court settlements from these defendants.

[NIC]'s complaint describes two such schemes:  (1) false advertising scheme and (2) the wiretapping scheme.

In the false advertising scheme, [NTG] and its investigator Baslow would identify individuals to serve as lead plaintiffs in consumer fraud class actions against companies selling products in California.   [NTG] would then bribe these individuals to make intentional false representations that (1) they purchased the defendant's product in reliance on representations made in defendant's product advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the advertisements.   Using these false allegations, [NTG] would threaten companies with statewide class actions under various California consumer protection statutes, and before the companies could discover that the allegations were false, extort out-of-court settlements from these companies.

The wiretapping scheme functioned similarly.   Under the wiretapping scheme, [NTG] and Baslow would identify individuals to serve as potential lead plaintiffs

in consumer privacy class actions.  [NTG] would then bribe these individuals to stage private phone calls to various companies, and then later make intentionally false representations that (1) they were not aware that the call was being recorded; (2) they did not consent to the recording; and (3) they later learned that the company recorded all incoming calls only after completing the call.  Using these false allegations, [NTG] would threaten companies with statewide class actions under the California Invasion of Privacy Act, Cal. Pen. Code § 632 <u>et seq.</u>, and before the companies could discover that the allegations were false, extort out-of-court settlements form these companies. (citations and footnote omitted)

[Dkt. 157].

Additionally, Judge Selna noted that the SAC  identifies four lawsuits filed in connection with the false advertising scheme:  (1) *Andrew Nilon v. Natural-Immunogenics Corp.*, 12 CV-0930-LAB-BGSx ( S.D. Cal. 2012) (removed from San Diego County Superior Court)(*"Nilon"*); (2) *Sam Pfleg v. Nature's Way Products, Inc.*, 12 CV 01018-LAB-BLM (S.D.  Cal. 2012) (removed from San Diego County Superior Court) (*"Nature's Way"*);(3) *Matthew Dronkers v. Kiss My Face LLC*, 12 CV 01151-JAH (S.D. Cal. 2012) (*"Kiss My Face"*); and (4) *Morales, et al.  v. Magna Inc.*, 10 CV 1601-EDL (N.D. Cal. 2010) (*"Bobba"*).  [Dkt. 157].   "Sandoval later substituted in as lead plaintiff and class representative in Nilon."  Id.

Judge Selna also noted that the SAC identifies four lawsuits filed in connection with the wiretapping  scheme:   (1) *Andrew  Nilon  v.  ChromaDex  Inc.*,  No.  56-2013-00436790-CU

(Ventura County Superior Court) (*"ChromaDex"*); (2) *Taylor Demulder v. Carter-Reed Co.*, 12 CV 0333-BTM-MDD (S.D. Cal. 2012) ("*Carter-Reed*"); (3) *Sam Schoonover v. Himalaya Drug. Co.*, 12 CV 1782-JLS-RBB (S.D. Cal. 2012) (*"Himalaya Drug"*); and (4) *Raquel Torres v. Nutrisystem Inc.,* 12 CV 1854-CJC-JPR (C.D. Cal. 2012) (removed from Orange County Superior Court) (*"Nutrisystem"*). Id.

On July 20, 2016, Judge Selna issued an order clarifying the discovery plan ("July 20 Order"):

> For purposes of discovery with regard to the elements of any of the claims asserted in the Second Amended Complaint on the basis of defendants' prior litigation practices, the Court limits the scope of discovery to the specific prior suits alleged in the Second Amended Complaint. This is consistent with [NIC]'s representations at the May 9, 2016 hearing.

[Dkt. 155].[2]

---

[2]   At the hearing on May 9, 2016, NIC's counsel represented that his firm would be filing a third amended complaint, which:

> will inquire into about seven to eight specific cases. [And] [w]e are reducing the number of RICO defendants. [¶] The discovery [to be] taken with respect to those cases within those cases is also narrow…. We are looking only at recruitment, acquisition, those types of aspects of the relationship early before the cases are often even filed.

Furman Decl. ¶ 26, Exh. F.

## II.

### Requests for Production of Documents, First Set.

On June 7, 2016, Plaintiff NIC served its First Set of Requests for Production of Documents ("First Set") on NTG Defendants.  Furman Decl. ¶ 5. The First Set includes the requests that are the subject of the pending motion to compel: Request  No. 9 (re *Nilon*), No. 13 (re *Nature's Way*), No. 19 (re *Carter-Reed*), No. 26 (re *Himalaya Drug*), No. 31 (re Sandoval/*Nilon*), No. 38 (re *Nutrisystem*), No. 50 (re *Kiss My Face*), No. 55 (re *Bobba*), and No. 71 (re Defendant Baslow) (collectively, "Requests").  Notice of Motion at 2:17-19. NIC granted NTG Defendants an extension of time to August 15, 2016, to respond to the First Set.   Id. ¶ 7.

NTG Defendants produced documents responsive to the First Set on August 31, 2016, September 9, 2016, September 15, 2016 (*Bobba* & *Nutrisystem*), November 14, 2016,  and December 20, 2016.  Lawrence Decl. ¶ 17; NTG Supp. Memo. at 1-3.  On the following dates, NTG Defendants produced documents responsive to the Requests: December 30, 2016; January 6, 2017; January 10, 2017;  February 4, 2017;  February 8, 2017; and February 15, 2017.   Ibid. NIC complains that these productions total only 607 documents, including publically filed court documents.  Furman Supp. Decl. ¶ 20.

On the following dates, NTG Defendants produced privilege logs responsive to the First Set, including some of the Requests:

- August 15, 2016 (Scott Ferrell log; communications with plaintiffs log);

- August 24, 2016 (supplement);

- September 2, 2016 (supplement);

- December 30, 2016 (re *Nature's Way*);

- January 6, 2017 (re *Himalaya Drug*);

- January 10, 2017 (re *Himalaya Drug* and *Carter-Reed*);

- February 4, 2017 (re *Bobba*);

- February 7, 2017 (re *Nilon* and *Nutrisystem*);

- February 8, 2017 (re *Kiss My Face*);

- February 15, 2017 (re *Nilon* and *Nutrisystem*); and

- February 21, 2017 (re *Nilon*).

Furman Supp. Decl. ¶¶ 4-19, 21; Lawrence Decl. ¶¶ 4-16; Darnell Decl. ¶¶ 19-20.  The privilege log produced on February 21, 2017 consolidates the privilege logs previously produced into one document consisting of 177 pages.  Lawrence Decl. ¶ 3, Exh. 1.

On December 23, 2016, NIC served its portion of the Joint Stipulation on NTG Defendants.  Furman Supp. Decl. ¶ 3.

### III.

### The Discovery Dispute.

Plaintiff NIC's motion seeks to compel documents and/or privilege logs responsive to First Set, Request  No. 9 (re *Nilon*), No. 13 (re *Nature's Way*), No. 19 (re *Carter-Reed*), No. 26 (re *Himalaya Drug*), No. 31 (re Sandoval/*Nilon*), No. 38 (re *Nutrisystem*), No. 50 (re *Kiss My Face*), No. 55 (re *Bobba*), and No. 71 (re Defendant Baslow) (collectively, "Requests").  Notice of Motion at 2:17-19.  NIC brought the motion to compel because NTG Defendants had been dilatory in responding to the Requests, despite assuring NIC that requests would be forthcoming.

Joint Stipulation at 1-2.  As NTG Defendants began producing responsive documents and privilege logs on December 30, 2016, and continued doing so on a rolling basis for six weeks thereafter, NIC now seeks an Order finding NTG Defendants have waived attorney-client privilege and work product protection due to the tardiness of the privilege logs or, alternatively, "the Court should set a deadline of no more than 14 days for defendants to complete all outstanding privilege logs, and revise privilege logs to date."  NIC Supp. Memo. at 1:5-9.

On the other hand, NTG Defendants argue that they have been producing responsive documents and providing privilege logs on a rolling basis, as the Requests essentially seek every single document in the eight class action litigation cases and reviewing the records for privilege is incredibly time-consuming.  In fact, NTG Defendants have had to hire nine additional contract attorneys to review their records for privilege.  Darnell Decl. ¶ 14.

Request Nos. 9, 13, 19, 26, 31, 38, 50 and 55 (but not Request No. 71) are identical in that each request seeks "all internal communications" about a particular plaintiff or the plaintiff's case, identified in the SAC.  For example, Request No. 9 asks:

> Produce all internal communications (e.g., emails, call logs, memoranda, investigative reports, internal reports, task assignments to *investigator*, text messages, and billable hour time-entries with notations) between NTG personnel (including NTG attorneys, *investigators*, agents, or employees) related to Andrew Nilon or the case *Nilon v. NIC* (S.D. Cal. 2012), or any facts or opinions thereof.

Furman Decl. ¶¶ 5-6, Exh. A (emphasis added).

In response, NTG Defendants timely objected on several grounds, including over broad, unduly burdensome, harassing, overbroad time period, beyond the scope of permitted discovery, not proportional, attorney-client privilege and work product doctrine, and improperly seeks settlement information. On October 5, 2016, NIC agreed to a temporal limitation on Request Nos. 19, 26, 31, 38, 50 and 55 (not Request Nos. 9, 13 and 71) limiting these requests to communications "through one week after the filing date of each respective complaint." Id., ¶¶ 10-11, Exh. C at 4.

As part of their objections, NTG Defendants stated that they would not produce a privilege log to support their objections of attorney-client privilege and work product doctrine:

> [B]y drafting the request for all internal communications between NTG personnel related to an NTG client and that client's case, the request relief itself shows that privileged documents – and only privileged documents – would be responsive to this request.  Because of this, and since the request for such privileged documents … is overbroad, unduly burdensome, irrelevant, not proportional to the needs of this case and far exceeds the scope of permissible discovery, Defendant will not respond further and will not provide a privilege log in response to this request…. Should the parties or the Court determine that something further is required, Defendant will re-evaluate these objections and reserves the right to supplement its response and/o privilege log accordingly.

10

Furman Decl. ¶ 8, Exh. B.

Request No. 71 seeks information about Defendant Andrew Baslow, NTG's investigator. The parties agree that there is an overlap between the other requests and Request No. 71 and those documents responsive to the other requests would also be responsive to Request No. 71. Request No. 71 asks:

> Produce all communications between NTG (including NTG attorneys, agents, or employees) and Andrew Baslow between January 1, 2011 and November 21, 2015 that relate to, concern, address, or mention in any way the following terms, individuals, or subjects: Andrew or Drew Nilon; Sam Pfleg; Taylor Demulder; Matthew or Matt Dronkers; Steven or Steve Brudzewski; Sam Schoonover; Isabella Janovick; Kyle Janovick; Kaleb Patterson; Martin Conde; Jimmy Conde; Jose Conde; Talee Rooney; Jamie Loop; Chromadex; Nutrisystem; Himalayan Drug Company; Carter-Reed or Basic Research; Raquel Torres; Ray Perea; Giovanni Sandoval; Sovereign Silver; Natural Immunogenics Corp.; AT&T Wireless; "Testers" or "tester"; Phone recordings; and Licensure through the California Bureau of Security and Investigative Services (BSIS).

Id. ¶¶ 5-6, Exh. A.

NTG Defendants timely objected to Request No. 71 on several grounds, including over

broad, unduly burdensome, harassing, overbroad time period, beyond the scope of permitted discovery, not proportional, attorney-client privilege and work product doctrine, and improperly seeking settlement information.  Id. ¶ 8, Exh. B.  As part of their objections, NTG Defendants stated they would not produce a privilege log, as quoted above.  Id.  On October 5, 2016, NIC agreed to strike or remove from Request No. 71 the requests for information regarding Steven or Steve Brudzewski, Isabella Janovick, Kyle Janovick, Kaleb Patterson, Martin Conde, Jimmy Conde, Jose Conde, Jamie Loop, Ray Perea, AT&T Wireless, Verizon Wireless, and "Phone recordings."  Id. ¶ 11, Exh. C at 5.

## IV.

### Legal Standard.

The scope and limitations of discovery in the federal courts is governed by Rule 26(b)(1), which provides:

> …  Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1).  "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection a trial-preparation material," Rule 26(b) requires that "the party must:

> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim.

Fed.R.Civ.P. 26(b)(5).

One of the discovery procedures available to the parties under Rule 26 is provided by Rule 34, which allows a party to "serve on any other party a request … to produce and permit the requesting party to inspect [or] copy … any designated documents or electronically stored information…."  Fed.R.Civ.P. 34(a)(1).  "The party to whom the request is directed must respond in writing within 30 days after being served…."  Fed.R.Civ.P. 34(b)(2)(A). "An objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest."  Fed.R.Civ.P. 34(b)(2)(C).

## DISCUSSION

## V.

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship *and* the privileged nature of the communication." *United States v. Bauer,* 132 F.3d 504, 507 (9th Cir. 1997); *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009);  *In re Ampicillin Antitrust Lit.*, 81 F.R.D. 377, 384 (D. D.C. 1978).

The Ninth Circuit recognizes that "[t]he attorney-client privilege may be divided into eight essential elements:  (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such (3) the communication relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 n. 2 (9th Cir. 1992) (citation omitted); *Graf*, 610 F.3d at 1156.  "The party asserting the privilege bears the burden of proving each essential element." *Ruehl*, 583 F.3d at 607; *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000), *superseded on other grounds as stated in United States v. Van Alstyne*, 584 F.3d 803, 817 (9th Cir. 2009).

"[T]he party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold." *In re Grand Jury Investigation,* 974 F.2d at 1071.  A privilege log is one means by which the party can make a *prima facie* showing. *Id.*

14

(citing *Dole v. Milonas*, 889 F.2d 885, 888 n. 3, 890 (9th Cir. 1989).).   "In *Dole*, the log identified (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated."  *Id.* (citing *Dole*, 889 F.2d at 888 n. 3).).[3]

NIC initially brought the motion to compel NTG Defendants to produce documents or a privilege log identifying the documents it was withholding in response to the Requests.  NTG Defendants have now produced a consolidated 177-page privilege log.  In light of this, NIC argues that NTG Defendants waived their claims of attorney-client privilege and work product protection by taking too long to produce the privilege log.  NIC also complains that the privilege log is incomplete because it does not identify the "subject matter" for each and every document.

Let us first consider whether NTG Defendants have waived their claims of privilege and work product protection.  Rule 26 "does not specifically correlate [an assertion of privilege] with Rule 34's bright-line [30-day] rule for timeliness, nor does it explicitly articulate a waiver rule." *Burlington Northern & Santa Fe Ry.Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1147 (9th Cir.), *cert. denied*, 546 U.S. 939 (2005). In light of this, the Ninth Circuit has rejected "a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." *Id*. at 1149.  "Instead, using the 30-day period as a default guideline," the Ninth Circuit

---

[3]   Before the Ninth Circuit offered guidance on the components of a privilege log, district courts identified the information required on a privilege log:  1) date of document; 2) author; 3) primary addressee; 4) secondary addressees; 5) type of document; 6) client (party asserting privilege); 7) attorneys; 8) subject matter; 9) purpose of document; and 10) type of privilege.  *See, e.g., Miller v. Panucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992).

requires a district court when considering waiver of the attorney-client privilege to make "a case-by-case determination taking into account the following factors:

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient);  the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy … or unusually hard.

*Id*.  "These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as manipulation of the rules and the discovery process." *Id*.

Initially, the Special Master notes that due to the very nature of NIC's RICO claims against NTG Defendants --  a law firm and individually named attorneys  -- it is not surprising that NTG Defendants claim attorney-client privilege and work product protection in response to the Requests.[4]  After all, the RICO claims focus on eight class action litigation cases in which

---

[4]  Undoubtedly, this reality informed NIC's strategic decision to seek information from numerous third parties.

16

NTG Defendants represented plaintiffs against various corporations.   In order to obtain documents not protected by attorney-client privilege or work product, NIC would have needed to propound narrow or focused document requests; however, NIC's requests are anything but narrow or focused.  In the words of the Ninth Circuit, the Requests are "exhaustive."

As quoted above, Request Nos. 9, 13, 19, 26, 31, 38, 50, and 55 seek "*all internal communications* (e.g., emails, call logs, memoranda, investigative reports, internal reports, task assignments to investigator, text messages, and billable hour time-entries with notations) between NTG personnel (including NTG attorneys, investigators, agents, or employees) related to [plaintiff] or the [plaintiff's] case ... or any facts or opinions thereof." (emphasis added).  By definition, "internal communications" are communications within the NTG law firm and among its personnel, as NIC defines in the Requests. Thus, NIC could not reasonably have expected NTG Defendants to respond to such exhaustive Requests with a large production of documents — despite NIC's complaint to the contrary.  Rather, NIC undoubtedly expected NTG Defendants to produce privilege logs in response to the Requests.

The very nature of this litigation also should have informed NTG Defendants' expectations.  From at least July 20, 2016, NTG Defendants reasonably should have known that it would be necessary to review the records of the eight class action litigation cases identified in the SAC to determine which documents to produce, if any, and which documents to protect under the attorney-client privilege and the work product doctrine.[5]  Instead, NTG Defendants

---

[5]  Documents in the *ChromaDex* case are not the subject of the pending motion to compel.

took the unprecedented stance that they would not produce any privilege logs unless they were ordered to do so (or changed their mind).   That refusal was inexcusable and undoubtedly contributed to a lot of the delay in NTG Defendants providing a privilege log.   And it was not until five months later -- December 2016 and January 2017 -- that NTG Defendants hired additional contract counsel to assist in reviewing their records for privileged documents.   Darnell Decl. ¶ 14.

As NTG Defendants received an extension of time to respond to the First Set, the 30-day default period under Rule 34 expired on August 15, 2016.   And NTG began producing documents and privilege logs on that date responsive to the First Set, albeit not responsive to the Requests. During October and November 2016, the parties engaged in discussions about the scope of the Requests, as well as the contents of a privilege log, trying to resolve their differences.   Darnell Decl. ¶¶ 10-13.   However, it was not until December 30, 2016 – after NIC served its portion of the Joint Stipulation on NTG Defendants -- that NTG Defendants produced some documents and a privilege log  responsive to the Requests.   Since then, NTG Defendants have made a rolling production of supplemental documents and privilege logs.

Making a "holistic reasonableness analysis," the Special Master concludes that NTG Defendants have not waived their claims of attorney-client privilege and work product protection for documents responsive to the Requests.   *Burlington*, 408 F.3d at 1149.   Considering the factors set forth in *Burlington*, the Special Master finds there are mitigating circumstances for NTG Defendants' delay of several months in producing a privilege log.   *Id*.   Of course, NTG Defendants' initial unprecedented refusal to produce any privilege log is not a mitigating

circumstance; it is an aggravating circumstance.

First, it cannot be disputed that the Requests are "exhaustive."  They seek "all internal communications" regarding seven of the eight class action litigation cases identified in the SAC.  But that does not mean the Requests are overly broad in light of the nature of NIC's RICO and other claims.  This is a mitigating factor, as the Ninth Circuit has remarked:

> We are well aware that, particularly in discovery-intensive litigation, compiling a privilege log within 30 days may be exceedingly difficult, even for counsel who are sophisticated, experienced, well-funded, and acting in good faith.  Further, we are aware … that litigants seeking discovery may attempt to abuse the rule we announced today by propounding *exhaustive and simultaneous discovery requests*.

*Burlington*, 408 F.3d at 1149, n. 3 (emphasis added).

Second, Plaintiff NIC was engaged in simultaneous discovery requests, having served second and third sets of document requests on NTG Defendants.  Responding to these additional requests at the same time NTG Defendants should have been responding to the First Set is a mitigating factor.[6]  Darnell Decl. ¶ 19.

---

[6]   During oral argument, NIC's counsel acknowledged a third set of document requests had been propounded to NTG Defendants.

Third, the parties were engaged in ongoing conferences about the scope of the Requests[7] and the contents of the privilege logs during the months of October and November 2016.  While these discussions were taking place, it was not unreasonable for NTG Defendants to delay producing documents and privilege logs responsive to the Requests; *provided* they were contemporaneously reviewing their records to determine whether they possessed responsive and privileged documents.   However, NTG Defendants have not shown that they were contemporaneously reviewing their records during the time they were conferring with NIC. Thus, this is a neutral factor, rather than a completely mitigating factor.  Nevertheless, the time spent by NTG Defendants in meeting and conferring with NIC in an attempt to resolve their differences cannot be ignored.

Fourth, the number of documents NTG Defendants reviewed for privilege and work product protection is significant and a mitigating factor.  NTG Defendants represent that "the initial search result indicated approximately 11,000 potentially responsive document to review, comprised of over 450,000 pages of material."  Darnell Decl. ¶ 12.  Subsequently,  they "came to realize that some of the searches needed to be refined in order to capture all potentially responsive documents.  With these new searches, the universe of potentially responsive materials that needed to be reviewed increased to more than 80,000 documents and email threads,"

---

[7]   To give guidance to the parties regarding the scope of discovery under Judge Selna's July 20 Order, the Special Master offers her view.  The July 20 Order does not limit discovery to information regarding "recruitment, acquisition, [and] those types of aspects of the [early] relationship …," as NTG Defendants argue.  Rather, in the July 20 Order, Judge Selna merely opined that the limitation of the scope of discovery to the eight cases set forth in the SAC is "consistent" with NIC's representations on May 9, 2016.   One of NIC's representations on May 9th was that it would inquire into no more than seven or eight cases.  That is how the July 20 Order is "consistent" with NIC's representations.  Moreover, when he issued the July 20 Order, Judge Selna was well-aware that NIC's RICO and other claims go well beyond "recruitment, acquisition, [and] those types of aspects of the [early] relationship …," as demonstrated by developments during the course of the proceedings in the *Nilon* case.

comprising more than a million pages.  Id. ¶¶ 14, 22.  And fifth, NTG Defendants have now recognized -- albeit belatedly --  that they need assistance to review their records and have hired nine contract attorneys "tasked solely with document review" on this case.  Id. ¶22.

For these reasons, the Special Master concludes that NTG Defendants have not waived the attorney-client privilege and work product protection as to Request Nos. 9, 13, 19, 26, 31, 38, 50, and 55, and Plaintiff NIC's motion to compel **is denied** as to these requests.  Nevertheless, to avoid any misunderstanding regarding the completion of NTG Defendants' production of documents and privilege logs responsive to these requests, it seems reasonable to **grant** NIC's request for a time limit by which NTG Defendants must complete their production and verify the completion.

As to Request No. 71, the parties agree that documents and privilege logs responsive to the Requests are also responsive to Request No. 71.  Thus, the holding that NTG Defendants have not waived the attorney-client privilege and work product protection applies to Request No. 71, as well.  However, Request No. 71 also seeks information unique to Defendant Baslow, i.e., information regarding his licensure as an investigator.  NTG Defendants have not shown that they have produced documents responsive to this part of Request No. 71, which by its nature cannot be subject to either attorney-client privilege or work product protection. Thus, NIC's motion to compel responsive documents **is granted** as to this part of Request No. 71.

Finally, the Special Master addresses NIC's claim that the privilege log is deficient because the "subject/description" is not identified for each and every document.  That is true;

some documents listed by Bates numbers on the privilege log do not have any information under the heading "subject" or "description."  However, the subject or description of each document is not a mandatory requirement for a privilege log under either Ninth Circuit case law or Rule 26(b)(5), which merely requires "the nature of the documents."  But more importantly, here, where the initial privilege logs produced by NTG Defendants (before the consolidated privilege log) were identified as being in response to a Request that pertains to a specific class action litigation case identified in the SAC, it reasonably may be inferred that the general subject or description of the document is the case for which the log was produced.  As such, the initial privilege logs produced by NTG Defendants are adequate responses to the Requests,[8] and NIC's request for an order to revise the privilege logs **is denied**.

## VI.

In its moving papers, NIC seeks attorney fees under Rule 37(a).  When a discovery motion that is granted, in part, and denied, in part, Rule 37(a) provides that the court "may, after giving an opportunity to be heard, apportion the reasonable expenses" for the motion.  Fed.R.Civ.P. 35(a)(5)(C).

The Special Master, exercising her discretion under Rule 37(a)(5)(C), has determined to **grant** NIC's request for attorney fees.  By the time NIC's motion to compel was heard by the Special Master, it was only partly successful due to developments following the filing of the motion.  However, the filing of the motion was completely successful in prodding NTG Defendants to respond to the Requests.  It was only after NIC provided NTG Defendants with its

---

[8]  This may not be so, however, when a privilege log covers multiple disparate document requests.

portion of the Joint Stipulation that NTG Defendants for the first time – after several months of delay -- produced documents and a privilege log responsive to the Requests.  In other words, a reasonable inference is that NTG Defendants would have continued to delay responding to the Requests if the motion to compel had not been brought.

Since NTG Defendants' delay of several months was the precipitating cause for NIC bringing the motion to compel, the Special Master concludes that NIC should be compensated for a portion of its expenses in bringing the motion. Pursuant to Rule 37(a)(5)(C), the Special Master sets the apportionment of expenses at 50%.

## ORDER

1.  Plaintiff NIC's motion to compel NTG Defendants to produce documents or privilege logs responsive to Request Nos. 9, 13, 19, 26, 31, 38, 50 and 55 **is denied.**

2.  Plaintiff NIC's motion to compel NTG Defendants to revise its privilege logs responsive to Request Nos. 9, 13, 19, 26, 31, 38, 50, 55 and 71 **is denied.**

3.  Plaintiff NIC's motion to compel NTG Defendants to produce documents responsive to Request No. 71 (in part, as set forth herein) **is granted**.  NTG Defendants are ordered to produce responsive documents, no later than ten (10) calendar days from the date of this Order.

4.  Plaintiff NIC's motion for the Court to set a date by which NTG Defendants must complete their production of documents and privilege logs for Request Nos. 9, 13, 19, 26, 31, 38,

50, 55 and 71 **is granted.** NTG Defendants are ordered to complete their production of documents and privilege logs and to verify the completion**,** and no later than ten (10) calendar days from the date of this Order.

    5.  Plaintiff NIC's request for expenses and attorney fees **is granted.**

    No later than ten (10) calendar days from the date of this Order, NIC shall file declarations supporting its request for reasonable expenses and attorney fees related to its motion to compel; NTG Defendants may file an opposition, no later than ten (10) calendar days from the date NIC files its declarations; and NIC may file a reply, no later than five (5) calendar days from the date the opposition is filed.  The Special Master will set a date for telephonic oral argument on the amount of the attorney fees, after consulting with the parties.

    6.  The Case Manager shall file and serve the Order on the parties and the District Court.

March 9, 2017

1220053347.5

By: _Rosalyn M Chapman_____

Hon. Rosalyn Chapman (Ret.)
Special Master

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28