**CALLAHAN & BLAINE, APLC**
Edward Susolik (SBN 151081)
Esusolik@callahan-law.com
David J. Darnell (SBN 210166)
Ddarnell@callahan-law.com
Robert S. Lawrence (SBN 207099)
Rlawrence@callahan-law.com
Stephanie A. Sperber (SBN 230006)
ssperber@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Defendants NEWPORT TRIAL GROUP, SCOTT J. FERRELL, RYAN M. FERRELL, VICTORIA C. KNOWLES, DAVID REID and ANDREW LEE BASLOW

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., a Florida corporation , <br><br> Plaintiff, <br><br> v. <br><br> NEWPORT TRIAL GROUP, et al., <br><br> Defendants. | **CASE NO.  8:15-cv-02034-JVS-JCG** <br><br> **Judge:      Hon. James V. Selna** <br><br> **OBJECTIONS OF DEFENDANTS SCOTT FERRELL AND DAVID REID TO THE SPECIAL MASTER'S ORDER DENYING MOTION TO QUASH SUBPOENA TO CONTINUITY PRODUCTS, LLC (DKT. 234)** <br><br> **Hearing Requested** <br><br> Complaint Filed:   December 7, 2015 <br> Trial Date:           December 5, 2017 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. RELEVANT PROCEDURAL HISTORY ....................................................... 3

    A. The Second Amended Complaint ................................................... 3

    B. Plaintiff's Stipulation Limiting Discovery .................................... 3

    C. The Court's Order Limiting Discovery .......................................... 4

    D. The Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Leave to Conduct Additional Discovery .......... 5

    E. Plaintiff's Subpoena To Continuity And Objections Thereto ............. 6

        1. Factual Basis for Ferrell and Reid's Objections ........................ 6

        2. Plaintiff's Contentions Regarding the January 8, 2014 Emails ........ 7

    F. The Motion To Quash The Subpoena To Continuity ......................... 8

    G. The Special Master's Order Denying Motion To Quash Subpoena To Continuity ............................................................ 9

III. ARGUMENT ........................................................................................ 10

    A. This Court Must Apply A De Novo Standard Of Review To The Special Master's Factual Findings And Legal Conclusions, And Hold A Hearing Pursuant to FRCP 53(f). .................................... 10

    B. The Attorney-Client Privilege Protects Important Rights And The Crime-Fraud Exception Will Only Apply In Very Limited Circumstances. ........................................................... 10

    C. Plaintiff Has Not Proven by a "Preponderance of the Evidence" that the Crime-Fraud Exception Applies. ................................... 14

        1. Forming a Corporation is Neither a Crime Nor a Fraud. ......... 14

        2. A Preponderance of the Evidence Standard Can Only be Satisfied Through Competent Evidence. ................................... 18

    D. Defendants Ferrell and Reid Did Not Waive Their Objections to Plaintiff's Incompetent Evidence. ........................................... 20

IV. CONCLUSION ..................................................................................... 22

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**TABLE OF AUTHORITIES**

**Pages**

**Cases**

*In re BankAmerica Corp. Sec. Litig.*,
   270 F.3d 639 (8th Cir. 2001) .............................................................................. 13

*Briggs v. Blomkamp*,
   70 F. Supp. 3d 1155 (N.D. Cal. 2014) ................................................................. 19

*In re Ford Motor Co.*,
   110 F.3d 954 (3d Cir. 1997) ................................................................................ 11

*Jones v. Lincoln Elec. Co.*,
   188 F.3d 709 (7th Cir. Ind. 1999) .................................................................. 20, 22

*Laser Indus. v. Reliant Techs.*,
   167 F.R.D. 417 (N.D. Cal. 1996) .............................................................. 11, 12, 17

*Maple Leaf Adventures Corp. v. Jet Tern Marine Co.*,
   2016 U.S. Dist. LEXIS 76157 (S.D. Cal. 2016) .................................................. 19

*Mohawk Indus. v. Carpenter*,
   558 U.S. 100 (2009) ............................................................................................ 11

*In re Murphy*,
   560 F.2d 326 (8th Cir. 1977) .............................................................................. 13

*Payne v. Peninsula Sch. Dist.*,
   653 F.3d 863 (9th Cir. 2011) .............................................................................. 19

*In re Richard Roe, Inc.*,
   68 F.3d 38 (2d Cir. 1995) ................................................................................... 13

*In re Sealed Case*,
   754 F.2d 395 (D.C. Cir. 1985) ............................................................................ 13

*UMG Recording, Inc. v. Bertelsmann AG (In re Napster Copyright
   Litig.)*, 479 F.3d 1078 (9th Cir. 2007) ........................................................*passim*

*United States v. Albino-Loe*,
   747 F.3d 1206 (9th Cir. 2014) ............................................................................ 19

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**TABLE OF AUTHORITIES
(CONTINUED)**

**Pages**

*United States v. Hodge & Zweig*,
   548 F.2d 1347 (9th Cir. 1977)..................................................................................10

*United States v. Mett*,
   178 F.3d 1058 (9th Cir. 1999)..................................................................................11

*United States v. Zolin*,
   491 U.S. 554 (1989) ..................................................................................................10

*Upjohn Co. v. U.S.*,
   449 U.S. 383 (1981) ..................................................................................................10

*In re Worlds of Wonder Sec. Litig.*,
   814 F. Supp. 850 (N.D. Cal. 1993)...........................................................................19

**Statutes**

Federal Rules of Civil Procedure 37.................................................................................20

Federal Rules of Civil Procedure 53............................................................................. 1, 10

Federal Rules of Evidence 103 .........................................................................................20

Federal Rules of Evidence 602 .........................................................................................14

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

TABLE OF AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 53(f) and Paragraph 12 of this Court's Order Appointing Special Master (Dkt. 223), Defendants Scott J. Ferrell and David Reid respectfully submit the following objections to the Special Master's Order (Dkt. 234) denying their Motion to Quash Plaintiff's subpoena to Continuity Products, LLC.  Specifically, Defendants object on the ground that the Special Master improperly found that the attorney-client privilege for the email string dated January 8, 2014 (NTG0004939-NTG0004942) was vitiated by the crime-fraud exception.

This Court is required to conduct a de novo review of the Special Master's findings and legal conclusions.  *See* FED. R. CIV. PRO. 53(f)(3) and (4).  Defendants further request that the Court give the parties notice and an opportunity to be heard on these matters.  *See* FED. R. CIV. PRO. 53(f)(1).

## I.     INTRODUCTION

On January 8, 2014, Defendants Scott J. Ferrell and David Reid and non-party Joshua Weiss exchanged emails with their attorneys about forming a new corporation, Strataluz.  In the current case, Plaintiff issued a subpoena to Weiss's former employer, non-party Continuity Products, LLC, to obtain those privileged emails.  In response to a Motion to Quash from Ferrell, Reid and Weiss, and after reviewing the email string at issue, the Special Master found the attorney-client privilege applied to the entire email string and that the privilege had not been waived.  However, the Special Master then denied the Motion to Quash on the ground that the crime-fraud exception applied.  Defendants Ferrell and Reid respectfully object to this finding on several grounds.

First, incompetent evidence cannot satisfy Plaintiff's burden to prove by a preponderance of the evidence that the crime-fraud exception applies.  The attorney-client privilege is one of the oldest and most sanctified privileges.  As a result, the crime-fraud exception is narrow and requires Plaintiff to demonstrate by a preponderance of the evidence that each email was in furtherance of a crime or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 1 -

fraud. Here, since Plaintiff's "evidence" is premised entirely on the unverified and unproven allegations from other lawsuits, plus arguments from Plaintiff's counsel about what those unverified allegations mean, Plaintiff's evidence of crime-fraud is incompetent and cannot satisfy the preponderance of the evidence standard.

Second, there is no evidence that would allow the Court to reasonably conclude that the January 8, 2014 email string "contains conversations between Newport Trial Group attorneys about a plan to form sham corporate entities solely to pursue legal claims." The attorney-client communications in this email string are wholly innocuous and do not constitute evidence of a crime or fraud.

Third, while the Special Master acknowledged that Plaintiff has the burden of proving the crime-fraud exception by a preponderance of the evidence, the Special Master did not hold Plaintiff to this standard when it considered unverified and unproven accusations (which are not evidence) and other documents that are neither competent nor admissible. At the same time, the Special Master failed to properly consider competent evidence in the declarations of Ferrell, Reid and Weiss that showed Strataluz was a legitimate business that sold and marketed a number of products.

Fourth, the Special Master refused to rule on Defendants' evidentiary objections to Plaintiff's purported evidence. These objections were filed with the Special Master before the hearing took place and before the Special Master issued her final ruling, but the Special Master refused to consider them at all. Moreover, since this is a de novo review, the Court should also give de novo consideration to each of those evidentiary objections.

For each of these reasons, and as described more fully below, the Court should modify, reject or reverse the Special Master's Order finding that the crime-fraud exception applies.

OBJECTIONS TO SPECIAL MASTER'S ORDER DENYING
MOTION TO QUASH CONTINUITY SUBPOENA

## II.    RELEVANT PROCEDURAL HISTORY

### A.    The Second Amended Complaint

Plaintiff Natural Immunogenics Corp. ("Plaintiff" or "NIC") filed its initial Complaint in this case on December 7, 2015, but its operative pleading is the Second Amended Complaint ("SAC"), which was filed on May 10, 2016.  (Dkt. 92). The SAC asserts claims for malicious prosecution, RICO violations, conspiracy to violate RICO, and unfair competition against Newport Trial Group ("NTG") and its attorneys, employees, and former clients.

### B.    Plaintiff's Stipulation Limiting Discovery

On May 9, 2016, at the Scheduling Conference in this case, the Court expressed concerns over the scope of discovery.  In response, Plaintiff's counsel represented that Plaintiff's discovery would be limited to the eight cases identified in the SAC and further represented that discovery with respect to those cases would be narrow and limited to the recruitment and acquisition of the cases before they were filed as follows:

> THE COURT: Okay. One thing I'm concerned about is the
> potential number of other lawsuits that you are going to
> want to inquire into.
> MR. ARHANGELSKY: Let me address that. Our
> Amended Complaint is due tomorrow, and we intend to
> substantially narrow the scope of our RICO allegations. I
> believe in its current format our Amended Complaint will
> inquire into about seven to eight specific cases. We are
> reducing the number of RICO defendants.
> The discovery taken with respect to those cases within
> those cases is also narrow. We are not relitigating these
> cases. We are looking only at recruitment, acquisition,
> those types of aspects of the relationship early before the

- 3 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

cases are often even filed. So with that, we think our Amended Complaint will be far more circumscribed certainly imposing no greater burdens than many other civil cases.

THE COURT: Well, that sounds like a reasonable limitation, seven or eight cases to explore at least initially.

Transcript of May 9, 2016 Scheduling Conference at 7:10-8:4.

### C.    The Court's Order Limiting Discovery

In June 2016, Plaintiff issued broad and invasive subpoenas that sought discovery on cases that had nothing to do with the eight cases in the SAC. Because of this, the Court issued the following Order on July 20, 2016:

…For purposes of discovery with regard to the elements of any of the claims asserted in the Second Amended Complaint on the basis of defendants' prior litigation practices, the Court limits the scope of discovery to the specific prior suits alleged in the Second Amended Complaint. This is consistent with Natural-Immunogenics Corp.'s representations at the May 9, 2016 hearing. If Natural-Immunogenics Corp. believes it has a basis to conduct discovery–whether of defendants or any third party–beyond the cases pled, it shall first apply to the Court for leave to do so. The Court has a systemic duty to ensure that there is a "just, speedy, and inexpensive determination of every action and proceeding." (Fed. R. Civ. P. 1.) Whether third parties object or not, discovery outside the approved scope increases the cost and complexity of the case for all.

- 4 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

(Dkt. 155).

### D.     <u>The Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Leave to Conduct Additional Discovery</u>

On October 25, 2016, the Court issued an Order granting Plaintiff's motion for leave to seek discovery of correspondence in the possession of Continuity Products, LLC ("Continuity") that NIC alleged "contained NTG's instructions from David Reid and Scott Ferrell to create corporate entities solely to pursue legal claims." (Dkt. 198, pg. 4). The Order noted that Plaintiff developed this belief based on discussions between NIC's counsel and Allison Borts ("Borts"), an in-house attorney at Continuity. (Dkt. 198, pg. 4). However, when Borts learned of the declaration from NIC's counsel about what Borts supposedly said, Borts sent an email to NIC's counsel stating:

> I was shocked to find that you had filed this declaration without any permission or advanced notice from me. Were you to have sent it to me in advance, I would have advised you that *it was not an accurate representation of the communications that we shared.* Although we did in fact have a conversation, *your declared recollection of this communication is exaggerated, inaccurate and self-serving. I demand that you retract the declaration* or I may be forced to take additional action.

(Dkt. 179-1 and Exhibit A [emphasis added]).

Notwithstanding the fact that Borts made clear that the declaration from Plaintiff's counsel "was not an accurate representation of [their] conversations," the Court noted that the correspondence would be relevant **if** the allegations of Plaintiff's counsel were true:

> The Court finds that discovery is appropriate with respect to Continuity. The alleged correspondence contains

- 5 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

conversations between Newport Trial Group attorneys about a plan to form sham corporate entities solely to pursue legal claims.  Although the dueling declarations disputed the correspondence's exact content, such allegations are at the heart of this case.  If true, this evidence would support Natural-Immunogenics' claim of a pattern of RICO activity.  Therefore, the Court finds that the importance of this discovery outweighs the burden on the parties and is proportional to the case's needs.

(Dkt. 198, pg. 5).

### E.      Plaintiff's Subpoena To Continuity And Objections Thereto

On October 26, 2016, Plaintiff's counsel served a Notice of Subpoena to Produce Documents, Information, or Objects to Continuity Products, LLC.  (Dkt. 202-3 [Robert Lawrence Decl., pg. 2 at ¶2 and Exh. 1]).

Shortly thereafter, Defendants Scott Ferrell and David Reid, along with non-party Joshua Weiss, objected to Plaintiff's subpoena and counsel then met and conferred about the propriety of the Continuity subpoena.  (Dkt. 202-3 [Lawrence Decl., pg. 2-3 at ¶¶3-7 and Exh. 2]).

In connection with these meet and confer efforts, Defendants supplied Plaintiff's counsel with a detailed privilege log concerning the email string at issue and the parties then concluded that the instant dispute was not subject to informal resolution and thus agreed on a hearing and briefing schedule for a joint stipulation on a motion to quash the Continuity subpoena.  (Dkt. 202-3 [Lawrence Decl., pg. 3 at ¶8 and Exh. 4]).

### 1.      Factual Basis for Ferrell and Reid's Objections

Defendants Scott Ferrell, Dave Reid and non-party Josh Weiss were formerly part-owners of a now-defunct Nevada corporation named Strataluz, LLC.  (Dkt. 202-3 [Scott Ferrell Decl., pg. 45 at ¶2]).  The company was formed in 2014, and

- 6 -

sold a variety of personal health products to consumers, including 2 Minute Booty, Glutia, EverSilk, and Promaxal.  (Dkt. 202-3 [Ferrell Decl., pg. 45 at ¶3]; Dkt. 202-3 [Reid Decl., pg. 48 at ¶2; Dkt. 202-1 [Weiss Decl., pg. 146, ¶¶11 and 13]).

In early 2014, Ferrell engaged the services of attorney Craig Etem of Lionel Sawyer & Collins to act as corporate counsel for the as-yet-to-be-formed Strataluz. One of Etem's associates at Lionel Sawyer & Collins, Brian H. Schusterman, also assisted in the formation of the company.  (Dkt. 202-3 [Ferrell Decl., pg. 45 at ¶4]).

The email string at issue begins with a January 8, 2014 email from Ferrell to his lawyers Etem and Schusterman, with a copy to his business partners Dave Reid and Josh Weiss.  The subject of the email is "Corporate Formation."  (Dkt. 202-3 [Scott Ferrell Decl., pg. 45 at ¶5]).

Later that same day, Reid sent a follow-up email to Josh Weiss regarding the same subject matter, but inadvertently sent the email to Weiss's corporate email account at Continuity instead of his private email account.  (Dkt. 202-3 [Dave Reid Decl., pg. 48 at ¶¶2-5]).

Weiss then forwarded the email to his private email account, and deleted the email string from his Continuity email account.  (Dkt. 202-2 [Joshua Weiss Decl., pg. 2 at ¶2]). On information and belief, Continuity only has a copy of the email string because it continues to reside on their email server despite being deleted from Weiss's Inbox.  (Dkt. 202-2 [Weiss Decl., pg. 2 at ¶4]).

**2.     Plaintiff's Contentions Regarding the January 8, 2014 Emails**

In an attempt to obtain the January 8, 2014 attorney-client communications that pre-date the formation of Stataluz, NIC argues that Strataluz was a sham corporation because it either: (1) misappropriated resources from Continuity in order to compete with Continuity; or (2) was merely a "shell" corporation that was used solely to pursue baseless and fraudulent litigation.  As NIC stated in its opposition to the motions to quash:

> The conduct here falls within the crime/fraud exception.

- 7 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

> Two potential scenarios are apparent:  (1) either Ferrell, Reid, and Weiss conspired to form a competing business against their client's interest and misappropriated resources from that client (Continuity) in furtherance of that endeavor [citing to Exhibit E in Dkt. 202-1 at pg. 79-103, which is the unverified Continuity Complaint]; or (2) they conspired to create non-practicing "shell" corporations used solely to pursue baseless and fraudulent litigation [citing to Exhibit F in Dkt. 202-1 at pg. 105-141, which is the unverified Truderma Answer and Counterclaim].

(Dkt. 202 at pg. 44:7-12.).

As discussed below, Plaintiff has not submitted competent evidence that would establish (by a preponderance of the evidence) that Strataluz misappropriated Continuity's resources or pursued baseless and fraudulent litigation.  But even if Plaintiff could satisfy its burden to prove the crime or fraud that Plaintiff alleges, the January 8, 2014 attorney-client communications still are not in furtherance of any crime or fraud.

### F.    The Motion To Quash The Subpoena To Continuity

On November 22, 2016, Defendants Ferrell and Reid and non-party Weiss filed a Notice of Motion and Motion to Quash Subpoena to Continuity Products, LLC (Dkt. 203), a Joint Stipulation (Dkt. 202), the supporting declarations of Weiss with exhibits (Dkt. 202-2), Robert Lawrence with exhibits (202-3), and Brendan Ford with exhibits (Dkt. 202-4), and the opposing declaration of Peter Arhangelsky with numerous exhibits (Dkt. 202-1).

On December 29, 2016, Defendants Ferrell and Reid filed a Supplemental Memorandum.  (Dkt. 208).

On January 23, 2017, the Court appointed the Honorable Rosalyn Chapman

- 8 -

as the Special Master to preside over discovery matters in this case. (Dkt. 223).

On March 5, 2017, which was before the motion to quash was heard and before any ruling was issued in connection with the motion to quash, Defendants Ferrell and Reid submitted evidentiary objections to the declaration of Peter Arhangelsky and exhibits thereto. (Dkt. 242).[1]

### G. The Special Master's Order Denying Motion To Quash Subpoena To Continuity

On February 6, 2017, the Special Master ordered Defendants Ferrell and Reid to provide the Special Master with NTG0004939-42 ("the Document") for her *in camera* review. (Dkt. 234).

On March 6, 2017, the Special Master held oral argument in connection with the Motion to Quash the Continuity Subpoena and issued its Order in connection with that motion that same day, which was served on the parties the following day on March 7, 2017. (Dkt. 234 and PACER notification for same).

In this Order, the Special Master specifically found that the Document sought by the Continuity subpoena was protected by the attorney-client privilege and that the attorney-client privilege was not waived, but also went on to find that the crime-fraud exception applies because "it is more likely than not that the Document contains instructions from Defendant S.Ferrell to counsel in furtherance of a scheme to defraud by forming sham corporate entities." (Dkt. 234 at pg. 11-20).

Defendants Reid and Ferrell do not object to the portions to the Order confirming the Document was protected by the attorney-client privilege and that the attorney-client privilege was not waived, but do object to the portions addressing the crime-fraud exception to the attorney-client privilege (Dkt. 234 at pg. 17-20), as

---

[1] Defendants did not file the evidentiary objections with the Court because the Special Master's Initial Report ordered the parties to file discovery motions directly with JAMS and not with the Court or through PACER. (Dkt. 226, at ¶5(c)). On March 10, 2017, the Court issued its Order Clarifying Filing Requirements (Dkt. 239) and Defendants then filed the evidentiary objections that same day (Dkt. 242).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

well as the finding that Defendants Ferrell and Reid's evidentiary objections were untimely (Dkt. 234 at pg. 1-2).

## III.   ARGUMENT

### A.   This Court Must Apply A De Novo Standard Of Review To The Special Master's Factual Findings And Legal Conclusions, And Hold A Hearing Pursuant to FRCP 53(f).

Pursuant to Federal Rule of Civil Procedure 53(f) and this Court's Order Appointing Special Master (Dkt. 223 at ¶14), "the Court shall conduct a de novo review of the findings of fact and/or law of the Special Master's order . . . upon the timely objection by any Party." *See also* FED. R. CIV. PRO. 53(f)(3) ("The court must decide de novo all objections to findings of fact made or recommended by a master"); FED. R. CIV. PRO. 53(f)(4) ("The court must decide de novo all objections to conclusions of law made or recommended by a master."). In addition, the Court is required to afford Defendants an opportunity to be heard prior to ruling on any objections to a Special Master's orders. *See* FED. R. CIV. PRO. 53(f)(1).

### B.   The Attorney-Client Privilege Protects Important Rights And The Crime-Fraud Exception Will Only Apply In Very Limited Circumstances.

The U.S. Supreme Court has recognized the attorney-client privilege as "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981); *see U.S. v. Zolin*, 491 U.S. 554, 562 (1989). Although the underlying rationale for the privilege has changed over time, courts long have viewed its central concern as one "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389. The assurance of confidentiality for attorney-client communications is also "central to the legal system and the adversary process." *U.S. v. Hodge & Zweig*, 548 F.2d 1347, 1355 (9th Cir. 1977); *Zolin*, 491 U.S. at 562. In addition, the attorney-client

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OBJECTIONS TO SPECIAL MASTER'S ORDER DENYING
MOTION TO QUASH CONTINUITY SUBPOENA

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

privilege protects fundamental liberty interests by allowing individuals to seek the legal advice they need "to guide them through [the] thickets" of complex laws. *UMG Recording, Inc. v. Bertelsmann AG (In re Napster Copyright Litig.)*, 479 F.3d 1078, 1090 (9th Cir. 2007) (abrogated in part by *Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009)).

Notwithstanding its importance, the attorney-client privilege is not absolute and may be vitiated upon a proper showing of the crime-fraud exception. *Id.* However, courts have cautioned against liberal application of the crime-fraud exception. For example, "[i]n determining the proper procedures for deciding whether the crime-fraud exception applies, we bear in mind the importance of the attorney-client privilege and the potentially irreparable consequences of disclosure." *Id.* (citing *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003) (recognizing invalid disclosure may create "serious prejudice" even at retrial); *U.S. v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999) ("[W]here attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure … '[A]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'") (quoting *Upjohn Co.*, 449 U.S. at 393); *see also In re Ford Motor Co.*, 110 F.3d 954, 962-64 (3d Cir. 1997) ("[T]he cat is already out of the bag…  [T]here is no way to unscramble the egg scrambled by the disclosure…")

Courts have also recognized that "[m]otions to penetrate clearly applicable privileges can be tools for harassment -- and can chill the communications that the privileges are designed to encourage." *Laser Indus. v. Reliant Techs.*, 167 F.R.D. 417, 424 (N.D. Cal. 1996). Accordingly, before the crime-fraud exception can apply, the party seeking to vitiate the attorney-client privilege must satisfy two separate criteria. First, the party "must show that the client was engaged in or planning a criminal or fraudulent scheme" at the time the client sought the advice of counsel. *In re Napster Copyright Litig.*, 479 F.3d at 1090. Second, the moving

- 11 -

party must demonstrate by a preponderance of the evidence "that the attorney-client communications for which production are sought are sufficiently related to and were made *in furtherance of* the intended, or present continuing illegality." *Id*. at 1090 (emphasis in original) and at 1094-95 ("we conclude that in a civil case the burden of proof that must be carried by a party seeking outright disclosure of attorney-client communications under the crime-fraud exception should be preponderance of the evidence").

In addition to considering the evidence from both sides regarding the allegedly criminal or fraudulent communication (as well as an *in camera* review of the communication, which Ferrell, Reid and Weiss agreed to), the Court is required "to permit the holder of the privilege to submit evidence and argument that tends to rebut an inference of any of the necessary elements of the crime/fraud exception." *Laser Indus.*, 167 F.R.D. at 429-30. In fact, to the extent the evidence presented is in conflict, it is "inappropriate to draw inferences more generously or more loosely from the challenger's evidence than from the evidence offered by the holder of the privilege." *Id*. at 430-41. Hence, after reviewing the evidence presented by both sides, the Court must find in favor of the privilege if the evidence from each side was equally compelling. *Id*. at 435 (holding that if "it would have been rational and unassailable for the trier of fact to draw either inference," then the crime-fraud exception does not apply) and at 438 ("if a judge… concludes that the evidence and argument are essentially in equipoise,… the judge must deny the motion to penetrate the privilege under the crime/fraud exception.").[2]

Courts have also clearly held that the second element cannot be satisfied unless the privileged communications at issue are shown to have been specifically

[2] As Judge Brazil explained in *Laser Industries*, a higher standard is applied when deciding whether the crime-fraud exception applies because it "reduce[s] the likelihood that these issues will be wrongly decided… and make[s] sure that decisions that strip parties of privilege protection that otherwise would attach are reliably made." *Id*. at 440.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 12 -

intended to further the alleged crime or allegedly fraudulent act. *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642 (8th Cir. 2001) ("A moving party does not satisfy [its] threshold burden merely by alleging that a fraud occurred and asserting that disclosure of any privileged communications may help prove the fraud. There must be a specific showing that a particular document or communication was made in furtherance of the client's alleged crime or fraud."); *see also In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985) (discussing second element and how moving party must "establish[…] that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme."). Likewise, it not enough to contend that an otherwise privileged communication may evidence an alleged crime or fraud:

> [T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud. If it did, the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability. Instead, the exception applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud.

*In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995).

Finally, "[m]ere coincidence in time" between the seeking of legal assistance and the alleged wrongful conduct, without more, "cannot support the invocation of the exception." *In re Sealed Case*, 754 F.2d at 402. Nor is it enough to argue that a communication purportedly discloses a client's discussion with his counsel of some past wrongdoing. Such communications are not discoverable under the crime-fraud exception and remain privileged. *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977); *see also* P. Rice, Attorney-Client Privilege in the United States §8:16 (2d ed. 1999)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 13 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

("Consultations occurring after the illegal act has been committed, for the purpose of preparing a defense to claims that either may be or have been made, are the types of consultations that the privilege was designed to encourage").

In the instant case, Plaintiff is attempting to compel the production of the communications between Defendants Scott Ferrell, David Reid, and non-party Josh Weiss and their corporate counsel regarding "corporate formation." These are precisely the type of documents that Courts have held are off-limits unless the moving party has made a compelling showing – based on the preponderance of the evidence – that the crime-fraud exception applies.

### C. **Plaintiff Has Not Proven by a "Preponderance of the Evidence" that the Crime-Fraud Exception Applies.**

Plaintiff argues that the email it seeks from Josh Weiss's email account at Continuity Products is subject to the crime-fraud exception to the attorney-client privilege. In support of this assertion, Plaintiff offers the declaration of its attorney, Peter Arhangelsky, which on its face shows he has no knowledge of the underlying facts he attempts to put before the Court and thus violates Rule 602 of the Federal Rules of Evidence. Turning to the substance of the Arhangelsky declaration, it is clear that Plaintiff's crime-fraud allegations rely exclusively on the unverified, untested and unproven accusations of third parties in other lawsuits, along with arguments from Plaintiff's counsel as to the significance of those accusations. As discussed below, this is not evidence at all and it certainly is not the type of evidence that could ever satisfy the "preponderance of the evidence" standard. In short, Plaintiff relies on only on patently incompetent and inadmissible accusations and does not have one iota of *evidence* to support its allegations for the crime-fraud exception.

### 1. **Forming a Corporation is Neither a Crime Nor a Fraud.**

As stated in the moving papers and as listed in the NTG Defendants' privilege log (Dkt. 202-3, pg. 43), the email at issue is between Scott Ferrell, David Reid,

- 14 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Josh Weiss, and their corporate attorneys on the subject matter of "corporate formation." There is nothing criminal or fraudulent about forming a corporation; nor is there anything criminal or fraudulent about structuring a corporation to limit liability to its shareholders. The Ninth Circuit has previously rejected any argument to the contrary, stating as follows:

> If a party could establish the crime-fraud exception simply by showing that an opponent structured a business transaction to limit its liability, the attorney-client privilege would be worth little, for under this standard many commercial disputes could be recast as fraud on the court. Such a standard would defeat a primary purpose of the attorney-client privilege, which is to encourage individuals to seek legal counsel "to guide them through the thickets" of complex laws.

*Napster,* 479 F.3d at 1097.

Plaintiff's accusations (which again are not evidence) that the corporation was formed for the purpose of filing "sham" lawsuits does not turn routine correspondence with corporate counsel into evidence of a crime or fraud. To hold otherwise, the Court would have to find that the contents of the email itself shows, on its face, that Scott Ferrell, David Reid and Josh Weiss were planning some future crime or fraud, and that they then consulted with their attorney "in furtherance" of that scheme. Notably, the Special Master did not go that far or issue any such finding. Plaintiff also did not present any evidence to suggest that the formation of the company was a crime or somehow fraudulent. As the Court will also see upon its own *in camera* review of the email string in question, there is nothing in the email string that could be construed by a reasonable trier of fact to be in furtherance of a crime or fraud. The Ninth Circuit could not be more explicit when it held that "the fact that a party has taken steps to structure a business transaction to limit its

- 15 -

liability does not suffice, without more, to establish that the crime-fraud exception applies." *In re Napster,* 479 F.3d at 1098.

When the Ninth Circuit decided *In re Napster*, it was confronted with the issue of whether the crime-fraud exception vitiated the attorney-client privilege. Plaintiffs alleged defendant was liable for Napster's copyright infringement liability. Plaintiffs' claim was based on the fact that defendant had loaned $50 million to Napster. Plaintiffs therefore sought all attorney-client communications related to the $50 million loan. 479 F.3d at 1084. Plaintiffs relied on two theories for its argument that the crime-fraud exception applied. First, plaintiffs asserted the loan was a sham because it was actually "cash tendered in exchange for an equity stake" in Napster. *Id*. Specifically, plaintiffs argued defendant "intended to use the sham loan documents to deceive the courts into concluding [defendant] was not an equity owner and therefore not liable for the actions of Napster." *Id*. As evidence of the fact that the loan was a sham, plaintiffs pointed to documents showing (1) defendant intended to structure the loan in a way that ensured defendant could not be held liable for Napster's liability; and (2) defendant, in other litigation, had pointed to the loan as evidence that it did not control Napster. *Id*.

Second, plaintiffs asserted the crime-fraud exception applied because defendant, "through its lawyers, attempted to defraud the courts by omitting from the loan documents a side agreement that allowed Napster to channel some of the $50 million into Napster's litigation expenses." *Id*. Plaintiffs argued that defendant was concerned that "lending funds to Napster for use as litigation expenses might expose [defendant] to vicarious and contributory copyright infringement liability." *Id*. As evidence of a nefarious side-deal regarding how the loan could be used, plaintiffs pointed to documents and deposition testimony indicating a hand-shake side deal existed that allowed Napster to use $10 million of the loan for litigation expenses. *Id*. at 1084-86.

OBJECTIONS TO SPECIAL MASTER'S ORDER DENYING
MOTION TO QUASH CONTINUITY SUBPOENA

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

When the Ninth Circuit reversed the district court's order finding the crime-fraud exception applied, it explained that "even if all of the evidence offered by [plaintiffs] is believed, there is an insufficient basis to hold that the attorney-client privilege may be vitiated under the crime-fraud exception." *Id.* at 1096. The court explained that evidence of a right to convert a loan into equity does not "prove that the entire loan was a sham." *Id.* at 1096. Likewise, documents showing an attempt to limit liability "do not prove fraud." *Id.* at 1097. With regard to plaintiffs' second theory, the court found that even if there was a side deal allowing the loan to be used for litigation expenses, this evidence did not establish "an intentional, material misrepresentation directly 'aimed at the court.'" *Id.* The court explained that the evidence -- at best -- demonstrated "a lawyerly attempt to make inconspicuous the fact that some of the money could be used for litigation expenses." *Id.* However, even the attempt to hide how the money would be used did not constitute evidence of a fraud on the courts. *Id.* at 1098. The court explained that it could not "credit [plaintiffs'] view that [defendant] structured its agreement with Napster with a view to deceive the courts in suits that had not been filed and to avoid liability based on legal theories not yet advanced." *Id.*

Likewise, the evidence Plaintiff has submitted regarding Strataluz does not, as Plaintiff contends, demonstrate a use of the attorney-client relationship to (1) misappropriate information from Continuity; or (2) pursue baseless and fraudulent litigation against third parties. Moreover, in contrast to Plaintiff's lack of any real evidence, Scott Ferrell, David Reid, and Josh Weiss have submitted declarations attesting to the fact that the corporation was a legitimate business that sold and marketed personal health products. (Dkt. 202-3 [Ferrell Decl., pg. 45 at ¶3]; Dkt. 202-3 [Reid Decl., pg. 48 at ¶2; Dkt. 202-1 [Weiss Decl., pg. 146, ¶¶11 and 13]). This the only competent evidence before the Court and it clearly shows Strataluz could not be a "shell" or "sham" corporation as it was in the business of marketing and selling a variety of products. *See also Laser Indus.*, 167 F.R.D. at 429-30

- 17 -

(confirming that the court cannot draw inferences about crime-fraud in plaintiff's favor when defendants have presented evidence to the contrary). Furthermore, while the company may not have thrived, the fact that it did not sell as much product as the parties had hoped and was eventually shuttered only means it has something in common with 99% of the small businesses started in America. To state the obvious, it is not a crime or a fraud to start a business that fails.

In sum, even if Plaintiff had shown that the NTG Defendants were "engaged in or planning" a crime or fraud (which it has not done), Plaintiff would also have to show that the email it seeks to discover was made with the specific intent to further such a fraud. Plaintiff did not and cannot establish this because the email string at issue, while privileged, is entirely innocuous and says nothing about any crime or fraud. Accordingly, Plaintiff has failed to meet its burden of proving by a preponderance of the evidence that the specific communication at issue was made for the specific purpose of furthering a crime or fraud.

### 2. A Preponderance of the Evidence Standard Can Only be Satisfied Through Competent Evidence.

The Special Master's Order acknowledged that Plaintiff had the burden of proving the crime-fraud exception by a preponderance of the evidence. However, the Special Master did not hold Plaintiff to this standard when it considered unverified accusations (which are not evidence) and other documents that are neither competent nor admissible to meet a preponderance of the evidence standard.[3]

In this case, Plaintiff seeks the turnover of the Weiss email based on evidence

---

[3] The NTG Defendants objected to Plaintiff's "evidence" and submit that it cannot be considered by the Court as unverified allegations from other lawsuits are not evidence and carry no weight or credibility. In addition, given the importance of the attorney-client privilege and since Plaintiff has the burden of proof, the Court must assess the competency and quality of the evidence Plaintiff proffered before it can decide whether Plaintiff demonstrated a crime or fraud.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OBJECTIONS TO SPECIAL MASTER'S ORDER DENYING
MOTION TO QUASH CONTINUITY SUBPOENA

that is improper under any interpretation of the Rules of Evidence.  For starters, the declaration from Plaintiff's counsel improperly seeks to authenticate and provide a foundation for numerous documents that he has no percipient knowledge of beyond the fact that counsel read them.  Plaintiff cannot establish crime-fraud based on counsel's reference to unverified and unproven accusations from other lawsuits.  It is well settled that these types of allegations are not evidence of anything.  After all:

- "[A]llegations in a complaint are not evidence…"*Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1166 (N.D. Cal. 2014).

- "[T]hat a private litigant levels allegations in a separate case does not somehow convert those allegations into evidence for the Court's purposes in this case." *Maple Leaf Adventures Corp. v. Jet Tern Marine Co.*, 2016 U.S. Dist. LEXIS 76157, at *21 n. 5 (S.D. Cal. 2016).

- "[T]he unverified complaint can provide only factual evidence— admissions—against plaintiffs; never for plaintiffs." *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 895 n. 12 (9th Cir. 2011).

- "A Notice to Appear [for immigration proceedings], like a complaint in a civil case … is simply a charging document. The allegations made … in a Notice to Appear are merely that—allegations.  They are not meant to be evidence." *United States v. Albino-Loe*, 747 F.3d 1206, 1211 (9th Cir. 2014).

- "But because Plaintiffs do not offer any evidence to support these allegations, these allegations present no genuine issues of fact, and are not considered by the court in deciding these [dispositive] motions." *In re Worlds of Wonder Sec. Litig.*, 814 F. Supp. 850, 861 n.8 (N.D. Cal. 1993).

Accordingly, on a scale of 1 to 10, unverified and unproven accusations from other lawsuits are a zero and can never form the basis for a finding that the crime-

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 19 -

fraud exception has been established by a preponderance of the evidence.

### D. Defendants Ferrell and Reid Did Not Waive Their Objections to Plaintiff's Incompetent Evidence.

On March 5, 2017, Defendants Scott Ferrell and David Reid filed and served their evidentiary objections to opposing counsel's declaration (Dkt. 242), which was before the March 6, 2017 hearing on the motion to quash the Continuity subpoena. Despite this, Plaintiff has argued that the objections are "untimely" and the Special Master has adopted that finding in her ruling.

Defendants Ferrell and Reid respectfully disagree and believe it was plain error for the Special Master to refuse to consider written evidentiary objections that were before her prior to the hearing on the matter, and that were reiterated at the hearing itself. There is nothing in Rule 37 or the Local Rules that provides that evidentiary objections have to be filed contemporaneously with a Joint Stipulation or a Supplemental Memorandum. In fact, Local Rule 37-2.3 only allows for a 5 page Supplemental Memorandum and nothing more than this. *See* Local Rule 37-2.3 ("Unless otherwise ordered by the Court, a supplemental memorandum shall not exceed five (5) pages in length. No other separate memorandum of points and authorities shall be filed by either party in connection with the motion.").

Defendants Ferrell and Reid were also well within their rights to assert their objections prior to (and at) oral argument because if they were not asserted they ran the risk of waiving them. Rule 103(a) of the Federal Rules of Evidence, which typically deals with the timely assertion of an evidentiary objection at trial or in response to a motion in limine, is instructive here since the issue is not preserving objections for appeal but merely attacking the competence of evidence in a discovery dispute. There are also instances where Rule 103(a)'s requirement that an objection be "timely" has been interpreted to encompass an objection made after the evidence has already come in. For example, in *Jones v. Lincoln Elec. Co.*, 188 F.3d 709 (7th Cir. Ind. 1999), Jones' counsel failed to object to the testimony of the other

- 20 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

side's expert witness until after he had testified and the testimony had been admitted into evidence, when Jones' counsel became aware that one of the studies the expert had relied on had not been disclosed in discovery. In finding that the trial court erred in overruling Jones' objections, the Seventh Circuit stated:

> Contrary to Defendants' assertion, we do not believe it to always be the case that an objection has to be perfectly contemporaneous with the challenged testimony in order to satisfy Rule 103(a) and be considered "timely." Instead, an objection can still be deemed "timely" if it is raised within a sufficient time after the proffer of testimony so as to allow the district court an adequate opportunity to correct any error. How contemporaneous an objection must be to the challenged testimony in order to be considered "timely" under Rule 103(a) is a question of degree. Asking a court to strike testimony introduced at trial three weeks earlier would, by all accounts, be unreasonable—such an objection cannot be considered "timely" by any stretch of the imagination. On the other hand, petitioning the court to strike testimony offered by a witness at the close of that witness's testimony or prior to the start of the proceedings on the very next day when the witness was the last to testify on the preceding day, is a much closer question. In such a situation, the district court can certainly correct any error by issuing a limiting or curative instruction while the testimony is still relatively fresh in the mind of the jurors. In the instant case we believe Jones's objection to Dr. Eager's testimony was sufficiently contemporaneous to be considered "timely"

- 21 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

under Rule 103(a). *Cf. Deppe v. Tripp*, 863 F.2d 1356, 1363 n.10 (7th Cir. 1988) (suggesting that a "nearly contemporaneous" objection made at the bench at the close of a party's closing argument would preserve the matter for appellate review because it would afford the trial court an opportunity to cure the claimed error through the use of a curative instruction).

*Jones v. Lincoln Elec. Co.*, *supra* at 727.

In this case, of course, it is not live testimony that Defendants Ferrell and Reid are seeking to unwind after the fact, but an incompetent declaration that was challenged in writing before the commencement of the hearing on the motion to quash. As such, Defendants Ferrell and Reid believe their objections to evidence were timely as a matter of law and that the Special Master should have considered and ruled on objections to patently incompetent testimony and evidence.

## IV. CONCLUSION

For all of these reasons, Defendants Scott Ferrell and David Reid respectfully request that the Court conduct a de novo review of the Special Master's findings and legal conclusions, schedule a hearing so that Defendants can be heard on these matters, and then issue an Order modifying, rejecting or reversing the Special Master's Order finding that the crime-fraud exception applies to the January 8, 2014 email string in NTG0004939-NTG0004942.

Dated: March 14, 2017      **CALLAHAN & BLAINE, APLC**

By:   */s/ David J. Darnell*
Edward Susolik
David J. Darnell
Attorneys for Defendants NEWPORT
TRIAL GROUP, SCOTT J. FERRELL,
RYAN M. FERRELL, VICTORIA C.
KNOWLES, DAVID REID and
ANDREW LEE BASLOW

- 22 -