Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
EMORD & ASSOCIATES, P.C.
3210 S. Gilbert Road, Suite 4
Chandler, AZ 85286
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., <br><br> Plaintiff, <br> v. <br><br> NEWPORT TRIAL GROUP, *et al.*, <br><br> Defendants. | Case No. 8:15-cv-02034-JVS (JCG) <br><br> **DECLARATION OF PETER A. ARHANGELSKY IN SUPPORT OF PLAINTIFF'S OPPOSITION PURSUANT TO FRCP 56(d)** <br><br> Hearing Date: April 10, 2017 <br> Time:  1:30 p.m. <br> Judge:  Hon. James V. Selna |

## <u>DECLARATION OF PETER A. ARHANGELSKY</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. I, Peter A. Arhangelsky, am over the age of 18 and competent to testify to the information below.

2. I am an attorney with the law firm of Emord & Associates, P.C.  I am counsel of record in the above-captioned case.  I make this declaration based on my own personal knowledge.

**Specific Evidence Yet Outstanding in Discovery**

3.      Plaintiff Natural-Immunogenics Corp. ("NIC") has not yet deposed any of the Defendants whose testimony is relevant to the issues presented in Defendants' Partial Motion for Summary Judgment which was filed as Docket Nos. 231-233 (the "MSJ").

4.      Specifically, NIC has not deposed Ryan Ferrell, Scott Ferrell, David Reid, Victoria Knowles, Andrew Baslow, Andrew Nilon, or Giovanni Sandoval.  The MSJ specifically places at issue the mindset of those individuals and their beliefs regarding the merits of the *Nilon v. NIC* case.  *See, e.g.,* Dkt. 231 at 10 ("In light of Sandoval's criminal background and credibility issues, NTG submitted on the Court's tentative order").  Those depositions are essential to complete the evidentiary record related to the mental state of NTG defendants.  As explained below, depositions have been in abeyance pending resolution of privilege issues and acquisition of documents.  Early deposition practice indicated that meaningful examination of defendants at deposition would be impracticable without first resolving the many privilege issues raised before, during, and after the initial party deposition.  NIC has filed motions to address those issues.

5.      Moreover, NIC only recently received privilege logs related to internal documents and communications within the NTG Defendants' possession.  On December 23, 2016, NIC was forced to file a motion to compel privilege logs after NTG defendants missed five deadlines to produce that information.  The Special Master noted in her order that Defendants had simply refused to provide responsive information or privilege logs based on a categorical claim of privilege.  The Special Master awarded NIC attorney fees in seeking to compel that information.  *See* Dkt. 241.

6.      Only after NIC served its motion to compel, NTG defendants began producing privilege logs and responsive documents.  The vast majority (nearly all) of the files logged and produced by NTG defendants have come after December 30, 2016.

Following receipt of that information, NIC has diligently moved to pierce privilege assertions, and compel information still within NTG's possession.

7.     Specifically, NIC has filed a motion to compel the production of documents identified in Defendants' privilege logs on the basis that the crime-fraud exception to attorney-client privilege and work-product doctrine applies.

8.     Because of the NTG defendants' unexcused delays in discovery, very little party discovery occurred during the first seven months of discovery.

9.     NIC has diligently pursued discovery from non-parties.  That information has corroborated and supported NIC's RICO claims.  NIC's crime-fraud motion is supported in substantial part by documents obtained through third-party discovery.

10.     Nonetheless, party discovery is required to examine elements related to malicious prosecution, particularly the "favorable termination" element.  Because the reasons for NTG's dismissal of Sandoval and withdrawal of Nilon may be questions of fact for the jury, evidence bearing on the mental states of Nilon, Sandoval, and the NTG Defendants at the time of dismissal and withdrawal is highly material and probative to the question of how Defendants perceived the dismissal of Sandoval's claims and Nilon's substitution.

11.     Until the Crime-Fraud motion is resolved, NIC lacks what is likely the best evidence of the mental impressions and beliefs of the NTG Defendants regarding the merits of the *Nilon v. NIC* case and reason for their dismissal of Sandoval's claim. Defendants have admitted that a substantial number of documents related to the *Nilon v. NIC* matter exist.  They have a now logged files related to that case, which NIC seeks in its Crime-Fraud motion.  Specifically, the following documents (identified by Bates No.) are subject to NIC's crime-fraud motion and may bear on the favorable termination element:

      a.  NILON00051-NILON00066 and NTG000166-NTG000186– Emails between NTG and Nilon in May and June of 2014 in which, upon

Declaration of Peter A. Arhangelsky in Support of Plaintiff's Opposition Pursuant to FRCP 56(d)

3

information and belief, Nilon and NTG may have discussed his withdrawal and substitution.  Upon information and belief and based on the attachments noted in the privilege log, Ryan Ferrell and Nilon, through those emails, exchanged drafts of the declaration which ultimately supported Nilon's withdrawal.

    b.  NTG025500-NTG025501, NTG025582-NTG025586 – Internal NTG emails discussing "Andrew Nilon" in May 2014 which, upon information and belief, likely characterized Nilon's decision to withdraw.  Some of the subject lines in NTG's privilege logs are inexplicably redacted.

    c.  NTG027873-NTG027972 – Internal NTG emails which, upon information and belief and based on the subject lines in the privilege log, apparently relate to the preparation of Ryan Ferrell's Motion to Withdraw as Counsel for Andrew Nilon and his supporting Declaration.

    d.  NTG040098-NTG040165 – Internal NTG emails which, upon information and belief and based on the subject lines in the privilege log, apparently relate to NTG's settlement offer to dismiss Sandoval's claims with prejudice and discuss NTG's intended response to the Judge Burns' tentative order dismissing the case.

    e.  NTG040079-NTG040097 – Internal NTG emails which, upon information and belief and based on the subject lines in the privilege log, apparently address Judge Burns' Tentative Order dismissing the case.

The aforementioned documents are not an exclusive list of the evidence subject to the crime-fraud motion which may bear on this issue, and which NIC has yet to obtain in discovery.  Defendants' privilege logs lack a subject/description column which makes ascertaining the subject matter of many entries impossible.  The descriptions identified above are drawn from the limited information identified in truncated privilege logs and through the timing of the communications in relation to events in litigation.

12.     NIC has not yet had an opportunity to depose third party witnesses necessary to sponsor evidence obtained through third-party discovery.  To the extent that NTG will argue that certain exhibits submitted in support of NIC's Opposition are inadmissible because they are hearsay, lack foundation, etc., those admissibility issues can and will be cured through the acquisition of deposition or written testimony from appropriate third parties.

13.     There remains approximately five months of discovery.  Nonetheless, the delays in discovery have been significant to date.  NIC plans to move this Court under Rule 16 for a suitable extension of the discovery calendar that will allow for discovery to be completed after the Special Master rules on the critical gateway issues (to wit, privilege concerns).  That extension is warranted given the unique and voluminous discovery issues litigated to date, and the commensurate delays.  Factoring potential appeals and objections, NIC may not have a final decision on these gateway, foundational discovery orders until late May 2017, just days before expert discovery is otherwise scheduled to begin.

**Specific Reasons Why Such Evidence is Still Outstanding**

14.     Party discovery has progressed slowly because Defendants have taken unreasonable positions.  NIC has been forced to file motions or oppose motions to quash to resolve nearly every discovery dispute.  Since the appointment of Discovery Master Chapman in January 2017, the parties have received already three orders related to discovery disputes.  NIC has prevailed in each of those three motions, receiving attorney fees following two of the Master's Orders.

15.     The Master has consistently held that NTG's discovery tactics—including the obstruction of non-party information and the refusal to supply party discovery—were unfounded.  *See, e.g.,* Dkt. 234 at 10 (citing defendants' "frivolous relevancy and proportionality objections"); Dkt. 235 at 21 ("The Special Master finds that the motions

for protective order were not substantially justified"); Dkt. 241 at 17-18, 22 (noting NTG's substantial delay in discovery of five months, and finding that "NTG Defendants took the unprecedented stance that they would not produce any privilege logs unless they were ordered to do so (or changed their mind).").

16.    NTG has now refused to produce information in discovery citing its motion for summary judgment now pending before the Court.  NTG has argued that, because this Court may grant the relief requested, NTG should not be obliged to produce certain information in discovery until this Court resolves the instant motion.  NTG has not moved for a protective order or sought a stay of discovery pending resolution of the dispositive motion.

17.    The Parties have a substantial number of discovery disputes that are still outstanding.  NIC has filed a motion to compel financial information for NTG defendants.  NIC has also filed a motion to compel under the crime-fraud exception to the attorney-client privilege.  NIC will likely need to pursue at least the following additional motions:  (1) motion to compel answers wrongfully withheld at Defendant Sam Schoonover's deposition; (2) motion to quash NTG's deposition subpoena seeking to depose NIC's trial counsel in this case; (3) motion to compel a list of telephone numbers of NTG and its agents that they used to connect with the firm clients; (4) motion to compel responses to Rule 33 and 34 requests related to Giovanni Sandoval's matter.

18.    Defendants have not complied with a substantial number of NIC's Rule 33 and Rule 34 Requests.  The documents and information responsive to those requests are necessary to perform effective depositions of the NTG Defendants.  Moreover, the documents themselves, mostly internal correspondence, likely evidence the mindset and beliefs of the NTG Defendants related to the merits of the *Nilon v. NIC* case.

19.    NIC has performed one deposition in the matter thus far, the deposition of Sam Schoonover.  At deposition, Defendants' counsel invoked privilege and instructed

Mr. Schoonover not to answer frequently.  The Parties disagree over the propriety of those privilege objections, which substantially limited NIC counsel's ability to inquire into nearly all relevant areas of this litigation that relate to the malicious prosecution claim.

20.    Based on a pattern of NTG deposition objections in this case and at least three other matters,[1] NIC counsel is informed and believes that further deposition practice of the parties will needlessly increase the parties costs and fees without any commensurate benefit in litigation until the Court can first rule on the threshold privilege issues in this case.

21.    NIC is unable to complete depositions of the defendants until the privilege issues are resolved, thus providing clear guidance as to whether (if at all) NIC will be permitted to examine the witnesses on issues material to NIC's claims.

22.    Moreover, because NIC's crime-fraud motion has yet to be resolved, more than 5,000 relevant documents which may ultimately be ordered produced are presently being withheld by the Defendants.  Until NIC possesses those documents, deposition practice (a traditionally document intensive discovery tool) would be premature.

23.    The delays in party discovery and the volume of discovery motions necessitated by NTG's tactics have slowed NIC's ability to press forward with third-party deposition practice necessary to establish foundation for, or to explain, documentary evidence obtained from third parties.  NIC has less resources than Defendants' counsel, and, as a consequence, the effect of Defendant's unjustified motions practice has occupied NIC Counsel's resources and time that would be required to perform other discovery tasks related to the admissibility of documents that would ordinarily be accomplished later in discovery.

---

[1] *See, e.g.,* Dkt. 165-10, Depo Tr. of Kristyne Hanberg; Dkt. 30-5, Depo. Tr. of Giovanni Sandoval; *Torres v. Nutrisystem, Inc.*, No. 8:12-cv-0854-CJC(JPRx) (C.D. Cal. 2013), Dkt. 20-3, Depo. Tr. of Raquel Torres.

24.     NIC has been diligent in pursuing discovery, but NTG's tactics of forcing motions practice to resolve every dispute has delayed the receipt of information.  NIC has been forced to expend time and resources briefing issues for which the Master has ultimately found that the Defendants' positions were unfounded.  This has limited NIC's ability to advance discovery in a timely manner.

**NIC Will Take Steps to Obtain the Outstanding Evidence**

25.     NIC filed a Motion to Compel Documents pursuant to, inter alia, the crime-fraud exception on March 8, 2017.  Prior to that filing, NIC had served its portions of the Joint Stipulation on December 19, 2016.

26.     At their request, NIC granted Defendants a six week extension to oppose that motion, or until January 30, 2017.

27.     On January 17, 2017, Defendants notified NIC counsel that they would not produce their portion of the crime-fraud motion as agreed on the January 30 deadline.

28.     On January 23, 2017, this Court appointed a Special Discovery Master.  *See* Dkt. 223.  The parties had a joint case management conference with the Master on February 6, 2017.  Following that hearing, NIC required changes to its crime-fraud motion that included:  (1) removing from the pleading all "exhibits" that included publicly filed exhibits and replacing same with docket citations to the public record; (2) adding privilege log entries to reflect new information produced to NIC over the intervening seven weeks; and (3) adding new argument to address that information.  NIC was then able to file its crime-fraud motion on March 8, 2017, almost three months after having first served that pleading.

29.     The Court's resolution of the crime-fraud motion is material to discovery related to NTG's pending motion for summary judgment.  NTG has produced no information in discovery relevant to the defendants' state of mind or understanding of the Sandoval claim.  NIC's pending motions seek to compel that information.  Because

Declaration of Peter A. Arhangelsky in Support of Plaintiff's Opposition Pursuant to FRCP 56(d)

8

the motion addresses privilege designations, an appeal to this Court from the Master's decision is expected.

30.     Following the above-described motions, NIC will have substantially more probative documentation related to the Nilon v. NIC matter, and the parties will be better informed.

31.     Deposition practice will begin forthwith once the crime-fraud motion has been resolved.

32.     Resolution of NTG's dispositive motion—which requires resolution of factual issues—would be premature until NIC has had a full and fair opportunity to take discovery from NTG defendants.

Executed on this 16th day of March, 2017.

 /s/ Peter A. Arhangelsky
Peter A. Arhangelsky
*Attorney for Plaintiff NIC*

Declaration of Peter A. Arhangelsky in Support of Plaintiff's Opposition Pursuant to FRCP 56(d)