# EXHIBIT I



A Professional Corporation

WASHINGTON, D.C. | VIRGINIA | PHOENIX

11808 WOLF RUN LANE
CLIFTON, VA 20124

3210 S. GILBERT ROAD
SUITE 4
CHANDLER, AZ 85286
(602) 388-8899 | FAX (602) 393-4361

1050 SEVENTEENTH STREET, N.W.
SUITE 600
WASHINGTON, D.C. 20036
(202) 466-6937 | FAX (202) 466-6938

Peter A. Arhangelsky, Esq.
(602) 388-8899
parhangelsky@emord.com

January 18, 2017

**<u>VIA E-MAIL AND US PRIORITY MAIL</u>:**

Stephanie Sperber, Esq.
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
P: (714) 241-4444
E: ssperber@callahan-law.com

> **Re:   *Natural-Immunogenics Corp. v. Newport Trial Group, P.C., et al.,***
> ***No. 8:15-cv-02034***

Counsel:

We received your letter dated January 12, 2017 concerning pending discovery disputes and your proposed Motion for "Summary Adjudication." At the outset, your letter, written in response to NIC's meet and confer letter under Local Rule 37, does not satisfy your meet and confer obligations under Local Rule 7-3 with respect to your proposed Motion for Summary Adjudication. We propose that the parties discuss both the discovery issue and the Motion for Summary Adjudication either this week or next.

That issue notwithstanding, we address each of your points seriatim. NTG's financial information is certainly within the scope of discovery available to NIC in this case. NIC is entitled to seek discovery concerning all of its operable claims in this matter. The Court's discovery limitations cannot reasonably be construed to limit NIC's ability to investigate basic damages and elements of its malicious prosecution claim. NTG's position that such financial information somehow constitutes discovery of other cases is untenable and directly in conflict with applicable precedent concerning punitive damages. Furthermore, the discovery limitation set by Judge Selna (Dkt. 155) did not reach discovery related to punitive damages. *See* Dkt. 155 ("For the purposes of discovery with regard to the *elements of any of the claims* asserted in the Second Amended Complaint...") (emphasis added). Discovery relevant to punitive damages is not related to a specific element of the prima facie case but, instead, is relevant to NIC's total recovery and available relief in the case. By rendering "net worth" discoverable, the precedent in the Ninth Circuit plainly contemplates that damages-related discovery must incorporate all financial activities. NIC has not requested discovery related to any specific matter or case outside of the SAC, and global requests for financial records do not entail such case-specific discovery.

NIC v. NTG | Response Re Defendants' January 12, 2017 Letter
January 18, 2017
Page 2 of 4

## Defendants' Proposed Motion:

Your proposed Motion for Summary Adjudication is improper at this stage.  Even were that filing proper, the proposed briefing schedule is unworkable.  NIC would insist on at least 17 calendar days (excluding the filing date) to produce a response to that dispositive motion.  NIC has routinely given defendants that same courtesy throughout this case.

The proposed MSA filing suffers from procedural and substantive defects.  You represent that the "scope of the proposed MSA will be limited to the issue of whether the underlying action terminated in NIC's favor."  Following dispositive motions on the pleadings, and through a well-reasoned decision, the Court entered a legal determination finding as a matter of law that the underlying case was terminated in NIC's favor:

> The substituting of Nilon, the vacating of class certification, and the dismissal with prejudice of Sandoval are terminations in favor of NIC and, collectively, indicate that the "entire action" was terminated in favor of NIC.

*See* Dkt. 88 at 25.

Even assuming that the Court were to revisit that determination, the issue would be a question of fact and Defendants' Rule 56 motion would be grossly premature.  Party discovery has barely begun in this case due to Defendants' stalwart refusal to provide relevant information responsive to NIC's discovery requests.  Issues of privilege have come to the fore of the present litigation and, until resolved, summary judgment would be inappropriate.  NIC still requires substantial discovery before the Court (or parties) may apply for summary judgment with respect to critical elements in this case.  The mere fact that the Court has not yet considered NIC's crime-fraud motion provides sufficient basis to deny a Rule 56 motion at this time.  Should you pursue the MSA motion, NIC will file a Rule 56(d) motion that would be properly granted.

## Scope of Financial Requests:

NIC seeks discovery relevant to defendants' net worth to the extent permissible by law. NIC's requests are enforceable as written.  A defendant's "current" net worth can be influenced by many factors, including depreciations, incurrence of debt, sham transactions or conveyances, etc.  NIC's requests are intended to reach an adequate data sampling to determine the true value of financial assets, holdings, and receivables, which includes assets reasonably available to defendants to satisfy an award—not just those presently available.  The scope of those requests is designed to reveal or explain potential down years or inconsistencies.  Defendants' proposal to backdate discovery to January 1, 2016 is untenable, in part, because that position is impermissibly based on the trial date (without any logical basis), and because the measuring date begins *after* NIC filed suit in this instant case.  NIC requires a more expansive dataset to accurately evaluate whether Defendants may have altered financial positions in response to potential liability in litigation.

Moreover, financial information has frequently been found relevant and discoverable in civil RICO cases.  *See, e.g.*, *State Farm Mut. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F.Supp.2d

NIC v. NTG | Response Re Defendants' January 12, 2017 Letter
January 18, 2017
Page 3 of 4

141, 156 (E.D.N.Y. 2005). The Central District has specifically found that tax returns on relevant and discoverable, despite identical objections to those raised by Defendants, in civil RICO cases. *See A. Farber and Partners, Inc. v. Garber, et al.*, 234 F.R.D. 186, 190-91 (C.D. Cal. 2006). Thus, Defendants' financial records for the entire period requested are relevant and discoverable as they relate to NIC's civil RICO claims.

Those points notwithstanding, NIC will agree to limit its requests to reach a compromise on this issue. NIC will agree to seek financial information from January 1, 2014 through the date of production (i.e., present day). That period reflects approximately three years of records. A three year timeframe is reasonable and has been found so by numerous district courts in California. *See, e.g., S. California Hous. Rights Ctr. v. Krug*, 2006 WL 4122148, at *2 (C.D. Cal. Sept. 5, 2006) (ordering production of three years of tax returns).

**Protective Order:**

The proposed protective order cannot be stringent to the point where NIC counsel cannot properly advise NIC concerning the nature and scope of potential recovery in the case. Defendants have provided no basis to designate financial information "attorneys' eyes only" in discovery. Financial information may be "confidential," but Courts ordinarily require a heightened substantive basis to shield information from parties in litigation. "Attorneys' Eyes Only" (AEO) designations could be appropriate where disclosure of financial information would lead to a competitive disadvantage between rival corporations. *See Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 610 (W.D. Wash. 2013) (AEO designation was appropriate because the parties would likely compete directly with one another following litigation); *see also Defazio v. Hollister, Inc.*, 2007 WL 2580633, at *1 (E.D. Cal. Sept. 5, 2007) (noting that the potential injury to plaintiffs business interests through provision of information to competitor formed a basis to create an AEO designation). Defendants have the burden of showing that "specific prejudice or harm will result if no protective order [with an AEO designation] is granted." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). Here there are no such concerns and, certainly, defendants have articulated none. NIC is not in competition with NTG. NIC has no common business interests. NIC is also bound under the existing protective order and may not disclose or disseminate confidential information received in discovery. There appears to be no legal basis to invoke AEO designations for defendants' financial information.

NIC is not ruling out the possibility that an "AEO" designation may be appropriate for certain, specific documentation exchanged in this case. But defendants must clearly articulate the legal basis for those designations with respect to specific documentation. NIC counsel should retain the ability to fully and frankly review information with its client in this case, particularly where that information is necessary for NIC to properly evaluate its case.

To the extent Defendants can articulate a reasonable basis for heightened protections, and provide sufficient language enabling NIC to properly review relevant information in this case, NIC will of course consider that proposal.

NIC v. NTG | Response Re Defendants' January 12, 2017 Letter
January 18, 2017
Page 4 of 4

**<u>Tax Returns:</u>**

The precedent cited by defendants does not create an absolute privilege or protected interest barring discovery of tax returns. Those documents can be the most reliable information relevant to net worth and financial status. Defendants have not supported the statement that "information needed to assess the NTG Defendants' net worth can be obtained without production of tax returns…" Consistent with the meet and confer process, Defendants are required to clearly define what documents they will be producing (or would produce), and when such production will occur. That specific information is necessary to evaluate whether tax returns are superfluous in response to NIC's requests.

**<u>Scope of Discovery Requests:</u>**

NIC's financial requests are adequate to span documents which may reveal defendants' financial holdings over the relevant period. NIC is not willing to reduce the scope of requests so that defendants may only produce signed statements under oath with valuations of assets, debts, and net worth. NIC is entitled to review the underlying data supported by reliable documentation. Absent the supporting documentation, affidavits that describe or memorialize documentary evidence are inadequate and insufficient in this case.

Please do not hesitate to contact us with any questions.

Sincerely,

/s/ *Peter A. Arhangelsky*
Peter A. Arhangelsky
Joshua Furman
Eric Awerbuch
*Counsel to Plaintiff Natural-Immunogenics Corp.*

EMORD & ASSOCIATES, P.C.
WASHINGTON, D.C. | VIRGINIA | ARIZONA

(202) 466-6937/FAX (202) 466-6938
WWW.EMORD.COM

Exhibits in Support of Jt. Stip. Re: Plaintiff's Motion to Compel Financial Documents
Page 81

# EXHIBIT J



**Joshua Furman <jfurman@emord.com>**

## 8:15-cv-02034 - Waiver of Service

**Scott Ferrell** <sferrell@trialnewport.com>                                    Mon, Dec 7, 2015 at 8:58 PM
To: Joshua Furman <jfurman@emord.com>, Ryan Ferrell <rferrell@trialnewport.com>
Cc: Jonathan Emord <jemord@emord.com>, Peter Arhangelsky <PArhangelsky@emord.com>, "aashish@desai-law.com" <aashish@desai-law.com>, Gillian Wade <gwade@milsteinadelman.com>

Mr. Furman,

In response to your below request, please be advised that:

1.  Aashish Desai, Esq. (copied here) will be representing Newport Trial Group, Ryan Ferrell, Scott Ferrell, Victoria Knowles, James Hardin, and Andrew Baslow.  Please direct any future correspondence and/or pleadings relating to those Defendants to his attention.

2.  We expect that Gillian Wade, Esq. (also copied here) will be representing all of the remaining Defendants except Andrew Nilon.  We are in the process of determining whether those Defendants will authorize her to accept service, and she will advise you.

3.  Please direct all future communication/pleadings to the above-referenced counsel, and have no further communication with me or any other represented parties.

4.  I expect that both Mr. Desai and Ms. Wade will be contacting you shortly to meet and confer regarding an anticipated Anti-SLAPP Motion in accordance with Local Rules 7-3 and 12(b). In the interim, we invite you to review the published opinion in *Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459 (2014) and dismiss the lawsuit before said motions are filed.

Regards,

## Scott J. Ferrell, Esq.

Exhibits in Support of Jt. Stip. Re: Plaintiff's Motion to Compel Financial Documents
Page 83

**Founding Partner**

*Newport Trial Group — A National Litigation Boutique*

sferrell@trialnewport.com

www.trialnewport.com

(949) 706-6464

---

**From:** Joshua Furman [mailto:jfurman@emord.com]
**Sent:** Monday, December 07, 2015 6:13 PM
**To:** Ryan Ferrell <rferrell@trialnewport.com>
**Cc:** Scott Ferrell <sferrell@trialnewport.com>; Jonathan Emord <jemord@emord.com>; Peter Arhangelsky <PArhangelsky@emord.com>
**Subject:** 8:15-cv-02034 - Waiver of Service

[Quoted text hidden]

Exhibits in Support of Jt. Stip. Re: Plaintiff's Motion to Compel Financial Documents
Page 84