Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street, 32nd Floor
Los Angeles, CA 90013
213-253-9776
SPECIAL MASTER

FILED
CLERK, U.S. DISTRICT COURT

05/09/17

CENTRAL DISTRICT OF CALIFORNIA
BY: _Karla Tunis_ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

NATURAL-IMMUNOGENICS CORP., a
Florida corporation,

     Plaintiff,

   v.

NEWPORT TRIAL GROUP, a California
corporation; SCOTT J. FERRELL, a California
resident; RYAN M. FERRELL, an Arizona
resident; VICTORIA C. KNOWLES, a
California resident; DAVID REID, a California
resident; ANDREW LEE BASLOW, a
California resident; ANDREW NILON, a
California resident; SAM PFLEG, a
California resident; MATTHEW DRONKERS,
a California resident; TAYLOR DEMULDER,
a Nevada resident; SAM SCHOONOVER,
a California resident; GIOVANNI SANDOVAL,
an Arizona resident; and DOES 1 through 10,
inclusive,

     Defendants.

Case No: 8: 15 CV-02034-JVS (JCGx)

(JAMS Ref. No: 1220055347)

**ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFF'S MOTION TO COMPEL FINANCIAL DOCUMENTS; AND GRANTING PLAINTIFF'S REQUEST FOR REASONABLE EXPENSES**

On April 5, 2017, Plaintiff Natural-Immunogenics Corp. ("NIC") filed a Notice of

Motion to Compel Production of Financial Records [Dkt. 277], Joint Stipulation ("Joint Stip.") [Dkt. 277-1], the supporting declaration of Joshua S. Furman with numerous exhibits [Dkt. 277-2-11] ("Furman Declaration" ("Decl.")), sealed Exhibit D [Dkt. 278], Plaintiff's Supplemental Memorandum ("Plaintiff's Supp. Memo.") [Dkt. 279], and the Supplemental Memorandum of Newport Trial Group ("NTG"), Scott J. Ferrell, Ryan M. Ferrell, Victoria C. Knowles, David Reid, and Andrew Lee Baslow (collectively, "NTG Defendants") ("Defendants' Supp. Memo."). [Dkt. 281].

Oral argument was held telephonically on May 8, 2017, before Hon. Rosalyn Chapman, Special Master.  Peter A. Arhangelsky and Joshua Furman, attorneys with the law firm Emord & Associates, appeared on behalf of Plaintiff NIC, Edward Susolik and David Darnell, partners with the law firm Callahan & Blaine APLC, appeared on behalf of NTG Defendants, and Brendan M. Ford, a partner with the law firm Ford & Diulio PC, appeared on behalf of other individual defendants who served as plaintiffs in litigation brought by NTG.

## I.

### Relevant Procedural History

This action commenced on December 7, 2015, when NIC filed its original complaint against Defendants. [Dkt. 1].  On May 10, 2016,  NIC filed its Second Amended Complaint for Damages and Injunctive Relief ("SAC") against defendants, raising claims for:  (1) malicious prosecution, against Defendants NTG, Scott J. Ferrell, Ryan M. Ferrell, David Reid, Victoria C. Knowles, Andrew Lee Baslow, Andrew Nilon and Giovanni Sandoval; (2) violation of Racketeering Influenced and Corrupt Organizations  Act (RICO), 18 U.S.C. §§ 1961, 1962c & 1964, by wire fraud, mail fraud, extortion, obstruction of justice, bribery and witness tampering,

against all defendants;[1] (3) conspiracy to violate RICO, 18 U.S.C. §§ 1961, 1962(d) & 1964(c), against all defendants; and unfair competition in violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., against all defendants.  [Dkt. 92].  Plaintiff alleges federal court subject matter jurisdiction on three grounds: under RICO, diversity jurisdiction, and supplemental jurisdiction "over all state claims…."  [Dkt. ¶¶ 15-17].

Plaintiff NIC seeks compensatory damages, punitive damages under California Civil Code section 3294, treble damages under RICO, injunctive relief, an accounting, attorney fees and costs, and other relief.  [Dkt. 92].  NIC represents that its claim for compensatory damages is "limited to the recovery of attorney fees and costs it spent in defending" *Andrew Nilon v. Natural-Immunogenics Corp.*, 12 CV-0930-LAB-BGSx (( S.D. Cal. 2012) (removed from San Diego County Superior Court)) (*"Nilon"*). [Dkt. 237].  In its Amended Initial Disclosures, NIC further represents that the total attorney fees and costs spent defending *Nilon* was $246,552.52. [Dkt. 258-1 at 39-40].

District Judge James V. Selna has described the gravamen of NIC's claims in the SAC as identifying two litigation schemes employed by defendants:  a false advertising scheme and a wiretapping scheme.  [Dkt. 157].  Judge Selna noted that the SAC identifies four lawsuits filed by defendants in connection with the false advertising scheme, including *Nilon,* and four lawsuits filed in connection with the wiretapping scheme.  Id.

On April 18, 2016, Magistrate Judge Jay C. Ghandi ordered adoption of the parties'

---

[1]  On November 14, 2016, Plaintiff NIC filed a Statement describing its RICO claims.  [Dkt. 201].

Stipulated Protective Order. [Dkt. 87].

On August 26, 2016, NTG Defendants and non-NTG Defendants filed their answers to the SAC.  [Dkt. 161, 162].  On September 16, 2016, NTG Defendants and non-NTG Defendants filed amended answers to the SAC and raised fourteen affirmative defenses. [Dkt. 173, 174].[2]

On April 10, 2017, Judge Selna denied defendants' motion for partial summary judgment on the cause of action for malicious prosecution.  [Dkt. 296].  He also denied Defendants' request to certify three issues for interlocutory appeal.  Id.

**II.**

**The First Set of Requests for Financial Documents**

On November 17, 2016, NIC served each of the NTG Defendants with a First Set of Requests for Production of Financial Documents ("First Set"), and NTG Defendants responded to the First Set on December 20, 2016.  Joint Stip. at 1:8, 15:8; Furman Decl. ¶ 10, Exh. C.  The First Set contains the following seven document requests:

> **Request No. 1** asks for "state and federal tax returns from 2012 to 2015 whether filed jointly or separately and include each of the quarterly filings for NTG from that time frame to the present."

---

[2]  On November 3, 2016, District Judge James V. Selna granted NIC's motion to strike the affirmative defenses of laches, statute of limitations, and privilege and denied the motion to strike all other affirmative defenses. [Dkt. 200].

**Request No. 2** asks for "all documents, receipts or vouchers sufficient to establish your earnings or reviews, including funds provided to YOU directly or indirectly by your employer or by a business or corporation in which you have any interest, including without limitation, child care reimbursement plans, wages, salaries, bonuses, stock options, commissions, earnings, income employment contract, pay raises, promotions, payroll deductions, other deductions of any kind, credit union accounts, pension plan, pension fund, retirement plan, retirement fund, stock plan and stock fund and other benefits or deductions of any kind which are, were previously, or which, may be in the future paid, available, accepted, rejected, credited, offered, withheld for any purpose by any individual agency department, company, entity, or otherwise, or to which you are, were or may become entitled in the future, at any time from January 1, 2012 to the present."

**Request No. 3** asks for "the last six months of bank statements for all checking and/or savings accounts, including credit union accounts, certificates of deposit, 401(k) accounts and IRA's maintained by YOU, individually and/or jointly with any other or others, or any other accounts over which you have had signature authority in any other capacity (regardless of whether or not the account or accounts have been closed) from January 2012 to present."

**Request No. 4** asks for "all stock certificates, bond certificates, mutual fund certificates, and any other evidence of ownership or any interest in any securities, investments, mutual funds, liquid asset funds, corporations, fund or trust fund

naming YOU individually and/or jointly with any other or others, as the owner of the same from January 1, 2012 to present."

**Request No. 5** asks for "all deeds, options, or contracts regarding real property YOU have an interest in all [sic] documents evidencing ownership of personal property individually valued in excess of $10,000."

**Request No. 6** asks for "any business or personal financial and/or other net worth statements, prepared by an accountant or any other person for YOU or for any business in which you have or had an interest from January 1, 2012 to the present."

**Request No. 7** asks for "all bills for rental for any and all safe deposit boxes maintained by YOU individually and/or jointly with any other or others from January 1, 2012 to the present."

Joint Stip. at 4-14; Furman Decl. ¶ 10, Exh. C.

NTG Defendants made almost identical objections to all of the requests: (1) "not relevant to the claims and defenses in this case and not proportional to the needs of this case"; (2) "invade taxpayer privilege and violate the financial privacy of each of the NTG Defendants, as well as their non-party spouses"; (3) violation of California privilege laws; (4) "unduly burdensome and harassing"; (5) exceeding the scope of Judge Selna's July 20, 2016 Order; and (6) premature at

this stage of the proceedings, especially when prior to the Court ruling on defendants' motion for summary judgment.  Furman Decl. ¶ 10, Exh. C; Joint Stip. at 4-14.

## III.

### The Discovery Dispute

NIC argues that NTG Defendants have improperly delayed responding to the First Set while awaiting the Court's ruling on their motion for partial summary judgment.  Joint Stip. at 2:1-4, 22-23.  In light of NTG Defendants' failure to produce a single document in response to the First Set, NIC should be awarded attorney fees for bringing the motion to compel. Id. at 1:17-21, 2:19-20.

To obtain an award of punitive damages on a claim for malicious prosecution under California law, evidence of each defendant's financial condition must be presented to the trier of fact. Id. at 1, 16:10-17:21.  Thus, NIC argues, it cannot be disputed that evidence of each defendant's financial conditions is highly relevant.  In fact, during the meet and confer process, NTG Defendants acknowledged the relevancy of the financial evidence.  *See* Furman Decl. ¶ 9, Exh.B.

NTG Defendants' objections to producing documents have no merit. Joint Stip. at 17-23.  Judge Selna's Order of July 20th, regarding the scope of discovery, expressly allows discovery related to the *Nilon* case.  Id. at 17:24-18:13.  The malicious prosecution cause of action, and the claim for punitive damages attached to that cause of action, relate directly to the *Nilon* case.  Thus, NTG Defendants' scope of discovery objection is frivolous.

California privilege is inapplicable to the production of tax returns in this action wherein the district court has supplemental jurisdiction over the malicious prosecution claim, rather than diversity jurisdiction. For this reason, the cases NTG Defendants rely on do not apply to our circumstances. Id. at 20-21. And Defendants cannot show the availability of alternative documentary sources of evidence to support the application of a qualified federal common law privilege. Id. at 1: 22-28; 18-21. Moreover, NTG Defendants may not refuse to produce responsive documents based on privacy grounds when there is a protective order. If Defendants believe the protective order needs additional terms, such as an attorney-eyes-only tier, they should have discussed this with counsel for NIC, as counsel offered, Furman Decl. ¶ 5, Exh. I, or moved the Court for an order to amend the protective order. Joint Stip. at 1:6, 18-19. They did neither.

Under Rule 34, NTG Defendants had an obligation to produce those documents not covered by their objections; they did not. Joint Stip. at 1-20. Generally, two or three years of financial documents are sufficient to establish a defendant's current financial condition; thus, November 2014 to the present is an applicable time period. Id. at 23-23. Nevertheless, NIC argues, six years of financial documents are relevant under RICO. Id. at 24. A broad time frame is essential in light of evidence showing, for example, that during the pendency of this case, Defendant Scott Ferrell may have fraudulently transferred assets into an irrevocable trust to avoid enforcement of a judgment against him. Id. at 24-25. Accordingly, financial records predating the filing of this action by at least two years are necessary. Id. at 25. As demonstrated by the Scott Ferrell evidence, uncertified financial summaries by Defendants are unreliable – if

not misleading.  Id.

In light of NTG Defendants' acknowledgment that it would not be unreasonable for NIC to request financial documents covering a two-year period, *see* Furman Decl. ¶ 9, Exh. B, there is no justification for Defendants not to produce a single document.  Joint Stip. at 26-27.  Such evidence is essential for evaluating the value of the case, to facilitate settlement, and to determine how NIC should direct its resources.  Id.  Thus, NIC's request attorney fees under Rule 37 for bringing the motion to compel should be granted.

Initially, NTG Defendants contend that, as the First Set "seeks highly-sensitive, confidential and personal financial information from Defendants[,]" the motion to compel should be stayed pending the Court ruling on the motion for summary judgment of the malicious prosecution claim.  Id. at 27-29.

Additionally, NTG Defendants assert that the First Set is overbroad and improper, invades their privacy rights, and is "unduly burdensome and harassing."  Id. at 29-37. Defendants' tax returns are absolutely privileged under California law, including Internal Revenue Code § 19282 and the California Constitution.  Id. at 31.  The tax returns are also protected from disclosure by federal law, which requires a showing of "compelling need" for the returns; NIC cannot make this showing.  Id. at 32.  Moreover, Defendants' privacy rights under federal law protect them from responding to irrelevant requests, such as Request No. 7 and parts of Request No. 2.  Id. 32-34.

The First Set is overbroad as to scope and time, seeking responsive documents covering a six year period.  Id. at 34-36.  Since only financial information going to "net worth" is relevant to a claim for punitive damages, the First Set is overbroad.  Id. at 35-37.  "An appropriate starting point would be a documented, reliable summary of NTG Defendants' net worth. Once that is provided, if Plaintiff has specific questions or needs additional items to verify or support that summary, then Plaintiff can request those or the parties can meet and confer in good faith regarding that production."  Id. at 36.  As due process requires that an award of punitive damages must have a reasonable relationship to compensatory damages, it should be sufficient for Defendants to merely show they have sufficient assets to comport with a single digit ratio to compensatory damages of $246,552.52.  Id. at 36-37.  Since RICO does not authorize punitive damages or financial discovery; thus, there is no basis for six years of financial records.  Id. at 35.

If the Court orders production of the highly sensitive financial records, the documents should be subject to an additional "attorney-eyes-only" protective order.  Id. at 37-38.  There is deep animosity between NIC and the NTG Defendants which justifies this limitation.  Id.

Finally, NIC's request for attorney fees should be denied because NTG Defendants' objections to the discovery are substantially justified.  Id. at 38-39.  And NIC unreasonably "rejected Defendants' reasonable offer to provide financial summaries, just as it rejected Defendants' request to briefly postpose this matter until after a decision on Defendants' motion for summary judgment."  Id.

## DISCUSSION

### IV.

The scope of discovery in the federal courts is governed by Rule 26(b)(1), which provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering six factors, including "whether the burden or expense of the proposed discovery outweighs its likely benefit."   Fed.R.Civ.P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable."  Id.

Rule 34 allows a party to seek documents or electronically stored information from opposing parties.   Fed.R.Civ.P. 34(a)(1).   Under Rule 34, "[a]n objection [to a request for documents] must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest." Fed.R.Civ.P. 34(b)(2)(C).

Generally, the purpose of discovery is to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble*, 358 U.S. 677, 682 (1958).  In other words, discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635-36 (C.D. Cal. 2005); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).  "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Duran v. Cisco Systems, Inc.*, 258 F.R.D.

375, 378 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005).).

In light of these principles, general or boilerplate objections are improper. *Jane Doe v. Archdiocese of Portland in Oregon*, 717 F. Supp.2d 1120, 1126 (D. Or. 2010); *Duran*, 258 F.R.D. at 379. Here, NTG Defendants' objections of "undue burdensome and harassing" are boilerplate objections which are improper and have no merit.

**V.**

Initially, NTG Defendants object that Judge Selna's July 20 Order does not allow discovery on punitive damages. There is no merit to this objection. Nothing in the July 20 Order precludes discovery related to punitive damages; the Order specifically allows discovery related to the *Nilon* action. As NIC's claim for punitive damages is attendant to its malicious prosecution cause of action, which arises from the *Nilon* case, discovery on punitive damages comes within the July 20 Order.

NTG Defendants also object to the timing of the financial discovery. First, they argue that the discovery should be stayed or held in abeyance pending the Court's ruling on the motion for partial summary judgment. This objection is now moot in light of Judge Selna's recent ruling. Second, they contend that the discovery is otherwise premature and should await a finding by the trier of fact to support punitive damages. Not so. "[T]he requirement that claimants establish a *prima facie* case applies to the *admissibility* of evidence about financial status, not its *discoverability*. The discoverability of information is governed by whether it would

be relevant, not by whether the information discovered would be admissible at trial." *CEH, Inc. v. FV SEAFARER*, 153 F.R.D. 491, 498-99 (D. R.I. 1994) (citations omitted); *see id.* at 498 ("When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information about the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages.").

It is not disputed that NIC's request for punitive damages against NTG Defendants arises from its claim for malicious prosecution.  [Dkt. 92 ¶¶ 333-34; Prayer ¶¶ B, J].   Information regarding the financial condition of each of the NTG Defendants is relevant to NIC's request for punitive damages.  *See, e.g., Adams v. Murakami*, 54 Cal. 2d 105, 111 (1991) ("The standard jury instruction on punitive damages  … expressly direct[s] the jury to consider the 'defendant's financial condition.'" (citation omitted)); *see also id*. at 109 (""[A]n award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition."); *Soto v. BorgWarner Morse TEC,* Inc., 239 Cal. App. 4th 165, 195 (2015) ("Evidence of a defendant's financial condition is a legal precondition to the award of punitive damages."). And it is fair to say that NTG Defendants do not really dispute the relevancy of NIC's requests for their financial information.  *See* Furman Decl. ¶ 9, Exh. B.

The party seeking an award of punitive damages has the burden to present evidence at trial of the defendant's financial condition.  *See Adams*, 54 Cal. 2d at 123 ("[A] plaintiff who seeks to recover punitive damages must bear the burden of establishing the defendant's financial condition.").  Clearly, NIC has the right to discover the wealth or financial condition of NTG and the other NTG Defendants.  *See, e.g., Bankhead v. ArvinMeritor, Inc.*, 205 Cal App. 4th 68, 79

13

(2012)(""[N]et worth is not the only measure of a defendant's wealth for punitive damages purposes that is recognized by the California courts.").

Nevertheless, NTG Defendants argue that Request Nos. 2, 3 and 7 seek irrelevant information or are overbroad and, thus, seek irrelevant information.  The Special Master agrees as to Request Nos. 2 and 7; but not Request No. 3.   Request No. 2 seeks a multitude of information, including several types of documents which are unrelated to Defendants' financial condition, i.e., "all documents, receipts or vouchers sufficient to establish … reviews," "child care reimbursement plans," "pay raises," and "promotions."  Similarly, the Special Master finds that Request No. 7 seeks documents unrelated to Defendants' financial condition.  Thus, Plaintiff's motion to compel responses to Requests No. 2 and 7 **is denied**.

Among other things, Request No. 3 asks NTG Defendants to produce statements from the last six months of all checking, savings, and pension accounts, as well as certificates of deposit.  Arguably each and every check may not be relevant to a defendant's financial condition; but many checks will be relevant, and overall the totality of the checks  will provide a picture of the defendant's wealth.  Among other things, these documents may also show investments by Defendants or transfers of assets.  Considering and weighing the factors set forth in Rule 26(b)(1), the Special Master finds that Request No. 3 is proportional to the needs of the case, and its likely benefit outweighs any burden on Defendants.  Thus, NTG Defendants' objection to Request No. 3 is overruled.

Request No. 1 seeks NTG Defendants' state and federal income tax returns.  As discussed

above, evidence of NTG Defendants' financial condition is relevant to NIC's malicious prosecution claim. And evidence of Defendants' financial condition also is relevant to NIC's RICO claims. *See, e.g., A.Farber and Partners, Inc.*, 234 F.R.D. F.R.D. 186, 191 (C.D. Cal. 2006) ; *State Farm Mut.. Auto. Insur. Co. v. Fayda*, 2015 WL 7871037 (S.D. N.Y. 2015); *Cox v. Sherman Capital LLC*, 2014 WL 7409730 (S.D. Ind. 2014).

NTG Defendants object to producing their state and federal tax returns, claiming the returns are privileged under California law and federal common law, and protected by their Constitutional right to privacy. In support of the privilege claim, Defendants rely on Federal Rule of Evidence 501, which was enacted by Congress in 1974. "The legislative history of Rule 501 does not shed much … light on the question" of whether federal common law or state law applies when "both federal and state claims are raised, and the information sought … apparently goes to both federal and state claims." *Perrigonon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458 (N.D. Cal. 1978).

Here, the district court has original jurisdiction over NIC's RICO claims and supplemental jurisdiction over the malicious prosecution claim, pursuant to 28 U.S.C. § 1367(a); diversity jurisdiction under 28 U.S.C. § 1332 is an alternative to federal question jurisdiction. In such cases, the Ninth Circuit holds: "Where there are federal question claims and pendant state law claims present, the federal law of privilege applies." *Agster v. Maricopa County*, 422 F.3d 836, 839-40 (9th Cir.), *cert. denied*, 546 U.S. 958 (2005) (citing Fed.R.Evid. 501; *Wm. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982).) Stated another way:

… Plaintiffs allege both federal and state law claims in their complaint.  The contested evidence … concerns all of these claims for relief – federal and state law claims alike.  Where, as here, the same evidence relates to both federal and state claims, 'we are not bound by [state] law' on privilege.  Rather federal law governs.

*Wilcox v. Arpaio*, 753 F.3d 872, 876-77 (9th Cir. 2014) (footnotes and citations omitted).

The Advisory Committee Notes to the 1974 enactment of Rule 501 agree:

Basically, [Rule 501] provides that in criminal and Federal question civil cases, federally evolved rules on privilege should apply since it is Federal policy which is being enforced.  [It is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case.]

(brackets in original).  Further, "[i]f the rule proposed here results in two conflicting bodies of privilege law applying to the same piece of evidence in the same case, it is contemplated that the rule favoring reception of the evidence should be applied."  Adv. Comm. Notes to 1974 Enactment.

The district court's exercise of supplemental jurisdiction over the malicious prosecution claim is secondary to the court's jurisdiction over the RICO claims.  Thus, federal common law

16

applies to any privilege raised relating to the malicious prosecution claim; not California law.[3] Under federal common law, "[t]ax returns and related documents 'do not enjoy an absolute privilege from discovery.'" *A.Farber and Partners, Inc. v. Garber*, 234 F.R.D. at 191 (quoting *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975).) Some courts order the production of tax returns after concluding that the returns are not protected by federal common law privilege, and the Special Master follows this approach as to NTG's tax return. Thus, NIC's motion to compel Defendant NTG to produce documents responsive to Request No. 1 **is granted**.

However, as to individuals, most "[c]ourts generally apply … 'a two-prong test to assure a balance between the liberal scope of discovery and the policy favoring the confidentiality of tax returns.'" *A.Farber and Partners, Inc.*, 234 F.R.D. at 191(citation omitted). "The party seeking production has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable." *Id.* (citations omitted). As discussed above, NIC has established the relevancy of the financial information; thus, the burden shifts to Defendants to show "other sources" for the information.

At oral argument, Defendants asserted that the financial information NIC seeks in

---

[3] The Special Master has considered *Eagle Precision Technologies, Inc. v. Eaton Leonard Robolix, Inc.*, 2005 WL 6453567 (S.D. Cal. 2005), which Defendants cited during oral argument and finds it has no precedential value. The decision was issued prior to the Ninth Circuit opinions in *Agster* and *Wilcox*. Apart from that, the decision is not persuasive; it has not been followed by other district courts. Other cases upon which NTG Defendants rely are inapposite, as the district courts in those cases exercised diversity jurisdiction over the state law claims, rather than supplemental jurisdiction.

Request Nos. 3-6 constitutes "other sources" of information in place of the tax returns.  That may be true, depending of course upon how *complete* Defendants' responses are to those requests.[4] Without reviewing Defendants' responses to those requests it is impossible to know whether the information provided will obviate the need for Defendants to produce their state and federal tax returns.  Nevertheless, in light of Request Nos. 3-6, the Special Master finds that, at this time, NIC has not shown a "compelling need" for Defendants' tax returns, and its motion to compel the individual Defendants to respond to Request No. 1 **is denied without prejudice** to renewal if the documents NTG Defendants produce in response to Request Nos. 3-6 are insufficient to show the financial condition of each of the individual Defendants.

Although there also is no federal common law privilege akin to the right of privacy, "[f]ederal courts ordinarily recognize a constitutionally based right of privacy that can be raised in response to discovery requests."  *Keith H. v. Long Beach Unified School Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005) (internal quotation marks and citation omitted); *A.Farber and Partners, Inc.*, 234 F.R.D. at 191.  "Resolution of a privacy objection …. requires a balancing of the need for the information sought against the privacy right asserted."  *Keith H.*, 228 F.R.D. at 657 (internal quotation marks and citation omitted).  In light of the Court's ruling on Request No. 1, and for the other reasons discussed above, NIC's need for financial information responsive to Request Nos. 3-6 is vital to its request for punitive damages; thus, NIC's motion to compel NTG defendants to respond to Request Nos. 3-6 **is granted**.

---

[4]  On the other hand, the state and federal tax returns may provide a comparative means to determine the completeness or accuracy of Defendants' responses to Request Nos. 3-6.

18

The Special Master finds that the protective order which exists is sufficient to protect Defendants' privacy rights.  *A.Farber and Partners, Inc.*, 234 F.R.D. at 191; *CEH, Inc.*, 153 F.R.D. at 499.  NTG Defendants have not presented any evidence showing good cause to add an attorney-eyes-only tier to the protective order, as NIC is not a business competitor of NTG Defendants; Defendants have not shown that disclosure of their financial information to NIC would cause them harm.  *Oakes*, 179 F.R.D. at 284-85; *CEH, Inc.*, 153 F.R.D. at 499.  As NTG Defendants presented only argument – and no evidence – in urging an attorney-eyes-only protective order, the Court's denial of their request is without prejudice to NTG Defendants moving for a protective order under Rule 26(c).

As drafted, the First Set asks Defendants to produce responsive documents dating from January 1, 2012 to the present.  NTG Defendants argue that "six years" is excessive.  Apart from Defendants' hyperbole, there is merit to Defendants' objection to the number of years the First Set covers.  The First Set's time period of five-plus years is over broad.  To some extent, NIC acknowledges this, stating it is willing to start the time period from November 2014, Joint Stip. at 23:27-24:1, which would narrow the time period covered by the discovery to two and a half years.  NIC argues that it is important for the time period to start prior to the filing of the instant action, as evidence shows Defendants may have transferred assets after the litigation commenced (as Defendant Scott Ferrell did, *see* Furman Decl. ¶¶ 12-15, Exhs. E-H).  NTG Defendants do not appear to object to the time period of November 2104 to the present. Joint Stip. at 35-36.  Thus, the Special Master sets this time period for documents responsive to the First Set.

**IV.**

The Special Master, exercising her discretion under Rule 37(a)(5)(C), has determined to grant NIC's request for attorney fees. NTG Defendants' objections were not substantially justified; they were justified only in part, as to Request Nos. 2 and 7. And under Rule 34, NTG Defendants should have produced some recent documents (for example, the past two years) in response to the requests to which they did have specific objections, such as Request Nos. 4-6. Yet, Defendants refused to do so, forcing NIC to bring the motion to compel.

Defendants' reasons for refusing to produce any documents in response to the First Set are specious. First, Defendants insisted, and continue to insist, that they should be able to submit "consolidated financial summaries" instead of producing documents. Defendants' Supp. Memo. at 3:26-28. However, there is no legal authority to support Defendants' position and the evidence regarding Defendant Scott Ferrell's financial statement demonstrates that a summary would be insufficient – if not misleading – to show each NTG Defendant's true financial condition. Second, Defendants improperly conditioned the production of any documents on an attorney-eyes-only protective order. Yet, Defendants did nothing to pursue the issuance of an amended protective order. Defendants' counsel failed to discuss a possible stipulation with Plaintiff's counsel and, alternatively, failed to file a motion to amend the protective order. In short, it appears that the objection of an attorney-eyes-only protective order was made merely to delay Defendants' response to the First Set.

For all these reasons, NIC shall be awarded its reasonable expenses for bringing the motion to compel and, pursuant to Rule 37(a)(5)(C), the Special Master sets the apportionment

of expenses at 75% in favor of NIC.

**ORDER**

1.  NIC's motion to compel Defendant NTG to respond to the First Set of Requests for the Production of Financial Documents **is granted, in part, and denied, in part**.  The motion is granted as to Request Nos. 1 and 3-6; and denied as to Request Nos. 2 and 7.  NTG shall respond to First Set, Request Nos. 1 and 3-6, no later than ten (10) days from the date of this Order.

2.  NIC's motion to compel Defendants Scott J. Ferrell, Ryan M. Ferrell, David Reid, Victoria C. Knowles, and Andrew Lee Baslow to respond to the First Set of Requests for the Production of Financial Documents **is granted, in part, and denied, in part**.  The motion is granted as to Request Nos. 3-6; denied without prejudice as to Request No. 1; and denied as to Request Nos. 2 and 7.  Defendants shall respond to First Set, Request Nos. 3-6, no later than ten (10) days from the date of this Order.

3.  NIC's request for reasonable expenses and attorney fees **is granted**, with the award apportioned 75% in favor of NIC, pursuant to Rule 37(a)(5)(C).

No later than ten (10) calendar days from the date of this Order, NIC shall file declarations supporting its request for reasonable expenses and attorney fees related to its motion to compel;

NTG Defendants may file an opposition, no later than ten (10) calendar days from the date NIC files its declarations; and

NIC may file a reply, no later than five (5) calendar days from the date the opposition is

filed.

The Special Master will set a date for telephonic oral argument on the amount of the attorney fees, after consulting with the parties.

4.  The Case Manager shall serve this Order on the parties and the district court.

May 9, 2017                                   By: _Rosalyn M Chapman_____
1220053347.11                                Hon. Rosalyn Chapman (Ret.)
                                             Special Master