**CALLAHAN & BLAINE, APLC**
Edward Susolik (SBN 151081)
Esusolik@callahan-law.com
David J. Darnell (SBN 210166)
Ddarnell@callahan-law.com
James M. Sabovich (SBN 218488)
Jsabovich@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Defendants NEWPORT TRIAL GROUP,
SCOTT J. FERRELL, RYAN M. FERRELL, VICTORIA
C. KNOWLES, DAVID REID and ANDREW LEE
BASLOW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

NATURAL IMMUNOGENICS
CORP., a Florida corporation ,

Plaintiff,

v.

NEWPORT TRIAL GROUP, et al.,

Defendants.

**CASE NO.  8:15-cv-02034-JVS-JCG**

**DEFENDANTS NEWPORT TRIAL GROUP, SCOTT J. FERRELL, RYAN M. FERRELL, VICTORIA C. KNOWLES, DAVID REID AND ANDREW LEE BASLOW'S MOTION FOR SANCTIONS**

Hearing Date:     June 12, 2017
Hearing Time:     1:30 p.m.
Judge:               Hon. James V. Selna

Concurrently-Filed Documents:
- Request for Judicial Notice
- Declaration of James M. Sabovich
- [Proposed] Order

NOTICE OF MOTION FOR SANCTIONS

PLEASE TAKE NOTICE that on June 12, 2017, at 1:30 p.m., Defendants Newport Trial Group, Scott Ferrell, Ryan Ferrell, Victoria Knowles, David Reid and Andrew Baslow (the "NTG Defendants") will and hereby do move this Court for sanctions against Plaintiff Natural Immunogenics Corp. ("NIC") and Plaintiff's counsel Emord & Associates ("Emord"). This Motion is based on the applicable Rules of Professional Conduct and the inherent powers of this Court to regulate the conduct of parties and their counsel.

As discussed below, the evidence shows NIC and Emord through their investigator, Clark Baker, used a fake identity and created a derogatory website to target and demand that Defendant Andrew Nilon disclose attorney-client communications and authorize a false statement that could be used as evidence against him and the NTG Defendants. The NTG Defendants recently discovered that the conduct exhibited in this case is part of Baker's business model that he markets to potential clients. On January 18, 2017, the Chief Bankruptcy Judge for the United States Bankruptcy Court for the Central District of California asked the United States Attorney's office to conduct a criminal investigation into Baker because he "may well have engaged in conduct that amounts to witness tampering within the meaning of 18 U.S.C. § 1512(b)."

Baker's conduct violated California's Rules of Professional Conduct, the American Bar Association Model Rules of Professional Conduct and Arizona's Rules of Professional Conduct. Because NIC and Emord were aware of, encouraged, authorized, relied on and ratified Baker's conduct, they are responsible for his conduct. Baker (and NIC and Emord's) conduct undermines the integrity of the judicial process and has provided NIC with an ill-gotten advantage. To right the wrongs created by Baker's litigation tactics and to prevent further benefit from his wrongful conduct, the NTG Defendants respectfully request that the following sanctions be issued:

1. All "evidence" stemming from Baker's misconduct should

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 1 -

be excluded;

2.    Baker should be precluded from testifying in this litigation, and all prior declarations from Baker should be stricken from this action; and

3.    Emord should be disqualified from serving as counsel in this action as a sanction for condoning Baker's conduct.

The NTG Defendants base this motion on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice (with attached exhibits), the accompanying Declaration of James M. Sabovich, the pleadings, papers, and other matters on file in this action, such oral argument as the Court may permit, and any other matters properly before the Court.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 5, 2017.

Dated:  May 15, 2017

**CALLAHAN & BLAINE, APLC**

By:   */s/ James M. Sabovich*
Edward Susolik
David J. Darnell
James M. Sabovich
Attorneys for Defendants NEWPORT TRIAL GROUP, SCOTT J. FERRELL, RYAN M. FERRELL, VICTORIA C. KNOWLES, DAVID REID and ANDREW LEE BASLOW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 2 -

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS .......................................................................... 3

    A.    Baker Starts Creating And Publishing Derogatory Websites To Target His Adversaries ........................................................................ 3

    B.    Baker, NIC and Emord Agree to Target Andrew Nilon by Publishing a Derogatory Website. ......................................................... 6

    C.    Baker Uses the Derogatory Website, a False Identity and False Representations to Coerce False Concessions from Nilon. ................. 7

    D.    Because of Baker's Egregious Conduct in Threatening and Leveraging Witnesses, Another Court Has Asked that a Criminal Investigation for "Witness Tampering" Be Conducted. ....................... 9

III.  ARGUMENT ............................................................................................ 11

    A.    Both California and ABA Rules of Professional Conduct Apply To Emord and Prohibit the Derogatory Website and Baker's Conversations with Andrew Nilon ......................................................... 12

        1.    *Baker, NIC and Emord Violated Ethical Rules By Engaging in Pretexting.* ............................................................. 13

        2.    *Baker, NIC and Emord Violated Ethical Rules by Deceiving Nilon Regarding Their Conflict of Interest.* ........... 15

        3.    *Baker, NIC and Emord Violated Ethical Rules by Engaging in Witness Tampering.* .............................................. 17

    B.    Significant Sanctions Should Be Imposed Against NIC and Emord. ................................................................................................... 19

        1.    *All Testimony and Evidence from Baker Should Be Excluded and All Previously-Filed Declarations and Arguments Based on Baker's Conduct Should be Stricken.* ...... 20

        2.    *The Conduct of NIC, Baker and Emord (Taken Together) Justifies Disqualification of Emord.* ........................................ 21

        3.    *Emord Also Violated the Prohibition Against Threatening Disciplinary Sanctions.* ............................................................ 23

IV.   CONCLUSION ........................................................................................ 24

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l Co.*,
913 F.Supp.2d 900 (C.D. Cal. 2012) ........................................................................ 21

*B.K.B. v. Maui Police Dep't*,
276 F.3d 1091 (9th Cir. 2002) ................................................................................. 21

*In re County of Los Angeles*,
223 F.3d 990 (9th Cir. 2000) .................................................................................. 21

*Crenshaw v. Mony Life Ins. Co.*,
318 F.Supp.2d 1015 (S.D. Cal. 2004) ................................................................. 21, 22

Erickson v. Newmar Corp.,
87 F.3d 298 (9th Cir. 1996) .................................................................................. 11, 18

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ............................................................................... 20, 21

*Gas-A-Tron of Ariz. v. Union Oil Co.*,
534 F.2d 1322 (9th Cir. 1976) ............................................................................. 11, 21

*Hitachi, Ltd. v. Tatung Co.*,
419 F.Supp.2d 1158 (N.D. Cal. 2006) ..................................................................... 21

*Huston v. Imperial Credit Commer. Mortg. Inv. Corp.*,
179 F. Supp. 2d 1157 (C.D. Cal. 2001) .................................................................. 23

*Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters.*,
2009 U.S. Dist. LEXIS 132872 (C.D. Cal. Dec. 14, 2009) .................................... 13

*Lopez v. Banuelos*,
2013 U.S. Dist. LEXIS 127656 (E.D. Cal. Sept. 5, 2013) ..................................... 24

*Miller v. City of L.A.*,
661 F.3d 1024 (9th Cir. 2011) ................................................................................. 21

*O.A. Ventures, LLC v. Stoffal*,
2011 U.S. Dist. LEXIS 150337 (C.D. Cal. Oct. 25, 2011) .................................... 12

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- ii -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Ramirez v. T&H Lemont, Inc.*,
2016 U.S. App. LEXIS 23404 (7th Cir. 2016)................................................18, 20

*Roadway Exp., Inc. v. Piper*,
447 U.S. 752 (1980) ...............................................................................................20

*Stanley v. Wong*,
2006 U.S. Dist. LEXIS 35273 (E.D. Cal. May 31, 2006)..............................17, 18

*Terrebonne, Ltd. v. Murray*,
1 F. Supp. 2d 1050 (E.D. Cal. 1998) ..............................................................22, 23

*Trust Corp. of Montana v. Piper Aircraft Corp.*,
701 F.2d 85 (9th Cir. 1983) ...................................................................................11

*United States v. Cruzado-Laureano*,
404 F.3d 470 (1st Cir. 2005) ..................................................................................18

*United States v. Khatami*,
280 F.3d 907 (9th Cir. 2002).................................................................................18

**California Cases**

*Clark v. Superior Court*,
196 Cal. App. 4th 37 (2011)...................................................................................23

*In the Matter of Dale*,
4 Cal. State Bar Ct. Rptr. 798 (Review Dept. 2005)......................................16, 17

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
20 Cal.4th 1135 (1999)...........................................................................................21

*People v. Choynski*,
95 Cal. 640 (1892)..................................................................................................19

*People v. Donaldson*,
93 Cal. App. 4th 916 (2001)...................................................................................12

*Rico v. Mitsubishi Motors Corp.*,
42 Cal. 4th 807 (2007)............................................................................................23

*Segretti v. State Bar*,
15 Cal.3d 878 (1976)..............................................................................................13

MOTION FOR SANCTIONS

**Federal Statutes**

18 U.S.C. § 1512............................................................................................................ 1, 10, 17

**California Statutes**

Cal. Bus. & Prof. Code § 6068(d) ............................................................................... 13

Cal. Bus. & Prof. Code § 7538(a)(2)............................................................................ 15

Cal. Bus. & Prof. Code § 6106 ............................................................................... 13, 16

California Code of Civil Procedure § 425.16(c)(1)......................................................... 6

**Other State Statutes**

Ariz. Rev. Stat. § 13-2921(A)(1) and (E).................................................................... 12

**Other Authorities**

CACI 3710..................................................................................................................... 19

California Rules of Professional Conduct 1-200.......................................................... 12

California Rule of Professional Conduct 3-100 ........................................................... 13

California Rule of Professional Conduct, Rule 5-100.................................... 19, 23, 24

L.R. 83-3.1.2................................................................................................................. 12

Merriam-Webster Online Dictionary. 2017. http://www.merriam-
    webster.com (10 Mar. 2017) ................................................................................ 13

Model Rule 4.1 ............................................................................................................. 13

Model Rule 4.3 ..................................................................................................15, 16, 17

Model Rule 5.3(c)............................................................................................. 12, 14, 15

Model Rule 8.4(c)............................................................................................. 13, 14, 15

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Clark Baker is Plaintiff NIC's private investigator and star witness in this litigation.  But Baker's star witness status exists only because of the illegal and morally-reprehensible conduct he engaged in, specifically the creation of a derogatory website and use of a false identify to target and demand that Defendant Andrew Nilon disclose attorney-client communications and authorize a false statement that could be used as evidence against him and the NTG Defendants.  This conduct was unlawful and warrants sanctions, which is what the Chief Judge of the United States Bankruptcy Court for the Central District of California did when it discovered Baker had tampered with witness testimony.  (*See* Exhibit 1 to the concurrently-filed Request for Judicial Notice ("RJN").)  In fact, as a result of Baker's conduct in that case (which is less egregious than Baker's conduct toward Nilon), the Chief Judge recently asked the United States Attorney for the Central District of California to conduct a criminal investigation because the Chief Justice believed Baker "may well have engaged in conduct that amounts to witness tampering within the meaning of 18 U.S.C. § 1512(b)." (*See* Exh. 2 to the RJN.)

Although Baker, NIC and NIC's counsel (who authorized and ratified Baker's conduct) deny any wrongdoing or witness tampering, their denials should be disregarded because the evidence demonstrates their actions were intentional and premeditated.  As discussed below, Baker (as a result of his prior success using derogatory websites) decided to market himself to prospective clients as someone who could create and publish derogatory websites that would be harmful to his clients' adversaries.  When NIC contacted Baker for his services, NIC informed Baker during their first call that Nilon's company (Electric Family, LLC) had gained traction and would be a pressure point for Nilon.  At this time, Nilon was not a party to the class action lawsuit against NIC.  On behalf of NIC, Baker created the website www.ElectricFamily*Scam*.com.  To avoid having his relationship to the website

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 1 -

detected, Baker published the website through an Internet Service Provider in Amsterdam and asked his friend in Australia to use his name to register the website.

On February 5, 2015 (six months after Nilon had removed himself from the class action against NIC), Baker and NIC published the ElectricFamily*Scam* website. On February 10, 2015, Emord conducted an "[a]nalysis and review of [the] Unofficial Electric Family Website," which caused Baker to make further "improvements" to the website. Although the underlying action was dismissed on May 22, 2015, Baker, NIC and Emord persisted with their publication of the ElectricFamily*Scam* website.

In August 2015, as hoped, Nilon contacted the website administrator who immediately deactivated the website as a result of a conversation that "lasted between 2 to 3 minutes." However, Baker then called Nilon, using a false identity, and informed him the derogatory website would be republished if he did not disclose attorney-client communications and provide a false statement that could be used as evidence against NTG (and others). Baker was successful. On August 25, 2015, Baker and NIC had a conference call with Emord where Baker informed Emord of the improperly-obtained and false concessions from Nilon. As evidence that this "fruit of the poisonous tree" was the foundation for this case, Emord agreed to pursue the claims asserted in this case and sent NIC a retainer agreement the very next day.

The ElectricFamily*Scam* website was derogatory and published, at minimum, with the intent to harm Andrew Nilon's (and others) reputation and business. NIC paid for and assisted Baker with this task. NIC's counsel, Emord & Associates, reviewed and also ratified Baker/NIC's publication of the derogatory website by (1) failing to take action to prevent or stop Baker and NIC's conduct; and (2) using the "fruit of the poisonous tree" evidence that Baker and NIC wrongfully obtained. As discussed below, courts throughout the country have found conduct such as what occurred here to be "troubling," "disgraceful," and "egregious," and have sanctioned

attorneys for their involvement. To correct the wrongs that were done, the NTG Defendants respectfully request the following sanctions:

1. All "evidence" stemming from Baker's misconduct should be excluded;

2. Baker should be precluded from testifying in this litigation, and all prior declarations from Baker should be stricken from this action; and

3. Emord should be disqualified from serving as counsel in this action as a sanction for condoning Baker's conduct.

## II. STATEMENT OF FACTS

### A. Baker Starts Creating And Publishing Derogatory Websites To Target His Adversaries.

In 2008, Baker (a former member of the Los Angeles Police Department with no medical background) was involved with Semmelweis Society International ("SSI"), an organization whose goal is "to improve the quality of medical care . . . by assisting physicians who have been subjected to malicious and improper (sham) peer review." (*See* Exh. A (SSI Bylaws signed by Baker) and Exh. B (Baker Deposition at 41:9-13, 44:1-8) to the Declaration of James M. Sabovich ("Sabovich Decl.").) However, Baker began to disagree with certain physician members regarding whether HIV leads to AIDS, which apparently led him to threaten and intimidate physicians who encourage HIV-positive patients to take medication.[1] As a result of his conduct, eleven members of SSI voted to impeach and remove Baker from his position with SSI. (*See* Exh. C (Aug. 6, 2008 email) to Sabo Decl.) This set Baker on a path that led him to the conduct at issue in this motion – the creation and publication of derogatory websites to target adversaries.

---

[1] It appears Baker believes the medications prescribed to HIV users are the cause of AIDS.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MOTION FOR SANCTIONS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

For example, Dr. Lokesh Vuyyuru initiated the impeachment and removal of Baker from SSI.  (*See* Exh. C.)  Baker responded by creating and publishing a derogatory website about Dr. Vuyyuru: http://lokeshvuyyurumd.com.[2]  (*See* Exh. D to the Sabovich Decl.)  There is no doubt this website belongs to Baker because he listed it as an asset in his Chapter 7 Bankruptcy filing.  (*See* Exh. 4 (Summary of Schedules at pp. 5, 7) to the RJN.)  Like Dr. Vuyyuru, Dr. James Murtaugh signed off on the impeachment and removal.  In response, Baker created and published a derogatory website about Dr. Murtaugh.  (*See id*.; *see also* Exh. E to Sabovich Decl.)  Similarly, when Dr. Blake Moore and Kevin Kuritzky (who signed the impeachment) and Ralph Bard contradicted Baker, Baker created and published derogatory websites about them.  (*See* Exhs. C and F to the Sabovich Decl.)

As discussed in Baker's bankruptcy proceeding, David Bender (formerly Kevin Kuritzky) was also one of the many targets of Baker's derogatory website practice.  (*See* Exh. 2 at p.3 to the RJN; *see also* Exh. 4 (Summary of Schedules at pp. 5, 7 listing www.davidbender.net).)  As a result of the derogatory website targeting him, Bender agreed to sign false declarations and testify falsely at deposition in order to have Baker remove the derogatory content from the Internet.  (*See* Exh. 2 to the RJN.)  After conceding to Baker's demand, he sent Baker the following email:

> [A]s a reminder – if you could please remove Bender from the stuff or change it to Kuritzky on the jim murtagh page and blur the images on the sites, I'd appreciate it.  Especially when interviewing for these jobs starting in the next couple of weeks.

(*See* Exh. G to the Sabovich Decl.)

The fact that Baker has a practice of creating and publishing derogatory websites about his adversaries is undisputed.  The fact that his goal is to harm his

---

[2] As of the date of this filing, this website was active.

adversaries is indisputable. For example, in reference to the website about Dr. Murtaugh, Baker stated "I suspect that website has delivered him to the cul-de-sac of his career. Let's hope Texas [referring to a complaint Baker had filed against Dr. Murtaugh with the Texas Medical Board] impounds it." (*See* Exh. 5 (Oct. 30, 2013 email) to the Sabovich Decl.)

In 2013, Baker decided he could capitalize on his experience creating derogatory websites targeted at adversaries. On May 10, 2013, Baker discussed this idea in an email:

> [Dr. Murtaugh's] website is a good model for what I'd like to offer to future clients . . . Nothing prevents me from sub-contracting the work to websites hosted in Amsterdam, Aruba, Kenya and the Ukraine if we're concerned about lawsuits or retaliation.

(*See* Exh. 3 to the RJN.) Baker's derogatory websites share certain similarities, such as a statement that the "purpose is not to defame." (*See* Exhs. D and E (Vuyyuru and Murtaugh websites).) But the website then seeks to persuade the reader that the target has engaged in unethical conduct.

Baker (as a former LAPD officer) is familiar with the judicial system and knows significant time, energy and resources would be required to stop his conduct. One of Baker's targets, Dr. Murtaugh, has made such efforts. Dr. Murtaugh filed a Complaint with the World Intellectual Property Organization regarding Baker's ownership and use of www.jamesmurtaghmd.com to make derogatory statements about Dr. Murtaugh. (*See* Exh. 6 to the RJN.) As a result of that Complaint, Baker was forced to turn the domain name over to Dr. Murtaugh. (*See* Exh. 7 to the RJN.) Dr. Murtaugh also filed a lawsuit against Baker in the Los Angeles Superior Court. (*See* Exh. 8 to the RJN.) Dr. Murtaugh prevailed on Baker's anti-SLAPP motion and obtained a $60,000 award for attorney's fees because the Court found Baker's

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MOTION FOR SANCTIONS

motion to be "frivolous."[3] (*See* Exh. 9 to the RJN.)

In an attempt to discharge the $60,000 owed to Dr. Murtaugh and prevent Dr. Murtaugh's lawsuit from going forward, Baker voluntarily filed for bankruptcy on June 29, 2015. (*See* Exh. 4 to the RJN.) Dr. Murtaugh then filed an adversarial proceeding to prevent Baker from discharging his liability (*see* Exh. 10 to the RJN), which led to the NTG Defendants uncovering Baker's practice of publishing derogatory websites, marketing that service to clients, and the Chief Judge of the United States Bankruptcy Court for the Central District of California's decision to ask the United States Attorney's office to conduct a criminal investigation into whether Baker had engaged in witness tampering. (*See* Exh. 2 to the RJN.)

### B. Baker, NIC and Emord Agree to Target Andrew Nilon by Publishing a Derogatory Website.

There is no doubt that Baker engaged in the same extortionist conduct with Defendant Andrew Nilon. In November 2014, NIC contacted Baker to investigate Nilon, who was a former class representative in the lawsuit against NIC. (*See* Exh. 11 (Baker Decl. ¶ 4) to the RJN.) In the initial call with Baker, NIC identified Nilon's clothing and apparel business, Electric Family LLC, as a pressure point that "had established itself and started to gain momentum in Northern California." (*Id.*) This was an obvious leverage point because Nilon was a "financially-stressed college graduate." (*Id*. ¶ 7.) Consistent with Baker's advertisement, Baker executed a scheme to blackmail Nilon by publishing a derogatory website targeting Nilon's newly-formed business, Electric Family. NIC and Baker targeted the Electric Family business by creating and publishing the ElectricFamily*Scam* website. (*Id*. ¶¶ 8-9.)

On February 3, 2015, Baker decided to export the website to servers in

---

[3] Pursuant to California Code of Civil Procedure § 425.16(c)(1), the Court necessarily found Baker's motion was "frivolous" or "solely intended to cause unnecessary delay."

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 6 -

Amsterdam and asked his friend in Australia, John McNair, to register the domain name for the website. (*Id.*) On February 5, 2015, the ElectricFamily*Scam* website was published. (*Id.*) At the time the website was published, NIC had already retained Emord because its attorney, Carlos Negrete, had stopped communicating with NIC. (*See* Exhs. 12 and 13 (Dkt 89 and 90-1 at 5:18-19) to the RJN; *see also* Exh. H to the Sabovich Decl.) On February 10, 2015, five days after the ElectricFamily*Scam* website was published, Emord conducted an "[a]nalysis and review of [the] Unofficial Electric Family Website."[4] (*See* Exh. H to the Sabovich Decl.) Baker's invoice reflects that the same day Emord conduct its "analysis and review" and "draft[ed a] response concerning same," Baker spent four (4) hours "work[ing] on the website as per clients request." (*See id*; *see also* Exh. I, p.1 to the Sabovich Decl.) Baker's invoice makes clear that he treated Emord as his "client." (*Id.*; *see also id.* at Baker_0000514 (referring to emails and phone call with clients (Peter [Arhangelsky]). Likewise, Emord's bills show that Baker worked at their direction.[5]

## C. **Baker Uses the Derogatory Website, a False Identity and False Representations to Coerce False Concessions from Nilon.**

On August 15, 2015, Nilon contacted John McNair in Australia regarding the ElectricFamily*Scam* website. (*See* Exh. 11 at ¶ 12 to the RJN.) Nilon told McNair that "he was afraid that his customers would see the website and that he would be

---

[4] Baker confirmed at deposition that "unofficial" is the term that he used to describe his other derogatory websites. (*See* Exh. B at 155:24-156:2 to the Sabovich Decl.)

[5] *See, e.g.*, Exh. J (March 11, 2015 – "Called Clark Baker to discuss findings RE Saxon and request [redacted]"), (March 13, 2015 – "requested investigation by Clark Baker"), (March 27, 2015 – "Called Clark Baker to . . . request [redacted]"), (April 22, 2015 – "requested "generation of report for use in undisputed statement of facts"); (April 28, 2015 – "Called Clark Baker to obtain hard copies of Sandoval Criminal Files"), (June 19, 2015 – "E-mailed Clark Baker regarding Motion for Sanctions supporting docs"), to the Sabovich Decl.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MOTION FOR SANCTIONS

humiliated and persecuted by his customers." (*See* Exh. 14 (McNair Decl. ¶ 8) to the RJN.)  McNair testified that his "call with Nilon lasted between 2 to 3 minutes" and, as a result of the call, he agreed to deactivate the website. (*See id.* ¶ 9.)

Baker then called Nilon the next day, on August 16, 2015, falsely identifying himself as AJ Lyons, "McNair's associate," and claiming that he lived in Vancouver. (*See* Exh. 11 (Baker Decl. ¶ 13).)  On the same day that he called Nilon, Baker sent an email to Emord with the subject, "Electric Family… Nilon case." (*See* Exh. K at 36 (Baker's Privilege Log "Baker_Rev_0000058"), to the Sabovich Decl.)

During the call with Nilon, Baker threatened that "the website would be put back up if [Nilon] did not cooperate with [Baker/AJ Lyons], but it would stay down if [Nilon] told him what he wanted to hear about Newport Trial Group." (*See* Exh. 15 at ¶ 22 to the RJN.)  Baker admitted that he "told Nilon . . . that ***revealing the facts about his participation*** was important." (*See* Exh. 11 at ¶ 14 (emphasis added) to the RJN.)  In other words, Baker (as an agent of NIC and Emord) pressured Nilon to disclose privileged attorney-client communications. Moreover, Baker/AJ Lyon repeatedly assured Nilon that Nilon was not the target of AJ Lyon's boss.  "I am not interested in your actions - I have no interest in defaming you or damaging your career (or your associates), ***I'm most interested in the conduct of your attorneys***." (*See* Exh. 15 (emphasis added); *see also* Exh. 11 at ¶ 19) ("I am interested in NTG's conduct and not yours, your friends, or your company").)

On August 24, 2015, Baker used his fake identity and fake email address to send Nilon a draft declaration. (Exh. 15.)  Nilon responded that he was "going to speak with [his] attorney just to get advice first before signing.  I'm sure you can understand that." (*Id.*)  The next day, August 25, 2016, after Nilon clearly stated his plan to speak to an attorney, NIC sent an email to Emord and Baker asking if they could "all hop on a conference call this afternoon to talk about the declaration and strategy?" (*See* Exh. L to the Sabovich Decl.)  The call was scheduled for 1:30pm

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MOTION FOR SANCTIONS

and Emord circulated a conference call number. (*See* Exh. M to the Sabovich Decl.) Thus, the evidence shows that Emord participated in a call with Baker on August 25, 2015, to talk "about the [Nilon] declaration and strategy" going forward. (*See id.*) Baker's rendition of the "evidence" he allegedly obtained from Nilon was significant because, the next day, Emord sent NIC a new retainer agreement stating it would pursue this lawsuit against the NTG Defendants. (*See* Exh. N to the Sabovich Decl.)

Following the strategy call with Emord, Baker/AJ Lyon sent a threatening email to Nilon knowing that Nilon was seeking legal counsel:

> I will let them know that you won't have counsel before Monday. I recommend that ***we get a declaration signed and to them today. If you drag it on they might misinterpret your delays***.

(*See* Exh. 15 at 48 (emphasis added) to the Sabovich Decl.)

Ultimately, Nilon refused to sign the declaration because it "required [him] to make statements under penalty of perjury which were untrue." (*Id.* ¶ 25.) The only reason Nilon did not immediately reject the declaration Baker drafted and had pushed on him was that "Baker was damaging [his] business through a defamatory and abusive website www.electricfamilyscam.com." (*Id.*, ¶¶ 22-23.)

Although Baker was unable to get the signed declaration he hoped for when he spoke to Emord and NIC on August 25, 2015, Emord continues to use Baker's conduct, his declaration and his emails with Nilon as the foundation for the claims in this lawsuit. (*See, e.g.*, Exh. 11; *see also* Dkt. Nos. 247-2 and 291-6.)

**D. Because of Baker's Egregious Conduct in Threatening and Leveraging Witnesses, Another Court Has Asked that a Criminal Investigation for "Witness Tampering" Be Conducted.**

Coercing false declarations from witnesses by posting derogatory information about them is not new for Baker. The case of *Murtagh, M.D. v. Baker*, Adv. Proc.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MOTION FOR SANCTIONS

No. 2:15-ap-01535-BB, demonstrates that Baker has been doing this for years. *Murtagh v. Baker* involved allegations that Baker had perpetrated cyber stalking, hacking, threats, harassment, advocating violence and lynching, targeting of employment, taunts encouraging suicide, larceny, embezzlement, failure to pay sanctions, and other actions toward Dr. Murtagh. (Dkt. 258-5 at 80-85.) One of the witnesses in that case, David Bender (formerly known as Kevin Kuritzky) had signed a declaration and provided deposition testimony against Murtagh. (*See* Exh. 2 to the RJN.) But when Bender was later interviewed, "he reported that he had been 'totally pressured' and 'extorted' by Baker" and was "afraid to retract his earlier, false testimony for fear that Baker [would] reactivate the damaging and embarrassing content . . . that Baker had previously posted on the internet." *Id.* at 1-2; *see also* Exh. 16 to the RJN (email from Baker to Bender stating "Your whiney voice is annoying. My daughter never sounded that pathetic . . . We'll have you sign an affidavit and I'll indemnify you. Doesn't that sound easy? As long as you're willing to testify as a witness against Murtagh and his friends, I'll be happy to set you free.").) In a call to the Court's law clerk, Bender explained that he "would not be appearing for his [continued] deposition [because] he was afraid of Baker and what Baker had threatened to do to him if he gave truthful testimony at the continued deposition." (*See* Exh. 2 to the RJN.)

In addition to precluding Baker from using Bender's testimony, the Court decided "further investigation [wa]s warranted into the manner in which Baker ha[d] behaved with regard to Mr. Bender." (*See id.*) Specifically, it "seem[ed] likely" to the Court that if what "Mr. Bender ha[d] told [the Court's law clerk] [were] true, Mr. Baker may well have engaged in conduct that amounts to witness tampering within the meaning of 18 U.S.C. § 1512(b)." (*Id.*)

The conduct in that case is strikingly similar to Baker's conduct with Nilon, and shows Baker's *modus operandi* for witness tampering. He identifies his adversary's vulnerability, then establishes a derogatory website targeting that

- 10 -

MOTION FOR SANCTIONS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

vulnerability. In each instance the adversary made contact with Baker in order to have the damaging Internet content removed, and each time Baker made removal or continued removal contingent on the adversary signing a declaration that Baker prepared. (Dkt. 285-2 at 6 ("Baker had threatened him that with a flick of a switch he could and would reactivate the damaging and embarrassing internet content about him."); Exh. 15 at ¶ 22 ("Mr. Baker told me the website would be put back up if I did not cooperate with him").) Baker obviously denies making explicit threats or offering a *quid pro quo* for removing the derogatory websites (although Nilon and Bender testified that is exactly what Baker did). Instead, Baker claims he discussed the importance of "contrition" and Bender and Nilon made voluntarily confessions. (*Compare* Exh. 11 at ¶ 14 ("I told Nilon that ***contrition*** is a critical part of remorse and that revealing the facts about his participation was important.") (emphasis added) *with* Dkt. 285-3, ¶ 7 ("I told Bender that . . . he had a moral duty to back up his apology with a sincere act of ***contrition*** that required a complete and accurate confession") (emphasis added).)

## III.   ARGUMENT

All courts "ha[ve] a duty to supervise the conduct of attorneys appearing before [them]." *See Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996); *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). "Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession." *Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322, 1324-1325 (9th Cir. 1976).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

### A.   Both California and ABA Rules of Professional Conduct Apply To Emord and Prohibit the Derogatory Website and Baker's Conversations with Andrew Nilon.

California's Rules of Professional Conduct apply to cases litigated before this Court.  *See* C.D. Cal. L.R. 83-3.1.2; *O.A. Ventures, LLC v. Stoffal*, 2011 U.S. Dist. LEXIS 150337, at *10 (C.D. Cal. Oct. 25, 2011) ("Attorneys practicing before this Court must 'comply with the standards of professional conduct required of the members of the State Bar of California.'").  Local Rules 83-3.1.2 further provides that "[t]he Model Rules of Professional Conduct of the American Bar Association may be considered as guidance."  California courts agree that the ABA's Model Rules "serve as a collateral source for guidance on proper professional conduct." *People v. Donaldson*, 93 Cal. App. 4th 916, 928 (2001).  The ABA's Model Rules of Professional Conduct ("Model Rules" or "M.R.") are especially applicable here because Emord is an Arizona firm, its lead counsel is an Arizona licensed attorney, and the ABA Model Rules are substantially similar to Arizona's Rules of Professional Conduct.[6]  In other words, Emord is bound by California's Rules of Professional Conduct, the ABA's Model Rules and Arizona's Rules of Professional Conduct.[7]

Moreover, the California Rules and Model Rules prohibit an attorney from violating ethical rules through the use of third parties, including investigators.  *See* Cal. R. Prof. Conduct 1-200; M.R. 8.4(a).  For example, Model Rule 5.3(c) states:

> With respect to a nonlawyer employed or retained by or associated with

---

[6] *See* American Bar Assoc., Comparison of Newly Adopted Arizona Rules of Professional Conduct with ABA Model Rules (Feb. 22, 2017), publicly available at http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/mrpc_arizona.authcheckdam.pdf.

[7] Arizona's Ethical Rules specifically prohibit the type of harassment exhibited toward Nilon.  *See* Ariz. Rev. Stat. § 13-2921(A)(1) and (E).

- 12 -

a lawyer, . . . a lawyer shall be responsible for conduct of such a person . . . if: (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved.

Likewise, California Rule of Professional Conduct 3-100 makes clear that an attorney must "supervise the work of subordinate attorney and non-attorney employees or agents." *See also Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters.*, 2009 U.S. Dist. LEXIS 132872, at \*7-8 (C.D. Cal. Dec. 14, 2009) (finding that "an attorney is responsible for the misconduct of his nonlawyer employee or associate if the lawyer orders or ratifies the conduct"). In other words, Emord is responsible for the work of a private investigator, such as Baker.

### 1. *Baker, NIC and Emord Violated Ethical Rules By Engaging in Pretexting.*[8]

Both the Model Rules and California's Rules prohibit attorneys (and their agents) from making misrepresentations. ABA Model Rule 4.1(a) provides: "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person." ABA Model Rule 8.4(c) further prohibits "conduct involving dishonesty, fraud, deceit or misrepresentation." California requires than an attorney "employ, for the purpose of maintaining the causes confided to him or her, those means only as are consistent with truth." Cal. Bus. & Prof. Code § 6068(d). In other words, "[a] member of the bar should not under any circumstances attempt to deceive another. [Citations.] 'An attorney's practice of deceit involves moral turpitude.'" *Segretti v. State Bar,* 15 Cal.3d 878, 888 (1976) (quoting *Cutler v. State Bar,* 71 Cal.2d 241, 252–53 (1969)). Acts of moral turpitude, which are prohibited by California Business and Professions Code § 6106, "include concealment as well as affirmative misrepresentation" and "'[n]o

[8] "Pretexting" is the "the practice of presenting oneself as someone else in order to obtain private information." Merriam-Webster Online Dictionary. 2017. http://www.merriam-webster.com (10 Mar. 2017).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 13 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

distinction can . . . be drawn among concealment, half-truth, and false statement of fact.'" *In the Matter of Loftus* (Review Dept. 2007) 5 Cal. State Bar Ct. Rptr. 80, 86 (citations omitted, quoting *In the Matter of Dale* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 798, 808).

The premediated deception engaged in by Baker, NIC and Emord warrants sanctions. In *Meyer v. Kalanick*, the district court awarded sanctions in the form of an exclusion order in a case involving a private investigator looking into a putative class representative and his attorney. 2016 U.S. Dist. LEXIS 96583, at *1, *16 (S.D.N.Y. July 25, 2016). In *Meyer*, the investigator made "blatant misrepresentations" in order "to gain information about plaintiff and plaintiff's counsel." *Id.*, at *17. The Court concluded that "an order enjoining defendants from making use of the fruits of their own troubling conduct" was "perfectly appropriate." *Id.*, at *34. The Court rejected "the proposition that investigators working on behalf of a party to litigation may properly make misrepresentations in order to advance their own interests vis-à-vis their legal adversaries." *Id.*, at *22. The Court explained that "litigation is a truth-seeking exercise" and "it would plainly contravene this truth-seeking function if non-lawyers working for counsel . . . could make fraudulent representations in order to surreptitiously gain information about litigation adversaries through intrusive inquiries of their personal acquaintances and business associates." *Id.*, at *24 (citing *Nix v. Whiteside*, 475 U.S. 157, 166 (1986).)

Other courts have similarly found pretexting of the sort Plaintiff admittedly undertook against Nilon to be unethical, and granted sanctions. For example, *Allen v. Int'l Truck & Engine*, involved defendant's investigators using false identities to obtain information from plaintiff and potential class members. 2006 U.S. Dist. LEXIS 63720 (S.D. Ind. Sept. 6, 2006). The court found that for unrepresented persons, the conduct violated Model Rules 4.3, 5.3 and 8.4, and sanctioned counsel. *Id.*, at *26, *46-48.

- 14 -

The conduct by Baker, NIC and Emord is worse than the conduct in those cases. Like *Meyer* and *Allen*, Baker told premeditated lies to obtain information for use in litigation. Baker's misrepresentations and use of a fake identity violated professional rules requiring him to be "truthful."[9] In both *Meyer* and *Allen*, the "initial pretexting" was to "initiate the conversation." 2016 U.S. Dist. LEXIS 96583, at *17. As a result, the court found "the use of an initial pretext clearly influenced the nature and tenor of the resulting conversation." *Id.* While similar to *Meyer* and *Allen*, NIC went much farther by plotting an elaborate, full-blown confidence operation against a litigation target. The deception was not created simply to provide an opening to speak with a third party, but rather was a false identity combined with a derogatory website that would create leverage over Nilon so he would be coerced into disclosing attorney-client communications and acquiescing to false statements against his interest. Moreover, Baker's use of false identities to extract information is an important part of his method. (*See* Exhs. 17 and 18 (Baker stating that "Judy Simmons is just ONE of my many fake Facebook accounts") and (Baker pretending to be Judy Simmons in order to extract information about Murtaugh from one of Murtaugh's friends).

### 2. *Baker, NIC and Emord Violated Ethical Rules by Deceiving Nilon Regarding Their Conflict of Interest.*

Model Rule 4.3 provides that when communicating with an unrepresented party, "a lawyer shall not state or imply that the lawyer is disinterested," must "make reasonable efforts to correct the misunderstanding of the lawyer's role," and must not give advice if "the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client." In California, implying to a third party that an attorney is disinterested constitutes moral turpitude

---

[9] California law makes clear that private investigators cannot commit "any act constituting dishonesty or fraud." Cal. Bus. & Prof. Code § 7538(a)(2).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MOTION FOR SANCTIONS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

in violation of California Business and Professions Code § 6106. *In the Matter of Loftus* (Review Dept. 2007) 5 Cal. State Bar Ct. Rptr. 80, 86 (finding moral turpitude where attorney used false pretenses and led third party to believe he was considered "a potential witness, not a [potential] defendant"); *In the Matter of Dale,* 4 Cal. State Bar Ct. Rptr. at 808 (finding attorney culpable of moral turpitude for making "false and misleading statements" to an unrepresented third party to induce the party to sign a confession favorable to the attorney's client).

In *Marino v. Usher*, the district court addressed similar conduct where an attorney lied "to an unsophisticated, impoverished, unrepresented Defendant, thus convincing that Defendant to expose himself (probably baselessly) to substantial liability." 2014 U.S. Dist. LEXIS 69521, *36 (E.D. Pa. May 21, 2014). In that case the attorney did not ask whether the third party was represented, did not inform the third party of the conflict of interest with the attorney's client, and did not advise the third party to seek counsel. *Id.*, at *12. Instead, the lawyer "dishonestly convinced [the third party] that [the client] was pursuing claims against only [other] Defendants." *Id.* Because the attorney failed to disclose his status as an interested party, the attorney was able to obtain an inculpatory affidavit from the third party admitting to the client's claims. *Id.*, at **13-15. The district court found the attorney's "conduct [was] egregious and sanctionable under . . . the Court's inherent authority." *Id.*, at *21. The lawyer's discussions with the third party were "the paradigm of bad faith and intentional misconduct," and violated Model Rule 4.3. As the court explained:

> [M]anipulation of [the third party was] exactly what Rule 4.3 was intended to prevent. . . . Even worse, [plaintiff's counsel's] dishonest assurances that [his client] was not seeking damages from [the third party] caused [the third party] to make damaging—albeit unreliable— statements.

*Id.*, at *28. Ultimately, the court decided "that no lesser sanction than the exclusion

- 16 -

of the improperly obtained evidence would be adequate." *Id.*

*Marino*, *In the Matter of Loftus,* and *In the Matter of Dale*, leave no doubt as to the impropriety of Baker's deceit towards Nilon. As bad as the conduct in *Marino* was, what Baker undertook for NIC was worse. Baker falsely assured Nilon, a young, "financially stressed" adversary that he was not the target so as to obtain false concessions from Nilon and a litigation advantage for NIC. (*See* Exh. 15 at 23.) Baker reaffirmed this by stating his client was only "interested in NTG's conduct and not yours, your friends, or your company." (Exh. 11 at ¶ 19.) Further, Baker continued to harass Nilon when he indicated he was getting an attorney, threatening that he needed to sign the declaration before obtaining an attorney or "***they might misinterpret your delays***." (*See* Exh. 15 at 48 (emphasis added).)

Baker's conduct violated California's Rules and the Model Rules. Courts have issued sanctions for such conduct. The fact that the conduct was done by an investigator, rather than the attorney himself, is irrelevant because Emord knew Baker was communicating with Nilon on August 25, 2015, when Emord participated in a "strategy" call regarding Baker's attempt to obtain a declaration from Nilon. At that point, Emord should have informed Baker to cease communications with Nilon. To the extent such communications continued, Emord should have ensured Nilon was informed that Baker/AJ Lyon was not disinterested. Not only did Emord fail to take any of these steps, but it has since relied on the "evidence" Baker obtained, even knowing that "evidence" was procured by Baker's derogatory website, pretexting/false identification, persuading Nilon that he was not the target, and demanding disclosure of attorney-client communications.

### 3. *Baker, NIC and Emord Violated Ethical Rules by Engaging in Witness Tampering.*

Witness tampering is a felony under 18 U.S.C. § 1512. However, "the facts of unduly influencing a witness should not have to rise to the level of a federal felony before a court can find misconduct in a civil setting." *Stanley v. Wong*, 2006

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MOTION FOR SANCTIONS

U.S. Dist. LEXIS 35273, *21-22 (E.D. Cal. May 31, 2006). Still, witness tampering examples from criminal cases are "instructive." *Id.* Criminal cases make clear that threatening a person's business interest to obtain favorable testimony is felony witness tampering. In *United States v. Cruzado-Laureano*, 404 F.3d 470, 487-488 (1st Cir. 2005), the First Circuit affirmed a witness tampering conviction based on a defendant harassing the witnesses' business and asking witnesses to "tell the truth" – meaning the tamperer's version of the "truth." *Id.*

Baker, NIC and Emord intentionally targeted Nilon and his business by creating and publishing ElectricFamily*Scam*.com. Their decision to publish the derogatory website, then use that website to coerce attorney-client communications and a declaration from Nilon, are beyond the pale when it comes to appropriate investigation or litigation strategy. Boiled down, Baker, NIC and Emord's conduct was an almost year-long scheme to create coercive leverage over an economically vulnerable adversary for the purpose of creating favorable evidence that could be used in a later lawsuit. This is the sort of witness tampering one sees in "The Sopranos' or other mass media depictions of criminal activity," *United States v. Khatami*, 280 F.3d 907, 911 (9th Cir. 2002), and gives meaning to the paradigm that "witness tampering is among the most grave abuses of the judicial process, and as such it warrants a substantial sanction." *Ramirez v. T&H Lemont, Inc.*, 2016 U.S. App. LEXIS 23404, *21-22 (7th Cir. 2016); *see also Erickson*, 87 F.3d at 304 ("Witness tampering like perjured testimony tends to subvert the entire judicial process and its principle function of ascertainment of the truth").

Threatening a witness to obtain favorable testimony is exactly what NIC did to Nilon. Nilon testified that Baker threatened that "the website would be put back up if [he] did not cooperate with [Baker/AJ Lyon], but it would stay down if [Nilon] told [Baker] what he wanted to hear about Newport Trial Group." (Exh. 15 at ¶ 22.) That testimony is supported by the evidence. First, it is the same threat Baker made against a non-party witness in *Murtagh v. Baker*. (Dkt. 285-2.) It is unlikely that

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

two unrelated witnesses would independently fabricate identical threats from Baker. Moreover, the only point of creating ElectricFamily*Scam*.com was to obtain leverage over Nilon. Finally, the threat was confirmed by Baker's August 28, 2015 email (sent *after* his strategy call with Emord), where he threatened a "misinterpret[ation]" if Nilon did not sign the declaration that day. *See People v. Choynski*, 95 Cal. 640, 641-42 (1892) ("Parties guilty of [extortion] . . . seldom . . . speak out boldly and plainly, but deal in mysterious and ambiguous phrases . . . [which] in light of surrounding circumstances . . . have no uncertain meaning.").

The evidence shows Baker, NIC and Emord offered Nilon something of value – deactivation of a derogatory website that was damaging Nilon's business – in exchange for favorable testimony. Whether it was a threat or a bribe is irrelevant because the obvious purpose was to influence Nilon's testimony, demonstrated by the fact that Baker immediately drafted and sent Nilon an unsolicited declaration. (Exh. 11 at ¶¶ 17, 23; Exh. 15 at 48.)

NIC and Emord were fully aware of Baker's conduct when they decided to pursue this case and, indeed, attempted to mislead this Court by claiming "Nilon gratuitously disclosed the specific circumstances of NTG's recruiting practices to multiple third parties orally and in writing." (*See* Dkt. 1, ¶ 53 (NIC's Complaint).) While NIC and Emord may argue they did not direct Baker, the evidence is clear that they reviewed and approved of Baker's conduct in February 2015, relied on Baker's conduct in August 2015, and continue to rely on Baker's "evidence." As a result, NIC and Emord have ratified Baker's actions. *See* M.R. 5.3(c)(a); *see also* CACI 3710 (ratification "can be inferred if a person voluntarily keeps the benefits of [the] unauthorized conduct after [it] learns of the unauthorized conduct").

**B.      Significant Sanctions Should Be Imposed Against NIC and Emord.**

Pretexting, witness tampering, and violation of Rule 5-100 are all independent grounds for meaningful sanctions. NTG respectfully submits that taken together,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 19 -

these strongly cut in favor of sanctions. Witness tampering alone justified complete dismissal of a presumptively meritorious case in *Ramirez*, 2016 U.S. App. LEXIS 23404, *4-5. At minimum, this Court should exclude all evidence directly or indirectly obtained from the derogatory website scheme and strike all previously-filed declarations and arguments based on oral or written testimony from Baker in this matter. Finally, although it is a severe sanction, NTG respectfully submits that Emord should be disqualified. Emord is hopelessly contaminated by information obtained through coercive and illegal *ex parte* contact and the ethical violations, taken together, are simply too much.

### 1. *All Testimony and Evidence from Baker Should Be Excluded and All Previously-Filed Declarations and Arguments Based on Baker's Conduct Should be Stricken.*

Exclusion and issue sanctions are justified given the egregious nature of the conduct at issue. As demonstrated above, NIC and Baker engaged in an elaborate and unlawful deception to trick Nilon into speaking with its agent and to blackmail inculpatory statements from him. Courts considering similar, less egregious circumstances have excluded the wrongfully-obtained evidence and evidence obtained from it. *Meyer*, 2016 U.S. Dist. LEXIS 96583, at *34 (finding "perfectly appropriate an order enjoining defendants from making use of the fruits of their own troubling conduct."); *Marino*, 2014 U.S. Dist. LEXIS 69521, at *36 ("denying Plaintiff the 'fruits' of [attorney's] misconduct and requiring [attorney] to pay these increased costs are the least sanctions I can impose."). This Court should likewise exclude all testimony and evidence obtained through Baker and strike all previously-filed declarations and arguments based on said testimony and argument.

This Court has the inherent power to "levy sanctions in response to abusive litigation practices." *Roadway Exp., Inc. v. Pipe*r, 447 U.S. 752, 765 (1980). The Court's inherent power to impose sanctions for abuse requires a showing of bad faith. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). A comprehensive

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

definition of "bad faith" or conduct "tantamount to bad faith" is not possible, but the type of conduct at issue "includes a broad range of willful improper conduct." *Id.* It is permissible "to infer bad faith from [attorney's] action plus the surrounding circumstances." *Miller v. City of L.A.*, 661 F.3d 1024, 1029 (9th Cir. 2011). Further, it is well established that "an attorney's reckless misstatements of law and fact, when coupled with an improper purpose . . . are sanctionable under a court's inherent power." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002).

As seen above, a litany of ethical rules prohibited the conduct Baker undertook for the benefit of NIC and Emord. Courts considering such violations separately have invoked their inherent authority to impose sanctions up to outright dismissal. As in those cases, there is no serious question that the conduct amounts to "bad faith" because it was by definition willful.

### 2. *The Conduct of NIC, Baker and Emord (Taken Together) Justifies Disqualification of Emord.*

"Whenever an allegation is made that an attorney has violated his moral and ethical responsibility . . . [i]t is the duty of the district court to examine the charge[.]" *Gas-A-Tron of Arizona*, 534 F.2d at 1325. Courts, "as well as the bar, have a responsibility to maintain public confidence in the legal profession" and so "may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety." *Id.* Courts have the inherent power to disqualify counsel because of an ethical violation. *Crenshaw v. Mony Life Ins. Co.*, 318 F.Supp.2d 1015, 1020 (S.D. Cal. 2004). Motions to disqualify counsel are decided under California law. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l Co.*, 913 F.Supp.2d 900, 906 (C.D. Cal. 2012); *Hitachi, Ltd. v. Tatung Co.*, 419 F.Supp.2d 1158, 1160 (N.D. Cal. 2006). Under California motion to disqualify law, the "paramount concern is the preservation of the public's trust in the scrupulous administration of justice and the integrity of the bar." *People ex rel. Dep't of Corps.*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MOTION FOR SANCTIONS

*v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1145 (1999) (internal quotations omitted). "The disqualification of counsel because of an ethical violation is a discretionary exercise of the trial court's inherent powers." *Crenshaw v. Mony Life Ins. Co.*, 318 F. Supp. 2d 1015, 1020 (S.D. Cal. 2004).

The ethical violations and the advantage gained from them cut in favor of disqualification here. Baker and NIC undertook a carefully-planned scheme to deceive and coerce a deliberately-targeted material witness. The evidence also indicates that Emord most certainly knew about the ElectricFamily*Scam* website shortly after it was published in February 2015, and either knew of the entire scheme or made herculean efforts to remain ignorant of it. To make matters worse, this was not just an isolated incident of mistaken reliance upon "fruit of the poisonous tree." Instead, Emord has repeatedly gone back to cite and rely upon Baker's declaration in multiple dispositive or otherwise critical motions filed before this Court. *See e.g.* Dkt. 103-5 (Baker's Declaration ISO NIC's Motion for a Temporary Restraining Order); Dkt. 54-1 (Baker's Declaration ISO Opposition to Anti-SLAPP Motion); Dkt. 113-3 (Baker's Declaration ISO Opposition to Motion for Summary Adjudication); Dkt. 247-2 (Baker's Declaration ISO Plaintiff's Crime-Fraud Motion); and Dkt. 291-6 (Baker's Declaration ISO Plaintiff's Crime-Fraud Motion). This shows that Emord repeatedly ratified Baker's conduct by attempting to use the ill-gotten information to the advantage of themselves and NIC.

Moreover, as the cases discussed above indicate, the underlying acts are "disgraceful" actions unbecoming of a member of the bar and far less has subjected attorneys to sanctions and discipline. In circumstances "analogous to those presented here, courts imposing sanctions pursuant to that authority typically have disqualified counsel, excluded evidence, and revoked *pro hac vice* admissions." *Marino,* 2014 U.S. Dist. LEXIS at \*32. Indeed, *Terrebonne, Ltd. v. Murray*, 1 F. Supp. 2d 1050, 1057-1058 (E.D. Cal. 1998), disqualified an attorney because the attorney "concealed the true identity of his interests . . . until after he elicited and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 22 -

obtained confidential information."

Further, it is undebatable that NIC and Emord obtained information that it never could have absent deception. Baker's entire focus was on privileged communications between attorneys (the NTG Defendants) and their client (Nilon) relating to Nilon's lawsuit. Even the acquisition of non-privileged but confidential information by subterfuge justifies disqualification. *Id*.

It is not possible to un-ring the bell in this instance. Emord has had the information Baker coerced from Nilon for well over a year and has used it extensively in its complaints and numerous other filings before this Court. *Rico v. Mitsubishi Motors Corp.,* 42 Cal. 4th 807 (2007) (disqualifying plaintiffs' attorney who inadvertently received defendants' attorney work product and used it in deposition of opposing party's expert); *Clark v. Superior Court,* 196 Cal. App. 4th 37 (2011) (disqualifying plaintiff's attorney who failed to return and extensively reviewed attorney-client privileged documents). The fact that NIC retained Emord to bring the instant lawsuit the day after their "strategy" call on Nilon only confirms the centrality of privileged information coerced from Nilon.

In sum, a court "must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court." *Huston v. Imperial Credit Commer. Mortg. Inv. Corp.*, 179 F. Supp. 2d 1157, 1168 (C.D. Cal. 2001). Whether Emord directed Baker's actions or engaged in contrived ignorance of his acts only to ratify them later with numerous filings before this Court, NIC and Emord have clearly sought and gained an "unfair advantage" that requires serious sanctions, including disqualification.

> ### 3. *Emord Also Violated the Prohibition Against Threatening Disciplinary Sanctions.*

Under California Rule of Professional Conduct, Rule 5-100, "[a] member

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 23 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." Cal. Rules of Prof. Conduct, Rule 5-100.

As *Lopez v. Banuelos*, 2013 U.S. Dist. LEXIS 127656, *1-2 (E.D. Cal. Sept. 5, 2013) demonstrates, Emord could hardly have violated Rule 5-100 more clearly had he deliberately set out to do so. In *Lopez*, defense counsel sent plaintiff's lawyer an email stating:

> You know, we could just get real and admit that this case is not going to trial . . . If [plaintiff] sets foots in California, I bet he never leaves as there is a very real chance he will be arrested. We do intend to have both federal and state law enforcement present during the trial."

*Id.*, at *2. Defense counsel justified this as an observation, not a threat. The court, observing that "[a] threat need not be expressly stated, but may be inferred from the context and circumstances in which it is made," found that "[f]rom an objective perspective, [the email] constitute[d] a violation of Rule 5-100." *Id.* at **14, 21-22.

Likewise, Mr. Arhangelsky's November 16, 2016 email is written as a "settle or else" threat. The passage opens by stating that NIC's entire purpose in bringing the lawsuit was to broadly stop perceived "legal and ethical violations of NTG attorney defendants." (Dkt. 212-3 at 17.) Later, Mr. Arhangelsky explains how NIC will use its RICO action to "subject [attorney defendants] to disbarment" if the case did not settle for NIC's exorbitant demand of $15 million. Mr. Arhangelsky then followed this up by stating how NIC could use this Court to initiate "attorney discipline, including disbarment or suspension of attorney licenses." (Dkt. 212-3 at 17.) Any reasonable attorney would see this as a threat against his or her bar license. There is also no doubt that Emord intended to convey exactly this threat.

This additional violation of the rules of professional conduct demonstrates the appropriateness of issuing a disqualification sanctions.

## IV.    CONCLUSION

Litigation is a truth-seeking exercise and all attorneys practicing before this

MOTION FOR SANCTIONS

Court must ensure their agents and clients refrain from deceitful, dishonest, and coercive conduct. Baker and NIC failed to do so when they published a derogatory website targeted at Nilon with the intent to coerce testimony. Emord was aware of this conduct and ratified it by expressly approving it or by failing to prevent it (and later relying on the improperly-obtained "evidence"). To right the wrongs created by Baker's litigation tactics and to prevent further benefit from his wrongful conduct, the NTG Defendants respectfully request that the following sanctions be issued:

1.   All "evidence" stemming from Baker's misconduct should be excluded;

2.   Baker should be precluded from testifying in this litigation, and all prior declarations from Baker should be stricken from this action; and

3.   Emord should be disqualified from serving as counsel in this action as a sanction for condoning Baker's conduct.

Dated:  May 15, 2017                    **CALLAHAN & BLAINE, APLC**

By:   */s/ James M. Sabovich*
      Edward Susolik
      David J. Darnell
      James M. Sabovich
      Attorneys for Defendants NEWPORT TRIAL GROUP, SCOTT J. FERRELL, RYAN M. FERRELL, VICTORIA C. KNOWLES, DAVID REID and ANDREW LEE BASLOW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MOTION FOR SANCTIONS