Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., <br><br><br> Plaintiff, <br><br> v. <br><br><br> NEWPORT TRIAL GROUP, et al., <br><br><br> Defendants. | Case No. 8:15-cv-02034-JVS (JCG) <br><br> **PLAINTIFF'S OBJECTIONS TO SPECIAL MASTER'S ORDER IN DOCKET NO. 360** <br><br> **(Hearing Requested)** <br><br><br> Judge: Hon. James V. Selna <br> Master: Hon. Rosalyn Chapman |

# TABLE OF CONTENTS

I.   FACTS ...................................................................................................3

II.   ARGUMENT ........................................................................................8

    A. Legal Standard........................................................................8

    B. NTG's discovery requests related to "immune support"
       claims are not relevant to this case and threaten to impose a
       substantial burden in litigation (*see* RFA Nos. 10 and 11;
       RFP Nos. 100 and 101) ...........................................................9

    C. NTG's discovery requests targeting Emord's
       communications with Scott Vick are harassing, and seek
       irrelevant and privileged information that is not
       proportionate to this litigation (*see* RFP Nos. 65 and 66).........................12

III.  CONCLUSION ............................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486 (9th Cir. 1989) .........................16

*Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK PSG, 2013
    WL 3246094 (N.D. Cal. June 26, 2013) ...............................................9

*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798 (2007) ................11

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007)................10

*Durrell v. Sharp Healthcare*, 183 Cal.App.4th 1350 (2010)................................10

*Ellis v. J.P. Morgan Chase & Co.*, No. 12CV03897YGRJCS, 2014
    WL 1510884 (N.D. Cal. Apr. 1, 2014)................................................19

*Ferruza v. MTI Tech.*, No. SACV 00-0745 DOC, 2002 WL 32344347
    (C.D. Cal. June 13, 2002) ...............................................................16

*Finkelstein v. Guardian Life Ins. Co. of Am.*, No. C07-1130CRB (BZ),
    2008 WL 2095786 (N.D. Cal. May 14, 2008) ........................................9

*Frank Brunkhorst Co., LLC v. Ihm*, No. 11CV1883-CAB (KSC), 2012
    WL 12868265 (S.D. Cal. Dec. 3, 2012).......................................... 17, 18

*Griffith v. Davis,* 161 F.R.D. 687 (C.D.Cal.1995)................................................19

*Hatamian v. Advanced Micro Devices, Inc.*, No. 14-CV-00226-
    YGR(JSC), 2016 WL 2606830 (N.D. Cal. May 6, 2016)....................16

*Hickman v. Taylor*, 329 U.S. 495 (1947)............................................................17

*Holmgren v. State Farm Mut. Ins. Co.*, 976 F.2d 573 (9th Cir. 1992) ..................16

*In re Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d
    120, 126 (3d Cir.1986) ..................................................................19

*In re Convergent Techs. Second Half 1984 Sec. Litig.*, 122 F.R.D. 555
    (N.D. Cal. 1988) ...........................................................................17

*In re Mortg. & Realty Trust*, 212 B.R. 649 (Bankr. C.D. Cal. 1997).....................19

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326, 246 P.3d 877
(2011)..................................................................................................10

*Laxalt v. McClatchy*, 116 F.R.D. 438 (D.Nev. 1987)................................16

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004)............................22

*Schoenmann v. Federal Deposit Insurance Corporation*, 7 F.supp.3d
1009 (N.D. Cal. 2014) ....................................................................16

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225 (S.D.
Cal. 2015) ..........................................................................................9

*United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003)..................19

*United States v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012) ........................20

*United States v. McGraw-Hill Companies, Inc.*, No. CV 13-779-DOC
JCGX, 2014 WL 1647385 (C.D. Cal. Apr. 15, 2014)............................9

**Rules**

Fed. R. Civ. Pro 26..................................................................................9

Plaintiff Natural-Immunogenics Corp. ("Plaintiff" or "NIC"), by counsel, hereby objects to the Special Master's Order Granting, In Part, and Denying, In Part, Newport Trial Group's Motion to Compel Requests for Admissions, Production of Documents, and Answers to Special Interrogatories; and Denying Request for Fees. *See* Dkt. 360. For the reasons stated more fully below, NIC objects to the Ordering Paragraphs (a) and (a)(i). *See* Dkt. 360 at 23. NIC does not object to portions of the Order that properly denied NTG's relief. *See* Dkt. 360 at 24 (¶ 2(b), ¶ 3, and ¶ 4). The Special Master's Order erred by requiring NIC's response to irrelevant, overbroad discovery requests that seek information unrelated to the present litigation and information well beyond the contours of this Court's July 20, 2016 discovery limitations. *See* Dkt. 155. Moreover, by compelling NIC to provide responses, the Special Master erred in ruling that NIC may "not claim attorney-client privilege and/or work product protection" in response to requests that clearly require production of privileged information. *See* Dkt. 360 at 23 (¶ 2(a)(i)). In so holding, the Special Master categorically vitiated valid privilege objections without performing a document-specific review, and without any detailed analysis of the applicable privileges.

By and through these objections, NIC requests that the Court: (1) hold that NIC is not required to produce volumes of discovery concerning NIC's "immune support" advertising claim, which is irrelevant to this case; (2) hold that NIC is not required to produce privileged communications exchanged between NIC's counsel (Emord & Associates) and Emord's co-counsel in other litigation having no relationship to this instant lawsuit; (3) hold that NIC is not required to produce privileged correspondence exchanged between Emord and counsel for parties subpoenaed in this case; and (4) hold that, even if NIC is required to produce such information, NIC may withhold privileged material subject to proper identification on a privilege log. That requested relief is legally proper. In granting portions of

NTG's motion, the Special Master took an unduly broad view of discovery in this case, and never required defendants to explain why information requested was relevant under Rule 26(b) and this Court's discovery orders.  Moreover, the Special Master improperly and categorically disregarded substantial questions related to privilege.

## I.  FACTS

On June 6, 2017, NTG moved to compel 54 discovery responses which included Requests for Admission (RFA Nos. 9-11), Requests for Production (RFP Nos. 29-62, 65-68, 77, 79, 88, and 99-101), and Interrogatories (ROG Nos. 1-6). Following oral argument on June 27, 2017, the Special Master granted in part, and denied in part, NTG's requested relief.  The Special Master granted NTG's request to compel responses to RPD Nos. 29-58, 61-62, 65-66, 77, 79, and 100-101.  *See* Dkt. 360 at 23.  The Special Master denied NTG's motion to compel responses to RPD Nos. 59-60, 67-68, 88, and 99, and denied the motion to compel responses to the special interrogatories Nos. 1-6.[1]  The Requests challenged by NIC in these objections include the following:

**REQUEST FOR ADMISSION NO. 10:**  Admit that there was probable cause to allege in NILON v. NIC that NIC's Sovereign Silver Product does not provide immune support.

_____

[1] NTG defendants performed almost no discovery until March 2017.  In the span of several weeks beginning in late March 2017, NTG served the balance of its 495 document requests, two sets of requests for admission, and two sets of interrogatories, all of which required complete responses within 30 days.  *See* PAA Decl. at ¶ 4.  After NTG refused NIC's requests for an extension, the Special Master granted NIC an additional two weeks to provide responses on May 23, 2017.  *Id.*  NIC timely responded to all requests, and produced responsive information in most instances.  As the plaintiff in this matter, NIC has produced documents spanning 17,445 pages of content.  *Id.* at ¶ 5.  NIC and its agents have submitted privilege logs for 3,903 files.  *Id.*  Through subpoenas issued to twenty non-parties, NIC has obtained an additional 28,840 pages of responsive information, all of which has been provided to defendants.  *See id.* at ¶ 6.  The majority of that information was produced early in discovery, from August through November 2016.

**REQUEST FOR ADMISSION NO. 11:**  Admit that the allegation in Nilon v. NIC that NIC's Sovereign Silver Product does not provide immune support was truthful.

**REQUEST FOR PRODUCTION NO. 100:**  All documents supporting your contention that there was no probable cause to allege in Nilon v. NIC that NIC's Sovereign Silver Product does not provide immune support.

**REQUEST FOR PRODUCTION NO. 101:**  All documents supporting your contention that the allegation in Nilon v. NIC that NIC's Sovereign Silver Product does not provide immune support was false.

**REQUEST FOR PRODUCTION NO. 61:**  All documents evidencing any communications between NIC and any party that has been issued a subpoena in this case or that subpoenaed party's counsel.

**REQUEST FOR PRODUCTION NO. 62:**  All documents evidencing any communications between Emord and any party that has been issued a subpoena in this case or that subpoenaed party's counsel.

**REQUEST FOR PRODUCTION NO. 65:**  All documents evidencing any communications between NIC and Scott Vick from October 1, 2015 through the present.

**REQUEST FOR PRODUCTION NO. 66:**  All documents evidencing any communications between Emord and Scott Vick from October 1, 2015 through the present.

*See* Exh. B at 67-69, 72-73; Exh. C at 112-114; Exh. D at 126-128.

Those requests generally fall into distinct categories.  The RPD Nos. 99-101 generally inquire into scientific or factual support underlying NIC's "immune support" advertising claim, and RFA Nos. 10 and 11 also target that "immune support" claim.  *See* Exh. C at 112-114.  The RPD Nos. 61 and 62 seek—without limitation—all communications between NIC's counsel and non-party subpoena

recipients.  *See* Exh. B at 67-69.  The RPD Nos. 65 and 66 seek all communications exchanged between Emord & Associates and attorney Scott Vick from October 1, 2015 through the present, without any limitation to the matters at issue in this case.  *See* Exh. B at 72-73.  NIC asserted the attorney-client privilege and work product doctrine to all responsive files properly within the scope of privilege.  *Id.* at 2 (¶2), 5 (¶13), 67-69, 72-73.

With respect to Clark Baker's involvement in litigation, NIC and Baker have logged 2,955 communications and documents.  *See* PAA Decl. at ¶ 7.  On June 2, 2016, Judge Gandhi ruled that discovery into Clark Baker may proceed beyond the limited contours of Baker's involvement in the underlying *Nilon* litigation.  *See* Dkt. 123.  In response, NIC produced every communication exchanged with or involving Clark Baker up through June 2016.  *See* PAA Decl. at ¶ 8.  Thus, all documents and communications that might be responsive to NTG's Requests for Production Nos. 29-58 have been produced through June 2016.  *Id.*  The issue in controversy here is whether NIC must produce communications with Baker that occur *after* May 2016, during a period where Clark Baker was not NIC's investigator in this instant litigation.  With respect to that issue, the following facts are relevant.

On April 13, 2016, NTG served Baker with a non-party subpoena under Rule 45 seeking production of NIC's privileged files.  *See id.* at ¶ 9.  Clark Baker retained NIC's counsel (Emord & Associates, P.C.) on April 14, 2016.  *Id.* at ¶ 10.  Emord's representation was limited to Mr. Baker's role as a witness in litigation and NIC's agent beforehand.  *Id.* at ¶¶ 10-11.  Emord's representation of Baker was necessary to preserve and protect NIC's privilege.  Emord moved to quash portions of Mr. Baker's subpoena.  *See* Dkt. 94.  Emord also assisted with Mr. Baker's document production in response to the subpoena.  *See* PAA Decl. at ¶ 11.

Defendants "unclean hands" defense focuses on Mr. Baker's conduct in 2015. *See* Dkt. 174 at 66. Defendants have asserted no claim or defense that involves Mr. Baker's conduct after 2015. *See generally* Dkt. 174. In this instant case (beginning in March 2016), NIC's counsel have used Bill Garcia Investigative Services (Cal. License No. 21884) for investigative services in this case. *See* PAA Decl. at ¶ 12. Thus, to the extent NTG seeks to compel communications between NIC and Baker *after* May 2016, those communications concern Baker's role or duties as a witness in this case. Moreover, because Baker executed a retainer agreement with Emord & Associates, P.C. in April 2014, those communications directly implicate attorney-client correspondence. Defendants have been unable to articulate why those communications are relevant to any claim or defense in this case. In reality, the defendants are asking to probe NIC's privileged communications in a fishing expedition, hoping to explore NIC's strategy or mental impression material.

Concerning RPD Nos. 61 and 62, which seek all communications between NIC's counsel and subpoenaed parties, the following facts are relevant. Those requests are not limited in scope (substantively or temporally). *See* Exh. B at 67-69. NTG requests "all documents evidencing any communications between Emord and any party that has been issued a subpoena in this case or that subpoenaed party's counsel." *Id.* (RFP No. 62).

The Special Master ruled that NIC must respond to both RPDs 61 and 62, and that NIC could <u>not</u> invoke privilege when responding. *See* Dkt. 360 at 23(a)(i). In other words, the Special Master determined—without having seen a privilege log—that all documents that might be responsive to those requests could not be privileged. The Special Master provided no analysis or discussion concerning those privilege concerns other than the following: "the Special Master finds no merit to NIC's work product objection[.]" *See* Dkt. 360 at 15. RPD Nos.

61 and 62 specifically target communications between NIC's counsel and non-party counsel.  The Special Master disregarded the fact that subpoena recipients were clients of Emord & Associates, or shared information with NIC counsel that was protected by the common interest privilege.

For example, NIC subpoenaed Carter-Reed LLC.  *See* PAA Decl. at ¶ 13.  Carter-Reed is a division of Basic Research LLC, which in 2015 was a client of Emord & Associates P.C. on unrelated legal matters.  *Id.*  Moreover, NIC subpoenaed Continuity Products LLC.  *Id.* at ¶ 14.  Continuity's counsel shared information with NIC counsel that was subject to the common interest privilege.  At the time, Continuity was involved in litigation against non-party Joshua Weiss.  *Id.*  The subject of NIC's subpoena to Continuity (e.g., emails between Weiss and Ferrell), was also at issue in Continuity's state court proceeding against Mr. Weiss.  *See* Exh. G (Continuity complaint).  NIC also subpoenaed attorney Scott Vick of the Vick Law Group in California.  NIC's counsel (Emord) has been co-counsel with the Vick Law Group in other, unrelated legal matters.  *See, e.g., Hudson Martin Ferrante Street Witten & DeMaria, P.C. v. Forsythe*, No. 5:16-cv-06551-BLF (N.D. Cal. 2016).  Thus, NTG's subpoena would require NIC's counsel to produce information that is not only privileged in another matter, but entirely irrelevant to the claims at issue in this case.

NIC counsel subpoenaed Nature's Way Products, Inc. related to *Pfleg v. Nature's Way*, No. 3:12-cv-01018-LAB (S.D. Cal. 2012).  NIC counsel interacted with Ben Smyth, who is corporate counsel for Nature's Way.  Communications exchanged between Mr. Smyth and Emord involved privileged content that was not solely related to the subpoena issued by NIC earlier in the case.  Nature's Way was a defendant targeted by NTG in 2012.  *See Pfleg v. Nature's Way*, No. 3:12-cv-01018-LAB (S.D. Cal. 2012).  As a victim of NTG's unlawful enterprise, and potential claimant in litigation, correspondence between counsel for Nature's Way

and counsel for NIC involved legal discussions that involved those parties' common interests in opposition to the unlawful RICO scheme.  *See* PAA Decl. at ¶ 15.

Finally, RPD Nos. 100 and 101 seek documents related to an allegation NIC does not advance here in this litigation, seeking:  "All documents supporting [NIC's] contention that there was no probable cause to allege in NILON V. NIC that NIC's Sovereign Silver Product does not provide immune support."  *See* Exh. C at 112-114.  NTG's Requests for Admission Nos. 10 and 11 similarly seek irrelevant admissions concerning NIC's "immune support" claim.  *See* Exh. D at 126-128.  NIC's "immune support" claim is not at issue in this litigation, and is not the basis of NIC's malicious prosecution lawsuit here.  The Second Amended Complaint (SAC, Dkt. 92), makes no allegations based on NIC's immune support claim.  NIC's malicious prosecution and RICO claims are predicated, in part, on the "reliance" element of a CLRA/FAL lawsuit in California.  *See, e.g.,* Dkt. 92 at ¶ 131 (alleging that "Sandoval did not purchase the product in reliance on claims made on the label, but instead sought to purchase a lawsuit as instructed by NTG.").  Through the 412 paragraphs of allegations in the SAC, the phrase "immune support" is referenced just four times, and only in summarizing the original allegations brought by Nilon and Sandoval.  *See generally* Dkt. 92.

NIC challenges here the Special Master's ruling with respect to RFA Nos. 10 and 11; RPD Nos. 29-58; RPD Nos. 61 and 62; RPD Nos. 65 and 66; and RPD Nos. 99-101.

## II.   ARGUMENT

### A. Legal Standard

The Court reviews all objections to the Special Master's findings of fact or conclusions of law de novo.  *See* Dkt. No. 223 at 5).

"Upon a motion to compel pursuant to Fed. R. Civ. P. 37(a)(3), the moving party has the burden of demonstrating relevance."  *See Apple Inc. v. Samsung*

*Elecs. Co.*, No. 12-CV-0630-LHK PSG, 2013 WL 3246094, at *2 (N.D. Cal. June 26, 2013); *see also United States v. McGraw-Hill Companies, Inc.*, No. CV 13-779-DOC JCGX, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (same).

The Court should evaluate the requests as written.  *See Finkelstein v. Guardian Life Ins. Co. of Am.*, No. C07-1130CRB (BZ), 2008 WL 2095786, at *2 (N.D. Cal. May 14, 2008) ("Rule 26 does not require the Court to rewrite discovery requests for the parties.").  "[W]hile many documents may be discoverable, in determining whether a [particular] discovery request is overly costly or burdensome in light of its benefits, ... [a] court ... [must] ... consider the necessity of discovery, properly encouraged to weigh the expected benefits and burdens posed by particular discovery requests (electronic other otherwise)."  *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (internal citations and quotations omitted) (collecting authorities).

**B. NTG's discovery requests related to "immune support" claims are not relevant to this case and threaten to impose a substantial burden in litigation (*see* RFA Nos. 10 and 11; RFP Nos. 100 and 101)**

The Special Master erroneously compelled responses to four discovery requests that focused on NIC's purported "immune support" advertising claim. *See e.g.,* Dkt. 360 at 9-11 (citing NTG RFA 10-11 and RFP 99-101).  Because the "immune support" advertising claim is not at issue in this litigation, NTG's discovery requests seek *per se* irrelevant information that is not within the scope of discovery under Rule 26(b)(1).  *See* Fed. R. Civ. Pro 26(b)(1) (permitting discovery only of "nonprivileged matter that is relevant to any party's claim or defense").  NIC's malicious prosecution action alleges that NTG used for-hire plaintiffs to fabricate legal claims.  *See generally* Dkt. 92.  As for Sandoval and Nilon, their claims lacked "probable cause" because NTG had directed them to purchase products that would be subject to litigation.  *See* Dkt. 88-1, Order re

Dispositive Motions at 21-25 (explaining basis for dismissal in underlying case was related to lack of standing and injury, and noting the "importance of the element of reliance in actions under the CLRA").  In other words, they purchased product solely to buy into litigation and, so, they would have purchased the NIC product regardless of the advertising claims.  NTG's complaint made materially false and deceptive allegations that Nilon and Sandoval "had relied on representations made by [NIC] regarding the efficacy of Sovereign Silver, and, but for those representations, [they] would not have purchased or paid as much for the product."  *See Nilon v. NIC*, No. 3:12-cv-00930-LAB-BGS, Dkt. 1-1; *See Durrell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1366-67 (2010) (discussing importance of the element of reliance); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948 (S.D. Cal. 2007) ("An attorney who became aware of false advertising but who had no client who was harmed by it could easily 'create' a client with standing to sue by directing a willing party who was not deceived by the advertising to make a purchase.  Thus, omitting a 'reliance' requirement would blunt … intended reforms"); *see also* Order re MSJ, Dkt. 296 at 15 ("NIC argues that the 'questions of innocence in this case concerns whether NIC falsely advertised to Sandoval and Nilon—not to some hypothetical class of consumers that may have purchased NIC's product under substantially difference circumstances'").

Nilon's and Sandoval's claims lacked probable cause because they never "relied" on product advertising and, thus, they never suffered an injury resulting from that advertising.  California courts have routinely explained that a UCL/CLRA plaintiff (like Nilon and Sandoval) must demonstrate "actual reliance" on advertising to have a claim.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326, 246 P.3d 877, 888 (2011) ("a plaintiff proceeding on a claim of misrepresentation as the basis for his or her UCL action must demonstrate actual

1   reliance on the allegedly deceptive or misleading statements, in accordance with
2   well-settled principles regarding the element of reliance in ordinary fraud
3   actions."). In other words, a party who purchases a product suspecting it was
4   mislabeled in order to pursue a UCL fraud action has no injury sufficient to confer
5   standing. *See Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798, 818-
6   819 (2007).

7       Thus, whether NIC's "immune support" claim was truthful is irrelevant to
8   NIC's claims in this case. NIC does not allege that Nilon's or Sandoval's
9   underlying claims lacked probable cause because NIC's product was efficacious
10  or provided immune support. To the contrary, NIC alleges that the claims lacked
11  probable cause because the alleged "false advertising" injury was staged at NTG's
12  instruction. *See* Dkt. 92 at 14-33. To illustrate the point, assume *arguendo* that
13  NIC's immune support claim was false. That assumed fact would not alter NIC's
14  pending allegations in any material respect. Thus, the immune support claim is
15  demonstrably irrelevant to this litigation. NTG's Requests for Admission seek
16  NIC's response concerning the irrelevant "immune support" claims. NIC should
17  not be compelled to provide responses.[2]

18      The RFP Nos. 100 and 101 are flawed for an additional reason. Those
19  requests seek documents supporting "*NIC's contention* that there was no probable
20  cause to allege in Nilon v. NIC that NIC's Sovereign Silver Product does not
21  provide immune support" and NIC's "*contention* that the allegation in Nilon v.
22  NIC that NIC's Sovereign Silver Product does not provide immune support was
23  false." *See* Dkt. 360 at 11 (emphasis added). But NIC does not advance those
24  "contentions" at any point in this case. The SAC (Dkt. 92) includes no instance
25  where NIC contends that NTG's allegations in the *Nilon* case regarding immune
26

27      [2] The "immune support" RFA's are also flawed because NTG did not define
28  the proper context for the immune support claims, and has never defined that claim
    in litigation, which was NTG's burden in the underlying *Nilon* litigation.

1   support were false, or that NIC's immune support claim was true.  Indeed, NIC
2   has not advanced that claim because it is irrelevant.  The SAC references the
3   phrase "immune support" just four times in 412 paragraphs, and in no such
4   instance does NIC base its malicious prosecution claim on an argument that NIC's
5   product was efficacious.

6        Yet the RFP Nos. 100 and 101 are far-reaching requests that would require
7   NIC to gather and produce its entire scientific dossier concerning Sovereign
8   Silver.  In the underlying litigation, NIC produced over 4,000 pages of scientific
9   evidence to the Newport Trial Group, along with expert reports.  *See* PAA Decl. at
10   ¶ 21.  Reproduction and review of that material—even to the extent still necessary
11   under Rule 26(b)(2)(C)(i)—would require a minimum of 40 hours of professional
12   time at considerable expense to NIC, along with substantial time investment by
13   NIC corporate officers.  *See* PAA Decl. at ¶ 21.  That burden substantially
14   outweighs any benefit NTG might glean from scientific data that is not at issue in
15   this case.

16        This Court should sustain NIC's objections to RFP Nos. 100 and 101, and
17   RFA Nos. 10 and 11, which concern NIC's irrelevant "immune support" claim.

18

19   **C.  NTG's discovery requests targeting Emord's communications with**
20        **Scott Vick are harassing, and seek irrelevant and privileged**
21        **information that is not proportionate to this litigation (*see* RFP Nos. 65**
     **and 66)**

22        NTG's Request for Production Numbers 65 and 66 seek any
23   communications between NIC or the Emord Firm and "Scott Vick from October
24   1, 2015 through the present."  *See* Dkt. 360 at 16.  The Special Master granted
25   NTG's motion to compel those communications and, without analysis, ordered
26   that NIC must produce information outright without the ability to designate
27   responsive files privileged.  *See* Dkt. 360 at 23, ¶ 2(a)(i).  That ruling is legally

28

1   unsupportable and is tantamount to a waiver of privilege (both for parties in this

2   case and Emord's outside clients).

3          Scott Vick is a California attorney and the name partner in the Vick Law

4   Group, a Los Angeles-based law firm specializing in securities litigation.  In 2016,

5   attorney Vick contacted Emord & Associates (NIC's counsel) with evidence that

6   Vick's client, DeviantArt.com, had been subject to an NTG extortion attempt.

7   Mr. Vick sponsored a declaration explaining that the "consumer" purchase in

8   NTG's matter had originated from NTG's corporate servers.  *See* Dkt. 131-5 (June

9   20, 2016).  On July 20, 2016, this Court limited discovery to the eight SAC cases.

10  *See* Dkt. 155.  The Court later denied NIC's request to take discovery concerning

11  the *Hanberg v. Deviantart.com* matter.  *See* Dkt. 198.  Attorney Vick is not,

12  therefore, a trial witness in this matter.

13         The Vick Law Group has consulted with the Emord Firm in other matters

14  unrelated to this litigation.  *See* PAA Decl. at ¶ 17.  Indeed, the Emord firm is

15  presently co-counsel with the Vick Law Group in unrelated litigation pending in

16  the Northern District of California.  *Id.*  Thus, the requests as written are *per se*

17  overbroad in that production of "all" communications with Scott Vick would

18  clearly reach content unrelated to this case.  Those requests would also reach all

19  manner of communications without limitation (including personal conversations)

20  that have no relation to the claims or defenses in this action.  Such a broad

21  requests is disproportionate to litigation and seeks irrelevant material.

22         In March 2017, Clark Baker retained Attorney Vick to represent Baker's

23  individual interests as a witness in this case.  *See* Dkt. 364 at 10.  Mr. Baker's

24  independent representation was prudent given NTG's allegations against Mr.

25  Baker.  *Id.*  In April 2017, NIC and Baker executed a common interest agreement.

26  *Id.*  Emord & Associates remained counsel to Baker generally with respect to

27

28

Baker's prior role as NIC's agent and a non-party in possession of NIC's privilege material.

Given Attorney Vick's role as co-counsel with the Emord firm in other matters, and Vick's role as Baker's counsel in this case, communications exchanged between Emord and Vick during the pendency of this case (and certainly after June 2016) exclusively contain privileged communications between co-counsel in litigation.  That documentation is unquestionably privileged under the common interest doctrine, the attorney-client privilege, and the work product doctrine.

More concerning, however, is that the RFPs concerning Mr. Vick are clearly overbroad, as they would require Emord to produce communications exchanged with Vick in an entirely unrelated matter involving unrelated clients. In addition, the Special Master precluded NIC from asserting privilege over those communications.  *See* Dkt. 360 at 23.  Thus, the Special Master has purported to waive privilege on behalf of Emord's and Vick's other clients who are not parties to this litigation.

That position is fundamentally unsupported under the law and facts, and would create a substantial injustice, virtually guaranteeing that Emord must move into contempt to protect its other client's confidential litigation files and, likely, the confidential and privileged information exchanged with Vick in this case as co-counsel to Baker.

Underscoring NIC's objections here, the communications with Vick are not relevant to any claim or defense pending in this case.  NTG has failed to explain how those counsel-to-counsel communications have any bearing on this case other than to reveal internal strategy and privileged communications among two attorneys of record.  The court precluded discovery into the DeviantArt.com

matter, meaning that the only remaining information to be had from NTG relates to clearly privileged correspondence among counsel.

This Court should sustain NIC's objections here and deny NTG outright any communications exchanged with Scott Vick.  At minimum, even if this Court determines that files should be produced, NIC must have the ability to properly designate documents privileged through a compliant privilege log, and responsive information must be limited to issues relevant in this case.

**D. NTG's discovery requests seeking "all" correspondence with "subpoenaed parties" are overbroad, and seek privileged and irrelevant information that is not proportionate to this litigation (*see* RFP Nos. 61 and 62)**

NTG's Requests for Production Nos. 61 and 62 seek all communications that Emord or NIC exchanged with any subpoenaed party in this case, including communications with or between counsel.  NIC objected to those requests on several grounds, including attorney-client privilege and work product doctrine. *See* Exh. B at 29 (¶2), 32 (¶13), 67-69, 72-73.  The Special Master erroneously compelled production of all documents responsive to Requests 61 and 62, and precluded NIC from asserting privilege.  *See* Dkt. 360 at 23-24.  Because responsive information is, in fact, privileged, and the Requests are legally infirm, the Court should sustain NIC's objections to the Special Master's Order compelling that information.

At the outset, NTG has not demonstrated that communications exchanged between NIC's counsel and subpoenaed parties are relevant to any claim or defense in litigation.  NTG did not show that requiring NIC's counsel to collect and produce such information is proportionate to NTG's needs in this case.

The Requests also seek NIC's work product.  These requests seek information related to NIC counsel's litigation activity in this *instant* case, to wit, contacts with potential witnesses, discussions related to subpoenas, scheduling

issues concerning depositions, conversations concerning the scope of potential testimony, discussions concerning draft affidavits, etc.  The only relevant need for that information by defense counsel would be to review plaintiff's litigation strategy and collect counsel's litigation files.  In context with NTG's interrogatories that sought similar information—which the Special Master denied—the Special Master held that "[t]he primary purpose of the work product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *Holmgren v. State Farm Mut. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)).

Courts in this district have explained that "[a]lthough the identity and location of witnesses that may have knowledge of any discoverable matter is not protected, the identity of witnesses interviewed by opposing counsel is protected." *See Ferruza v. MTI Tech.*, No. SACV 00-0745 DOC, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002) (collecting cases).  "The rationale behind this distinction is that if the identity of interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy." *Id.*; *see also Laxalt v. McClatchy*, 116 F.R.D. 438, 443 (D.Nev. 1987) ("there is a possibility that a discussion of factual matters may reveal counsel's tactical or strategic thoughts" and that revelation of information could "easily lead to the disclosure of mental impressions or strategy, in that a picture of the opposition's trial strategy could be intuited from knowledge of what the opponent's investigators know or do not know").

Under similar reasoning, Courts have held that "E-mails or letters from counsel to the witness are protected by the work product doctrine."  *See Hatamian v. Advanced Micro Devices, Inc.*, No. 14-CV-00226-YGR(JSC), 2016 WL 2606830, at *6 (N.D. Cal. May 6, 2016); *Schoenmann v. Federal Deposit Insurance Corporation*, 7 F.supp.3d 1009, 1014 (N.D. Cal. 2014) ("With respect

to the email communications …, as well as the draft declarations attached and exchanged during those communications, the Court finds that these materials constitute work product and are protected from disclosure.").  In explaining the critical protections borne from *Hickman*, and in the context of non-party witness communications, one court explained:

> Among the reasons that inspired [the *Hickman*] holding, perhaps the most important was the Court's desire to protect the incentive system that the justices believed was so central to the vitality and the reliability of the adversary system.  In short, the principal purpose of the work product doctrine was to encourage lawyers to aggressively investigate the facts related to their case.  The *Hickman* court obviously believed that severe damage would be done to that incentive system, and thus to the truth finding process, if, without a showing of special justification, lawyers could discover from their opponents copies of witness statements, be they adopted or not.  In *Hickman*, as appears to be the case here, counsel had other means by which he could discover the factual information that was recorded in the witness statements that his opponent had secured.

*In re Convergent Techs. Second Half 1984 Sec. Litig.*, 122 F.R.D. 555, 559–60 (N.D. Cal. 1988).  In this case, compelling the production of communications exchanged between NIC's counsel and non-party subpoena recipients would invade NIC's work product in at least two critical ways.

   First, emails exchanged between the non-party subpoena recipients are equivalent to witness statements that are historically protected work product under *Hickman* and its progeny.  "In *Hickman v. Taylor*, 329 U.S. 495 (1947), our Supreme Court considered 'the extent to which a party may inquire into oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen.'"  *Frank Brunkhorst Co., LLC v. Ihm*, No. 11CV1883-CAB (KSC), 2012 WL 12868265, at *4 (S.D. Cal. Dec. 3, 2012).  "Noting that the identities of all witnesses were well known and that the adverse party had unimpaired access to the

witnesses and other evidence about the accident, the Supreme Court concluded that the witness statements and the attorney's memorandum were not discoverable 'without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of [the adverse party's] case or cause him any hardship or injustice.'" *Frank Brunkhorst Co., LLC v. Ihm*, No. 11CV1883-CAB (KSC), 2012 WL 12868265, at *4 (S.D. Cal. Dec. 3, 2012). NTG, of course, has alternative means to obtain factual information from subpoenaed non-parties that does not infringe on work product protections: NTG can contact those parties or notice their depositions.

Second, compelling disclosure of "all communications" with subpoenaed parties would infringe NIC counsel's mental impression work product. The resulting production would clearly reveal the extent to which NIC prioritizes certain witnesses over others, and NIC's legal strategy in anticipation of trial. For example, those communications would reveal NIC's decision to take (or not take) depositions of certain witnesses. The volume of communication with non-party witnesses indicates precisely which witnesses are priorities for NIC. Thus, even a privilege log would disclose the litigation strategy sought to be protected by the privilege. The Special Master plainly erred in denying NIC's work product privilege objection. NTG's requests are not limited to factual matters, and serve no purpose other than to probe NIC counsel's communications in preparation for trial.

Next, NTG's RFP Nos. 61 and 62 are overbroad because they necessarily seek information unrelated to this case. NTG understands that Carter-Reed LLC (and its parent company, Basic Research) was a client of Emord & Associates, P.C. in 2016 concerning entirely unrelated legal matters. NIC issued Basic Research and Carter-Reed subpoenas in this case. Thus, by seeking "all communications" with subpoenaed parties *and their counsel included*, NTG is seeking to compel confidential and privileged information concerning Emord & Associates' other

clients, which involves legal matters not relevant to this litigation.  Worse, the Special Master ordered NIC and Emord to produce that information *without asserting privilege*, meaning that, here again, the Special Master has effected a broad waiver of the attorney-client privilege on behalf of Emord's other clients.

Furthermore, NTG's RFP Nos. 61 and 62 seek privileged information exchanged between NIC's attorneys and counsel for non-party subpoena recipients that is protected under the common interest doctrine.  "The common interest privilege applies where (1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not been waived."  *In re Mortg. & Realty Trust*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997) (citing *In re Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d 120, 126 (3d Cir.1986); *Griffith v. Davis,* 161 F.R.D. 687, 692 (C.D.Cal.1995)).  "Pending litigation is not necessary to invoke the common interest extension of the attorney-client privilege: the privilege ... is irrespective of litigation begun or contemplated."  *Id.* (explaining that "[t]he privilege applies whenever the communication is made in order to facilitate the rendition of legal services to each of the clients involved in the conference.").

"For the common interest privilege to apply, the party asserting the privilege must show: (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived."  *Ellis v. J.P. Morgan Chase & Co.*, No. 12CV03897YGRJCS, 2014 WL 1510884, at *6 (N.D. Cal. Apr. 1, 2014) (citing *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)).  No written agreement is required, and that agreement may be "implied from conduct and situation, such as attorneys exchanging confidential communications from

clients who are or potentially may be codefendants or have common interests in litigation." *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012).

Most of the communications NIC counsel exchanged with counsel for non-parties subpoenaed in this case concerned privileged information under the common interest doctrine. For example, NIC subpoenaed companies who were sued by NTG through fraudulent litigation, and who were therefore victims of the NTG RICO enterprise. Those entities included Himalaya Drug Company, Nutrisystem, Nature's Way, Magna, and Kiss My Face. Communications concerning this case and the underlying claims against those companies were exchanged between NIC counsel (Emord) and attorneys for those parties. *See* PAA Decl. at ¶ 16. The subject of those communications involved broader issues that were not purely factual in nature and, instead, included discussion of privileged material relevant to those entities' potential involvement in this litigation. Significantly, because each of those parties were former litigants against NTG, and counsel for those parties had discussions with Emord's counsel that were not purely factual in nature, the information exchanged included content within the work product privilege, which is thus protected by the common interest doctrine.

Continuity Products LLC was subpoenaed by NIC. Continuity had a California State Court proceeding pending against Joshua Weiss, who was a business partner with Defendants Scott Ferrell and Dave Reid. Continuity's complaint referenced potential unlawful activity by NTG. *See* Exh. G. Continuity and NIC exchanged communications specifically related to a common legal interest, to wit, the privileged nature of Mr. Weiss's email that became the subject of at least ten pleadings in this case. *See, e.g.,* Dkt. Nos. 198, 202, 207, 244, 245, 270, 274, 308, 309, 325, 327. Continuity and NIC had a common legal interest, and communication between NIC's and Continuity's legal counsel was designed to

further that interest.  In their respective lawsuits, both NIC and Continuity argued that Weiss's conduct was unlawful and his email was not privileged.  *See* Exh. G at 319-320 (citing NIC's pending complaint); Dkt. 202-1 at 221-22 (Continuity letter arguing that NTG's "positions and conclusions concerning [counsel's] knowledge and use of [the Weiss] email are incorrect").  The mental impressions and privileged communications between counsel are not subject to disclosure.  Thus, again, NTG's RFP Nos. 61 and 62 would reach content that is confidential and privileged.

The Special Master erred in compelling response to RFP Nos. 61 and 62, and this Court should sustain NIC's objections.  At minimum, the Court should allow NIC to properly designate files privileged in a compliant privilege log. Because NIC objected to those requests outright as overbroad, not proportionate, and seeking purely privileged materials, the Special Master did review a privilege log before determining that files must be disclosed outright.  Moreover, because the Special Master's Order purports to vitiate privilege on behalf of non-parties (including Emord's other clients), those affected non-parties should be given an opportunity to intervene or object before any order issues compelling production of their privileged material.

## III.   <u>CONCLUSION</u>

NIC objects to the Special Masters Order and NTG's requests generally to the extent those requests represent a deliberate attempt to put NIC and its counsel on trial in this case.  A substantial number of NTG's requests targeted information uniquely in NIC counsel's files, which is relevant only to counsel's role as an advocate in this case.  Half of NTG's requests seek information specifically from "Emord," and those requests often require NIC's counsel to reveal or produce information concerning clients or legal matters not related to this case.  *See generally* Exhs. B, C.  Those requests are harassing in nature and a disfavored

fishing expedition into counsel's litigation files.  *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in fishing expeditions.").  NTG's requests target "communications" generated during this pending litigation.  Those communications are not factual evidence germane to the underlying claims.  In NTG's moving papers (Dkt. 337), it was unable to provide any explanation for how these requests are relevant and proportionate to any claim or defense in this action.  For all of the foregoing statements, NIC requests that this Court grant NIC's objections, and take the following action: (1) overrule the Special Master's Order compelling production of information in response to NTG's RFA Nos. 10 and 11; (2) overrule the Special Master's Order compelling production of information in response to NTG's RFP Nos. 61, 62, 65, 66, 100, and 101.  NIC does not appeal the balance of the Special Master's Order, and will comply with the remainder of the Order as written.

DATED:  July 5, 2017

Respectfully submitted,

NATURAL IMMUNOGENICS CORP.


By:   */s/ Peter A. Arhangelsky*
      Peter A. Arhangelsky
      Joshua S. Furman
      Emord & Associates, P.C.
      *Attorney for Plaintiff Natural Immunogenics Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2017 the foregoing, **PLAINTIFF'S OBJECTIONS TO SPECIAL MASTER'S ORDER IN DOCKET NO. 360** was electronically filed using the Court's CM/ECF system and was sent by that system to the following:

Brendan M. Ford, Esq.
bford@FordDiulio, PC
650 Town Center Dr, Ste 760
Costa Mesa, CA 92625
Tel: (714) 384-5540
*Attorney for Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover,Matthew Dronkers, Taylor Demulder, Sam Pfleg,*

David J. Darnell, Esq.
ddarnell@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
*Attorney for Newport Trial Group, Andrew Baslow,*
*Scott Ferrell, Ryan Ferrell, David Reid, and Victoria Knowles*

  */s/ Peter A. Arhangelsky*
Peter A. Arhangelsky, Esq.