Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
EMORD & ASSOCIATES, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., <br><br> Plaintiff, <br><br> v. <br><br> NEWPORT TRIAL GROUP, et al., <br><br> Defendants. | Case No. 8:15-cv-02034-JVS (JCG) <br><br> **DECLARATION OF PETER A. ARHANGELSKY IN SUPPORT OF PLAINTIFF'S RULE 56(d) MOTION** <br><br> Judge: Hon. James V. Selna |

## DECLARATION OF PETER A. ARHANGELSKY

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. I, Peter A. Arhangelsky, am over the age of 18 and competent to testify to the information below. All matters contained herein are of my own personal knowledge unless stated as based upon information and belief.

2. I am counsel of record for Natural Immunogenics Corp. ("NIC") in the above-captioned matter. I am a principal in the firm of Emord & Associates,

P.C.  I submit this declaration in support of Plaintiff NIC's Motion for relief under Rule 56(d) of the Federal Rules of Civil Procedure.  For the reasons set forth below, NIC cannot at this time oppose the Defendants' dispositive motions filed under Docket Numbers 375 and 387.

3.    Throughout this litigation, defendants have used categorical privilege objections to withhold all responsive communications between NTG and Non-NTG Defendants Demulder, Torres, Nilon, Schoonover, Pfleg, Sandoval, and Dronkers.

4.    NIC anticipated that privilege issues and disputes would be a substantial aspect of this case.  In NIC's Rule 26(f) report filed as Dkt. 90 (May 2, 2016), NIC explained that privilege issues must be litigated, likely under the crime-fraud exception:  "NIC expects to move this Court for an order compelling disclosure of documents that qualify under the crime-fraud exception or, at a minimum, for an order compelling production of documents of *in camera* review under the crime-fraud exception."  *See* Dkt. 90 at 9

5.    NIC served written discovery requests on defendants in June 2016.  In response, NTG categorically refused to produce responsive information related to its client communications, internal correspondence concerning the eight SAC cases, and many other relevant documents including, e.g., billing records and retainer agreements.  On May 9, 2017 this Court rejected defendants' request to supply truncated privilege logs, and ordered the parties to produce standard logs under the rules.  *See* Hearing Tr. at 8 (May 9, 2016) ("I don't know how you can really test a prima facie showing of the state of privilege without knowing the author, addressee, subject, some – you know, the Bates number identification, things that would usually go into a privilege log.").

6.    NTG categorically refused to produce privilege logs in their initial discovery responses from August 2016.  NIC threatened to compel responses and, after a period of negotiation between the parties, NIC successfully compelled

production in March 2017.  *See* Dkt. 241.  The Special Master's Order in Docket No. 241 memorializes the parties' dispute concerning NTG's privilege logs.  The Special Master sanctioned NTG for its intentional delay:

> The very nature of this litigation also should have informed NTG Defendants' expectations.  From at least July 20, 2016, NTG Defendants reasonably should have known that it would be necessary to review the records of the eight class action litigation cases identified in the SAC to determine which documents to produce, if any, and which documents to protect under the attorney-client privilege and the work product doctrine.  Instead, the NTG Defendants took the unprecedented stance that they would not produce any privilege logs unless they were ordered to do so (or changed their mind).  That refusal was inexcusable and undoubtedly contributed to a lot of the delay in NTG Defendants providing a privilege log.

*See* Dkt. 241 at 17-18.

7.     The privilege logs were logically necessary before NIC could pursue a motion to compel privileged material contained in files eventually listed in the privilege logs themselves.  NTG began producing supplemental privilege logs in December 2016, and eventually completed their rolling productions in March 2017.

8.     Through the first five months of discovery, while NIC was contemporaneously litigating issues with NTG's discovery responses, NIC focused discovery on non-party sources.  That non-party discovery was essential to discovery motions that NIC later filed in this case, including NIC's "Crime-Fraud" Motion filed to Docket Numbers 291 and 292.  NIC subpoenaed several dozen non-parties for records, including but not limited to:  Nutrisystem, 1-800 Razors, Sprouts Farmers Market, AT&T Wireless (multiple subpoenas), Basic Research & Carter-Reed, ChromaDex, Cox Communications, Drugstore.com, Google Inc., Himalaya Drug Company, Kiss My Face, Magna-RX, Nature's Way, Pluralsight, Safety Call, the Vick Law Group, Sprint, Raquel Torres, Richard Richardson, Tracfone, Verizon Wireless, Continuity Products, and Yahoo Inc.

9.     NIC diligently pursued its non-party discovery.  In September 2016,

NIC appeared in the Northern District of Texas before the Honorable Irma C. Ramirez to secure access to AT&T Phone Records for the defendants.  *See generally Natural-Immunogenics Corp. v. AT&T Wireless*, No. 3:16-mc-0078-N-BH (N.D. Tex. Sep. 2016).  NIC's motions before the Northern District of Texas were granted, and the ensuing AT&T production included evidence that corroborated NIC's claims in this litigation.

10.    In December 2016, NIC served its portion of a motion to compel documents under the crime-fraud exception to the attorney-client and work product privileges.  That combination motion also sought to compel allegedly "privileged" files on grounds that:  (1) the crime-fraud exception applies; (2) defendants have not shown that the documents are privileged *ab initio*; (3) defendant waived privilege by asserting defenses and argument that requires examination of privilege material (e.g., their "tester" argument); and (4) that NIC has a compelling need for all documentation designated "work product" which justifies production under the precedent.  *See generally* Dkt. 291.  NIC's final filing, including the supplemental memorandum, sought the production of 1,696 documents presently withheld on privilege grounds.

11.    NIC's "Crime-Fraud" motion (Dkt. Nos. 291, 292) has incurred substantial delay.  NIC served its original portion of the Rule 37-1 Joint Stipulation on Defendants in December 2016.  The Defendants negotiated a seven-week period for response, making their responsive portion due in late January 2017.  In early January 2017, NIC asked this Court to appoint a Special Master, citing problems in the discovery process and the likely need to review voluminous privileged documents.  NIC informed the Court that "NTG's refusal to provide privilege logs has prejudiced NIC in its ability to fully advance its interests through the crime-fraud motion."  *See* Dkt. 211 at 16.  On January 9, 2017, the Court issued an "Order Re Intent to Appoint Discovery Special Master."  *See* Dkt. 214.  The Court appointed Special Discovery Master Hon. Rosalyn Chapman (Ret.) on

January 23, 2017.  *See* Dkt. 223.

12.    The parties met telephonically with Judge Chapman on February 6, 2017 for an initial status conference.  Following that initial status conference, NIC served a revised version of its Crime-Fraud motion on February 21, 2017.  NIC received the Defendants' responsive portion to that Joint Stipulation on March 7, 2017.  NIC then filed its Motion to Compel with the Special Master on March 8, 2017.

13.    On March 10, 2017, the Court issued an Order "Clarifying Filing Requirements of Discovery Matters before the Special Master."  *See* Dkt. 239. That Order required that the parties file all pleadings to the public docket, which, in turn, required NIC to resubmit its Crime-Fraud motion as a public CM/ECF document before the Special Master would deem that motion "pending."  Because NIC's motion contained information deemed "confidential" under the Protective Order (Dkt. 87), NIC was required to meet and confer with defendants and non-parties concerning that information.  *See* Local Civil Rule 79-5.2.2.  NIC contacted non-parties and defense counsel beginning March 13, 2017.  On March 27, 2017, NIC filed an "Application Re:  Under Seal Filing Pursuant to LR 79-5.2.2(b)" with the Special Discovery Master.  *See* Dkt. 263.  That filing requested permission to file certain exhibits "Under Seal" and others with redactions.  *Id.*  The Special Master granted NIC's application on April 4, 2017.  *See* Dkt. 276.  NIC then filed its complete Motion to Compel Documents on April 14, 2017.  *See* Dkt. Nos. 291, 292.

14.    NIC's Motion (Dkt. 291) identified 1,696 documents for production. Those documents are indispensable to NIC's case, and directly relevant to statements advanced by the Defendants in dispositive motions (Dkts. 375 and 387). As appendices to NIC's Crime-Fraud motions, NIC identified a serious of documents that are relevant to the Non-NTG Defendants' understanding of the NTG litigation scheme.  Those files include, for instance, communications

exchanged between the NTG firm (or its agents) and the Non-NTG Defendants at times immediately *before* the Non-NTG Defendants incurred their staged legal injuries, which occurred under highly suspicious circumstances. Attached hereto as **Exhibit A** is a true and correct copy of NIC's Appendix A to the Crime-Fraud motion, which identifies more than one thousand documents by category for which NIC seeks production. Attached hereto as **Exhibit B** is a true and correct copy of NIC's Supplemental Appendix C to NIC's Supplemental Memorandum in Support of the Crime-Fraud motion, which identifies and additional 649 documents for which NIC sought production.

15. At the time, in April 2017, NTG had logged 4,616 allegedly "privileged" documents in discovery. NIC's Motion to Compel seeks production of 1,696 entries, which represents a subset that bears directly on NIC's RICO claims and, in particular, reveal the extent to which NTG's operation falls within the crime-fraud exception to privilege. *See* Dkt. 294 at 4-5 (summarizing document requests).

16. The Special Master has not ruled on NIC's pending Motion to Compel. Because that motion seeks production of highly probative and material information concerning NIC's claims in this case, a final ruling on the motion is no longer possible within the existing discovery calendar. First, the Special Master has not yet ruled on whether production of documents for *in camera* review should occur. Under Ninth Circuit precedent,[1] the Court should perform *in camera* review when evaluating whether to apply the crime-fraud exception, and the Court may consider the "privileged" communications themselves. To the extent the Special Master orders *in camera* review, a final order on privilege is likely not forthcoming in the near future. Second, even if the Special Master were to issue a final order on Monday, July 24, 2017 (which is perhaps unrealistic given that the parties have yet

---

[1] *See In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009).

to receive a Tentative Order), that Order will be appealed to the District Court, meaning a Final Order on the substantial privilege issues would not be possible before August 28, 2017 at the earliest.  This Court has scheduled hearings for the Defendants' Motions for Summary Judgment for August 14 (Dkt. 387) and August 24 (Dkt. 375).  NIC will not, under any circumstances in this case, receive the relevant documentation (or even a final ruling concerning same) before the Hearings on dispositive motions.  NIC most certainly does not have access to the majority of relevant information in this case as of the date NIC is obligated to oppose the dispositive motions on July 24th and 27th.

17.    Defendants have also precluded examination of relevant facts through improper privilege objections at their depositions.  NIC has deposed Defendants Taylor Demulder, Matthew Dronkers, Andrew Nilon, Sam Pfleg, and Giovanni Sandoval.  NIC deposed Mr. Schoonover twice on January 11, 2017 and June 2, 2017.  NIC has also deposed non-party Raquel Torres and Richard Richardson. Mr. Schoonover's recalled deposition was necessary after Schoonover's counsel precluded him from answering even the most basic questions about his Himalaya Drug lawsuit on privilege grounds.

18.    Attached as **Exhibit C** is a true and correct copy of the deposition transcript for Taylor Demulder's deposition on May 12, 2017 in Las Vega, Nevada.

19.    Attached as **Exhibit D** is a true and correct copy of the deposition transcript for Andrew Nilon's deposition on June 7, 2017 in Irvine, California,

20.    Attached as **Exhibit E** is a true and correct copy of the deposition transcript for Sam Schoonover's deposition on January 11, 2017 in Los Angeles, California.

21.    Attached as **Exhibit F** is a true and correct copy of the deposition transcript for Sam Schoonover's deposition on June 2, 2017 in Irvine, California.

22.    Attached as **Exhibit G** is a true and correct copy of the deposition

transcript for Raquel Torres's deposition on June 8, 2017 in Irvine, California.

23.    As reflected in the deposition transcripts themselves (Exhibits C, D, E, and F), the Non-NTG Defendants professed to have no working memory of their underlying NTG cases.  At deposition, Non-NTG Defendants Demulder, Schoonover, and Nilon could not recall basic information that they later sponsored in declarations supporting dispositive motions.  *See* Dkt. Nos. 375-2, 375-2, 375-4, 375-5, 387-1.  Moreover, now in declarations before this Court, Non-NTG defendants have provided detailed testimony concerning their relationship with NTG and its agents, which concerns the very same subject matter that NTG previously precluded NIC from investigating in discovery through "privilege" objections.  A summary of that problematic testimony is included in NIC's accompanying Motion under Rule 56(d), to which I offer this declaration in support.

24.    Much discovery remains in this case, and all of that discovery is necessary before NIC can adequately and properly respond to defendants' dispositive motions.  First, NIC intends to file motions to compel discovery (testimonial and documentary) based on the defendants' waiver of privilege through the submission of declarations and testimony in Dkt. Numbers 375-2, 375-3, 375-4, 375-5, and 387-1.  NIC has not been afforded an opportunity to examine defendants concerning that content because, to date, defendants have claimed that inquiry into any communication between NTG and Non-NTG Defendants is privileged.

25.    Second, NIC has met and conferred with defendants concerning a forthcoming motion for sanctions and to compel related to defendants' deposition misconduct.  In pertinent part, NIC seeks to compel responses to discovery inquiries where defendants improperly refused to allow answers to basic facts concerning the Non-NTG defendants' relationship with NTG.  Moreover, the Non-NTG Defendants' conduct was evasive and obstructionist to the extent they

---

DECLARATION OF PETER ARHANGELSKY ISO NIC's RULE 56(d) MOTION

8

collectively used boilerplate "I don't recall" responses to avoid answering questions in sensitive areas.  They refused to answer despite having contemporaneous discovery responses that conflicted.  Attached as **Exhibit H** is a true and correct copy of NIC's June 4, 2017 correspondence regarding NIC's motion for sanctions.  Attached as **Exhibit I** is a true and correct of NIC's July 7, 2017 follow-up letter concerning NIC's motion related to deposition misconduct.

26.    Third, NIC has requested leave to pursue additional discovery from Defendants relevant to Strataluz, LLC and other suspicious lawsuits pursued by the Non-NTG Defendants.  *See* Dkt. 367.  Discovery into the Non-NTG Defendants' cases is likely to produce evidence relevant to NIC's opposition of the dispositive motions, because that discovery would include communications between NTG and Non-NTG defendants revealing the Non-NTG Defendants' knowledge of NTG's litigation practices.  Those documents and communications are also likely to contain information revealing the extent to which the Non-NTG Defendants were aware that their legal cases were false and staged.  That information is likely to corroborate admissions made by Defendants Nilon and Schoonover earlier in 2015.

27.    Fourth, NIC has been unable to proceed with depositions of NTG's attorney defendants given that NTG asserts privilege over all material facts and communications relevant to the underlying eight SAC cases.  NIC has pending a motion to compel, which also addressed global privilege issues in this case.  *See* Dkt. 291.  That motion has been pending since at least April 14, 2017.  *Id.*  Until the Court rules on the pending privilege dispute, NIC's deposition of attorney defendants would be unproductive and a waste of the parties resources.  Because NIC needs to examine those witnesses on the very same material presently at issue in the pending motions (*see, e.g.,* Dkt. 291), depositions of the attorney defendants would simply renew the same privilege objections and disputes already before the Court.

28.    Finally, as of the filing of this motion, expert discovery has not

completed.  Under the Court's modified schedule (*see* Dkt. 363), expert discovery is set to close on August 28, 2017.  The parties' rebuttal disclosures of experts and reports are due on August 7, 2017, one week before hearings begin on defendants' dispositive motions.  Expert work in this case is relevant to the pending dispositive motions, in part, because at least one of NIC's expert intends to proffer testimony concerning NTG's fee arrangements with Non-NTG defendants.  That evidence will be relevant to predicate acts of bribery as alleged in NIC's SAC.

Executed on this 24th day of July, 2017.


 */s/ Peter A. Arhangelsky*
Peter A. Arhangelsky