Brendan M. Ford, Bar No. 224333
FORD & DIULIO PC
650 Town Center Drive, Suite 760
Costa Mesa, CA 92626
Telephone: (714) 450-6830
Facsimile: (844) 437-7201
Email:  bford@forddiulio.com

Attorneys for non-NTG Defendants

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>Defendants. | Case No.  8:15-cv-02034-JVS-JCG<br><br>**EVIDENTIARY OBJECTIONS TO DECLARATION OF PETER ARHANGELSKY AND EXHIBITS AND PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT DEMULDER'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>[Reply Memorandum of Points and Authorities and Supplemental Request for Judicial Notice filed concurrently herewith]<br><br>Date:        August 14, 2017<br>Time:       1:30 p.m.<br>Ctrm:       10C<br>Honorable:  James V. Selna<br><br>**ORAL ARGUMENT REQUESTED** |

# OBJECTIONS TO DECLARATION OF PETER A. ARHANGELSKY [DKT. 403-2] AND EXHIBITS [403-3 THROUGH 403-10; 403-12 THROUGH 403-40; 403-42 THROUGH 403-66], DKT. 404, AND NIC'S REQUEST FOR JUDICIAL NOTICE [DKT. 406, 406-2 THROUGH 406-31; 406-33 THROUGH 406-34; 406-36 THROUGH 406-47; 406-49 THROUGH 406-52; 406-54 THROUGH 406-59]

In support of Plaintiff Natural-Immunogenics Corp.'s Response to Defendant Taylor Demulder's Motion for Summary Judgment (Dkt. 387), on July 24, 2017, Plaintiff Natural-Immunogenics Corp. ("NIC") filed the "Declaration of Peter A. Arhangelsky in Support of Plaintiff's Opposition to Defendant Demulder's Motion for Summary Judgment or Partial Summary Judgment dated July 24, 2017, which is Dkt. 403-2 (the "Arhangelsky Declaration"), and NIC's Request for Judicial Notice ("RJN"), which is Dkt. 406. In support thereof, the Arhangelsky Declaration attaches 64 exhibits, which are Dkt. 403-3 through 403-66. NIC's RJN attached 59 exhibits, which are Dkt. 406-1 through 406-59. Demulder objects to portions of the foregoing Arhangelsky Declaration, certain Exhibits attached thereto, and certain Exhibits attached to NIC's RJN, as follows.

## I. PURPORTED EVIDENCE HAVING NOTHING TO DO WITH DEMULDER IS NOT RELEVANT AND IS INSTEAD IMPROPER CHARACTER EVIDENCE.

### A. NIC's "Guilt by Association" Strategy Is Improper.

As an initial matter, the vast majority of the Arhangelsky Declaration and the Exhibits attached to such Declaration and the Exhibits attached to NIC's Request for Judicial Notice are irrelevant to Demulder's instant Motion pursuant to Federal Rule of Evidence 401 and constitute improper character evidence in violation of Federal Rule of Evidence 404(a) and (b)(1) because they have nothing to do with Demulder's conduct in filing his sole lawsuit against Carter-Reed Company, LLC ("Carter-Reed") in the United States District Court for the Southern District of California entitled *Demulder v. Carter-Reed Co., LLC, et al.*, No. 12-cv-2232 (S.D. Cal. filed 9/13/12) (hereinafter "the Underlying Action") alleging the violation of California Penal Code § 630 *et seq. See*

Arhangelsky Decl. ¶¶ 4-11, 13-41, 43-50, 52, 66 & Exs. 1 [at 7-105, 7-8, 15, 19-31, 32-44, 34 line 8346, 35, 36, 41, 44, 48-55, 67, 68, 69, 70, 74, 75, 76, 77, 81-86, 89, 90, 102, 103, 104, 105, 105-108, 106-109, 106 lines 4628, 4629, 4630; 107 lines 4696-4704; 108 lines 4705-4708 and 4712; 108 line 4712; 109 line 4745; 110-268, 269-273, 274-281, line 8242; NIC SoF 105-109; ¶ 106], 2, 3, 4, 5 [at 13-14],[1] 6,[2] 7,[3] 8, 10 [at NTG000219-223], 11, 12, 13, 14, 15, 16, 17, 18, 19 [at 9], 20, 21, 22 [at 2-3], 23, 24 [at 3], 25, 26 [at 3], 27 [at 2-3], 28 [at 3, 6], 29, 30 [at NTG000200], 31 [at 103:14-18], 32, 33, 34, 35, 36 [at 2-3], 37 [at 22], 38, 40 [at NILON00016], 41 [at SCHOONOVER00001-00013], 42, 43 [at 11-12, 13-14, 262], 44, 45[4], 46 [at 12], 47 [at 4], 49, 51, 53, 54, 55, 56, 57, 58, 59 [DRONKERS00001], 60, 61 [CHROMADEX00003-04], 62, 63 [at NTG000200], 64, and 68[5]; NIC's RJN Exs. 2, 3 [at 14-15], 4 [2, 9-14, 16, 40, 42], 5 [¶¶ 8, 9, 10, 11, 12, 13], 6 [at 11, 21, 36-37, 73-78, 82-84, 90, 93], 7 [at 1-2; ¶¶ 7, 10, 11, 12, 13, 15, 20, 26-37, 41, 43], 8 [¶ 7], 9 [¶ 8], 10 [¶ 8], 11 [¶ 8], 12 [¶ 8], 13 [¶ 4], 14 [at 6], 15 [at 42-44, 76-78, 76-82, 81-82], 16 [at 6], 17 [at 7, 19-20], 18 [¶¶ 2, 5], 19 [at 13-14; 14-15; 17-18; 18:5-7; 20:19-25; 21:1-25; 22:1-24; 23:21-24], 20 [¶¶ 4-13], 21 [¶¶ 5-17; 8-15; 18(d), 18-20], 22 [¶¶ 21-23], 23 [at 8, 9], 24 [at 16-17, 22, 39, 46-47, 73, 75, 81, 88, 91, 102, 137], 26 [at 23, 38:5-17, 44-48, 60, 71-72], 27 [at 8-9, 9, 11-12, 12, 43-45], 28 [at 64, 66-1, 76-77, 95, 97-99, 105-107, 108, 124], 29 [at 16, 35-36, 38-39, 39-40, 48, 57-58, 58-59, 58-74, 66-67, 83-84], 30 [at 6, 13], 31 [at 9], 33 [at 2-11], 34, 36 [at 3], 37 [at 9, 19], 38 [at 9, 20-21, 26-27, 27-28], 39 [at 99-100], 40 [at 33], 41, 42 [at 2], 43 [¶ 4], 44, 45, 46, 47, 49, 50, 51 [at 1], 52, 54, 55 [¶¶ 2, 3, 4, 5], 56, 57 [at 16-17, 20-22, 26, 30-31 60-61], 58 [at 16-17, 28-32, 36-37, 39-40, 41, 86, 87, 88, 92-93, 130], 59 [¶¶ 7-10].

---

[1] NIC has misidentified Arhangelsky Decl. Exh. 5 as Exh. 6. *See* CSUF 20.
[2] NIC has misidentified Arhangelsky Decl. Exh. 6 as Exh. 7. *See* CSUF 20.
[3] NIC has misidentified Arhangelsky Decl. Exh. 7 as Exh. 8. *See* CSUF 20.
[4] CSUF ¶ 115 refers to Exh. 81 as "Nilon Chromadex call". No such Exhibit was attached to Arhangelsky's Declaration. To the extent that NIC intended to mean Exhibit 45, such Exhibit is objectionable.
[5] CSUF 193 refers to Arhangelsky Ex. "68," which does not exist. In an abundance of caution, Demulder objects to Ex. "68" to the extent that it was misnumbered and actually exists.

The allegedly wrongful conduct attributed to Demulder's co-defendants is essentially improper character evidence against Demulder that has no bearing on whether Demulder engaged in any criminal conduct as an alleged conspirator of the alleged RICO scheme relating to CIPA claims. Such litigation strategy brings new meaning to the concept of "guilt by association," which is "a philosophy alien to the traditions of a free society." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 932 (1982).

Courts look with particular scrutiny at claims for RICO, given its "damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v. Russo*, No. 12-CV-2780 (MKB) (RLM), 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013); *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 166 (E.D.N.Y. 2010) (stating that the assertion of a civil RICO claim "often has an almost inevitable stigmatizing effect on those named as defendants").

### B. NIC's Attempt to Conflate Demulder's Retainer Agreement with the Retainer Agreement of a Certain NTG Client Is Improper.

NIC relies upon Exhibit 30 to the Arhangelsky Declaration, NTG000200, to assert that "NTG retainer agreements reflect that NTG promised to pay its clients up to $2,000 for their participation in litigation regardless of outcome, with the attorneys keeping the balance of the recovery[.]" (CSUF ¶ 89.)

This purported evidence pertains to only a single NTG client, Andrew Nilon, and has nothing to do with Demulder, who did not have any retainer agreement with NTG, which makes sense given that he was solely represented by his attorneys of record at Kirtland & Packard, LLP in the Underlying Action against Carter-Reed. (SOF ¶ 28.) Moreover, Demulder's written retainer agreement contained no similar provision analogous to the provision at issue in Bates-numbered page NTG000200. *Id.* In particular, Section 3 of Demulder's Retainer and Fee Agreement states: "NO GUARANTEE AS TO RESULT: Client acknowledges that The Firm has made no

guarantee as to the outcome or the amounts recoverable on behalf of the Client or the class which Client has agreed to represent." (SOF ¶ 28; Demulder Decl. ¶ 11 Ex. 1.)

### C. The Clark Baker Declaration Is Inadmissible Hearsay Not Within an Exception.

NIC's reliance on the Declaration of Clark Baker executed on December 13, 2016, (RJN Ex. 21 ¶¶ 8-15; Dkt. 406-21), is improper as Baker's Declaration contains statements attributed to Defendant Nilon, which constitute inadmissible hearsay that is not within an exception. (Fed. R. Evid. 801, 802.) Similarly, the purported statements attributed to Defendant Schoonover in that same Declaration cannot be attributed to Demulder at all. NIC's RJN Ex. 21 ¶ 18(a)-(h). Further, the purported statements in Exhibit 28 to the Arhangelsky Declaration attributed to Defendant Nilon constitute inadmissible hearsay that is not within an exception. (Fed. R. Evid. 801, 802.) And, the purported statements in Exhibit 29 to the Arhangelsky Declaration attributed to Defendant Schoonover constitute inadmissible hearsay that is not within an exception. (Fed. R. Evid. 801, 802.)

The purported admissions against interest are not covered by a hearsay exception because the statements are attributed to either Defendant Nilon or Defendant Schoonover and not Demulder, the latter of whom is the movant of the instant Motion.

In addition, NIC's characterization in CSUF ¶ 91 is mistaken. The purported admission referenced "natural food and supplement companies falsely advertise products that don't do what their advertising claims say they do," and not simply "consumer litigation against companies" as claimed by NIC in CSUF ¶ 91. Needless to say, Demulder's action against Carter-Reed was not a false advertising action at all, but rather a statutory invasion of privacy claim. (SOF ¶ 34.) Thus, NIC's characterization is misleading.

Furthermore, the purported admission does not state that Demulder was "similarly recruited by NTG," as claimed by NIC. Indeed, there is nothing within Baker's

Declaration averring that Demulder was paid anything by NTG or by anyone else to serve as a plaintiff against Carter-Reed in the Underlying Action.

### D. NIC's Evidence Violates Fed. R. Evid. 403.

Even if the aforementioned purported evidence is treated as relevant and admissible evidence, the Court should exclude the Arhangelsky Declaration and the aforementioned Exhibits attached thereto as well as the aforementioned Exhibits attached to the RJN from consideration in regards to the instant Motion because their probative value is substantially outweighed by a danger of unfair prejudice, **confusing the issues**, or wasting time pursuant to Federal Rule of Evidence 403.

### E. NIC's Reliance Upon Mere Unsubstantiated Allegations of Wrongdoing From Opposing Parties Adverse to NTG Is Improper.

What is remarkable is that NIC has freely relied upon mere allegations of unsubstantiated wrongdoing from opposing parties adverse to NTG, (*See, e.g.*, RJN Exs. 16 [at 6], 23 [at 9], 38 [at 20], 44, 45, 46, 47, 49, 50, 51), which have absolutely nothing to do with Demulder. Such reliance is improper as such statements constitute inadmissible hearsay that is not within an exception.[6] Fed. R. Evid. 801, 802. It is black letter law that such allegations cannot be considered as admissible evidence on a motion for summary judgment. *Cf. National Account Mngt., Inc. v. Singhal*, No. SACV 07-333 JVS (RNBx), 2008 WL 11337010 (C.D. Cal. Mar. 14 2008) (Selna, J.) ("an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.") (emphasis in original) (citing Fed. R. Civ. P. 56(e)(2)). The fact that NIC would knowingly proffer such statements as "evidence" demonstrates its bad faith motivation to bias the Court against Demulder, which this Court should not tolerate.

---

[6] Similarly, the Carter-Reed allegations against Demulder are inadmissible hearsay statements as well.

## II. PURPORTED EVIDENCE RELATING TO DEMULDER'S CONDUCT IS NOT RELEVANT AND CONFUSES THE ISSUES.

Even purported evidence that does relate to Demulder's firsthand actions in regards to the Underlying Action, (*See* Arhangelsky Decl. ¶ 51 & Ex. 48; NIC's RJN ¶ 25, Ex. 25), is irrelevant to deciding the instant Motion, and, in any event, violates Fed. R. Evid. 403 because their probative value is substantially outweighed by a danger of unfair prejudice, ***confusing the issues***, or wasting time.

### A. Demulder's "Tester" Status Does Not Preclude Him from Summary Judgment.

NIC relies heavily upon evidence that Demulder was a "tester" for purposes of the Underlying Action in order to argue that "Demulder had no expectation of privacy or confidentiality in a call which [he] knew would (or indeed intended to be) recorded." (Arhangelsky Decl. Ex. 36 at 2-3; CSUF ¶ 103; Opp'n at 15:22-23.) As explained in *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377 (2011), "The statute protects the consumer's right to know *the audience* to whom he or she is speaking . . . ." *Id.* at 1393 (emphasis in original). This is precisely why the Court of Appeal in *Kight* held that it does not matter whether the secret listener is employed by the same company whose other employee is participating in the call. "Even if the speaker knows the information will be ultimately transmitted to other corporate employees, section 632 'protects against intentional, nonconsensual' monitoring or recording of telephone conversations 'regardless of the content of the conversation' ***or the fact that the information will be later disclosed***." *Kight*, 200 Cal. App. 4th at 1393 (emphasis added); *id.* at 1390 ("an actionable violation of section 632 occurs the moment the surreptitious recording or eavesdropping takes place, ***regardless whether it is later disclosed***") (emphasis added). Thus, whether or not Demulder knew or should have known that the contents of his conversation might wind up as evidence in a future CIPA lawsuit if it turned out that Carter-Reed did, in fact, record his conversation with its customer service representative, is irrelevant to the issue of whether his telephone conversation with "Melissa" constituted

a "confidential communication" under CIPA.  Indeed, a contrary interpretation of CIPA would eviscerate California's appellate interpretation of its own statutory scheme under CIPA and would do violence to its interpretation of what constitutes a "confidential communication" under CIPA.

Indeed, NIC's position that the only thing that matters to evaluating the "confidential communication" element under CIPA is the fact that Demulder admits that he was a "tester" plaintiff plainly contradicts California law. *Hataishi v. First Am. Home Buyers Protection Corp.*, 233 Cal. App. 4th 1454, 1466 (2014) ("[t]he issue whether there exists a reasonable expectation that no one is secretly listening to a phone conversation is generally a question of fact that may depend on *numerous specific factors*") (emphasis in original) (citing *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396 (2011)).

### B. Whether Or Not Demulder Revealed His Social Security Number "Gratuitously" Has No Bearing on the Instant Motion.

Whether or not Demulder "gratuitously" revealed his social security number to "Melissa," the customer service representative of Carter-Reed, during his call with her on September 6, 2012, (Arhangelsky Decl. ¶ 12 Ex. 9; NIC's RJN Ex. 1; CSUF ¶¶ 1, 35), has no bearing on the outcome of the instant Motion because Nevada law does not impose any type of "confidential communication" requirement as an element to a Nevada statutory invasion of privacy claim, and because even under California's CIPA, the contents of the communication at issue are irrelevant to determining the confidentiality of such communication.  For example, Demulder could have been discussing the weather with "Melissa," and such communication could have been treated as a "confidential communication" under CIPA if Demulder had an objectively reasonable expectation that his call with "Melissa" was not being simultaneously overheard or recorded by a third party, *i.e.*, someone other than himself or "Melissa".  "The [CIPA] statute protects the consumer's right to know *the audience* to whom he or she is speaking . . . ." *Kight*, 200 Cal. App. 4th at 1393 (emphasis in original).

### C. The Existence of Baslow's Communications Prior to Demulder's September 6, 2012 Telephone Call to Carter-Reed Proves Nothing.

NIC asserts that Baslow communicated with Demulder more than 30 times in August 2012, prior to Demulder's undisputed September 6, 2012 telephone call to Carter-Reed. (Arhangelsky Decl. Ex. 1; CSUF ¶ 118.)  In addition, although NIC asserts in its CSUF ¶ 118 that "Demulder completed his staged call to Carter-Reed on September 6, 2012 at 8:12 a.m.  He then contacted Baslow three hours later at 11:38am on September 6, 2012, confirming that the call was completed."  The citations in the CSUF are ambiguous.  "Judges are not like pigs, hunting for truffles buried in [the record]." *Gilbert v. Infinity Ins. Co.*, 186 F. Supp. 3d 1075, 1079 n.3 (C.D. Cal. 2016) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *Hollis v. Harrington*, No. EDCV 09-00097 ODW (AJW), 2013 WL 5325709, at *13 (C.D. Cal. Sept. 19, 2013) (citing *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988)) (nonmoving party must support genuine issue with evidentiary materials "without the assistance of the district court judge" and affirming a decision granting summary judgment in which the nonmovant failed to list genuine issues with "appropriate record citations").  Moreover, it is irrelevant.  Regardless of the extent to which Baslow communicated with Demulder prior to the latter's September 6, 2012 call to Carter-Reed, that does not support the proposition that Demulder could not satisfy the elements of his statutory invasion of privacy claim.  As mentioned above, Demulder's "tester" status did not deprive him of the ability to pursue his statutory invasion of privacy claim.

### D. NIC's Attempt to Invoke the Sham Affidavit Rule Is Without Merit.

Demulder's instant Motion relies solely upon his Declaration executed on July 14, 2017 (Dkt. 387-1), and so the references to his Declaration executed on May 12, 2017 (Dkt. 375-2), as occurring on the same date as his deposition in the instant action is misleading.  In reality, Demulder's instant Motion relies upon his Declaration executed at least two full months after his deposition in the instant action.

Furthermore, to the extent that NIC seeks to invoke the same affidavit rule, such rule does not apply under the circumstances. Indeed, federal courts have refused to invoke the sham affidavit rule in similar circumstances in which the deponent was unable to remember certain minor details at his deposition, and includes them via a subsequent declaration. *See Kyles v. Baker*, 72 F. Supp. 3d 1021, 1032 (N.D. Cal. 2014). Here, NIC made the strategic decision to ask an extremely broad question about Demulder's memory of his Underlying Action, (NIC's RJN Ex. 25 at 74:9-10), and avoided asking specific follow up questions about Demulder's expectation regarding whether his call was being either overheard or recorded and/or his consent to such recording. *Id.* at 74:9-122:13. Thus, NIC has itself to blame for failing to ask such pertinent questions. If anything, NIC carefully chose its questions to avoid receiving any harmful testimony from Demulder. NIC can't blame Demulder for selectively limiting the scope of the questions that it posed to him. Indeed, NIC's deposition of Demulder only took approximately three hours to complete including breaks. (Dkt. 406-25 at pgs. 2:18, 123:6.)

### E. Demulder Did Not Request an Award of Attorneys' Fees for Work Performed by NTG in the Underlying Action Against Carter-Reed as Implied by NIC.

NIC relies upon Exhibit 31 to the Arhangelsky Declaration, at 103:14-18, to assert that "NTG did not track its attorney fees in the . . . Demulder . . . matters. But NTG did ask the Courts in those cases to award attorney fees." (CSUF ¶ 90.)

This purported evidence is irrelevant because Demulder was solely represented by attorneys of record at Kirtland & Packard, LLP, which is unrelated to NTG. (SOF ¶ 28.) In addition, NIC's contention that "NTG did ask the Courts in those cases to award attorney fees (including Demulder's Underlying Action against Carter-Reed Company, LLC) is false insofar as such bald contention implies that Demulder's Underlying Action requested that the federal district court award attorneys' fees *for work performed by NTG* if he prevailed. Nothing in the complaint filed in the Underlying Action supports such contention. (Demulder's RJN Ex. 1; Compl. in Underlying Action at 11:13-15.)

### F. Whether or Not Demulder Erroneously Believed that Andrew Baslow Was an Attorney Has No Bearing on the Instant Motion.

Although NIC relies upon Demulder's deposition testimony whereby he erroneously believed that Andrew Baslow was an attorney, (CSUF ¶ 95; NIC's RJN Ex. 25 at 54), it does not make one iota of difference in terms of rebutting the instant Motion. If anything, this constitutes a blatant attempt to attack Demulder's credibility in hopes that the Court will not consider his evidence. As this Court has previously recognized, however, "At the summary judgment stage, the Court may not assess the credibility of declarants." *Peralta v. Dusovich*, No. CV 06-4989-JVS (PLA), 2009 WL 361150, at *7 (C.D. Cal. 2009). Even NIC acknowledges this legal standard. (Opp'n at 16:19-20.)

## III. THE REQUEST FOR JUDICIAL NOTICE MISCHARACTERIZES EXHIBIT 48.

Finally, it is worth noting that NIC has mischaracterized RJN Exhibit 48 as the "first Complaint filed in May 2013, in Carter-Reed Company, LLC v. Taylor Demulder No. 130903002 (Utah 3d Distr. 2013) and later filed to the federal docket on June 12, 2013 in Carter-Reed Company, LLC v. Taylor Demulder, No. 2:13-cv-00435-DBP (herein after "*Carter-Reed v. Demulder*") as Docket 2-5." (NIC's RJN ¶ 48; Dkt. 406.) In reality, the document attached as RJN Exhibit 48 is the second Complaint filed by Carter-Reed against Demulder on October 7, 2013, bearing the Case No. 130906701. The prior Complaint filed by Carter-Reed against Demulder in May 2013 (Case No. 130903002) had been inexplicably voluntarily dismissed without prejudice by Carter-Reed on July 11, 2013. (SOF ¶ 50.) Indeed, a close review of RJN Exhibit 48 reveals that it is dated October 4, 2013, which makes it impossible that it could have been filed in "May 2013," as erroneously claimed by NIC.

As noted in Demulder's initial Memorandum, the complaint in Case No. 130903002, erroneously alleged that:

> "Upon information and belief, Demulder falsely alleged that he was a California resident and that the call was placed from California because Nevada does not have statutes similar to California Penal Code § 630 *et seq*. and Demulder,

as a Nevada resident telephone from Nevada, ***would not have had a cause of action even if his allegations that he was not informed the call may be recorded were true***, which it is not."

(SOF ¶ 49.)  The second complaint filed by Carter-Reed (*i.e.*, Case No. 130906701) eliminated such baseless allegation.

To ensure that the record is clear and to avoid further confusion, Demulder has concurrently filed a Supplemental Request for Judicial Notice with a certified copy of the Complaint in Case No. 130906701.  (Demulder's SRJN Ex. 1.)

Dated: July 31, 2017                             FORD & DIULIO PC

By: /s/Brendan M. Ford_____
Brendan M. Ford
Attorneys for  non-NTG Defendants

- 12 -
DEMULDER'S EVIDENTIARY OBJECTIONS

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2017, I electronically filed the foregoing **EVIDENTIARY OBJECTIONS TO DECLARATION OF PETER ARHANGELSKY AND EXHIBITS AND PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT DEMULDER'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Brendan M. Ford*
Brendan M. Ford