Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street, 32nd Floor
Los Angeles, CA 90013
213-253-9776
SPECIAL MASTER

**FILED**
CLERK, U.S. DISTRICT COURT

August 14, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: _Karla Tunis_ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., a Florida corporation,<br><br>Plaintiff,<br>v.<br><br>NEWPORT TRIAL GROUP, a California corporation; SCOTT J. FERRELL, a California resident; RYAN M. FERRELL, an Arizona resident; VICTORIA C. KNOWLES, a California resident; DAVID REID, a California Resident; ANDREW LEE BASLOW, a California resident; ANDREW NILON, a California resident; SAM PFLEG, a California resident; MATTHEW DRONKERS, a California resident;  TAYLOR DEMULDER, a Nevada resident; SAM SCHOONOVER, a California resident; GIOVANNI SANDOVAL, an Arizona resident; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No: 8:15 CV-02034-JVS (JCGx)<br><br>(JAMS Ref. No: 1220055347) |

//

//

**(1)  ORDER DENYING NIC'S EX PARTE APPLICATION**

**FOR PROTECTIVE ORDER RE QUINTOS' DEPOSITIONS (DKT. 427, 430);**

**(2) ORDER GRANTING NTG DEFENDANTS' EX PARTE APPLICATION TO**

**COMPEL QUINTOS' DEPOSITIONS AND NIC'S RULE 30(b)(6) DEPOSITION; AND**

**(3) ORDER DENYING WITHOUT PREJUDICE NTG DEFENDANTS' REQUESTS**

**FOR EVIDENTIARY/ISSUE SANCTIONS AND REASONABLE EXPENSES (DKT. 428)**

On August 7, 2017, Plaintiff Natural-Immunogenics, Inc. ("NIC") filed an *ex parte* application for a protective order concerning the depositions of Benjamin Quinto and Theo Quinto [Dkt. 427], a supporting memorandum of points and authorities ("Memo.") [Dkt. 427-1], and the supporting declarations of Benjamin Quinto ("Quinto Decl.") [Dkt. 427-2] and Peter A. Arhangelsky with exhibits ("Arhangelsky Decl.") [Dkt. 427-3-4].  On August 8, 2017, Defendants Newport Trial Group ("NTG"), Scott J. Ferrell, Ryan M. Ferrell, Victoria C. Knowles, David Reid and Andrew Lee Baslow (collectively with NTG, "NTG Defendants") filed an *ex parte* application to compel the depositions of Benjamin Quinto and Theo Quinto (collectively, "the Quintos") and NIC's Rule 30(b)(6) witness(es) deposition, requests for evidentiary/issue sanctions and reasonable expenses, the Opposition to NIC's *ex parte* application ("NTG Memo.") [Dkt. 429], and the declaration of David Darnell with exhibits ("Darnell Decl.") [Dkt. 429-1].  On August 10, 2017, NIC filed an opposition to NTG Defendants' *ex parte* application [Dkt. 432], the opposing declarations of Joshua A. Furman ("Furman Decl.") [Dkt. 432-1], Benjamin Quinto [Dkt. 432-2],[1] and Peter A. Arhangelsky [Dkt.

---

[1]  This is the same declaration that NIC filed in support of its *ex parte* application for protective order, Dkt.427-2.

432-3].[2]

The Special Master consolidates the two *ex parte* applications based on the commonality of facts and law, and further finds that consolidation serves the purpose of judicial economy. Fed.R.Civ.P. Rule 1.

## Discovery Disputes

## I.

The parties agree on the following facts underlying the *ex parte* applications: The District Court has set the date for the completion of all fact-relate discovery on August 14, 2017 [Dkt. 93], and the date for the completion of all expert discovery on August 28, 2017. [Dkt. 363].

Benjamin Quinto ("B. Quinto") is NIC's General Manager and Co-President, with his brother Theo Quinto ("T. Quinto"). Quinto Decl. ¶¶ 1-3. On March 3, 2017, NTG Defendants served deposition notices setting the Quintos' depositions for April 17 and 18, 2017, in the Los Angeles area. Darnell Decl. ¶ 3, Exhs. 1-2. In March and April 2017, NIC's counsel advised NTG Defendants' counsel that the Quintos were "traveling internationally beginning early April and will not be available for depositions until mid-May." Id. ¶¶ 5-6, Exhs. 3-4. Counsel for the parties reached an agreement to continue the Quintos' depositions to May 17 and 18, 2017. Id. ¶ 7, Exhs. 5-6. On May 9, 2017, NTG Defendants' counsel advised NIC's counsel that the Quintos' "depositions would again have to be continued" until NTG Defendants' motion to

---

[2] This are the same declaration and exhibits that NIC filed in support of its *ex parte* application for protective order, Dkt.427-3-4.

compel written discovery could be resolved.  Id. ¶ 9.

On July 7, 2017, NTG Defendants gave notice that the continued Quintos' depositions would occur on August 10 and 11, 2017, in the Los Angeles area.  Id. ¶ 11, Exhs. 7-8.  On July 11, 2017, NIC's counsel advised NTG Defendants' counsel that the Quintos were "out of the country beginning August 5, 2017 until early September 2017."  Id. ¶ 12, Exh.10.  NIC offered to allow the depositions to proceed in August by international telephone or videoconference.  Id.

On July 13, 2017, NIC's counsel further advised NTG Defendants' counsel that "NIC will be filing a motion for a protective order seeking to reschedule th[e] depositions when the Quintos are available."  Arhangelsky Decl. ¶ 21, Exh. 10. Thereafter, counsel met and conferred regarding the Quintos' depositions.  Darnell Decl. ¶¶ 14-16, Exhs. 11-12.

On July 31, 2017, NTG Defendants noticed NIC's Rule 30(b)(6) deposition for August 14, 2017, in the Los Angeles area. Id., Exh. 9. On August 4, 2017, NIC's counsel informed NTG Defendants' counsel that, as to the Rule 30(b)(6) deposition, "NIC's principals will not be available in California on the date selected."  Id. ¶ 18, Exh. 13.

**II.**

NIC seeks a protective order under Rule 26(c) either:  "(1) permitting the Quinto depositions to proceed by videoconference; or (2) permitting the parties to take the Quinto depositions during the beginning of September 2017."  Memo. at 12.  Further, NIC requests that "the Court stay the Quinto deposition dates pending resolution of this motion, and NIC's pending

request for leave to extend the discovery calendar (Dkt. 415), which is likely to be granted at least in part….”   Id.

NIC argues that compelling the Quintos to appear in Los Angeles for the August 10 and 11 depositions would be overly burdensome and fundamentally unfair, as the Quintos arranged their schedules for the depositions in May, but NTG Defendants voluntarily canceled those dates. The continued dates in August were set unilaterally by NTG Defendants, without consulting NIC's counsel.  Moreover, NTG Defendants have had months since the start of discovery to depose the Quintos, but delayed doing so.  Any hardship that exists was created by NTG Defendants.

The Quintos are in Southeast Asia on a prepaid personal trip that was planned for months; traveling to Los Angeles would cost thousands of dollars and multiple days of travel.  In a reasonable attempt to resolve the dispute, NIC offers to make the Quintos available for telephone or videoconference depositions or, alternatively, to agree to extend the fact discovery cut-off into September.  Arhangelsky Decl. ¶ 7.  NIC argues that NTG Defendants' refusal to agree to the alternatives NIC proposes is harassing.

The Court should balance the hardships on the parties and, as NTG Defendants suffer no prejudice from the alternatives offered by NIC, the Court should order that Quintos' depositions proceed by videoconference. Alternatively, even if NIC's request for a protective order is denied, NTG Defendants should be required to pay the witnesses' costs and expenses incurred in traveling to California.  On the other hand, the Court can allow the depositions to proceed in

September, which is more than three months before the trial date.

**III.**

NTG Defendants oppose NIC's *ex parte* application, and make their own *ex parte* application to compel the depositions of the Quintos and NIC's Rule 30(b)(6) deposition "no later than August 23, 24 and 25, 2017, respectively."   NTG Memo. at 11.  Additionally, NTG Defendants seek "evidence/issue sanctions" stemming from NIC's conduct.  Id. at 6.  NTG Defendants also seek reasonable expenses under Rule 37, as the failure of the Quintos to appear for their depositions is not substantially justified; it was the Quintos' decision to be out of the country at the time of their depositions.

Initially, NTG Defendants argue that NIC delayed seeking a protective order to prevent the Quintos' depositions, as NIC received notices of the depositions on July 7th and could have filed a properly noticed motion; however, NIC did not seek a protective order until August 7th. Thus, any urgency is of NIC's own making, and NIC's *ex parte* application should be denied on this ground alone.  Additionally, however, NIC has not met its burden to show grounds to grant a protective order under Rule 26(c).  Id. at 7-10.  Expense is not an undue burden and, in any event, the actual expense of returning to California for the depositions is a far cry from the exorbitant amount ($55,000) B. Quinto claims.

NTG Defendants also contend that they have been trying to depose the Quintos for months; but required certain written discovery before proceeding, and that discovery has been contested by NIC. It is essential to depose the Quintos before expert discovery, which is

imminent, as both parties have designated experts regarding "immune support and the subject of immune support is a critical issue for NIC's principals, and one on which they will likely offer testimony." Id. at 1. Expert discovery is scheduled to end August 28, 2017, and NTG Defendants' experts need to review the information from the Quintos' depositions and Rule 30(b)(6) deposition to prepare the reports. Id. at 1-2.

Taking the Quintos' depositions by telephone or videoconference will not work. Apart from whatever logistical, technical or other issues could arise from taking the depositions wherever the Quintos are located, as well as the time difference, the depositions will be document-intensive, so that NTG Defendants would be prejudiced if the examinations are not in-person. Id. at 4. B. Quinto has given several declarations in this litigation, and has been actively involved in the case; his examination is vital to NTG Defendants' defense.

**DISCUSSION**

**IV.**

Generally, the reasoning of the *Mission Power Engineering Co. v. Continuity Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995), is considered when the Court determines whether to grant an *ex parte* application. In order to justify *ex parte* relief:

> First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a

result of excusable neglect.

*Mission Power Engineering Co.*, 883 F. Supp. at 492.  Adherence to these two basic requirements is vital because *ex parte* applications "are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system.  Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced." *Id*. at 490.

Both parties have met the first requirement for seeking *ex parte* relief regarding the Quintos' depositions noticed for August 10 and 11, and NTG Defendants have also met the first requirement for seeking ex parte relief regarding NIC's Rule 30(b)(6) deposition.  However, it is less clear that NIC has met the second requirement, to show that it is without fault in creating the emergency.  Since notices of the Quintos' depositions were served on July 7th, it appears that NIC had time – assuming the parties quickly met and conferred – to present the discovery dispute as a joint stipulation.  Nevertheless, the correspondence between counsel suggests that part of the delay in the meet-and-confer process was due to Mr. Darnell being on vacation when NIC's counsel initially wanted to discuss the Quintos' depositions. Arhangelsky Decl. ¶ 10. Thus, the Special Master will address the merits of NIC's *ex parte* application.

## V.

The Federal Rules of Civil Procedure provide:

two methods by which a corporate party to a proceeding may be deposed:  (1) Rule 30(b)(1) provides for the deposition notice of a corporation through a

particular officer, director or managing agent of the corporation; and (2) Rule 30(b)(6) provides for the deposition of the corporation by notice setting forth 'with reasonable particularity' the matters on which the examination of the corporation's most knowledgeable person will take place. When an employee named in a deposition notice 'is a director, officer, or managing agent of [a corporate party], such employee will be regarded as a representative of the corporation.'   This means that under Rule 30(b)(1), as well as Rule 30(b)(6) depositions, may be used at trial against the corporate party.

*Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 627-28 (C.D. Cal. 2005) (footnote and citations omitted).

"A party may unilaterally choose the place for deposing an opposing party, subject to the granting of a protective order by the Court pursuant to Rule 26(c)[] … designating a different place."  *Id*. 232 F.R.D. at 628 (quoting *Turner v Prudential Ins. Co. of Amer.*, 119F.R.D. 381, 382 (M.D. N.C. 1988) (citation omitted).). Generally, ten business days' notice would seem to be reasonable notice under Rule 30(b)(1).  *Paige v. Consumer Programs, Inc.*, 248 F.R.D. 272, 275 (C.D. Cal. 2008) (citation omitted).

"Under Rule 30(b)(1), it is well recognized that 'if the corporation is a *party, the notice compels it to produce* any "officer, director or managing agent" named in the deposition notice. It is not necessary to subpoena such individual.  The corporation risks sanctions – including default or dismissal – if the designated individual fails to appear.'"  *Cadent Ltd.*, 232 F.R.D. at

627, n. 1 (citations omitted); *National Mortgage, LLC v. Flamingo Tails No. 7 Landscape Maintenance Ass'n*, 316 F.R.D. 327, 332-33 (D. Nev. 2016).

Rule 26(c) provides that "any person from whom discovery is sought may move for a protective order in the court where the action is pending…. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." Fed.R.Civ.P. 26(c)(1). Under Rule 26(c), the Court may grant a protective order "to regulate the terms, conditions, time or place of discovery…." *Pro Billiards Tour Ass'n, Inc. v R.J. Reynolds Tobacco Co.*, 187 F.R.D. 229, 230 (M.D. N.C. 1999); *see also* Fed.R.Civ.P. 30(b)(4) (holding court may order "a deposition be taken by telephone or other remote means"). For good cause to exist for the issuance of a protective order regulating the terms, conditions time or place of discovery, however, "the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002); *Younger Mfg. Co. v. Kaennon, Inc.*, 247 F.R.D. 586, 588 (C.D. Cal. 2007).

If a party fails to attend a properly notice deposition, the party who noticed the deposition may move to compel the witness to attend the deposition under Rule 37(a)(1). And if a party fails to attend a properly notice deposition, the party noticing the deposition may seek sanctions against the other party for failing to appear at the deposition. Fed.R.Civ.P. 37(d)(1)(A)(i). A party's failure to attend a properly noticed deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed.R.Civ.P. 37(d)(2).

## VI.

It appears that B. Quinto is challenging the legality of the deposition notices to him and his brother, stating that neither he nor his brother is a party to this litigation and neither "receive[d] a Rule 45 subpoena to give testimony in August 2017." Quinto Decl. ¶¶ 10-11, 14. He also complains that "[t]o [his] knowledge, NTG did not consult with NIC prior to selecting its deposition dates in August 2017." Id. ¶ 17. However, as noted above, both B. Quinto and T. Quinto are NIC's corporate officers, and no subpoena is necessary to take their depositions. Additionally, there is no requirement that the party noticing the deposition of a corporate officer consult with opposing counsel about dates; but, of course, that makes the process go more smoothly. *See Civility and Professionalism Guidelines*, Part B.2 ("We will consult other counsel regarding scheduling matters in a good faith effort to avoid scheduling conflicts."), Nevertheless, NTG Defendants properly noticed the depositions of both B. Quinto and T. Quinto; thus, the Quintos are required to appear for their depositions on August 10 and 11, 2017.

NIC seeks a protective order precluding the August 10 and 11 depositions on the ground the Quintos (not NIC) will suffer undue burden or expense if they are required to attend the depositions. To support this claim, NIC submits the declaration of B. Quinto, its General Manager and co-President, who states that he currently is attending a family reunion in Indonesia, the total cost of which "exceeds $55,000." Quinto Decl. ¶ 18. B. Quinto further states that:

> [i]f forced to travel from Indonesia to California in August 2017 for depositions, I would lose the entire value and benefit of [his] planned trip…. I would incur

substantial financial penalties through cancellation fees and booking costs in an amount up to the complete cost of the trip…. I would be separated from family members during a planned personal trip that was organized and paid in full months before NTG unilaterally noticed depositions.

Id. ¶¶ 19-22.  Additionally, B. Quinto asserts that the trip to California would take "at least (2) days … for transit, as flight time alone exceeds 26 hours, and there is a 12-hour time difference." Id. ¶ 23.

First, it cannot be ignored that the Quintos departed on their international trip several weeks *after* the notices of their depositions and NIC's Rule 30(b)(6) deposition were served on NIC.  Arhangelsky Decl. ¶ 6.  Although NIC complains that NTG Defendants did not consult it about the deposition dates in advance of serving the deposition notices, it also is true that NIC did not give NTG Defendants any advance notice of the Quintos' planned August trip.  In short, the Quintos are not without fault in being absent from the country on the dates of their noticed depositions.

Second, the Special Master does not find credible B. Quintos' claim that he would incur a monetary loss of $55,000 – or the entire value and benefit of the trip – if he were to leave the reunion or vacation for a few days to return to Los Angeles for his deposition.  In fact, NIC acknowledges that "[r]ound-trip flights to Los Angeles, California begin at more than $1,400…." Oppo. at 3:11-12.  In light of the circumstances of this litigation, that is not a significant cost. Similarly, the Special Master finds unpersuasive NIC's claim that the travel time is extensive,

ranging from 21 to 30+ hours; not necessarily so.  Nevertheless, there is no doubt that the Quintos will be inconvenienced, and probably will incur some additional travel costs for returning to Los Angeles for the depositions; but the majority of their reunion costs should not be affected, and most of their month-long reunion/vacation would remain intact, although disrupted. In any event, "undue burden" Rule 26(c) "requires parties to show more than expense or difficulty."  *United States v. $160,066.98 from Bank of America*, 202 F.R.D. 624, 628 (S.D. Cal. 2001); *Clokey v. Co. of Sacramento*, 2009 WL 3379077, *2 (E.D. Cal. 2009).

As an alternative to the Quintos' returning to Los Angeles for their depositions, NIC proposes videoconference depositions from Indonesia.  Furman represents that he  has contacted a company that provides remote videoconference depositions, Veritext Legal Solutions, which utilizes a platform that works with only a computer with a camera, a hardline high-speed internet connection, and a telephone for deposition "real-time transcript and real-time … review of document exhibits."  Furman Decl. ¶¶ 9a, 9c.  According to Furman, the Veritext system allows exhibits to be uploaded and presented digitally to the witness, provided the exhibits are  "sent to Veritext two business days in advance" of the deposition.  Id. ¶ 9f.  The court reporter can be located in Los Angeles, and the deposition can be conducted from the Veritex office in Los Angeles or from NTG Defendants' counsel's office.  Id. ¶¶ 9.  The Veritex system increases the cost with document uploads to $595.  Id. ¶ 9b.

The Special Master does not find the Furman Declaration persuasive, and concludes that NTG Defendants would be prejudiced if the Quintos' depositions were taken by international videoconference.  First, NIC has not provided any evidence that the Veritex system actually can

work from Indonesia (high speed internet; international phone lines, etc.); and has not presented any proof that Veritex in the past has successfully worked from remote locations like Indonesia. As NTG Defendants' argue, there will likely be inevitable logistical and technical problems attendant to videoconference depositions held in another country, as well as the 12 hour time-difference.

Second, as Furman describes the Veritex system, deposition examination with documents requires that the documents be produced at least two days in advance of the deposition so they can be digitally uploaded. This means that the party examining the witness is not able to follow-up a witness's answer by presenting unexpected documentary evidence for testimony; the examination is limited to only those documents previously uploaded, thereby limiting the nature of the Quintos' examinations.

Third, the Quintos are key witnesses in this case. They are NIC's principals; they decided to bring this litigation, and they have been actively involved in making litigation decisions, as their counsel have represented. Thus, it is fair to say that their testimony will be controversial, and the tenor of the interactions between the parties and counsel during the depositions may be tense. Videoconference depositions are not suitable for such controversial situations. *Cf., United States v. Rock Springs Vista Develpm't*, 185 F.R.D. 603, 604 (D. Nev. 1999) ("Telephone depositions are not recommended for obtaining controversial testimony…. [Y]ou will be unable to ascertain if anyone is listening in or 'coaching' the witness." (citation omitted).)

Fourth, NTG Defendants' contend that the Quinto depositions cannot be postponed until September, which is after expert discovery ends.  The Quintos' depositions need to be taken now – or sufficiently in advance of the expert witnesses' exchange of reports and depositions --  so the experts can review the testimony.  The Special Master agrees.  And the Special Master also is concerned that delaying the Quintos' depositions (and NIC's Rule 30(b)(6) deposition) until September is a litigation strategy designed to support NIC's pending motion for an extension of the discovery calendar.  *See* NIC's Supp. Memo. at 12:18-22 (… NIC requests that the Court stay the Quinto deposition dates pending resolution of this motion, and NIC's pending request for leave to extend the discovery calendar (Dkt. 415), which is likely to be granted at least in part given the Court's recent Orders under Rule 56(d) (Dkt.423) and NIC's Motion for Leave (Dkt. 414)."

Lastly, NIC has not shown any reason why NTG Defendants should pay all or some of the costs attendant to the Quintos' return to Los Angeles for their depositions.  As noted, the Quintos were well-aware of the properly noticed depositions when they left the country to go to Indonesia; nevertheless, they left.  That was their decision.  Additionally, if the Quintos can fund a $55,000 family reunion or vacation, they can pay their own airfare to and from Los Angeles and their hotel costs while attending the depositions.  In any event, the Quintos have presented no evidence of financial hardship.

For all these reasons, the Special Master concludes that NIC has not met its burden to show good cause for the issuance of a protective order to take the Quintos' depositions by alternative means of videoconference or to postpone the Quintos' depositions until September.

Thus, NIC's *ex parte* application for a protective order should be denied.

**VII.**

The Special Master concludes that NTG Defendants' *ex parte* application to compel the Quintos' depositions should be granted in order to assure that NTG Defendants have the opportunity to examine the Quintos, as well as the designee(s) for NIC's Rule 30(b)(6) deposition, sufficiently in advance of the expert witnesses' exchange of reports and experts' depositions.

Like the deposition notices to the Quintos, NTG Defendants properly noticed NIC's Rule 30(b)(6) deposition.  Yet, NIC has advised NTG Defendants that the Rule 30(b)(6) deposition will not proceed because the Quintos "will not be in California" on the date noticed.  Without knowing the identity of NIC's designee(s) for the Rule 30(b)(6) deposition, it is not clear why the Quintos *must* be present for the deposition.  Nevertheless, assuming *arguendo* that B. Quinto, T. Quinto or both are NIC's designees, then their absence from the Rule 30(b)(6) deposition is on the same unsupported footing as their absences from the Rule 30(b)(1) depositions.  Thus, NTG Defendants' *ex parte* application to compel should be granted to take the depositions of the Quintos and NIC's Rule 30(b)(6) deposition, no later than August 23, 24 and 25, 2017.

On the other hand, there is no urgency to consider *ex parte* NTG Defendants' requests for evidentiary or issue sanctions and reasonable expenses.  *Mission Power Engineering Co.,* 883 F. Supp. at 492.  Those requests may be brought by noticed motion. Thus, NTG Defendants' requests for evidentiary or issue sanctions and reasonable expenses are denied without prejudice

to renew as properly noticed motions.

**ORDER**

1.  The *ex parte* application of Natural-Immunogenics, Inc. for a protective order under Rule 26(c) to either:  (1) permit the Quintos' depositions to proceed by videoconference; or (2) permit the parties to take the Quintos' depositions during the beginning of September 2017, **is denied.**

2**.** The *ex parte* application of Natural-Immunogenics, Inc. for a protective order staying the Quintos' depositions pending resolution of this matter and pending resolution of NIC's pending request to extend the discovery calendar **is denied.**

3.  The *ex parte* application of Newport Trial Group Defendant to compel the taking of the depositions of Benjamin Quinto, Theo Quinto and NIC's Rule 30(b)(6) deposition, "no later than August 23, 24 and 25, 2017, respectively," **is granted.**  Accordingly, **IT IS ORDERED:**

    a. Benjamin Quinto shall appear in the Los Angeles, California, area for his Rule 30(b)(1) deposition as NIC's General Manager and co-President on August 23, 2017, and NTG Defendants immediately shall notice the deposition;

    b.  Theo Quinto shall appear in the Los Angeles, California, area for his Rule 30(b)(1) deposition as NIC's co-President on August 24, 2017, and NTG Defendants immediately shall notice the deposition; and

c. NIC's designee(s) shall appear in the Los Angeles, California, area for NIC's Rule 30(b)(6) deposition on August 25, 2017, and NTG Defendants immediately shall notice the deposition.

4.  The *ex parte* application of Newport Trial Group Defendants for evidentiary and issue sanctions and attorney fees incurred as a result of the *ex parte* applications **is denied without prejudice.**

5.  The Case Manager shall promptly serve this Order on the parties and the District Court.

August 12, 2017                    By: _Rosalyn M Chapman_____
1220053347.21                      Hon. Rosalyn Chapman (Ret.), Special Master

18