# Exhibit 1

Atkinson-Baker Court Reporters
www.depo.com

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

- - -

NATURAL-IMMUNOGENICS CORP., )
                            )

CERTIFIED COPY

           Plaintiff,   )
                            )

      vs.           ) No. 8:15-cv-02034-JVS(JCG)
                            )

NEWPORT TRIAL GROUP, et al.,)
                            )

         Defendants.  )
_____)

TRANSCRIPT OF PROCEEDINGS

ORANGE, CALIFORNIA

APRIL 11, 2018

ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com

REPORTED BY:  LELIA C. HASUIKE, CSR NO. 11082

FILE NO.:  AC03D98

Atkinson-Baker Court Reporters
www.depo.com

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

- - -

NATURAL-IMMUNOGENICS CORP., )
                            )
              Plaintiff,    )
                            )
          vs.               ) No. 8:15-cv-02034-JVS(JCG)
                            )
NEWPORT TRIAL GROUP, et al.,)
                            )
              Defendants.   )
_____)

TRANSCRIPT OF PROCEEDINGS, taken at 500 North State College Boulevard, 14th Floor, Orange, California, commencing at 2:52 p.m., Wednesday, April 11, 2018, before Lelia C. Hasuike, CSR No. 11082.

A P P E A R A N C E S:

SPECIAL MASTER:

HON. ROSALYN CHAPMAN
555 West Fifth Street, 32nd Floor
Los Angeles, California   90013
(213)620-1133

FOR PLAINTIFF NATURAL-IMMUNOGENICS CORP.:

EMORD & ASSOCIATES
BY:   PETER A. ARHANGELSKY, ESQ.
      JOSHUA S. FURMAN, ESQ.
2730 South Val Vista Drive, Building 6, Suite 133
Gilbert, Arizona   85295
(602)388-8899

FOR DEFENDANT NEWPORT TRIAL GROUP:

CALLAHAN & BLAINE
BY:   STEPHANIE A. SPERBER, ESQ.
      DAVID J. DARNELL, ESQ.
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California   92707
(714)241-4444

FOR NON NEWPORT TRIAL GROUP DEFENDANTS:

FORD & DIULIO
BY:   BRENDAN M. FORD, ESQ.
650 Town Center Drive, Suite 760
Costa Mesa, California   92626
(714)450-6830

Atkinson-Baker Court Reporters
www.depo.com

I N D E X

WITNESS:        DIRECT     CROSS     REDIRECT   RECROSS

(None)


E X H I B I T S

DEFENDANTS'          DESCRIPTION                    PAGE

(None)


PLAINTIFF'S          DESCRIPTION                    PAGE

(None)

Transcript of Proceedings
April 11, 2018

ORANGE, CALIFORNIA; WEDNESDAY, APRIL 11, 2018;

2:52 P.M.

- - -

HON. ROSALYN CHAPMAN:  Let's go on the record, please, in the matter of Natural-Immunogenics Corp versus Newport Trial Group, et al.  This is case No. 15-cv-2034 and JAMS reference No. 1220055347.

I'm Judge Rosalyn Chapman.  I'm the Special Master in this case.

Would the parties please make your appearances starting with the plaintiff.

MR. ARHANGELSKY:  Good afternoon.  Peter Arhangelsky on behalf of plaintiff, Natural-Immunogenics.

MR. FURMAN:  Joshua Furman on behalf of the plaintiff, Natural-Immunogenics.

MR. DARNELL:  Good afternoon.  David Darnell on behalf of the Newport Trial Group defendants.

MS. SPERBER:  Stephanie Sperber on behalf of the Newport Trial Group Defendants.

MR. FORD:  Brendan Ford on behalf of the non-N.T.G. defendants.

HON. ROSALYN CHAPMAN:  All right.  I issued a tentative order that I called Order Following Second

5

Remand on March 27th, 2018.  And the purpose of our session today is for oral argument on that tentative order.

Since the order essentially finds several of the documents submitted by the non-N.T.G. defendants to be subject to production to the plaintiff under the crime-fraud exception to the attorney-client privilege, I think you should start with the argument, Mr. Ford, and then we'll have the plaintiff respond.

If there is any reason why the N.T.G. defendants should participate in argument, you can raise that issue with me after Mr. Ford's argument and the response and Mr. Ford's rebuttal, and then we'll deal with it at that point.

So please proceed, Mr. Ford.

MR. FORD:  Thank you, Your Honor.  Again, thank you, and thank you to counsel for coming to this in-person hearing to discuss these important subjects.

At the outset, I want to discuss the challenge of discussing privileged documents here where -- and I'm sure that the Special Master is well aware of this, but we're in a little bit of a catch-22 because I want to explain my position and the basis of my position, which necessarily requires me some analysis of the privileged documents.  But at the same time I

Atkinson-Baker Court Reporters
www.depo.com

cannot divulge the contents of those documents without being accused of a potential waiver.

So I will try as best as I can to explain my position by using what I'll call oblique references to the documents as much as possible but want to make abundantly clear for the record that nothing I say here today is intended in any way to constitute an implied waiver.

There are two sets of documents here. There's the Sam Phleg documents and the Sam Schoonover documents. So for simplicity we'll talk about the Phleg documents first because they're shorter, and then we'll go into Schoonover.

As the Court is well aware, for each of these documents we have to ask ourselves two questions. The first threshold question is: Does this document relate to one of the seven S.A.C. cases? If it does not, then the inquiry ends. We don't have to look any further.

If it does, then we have to ask ourselves the second question: Does the specific document satisfy the two-part test for crime-fraud exception under the In Re Napster case?

So on page 9 of Your Honor's tentative ruling, the Court held that Bates stamp Nos. Phleg 00066 through 68 "do not pertain to Nature's Way or any of the

other seven cases identified in the S.A.C.," period, unquote.

And since that would arguably be in my favor, it's odd to say this, but I want to make sure that we're accurate. I made the mistake, as did prior counsel for the non-N.T.G. defendants. The documents do in fact relate to the Nature's Way case. They talk about Boericke and Tafel, which is actually a brand of homeopathic drugs which is owned by Nature's Way.

HON. ROSALYN CHAPMAN: But I had a list of other litigation brought by Sam Phleg.

MR. FORD: Yes.

HON. ROSALYN CHAPMAN: And there was other litigation brought by Sam Phleg that dealt not with Nature's Way, but with Boericke. And that's why I concluded that it didn't relate to Nature's Way. Let me see if I can find where I wrote it down.

Sam Phleg was involved in several cases.

MR. FORD: Yes.

HON. ROSALYN CHAPMAN: He was involved in -- and they're listed someplace. And one of the places that listed them included a case called Boericke.

MR. FORD: Right.

HON. ROSALYN CHAPMAN: Are you now saying that Boericke is the same case as Nature's Way?

Atkinson-Baker Court Reporters
www.depo.com

MR. FORD:  Yes, Your Honor.

HON. ROSALYN CHAPMAN:  Oh, it is?

MR. FORD:  Yes.  The documents refer to Boericke, which is owned by Nature's Way.  So it's a subsidiary, so they are in fact related.

HON. ROSALYN CHAPMAN:  Okay.

MR. FORD:  This was the basis of my first notice of errata, which is at docket 577.

HON. ROSALYN CHAPMAN:  Okay.  Thank you.

MR. FORD:  And I will say as an aside that I'm happy that I'm not the only one who found all of these various cases kind of -- you know, they all overlap, and there's a lot of stuff to digest.

So given some of the representations that have been made in the motion for reconsideration, I'm happy to see that I'm not the only one who found these a little bit --

HON. ROSALYN CHAPMAN:  No.  It's just that I wasn't aware that Boericke --

MR. FORD:  Right.

HON. ROSALYN CHAPMAN:  -- was owned by Nature's Way.

MR. FORD:  Nor I.

HON. ROSALYN CHAPMAN:  I thought it was a separate --

9

Atkinson-Baker Court Reporters
www.depo.com

MR. FORD:  Sure.  So did I.

HON. ROSALYN CHAPMAN:  Okay.

MR. FORD:  So the three-page e-mail, 66 through 68, does in fact relate to an S.A.C. case. However, I don't know if you had an opportunity -- the tentative indicates that you reviewed it, and then --

HON. ROSALYN CHAPMAN:  Of course I reviewed it.

MR. FORD:  Yes.  So I believe that the content does not satisfy crime-fraud under either Zolin or In Re Napster.  They're not in furtherance of any crime or fraud, there's been no findings of crime-fraud, and we don't believe that the communications at issue here support vitiating the attorney-client privilege.

So that would be it as to Phleg.

HON. ROSALYN CHAPMAN:  I'd have to check the date 3/15/12 to be double sure of some things.

Why don't you respond on Phleg, Mr. Arhangelsky or Mr. Furman, before we then turn to Mr. Schoonover.

MR. ARHANGELSKY:  Yes, Your Honor.

So the Nature's Way case that Mr. Phleg was involved in was involving Nature's Way product offering Boericke and Tafel brand products.

The complaint he filed against Nature's Way

10

Transcript of Proceedings
April 11, 2018

Atkinson-Baker Court Reporters
www.depo.com

identified Boericke and Tafel products that -- in the complaint itself as a basis for the allegation.  So reference to Boericke and Tafel has and has always been in our case synonomous with the Nature's Way case that's an S.A.C. case.

Now, the e-mail that is at issue included a series of attachments.  One of those attachments, in fact, was Mr. Phleg's retainer agreement in the Nature's Way case.  We have taken the position that it is unmistakably related to the Nature's Way matter.

HON. ROSALYN CHAPMAN:  Yes.  And I didn't ask for the attachments because I didn't realize that Nature's Way included Boericke and Tafel.  And I am now going to ask for the attachments.

MR. FORD:  Yes, Your Honor.

HON. ROSALYN CHAPMAN:  So I'd like you to submit the attachments to me in camera, not through Mr. Dodson [phonetic], but just to me directly and with a hard copy to my P.O. box so I can look at it.

But let's assume that the attachments are the retainer agreement.  I previously in Mr. Darnell's and Ms. Sperber's situation regarding -- I think it was the Bobba Declaration, but correct me if I'm wrong -- found that the retainer agreements would come within the crime-fraud exception because the essence of retaining

11

Atkinson-Baker Court Reporters
www.depo.com

someone for the purpose that they've alleged is the purpose behind the RICO and U.C.O. claims is all part and parcel. Otherwise, they wouldn't have that person participate.

So I should give you a heads-up on that, that I previously found the retainer agreements did come in with a crime-fraud exception and --

Was that not in Bobba?

MS. SPERBER: No.

HON. ROSALYN CHAPMAN: That was the last thing you appeared in front of me on. What was that?

MS. SPERBER: Your Honor, you found that they were not subject to the attorney-client privilege.

MR. DARNELL: You did not issue a crime-fraud finding.

HON. ROSALYN CHAPMAN: That they weren't subject to the -- that the retainer agreements were not subject to the attorney-client privilege.

MS. SPERBER: Correct, Your Honor, which we agreed with. We've produced them.

HON. ROSALYN CHAPMAN: I'll take a look at that ruling because I wasn't prepared to deal with that issue on the retainer agreements today. So I'll take a look at it.

And I didn't bring my whole pleadings file

Transcript of Proceedings
April 11, 2018

with me.  And so you can cite to me my docket number, and then I'll take a look at it.

But that means it would have to be produced but not under the crime-fraud exception.  But it's not subject to the attorney-client privilege, whatever.

MR. ARHANGELSKY:  So -- and I just want to add my understanding of the procedure --

HON. ROSALYN CHAPMAN:  Sure.

MR. ARHANGELSKY:  -- was the tentative order had set to produce the receipt and I believe the retainer as under the crime-fraud exception after hearing argument related to the privilege --

HON. ROSALYN CHAPMAN:  You know, I don't have it in front of me, Mr. Arhangelsky.  I'm so sorry.  I didn't bring that particular order because it never crossed my mind we were going to go back to that.  Okay?  And I'll have to take a look at the tentative.

MR. DARNELL:  Well, Your Honor --

HON. ROSALYN CHAPMAN:  Actually, it was reduced to a final and filed, so I need the docket number.

MR. DARNELL:  It's docket 597, Your Honor, and it's at page 10 where -- the finding at issue where you merely addressed the fact that this is not privileged information.

13

HON. ROSALYN CHAPMAN:  In any event, I have taken the position -- I know of course I found the proof of purchase was not subject to the attorney-client privilege, and I'll have to refresh my memory about what I ruled on the retainer agreement.  But I intend to be consistent is all I'm suggesting to you, Mr. Ford.

MR. FORD:  Certainly, Your Honor.

HON. ROSALYN CHAPMAN:  So I want to look at all the attachments to see if in fact all the attachment versions are the same copy.  Sometimes I get duplicate copies of things, Counsel, and I don't refer to all the duplicate numbers.

In other words, if I order something to be produced and I've gotten two or three different Bates numbers for the exact same document, I'll just order it produced under one Bates number.  I will tell you that.

And I know that happened at least one time in this 597.  There were some duplicate documents.  Okay?

All right.  Go ahead, Mr. Ford.

MR. FORD:  Thank you, Your Honor.  So moving on to the Sam Schoonover.

HON. ROSALYN CHAPMAN:  Right.

MR. FORD:  The only case identified in the S.A.C. relating to Schoonover is Schoonover versus Himalaya Drug, which is 12 C.V. 1782, which is the

14

Atkinson-Baker Court Reporters
www.depo.com

Southern District of California case.  It was filed on July 19, 2012.

This is a CIPA case, California Invasion of Privacy Act case, in which Mr. Schoonover served as a tester to determine whether or not companies were violating California law by recording telephone calls without his consent.

So first we have to look at the text messages to see if they actually relate to any of the cases which in this case would only be the Himalaya.  That is the only one it could relate to that would make it even within the secondary thing, which is crime-fraud.

Schoonover 82 relates to a case that had already been completed, the Vogue International case. It's not a part of the S.A.C.  Their --

HON. ROSALYN CHAPMAN:  Yeah, I looked at that.  But here's what I thought.  A couple of these documents cover more than one thing, more than one topic.

MR. FORD:  Sure.

HON. ROSALYN CHAPMAN:  And that's why I said someplace -- oh, yeah, "in whole or in part."  In paragraph two of the order, I said, "They pertain in whole or in part to Himalaya Drug."  Because on that particular document, part of it may pertain to Vogue,

15

Atkinson-Baker Court Reporters
www.depo.com

but I also found part of it pertains to Himalaya Drug.

MR. FORD:  Okay.

HON. ROSALYN CHAPMAN:  Did you see -- you see what I did there, Mr. Ford?

MR. FORD:  I did.  The paragraph three of your order -- oh, it says -- I see.  So you said it related to it in part, but paragraph three says we only have to produce 83 versus -- to 89.  You're saying we don't have to produce 82 under crime-fraud.

HON. ROSALYN CHAPMAN:  That's right.

MR. FORD:  Fair enough.  Okay.  Then I'll skip that.

We believe that Schoonover 83 through 85 talks about a different case than Himalaya.  And we do that on the following.  This is one where I have to kind of be a little bit careful.

Schoonover called Himalaya Drug, and Himalaya Drug is a company that's based in Sugarland, Texas. It's just outside of Houston, and it is in the central time zone.

Looking at Schoonover 84, if we look at the second bubble -- they're text messages, so I don't know how to refer to it otherwise.

HON. ROSALYN CHAPMAN:  Yeah.

MR. FORD:  If we look at the second bubble of

16

Atkinson-Baker Court Reporters
www.depo.com

84, it does not appear to us --

HON. ROSALYN CHAPMAN:  Well, let's -- you said 83 to 85.

MR. FORD:  Right.

HON. ROSALYN CHAPMAN:  So what's wrong with my finding about 83?

MR. FORD:  Because I believe -- because it's all part of the same conversation.  They're talking about another case.  And then on page 84 it -- the second bubble talking about that same case is inconsistent with the fact that Himalaya is a company that is based in Houston, Texas, in central time.

Do you see that, Your Honor?

HON. ROSALYN CHAPMAN:  Yes, I do but --

MR. FORD:  Okay.

HON. ROSALYN CHAPMAN:  -- hold on a second.

Yeah, I don't -- I'm not sure I can accept the representation that you've just made to me.

MR. FORD:  Okay.

HON. ROSALYN CHAPMAN:  But go ahead.

MR. FORD:  Sure.  So that's 83 through 85.

86 through 89 we can be certain is not related to Himalaya because of the following:  The lawsuit for Himalaya was filed in July of 2012.

We know for a fact that Mr. Schoonover made

17

the call to Himalaya before the suit was filed.  He testified to it at his deposition, we listened to the recording during his deposition, and N.I.C. attached the recording to its omnibus crime-fraud motion.

This conversation which occurs on November 1st of 2012 cannot --

HON. ROSALYN CHAPMAN:  Well, hold on.  This is another situation, unfortunately, where I have on one page at least three different texts with three different dates on it.  Okay?

MR. FORD:  Correct.

HON. ROSALYN CHAPMAN:  All right.

MR. FORD:  I'm referring to the one that is dated November 1st, 2012, at 5:33 p.m.

HON. ROSALYN CHAPMAN:  Right.  But my question to you is, when I say a document has to be turned over, I'm not parsing out parts of a document.  Okay?

MR. FORD:  Yes.

HON. ROSALYN CHAPMAN:  I mean, that's how it was presented to me.  So you can't make an argument that just part of the document might not pertain to Himalaya without discussing whether the rest of the document pertains to Himalaya.

Do you understand my point?

18

MR. FORD: I do understand your point. I would say that this other part 85 and 86 don't say anything about Himalaya and they're --

HON. ROSALYN CHAPMAN: Well, they don't have to say anything about it. I mean, they don't have to use the word "Himalaya" to refer to Himalaya.

MR. FORD: Of course not, but -- again, I can't get into the specifics, but it doesn't even really reference a case. So it -- I kind of don't know --

HON. ROSALYN CHAPMAN: It doesn't have to reference a case if it's part of a stream that can be read overall referencing a case. I mean, no one is going to send a text where each text is going to reference the case. I mean, that's just not going to happen.

MR. FORD: Right, but it --

HON. ROSALYN CHAPMAN: Or any of the texts actually reference a case. You have to look at -- oh, I hate to keep using this word. I've used it recently before. You have to look at the gestalt of the particular page and the text to get the feel as to whether it references that case in some way.

MR. FORD: Right. Well, what I can say is that pages 86 and 87 make abundantly clear that they talk about not making a call, which if Himalaya already

19

occurred -- the lawsuit had been filed in July, and this is five months after -- it couldn't possibly -- that conversation about a call could not possibly have referred to Himalaya which occurred five months prior.

HON. ROSALYN CHAPMAN:  Okay.  First of all, page 84 is dated July 2012.

MR. FORD:  Correct.

HON. ROSALYN CHAPMAN:  Well, let's start at the beginning.  Page 83 is dated July 2012.

MR. FORD:  Yes.

HON. ROSALYN CHAPMAN:  You're saying the call was made in July 2012.  Okay.  The time frame is fairly contemporaneous on pages 83 and 84.

MR. FORD:  Okay.

HON. ROSALYN CHAPMAN:  And 85 we get into August, which would be shortly after the call --

MR. FORD:  Yes.

HON. ROSALYN CHAPMAN:  -- and could very well be talking about the call.  Yes, the last bubble --

MR. FORD:  Yes.  Yes.

HON. ROSALYN CHAPMAN:  -- very well could be talking about the call.  That's where my brain went.

Okay.  Speaking elliptically.  Sorry.

MR. FORD:  Sure.

HON. ROSALYN CHAPMAN:  And that sort of

Atkinson-Baker Court Reporters
www.depo.com

continued -- continued into the September texts.  Okay?

MR. FORD:  Okay.

HON. ROSALYN CHAPMAN:  And that -- that's how I read it.  Now you're getting into the November text.

MR. FORD:  Yes.

HON. ROSALYN CHAPMAN:  Okay.  And you're saying that particular portion of that page may not pertain to --

MR. FORD:  Right.

HON. ROSALYN CHAPMAN:  -- Himalaya.  But that doesn't mean the whole -- just because part of the page doesn't, because the way these texts are set up and I'm not redacting --

MR. FORD:  Sure.  I'm saying if part of it relates to Himalaya and half of it doesn't --

HON. ROSALYN CHAPMAN:  Right.

MR. FORD:  -- then the part that doesn't should be redacted.

HON. ROSALYN CHAPMAN:  Well, I don't know why that's the case.  I mean, that -- is that the argument you're making to me today?

MR. FORD:  It is the argument, yes.

HON. ROSALYN CHAPMAN:  That I should -- that it would be my responsibility in saying that a particular document comes within the crime-fraud

21

Atkinson-Baker Court Reporters

www.depo.com

exception because part of it would pertain to the case, then it's my responsibility to redact part of the document?

MR. FORD:  No.  I would -- before producing it, assuming it -- I mean, we've done this before.

HON. ROSALYN CHAPMAN:  To tell you what portions you should redact?

MR. FORD:  Yes.  Obviously the physical act of redacting I'm happy to do myself, or, you know, anyone can do.  But the point is if it's not relevant, they're not entitled to it.  If it's not related to Himalaya, they're not entitled to it.

So that's the first step.  So we should be able to redact those things that do not relate to Himalaya.

HON. ROSALYN CHAPMAN:  Okay.  All right. What else?

MR. FORD:  So that takes us through 89.  And then part of the way there on 89 you see where it starts with November 7th, 2012, at 2:50 p.m.?

HON. ROSALYN CHAPMAN:  Right.  The other was also -- hold on a second.

MR. FORD:  The other one was November 1st.

HON. ROSALYN CHAPMAN:  Oh, yeah.  You're right.  Okay.  November '12.  Got it.  Okay.

22

Transcript of Proceedings

April 11, 2018

Atkinson-Baker Court Reporters
www.depo.com

MR. FORD:  Yes.  We've agreed -- in our second notice errata, we've acknowledged that Schoonover 89 that starts at November 7, 2012, through Schoonover 94 with certain exceptions are related in fact to Himalaya.

HON. ROSALYN CHAPMAN:  Well, that's what I found.

MR. FORD:  Right.

HON. ROSALYN CHAPMAN:  And I found it came within the crime-fraud exception.

MR. FORD:  Right.  So I just want to make sure that we're -- I'm starting with what our position is as to what is related to Himalaya and not related to Himalaya.

HON. ROSALYN CHAPMAN:  Okay.

MR. FORD:  And then once we finish that, I'll go through, and we can talk about crime-fraud.

HON. ROSALYN CHAPMAN:  Okay.  So you're saying -- you're agreeing that 89 to -- what? --

MR. FORD:  94 are in fact related to Himalaya.

HON. ROSALYN CHAPMAN:  Okay.  Now, let me see if I found that.  Oh, okay.  Well, apparently I didn't.

MR. FORD:  Right.

HON. ROSALYN CHAPMAN:  Apparently I found 93

23

and 94 didn't pertain to Himalaya.  Okay.  So that's wrong.  Okay.

MR. FORD:  So 93, this is another one of those instances.  93 included both privileged and nonprivileged information.  So the top part of it, the two bubbles are privileged, but starting at December 6 on, there's a discussion about concert tickets which we produced to opposing counsel months ago.  We produced 93, the nonprivileged portion.

94 contains privileged information relating to Himalaya and to this current case.

HON. ROSALYN CHAPMAN:  Hold on.

Okay.  I found that 93 talking about the tickets for the concert was not related to Himalaya. How is talking about the concert related to Himalaya?

MR. FORD:  It's the top two bubbles of it that relates to the prior conversation.

HON. ROSALYN CHAPMAN:  Oh, the ones before December 6?

MR. FORD:  Correct.

HON. ROSALYN CHAPMAN:  The top one I can't really read anyway.  It's covered up on my copy.

MR. FORD:  It's -- you can see it on the bottom of 92.

HON. ROSALYN CHAPMAN:  Yeah.  Okay.

MR. FORD:  It's the same --

HON. ROSALYN CHAPMAN:  All right.  So you're saying --

MR. FORD:  So I'm saying that those top two bubbles are privileged.  The December 6 relates to tickets which is not privileged at all and which we produced.

HON. ROSALYN CHAPMAN:  Well, I found that -- okay.  And --

MR. FORD:  And then --

HON. ROSALYN CHAPMAN:  -- 94 you're saying --

MR. FORD:  94 also relates to it because it talks about finalizing the Himalaya settlement.

HON. ROSALYN CHAPMAN:  Yes.  Okay.  Got it.

MR. FORD:  Okay?

HON. ROSALYN CHAPMAN:  Yep.

MR. FORD:  So that's the -- that's the issue with respect to our position as to what's related to Himalaya and what's not related to Himalaya.

So now we move on to the crime-fraud issue.

HON. ROSALYN CHAPMAN:  Just a second.  So your position is that from 83 to 89 is not related to Himalaya --

MR. FORD:  Correct.

HON. ROSALYN CHAPMAN:  -- but from 89 to 94

25

Transcript of Proceedings
April 11, 2018

is related to Himalaya.  So it would have been 83 to 88 is not related.  89 to 94 is related.  But you're excepting the fact that as to 89 to 94 only part is related to Himalaya and if I find that 83 to 88 is related to Himalaya, as I have, you're saying that I should indicate the non-Himalaya portion should be redacted.

MR. FORD:  Correct.

HON. ROSALYN CHAPMAN:  Okay.  Go ahead.

MR. FORD:  Okay.  So now we've set forth our position as to what we believe is related and not related to Himalaya.  So then we get into the crime-fraud issue.

We've litigated this issue quite a bit, so I know everyone is familiar with it.  But the Ninth Circuit case on point is In Re Napster.  There's a two-part test.

First, the party must show that, quote, "The client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme," close quote.

And, second, the party must demonstrate that the attorney-client communications for which production is sought are, quote, "sufficiently related to," unquote, and were made, open quote, "in furtherance of

the intended or present continuing illegality," close quote.

We do not believe that any of these documents relate to a crime or a fraud, broadly speaking. We would ask, however, that if Your Honor disagrees, that you please specify the basis for the crime or the fraud that the document or the communications are deemed to further.

HON. ROSALYN CHAPMAN: Look at, you've got a different theory than they have. I found that, fine, your tester theory you can use as a defense. That's fine. But their theory is that it wasn't a tester situation, that it was bribing people to do these acts and sometimes these acts weren't even done until after the client-attorney relationship was established with a particular person. Okay?

MR. FORD: Yes.

HON. ROSALYN CHAPMAN: So by finding something furthers the crime-fraud as they view it doesn't necessarily mean that you can't continue to raise your tester defense.

Do you understand what I'm saying?

MR. FORD: I do, Your Honor.

HON. ROSALYN CHAPMAN: Okay. Go ahead.

MR. FORD: So the reason that we're asking

27

for specificity, it's very important, I think, for review purposes.  If past is prologue, I suspect that one or both parties will challenge Your Honor's order no matter what the outcome.

And in order for the parties to address your findings regarding crime-fraud and to argue to the District Court or, if necessary, the Ninth Circuit, why you were correct or incorrect as the case may be, we need to understand Your Honor's thought process and basis for finding crime-fraud.

This is one of the issues that we're dealing with squarely with this tentative order.  We don't know what crime or fraud is allegedly being furthered by these communications.

HON. ROSALYN CHAPMAN:  Well, that's not true. I mean, look at, the crime or fraud is as they have framed it in their pleadings.  That's exactly what I'm finding.

That's why I go through this ad nauseam recitation in every single one of these orders laying out the scheme that they allege -- and of course with Schoonover it's just the wiretap scheme --

MR. FORD:  Right.

HON. ROSALYN CHAPMAN:  -- that they allege is part of the crime-fraud.  I don't have to do anything

Atkinson-Baker Court Reporters
www.depo.com

other than say, hey, that supports their version of what they've alleged with Mr. Schoonover.  And that's why I've tried to make it clear.

MR. FORD:  Can I address that issue, Your Honor?

HON. ROSALYN CHAPMAN:  Yeah.  Sure.

MR. FORD:  Okay.  So here's -- here's the reason why it's important.  We need to -- so we often use the phrase "crime-fraud" together in the -- you know, as one little phrase.

HON. ROSALYN CHAPMAN:  Well, it's crime or fraud.

MR. FORD:  Correct.

HON. ROSALYN CHAPMAN:  I don't have to parse out whether it's actually the crime of wire fraud or it's the crime of mail fraud.  I mean, it's their version of what they claim are the underlying criminal acts supporting their RICO charges.

MR. FORD:  Sure.  And given the fact that in order to vitiate the thing you must find by the preponderance of the evidence that the communication furthers the crime or the fraud, it's difficult for us to challenge that assertion without knowing what Your Honor believes is the crime or the fraud, so --

HON. ROSALYN CHAPMAN:  Not really.  I just

Transcript of Proceedings
April 11, 2018

base it on their pleadings as they've pleaded it.  I'm not in a position to say that a jury would necessarily find that.

I'm just saying it's in a position to support their pleadings that the RICO activities took place by the following things --

MR. FORD:  Right.

HON. ROSALYN CHAPMAN:  -- mail fraud, wire fraud, bribery, whatever.

MR. FORD:  Right.

HON. ROSALYN CHAPMAN:  I'm not saying a particular document supports bribery.  I don't think you're right about that at all, Mr. Ford.  It's enough to show that it supports their pleading as it exists.

MR. FORD:  Well --

HON. ROSALYN CHAPMAN:  I'm not going to look at a document and say, yes, this goes to wire fraud or, no, this goes to mail fraud or, yes, this goes to bribery or this goes to witness tampering.  That's not what you do when you look at a document for crime-fraud.

MR. FORD:  I think if you're going to vitiate the attorney-client privilege, which is sacrosanct in American jurisprudence, there needs to be a full basis as opposed to saying we adopt plaintiff's version of the fact and therefore believe that this supports it.

Atkinson-Baker Court Reporters
www.depo.com

HON. ROSALYN CHAPMAN:  No.  I'm just saying this -- we don't adopt it.  I'm not adopting it.  I'm just saying, hey, based upon their theory as pleaded, this would fall into their theory, this would support their theory.

MR. FORD:  Okay.  So just for the record, I think the reason it's important -- at least from our perspective or my perspective -- is that if there's a question of -- they've asserted bribery as some of the predicate acts -- bribery, perjury, false testimony, wire fraud, mail fraud -- I don't think that these text messages in any way, shape, or form support any of those claims by any stretch of the imagination, let alone a preponderance of the evidence.

What I think at best -- and if I were in plaintiff's position, they have taken the position that this is sham litigation.  And that's a position that that's only true if it is in fact sham litigation.  So that's not meant to be a tautology.  That's meant to say that the only way that this is subject to crime-fraud is if Schoonover's case was a fraud.

We have asserted -- and the N.T.G. defendants have asserted -- the tester defense, and if -- this is an issue which is an important one and is, you know, very significant for crime-fraud purposes because as

31

Transcript of Proceedings
April 11, 2018

Atkinson-Baker Court Reporters
www.depo.com

Your Honor noted in the omnibus crime-fraud docket, there's no authority that precludes the use of testers under CIPA.

HON. ROSALYN CHAPMAN:  Yeah.  But it's not my job when I look at these documents to decide whether a jury would accept your tester defense or would accept their version of what's going on that the litigation is a sham.

It's just my job to look at the document to see if it does support their version of if it's a sham. Just like if the burden were on you to look at a document to say it supported being a tester.

MR. FORD:  Sure.

HON. ROSALYN CHAPMAN:  I mean, I just --

MR. FORD:  And the reason -- and the reason I think this is a little bit -- this crime-fraud and this entire analysis is a bit premature is everyone's favorite doctrine, the Noerr-Pennington Doctrine, is at issue in a motion for summary adjudication that has been filed by the N.T.G. defendants that we joined, and that will determine -- or Judge Selna will determine once and for all whether or not our CIPA cases are indeed fraudulent because we're using testers.

HON. ROSALYN CHAPMAN:  I'm not sure he has to do that.  But we'll deal with that some other time

32

Transcript of Proceedings
April 11, 2018

because I addressed Noerr-Pennington last time.

MR. FORD:  Yes, sorry.  I read the transcript, and I know that you discussed the Noerr-Pennington at length and you talked about the interplay between Noerr-Pennington and crime-fraud --

HON. ROSALYN CHAPMAN:  In the Ninth Circuit, exactly.

MR. FORD:  Right.

HON. ROSALYN CHAPMAN:  And there is now this one unreported Ninth Circuit case, but the unreported cases don't have any reasoning attached to them.  I didn't give it any weight.  I can't remember if Paul Watford wrote it.  I think he might have.

Anyway, exactly.  I don't buy -- I don't buy that.  But whatever.

Well, let me ask you this.  In one of the things we're not discussing today, I decided to go a little further in talking about what the plaintiff's version of the RICO claims -- in discussing the plaintiff's version of the RICO claims because -- let me see if I can find it -- because one thing Judge Selna did have the plaintiff do -- maybe this wasn't the right document.  I'll have to look at it up.

One thing he did have them do -- and I think it was document 201 -- he had them file their statement

33

of the RICO claims.  Remember?  And in their statement of the RICO claims -- and maybe I'll beef this up with that.  I looked at it.  I reread it again to make sure I understood exactly what they were saying.  I especially wanted to see what they were saying about Schoonover, for example, or Phleg, for example.

And the thrust of their RICO claims, of course, goes to not your clients, but to the N.T.G. clients as masterminding the things.  But your clients are specifically in the -- in 201 put in the position of essentially knowingly becoming the plaintiffs in this litigation scheme and used as such to further the scheme.  And I could spell it out.  But that's what I'm looking at when I'm looking at the documents pertaining to your clients --

MR. FORD:  I understand.

HON. ROSALYN CHAPMAN:  -- as well as how he describes the litigation scheme, and -- I don't know.  Maybe I should find that somewhere.  I thought I had it in the document we're not talking about today.  Just a second.  I do remember it's 201.  That, I do remember.

Nevermind.  Go ahead, Mr. Ford.  I'll find it, but I can certainly do that and beef it up, but I'm not going to go through each document and look at it and say, hey, this could show bribery or this document can

34

show wire fraud or this can show mail fraud.  That's not what looking at documents for crime-fraud exception requires.

Go ahead.

MR. FORD:  Your Honor, I just would reiterate the last point that I made, which is that I think the reason that it's important for Judge Selna to rule on the M.S.A. before dealing with this crime-fraud issue is this:  If the Judge adopts the defendants' view of the law, which is that tester plaintiffs are permissible and they are not fraudulent and it is not sham litigation to employ tester plaintiffs, then by definition, the litigation is not fraudulent, and then by definition, there would be no fraud that would exist that would constitute a basis to exert a crime-fraud exception.

HON. ROSALYN CHAPMAN:  You're just talking about the wiretapping cases.

MR. FORD:  Correct.

HON. ROSALYN CHAPMAN:  You're not talking about the other four cases.

MR. FORD:  I am not.  I'm only talking about only the CIPA cases.

HON. ROSALYN CHAPMAN:  Yeah.  But Phleg, for example --

MR. FORD:  Was a product case.

35

Atkinson-Baker Court Reporters
www.depo.com

HON. ROSALYN CHAPMAN:  Yeah, exactly.

MR. FORD:  Of course.  So Phleg is different -- is not situated the same as Schoonover in that they each have their own cases.  But for the CIPA plaintiffs, I think that it's important to get that issue resolved because it's -- it would obviate the need for any crime-fraud determination if Judge Selna were to find that it's appropriate.

HON. ROSALYN CHAPMAN:  I frankly don't think that's going to happen.  I mean, it's one thing for him to say, hey, you may be able to raise this as a defense in front of a jury.  It's another thing for him to say that that defense precludes them from proving their case of litigation sham.  I don't think he'll ever say that. I can't imagine that happening.  But maybe I'll be surprised.

MR. FORD:  All right.  I think that's all I have right now, Your Honor.  I'll reserve whatever remaining thoughts I have for rebuttal.

HON. ROSALYN CHAPMAN:  Then let's turn --

Mr. Arhangelsky or Mr. Furman?

MR. ARHANGELSKY:  It will be Mr. Arhangelsky, Your Honor.

HON. ROSALYN CHAPMAN:  Okay.  Go ahead.

MR. ARHANGELSKY:  So I think I want to

36

address in the order that Mr. Ford addressed the issues with respect to identification of the documents and then crime-fraud, although I do think that some of this tends to blend together with respect to how I wanted to address these issues.

Mr. Ford has represented that documents Schoonover 83 through 88 or 89 are unrelated to the Himalaya case. Of course we completely disagree with that characterization. It's very difficult for us to sit here without having looked at the documents --

HON. ROSALYN CHAPMAN: Of course.

MR. ARHANGELSKY: -- and decide what is and what is not, but it would be an impossible coincidence if some of these documents did not relate to Himalaya based on the timing sequence of the exchange of these messages in relation to key events that happened in the Himalaya case.

As an example, we know for -- I think it should be undisputed that Mr. Basloe [phonetic] contacted Himalaya Drug Company on July 16, 2012, to first probe whether or not Himalaya had -- or would record his phone calls.

Mr. Basloe then begins to exchange messages on that exact same day just a matter of hours later with Mr. Schoonover related to this potential case that

37

they -- that defined their privilege logs.

They exchanged text messages, and then they also have a six-minute phone conversation on July 16, 2012, which leads to Mr. Schoonover at 9:00 o'clock in the morning the very next day calling Himalaya Drug Company.

During Mr. Schoonover's call, which we've produced in the underlying crime-fraud motion as our Exhibit 79, you can see that Mr. Schoonover asks the almost identical questions that Mr. Basloe asked Himalaya Drug Company on the phone the day before.

They then exchanged text messages and e-mail communications ten minutes later after Mr. Schoonover completes his call.  One of those e-mail communications that are exchanged between Schoonover and Basloe on July 17th at 9:10 a.m. has been identified by the non-N.T.G. defendants as a Himalaya correspondence which is not in our appendix because it was addressed elsewhere.

There's a text message that's exchanged on the exact same date at the exact same minute, and Mr. Ford is representing that that doesn't relate to the Himalaya Drug Company.  We find that almost impossible under the circumstances.

And if you go through these documents, if you

Atkinson-Baker Court Reporters
www.depo.com

look at these, so many of them are exchanged at key events in the Himalaya Drug case leading up to eventually the Himalaya settlement which was November 7th, 2012.

So the period in time here you're looking at from July 16th, August, September, the beginning of November, this all comes right in the weeks leading right up to the Himalaya settlement on November 7, 2012.

And I think ultimately the most important factor here -- and we provided this to Judge Selna in the pleadings that resulted in the order bringing these documents back here -- Mr. Schoonover's sworn interrogatories to us in discovery expressly represented that all of these communications were related to either the Vogue case or the Himalaya case.

He never identified another potential matter. He never identified another potential matter at his deposition. The first time in this case that we hear that Mr. Schoonover ever even contemplated another case was when they were faced with an adverse finding on crime-fraud that may have exposed these documents.

HON. ROSALYN CHAPMAN:  Was that docket 615 that you filed?

MR. ARHANGELSKY:  Yes.

HON. ROSALYN CHAPMAN:  Yeah.  It was

Atkinson-Baker Court Reporters
www.depo.com

Schoonover's responses and objections to plaintiff's first set of interrogatories?

MR. ARHANGELSKY:  Yes.

HON. ROSALYN CHAPMAN:  Yeah.  I saw that.

MR. ARHANGELSKY:  Yes.  So Mr. Ford's argument is actually in direct contrast with Mr. Schoonover's sworn statements.  I think of the two, we need to give the sworn statements at least -- in fact, we're entitled under these circumstances to at least trust somewhat -- although I think I find it harder by the day.  We're at least entitled to trust the statements that are provided to us in discovery beforehand.

There's another point that we've raised.  I know it's pending before Judge Selna.  These issues will be argued.  But even assuming that some of these documents were to relate to a different matter, that doesn't take them out of the crime-fraud analysis.

Our allegations against Mr. Schoonover in this case are conspiracy.  It's RICO conspiracy.  And, yes, the S.A.C. case is a predicate act related to that, but the point is these documents bear on agreement. They bear on his interaction with N.T.G. through Mr. Basloe, and to the extent that Mr. Schoonover is forming an agreement -- even if we accept this as true,

40

Transcript of Proceedings
April 11, 2018

Atkinson-Baker Court Reporters
www.depo.com

if he's forming an agreement to perform acts in other cases during the pendency the Himalaya case, I just can't see a universe where that's not relevant to crime-fraud in this situation.

So for our purposes -- or from our perspective, all of these files need to be evaluated in the crime-fraud context, and they all demonstrate formation of acts in furtherance of the predicate acts we've identified.

Now, on the issue of crime-fraud, you know, now we hear the tester defense again. And I think it's very important to -- we agree with Her Honor, perhaps --

HON. ROSALYN CHAPMAN: Perhaps? Is this the first time, Mr. Arhangelsky?

MR. ARHANGELSKY: Well, in that our allegations in the S.A.C. and in the RICO statement which were set forth, Judge Selna found in his dispositive order -- or order on dispositive motions that we have pled these RICO predicates with particularity with respect to fraud under rule 9(b).

These are the allegations that drive this case. And I understand that they raise the tester defense. They also raised that defense at the pleadings stage.

One of their actual headings in arguing on

41

dispositive motions -- and by the way, they did this multiple times in docket 64, docket 65, docket 139, docket 138. This was at the pleadings stage. One of the headings they argued was the use of testers in privacy cases is not illegal.

They presented this argument squarely to Judge Selna on the pleadings. And although Judge Selna didn't expressly address it, he allowed our RICO claims to proceed on its exact same allegations, and by necessary implication he did not find that their tester argument at the time would have precluded us from advancing a RICO case.

So I don't believe in any way, shape, or form that the tester argument could be a valid basis to prevent the crime-fraud analysis from continuing.

You know, I could go through the many facts that we've identified about both the Phleg and Schoonover case that indicates that this was fraudulent activity. I think it's -- it should be self-evident that you have Mr. Basloe understanding that if Mr. Schoonover called Himalaya he would be recorded. There's detailed communication apparently that happens between the two parties leading right up to Mr. Schoonover's phone call the next day.

I think it's clear that Mr. Schoonover called

42

Atkinson-Baker Court Reporters
www.depo.com

for the purpose of being recorded, as he, by the way, admitted to N.I.C.'s investigator Mr. Baker.

There has not been any information or evidence submitted by defendants as countervailing, and they elected, as they told you last time when we were here, to proceed solely on a theory that we hadn't supplied enough evidence.

We haven't seen any countervailing evidence that rebuts Mr. Baker's statement, for example. Mr. Schoonover in his declaration -- deposition claims he can't remember even speaking with Mr. Baker or couldn't remember the content of his communications.

There's enough evidence in the record that squarely falls within our allegations that shows that this was a setup.

We think the crime-fraud order would therefore be appropriate. We think for reasons that we've addressed at other times in this case a broader crime-fraud order would be appropriate.

I don't think we need to rehash that argument, but I believe that a complete review of all the documents in the Schoonover case would be warranted under the Ninth Circuit standard so that we can understand exactly what files were and were not part of the scheme.

43

HON. ROSALYN CHAPMAN:  That's not in front of me now.  This is on remand solely of the documents that Judge Selna ordered me to review on remand.  You deal with Judge Selna when you do your objections to my ruling on the omnibus motion to compel.

MR. ARHANGELSKY:  Yes, Your Honor.

HON. ROSALYN CHAPMAN:  And I understand your position on that.

All right.  I want to make it clear, then, that my order to you is to file a notice of lodgement of the attachment to the Phleg documents and to serve me with those documents that were the attachments no later than 4:00 p.m. tomorrow.

All right.  Now I'm going to turn to N.T.G.

MR. FORD:  May I just respond to one thing --

HON. ROSALYN CHAPMAN:  Absolutely.

MR. FORD:  -- that Mr. Arhangelsky said?

HON. ROSALYN CHAPMAN:  Please.

MR. FORD:  I -- he -- I believe that N.I.C. is misrepresenting the nature of Mr. Schoonover's discovery responses.  The discovery asked which cases did you hire N.T.G. as your lawyer, and he mentioned the Vogue --

HON. ROSALYN CHAPMAN:  Hold on.  Are we looking at this first set of interrogatories?

44

Atkinson-Baker Court Reporters
www.depo.com

MR. FORD:  Yes.  It was identify all cases in which you hired N.T.G.  And it is correct to say that the only two cases in which Sam Schoonover hired N.T.G. as his attorney is the Vogue and the Himalaya case. This was a case that, as we've maintained throughout, was contemplated but never pursued.

HON. ROSALYN CHAPMAN:  Vogue, you're talking about?

MR. FORD:  No.  Vogue was pursued.  Vogue and Himalaya were the two cases where there were actual cases.  What we're talking about here for this November 1st, 2012 series of texts and the ones at 86, 87, 88, all the way -- and halfway through 89 to November 7th talks about how he talks about a different case that was contemplated but not -- it did not go forward.  It was not consummated.

The challenge here is that, again, we're talking about vitiating attorney-client privilege, and the case law says that it should be done narrowly and carefully.

And N.I.C. is taking essentially a maximalist position here, which is to say because the fraud and the scheme is so broad, anything that in any way, shape, or form touches the scheme is produced under crime-fraud.

I don't think case law supports that at all.

45

Transcript of Proceedings
April 11, 2018

And I think the further review of the November 1 through November 7 makes it clear that it's not about Himalaya.

MR. ARHANGELSKY:  Your Honor, if I may --

HON. ROSALYN CHAPMAN:  All right.

MR. ARHANGELSKY:  -- briefly.

The document in question, I believe, is document 590-10.  The pagination is page 7.  The interrogatory No. 9 that Mr. Ford just mischaracterized specifically asked for "All interactions and communications you've had with Newport Trial Group's attorneys, employees, agents, or investigators."

It did not cabin any questions with respect to whether they've been hired or otherwise.  And the response that Mr. Schoonover gave, subject to sworn verification, indicated that the only subject matters for which those text messages applied were the Vogue case and the Himalaya case.

And I think I might have mentioned before, but just in case, the Vogue case was settled and finally resolved at the end of June 2012, meaning that the case was formally dismissed off the docket before July even came around.

HON. ROSALYN CHAPMAN:  Mr. Darnell or Ms. Sperber, I said I would offer you the opportunity if you wanted to participate in the oral argument.  Would

46

you like to participate in the oral argument?

MS. SPERBER:  Yes, Your Honor.

HON. ROSALYN CHAPMAN:  All right.

MS. SPERBER:  Thank you.  I'd like to start with some easy issues, some errors in the tentative.  If I could have you turn to page 5.

HON. ROSALYN CHAPMAN:  Well, apparently I made an error regarding the Phleg documents because Mr. Ford now calls to my attention that in fact they all pertain to Nature's Way.  So he's pointed that out.  And also some of the other pages in Schoonover that pertain to the free tickets to the concert.

Okay.  Go ahead.  I'm on page 5.

MS. SPERBER:  Yes, Your Honor.  Page 5, line -- it's between 15 and 16 --

HON. ROSALYN CHAPMAN:  Okay.

MS. SPERBER:  -- it refers to the prior crime-fraud order.  It says, "However, four documents listed on defendant Schoonover's privilege log were more likely than not in furtherance of the wiretapping scheme."

First, this was defendant N.T.G.'s privilege log, not Schoonover's privilege log.

HON. ROSALYN CHAPMAN:  All right.  Okay.  The documents were labeled "Schoonover" at the bottom.

47

Atkinson-Baker Court Reporters
www.depo.com

MS. SPERBER:  They were labeled "N.T.G."

HON. ROSALYN CHAPMAN:  No.  I thought they were Schoonover documents at the bottom.  But let me look at -- you're looking at 458?

MS. SPERBER:  Correct, Your Honor.

HON. ROSALYN CHAPMAN:  Hold on.  I know I brought that with me.  Mr. Ford produced documents to me for the omnibus motion from his individual clients, and I thought those were the Schoonover documents.  But hold on.

If you look at 458, tell me where we are, Ms. Sperber.

MS. SPERBER:  Yes, Your Honor.  The last page, page 37.

HON. ROSALYN CHAPMAN:  Okay.  All right.  I see Nature's --

MS. SPERBER:  Or actually maybe page 36 is the best place to go.

HON. ROSALYN CHAPMAN:  Hold on.  36 where it says "Himalaya Drug"?

MS. SPERBER:  Yes, Your Honor.

HON. ROSALYN CHAPMAN:  Hold on.  Let me go back a little bit, then.  Himalaya Drug.  Himalaya Drug.  Oh, you're right.  Some of those were Schoonover designated, and some of them were N.T.G. designated

48

Transcript of Proceedings
April 11, 2018

Atkinson-Baker Court Reporters
www.depo.com

looking at page 34 for what I reviewed from Appendix "A."

Okay.  Thank you very much.

Thank you very much.  What else?

MS. SPERBER:  Thank you, Your Honor.  And then second and still in that same sentence you indicate "four documents listed on defendant N.T.G.'s privilege log."  That is correct now that we're talking about N.T.G.'s privilege log.  However, to the extent that we're talking about Schoonover documents, there were only two Schoonover documents.  Meaning Himalaya Drug documents, I should say.

HON. ROSALYN CHAPMAN:  Well, you know, take a look at page 36.  If it was 80 and 81 and 84 and 85 -- and some of those might have been blank.  It could be that the second page was blank for all I know.  But aren't we counting those as four documents?

MS. SPERBER:  Your Honor, I don't think so because otherwise we're creating confusion to the --

HON. ROSALYN CHAPMAN:  I know.  The numbers are making me crazy because some places, there's a blank page that's numbered.  Some places it's not.  I don't know.  I'll count it any way you want.

But, for example, looking at what we're dealing with Mr. Ford now, every single page is counted

49

as a separate document according to Judge Selna's order, although for Phleg it was underreported as 14 and it really comes to more than 14.

Okay. So if we're looking at Himalaya, should we not count each Bates numbered document as a separate document?

MS. SPERBER: Your Honor, I think it would be inappropriate to do so because Your Honor obtained 231 documents for in camera review. Many of those documents were --

HON. ROSALYN CHAPMAN: Were multiple pages, no, I know.

MS. SPERBER: And if all of a sudden we start counting each page as a document, then -- and one of the things why this is important is that N.I.C. argues to Judge Selna, they say 4 documents out of 231, and they're making a percentage number, and all of a sudden that number becomes very inaccurate if you're referring --

HON. ROSALYN CHAPMAN: I think it's inaccurate anyway. I mean, if we just count Himalaya as two documents instead of four, that supports Mr. Arhangelsky's case that I'm a lazy slug and won't look at every single document they want me to look at.

If we count it as four documents, I'm not

Atkinson-Baker Court Reporters
www.depo.com

quite as lazy, and I'm looking at twice as many documents.

MS. SPERBER:  Your Honor, the problem is that this is clearly 2 of the 231 documents.  It's not 4 out of 231 for which you found crime-fraud.

HON. ROSALYN CHAPMAN:  All right.  I'll hear what plaintiff has to say about that too.  The numbering is really making me insane.  I've got different numbers when I looked at every single thing and counted them than you had.  And then you got -- and then just -- okay.  All right.  And even on the 14 late disclosed it was more than 14.

MS. SPERBER:  Your Honor, I was hoping to address that as well --

HON. ROSALYN CHAPMAN:  Please.

MS. SPERBER:  -- if I may.

So this reference is on page 7, line 25, of your order.

HON. ROSALYN CHAPMAN:  Okay.

MS. SPERBER:  And I think I understand the confusion and what occurred here.

HON. ROSALYN CHAPMAN:  What line?  Page 7, what line?

MS. SPERBER:  Page 7, line 25, where you said "which totals 16 documents" and then in parentheses you

said "rather than 14 documents."

HON. ROSALYN CHAPMAN:  I know.

MS. SPERBER:  Your Honor, I believe the count should actually be 14 documents.

HON. ROSALYN CHAPMAN:  All right.  Tell me why.

MS. SPERBER:  And it's rare that you have text messages coming into litigation.  People generally don't save their text messages, but here it appears that each of the text messages, each page was considered to be a document, which gives you 13 for Schoonover, and the Phleg e-mail, which is three pages, is actually only one document because it is one e-mail.

HON. ROSALYN CHAPMAN:  Yes.  That was forwarded.

MS. SPERBER:  Which would put you to 14 --

HON. ROSALYN CHAPMAN:  And the last page has nothing on it, essentially.

MS. SPERBER:  Right.  But that's --

HON. ROSALYN CHAPMAN:  So you're saying I should count Phleg as one document and do the 13 -- okay.

MR. FORD:  What had happened, Your Honor, was originally on Appendix "E," I believe it was, that they submitted with their crime-fraud motion, they had these

52

13 pages of text messages, and then they only made reference to Phleg 68, which was --

HON. ROSALYN CHAPMAN:  I know.  I saw.

MR. FORD:  Right.  So we supplemented it to say actually the e-mail at issue is 66 through 68, and that, if you're doing it on a page number, makes it 16 pages as opposed to 14 pages.

HON. ROSALYN CHAPMAN:  All right.  You're right.  We're not doing pages, I guess.  We're doing documents.  Not pages.

Okay.  And while I have you here, Mr. Ford, do you have any idea how many pages we're talking about with the attachments to Phleg, or no?

MR. FORD:  I believe it should be only 10 or 15 maybe.

HON. ROSALYN CHAPMAN:  Okay.  Ms. Sperber.

MS. SPERBER:  Thank you, Your Honor.

Admittedly, this is a bit ticky-tacky, but we think that it is important for purposes of this tentative given the procedural posture of this case.

On page 5 -- and I'm going back to the same area where you are -- page 5, lines 15 and 16, where you're discussing the procedural posture, and you're referring to the prior omnibus crime-fraud motion and the findings --

53

Atkinson-Baker Court Reporters
www.depo.com

HON. ROSALYN CHAPMAN:  Right.  Look at, I could have cut and pasted in this one, as well as the Bobba one, chunks from the omnibus order.  I didn't want to do that.  What's the point?

Judge Selna is going to be reviewing the omnibus order pretty much at the same time he's going to be reviewing this hopefully.  Okay?  So it seemed to me -- although it's not the way it's supposed to be done because each order should really be complete in itself, it just seemed to me to make more sense to cross refer to the omnibus ruling -- okay? -- rather than regurgitating everything I said in that once again.

All right.  That's on me.  If you don't like it or Judge Selna doesn't like it, that was my decision.

Go ahead.

MS. SPERBER:  No, Your Honor, it's not that at all.  It was just that this appears to be -- section two appears to be your findings, and to the extent that that omnibus crime-fraud order is not final, we think that that should be referenced, that that --

HON. ROSALYN CHAPMAN:  Well, I said "The Special Master found."  I mean, I'm not saying "The Court found."  I'm referring to myself as the Special Master here, and -- and I don't see any problem doing -- do you see what I'm saying there?

54

Transcript of Proceedings
April 11, 2018

Look at -- Ms. Sperber, look at line 7, "as part of the omnibus order, the Special Master found," and at the beginning I also say, "the Special Master issued an order."  I make it pretty clear it's not the Court.

MS. SPERBER:  Your Honor, I understand.  I'll move on.

HON. ROSALYN CHAPMAN:  Okay.

MS. SPERBER:  Your Honor, if I could turn to a couple of substantive issues.  They won't be specific to the messages that are at issue since they are not the N.T.G. defendant's documents.  But going back to some of the statements you made early on regarding the standard that must be met as part of the review of the documents, I think it's important that we note here that this is a CIPA case.  We're all aware of the fact that Mr. Schoonover was a tester with regard to Himalaya.

The issue here with regard to crime-fraud is that the plaintiff has alleged that this was a crime or a fraud, this particular litigation against Himalaya, not because of the allegations in the Himalaya complaint, but because they have alleged that Mr. Schoonover knew when he made that phone call that the call would be recorded.

HON. ROSALYN CHAPMAN:  No, I don't think it

Atkinson-Baker Court Reporters
www.depo.com

was just that.  I think that he's not an ordinary consumer who made the phone call.  He was compelled to make the phone call because of his arrangement with N.T.G.

MS. SPERBER:  Your Honor, going back, though, which is there has been no finding that that is a crime or a fraud, and it isn't sufficient to simply assume that it could be a crime or a fraud and then to say that these documents support that possibility of a crime or fraud because --

HON. ROSALYN CHAPMAN:  Their whole pleading of crime or fraud depends upon their view of a litigation scam.  And the litigation scam is -- I won't call bribing or hiring people to make these calls to companies in order to force them to settle and make money in settlement rather than spend money litigating. That's -- that's like -- that's their scheme.

MS. SPERBER:  Your Honor, but --

HON. ROSALYN CHAPMAN:  You would have to -- that's their theory.

MS. SPERBER:  If their theory, however, is not a crime or a fraud, then we're making a grave error by requiring the production of attorney-client communications in support of --

HON. ROSALYN CHAPMAN:  Well, tell me why you

56

Transcript of Proceedings
April 11, 2018

don't think it's a crime or a fraud for a lawyer to set up someone to make a call to say that they didn't know the call was being recorded or to figure out a way to get around the call being recorded and then to file a lawsuit against the company in order to force them to pay money to settle.  How is that not -- how is that not fraudulent litigation?  How is that not sham litigation?

MS. SPERBER:  Your Honor, the issue here is the facts.  Do these facts show and do these documents show --

HON. ROSALYN CHAPMAN:  No, I understand.  But I think if you look at these facts -- you look at these documents objectively, I came to the conclusion they did support that.

MS. SPERBER:  Your Honor, and going back to the standard --

HON. ROSALYN CHAPMAN:  And I also think a reasonable person would come to that conclusion.  And that's the standard.  I came to the conclusion the preponderance of the evidence shows that.

MS. SPERBER:  Nothing further, then, Your Honor.

HON. ROSALYN CHAPMAN:  Yep.  All right. Mr. Ford, any last comments?

MR. FORD:  No, but I do have the printouts

Atkinson-Baker Court Reporters
www.depo.com

here to give you.

HON. ROSALYN CHAPMAN:  Oh, thank you.

MR. FORD:  So there are five attachments, and they go from Phleg 66 to I believe it's Phleg 79.

HON. ROSALYN CHAPMAN:  Well, I have 66 to 68 already.

MR. FORD:  Right.  It's just for completeness.

HON. ROSALYN CHAPMAN:  Thank you.

MR. FORD:  And then the attachments are there.  I'll e-mail you a hard copy of that so you have it for your file.

HON. ROSALYN CHAPMAN:  And file a notice of lodgement.

MR. FORD:  And file a notice of lodgement. But I just wanted to advise you that there they are.

HON. ROSALYN CHAPMAN:  Okay.  Thank you.

MR. FORD:  I have nothing further in terms of argument.

HON. ROSALYN CHAPMAN:  All right.  Anything else from you, Mr. Arhangelsky?

MR. ARHANGELSKY:  No, Your Honor.

HON. ROSALYN CHAPMAN:  All right.  So my goal is to issue this in final form by the end of the week. And then your goal should be to file objections as fast

Transcript of Proceedings
April 11, 2018

Atkinson-Baker Court Reporters
www.depo.com

as possible so we can get it on calendar with Judge Selna for the May hearing hopefully or, if not, to put it over with the other things.

Let's go off the record if we could, please.

(Ending time:  3:54 p.m.)

59

REPORTER'S CERTIFICATE

I, LELIA C. HASUIKE, CSR No. 11082, Certified Shorthand Reporter, certify;

That the foregoing transcript of proceedings were taken by me at the time and place set forth herein;

That the testimony of the witnesses, the questions propounded, and all objections and statements made at the time of the proceedings were recorded stenographically by me and were thereafter transcribed;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated this 12th day of April, 2018.

_____
LELIA C. HASUIKE, C.S.R. NO. 11082

Atkinson-Baker Court Reporters
www.depo.com

**A**

a.m 38:16
able 22:14 36:11
Absolutely 44:16
abundantly 7:6 19:24
AC03D98 1:25
accept 17:17 32:6,6 40:25
accurate 8:5
accused 7:2
acknowledged 23:2
act 15:4 22:8 40:21
action 60:15
activities 30:5
activity 42:19
acts 27:13,14 29:18 31:10 41:1,8,8
actual 41:25 45:10
ad 28:19
add 13:7
address 28:5 29:4 37:1,5 42:8 51:14
addressed 13:24 33:1 37:1 38:18 43:18
adjudication 32:19
admitted 43:2
Admittedly 53:18
adopt 30:24 31:2
adopting 31:2
adopts 35:9
advancing 42:12
adverse 39:20
advice 26:20
advise 58:16
afternoon 5:13,18
agents 46:11
ago 24:8
agree 41:12
agreed 12:20 23:1
agreeing 23:19
agreement 11:8,21 14:5 40:22,25 41:1
agreements 11:24 12:6 12:17,23
ahead 14:19 17:20 26:9 27:24 34:22 35:4 36:24 47:13 54:15
al 1:7 2:7 5:7
allegation 11:2
allegations 40:19 41:16 41:21 42:9 43:14 55:21
allege 28:21,24
alleged 12:1 29:2 55:19 55:22
allegedly 28:13
allowed 42:8
American 30:23
Ana 3:13
analysis 6:24 32:17 40:18 42:15
Angeles 3:4
anyway 24:22 33:14 50:21
apparently 23:23,25 42:22 47:7
appear 17:1
appearances 5:12
appeared 12:11

appears 52:9 54:17,18
appendix 38:18 49:2 52:24
applied 46:16
appropriate 36:8 43:17 43:19
April 1:17 2:18 5:1 60:19
area 53:22
arguably 8:3
argue 28:6
argued 40:16 42:4
argues 50:15
arguing 41:25
argument 6:2,8,11,12 13:12 18:21 21:20,22 40:6 42:6,11,14 43:21 46:25 47:1 58:19
Arhangelsky 3:7 5:13,14 10:19,21 13:6,9,14 36:21,22,22,25 37:12 39:24 40:3,5 41:14,15 44:6,17 46:3,5 58:21 58:22
Arhangelsky's 50:23
Arizona 3:8
arrangement 56:3
aside 9:10
asked 38:10 44:21 46:9
asking 27:25
asks 38:9
asserted 31:9,22,23
assertion 29:23
ASSOCIATES 3:6
assume 11:20 56:7
assuming 22:5 40:16
ATKINSON-BAKER 1:21
attached 18:3 33:11
attachment 14:9 44:11
attachments 11:7,7,12 11:14,17,20 14:9 44:12 53:13 58:3,10
attention 47:9
attorney 45:4 60:14
attorney-client 6:7 10:14 12:13,18 13:5 14:3 26:23 30:22 45:18 56:23
attorneys 46:11
August 20:16 39:6
authority 32:2
aware 6:22 7:14 9:19 55:16

**B**

B 4:8
back 13:16 39:12 48:23 53:21 55:12 56:5 57:15
Baker 43:2,11
Baker's 43:9
base 30:1
based 16:18 17:12 31:3 37:15
basis 6:23 9:7 11:2 27:6 28:10 30:23 35:15 42:14
Basloe 37:19,23 38:10 38:15 40:24 42:20
Bates 7:24 14:14,16 50:5

bear 40:22,23
becoming 34:11
beef 34:2,23
beginning 20:9 39:6 55:3
begins 37:23
behalf 5:14,16,19,20,22
believe 10:9,13 13:10 16:13 17:7 26:11 27:3 30:25 42:13 43:21 44:19 46:6 52:3,24 53:14 58:4
believes 29:24
best 7:3 31:15 48:18
bit 6:22 9:17 16:16 26:14 32:16,17 48:23 53:18
BLAINE 3:11
blank 49:15,16,21
blend 37:4
Bobba 11:23 12:8 54:3
Boericke 8:8,15,22,25 9:4,19 10:24 11:1,3,13
bottom 24:24 47:25 48:3
Boulevard 2:17
box 11:19
brain 20:22
brand 8:8 10:24
Brendan 3:16 5:22
bribery 30:9,12,19 31:9 31:10 34:25
bribing 27:13 56:14
briefly 46:5
bring 12:25 13:15
bringing 39:11
broad 45:23
broader 43:18
broadly 27:4
brought 8:11,14 48:7
bubble 16:22,25 17:10 20:19
bubbles 24:6,16 25:5
Building 3:8
burden 32:11
buy 33:14,14

**C**

C 1:24 2:19 3:1 60:3,21
C.S.R 60:21
C.V 14:25
cabin 46:12
calendar 59:1
California 1:2,16 2:2,17 3:4,13,17 5:1 15:1,3,6 60:17
call 7:4 18:1 19:25 20:3 20:11,16,19,22 38:7,14 42:24 55:23,24 56:2,3 56:14 57:2,3,4
CALLAHAN 3:11
called 5:25 8:22 16:17 42:21,25
calling 38:5
calls 15:6 37:22 47:9 56:14
camera 11:17 50:9
careful 16:16
carefully 45:20
case 5:7,10 7:22 8:7,22 8:25 10:4,22 11:4,4,5,9

14:23 15:1,3,4,10,13 15:14 16:14 17:9,10 19:9,11,12,14,18,22 21:20 22:1 24:11 26:16 28:8 31:21 33:10 35:25 36:13 37:8,17,25 39:2 39:15,15,18,19 40:20 40:21 41:2,22 42:12,18 43:18,22 45:4,5,15,19 45:25 46:17,17,19,19 46:20 50:23 53:20 55:16
cases 7:17 8:1,18 9:12 15:9 32:22 33:11 35:17 35:20,22 36:4 41:2 42:5 44:21 45:1,3,10 45:11
catch-22 6:22
Center 3:16
central 1:2 2:2 16:19 17:12
Centre 3:12
certain 17:22 23:4
certainly 14:7 34:23
CERTIFICATE 60:1
Certified 60:3
certify 60:4,13
challenge 6:20 28:3 29:23 45:17
Chapman 3:3 5:5,9,24 8:10,13,20,24 9:2,6,9 9:18,21,24 10:2,7,16 11:11,16 12:10,16,21 13:8,13,19 14:1,8,22 15:16,21 16:3,10,24 17:2,5,14,16,20 18:7 18:12,15,20 19:4,10,17 20:5,8,11,15,18,21,25 21:3,6,10,16,19,23 22:6,16,21,24 23:6,9 23:15,18,22,25 24:12 24:18,21,25 25:2,8,11 25:14,16,21,25 26:9 27:9,18,24 28:15,24 29:6,11,14,25 30:8,11 30:16 31:1 32:4,14,24 33:6,9 34:17 35:16,19 35:23 36:1,9,20,24 37:11 39:22,25 40:4 41:13 44:1,7,16,18,24 45:7 46:4,23 47:3,7,16 47:24 48:2,6,15,19,22 49:13,20 50:11,20 51:6 51:15,19,22 52:2,5,14 52:17,20 53:3,8,16 54:1,21 55:8,25 56:11 56:19,25 57:11,17,23 58:2,5,9,13,17,20,23
characterization 37:9
charges 29:18
check 10:16
chunks 54:3
CIPA 15:3 32:3,22 35:22 36:4 55:16
Circuit 26:16 28:7 33:6 33:10 43:23
circumstances 38:24 40:9

cite 13:1
claim 29:17
claims 12:2 31:13 33:19 33:20 34:1,2,7 42:8 43:10
clear 7:6 19:24 29:3 42:25 44:9 46:2 55:4
clearly 51:4
client 26:19
client-attorney 27:15
clients 34:8,9,9,15 48:8
close 26:21 27:1
coincidence 37:13
College 2:17
come 11:24 12:6 57:18
comes 21:25 39:7 50:3
coming 6:17 52:8
commencing 2:18
comments 57:24
communication 29:21 42:22
communications 10:13 26:23 27:7 28:14 38:13 38:14 39:14 43:12 46:10 56:24
companies 15:5 56:15
company 16:18 17:11 37:20 38:6,11,23 57:5
compel 44:5
compelled 56:2
complaint 10:25 11:2 55:22
complete 43:21 54:9
completed 15:14
completely 37:8
completeness 58:8
completes 38:14
concert 24:7,14,15 47:12
concluded 8:16
conclusion 57:13,18,19
confusion 49:19 51:21
consent 15:7
considered 52:10
consistent 14:6
conspiracy 40:20,20
constitute 7:7 35:15
consumer 56:2
consummated 45:16
contacted 37:20
contains 24:10
contemplated 39:19 45:6,15
contemporaneous 20:13
content 10:10 43:12
contents 7:1
context 41:7
continue 27:20
continued 21:1,1
continuing 27:1 42:15
contrast 40:6
conversation 17:8 18:5 20:3 24:17 38:3
copies 14:11
copy 11:19 14:10 24:22 58:11
Corp 1:4 2:4 3:5 5:7
correct 11:23 12:19 18:11 20:7 24:20 25:24 26:8 28:8 29:13 35:18

Transcript of Proceedings
April 11, 2018

Atkinson-Baker Court Reporters
www.depo.com

45:2 48:5 49:8 60:11 60:18
**correspondence** 38:17
**Costa** 3:17
**counsel** 6:17 8:5 14:11 24:8 26:20
**count** 49:23 50:5,21,25 52:3,21
**counted** 49:25 51:9
**countervailing** 43:4,8
**counting** 49:17 50:14
**couple** 15:17 55:10
**course** 10:7 14:2 19:7 28:21 34:8 36:2 37:8 37:11
**Court** 1:1,21 2:1 7:14,24 28:7 54:23 55:5
**cover** 15:18
**covered** 24:22
**crazy** 49:21
**creating** 49:19
**crime** 10:12 27:4,6 28:13 28:16 29:11,15,16,22 29:24 55:19 56:6,8,9 56:12,22 57:1
**crime-fraud** 6:7 7:21 10:10,12 11:25 12:7,14 13:4,11 15:12 16:9 18:4 21:25 23:10,17 25:20 26:13 27:19 28:6 28:10,25 29:9 30:20 31:20,25 32:1,16 33:5 35:2,8,15 36:7 37:3 38:8 39:21 40:18 41:4 41:7,10 42:15 43:16,19 45:24 47:18 51:5 52:25 53:24 54:19 55:18
**criminal** 26:19 29:17
**cross** 4:2 54:10
**crossed** 13:16
**CSR** 1:24 2:19 60:3
**current** 24:11
**cut** 54:2

**D**

**D** 4:1
**Darnell** 3:12 5:18,18 12:14 13:18,22 46:23
**Darnell's** 11:21
**date** 10:17 38:21
**dated** 18:14 20:6,9 60:19
**dates** 18:10
**David** 3:12 5:18
**day** 37:24 38:5,11 40:11 42:24 60:19
**deal** 6:13 12:22 32:25 44:3
**dealing** 28:11 35:8 49:25
**dealt** 8:14
**December** 24:6,19 25:5
**decide** 32:5 37:12
**decided** 33:17
**decision** 54:14
**declaration** 11:23 43:10
**declare** 60:16
**deemed** 27:7
**defendant** 3:10 47:19,22 49:7

**defendant's** 55:12
**defendants** 1:8 2:8 3:14 5:19,21,23 6:5,11 8:6 31:22 32:20 38:17 43:4
**defendants'** 4:9 35:9
**defense** 27:11,21 31:23 32:6 36:11,13 41:11,23 41:23
**defined** 38:1
**definition** 35:12,13
**demonstrate** 26:22 41:7
**depends** 56:12
**deposition** 18:2,3 39:18 43:10
**describes** 34:18
**DESCRIPTION** 4:9,12
**designated** 48:25,25
**detailed** 42:22
**determination** 36:7
**determine** 15:5 32:21,21
**different** 14:14 16:14 18:9,9 27:10 36:3 40:17 45:14 51:8
**difficult** 29:22 37:9
**digest** 9:13
**direct** 4:2 40:6
**directly** 11:18
**disagree** 37:8
**disagrees** 27:5
**disclosed** 51:11
**discovery** 39:13 40:12 44:21,21
**discuss** 6:18,19
**discussed** 33:3
**discussing** 6:20 18:23 33:17,19 53:23
**discussion** 24:7
**dismissed** 46:21
**dispositive** 41:18,18 42:1
**District** 1:1,2 2:1,2 15:1 28:7
**DIULIO** 3:15
**divulge** 7:1
**docket** 9:8 13:1,20,22 32:1 39:22 42:2,2,3 46:21
**doctrine** 32:18,18
**document** 7:16,20 14:15 15:25 18:16,17,22,23 21:25 22:3 27:7 30:12 30:17,20 32:9,12 33:23 33:25 34:20,24,25 46:6 46:7 50:1,5,6,14,24 52:11,13,21
**documents** 6:5,20,25 7:1 7:5,9,10,11,12,15 8:6 9:3 14:18 15:18 27:3 32:5 34:14 35:2 37:2,6 37:10,14 38:25 39:12 39:21 40:17,22 43:22 44:2,11,12 47:8,18,25 48:3,7,9 49:7,10,11,12 49:17 50:9,9,16,22,25 51:2,4,25 52:1,4 53:10 55:12,14 56:9 57:9,13
**Dodson** 11:18
**doing** 53:6,9,9 54:24

**double** 10:17
**drive** 3:8,12,16 41:21
**Drug** 14:25 15:24 16:1 16:17,18 37:20 38:5,11 38:23 39:2 48:20,23,23 49:11
**drugs** 8:9
**duplicate** 14:10,12,18

**E**

**E** 3:1,1 4:1,8 52:24
**e-mail** 10:3 11:6 38:12 38:14 52:12,13 53:5 58:11
**early** 55:13
**easy** 47:5
**either** 10:10 39:14
**elected** 43:5
**elliptically** 20:23
**EMORD** 3:6
**employ** 35:12
**employee** 60:14
**employees** 46:11
**ends** 7:18
**engaged** 26:19
**entire** 32:17
**entitled** 22:11,12 40:9,11
**errata** 9:8 23:2
**error** 47:8 56:22
**errors** 47:5
**especially** 34:4
**ESQ** 3:7,7,11,12,16
**essence** 11:25
**essentially** 6:4 34:11 45:21 52:18
**established** 27:15
**et** 1:7 2:7 5:7
**evaluated** 41:6
**event** 14:1
**events** 37:16 39:2
**eventually** 39:3
**everyone's** 32:17
**evidence** 29:21 31:14 43:4,7,8,13 57:20
**exact** 14:15 37:24 38:21 38:21 42:9
**exactly** 28:17 33:7,14 34:4 36:1 43:24
**example** 34:6,6 35:24 37:18 43:9 49:24
**excepting** 26:3
**exception** 6:7 7:21 11:25 12:7 13:4,11 22:1 23:10 35:2,15
**exceptions** 23:4
**exchange** 37:15,23
**exchanged** 38:2,12,15 38:20 39:1
**exert** 35:15
**Exhibit** 38:9
**exist** 35:14
**exists** 30:14
**explain** 6:23 7:3
**exposed** 39:21
**expressly** 39:13 42:8
**extent** 40:24 49:9 54:18

**F**

**faced** 39:20
**fact** 8:6 9:5 10:4 11:8 13:24 14:9 17:11,25 23:4,20 26:3 29:19 30:25 31:18 40:9 47:9 55:16
**factor** 39:10
**facts** 42:16 57:9,9,12
**Fair** 16:11
**fairly** 20:12
**fall** 31:4
**falls** 43:14
**false** 31:10
**familiar** 26:15
**fast** 58:25
**favor** 8:3
**favorite** 32:18
**feel** 19:21
**Fifth** 3:3
**figure** 57:3
**file** 1:25 12:25 33:25 44:10 57:4 58:12,13,15 58:25
**filed** 10:25 13:20 15:1 17:24 18:1 20:1 32:20 39:23
**files** 41:6 43:24
**final** 13:20 54:19 58:24
**finalizing** 25:13
**finally** 46:19
**financially** 60:14
**find** 8:17 26:4 29:20 30:3 33:21 34:19,22 36:8 38:23 40:10 42:10
**finding** 12:15 13:23 17:6 27:18 28:10,18 39:20 56:6
**findings** 10:12 28:6 53:25 54:18
**finds** 6:4
**fine** 27:10,12
**finish** 23:16
**first** 7:12,16 9:7 15:8 20:5 22:13 26:18 37:21 39:18 40:2 41:14 44:25 47:22
**five** 20:2,4 58:3
**Floor** 2:17 3:3,12
**following** 5:25 16:15 17:23 30:6
**force** 56:15 57:5
**Ford** 3:15,16 5:22,22 6:8 6:15,16 8:12,19,23 9:1 9:3,7,10,20,23 10:1,3,9 11:15 14:6,7,19,20,23 15:20 16:2,4,5,11,25 17:4,7,15,19,21 18:11 18:13,19 19:1,7,16,23 20:7,10,14,17,20,24 21:2,5,9,14,17,22 22:4 22:8,18,23 23:1,8,11 23:16,20,24 24:3,16,20 24:23 25:1,4,10,12,15 25:17,24 26:8,10 27:17 27:23,25 28:23 29:4,7 29:13,19 30:7,10,13,15 30:21 31:6 32:13,15 33:2,8 34:16,22 35:5 35:18,21,25 36:2,17

37:1,6 38:22 44:15,17 44:19 45:1,9 46:8 47:9 48:7 49:25 52:23 53:4 53:11,14 57:24,25 58:3 58:7,10,15,18
**Ford's** 6:12,13 40:5
**foregoing** 60:5,11,17
**form** 31:12 42:13 45:24 58:24
**formally** 46:21
**formation** 41:8
**forming** 40:25 41:1
**forth** 26:10 41:17 60:6
**forward** 45:16
**forwarded** 52:15
**found** 9:11,16 11:23 12:6 12:12 14:2 16:1 23:7,9 23:23,25 24:13 25:8 27:10 41:17 51:5 54:22 54:23 55:2
**four** 35:20 47:18 49:7,17 50:22,25
**frame** 20:12
**framed** 28:17
**frankly** 36:9
**fraud** 10:12 27:4,6 28:13 28:16 29:12,15,16,22 29:24 30:8,9,17,18 31:11,11,21 35:1,1,14 41:20 45:22 55:20 56:7 56:8,10,12,22 57:1
**fraudulent** 26:20 32:23 35:11,13 42:18 57:7
**free** 47:12
**front** 12:11 13:14 36:12 44:1
**full** 30:23
**Furman** 3:7 5:16,16 10:19 36:21
**further** 7:18 26:21 27:8 33:18 34:12 46:1 57:21 58:18 60:13
**furtherance** 10:11 26:25 41:8 47:20
**furthered** 28:13
**furthers** 27:19 29:22

**G**

**generally** 52:8
**gestalt** 19:20
**getting** 21:4
**Gilbert** 3:8
**give** 12:5 33:12 40:8 58:1
**given** 9:14 29:19 53:20
**gives** 52:11
**go** 5:5 7:13 13:16 14:19 17:20 23:17 26:9 27:24 28:19 33:17 34:22,24 35:4 36:24 38:25 42:16 45:15 47:13 48:18,22 54:15 58:4 59:4
**goal** 58:23,25
**goes** 30:17,18,18,19 34:8
**going** 11:14 13:16 19:13 19:13,14 30:16,21 32:7 34:24 36:10 44:14 53:21 54:5,6 55:12

Atkinson-Baker Court Reporters
www.depo.com

56:5 57:15
**Good** 5:13,18
**gotten** 14:14
**grave** 56:22
**Group** 1:7 2:7 3:10,14
5:7,19,21
**Group's** 46:10
**guess** 53:9

---

**H**

**H** 4:8
**half** 21:15
**halfway** 45:13
**happen** 19:15 36:10
**happened** 14:17 37:16
52:23
**happening** 36:15
**happens** 42:22
**happy** 9:11,16 22:9
**hard** 11:19 58:11
**harder** 40:11
**Hasuike** 1:24 2:19 60:3
60:21
**hate** 19:19
**he'll** 36:14
**headings** 41:25 42:4
**heads-up** 12:5
**hear** 39:18 41:11 51:6
**hearing** 6:18 13:12 59:2
**held** 7:24
**hey** 29:1 31:3 34:25
36:11
**Himalaya** 14:25 15:10,24
16:1,14,17,17 17:11,23
17:24 18:1,22,24 19:3
19:6,6,25 20:4 21:10
21:15 22:12,15 23:5,13
23:14,21 24:1,11,14,15
25:13,19,19,23 26:1,4
26:5,12 37:8,14,17,20
37:21 38:5,11,17,23
39:2,3,8,15 41:2 42:21
45:4,10 46:2,17 48:20
48:23,23 49:11 50:4,21
55:17,20,21
**hire** 44:22
**hired** 45:2,3 46:13
**hiring** 56:14
**hold** 17:16 18:7 22:22
24:12 44:24 48:6,9,19
48:22
**homeopathic** 8:9
**HON** 3:3 5:5,24 8:10,13
8:20,24 9:2,6,9,18,21
9:24 10:2,7,16 11:11
11:16 12:10,16,21 13:8
13:13,19 14:1,8,22
15:16,21 16:3,10,24
17:2,5,14,16,20 18:7
18:12,15,20 19:4,10,17
20:5,8,11,15,18,21,25
21:3,6,10,16,19,23
22:6,16,21,24 23:6,9
23:15,18,22,25 24:12
24:18,21,25 25:2,8,11
25:14,16,21,25 26:9
27:9,18,24 28:15,24
29:6,11,14,25 30:8,11

30:16 31:1 32:4,14,24
33:6,9 34:17 35:16,19
35:23 36:1,9,20,24
37:11 39:22,25 40:4
41:13 44:1,7,16,18,24
45:7 46:4,23 47:3,7,16
47:24 48:2,6,15,19,22
49:13,20 50:11,20 51:6
51:15,19,22 52:2,5,14
52:17,20 53:3,8,16
54:1,21 55:8,25 56:11
56:19,25 57:11,17,23
58:2,5,9,13,17,20,23
**Honor** 6:16 9:1 10:21
11:15 12:12,19 13:18
13:22 14:7,20 17:13
27:5,23 29:5,24 32:1
35:5 36:18,23 41:12
44:6 46:3 47:2,14 48:5
48:13,21 49:5,18 50:7
50:8 51:3,13 52:3,23
53:17 54:16 55:6,9
56:5,18 57:8,15,22
58:22
**Honor's** 7:23 28:3,9
**hopefully** 54:7 59:2
**hoping** 51:13
**hours** 37:24
**Houston** 16:19 17:12
**Hutton** 3:12

---

**I**

**idea** 53:12
**identical** 38:10
**identification** 37:2
**identified** 8:1 11:1 14:23
38:16 39:16,17 41:9
42:17
**identify** 45:1
**illegal** 42:5
**illegality** 27:1
**imagination** 31:13
**imagine** 36:15
**implication** 42:10
**implied** 7:7
**important** 6:18 28:1 29:8
31:7,24 35:7 36:5 39:9
41:12 50:15 53:19
55:15
**impossible** 37:13 38:23
**in-person** 6:18
**inaccurate** 50:18,21
**inappropriate** 50:8
**included** 8:22 11:6,13
24:4
**inconsistent** 17:11
**incorrect** 28:8
**indicate** 26:6 49:6
**indicated** 46:15
**indicates** 10:6 42:18
**individual** 48:8
**information** 13:25 24:5
24:10 43:3
**inquiry** 7:18
**insane** 51:8
**instances** 24:4
**intend** 14:5
**intended** 7:7 27:1

**interaction** 40:23
**interactions** 46:9
**interested** 60:15
**International** 15:14
**interplay** 33:5
**interrogatories** 39:13
40:2 44:25
**interrogatory** 46:8
**Invasion** 15:3
**investigator** 43:2
**investigators** 46:11
**involved** 8:18,20 10:23
**involving** 10:23
**issue** 6:12 10:13 11:6
12:14,23 13:23 25:17
25:20 26:13,14 29:4
31:24 32:19 35:8 36:6
41:10 53:5 55:11,18
57:8 58:24
**issued** 5:24 55:4
**issues** 28:11 37:1,5
40:15 47:5 55:10

---

**J**

**J** 3:12
**JAMS** 5:8
**job** 32:5,9
**joined** 32:20
**Joshua** 3:7 5:16
**Judge** 5:9 32:21 33:21
35:7,9 36:7 39:10
40:15 41:17 42:7,7
44:3,4 50:1,16 54:5,14
59:2
**July** 15:2 17:24 20:1,6,9
20:12 37:20 38:3,16
39:6 46:21
**June** 46:20
**jurisprudence** 30:23
**jury** 30:2 32:6 36:12

---

**K**

**keep** 19:19
**key** 37:16 39:1
**kind** 9:12 16:15 19:9
**knew** 55:23
**know** 9:12 10:5 13:13
14:2,17 16:22 17:25
19:9 21:19 22:9 26:15
28:12 29:10 31:24 33:3
34:18 37:18 40:15
41:10 42:16 48:6 49:13
49:16,20,23 50:12 52:2
53:3 57:2
**knowing** 29:23
**knowingly** 34:11

---

**L**

**labeled** 47:25 48:1
**late** 51:11
**law** 15:6 35:10 45:19,25
**laws** 60:17
**lawsuit** 17:24 20:1 57:5
**lawyer** 44:22 57:1
**laying** 28:20
**lazy** 50:23 51:1
**leading** 39:2,7 42:23
**leads** 38:4

**Lelia** 1:24 2:19 60:3,21
**length** 33:4
**let's** 5:5 11:20 17:2 20:8
36:20 59:4
**line** 47:15 51:17,22,23,24
55:1
**lines** 53:22
**list** 8:10
**listed** 8:21,22 47:19 49:7
**listened** 18:2
**litigated** 26:14
**litigating** 56:16
**litigation** 8:11,14 31:17
31:18 32:7 34:12,18
35:11,13 36:14 52:8
55:20 56:13,13 57:7,7
**little** 6:22 9:17 16:16
29:10 32:16 33:18
48:23
**lodgement** 44:10 58:14
58:15
**log** 47:19,23,23 49:8,9
**logs** 38:1
**look** 7:18 11:19 12:21,24
13:2,17 14:8 15:8
16:21,25 19:18,20 27:9
28:16 30:16,20 32:5,9
32:11 33:23 34:24 39:1
48:4,11 49:14 50:24,24
54:1 55:1,1 57:12,12
**looked** 15:16 34:3 37:10
51:9
**looking** 16:21 34:14,14
35:2 39:5 44:25 48:4
49:1,24 50:4 51:1
**Los** 3:4
**lot** 9:13

---

**M**

**M** 3:16
**M.S.A** 35:8
**mail** 29:16 30:8,18 31:11
35:1
**maintained** 45:5
**making** 19:25 21:21
49:21 50:17 51:8 56:22
**March** 6:1
**Master** 3:2 5:10 6:21
54:22,24 55:2,3
**masterminding** 34:9
**matter** 5:6 11:10 28:4
37:24 39:16,17 40:17
**matters** 46:15
**maximalist** 45:21
**mean** 18:20 19:5,12,14
21:11,20 22:5 27:20
28:16 29:16 32:14
36:10 50:21 54:22
**meaning** 46:20 49:11
**means** 13:3
**meant** 31:19,19
**memory** 14:4
**mentioned** 44:22 46:18
**merely** 13:24
**Mesa** 3:17
**message** 38:20
**messages** 15:8 16:22
31:12 37:16,23 38:2,12

46:16 52:8,9,10 53:1
55:11
**met** 55:14
**mind** 13:16
**minute** 38:21
**minutes** 38:13
**mischaracterized** 46:8
**misrepresenting** 44:20
**mistake** 8:5
**money** 56:16,16 57:6
**months** 20:2,4 24:8
**morning** 38:5
**motion** 9:15 18:4 32:19
38:8 44:5 48:8 52:25
53:24
**motions** 41:18 42:1
**move** 25:20 55:7
**moving** 14:20
**multiple** 42:2 50:11

---

**N**

**N** 3:1 4:1
**N.I.C** 18:3 44:19 45:21
50:15
**N.I.C.'s** 43:2
**N.T.G** 6:10 31:22 32:20
34:8 40:23 44:14,22
45:2,3 48:1,25 55:12
56:4
**N.T.G.'s** 47:22 49:7,9
**Napster** 7:22 10:11
26:16
**narrowly** 45:19
**Natural-Immunogenics**
1:4 2:4 3:5 5:6,15,17
**nature** 44:20
**Nature's** 7:25 8:7,9,15
8:16,25 9:4,22 10:22
10:23,25 11:4,8,10,13
47:10 48:16
**nauseam** 28:19
**necessarily** 6:24 27:20
30:2
**necessary** 28:7 42:10
**need** 13:20 28:9 29:8
36:6 40:8 41:6 43:20
**needs** 30:23
**never** 13:15 39:16,17
45:6
**Nevermind** 34:22
**Newport** 1:7 2:7 3:10,14
5:7,19,21 46:10
**Ninth** 3:12 26:15 28:7
33:6,10 43:23
**Noerr-Pennington** 32:18
33:1,4,5
**NON** 3:14
**non-Himalaya** 26:6
**non-N.T.G** 5:23 6:5 8:6
38:17
**nonprivileged** 24:5,9
**North** 2:16
**Nos** 7:24
**note** 55:15
**noted** 32:1
**notes** 60:12
**notice** 9:8 23:2 44:10
58:13,15

Transcript of Proceedings
April 11, 2018

Atkinson-Baker Court Reporters
www.depo.com

**November** 18:6,14 21:4 22:20,23,25 23:3 39:4 39:7,8 45:12,14 46:1,2
**number** 13:1,21 14:16 50:17,18 53:6
**numbered** 49:22 50:5
**numbering** 51:7
**numbers** 14:12,15 49:20 51:8

**O**

**o'clock** 38:4
**objections** 40:1 44:4 58:25 60:8
**objectively** 57:13
**oblique** 7:4
**obtained** 50:8
**obviate** 36:6
**Obviously** 22:8
**occurred** 20:1,4 51:21
**occurs** 18:5
**odd** 8:4
**offer** 46:24
**offering** 10:23
**oh** 9:2 15:22 16:6 19:18 22:24 23:23 24:18 48:24 58:2
**okay** 9:6,9 10:2 13:16 14:18 16:2,11 17:15,19 18:10,18 20:5,12,14,23 21:1,2,6 22:16,25,25 23:15,18,22,23 24:1,2 24:13,25 25:9,14,15 26:9,10 27:16,24 29:7 31:6 36:24 47:13,16,24 48:15 49:3 50:4 51:11 51:19 52:22 53:11,16 54:7,11 55:8 58:17
**omnibus** 18:4 32:1 44:5 48:8 53:24 54:3,6,11 54:19 55:2
**once** 23:16 32:21 54:12
**ones** 24:18 45:12
**open** 26:25
**opportunity** 10:5 46:24
**opposed** 30:24 53:7
**opposing** 24:8
**oral** 6:2 46:25 47:1
**Orange** 1:16 2:17 5:1
**order** 5:25,25 6:3,4 13:9 13:15 14:13,15 15:23 16:6 28:3,5,12 29:20 37:1 39:11 41:18,18 43:16,19 44:10 47:18 50:1 51:18 54:3,6,9,19 55:2,4 56:15 57:5
**ordered** 44:3
**orders** 28:20
**ordinary** 56:1
**originally** 52:24
**outcome** 28:4
**outset** 6:19
**outside** 16:19
**overall** 19:12
**overlap** 9:13
**owned** 8:9 9:4,21

**P**

**P** 3:1,1
**p.m** 2:18 5:2 18:14 22:20 44:13 59:6
**P.O** 11:19
**page** 4:9,12 7:23 13:23 17:9 18:9 19:21 20:6,9 21:7,11 46:7 47:6,13 47:14 48:14,14,17 49:1 49:14,16,22,25 50:14 51:17,22,24 52:10,17 53:6,21,22
**pages** 19:24 20:13 47:11 50:11 52:12 53:1,7,7,9 53:10,12
**pagination** 46:7
**paragraph** 15:23 16:5,7
**parcel** 12:3
**parentheses** 51:25
**parse** 29:14
**parsing** 18:17
**part** 12:2 15:15,22,24,25 16:1,7 17:8 18:22 19:2 19:11 21:11,14,17 22:1 22:2,19 24:5 26:3 28:25 43:24 55:2,14
**participate** 6:11 12:4 46:25 47:1
**particular** 13:15 15:25 19:21 21:7,25 27:16 30:12 55:20
**particularity** 41:20
**parties** 5:11 28:3,5 42:23 60:14
**parts** 18:17
**party** 26:18,22
**pasted** 54:2
**Paul** 33:12
**pay** 57:6
**penalty** 60:16
**pendency** 41:2
**pending** 40:15
**people** 27:13 52:8 56:14
**percentage** 50:17
**perform** 41:1
**period** 8:1 39:5
**perjury** 31:10 60:16
**permissible** 35:10
**person** 12:3 27:16 57:18
**perspective** 31:8,8 41:6
**pertain** 7:25 15:23,25 18:22 21:8 22:1 24:1 47:10,11
**pertaining** 34:14
**pertains** 16:1 18:24
**Peter** 3:7 5:13
**Phleg** 7:10,11,24 8:11,14 8:18 10:15,18,22 34:6 35:23 36:2 42:17 44:11 47:8 50:2 52:12,21 53:2,13 58:4,4
**Phleg's** 11:8
**phone** 37:22 38:3,11 42:24 55:23 56:2,3
**phonetic** 11:18 37:19
**phrase** 29:9,10
**physical** 22:8
**place** 30:5 48:18 60:6
**places** 8:21 49:21,22

**plaintiff** 1:5 2:5 3:5 5:12 5:14,17 6:6,9 33:22 51:7 55:19
**plaintiff's** 4:12 30:24 31:16 33:18,20 40:1
**plaintiffs** 34:11 35:10,12 36:5
**planning** 26:19
**pleaded** 30:1 31:3
**pleading** 30:14 56:11
**pleadings** 12:25 28:17 30:1,5 39:11 41:23 42:3,7
**please** 5:6,11 6:15 27:6 44:18 51:15 59:4
**pled** 41:19
**point** 6:14 18:25 19:1 22:10 26:16 35:6 40:14 40:22 54:4
**pointed** 47:10
**portion** 21:7 24:9 26:6
**portions** 22:7
**position** 6:23,24 7:4 11:9 14:2 23:12 25:18,22 26:11 30:2,4 31:16,16 31:17 34:10 44:8 45:22
**possibility** 56:9
**possible** 7:5 59:1
**possibly** 20:2,3
**posture** 53:20,23
**potential** 7:2 37:25 39:16 39:17
**precluded** 42:11
**precludes** 32:2 36:13
**predicate** 31:10 40:21 41:8
**predicates** 41:19
**premature** 32:17
**prepared** 12:22
**preponderance** 29:21 31:14 57:20
**present** 27:1
**presented** 18:21 42:6
**pretty** 54:6 55:4
**prevent** 42:15
**previously** 11:21 12:6
**printouts** 57:25
**prior** 8:5 20:4 24:17 47:17 53:24
**privacy** 15:4 42:5
**privilege** 6:7 10:14 12:13 12:18 13:5,12 14:4 30:22 38:1 45:18 47:19 47:22,23 49:7,9
**privileged** 6:20,25 13:25 24:4,6,10 25:5,6
**probe** 37:21
**problem** 51:3 54:24
**procedural** 53:20,23
**procedure** 13:7
**proceed** 6:15 42:9 43:6
**proceedings** 1:15 2:16 60:5,9
**process** 28:9
**produce** 13:10 16:8,9
**produced** 12:20 13:3 14:14,16 24:8,8 25:7 38:8 45:24 48:7

**producing** 22:4
**product** 10:23 35:25
**production** 6:6 26:23 56:23
**products** 10:24 11:1
**prologue** 28:2
**proof** 14:2
**propounded** 60:8
**provided** 39:10 40:12
**proving** 36:13
**purchase** 14:3
**purpose** 6:1 12:1,2 43:1
**purposes** 28:2 31:25 41:5 53:19
**pursued** 45:6,9
**put** 34:10 52:16 59:3

**Q**

**question** 7:16,20 18:16 31:9 46:6
**questions** 7:15 38:10 46:12 60:8
**quite** 26:14 51:1
**quote** 26:18,21,24,25 27:2

**R**

**R** 3:1
**raise** 6:11 27:21 36:11 41:22
**raised** 40:14 41:23
**rare** 52:7
**read** 19:12 21:4 24:22 33:2
**realize** 11:12
**really** 19:8 24:22 29:25 50:3 51:8 54:9
**reason** 6:10 27:25 29:8 31:7 32:15,15 35:7
**reasonable** 57:18
**reasoning** 33:11
**reasons** 43:17
**rebuts** 43:9
**rebuttal** 6:13 36:19
**receipt** 13:10
**recitation** 28:20
**reconsideration** 9:15
**record** 5:6 7:6 31:6 37:22 43:13 59:4
**recorded** 42:21 43:1 55:24 57:3,4 60:9
**recording** 15:6 18:3,4
**RECROSS** 4:2
**redact** 22:2,7,14
**redacted** 21:18 26:7
**redacting** 21:13 22:9
**REDIRECT** 4:2
**reduced** 13:20
**refer** 9:3 14:11 16:23 19:6 54:10
**reference** 5:8 11:3 19:9 19:11,14,18 51:17 53:2
**referenced** 54:20
**references** 7:4 19:22
**referencing** 19:12
**referred** 20:4
**referring** 18:13 50:19 53:24 54:23

**refers** 47:17
**refresh** 14:4
**regard** 55:17,18
**regarding** 11:22 28:6 47:8 55:13
**regurgitating** 54:12
**rehash** 43:20
**reiterate** 35:5
**relate** 7:16 8:7,16 10:4 15:9,11 22:14 27:4 37:14 38:22 40:17
**related** 9:5 11:10 13:12 16:7 17:23 22:11 23:4 23:13,13,20 24:14,15 25:18,19,22 26:1,2,2,4 26:5,11,12,24 37:25 39:14 40:21
**relates** 15:13 21:15 24:17 25:5,12
**relating** 14:24 24:10
**relation** 37:16
**relationship** 27:15
**relative** 60:13
**relevant** 22:10 41:3
**remaining** 36:19
**remand** 6:1 44:2,3
**remember** 33:12 34:1,21 34:21 43:11,12
**REPORTED** 1:24
**Reporter** 60:4
**REPORTER'S** 60:1
**REPORTERS** 1:21
**representation** 17:18
**representations** 9:14
**represented** 37:6 39:13
**representing** 38:22
**requires** 6:24 35:3
**requiring** 56:23
**reread** 34:3
**reserve** 36:18
**resolved** 36:6 46:20
**respect** 25:18 37:2,4 41:20 46:12
**respond** 6:9 10:18 44:15
**response** 6:13 46:14
**responses** 40:1 44:21
**responsibility** 21:24 22:2
**rest** 18:23
**resulted** 39:11
**retainer** 11:8,21,24 12:6 12:17,23 13:11 14:5
**retaining** 11:25
**review** 28:2 43:21 44:3 46:1 50:9 55:14
**reviewed** 10:6,7 49:1
**reviewing** 54:5,7
**RICO** 12:2 29:18 30:5 33:19,20 34:1,2,7 40:20 41:16,19 42:8,12
**right** 5:24 8:23 9:20 14:19,22 16:10 17:4 18:12,15 19:16,23 21:9 21:16 22:16,21,25 23:8 23:11,24 25:2 28:23 30:7,10,13 33:8,22 36:17,18 39:7,8 42:23 44:9,14 46:4 47:3,24 48:15,24 51:6,11 52:5 52:19 53:4,8,9 54:1,13

Atkinson-Baker Court Reporters
www.depo.com

57:23 58:7,20,23
**Rosalyn** 3:3 5:5,9,24
8:10,13,20,24 9:2,6,9
9:18,21,24 10:2,7,16
11:11,16 12:10,16,21
13:8,13,19 14:1,8,22
15:16,21 16:3,10,24
17:2,5,14,16,20 18:7
18:12,15,20 19:4,10,17
20:5,8,11,15,18,21,25
21:3,6,10,16,19,23
22:6,16,21,24 23:6,9
23:15,18,22,25 24:12
24:18,21,25 25:2,8,11
25:14,16,21,25 26:9
27:9,18,24 28:15,24
29:6,11,14,25 30:8,11
30:16 31:1 32:4,14,24
33:6,9 34:17 35:16,19
35:23 36:1,9,20,24
37:11 39:22,25 40:4
41:13 44:1,7,16,18,24
45:7 46:4,23 47:3,7,16
47:24 48:2,6,15,19,22
49:13,20 50:11,20 51:6
51:15,19,22 52:2,5,14
52:17,20 53:3,8,16
54:1,21 55:8,25 56:11
56:19,25 57:11,17,23
58:2,5,9,13,17,20,23
**rule** 35:7 41:20
**ruled** 14:5
**ruling** 7:24 12:22 44:5
54:11

**S**

**S** 3:1,7 4:8
**S.A.C** 7:17 8:1 10:4 11:5
14:24 15:15 40:21
41:16
**sacrosanct** 30:22
**Sam** 7:10,10 8:11,14,18
14:21 45:3
**Santa** 3:13
**satisfy** 7:20 10:10
**save** 52:9
**saw** 40:4 53:3
**saying** 8:24 16:8 20:11
21:7,14,24 23:19 25:3
25:4,11 26:5 27:22
30:4,11,24 31:1,3 34:4
34:5 52:20 54:22,25
**says** 16:6,7 45:19 47:18
48:20
**scam** 56:13,13
**scheme** 26:20,21 28:21
28:22 34:12,13,18
43:25 45:23,24 47:21
56:17
**Schoonover** 7:10,13
10:20 14:21,24,24 15:4
15:13 16:13,17,21
17:25 23:2,3 28:22
29:2 34:5 36:3 37:7,25
38:4,9,13,15 39:19
40:19,24 42:18,21,25
43:10,22 45:3 46:14
47:11,25 48:3,9,24

49:10,11 52:11 55:17
55:23
**Schoonover's** 31:21
38:7 39:12 40:1,7
42:24 44:20 47:19,23
**second** 5:25 7:20 16:22
16:25 17:10,16 22:22
23:2 25:21 26:22 34:21
49:6,16
**secondary** 15:12
**section** 54:17
**see** 8:17 9:16 14:9 15:9
16:3,3,6 17:13 22:19
23:22 24:23 32:10
33:21 34:5 38:9 41:3
48:16 54:24,25
**seen** 43:8
**self-evident** 42:19
**Selna** 32:21 33:21 35:7
36:7 39:10 40:15 41:17
42:7,7 44:3,4 50:16
54:5,14 59:2
**Selna's** 50:1
**send** 19:13
**sense** 54:10
**sentence** 49:6
**separate** 9:25 50:1,6
**September** 21:1 39:6
**sequence** 37:15
**series** 11:7 45:12
**serve** 44:11
**served** 15:4
**session** 6:2
**set** 13:10 21:12 26:10
40:2 41:17 44:25 57:1
60:6
**sets** 7:9
**settle** 56:15 57:6
**settled** 46:19
**settlement** 25:13 39:3,8
56:16
**setup** 43:15
**seven** 7:17 8:1
**sham** 31:17,18 32:8,10
35:11 36:14 57:7
**shape** 31:12 42:13 45:23
**shorter** 7:12
**shorthand** 60:4,12
**shortly** 20:16
**show** 26:18 30:14 34:25
35:1,1 57:9,10
**shows** 43:14 57:20
**significant** 31:25
**simplicity** 7:11
**simply** 56:7
**single** 28:20 49:25 50:24
51:9
**sit** 37:10
**situated** 36:3
**situation** 11:22 18:8
27:13 41:4
**six-minute** 38:3
**skip** 16:12
**slug** 50:23
**solely** 43:6 44:2
**someplace** 8:21 15:22
**somewhat** 40:10
**sorry** 13:14 20:23 33:2

**sort** 20:25
**sought** 26:20,24
**South** 3:8
**Southern** 15:1
**speaking** 20:23 27:4
43:11
**Special** 3:2 5:9 6:21
54:22,23 55:2,3
**specific** 7:20 55:10
**specifically** 34:10 46:9
**specificity** 28:1
**specifics** 19:8
**specify** 27:6
**spell** 34:13
**spend** 56:16
**Sperber** 3:11 5:20,20
12:9,12,19 46:24 47:2
47:4,14,17 48:1,5,12
48:13,17,21 49:5,18
50:7,13 51:3,13,16,20
51:24 52:3,7,16,19
53:16,17 54:16 55:1,6
55:9 56:5,18,21 57:8
57:15,21
**Sperber's** 11:22
**squarely** 28:12 42:6
43:14
**stage** 41:24 42:3
**stamp** 7:24
**standard** 43:23 55:13
57:16,19
**start** 6:8 20:8 47:4 50:13
**starting** 5:12 23:12 24:6
**starts** 22:19 23:3
**State** 2:17
**statement** 33:25 34:1
41:16 43:9
**statements** 40:7,8,12
55:13 60:8
**STATES** 1:1 2:1
**stenographically** 60:10
**step** 22:13
**Stephanie** 3:11 5:20
**stream** 19:11
**Street** 3:3
**stretch** 31:13
**stuff** 9:13
**subject** 6:6 12:13,17,18
13:5 14:3 31:20 46:14
46:15
**subjects** 6:18
**submit** 11:17
**submitted** 6:5 43:4 52:25
**subsidiary** 9:5
**substantive** 55:10
**sudden** 50:13,17
**sufficient** 56:7
**sufficiently** 26:24
**Sugarland** 16:18
**suggesting** 14:6
**suit** 18:1
**Suite** 3:8,16
**summary** 32:19
**supplemented** 53:4
**supplied** 43:7
**support** 10:14 30:4 31:4
31:12 32:10 56:9,24
57:14

**supported** 32:12
**supporting** 29:18
**supports** 29:1 30:12,14
30:25 45:25 50:22
**supposed** 54:8
**sure** 6:21 8:4 10:1,17
13:8 15:20 17:17,21
20:24 21:14 23:12 29:6
29:19 32:13,24 34:3
**surprised** 36:16
**suspect** 28:2
**sworn** 39:12 40:7,8
46:14
**synonomous** 11:4

**T**

**T** 4:8
**Tafel** 8:8 10:24 11:1,3,13
**take** 12:21,23 13:2,17
40:18 49:13
**taken** 2:16 11:9 14:2
31:16 60:6,12
**takes** 22:18
**talk** 7:11 8:7 19:25 23:17
**talked** 33:4
**talking** 17:8,10 20:19,22
24:13,15 33:18 34:20
35:16,19,21 45:7,11,18
49:8,10 53:12
**talks** 16:14 25:13 45:14
45:14
**tampering** 30:19
**tautology** 31:19
**telephone** 15:6
**tell** 14:16 22:6 48:11 52:5
56:25
**ten** 38:13
**tends** 37:3
**tentative** 5:25 6:2 7:23
10:6 13:9,17 28:12
47:5 53:20
**terms** 58:18
**test** 7:21 26:17
**tester** 15:5 27:11,12,21
31:23 32:6,12 35:10,12
41:11,22 42:10,14
55:17
**testers** 32:2,23 42:4
**testified** 18:2
**testimony** 31:10 60:7
**Texas** 16:18 17:12
**text** 15:8 16:22 19:13,13
19:21 21:4 31:11 38:2
38:12,20 46:16 52:8,9
52:10 53:1
**texts** 18:9 19:17 21:1,12
45:12
**thank** 6:16,17,17 9:9
14:20 47:4 49:3,4,5
53:17 58:2,9,17
**theory** 27:10,11,12 31:3
31:4,5 43:6 56:20,21
**thing** 12:11 15:12,18
29:20 33:21,24 36:10
36:12 44:15 51:9
**things** 10:17 14:11 22:14
30:6 33:17 34:9 50:15
59:3

**think** 6:8 11:22 28:1
30:12,21 31:7,11,15
32:16 33:13,24 35:6
36:5,9,14,17,25 37:3
37:18 39:9 40:7,10
41:11 42:19,25 43:16
43:17,20 45:25 46:1,18
49:18 50:7,20 51:20
53:19 54:19 55:15,25
56:1 57:1,12,17
**thought** 9:24 15:17 28:9
34:19 48:2,9
**thoughts** 36:19
**three** 14:14 16:5,7 18:9,9
52:12
**three-page** 10:3
**threshold** 7:16
**thrust** 34:7
**tickets** 24:7,14 25:6
47:12
**ticky-tacky** 53:18
**time** 6:25 14:17 16:20
17:12 20:12 32:25 33:1
39:5,18 41:14 42:11
43:5 54:6 59:6 60:6,9
**times** 42:2 43:18
**timing** 37:15
**today** 6:2 7:7 12:23
21:21 33:17 34:20
**told** 43:5
**tomorrow** 44:13
**top** 24:5,16,21 25:4
**topic** 15:19
**totals** 51:25
**touches** 45:24
**Town** 3:16
**transcribed** 60:10
**transcript** 1:15 2:16 33:3
60:5,12
**Trial** 1:7 2:7 3:10,14 5:7
5:19,21 46:10
**tried** 29:3
**true** 28:15 31:18 40:25
60:11,17
**trust** 40:10,11
**try** 7:3
**turn** 10:19 36:20 44:14
47:6 55:9
**turned** 18:17
**twice** 51:1
**two** 7:9,15 14:14 15:23
24:6,16 25:4 40:7
42:23 45:3,10 49:11
50:22 54:18
**two-part** 7:21 26:17

**U**

**U.C.O** 12:2
**ultimately** 39:9
**underlying** 29:17 38:8
**underreported** 50:2
**understand** 18:25 19:1
27:22 28:9 34:16 41:22
43:24 44:7 51:20 55:6
57:11
**understanding** 13:7
42:20
**understood** 34:4

Transcript of Proceedings
April 11, 2018

Atkinson-Baker Court Reporters
www.depo.com

**undisputed** 37:19
**unfortunately** 18:8
**UNITED** 1:1 2:1
**universe** 41:3
**unmistakably** 11:10
**unquote** 8:2 26:25
**unrelated** 37:7
**unreported** 33:10,10
**use** 19:6 27:11 29:9 32:2 42:4

**V**

**Val** 3:8
**valid** 42:14
**various** 9:12
**verification** 46:15
**version** 29:1,17 30:24 32:7,10 33:19,20
**versions** 14:10
**versus** 5:7 14:24 16:8
**view** 27:19 35:9 56:12
**violating** 15:6
**Vista** 3:8
**vitiate** 29:20 30:21
**vitiating** 10:14 45:18
**Vogue** 15:14,25 39:15 44:23 45:4,7,9,9 46:16 46:19
**vs** 1:6 2:6

**W**

**waiver** 7:2,8
**want** 6:19,23 7:5 8:4 13:6 14:8 23:11 36:25 44:9 49:23 50:24 54:3
**wanted** 34:5 37:4 46:25 58:16
**warranted** 43:22
**wasn't** 9:19 12:22 27:12 33:22
**Watford** 33:13
**way** 7:7,25 8:7,9,15,16 8:25 9:4,22 10:22,23 10:25 11:4,9,10,13 19:22 21:12 22:19 31:12,20 42:1,13 43:1 45:13,23 47:10 49:23 54:8 57:3
**we'll** 6:9,13 7:11,12 32:25
**we're** 6:22 8:4 23:12 27:25 28:11 32:23 33:17 34:20 40:9,11 45:11,17 49:8,10,19,24 50:4 53:9,9,12 55:16 56:22
**we've** 12:20 22:5 23:1,2 26:10,14 38:7 40:14 41:9 42:17 43:18 45:5
**Wednesday** 2:18 5:1
**week** 58:24
**weeks** 39:7
**weight** 33:12
**went** 20:22
**weren't** 12:16 27:14
**West** 3:3
**wire** 29:15 30:8,17 31:11 35:1

**wiretap** 28:22
**wiretapping** 35:17 47:20
**witness** 4:2 30:19
**witnesses** 60:7
**word** 19:6,19
**words** 14:13
**wouldn't** 12:3
**wrong** 11:23 17:5 24:2
**wrote** 8:17 33:13
**www.depo.com** 1:22

**X**

**X** 4:1,8

**Y**

**yeah** 15:16,22 16:24 17:17 22:24 24:25 29:6 32:4 35:23 36:1 39:25 40:4
**Yep** 25:16 57:23

**Z**

**Zolin** 10:10
**zone** 16:20

**0**

**00066** 7:24

**1**

**1** 46:1
**10** 13:23 53:14
**11** 1:17 2:18 5:1
**11082** 1:24 2:19 60:3,21
**12** 14:25 22:25
**1220055347** 5:8
**12th** 60:19
**13** 52:11,21 53:1
**133** 3:8
**138** 42:3
**139** 42:2
**14** 50:2,3 51:11,12 52:1,4 52:16 53:7
**14th** 2:17
**15** 47:15 53:15,22
**15-cv-2034** 5:8
**16** 37:20 38:3 47:15 51:25 53:6,22
**16th** 39:6
**1782** 14:25
**17th** 38:16
**19** 15:2
**1st** 18:6,14 22:23 45:12

**2**

**2** 51:4
**2:50** 22:20
**2:52** 2:18 5:2
**201** 33:25 34:10,21
**2012** 15:2 17:24 18:6,14 20:6,9,12 22:20 23:3 37:20 38:4 39:4,8 45:12 46:20
**2018** 1:17 2:18 5:1 6:1 60:19
**213)620-1133** 3:4
**231** 50:8,16 51:4,5
**25** 51:17,24

**2730** 3:8
**27th** 6:1
**288-3376** 1:22

**3**

**3** 3:12
**3/15/12** 10:17
**3:54** 59:6
**32nd** 3:3
**34** 49:1
**36** 48:17,19 49:14
**37** 48:14

**4**

**4** 50:16 51:4
**4:00** 44:13
**458** 48:4,11

**5**

**5** 47:6,13,14 53:21,22
**5:33** 18:14
**500** 2:16
**555** 3:3
**577** 9:8
**590-10** 46:7
**597** 13:22 14:18

**6**

**6** 3:8 24:6,19 25:5
**602)388-8899** 3:9
**615** 39:22
**64** 42:2
**65** 42:2
**650** 3:16
**66** 10:4 53:5 58:4,5
**68** 7:25 10:4 53:2,5 58:5

**7**

**7** 23:3 39:8 46:2,7 51:17 51:22,24 55:1
**714)241-4444** 3:13
**714)450-6830** 3:17
**760** 3:16
**79** 38:9 58:4
**7th** 22:20 39:4 45:14

**8**

**8:15-cv-02034-JVS(JC...** 1:6 2:6
**80** 49:14
**800** 1:22
**81** 49:14
**82** 15:13 16:9
**83** 16:8,13 17:3,6,21 20:9 20:13 25:22 26:1,4 37:7
**84** 16:21 17:1,9 20:6,13 49:14
**85** 16:13 17:3,21 19:2 20:15 49:14
**85295** 3:8
**86** 17:22 19:2,24 45:12
**87** 19:24 45:13
**88** 26:1,4 37:7 45:13
**89** 16:8 17:22 22:18,19 23:3,19 25:22,25 26:2 26:3 37:7 45:13

**9**

**9** 7:23 46:8
**9(b)** 41:20
**9:00** 38:4
**9:10** 38:16
**90013** 3:4
**92** 24:24
**92626** 3:17
**92707** 3:13
**93** 23:25 24:3,4,9,13
**94** 23:4,20 24:1,10 25:11 25:12,25 26:2,3

Transcript of Proceedings
April 11, 2018