# Exhibit 2

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

CERTIFIED TRANSCRIPT

NATURAL-IMMUNOGENICS CORP., )
                  Plaintiff, }
      vs.                     }
                              }  SACV-15-2034-JVS
NEWPORT TRIAL GROUP, et al.,)
                  Defendants. }
_____}


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

May 9, 2016


SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

2

APPEARANCES OF COUNSEL:

For the Plaintiff:

PETER A. ARHANGELSKY
JOSHUA S. FURMAN
EMORD & ASSOCIATES, P.C.
3210 South Gilbert Road, Suite 4
Chandler, AZ  85286
(602) 388-8899


For Defendant NEWPORT TRIAL GROUP:


MICHAEL LEBOFF
EDWARD SUSOLIK
CALLAHAN & BLAINE
3 Hutton Circle Drive
Santa Ana, CA  92707
(714) 241-4444

For Defendants ANDREW NYLON; GIOVANNI SANDOVAL;
                 MATTHEW DRONKERS; TAYLOR DEMOLDER;
                 SAM FLAGG; SAM SCHOONOVER;
                 CALEB PATTERSON; DAVID URZUA;
                 ISABELLE AJANOVIC:

GILLIAN LEIGH WADE
SARA AVILA
MILSTEIN ADELMAN, LLP
2800 Donald Douglas Loop North
Santa Monica, CA  90405
(310) 396-9635

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

SANTA ANA, CALIFORNIA; MONDAY, MAY 9, 2016; 11:37 A.M.

THE CLERK:  Item No. 3, SACV-15-2034-JVS, Natural Immunogenics Corporation versus Newport Trial Group, et al.

Counsel, please state your appearances for the record.

MR. LEBOFF:  Good morning, Your Honor.  Michael LeBoff on behalf of the NTG defendants.

MR. SUSOLIK:  Good morning, Your Honor.  Edward Susolik on behalf of the NTG defendants.

MS. WADE:  Good morning, Your Honor.  Gillian Wade and Sara Avila on behalf of the non-NTG defendants.

MR. ARHANGELSKY:  Good morning, Your Honor.  Peter Arhangelsky and Josh Furman on behalf of the plaintiff Natural Immunogenics.

THE COURT:  Good morning.

With a couple of adjustments in your dates, I think the trial track that you propose is a reasonable one -- that the defendants propose.  This matter isn't going to be ready for August 2017, too many defendants, too many complicated.  I think you are going to need more time than that if you are seriously going to explore your claims against the wide variety of defendants we have.  So my inclination is to adopt the proposed December 2017 trial date.

MR. ARHANGELSKY:  Thank you, Your Honor.

4

We have no objection to that with the understanding that there is no phasing, which we would object to with respect to their positions.

THE COURT:  Well, that's the overarching issue. I'm not going to require phasing.  It seems to me that there is likely to be overlapping discovery on multiple issues.  I just don't think phasing works.  To the extent you think you have an issue that could potentially be dispositive, you are free to construct your discovery program such that you get to those issues first with the thought that if you find what you need you will be back with an early Summary Judgment or a Partial Summary Judgment Motion.  That's fine, but I am not going to otherwise phase discovery.

Let's get the dates down.  The matter will proceed to trial on December 5.  We start trials on Tuesdays so December 5, 2017.  We will do the pretrial conference November 20, 2017.  We do those on Mondays.  Last to lodge the pretrial papers will be November 16, 2017.  Last for hand-serving motions in-limine October 23, 2017.

I'm not quite sure what you are proposing on last for hearing regular motions.  I would be inclined to simply adopt the October 16 date.  I think we ought to get the motion practice concluded before we have a pretrial conference.  If you want to bring on an earlier Motion for Summary Judgment, that's fine, or Partial Summary Judgment,

5

but the last for motions other than in-limine motions will be October 16, 2017, at 1:30 p.m.

The last for filing those motions will be September 1, 2017. Nonexpert discovery cutoff will be August 21, 2017. As far as expert discovery goes, initial disclosures June 19, 2017. Rebuttal disclosures July 17, 2017. Expert discovery cutoff August 14, 2017.

You each propose the last for a settlement conference March 20, 2017. I think that's good. It's in advance of the expert discovery, so if you are to resolve it, you have the ability to save those expenses. You proposed to mediate.

Whenever you conduct your mediation, would you put in a report within seven days, please, letting me know generally what progress you were able to make. If you have not resolved it, would you let me know if you think the Court could be of any assistance.

Last to amend the pleadings, I'm going to adopt plaintiff's proposed date of August 24, 2016.

Let's talk about the number of depositions. It seems to me that there ought to be a right to take the deposition of each defendant. The proposal is the defendants plus seven. That sounds reasonable to me. You can confer amongst yourselves. If you can't agree on further depositions, go to the magistrate judge.

You propose 60 RFPs and interrogatories.  That seems a little high, but if you are both agreeable to that --

MR. ARHANGELSKY:  Your Honor, I think with the interrogatories we have maintained that we would need to take interrogatories of each specific defendant with regard to their factual circumstances.

THE COURT:  But interrogatories are worthless except for contention interrogatories and the identification of locations of documents.  The trouble with an interrogatory is the response always leads to one more question.  That question is better put to the individual rather than interrogatories.

MR. ARHANGELSKY:  Thank you, Your Honor.  Well, I generally would agree.  There is some information that we need from these defendants that would allow us to facilitate further discovery.  There's an issue we have talked about with our initial disclosures as well that suggested we might need to actually serve interrogatories just to recover basic information about storage of electronically-stored information.

THE COURT:  Well, that's fine, or -- you know, a 30(b)(6) deposition is a better way to do it really especially of the law firm.

MR. ARHANGELSKY:  I think I'm referring more to

the individual defendants with regard to the interrogatories.  I think we can accept a limitation on interrogatories of course, but I think we have to have enough that allows us to at least reach the types of documents that they have.

THE COURT:  Well, see how far you can get with 20 interrogatories per defendant.

MS. WADE:  The individual defendants don't have a lot of ESI, so it's not an issue.

THE COURT:  Okay.  One thing I'm concerned about is the potential number of other lawsuits that you are going to want to inquire into.

MR. ARHANGELSKY:  Let me address that.  Our Amended Complaint is due tomorrow, and we intend to substantially narrow the scope of our RICO allegations.  I believe in its current format our Amended Complaint will inquire into about seven to eight specific cases.  We are reducing the number of RICO defendants.

The discovery taken with respect to those cases within those cases is also narrow.  We are not relitigating these cases.  We are looking only at recruitment, acquisition, those types of aspects of the relationship early before the cases are often even filed.  So with that, we think our Amended Complaint will be far more circumscribed certainly imposing no greater burdens than

many other civil cases.

THE COURT:  Well, that sounds like a reasonable limitation, seven or eight cases to explore at least initially.

In this case, I'm probably going to hold a status conference every 90 days to keep my finger on the pulse.  I use those status conferences to keep me informed and also to the extent we can to resolve problems informally.  So I would ask you a week in advance to give me a joint report on what issues you want to discuss so that I can be thinking about those.

I'm thinking we ought to schedule a status conference sometime in September, maybe the 19th.  Would that be a convenient day?

MR. ARHANGELSKY:  No objection on that date.

THE COURT:  Okay, let's say 11:30 on the 19th.

You discuss an issue of a privilege log.  I think to be of any utility privilege logs need to be listed by document, not by category.  I don't know how you can really test a prima facie showing of the state of privilege without knowing the author, addressee, subject, some -- you know, the Bates number identification, things that would usually go into a privilege log.

In this case, I think it would be useful to make myself available.  If you have any problems between now and

the status conference and you want to have a telephonic conference, I will do my very best to make myself available. Sometimes an answer now is a lot better than an answer in four weeks to get something resolved.  I don't want to co-op the role of the magistrate judge, Judge Ghandi, but I will make myself available if you think you have issues that you need to discuss with the Court.

Any there other issues we should take up? Mr. LeBoff.

MR. LEBOFF:  Just a couple of clarifications so I understand.  As to the limitation with respect to interrogatories, is each party to propound up to 20 interrogatories?  Does that also apply to the request for admissions?

THE COURT:  Yes.  You can have unlimited requests for admissions to the extent it's a document authentication issue.

MR. LEBOFF:  As long as it is a fact-based one?

THE COURT:  Yes.  I mean, I would hope -- it's got a document -- that you can just simply sit down and agree.

MR. LEBOFF:  Then with regard to the depositions, my understanding is the plaintiff is entitled to take all of the named defendants plus seven additional.  With respect to the defendants, is it the typical ten for us, or how would it work?

10

THE COURT:  What do you think you need?

MR. LEBOFF:  I don't know.  One of the things we are struggling with is we haven't seen their Amended Complaint.  If it narrows the case as promised, I think that helps out immensely.  The initial disclosures we got from them identified 245 potential fact witnesses.  Obviously I'm not going to take 245 depositions, but there is really no way for us to narrow that down.

I would think at this point ten is probably sufficient, the statutory rules of defense.  I would obviously take Mr. Baker, their private investigator, who was discussed in the report and probably PMK from the company.  I don't know if we need to take any of the prior counsel who handled the underlying case on certain issues. I hope is to avoid that.  Certainly we don't want to take current counsel's deposition if we can avoid it, but that is something we will have to look at.

So I think ten for defendants -- whatever statutory rules apply.  I don't think we will take all of them.  I wasn't sure how the limitation applied on the defense side.

THE COURT:  Let's say 20 in the aggregate and see where you are in September.

MR. LEBOFF:  Okay.

MS. WADE:  Just to clarify, is that per defendant

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

or all of the defendants?

THE COURT:  All of the defendants.

MS. WADE:  Okay.

THE COURT:  It goes without saying I assume the defendants will coordinate amongst themselves in terms of their deposition needs.

MS. WADE:  Of course.

MR. LEBOFF:  Then the only other question I think I have for the Court is currently a discovery stay was in place at the last hearing.  We would like to keep that in place as we haven't seen their Amended Complaint yet.  We don't know if they are going to state a RICO claim.  We would like an opportunity to address whether there is a RICO case before -- even if it is seven to eight cases before we start expanding to very broad expansive discovery to see if we get to that stage.

The Amended Complaint is due tomorrow I believe.  That will help to answer a lot of our questions.  We would like that discovery stay to be kept in place until we figure out if there is a RICO claim to litigate in the first place.

THE COURT:  My assumption is the plaintiff will go to school in terms of the Court's ruling and that we might have a RICO claim.  In any event, discovery needs to get going to meet the trial schedule that you have proposed, so I'm not going to stay discovery.

Now, if you have a particular piece of discovery that would warrant a protective order, you are free to take that to the magistrate judge.

MR. LEBOFF:  Thank you, Your Honor.

MR. ARHANGELSKY:  Your Honor, I just wanted to clarify on the interrogatories.  I think we are a bit confused, and I do apologize.  You said 20 per party.  Does that entitle us the ability to serve 20 interrogatories on each set of represented counsel --

THE COURT:  Yes.

MR. LEBOFF:  -- for 40 total, or can we serve 20 on each specific named defendant?

THE COURT:  Specific named defendant.

Anything further for today?

MR. LEBOFF:  Nothing from the NTG defendants.

MS. WADE:  Not from the non-NTG defendants.

MR. ARHANGELSKY:  I think we did also want to discuss the issue of the initial disclosures.  I'm not sure if we had a decision on that.  We requested in our 26(f) that they provide specific information about the way in which they handle electronically stored information.  We think it's contemplated by Rule 26(a)(1).  I think that's the kind of information that we shouldn't have to serve interrogatories just to discover.  I would request that the Court require them to provide that basic information in the

13

initial disclosures.

THE COURT: Any objection to that?

MR. LEBOFF: Your Honor, we don't believe that it is timely. We don't believe there is any need to expand the initial disclosures. I mean, they have plenty --

THE COURT: You are going to have to give them that information, correct?

MR. LEBOFF: I understand. We can work with them -- I'm sorry. I didn't mean to cut you off.

THE COURT: When are you going to do it?

MR. LEBOFF: We discussed electronic -- ESI between the parties. I think their concern deals more with the individual defendants than the law firm. We are happy to share that information with them informally. To the extent they want it in a discovery response, they have 12 defendants and 240 interrogatories. I think one of them -- at least from my group of defendants --

THE COURT: 30(b)(6) deposition of the entity would give the information.

MR. LEBOFF: Again, we are not refusing to give the information. I just think we are expanding Rule 26 versus what's an interrogatory. I think there's certain information that we could ask from them that we could say should have been in 26 that shouldn't. That's --

THE COURT: I'm going to order you to meet and

14

confer and both sides share what your electronic retention practices are, where the servers are.  So within 14 days would you put in a report.  It can be very brief.  But I want to know that you met, and I want to know that each party disclosed what its assets are or if it has none.  I suspect the individuals not associated with the law firm probably have no electronic discovery, so let's get that on the table.

MR. LEBOFF:  Just a point of clarification, as to the specific information, it's where the server is, what type of computer systems we use, just general basic stuff?

THE COURT:  Right.

MR. LEBOFF:  That's fine.

THE COURT:  Okay.  Thank you very much.

(Whereupon, the proceedings were concluded.)

*     *     *

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

15

CERTIFICATE


        I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:   June 15, 2016



                        /s/    Sharon A. Seffens  6/15/16
                        _____
                        SHARON A. SEFFENS, U.S. COURT REPORTER