# Exhibit 5

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

                              CERTIFIED TRANSCRIPT

NATURAL-IMMUNOGENICS CORP., )
                    Plaintiff, }
     vs.                       }
                               }  SACV-15-02034-JVS
NEWPORT TRIAL GROUP, et al.,)
                    Defendants. }
---------------------------}


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

July 31, 2017


                    SHARON A. SEFFENS, RPR
                    United States Courthouse
                    411 West 4th Street, Suite 1-1053
                    Santa Ana, CA  92701
                    (714) 543-0870


SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

APPEARANCES OF COUNSEL:

For the Plaintiff:

PETER A. ARHANGELSKY
EMORD & ASSOCIATES, P.C.
3210 South Gilbert Road, Suite 4
Chandler, AZ  85286
(602) 388-8899

For Defendant NEWPORT TRIAL GROUP:

EDWARD SUSOLIK
DAVID J. DARNELL
STEPHANIE A. SPERBER
CALLAHAN & BLAINE
3 Hutton Circle Drive
Santa Ana, CA  92707
(714) 241-4444

For Defendants ANDREW NILON; GIOVANNI SANDOVAL;
                MATTHEW DRONKERS; TAYLOR DEMULDER;
                SAM PFLEG; SAM SCHOONOVER;
                KALEB PATTERSON; DAVID URZUA;
                ISABELLA JANOVICK:

BRENDAN M. FORD
FORD & DIULIO, PC
695 Town Center Drive, Suite 700
Costa Mesa, CA  92626
(714) 384-5540

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

SANTA ANA, CALIFORNIA; MONDAY, JULY 31, 2017; 1:33 P.M.

THE CLERK:  Calling Case No. SACV-15-02034-JVS, Natural-Immunogenics Corporation versus Newport Trial Group, et al.

Counsel, please state your appearances for the record.

MR. ARHANGELSKY:  Good afternoon, Your Honor. Peter Arhangelsky on behalf of the plaintiff, Natural-Immunogenics.

THE COURT:  Good afternoon.

MR. DARNELL:  Good afternoon, Your Honor.  David Darnell on behalf of the NTG defendants.

THE COURT:  Good afternoon.

MR. SUSOLIK:  Good afternoon, Your Honor.  Edward Susolik on behalf of the NTG defendants.

THE COURT:  Good afternoon.

MR. FORD:  Good afternoon, Your Honor.  Brendan Ford on behalf of the non-NTG defendants.

THE COURT:  Good afternoon.

MS. SPERBER:  Good afternoon, Your Honor. Stephanie Sperber on behalf of the NTG defendants.

THE COURT:  Good afternoon.

Mr. Arhangelsky, it's your motion.  Would you like to be heard?

MR. ARHANGELSKY:  Yes, Your Honor.

Your Honor, we agree with the Court's reasoning in the first half of the order with respect to Strataluz-related discovery.  I would like to address the Court's second part of the order denying additional discovery into the other non-NTG defendant cases that were had through the Newport Trial Group.

THE COURT:  You would agree that the recent amendments to the Federal Rules of Civil Procedure emphasize the proportionality of discovery sought versus cost and merit?

MR. ARHANGELSKY:  Yes, Your Honor.  And I think to speak to that point --

THE COURT:  Isn't that what the Court's tentative turns on?

MR. ARHANGELSKY:  Yes, it is.  Well, it is, Your Honor, and it also addresses on page 6 the finding that we haven't sufficiently connected the matters to the RICO allegations.  So I would like to address both of those points.

With respect to proportionality, I think the discovery we had contemplated is not broad.  We're not looking to add witnesses to the case.  We're not looking to add individuals to 26(a) statements.  We're not going to be taking new depositions.  What we're trying to do is just make sure we have a complete picture of the relationship

between these non-NTG defendants and the law firm.

When we were here back in May 2016 and we talked about the scope of what this case would be, we talked about recruitment of these individuals into an enterprise.  A number of these cases occur before in time when the eight SAC cases occurred.

So if we focused just on the eight SAC cases, we're ignoring a prelude.  We're ignoring the beginning of the relationship, which goes directly to the time when these individuals actually reached their agreements with the law firm.  I think we need to understand exactly what those cases related to so we have an understanding of how those cases bore on the relationship as it matured into additional cases.

What we do know is these cases were exactly the same.  They were filed under the same exact legal theories, under the exact same channels, through the same agents, through the same suspicious circumstances that we have identified in our RICO complaint.

So I think to look at those circumstances and say that they would not be related to the RICO allegations, I think that would be error because it clearly informs these individuals' belief as they went forward with additional cases as to what they could likely achieve or what they were hoping to achieve in the subsequent cases.

6

On that regard there is -- I think the discovery we have requested is relevant to a number of critical points in this case aside from recruitment, which I have just spoken to, which I think is of paramount importance because it speaks to how these kids engaged in a law firm and again what they were hoping to achieve. And related to that, we have bribery allegations.

Now, the fact that these kids may have received the identical payouts in these other cases of the same exact payment multiple times over and over, I think that speaks volumes to our allegations concerning bribery because it relates directly to our allegations that -- and we talked about admissions the last time we were here -- that these kids were promised payment of a very specific value for their role in the case.

So evidence that these exact same defendants achieved that payment in other cases is relevant to bribery. And we've seen in recent motions filed how the absence of this discovery hurts us. We have seen in recent dispositive motions allegations that we can't prove conspiracy because we can't show that the non-NTG defendants had an awareness of the scope of this enterprise.

Well, if we look at these cases as isolated incidents, that's one argument they can make. But if they're actually involved in multiple cases -- we're talking

12 different cases pursued by these non-NTG defendants over a very narrow time frame of just 12 to 14 months, at times where they overlap substantially.

We have times in March 2012, for example, where all these kids are doing acts in apparent cooperation with NTG's agent towards a common goal.  We have seen these kids purchasing products on the exact same day, e-mailing receipts to these agents 45 minutes after they made their purchase, and only purchasing within an hour after first receiving a call from the law firm.  And that's what we're dealing with here.

So if we exclude from this case by virtue of a discovery ruling this information that is highly relevant and probative to the RICO case, I think we are too narrowly restricting the scope of this case based on Rule 26(b)(1), which I don't think was intended to force us to prove our allegations before we can first explore the discovery to even determine whether or not there could be a pattern here, which I think we have demonstrated regardless.

Another thing I wanted to address is, similar to the conspiracy argument, they have now made a Noerr-Pennington argument.  Again, in their dispositive notions, as the Court is aware, one of the exemptions to Noerr-Pennington relates to the volume of litigation that was pursued.

Multiple cases pursued by the same defendants time and time again under the same legal theories and through the same actors, same method, that also bears on Noerr-Pennington to the extent we would have to address that specific exemption.  I believe it's the second exemption.

So there's a number of issues where this type of discovery is right on point to what our RICO allegations are, and I think if we are precluded from exploring this discovery, we really are presenting a misleading impression to the Court and to the jury which focuses only on a snapshot in time of these kids' relationships.

For example, Sam Schoonover's case which we briefed, his first case concluded in, I believe it was, May 2012.  He was involved with the law firm for several months leading into that.

The case that we have identified in the Second Amended Complaint begins in July 2012, just two months after he concludes his first case that we have now asked for additional discovery related to.

So I think it would be intellectually dishonest to argue that that conclusion of his case and what he did in that same type of lawsuit doesn't bear on his understanding of how this law firm operated and what his role was with the law firm moving into his case that we have identified in the SAC, which began just two months later.

Just to reiterate -- and perhaps we weren't clear enough in our brief -- when we prepared this, we weren't intending to expand the scope of this case.  I very much appreciate the Court's concern now expressed several times that this case not become too broad with respect to the fact that we already have a number of defendants and cases at issue.

But these specific cases I think we can -- what we're hoping to do is just make sure that we're receiving from even just the parties a full and complete picture of what the relationship was.

And even if the Court is not inclined to reverse its tentative, perhaps it would agree to allowing some discovery with limitations just so that we can understand -- for example, whether that be precluding us from taking specific depositions or just focusing on the party discovery, we just want to make sure that there's not information that exists that is directly relevant to this relationship that's not being produced, not being logged, or essentially kept from us that prevents us from painting a full picture of how these kids operated with the law firm.

THE COURT:  Anything further?

MR. ARHANGELSKY:  No, Your Honor.

THE COURT:  Thank you.

Who is going to address this?  Mr. Darnell?

MR. DARNELL: Yes. Thank you, Your Honor.

On behalf of the NTG defendants, I would like to just briefly respond. First, with respect to the first aspect of the Court's order, I will submit to the Court with respect to the Strataluz discovery, but I think it ties into what we're really dealing with here because it is actually a rather broad scope of discovery request that we're going to have to respond to.

So I do want to point out for the Court that at this point in time, the plaintiffs with respect to Strataluz, they seek to take two additional depositions of non-party witnesses. They seek to propound 35 requests for production, and they have eight very comprehensive interrogatories that they have propounded.

Now, they want to do this when they have yet to take a single deposition of my client. They have yet to take a deposition of any NTG defendant in this case. They have yet to depose Scott Ferrell, Dave Reid, Ryan Ferrell, Victoria Knowles, and Andrew Baslow. I have repeatedly for months offered up those depositions. They have not taken those.

So what we're dealing with here is a case where they're just shifting theories, shifting discovery. Now, I respect the Court's tentative. I am willing to respond to this broad discovery, but at this point in time I want to

make clear to the Court that they have yet to actually even follow through on the discovery on the eight cases.

This has been a case that's been pending I think for 21 months -- maybe in a week it will be 21 months.  This is a case where the Court set trial back in May of 2016, approximately 15 months ago.  We have a discovery cutoff that's coming up in a few weeks, and we have a trial date.

Now, I still intend to meet all of those deadlines and to fully comply with what is required on behalf of the defendants.  I point out that the plaintiff has not.

THE COURT:  Remind me again of the date for the nonexpert discovery cutoff.

MR. DARNELL:  Nonexpert discovery cutoff is August 28th, I believe.  The actual cutoff might be the 28th, but the 21st is, I believe you indicate that, perhaps five days before that deadline.

THE COURT:  Right.

MR. DARNELL:  So if I am correct, it's August 28 with an August 21 practical deadline.

Turning to the second issue, Your Honor, I understand the Court's tentative ruling with respect to other cases, and there's five additional case that they've outlined or at least identified.

These five additional cases have nothing to do with the pending Motion for Summary Judgment upon which

counsel mentions the Noerr-Pennington Doctrine.  The pending Motion for Summary Judgment was filed by the NTG defendants and Demulder.  The five cases do not involve any of the Demulder as a party in those cases.  It involves Schoonover, and they involve four cases involving Pfleg.

I also point out that allowing this discovery at this late stage will be unduly prejudicial to the defendants, all of the defendants.  And it also is inconsistent with the proportionality analysis, in particular the requirement that the Court consider the amount in controversy.

This is a case where just responding to the eight cases at issue in which plaintiff voluntarily told Your Honor in May 2016 that that's all this case is about is eight cases and only eight cases.  My client has spent million of dollars responding to discovery alone, millions of dollars responding to discovery on just those eight cases.

And discovery on those eight cases is not yet complete, as I indicated earlier, and the amount in controversy in this case is $240,000.  So we are already at a threshold of four times -- beyond four times the amount in controversy just dealing with the eight cases.

If Your Honor has any other specific issues you would like me to address with respect to the tentative or

13

counsel's arguments, I would be happy to do so.  Other than that, we would submit.

THE COURT:  No.  Thank you.

MR. FORD:  May I be heard, Your Honor?

THE COURT:  Please.  Mr. Ford.

MR. FORD:  Thank you, Your Honor.

Very briefly, we do submit on the Strataluz, the first part of it.  We just want to address briefly some of the arguments and discussions that have occurred vis-a-vis the second part with respect to the five cases.

First, as Mr. Darnell pointed out, this is a case of over $246,000 in compensatory damages.  We're now at a point where we have reached at least, I believe, 400 docket entries.  The Court has referred this case to a special master, given the sheer volume of discovery disputes.  I would venture to guess this is the most heavily litigated $240,000 case in jurisprudential history, but I don't know for sure.

Two other points.  First of all, counsel for NIC did not address with respect to Mr. Schoonover the Court's point which was set forth in the tentative, which is that the predicate facts with respect to Mr. Schoonover were known at least to NIC via their agent, Clark Baker, for some time, and it wasn't addressed in their papers.  It wasn't addressed in counsel's argument.  So I think that does lend

a lot of credibility as to the fact that the time to address that is over.

Secondly, as the Court is well aware, there has to be an end point at some time with respect to discovery.  NIC asked for additional time to conduct discovery.  The Court rejected or denied that motion I think correctly.

The concern that we have with respect to the non-NTG defendants is that this is an attempt to end-run the Court's denial of the motion to continue the discovery cutoff, because what happens then is we have five new cases.  Oh, my gosh.  We'll never get all of that stuff done in time.  And then we race back to court saying:  Your Honor, in light of all this additional discovery, we need additional time.

So I think all cases regardless of their size need an end point.  I think the Court correctly has August 21st as the end point.  I think further expanding the scope of this -- which I think is already, dare I say, absurdly broad, given the amount at stake and proportionality consideration set forth in Rule 26 -- all suggest that the Court's tentative is correct with respect to those five cases.

And on that basis we would submit.

Thank you, Your Honor.

THE COURT:  Thank you.

15

Mr. Arhangelsky.

MR. ARHANGELSKY:  Yes, Your Honor.  Because it's relevant I suppose to the proportionality issues, I should note that the defendants' characterization that this case is a $240,000 case is their interpretation.  Our client has a very different interpretation where the value is actually quite substantially more.

This is a RICO case.  It's a treble damages case. It's a punitive damages case.  There is a lot at stake in this case, and I think there's a lot at stake from an injunctive perspective as well.  So to repeatedly cast this as a $240,000 compensatory damages case is, I think, a bit misleading.

But with respect to Mr. Schoonover's, his prior case, there was representations made that we were aware of it.  I think the record is clear that we did not. Mr. Schoonover, what he said to Mr. Baker in, I believe it was, December 2015 was not "I had multiple cases." Mr. Schoonover made a comment that some of the individuals, without naming himself specifically, may have had multiple cases.

We reasonably interpreted that at the time to relate to those individuals who we knew had multiple cases, one of which was Andrew Nilon.  We didn't begin to suspect that Mr. Schoonover had additional cases until his

16

deposition when we asked him a background question as to whether he had been a plaintiff in any other lawsuits, and he was not permitted to answer the question.

We therefore had no idea, and we went through a process -- months, in fact -- of litigating over whether these individuals would even have to disclose whether they had additional cases.  Eventually that came to fruition with the late April and May supplements that were presented to the Court.  So I think it's factually incorrect to say we knew about Mr. Schoonover's case.  We didn't.  We had no basis to know that.

Depositions -- and there's a number of arguments about the calendar.  Depositions of the principals, there's a narrow group of individuals we have not deposed.  We can't depose them because they have maintained that every single communication, document, or anything related to these relationships is privileged.

We have moved to vitiate privilege.  We have a motion pending since April.  It was served on defendants in December, looking to vitiate privilege on several grounds.  We're hoping that motion addresses all of these privilege concerns and would allow us to move forward in discovery with respect to these types of depositions.

We have completed all of our non-NTG defendant depositions.  We have completed a very substantial amount of

17

discovery in this case.  There are narrow issues that remain.  We're waiting for guidance from the Court on privilege concerns.

With respect to that, we've just received notice just last week from the special master that we will not be even receiving a ruling on our pending privilege motions until late August.

So we're in a position now where the bulk of the discovery in this case will not even be decided upon until likely after the discovery cutoff, and I think we need to address that with the Court when we had intended to submit updated briefing so the Court could understand exactly where the parties are at this point.

There is a substantial amount of discovery remaining in the case, and what we have asked for here doesn't add substantially to that, especially if we're talking about party deposition only.

There are by our count some 41 separate events in this case that remain that have to be completed within the next 30 days, including weekends.  That includes what could be as many as ten expert depositions, a slew of different fact depositions, many of which are actual defendants, that they are trying to perform in narrow windows in August.

The NIC principals also have yet to be deposed. Defendants have represented that the reason they are not

18

deposed yet is because of privilege concerns and discovery issues that the Courts have yet to resolve.  The parties are in a holding pattern on a lot of issues.  To say that this is plaintiff's sole issue I think is disingenuous.  But that I think is an aside.  We can address that in a separate pleading, and I think we intend to.

With respect to this discovery we're asking for here, I don't see it as a significant increase in the burden to the parties, and I don't see it as -- especially with respect to Strataluz, we're adding two depositions and a series of document requests.  None of those requests seem to be overly broad, especially in light of the defendants' representations that most of these documents likely don't even exist.

With that, Your Honor, I have nothing further.

THE COURT:  Well, the tentative is going to be the order of the Court.

When the plaintiffs identified eight lawsuits that they wanted to pursue, it seemed to be quite a number of lawsuits, but also it at least defined the boundaries.  I believe that the discovery with respect to those lawsuits has or will provide the grist for the RICO and other claims if such grist exists.

The modest addition of the Strataluz case I think is appropriate in light of the discovery that's been taken

with respect to the creation of Strataluz and so on.

While you're here, with respect to the pending summary judgment motions, the plaintiff has filed a 56(d) motion.  I'm not sure the motion per se was necessary.  But, in any event, I have a pleading before me which complies with Rule 56(d), an affidavit and so on, spelling out the need for specific discovery that the plaintiffs need before they can respond to those motions.

When do the defendants plan to respond to that filing?

MR. FORD:  Today, Your Honor.

THE COURT:  Okay.

MR. DARNELL:  We're going to file an opposition today.  We believe it is substantively and procedurally improper, so that's what our opposition will be about.

THE COURT:  Okay.

Okay.  Anything else for today?

MR. ARHANGELSKY:  No, Your Honor.

MR. DARNELL:  No, Your Honor.  Thank you.

THE COURT:  Thank you.

(Proceeding concluded at 1:55 p.m.)

*    *    *

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

20

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  April 26, 2018

/s/   Sharon A. Seffens  4/26/18
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER