# Exhibit 6

Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street, 32nd Floor
Los Angeles, CA 90013
213-253-9776
SPECIAL MASTER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., a Florida corporation, | )<br>)<br>) |
| Plaintiff, | ) Case No: 8:15 CV-02034-JVS (JCGx) |
| v. | )<br>) (JAMS Ref. No: 1220055347) |
| NEWPORT TRIAL GROUP, a California corporation; SCOTT J. FERRELL, a California resident; RYAN M. FERRELL, an Arizona resident; VICTORIA C. KNOWLES, a California resident; DAVID REID, a California Resident; ANDREW LEE BASLOW, a California resident; ANDREW NILON, a California resident; SAM PFLEG, a California resident; MATTHEW DRONKERS, a California resident; TAYLOR DEMULDER, a Nevada resident; SAM SCHOONOVER, a California resident; GIOVANNI SANDOVAL, an Arizona resident; and DOES 1 through 10, inclusive, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## [TENTATIVE]

## ORDER FOLLOWING SECOND REMAND [DKT. NOS. 570, 610]

On _____, 2018, oral argument was held telephonically before Hon. Rosalyn

Chapman, Special Master.[1]  Joshua Furman and Peter A. Arhangelsky, attorneys with the law firm Emord & Associates, appeared on behalf of Plaintiff Natural-Immunogenics Corp. ("NIC"); David Darnell and Stephanie Sperber, attorneys with the law firm Callahan & Blaine APLC, appeared on behalf of Defendant Newport Trial Group ("NTG") and Defendants Scott J. Ferrell, Ryan Ferrell,  Victoria Knowles, David Reid, and Andrew Lee Baslow (collectively, "NTG Defendants"); and Brendan M. Ford, a partner with the law firm Ford & Diulio PC, appeared on behalf of Defendants Andrew Nilon, Sam Pfleg, Matthew Dronkers, Taylor Demulder, Sam Schoonover and Giovanni Sandoval (collectively, "non-NTG Defendants").

**BACKGROUND**
**I.**

On May 10, 2016,  NIC filed its Second Amended Complaint for Damages and Injunctive Relief ("SAC") raising a claim for malicious prosecution against some defendants and claims against all Defendants for violating the Racketeering Influenced and Corrupt Organizations  Act (RICO), 18 U.S.C. §§ 1961, 1962c & 1964, by wire fraud, mail fraud, extortion, obstruction of justice, bribery and witness tampering, conspiracy to violate RICO, 18 U.S.C. §§ 1961, 1962(d) & 1964(c), and unfair competition in violation of California Unfair Competition ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. [Dkt. 92].

---

[1]   The Special Master is of the opinion that Defendant Sam Schoonover should be afforded the opportunity for an in-person oral argument, pursuant to *In re Napster, Inc. Copyright Litig.*, 479 F3d. 1078, 1093 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indust. Inc. v. Carpenter*, 558 U.S. 100 (2009).  However, Defendant Schoonover did not request an in-person oral argument.

On November 14, 2016, Plaintiff NIC filed a Statement describing its RICO claims ("RICO Statement"). [Dkt. No. 201].  According to NIC, "NTG has participated in a pattern of fabricated and fraudulent litigation and threats of such litigation, involving paid plaintiffs who asserted false claims of injury and false material representations of fact to the courts and opposing counsel in NTG complaints and in affidavits, in an unlawful scheme to defraud defendants nationwide.  NTG and its members have profited substantially from NTG's unlawful filings in state and federal court." [Id. at 1-2].  Defendants Pfleg and Schoonover are plaintiffs who were paid to support false claims in litigation. [Id. at 6-7, 32].

District Judge James V. Selna describes the gravamen of NIC's RICO and UCL claims in the SAC as identifying two litigation schemes employed by defendants:  a false advertising scheme and a wiretapping scheme.  [Dkt. 157]. Judge Selna further describes the two schemes as follows:

> In the false advertising scheme, [NTG] and its investigator Baslow would identify individuals to serve as lead plaintiffs in consumer fraud class actions against companies selling products in California.  [NTG] would then bribe these individuals to make intentional false representations that (1) they purchased the defendant's product in reliance on representations made in defendant's product advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the advertisements.  Using these false allegations, [NTG] would threaten companies with statewide class actions under various California consumer protection statutes, and before the companies could

3

discover that the allegations were false, extort out-of-court settlements from these companies.

The wiretapping scheme functioned similarly. Under the wiretapping scheme, [NTG] and Baslow would identify individuals to serve as potential lead plaintiffs in consumer privacy class actions. [NTG] would then bribe these individuals to stage private phone calls to various companies, and then later make intentionally false representations that (1) they were not aware that the call was being recorded; (2) they did not consent to the recording; and (3) they later learned that the company recorded all incoming calls only after completing the call. Using these false allegations, [NTG] would threaten companies with statewide class actions under the California Invasion of Privacy Act, Cal. Pen. Code § 632 et seq., and before the companies could discover that the allegations were false, extort out-of-court settlements form these companies.

[Id. (citations and footnote omitted)].

The SAC identifies four lawsuits filed in connection with the false advertising scheme and four lawsuits filed in connection with the wiretapping scheme. Of these eight lawsuits, two lawsuits involve Defendants Sam Pfleg ("Pfleg") and Sam Schoonover ("Schoonover") as plaintiffs: (1) a false advertising lawsuit -- *Sam Pfleg v. Nature's Way Products, Inc.*, 12 CV 01018-LAB-BLM (S.D. Cal. 2012 (removed from San Diego County Superior Court) ("*Nature's Way*"); and (2) a wiretapping lawsuit -- *Sam Schoonover v. Himalaya Drug. Co.*, 12

CV 1782-JLS-RBB (S.D. Cal. 2012)(*"Himalaya Drug"*).

## II.

On September 18, 2017, the Special Master issued an Order Granting, in part, and Denying, in part, Plaintiff's "Omnibus" Motion to Compel ("Omnibus Order"). [Dkt. 458]. As part of the Omnibus Order, the Special Master found that "NIC ha[d] made a factual showing sufficient to support *in camera* review of documents related to" *Nature's Way* and *Himalaya Drug* and randomly selected 27 documents from the privilege log of Defendant Pfleg and 29 documents from the privilege log of Defendant Schoonover to review *in camera*. After reviewing the randomly selected documents *in camera*, and applying the preponderance of evidence standard of proof, the Special Master concluded: none of the documents listed on Defendant Pfleg's privilege log came within the crime-fraud exception; however, four documents listed on Defendant Schoonover's privilege log were more likely than not in furtherance of the wiretapping scheme to defraud corporations and supported Plaintiff's RICO claims. [Id. at 36-37]. However, it was later discovered that the privilege logs of Defendants Pfleg and Schoonover were missing fourteen documents that Defendants subsequently disclosed to Plaintiff ("fourteen late-disclosed documents"). Declaration of Peter Arhangelsky ¶ 24, Appendix E [Dkt. Nos. 473-1, 473-11].

## III.

On October 2, 2017, Plaintiff filed objections to the Omnibus Order, requesting, in part, that Judge Selna consider the fourteen late-disclosed documents when reviewing the Omnibus Order. [Dkt. No, 473-1]. Judge Selna concluded that the fourteen late-disclosed documents

"appear to be related to two of the eight underlying cases identified in the SAC" and "the issue of whether in camera review of these documents is appropriate should be decided together with the initial Crime-Fraud Motion. Thus, on remand, the Special Master should consider whether in camera review of these documents is appropriate." ("Crime-Fraud Order"). [Dkt. No. 534].

Subsequently, NTG Defendants and non-NTG Defendants filed motions to vacate or reconsider the Crime-Fraud Order, which Judge Selna granted, in part, vacating the section of the Order "directing the Special Master to consider whether in camera review of the fourteen [late-disclosed] documents is appropriate." [Dkt. No. 570]. In making this ruling, Judge Selna found that "it ha[d] come to the Court's attention that the documents were related to other cases involving the same Non-NTG Defendants but not any of the eight underlying cases identified in the SAC." [Id. at 8]. Since the Crime-Fraud Order was based on the Court's "mistaken belief" that the fourteen late-disclosed documents are related to two of the eight cases identified in the SAC, Judge Selna found grounds existed to reconsider the Crime-Fraud Order. [Id. at 8-9].

On March 22, 2018, Judge Selna issued an Order Granting Plaintiff's Motion to Modify or Vacate the Order in Docket No. 570. [Dkt. No. 610]. In issuing the Order, Judge Selna noted:

> Since the Court issued its Order in Docket No. 570, counsel for the Non-NTG Defendants has filed two separate notices of errata regarding the[] fourteen [late-disclosed] documents. The first notice of errata states ... that thirteen of the documents are unrelated to any of the eight cases identified in SAC; however, one of the documents is part of a larger set of documents that relates to one of the

eight cases. The second notice of errata states … that upon further review it appears that six more of the fourteen documents did in fact relate to one of the eight underlying cases.

[Dkt. No. 610 at 3 (citations omitted)]. "In light of the newly filed notices of errata and counsel for the Non-NTG Defendants' evolving representations," Judge Selna found "it prudent for the Special Master to review all fourteen [late-disclosed] documents in camera." [Id. at 4]. Accordingly, Judge Selna inter alia "instruct[ed] the Special Master to take in camera review of all fourteen documents as part of the pending Crime-Fraud Motion proceedings to determine whether they are in fact related to the eight cases identified in the SAC and whether they fall under the crime-fraud exception." ("Second Remand Order"). [Id.].

In response to the Second Remand Order, the Special Master ordered non-NTG Defendants to file a notice of lodgment of the fourteen late-disclosed documents. [Dkt. No. 611]. On March 26, 2018, non-NTG Defendants filed a notice of lodgment and lodged the following documents listed in Appendix E, Dkt. No. 473-11: Bates numbers PFLEG00066-00068 and SCHOONOVER00082-00094. [Dkt. No. 614].

## DISCUSSION

The Special Master has conducted an in camera review of each of the documents listed above, which total sixteen documents (rather than fourteen documents). As an initial matter, the Special Master finds that Bates-stamped documents PFLEG00066-00068 do not pertain to Nature's Way or any of the other seven cases identified in the SAC; thus, they have not been

7

reviewed *in camera* as part of Plaintiff's crime-fraud motion. On the other hand, the Special Master finds that Bates-stamped documents SCHOONOVER00082-00092 do pertain, in whole or in part, to *Himalaya Drug*, one of the wiretapping cases identified in the SAC; however, SCHOONOVER00093-00094 do not pertain to *Himalaya Drug*.

Under step two of the *Zolin* test,[2] the party seeking to vitiate the attorney-client privilege under the crime-fraud exception "must demonstrate that the attorney-client communications for which production is sought are 'sufficiently related to' and were made '*in furtherance of* [the] intended, or present, continuing illegality.'" *In re Napster*, 479 F.3d at 1090 (quoting *In re Grand Jury Proceedings*, 87 F.3d 377, 382-3 (9th Cir. 1996) (internal quotation marks omitted)(emphasis added)). This requires the Court (Special Master) to "examine the individual documents themselves to determine that the specific attorney-client communications for which production is sought are 'sufficiently related to' and were made 'in furtherance of the intended, or present, continuing illegality.'" *In re Grand Jury Investigation*, 810 F.3d. 1110, 1114 (9th Cir. 2016) (citation omitted); *In re Napster*, 479 F.3d at 1090.

Applying the preponderance of the evidence standard, *In re Napster*, 479 F.3d at 1094-95, and having conducted an *in camera* review of each and every of the *Himalaya Drug* documents identified above and considered all evidence presented by the parties, the Special Master concludes that the following documents come within the crime-fraud exception to the attorney-client privilege or work-product protection in that it is more likely than not that each of

---

[2]  *United States v. Zolin*, 491 U.S. 554 (1989).

these documents is in furtherance of the wiretapping scheme: SCHOONOVER00083 through SCHOONOVER00089.

## ORDER

1. Bates-stamped documents PFLEG00066-00068 do not pertain to *Nature's Way* or any of the other seven cases identified in the SAC.

2. Bates-stamped documents SCHOONOVER00082-00092 do pertain, in whole or in part, to *Himalaya Drug*, one of the wiretapping cases identified in the SAC; however, Bates-stamped documents SCHOONOVER00093-00094 do not pertain to *Himalaya Drug* or any of the other seven cases identified in the SAC.

3. Plaintiff NIC's motion to compel documents from Defendant Schoonover **is granted** under the crime-fraud exception to attorney-client privilege and work product protection as to the following Bates-stamped Documents: SCHOONOVER00083 through SCHOONOVER00089. Defendant Schoonover **shall** produce these documents to Plaintiff no later than ten (10) days from the date of this Order.

4. The Case Manager shall serve the Tentative Order on the parties.

March 27, 2018  
1220055347.43

By: _____
Hon. Rosalyn Chapman (Ret.), Special Master

9

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Natural-Immunogenics Corp. vs. Newport Trial Group, et al.
Reference No. 1220055347

I, Rose Mitchell, not a party to the within action, hereby declare that on  March 27, 2018, I served the attached [TENTATIVE] ORDER FOLLOWING SECOND REMAND [DKT. 570,610] on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Los Angeles, CALIFORNIA, addressed as follows:

Eric J. Awerbuch Esq.
Joshua S. Furman Esq.
Peter Arhangelsky Esq.
Emord & Associates
2730 S. Val Vista Dr.
Bldg 6, Suite 133
Gilbert, AZ   85295
Phone: 602-388-8899
eawerbuch@emord.com
jfurman@emord.com
parhangelsky@emord.com
    Parties Represented:
    Natural-Immunogenics Corp.

Leah M. Kaufman Esq.
LMK Strategies & Research
1001 N. Ross St.
Santa Ana, CA   92701
Phone: 949-939-1351
leah@leahmkaufman.com
    Parties Represented:
    Natural-Immunogenics Corp.

David J. Darnell Esq.
Stephanie A. Sperber Esq.
Edward Susolik Esq.
Callahan & Blaine
3 Hutton Centre Dr.
Suite 900
Santa Ana, CA   92707
Phone: 714-241-4444
ddarnell@callahan-law.com
ssperber@callahan-law.com
esusolik@callahan-law.com
    Parties Represented:
    Andrew L. Baslow
    David Reid
    Newport Trial Group
    Ryan M. Ferrell
    Scott J. Ferrell
    Victoria C. Knowles

James M. Golden Esq.
Robert S. Lawrence Esq.
Callahan & Blaine
3 Hutton Centre Dr.
Suite 900
Santa Ana, CA   92707
Phone: 714-241-4444
jgolden@callahan-law.com
rlawrence@callahan-law.com
    Parties Represented:
    Andrew L. Baslow
    David Reid
    Newport Trial Group
    Ryan M. Ferrell
    Scott J. Ferrell
    Victoria C. Knowles

Brendan M. Ford Esq.
Kristopher Diulio Esq.
Ford & Diulio PC
650 Town Center Dr.
Suite 760
Costa Mesa, CA   92626
Phone: 714-450-6830
bford@forddiulio.com
kdiulio@forddiulio.com
    Parties Represented:
    Andrew Nilon
    Giovanni Sandoval
    Matthew Dronkers
    Sam Pfleg
    Sam Schoonover
    Taylor Demulder


       I declare under penalty of perjury the foregoing to be true and correct. Executed at Los Angeles,

CALIFORNIA on  March 27, 2018.

Rose Mitchell
romitchell@jamsadr.com