# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.    SACV 15-02034 JVS(JCGx)                    Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

Present: The Honorable    James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Not Present                                  Not Present

**Proceedings:**    **(IN CHAMBERS)**
Order Overruling Defendants' Objection to the Special Master's Order in Docket No. 458. (Docket No. 472.)

Order Overruling in Part and Sustaining in Part Plaintiff's Objection to the Special Master's Order in Docket No. 458.  (Docket No. 473.)

Order Overruling in Part and Sustaining in Part Plaintiff's Objection to the Special Master's Order in Docket No. 597.  (Docket No. 617.)

Order Overruling in Part and Sustaining in Part NTG Defendants' Objection to the Special Master's Order in Docket No. 597.  (Docket No. 618.)

Order Overruling Defendant Schoonover's Objection to the Special Master's Order in Docket No. 625.  (Docket No. 640.)

Before the Court are five objections to the Special Master's orders in Docket No. 458, Docket No. 597, and Docket No. 625.

First, Defendants Newport Trial Group, Scott J. Ferrell, Ryan M. Ferrell, Victoria C. Knowles, David Reid, and Andrew Lee Baslow (collectively, the "NTG Defendants") filed an objection to the Special Master's order in Docket No. 458.  (Docket No. 472.)  Defendants Taylor Demulder ("Demulder"), Matthew Dronkers ("Dronkers"), Andrew Nilon ("Nilon"), Sam Pfleg ("Pfleg"), Giovanni Sandoval ("Sandoval"), and Sam Schoonover ("Schoonover") (collectively, the "Non-NTG Defendants") joined in the objection.  (Docket No. 477.)  Plaintiff Natural-Immunogenics Corp. ("NIC") filed a response in opposition.  (Docket No. 489.)  The NTG Defendants replied.  (Docket No. 498.)  For the following reasons, the Court **overrules**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                     Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

the NTG Defendants' objection.

Second, NIC filed an objection to the Special Master's order in Docket No. 458. (Docket No. 473.)  The NTG Defendants filed a response.  (Docket No. 492.)  NIC replied. (Docket No. 496.)  For the following reasons, the Court **overrules in part** and **sustains in part** NIC's objection.

Third, NIC filed an objection to the Special Master's order in Docket No. 597. (Docket No. 617.)  The NTG Defendants filed a response.  (Docket No. 629.)  NIC replied. (Docket No. 636.)  For the following reasons, the Court **overrules in part** and **sustains in part** NIC's objection.

Fourth, the NTG Defendants filed an objection to the Special Master's order in Docket No. 597.  (Docket No. 618.)  NIC filed a response.  (Docket No. 628.)  The NTG Defendants replied.  (Docket No. 637.)  For the following reasons, the Court **overrules in part** and **sustains in part** the NTG Defendants' objection.

Fifth, Schoonover filed an objection to the Special Master's order in Docket No. 625.  (Docket No. 640.)  NIC filed a response.  (Docket No. 653.)  Schoonover replied.  (Docket No. 656.)  For the following reasons, the Court **overrules** Schoonover's objection.

## I. BACKGROUND

This case concerns litigation between NIC and NTG, its attorneys, and its clients. In brief, NIC alleges that NTG routinely fabricated class-action litigation to extort money from defendants nationwide.  (Docket No. 92 ¶ 2.)  In addition to the NTG Defendants, NIC has sued the Non-NTG Defendants, who served as lead plaintiffs in these cases.

The Court has previously noted that NIC's Second Amended Complaint ("SAC") alleges that the NTG Defendants perpetrated two litigation schemes: (1) the false-advertising scheme and (2) the unauthorized recording, or "wiretapping" scheme.

In the false advertising scheme, NTG and its investigator Andrew Baslow ("Baslow") would identify individuals to serve as lead plaintiffs in consumer fraud class actions against companies selling products in California.  (Docket No. 92 ¶¶ 23–24.)  NTG would then

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

bribe these individuals to make intentional false representations that (1) they purchased the defendant's product in reliance on the representations made in defendant's product advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the advertisements. (Id. ¶ 29.) Using these false allegations, NTG would threaten companies with statewide class actions under various California consumer protection statutes,[1] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. (Id. ¶ 27.)

The wiretapping scheme functioned similarly. Under the wiretapping scheme, NTG and Baslow would identify individuals to serve as potential lead plaintiffs in consumer privacy class actions. (Id. ¶¶ 23–24.) NTG would then bribe these individuals to stage private phone calls to various companies, and then later make intentionally false representations that (1) they were not aware that the call was being recorded; (2) they did not consent to the recording; and (3) they later learned that the company recorded all incoming calls only after completing the call. (Id. ¶ 34.) Using these false allegations, NTG would threaten companies with statewide class actions under the California Invasion of Privacy Act, Cal. Pen. Code §§ 632 et seq., ("CIPA")[2] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. (Id.)

---

[1] NIC's SAC identifies four lawsuits filed in connection with the false advertising scheme: (1) Nilon v. Natural-Immunogenics Corp., Case No. 3:12-cv-00930-LAB-BGS (C.D. Cal. 2012) ("Nilon"); (2) Pfleg v. Nature's Way Prods., Inc., Case No. 37-2012-0051979-CU-MT-NC (San Diego Cty. Sup. Ct. 2012) ("Nature's Way"); (3) Dronkers v. Kiss My Face, LLC, Case No. 3:12-01151-JAH (S.D. Cal. 2012) ("Kiss My Face"); and (4) Morales v. Magna, Inc., Case No. 3:10-cv-01601-EDL (N.D. Cal. 2010) ("Magna"). (Docket No. 92 ¶¶ 49–147, 175–221, 265–81.) Nilon, Pfleg, and Dronkers served as the lead plaintiffs in Nilon, Nature's Way, and Kiss My Face, respectively. (Id.) Sandoval later substituted in as lead plaintiff in Nilon. (Id. ¶¶ 105–13.) Non-party Dan Bobba ("Bobba") served as a lead plaintiff in Magna. (Id. ¶ 266.)

[2] NIC's SAC identifies four lawsuits filed in connection with the wiretapping scheme: (1) Nilon v. Chromadex, Inc., Case No. 56-2013-00436790-CU-MT-VTA (Ventura Cty. Sup. Ct. 2013) ("Chromadex"); (2) Demulder v. Carter-Reed Co., LLC, Case No. 3:12-cv-0333-BTM (S.D. Cal. 2012) ("Carter-Reed"); (3) Schoonover v. Himalaya Drug Co., Case No. 12-cv-1782 (S.D. Cal. 2012) ("Himalaya Drug"); and (4) Torres v. Nutrisystem, Case No. 8:12-cv-01854-CJC-JPR (C.D. Cal. 2012) ("Nutrisystem"). (Id. ¶¶ 148–74, 222–64, 282–317.) Nilon, Demulder, and Schoonover served as the lead plaintiffs in Chromadex, Carter-Reed, and Himalaya Drug, respectively. (Id.) Non-party Raquel Torres ("Torres") served as a lead plaintiff in Nutrisystem. (Id. ¶¶ 289, 295.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                Date   June 12, 2018

Title      Natural-Immunogenics Corp. v. Newport Trial Group, et al.


On April 14, 2017, NIC filed an "omnibus" motion to compel the production of documents.  (Docket No. 291.)  NIC filed the motion as a Local Rule 37-1 joint stipulation before the Special Master.[3]  (Id.)  The "omnibus" motion seeks to compel the production of 1,696 documents privilege logged among the eight underlying cases identified in the SAC. (Docket No. 291 at 2; Docket No. 291-2; Docket No. 291-3; Docket No. 294-1; Docket No. 294-2.)

On August 10, 2017, the Special Master issued a preliminary order requiring Defendants to produce for in camera review 231 specific, randomly selected documents identified in Defendants' privilege logs.  (Docket No. 431.)  On September 28, 2017, the Special Master issued a final order in Docket No. 458 granting in part and denying in part NIC's "omnibus" motion.  (Docket No. 458 at 37.)  The Special Master found that NIC had made a factual showing sufficient to support in camera review of documents related to Nilon, Nature's Way, Kiss My Face, Chromadex, Carter-Reed, Himalaya Drug, and Nutrisystem, but not Magna.  (Id. at 31–35.)  After reviewing the 231 documents, selected from every case but Magna, the Special Master found that four of the documents came within the crime-fraud exception to the attorney-client privilege and work-product doctrine.[4]  (Id. at 36.)  The Special Master denied the "omnibus" motion to compel on all other grounds.  (Id. at 37.)

The parties filed cross-objections to the Special Master's final order in Docket No. 458.  (Docket No. 472; Docket No. 473.)  On November 29, 2017, the Court issued an order remanding to the Special Master to consider new evidence submitted by the parties, specifically directing the Special Master to consider evidence related to Magna, and to consider whether in camera review of fourteen late-disclosed documents was appropriate.  (Docket No. 534.) Thereafter, Defendants filed a motion to vacate or reconsider the Court's order in Docket No. 534.  (Docket No. 548.)  On January 24, 2018, the Court affirmed the portion of the order in Docket No. 534 that related to new evidence and Magna and vacated the portion related to the fourteen late-disclosed documents based on the Non-NTG Defendants' representations that the

---

[3] The Court has assigned this case to a Special Master, the Honorable Rosalyn Chapman (Ret.), for discovery purposes.  (Docket No. 223.)

[4] These documents are NTG000239–NTG000240; NTG005980–NTG005981; NTG005984–NTG005985; and NTG041929–NTG041930.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)              Date   June 12, 2018

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al.

documents did not relate to the cases identified in the SAC.  (Docket No. 570.)  Subsequently, NIC filed a motion to modify or vacate the Court's order in Docket No. 570.  (Docket No. 590.)  On March 22, 2018, the Court granted the motion, finding it prudent for the Special Master to review the fourteen late-disclosed documents in camera based on the Non-NTG Defendants' evolving representations about their contents.  (Docket No. 610.)

On January 31, 2018, the Special Master issued a preliminary order directing the NTG Defendants to produce for in camera review seventeen specific, randomly selected documents from Magna.  (Docket No. 573.)  And on February 5, 2018, the Special Master issued a second preliminary order directing the NTG Defendants to produce for in camera review an additional six documents.  (Docket No. 576.)  Thereafter, on March 12, 2018, the Special Master issued the final order in Docket No. 597, finding that five of the documents came within the crime-fraud exception to the attorney-client privilege and work-product doctrine.[5]  (Docket No. 597 at 9–10.)  The Special Master also found that two documents were not protected by the attorney-client privilege and were improperly listed on Defendants' privilege log.[6]  (Id. at 10.)  Additionally, on April 13, 2018, after taking in camera review of the fourteen late-disclosed documents, the Special Master issued the final order in Docket No. 625, finding that the majority of these documents came within the crime-fraud exception.[7]  (Docket No. 625 at 9–10.)

Now before the Court are the parties' cross-objections to the Special Master's final orders compelling the production of documents pursuant to the crime-fraud exception: Docket No. 458, Docket No. 597, and Docket No. 625.

## II. Legal Standard

The Court reviews all objections to the Special Master's findings of fact or conclusions of law de novo.  Fed. R. Civ. P. 53(f).

---

[5] These documents are Bates Nos. NTG008072–NTG008080; NTG011057–NTG011063, NTG011593–NTG011596; NTG0 11604–NTG011608; and NTG011988.

[6] These documents are Bates Nos. NTG008080 and NTG011063.

[7] These documents are Bates Nos. PFLEG00066–PFLEG00077; and SCHOONOVER00082–SCHOONOVER00092.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | June 12, 2018 |
|---|---|---|---|

| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

## III. Discussion

The crux of NIC's objections is that the Special Master's rulings were too narrow, and that more documents should have been reviewed in camera and compelled pursuant to the crime-fraud exception to the attorney-client privilege and work-product doctrine. (Docket No. 473; Docket No. 617.)  In contrast, the crux of Defendants' objections is that the Special Master erred in compelling any documents pursuant to the crime-fraud exception because NIC has not established by a preponderance of the evidence that Defendants were engaged in a criminal or fraudulent scheme or that their privileged communications were in any way in furtherance of such a scheme.  (Docket No. 472; Docket No. 618; Docket No. 640.)

### A.    Evidentiary Disputes

There are a number of evidentiary disputes related to the objections at issue, which the Court will address first.

### 1.    NIC's Request to Strike the NTG Defendants' Evidentiary Objections

First, the Court considers NIC's request to strike the NTG Defendants' evidentiary objections to declarations filed in support of NIC's "omnibus" motion to compel.  (Docket No. 476.)

On March 10, 2017, this Court ordered that all documents filed with the Special Master be concurrently filed in the CM/ECF Docket.  (Docket No. 239.)  On September 18, 2017, the NTG Defendants discovered that they had failed to file their evidentiary objections to NIC's evidence in support of its "omnibus" motion on CM/ECF.  (Docket No. 484 at 3–4.)  The NTG Defendants proceeded to file these objections on October 2, 2017.  (Docket No. 471.)  On October 3, 2017, NIC filed a response and request to strike the NTG Defendants' evidentiary objections as untimely because the evidentiary objections were filed after the Special Master had already considered the papers and issued a final order regarding the "omnibus" motion in Docket No. 458.  (Docket No. 476.)  On October 11, 2017, the Court granted NIC's request to strike the evidentiary objections.  (Docket No. 483.)  Subsequently, the NTG Defendants filed an opposition to NIC's request to strike and requested that the Court withdraw is order in Docket No. 483.  (Docket No. 484.)  NIC filed a response.  (Docket No. 487.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | June 12, 2018 |
|---|---|---|---|

| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

Under Federal Rule of Civil Procedure 60(b), the court may grant reconsideration based on a showing of: "mistake," "fraud . . . , misrepresentation, or misconduct," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b). When the Court granted NIC's request to strike the evidentiary objections, it was under the impression that these objections were untimely submitted. (Docket No. 483.) However, it has come to the Court's attention that while the NTG Defendants failed to file their evidentiary objections on CM/ECF until after the Special Master issued the order in Docket No. 458, the Special Master did timely receive and consider these objections before deciding the final order. (Docket No. 458 at 25 ("Defendants object to the Furman Declaration . . . .").) When the NTG Defendants filed their objections on CM/ECF, they included an email showing that the evidentiary objections had previously been submitted to the Special Master on March 8, 2017. (Docket No. 471 at 408.) It appears that the NTG Defendants simply made a clerical error in not filing these objections on the CM/ECF Docket. Given that the Special Master already considered these evidentiary objections in ruling on the "omnibus" motion and that it was merely a clerical error that the objections were not timely filed on CM/ECF, the Court sees no reason to strike the evidentiary objections.

Additionally, the Court notes that not only did the Special Master consider the NTG Defendants' evidentiary objections, but she overruled them. (Docket No. 458 at 25.) Thus, the Court sees no reason for NIC to have filed its request to strike the evidentiary objections other than needlessly wasting the Court's time and resources. There is no prejudice to NIC because any evidence the Special Master did not consider was based on her own relevance and reliability considerations. (Docket No. 458 at 26–27.) Furthermore, NIC had an opportunity to respond to these objections because it submitted to the Special Master a response and request to strike the NTG Defendants' evidentiary objections on March 22, 2017, which it also neglected to file on CM/ECF. (Docket No. 484 at 7; Docket No. 484-5.)

Accordingly, the Court denies NIC's request to strike the NTG Defendants' evidentiary objections and withdraws its prior order of October 11, 2017, granting the request.

## 2.    Requests for Judicial Notice

Under Federal Rule of Evidence 201, the Court may take judicial notice of "a fact that is not subject to reasonable dispute" if it is "generally known" in the jurisdiction or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                     Date   June 12, 2018

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al.

questioned." Fed. R. Evid. 201(b).  Judicial notice is appropriate for proceedings in other courts if those proceedings have a direct relation to the matter at issue.  U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992); see also Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

NIC filed a request for judicial notice of eighty-four documents in support of its objection to the Special Master's order in Docket No. 458.  (Docket No. 474.)  The NTG Defendants opposed NIC's request.  (Docket No. 492-2.)  NIC responded.  (Docket No. 497.) Additionally, the NTG Defendants filed a request for judicial notice of one document in support of their objections and motion to strike evidence in connection with NIC's objection to the order in Docket No. 597.  (Docket No. 629-2.)  All of these documents come from proceedings in this Court or other courts.  Therefore, the Court takes judicial notice of the documents for their existence, but not for the truth of the matters asserted in the documents.

## 3.    The NTG Defendants' Motions to Strike NIC's Evidence

The NTG Defendants filed numerous evidentiary objections and two motions to strike evidence submitted by NIC in connection with NIC's objections to the Special Master's orders in Docket No. 458 and Docket No. 597.  (Docket No. 492-2; Docket No. 629-1.)

The NTG Defendants object to NIC's evidence in support of its objection to the Special Master's order in Docket No. 458 on numerous grounds, including hearsay, lack of foundation or personal knowledge, and improper opinion testimony.[8]  (Docket No. 492-2.)  In seeking to vitiate the attorney-client privilege pursuant to the crime-fraud exception, a party may use "any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." United States v. Zolin, 491 U.S. 554, 575 (1989).  Thus, the Court overrules the NTG Defendants' objections because it does not have to disregard otherwise inadmissible evidence in determining the scope of the privilege.  The Court also notes that it finds it troubling that despite explicitly acknowledging this rule in their brief (Docket No. 492 at 16), the NTG Defendants nevertheless proceeded to file over 250 pages of evidentiary objections.

---

[8] The NTG Defendants also objected to this evidence on the ground that it was new evidence not considered by the Special Master and, therefore, improper for the Court to consider for the first time in ruling on NIC's objection.  (Docket No. 492-2.)  However, the Court already addressed this argument in its prior orders in Docket No. 534 and Docket No. 570, and need not do so again.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | June 12, 2018 |
|---|---|---|---|

| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

The NTG Defendants also object to NIC's evidence submitted in support of its objection to the Special Master's order in Docket No. 597 on the ground that it is improper for the Court to consider new evidence at this stage of the proceedings. (Docket No. 629 at 17–18; Docket No. 629-1.) The NTG Defendants argue that the Court should disregard and strike all new evidence submitted by NIC that was not before the Special Master. (Docket No. 629 at 17–18.) In response, NIC argues that the Court should consider all of NIC's evidence and decide the objections on a complete record. (Docket No. 636 at 13–19.) Additionally, NIC argues that its "omnibus" motion to compel was filed over a year ago, and since that time, significant discovery has occurred, which warrants consideration of additional evidence. (Id. at 14.) Further, NIC points out that the NTG Defendants also attached new evidence that was not before the Special Master in support of their objection to the order in Docket No. 597. (Id. at 15.)

Federal Rule of Civil Procedure 53(f) provides that courts "may receive evidence" when considering objections to a special master's order. Fed. R. Civ. P. 53(f) ("In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."). The advisory committee note on Rule 53(f) provides that "[t]he parties may designate additional materials from the record, and may seek permission to supplement the record with evidence." Fed. R. Civ. P. 53(f), Advisory Committee Note, 2003 Amendment. Additionally, the Ninth Circuit has held that "a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." United States v. Howell, 231 F.3d 615, 621–22 (9th Cir. 2000). Moreover, courts have applied this precedent to consider new evidence in ruling on objections to a special master's order. See In re: Cathode Ray Tube (Crt) Antitrust Litig., No. C-07-5944 JST, 2016 WL 945981, at *2 (N.D. Cal. Mar. 14, 2016).

Here, the Court rejects the NTG Defendants' argument that NIC's introduction of new evidence at this stage is wholly improper. The Court previously expressed its belief that the "omnibus" motion to compel should be decided on a full record. (Docket No. 534 at 2.) The Court's opinion on this matter has not changed. Moreover, while some of the documents submitted by NIC in support of its objection to the Special Master's order in Docket No. 597 are new, many of them have previously been filed on the Docket or cited in documents filed on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | June 12, 2018 |
|---|---|---|---|

| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

the Docket. Given that a substantial period of time has passed since NIC filed its "omnibus" motion, the Court does not find it improper for NIC to seek to introduce new evidence. Therefore, the Court exercises its discretion to receive the new evidence when considering the cross-objections to the Special Master's order in Docket No. 597.

There is one exception. NIC submitted in support of its objection to the Special Master's order in Docket No. 597 a tentative order from a separate case, Forlenza v. Dynakor Pharmacal, LLC, et al., No. 2:09-cv-03730-AG-SS (C.D. Cal. July 20, 2010). (Docket No. 617-40.) However, it appears that the court in Forlenza specifically ordered that no copies of the tentative order be circulated outside of that case. (Docket No. 629-3.) Thus, NIC's use of the tentative order in this case is improper. Therefore, the Court grants the NTG Defendants' motion to strike this new evidence submitted by NIC in Docket No. 617-40. Otherwise, the Court denies the NTG Defendants' request to strike new evidence.

**B.      The NTG Defendants' Request to Postpone Ruling on the Objections Until After the Pending Motions for Summary Judgment Are Decided**

As a preliminary matter, the NTG Defendants argue that the Court should decline to rule on the objections to the Special Master's order in Docket No. 458 until after the Court decides the pending summary judgment motions regarding the underlying CIPA wiretap cases. (Docket No. 472 at 7–8; Docket No. 492 at 14 n.3.) The Court specifically addressed this issue in its previous order on August 3, 2017, granting NIC's Rule 56(d) motion. (Docket No. 423.) The Court stated that "it is appropriate to defer summary judgment until the parties have received a final ruling on the ['omnibus' motion to compel]." (Id. at 5.) The NTG Defendants provide no persuasive basis to revisit the Court's prior order. As the Court discusses below, it does not find it necessary to decide the issue of whether tester plaintiffs are permitted to bring CIPA claims prior to ruling on the present objections. Moreover, the Court notes that there has already been significant delay in ruling on the objections to the Special Master's order in Docket No. 458, and the Court declines to delay any further. Thus, the Court denies the NTG Defendants' request.

**C.      The Crime-Fraud Exception**

Federal Rule of Evidence 501 recognizes the common-law attorney-client privilege. In re Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007), abrogated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | June 12, 2018 |

| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al. |

on other grounds by Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100 (2009).  This fundamental privilege promotes candid attorney-client communications and protects clients' ability to seek legal advice.  Id.  But "the reason for that protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—ceas[es] to operate . . . where the desired advice refers not to prior wrongdoing, but to future wrongdoing."  Zolin, 491 U.S. at 562–63 (internal quotation marks omitted) (alteration in original).

In the Ninth Circuit, "[a] party seeking to vitiate the attorney-client privilege [or work-product doctrine] under the crime-fraud exception must satisfy a two-part test."  Napster, 479 F.3d at 1090; see also United States v. Edison, No. CR 07-0074 WHA, 2008 WL 170660, at *5 (N.D. Cal. Jan. 17, 2008) (stating that the crime-fraud exception, most commonly applied to attorney-client communications, "applies with equal force in the work-product setting").  First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme."  Napster, 479 F.3d at 1090 (quoting In re Grand Jury Proceedings, 87 F.3d 377, 381 (9th Cir. 1996)).  Second, the party must demonstrate that the sought-after attorney-client communications "are 'sufficiently related to' and were made 'in furtherance of [the] intended, or present, continuing illegality.'"  Id. (quoting In re Grand Jury Proceedings, 87 F.3d at 382–83) (alteration in original).  "The planned crime or fraud need not have succeeded for the exception to apply.  The client's abuse of the attorney-client relationship, not his or her successful criminal or fraudulent act, vitiates the privilege."  Id.  The burden of proof is preponderance of the evidence.  Id. at 1094–95.

Courts may apply in camera review to determine whether the crime-fraud exception applies.  In re Grand Jury Investigation, 810 F.3d 1110, 1113 (9th Cir. 2016).  To obtain an in camera review, the party seeking to vitiate the privilege must show "a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  Zolin, 491 U.S. at 572 (internal citation and quotation marks omitted).

**1.    NIC Has Satisfied the Threshold Showing for In Camera Review**

After considering all of the evidence in the record, the Court finds that NIC has satisfied the threshold showing to obtain an in camera review.  NIC has put forth sufficient evidence to support its contention that Defendants operated a fraudulent scheme to manufacture litigation.  Therefore, the Court finds that an in camera review of documents from the eight

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

underlying cases may reveal evidence to establish that the crime-fraud exception applies based on Defendants committing or intending to commit fraud on the court.

"Fraud on the court 'embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court.'" Napster, 479 F.3d at 1096 (quoting Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 780 (9th Cir. 2003)) (alteration in original). Fraud on the court focuses on a fraud that "harm[s] the integrity of the judicial process." In re Levander, 180 F.3d 1114, 1119 (9th Cir. 1999) (citation omitted). In discussing fraud on the court, the Supreme Court explained:

> [T]ampering with the administration of justice in the manner indisputedly shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

Hazel–Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 246 (1944), overruled on other grounds by Standard Oil Co. v. United States, 429 U.S. 17 (1976). "Mere nondisclosure of evidence is typically not enough to constitute fraud on the court, and 'perjury by a party or witness, by itself, is not normally fraud on the court.'" United States v. Estate of Stonehill, 660 F.3d 415, 444 (9th Cir. 2011) (quoting Levander, 180 F.3d at 1119). However, perjury may constitute fraud on the court if an attorney was a party to it. See id. (citing 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2870 (2d ed.1987)). Generally, "[m]ost fraud on the court cases involve a scheme by one party to hide a key fact from the court and the opposing party." Id.

Fraud on the court can be the basis for documents coming within the crime-fraud exception. See Napster, 479 F.3d at 1096–98. In Napster, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                    Date   June 12, 2018

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al.

plaintiffs alleged as grounds for the crime-fraud exception that the defendant committed a "fraud upon the court." Id. at 1096.  While the plaintiffs failed to meet their burden of proving that the crime-fraud exception applied, the Ninth Circuit treated the allegations of fraud on the court as the type of conduct that could support the application of the crime-fraud exception. Id. at 1096–98.

Here, the Court finds that NIC has shown "a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish [NIC's] claim that the crime-fraud exception applies." Zolin, 491 U.S. at 572 (internal citation and quotation marks omitted).  Specifically, NIC has established that in camera review may reveal evidence that Defendants have a pattern of manufacturing litigation, which involves the NTG Defendants identifying companies vulnerable to false advertising or wiretap litigation, recruiting individuals to serve as lead plaintiffs, instructing the individuals on exactly what steps to take to give them the appearance of having suffered actionable injuries, and concealing and misrepresenting the contrived nature of the lawsuits from the courts.  Such conduct, while possibly constituting fraud on the targeted defendants, is indicative of a vast scheme or conspiracy to commit fraud on the court.  Therefore, the Court finds that the Special Master properly concluded that NIC has made a sufficient factual showing to support in camera review of documents from all eight underlying cases identified in the SAC.  (Docket No. 458; Docket No. 597.)  The Court bases its decision on all of the evidence in the record, a brief summary of which the Court provides below.

First, with respect to the wiretapping scheme, there is evidence that NTG's investigator, Baslow, called hundreds of toll-free numbers for companies nationwide, including all four defendants in the underlying wiretap cases, for the purpose of determining whether they monitored or recorded calls without notifying callers.  (Docket No. 291-75; Docket No. 474-60.)  Additionally, Nilon, Schoonover, Demulder, and Torres were all in contact with Baslow or another NTG investigator, Wynn Ferrell, shortly before and shortly after they placed the calls that formed the basis of their injuries in the wiretap cases.  (Docket No. 291-75; Docket No. 291-79; Docket No. 291-78; Docket No. 291-84; Docket No. 291-38; Docket No. 291-68; Docket No. 291-25; Docket No. 291-21; Docket No. 291-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                    Date   June 12, 2018

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al.

22; Docket No. 474-7.)  Moreover, there is evidence that Baslow called the defendant in <u>Nutrisystem</u> five times in two days, and when Torres called the defendant a few weeks later, she was able to bypass its recording notice by dialing 1 six seconds into the call, even though she was a first-time caller.  (Docket No. 291-75; Docket No. 474-58.)  There is also evidence that Torres attempted to conceal the fact that she was in contact with NTG prior to making her call by lying in a deposition.  (Docket No. 474-59.)  Additionally, there is evidence that Schoonover may have admitted to an NIC investigator that Baslow told him about companies that recorded telephone calls and asked him to make a phone call while preventing the corporate representative from disclosing that the call was being recorded.  (Docket No. 291-6; Docket No. 291-17.)  Furthermore, in each of the wiretap cases, Defendants represented to the courts that the lead plaintiffs suffered actual injuries because they did not expressly or impliedly consent to the recording of their calls and would not have otherwise disclosed confidential information if they had known the calls were being recorded.  (Docket No. 474-54; Docket No. 291-27; Docket No. 474-8; Docket No. 474-55.)  The Court finds that the evidence suggests that Defendants' representations to the courts were false because they concealed the fact that the actual reason the lead plaintiffs made the calls was because they were directed to do so by the NTG Defendants for the purpose of contriving injuries for litigation.

Second, with respect to the false advertising scheme, there is evidence that three of the lead plaintiffs in the false advertising cases had preexisting relationships with NTG prior to making the purchases that would form the basis of their injuries.  Nilon had met with Baslow prior to making his purchase, and both Pfleg and Dronkers sent copies of their receipts to Baslow within a few hours of making their purchases.  (Docket No. 291-75; Docket No. 291-76; Docket No. 291-38; Docket No. 291-21; Docket No. 291-63; Docket No. 291-98; Docket No. 291-53; Docket No. 291-19.)  Additionally, there is evidence that Schoonover and Nilon may have admitted that they were recruited to participate in the scheme, were incentivized by the potential to make money, and were aware of the false and contrived nature of their claims.  (Docket No. 291-6; Docket No. 291-16; Docket No. 291-17.)  Moreover, Bobba posted a message online shortly after he was added as a lead plaintiff in <u>Magna</u>, stating that he only purchased the product at issue in <u>Magna</u> because his attorneys told him to, that he knew the product did not work as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                                Date   June 12, 2018

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al.

advertised when he made the purchase, and that his motive for participating was making money. (Docket No. 474-12; Docket No. 617-13.)  While Bobba stated in a subsequent declaration that the internet post "was written tongue in cheek," he does not deny that he posted the message and states that "it was based on true events." (Docket No. 474-12.)  Furthermore, in each of the false advertising cases, Defendants represented to the courts that the lead plaintiffs purchased the products at issue in reliance on the defendants' marketing claims and that the lead plaintiffs would not have purchased the products but for the claims. (Docket No. 474-37; Docket No. 474-29; Docket No. 474-53; Docket No. 474-26.)  The Court finds that the evidence suggests that Defendants' representations to the courts were false because they concealed the fact that the real reason for the lead plaintiffs' purchases was that they were directed to make the purchases by the NTG Defendants for the purpose of contriving injuries for litigation.

Third, with respect to the overall scheme, there is evidence that five of the lead plaintiffs, Nilon, Pfleg, Dronkers, Demulder, and Schoonover, were close friends and business associates. (Docket No. 406-26; Docket No. 30-9; Docket No. 291-6.)  Several of them had known each other since middle school or went to college together, and some of them even lived together during the time that they were involved in the underlying litigation. (Docket No. 406-26.)  In May 2012, the same month that Pfleg and Dronkers purchased the products at issue in their false advertising lawsuits and Nilon's and Pfleg's false advertising lawsuits were filed, Nilon, Pfleg, Demulder, and Dronkers formed a clothing and apparel business for members of the electronic dance music community, Electric Family LLC. (Docket No. 30-9; Docket No. 291-52.)  Schoonover also performed services for the business. (Docket No. 406-26.)  Additionally, around this period, Schoonover was dating an individual named Talee Rooney ("Rooney"), who had known NTG's investigator Baslow since elementary school. (Docket No. 474-79; Docket No. 291-6.)  There is evidence that it was Rooney who initially introduced Schoonover, Nilon, Pfleg, Dronkers, and Demulder to Baslow. (Docket No. 474-79; Docket No. 291-16; Docket No. 291-6.)  While the close relationship between Nilon, Pfleg, Dronkers, Demulder, and Schoonover is not explicit evidence of a crime or fraud, it suggests that they were aware of each others' involvement and NTG's pattern of filing manufactured litigation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 15-02034 JVS(JCGx)                      Date    June 12, 2018

Title     Natural-Immunogenics Corp. v. Newport Trial Group, et al.

Based on this evidence, the Court finds that NIC has satisfied the
threshold showing to obtain an <u>in camera</u> review.  <u>See</u> <u>Zolin</u>, 491 U.S. at 572.  NIC
has put forth sufficient evidence to support its claim that Defendants engaged in a
fraudulent scheme to manufacture litigation.  While Defendants' actions in any
single case, such as misrepresenting or concealing material facts in pleadings and
declarations or allowing clients to commit perjury, would likely not rise to fraud on
the court by themselves, the evidence before the Court indicates that these were not
discrete acts.  Instead, the evidence indicates that Defendants' actions were part of
a vast scheme or conspiracy to manufacture litigation.  Therefore, the Court must
consider Defendants' actions as a whole.  All together, the evidence indicates that
the NTG Defendants had a practice of identifying companies vulnerable to lawsuit,
recruiting individuals, including the Non-NTG Defendants, to serve as lead
plaintiffs, instructing the lead plaintiffs on exactly how to contrive actionable
injuries, and holding them out to their adversaries and the courts not as individuals
who acted at the direction of NTG for the purpose of filing lawsuits, but as bona
fide plaintiffs with legitimate injuries.  Such conduct taken as a whole indicates
that Defendants were engaged in a pattern or scheme of manufacturing litigation,
which threatens to harm the integrity of the judicial process.  <u>See</u> <u>Hazel</u>, 322 U.S.
at 246; <u>Levander</u>, 180 F.3d at 1119.  While the judicial machinery may be designed
to handle certain finite incidents of wrongdoing by parties or even officers of the
court, it is not designed to protect the public from officers of the court who are
operating a scheme to manufacture litigation based on contrived injuries that they
set in motion in order to extort settlements.  The Court acknowledges that some of
NIC's evidence is circumstantial and that there are some credibility concerns.
However, conclusive proof is not necessary at this stage, and the Court finds that
the evidence is sufficient to support a good faith belief that <u>in camera</u> review "may
reveal evidence to establish [NIC's] claim that the crime-fraud exception applies."
<u>Zolin</u>, 491 U.S. at 572.

i.     Defendants' Tester Defense

Defendants argue that the conduct they are being accused of in the
underlying wiretap cases cannot be the basis of the crime-fraud exception because
there is nothing unlawful about using tester plaintiffs to pursue claims under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | June 12, 2018 |
|---|---|---|---|

| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

CIPA.[9]  (Docket No. 472 at 7–11; Docket No. 640 at 8–10.)  Defendants point out that there is no authority that precludes the use of testers under CIPA and argue that Nilon, Demulder, and Schoonover were acting as testers in their wiretap cases. (Docket No. 472 at 7–11; Docket No. 640 at 8–10; Docket No. 291-43.)  At the same time, Defendants have maintained in this case and in the underlying wiretap cases that the lead plaintiffs did not know that their calls were being recorded at the time they placed the calls.  (Docket No. 375-2; Docket No. 375-3; Docket No. 387-1; Docket No. 375-4; Docket No. 640 at 10.)  If they had known ahead of time that the calls would be recorded, then it would mean that the allegations in their complaints and in other representations to the courts, that the lead plaintiffs had an expectation of privacy and did not know that their calls would be recorded, were false.  Defendants argue that while the Special Master correctly acknowledged that no authority bars the use of tester plaintiffs in CIPA cases, there is an inherent conflict in her orders because if the lead plaintiffs were simply acting as testers, there is no basis to conclude that Defendants' conduct in the wiretap cases was criminal or fraudulent.  (Docket No. 498 at 3; Docket No. 640 at 1.)

        The Court disagrees and finds that even if Nilon, Demulder, and Schoonover were acting as testers in their wiretap cases, these cases could still be part of the overall scheme to manufacture litigation.  The Court acknowledges, as did the Special Master, that there is no clear authority on the issue of whether tester plaintiffs are permitted to bring CIPA claims.  (Docket No. 458 at 12–13.) However, the Court need not resolve this issue in ruling on the present objections. The issue of whether the use of tester plaintiffs in CIPA cases is permissible is irrelevant because the underlying basis for the crime-fraud exception that the Court has found is a conspiracy to defraud the court through a scheme of manufacturing litigation.  NIC has introduced evidence that Defendants have a pattern of manufacturing or setting in motion the events that allow them to bring wiretap lawsuits.  Moreover, the evidence suggests that the lead plaintiffs did in fact know that their calls would be recorded and that they were calling for the purpose of

---

[9] According to Defendants, the definition of a tester is "an individual who (1) lawfully and ethically (2) takes an action or actions that are (2) motivated in whole or in part by (4) a desire to help identify, prove, and eradicate unlawful practices that harm consumers and the general public."  (Docket No. 291-43 at 341.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                    Date   June 12, 2018

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al.

bringing lawsuits.  Thus, it is likely that Defendants' representations to the courts about the lead plaintiffs having an expectation of privacy and not knowing that their calls would be recorded were false.  Further, even if the NTG Defendants did strategically conceal the fact that the calls would be recorded from the lead plaintiffs before directing them to place the calls, such conduct further emphasizes the contrived nature of the lawsuits and the deliberateness of the scheme. Therefore, regardless of whether Nilon, Demulder, and Schoonover were tester plaintiffs or whether testers are even permitted to bring CIPA claims, the Court finds that NIC has put forth sufficient evidence of a fraudulent scheme to manufacture litigation, which could support the application of the crime-fraud exception.  Said another way, the record establishes that these individuals were not mere tester plaintiffs.  Accordingly, the Court overrules Defendants' objections on this ground.

     ii.  Whether the Tester Defense Is an Admission of Fraud

    In response to Defendants' tester defense theory, NIC argues that by asserting this defense Defendants have admitted to fraud and thereby waived the attorney-client privilege.  (Docket No. 473 at 29–30.)  The Court disagrees.  In the absence of authority regarding whether testers are permitted to bring CIPA cases, there is no basis for the Court to concluded that Defendants' contention that three of the underlying wiretap cases involved tester plaintiffs is an admission of fraud. As stated above, Defendants contend that despite using tester plaintiffs, the plaintiffs were not apprised of the fact that their calls would be recorded until after they made them, thus maintaining the truth of the allegations in their complaints. Thus, the Court finds that Defendants have not admitted to any wrongdoing by asserting the tester defense.  Therefore, the Court rejects NIC's argument that Defendants have waived the privilege by admitting to fraud.

     iii.  Whether the Tester Defense Impliedly Waives the Attorney-Client Privilege

    Additionally, NIC argues that the tester defense "puts the unique relationship between NTG and its clients directly at issue in this case," and in asserting this defense, Defendants have impliedly waived the attorney-client

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date   June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

privilege.  (Docket No. 473 at 29–30; Docket No. 653 at 21–22.)  NIC argues that for the same reason courts consider the affirmative defenses of justification and good faith to impliedly waive the attorney-client privilege, Defendants' tester defense similarly places the privileged information supporting the defense directly at issue in the case.  (Docket No. 653 at 21–22.)  NIC argues that because Defendants are asserting this defense, NIC is entitled to discovery into any privileged communications related to it.  (Docket No. 473 at 30; Docket No. 653 at 22.)  The Special Master rejected this argument in the order in Docket No. 458.  (Docket No. 458 at 13.)

"The privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc., 552 F.3d 1033, 1042 (9th Cir. 2009) (quoting Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992)); see also Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003) (An implied waiver results when a party asserts claims that "the opposing party cannot adequately dispute unless it has access to the privileged materials.").  The Ninth Circuit uses a three-prong test to determine whether a party has impliedly waived the attorney-client privilege.  United States v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999).  "First, the court considers whether the party is asserting the privilege as the result of some affirmative act, such as filing suit. Second, the court examines whether through this affirmative act, the asserting party puts the privileged information at issue.  Finally, the court evaluates whether allowing the privilege would deny the opposing party access to information vital to its defense." Id. (internal citations and quotation marks omitted).

The Court agrees that by asserting the tester defense, Defendants necessarily place privileged information regarding their tester defense at issue in the lawsuit.  Defendants cannot use privileged communications as both a sword to assert the tester defense and a shield to prevent NIC from discovering information relevant to the defense—but that is exactly what they are attempting to do here.  At the hearing on the motion, the NTG Defendants argued that they have not asserted the privilege as a result of some affirmative act because the tester defense is not one of their affirmative defenses.  Additionally, the NTG Defendants argued that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

they are not relying on privileged information when they take the position that three of the Non-NTG Defendants were testers.  The Court disagrees.  Defendants' primary argument in their briefs has been their tester defense theory.  And, it appears as though they intend to continue asserting the tester theory as a defense through trial.  Moreover, as NIC pointed out at the hearing, in the deposition of NTG's investigator Baslow, counsel for the NTG Defendants objected to nearly every question asked about testers or NTG's use of tester plaintiffs on the basis of the attorney-client privilege or work product doctrine.  (Docket No. 474-79 at 70–79; 142, 145–46.)  Fairness requires disclosure because NIC's ability to assess the validity of the tester defense and the privileged information upon which the defense relies is vital to NIC's challenge to the tester defense.  Therefore, the Court finds that if Defendants intend to continue asserting this defense, NIC is entitled to discovery into NIC's use of tester plaintiffs and any instruction given to the tester plaintiffs by the NTG Defendants or its agents based on Defendants' implied waiver of the attorney-client privilege.

          iv.     Whether Defendants Are Entitled to <u>Noerr-Pennington</u> Immunity

       In Defendants' objections to the Special Master's orders in Docket No. 597 and Docket No. 625, Defendants argue that the Special Master erred in not requiring NIC to establish that the sham pleading exception to <u>Noerr-Pennington</u> immunity applied before invoking the crime-fraud exception.  (Docket No. 618 at 2, 12–15; Docket No. 640 at 8–10; Docket No. 597 at 8–9.)  Defendants argue that because NIC seeks to invoke the crime-fraud exception based on Defendants' litigation conduct, NIC must first establish that the sham pleading exception applies.  (Docket No. 618 at 2; Docket No. 637 at 5–6; Docket No. 640 at 10.)

       The <u>Noerr-Pennington</u> doctrine provides absolute immunity from statutory liability for conduct when petitioning the government for redress.  <u>Sosa</u> v. <u>DIRECTV, Inc.</u>, 437 F.3d 923, 929 (9th Cir. 2006).  Immunity under the <u>Noerr-Pennington</u> doctrine includes communications made to the court during the course of a lawsuit.  Such communications include "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

defendants make representations and present arguments to support their request that the court do or not do something." Id. at 933 (citation omitted). However, the Ninth Circuit has recognized an exception to the Noerr-Pennington doctrine. Noerr-Pennington immunity does not apply to conduct that, although "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere" with the defendant's business practices. Id. at 938 (citation omitted). As a result, "'[s]ham' petitions don't fall within the protection of the doctrine." Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1183–84 (9th Cir. 2005).

        In ruling on the NTG Defendants' objection to the Special Master's order in Docket No. 603, the Court rejected a similar argument. (Docket No. 652 at 5–6.) The Court explained that Noerr-Pennington immunity insulates parties from liability for their petitioning conduct, it is not an independent evidentiary privilege. (Id. (citing United Mine Workers of Am. v. Pennington, 381 U.S. 657, 670 n.3 (1965)).) Further, the Court noted that a number of federal courts have found that the Noerr-Pennington doctrine is not a rule of evidence that operates as a complete bar to admissibility. (Id. (collecting cases).) Thus, the issue of whether documents from the eight underlying cases are discoverable under the crime-fraud exception is separate and apart from the issue of whether Defendants can be held liable for their conduct in those cases. Therefore, the Court does not find it necessary to require NIC to show that the sham pleading exception applies before deciding whether the documents may be compelled under the crime-fraud exception. Accordingly, the Court finds that the Special Master did not err in declining to require NIC to make such a showing before ruling on the "omnibus" motion to compel and overrules Defendants' objections on this ground.

        **2.    The Court Exercises Its Discretion to Take In Camera Review of a Sample of Documents**

        Once the party satisfies the threshold showing to obtain an in camera review, "the decision whether to engage in in camera review rests in the sound discretion of the district court." Zolin, 491 U.S. at 572. In making this decision, the court considers "the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                     Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." Id.

The Special Master found that based on the particular facts and circumstances of this case, an in camera review of all 1,696 documents was not necessary.  (Docket No. 458 at 29–35.)  Instead, the Special Master exercised her discretion and found that an in camera review of a random sample of 248 documents from the eight underlying cases was appropriate.  (Docket No. 458 at 29–35; Docket No. 597 at 5, 7.)  NIC objects to the Special Master's decision to review only a random sample of 248 documents, instead of reviewing all 1,696 documents in camera at the first step of the crime-fraud analysis.  (Docket No. 473 at 23–25; Docket No. 617 at 2, 21–23.)

The Court finds that the Special Master's decision to conduct a limited in camera review of a random sample of documents to determine whether the crime-fraud exception applies was appropriate.  At the first step of the crime-fraud analysis, the decision of whether to take in camera review of privilege documents is entirely discretionary.  It is within the Court's discretion to consider exclusively non-privileged information in determining whether by a preponderance of the evidence Defendants were engaged in or planning a fraudulent scheme.  While the information at issue here is highly important to NIC's malicious prosecution and RICO claims and the non-privilege evidence put forth by NIC demonstrates a high likelihood that the privileged materials may support the application of the crime-fraud exception, the Court agrees with the Special Master that an initial review of a random sample of documents is appropriate.  Moreover, as discussed below, the Court finds that it is not necessary to review all 1,696 documents to make its determination at the first step of the crime-fraud analysis because the Court is able to make a determination of whether by a preponderance of the evidence the crime-fraud exception applies based on a review of the non-privileged evidence in combination with the 248 randomly selected documents.  NIC even acknowledges that in camera review is discretionary under the first step of the crime-fraud analysis.  (Docket No. 473 at 28; Docket No. 617 at 6.)  Thus, the Court finds that it was appropriate for the Special Master to take in camera review of a random

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

sample of documents from the eight underlying cases at the first step of the crime-fraud analysis.  Therefore, the Court overrules NIC's objection that the Special Master's decision to review only a sample of documents at the first stage of the crime-fraud analysis was improper.[10]  (Docket No. 473 at 23–25.)  However, the Court notes that it considers it to be an entirely different matter whether in camera review of all 1,696 documents is necessary at step two of the crime-fraud analysis.

### 3.    In Camera Review Supports the Application of the Crime-Fraud Exception

The Court requested and received from Defendants the random sample of 248 documents reviewed by the Special Master in addition to the fourteen late-disclosed documents.  The Court conducted an in camera review of these documents and considered them in conjunction with all of the evidence in the record.  Having performed this review, the Court concludes that (1) the preponderance of the evidence shows that Defendants were "engaged in" a fraudulent scheme to manufacture litigation and commit fraud upon the court;[11] and (2) Defendants made each of the communications set forth in the documents identified below "in furtherance of" that scheme.  See Napster, 479 F.3d at 1090 (citation omitted).  Therefore, the Court finds that the following documents come within the crime-fraud exception:

_____

[10] The NTG Defendants argue that NIC's objection to the Special Master's decision to conduct an in camera review of a random sample of documents is untimely.  (Docket No. 492 at 3.)  The Court disagrees.  While the Special Master issued an order on August 10, 2017, requesting that the Defendants produce a random sample of documents for in camera review, this was clearly a preliminary order.  (Docket No. 431.)  NIC was not required to object to the preliminary order before the Special Master issued her final order in Docket No. 458.  Therefore, the Court finds NIC's objection timely.

[11]  The Court notes that it made its preponderance of the evidence finding based on both privileged and non-privileged evidence.  While the Court declines to detail all of the specific documents it reviewed in camera that led to its conclusion that Defendants were "engaged in" a fraudulent scheme to manufacture litigation, the Court notes in response to arguments made by the NTG Defendants at the hearing on the motion that the contents of certain documents subject to production corroborate that Demulder had advanced knowledge that his call would be recorded.  See Bates Nos. NTG000239–NTG000240.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

      •Of the documents at issue in the order in Docket No. 458: Bates Nos. NTG000239–NTG000240; NTG004897–NTG004897.002; NTG004908–NTG004910; NTG005126–NTG005127; NTG005129–NTG005131; NTG005982–NTG005983; NTG005984– NTG005985; NTG006026–NTG006027; NTG006668; NTG014106–NTG014109; NTG014133; NTG015268–NTG015269; NTG017134–NTG017135; NTG022157–NTG022158; NTG022178; NTG041158; NTG041244–NTG041246; NTG041911; NTG041929–NTG041930; and NILON00051;

      •Of the documents at issue in the order in Docket No. 597: Bates Nos. NTG007983; NTG011063; NTG011593–NTG011596; NTG011604–NTG011608; and NTG011988; and

      •Of the documents at issue in the order in Docket No. 625: Bates Nos. SCHOONOVER00082–SCHOONOVER00092.

      Defendants assert a number of arguments regarding why specific documents should not be produced, which the Court will now broadly address.

      First, the NTG Defendants argue that they should not be forced to produce documents that they did not consider privileged and have already produced.  (Docket No. 618 at 3–4, 10–11.)  The Court agrees, which is why it has not required the NTG Defendants to reproduce certain documents at issue in the order in Docket No. 597.  While NIC contends that the documents that were already produced had key information redacted, such as the date retainer agreements were signed (Docket No. 628 at 6–8), the Court has reviewed the documents in question and finds this argument  without merit.  Therefore, the Court sustains the NTG Defendants' objection on this ground.

      Second, the NTG Defendants argue that certain documents at issue in the order in Docket No. 597, which both the Special Master and the Court have found to come within the crime-fraud exception, cannot be in furtherance of a crime or fraud because they post-date the dismissal of the <u>Magna</u> litigation. (Docket No. 618 at 19–20.)  The Court finds this argument without merit because,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

as stated by the Special Master, these documents are in furtherance of the NTG
Defendants' attempts to cover-up the fraudulent scheme. While the <u>Magna</u> case
was dismissed, the communications at issue still pertain to the NTG Defendants'
representations to the court related to post-dismissal sanctions. Thus, the Court
finds that the documents properly come within the crime-fraud exception because
they are in furtherance of the NTG Defendants' continuing attempts to cover-up
their fraudulent scheme and conceal their wrongdoing. <u>See</u> <u>In re Grand Jury
Subpoena 92-1(SJ)</u>, 31 F.3d 826, 831 (9th Cir. 1994) (finding that privileged
communications concerning past or completed crimes do not come within the
crime-fraud exception, with the exception of documents related to a continuing
cover-up). Therefore, the Court overrules the NTG Defendants' objection on this
ground.

        Third, Schoonover argues that included in the documents at issue in
the order in Docket No. 625, which both the Special Master and the Court found to
fall within the crime-fraud exception, there are privileged communications
unrelated to the <u>Himalaya Drug</u> case. (Docket No. 640 at 14–21.) Schoonover
argues that it was erroneous for the Special Master to reject his request to redact
these privileged communications because they fall outside the scope of permissible
discovery. (<u>Id.</u>) The Court finds Schoonover's argument without merit. Having
conducted its own <u>in camera</u> review of these documents, the Court concludes that
the communications at issue are all in furtherance of Defendants' scheme to
manufacture litigation. Thus, while certain communications may not directly
pertain to the <u>Himalaya Drug</u> case, they are inextricably intertwined with
communications that directly pertain to the scheme as a whole. Therefore, the
Court denies Schoonover's request to redact this information and overrules his
objection on this ground.

                i.    Whether <u>In Camera</u> Review of All 1,696 Documents Is
                      Appropriate at the Second Step of the Crime-Fraud
                      Analysis

        NIC argues that the Special Master erred in failing to take <u>in
camera</u> review of all 1,696 documents once she determined that the crime-fraud
exception applied at the first step of the crime-fraud analysis. (Docket No. 473 at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)          Date   June 12, 2018

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al.

27–29; Docket No. 617 at 6, 15–17, 24.)  NIC argues that while in camera review is discretionary at the first step of the analysis, once the Court determines by a preponderance of the evidence that Defendants were engaged in a fraudulent scheme, in camera review is required at the second step to determine which communications are in furtherance of the scheme.  (Docket No. 473 at 27–29; Docket No. 617 at 6, 15–17, 24.)  In response, Defendants argue that in camera review is always discretionary and that there is no support for NIC's contention that the Court must take in camera review of all 1,696 documents to determine the scope of the order.  (Docket No. 492 at 5; Docket No. 629 at 11–12.)

        The Court finds that it need not resolve the parties' dispute regarding whether an in camera review of all 1,696 documents is required once the Court concludes that the first step of the crime-fraud analysis has been satisfied.  It is clear that the Court has discretion to do so.  Because the Court has already found that many of the randomly selected documents are in furtherance of Defendants' fraudulent scheme, the Court finds it prudent for the Special Master to review all 1,696 documents in camera.  Based on the Court's review of the documents thus far, there is a high likelihood that at least some of these documents will be in furtherance of Defendants' fraudulent scheme.  The Court finds it improper to deprive NIC of this potentially probative discovery simply because these documents were not among the ones randomly selected by the Special Master.  Accordingly, the Court remands to the Special Master to complete an in camera review of all 1,696 documents to determine which of these documents are in furtherance of the scheme.

        **D.      The Work-Product Doctrine**

        Additionally, in NIC's objection to the Special Master's order in Docket No. 458, NIC argues that it has met its burden to compel the production of 465 documents from the eight underlying cases designated solely as work product. (Docket No. 473 at 19–21.)  "The work-product doctrine protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation."  United States v. Richey, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotation marks and citation omitted); Fed. R. Civ. P. 26(b)(3).  To qualify for protection against discovery under the work-product doctrine,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-02034 JVS(JCGx)                    Date    June 12, 2018

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al.

documents must have two characteristics: (1) they must be "prepared in anticipation of litigation or for trial"; and (2) they must be prepared "by or for another party or its representative." Fed. R. Civ. P. 26(b)(3); see also In re Grand Jury Subpoena, 357 F.3d 900, 907 (9th Cir. 2003). Rule 26(b)(3) distinguishes between ordinary work product and opinion work product. Ordinary work product is discoverable if the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). However, courts are obligated to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Thus, "[a] party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product." Holmgren v. State Farm Mutual Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992).

NIC argues that the Special Master erred in denying NIC's motion to compel the production of 465 documents from the eight underlying cases that the NTG Defendants designated solely as work product. (Docket No. 458 at 19.) NIC argues that it has a compelling need for these documents because the documents will establish the facts known to the NTG Defendants during the pendency of the underlying cases. (Id. at 20.) NIC argues that proof of the NTG Defendants' mental states is a critical element of its malicious prosecution and RICO claims and that it cannot obtain information relevant to the NTG Defendants' mental states from any other source. (Id.) Additionally, NIC argues that the Court should review the documents in camera to determine whether the work-product protection even applies to all of the documents. (Id. at 20–21.) NIC argues that where the NTG Defendants have designated documents as protected work product but not invoked the attorney-client privilege, the privilege logs suggest that the NTG Defendants may have been investigating claims prior to being retained by a client. (Id.) NIC argues that the work-product protection would not apply to these communications because the protection only applies to documents prepared by or for another party. (Id.)

The Court agrees with the Special Master that NIC has not shown a substantial need for these documents. (Docket No. 458 at 22.) The only basis for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                    Date   June 12, 2018

Title      Natural-Immunogenics Corp. v. Newport Trial Group, et al.

NIC's substantial need is that proof of the NTG Defendants' mental states is a critical element of its malicious prosecution and RICO claims.  However, NIC cites no authority for the broad proposition that if an underlying claim requires a showing of the defendant's mental state this necessarily establishes that the plaintiff has a substantial need for protected work-product documents that may help prove that mental state.  Moreover, the Court agrees with the Special Master that based on the extensive volume of evidence NIC put forth in support of its "omnibus" motion to compel, it appears that NIC has been able to obtain substantially equivalent materials through other means.  (Id.)  Thus, the Court denies NIC's request to compel production of the 465 work-product documents based on its substantial need and overrules NIC's objection on this ground.

        However, the Court finds merit in NIC's argument that documents the NTG Defendants prepared while not working on behalf of a client would not be covered by the work-product protection.  As stated above, the work-product doctrine protects documents from discovery only when the documents were prepared in "anticipation of litigation."  The requisite anticipation requires "more than a remote possibility of litigation."  C&C Jewelry Mfg., Inc. v. West, No. C09–01303 JF (HRL), 2010 WL 3943673, at *1 (N.D. Cal. Oct. 7, 2010) (citation omitted); see also Arfa v. Zionist Org. of Am., No. CV 13–2942 ABC (SS), 2014 WL 815496, at *4 (C.D. Cal. Mar. 3, 2014) ("The work product rule does not apply merely because there is a remote prospect of future litigation."); Health v. F/V ZOLOTOI, 221 F.R.D. 545, 549 (W.D. Wash. 2004) ("More than the mere possibility of litigation must be evident for materials to be considered immune from discovery under the work-product doctrine." (citation and internal quotations omitted)); Fox v. Cal. Sierra Fin. Servs., 120 F.R.D. 520, 524 (N.D. Cal. 1988) ("There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation.").  If certain documents designated as work product by the NTG Defendants were prepared prior to them having been retained by a client and prior to any future client in the action suffering an actionable injury, the Court cannot reasonably conclude that at that time litigation was more than a remote possibility.  To the contrary, prior to having been retained by a client and that client even suffering an injury, there was only a mere possibility of litigation, which does not satisfy Rule 26(b)(3)'s requirement that documents be prepared "in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-02034 JVS(JCGx)                 Date   June 12, 2018

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al.

anticipation of litigation."  The only way to determine whether the documents designated solely as work product were prepared in "anticipation of ligation" is for the documents to be reviewed in camera.  Given that the Court has already determined that it is appropriate for the Special Master to take in camera review of all 1,696 documents for the purpose of determining what documents come within the crime-fraud exception, at the same time, the Special Master should review the documents designated solely as work product to determine whether the work-product protection should even apply.  The Court therefore remands to the Special Master to determine whether the work-product protection applies to the documents designated solely as work product by the NTG Defendants.[12]

## IV. CONCLUSION

For the foregoing reasons, the Court rules as follows:

a. The Court **overrules** the NTG Defendants' objection to the Special Master's order in Docket No. 458, and the Court **overrules in part** and **sustains in part** NIC's objection to the order in Docket No. 458.  Pursuant to the crime-fraud exception, Defendants are ordered to produce the following documents: Bates Nos. NTG000239–NTG000240; NTG004897–NTG004897.002; NTG004908–NTG004910; NTG005126–NTG005127; NTG005129–NTG005131; NTG005982–NTG005983;  NTG005984– NTG005985; NTG006026–NTG006027; NTG006668; NTG014106–NTG014109; NTG014133; NTG015268–NTG015269; NTG017134–NTG017135; NTG022157–NTG022158; NTG022178; NTG041158; NTG041244–NTG041246; NTG041911; NTG041929–NTG041930; and NILON00051.  The date for actual production is deferred until the Court determines whether an ex parte hearing is appropriate and, if a hearing is held, until after the result of the ex parte hearing is determined.

a. The Court **overrules in part** and **sustains in part** NIC's objection to the

---

[12] To assist the Special Master, Defendants are directed to supply the Special Master for each of the eight cases and for each plaintiff therein the date that the attorney-client relationship commenced and the it terminated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-02034 JVS(JCGx) | Date | June 12, 2018 |
|---|---|---|---|

| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al. |
|---|---|

Special Master's order in Docket No. 597, and the Court **overrules in part** and **sustains in part** the NTG Defendants' objection to the order in Docket No. 597. Pursuant to the crime-fraud exception, Defendants are ordered to produce the following documents: Bates Nos. NTG007983; NTG011063; NTG011593–NTG011596; NTG011604–NTG011608; and NTG011988.  The date for actual production is deferred until the Court determines whether an ex parte hearing is appropriate and, if a hearing is held, until after the result of the ex parte hearing is determined.

      a.The Court **overrules** Schoonover's objection to the Special Master's order in Docket No. 625.  Pursuant to the crime-fraud exception, Schoonover is ordered to produce the following documents: Bates Nos. SCHOONOVER00082–SCHOONOVER00092.  The date for actual production is deferred until the Court determines whether an ex parte hearing is appropriate and, if a hearing is held, until after the result of the ex parte hearing is determined.

      a.The Court **remands** to the Special Master for further in camera review in accordance with this order.

## IT IS SO ORDERED.

| | : | 00 |
|---|---|---|
| Initials of Preparer | kjt | |