Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street, 32nd Floor
Los Angeles, CA 90013
213-253-9776
SPECIAL MASTER

**FILED**
CLERK, U.S. DISTRICT COURT

August 23, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: ___*Karla Tunis*___ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NATURAL-IMMUNOGENICS CORP., a
Florida  corporation,

               Plaintiff,

       v.

NEWPORT TRIAL GROUP, a California
corporation; SCOTT J. FERRELL, a California
resident; RYAN M. FERRELL, an Arizona
resident; VICTORIA C. KNOWLES, a
California resident; DAVID REID, a California
Resident; ANDREW LEE BASLOW, a
California resident; ANDREW NILON, a
California resident; SAM PFLEG, a
California resident; MATTHEW DRONKERS,
a California resident;  TAYLOR DEMULDER,
a Nevada resident; SAM SCHOONOVER,
a California resident; GIOVANNI SANDOVAL,
an Arizona resident; and DOES 1 through 10,
inclusive,

              Defendants.

Case No: 8:15 CV-02034-JVS (JCGx)

(JAMS Ref. No: 1220055347)

1

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL**

**STRATALUZ DOCUMENTS UNDER THE CRIME-FRAUD EXCEPTION**

**(DKT. NOS. 588-589)**

On February 14, 2018, the Special Master granted, in part, and denied, in part, the application of Plaintiff Natural-Immunogenics Corp. ("NIC") to file multiple documents under seal pursuant to Local Rule 79-5.2.2(b), attendant to a proposed Motion to Compel Strataluz Documents.  (Dkt. No. 587).  On February 20, 2018, Plaintiff filed a Notice of Motion and Motion to Compel Strataluz Documents (Dkt. Nos. 588-588-1), the Joint Stipulation ("Jt. Stip.") (Dkt. No. 588-2), the supporting declaration of Joshua A. Furman with numerous exhibits (some of which are redacted and others filed under seal) ("Furman Decl.") (Dkt. Nos. 588-3 through 588-97, 589), and the opposing declaration of James Sabovich with numerous exhibits (Dkt. Nos. 588-98 through 588-139).  On March 6, 2018, Plaintiff filed a supplemental memorandum ("NIC's Supp. Memo.") (Dkt. No. 594), and Defendants Scott Ferrell ("Ferrell") and David Reid ("Reid"), attorneys with Defendant Newport Trial Group ("NTG") (collectively, "Defendants"), filed a supplemental memorandum ("Defendants' Supp. Memo.") (Dkt. No. 595).

On March 12, 2018, the Special Master issued a Preliminary Order re Strataluz Documents requiring Defendants to produce for an *in camera* review randomly selected documents listed on Appendix A to the Joint Stipulation. (Dkt. No. 598).  On March 15, 2018, Plaintiff filed a Notice of Errata (Dkt. No. 602) and the supplemental declaration of Joshua Furman (Dkt. No. 602-1), attaching Defendants' corrected, revised privilege log (Dkt. No. 602-2) and revised Appendix A (Dkt. No. 602-3).  As a result, the Special Master vacated the Order issued on March 12, 2018, and issued a new Preliminary Order re Strataluz Documents requiring

Defendants to produce for an *in camera* review randomly selected documents listed on revised Appendix A. (Dkt. No. 603).[1]

Defendants did not comply with the Preliminary Order and instead filed Objections. (Dkt. No. 612).   On May 16, 2018, Judge Selna overruled Defendants' Objections to the Preliminary Order, ruling that his Order of July 31, 2017, allowing NIC to take additional discovery into Strataluz, "constitutes law of the case" and such discovery is relevant, non-frivolous, and "proportional to the needs of the case despite the fact that Strataluz litigation is not alleged as a predicate act in the SAC." (Dkt. No. 652 at 9).  Judge Selna further stated:

> While it is not clear whether the evidence will ultimately be admissible under Rule 404(b)(2), the Court will not require NIC to establish admissibility at this time.  As is expressly stated in Federal Rule of Civil Procedure 26(b), evidence need not be admissible to be discoverable.  Fed. R. Civ. P. 26(b)(1).  It is sufficient that NIC contends that the Strataluz discovery is important to show evidence of other bad acts because the ProMAXAL cases *may support NIC's RICO theory that NTG attorneys initiated fraudulent lawsuits on behalf of shill plaintiffs and even went so far as to create their own plaintiff.*  Thus, NIC has established the evidence's relevant [sic] importance to the case for purposes of <u>Zolin</u>, as well as Federal Rule of Civil Procedure 26(b)(1)'s proportionality requirement.

---

[1]   On March 12, 2018, the Special Master issued a Nunc Pro Tunc Order correcting Docket No. 603.  (Dkt. No. 604).

(Id. at 10) (emphasis added).

On May 21, 2018, Defendants filed a Notice of Lodgment of the Strataluz documents, as well as additional pages and attachments to the documents. (Dkt. No. 655).  After the Special Master conducted an *in camera* review of randomly selected documents, she issued a [Tentative] Order Granting Plaintiff's Motion to Compel Strataluz Documents under the Crime-Fraud Exception, which applied the crime-fraud exception to specific documents.  Oral argument on the [Tentative] Order was held before the Special Master on June 19, 2018.  However, the [Tentative] Order was never issued as a final order.  Rather, in light of the District Court's Order dated June 12, 2018 (Dkt. No. 659),[2] the Special Master issued a Step Two Order re Strataluz Documents requiring Defendants to produce for an *in camera* review *all* Strataluz documents listed on revised Appendix A, including those randomly selected documents previously produced.  (Dkt. No. 666).[3]  On July 16, 2018, Defendants filed a Notice of Lodging Privileged Documents for *In Camera* Review.  (Dkt. No. 678).  Some of the lodged documents contain redactions proposed by Defendants.   (Id.)

_____

[2]   On June 12, 2018, the District Court, in the context of an *in camera* review of other, non-Strataluz documents, concluded that Step Two of the crime-fraud analysis requires an *in camera* review of *all* attorney-client and work product documents that Defendants withheld as privileged "[b]ecause the Court has already found that many of the randomly selected documents" reviewed *in camera* are in furtherance of Defendants' fraudulent scheme; thus, "there is a high likelihood that at least some" of the documents that were not reviewed also will be in furtherance of Defendants' fraudulent scheme and it would be "improper to deprive NIC of this potentially probative discovery simply because these documents were not among the ones randomly selected by the Special Master" for *in camera* review.  (Dkt. 659 at 26).

[3]   Defendants aptly note that this Order has a typographical error.  Although ordering Defendants to produce all documents listed on revised Appendix A, the Order erroneously cites revised Appendix A as Dkt. No. 602-2; whereas, the correct citation for revised Appendix A is Dkt. No. 602-3.

The Special Master then conducted a Step Two *in camera* review of all Strataluz documents, and on July 27, 2018, issued a [Second Tentative] Order Granting Plaintiff's Motion to Compel Strataluz Documents under the Crime-Fraud Exception.  On August 15, 2018, oral argument on the [Second Tentative] Order was held in-person before Hon. Rosalyn Chapman, Special Master.[4]  Joshua Furman and Peter A. Arhangelsky, attorneys with the law firm Emord & Associates, appeared on behalf of NIC; David Darnell and Stephanie Sperber, attorneys with the law firm Callahan & Blaine APLC, appeared on behalf of Defendants; and Tyler Sanchez, an attorney with the law firm Ford & Diulio PC, appeared on behalf of Defendants Andrew Nilon, Sam Pfleg, Matthew Dronkers, Taylor Demulder, Sam Schoonover, and Giovanni Sandoval (collectively, "non-NTG Defendants").  On August 16, 2018, following the oral argument, Defendants filed a Notice of Lodging Documents at Hearing.  (Dkt. No. 705).

## BACKGROUND
### I.

On May 10, 2016,  NIC filed its Second Amended Complaint for Damages and Injunctive Relief ("SAC") raising a claim for malicious prosecution against Defendants NTG, Ferrell, Ryan A. Ferrell, Victoria C. Knowles, Reid, and Andrew Lee Baslow (collectively "NTG Defendants"), Andrew Nilon and Giovanni Sandoval and claims against all NTG Defendants and non-NTG Defendants for violating the Racketeering Influenced and Corrupt Organizations  Act (RICO), 18 U.S.C. §§ 1961, 1962c & 1964, by wire fraud, mail fraud, extortion, obstruction of justice, bribery and witness tampering, conspiracy to violate RICO, 18 U.S.C. §§ 1961, 1962(d)

---

[4]   The Special Master is of the opinion that Defendants should be afforded the opportunity for an in-person oral argument, pursuant to *In re Napster, Inc. Copyright Litig.*, 479 F3d. 1078, 1093 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indust. Inc. v. Carpenter,* 558 U.S. 100 (2009).

& 1964(c), and unfair competition in violation of California Unfair Competition ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.  (Dkt. No. 92).  The gravamen of NIC's RICO and UCL claims identifies two litigation schemes employed by Defendants:  a false advertising scheme and a wiretapping scheme.  (Id.) The SAC identifies four lawsuits filed in connection with the false advertising scheme and four lawsuits filed in connection with the wiretapping scheme.  (Id.)

On November 14, 2016, Plaintiff NIC filed a Statement describing its RICO claims. (Dkt. No. 201).  According to NIC, "NTG has participated in a pattern of fabricated and fraudulent litigation and threats of such litigation, involving paid plaintiffs who asserted false claims of injury and false material representations of fact to the courts and opposing counsel in NTG complaints and in affidavits, in an unlawful scheme to defraud defendants nationwide. NTG and its members have profited substantially from NTG's unlawful filings in state and federal court."  (Id. at 1-2).  As to Defendant Ferrell, NIC alleges that he "is the founding member of NTG" and, as such, he "designed, initiated and pursued fabricated and fraudulent legal claims…."  (Id. at 2).  NIC further alleges that Defendant Ferrell "has formed corporations for the sole purpose of pursuing or threatening baseless Lanham Act claims by alleging competitor standing and injury where none validly exists [and] has profited directly from the use of shell corporations to file manufactured 'competitor' suits."  (Id.)  As to Defendant Reid, NIC makes similar allegations to those against Defendant Ferrell and further alleges that Defendant Reid "has aided Scott Ferrell in the development of schemes to manufacture baseless litigation for profit."  (Id. at 3).

## II.

On October 25, 2016, Judge Selna granted NIC's motion to conduct third-party discovery with respect to Continuity Research, LLC ("Continuity"), stating:

> [NIC] … seeks discovery of correspondence allegedly in [Continuity]'s possession.  That correspondence allegedly contained NTG's instructions from David Reid and Scott Ferrell *to create corporations solely to pursue legal claims.…*
>
> The Court finds that discovery is appropriate with respect to Continuity.  The alleged correspondence contains conversations between [NTG] attorneys about *a plan to form sham corporate entities solely to pursue legal claims.… [S]uch allegations are at the heart of this case.*  If true, this evidence would support [NIC]'s claim of a pattern of RICO activity.  Therefore the Court finds that the importance of this discovery outweighs the burden on the parties and it's proportional to the case's needs.

(Dkt. No. 198) (emphasis added).

On October  27, 2016, NIC served Continuity with a Rule 45 subpoena *duces tecum* to produce communications between Defendant NTG and Continuity's former General Counsel, Josh Weiss ("Weiss"), regarding *inter alia* the formation, creation, or establishment of business entities. (Dkt. Nos. 202-1, 202-3).  On November 4, 2016, NTG Defendants provided NIC with a

privilege log identifying an email chain consisting of three emails dated January 8, 2014, all of which contain the subject line "Corporate Formation," from Defendant Ferrell to attorneys Craig Etem ("Etem") and Brian Schusterman, ("Schusterman") with copies to Defendant Reid, Saria Para (an attorney with Defendant NTG) and Weiss.  Defendants Ferrell and Reid ("Defendants") and non-party Weiss claimed attorney-client privilege and work product protection for the three emails.

On November 22, 2016, Defendants and Weiss filed a Notice of Motion and Motion to Quash Subpoena to Continuity Products LLC, which NIC opposed.  On February 6, 2017, the Special Master ordered Defendants to provide the Special Master with NTG0004939-NTG0004942 ("the Continuity Document") for an *in camera* review, and Defendants complied with the Order.  On March 6, 2017, the Special Master denied the motion to quash and applied the crime-fraud exception to the attorney-client privilege to require production of the Continuity Document.  (Dkt. No. 234).

On May 2, 2017, District Judge James V. Selna overruled Objections by Defendants and Weiss to the Special Master's Order denying their motion to quash.  (Dkt. No. 299).  In so doing, the District Court made the following pertinent findings:

> Continuity provides accounting, payroll, human resources, legal, and marketing services to various companies, primarily Obesity Research Institute, LLC ("Obesity Research").  Obesity Research markets and sells dietary supplements. Weiss served as Continuity's General Counsel.  In 2012, the Newport Trial Group

repeatedly sued Obesity Research.  As a result, Weiss retained Newport Trial Group for a $30,000 retainer so that it could no longer represent clients against Obesity Research.

On January 28, 2014, Reid, Weiss and Ferrell (among others) organized Strataluz, LLC ("Strataluz"). The articles of incorporation listed Binary Resource Management, LLC ("Binary Resource") as Strataluz's manager; Binary Resource listed International Brandery, LLC ("International Brandery") as its manager; International Brandery listed Quintogos, LLC ("Quintogos") as its manager; and Quintogos listed Joshua Miller as its manager.  All these entities were incorporated on the same day and Ferrell signed the corporate documents. Ferrell also listed himself as president in Strataluz's 2015 filing with the Nevada Secretary of State. He also signed the corporate dissolution papers.

According to Reid, Weiss, and Ferrell, Strataluz marketed and sold personal health products.  It also pursued Lanham Act claims against companies that sold dietary supplement or health products, particularly with regard to its product ProMAXAL.  The Newport Trial Group represented Strataluz in these actions. Yet in the 2018 Nip Fab case before this Court, the Newport Trial Group omitted Reid and Ferrell from its Local Rule 7.1-1 Certification and Notice of Interested Parties, as well as its Corporate Disclosure Statement.  Ferrell prepared both documents.

(Id. at 10-11) (citations omitted).

9

District Judge Selna further found that "the crime-fraud exception applies because the contextual evidence and an *in camera* review of the Document shows that these communications were more likely than not made in furtherance of a crime or fraud."  (Dkt. No. 299 at 13).  In reaching this conclusion, Judge Selna relied on three groups of evidence:  "(1) evidence of Weiss' relationship with the Newport Trial Group; (2) evidence that Strataluz served primarily as a litigation vehicle; and (3) evidence that Strataluz's owners concealed their interest[s] in the company."  (Id. at 15).  As to Strataluz, Judge Selna further noted:

> Evidence in the record suggests that Strataluz may have been designed primarily as a litigation vehicle.  Strataluz sued or threatened to sue numerous companies for alleged Lanham Act violations.  Strataluz brought these lawsuits barely a year after its formation.  These lawsuits also triggered responsive litigation alleging that Strataluz was a shell entity….
>
> * * *
>
> In addition to these pleadings, there is other evidence that Strataluz never actually sold any products.  NIC's investigation was unable to locate any information concerning Strataluz's male-enhancement product, ProMAXAL....  Weiss also admitted that the company never turned a profit and only made minimal sales.

(Id. at 16-18) (citations omitted).  In short, Judge Selna noted that "there is significant evidence in the record that [Defendants and Weiss] did not form Strataluz for legitimate business purposes."  (Id. at 19).

10

**III.**

On July 31, 2017, Judge Selna granted NIC's motion for leave to take additional discovery into Strataluz.  (Dkt. No. 414).  NIC had argued that such discovery "is relevant to the Newport Trial Group's scheme to form dummy companies for use as plaintiffs…. Thus, according to NIC, this evidence would show the Newport Trial Group's fraudulent state of mind and allow NIC to defeat the NTG Defendants' affirmative defenses." (Id. at 4).  Judge Selna agreed with NIC, noting that Strataluz "discovery appears likely to lead to the discovery of relevant evidence.  The Court has already noted evidence that Strataluz may have been designed primarily as a fraudulent litigation vehicle."  (Id. at 5).

On January 17, 2018, NIC filed an *ex parte* application for leave to file a motion to compel Strataluz documents.  (Dkt. No. 563).  NIC argued that there was good cause for the motion since "the discovery of documents related to NTG's threat and pursuit of baseless Lanham Act litigation based on Strataluz's non-existent ProMAXAL product will yield relevant evidence" supporting NIC's RICO claims.  (Dkt. No. 563-1 at 9). To support its argument, Plaintiff submitted evidence, including excerpts from the depositions of James Hardin ("Hardin") (a former NTG attorney), Weiss and Jarrod Bentley ("Bentley"), President of Strataluz.  (Dkt. Nos. 563-3, 563-9, 563-13).  NTG Defendants opposed the application, arguing *inter alia* there was no merit to Plaintiff's request since NIC now had evidence showing that Strataluz was a company with real products, including ProMaxal, a formulated product that did not reach the production and sales stage.  (Dkt. No. 564).  Defendants also submitted evidence in opposition,

including for example an excerpt from Bentley's deposition, a list of Strataluz's expenses, and a

summary of Strataluz's sales. (Dkt. Nos. 564-2, 564-8, 564-10).  On January 24, 2018, Judge

Selna found good cause to grant Plaintiff's *ex parte* application to file a motion to compel

Strataluz documents.  (Dkt. No. 566).


# IV.

On June 12, 2018, Judge Selna ruled on Objections by Plaintiff, NTG Defendants and

others to various Orders issued by the Special Master.  (Dkt. No. 659).  He concluded, in part,

that Plaintiff had made the requisite threshold showing or satisfied Step One of *Zolin*[5] under the

crime-fraud analysis for *in camera* review, finding that documents from the eight underlying

cases in the SAC "may reveal evidence to establish that the crime-fraud exception applies based

on Defendants committing or intending to commit fraud on the court."  (Dkt. No. 659 at 12).

Judge Selna further stated:  "Fraud on the court embrace[s] only that species of fraud which does

or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court.  Fraud on

the court focuses on a fraud that harm[s] the integrity of the judicial process."  (Id.) (citations and

internal quotation marks omitted).  Judge Selna concluded that "the Ninth Circuit treat[s] the

allegations of fraud on the court as the type of conduct that could support the application of the

crime-fraud exception."  (Id. at 13 (citing *In re Napster*, 479 F.3d at at 1096-98)).


After extensively analyzing the evidence that supported *in camera* review, Judge Selna

opined:

---

[5]  *United States v. Zolin*, 491 U.S. 554 (1989).

> [T]he evidence indicates that Defendants' actions were part of a vast scheme or conspiracy to manufacture litigation.   Therefore, the Court must consider Defendants' actions as a whole.  All together, the evidence indicates that the NTG Defendants had a practice of identifying companies vulnerable to lawsuit, recruiting individuals, including the non-NTG Defendants, to serve as lead plaintiffs, instructing the lead plaintiffs on exactly how to contrive actionable injuries, and holding them out to their adversaries and the courts not as individuals who acted at the direction of NTG for the purpose of filing lawsuits, but as bona fide plaintiffs with legitimate injuries.  Such conduct taken as a whole indicates that Defendants were engaged in a pattern or scheme of manufacturing litigation, which threatens to harm the integrity of the judicial process.

(Id. at 16).


## DISCUSSION

### V.

At oral argument, Defendants requested the opportunity to address the Special Master outside the presence of Plaintiff to explain why specific documents determined to come within the crime-fraud exception in the [Second Tentative] are, in fact, properly subject to the attorney-client privilege and work product doctrine.  The Special Master denied the request, finding that Judge Selna has ruled that in an adversarial process, such as this, "[t]here is no direct support for a party claiming privilege to present further argument on an *ex parte* basis with regard to assertedly privileged documents which the Court has ordered produced."  (Dkt. No. 679).  Judge

Selna's ruling is now "the law of the case. *United Steel Workers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008); *see also Kimberlin v. Quinllan*, 199 F.3d 496, 500 (D.C. Cir. 1999) ("The law-of-the-case doctrine rests on a simple premise:  'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'"  (emphasis in original) (citation omitted)).

# VI.

### *Motion to Compel:*

Plaintiff moves to compel the production under the crime-fraud exception to privilege of 364 Strataluz documents listed on revised Appendix A to the Joint Stipulation (Dkt. No. 602-3), which are documents Plaintiff selected from Defendants' corrected, revised privilege log (Dkt. No. 602-2), and requests that the Special Master conduct an *in camera* review of these documents.  In particular, Plaintiff argues that the crime-fraud exception applies to the Strataluz documents since Defendants "used the Strataluz entity to pursue federal Lanham Act litigation under fraudulent circumstances."  Jt. Stip. at 6:2-3.  The fraudulent circumstances include that:  ProMaxal was a product that never existed or was never marketed for sale; Defendants made false representations about Strataluz's damages in pleadings and demand letters; Defendants concealed their ownership of Strataluz; and Strataluz offered a license to intellectual property that never existed. Jt. Stip. at 6:4-16, 39-47; NIC's Supp. Memo. at 3.  NIC also seeks attorney fees under Rule 37 for the motion to compel.

Defendants oppose Plaintiff's motion to compel under the crime-fraud exception, arguing Plaintiff has not met its burden to apply the crime-fraud exception since there is ample evidence

that Strataluz was not a sham company; Strataluz advertised and sold real health-related products, including ProMaxal, which was a formulated product that utilized a patented substance or ingredient and which was dry-tested in an advertisement produced and paid by Strataluz.  Jt. Stip. at 48-62, 75-86.  In light of this new evidence, Defendants argue that the Court's previous ruling applying the crime-fraud exception to the Continuity Document (and Strataluz) has no bearing on the pending motion.   Id.   In fact, Defendants assert, Plaintiff no longer claims Strataluz was a sham company, but only challenges the existence of ProMaxal as a real product. For these reasons, Plaintiff has not met its burden to *apply* the crime-fraud exception to compel the production of ProMaxal documents under the *Noerr-Pennington* doctrine since it has not shown that any ProMaxal litigation was a sham.  Defendants' Supp. Memo. at 3-5. Defendants also seek attorney fees under Rule 37, arguing Plaintiff's motion is not substantially justified. Jt. Stip. at 86.

### *Crime-Fraud Analysis:*

"Notwithstanding its importance, the attorney-client privilege is not absolute.   The 'crime-fraud exception' to the privilege protects against abuse of the attorney-client relationship…."  *In re Napster,* 479 F.3d at 1090.  As the Supreme Court has observed:

> The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection – the centrality of open client and attorney communication to the proper functioning of our adversary system of justice – "ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but *to future wrongdoing*."

15

*Zolin*, 491 U.S. at 562-63 (citations omitted) (emphasis in original); *see also In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) ("Under the crime-fraud exception, communications are not privileged when the client 'consults an attorney for advice that will serve him in the commission of a fraud' or crime." (citations omitted)).

### (i) Step One under *Zolin*

"A party seeking to vitiate the attorney-client privilege under the crime-fraud exception must satisfy a two-part test." *In re Napster*, 479 F.3d at 1090; *In re Grand Jury Investigation*, 810 F.3d at 1113. "*Zolin*'s first step requires a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Christensen*, 838 F.3d 763, 800 (9th Cir. 2016) (quoting *Zolin*, 491 U.S. at 572 (citation omitted) (internal quotation marks omitted)); *In re Grand Jury Proceedings*, 87 F.3d 377, 381-83 (9th Cir. 1996).

In determining whether a sufficient showing has been made in Step One, the Court may consider "any relevant evidence, lawfully obtained that has not been adjudicated to be privileged" in determining whether to undertake an *in camera* review of allegedly privileged communications. *Zolin*, 491 U.S. at 575; *see also In re Grand Jury Investigation*, 810 F.3d at 1113 ("District courts may find a prima facie case of crime-fraud either by examining privileged material in camera or by examining independent, non-privileged evidence." (citations omitted)). "The first step in the *Zolin* analysis sets the threshold for the evidentiary showing necessary before a court can conduct *in camera* review. In establishing the standard, the [Supreme] Court

recognized that *in camera* review of documents is a much smaller intrusion on the attorney-client privilege than full disclosure[.]" *In re Grand Jury Investigation,* 974 F.2d at 1072.

The Special Master, having applied the Ninth Circuit's standards for an *in camera* review, has determined that NIC made a factual showing sufficient to support an *in camera* review of the Strataluz documents listed on revised Appendix A to determine whether the crime-fraud exception to privilege applies.  Although Defendants attempted to show that Strataluz was not a sham company since it produced, marketed and sold a few "real" health-related products, and the Special Master has weighed and considered that evidence, it is not sufficient to rebut the overwhelming evidence presented by NIC showing that Strataluz's *raison d'etre* was to bring fraudulent litigation.

In overruling Defendants' Objections to the Preliminary Order to produce Strataluz documents for *in camera* review, Judge Selna found that the Special Master did not err "in not requiring NIC to show that the sham litigation exception applies before ordering *in camera* review for purposes of evaluating whether the crime-fraud exception applies." Dkt. No. 652 at 5; *see also* id. at 7 ("Given that the Ninth Circuit has not addressed the applicability of Noerr-Pennington immunity in the context of a discovery dispute, the Court declines to impose an additional burden on NIC at the discovery stage to establish by some arbitrary standard of proof that the sham litigation exception applies.  Even if the Court were to require a minimal showing, … NIC would likely meet this standard given that it has offered plausible bases for advancing the sham exception and the Special Master has already found that there was sufficient evidence to warrant in camera review pursuant to the crime-fraud exception.").  This is now the law of the

case, *In re Grand Jury Investigation*, 668 Fed. Appx. 792 (9th Cir. 2016), and the Special Master will not revisit the <u>Noerr-Pennington</u> argument, which Defendants raise in their Supplemental Memorandum.

Nevertheless, for the purpose of judicial review, the Special Master notes that in determining to conduct an *in camera* review, she relied primarily on the following evidence and established facts:  The evidence supporting the Court's finding that the crime-fraud exception applies to the Continuity Document;  the Continuity Document itself, which is "sufficiently related to" and made "in furtherance of" Defendants' sham litigation scheme; Defendants Ferrell's and Reid's modest financial investments in Strataluz and its health-related products, and even smaller financial investments in the "development" and "dry-testing" of ProMaxal; ProMaxal was never produced or sold; Defendant Ferrell's numerous demand letters on behalf of Strataluz threatening companies with litigation under the Lanham Act related to false claims about Strataluz's products, including ProMaxal; and the problematic $1 "license agreement" between Strataluz and Harcol Research to license an "ingredient" allegedly used in ProMaxal. Whether the crime-fraud documents will be admitted into evidence at trial is not a determinative consideration, as Judge Selna has noted; as non-privileged information, the Strataluz documents to which the crime-fraud exception applies come within the scope of permissible discovery.  *See, e.g.*, Rule 26(b)(1) ("Information within th[e] scope of discovery need not be admissible in evidence to be discoverable.").

### *(ii) In Camera Review*

"Once the threshold showing is made to allow *in camera* review, courts should make the

18

decision to review in light of the amount of material they have been asked to review, the relevance of the alleged privilege material to the case, and the likelihood that *in camera* review will reveal evidence to establish the applicability of the crime-fraud exception." *In re Grand Jury Investigation,* 974 F.2d at 1073.  After determining that the burden of proof has been met in Step One, it is within the Court's "sound discretion" whether to conduct an *in camera* review:

> The decision whether to engage in *in camera* review rests in the sound discretion of the district court.  The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of the materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime fraud exception does apply.

*Zolin*, 491 U.S. at 572.

In light of the evidence supporting an *in camera* review discussed above, including the Court's previous determination that the crime-fraud exception applies to the Continuity Document, it appears likely that the Strataluz documents reviewed *in camera* will demonstrate that the crime-fraud exception applies. Thus, the Special Master initially determined to conduct an *in camera* review of approximately sixty randomly selected documents listed on revised Appendix A, although NIC asked the Court to conduct an *in camera* review of *all* 364 Strataluz documents listed on revised Appendix A or, alternatively, to require Defendants to produce an

enhanced privilege log to assist NIC in identifying specific documents for *in camera* review. Subsequently, however, in Step Two of the crime-fraud analysis (discussed below), the Special Master conducted an *in camera* of *all* 364 Strataluz documents listed on revised Appendix A. Thus, NIC's claims that all Strataluz documents must be reviewed in Step One or, alternatively, Defendants should be required to enhance the privilege log so NIC could better designate the specific documents for *in camera* are moot.  *See, e.g., Chafin v. Chafin*, 588 U.S. 165, 172 (2013) ("Federal courts may not 'decide questions that cannot affect the rights of litigants in the cases before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" (citation and internal quotation marks omitted)); *Mills v. Green*, 159 U.S. 651, 653 (1895) ("The duty of this court, and of every other judicial tribunal, is … not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.")  Stated differently, NIC has not been prejudiced by the Special Master's initial decisions to review *in camera* only randomly selected documents in Step One or, alternatively, to refuse to order Defendants to enhance the Strataluz privilege log so NIC could better identify documents for review.

### (iii) Step Two Under Zolin

Under Step Two of the *Zolin* test or crime-fraud analysis, the party seeking to vitiate the attorney-client privilege under the crime-fraud exception "must demonstrate that the attorney-client communications for which production is sought are 'sufficiently related to' and were made '*in furtherance of* [the] intended, or present, continuing illegality.'"  *In re Napster, Inc.,* 479 F.3d at 1090 (quoting *Grand Jury Proceedings,* 87 F.3d at 382-3 (internal quotation marks omitted)(emphasis added)).  This requires the Court to "examine the individual documents

themselves to determine that the specific attorney-client communications for which production is sought are 'sufficiently related to' and were made 'in furtherance of the intended, or present, continuing illegality.'" *In re Grand Jury Investigation*, 810 F.3d. at 1114 (citing *In re Napster*, 479 F.3d at 1090).

In a civil case, "the burden of proof that must be carried by a party seeking outright disclosure of attorney-client communications under the crime fraud exception should be preponderance of the evidence." *In re Napster,* 479 F.3d at 1094-95.  As the Ninth Circuit has noted, "judicious use of *in camera* review, combined with a preponderance burden for terminating privilege, strikes a better balance between the importance of the attorney-client privilege and deterrence of its abuse than a low threshold for outright disclosure." *Id.* at 1096.

The Special Master, now having conducted an *in camera* review of each and every document listed on revised Appendix A (Dkt. No. 602-3), having weighed and considered all evidence presented by the parties, and having applied the preponderance of the evidence standard of proof, concludes that the crime-fraud exception applies to **all** of the documents listed on revised Appendix A, other than those improperly designated as privileged (which are listed below), since Strataluz was formed and used by Defendants to assist them in "engag[ing] in a pattern or scheme of manufacturing litigation, which threaten[ed] to harm the integrity of the judicial process" or to commit fraud upon the court (Dkt. No. 659).  In other words, Strataluz was not a legitimate company; it "served primarily as a litigation vehicle" (Dkt. No. 299) to perpetrate fraudulent litigation in the state and federal courts.

Generally, Strataluz's documents fall into four categories:  (1) the "smoking gun" documents, which disclose directly or indirectly by reasonable inference Defendants' fraudulent litigation scheme; (2) the drafts of demand letters to companies, which raise Strataluz's fraudulent claims; (3) the drafts of summonses, cover sheets and Complaints filed against companies, which raise Strataluz's fraudulent claims; and (4) the drafts and finalized versions of Rule 998 settlement offers, non-disclosure agreements and settlement agreements with companies, which were based on Strataluz's fraudulent claims.  These documents dramatically demonstrate the magnitude of Defendants' use of Strataluz as a litigation vehicle to perpetrate fraud on the court; Defendants ran a litigation mill through Strataluz, the size of which is staggering.[6]

To facilitate judicial review, the Special Master separately lists the "smoking gun" documents, each of which is more likely than not "sufficiently related to" and "in furtherance of" Defendants' sham litigation scheme (or its cover-up), whereby Defendants formed and used Strataluz for the purposes of threatening to sue or actually suing various companies to defraud those companies based on Strataluz's baseless Lanham Act claims; thus, such evidence supports Plaintiff's causes of action under RICO.  In this regard, the Special Master does not find Defendants have good cause to redact any of the documents, as they propose, and the documents shall be produced to Plaintiff without redactions.  At oral argument, Plaintiff strongly urged the Special Master to require Defendants to produce *duplicate copies* of any documents to which the crime-fraud exception applies, and the Special Master agrees.  Thus, the vast majority of the

---

[6]   The documents listed on revised Appendix A (Dkt. No. 602-3) appear to be "the tip of the iceberg"; Strataluz's privilege log (Dkt. No. 602-2) most likely contains hundreds of additional documents to which the crime-fraud exception might apply, if the documents were reviewed *in camera*.

following documents coming within the "smoking gun" category are duplicates: NTG063502-NTG063503, NTG063580, NTG063804, NTG066276, NTG066277, NTG066354-NTG066355, NTG066373-NTG066373.001,    NTG066374-NTG066374.002,    NTG066375,    NTG066376-NTG066381, NTG066397, NTG066405, NTG066420, NTG066423-NTG066424, NTG066427-NTG066428, NTG066432-NTG066433, NTG066439-NTG066440, NTG066441-NTG066443, NTG066446-NTG066447, NTG066469, NTG0066483-NTG066484, NTG066495-NTG066496, NTG066508-NTG066510, NTG066511-NTG066513, NTG066514-NTG066516, NTG066529-NTG066531, NTG066534-NTG066536, NTG066567-NTG066568, NTG066592-NTG066593, NTG066637, NTG066654-NTG066657, NTG066731-NTG066732, NTG066739-NTG066741, NTG066792-NTG066795, NTG066796-NTG066800, NTG066801-NTG066805, NTG066825-NTG066827, NTG066835-NTG066838, NTG066846-NTG066848, NTG066995-NTG066996, NTG067118, NTG067128, NTG067133-NTG067134, NTG067462-NTG067463, NTG067467-NTG067468, NTG067481-NTG067482, NTG068854-NTG068856, NTG068902-NTG068904, NTG068918, NTG068940, NTG068975-NTG068976, NTG068996, NTG068999, NTG069008-NTG069009, NTG069021-NTG069023, NTG069034-NTG069035, NTG069055, NTG069066-NTG069067, NTG069071-NTG069072, NTG069073, NTG069093-NTG069094, NTG069119-NTG069120, NTG069121, NTG069134, NTG069643, NTG069654, NTG069690-NTG069692, NTG069693-NTG069696, NTG069725-NTG069728, NTG069729-NTG069733, NTG069808-NTG069809, NTG069822-NTG069823, NTG069836-NTG069838, NTG069839-NTG069840, NTG069841-NTG069842, NTG069911-NTG069912, NTG069913-NTG069915, NTG069923, NTG069926-NTG069929, NTG069930-NTG069934, NTG069935-NTG069937, NTG069938-NTG069939, NTG069940, NTG069953-NTG069954, NTG069967-NTG069968, NTG069975-NTG069977,     NTG069978-NTG069981,     NTG070039-NTG070039.002,     NTG070040-

NTG070040.001,      NTG070050-NTG070052,      NTG070096-NTG070100,      NTG070163,

NTG070172-NTG70173,  NTG070198,  NTG070211,  NTG070212-NTG070213,  NTG070216-

NTG070218,  NTG070219-NTG070220,  NTG070221,  NTG070222,  NTG070227-NTG070229,

NTG070310-NTG070313,  NTG070338,  NTG070345-NTG070348,  NTG070398-NTG070403,

NTG070553-NTG070554,  NTG070555-NTG070556,  NTG070560-NTG070561,  NTG070572,

NTG070575-NTG070576,  NTG070634,  NTG070643,  NTG070652-NTG070653,  NTG070661,

NTG070678,  NTG070687-NTG070688,  NTG070691-NTG070692,  NTG070698-NTG070700,

NTG070703,  NTG070707,  NTG070721-NTG070723,  NTG070726-NTG070728,  NTG070729,

NTG070745,  NTG070746-NTG070747,  NTG070748-NTG070749,  NTG070750,  NTG070760-

NTG070761,  NTG070846-NTG070847,  NTG070848-NTG070849,  NTG070871-NTG0700874,

NTG070875-NTG070876,  NTG070880-NTG070881,  NTG070903-NTG070904,  NTG070912-

NTG070913,  NTG070914-NTG070915,  NTG070973-NTG070975,  NTG070976-NTG070978,

NTG070990-NTG070992,  NTG071004-NTG071005,  NTG071056-NTG071057,  NTG071058-

NTG071059,  NTG071182,  NTG071183-NTG071184,  NTG071194,  NTG071195,  NTG071254-

NTG071256, NTG071257-NTG071258, and NTG071281-NTG071283.


      The other Strataluz documents, which would normally be protected by the attorney-client privilege or the work product doctrine if they pertained to a legitimate business or company, also come within the crime-fraud exception to privilege as fraudulent litigation and settlement documents which were integral parts of Defendants' fraudulent litigation scheme or fraud on the court. As such, each of these documents is more likely than not "sufficiently related to" and "in furtherance of" Defendants' sham litigation scheme.  Moreover, as noted above, these documents show the magnitude of Defendants' use of Strataluz as a litigation vehicle.  Nevertheless,

Defendants established that some of Strataluz's documents have already been produced to Plaintiff, and the Special agrees that documents previously produced to Plaintiff need not be produced again.[7] (Dkt. No. 705).

Finally, based on the *in camera* review, the Special Master determines that the following documents were improperly designated by Defendants as attorney-client privilege or work product; thus, they are not privileged and should be produced to Plaintiff, albeit not under the crime-fraud exception:   NTG066546-NTG066547;  NTG066569-NTG066570,  NTG066615,  NTG070064-NTG070065,      NTG070084-NTG070085,      NTG070753-NTG070754,      and NTG070762-NTG070763.

## VII.

Both parties seek reasonable expenses and attorney fees under Rule 37(a).  Plaintiff's motion to compel all Strataluz documents raised numerous grounds or theories, including the crime-fraud exception discussed herein (Dkt. Nos. 588-589).  On April 23, 2018, the Special Master denied all of Plaintiff's grounds for production of documents except for the crime-fraud exception, which was not addressed. (Dkt. No. 463).  The Order herein addresses Plaintiff's motion to compel under the crime-fraud exception, granting the motion.  Thus, Plaintiff's motion

---

[7]   The following documents are excluded from this Order since Defendants have previously produced them to Plaintiff:   NTG066376-NTG066382;     NTG066518-NTG066528;   NTG066618-NTG066636;   NTG066799-NTG066800;   NTG066805;   NTG066939-NTG066940;   NTG066950-NTG066986;   NTG067057-NTG067071; NTG069157-NTG069193;  NTG069696;  NTG069733;  NTG069956-NTG069966;  NTG070066;  NTG070070-NTG070080;   NTG070081-NTG070083;   NTG070102-NTG070140;   NTG070246;   NTG070247-NTG070256; NTG070313;  NTG070341;  NTG070348;  NTG070363-NTG070376;  NTG070567;  NTG070776;  NTG070882-NTG070895, and NTG071195.

to compel Stratluz documents has been denied, in part, and granted, in part.

When a discovery motion is granted, in part, as here, Rule 37(a) provides that the court "may, after giving an opportunity to be heard, apportion the reasonable expenses" for the motion. Fed.R.Civ.P. 35(a)(5)(C).  Although Plaintiff's motion to compel is granted under the crime-fraud exception, it was denied on all other grounds.  Exercising her discretion under Rule 37(a)(5)(C), the Special Master finds no reason to apportion the reasonable expenses. Thus, the parties' requests for reasonable expenses **are denied.**

## ORDER

1.  Plaintiff's Motion to Compel Defendants to produce Strataluz documents under the crime-fraud exception to the attorney-client privilege and work product doctrine **is granted** as to all Strataluz documents listed on revised Appendix A (Dkt. No. 602-3), other than those documents identified herein as non-privileged.  Defendants shall produce to Plaintiff without redactions all Strataluz documents listed on revised Appendix A (Dkt. No. 602-3), except for the documents identified in footnote 7, no later than ten (10) days from the entry on the docket of this Order.

2.  The parties' requests for reasonable expenses under Rule 37(a) **are denied.**

3.  The Case Manager shall file and serve the Order on the parties and the District Court.

Date:   August 23, 2018                 By: _Rosalyn M. Chapman_____
1220055347.53B                              Hon. Rosalyn Chapman (Ret.),
                                            Special Master