**CALLAHAN & BLAINE, APLC**
Edward Susolik (SBN 151081)
Esusolik@callahan-law.com
David J. Darnell (SBN 210166)
Ddarnell@callahan-law.com
James M. Sabovich (SBN 218488)
Jsabovich@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Defendants NEWPORT TRIAL GROUP, and SCOTT J. FERRELL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>Defendants. | CASE NO. 8:15-cv-02034-JVS (JCG)<br><br>JAMS No. 1220055347<br><br>Special Master: Hon. Rosalyn Chapman<br>Judge: Hon. James V. Selna<br><br>**DEFENDANTS' REPLY IN SUPPORT OF LIMITED OBJECTIONS TO THE SPECIAL MASTER'S ORDER IN DOCKET NO. 770 (CORRECTED ORDER RE IMPLIED WAIVER DOCUMENTS FOLLOWING REMAND)**<br><br>Date: August 26, 2019<br>Time: 1:30 p.m.<br>Courtroom: 10C<br>Judge: James V. Selna |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................. 1

II. PROCEDURAL HISTORY ............................................................................. 2

III. BECAUSE THE OPPOSITION DOES NOT ADDRESS THE ISSUES RAISED IN THE OBJECTION, THOSE ISSUES SHOULD BE TREATED AS CONCEDED ............................................................................ 3

IV. NIC'S OPPOSITION LACKS MERIT ............................................................ 4

    A. NIC's Argument for an Unbounded Application of Implied Waiver Has Already Been Rejected and Is Contrary to this Court's Order ............................................................................................. 5

    B. This Court Already Rejected NIC's Request for Documents Beyond the Three CIPA Cases ................................................................. 8

    C. NIC's Crime-Fraud Argument is Without Merit ................................... 9

V. CONCLUSION ............................................................................................... 12

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- i -
REPLY IN SUPPORT OF LIMITED OBJECTIONS TO SPECIAL MASTER'S ORDER

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Angeles v. US Airways, Inc.*,
  Case No. C 12-05860 CRB, 2013 U.S. Dist. LEXIS 22423 (N.D. Cal. Feb. 19, 2013) ................................................................................. 4, 5

*In re BankAmerica Corp. Sec. Litig.*,
  270 F.3d 639 (8th Cir. 2001) ................................................................. 11

*Bittaker v. Woodford*,
  331 F.3d 715 (9th Cir. 2003) ............................................................ 2, 6, 9

*Investor Prot. Corp. v. Vigman*,
  74 F.3d 932 (9th Cir. 1996) .................................................................. 8, 9

*Kimberlin v. Quinllan*,
  199 F.3d 496 (D.C. Cir. 1999) .............................................................. 7, 9

*Laser Indus. v. Reliant Techs.*,
  167 F.R.D. 417 (N.D. Cal. 1996) ............................................................. 10

*In re Online DVD Rental Antitrust Litig.*,
  M 09-2029 PJH, 2011 U.S. Dist. LEXIS 150312, 2011 WL 5883772 (N.D. Cal. Nov. 23, 2011) ........................................................................ 4

*Rambus Inc. v. Samsung Elecs. Co.*,
  No. C-05-00334 RMW, 2007 WL 3444376 (N.D. Cal. Nov. 13, 2007) .......................................................................................................... 7

*Roberts v. Legacy Meridian Park Hosp. Inc.*,
  97 F. Supp. 3d 1245 (D. Or. 2015) ........................................................... 7

*Scognamillo v. Credit Suisse First Boston*,
  254 F. App'x 669 (9th Cir. 2007) .............................................................. 4

*United States v. Mett*,
  178 F.3d 1058 (9th Cir. 1999) ................................................................ 10

*United States v. Zolin*,
  492 US 554 (1989) ................................................................... 2, 10, 11

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

**Statutes**

Fed. R. Civ. Proc. 53(f)(2) ................................................................................... 9

Defendants jointly submit their Reply in Support of their Limited Objections to the Special Master's Order in Docket No. 770 (hereinafter, "Objection").

## I. INTRODUCTION

The NTG Defendants and Non-NTG Defendants filed a limited joint objection to the Special Master's January 15, 2019 Order regarding implied waiver. (Dkt. 770). In particular, the Special Master's Order improperly denied modest redactions of privileged information (Dkt. 771 at 4-5), ordered the production of emails discussing cases not at issue (*id.* at 5-8), and directed the production of documents that did not discuss tester activity in any way (*id.* at 8-10). Accordingly, Defendants respectfully requested that the Court review these few documents *in camera* to correct the Special Master's errors.

Defendants' Objections were based entirely on the content of the correspondent documents. *See generally* Dkt. 771. Because NIC has not seen those documents, it should have little to say. Despite this obvious truth, NIC filed an opposition that is twice the length of Defendants' Objection and that is lacking in both merit and meaningful information for the Court. Indeed, NIC's Opposition has little relationship to the Objection. Mostly, NIC inveighs against what it terms the "tester defense," argues that it is entitled to "broad discovery," and then advocates for a "crime-fraud" review, even though that was not even at issue in the Order. (*See generally* Dkt. 822.) On the merits, NIC takes the extreme position that a waiver order expressly limited to documents "regarding tester activity in the three relevant underlying cases" (Dkt. 753 at 5) actually requires production of documents that "do not evidence 'tester activity.'" (Dkt. 822 at 4.) According to NIC, this is so because documents that do not relate to a tester program somehow constitute "evidence that contradicts the Defendants 'tester' defense." *Id.* But the production order here is based solely on implied waiver, and this Court has already rejected NIC's argument in favor of a broader production order. "While NIC may desire to present arguments about NTG's use or misuse of testers more generally, and while

that information is relevant to any tester defense, that information is not vital to NIC's ability to rebut Defendants' tester defense in this case."  (Dkt. 753 at 5.)

Next, NIC argues that "many of the communications reviewed during the Special Master's review on remand are also subject to the crime-fraud exception and should be produced on that independent basis."  (Dkt. 822 at 5.)  But again, crime-fraud was not even at issue in this Court's Clarification Order or the Special Master's corresponding review.  (Dkt. 753.)  As such, there has been no showing that would entitle NIC to crime-fraud review under *United States v. Zolin*, 492 US 554 (1989).  But even if there was, NIC may not raise a new objection to the Special Master's Order for the first time in an opposition.

Ultimately, NIC's opposition barely addresses the Objection and offers little of relevance.  Accordingly, Defendants' Objection should be sustained.

## II.   PROCEDURAL HISTORY

On October 11, 2018, this Court issued an Order on Defendants' Request for Clarification Regarding the Scope of the Court's Implied Waiver Finding in Docket No. 659.  (*See* Dkt. 753.)  In that Clarification Order, the Court determined that only communications related to the tester activity of Andrew Nilon (regarding Chromadex), Sam Schoonover (regarding Himalaya Drug Company), and Taylor Demulder (regarding Carter-Reed) would be subject to implied waiver.  (*Id*. at 7-8 (setting forth three categories of documents).)

The Clarification Order was premised on Ninth Circuit law that requires courts to "'closely tailor the scope of the [implied] waiver to the needs of the opposing party.'"  (*Id*. at 4 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (en banc)).)  Consistent with this, this Court specifically rejected NIC's request for discovery into "NTG's use or misuse of testers more generally" because "that information is not vital to NIC's ability to rebut Defendants' tester defense in this case."  (*Id*. at 5; *see also id*. at 6 ("NIC can argue against the tester theory effectively without access to all communications relevant to the NTG Defendants'

tester program unrelated to Chromadex, Himalaya Drug, and Carter-Reed, as NIC requests.").)

Based on Ninth Circuit law, the Court also granted Defendants' request to "redact portions of documents or communications containing information that falls outside the scope of the implied waiver." (*Id*. at 6; *see id*. at 7 n.2 ("redaction must comply with the scope of the implied waiver").) In that regard, the Court ordered the Special Master to conduct an *in camera* review of the documents affected by the implied waiver to ensure Defendants' proposed redactions were consistent with this Court's Clarification Order. (*Id*. at 7-8.)

On October 28, 2018, Defendants provided the Special Master with the documents they believed would be subject to implied waiver with proposed redactions. (*See* Dkts. 755 and 756.) The Special Master then ordered Defendants to lodge additional documents and provide proposed redactions for review. (*See* Dkt. 770 at 5:11-6:6.) On January 15, 2019, the Special Master issued an Order confirming the production of the 26 documents Defendants had proposed, but also compelling Defendants to produce additional documents. (Dkt. 770 at 7:11-10:18.)

On March 19, 2019, this Court issued its Order on NTG's motion for reconsideration of certain discovery orders based on proportionality. (Dkt. 788.)

### III. **BECAUSE THE OPPOSITION DOES NOT ADDRESS THE ISSUES RAISED IN THE OBJECTION, THOSE ISSUES SHOULD BE TREATED AS CONCEDED**

Defendants filed a focused Objection limited to discrete issues with specific, identified documents. (*See generally* Dkt. 771.) Essentially, the Special Master's Order incorrectly found waiver over a few documents, or portions thereof, that did not relate to the tester issue in the three specified cases. (*Id*.) The argument section is specific to those cited documents. (*Id.* at 5-10.) NIC's opposition has almost no relationship to the Objection. It is twice the length of the Objection but does not

contain even a single citation to one of the documents at issue.  (*See generally* Dkt. 822.)

Instead, it consists of a general diatribe against the "tester" defense, general argument on the "broad" scope of waiver, and an improper request for an *impromptu* crime-fraud review.[1]  In other words, NIC did not address the actual Objection. Accordingly, the Objection should be treated as unopposed.  *Angeles v. US Airways, Inc.*, Case No. C 12-05860 CRB, 2013 U.S. Dist. LEXIS 22423, *12 (N.D. Cal. Feb. 19, 2013) ("Plaintiffs, however, have failed to respond to the argument . . .  The failure to respond amounts to a concession."); *Scognamillo v. Credit Suisse First Boston*, 254 F. App'x 669 (9th Cir. 2007) (failure to respond to argument at oral argument was a concession); *In re Online DVD Rental Antitrust Litig.*, M 09-2029 PJH, 2011 U.S. Dist. LEXIS 150312, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011) (absent unusual circumstances, failure to respond to argument on merits "viewed as grounds for waiver or concession of the argument").

## IV. <u>NIC'S OPPOSITION LACKS MERIT</u>

Instead of addressing the actual Objection, NIC's Opposition offers two broad arguments.  First, NIC misstates this Court's Clarification Order, claiming it held that "the scope of tester waiver broadly covered all documents or communications germane to 'NTG Defendants' tester activity' in three cases . . . ."  (Dkt. 822 at 6.) From that, NIC argues generally that the waiver is not only "broad," it is virtually unlimited.  According to NIC, it "encompasses every document or communication relevant to the clients or their claims."  (*Id.* at 822 at 9-13.)  In other words, NIC now advocates that it is entitled to every privileged document in the three cases. Even that understates the breadth of NIC's position since it also contends that it is

---

[1] The only position that NIC addresses is the finding of waiver related to administrative documents. (Dkt. 822 at 15.)  Even there, NIC misstates the issue. Defendants did not argue that there was an "administrative" exception to waiver. Rather, the point is that these documents "have nothing to do with their tester activity" and so do not come within the scope of this Court's implied waiver finding. (Dkt. 771 at 9-10.)

- 4 -

REPLY IN SUPPORT OF LIMITED OBJECTIONS TO SPECIAL MASTER'S ORDER

entitled to information regarding other cases as "contextual information" and general strategy information so it can explore "NTG defendants' mindset," *id.* at 14. Second, NIC argues for a crime-fraud review even though crime-fraud was not even at issue and no showing has been made.

### A. NIC's Argument for an Unbounded Application of Implied Waiver Has Already Been Rejected and Is Contrary to this Court's Order

NIC's Opposition underlies a fundamental difficulty with this case and why it must be set for trial as soon as possible: NIC is intent on endless discovery and on trying its case through discovery motions. This Court has already made clear that "the circumstances of this case have changed vis-à-vis the disproportionate amount of judicial resources that this case has and will continue to consume," and that "[t]he burdens imposed by this litigation are not justified by the amount in controversy." (Dkt. 788 at 12.) Yet in response to a limited objection over a few documents, and in circumstances where the Court specified the scope of its "narrow" waiver finding, NIC is arguing for waiver over every document from three of the underlying cases. Respectfully, until this Court sets a trial date, NIC will continue to drain party and judicial resources with endless and expansive discovery advocacy that does nothing to resolve this matter.

As for NIC's position that implied waiver covers everything in the three subject cases and more, it is directly contrary to this Court's Clarification Order and controlling Ninth Circuit authority. NIC represents that this Court held "that the scope of tester waiver broadly covered all documents or communications germane to 'NTG Defendants' tester activity' in three cases, including the Chromadex, Himalaya Drug, and Carter-Reed cases." (Dkt. 822 at 6.) Demonstrating the *reduction ad absurdum* nature of its own position, NIC posits that since the cases "were purportedly based on 'tester activity,'" this Court actually found waiver over every document in those cases. (*Id.*)

That is not a rational interpretation of this Court's Clarification Order. First, this Court's Clarification Order carefully delineated the documents that were subject to waiver:

1. All communications between the NTG Defendants and its tester plaintiffs regarding the NTG Defendants' tester activity in Chromadex, Himalaya Drug, and Carter-Reed, including but not limited to instructions to testers and information relevant to the testers' reasons for making calls giving rise to CIPA injuries, regardless of when the communication occurred;

2. All internal communications between the NTG Defendants or the NTG Defendants and their agents regarding the NTG Defendants' tester activity in Chromadex, Himalaya Drug, and Carter-Reed, including but not limited to instructions to testers and information relevant to the testers' reasons for making calls giving rise to CIPA injuries, regardless of when the communication occurred; and

3. Any communications or documents containing the word "tester" in Chromadex, Himalaya Drug, and Carter-Reed.

(*Id.* at 753 at 8.)

This Court's Clarification Order did not, as NIC claims, find "broad" waiver over any document that NIC believes has some relevance to the tester issue. Rather, the Court was clear that, consistent with Ninth Circuit law, waiver was "[u]nder the narrow 'fairness' analysis outlined in Bittaker," and "the Court must closely tailor the scope of the implied waiver." (Dkt. 753 at 6.) As if this was not clear enough, the Court both specifically rejected NIC's request for a broader waiver and expressly affirmed that it was not finding waiver over all materials that NIC believes "relevant" to the tester issue:

> While NIC may desire to present arguments about NTG's use or misuse of testers more generally, and while that information is relevant to any tester defense, that information is not vital to NIC's ability to rebut Defendants' tester defense in this case.

(Dkt. 753 at 5; *see also id*. at 5-6 (*quoting Roberts v. Legacy Meridian Park Hosp. Inc.*, 97 F. Supp. 3d 1245, 1254 (D. Or. 2015) for the proposition that "vital implies a level of probative value significantly greater than mere relevance"); *id*. at 4 (*quoting Rambus Inc. v. Samsung Elecs. Co*., No. C-05-00334 RMW, 2007 WL 3444376, at \*6 (N.D. Cal. Nov. 13, 2007) for the proposition that "[f]airness, not relevance, is the touchstone of the scope of the implied waiver doctrine.").)

Likewise, every reference in this Court's Clarification Order to documents that are subject to the waiver is precise; they are not loose and expansive like those now proposed by NIC. In each instance, the Court made clear that waiver extended only to documents "regarding" tester activity. (Dkt. 753 at 5 ("The Court finds that the implied waiver entitles NIC to discovery into any communications . . . ***regarding tester activity*** in the three relevant underlying cases.") (emphasis added); 8 ("All internal communications between the NTG Defendants or the NTG Defendants and their agents ***regarding the NTG Defendants' tester activity*** . . . .") (emphasis added).

NIC requested, and this Court did not grant, a more extensive waiver. In responding to Defendants' request for clarification, NIC did not take the extreme position it does now that waiver extends to "every document or communication relevant to the clients or their claims[.]" (*Compare* Dkt. 822 at 8 *with* Dkt. 701 at 5.) However, NIC did phrase its requests more broadly. Specifically, NIC requested communications "regarding CIPA litigation," Dkt. 701 at 5. Thus, NIC did not limit its request to documents that themselves addressed tester activity. (*Id.*)

This Court, however, restricted the scope of waiver to documents "regarding" tester activity. (Dkt. 753 at 8.) This is now the law of the case. *Kimberlin v.*

*Quinllan*, 199 F.3d 496, 500 (D.C. Cir. 1999) ("The law-of-the-case doctrine rests on a simple premise: 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'" (emphasis in original) (citation omitted)). NIC is not at liberty to make up "successively different legal . . . theories that could have been presented in a prior request for review[.]" *Investor Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996). Because NIC requested a broad waiver finding as to all communications "regarding CIPA litigation," but this Court ordered only waiver as to documents "regarding" tester activity, NIC's current position is barred by the law of the case doctrine.

Accordingly, NIC's position that there has been a "broad" waiver over "every document or communication relevant to the clients or their claims" is without merit.

### B. **This Court Already Rejected NIC's Request for Documents Beyond the Three CIPA Cases**

Defendants' Objection pointed out that the Special Master improperly denied a modest request to redact information regarding other matters. (Dkt. 771 at 5-6.) NIC responds with the position that other cases might provide "critical context" or otherwise "shed[] light on the Defendants' process" in cases. (Dkt. 822 at 13-14.)

This Court already resolved that issue against NIC. NIC argued in response to Defendants' request for clarification that "NIC must be permitted to take all relevant discovery concerning the Defendants' position that it operated a tester program in CIPA cases. That discovery would not be limited to the three cases in the SAC." (Dkt. 701 at 8; Dkt. 753 at 5 ("Thus, NIC argues, information vital to its ability to rebut the tester defense is not limited to Chromadex, Himalaya Drug, and Carter-Reed; rather, NIC should be permitted to take all relevant discovery concerning Defendants' position that it operated a tester program in CIPA cases.").) This Court expressly rejected NIC's request for waiver beyond the three cases. Again:

> [T]he scope of discovery under the implied waiver is limited to NIC's use of testers in <u>Chromadex</u>, <u>Himalaya Drug</u>, and <u>Carter-Reed</u>. While NIC may desire to present arguments about NTG's use or misuse of testers more generally, and while that information is relevant to any tester defense, that information is not vital to NIC's ability to rebut Defendants' tester defense in this case. Under the narrow "fairness" analysis outlined in <u>Bittaker</u>, the Court must closely tailor the scope of the implied waiver . . . Defendants claim only that Nilon, Schoonover, and Demulder were testers; thus, whether those parties were legitimate testers is the only information Defendants have put at issue, and the only information vital to NIC's rebuttal of the tester theory.

(Dkt. 753 at 6) (internal citations omitted).

NIC does not address this Court's ruling, nor does it explain how it can receive information on other cases when this Court expressly ruled it could not. (*See generally* Dkt. 822.) As with NIC's other positions, NIC's position that waiver extends to other cases is barred by the law of the case doctrine. *Kimberlin*, 199 F.3d 496 at 500; *Investor Prot. Corp.*, 74 F.3d at 937.

Hence, NIC's position that Defendants may not redact emails for content relating to other cases is without merit.

### C.  NIC's Crime-Fraud Argument is Without Merit

Lastly, NIC claims that the "Special Master apparently reviewed documents that would have been subject to the crime-fraud exception had they been reviewed in the crime-fraud proceeding," and that "crime-fraud documents should still be compelled under the crime-fraud exception . . . ." (Dkt. 822 at 15-17.) NIC's request is improper and contrary to this Court's orders and Ninth Circuit precedent.

First, it is improper for NIC to request this relief in opposition to an Objection to a Special Master's Order. Fed. R. Civ. Proc. 53(f)(2). As this Court has already

ruled, a party may not raise its own objections to the Special Master's Order in an opposition to an objection. (Dkt. 356 at 2.) Moreover, the entire relevant proceedings dealt only with implied waiver. Crime-fraud was <u>not</u> an issue in those proceedings. Instead, this Court only directed the Special Master to "conduct an in camera review of the documents and communications affected by the implied waiver." (Dkt. No. 753.) The Special Master did so. It would have been error for the Special Master to go beyond this Court's instructions and conduct a crime-fraud review. Since the Special Master did not err in failing to conduct a crime-fraud review (which this Court did not order and which NIC never requested), there is no error and NIC's Objection should be overruled.

Second, NIC has made no showing that would entitle it to a crime-fraud review under *Zolin*. As this Court explained:

> To obtain an in camera review, the party seeking to vitiate the privilege must show "a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Once the party satisfies the threshold showing to obtain an in camera review, "the decision whether to engage in in camera review rests in the sound discretion of the district court."

(Dkt. 788 at 11) (citations omitted).

Exceptions to the attorney-client privilege are not to be found lightly since "[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999). Consistent with this, the district court in *Laser Indus. v. Reliant Techs.*, 167 F.R.D. 417, 430-31 (N.D. Cal. 1996) explained that if "it would have been rational . . . for the trier of fact to draw either inference," then the crime-fraud exception does not apply. Moreover, "[a] moving party does not satisfy [its] threshold burden merely by alleging that a fraud occurred

1 and asserting that disclosure of any privileged communications may help prove the
2 fraud. There must be a *specific* showing that a *particular* document or
3 communication was made *in furtherance* of the client's alleged crime or fraud." *In*
4 *re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642 (8th Cir. 2001) (emphasis
5 added).

6 Here, there has been no showing of crime-fraud with respect to the documents
7 at issue. Indeed, the concern was the entirely separate matter of implied waiver by
8 raising what NIC refers to as the "tester defense." (*See generally* Objection.) NIC
9 does not cite the *Zolin* standard and does not suggest that it has met that standard.
10 (*See generally* Dkt. 822.) Nothing in the law of the case or crime-fraud precedent
11 allows a party to just add on a crime-fraud review like an à la carte menu item
12 whenever a Court conducts *in camera* review. In addition, other events and rulings
13 by this Court warrant consideration. After all, this Court has made clear that "the
14 circumstances of this case have changed vis-à-vis the disproportionate amount of
15 judicial resources that this case has and will continue to consume," and that "[t]he
16 burdens imposed by this litigation are not justified by the amount in controversy."
17 (Dkt. 788 at 12.)

18 Accordingly, even if there were some legal authority for seeking crime-fraud
19 review of documents that are potentially before the Court for an entirely different
20 purpose – and there is not – it would not be justified here. As this Court has already
21 found, discovery and discovery motions in this matter have consumed, and continue
22 to consume, a disproportionate amount of resources. (Dkt. 788.) Opening up a
23 completely new area of crime-fraud discovery when no requisite and proportional
24 showing has been made is not in keeping with Ninth Circuit crime-fraud
25 jurisprudence or this Court's own prior orders.

26
27
28

## V. CONCLUSION

For these reasons and those set forth in the moving papers, Defendants' Objection should be sustained.

Dated: August 12, 2019                **CALLAHAN & BLAINE, APLC**

By: /s/ *James M. Sabovich*
David J. Darnell
James M. Sabovich
Attorneys for Defendants Newport Trial Group, and Scott J. Ferrell

Dated: August 12, 2019                BREMER WHYTE BROWN & O'MEARA, LLP

By: /s/ *Kyle A. Riddles*
Kyle A. Riddles
Attorneys for Defendants Ryan Ferrell, Victoria Knowles, David Reid, and Andrew Baslow

Dated: August 12, 2019                FORD & DIULIO, PC

By: /s/ *Brendan M. Ford*
Brendan M. Ford
Attorneys for Defendants Andrew Nilon, Sam Schoonover, Sam Pfleg, Taylor Demulder, Matthew Dronkers, and Giovanni Sandoval

Attestation pursuant to Local Rule 5-4.3.4(a)(2)(i) regarding signatures: I, James M. Sabovich, attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 12, 2019                **CALLAHAN & BLAINE, APLC**

By: /s/ *James M. Sabovich*
David J. Darnell
James M. Sabovich
Attorneys for Defendants Newport Trial Group, and Scott J. Ferrell