1  Peter A. Arhangelsky, Esq. (SBN 291325)
   parhangelsky@emord.com
2  Joshua S. Furman, Esq. (pro hac vice)
   jfurman@emord.com
3  Eric J. Awerbuch, Esq. (pro hac vice)
   eawerbuch@emord.com
4  Emord & Associates, P.C.
   2730 S. Val Vista Drive, Bldg 6, Ste 133
5  Gilbert, AZ 85295
   Phone: (602) 388-8899
6  Fax: (602) 393-4361
7  *Attorneys for Plaintiff*

8

9              **IN THE UNITED STATES DISTRICT COURT**

10            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12  NATURAL-IMMUNOGENICS, a          Case No.: 8:15-cv-02034-JVS (JCG)
    Florida corporation,
13                                    **LOCAL RULE 37 JOINT**
                                      **STIPULATION RE: PLAINTIFF'S**
14                Plaintiff,          **MOTION FOR LEAVE TO TAKE**
          v.                          **DISCOVERY FOLLOWING**
15                                    **RESOLUTION OF PRIVILEGE**
                                      **ISSUES**
16  NEWPORT TRIAL GROUP, et al.,
17                                    Special Master:  Rosalyn Chapman
                  Defendants.         Judge:  James V. Selna
18

19

20

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26

27

28

---

# **TABLE OF CONTENTS**

I.    INTRODUCTION .............................................................................. 1

II.   PLAINTIFF'S POSITION ................................................................ 1

  A. FACTS AND PROCEDURAL HISTORY ................................... 3

  B. LEGAL STANDARD ................................................................... 6

  C. ARGUMENT ................................................................................ 8

    1. NIC Has Good Cause to Pursue Discovery that Flows from the Court's Privilege Rulings ................................................. 8

    2. Recalled Depositions of Schoonover, Nilon, Pfleg, Demulder, and Andrew Baslow ........................................................... 10

    3. Deposition and Document Subpoena to Kirtland & Packard ................. 15

    4. Deposition of Wynn Ferrell .................................................. 17

    5. Deposition of Daniel Bobba .................................................. 19

    6. Leave to File a Crime-Fraud Step Two Motion Regarding a Limited Number of Documents Not Yet Reviewed ................................ 20

    7. The Discovery Sought is Proportional to the Needs of the Case .................................................................................. 26

  D. NIC Attempted in Good Faith to Eliminate Issues in Dispute Through the Meet and Confer Process ........................................ 29

  E. CONCLUSION .......................................................................... 30

III.  DEFENDANTS' POSITION ......................................................... 31

  A. PROCEDURAL BACKGROUND .............................................. 32

    1. NIC's Prior Motion for Relief re: Completed Depositions .................... 32

    2. NIC's Requests for "New" Discovery .................................... 34

  B. ANALYSIS ................................................................................ 35

    1. NIC's Request for Reopened Depositions Fails Because NIC Has Not Specified Any Questions, Topics or Subjects that Need to be Revisited or Answered .......................................... 38

2.  NIC Has Not Met its Burden to Reopening the Five
    Depositions .......................................................................... 42

3.  NIC Has Not Shown Good Cause for Discovery from Kirtland
    & Packard ............................................................................ 46

4.  NIC Has Not Shown Good Cause to Depose Wynn Ferrell ................... 49

5.  NIC Has Not Shown Good Cause to Depose Daniel Bobba................... 50

6.  NIC's Request for Leave to File Yet Another Crime-Fraud
    Motion Should be Denied ........................................................ 51

7.  The Discovery NIC Seeks is Disproportionate to the Amount
    in Controversy and Importance of the Issues........................... 53

C.  CONCLUSION ......................................................................... 57

## I.   INTRODUCTION

Pursuant to Local Rule -37, all parties submit this joint stipulation regarding NIC's Motion for Leave to Take Discovery Following the Court's Resolution of Privilege Issues.  NIC sent a Local Rule 37-1 meet and confer letter to all Defendants on September 5, 2019.  *See* Exhibit A.  The parties then held a telephonic meet and confer call on September 16, 2019.  Declaration of Joshua Furman ("JSF Decl.") at ¶ 4.  The Parties were unable to resolve the issues presented in this joint stipulation.  NIC served its portion of this joint stipulation on all Defendants on September 30, 2019.  Defendants returned their portion of the joint stipulation on October 11, 2019.

## II.   PLAINTIFF'S POSITION

Plaintiff Natural-Immunogenics Corp. ("NIC") hereby moves for leave to take discovery reasonably flowing from the Court's resolution of primary privilege issues in this case.  *See e.g.,* Dkt. 659 (preliminary order resolving privilege issues); Dkt. 820 (second order resolving privilege issues); Dkt. 785 (work product order) (collectively, the "Privilege Orders").  NIC advances this Motion on an incomplete record.  Although the Court has resolved a substantial number of privilege issues in dispute, the Court must still issue a final order regarding Strataluz work product documents, and documents germane to the implied "tester" waiver.  *See* Dkt. 820 at 30, 32 (outlining further proceedings re Strataluz work product); Dkt. 839 (Minutes of Hearing re Implied Waiver Objections).[1]  NIC files

---

[1] The Court held oral argument on the "tester" waiver on August 26, 2019.  Dkt. 839.  The Court has not yet issued a final order.  Although resolution of that issue is necessary before supplemental discovery may begin, NIC hereby advances this motion now to expedite the proceedings.

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

1

this Motion requesting leave to take supplemental discovery based on the incomplete record currently in NIC's possession.  However, because NIC expects to receive additional information in the forthcoming weeks, NIC reserves the right to file a supplemental motion for leave following the Court's resolution of the outstanding privilege issues.

On August 26, 2019, Judge Selna stated from the bench that NIC may take discovery that "legitimately flow[s] from the production of the Court's [privilege] order[s]."  Exhibit B (Aug. 26, 2019 Transcript) at Tr. P. 11:22-23.  Counsel for Defendants conceded that NIC should be permitted to take such discovery upon application for leave.  *Id.* at 11:24-25.  The Court set a December 3, 2019 Trial Setting Conference, at which the Court will evaluate what post-privilege discovery has taken place and what discovery still remains.  *Id.* at 12:23—13:6.  NIC therefore moves for leave to take the following discovery which "legitimately flows" from the Court's production orders:

1.  Recalled Deposition of Andrew Baslow;

2.  Recalled Deposition of Andrew Nilon;

3.  Recalled Deposition of Sam Schoonover;

4.  Recalled Deposition of Taylor Demulder;

5.  Deposition of Kirtland & Packard's 30(b)(6) Designee;

6.  Document subpoena to Kirtland & Packard;

7.  Deposition of Wynn Ferrell;

8.  Deposition of Daniel Bobba; and

9.  Supplemental Motion to Compel Documents (21 pages of documents) under Step Two of the Crime-Fraud Exception.

For the reasons explained herein, all of that discovery flows from or through the privilege orders and may be pursued by NIC at this stage. The Court has already held that NIC may take the depositions of NTG and its principals. Dkt. 447 at 3-4. The additional discovery events listed above are necessary to prepare this case for dispositive motions and trial. Following resolution of key privilege issues, NIC now has access to substantially more information, and can explore entirely new areas of inquiry that were previously shuttered from NIC based on the defendants' assertion of privilege.

## A. FACTS AND PROCEDURAL HISTORY

This case involves racketeering activity by licensed attorneys using recruited clients to file fraudulent legal demands and claims based on contrived injuries. *See* Dkt. 92. Because the subject matter of this case involves litigation, and explores the relationship between lawyer and purported client, privilege issues have been central to nearly all disputes in this case. At the outset, NIC informed the Court that privilege issues would be a bottleneck in discovery, and that resolution of those privilege issues was necessary before NIC could complete discovery. Dkt. 90 at 8-10. NIC's Rule 26(f) report explained that NIC would bring motions to pierce privilege under the crime-fraud exception. *Id.* NIC explained that much of the most probative evidence would be found in documents subject to privilege claims. *Id.*

Immediately when discovery opened, NIC began pursuing party and non-party discovery with the goal of presenting all non-privileged evidence available in support of NIC's "Omnibus" Motion to Compel privileged documents. The Special Master noted that NIC's early discovery efforts were exhaustive but nonetheless proportional to the needs of the case. Dkt. 241 at 16-17, 19. NIC's discovery efforts in 2016 through 2017 were met by privilege objections that

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

3

1   impeded the discovery process.  *See* Dkt. 447 at 4 (noting that NTG repeatedly

2   opposed NIC's discovery through privilege objections).  It became clear, that NIC

3   would be unable to explore critical areas of discovery until after the overarching

4   privilege issues were resolved by the Court.

5          NIC preserved substantial time in most of its depositions so that additional

6   time would be available for post-privilege discovery of those individuals.  JSF

7   Decl. at ¶¶ 6-7.  For example, NIC used only two to three hours of the seven-hour

8   limit in depositions for all Non-NTG Defendants.  *Id.* at ¶ 7.  NIC elected not to

9   inquire into subject matters that were clearly subject to privilege objections.  *Id.* at

10   ¶ 8.  Even so, privilege objections prevented many of NIC's inquiries into relevant

11   areas.  *See* Dkt. Nos. 410-6 (Deposition of Baslow); 410-24 (Schoonover), 410-25

12   (Demulder), 410-28 (Nilon), 410-58 (2nd Schoonover Depo.); *see also* Dkt. 659 at

13   18-20.  NIC also elected not to depose individuals whose relevant knowledge

14   would clearly be shielded in privilege objections (such as the NTG attorneys and

15   attorneys at Kirtland & Packard LLP).  *See* Dkt. 447 at 4 (Court holding that it was

16   reasonable for NIC to delay taking depositions until Court resolved privilege

17   issues).  To promote efficiency and avoid redundancy, the point was to first resolve

18   common privilege issues before proceeding deeper into discovery.  It would have

19   made little sense to schedule depositions purely for the purpose of logging

20   privilege objections, particularly when those same privileges were pending before

21   the court through the Omnibus motion to compel.

22          NIC was diligent in preparing and filing the Omnibus motion to compel.

23   Over the first six months of discovery, NIC collected a substantial record mostly

24   from non-party discovery.  NIC prepared a draft "Omnibus" Motion to Compel by

25   December 2016 (9 months before the discovery cut-off in late August 2017).  Dkt.

26   443 at 3.  But NIC could not advance that motion because Defendants had refused

27   to produce privilege logs absent an order of the Court.  Dkt. 241 at 17-18.  Without

28   privilege logs, NIC could not identify which files it needed to compel through the

crime-fraud process.  In March 2017, the Special Master compelled production of privilege logs and sanctioned NTG for its refusal to produce them.  *Id.* (finding that "NTG Defendants took the unprecedented stance that they would not produce any privilege logs unless they were ordered to do so (or changed their mind)").

NIC finally received the remainder of Defendants' privilege logs in March of 2017.[2]  NIC then prepared and filed its "Omnibus" Motion to Compel by April 14, 2017.  *See* Dkt. 291.  NIC filed its motion four months before the discovery cut-off in this case.  *Id.*  In August 2017, the District Court held that "NIC diligently brought its crime-fraud motion."  Dkt. 447 at 3.  The Court further held that "NIC acted diligently to address this case's numerous privilege issues."  *Id.* at 4.  Thus, it is the law of the case that NIC was diligent in addressing privilege issues in this litigation.

Judge Selna also recognized that "despite this diligence, NIC will not receive a [final privilege ruling] . . . until well past the discovery and dispositive motion cut-offs."  *Id.*  Consistent with the Court's expectations, NIC has still not received all documents compelled through various privilege disputes now almost thirty (30) months after NIC filed its "Omnibus" Motion to Compel and two years after the discovery cut-off.[3]  However, those delays are *despite* NIC's diligence and therefore does not impact NIC's right to take post-privilege discovery.  *See id.* at 3-4 (NIC deserves the right to "conduct discovery on the relief it received(sic) on [the crime-fraud motion and other discovery motions].")

The Court has already recognized that NIC was reasonable in its decision to

---

[2] The crime-fraud motion was also delayed after defendants late-produced a series of documents in May 2017.  *See* Dkt. 534 at 4.

[3] NIC still awaits production of documents related to the eight SAC cases compelled under the crime-fraud exception that have been submitted for approved redactions.  NIC has also not yet received Strataluz documents that were compelled because they are not subject to privilege or work product.  NIC has also not received the implied waiver documents related to alleged tester activity.  Thus, hundreds of documents remain outstanding.

postpone certain discovery events, like depositions of the NTG Defendants, until after it received privilege rulings and documents through NIC's privilege-related motions.  *Id.* at 4 ("depositions, particularly in complex cases, are document intensive.  Therefore, it was reasonable of NIC to delay depositions until final rulings on this case's numerous privilege issues.").

Despite Judge Selna's prior statements regarding NIC's diligence and its right to seek discovery flowing from the Court's privilege rulings, on August 26, 2019, Defendants attempted to persuade the Court that NIC should be limited only to the depositions of Scott Ferrell, Victoria Knowles, David Reid, and Ryan Ferrell.  Exhibit B at Tr. 11:17-21.  The Court rejected that limitation consistent with its prior statements:

> Darnell:    . . . This Court has repeatedly held that the discovery cutoff has come and passed except for the four depositions of the four principals.
>
> Court:    And what may legitimately flow from the production of the Court's order.

*Id*. at Tr. 11:19-23.  Counsel for the Defendants conceded that NIC should be permitted to take such discovery upon application for leave.  *Id*. at 11:24-25.  The Court set a December 3, 2019 Trial Setting Conference, at which the Court will evaluate what post-privilege discovery has taken place and what discovery still remains.  *Id*. at 12:23—13:6.  The Court's intention to assess how much discovery has been completed and what still remains at the December 3, 2019 conference further indicates that the Court expects NIC to perform significant post-privilege discovery over the next three to six months.

## B. LEGAL STANDARD

The Federal Rules of Civil Procedure permit discovery of any relevant, nonprivileged matter that is "proportional to the needs of the case."  Fed. R. Civ. P.

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

6

26(b)(2).  The Rules specify several factors to evaluate proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*

A scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  In determining whether to modify a scheduling order and permit discovery after the cut-off, courts consider the following factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995)).  "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  The moving party's diligence is the most important factor. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *see also Johnson*, 975 F.2d at 609.  Courts find good cause to permit discovery after the discovery cut-off "where evidence was unavailable or a key witness was not revealed prior to the close of discovery."  *Lehtonen, Tr. of PurchasePro.com, Inc. Liquidating Tr. v. Gateway Companies, Inc.*, No. 204CV00625KJDGWF, 2007 WL 9733695, at *3 (D. Nev. May 7, 2007) (citing *United States v. $100,348.00 U.S. Currency*, 157 F.Supp.2d 1110, 1119 (C.D. Cal. 2001)).

## C. ARGUMENT

### 1. NIC Has Good Cause to Pursue Discovery that Flows from the Court's Privilege Rulings

NIC moves for leave to take post-privilege discovery flowing from the Court's privilege rulings. Under the relevant factors, NIC has good cause to take that discovery.

On a motion for leave, the inquiry focuses on the moving party's diligence. *Johnson v. Mammoth*, 975 F.2d at 609. Here, the District Court already ruled that NIC diligently pursued resolution of complex and pervasive privilege issues in this case. Dkt. 443 at 3-4. The Court even noted that substantial discovery could not have been performed prior to those privilege rulings. *Id.* The law of the case establishes NIC's diligence in pursuing discovery that flows from the Court's privilege orders. *See United Steel Workers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008); *see also Kimberlin v. Quinllan*, 199 F.3d 496, 500 (D.C. Cir. 1999) ("The law-of-the-case doctrine rests on a simple premise: 'the same issue presented a second time in the same case in the same court should lead to the same result.'" (emphasis in original) (citation omitted)).

Trial in this matter is not imminent. No trial date has been set. The Court does not plan to set a trial date until the Trial Setting Conference scheduled for December 2 (three months from now), at which point the Court will determine an appropriate trial date *based on what discovery remains*. The eventual trial date will therefore be set for a time that accommodates the post-privilege discovery that NIC requests here. This factor therefore heavily favors NIC's discovery requests, in part, because the district court has informed the parties that it intends to accommodate the trial calendar around the anticipated discovery.

Performing post-privilege discovery within the existing discovery calendar was also not possible. While NIC flagged the need to advance privilege-piercing

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

8

motions at the Rule 26(f) Conference, neither the Parties nor the Court could have anticipated the extreme delays attendant to those motions.  The Court has already found that, *despite NIC's diligence*, the critical privilege rulings in this case could not be adjudicated until well after the close of discovery.  Dkt. 443 at 3-4.  NIC filed its motions timely within the scope of original discovery.  Resolution of those motions has included multiple delays, including multiple motions for reconsideration and interlocutory appeals to the Ninth Circuit.  *See* Dkt. 786; Dkt. 534; Dkt. 570; Dkt. 610.  The fact discovery window closed in August 2017 under the original calendar.  Now almost thirty months after the date of NIC's filing, NIC is still awaiting a final order on portions of its Omnibus motion.  *See* Dkt. 820 (indicating additional steps re Strataluz documents); *see also* Dkt. 829.  The delays in taking post-privilege discovery were not avoidable or foreseeable, and this element therefore supports a finding of good cause.

The Defendants will not be prejudiced by post-privilege discovery.  The Defendants' primary complaint over the last few years has been the delay in their ability to seek a speedy trial.  However, as explained above, the discovery sought by this motion will not impact the trial date in this case because the Court has clearly stated that a trial will proceed sometime in 2020, and the Court will not be setting the trial date until December 2, 2019.  Thus, the discovery sought by this motion can be completed without impacting the Defendants' ability to have a trial within a reasonable amount of time.  Moreover, all of the discovery that NIC seeks by this motion is information that has been in the Defendants' possession, meaning that supplemental discovery would only level the informational playing field between the parties.  That discovery into defendants' own files and information does not create an unfair surprise or otherwise cause the Defendants evidentiary prejudice.  Finally, to the extent that NIC seeks to re-call depositions of Schoonover, Nilon, Pfleg, and Demulder, NIC only proposes that it be afforded whatever remains of the seven hours provided under the Rules.  NIC preserved

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

9

more than three hours per Non-NTG Defendant.  Thus, NIC will not be forcing Nilon, Demulder, Schoonover, and Pfleg to sit for a deposition beyond the presumptive 7-hour limit.  As to Baslow, NIC requests a four-hour recalled deposition (rather than the two hours and forty-nine minutes that remain) because the original deposition was improperly obstructed by privilege objections, as the Court found.  *See* Dkt. 659 at 19-20.  That minimal additional time does not impose a significant burden and is justified under the circumstances.

Most importantly, the discovery that NIC seeks is highly probative of the issues in this case.  The Defendants' internal communications include highly relevant evidence.  The Post-privilege discovery here at issue is designed to explore the internal facets of the racketeering enterprise.  That information was not available to NIC at any earlier point in litigation.  This discovery includes, for example, the broad exploration of NTG's so-called "tester" cases that are now subject to the Court-imposed implied waiver.  *See* Dkt. 753.  This limited period of discovery will involve the most probative information yet uncovered in the case, including testimony that could not be obtained by NIC through any other sources.

Discovery is intended to prevent unfair surprises at trial.  NIC is entitled to understand how defendants will testify about the events in this case.  That information is only available through depositions and the supplemental discovery proposed herein.  NIC must have a complete opportunity at discovery prior to dispositive motions.  Because the Court has already stated that NIC may take discovery which reasonably flows from the privilege orders and because the "good cause" factors all favor that discovery, this Court should grant NIC leave to take all discovery identified below which flows from the privilege orders.

### 2. Recalled Depositions of Schoonover, Nilon, Pfleg, Demulder, and Andrew Baslow

NIC deposed Schoonover, Pfleg, Demulder, and Andrew Baslow before the Court issued rulings on the critical privilege issues in this case.  JSF Decl. at ¶ 7.

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

10

NIC limited its deposition time with the Non-NTG Defendants so that over four hours remain out of the seven hours permitted by the Rules for each of those witnesses.  NIC preserved two hours of time in the deposition of Andrew Baslow. NIC realized during those depositions that privilege issues would block examination into significant and broad topic areas.  While NIC was met with frequent privilege objections, NIC also endeavored to preserve time by avoiding topics that would unquestionably be met with redundant or similar privilege objections.  As a result, the Non-NTG Defendant witnesses will not be subjected to more than the seven hours of deposition time presumptively permitted by the Rules.[4]  Those depositions occurred before the Special Master and District Court issued any of their final orders on the crime-fraud motions.  Since those depositions, NIC has received multiple crime-fraud orders, an order expanding discovery under the implied waiver doctrine, and orders expanding the scope of discovery by overruling work product objections.  *See* Dkt. Nos. 659, 753, 785, 820.  Those orders have effectively whittled down the applicable privileges in this case, thus expanding the scope of inquiry at potential depositions.  The Court should grant NIC leave to re-depose those witnesses now that NIC has obtained new evidence, and received rulings that open critical and new areas of inquiry.

Courts grant motions for leave to re-depose a witness already deposed if the movant can establish "good need."  *All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146-L BLM, 2013 WL 1882260, at *6–7 (S.D. Cal. May 3, 2013).

---

[4] NIC requests four hours of time at the recalled deposition of Andrew Baslow to account for the numerous delays caused by improper privilege objections at his first deposition (which lasted four hours and eleven minutes). NIC's request for an additional one hour and ten minutes of deposition time is reasonable in light of the circumstances.

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY
FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

11

"Good need" is established where there has been a long passage of time since the first deposition and new evidence has been obtained. *Id.*; *Graebner v. James River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1989); *Bookhamer v. Sunbeam Prod. Inc.*, No. C 09-6027 EMC DMR, 2012 WL 5188302, at *2–3 (N.D. Cal. Oct. 19, 2012). Good need also exists where a new claim or defense has been injected into the case. *Bookhamer*, 2012 WL 5188302, at *2–3; *Kress v. Price Waterhouse Coopers*, No. CIV S-08-0965 LKK, 2011 WL 5241852, at *1 (E.D. Cal. Nov. 1, 2011); *Navix Imaging, Inc. v. Lexington Ins. Co.*, No. 205CV469FTM29SPC, 2006 WL 8438823, at *1 (M.D. Fla. Nov. 7, 2006) (new defense constituted good cause); *Jackson Fin. Servs., LLC v. CT Mason, Inc.*, No. CV 13-11739-GAO, 2017 WL 1230845, at *1 (D. Mass. Mar. 31, 2017) (same); *Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 432 (6th Cir. 2006) (unpublished) (holding that district court abused discretion in failing to reopen discovery where district court also granted leave to file new affirmative defenses).

Here, both forms of good need exist. First, a significant amount of time has passed since NIC deposed all of these witnesses. The witnesses were deposed on the following dates:

- Andrew Nilon – June 7, 2017 (more than two years ago);
- Sam Schoonover – January 11, 2017 and June 2, 2017 (more than two years ago);
- Sam Pfleg – May 24, 2017 (more than two years ago);
- Taylor Demulder – May 12, 2017 (more than two years ago); and,
- Andrew Baslow – August 9, 2017 (more than two years ago).

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

12

*See* JSF Decl. at ¶ 7.  Thus, more than two years have passed since NIC deposed any of the witnesses subject to this request.

Second, through the Court's privilege orders, NIC has obtained new and significant evidence related to each of those defendants.  NIC received documents subject to the crime-fraud exception directly relating to the SAC cases involving Andrew Nilon, Sam Schoonover, Sam Pfleg, and Taylor Demulder.  *See* Dkt. 659 at 23-25; *see also* Dkt. 820; Dkt. 785.  Similarly, NIC has obtained numerous, highly probative documents related to Andrew Baslow's role in the NTG scheme.  NIC obtained communications between Baslow and NTG clients and communications between Baslow and NTG attorneys that indicate his essential role in staging litigation and client recruitment.  *See e.g.*, SCHOONOVER00083-90; NTG005982-5983; NTG006665; NTG000104-106; NTG006669; NTG006663.  The Court has already explained that depositions are document intensive proceedings.  Dkt. 447 at 4.  As such, acquisition of new and highly probative documents establishes good need, particularly in light of the significant passage of time since these defendants were deposed.

NIC need not identify every single document or question to be presented at these depositions to justify "good cause" under the standard.  First, that would require NIC to disclose protected work product and strategy related to the depositions.  Second, NIC cannot even provide that information in full given that all documents have yet to be disclosed to NIC at this time.  Third, the history of the privilege proceedings is well-known to this Court.  The Special Master has reviewed *in camera* thousands of documents germane to this case.  The Special Master has also found that hundreds of documents are subject to privilege

exceptions, including the crime-fraud exception. *See e.g.*, Dkt. Nos. 597, 625, 708,
712. Having reviewed that evidence, including defendants' privileged files, the
District Court concluded that the defendants participated in a scheme to defraud
the courts. *See* Dkt. 659; Dkt. 820. The Special Master is well aware that new
evidence has been produced by those privilege Orders, and that such evidence is
directly germane to the merits of NIC's lawsuit. The Special Master therefore has
sufficient background with the record to confirm the merits of NIC's discovery
requests here, without compelling NIC to re-litigate or brief the substantial
findings in the crime-fraud orders.

Finally, since these witnesses were deposed, the Court has ruled that NTG's
"tester" argument is actually a defense and that it waives privilege. *See* Dkt. 659 at
16-20. Earlier in the case, NTG had repeatedly argued that the "tester" argument
was *not* a defense. *See* Dkt. 410-24 at 81-82 (Tr. 80-81) (Counsel prevented
inquiry into Schoonover's tester case and claimed that "[Defendants] don't have a
tester defense pending counsel."). However, on June 12, 2018, the Court ruled that
the argument was, in fact, a defense, that it affirmatively placed information at
issue that NTG had shielded under privilege, and that NIC was entitled to take
discovery of that information. *See* Dkt. 659 at 18-20. The injection of a new claim
or defense is traditionally sufficient to establish "good need" to re-depose a
witness. *See Navix Imaging*, No. 205CV469FTM29SPC, 2006 WL 8438823, at
*1. That is particularly so in this case where Judge Selna found implied waiver, in
part, because Andrew Baslow refused to answer questions specifically regarding
the tester defense at his prior deposition. Dkt. 659 at 20. The Court found that
Defendants had used the defense as a sword and a shield. *Id.* Fairness therefore

requires that NIC be given an opportunity to re-depose witnesses implicated by the tester defense (i.e., Nilon, Demulder, Schoonover, and Baslow) now that the Court has ruled that the defense impliedly waives privilege.  Dkt. 753 at 8 ("NIC may utilize all available forms of discovery" to investigate the tester defense).

For the foregoing reasons, NIC should be granted leave to re-depose Andrew Baslow, Andrew Nilon, Sam Schoonover, Sam Pfleg, and Taylor Demulder.  NIC shall limit the new depositions to the amount of time remaining under the Rules.

### 3. Deposition and Document Subpoena to Kirtland & Packard

The Court should grant NIC leave to issue a subpoena to Kirtland & Packard LLP ("K&P") for 30(b)(6) deposition testimony and the production of documents. Good cause exists to permit discovery from K&P because NIC could not have taken any significant discovery from that entity before the Court had issued privilege rulings in this case.  K&P's entire relationship to the issues in this case involved legal representation as co-counsel with NTG on two SAC cases.  *See Demulder v. Carter-Reed Co.*, No. 3:12-cv-0333-BTM (S.D. Cal. Sept. 13, 2012), Dkt. 1; *see also Dronkers v. Kiss My Face LLC,* No. 3:12-01151-JAH (S.D. Cal. May 11, 2012), Dkt. 1.  All of K&P's communications with NTG and the Non-NTG Defendants were therefore subject to facially valid claims of attorney-client privilege and work product.  As a result, before the Court issued its crime-fraud, work product, and tester rulings, NIC could not have obtained meaningful information from K&P without facing identical privilege objections.  All of the communications involving K&P that NIC has received in discovery were produced pursuant to the Court's order at Dkt. 820.  JSF Decl. at ¶ 10.  NIC had no written communications involving K&P prior to those orders.  NIC therefore reasonably

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

15

elected not to pursue discovery from K&P before the Court adjudicated the complex privilege issues in this case.  That decision, like NIC's decision not to depose the NTG attorneys, was reasonable and a prudent attempt to limit costs and burdens in discovery where possible.  *See* Dkt. 447 at 4.

Documents received as a result of the Court's recent rulings establish that K&P was involved significantly in NTG's fraudulent litigation mill.  *See e.g.,* NTG014788-89 (demonstrating NTG employees working to assist K&P); NTG000104-06; NTG006669.  K&P received regular referrals from NTG on staged lawsuits, including *Demulder v. Carter-Reed* and *Dronkers v. Kiss My Face*.  *See* NTG000104-06.  K&P apparently had an arrangement with NTG whereby K&P received referrals for NTG-sourced cases that NTG preferred not to litigate, but for which NTG had already staged the injury and sent the demand letters.  *See* NTG014605-06; *see also* NTG015261.  K&P was sole counsel of record in *Demulder v. Carter-Reed*, and therefore possesses significant information and evidence related to one of the SAC cases.  They were also primary counsel on the *Dronkers v. Kiss My Face* matter and possess substantial information related to that SAC case as well.  NIC has obtained communications between NTG and K&P regarding SAC cases that were previously shrouded by privilege.  Whether NTG informed K&P of the staged nature of those suits is a significant issue in this case.  At oral argument on the Implied Waiver Remand, the Special Master noted that the communications between NTG and K&P regarding the Demulder case appear to lack any disclosure regarding Demulder's "tester" status or the otherwise staged nature of his suit.  Therefore, NIC can only investigate that issue if it has an opportunity to depose K&P now that privileges have been largely overruled

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

16

regarding those two SAC cases.  K&P provides a unique opportunity to obtain testimony from attorneys of record in SAC cases who are not also Defendants in this case with an incentive to testify evasively.

Therefore, because (1) discovery from K&P was impractical prior to the Court's privilege rulings, (2) NIC has received K&P related communications from the privilege rulings, (3) tester waiver directly implicates information in K&P's possession, and (4) K&P is likely a more transparent source of relevant information than the Defendants, the Special Master should grant NIC leave to issue a subpoena for deposition testimony and documents to K&P's 30(b)(6) designee.

### 4.  Deposition of Wynn Ferrell

The Court should grant NIC leave to depose Wynn Ferrell, who was NTG's "field agent" in the *Morales v. Magna* case, *Torres v. Nutrisystem* case, and *Nilon v. Natural Immunogenics Corp.  See* NTG007983 (*Morales*); *see also* NTG015268 (*Torres*); NTG022177 (*Nilon v. NIC*).  Good cause exists to permit discovery from Wynn Ferrell because NIC could not have taken a complete deposition before the Court issued privilege rulings in this case.  Dkt. 447 at 4.  Wynn Ferrell operates as an NTG "field agent," recruiting and directing staged plaintiffs for NTG's litigation mill.  NTG007983; NTG015268; NTG022177.  Wynn Ferrell serves in the same capacity as Baslow.  Like Baslow, Wynn Ferrell is an agent of the law firm and, prior to the Court's rulings, all of his communications with NTG were shrouded in privilege objections.  *See* JSF Decl. at ¶ 9.  NTG did not produce a single communication with Wynn Ferrell prior to the Court's privilege rulings, claiming protection over all such communications.  *Id*.  The communications that

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

17

NIC has since received demonstrate that Wynn Ferrell often communicated by telephone with NTG attorneys regarding the specifics of staged cases for which he was involved. *See e.g.,* NTG022177 (requesting a telephonic discussion). Wynn Ferrell apparently also communicated by telephone with the clients he recruited. *See* Dkt. 659 at 13 (Court citing evidence that Wynn Ferrell spoke with Torres by telephone). Therefore, NIC needs deposition testimony to inquire into the content of those communications, directions given to Wynn Ferrell by NTG attorneys, and his communications with clients relevant to the SAC cases. Much of that information is now available to NIC following the Court's privilege orders.

NIC reasonably delayed seeking a deposition of Wynn Ferrell until after the privilege rulings for a number of reasons. First, NIC had no documents involving Wynn Ferrell because they were all shrouded in privilege. The Court has already noted that depositions are often document-intensive and NIC was reasonable to delay certain depositions where it needed the privileged documents to effectively examine the witness. Dkt. 447 at 4. Second, NIC deposed Wynn Ferrell's equivalent, Andrew Baslow, and experienced significant roadblocks in that examination through privilege objections. *See* Dkt. 659 at 18-20 (noting that NIC's inquiry was blocked by objections). Because Wynn Ferrell performs a similar role as Baslow within NTG, NIC reasonably expected that a deposition of Wynn Ferrell would be similarly obstructed by privilege concerns. Third, while NIC knew that Wynn Ferrell was involved in the *Magna* and *Nutrisystem* cases, NIC did not learn that Wynn Ferrell was also a field agent tasked with recruiting a plaintiff in the primary case, *Nilon v. NIC*, until NIC received documents from the privilege orders. NTG022177. Finally, those documents also revealed that Wynn

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

18

Ferrell likely has knowledge germane to Scott Ferrell's declaration regarding Trycia Carlberg. *Id.* For these reasons, NIC reasonably did not ask for leave to depose Wynn Ferrell until after the privilege rulings. NIC's discovery from Wynn Ferrell flows from those privilege rulings.

### 5. Deposition of Daniel Bobba

The Court should grant NIC leave to subpoena Daniel Bobba for deposition. Daniel Bobba was one of the plaintiff's in *Morales v. Magna RX*, an SAC case. Bobba possesses highly probative information relevant to a number of predicate acts identified in the SAC. Bobba's public statements and publicly filed declaration are related to NTG's fraudulent activity in the *Morales v. Magna* case, and NTG's attempts to cover-up the fraud. Dkt. 659 at 25; Dkt. 820 at 16. However, NIC was unable to depose Bobba earlier in the case because, at the outset of this case and throughout discovery, his whereabouts were unknown. JSF Decl. at ¶ 12. Moreover, even after NIC learned of his location,[5] the "Omnibus" Motion to Compel was already pending and would likely resolve a number of potential privilege issues that would have nonetheless impeded Bobba's deposition. Thus, NIC reasonably elected to wait until privilege issues associated with the *Magna* case were resolved before seeking leave to take his deposition. Because NIC only learned of Mr. Bobba's location well after the close of discovery in this case, and because NIC's "Omnibus" Motion to Compel was already pending, NIC decision to seek leave after the privilege Orders was reasonable. NIC was aware that the Court would permit a supplemental period for

---

[5] NIC learned of a possible location for Mr. Bobba during the pendency of the "Omnibus" Motion to Compel in April 2018. NIC has since retained a private investigator and confirmed Mr. Bobba's location.

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

19

discovery.  Mr. Bobba's testimony is material to the merits of this case.  Bobba is likely a trial witness in this case.  He has consistently been listed on NIC's Rule 26(a) disclosures.  JSF Decl. at ¶ 11.

NIC has now obtained a substantial number of *Magna*-related documents compelled under the crime-fraud exception to attorney-client privilege.  The Court's privilege findings and documents compelled make available significant areas of inquiry at a deposition of Daniel Bobba.  As the only plaintiff from the *Magna* case for which NIC now has a known location, Bobba is a worthwhile witness.  The *Magna* case involved significant fraudulent activity and a number of predicate acts in the alleged RICO scheme.  Moreover, Bobba has made public statements regarding the fraudulent circumstances of his involvement in that suit.  As such, he is likely the best plaintiff from that lawsuit to depose.  His deposition is likely to provide probative information regarding the circumstances of his staged purchase, the direction he received from NTG, and the circumstances of the attorney-prepared declaration filed on his behalf to avoid sanctions against NTG.  The potential probative value of testimony regarding those events justifies the limited burden of taking his deposition.  For those reasons, the Court should grant NIC leave to serve a deposition subpoena on Daniel Bobba.

### 6.  Leave to File a Crime-Fraud Step Two Motion Regarding a Limited Number of Documents Not Yet Reviewed

NIC seeks leave to file a supplemental motion to compel the production of documents under Step Two of the crime-fraud exception.[6]  NIC's "Omnibus" motion to compel was filed more than two and a half years ago, before NIC had

---

[6] The supplemental motion will seek the documents attached hereto as Appendix 1.

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

20

obtained any privileged documents or information. *See* Dkt. 291. That motion was as comprehensive as was feasible given the limited universe of information available to NIC. *Id.* NIC's motion sought production of documents listed on four Appendices. Dkt. Nos. 291-2, 291-3, 294-1, & 294-2. Those Appendices contained only approximately 27% of the documents identified on NTG's privilege logs. The Appendices had to be prepared on a short timeline and based on limited information.[7] NIC limited its requests to documents on the Appendices in an effort to reduce the workload on the Court in recognition of the *Zolin* factors. However, now that NIC has received hundreds of files through the Court's various privilege orders, NIC has new information that supports the need to review a limited number of additional documents under the crime-fraud exception.

Documents obtained pursuant to the Court's privilege rulings have demonstrated that additional files documents logged by Defendants likely contain critical evidence related to NIC's Counts II and III. NIC has identified those specific documents in Appendix 1 attached hereto. *See* Appendix 1 (Identifying 21 documents). The documents include text messages between Sam Schoonover and Andrew Baslow during the time when NTG first recruited Sam Schoonover into the RICO enterprise. Those text messages relate to NIC's RICO Conspiracy claims in Count III against Sam Schoonover, and also relate to NIC's primary RICO count because they may be relevant to the RICO element of "continuity," predicate acts of bribery, and the mental states of Defendants Schoonover, Baslow, and Scott Ferrell.

---

[7] NIC only received the privilege logs from NTG in March of 2017. NIC has since discovered a number of documents that were not included on the original appendices that likely contain critical information to this case and are likely subject to the crime-fraud exception.

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

21

NIC alleges that Sam Schoonover conspired with NTG to engage in racketeering activity.  Under federal law, a claim for RICO conspiracy requires proof that the conspirator had an understanding of the scope and purpose of the racketeering enterprise, and that the conspirator agreed to participate in that enterprise.  9th Cir. Manual of Model Civil Jury Instructions 8 – Civil RICO Sec. 1962(d) (*quoting Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)) ("The conspirator must have been 'aware of the essential nature and scope of the [RICO] enterprise and intended to participate in it.'").  Co-conspirators would discuss the purpose and methodology of the enterprise in greater detail when they first begin their relationship.  In this instance, Sam Schoonover may have discussed the enterprise in more detail at the outset of his litigation activities with NTG.  The text messages may include terms of payment, his role in the staged lawsuits, his tasks associated with those lawsuits, and what NTG expected of him at the outset of their relationship.  Schoonover's first communications with Andrew Baslow occurred in March 2012, months before his Himalaya lawsuit. *See* Appendix 1.  Baslow and Schoonover communicated by text message through March and April of 2012.  *Id*.  The text messages obtained under the crime-fraud exception demonstrate that Schoonover agreed to financial terms with Andrew Baslow prior to their June and July communications.  *See* SCHOONOVER00082-83, SCHOONOVER00088 (submitted *in camera* by Defendants).  The messages refer to prior communications and a prior meeting of the minds regarding payment. *Id*.  Moreover, the messages indicate that Baslow had discussed the nature of NTG's racketeering enterprise in those earlier messages as well.  *Id*.  Thus, the communications reviewed thus far establish that the previous communications

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

22

between Andrew Baslow and Sam Schoonover contain probative evidence related to Schoonover's agreement to participate in the RICO enterprise, the terms of payment promised for his participation, and his understanding of his role in and the purpose of the enterprise.

That evidence goes to the heart of NIC's allegations against Schoonover. While the messages in March may have been exchanged for the purpose of staging Schoonover's lawsuit against Vogue International (a non-SAC case), those messages are also inextricably intertwined with Schoonover's agreement to participate in the racketeering scheme in general *and* the terms of his involvement in the scheme which governed his *Himalaya* suit (an SAC case). *See* Dkt. 659 at 25 ("[W]hile certain communications may not directly pertain to the <u>Himalaya Drug</u> case, they are inextricably intertwined with communications that directly pertain to the scheme as a whole.").  Therefore, like the text messages already compelled by the Court, the fact that some of the messages arguably relate to non-SAC cases, or to the scheme as a whole, does not mean that they do not also relate to the SAC case of *Himalaya* and come within the scope of discovery.[8]  The messages are therefore relevant to NIC's conspiracy claim against Schoonover and

---

[8] Moreover, the Special Master and NIC do not actually know if the message descriptions provided by Schoonover are accurate.  Schoonover has previously misled the Court regarding the subject matter of his text message communications. Schoonover's counsel represented in open Court that the documents ultimately compelled in the earlier Schoonover remand were not related to SAC cases.  After threats of sanctions, Schoonover was forced to admit that they did, in fact, relate. Dkt. Nos. 577, 583.  The Special Master's review later confirmed that the messages related to the SAC matter all along.  *See* Dkt. 625 at 8.  The Special Master should therefore not accept the subject matter representations of Schoonover or his counsel, and should instead perform an *in camera* review to determine if the crime-fraud exception applies.

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

23

must be deemed within the scope of discovery, otherwise NIC is precluded from exploring evidence directly germane to allegations in the SAC.

Not only are the messages relevant to NIC's claims against Schoonover and NTG, but they are also likely to be highly probative. The record established that Baslow and Schoonover communicated more informally in their text messages. *See* SCHOONOVER00082-90. While the parties' email correspondence was sanitized at Baslow's instruction (SCHOONOVER00084-85), the text messages contained more revelatory discourse. *Id.* The text messages present an unparalleled level of evidentiary value in this case and should not go unreviewed. The fact that text messages and telephone conversations appear to have been Baslow's preferred method of communication to convey the true nature of the racketeering enterprise make those files critical evidence in this case. Notably, Schoonover is the only Defendant to have preserved his text messages, making his text messages of the most critical evidence in this case.

NIC's request imposes no burdens on the parties. The remaining Schoonover text messages represent a small, discreet subset of documents spanning 17 total pages. The Court has already found under Step-One of the crime-fraud analysis that the Defendants were engaged in a scheme to commit fraud on the Court. Thus, the briefing would only focus on Step Two of the crime-fraud analysis, i.e., whether the communications are in furtherance of the crime or fraud. That discreet issue will not require significant briefing since the documents at issue are small in number and the facts surrounding those documents have been largely resolved by this Court in Docket No. 659. As a result, the burden and cost to the Defendants of NIC's request is minimal. When this Court reviewed

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

24

Schoonover's other text messages, the Court compelled almost all files under the crime-fraud exception, meaning that the likelihood of additional crime-fraud findings here is high.

The documents obtained from the Court's production orders also establish by a preponderance of the evidence that the unreviewed documents were created in furtherance of the NTG Defendants' scheme to defraud the Courts. *See* SCHOONOVER00083-85. Because Judge Selna has already determined that, by a preponderance of the evidence, NTG was engaged in a scheme to commit fraud on the Court sufficient to establish Step One of the crime-fraud exception to attorney-client privilege, on NIC's proposed supplemental motion the Court would only need to evaluate Step Two of the crime-fraud exception. That limited procedure essentially consists of the Court's receipt of briefing likely followed by an *in camera* review of 21 documents. As NIC will establish in its supplemental crime-fraud motion, the record demonstrates that the March 2012 text messages were exchanged for the purpose of bringing fraudulent litigation. The text messages already produced under the Court's Order at Dkt. 659 contain written admissions that Schoonover's first and second suit with NTG were both staged at NTG's direction. *See* SCHOONOVER00083-89. The information on the privilege log further supports that conclusion because Baslow texted Schoonover regarding the Vogue products approximately one hour *before* Schoonover purchased them. *See* Appendix 1 at 1 (Baslow texts Schoonover at **3:28 PM** PST on March 14, 2012 regarding Vogue) and *compare to* Exhibit C (Vogue Receipt showing Schoonover's purchase at **4:45 PM** PST on March 14, 2012).

For the foregoing reasons, the Court should grant NIC leave to file a Step
Two crime-fraud motion seeking production of the documents listed in Appendix
1.

### 7.  The Discovery Sought is Proportional to the Needs of the Case

NIC moves for leave to complete the depositions of five defendants, to
depose three non-party witnesses who possess information directly germane to
SAC cases, and to file a narrow supplemental crime-fraud motion that may require
the Court to perform *in camera* review of less than thirty documents.  That
discovery is proportional because it does not impose significant burdens and is
likely to produce highly probative evidence regarding NIC's claims and the
Defendants' "tester" defense.  While the Defendants frequently argue this case is
worth "only" $200,000, Judge Selna has actually held that NIC's claims are likely
worth millions given the availability of attorney fees, punitive damages, and RICO
treble damages.  *See* Dkt. 788 at 13 ("The Court acknowledges that the amount in
controversy here is more than $234,966.52" and includes "[t]reble damages . . .
punitive damages . . . [and] mandatory recovery of attorneys fees and costs.").
Judge Selna determined that the potential value of this case did not justify the
Court's dedication of resources to the review of *thousands* of files after the Special
Master had already reviewed same.  *Id*. at 13-14.  But Judge Selna's findings were
limited to that procedure.  The Court has since routinely reviewed documentation
*in camera*, including the review of over three hundred Strataluz-related files.  *See*
Dkt. 820 at 18, 21.

NIC's request to complete depositions of five named Defendants is
presumptively proportional because the Court stated at the initial case management

hearing that NIC would be permitted to depose all Defendants in this matter. Those Defendants have not yet been fully deposed because privilege issues (now overruled) obfuscated critical areas of inquiry germane to issues central to this case. NIC's request does not require those individuals to sit for more than 7 hours of deposition (except for Baslow who would sit for, at most, a total of 9 hours), the presumptive limit under the Federal Rules. Thus, NIC's request to depose Schoonover, Pfleg, Demulder, Nilon, and Baslow is proportional to the needs of the case.

NIC's request to depose K&P and Wynn Ferrell are also proportional because those witnesses possess information regarding SAC cases. K&P was lead trial counsel in the Carter-Reed and Kiss My Face matters. They had internal strategic conversations with NTG regarding the purported facts of those cases. K&P has insight into the mental state of the NTG attorneys. The information provided to K&P by NTG regarding the facts of manufactured cases relates directly to NTG's knowledge of illegality. Wynn Ferrell was NTG's primary contact point for Torres, Bobba, and Morales, the plaintiffs in two SAC cases. Wynn Ferrell was allegedly involved in the recruitment of plaintiffs against NIC. *See* NTG022177. Wynn is Ryan and Scott Ferrell's father and therefore likely possesses knowledge of the workings of the NTG enterprise. Much of that information is now available given the crime-fraud findings in this case. Therefore, these witnesses possess highly probative information likely unavailable from other sources. Given the scope of claims in this case, an additional three depositions does not present a significant burden on the parties. This is a complex RICO lawsuit involving twelve defendants and spanning eight underlying lawsuits

(not including the broad Strataluz scheme which this court deemed "staggering" in scope). *See* Dkt. 92. The disparity of information in this case favors NIC's right to discovery of this kind. Defendants possess plenary knowledge of their actions and conduct. This entire lawsuit therefore rests on facts in Defendants' personal knowledge, which they may pick and choose from when presenting their defense. NIC is prejudiced in its ability to develop its case unless this Court permits discovery of relevant information from pertinent witnesses with knowledge of the same topics.

Finally, NIC's request to file a supplemental crime-fraud motion is proportional in this case because that supplemental motion seeks highly relevant documents containing evidence not available from other sources. The record thus far reveals that the Defendants intentionally sanitized their internal communications. Andrew Baslow directed NTG's sham clients to prepare emails according to his instructions, which included requests to have clients omit key information or disclose false information when communicating with the firm. *See* SCHOONOVER00084-85; *see also* SCHOONOVER00001 *and compare to* SCHOONOVER00002. The purpose for that practice is revealed through NTG's various attempts to exculpate themselves from allegations of wrongdoing in prior cases. *See e.g., Morales v. Magna Inc.*, Case No. 2010-cv-1601-EDL (N.D. Cal.), Dkt. 60 (Motion for *In Camera* Review). NTG apparently believed that if they created internal files that appeared to come from legitimate clients, they could later use those files to exculpate themselves when opponents raised accusations of sanctionable misconduct. *Id.* The text messages between Schoonover and Baslow included more candid conversations related to the unlawful scheme. Those

conversations also revealed Baslow's instructions to have Schoonover sanitize his emails.  Text message communications between Schoonover and Baslow (the only text messages preserved in this case), candidly reveal far more damaging information than many of the sanitized emails.  The Schoonover text messages already in the record establish certain predicate acts because they demonstrate the contrived nature of Schoonover's lawsuit.  The record thus far demonstrates that the Schoonover text messages are critical, particularly because no other defendant (*not a single one*) other than Schoonover claims to have preserved their relevant text message communications.

### D. NIC Attempted in Good Faith to Eliminate Issues in Dispute Through the Meet and Confer Process

On September 5, 2019, NIC served a meet and confer letter on Defendants which outlined the specific discovery that NIC would seek through this motion for leave.  *See* Exh. A.  That letter followed NIC's correspondence of August 16, 2019 which also outlined NIC's positions regarding the need for post-privilege discovery (in contemplation of the August 26, 2019 status conference).  *See* Exh. D.  Through its meet and confer correspondence, NIC invited the Defendants to identify which discovery events they would agree to and which they opposed.  In response, the Defendants took the position that they could not evaluate the proposed discovery unless NIC would first reveal the specific documents produced under the Court's orders that NIC would introduce at the depositions and use to examine witnesses.  That level of detail was unnecessary to evaluate these issues and, in any event, the Defendants' inquiry would invade NIC's work product by requiring NIC to reveal deposition strategy.

On September 16, 2019, counsel held a telephonic meet and confer.  On that call, NIC's counsel again explained that the goal of the meet and confer process was to determine if Defendants would agree with any of the proposed discovery so

the parties could narrow or eliminate disputes.  NTG's counsel again stated that it would not respond unless NIC identified specific documents which NIC intended to use at each deposition.  NIC took the position that objections to specific documents, questions, or areas of inquiry are more appropriately lodged at the deposition itself, but not for the preliminary question of whether to even take those depositions.  The Defendants again refused to provide any substantive response or discussion, except to indicate that they objected to all proposed discovery.  *See* JSF Decl. ¶ 4.

To the extent that Defendants argue that NIC did not meet and confer in good faith, the record disproves that contention and instead demonstrates that NIC took several reasonable steps to confer.  NIC complied with each step outlined by Local Rule 37.  NIC explained its bases for seeking the proposed discovery with the level of particularity required by the Rules.  The Defendants responded by using the meet and confer process as a weapon, arguing that NIC must reveal protected work product just to present its request to this Court.  The District Court earlier rejected that overly strict position of the meet-and-confer process.  *See* Dkt. 550.  For their part, the Defendants refused to eliminate any disputes here in controversy.  Their position that Andrew Baslow should not be re-deposed under these circumstances is frivolous, particularly where the Court's basis to invoke the implied "tester" waiver resulted from Baslow's refusal to answer questions at his deposition.  This Court should not restrict or deny any of NIC's requested relief on grounds that NIC failed to adequately meet and confer.

### E. CONCLUSION

Based on the good cause showing above, the Court should grant NIC's motions for leave to take the post-privilege discovery outlined *supra*.

### III.   DEFENDANTS' POSITION

Approximately one year ago, the Court imposed a complete moratorium on this case, telling the parties that "I cannot in good conscience continue to give the level of attention to this case that parties have thrust upon the Court" and that the "burden I think is disproportionate to the significance and value of the controversy . . . ." Oct. 11, 2018 Hearing Tr. at 37:2-7.  Then, earlier this year, the Court affirmed that "the burdens imposed by this litigation are not justified by the amount in controversy" and that "the amount in controversy is not so high as to validate unending discovery, nor is it so high as to justify the substantial burden placed on the parties and the Court by the discovery at issue in this motion [seeking *in camera* review.]"  (Dkt. 788 at 13.)

Against that backdrop, NIC now asks the Court for leave to conduct an encore performance of five party depositions that were already taken, plus three new non-party depositions and one new records subpoena for witnesses NIC has always known, plus yet another crime-fraud motion for documents that NIC has also known about for years.  This is on top the four NTG depositions that NIC still wants to take, each of which will likely raise a myriad of their own issues.

To be clear, NIC's latest request is excessive and unfounded.  Incredibly, NIC's motion does not even try to show and establish good cause.  In fact, NIC plainly refuses to identify not only the questions, but even the topics and subject matters that would justify the reopening of these depositions.  NIC likewise refuses to specify any areas of examination to which the witnesses did not respond previously.[9]  At the same time, NIC refuses to explain why or how information in

---

[9]  NIC's refusal here is particularly frustrating given the Special Master's denial of NIC's prior motion to reopen and recall depositions of three of these same defendants (i.e., Andrew Nilon, Sam Schoonover, Taylor Demulder), among

the recently produced documents would support the recalled depositions (let alone reopening a specific line of questioning at these completed depositions) or justify the taking of more non-party depositions for witnesses NIC has always known about.[10]   NIC also seeks a mulligan for leave to file yet another crime fraud motion that includes documents from Schoonover's case against Vogue International.   Not only were the documents that NIC seeks on a privilege log that was produced years ago and that was the subject of NIC's already litigated Omnibus Motion, but this Court has also already expressly barred this discovery because "NIC has unduly delayed seeking discovery into [Schoonover's] case against Vogue International . . . ." (Dkt. 414 at 7.)   Because of this, NIC's motion for leave for yet another crime-fraud motion is directed at discovery that is prohibited by the law of the case.

For all of these reasons and as described further below, as well and through the generalities and omissions in NIC's own moving papers, NIC's motion for leave should be denied.

## A. PROCEDURAL BACKGROUND

### 1. NIC's Prior Motion for Relief re: Completed Depositions

This is second time that NIC has filed a vague and generic request to recall and reopen the depositions of three of the same defendants (i.e., Andrew Nilon, Sam Schoonover and Taylor Demulder) that are at issue in the instant motion.

As the Special Master will recall, NIC previously filed a motion requesting "(1) Specific Relief Related to the Depositions of Taylor Demulder ("Demulder"),

---

others, which prompted the Special Master to note: "Most strikingly, NIC does not identify what questions it wants each of the Deposed Defendants to answer at his recalled deposition."  (Dkt. 518 at 5.)

[10]   As if this were not enough, NIC's motion also runs afoul of the Court's express limitation of no more than seven non-party depositions.

Sam Pfleg ("Pfleg"), Giovanni Sandoval ("Sandoval"), Matthew Dronkers

("Dronkers") and Andrew Nilon ("Nilon"); and (2) Sanctions against Defendants

Nilon, Demulder and Sam Schoonover ("Schoonover") and their counsel…"  (Dkt.

518 at 1-2).

Importantly, in considering that motion, the Special Master discussed what

transpired at the depositions of Nilon, Demulder and Pfleg by noting:[11]

- "On June 7, 2017, the deposition of Andrew Nilon took place in Irvine, California.  Arhangelsky Decl. ¶ 11, Exh. H. NIC did not terminate the deposition and at the end of the deposition, NIC's counsel stated: 'Okay. At this point we're complete with our examination.'"  (Dkt. 518 at 4.)

- "On May 12, 2017, the deposition of Demulder took place in Las Vegas, Nevada.  At the end of the deposition, NIC's counsel said, 'All right. We're done.'"  (Dkt. 518 at 4.)

- "On May 24, 2017, the deposition of Pfleg took place in Chicago, Illinois.  Arhangelsky Decl. ¶ 8, Exh. E. NIC did not terminate the deposition and, after a brief cross-examination by NTG Defendants' attorney, David Darnell ("Darnell"), NIC agreed there were no more questions."  (Dkt. 518 at 4.)

The Special Master also described how counsel for the parties had met and

conferred after the first session of Schoonover's deposition and how NIC was able

---

[11]  The descriptions quoted in bullet points are taken verbatim from the Special Master's Order in Docket 518.

to reschedule and complete Schoonover's recalled deposition on June 2, 2017 without issue.  (Dkt. 518 at 3-4.)[12]

Despite concluding these depositions without reserving any rights, NIC filed a motion seeking to recall multiple depositions based on allegations of ranging from coaching to evasive answers and privilege assertions.  (Dkt. 518 at 1-2.)  But as the Special Master explained, NIC's motion did "not clearly identify or set forth the specific relief NIC seeks, as the motion properly should."  (Dkt. 518 at 5.)  Continuing, the Special Master noted:  "Most strikingly, NIC does not identify what questions it wants each of the non-NTG Defendants to answer at his recalled deposition."  (*Id.*)  Accordingly, the Special Master denied "the motion without prejudice to NIC filing a new motion for relief after strict compliance with Rule 37(a)(1) and Local Rule 37-1."  (*Id.*)

Now, approximately two years later, NIC is again attempting to put these same defendants through reopened and recalled depositions without providing any requisite detail or justification.

## 2.  NIC's Requests for "New" Discovery

In addition to requesting a complete and unrestricted "re-do" of five defendant depositions that have already been taken and completed, NIC also seeks a whole host of "new" discovery.  First, NIC seeks leave to serve an undefined records subpoena and to take a Rule 30(b)(6) deposition of the law firm of Kirtland

---

[12]  NIC similarly took and completed the deposition of Baslow and other witnesses by stating "I do not have any further questions for the witness now."  Baslow Tr. at 191:12-13; *see also* Dkt. 518 at 4 (quoting how NIC completed other depositions without reservation).

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

34

& Patrick, which is a non-party that NIC has known for years was "co-counsel with NTG on two SAC cases."  Second, NIC seeks to depose Scott Ferrell's father, Wynn Ferrell.  Again, Wynn Ferrell is a non-party witness who NIC has known for years.  Third, NIC seeks to depose non-party Daniel Bobba, a plaintiff in one of the predicate cases who NIC has also known of throughout this entire case.  And finally, NIC requests leave to start another round of crime-fraud litigation for documents that were logged years ago and that include text messages relating to Schoonover's lawsuit against Vogue, which is not one of the eight cases at issue and thus not subject to discovery.

NIC's motion does not explain how or why information in any of the recently produced documents would actually justify any of this "new" discovery. Nor does it claim that NIC did not any could not have previously known about the existence or identify of these witnesses (they clearly did).  NIC has also completely ignored the fact that the Court has limited discovery to "seven non-party depositions" (Dkt. 567 at 4), which NIC has already used.[13]  Nor does NIC address the fact that the Court expressly denied NIC's prior request for leave to take discovery regarding Schoonover's lawsuit against Vogue.  (Dkt. 414 at 7 ("Therefore, NIC has unduly delayed seeking discovery into his case against Vogue International.")

## B. ANALYSIS

It is important to be clear on the scope of NIC's request.  This is not a limited circumstance of a party seeking to ask a prior deponent a few questions

---

[13] To date, NIC has taken the depositions of the following non-party witnesses:  (1)  Richard Richardson; (2) Raquel Torres; (3) James Hardin; (4) Joshua Weiss; (5) Jarrod Bentley; (6) Wayne Crossman - Rule 30(b)(6) for Nutrisystem; and (7) Ron Price - Rule 30(b)(6) for Basic Research.

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

35

about a newly discovered document, to reopen a line of examination on a topic or subject that was previously unknown or foreclosed, or to get answers to one or more questions that were previously objected to.  Rather, NIC wants a complete and unfettered do-over where it would not only get to ask whatever it wants, but also be allowed to re-ask and revisit unidentified questions and testimony that has already been taken.  Indeed, NIC's request is so expansive that it is unable to offer any meaningful detail on the discovery it seeks.

In doing so, NIC seeks both to modify the Court's scheduling order and to reopen depositions that have long been closed and completed.  Federal Rule of Civil Procedure 16(b) requires the Court to enter a scheduling order that governs, among other issues, the discovery cutoff dates.  "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule, 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' " *Id.*  "With respect to diligence, to establish good cause, the party seeking an extension should show that more diligent pursuit was impossible." *Jackson v. PNC Bank*, No. CV 15-1559, 2018 WL 513441, at *9 (W.D. Pa. Jan. 23, 2018), *motion for relief from judgment denied sub nom. Gethers v. PNC Bank*, No. CV 15-1559, 2019 WL 2211117 (W.D. Pa. May 22, 2019).  Simply put, "[d]iscovery should not be extended when a party had an ample opportunity to pursue the evidence during discovery." *Harris v. Computer Assocs. Int'l, Inc.,* 204 F.R.D. 44, 45 (E.D.N.Y.2001) (collecting cases); *Zest IP Holdings, LLC v. Implant*

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

36

*Direct Mfg.*, No. CIV. 10-0541-GPC WVG, 2013 WL 5211940, at *2 (S.D. Cal. Sept. 13, 2013) (granting request to reopen discovery when "it would have been impossible for Defendants to have previously sought to obtain the information it now seeks," but restricting discovery to specific topics). Likewise, a party seeking to reopen a deposition must show good cause and overcome that "'Courts disfavor repeat depositions . . . .'" *Barten v. State Farm Mut. Auto. Ins. Co.*, No. CIV12399TUCCKJLAB, 2014 WL 11512606, at *2 (D. Ariz. July 8, 2014) *quoting Graebner v. James River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1989).

NIC's argument for additional discovery turns these rules on their head. A legitimate motion for leave should identify the specific discovery that a party needs and why it needs it, and then explain why extenuating circumstances prevented the party from obtaining it at the deposition or prior to the discovery cutoff. Instead of even trying to do this, NIC just points to an event (the crime-fraud production and ruling) and then claims that even justifies whatever wholesale discovery NIC wants. This is *post hoc* rationalization at its finest. NIC now feigns that it was waiting on the crime-fraud ruling before it would seek discovery from Wynn Ferrell, Bobba, and Kirtland & Packard. But in its briefing on its Motion to Modify Pre-Trial Schedule, where NIC listed out all anticipated motions and discovery issues, NIC said nothing about its intention to seek new third-party discovery or to recall completed depositions following a ruling on NIC's Omnibus Motion. (Dkt. 415-1.) In fact, despite listing 17 items, all that NIC said about depositions to follow the crime fraud ruling is "[t]he NTG Defendants S. Ferrell, R. Ferrell, Reid, and Knowles must be deposed following the Court's rulings on NIC's motion to compel documents withheld by those individuals. Because those

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

37

individuals have alleged that all communications between them and Non-NTG

defendants are privileged, conducting depositions of those parties is a costly and

futile exercise before receiving guidance from the Court on those same privilege

issues." (*Id.* at 12-17.)

Put differently, the crime-fraud ruling and recent productions have merely

given NIC an excuse to try to reopen discovery.  But those rulings and productions

– in and of themselves – do not establish good cause for the discovery NIC now

seeks.  Instead, in order to establish good cause to reopen discovery, NIC must

show how and why the information that was recently produced will justify new or

further questioning at a recalled deposition that was either obstructed or could not

have been raised previously.  And for any new depositions, NIC must also

establish a nexus and show how and why information in these newly discovery

documents raises new questions, topics or subject matters for witnesses that were

either unknown or that could not have been foreseen.

As seen below, not only has NIC failed to show good cause to reopen

discovery or depositions, but its expansive proposed discovery is also entirely

disproportionate to the needs of this case.

     **1.  NIC's Request for Reopened Depositions Fails Because NIC
Has Not Specified Any Questions, Topics or Subjects that
Need to be Revisited or Answered**

The Federal Rules of Civil Procedure govern the taking of depositions by

oral examination.  A party must obtain leave of the court to conduct a deposition

"if the parties have not stipulated to the deposition" and "the deponent has already

been deposed in the case."  Fed. R. Civ. P. 30(a)(2)(A)(ii).  The court shall only

grant such leave "to the extent consistent with the principles stated in Rule

26(b)(2)," which allows courts to limit discovery in instances in which the court determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C). "The court will not find good need if it determines that one of the Rule 26(b)(2)(C) factors applies." *Barten v. State Farm Mut. Auto. Ins. Co*., No. CV-12-0399-TUC-CKJ, 2014 WL 4722492, at \*4 (D. Ariz. Sept. 23, 2014). Whether to reopen a deposition is a matter committed to the Court's discretion. *Archer v. City of Taft*, No. 1:12-cv-00261-AWI-JLT, 2014 WL 5216653, at \*1 (E.D. Cal. Oct. 14, 2014); *Couch v. Wan*, No. CV-F-08-1621-LJO-DLB, 2012 WL 4433470, at \*3 (E.D. Cal. Sept. 24, 2012).  Critically, "Courts disfavor repeat depositions, except in certain circumstances, which include the 'long passage of time with new evidence [and] new theories added to the complaint.'" *Barten v. State Farm Mut. Auto. Ins. Co.*, No. CIV12399TUCCKJLAB, 2014 WL 11512606, at \*2 (D. Ariz. July 8, 2014) *quoting Graebner v. James River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1989).

Requests to reopen one or two depositions are typically denied absent extreme circumstances.  *Id*.  Here, what NIC is proposing is remarkable both in number and in scope.  NIC seeks to reopen **five** depositions.  By seeking to retake the depositions of Schoonover, Nilon, Pfleg, Demulder and Baslow, NIC essentially asks this Court to allow it to re-do almost every party deposition NIC has taken and to do so **after** discovery has closed and **after** testimony from those

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

39

witnesses has already provided and relied upon by the parties, their experts and their counsel.

Moreover, NIC proposes an unlimited scope of deposition and provides no specificity with regard to what it would question these witnesses about. The defendants, their counsel, the Special Master and the Court are all in the dark here. No one (besides NIC) has any idea about what NIC intends to ask these witnesses. This failing, in and of itself, precludes a finding of any good cause and likewise precludes a recalled deposition. In *Goins v. Cty. of Merced*, No. 113CV01245DADSKO, 2015 WL 9304749, at *4 (E.D. Cal. Dec. 22, 2015), the district court refused to reopen a deposition when the moving party failed to specify the questions: "The Court cannot speculate about what Plaintiffs would seek in a further deposition of Defendant Hutton, and therefore is unable to find that reopening the deposition of Defendant Hutton is warranted." *See also Archer v. City of Taft*, No. 1:12-CV-00261-AWI, 2014 WL 5216653, at *2 (E.D. Cal. Oct. 14, 2014) (denying request to reopen deposition when a party identifies topics but "fails to explain how they bear on the questions presented in this litigation."); *cf. Carlson v. City of Spokane*, No. 13-CV-0320-TOR, 2014 WL 12635920, at *4 (E.D. Wash. Nov. 10, 2014) (reopening deposition but only so "Defendants may redepose Plaintiff for up to one hour on the limited issue of her newly-produced SSA file.").

Indeed, NIC's lengthy motion says virtually nothing about what it would ask these witnesses at recalled depositions. The motion is replete with references to alleged "scheme[s]" to file litigation, the alleged witnesses' roles therein, and alleged improper use of "tester" plaintiffs. None of that is new. Indeed, every one

of those subjects is referred to *ad nauseum* in NIC's Second Amended Complaint. (*See generally* Dkt. 92.)  NIC does not, and cannot, contend that it was previously unable to question these defendants on those topics. (*See generally* NIC Portion.)

The same lack of specificity is similarly fatal to NIC's argument that depositions should be reopened due to privilege issues.  Like the party seeking to reopen depositions in *Ispat Inland, Inc. v. Kemper Envtl., Ltd.*, No. 05 CIV 5401 BSJ HBP, 2007 WL 2197892, at *4 (S.D.N.Y. July 31, 2007), NIC "makes a broad brush challenge to [] assertion of privilege" but "not specify the [] witnesses who allegedly invoked privilege improperly, nor does it identify the specific invocations of privilege that it claims were improper."  That is insufficient.  "[T]he party challenging the invocation of a privilege must, at least, identify what testimony is in issue and explain why it believes the assertion of privilege is improper."  *Id.* Without "this information, it is simply impossible to begin to assess" a privilege challenge.  *Id.*

NIC justified its failure to specify the discovery it seeks by claiming that doing so would compromise its "work product" and by claiming that it cannot be limited since more documents may still be produced.  Neither position is credible. First, the proposition that identifying the discovery a party seeks somehow constitutes disclosure of work product is nonsensical and runs counter to modern discovery where parties routinely propound document requests.  Second and more fundamentally, NIC cannot have its cake and eat it too.  As seen above, a party seeking to reopen specific depositions or discovery must specify the precise discovery it seeks.  Otherwise, the Court can only "speculate about what Plaintiffs would seek in a further deposition" and cannot evaluate whether granting leave "is

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

41

warranted" under the Federal Rules of Civil Procedure. *Goins v. Cty. of Merced*,
No. 113CV01245DADSKO, 2015 WL 9304749, at *4 (E.D. Cal. Dec. 22, 2015).

Accordingly, because NIC has failed to identify any of the questions, topics
or subject matters that would justify these depositions, there can be no finding of
good cause and NIC's request is improper and should be denied.

## 2. NIC Has Not Met its Burden to Reopening the Five Depositions

NIC argues generally that the five depositions were taken two years ago, that
it has "new evidence" for those depositions, and that NTG has injected a "tester"
defense into the case. None of these positions are credible.

NIC claims that a "significant amount of time has passed since NIC deposed
all of these witnesses" in the summer of 2017. But two years is hardly a significant
"passage of time" for deposition testimony in modern litigation, particularly
complex litigation in federal court. If it were, most lay witnesses in complex cases
would be deposed multiple times at great waste and delay. Moreover, it is NIC
that has repeated requested more and more discovery while also seeking to delay
the trial date in this matter. (Dkt. 415-1.)

Nor do "new documents" in and of themselves justify reopening a
deposition. NIC argues that is has additional documents now due to subsequent
productions per this Court's rulings. But that is always true when a party takes a
deposition before all discovery is complete. *Bookhamer v. Sunbeam Products Inc.*,
No. C 09-6024 EMC (DMR), 2012 WL 5188302, *3 (N.D. Cal. 2012) ("Defendant
had ample opportunity to obtain the information that it seeks ... [and] chose to
depose [Plaintiff] relatively early in discovery, rather than wait ... until after the
Oklahoma state court ruled on Defendant's motion to obtain ... documents"); *Love*

*v. Permanente Med. Grp.*, No. C-12-05679 WHO (DMR), 2014 WL 491257, at *2
(N.D. Cal. Feb. 4, 2014) (Denying motion to reopen depositions when "Defendants
have had fair opportunity to obtain the information they now seek.  They chose to
schedule both of Plaintiff's prior depositions relatively early in discovery . . . .");
*E.E.O.C. v. Prod. Fabricators Inc.*, 285 F.R.D. 418, 422-23 (D. Minn. 2012)
(Defendants chose to depose Plaintiff "early in the discovery period, and in spite of
the ongoing dispute about the production of various documents, ... knowing full
well that the eventual production of such documents might produce new
information that Defendants might wish to ask ... about"); *Eaton Corp. v. Weeks*,
No. 13-12392, 2014 WL 700466, *3 (E.D. Mich. 2014) ("the Court may deny
leave to conduct a second deposition of the witness even if relevant documents are
produced subsequent to the deposition if the party taking the deposition ... chose to
conduct the deposition prior to the completion of document discovery") (citations
omitted).

      In any event, the issue is not whether a party can point to some "new"
document that it might conceivably question a witness about at a recalled
deposition.  Rather, the question is whether the "new" evidence justifies reopening
the deposition.  Accordingly, courts routinely refuse to reopen depositions when
parties fail to specify what is in a "new" document that warrants further
examination, or when they merely point to "new evidence" that relates to a subject
the deponent already testified about.  *Arminak v. Arminak & Assocs., LLC*, No. CV
16-3382 JAK (SSX), 2017 WL 10403032, at *5 (C.D. Cal. May 23, 2017)
("Plaintiffs have not shown that there is anything in these specific documents
(which are emails) that would not be largely duplicative of Defendants' prior

testimony or that is of import to their case.  Nothing in the emails themselves
suggest that they are unusual or raise different facts than were specifically
discussed in the earlier deposition testimony."); *Barten v. State Farm Mut. Auto.
Ins. Co.*, No. CIV12399TUCCKJLAB, 2014 WL 11512606, at *3 (D. Ariz. July 8,
2014) ("[I]t appears State Farm seeks to attack Barten's credibility with the newly
discovered evidence" regarding a subject on which he already offered testimony.
"But State Farm can use this evidence to impeach Barten's testimony throughout
these proceedings, and there is little foundation State Farm could lay at a
deposition that it could not lay at trial.  As a result, State Farm cannot justify
reopening Barten's deposition.")  That is particularly true when a moving party,
such as NIC does here, "fail[s] to explain in even general terms how" deposition
testimony "was inadequate or insufficient."  *Goins v. Cty. of Merced*, No.
113CV01245DADSKO, 2015 WL 9304749, at *3 (E.D. Cal. Dec. 22, 2015).

Again, NIC does not even specify what documents it wishes to use for
questioning in these reopened depositions, much less show that those documents
and the information in them open up entirely new areas of inquiry that it could not
have previously explored.  For example, NIC's motion frequently mentions the text
exchange between Baslow and Schoonover at SCHOONOVER00083 *et al.*  Those
documents were produced to NIC on September 5, 2018.  (Sabovich Decl., Exh.
A.)  If NIC were to offer that as the basis for subjecting Schoonover to a third
deposition and Baslow to a second deposition, NIC could not possibly show that it
was diligent in seeking to reopen the depositions.  Not only did NIC wait over one
year, but NIC abandoned a request to reopen the Non-NTG Defendants' (including
Schoonover's) deposition.  Thus, rather than identify specific documents, NIC

bluntly tells the Court that "the Post-privilege discovery here at issue is designed to explore the internal facets of the [alleged] racketeering enterprise[.]"  But the witnesses were already deposed on that alleged issue, just as NIC claims to already have extensive evidence on it.  Indeed, the Special Master already found that NIC "demonstrated [an] ability to obtain substantially equivalent evidence to support its claims . . . through other discovery in this litigation, and from third-parties and others," (Dkt. 458 at 30:18-27), and that was before NIC received documents from the Omnibus crime-fraud ruling.

NIC's position that NTG has somehow added a "tester" affirmative defense which justifies reopening depositions is without merit.  The "tester" issue has always existed in this litigation.  Indeed, NIC's May 10, 2016, Second Amended Complaint refers to NTG's argument regarding the use of "tester plaintiffs."  (Dkt. 92, ¶ 313.)  Moreover, NIC asked about the "tester" issue at deposition.  (Pfleg Tr. at 60:19-61:8; Torres Tr. at 59:14-21; Nilon Tr. at 128:8-17.)  NIC cannot claim that an issue it alleged and about which it already questioned witnesses somehow justifies reopening depositions.

Finally, NIC makes much of the fact that the depositions did not progress the full seven hours, even going so far as to claim somehow that "NIC preserved more than three hours per Non-NTG Defendant."  This, however, cuts against NIC.  The fact that NIC took short depositions tends to show that NIC was able to obtain all of the testimony it sought.  *Couch v. Wan*, No. CV F 08-1621 LJO DLB, 2012 WL 4433470, at *4 (E.D. Cal. Sept. 24, 2012) ("In addition, Officers Couch and Jimenez fail to justify the need for a three-hour reopened deposition, especially considering that they deposed Lt. Gross originally for only two hours.").  The issue

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

45

is whether the depositions were closed.  NIC's counsel is experienced litigators and
"the fact that [they] did not depose [the witnesses] for the full seven hours
permitted under the Federal Rules does not de facto demonstrate that the
deposition was not comprehensive or efficient."  *Goins*, 2015 WL 9304749, at *3.

### 3.  NIC Has Not Shown Good Cause for Discovery from Kirtland & Packard

As with NIC's other requests, NIC's motion puts no limits on the documents
or testimony it seeks from Kirtland & Packard ("K&P").  As NIC has known since
before it even filed this lawsuit, K&P was co-counsel with NTG in certain cases,
including *Demulder v. Carter-Reed Co.*, No. 3:12-cv-0333-BTM (S.D. Cal. Sept.
13, 2012), Dkt. 1; *see also Dronkers v. Kiss My Face LLC,* No. 3:12-01151-JAH
(S.D. Cal. May 11, 2012).

As a preliminary matter, NIC has already exhausted its allotment of seven
non-party depositions.  (Dkt. 567 at 4.)  Absent reconsideration of that Order,
which would not be warranted given the Court findings that discovery this case has
already exceeding all bounds of proportionality, NIC cannot depose more non-
parties.  Furthermore, NIC does not, and cannot, deny that it was unaware of
NTG's relationship with K&P or of K&P's role in the above cases.  NIC's Second
Amended Complaint includes extensive allegations regarding K&P.  (Dkt. 92, ¶¶
205 (Second Amended Complaint alleging that "Michael Louis Kelly of Kirtland
& Packard LLP signed the Dronkers' Complaint."); 232 (alleging that on
November 6, 2012, an NTG attorney provided information to "the Law Offices of
Kirtland & Packard . . ."); 233 (alleging that "in furtherance of the scheme
described above, Defendant Demulder, through Michael Louis Kelly of Kirtland &
Packard, filed a Verified Class Action Complaint against Carter-Reed Company");

234 ("In furtherance of the scheme to defraud Carter-Reed, Demulder, through his attorneys at Kirtland & Packard, caused the Demulder Complaint to be sent by U.S. Mail . . . ."). NIC's initial disclosures also listed K&P attorneys and K&P as an entity. (Dkt. 94-18 at 28-29, 44.) Likewise, NIC's briefing throughout this case has frequently discussed K&P. *See* Dkt. 292-1 at 53, 63; Dkt. 264-2, ¶¶ 243, 244, 255, 265. NIC implies that it only recently learned that K&P "received regular referrals from NTG[.]" However, NIC was discussing NTG's "Wiretap Referrals" to K&P over two years ago. (Dkt. 264-2, ¶ 265.)

As with any discovery it now wishes to pursue, NIC offers a *post-hoc* rationalization based on the crime fraud ruling and production. NIC claims it waited to seek discovery from K&P because "[a]ll of K&P's communications with NTG and the Non-NTG Defendants were therefore subject to facially valid claims of attorney-client privilege and work product" whereas NIC believes that "it has an opportunity to depose K&P now that privileges have been largely overruled regarding those two SAC cases." Again, this is merely pretense to leverage the Omnibus ruling into post-cutoff discovery. It is noteworthy that documents cited by NIC regarding K&P tell NIC nothing it did not already know. Indeed, the only area of inquiry NIC actually mentions is whether "NTG informed K&P of the [allegedly] staged nature of those suits . . . ." If that were a "significant issue," as NIC now claims, NIC could have asked K&P about it before discovery closed. More fundamentally, NIC's Omnibus excuse is not credible. NIC has admitted that it always "contemplated that documents necessary to its claims would be designated 'privileged' . . . ." (Dkt. 415-1 at 8.) NIC has certainly never been reserved in challenging privilege assertion, and it is fair to say that most of the

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

47

litigation in this case today has been addressed to those challenges.  Thus, the proposition that NIC did not seek discovery from K&P out of some reverence for privilege is not credible.

Second, NIC's premise that discovery can now easily be taken from K&P because "privileges have been largely overruled regarding those two SAC cases" is simply not true.  The Court did not "overrule" privilege *en mass*.  Rather, there are specific rulings on specific documents.  Because NIC never subpoenaed K&P, no document over which K&P asserts attorney-client privilege or work product protection has been subject to a privilege challenge.  NIC may point to prior rulings, but K&P is not a party to this litigation and had no involvement in the privilege motions.  "It is axiomatic that law of the case requires an identity of the parties to be bound."  *United States v. Canamari*, 978 F.2d 1266 (9th Cir. 1992).  Thus, K&P will not be bound by any prior decisions on privilege.

What NIC is proposing is more costly discovery and more fights over privilege with a new non-party law firm.  NIC will seek privileged information, K&P will object, NIC will bring motions to compel, and there will be more protracted privilege litigation.  It will be contentious, expensive, consume the parties' and the Court's time, and will provide no benefit for this litigation.  NIC has not identified any needed information that K&P can provide.  If it is so interested in whether or not NTG told K&P that cases were "staged," as NIC alleges, it can ask Scott Ferrell and other NTG lawyers as much at deposition.  While NIC is quick to accuse Scott Ferrell of being untruthful – as most recently demonstrated by NIC's preparation and filing of three demonstrably false

declarations (*see* Dkts. 844, 846 and 847) – that is no justification for seeking duplicative discovery after the discovery deadline has passed.

Accordingly, NIC's request to take discovery from K&P should be denied.

### 4.  NIC Has Not Shown Good Cause to Depose Wynn Ferrell

NIC should not be granted leave to depose Wynn Ferrell.  Again, NIC has already exhausted its allotment of seven non-party depositions.  (Dkt. 567 at 4.) Absent reconsideration of that Order, NIC cannot depose more non-parties. Moreover, NIC also cannot deny that it has known about Wynn Ferrell for years. "Wynn Ferrell" is the first entry on NIC's initial disclosure listing individuals it claimed were "likely to possess knowledge of relevant events or facts, including, *inter alia,* facts surrounding: (1) NTG's acquisition of clients . . ."  (Dkt. 94-18 at 44.)  NIC's First Amended Complaint referred to Wynn Ferrell.  (Dkt. 30, ¶¶ 217, 248 ("NTG has relied frequently on non-attorney agents like Baslow or Wynn Ferrell."); 251 (alleging that "Wynn Ferrell participated in other NTG matters, often filling the role of a 'private investigator' despite having no private investigator license in California or elsewhere.")  NIC discussed Wynn in its crime-fraud motion.  (Dkt. 292 at 15 ("Torres then called. . . the phone number associated with Wynn Ferrell (another unlicensed NTG "investigator" and the father of attorney defendants Ryan and Scott Ferrell).")); 16 ("she spoke again with Wynn Ferrell on August 26 following her call; and she signed a retainer agreement with NTG on August 28"); 67 ("NTG privilege logs reveal that NTG investigator, Wynn Ferrell, emailed Scott Ferrell"); *see also* Dkt. 403 at 14 (NIC's opposition to MSJ discussing Wynn); Dkt. 473 at 7 (NIC objection claiming that "NTG's

plaintiff clients were in close contact with NTG agents Baslow and Wynn Ferrell immediately before their calls.")

NIC chose not to take Wynn Ferrell's deposition.  NIC now claims it "reasonably delayed seeking a deposition of Wynn Ferrell until after the privilege rulings for a number of reasons."  Again, this is a *post hoc* pretense: if NIC was actually planning on taking Wynn Ferrell's deposition after the Omnibus ruling, it would have said that before now.  Nothing in the Omnibus ruling or in a recent document production shows any need for a post-cutoff deposition.  NIC cites only three documents.  Two of them, NTG007983 and NTG015268, came within the Court's June 12, 2018 Order and were produced over one year ago.  (Dkt. 659 at 22.)  Thus, even if NIC did argue that these documents justified a deposition (which NIC does not), NIC would not be able to show reasonable diligence in seeking that deposition more than a year after those documents were produced to it.

Accordingly, NIC's request to depose Wynn Ferrell should be denied.

### 5.  NIC Has Not Shown Good Cause to Depose Daniel Bobba

NIC seeks leave to depose Dan Bobba, the plaintiff in *Morales, et al. v. Magna, Inc., et al.*, No. 3:10-cv-1601-EDL (N.D. Cal. filed Apr. 14, 2010) and a non-party witness that NIC has always known about.  Again, NIC has already used up its allotment of seven non-party depositions.  (Dkt. 567 at 4.)  Hence, unless the Court were to somehow reconsider that Order, NIC cannot obtain depose more non-parties.  But in addition to this, NIC cannot show that it was reasonably diligent in seeking Bobba's deposition.  As a plaintiff in one of the predicate matters, it should come as no surprise that Bobba is prominent in NIC's operative

Complaint and many of its filings.  (Dkt. 92, ¶¶ 265-281, 375(b), 378; Dkt. 63-6 (Bobba declaration); Dkt. 90 at 3.)  Over three years ago, NIC was citing Bobba as supporting its theories, claiming that "Bobba's public statements corroborate NTG's admission concerning "tester" plaintiffs in CLRA matters, and affirm that NTG had its clients take certain actions to build contrived cases."  (Dkt. 71 at 6.)

NIC's only excuse for not taking Bobba's deposition within the discovery timelimit is NIC's claim that "NIC did not know Mr. Bobba's whereabouts early in this case." (Furman Decl., ¶ 12.)  That is hardly a declaration of diligence.  There is nothing provided from which it could be concluded that NIC made reasonable efforts to locate Bobba.  Indeed, NIC's rather coy wording suggests that it did not even retain an investigator to locate Bobba's until well after discovery had closed. *Id.*

Because NIC cannot show diligence in seeking to take Bobba's deposition prior to the discovery cutoff, NIC's request to depose Bobba should be denied.

### 6.  NIC's Request for Leave to File Yet Another Crime-Fraud Motion Should be Denied

NIC's also seeks re-litigate the same crime-fraud motion the Court already found was disproportionate to the needs and amount in controversy in this case. This request is both procedurally improper and substantively without merit.

First, the request is procedurally barred by the law of the case doctrine and NIC's lack of diligence.  In April 2017, sixteen (16) months after this lawsuit was initiated, NIC filed its crime-fraud motion seeking the production or *in camera* review of 1,047 documents from defendants' privilege log.   (*See* Dkt. 291-1.) NIC then filed its Supplemental Memorandum in Support of the Crime-Fraud Motion, adding more documents from that privilege log.  Specifically, NIC asked

for an order compelling production of an "additional 649 documents now listed in NIC's (Supplemental) Appendix C," or that those documents be added to the *in camera* review. (*See* Dkt. 294 at 2:3-6 (seeking disclosure of 1,696 privileged documents in total).)

After dozens of filings and multiple orders by the Special Master, the Court, and even the Ninth Circuit Court of Appeals, NIC's Omnibus motion is resolved. (Dkts. 788; 820). Now NIC seeks to file another crime-fraud motion regarding documents on the same privilege log that NIC challenged over two years ago. NIC's challenges to that privilege log have already been addressed and the rulings are the law of the case on NIC. *United Steel Workers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008).

NIC also specifically seeks discovery of "Schoonover's lawsuit against Vogue International (a non-SAC case)[.]" Law of the case is doubly applicable in this regard because the Court already denied NIC's request for discovery regarding that exact case. More specifically, the Court ruled:

> The Court finds that further discovery is not proportional to the needs of the case. First, NIC has not sufficiently connected these new matters to its existing RICO allegations. With respect to Pfleg, NIC has not shown that discovery into four additional lawsuits will yield evidence of RICO activity. Mere participation in multiple lawsuits — without more — is insufficient to show a pattern of racketeering activity. And, with respect to Schoonover, NIC knew from his statements to Baker that he had been involved in multiple cases. See

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

52

Docket No. 291-6 ¶¶ 18(d), (g). ***Therefore, NIC has unduly delayed seeking discovery into his case against Vogue International***

(Dkt. 414 at 7 (emphasis added).)

That ruling is law of the case and absent reconsideration, is binding on NIC. Moreover, that ruling was made over two years ago. If by July 2017, NIC had already "unduly delayed" in seeking discovery regarding the Vogue case, then seeking discovery in October 2019 is even less acceptable.

NIC's only excuse for attempting to supplement its Omnibus motion over two years after filing and after the motion has already been decided is its claim that "NIC has new information that supports the need to review." That is unsupported, which can be seen in the fact that NIC was discussing the very first document on its Appendix, SCHOONOVER00066, back in 2017. (NIC Appendix A at 1; Dkt. 392 at 7; Dkt. 496 at 20.) If NIC wanted to bring a privilege challenge regarding these documents, it should have done so in its Omnibus motion.

Accordingly, NIC's request for leave to file another crime-fraud motion should be denied.

### 7. The Discovery NIC Seeks is Disproportionate to the Amount in Controversy and Importance of the Issues

Federal Rule of Civil Procedure 26(b)(1) requires district courts to consider whether discovery is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1); *Nation Star Mortgage LLC v. Flamingo Trails No. 7 Landscape*

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

53

*Maintenance Ass'n*, 316 F.R.D. 327, 331 (D. Nev. 2016) ("The recent amendments to the discovery rules [adding proportionality] are meant to curb the culture of scorched earth litigation tactics by emphasizing the importance of ensuring that the discovery provides parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." (Internal quotations and brackets omitted) (citation omitted).)

Earlier this year, the Court held quite clearly that "the burdens imposed by this litigation are not justified by the amount in controversy" and that "the amount in controversy is not so high as to validate unending discovery, nor is it so high as to justify the substantial burden placed on the parties and the Court by the discovery at issue in this motion [seeking *in camera* review.]" (Dkt. 788 at 13.) The Court went on to reject NIC's claim that it could receive punitive damages up to 72 times the award and stated it "fundamentally disagrees with NIC's argument" that "the parties' access to resources also favors the discovery at issue because the NTG Defendants' defense 'is funded by an unlimited insurance contract.' " (*Id.* at 14.) As the Court explained ultimately, the "Court must draw a line past which discovery is no longer proportional to the needs of the case." (Dkt. 788 at 15.)

The Court drew that line on March 19, 2019. Yet, NIC seems to have misinterpreted that line as a half-way marker. Thus, its current motion seeks to re-do almost every party deposition that has been taken and to open up at least three new discovery fronts by seeking depositions and documents from Kirtland & Packard, Wynn Ferrell and Dan Bobba.

NIC downplays the significance of the Court's proportionality finding, interpreting it as finding that the case is worth "millions," which it did not do, and

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

54

then claiming it is limited to the *in camera* crime-fraud review context.  Neither proposition has any support in the text of the order or in the case law generally.

Here, there is no question that NIC's additional discovery will be exorbitantly expensive, both in terms of judicial and party resources, and in terms of non-party inconvenience and moeny.  NIC seeks to reopen five depositions that it completed and closed.  This, in and of itself, would be a significant imposition for witnesses and multiple counsel to review prior testimony, prepare for the deposition, and attend the deposition.  Given that this case has four sets of separate counsel, the cost of those depositions could easily reach six figures.

Moreover, as experience has taught, subsequent litigation from those depositions is a virtual certainty.  Indeed, this is the second time defendants have been put upon to defend against NIC seeking to reopen these depositions.  (Dkt. 518.)  Two additional factors make future litigation likely.  First, NIC has categorically refused to indicate the questions, or even subject of questions, it seeks to ask.  Second, NIC clearly has an expansive view of the rulings to date on crime-fraud and implied waiver (which has to be narrowly construed).  Accordingly, there is an overwhelming likelihood that recalled depositions will also result in substantial motion practice.

Beyond the cost, there is great substantive prejudice to Defendants.  *Singleton v. Hedgepath*, No. 1:08-CV-00095-AWI, 2015 WL 1893982, at *1 (E.D. Cal. Apr. 24, 2015) ("The court may also consider the prejudice to the party opposing the modification.").  Lay discovery is closed, expert reports are complete and expert depositions taken, and summary judgment motions were filed and decided.  Except for the four depositions of NTG lawyers, the case is ready for

LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES

55

trial. NIC's request amounts to a "do over" of NIC's discovery. It would not only delay the trial, but will likely require re-doing expert discovery, and drastically altering trial preparations and strategy. "[P]rejudice to the non-moving party can occur when the trial is delayed, additional costs will be incurred, and major alterations in trial tactics and strategy will result. *Morris v. Sutton*, No. 117CV01488AWISAB, 2019 WL 2994291, at *6 (E.D. Cal. July 9, 2019).

Against this cost, there is no attendant benefit in the nonspecific discovery that NIC seeks. As for the reopened depositions, NIC had a full and fair opportunity to depose the witnesses. It closed each of the depositions after asking its questions. NIC initially sought to reopen the depositions in late 2017, then abandoned the effort. The other discovery NIC seeks is from individuals or entities it has known of for years and simply chose not to depose. NIC has already received extensive discovery. It has taken 22 individual and 10 expert depositions and has received well over 26,000 pages of documents just from NTG. (Dkt. 788 at 14-15.) Since this Court's reconsideration ruling, NIC has received documents pursuant to the crime-fraud order, which it claims in conclusory fashion throughout its motion are "highly probative" and "highly relevant."

NIC acts as the proverbial discovery glutton where the more it gets the more it argues it needs. *See Abbott v. Wyoming Cty. Sheriff's Office*, 2017 WL 2115381, at *2 (W.D.N.Y. May 16, 2017) (considerations of proportionality can include reviewing whether discovery production has reached a point of diminishing returns); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) ("Rule 26(b)(1)'s proportionality requirement means [that a document's] 'marginal utility' must also be considered.") (citations

omitted); *Updike v. Clackamas County*, No. 3:15-CV-00723-SI, 2016 WL 111424, at *1 (D. Or. Jan. 11, 2016) ("But at some point, discovery yields only diminishing returns and increasing expenses.").

Accordingly, NIC's request is not proportionate to the amount in controversy or the issues in this case and should be denied.

## C. CONCLUSION

For the foregoing reasons, NIC's motion for leave should be denied.

Dated:  October 14, 2019          Respectfully submitted,

FOR PLAINTIFF NATURAL
IMMUNOGENICS

*/s/ Joshua S. Furman*
Joshua S. Furman (*Pro Hac Vice*)
jfurman@emord.com
Peter A. Arhangelsky (CA 291325)
parhangelsky@emord.com
EMORD & ASSOCIATES, P.C.
2730 S. Val Vista Dr.
Bldg 6, Ste. 133
Gilbert, AZ 85295
Ph:  (602) 388-8899
Fx:  (602) 393-4361
*Attorneys for Plaintiff Natural-*
*Immunogenics*

FOR SCOTT FERRELL AND NTG

*/s/ David J. Darnell*
David J. Darnell (CA 210166)
ddarnell@callahan-law.com
CALLAHAN & BLAINE
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Ph: (714) 241-4444
Fx: (714) 241-4445
*Attorneys for Defendants Newport Trial*
*Group PC, Scott Ferrell,*

FOR THE NON-NTG
DEFENDANTS

*/s/ Brendan M. Ford*
Brendan M. Ford (CA 224333)
bford@forddiulio.com
FORD & DIULIO PC
650 Town Center Drive, Suite 760
Costa Mesa, CA 92626
Ph:  (714) 384-5540
Fx:  (844) 437-7201
*Attorneys for Defendants Andrew*
*Nilon, Sam Schoonover, Sam Pfleg,*
*Giovanni Sandoval, Taylor*
*Demulder, and Matthew Dronkers*

FOR RYAN FERRELL, VICTORIA
KNOWLES, DAVID REID AND
ANDREW BASLOW

*/s/ Kyle A. Riddles*
Nicole Whyte (CA 156503)
Benjamin Price (CA 267400)
Kyle A. Riddles (CA 309854)
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street, Second Floor
Newport Beach, cA 92660
Ph: (949) 221-1000
Fx: (949) 221-1001
*Attorneys for Ryan Ferrell, Victoria*
*Knowles, David Reid and Andrew Baslow*

1   Attestation pursuant to L.R. 5-4.3.4(a)(2)(i) regarding signatures: I, Joshua S.
2   Furman, attest that all other signatories listed, and on whose behalf this filing is
3   submitted, concur in the filing's content and have authorized the filing.

4   DATED:  October 14, 2019

5
6                                      By:     /s/ Joshua S. Furman
                                              Joshua S. Furman
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2019 the foregoing, **LOCAL RULE 37 JOINT STIPULATION RE: PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY FOLLOWING RESOLUTION OF PRIVILEGE ISSUES** was electronically filed using the Court's CM/ECF system and was sent by that system to the following:

Brendan M. Ford, Esq.
bford@FordDiulio, PC
650 Town Center Dr, Ste 760
Costa Mesa, CA 92625
Tel: (714) 384-5540
*Attorney for Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover, Matthew Dronkers, Taylor Demulder, Sam Pfleg,*

David J. Darnell, Esq.
ddarnell@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
*Attorney for Newport Trial Group and Scott Ferrell*

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1   Nicole Whyte
    nwhyte@bremerwhyte.com
2   Benjamin Price
    bprice@bremerwhyte.com
3   Kyle A. Riddles
    kriddles@bremerwhyte.com
4
    Bremer Whyte Brown & O'Meara, LLP
5   20320 S.W. Birch Street
6   Second Floor
    Newport Beach, CA 92660
7   Tel: (949) 211-1000
8   *Attorneys for Ryan Ferrell. Andre Baslow, David Reid, and Victoria*
9   *Knowles*

10

11
                                        */s/ Joshua S. Furman*
12                                      Joshua S. Furman, Esq.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28