Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Jonathan W. Emord, Esq. (pro hac vice)
jemord@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Drive, Bldg 6, Ste 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff Natural Immunogenics Corp.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS, a Florida corporation,<br><br>                    Plaintiff,<br>     v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>                    Defendants. | Case No.: 8:15-cv-02034-JVS-JCG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS RE WITNESS TAMPERING**<br><br>Date:      November 18, 2019<br>Time:      1:30 PM<br>Judge:     Hon. James V. Selna<br>Room:      10C |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................1

II.    FACTS .......................................................................................................2

III.   LEGAL STANDARD ................................................................................4

IV.    ARGUMENT.............................................................................................5

    A.   Ferrell Engaged in Unlawful and Premeditated Witness
       Tampering and Intimidation ...................................................................5

    B.   The Court Must Issue Sanctions to Uphold the Integrity of
       the Court's Proceedings and to Punish Illegal and
       Unethical Conduct ...............................................................................10

      1.   The Court should Bar Ferrell or His Agents from
         Contacting the Witnesses Outside of Formal,
         Adversarial Discovery..........................................................................11

      2.   The Court Should Award NIC Its Attorneys' Fees for
         Bringing this Motion............................................................................11

      3.   The Court Should Issue Any Other Relief that the Court
         Deems Necessary to Punish and Deter, Including
         Dispositive or Issue Preclusive Sanctions ..........................................12

V.     CONCLUSION ........................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Escobar v. Lynch*, 846 F.3d 1019 (9th Cir. 2017) ....................................................6

*Everett v. Bankers Life & Cas. Co.*, No. C13-2246, 2015 WL 135775 (W.D. Wash. Jan. 9, 2015) ......................................................11

*Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322 (9th Cir. 1976) ...................10

*Graves v. Standard Ins. Co.*, No. 3:14-CV-558-DJH, 2015 WL 13714166 (W.D. Ky. May 22, 2015) .......................................................7

*Helios Software GMBH v. Root Int'l Distribution Sys., Inc.*, No. C-94-20838 RPA, 1996 WL 162962 (N.D. Cal. Apr. 5, 1996) .................................5

*Hussein v. Frederick*, 436 F. App'x 831 (9th Cir. 2011) .....................................7, 9

*Jacob B. v. Cty. of Shasta*, 40 Cal. 4th 948, 154 P.3d 1003 (2007)....................9, 12

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) .......................................7, 9

*Michael v. Boutwell*, 138 F. Supp. 3d 761 (N.D. Miss. 2015) ......................... 12, 13

*People v. Choynski*, 95 Cal. 640 (1892) ...................................................8

*People v. Wahidi*, 222 Cal. App. 4th 802, 807, 166 Cal. Rptr. 3d 416 (2013)................................................................. 5, 6, 8

*Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016)...............................10

*Rent-A-Center v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) .........................................................5

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752 (1980)..........................................4

*Stanley v. Wong*, No. CIV S-95-1500 FCDGGH, 2006 WL 1523128 (E.D. Cal. May 31, 2006) .......................................................6, 7

*U.S. v. Maggitt*, 784 F.2d 590 (5th Cir. 1986)...........................................5

*United States v. Cruzado-Laureano*, 404 F.3d 470 (1st Cir. 2005).........................8

*United States v. Miller*, 531 F.3d 340 (6th Cir. 2008)....................................7

*United States v. Navarro*, 608 F.3d 529 (9th Cir. Cal. June 11, 2010) ...................8

*Vargas v. Peltz*, 901 F.Supp. 1572 (S.D. Fla. 1995)......................................... 12, 13

*Youngevity Int'l v. Smith*, No. 16-CV-704-BTM-JLB, 2018 WL
   747658 (S.D. Cal. Feb. 6, 2018)........................................................7, 11

**Statutes**

18 U.S.C. § 1512(b) ........................................................................... passim

Cal. Penal § 136.1 ............................................................... 1, 5, 6

## I.   <u>INTRODUCTION</u>

Plaintiff Natural Immunogenics Corp. ("NIC") hereby moves for sanctions against Defendant Scott J. Ferrell for witness tampering.  At his direction, individuals identifying themselves as his agents made threats to Charlotte Carlberg, MaryAnn Buc, and Jim Buc in an effort to cause them to change or withdraw their testimony in this case.  *See generally* Declaration of MaryAnn Buc ("MAB"); *see also* Exhibit A.  Ferrell's demands that those individuals execute declarations changing their testimony, or withdraw as witnesses, or face financial and legal penalties was made **in writing** and is attached hereto as Exhibit A.  *See* Exhibit A at 11-13.  That conduct facially violates 18 U.S.C. § 1512(b) and Cal. Penal § 136.1, constituting criminal witness tampering and intimidation.  The witnesses genuinely fear Defendant Ferrell, believing his demands that they change their testimony or face litigation and loss of property to be credible.  *See* MAB at ¶¶ 6-7, 11-13, 15-16.  Ferrell's threats of litigation are for suits that cannot lawfully be maintained and, so, are baseless and incompetent.  The misleading nature of the threats magnifies the need for sanctions because it further evidences Ferrell's bad faith.

NIC therefore asks for the following reasonable sanctions against Defendant Scott J. Ferrell designed to protect the witnesses from further interference and to uphold the integrity of the Court's processes:

(1)   An injunction barring Scott Ferrell from making any *ex parte* contacts with MaryAnn Buc, Jim Buc, and Charlotte Carlberg directly or indirectly, personally or through any agent, except through official process (e.g., subpoena);

(2)   An Order to Scott Ferrell personally, requiring him to pay NIC's reasonable fees and costs associated with this motion for sanctions;

(3)   An Order to Show Cause why Scott Ferrell ought not receive dispositive or issue preclusive sanctions in this case; and

(4)   An Order to Show Cause why this Court ought not refer Scott Ferrell, an attorney licensed to practice law in California, to the California State Bar and the California Attorney General to assess the extent to which further legal action is warranted in light of the witness tampering.

## II.   **FACTS**

NIC alleges in this suit that Defendant Scott Ferrell operated a racketeering enterprise using the manufacture and threat of fraudulent lawsuits to extort businesses.  Dkt. 92.  That enterprise caused NIC injury when Ferrell pursued a fraudulent lawsuit against NIC in 2012.  *Id.*  Ferrell first threatened NIC through a demand letter that he sent on December 27, 2011, purportedly on behalf of an unnamed California consumer.  In this case, but not in the prior suit, Ferrell has claimed that he sent the demand letter on behalf of Trycia Carlberg, a woman who is now deceased, having died from cancer in 2012.  *See* Dkt. 785 at 11.

After receiving a supplemental production from Ferrell on July 3, 2019, NIC learned of additional witnesses with knowledge relevant to Ferrell's Carlberg narrative.  *See* Declaration of Jennifer Fernandes ("Fernandes Decl.") at ¶¶ 3-4. NIC identified those individuals on a supplemental Rule 26(a)(1) disclosure on August 26, 2019.  *See* Declaration of Joshua Furman ("JSF") at ¶ 3.  On September 19, 2019, NIC filed a motion for sanctions against Scott Ferrell that attached declarations from Charlotte Carlberg, MaryAnn Buc, and Jim Buc.  *See* Dkt. 844.

On September 27, 2019, an investigator hired by Scott Ferrell attempted to contact MaryAnn Buc and Jim Buc by telephone.[1]  *See* MAB at ¶¶ 3-4; *see also* Exhibit A.  The Bucs, who are unrepresented by legal counsel, were sent written text messages by the two Ferrell agents.  *See* Exhibit A.  In the text messages,

---

[1] On that same date, Scott Ferrell sent two men (private detectives operating as his agents) to the home of Charlotte Carlberg (a single woman of senior age). *See* Exh. A at 2-3.  They confronted her regarding her declaration and stated that she would suffer severe ramifications as a result.  *Id.*; *see also* Fernandes Decl. at ¶ 7.

Ferrell's agents represented that their contacts were on behalf of "attorney Scott Ferrell"[2] for the purpose of enabling the Bucs to withdraw as witnesses or execute new declarations prepared for them by Scott Ferrell himself. *Id.* at 3 (stating that the purpose for the communication is for "[Charlotte Carlberg] and the Bucs [if] they desire to withdraw from the ongoing case of NTG v. NIC (sic)."), 6 (requesting that Mary Ann Buc identify if she and her husband would be willing to modify or "withdraw [their] declaration[s] and [themselves] from the ongoing dispute between the two major entities"), 12 (again requesting that the Bucs' "withdraw" their declarations). The "investigators" asked no questions concerning the Bucs' recollection of relevant events or possession of corroborating documentation. *See generally* Exh. A. They performed no factual investigation of any kind related to the content of declarations filed with the Court. *Id.* The communications make clear that the purpose of the interaction with the witnesses was to obtain modification or withdrawal of their testimony in the pending matter.

Ferrell's two agents initially attempted to intimidate and threaten the witnesses by implication. They made statements indicating that the Bucs were likely to be in significant legal trouble unless they altered their testimony. Exhibit A at 5, 9, 11-13. They stated or heavily implied that Ferrell had moved the Court to hold the Bucs in contempt, that Ferrell's evidence was "overwhelming," and that if the Bucs did not change or withdraw their testimony they would likely be sanctioned, found to have committed perjury, severely penalized, and otherwise subject to severe sanctions. *Id.* Ferrell's agent told the witnesses that, if they did not withdraw or modify their testimony, they would have to answer for their testimony. *Id.* at 9, 11-12. Notably, Ferrell's agent tacitly admitted that he had

---

[2] Although Ferrell (an attorney licensed to practice law in California) is not an attorney of record in this case, his agents repeatedly identified him as an attorney. Those statements had the effect of increasing Mr. Ferrell's stature and adding apparent credibility to the threats they made pertaining to these legal proceedings.

told Charlotte Carlberg that her home could be taken if Charlotte did not change her testimony and that the Court had ruled in Ferrell's favor.  *Id*. at 5 (investigator does not deny stating that Charlotte could lose her home and notes that "according to the law" such sanctions "can be instituted").

MaryAnn and Jim Buc did not agree to withdraw or modify their declarations.  Ferrell's agents then shifted to direct threats memorialized in the following exchange:

> Mr. Ferrell is very upset and told us he had(sic) **prepared a lawsuit that he intends to file against you early next week** because you falsely accused him of a crime.  **If you wish to withdraw your declaration and correct the record before this escalates**, he invites you to do so **by signing a new, truthful declaration**.

*See* Exhibit A at 12.  By that message, Ferrell directly threatened to sue the witnesses if they did not withdraw their declarations and sign a "new" declaration. That final, explicit threat also places the prior implied threats into context.

The Bucs believed Defendant Ferrell's threat to sue was credible and likely to be carried out.  *See* MAB at ¶ 7-8.  They believed Ferrell would sue unless they withdrew their declarations or signed new declarations prepared by Ferrell.  *Id*. The Bucs remain fearful of Ferrell, and believe that he intends to retaliate against them for their provision of testimony adverse to his interests in this federal proceeding.  *Id*. at ¶¶ 5-7, 11-16.  While the Bucs stand by their testimony and believe their declarations to be true and accurate, they have since asked to be withdrawn as witnesses from this case as a result of Mr. Ferrell's threats.  *See Id*. at ¶¶ 14, 16.

## III.   **LEGAL STANDARD**

Federal Courts have the inherent power to "levy sanctions in response to abusive litigation practices."  *See* Dkt. 130 (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980)).  It is within the inherent power of the Court to sanction

a party for conduct in violation of Section 1512.  *Helios Software GMBH v. Root Int'l Distribution Sys., Inc.*, No. C-94-20838 RPA, 1996 WL 162962, at *2 (N.D. Cal. Apr. 5, 1996) (citing *Rent-A-Center v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991)).

Under the Victim and Witness Protection Act of 1982, anyone who knowingly intimidates, threatens, or harasses another with the intent to influence, modify, or cause the withholding of testimony is guilty of a federal offense.  *See* 18 U.S.C. § 1512.  "It is the endeavor to influence, not whether the witness was actually influenced, that is forbidden."  *Helios Software*, No. C-94-20838 RPA, 1996 WL 162962, at *2.  To determine the intent of the accused tampering party, the courts look to whether the act complained of would have a reasonable tendency to influence or intimidate the witness.  *U.S. v. Maggitt*, 784 F.2d 590, 593 (5th Cir. 1986).  The California criminal code also prohibits witness intimidation.  *See* Cal. Penal § 136.1.  Anyone who intentionally and maliciously attempts to prevent or dissuade any witness from providing testimony in an official proceeding is guilty of a felony.  *Id.*  Malice is broadly defined as either the intent to "vex, annoy, harm, or injure" or to "thwart or interfere in any manner with the orderly administration of justice."  *People v. Wahidi*, 222 Cal. App. 4th 802, 807, 166 Cal. Rptr. 3d 416, 419 (2013).

## IV.  ARGUMENT

### A. Ferrell Engaged in Unlawful and Premeditated Witness Tampering and Intimidation

The elements of witness tampering under federal law are (1) the use of threats, intimidation, or harassment (2) with the intent to influence, modify, or cause the withholding of testimony.  *See* 18 U.S.C. § 1512(b).  The evident intent, not the outcome, of the tampering is dispositive.  *Helios Software*, No. C-94-20838 RPA, 1996 WL 162962, at *2.  Moreover, "the facts of unduly influencing a witness should not have to rise to the level of a federal felony before a court can find misconduct in a civil setting."  *Stanley v. Wong*, No. CIV S-95-1500

FCDGGH, 2006 WL 1523128, at *6 (E.D. Cal. May 31, 2006).

"The elements of witness intimidation in California are: (1) knowingly and maliciously (2) preventing or dissuading or attempting to prevent or dissuade (3) a victim or a witness (4) from attending or giving testimony at any trial, proceeding, or inquiry authorized by law. *See Escobar v. Lynch*, 846 F.3d 1019, 1024 (9th Cir. 2017) (citing *Wahidi*, 222 Cal.App.4th at 806-07, 166 Cal.Rptr.3d at 418–19). Malice under the statute is established by "an intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." *Id*. at 1024-25 (quoting Cal. Penal Code § 136(1)).

Here, the elements of both the federal witness tampering law and the California witness intimidation law is satisfied from a plain reading of the text messages sent by Defendant Scott Ferrell's agents to the Bucs.

The investigators identified themselves as authorized agents of Ferrell who were sent for the purpose of enabling the withdrawal of witness testimony or the provision of new testimony. *See* Exhibit A at 3, 6-9, 11-12. They never attempted to investigate the circumstances or facts germane to the issues in dispute. *See generally id*. Instead, each contact was made for the stated purpose of enabling the witnesses' withdrawal from the *NIC v. NTG* case or their provision of new testimony. Thus, the purpose of the communications is self-evidently to influence, modify, or prevent testimony by witnesses in a federal case. That falls squarely within the plain meaning of 18 U.S.C. § 1512 and Penal Code § 136.1. Therefore, the only question to be evaluated by the Court is whether the communications involved threats, intimidation, or harassment.

There can be no reasonable dispute that the communications involved threats and intimidation. The final message sent to the Bucs contained an express threat conditioned if they would not withdraw or modify their testimony. *See* Exhibit A at 11-12. Ferrell claimed to have a lawsuit prepared against the Bucs that he would file within the week unless they agreed to "withdraw" their testimony. *Id*. at 12.

That message alone satisfies the elements of witness tampering.  To be sure, a reasonable person would be threatened or intimidated when presented with a credible and imminent threat of litigation by an attorney.  The threat is even more imposing and coercive where, as here, the individuals receiving it are unrepresented non-attorneys largely unfamiliar with the legal system.  Courts nationwide have held that threatening witnesses with legal or administrative action if they will not change or withdraw testimony constitutes criminal witness tampering.  *See Hussein v. Frederick*, 436 F. App'x 831, 832 (9th Cir. 2011) (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958–61 (9th Cir. 2006) (upholding dispositive sanctions based on plaintiff's use of a lawsuit as a means to intimidate a witness); *see also United States v. Miller*, 531 F.3d 340, 350–52 (6th Cir. 2008) (affirming witness tampering conviction under 18 USC § 1512(b)(3) for threatening a non-party witness with defamation "if she spoke with the FBI regarding its investigation of defendant"); *Graves v. Standard Ins. Co.*, No. 3:14-CV-558-DJH, 2015 WL 13714166, at *3 (W.D. Ky. May 22, 2015); *Youngevity Int'l v. Smith*, No. 16-CV-704-BTM-JLB, 2018 WL 747658, at *2 (S.D. Cal. Feb. 6, 2018).

A review of the entire content communicated by Ferrell's two agents further establishes its threatening nature and purpose.  *Stanley v. Wong*, No. CIV S-95-1500 FCDGGH, 2006 WL 1523128, at *8 (when interacting with a witness, a lawyer or his agent, may not intentionally cause the witness to fear for their own interests or believe they would be subject to penalty unless they do what the interviewer asks)  Ferrell's agents repeatedly told the witnesses that they would suffer severe penalties if they did not change their testimony.  Exh. A at 5, 9, 11-12.  Those penalties ranged from perjury to other unnamed "severe" sanctions.  *Id*.  Ferrell's agents apparently told Charlotte Carlberg that she could "lose everything."  *See* MAB at ¶ 2; *see also* Exh. A at 5.  Ferrell attempted to bolster the credibility of the threats by stating (through his agents) that his evidence was

"overwhelming," and that adverse action against the Bucs was likely.  *See* Exh. A at 9, 11.  Moreover, Ferrell's agents referred to Ferrell as "attorney Scott Ferrell" to increase the credibility and immediacy of their threats to take legal action.  Id. at 3-5, 10.  Any reasonable person in the Bucs' position would have received those messages attached as Exhibit A and believed them a serious imminent threat that, unless they immediately withdrew or changed their testimony would cause them to face a potentially devastating lawsuit from Ferrell.[3]

Federal Courts have criminally convicted defendants under Section 1512 for threats less egregious than those present here.  *See e.g., United States v. Cruzado-Laureano*, 404 F.3d 470, 487-488 (1st Cir. 2005) (affirming a witness tampering conviction based on a defendant harassing the witnesses' business and asking witnesses to "tell the truth").  Moreover, witness intimidation under California law has been found where a defendant asked a witness to resolve the matter outside of Court and did not even expressly demand that the witness not testify.  *Wahidi*, 222 Cal. App. 4th at 805-06, 166 Cal. Rptr. 3d at 418.  The Court in *Wahidi* upheld the conviction, explaining that "[t]he circumstances in which the defendant's statement is made, not just the statement itself, must be considered to determine whether the statement constitutes an attempt to dissuade a witness from testifying."  *Id*. at 806.  The Court explained that even where "the defendant's actions or statements are ambiguous, but reasonably may be interpreted as intending to achieve the future consequence of dissuading the witness from testifying, the offense has been

---

[3] While Ferrell's agents threats are both express and implied, the fact that some of the threats are implied is not a defense.  *United States v. Navarro*, 608 F.3d 529, 533-534 (9th Cir. Cal. June 11, 2010) ("There is no support for the proposition that a threat must consist of express words.  Nor would the proposition make any sense or be consistent with the interpretation of threats in other contexts."); *People v. Choynski*, 95 Cal. 640, 641-42 (1892) ("Parties guilty of [extortion] . . . seldom . . . speak out boldly and plainly, but deal in mysterious and ambiguous phrases . . . [which] in light of surrounding circumstances . . . have no uncertain meaning.").

committed." *Id*.  The *Wahidi* Court explained that malice was present because the defendant's intent to prevent the witness from testifying in an ongoing proceeding constituted an attempt to "thwart or interfere in any manner with the orderly administration of justice." *Id.* at 807.

Here, Ferrell's agent stated that Ferrell's intent was to cause the withdrawal of the Bucs' testimony which was then-pending before the Court on a calendared motion and to cause their complete withdrawal as witnesses in the case.  *See* Exh. A at 3.  Ferrell's agent attempted to persuade the witnesses to withdraw through threats of frivolous litigation.  *Id*. at 12.  Ferrell's threat of litigation was intentionally false and misleading.  The witness testimony in this case is protected by the litigation privilege and prohibits any civil action based on the provision of testimony.  *Jacob B. v. Cty. of Shasta*, 40 Cal. 4th 948, 955, 154 P.3d 1003, 1007 (2007) (section 47 provides absolute immunity from civil liability for testimony provided even where the testimony is malicious or perjurious).  Notably, the California Supreme Court has explained that Section 47(b) is designed **to keep witnesses "free from intimidation by the possibility of civil liability for what they say."**[4]  *Id.* (emphasis added).  Any action instituted by Ferrell against the witnesses for their provision of testimony in this case would be malicious prosecution and an abuse of process.  Thus, the nature of Ferrell's threat was itself illegal, tortious, and misleading.  The Ninth Circuit has upheld dispositive sanctions imposed as a result of a party's use of retaliatory litigation as a means to intimidate a witness.  *Hussein*, 436 F. App'x at 832 (citing *Leon*, 464 F.3d at 958–61.  Ferrell's baseless threats made for the purpose of causing the withholding or withdrawal of testimony *or* the provision of different testimony facially violates

---

[4] The California legislature has therefore pronounced a desire to prevent witness intimidation *through the threat of civil legal proceedings*.  Because the conduct here is in violation of California law and undermines the legal system in a manner expressly contemplated and proscribed by the California legislature, the Court must impose sanctions.

both the federal and state statute's prohibiting interference with witnesses.

Finally, while the mere *intent* to alter or cause the withdrawal of testimony is dispositive under both state and federal law, the Court is additionally justified in sanctioning for witness tampering because the tampering did, in fact, cause the withdrawal of witnesses in this case. The Bucs no longer wish to participate in this case due to the threatening messages they received from Ferrell's agents and the story they heard from Charlotte Carlberg regarding her interaction with Ferrell's agents at her home. *See* MAB at ¶ 16. Ferrell has thus succeeded, in silencing witnesses possessed of information adverse to his interests. While protective action by this Court may ultimately convince the witnesses that further participation is safe, at this point, Ferrell has succeeded in his tampering efforts. The Court should sanction Ferrell for witness tampering.

## B. The Court Must Issue Sanctions to Uphold the Integrity of the Court's Proceedings and to Punish Illegal and Unethical Conduct

Defendant's resort to witness tampering and intimidation should not be countenanced by this Court without a substantial sanction. Witness tampering thwarts the search for truth by causing testimony to change from an independent recitation of the facts observed by a witness to a dependent, biased recitation of the facts, influenced by extrajudicial threats. "The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession." *Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322, 1324-1325 (9th Cir. 1976). "[W]itness tampering is among the most grave abuses of the judicial process, and as such it warrants a substantial sanction." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 782 (7th Cir. 2016). The record confirms that Ferrell's agents contacted witnesses in this case for the sole purpose of altering their testimony, seeking to achieve that objective by making threats to, and intimidating, the witnesses. The following sanctions are appropriate:

### 1. The Court should Bar Ferrell or His Agents from Contacting the Witnesses Outside of Formal, Adversarial Discovery

Where a party has engaged in witness tampering, Courts often issue orders prohibiting the offending party (and their agents) from contacting the witnesses as a remedial measure to protect the integrity of the system.  *See e.g.*, *Youngevity*, No. 16-CV-704-BTM-JLB, 2018 WL 747658, at *2.  That sanction is a commonsense remedial measure that must be imposed here.  The witnesses fear Ferrell, and they deserve assurances from this Court that his tampering and improper contacts will end.  MAB at ¶¶ 7,11-14, 16.  The Court should therefore bar Defendant Scott Ferrell and his agents from contacting or coming within 100 yards of Charlotte Carlberg, MaryAnn Buc, and Jim Buc.

However, to the extent the witnesses are involved in any formal discovery proceedings or otherwise appear at trial or hearing, those prohibitions would not apply so long as counsel for NIC and an officer of the Court (the Judge or Special Master) is present during the interaction.

### 2. The Court Should Award NIC Its Attorneys' Fees for Bringing this Motion

NIC should be awarded its attorney fees incurred in association with this motion.  NIC should not have needed to move this Court for sanctions related to witness tampering.  Scott Ferrell acted in bad faith and created a need for these proceedings through repeated, improper conduct, conduct which he, as a licensed attorney in California, should know is forbidden.  The Court should award NIC its fees as a result.  *See Everett v. Bankers Life & Cas. Co.*, No. C13-2246, 2015 WL 135775, at *4 (W.D. Wash. Jan. 9, 2015) (Court may award attorneys' fees under inherent powers).

### 3. The Court Should Issue Any Other Relief that the Court Deems Necessary to Punish and Deter, Including Dispositive or Issue Preclusive Sanctions

Because the inherent powers are to be exercised as a means to punish and deter conduct which undermines the judicial system, the Court has broad discretion to fashion appropriate relief.  When considering whether dispositive relief is an appropriate sanction for witness intimidation, other courts have considered: (1) the nature of the threat; (2) whether the threat is likely to have a chilling effect on testimony; (3) whether the threats "are the result not of malice but of mental illness;" and (4) whether the threats are the only instance of improper litigation conduct.  *Michael v. Boutwell*, 138 F. Supp. 3d 761, 785 (N.D. Miss. 2015) (internal citations omitted).  Additionally, albeit in other circumstances, "courts have observed that evidentiary misconduct is particularly egregious when it relates to a 'central issue' in the case."  *Id*. at 785-86 (quoting *Vargas v. Peltz*, 901 F.Supp. 1572, 1581 (S.D. Fla. 1995)).

Here, these factors all weigh in favor of dispositive sanctions against Defendant Ferrell.  First, the nature of these threats are serious and are aimed against unrepresented non-attorneys.  Ferrell, a California licensed attorney, threatens legal consequences against the witnesses unless they change their testimony, suits that are in fact baseless in law and themselves subject to sanction if actually brought.  Ferrell (a practicing attorney) knows he cannot civilly sue an individual based on statements made by witnesses in litigation.  *Jacob B. v. Cty. of Shasta*, 40 Cal. 4th at 955, 154 P.3d at 1007.  That suit would be subject to absolute protection under the litigation privilege and California's Anti-SLAPP statute.  *Id*.

The threats *did* have a chilling effect on witness testimony and caused witnesses to withdraw.  That is a significant outcome and strongly evidences the need for serious sanctions.

The Court's prior findings in this case also reveal a pattern of activities by Ferrell to defraud the Court through sham litigation.  Ferrell has been abusing the legal system for more than a decade.  *See* Dkt. 659; *see also* Dkt. 820.  The record is replete with examples of Ferrell's conduct designed to undermine the integrity of the legal system for his own personal gain.  *See, e.g.,* Dkt. 820 at 16 (finding that NTG and Ferrell fraudulently concealed misconduct); Dkt. 130 (finding that Ferrell's partner filed a recklessly false declaration for an improper purpose).  The fact that Ferrell would engage in misconduct within the context of this case itself (a case centered on his defrauding of the Courts) is brazen and direct evidence of habitual abuse for which lesser sanctions have been insufficient to arrest.

In addition, Courts consider whether the witness tampering related to a "central issue" in the case.  *Boutwell*, 138 F. Supp. 3d at 785 (citing *Vargas*, 901 F.Supp. at 1581).  Here, the Carlberg narrative is central to Ferrell's defense against the NIC charge of malicious prosecution in the prior NTG case against NIC. Thus, Ferrell's tampering goes to a central issue in this case, further supporting imposition of dispositive or, at a minimum, issue preclusive sanctions.

NIC therefore requests that the Court issue an order to show cause why Scott Ferrell ought not be subject to dispositive or issue preclusive sanctions in this case, and why the Court ought not refer Ferrell to the State Bar and the Attorney General for witness tampering.

## V.   **CONCLUSION**

Based on the good cause shown above, the Court should grant NIC's motions for sanctions as requested herein.

DATED:  October 14, 2019

Respectfully submitted,

EMORD & ASSOCIATES, P.C.

By:    /s/ Peter A. Arhangelsky
Peter A. Arhangelsky, Esq. (SBN 291325)
Joshua S. Furman (*pro hac vice*)
*Counsel for Plaintiff Natural Immunogenics Corp.*