Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Jonathan W. Emord, Esq. (pro hac vice)
jemord@emord.com
EMORD & ASSOCIATES, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., <br><br> Plaintiff, <br><br> v. <br><br> NEWPORT TRIAL GROUP, et al., <br><br> Defendants. | Case No. 8:15-cv-02034-JVS (JCG) <br><br> **DECLARATION OF JOSHUA S. FURMAN** <br><br> Judge: Hon. James V. Selna |

## **DECLARATION OF JOSHUA S. FURMAN**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. I, Joshua Furman, am over the age of 18 and competent to testify to the information below. All matters contained herein are of my own personal knowledge unless stated as based upon information and belief.

2. I am counsel to Natural Immunogenics Corp. ("NIC") in the above-

1. captioned litigation. I am a principal in the firm Emord & Associates, P.C. ("Emord") and work at the firm's Gilbert, Arizona offices.

3. On August 26, 2019 NIC sent the Defendants a meet and confer letter regarding NIC's intent to file a motion for sanctions against Defendant Ferrell. *See* Exhibit 24. That letter outlined the bases for NIC's motion, identified the witnesses whose testimony would support the motion, and provided a summary of the factual record underlying the motion. *Id.*

4. On September 3, 2019, Counsel for Scott Ferrell and counsel for NIC held a telephonic meet and confer call. Participating for the NTG defendants were attorneys David Darnell and James Sabovich. Participating for NIC were Peter Arhangelsky and myself.

5. At no point during the September 3, 2019 phone call did NTG counsel disclose that NTG had any evidence contrary to that identified by counsel to NIC in our August 26, 2019 letter, or information that called into question any of NIC's factual conclusions stated in NIC's August 26, 2019 letter.

6. Mr. Arhangelsky initiated the call by requesting the Defendants' responsive position to the points raised in our August 26 letter. Mr. Darnell simply stated that he believed NIC's motion was specious, but provided no specifics as to why. Mr. Darnell provided no explanation of NTG's factual or legal positions. Mr. Darnell did not mention any evidence possessed by his client germane to the evidence recited in the August 26, 2019 letter. Mr. Darnell then shifted the conversation to a discussion of whether NIC objected to NTG counsel contacting the witnesses.

7. Mr. Darnell asked whether NIC took the position that NTG could not contact Charlotte Carlberg, Jim Buc, or MaryAnn Buc. Mr. Darnell specifically asked whether Emord and Associates represented the witnesses or whether they were otherwise represented by counsel. Mr. Arhangelsky explained Emord & Associates did not represent the witnesses and that, to our knowledge, they were

not represented by counsel. He elaborated that NTG counsel was not precluded from contacting those witnesses. Mr. Arhangelsky then explained that our correspondence had simply conveyed the witnesses' preference that they not be contacted by Mr. Ferrell or his representatives. He explained that they had asked us specifically to convey that information because they feared Mr. Ferrell and anticipated a likelihood that he would threaten them or retaliate against them.

8. The call was concluded thereafter as no progress was made on the substance of the meet and confer.

9. Attached as **Exhibit 29** is a true and correct copy of the email correspondence exchanged between counsel for the Parties between August 26, 2019 and October 4, 2019.

10. On September 30, 2019, counsel for the Defendants demanded that NIC produce all communications between NIC (or its counsel) and the witnesses germane to the motion for sanctions, and agree to submit all internal communications among NIC's counsel to the Court for *in camera* review. *See* Exhibit 29 at 6-7. Defendants stated their intent to move for leave to take discovery of those documents unless NIC agreed. *Id*.

11. After discussion, NIC agreed to produce all communications between NIC's counsel and the witnesses if the Defendants would agree not to multiply the proceedings with the motion for leave. *See* Exhibit 29 at 3. NIC made that offer expressly for the purpose of avoiding needless and costly litigation. *Id*.

12. Defendants rejected NIC's offer to voluntarily produce the documents. Instead Defendants demanded that NIC agree to produce all communications with the witnesses to NTG and, through an unidentified procedure, produce all internal communications to the Court for *in camera* review. Although the Defendants were unclear, they appeared to demand production to the Court for *in camera* review under the crime-fraud exception. *See* Exh. 29 at 2-3. Defendants demanded that NIC agree to make those productions without receiving

anything in exchange and without conditions. *Id.* NIC rejected those unreasonable demands.

Executed on this 28th day of October, 2019.

Joshua S. Furman, Esq.