**CALLAHAN & BLAINE, APLC**
Edward Susolik (SBN 151081)
Esusolik@callahan-law.com
David J. Darnell (SBN 210166)
Ddarnell@callahan-law.com
James M. Sabovich (SBN 218488)
jsabovich@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Defendants NEWPORT TRIAL GROUP
and SCOTT J. FERRELL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>Defendants. | CASE NO.   8:15-cv-02034-JVS-JCG<br>JAMS NO.   1220055347<br><br>**NTG'S OPPOSITION TO NIC'S MOTION FOR SANCTIONS**<br><br>Special Master: Hon. Rosalyn Chapman<br>Judge:         Hon. James V. Selna<br><br>Date:          November 18, 2019<br>Time:          1:30 p.m.<br>Dept.:         10C<br><br>Complaint Filed:   Dec. 7, 2015<br>Trial Date:        TBD |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................... 3

    A.    NIC Filed a Motion Seeking "Death Penalty" Sanctions That Falsely Accused Scott Ferrell of Multiple Felonies Based Upon the Perjured Declarations of Charlotte Carlberg, MaryAnn Buc, and James Buc ................................................................................ 3

        1.    The NIC Witnesses Committed Extensive Perjury by Presenting the Court With a Fictional Narrative Solicited and Prepared by NIC and its Counsel ........................................ 4

        2.    Based Entirely Upon this Fictional Narrative, NIC Falsely Accused Scott Ferrell of Multiple Felonies and Sought "Death Penalty" Sanctions .................................................. 6

    B.    NTG Conclusively Proved that NIC's Claims and the NIC Witnesses' Statements Were False in Every Material Respect ........... 6

        1.    It is Indisputable that Trycia Carlberg Spent the 2011 Christmas Holidays With the Ferrells ....................................... 6

        2.    It is Indisputable that Trycia Carlberg Lived With the Ferrells from at Least November 2011 through March 2012, Shortly Before Her Death ................................................. 7

        3.    Other False Statements of Fact by NIC and the NIC Witnesses ........................................................................... 11

    C.    Investigator Communications with MaryAnn Buc ........................ 13

III.  NIC'S MOTION IS FRIVOLOUS AND BROUGHT TO FURTHER ITS COVER-UP ..................................................................................... 16

    A.    The Evidence Shows a Proper Attempt to Interview Declarants ....... 18

    B.    Reference to Potential Legal Consequences Does Not Constitute a Threat for Purposes of Witness Tampering ................................... 21

    C.    The Investigators Sought Truthful Testimony ................................... 25

IV.   CONCLUSION ...................................................................................... 25

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Aamco Transmissions, Inc. v. Marino*,
Civ. A. Nos. 88–5522, 88–6197, 1990 WL 106760 (E.D.Pa.1990) .................... 22

*Bowoto v. Chevron Texaco Corp.*,
No. C 99-02506 SI, 2008 WL 552456 (N.D. Cal. Feb. 27, 2008) ...................... 17

*G-I Holdings, Inc. v. Baron & Budd*,
179 F. Supp. 2d 233 (S.D.N.Y. 2001) ......................................................... 17, 22

*Gebhard v. United States*,
422 F.2d 281 (9th Cir. 1970) ............................................................................. 22

*In re Girardi*,
611 F.3d 1027 (9th Cir. 2010) ...................................................................... 24, 25

*Harrington v. U.S.*,
267 F. 97 (1920)  .............................................................................................. 19

*Heffernan v. Hunter*,
No. Civ. A. 97–6041, 1998 WL 150953 (E.D.Pa. March 26, 1998) .................... 22

*Hussein v. Frederick*,
436 F. App'x 831 (9th Cir. 2011) ...................................................................... 23

*Int'l Bus. Machines Corp. v. Edelstein*,
526 F.2d 37 (2d Cir. 1975) ................................................................................ 18

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ............................................................................. 23

*Maldonado v. Municipality of Barceloneta*,
No. CIV.07-1992(JAG)(JA), 2009 WL 636016 (D.P.R. Mar. 11, 2009) ................................................................................................................... 23

*Manuel de Jesus Ortega Melendres v. Arpaio*,
No. CV-07-2513-PHX-GMS, 2016 WL 4414755 (D. Ariz. Aug. 19, 2016) ................................................................................................................... 22

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

2

<u>Pages</u>

3

*People v. Persolve, LLC,*
4       218 Cal. App. 4th 1267 (2013) ................................................................. 23

5

*Schultis v. Advanced Healthcare Mgmt. Servs., LLC,*
6       No. 1:08CV00083 LMB, 2011 WL 3444076 (E.D. Mo. Aug. 8,
        2011) ............................................................................................. 17, 20
7

*Security Farms v. International Bhd. of Teamsters, Chauffers,*
8       *Warehousemen & Helpers,*
9       124 F.3d 999 (9th Cir.1997) ...................................................................... 24

10

*Stanley v. Wong,*
11      No. CIV S-95-1500 FCDGGH, 2006 WL 1523128 (E.D. Cal. May
        31, 2006) ........................................................................................ 18, 19

12

*Turner v. New Jersey State Police,*
13      No. CV085163KMJBC, 2017 WL 1190917 (D.N.J. Mar. 29, 2017) ................. 23

14

*United States v. Breckenridge,*
15      472 F. Supp. 2d 200 (D. Conn. 2007) ........................................................ 25

16

*United States v. Chujoy,*
17      207 F. Supp. 3d 626 (W.D. Va. 2016) ........................................................ 21

18

*United States v. Edlind,*
19      887 F.3d 166 (4th Cir. 2018) .................................................................... 21

20

*United States v. Girod,*
21      646 F.3d 304 (5th Cir. 2011) .................................................................... 18

22

**Statutes**

23

18 U.S.C. § 1512 ..................................................................................... 22

24

18 U.S.C. § 1621 ..................................................................................... 24

25

18 U.S.C. § 1623 ..................................................................................... 24

26

42 U.S.C. § 1985(c) .................................................................................. 22

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Defendants Newport Trial Group and Scott Ferrell (collectively "NTG") respectfully submit their Opposition to NIC's Motion for Sanctions (Dkt. 857-1).

## I.   **INTRODUCTION**

NIC's latest motion for sanctions befits the plot of a Franz Kafka novel: (1) NIC was caught red-handed submitting three indisputably and pervasively perjured declarations that accused Defendant Scott Ferrell of multiple felonies; and (2) unchastened, NIC has "doubled down" and now accuses Ferrell of "witness tampering" because Scott Ferrell encouraged the witnesses to provide truthful testimony.

NIC's latest act of legal jiu jitsu would turn the rules designed to protect judicial integrity against themselves:  NIC's first motion for sanctions sought "death penalty" sanctions against Scott Ferrell by accusing him of, and attempting to frame him for, perjury.  Fortunately, Scott Ferrell was able to prove that it was the three declarations solicited, prepared, and submitted by NIC that were pervasively perjured.  Indeed, a collection of videos, text messages, emails, chats, Facebook posts, and handwritten cards all prove that Scott Ferrell was telling the truth about Trycia Carlberg – and that NIC's witnesses were all lying.  (Dkt. 846.)

It has become increasingly apparent that – at a minimum – NIC knew the perjured testimony that it solicited and prepared could not withstand even the mildest of scrutiny.  Hence, before filing the perjured declarations, NIC took the grossly unethical step of threatening NTG with "witness tampering" charges if they even contacted the three witnesses.  The current motion simply makes good on NIC's threat to block examination of witnesses who signed on to the perjured testimony that NIC solicited and prepared.  Going from bad to worse, NIC's motion exposes one witness (MaryAnn Buc) to further criminal jeopardy, causing her to make additional false statements in support of NIC.

One thing that is clear is that the limited interaction upon which NIC bases its motion was both innocuous and professional.  On September 27, 2019 – after NTG

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

filed its opposition to NIC's sanctions motion that conclusively proved NIC's declarants had committed perjury and requested an Order to Show Cause regarding sanctions, perjury, and subornation of perjury – an investigator for Scott Ferrell sent a text to MaryAnn Buc that truthfully identified himself and asked to meet with Ms. Buc to "review your declaration" to see if it is "100% correct and truthful . . . ." (Dkt. 857-5 at 8.)  The investigator truthfully advised Ms. Buc that Scott Ferrell had presented this Court with "overwhelming evidence" that Ms. Buc had filed a "false declaration" for which there can be significant legal consequences and invited her to retain counsel.  (Dkt. 857-6 at 7-13.)

In contrast to the investigator's honest statements, Ms. Buc – apparently coached beforehand or in "real time" by NIC – repeatedly sought to create a false record to bolster the present motion: (1) she repeatedly ascribed threats to the investigator that were never made; and (2) she thrice tried to create a false record that Scott Ferrell was demanding some specific modification to her testimony when the record shows that the request was only to "review your declaration" to see if it is "100% correct and truthful . . . ."  (Dkt. 857-5 at 8.)  Given that NIC had threatened "witness tampering" allegations before it even filed the false declarations, and given that NIC was in contact with Ms. Buc and was immediately provided with a transcript of the text exchange, it seems almost certain that Ms. Buc's texts were coached or written by NIC with this motion in mind.

By its current motion, NIC seeks to subvert witness tampering allegations to protect perjured testimony from examination.  This only underscores the need for the Order to Show Cause regarding sanctions, perjury, and subornation of perjury that NTG has requested.

For all of these reasons, NIC's motion should be denied.  Moreover, those reasons underscore the need for an Order to Show Cause regarding sanctions, perjury, and subornation of perjury regarding NIC's first sanctions motion and the declarations.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## II.    STATEMENT OF FACTS

### A.    NIC Filed a Motion Seeking "Death Penalty" Sanctions That Falsely Accused Scott Ferrell of Multiple Felonies Based Upon the Perjured Declarations of Charlotte Carlberg, MaryAnn Buc, and James Buc

One of the most hotly-disputed issues in this case surrounds a deceased woman named Trycia Carlberg.  NTG claims that Trycia retained Scott Ferrell for the underlying false advertising claim against NIC.  (Dkt. 812, ¶¶ 5-10.)  NIC, by contrast, claims that Trycia was never a client.  (Dkt. 844-1.)  Scott Ferrell presented the Court with sworn testimony about his relationship with Trycia in a July 3, 2019, declaration (Dkt. 812-1 at ¶¶ 5-10).  Therein, Scott Ferrell described Trycia as "a close friend of my family" who lived with Scott Ferrell and his wife in 2011 and 2012 "because she was very ill with cancer and needed our support and assistance." (*Id.*)  Scott Ferrell further testified that, while at his home on Christmas Eve of 2011, Trycia showed Scott Ferrell a bottle of NIC's "Sovereign Silver" immune support that she was taking.  Scott Ferrell explains that, after he explained to Trycia that NIC's product was "was definitely not helping her cancer, that it was probably doing more harm than good," Trycia retained Scott Ferrell to send a demand letter on her behalf to NIC.  (*Id.*, ¶¶ 8-10.)

On September 19, 2019, NIC filed a Motion for Sanctions against Scott Ferrell, alleging that his July 3, 2019, declaration was "false in every material respect."  (Dkt. 844-1 at 19.)  NIC's motion was based entirely upon the sworn declarations of three witnesses: Charlotte Carlberg, MaryAnn Buc, and Jim Buc. NIC had identified the NIC witnesses in an August 26, 2019, meet and confer letter, but had threatened NTG and its counsel with "witness tampering" charges if they contacted those unrepresented witnesses.  (Dkt. 846-2 at 7.)

In its motion, NIC demanded the most severe of sanctions, including a "death penalty" type adverse inference instruction.  (Dkt. 844-1 at 24-27.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1.      **The NIC Witnesses Committed Extensive Perjury by Presenting the Court With a Fictional Narrative Solicited and Prepared by NIC and its Counsel**

In choreographed sworn statements, the three NIC witnesses all purported to testify based on personal knowledge that Scott Ferrell's testimony regarding Christmas Eve 2011 is "false" or "untrue" because Trycia was with her mother over Christmas in 2011.  (Dkts. 844-4, ¶¶ 14, 9; 844-3, ¶¶ 4-6; 844-5, ¶ 8.)  All declarants unequivocally accuse Scott Ferrell of perjury on this point:

> "Mr. Ferrell testified that, '[o]n either December 24 or December 25, 2011, [he] had Ms. Carlberg execute [an] engagement letter with [his] firm.' *See* Exh. A at ¶ 12.  Again, that statement cannot be true because Trycia was not at Mr. Ferrell's house on those dates, and Trycia was instead in my presence on both days . . . . At no point was Trycia in the presence of Scott Ferrell or his wife [over the Christmas holiday in 2011]."

* . * . *

> "Ferrell testified that, on December 24, 2011, Trycia 'showed [him] some of the products she had purchased and was taking or using[.]' *See id.* at 7.  I know those statements are false because Trycia was at her mother's house on Christmas Eve in 2011 (December 24, 2011), where she spent her final Christmas with her family."

* . * . *

> "Mr. Ferrell also testified that, '[o]n either December 24 or December 25, 2011, [he] had Ms. Carlberg execute [an] engagement letter with [his] firm.'  *See* Exh. A at 12.  My recollection concurs with my wife's memory that we spoke to Trycia and her family at her mother's house on Christmas 2011.  Trycia made no mention to me ever that she was working with Ferrell or had retained Ferrell."

(Dkt. 844-3, ¶¶ 6-7; Dkt. 844-4, ¶ 9; Dkt. 844-5, ¶ 8.)

The NIC witnesses claim that Trycia only stayed with the Ferrells "for a brief period in 2012," and told a Kafkaesque tale of Ferrell essentially holding Trycia prisoner during that time period, claiming Trycia "was unable to even leave the guest room to go upstairs and eat, watch the sunset, or look at the views," and "told her mother that she was starving, and asked if her mother could bring her food." (Dkt. 844-4, ¶¶ 28-30.)  The NIC witnesses claim that Trycia left "the Ferrells' house on poor terms and in distress" in March 2012.  (Dkt. 844-4, ¶¶ 28-30; 844-3, ¶ 13.)  Relatedly, the NIC witnesses represented that Trycia disliked Scott.  They assert that Trycia "had no relationship with Scott Ferrell, and would not have confided in him over personal matters" (Dkt. 844-1), and that "Trycia did not view Scott Ferrell as a friend or as one in whom she placed trust or confided."  (Dkt. 844-5, ¶15; Dkt. 844-3, ¶ 13 ["Trycia did not have a close relationship with Scott Ferrell. She would not have confided in Scott Ferrell about her personal matters."].)  Finally, all three NIC witnesses claim to personally know that Trycia Carlberg could not have purchased and did not ever use NIC's Sovereign Silver.  (Dkt. 844-3, ¶¶ 9-10; Dkt. 844-4, ¶ 26; Dkt. 844-5, ¶ 10.)

The Buc declarations further claimed that on March 10, 2011, they "went to a party at Scott Ferrell's home," and that "Trycia took us down to Scott's office and showed us his office chair that was in the middle of countless products scattered about the floor" and explained that "Scott would purchase these products, find something wrong with the products packaging or descriptions, and he would then file class action lawsuits."  (Dkt. 844-4, ¶ 23.)  They claim that Trycia found Scott Ferrell's business practices "immoral and unethical" and would not have agreed to be his client.  (Dkt. 844-4, ¶¶ 21-24; 844-5, ¶¶ 12, 14.)

As seen below, those factual statements are all false.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**2.** **Based Entirely Upon this Fictional Narrative, NIC Falsely Accused Scott Ferrell of Multiple Felonies and Sought "Death Penalty" Sanctions**

NIC based its first sanctions motion ***entirely*** on the declarations and a single photograph.  (*See generally* Dkt. 844-1.)  NIC assured the Court that its investigation "ultimately confirmed Ferrell's declaration false, as evidenced by the testimony of several direct eye-witnesses and the documents appended as exhibits."  (Dkt. 844-1 at 6, 26 [claiming NIC's witnesses were "the eye-witnesses whose declarations rebut Ferrell's false statements."].)  In that motion, NIC used the three perjured declarations to falsely accuse Scott Ferrell of multiple felonies, including perjury, criminal obstruction of justice, and fraud on the court:  "The false declaration was created for the purpose of facilitating perjury, obstruction of justice, and fraud on the court directly."  (Dkt. 844-1 at 29.)

**B.** **NTG Conclusively Proved that NIC's Claims and the NIC Witnesses' Statements Were False in Every Material Respect**

As shown below, every sworn accusation of wrongdoing leveled by the three NIC witnesses against Scott Ferrell has been conclusively proven false by contemporaneous photographs, videos, an executed engagement letter and settlement check, emails, texts, social media posts, and social media messages.

**1.** **It is Indisputable that Trycia Carlberg Spent the 2011 Christmas Holidays With the Ferrells**

NTG's opposition to the first sanctioned motion conclusively disproved NIC's core claim that Trycia was not "present in [Ferrell's] house during the Christmas holiday in 2011."  (Dkt. 846.)

The only documentary evidence filed with the motion was a posed photograph taken at Charlotte Carlberg's San Clemente house on December 24, 2011, and attached to her declaration.  (Dkt. 844-3 at 14.)  NIC cited this photograph as "proving beyond doubt" that Trycia was not at the Ferrells' home in Christmas

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  2011.  (Dkt. 844-1 at 14; *see also id.* ["All three witnesses confirm that Trycia was

2  not at the Ferrell's home at any time over the Christmas holiday in 2011."].)  But

3  there was also nothing in the photograph suggesting that Trycia was living or

4  staying with her mother at all times on December 24 and 25, 2011.  To state the

5  obvious, people commonly visit family over the holidays, pose for family

6  photographs, then go home.  That is exactly what occurred here.  San Clemente is

7  only ten (10) miles from the Ferrell residence in Three Arch, Laguna Beach.  (Dkt.

8  846-1 at 9-10.)  Thus, photographs taken from December 24 to December 26, 2011,

9  confirm exactly what Mr. Ferrell's declaration stated – that Trycia was with him at

10  his home on December 24 and 25, 2011:

   

(Dkt. 846-4 at 4-13; Dkt. 846-2 at 4-13.)

2.  **It is Indisputable that Trycia Carlberg Lived With the Ferrells from at Least November 2011 through March 2012, Shortly Before Her Death**

As with Trycia's whereabouts over Christmas, NTG's Opposition

conclusively proved that Trycia lived with the Ferrells from at least November 2011

through March 2012 – precisely as Scott Ferrell testified.  (Dkt. 846 at 13-19.)  The

evidence also shows that Trycia was not close to her mother and that her mother

resented the Ferrells because of this, which obviously shows bias and could be one

explanation for why Charlotte Carlberg was susceptible to signing a false

declaration for NIC's benefit.  More specifically, the evidence shows Trycia's

mother was not supportive of her daughter – which Trycia would often share with

Erin Ferrell.  That was the context of a November 8, 2011 Facebook chat between

Trycia and Erin Ferrell that unequivocally confirms that Trycia was "living with"

the Ferrells at that time.  (Dkt. 846-3 at 15.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 7 -

Then on November 28, 2011, Trycia presented Scott and Erin Ferrell with the following heartfelt, handwritten card:

Dear Erin and Scott -

*I just wanted to take a moment to thank you both for allowing me to live with you in your beautiful home*.  I am always so happy and grateful to return home after being away for even a short period of time.  It is always so warm and cozy and filled with an abundance of laughter and love.  It is home [heart drawing].  I feel so safe and protected and happy – Something I haven't felt in a long time!  I am filled with gratitude every time your smiling faces are here to greet me.  You are truly family to me.  Thank you for accepting me exactly the way I am.

*Scott- thank you for always making me laugh, for being a true gentleman and a brother to me.*

Erin – you are the perfect definition of an angel.  Beautiful, generous and caring. . . The list goes on and on.  Thank you for welcoming me into your lives with open arms.  I am eternally grateful.  Love you to infinity and beyond.

(Dkt. 846-3 at 28-29 (emphasis added).)

On March 28, 2012 – after NIC and its witnesses claimed Trycia had "fled" from the Ferrells' home on "poor terms" – Trycia wrote another thank you letter to the Ferrells:

Dear Erin and Scott ~

I just wanted to take a moment to express my gratitude for all you have given to me, all you do for me, and who you are to me.  These past several weeks have been really difficult for me with my health, my strained relationships, my brother's heart attack, money problems, etc.  Thank you both for taking care of me when needed, allowing me

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   space and privacy when needed, making *me feel safe and at home*

2   *here*, and just providing me with some stability in my unstable world.

3   You two are the most caring and generous people I know and I

4   honestly don't know what I would do without you . . . . I love you

5   both.  xoxo Trycia.

6   (Dkt. 846-3 at 39-40 (emphasis added).)  Two days earlier, on March 26, 2012,

7   Trycia confirmed she would be attending the Ferrells' daughter's birthday dinner.

8   (Dkt. 846-1 at 11-12.)

9       This is consistent with a literal cornucopia of public Facebook posts,

10  YouTube videos, messages, and emails showing that Trycia was in the Ferrells'

11  home from late 2011 until shortly before her death in May 2012:

12      •    A *publicly available* YouTube video from late 2011 shows Trycia

13  dancing at the Ferrells' home with Scott Ferrell serenading her in the

14  background.  *See* https://m.youtube.com/watch?feature=youtu.be&v=VHF-

15  z46irtE.

16      •    On January 27, 2012, Erin Ferrell emailed Scott Ferrell, asking him to

17  give "Trycia [a] heads up about leaving around 5:30 . . . ."  Scott Ferrell

18  responds that "I will tell her now!"  (Dkt. 846-1 at 13-14.)  This email

19  exchange, which took place on a Friday evening, demonstrates that Scott

20  Ferrell and Trycia were living in the same home at the time.

21      •    On February 1, 2012, Erin forwarded a message regarding tenants not

22  parking on the street so as to allow for street sweeping to Trycia, among

23  others.  (Dkt. 846-1 at 15-16.)  This only makes sense if Trycia was living

24  with the Ferrells.

25      •    On February 14, 2012, Trycia posted a picture of her Valentine flower

26  arrangement at the Ferrells' home in Laguna Beach.  (Dkt. 846-3 at 30-31.)

27  The post specifically notes that Trycia was "with Erin Ferrell."  (*Id.*)

28      •    A February 19, 2012 post by Erin – who is "with Trycia Carlberg" –

- 9 -

notes "Moring Beach Walk in Three Arch Bay . . . ."  (Dkt. 846-3 at 32-34.) Three Arch Bay is the oceanfront community of the Ferrells' home.  (Dkt. 846-3, ¶ 5.)

- On March 10, 2012, Trycia tagged Ferrell in a photograph in which she was "with Erin Ferrell near Laguna Beach, California."  (Dkt. 846-1 at 17-18.)  The Ferrell home is in Laguna Beach.  (Dkt. 846-3, ¶ 5.)

- On March 6, 2012, Trycia emailed her mother explaining why Trycia had moved out of her mother's house.  Trycia wrote that her mother has "taken everything SO personally, getting your feelings hurt, playing the victim, blaming me, making me feel guilty for trying to have a life.  Its NOT about you and *all I've asked is that you give me my space.*  I actually had some time this week that *I was going to invite you out for lunch because I missed you*.  But you turned on me once again for no reason and pushed me away."  (Dkt. 846-3 at 35-38 (emphasis added).)

- On March 9, 2012, Ferrell sent an email to Beaudrea Yeager for dinner reservations, copying his wife and James B. Hardin.  Ferrell explains to Mr. Hardin that "*Trycia and Michelle who are both staying with us may come*...not sure yet."  (Dkt. 846-1 at 19-20.)

- On March 27, 2012, Ferrell instructed his office manager to "bring Trycia's check from the most recent settlement to dinner tomorrow." (Dkt. 846-4 at 26-28.)  Trycia promptly wrote back "Thank you thank you SO much!!!"  Id.

- On April 28, 2012, Ferrell's former spouse, Natalie Eckdahl, emailed Ferrell for an update on Trycia.  They discuss that Trycia's condition has deteriorated and coordinate Ferrell taking his daughter to say goodbye to Trycia.  (Dkt. 846-1 at 21-22.)

- Two days after Trycia passed away, Scott Ferrell exchanged emails with Victoria Knowles.  On May 7, 2012, Scott Ferrell wrote "our friend

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

trycia *who was living with us* passed away on Saturday. Sucks."  (Dkt. 846-1 at 23-27 (emphasis added).)

Moreover, emails and Facebook posts after Trycia's death confirm that Trycia was living with the Ferrells.  On the day of Trycia's death, her cousin thanked the Ferrells for taking Trycia into their home:

I wanted to thank you for everything you've done for Trycia.  You have been so amazing to her.  She loved you and your husband so much.  She told me how happy she was to have you in her life.  *She got to look out over the ocean and up to the sky every day; it was paradise for her, she told me so*.  You've got such a big heart.  I'm so glad Trycia had you and your husband in her life.

(Dkt. 846-3 at 41-42 (emphasis added).)

On May 5, 2013, Erin wrote "[t]oday marks one year since our beloved friend Trycia  . . . *we had the pleasure of her becoming <u>a part of our family for almost 6 months</u>. . . .  I can't walk passed her bedroom without thinking of her and all the lives she touched*."  (Dkt. 846-3 at 43-45 (emphasis added).)

Another of Trycia's friends wrote "Trycia Trycia, *a friend of my gracious friends, Erin Ferrell and Scott Ferrell* passed away this weekend . . . *Trycia stayed with Erin and her husband at their house in Laguna to heal*."  (Dkt. 846-1 at 28.)

### 3.   <u>Other False Statements of Fact by NIC and the NIC Witnesses</u>

Unsatisfied with presenting testimony that merely lied about Trycia's whereabouts, NIC and its declarants assured the Court that it was indisputable that Trycia personally disliked Scott Ferrell, was never his client, and even that the Ferrells mistreated and imprisoned Trycia.  This was all demonstrably fictitious.

NIC claimed, based on the NIC witnesses, that in March, Trycia "fled [the Ferrells' home] following a limited stay, experiencing discomfort living with the Ferrells."  (Dkt. 844-1 at 14, 15, 21.)  This is a false statement of fact.  Trycia sent

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  the Ferrells a "thank you" card on March 28, 2012, expressing her "gratitude for all
2  you have given to me . . . for taking care of me when needed" and "making me feel
3  safe and at home here." *Supra*.Part.II.B.2. She told them "[y]ou two are the most
4  caring and generous people I know . . . . I love you both." *Id.* Her cousin wrote
5  Erin Ferrell, explaining how Trycia "told me how happy she was to have you in her
6  life. She got to look out over the ocean and up to the sky every day; it was paradise
7  for her, she told me so." *Id.* On March 27, 2012 – after Trycia had allegedly "fled"
8  – Ferrell was instructing his office manager to "bring Trycia's check from the most
9  recent settlement to dinner tomorrow" so it could be given to her. (Dkt. 846-4 at 26-
10 28.) When Trycia learned she would be receiving the check, she wrote "Thank you
11 thank you SO much!!!" *Id.* NIC and its witnesses claim this was complete fiction.

12        NIC claimed, citing the NIC witnesses, that Trycia "had no relationship with
13 Scott Ferrell, and would not have confided in him over personal matters." (Dkt.
14 844-1.) This is a false statement of fact. There are photographs of Trycia spending
15 hours with Scott Ferrell on Christmas Eve. *Supra*.Part.II.B.1. She thanked him "for
16 always making me laugh, for being a true gentleman and a brother to me."
17 *Supra*.Part.II.B.2. Trycia's cousin told Erin how Trycia "loved you and your
18 husband so much . . ." *Id.* Contemporaneous documents show genuine concern on
19 Scott Ferrell's part – from taking his daughter to see Trycia when she had only
20 "weeks" to live to expressing grief to a colleague after she passed. *Id.*

21        NIC claimed, supported by the NIC witnesses, that on March 9, 2012, "Trycia
22 told MaryAnn Buc that Ferrell had tried to solicit her to be a shill plaintiff in his
23 litigation scheme, but that she refused because she viewed Ferrell's practice as
24 morally repugnant." (Dkt. 844-1 at 20.) This is a false statement of fact. First, on
25 February 8, 2012, Trycia retained Scott Ferrell and NTG to represent her in a case
26 against Brett Titanium Bracelet, executing both a retainer agreement and a duties of
27 class representative. (Dkt. 846-4 at 18-25.) That matter settled and Trycia thanked
28 Scott Ferrell profusely. (Dkt. 846-4 at 26-28.) Thus, Trycia was a client of Scott

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Ferrell's and so would not have said she "refused" to be one.  Second, the Bucs' testimony regarding these alleged statements by Trycia is not credible.  After attending Ferrell's party on March 10, 2012, Jim Buc contacted Scott Ferrell on March 12, 2012, asking "if you can help us" with a mold dispute with their landlord. (Dkt. 846-1 at 30-32.)  NTG ultimately elected not to proceed with the representation.  (*Id.* at 33-35.)  Clearly, the Bucs would not have asked Scott Ferrell to represent them if they had just been told by Trycia that Ferrell was unethical with "repugnant" business practices.

## C.    Investigator Communications with MaryAnn Buc

By September 27, 2019, when NTG filed its opposition laying out the above evidence, it was obvious that the declarations were perjured in every material respect.  (Dkt. 846.)  NTG's publicly filed opposition expressly accused the declarants of perjury and requested an "Order to Show Cause regarding sanctions, regarding perjury, and regarding subornation of perjury as to Plaintiff NIC and non-party declarants Charlotte Carlberg, MaryAnn Buc and Jim Buc."  (Dkt. 846 at 4.) Having been caught, NIC withdrew its first sanctions motion, (Dkt. 847), and with its second sanctions motion has made good on its pre-filing threat of bringing witness tampering charges if Scott Ferrell or his agents contacted NIC's witnesses. (Dkt. 857-6 at 2.)

However, the only actual evidence NIC has is an innocuous September 27-28, 2019, text exchange between MaryAnn Buc and investigator David Herrera.  (Dkt. 857-5 at 2.)  Unlike NIC's investigator Clark Baker, where the Court found it "troubling" that "Baker lied about his name and did not disclose his affiliation with NIC," (Dkt. 365 at 12), Investigator Herrera was honest.  He told MaryAnn Buc "I'm a private investigator working on behalf of the interests of attorney Scott Ferrell" and asked for a meeting to "discuss if you wish to continue with your declaration as is, whether you wish to modify any aspect of it, or wish to withdraw your declaration and yourselves from the ongoing dispute between the two major

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

entities." (Dkt. 857-5 at 6.) The investigator truthfully advised her of Scott Ferrell's position that there is "overwhelming evidence" that she filed a "false declaration" and that there can be legal consequences – including "contempt of court" and a potential civil action by Scott Ferrell – for having done so. (Dkt. 857-6 at 7-13.) He even suggested "[y]ou may wish to hire an attorney to represent yourself here, as the penalties for perjury can be very severe if a judge so determines," *id.*, at 11. All of that is entirely truthful and reasonable.

While the exchange does not contain any illicit threat, it is obvious that MaryAnn Buc was attempting to create a record of one. The initial text from the investigator occurred at 6:46 p.m. on September 27, 2019 – after NTG had filed its opposition outlining the false statements in the declarations. (Dkt. 857-5 at 2; Dkt. 846; Dkt. 857-3, ¶ 4.) MaryAnn Buc's responses start the next day, *id.*, after NIC likely sent her NTG's opposition. MaryAnn Buc first tries to create a record of a threat to Charlotte Carlberg. After the investigator identified himself, she writes "[a]re you the men that said that Scott would take Chars house and retirement and never stop?," which the investigator politely states "is a misquote," and explains the issue is that "if a judge determines there was a fraudulent declaration submitted, certain sanctions against the person who committed the fraud can be instituted." (Dkt. 857-5 at 5.) Then MaryAnn Buc tries again to create a record of a threat to Carlberg, claiming "[s]he was pretty clear in what you said to her regarding your client." (*Id.* at 6.) Next, she tries to create a record of a threat to the Bucs, stating "[w]hat is it that Scott is threatening us with[?]" (Dkt. 857-5 at 7.) The investigator explains "[t]here are no threats" and that they simply wish to meet "on a voluntary basis." (*Id.* at 7.) Next, MaryAnn Buc tries to create a record that Scott Ferrell is demanding some specific modification to her and her husband's testimony. She asks "[w]hat is it he's asking us to modify?" (Dkt. 857-5 at 7.) When the investigator explains that the meeting is just to see "whether there are any points [y]ou wish to modify," she tries again, writing "what I'm asking you what is [it] that

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 14 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

he wants modified." (Dkt. 857-5 at 8.) And again the investigator explains the point is just to "review your declaration" to see if it is "100% correct and truthful . . . ." (*Id.* at 8.) Then she tries a third time, this time demanding "[i]f there is a document he would like signed, let me see it." (*Id.* at 10.) When that does not work, Buc stops responding. (*Id.* at 10-13.) At no point does MaryAnn Buc ask why Scott Ferrell or the investigator thinks that the declarations contained false assertions. (*Id.*)

Besides this text exchange, the only other evidence submitted with NIC's motion is another false declaration from MaryAnn Buc. That declaration reaffirms her prior false declaration, stating that she and her husband submitted "truthful declarations[.]" (Dkt. 857-3, ¶¶ 13-14.) Again, this is the declaration in which MaryAnn Buc repeatedly and unequivocally testified that Trycia Carlberg was not "at Mr. Ferrell's house on those dates [December 24-25, 2011], and she was instead with her mother and her family," when multiple photographs prove Trycia was with Scott Ferrell on those dates. (*Compare* Dkt. 844-4, ¶¶ 9, 10, 14; *with Supra*.Part.II.B.1.) It is this same declaration in which MaryAnn Buc claimed that Trycia only lived with the Ferrells for a few weeks in March 2012 when the evidence is conclusive that she was living with the Ferrells in late 2011. (*Compare* Dkt. 844-4, ¶ 13 *with Supra*.Part.II.B.2.) It is this same declaration in which MaryAnn Buc describes a fiction where Trycia was essentially locked up like "Rupunzel" and starved by the Ferrells (Dkt. 844-4, ¶¶ 28-30) at a time when Trycia was thanking the Ferrells for making "me feel safe and at home here, and just providing me with some stability in my unstable world." *Supra*.Part.II.B.3. MaryAnn Buc assured the Court "I spoke with Trycia daily" (*id.*, ¶ 844-4, ¶ 14), yet she testified to a completely false narrative spanning six months.

MaryAnn Buc's declaration offers no explanation for any of her demonstrably false statements. Instead, she offers more dubious testimony. She purports to relate a double hearsay conversation in which Charlotte Carlberg allegedly told MaryAnn

Buc that investigators had "threatened her." (Dkt. 857-3, ¶ 2.) She claims to have "received a telephone call and a text message from the two private investigators stating they were in Yorba Linda coming to talk to us," when the text message exchange says no such thing. (*Compare id.*, ¶ 3 *with* Dkt. 857-3.) She swears that "the texts continued the following day Saturday 9/28/19 at 11:55 am while we were at our granddaughter's soccer game," that "feared [the investigators] would come to where we were with our grandchildren and cause a scene" and that the texts were "disruptive during what should have been a fun time with our grandchildren." (Dkt. 857-3, ¶¶ 4-5, 10.) But the investigator texted on Friday night; it was MaryAnn Buc who responded on "Saturday 9/28/19 at 11:55 am." (Dkt. 857-5 at 2.) Nothing in the texts suggests that the investigators were going to the soccer game. (Dkt. 857-5.) Indeed, the investigator was clear that "[o]ur wish is to meet with us on a voluntary basis. If you wish not to meet with my PI partner and I, that is fine." (*Id.* at 7.) MaryAnn Buc also testifies that the investigator suggested that Scott Ferrell "would prepare a new declaration for us to sign" when the text messages do not say that. (*Compare* Dkt. 857-3, ¶ 8 *with* Dkt. 857-5.)

## III. NIC'S MOTION IS FRIVOLOUS AND BROUGHT TO FURTHER ITS COVER-UP

In the legal equivalent of a Groundhog Day reenactment, NIC has filed another frivolous sanctions motion based on another false declaration from MaryAnn Buc. Indeed, NIC's response to having been caught trying to frame Scott Ferrell for perjury is to "double down" and try to frame him for witness tampering. In doing so, NIC has stretched malevolent irony to its breaking point: (1) NIC first filed a lawsuit making false allegations of witness tampering and perjury against Scott Ferrell; (2) NIC tried to win that lawsuit by framing Scott Ferrell for perjury using perjured declarations; and (3) when Ferrell encouraged the witness to provide truthful testimony, NIC now accuses Ferrell of witness tampering to insulate the witness from questioning and to protect the perjured testimony.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

To be clear, NIC's current motion is part of a cover-up by which NIC is seeking to conceal the perjured nature of testimony that NIC prepared and submitted to the Court.  NIC is not bringing its motion for sanctions because there was a colorable instance of witness tampering.  There was not.  As this Court previously found, witness tampering occurs when "the defendant (1) persuaded or attempted to persuade a witness (2) with the corrupt intent to either influence the witness's testimony or cause that witness to withhold testimonial or documentary evidence." (Dkt. 157 at 17.)  As discussed in more detail below, there was neither an attempt to influence testimony nor a cognizable threat.  After all, this was a request for a meeting to discuss testimony, not an actual discussion of testimony.  And, as a matter of law, "threats of litigation do not form the basis of a witness tampering allegation."  *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 266 (S.D.N.Y. 2001).  Moreover, truth seeking is a defense to witness tampering.

Finally, since NIC's witness tampering claims are based in large part on the credibility of MaryAnn Buc, they cannot be resolved on motion.[1]  *Bowoto v. Chevron Texaco Corp.*, No. C 99-02506 SI, 2008 WL 552456, at *2 (N.D. Cal. Feb. 27, 2008) (declining to make credibility determinations on sanctions motions because "our judicial system entrusts juries to 'sort the evidence and decide the facts' so that cases are decided on their merits."); *Schultis v. Advanced Healthcare Mgmt. Servs., LLC*, No. 1:08CV00083 LMB, 2011 WL 3444076, at *4 (E.D. Mo. Aug. 8, 2011) (denying motion for sanctions because "the issue of different versions of the Agreement submitted to the court by the parties is a question of fact and credibility for the jury to decide.")

---

[1]  Ironically, NIC's pretext for withdrawing its prior sanctions motion was its professed belief in "the Ninth Circuit's strict standards for sanctions," (Dkt. 847 at 2) and that it does not allow for a "comparative weighing of the credibility of the affiants for both parties" (Dkt. 851 at 6).  Since NIC just filed another sanctions motion based on the testimony of one of the same declarants, NIC's explanation was quite clearly a pretext.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

**A.**   <u>**The Evidence Shows a Proper Attempt to Interview Declarants**</u>

Any evaluation of NIC's witness tampering allegations must begin with two facts.  First, it is undisputed that the declarations, including the one from MaryAnn Buc, were pervasively and materially false.  NTG filed the evidence proving that over a month ago and neither NIC nor MaryAnn Buc even attempt to address or rebut that evidence.  Thus, this is a surreal instance in which witness tampering allegations are being used to protect perjured testimony against correction.  Second, before filing the false declarations, NIC threatened to bring "witness tampering" allegations against Scott Ferrell if he or his agents contacted NIC's witnesses.  Threatening "witness tampering" charges if an opposing party contacts an unrepresented declarant, as NIC did, is a deeply troubling act under any circumstances.  It is "contrary to time-honored and decision-honored principles, namely, that counsel for all parties have a right to interview an adverse party's witnesses . . ." *Int'l Bus. Machines Corp. v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975); *United States v. Girod*, 646 F.3d 304, 311 (5th Cir. 2011).  And it is a flagrant breach of the ethical prohibition against "unlawfully obstruct[ing] another party's access to evidence ... A lawyer shall not counsel or assist another person to do any such act." *Stanley v. Wong*, No. CIV S-95-1500 FCDGGH, 2006 WL 1523128, at *7 (E.D. Cal. May 31, 2006).

Thus, it has been clear since August of this year that for NIC, "witness tampering" allegations were nothing but a litigation tool to protect its untrustworthy declarants from scrutiny.  The current motion is just NIC making good on an unethical threat and seeking to distract the Court from its and its witnesses' misconduct.  NIC does not actually believe that asking a third party to discuss testimony and raising the prospect of legal liability or consequences constitutes witness tampering.  NTG previously offered a transcript of a message that an individual associated with NIC left for Kristyne Hanberg in which NIC's affiliate did exactly that.  In this voicemail, Mr. Raduca specifically told Hanberg that "I

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 18 -

know that you have worked with NTG in the past" and that "all these people that have worked with [the Newport Trial Group] through the years on cases would be part of that in a criminal conspiracy." (Dkt. 506-2.) This "friend" of NIC's principal stated the only reason Hanberg had not been sued in the current case was "because there was a personal limit. However, things are progressing." (*Id.*)  He also promised her that if she would "do the right thing" and tell "the truth about how this whole process works" then NIC would "not follow-up in terms of follow up suits" against her. *Id.* In addition, this "friend" expressly acknowledged that "this probably makes you nervous and you're not comfortable with it."  (*Id.*)

This was at least an implicit threat that if Ms. Hanberg did not offer favorable testimony for NIC, she could be subject to "follow-up . . . suits" by NIC.  Under NIC's currently professed view, that is criminal witness tampering.  Yet NIC viewed the interaction an innocuous:  "[t]he transcript when viewed as a whole does not suggest that Mr. Raduca threatened Hanberg. Mr. Raduca, who is not an attorney and was not working through or with an attorney, evidently identified himself as an associate of NIC and accurately summarized the proceedings as he understood them."  (Dkt. 517 at 5.)

NIC's motion is, by any standard, contrived and a weak attempt to distract this Court and obstruct truth finding.  NIC comes nowhere near showing wrongful witness tampering.  There is nothing wrong with asking a witness to correct prior inaccurate or untruthful testimony.  "It is not an unlawful attempt to influence or impede a witness, or the due administration of justice, for one to seek to obtain from a witness a statement of the facts as he believes them to be, without the exercise of undue influence, even though such a statement may conflict with prior testimony given by the one making the statement . . . the mere request for a statement believed to be true does not offend against the statute under which this indictment was drawn, because it is not corrupt conduct."  *Stanley v. Wong*, 2006 WL 1523128, at *6 *quoting Harrington v. U.S*., 267 F. 97, 101 (1920) (emphasis added).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

In *Schultis v. Advanced Healthcare Mgmt. Servs., LLC*, No. 1:08CV00083 LMB, 2011 WL 3444076, at *4 (E.D. Mo. Aug. 8, 2011), the plaintiff alleged that the defendant "engaged in witness tampering by threatening [a witness] that [defendant] would not release his rural certification number unless he gave testimony in this case which was 'not detrimental' to [defendant] and that the return of his rural certification number depended on the outcome of this case." Defendant demonstrated that the witnesses' statement contained "inaccuracies regarding the issues of this litigation." *Id.* Defendant explained that it "simply encouraged Dr. Hoja to tell the truth and to correct his previous false statements." *Id.* at *5. That did not constitute witness tampering. "Considering the evidence cited by both parties in this case regarding conversations . . . the court concludes that Dr. Schultis has not demonstrated that AHCMS engaged in witness tampering" because the witness' "letter of support contained inaccuracies" and defendant's agent "told him to tell the truth." *Id.*

Here, the communication was even more innocuous since there was not even a request to change or withdraw testimony. NIC presumes an attempt to influence testimony. But the investigator repeatedly explained that the request was simply to meet to discuss the statements in the declaration:

> The meeting has to do with your previous declaration and whether there are any points who wish to modify. *If there are none, then there are none and your declaration will stand on its own. It's always your choice. No PI or attorney can ever tell you what to write.*

Dkt. 857-5 at 8 (emphasis added).

*.*.*

> He wants you to review your declaration. *If it is 100% correct and truthful, then you can choose to leave as is.* If there are points that need correction, modification or deletion, then that can be done. Please be certain that you are not forced to do anything g with your

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  declaration if you just wish to leave it as is.

2  *Id.* at 9 (emphasis added).

3  Given this, NIC's claim that the investigators "never attempted to investigate

4  the circumstances or facts germane to the issues in dispute" and thus that "the

5  purpose of the communications is self-evidently to influence, modify, or prevent

6  testimony by witnesses in a federal case" is not credible. (Dkt. 857-1 at 10.) The

7  whole purpose of the text exchange was to arrange a meeting so the Bucs could be

8  interviewed regarding the declarations. (Dkt. 857-5.) There was no discussion of

9  any specific testimony nor a request that any specific statement be changed or

10  withdrawn. The discussion never goes beyond the general wish for "truthful" or

11  "accurate" testimony. (Dkt. 857-5.) To state what should be obvious, inviting

12  someone to "tell the truth" is the opposite of attempting to influence testimony.

13  *United States v. Chujoy*, 207 F. Supp. 3d 626, 647 (W.D. Va. 2016), *aff'd sub nom.*

14  *United States v. Edlind*, 887 F.3d 166 (4th Cir. 2018), and aff'd, 770 F. App'x 33

15  (4th Cir. 2019) (evidence that witness was told "tell the truth" was contrary evidence

16  indicating that the individual "never intended to influence [the witness']

17  testimony.").

18  NIC also suggests that Scott Ferrell attempted to cause the "withdrawal of the

19  Bucs' testimony which was then-pending before the Court on a calendared motion

20  and to cause their complete withdrawal as witnesses in the case." (Dkt. 857-1 at

21  13.) NIC is engaged in a bit of projection as it is NIC, not NTG, that wishes to

22  insulate the witnesses from judicial scrutiny. At the time of the text exchange, NTG

23  had filed its opposition specifically requesting an order to show cause for sanctions,

24  perjury, and subornation of perjury regarding, *inter alia*, the witnesses' false

25  testimony. (Dkt. 846 at 4.)

**B.** **Reference to Potential Legal Consequences Does Not Constitute a Threat for Purposes of Witness Tampering**

28  The only alleged "threat" identified by NIC are references to the legal

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 21 -

consequences of perjury and potential legal action by Scott Ferrell.  (Dkt. 857-1.)
To be clear, NIC's actions in filing false declarations have put its witnesses,
including MaryAnn Buc, at grave legal risk. "Perjury is a crime . . . [s]o is a false
declaration to the court."  *Manuel de Jesus Ortega Melendres v. Arpaio*, No. CV-07-
2513-PHX-GMS, 2016 WL 4414755, at *4 (D. Ariz. Aug. 19, 2016).  The false
declarations were designed to give NIC a chance at "death penalty" adverse
inference sanctions, but they also put the declarants at risk of everything from
sanctions and contempt to lengthy terms in federal prison.  Each instance of perjury
is punishable by up to five years, and as outlined above, the declarations contain
numerous false statements.  That combination can result in serious prison time.  In
*Gebhard v. United States*, 422 F.2d 281, 284 (9th Cir. 1970), for example, the court
held that a 17-year sentence for perjury was not cruel and unusual since the
defendant "could have received a sentence of as high as seventy-five years under the
fifteen counts on which he was convicted."

NIC claims that "Courts nationwide have held that threatening witnesses with
legal or administrative action if they will not change or withdraw testimony
constitutes criminal witness tampering."  (Dkt. 857-1 at 11.)  As has been a constant
with the representations NIC makes in its sanctions motion, the truth is the polar
opposite.  None of the cases cited by NIC hold that.  And cases that have addressed
that issue unequivocally hold that "***Threats of Litigation Cannot Be a Basis for
Witness Tampering***."  *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233,
266 (S.D.N.Y. 2001) (emphasis in original); *Aamco Transmissions, Inc. v.
Marino,* Civ. A. Nos. 88–5522, 88–6197, 1990 WL 106760 (E.D.Pa.1990) (holding
in civil RICO action that alleged threats intended to induce third parties to sue RICO
plaintiff do not support a violation of 18 U.S.C. § 1512 [witness tampering]);
*Heffernan v. Hunter,* No. Civ. A. 97–6041, 1998 WL 150953 (E.D.Pa. March 26,
1998) (holding that 42 U.S.C. § 1985(c), which prohibits conspiracies to deter a
witness from attending court or testify freely in any pending matter, is not violated

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 22 -

by the filing of litigation, because such litigation is not "force, intimidation or threat," and to hold otherwise would chill the right of private parties to petition the government); *Turner v. New Jersey State Police*, No. CV085163KMJBC, 2017 WL 1190917, at *32 (D.N.J. Mar. 29, 2017) ("Without more, this threat to take legal action cannot constitute witness tampering, witness retaliation, or obstruction of justice."); *Maldonado v. Municipality of Barceloneta*, No. CIV.07-1992(JAG)(JA), 2009 WL 636016, at *2 (D.P.R. Mar. 11, 2009) ("This court can only see one threat in his Facebook message: the threat of future litigation. This is an insufficient basis for finding witness tampering.").[2]

Implicitly recognizing that a threat of litigation, without more, does not constitute a threat for purposes of witness tampering, NIC maintains that Scott Ferrell threatened "frivolous litigation." (Dkt. 857-1 at 13.) According to NIC, "[t]he witness testimony in this case is protected by the litigation privilege and prohibits any civil action based on the provision of testimony" so "[a]ny action instituted by Ferrell against the witnesses for their provision of testimony in this case would be malicious prosecution and an abuse of process." (Dkt. 857-1 at 13.) Perhaps NIC's assurances explain why these witnesses were so willing to commit perjury for NIC's benefit. But in any event, NIC's analysis fails for two separate reasons. First, California's litigation privilege does not immunize perjury from sanctions and/or contempt proceedings in this Court based on perjury. *People v. Persolve, LLC*, 218 Cal. App. 4th 1267, 1274 (2013) ("the litigation privilege does not apply to perjury, subornation of perjury, false report of a criminal offense . . . ."). Thus, NTG can and in fact has instituted sanctions proceedings against NIC and the declarants based on the false testimony. (Dkt. 855.) Second, as this case has

---

[2] For example, *Hussein v. Frederick*, 436 F. App'x 831, 832 (9th Cir. 2011) has nothing to do with witness tampering. NIC cites *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) as "upholding dispositive sanctions based on plaintiff's use of a lawsuit as a means to intimidate a witness." But it is actually a file deletion "spoliation" decision that has nothing to do with witness tampering. *Id.* The other cases cited by NIC involved extreme facts not remotely comparable to those here.

Callahan & Blaine
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

demonstrated, the litigation privilege does not always apply.  Perjury and filing false declarations in federal court are federal crimes. 18 U.S.C. §§ 1621, 1623.  NIC successfully argued in this case that "[t]he California litigation privilege does not apply where UCL claims are predicated on federal law, because federal law preempts California's privilege."  (Dkt. 54 at 35-36.)  This Court accepted that position (Dkt. 157 at 25-26), and NIC is currently prosecuting a lawsuit based in part on perjury allegations.  (Dkt. 92, ¶¶ 101, 108.)

NIC's allegations of threats are mostly NIC misrepresenting the evidence.  NIC claims that "Ferrell's agents repeatedly told the witnesses that they would suffer severe penalties if they did not change their testimony."  (Dkt. 857-1 at 11.)  What the investigator actually said was that "if a judge determines there was a fraudulent declaration submitted, certain sanctions against the person who committed the fraud can be instituted."  (Dkt. 857-5 at 5.)  That is a fair, accurate statement.  And it can hardly be news to MaryAnn Buc.  After all, the declaration at issue was one in which she accused Scott Ferrell of filing a false declaration.  (Dkt. 844-4.)  NIC's next misstatement is the claim that "Ferrell's agent tacitly admitted that he had told Charlotte Carlberg that her home could be taken if Charlotte did not change her testimony and that the Court had ruled in Ferrell's favor."  (Dkt. 857-1 at 8.)  But the investigator said, "[t]hat is a misquote[.]"  (Dkt. 857-5 at 5.)

NIC also relied on another false declaration from MaryAnn Buc.  Attorneys are not at liberty to file favorable but dubious factual declarations.  *Security Farms v. International Bhd. of Teamsters, Chauffers, Warehousemen & Helpers,* 124 F.3d 999, 1017 (9th Cir.1997).  That is particularly true when the attorney knows that the declarant is "untrustworthy."  Thus, in the widely followed matter of *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010), the Court affirmed disciplinary action an attorney misrepresented to the Ninth Circuit "that Dole Food Company was named in the Judgment," when it was not.  *Id.*  The lawyer "told the Ninth Circuit he justifies this action by arguing that he relied on Gutierrez, a nonlawyer, who told

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

him that the Judgment had been corrected." *Id.* The argument failed because Gutierrez had lied previously so "Lack knew firsthand that Gutierrez was untrustworthy . . . ." That case likewise disposed of the proposition that a lawyer is absolved of responsibility for untruthful statements if the lawyer "relies" on a witnesses declaration that the lawyer drafted. *Id.* at 1064. When faced with that excuse by another plaintiff lawyer in the *In re Girardi* matter, the Court held "[t]his is a breathtaking position. Traina's contention that no further investigation was needed because he was relying on statements [in a witness declaration] that he himself drafted is preposterous, and it is stunning that he continues to cling to this position." No reasonable attorney would have filed a factual declaration from MaryAnn Buc given what was shown in NTG's opposition to NIC's first sanctions motion.

### C.   <u>The Investigators Sought Truthful Testimony</u>

Finally, even if there was an attempt to influence testimony (as opposed to a request for a meeting to discuss the testimony) and a threat, which there were not, NIC's motion would still fail. Seeking truth is a defense to witness tampering and applies when "the defendant's sole intention was to encourage or induce the other person to testify truthfully or not to testify falsely; and (2) that the defendant's conduct toward the other person was lawful." *United States v. Breckenridge*, 472 F. Supp. 2d 200, 202–03 (D. Conn. 2007). There is overwhelming evidence that the declarations were false, *supra*.Part.II.B, and all that the investigator did was request a meeting to discuss providing "truthful" testimony. (Dkt. 857-5.)

## IV.   <u>CONCLUSION</u>

For the forgoing reasons, NIC's motion should be denied. And for the same and similar reasons, NTG's request for an Order to Show Cause (Dkt. 855) should be granted.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Dated:  October 28, 2019                    **CALLAHAN & BLAINE, APLC**

2

3                                               By:   */s/ David J. Darnell*
                                                     Edward Susolik
4                                                    David J. Darnell
                                                     James M. Sabovich
5                                                    Attorneys for Defendants NEWPORT
                                                     TRIAL GROUP and SCOTT J.
6                                                    FERRELL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM