UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | | Date | November 26, 2019 |
|---|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | | |

| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |
|---|---|
| Lisa Bredahl/Rolls Royce Paschal | |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |

**Proceedings:** **[IN CHAMBERS] Order Regarding Cross Objections to the Special Master's Corrected Order Re Implied Waiver at Docket No. 770**

Before the Court are cross-objections to the Special Master's "Corrected Order Re Implied Waiver Documents Following Remand" at Docket No. 770. Def. Obj., Docket No. 771; Pl. Obj., Docket No. 772. The parties each filed opposition briefs, Docket Nos. 821, 822, and reply briefs, Docket Nos. 824, 825.

For the following reasons, the Court **overrules** the cross objections.

## I. BACKGROUND

The background of this case is well known to the parties and the Court. This Order recites background only as relevant to the parties' cross-objections.

### A.   Overview

This case concerns litigation between NIC and NTG, its attorneys, and its clients. In brief, NIC alleges that NTG routinely fabricated class-action litigation to extort money from defendants nationwide. Docket No. 92 ¶ 2. In addition to the NTG Defendants, NIC has sued Taylor Demulder ("Demulder"), Matthew Dronkers ("Dronkers"), Andrew Nilon ("Nilon"), Sam Pfleg ("Pfleg"), Giovanni Sandoval ("Sandoval"), and Sam Schoonover ("Schoonover") (collectively, the "Non-NTG Defendants"), who served as lead plaintiffs in these cases. Id. NIC's Second Amended Complaint ("SAC") alleges that the NTG Defendants perpetrated two litigation schemes: (1) the false-advertising scheme and (2) the unauthorized recording, or "wiretapping" scheme. See generally, id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | November 26, 2019 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

    In the false advertising scheme, NTG and its investigator Andrew Baslow ("Baslow") would identify individuals to serve as lead plaintiffs in consumer fraud class actions against companies selling products in California. Docket No. 92 ¶¶ 23–24. NTG would then bribe these individuals to make intentional false representations that (1) they purchased the defendant's product in reliance on the representations made in defendant's product advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the advertisements. Id. ¶ 29. Using these false allegations, NTG would threaten companies with statewide class actions under various California consumer protection statutes,[1] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id. ¶ 27.

    The wiretapping scheme functioned similarly. Under the wiretapping scheme, NTG and Baslow would identify individuals to serve as potential lead plaintiffs in consumer privacy class actions. Id. ¶¶ 23–24. NTG would then bribe these individuals to stage private phone calls to various companies, and then later make intentionally false representations that (1) they were not aware that the call was being recorded; (2) they did not consent to the recording; and (3) they later learned that the company recorded all incoming calls only after completing the call. Id. ¶ 34. Using these false allegations, NTG would threaten companies with statewide class actions under the California Invasion of Privacy Act, Cal. Pen. Code §§ 632 et seq., ("CIPA")[2] and, before the

---

[1] NIC's SAC identifies four lawsuits filed in connection with the false advertising scheme: (1) Nilon v. Natural-Immunogenics Corp., Case No. 3:12-cv-00930-LAB-BGS (C.D. Cal. 2012) ("Nilon"); (2) Pfleg v. Nature's Way Prods., Inc., Case No. 37-2012-0051979-CU-MT-NC (San Diego Cty. Sup. Ct. 2012) ("Nature's Way"); (3) Dronkers v. Kiss My Face, LLC, Case No. 3:12-01151-JAH (S.D. Cal. 2012) ("Kiss My Face"); and (4) Morales v. Magna, Inc., Case No. 3:10-cv-01601-EDL (N.D. Cal. 2010) ("Magna"). Docket No. 92 ¶¶ 49–147, 175–221, 265–81. Nilon, Pfleg, and Dronkers served as the lead plaintiffs in Nilon, Nature's Way, and Kiss My Face, respectively. (Id.) Sandoval later substituted in as lead plaintiff in Nilon. Id. ¶¶ 105–13. Non-party Dan Bobba ("Bobba") served as a lead plaintiff in Magna. Id. ¶ 266.

[2] NIC's SAC identifies four lawsuits filed in connection with the wiretapping scheme: (1) Nilon v. Chromadex, Inc., Case No. 56-2013-00436790-CU-MT-VTA (Ventura Cty. Sup. Ct. 2013) ("Chromadex"); (2) Demulder v. Carter-Reed Co., LLC, Case No. 3:12-cv-0333-BTM (S.D. Cal. 2012) ("Carter-Reed"); (3) Schoonover v. Himalaya Drug Co., Case No. 12-cv-1782 (S.D. Cal. 2012) ("Himalaya Drug"); and (4) Torres v. Nutrisystem, Case No. 8:12-cv-01854-CJC-JPR (C.D. Cal. 2012) ("Nutrisystem"). Id. ¶¶ 148–74, 222–64, 282–317. Nilon, Demulder, and Schoonover served as the lead plaintiffs in Chromadex, Carter-Reed, and Himalaya Drug, respectively. Id. Non-party Raquel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | November 26, 2019 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id.

## B. Relevant Procedural History

On June 12, 2018, the Court held that the Defendants had impliedly waived privilege by asserting the "tester" defense. Docket No. 659 at 20. The Court held that "NIC is entitled to discovery into NIC's [sic] use of tester plaintiffs and any instructions given to tester plaintiffs by the NTG Defendants or its agents." Id. On October 11, 2018, at Defendants' request, the Court issued an Order Clarifying the Scope of Implied Waiver and directed the Special Master to perform an in camera review so that the files appropriately subject to the implied waiver would be identified and produced. Docket No. 753. The Court clarified its prior order and explained that three categories of documents fell within the scope of the implied waiver:

 1. All communications between the NTG Defendants and its tester plaintiffs regarding the NTG Defendants' tester activity in Chromadex, Himalaya Drug, and Carter-Reed, including but not limited to instructions to testers and information relevant to testers' reasons for making calls giving rise to CIPA injuries, regardless of when the communications occurred;

 2. All internal communications between the NTG Defendants or the NTG Defendants and their agents regarding the NTG Defendants' tester activity in Chromadex, Himalaya Drug, and Carter-Reed, including but not limited to instructions to testers and information relevant to testers' reasons for making calls giving rise to CIPA injuries, regardless of when the communications occurred; and

 3. Any communications or documents containing the word "tester" in Chromadex, Himalaya Drug, and Carter-Reed.

---

Torres ("Torres") served as a lead plaintiff in Nutrisystem. Id. ¶¶ 289, 295.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | November 26, 2019 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

Id. at 7–8.

On October 26, 2018, Defendants lodged 25 documents with the Special Master that they claimed encompassed all files within the Court's identified categories. See Docket No. 755 (NTG Notice of Lodging); Docket No. 756 (Non-NTG Notice of Lodging). NIC responded and requested that the Special Master review 289 files concerning the "tester" cases at issue, which were drawn from Defendants' privilege logs pertaining to the applicable CIPA cases. See Docket No. 757. After a telephonic hearing, the Special Master agreed with NIC and ordered the Defendants to produce for in camera review all 289 documents identified by NIC. Docket No. 761. On November 15, 2018, the Defendants lodged those 289 documents requested by the Special Master. Docket Nos. 765, 766.

The Special Master issued a preliminary order requesting that Defendants lodge proposed redactions to documents that potentially fell within the waiver. Docket No. 764. The Defendants submitted proposed redactions. Docket Nos. 765, 766. Following in camera review, the Special Master issued a Tentative Order finding that 88 (not 25) of the documents fell within the implied waiver. Following oral argument, the Special Master issued a final order finding that implied waiver applied to 88 documents. The Order permitted some of the proposed redactions while denying others. Dkt. 770 (Corrected Order). The parties now cross-objection to the Special Master's Order. Docket Nos. 771, 772.

## II. LEGAL STANDARD

The Court reviews all objections to the Special Master's findings of fact or conclusions of law de novo. Fed. R. Civ. P. 53(f).

## III. DISCUSSION

### A. Defendants' Objections

Defendants argue that the Special Master erroneously compelled 16 documents that do not discuss tester activity, and therefore do not trigger the implied waiver of attorney-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | November 26, 2019 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

privilege.[3] Def. Obj., Docket No. 771 at 3–7. The Court disagrees.

Once a court finds that implied waiver exists, it "must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." Bittaker v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003) (en banc). The implied waiver doctrine requires that the court "closely tailor the scope of the waiver to the needs of the opposing party." Id. Therefore, a court finding an implied waiver and ordering production must define the contours of the production and the waiver. Id. at 721. "[F]airness, not relevance, is the touchstone of the scope of the implied waiver doctrine." Rambus Inc. v. Samsung Elecs. Co., No. C-05-00334 RMW, 2007 WL 3444376, at *6 (N.D. Cal. Nov. 13, 2007).

Here, the Court ordered production of all files relates to the "Defendants' tester activity in Chromadex, Himalaya Drug, and Carter-Reed." Docket No. 753 at 7–8. In so doing, the Court found that any document related to NTG's alleged use of testers in those three cases were vital to NIC's case. Id. at 5–6.

The Court has reviewed in camera each of the documents reviewed by the Special Master prior to her order compelling 88 documents based on implied waiver to the attorney-client privilege. See Docket No. 770. The Court's review demonstrates that the documents compelled by the Special Master each relate to NTG's use of alleged tester plaintiffs. Defendants argue that the Special Master compelled documents containing only "quasi-administrative" discussions regarding Nilon's case (Chromadex) which are "unrelated to tester activity." Def. Obj., Docket No. 771 at 4. The Court disagrees. There is no "administrative" exception to implied waiver to attorney-client privilege. The communications compelled by the Special Master are vital to NIC's ability to rebut Defendants' argument that Nilon, Schoonover, and Demulder were acting as mere testers when they called the defendants in Chromadex, Himalaya Drug, and Carter-Reed, respectively, and therefore fall within the scope of the Court's holding on Defendants' implied waiver. Such communications are not restricted to those which mention the use of "testers," but also include communications which reveal the underlying nature of the allegedly "tester" claims. Accordingly, Defendants' objections to the Special Master's

---

[3] These documents are Bates Nos. NTG041927–28; NTG041931–32; NTG041948–50; NTG041951–53; NTG041954–56; NTG041957; NTG041979; NTG041980; NTG041996; NTG041997–98; NTG042014–15; NTG006386–87; NTG006388–89; NTG006390; NILON00017–24; and SCHOONOVER00003–04.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | November 26, 2019 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

order are overruled to the extent Defendants object to the ruling that they compel documents based on implied waiver to the attorney-client privilege. Defendants' requests for redactions are addressed below. See infra, section III.C.[4]

**B.      NIC's Objections**

NIC argues that (1) the Court must review all 289 files reviewed by the Special Master to complete an adequate de novo review, and (2) the crime-fraud exception to documents reviewed as part of the "tester" evaluation. Pl. Obj., Docket No. 772 at 3–7.

The Court agrees that a de novo review of each document reviewed by the Special Master is appropriate. Therefore, the Court has reviewed the complete set of documents reviewed the Special Master from which 88 documents were compelled based on implied waiver to the attorney-client privilege. Having performed this review, the Court finds that the Special Master compelled all documents subject to the implied waiver to the attorney-client privilege. NIC argues that the Court should compel each of the documents reviewed by the Special Master because they are all relevant to Defendants' "tester" defense. The Court disagrees; the documents which both the Court and the Special Master concluded are not subject to implied waiver simply do not concern Defendants' use of (or the absence of) alleged "tester" plaintiffs.

The Court also agrees with NIC that a concurrent review of the implied-waiver documents under the crime-fraud exception to the attorney-client privilege is an appropriate and efficient use of the Court's resources. Therefore, during its review of the implied-waiver documents, the Court conducted a concurrent review of the documents under the crime-fraud exception to the attorney-client privilege. However, this review did not reveal any non-duplicative documents subject to the crime-fraud exception.

Therefore, NIC's objection is overruled. As noted, the parties' dispute regarding redactions is addressed below. See infra, section III.C.

**C.      Redactions**

---

[4] At the hearing, NTG asked the Court to take a second look at five documents: NTG 41927, NTG 41928, NTG 41948, NTG 41951, and NTC 41954. Each of the docucments provides context for the "tester" documents and/or fall within the fraud exception.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | November 26, 2019 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

      The Special Master rejected certain of Defendants' proposed redactions, accepted some redactions in part, and allowed some redactions as proposed. Docket No. 770 at 7–10. Defendants argue that the scope of the Special Master's approved redactions was too narrow. See generally, Def. Opp'n, Docket No. 771.

      The Court disagrees. As NIC contends, the Court should not approve redactions that would conceal information necessary to understand the full context of implied waiver material. See Pl. Obj., Docket No. 772 at 6. Although the Court narrowed the scope of its implied waiver finding to "tester" activity in Chromadex, Himalaya Drug, and Carter-Reed, the scope of the waiver with respect to these three cases is broad so as to provide NIC with all vital information on NTG's use of testers. Therefore, content that relates to Defendants' state of mind, plan, motive, or use of "testers" in those three cases must be produced without redaction. The redactions approved by the Special Master properly exclude information regarding cases other than Chromadex, Himalaya Drug, and Carter-Reed (e.g., the names of other companies targeted by Defendants for litigation) without depriving NIC of essential context. See United States v. Christensen, 828 F.3d 763, 803 (9th Cir. 2015) ("If the nonprivileged portions of a communication are distinct and severable, and their disclosure would not effectively reveal the substance of the privileged legal portions, the court must designate which portions of the communication are protected and therefore may be excised or redacted (blocked out) prior to disclosure.").

      Accordingly, Defendants' objection to the scope of the redactions approved by the Special Master is overruled. Similarly, to the extent NIC objects to the Special Master's redaction findings, the objection is also overruled.

## IV. CONCLUSION

      For the foregoing reasons, the Court **overrules** the cross-objections to the Special Master's Order at Docket No. 770.

      **IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-2034 JVS (JCGx)   Date   November 26, 2019

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb/rrp | |