1  **CALLAHAN & BLAINE, APLC**
Edward Susolik (SBN 151081)
2  Esusolik@callahan-law.com
David J. Darnell (SBN 210166)
3  Ddarnell@callahan-law.com
James M. Sabovich (SBN 218488)
4  jsabovich@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
5  Santa Ana, California 92707
Telephone: (714) 241-4444
6  Facsimile: (714) 241-4445

7  Attorneys for Defendants NEWPORT TRIAL GROUP
and SCOTT J. FERRELL

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                **SOUTHERN DIVISION**

12  NATURAL IMMUNOGENICS          CASE NO.  8:15-cv-02034-JVS-JCG
CORP., a Florida corporation,     JAMS NO.  1220055347
13
Plaintiff,        **NTG'S OPPOSITION TO NIC'S**
14                                **OBJECTIONS TO THE SPECIAL**
**MASTER'S ORDER DENYING IN PART**
v.                  **NIC'S MOTION FOR LEAVE TO TAKE**
15                                **ADDITIONAL DISCOVERY [DKT. 876]**
NEWPORT TRIAL GROUP, et
16  al.,
Special Master: Hon. Rosalyn Chapman
17             Defendants.       Judge:        Hon. James V. Selna

18

19                                Date:        February 3, 2020
Time:        1:30 p.m.
20                                Dept.:       10C

21
Complaint Filed:    December 7, 2015
22                                Trial Date:         November 3, 2020

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1
2

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................... 1

II.   PROCEDURAL BACKGROUND ............................................................. 2

III.  THE SPECIAL MASTER CORRECTLY DENIED NIC'S REQUEST FOR ADDITIONAL DISCOVERY .............................................................. 7

   A.   The Special Master Correctly Denied NIC's Request for Reopened Depositions ................................................................... 8

   B.   The Special Master Correctly Found that NIC Has Not Shown Good Cause for Discovery from Kirtland & Packard ...................... 12

   C.   The Special Master Correctly Found that NIC Has Not Shown Good Cause to Depose Wynn Ferrell ............................................. 14

   D.   The Special Master Correctly Found that NIC Has Not Shown Good Cause to Depose Daniel Bobba ........................................... 15

   E.   The Special Master Correctly Denied NIC's Request for Leave to File Yet Another Crime-Fraud Motion ........................................ 16

   F.   The Special Master Correctly Found that the Discovery NIC Seeks is Disproportionate to the Amount in Controversy and Importance of the Issues ............................................................. 18

IV.   CONCLUSION ........................................................................................ 22

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Abbott v. Wyoming Cty. Sheriff's Office*,
   2017 WL 2115381 (W.D.N.Y. May 16, 2017) ...................................... 22

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
   2016 WL 6779901 (S.D.N.Y. Nov. 16, 2016) ...................................... 22

*Archer v. City of Taft*,
   No. 1:12-CV-00261-AWI, 2014 WL 5216653 (E.D. Cal. Oct. 14, 2014) .................................................................................................. 8

*Arminak v. Arminak & Assocs., LLC*,
   No. CV 16-3382 JAK (SSX), 2017 WL 10403032 (C.D. Cal. May 23, 2017) ............................................................................................. 11

*Barten v. State Farm Mut. Auto. Ins. Co.*,
   No. CIV12399TUCCKJLAB, 2014 WL 11512606 (D. Ariz. July 8, 2014) ............................................................................................... 8, 11

*Bookhamer v. Sunbeam Products Inc.*,
   No. C 09-6024 EMC (DMR), 2012 WL 5188302 (N.D. Cal. 2012) ................ 10

*E.E.O.C. v. Prod. Fabricators Inc.*,
   285 F.R.D. 418 (D. Minn. 2012) ..................................................... 10

*Eaton Corp. v. Weeks*,
   No. 13-12392, 2014 WL 700466 (E.D. Mich. 2014) ............................... 10

*Goins v. Cty. of Merced*,
   No. 113CV01245DADSKO, 2015 WL 9304749 (E.D. Cal. Dec. 22, 2015) ....................................................................................... 8, 11

*Graebner v. James River Corp.*,
   130 F.R.D. 440 (N.D. Cal. 1989) ...................................................... 8

*Harris v. Computer Assocs. Int'l, Inc.*,
   204 F.R.D. 44 (E.D.N.Y.2001) ......................................................... 7

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- ii -

1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

2

**Pages**

3

*Ispat Inland, Inc. v. Kemper Envtl., Ltd.*,

4
   No. 05 CIV 5401 BSJ HBP, 2007 WL 2197892 (S.D.N.Y. July 31,

   2007) ...................................................................................................................9

5

6
*Love v. Permanente Med. Grp.*,

   No. C-12-05679 WHO (DMR), 2014 WL 491257 (N.D. Cal. Feb. 4,

7
   2014) .................................................................................................................10

8
*Morales, et al. v. Magna, Inc., et al.*,

9
   No. 3:10-cv-1601-EDL (N.D. Cal. filed Apr. 14, 2010)............................ 15, 16

10
*Morris v. Sutton*,

11
   No. 117CV01488AWISAB, 2019 WL 2994291 (E.D. Cal. July 9,

   2019) .................................................................................................................21

12

13
*Nation Star Mortgage LLC v. Flamingo Trails No. 7 Landscape*
   *Maintenance Ass'n*,

14
   316 F.R.D. 327 (D. Nev. 2016) ...................................................................7, 19

15
*Singleton v. Hedgepath*,

16
   No. 1:08-CV-00095-AWI, 2015 WL 1893982 (E.D. Cal. Apr. 24,

   2015) .................................................................................................................21

17

18
*United States v. Canamari*,

   978 F.2d 1266 (9th Cir. 1992) ............................................................................14

19

20
*United Steel Workers of Am. v. Retirement Income Plan for Hourly-*
   *Rated Employees of ASARCO, Inc.*,

21
   512 F.3d 555 (9th Cir. 2008) .............................................................................17

22
*Updike v. Clackamas County*,

23
   No. 3:15-CV-00723-SI, 2016 WL 111424 (D. Or. Jan. 11, 2016) .....................22

24
*Zest IP Holdings, LLC v. Implant Direct Mfg.*,

   No. CIV. 10-0541-GPC WVG, 2013 WL 5211940 (S.D. Cal. Sept.

25
   13, 2013) .............................................................................................................7

26
**Statutes**

27
Fed. R. Civ. Proc. 26(b)(1) ......................................................................7, 18, 19

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- iii -

1    Defendants Newport Trial Group and Scott Ferrell (collectively "NTG")

2 respectfully submit their Opposition to NIC's Objection to the Special Master's

3 Order (Dkt. 881) denying in part NIC's motion for leave to take additional

4 discovery.

5 **I.    INTRODUCTION**

6    Defendants have literally been waiting and asking for years for a trial date.

7 And after more than four years and more than 885 docket entries, this matter has

8 now finally been set to proceed to trial on November 3, 2020.  Yet NIC's latest

9 objections threaten to derail the November trial date and waste tremendous party

10 and judicial resources by seeking to redo depositions and take additional discovery

11 for which there is simply no good cause, as described more fully below and in the

12 Special Master's well-reasoned Order.

13    Approximately one year ago, the Court informed the parties that "I cannot in

14 good conscience continue to give the level of attention to this case that parties have

15 thrust upon the Court" and that the "burden I think is disproportionate to the

16 significance and value of the controversy . . . ."  Oct. 11, 2018 Hearing Tr. at 37:2-7.

17 In doing so, the Court also affirmed that "the burdens imposed by this litigation are

18 not justified by the amount in controversy" and that "the amount in controversy is

19 not so high as to validate unending discovery, nor is it so high as to justify the

20 substantial burden placed on the parties and the Court by the discovery at issue in

21 this motion [seeking *in camera* review.]"  (Dkt. 788 at 13.)

22    Despite these findings, NIC recently asked the Special Master for leave to

23 redo depositions and expand discovery even further.  Specifically, NIC sought to

24 redo five party depositions that were already taken, to add three new non-party

25 depositions and one new records subpoena for witnesses NIC has always known

26 about, and to file a crime-fraud motion over documents that were logged years ago.

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 1 -

The Special Master correctly recognized NIC's latest request to be excessive and unfounded.  First and foremost, the discovery NIC sought did not "legitimately flow from" this Court's privilege orders as NIC claimed.  Moreover, as the Special Master's Order noted, NIC did not establish good cause and NIC refused to identify not only the proposed questions, but even the topics and subject matters that would justify the reopening of these depositions.  NIC likewise failed to specify any areas of examination to which the witnesses did not respond previously.  At the same time, NIC refused to explain why or how information in the recently produced documents would support the recalled depositions (let alone reopening a specific line of questioning at these completed depositions) or justify the taking of more non-party depositions for witnesses NIC has always known about.  As to NIC's proposed supplemental crime-fraud motion, the documents that NIC seeks were on a privilege log that was produced years ago, and that was the subject of NIC's already litigated Omnibus Motion.  Further, those documents relate to the Vogue matter, and this Court expressly barred discovery into that case because "NIC has unduly delayed seeking discovery into [Schoonover's] case against Vogue International . . . ."  (Dkt. 414 at 7.)  Thus, as the Special Master correctly found, NIC's motion for leave for yet another crime-fraud motion is directed at discovery that is prohibited by the law of the case.  Finally, the Special Master correctly found that NIC's requests, individually and as a whole, were not proportional to the needs of this case or the amount in controversy.

For all of these reasons and as described further below, the Special Master's Order is correct and NIC's Objection to it should be overruled.

## II.   **PROCEDURAL BACKGROUND**

NIC's motion for leave was the second time that NIC had filed a vague and generic request to recall and reopen the depositions of three of the same defendants (i.e., Andrew Nilon, Sam Schoonover, and Taylor Demulder) that are at issue in the instant motion.  NIC previously filed a motion requesting "(1) Specific Relief

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

Related to the Depositions of Taylor Demulder ("Demulder"), Sam Pfleg ("Pfleg"), Giovanni Sandoval ("Sandoval"), Matthew Dronkers ("Dronkers") and Andrew Nilon ("Nilon"); and (2) Sanctions against Defendants Nilon, Demulder and Sam Schoonover ("Schoonover") and their counsel…" (Dkt. 518 at 1-2).  Importantly, in considering that motion, the Special Master discussed what transpired at the depositions of Nilon, Demulder, and Pfleg by noting:[1]

- "On June 7, 2017, the deposition of Andrew Nilon took place in Irvine, California.  Arhangelsky Decl. ¶ 11, Exh. H.  NIC did not terminate the deposition and at the end of the deposition, NIC's counsel stated: 'Okay. At this point we're complete with our examination.'"  (Dkt. 518 at 4.)
- "On May 12, 2017, the deposition of Demulder took place in Las Vegas, Nevada.  At the end of the deposition, NIC's counsel said, 'All right. We're done.'"  (Dkt. 518 at 4.)
- "On May 24, 2017, the deposition of Pfleg took place in Chicago, Illinois.  Arhangelsky Decl. ¶ 8, Exh. E.  NIC did not terminate the deposition and, after a brief cross-examination by NTG Defendants' attorney, David Darnell ("Darnell"), NIC agreed there were no more questions."  (Dkt. 518 at 4.)

The Special Master also described how counsel for the parties had met and conferred after the first session of Schoonover's deposition and how NIC was able to reschedule and complete Schoonover's recalled deposition on June 2, 2017, without issue.  (Dkt. 518 at 3-4.)

Despite concluding these depositions without reserving any rights, NIC filed a motion seeking to recall multiple depositions based on allegations ranging from

---

[1] The descriptions quoted in bullet points are taken verbatim from the Special Master's Order in Docket 518.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

coaching to evasive answers and privilege assertions.  (Dkt. 518 at 1-2.)  But as the Special Master explained in that prior order, NIC's motion did "not clearly identify or set forth the specific relief NIC seeks, as the motion properly should."  (Dkt. 518 at 5.)  Continuing, the Special Master noted:  "Most strikingly, NIC does not identify what questions it wants each of the non-NTG Defendants to answer at his recalled deposition."  (*Id.*)  Accordingly, the Special Master denied "the motion without prejudice to NIC filing a new motion for relief after strict compliance with Rule 37(a)(1) and Local Rule 37-1."  (*Id.*)

NIC took the same approach in its latest motion for leave.  This time, in addition to requesting a complete and unrestricted "re-do" of five defendant depositions that have already been taken, completed, and closed, NIC also seeks a whole host of "new" discovery.  First, NIC seeks leave to serve an undefined records subpoena and to take a Rule 30(b)(6) deposition of the law firm of Kirtland & Patrick ("K&P"), which is a non-party that NIC has known for years was co-counsel with NTG on two SAC cases.  (Dkt. 876 at 13-14.)  Second, NIC seeks to depose Scott Ferrell's father, Wynn Ferrell.  Again, Wynn Ferrell is a non-party witness who NIC has known for years.  (*Id.*)  Third, NIC seeks to depose non-party Daniel Bobba, a plaintiff in one of the predicate cases who NIC has also known about throughout the entirety of this case (i.e., for more than four years now).  (*Id.*)  And finally, NIC requests leave to start another round of crime-fraud litigation for documents that were logged years ago and that include text messages relating to Schoonover's lawsuit against Vogue, which is not one of the eight cases at issue.  (*Id.* at 13, 27-30.)

The Special Master appropriately denied NIC's motion for leave.  As her well-reasoned Order explained, there was no cause for these recalled depositions.  The "defendants were timely deposed prior to the discovery cut-off date" and "NIC

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

had an opportunity to fully examine each of these defendants . . . ."[2]  (*Id.* at 18.)  NIC failed to "identif[y] *any* question that the witnesses either answered evasively or refused to answer at their depositions" and did not even "cite any portions of these witnesses' deposition transcripts to support its motion to recall them."  (*Id.* at 19 [emphasis in original].)  The Special Master was understandably concerned by NIC's failure to set forth any subjects of inquiry.  That failure "demonstrates the likelihood that their recalled depositions will be expansive and not proportional to the needs of the case."  (*Id.* at 20.)  Further, "[w]ithout identifying the examination topics for the recalled depositions, and without explaining why those topics were not covered at the initial depositions, NIC has not shown that the recalled depositions of these defendants would not be duplicative of the initial depositions and other evidence or that the likely benefit from the depositions outweighs the burden or expense of the depositions, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  (*Id.* at 20-21.)  Rather, the Special Master reasonably found that "the recalled depositions of Nilon, Schoonover, Pfleg and Demulder would significantly expand the scope of the discovery, increase litigation costs to Defendants, and have the potential to harass Defendants, as well."  (*Id.* at 21.)

The Special Master likewise denied NIC's request to take the depositions of K&P, Wynn Ferrell (Scott Ferrell's father), and Daniel Bobba.  As the Order explained, "NIC has been aware that these third-party witnesses may possess information relevant to the claims and defenses in this action since the commencement of the litigation and has not been diligent in deposing them."  (*Id.* at

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

[2] The Special Master did allow NIC to re-depose Baslow for "questions Baslow improperly refused to answer at his initial deposition on privilege, work product or tester defense grounds, questions logically stemming from his answers to those questions, and questions relating to documents NIC now possesses pursuant to the Court's Orders."  (Dkt. 876 at 18.)

22.)  Further, NIC failed to show that any of these depositions "legitimately flow[s]" from the Court's Orders regarding crime-fraud.  (*Id.* at 23.)  NIC did not "proffer the topics for Bobba's deposition or even suggest a few questions it might ask Bobba" and "Bobba was not one of NTG's alleged testers."  (*Id.*)  Moreover, NIC had not "shown that Bobba's deposition will not be duplicative of other evidence and its likely benefit outweighs the expense or burden of the deposition."  (*Id.* at 23.)

The Order declined NIC's request to depose Wynn Ferrell for similar reasons.  NIC cited recent documents mentioning Wynn Ferrell, but "that does not change the fact that NIC has known of Wynn Ferrell as a witness since the beginning of the litigation."  (*Id.* at 24.)  As with the other requests, "NIC does not proffer the topics for Wynn Ferrell's deposition or even suggest a few questions it might ask Wynn Ferrell" so "it is unclear how Wynn Ferrell's deposition 'legitimately flow[s]' from the Court's Orders."  (*Id.* at 24.)  Given this, and that "the upcoming depositions of NTG's four principals – as well as Defendant Baslow's deposition -- present opportunities for NIC to ask questions that it otherwise might pose to Wynn Ferrell," NIC failed to "shown that Wynn Ferrell's deposition, either by itself or in conjunction with the other discovery NIC seeks, is proportional to the needs of the case; it is not."  (*Id.*)

The Special Master also correctly denied NIC's request to depose and seek documents from K&P.  NIC had argued that "NTG referred cases to K&P, who represented Dronkers in *Kiss My Face* and Demulder in *Carter-Reed*; and '[w]hether NTG informed K&P of the staged nature of those suits is a significant issue in this case.'"  (*Id.*)  Yet, "[w]hether NTG informed K&P of its 'scheme' has never been an issue in this case – let alone a significant issue."  (*Id.* at 25.)  Even setting that aside, "any examination of K&P's Rule 30(b)(6) witness regarding whether NTG informed K&P of its 'scheme' may spawn new, unresolved and distracting claims of privilege and work product protection by K&P that are unique to K&P as a law firm and which are separate and distinct from NTG's claims of

- 6 -

Callahan & Blaine
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

privilege and work product." (*Id.*)  As with its other requests, NIC knew of K&P since "the start of the litigation," failed to provide questions or topics, and its request was not proportional.  (*Id.* at 26-28.)

The Special Master likewise denied NIC's tardy request for a supplemental crime-fraud review.  As the Order explained, "[t]en of the sixteen messages listed on Defendant Schoonover's privilege log are communications that exclusively relate to Schoonover's *Vogue* litigation" and the Court had already "denied NIC's request to discover Schoonover's *Vogue* documents on the grounds that the *Vogue* case is not one of the eight cases underlying the pending action and NIC's request was tardy." (*Id.* at 28.)  Thus, NIC's request was barred by the law of the case.  (*Id.*; *see also* Dkt. 414 at 7 ("Therefore, NIC has unduly delayed seeking discovery into his case against Vogue International.")  Moreover, NIC did not did not act "diligently" in making the request and it was not proportional to the needs of the case.  (Dkt. 876 at 28-29.)

## III.   THE SPECIAL MASTER CORRECTLY DENIED NIC'S REQUEST FOR ADDITIONAL DISCOVERY

The Special Master issued a thoughtful and legally correct Order to which NIC does not raise any meritorious objections.  The fact is that NIC sought expansive discovery long after the discovery cutoff date without any showing of good cause.  Simply put, "[d]iscovery should not be extended when a party had an ample opportunity to pursue the evidence during discovery."  *Harris v. Computer Assocs. Int'l, Inc.,* 204 F.R.D. 44, 45 (E.D.N.Y.2001) (collecting cases); *Zest IP Holdings, LLC v. Implant Direct Mfg.*, No. CIV. 10-0541-GPC WVG, 2013 WL 5211940, at *2 (S.D. Cal. Sept. 13, 2013).  And all discovery must be proportional. Fed. R. Civ. Proc. 26(b)(1); *Nation Star Mortgage LLC v. Flamingo Trails No. 7 Landscape Maintenance Ass'n*, 316 F.R.D. 327, 331 (D. Nev. 2016).  As seen below, NIC's request did not meet these standards and did not legitimately flow from this Court's privilege orders.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 7 -

### A. The Special Master Correctly Denied NIC's Request for Reopened Depositions

"Courts disfavor repeat depositions, except in certain circumstances, which include the 'long passage of time with new evidence [and] new theories added to the complaint.'" *Barten v. State Farm Mut. Auto. Ins. Co.*, No. CIV12399TUCCKJLAB, 2014 WL 11512606, at *2 (D. Ariz. July 8, 2014) *quoting Graebner v. James River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1989).

Requests to reopen one or two depositions are typically denied absent extreme circumstances. *Id.* NIC's proposal was remarkable both in number and in scope. NIC seeks to reopen **five** depositions. By seeking to retake the depositions of Schoonover, Nilon, Pfleg, Demulder, and Baslow, NIC essentially asks this Court to allow it to redo almost every party deposition NIC has taken and to do so **after** discovery has closed and **after** testimony from those witnesses has already been provided and relied upon by the parties, their experts, and their counsel.

The Special Master correctly denied NIC's request on multiple grounds. The Order is correct in highlighting NIC's failure to specify topics or even sample questions. (Dkt. 876 at 20.) NIC proposed an unlimited scope for these depositions and provided no specificity with regard to what it would question these witnesses about. This failing, in and of itself, precludes a finding of any good cause and likewise precludes a recalled deposition. In *Goins v. Cty. of Merced*, No. 113CV01245DADSKO, 2015 WL 9304749, at *4 (E.D. Cal. Dec. 22, 2015), the district court refused to reopen a deposition when the moving party failed to specify the questions: "The Court cannot speculate about what Plaintiffs would seek in a further deposition of Defendant Hutton, and therefore unable to find that reopening the deposition of Defendant Hutton is warranted." *See also Archer v. City of Taft*, No. 1:12-CV-00261-AWI, 2014 WL 5216653, at *2 (E.D. Cal. Oct. 14, 2014) (denying request to reopen deposition when a party identifies topics but "fails to explain how they bear on the questions presented in this litigation.").

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    The same lack of specificity is similarly fatal to NIC's argument that

2   depositions should be reopened due to privilege issues.  As to "Defendants Nilon,

3   Spoonover, Pfeg and Demulder, NIC has not identified *any* question that the

4   witnesses either answered evasively or refused to answer at their depositions."  (Dkt.

5   876 at 19 [emphasis in original].)  Like the party seeking to reopen depositions in

6   *Ispat Inland, Inc. v. Kemper Envtl., Ltd.*, No. 05 CIV 5401 BSJ HBP, 2007 WL

7   2197892, at *4 (S.D.N.Y. July 31, 2007), NIC "makes a broad brush challenge to []

8   assertion of privilege" but does "not specify the [] witnesses who allegedly invoked

9   privilege improperly, nor does it identify the specific invocations of privilege that it

10   claims were improper."  That is insufficient.  "[T]he party challenging the

11   invocation of a privilege must, at least, identify what testimony is in issue and

12   explain why it believes the assertion of privilege is improper."  *Id.*  Without "this

13   information, it is simply impossible to begin to assess" a privilege challenge.  *Id.*

14    Nor did NIC have any other valid justification for reopening the depositions.

15   NIC now argues generally that the five depositions were taken two years ago, that it

16   has "new evidence" for those depositions, and that NTG has injected a "tester"

17   defense into the case.  (Dkt. 881 at 14-16.)  But NIC does not identify the specific

18   evidence it did not have before, and it most certainly does not explain how this new

19   evidence is connected to or otherwise relevant to further testimony from each of the

20   specific witnesses it seeks to re-depose.  NIC also fails to explain how the "tester"

21   defense is likely to elicit new testimony from witnesses who were already deposed

22   on those issues.  Hence, as the Special Master correctly found, none of these

23   positions have merit.

24    NIC claims that a "significant amount of time has passed since NIC deposed

25   all of these witnesses" in the summer of 2017.  But two years is hardly a significant

26   "passage of time" for deposition testimony in modern litigation, particularly

27   complex litigation in federal court.  If it were, most lay witnesses in complex cases

28   would be deposed multiple times at great waste and delay.  Moreover, it is NIC that

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    has repeatedly requested more and more discovery while also seeking to delay the

2    trial date in this matter.  (Dkt. 415-1.)

3         Nor do "new documents" in and of themselves justify reopening a deposition.

4    NIC argues it has additional documents now due to subsequent productions per this

5    Court's rulings.  But that is always true when a party takes a deposition before all

6    discovery is complete.  *Bookhamer v. Sunbeam Products Inc.*, No. C 09-6024 EMC

7    (DMR), 2012 WL 5188302, *3 (N.D. Cal. 2012) ("Defendant had ample

8    opportunity to obtain the information that it seeks ... [and] chose to depose

9    [Plaintiff] relatively early in discovery, rather than wait ... until after the Oklahoma

10   state court ruled on Defendant's motion to obtain ... documents"); *Love v.*

11   *Permanente Med. Grp.*, No. C-12-05679 WHO (DMR), 2014 WL 491257, at *2

12   (N.D. Cal. Feb. 4, 2014) (Denying motion to reopen depositions when "Defendants

13   have had fair opportunity to obtain the information they now seek.  They chose to

14   schedule both of Plaintiff's prior depositions relatively early in discovery . . . .");

15   *E.E.O.C. v. Prod. Fabricators Inc.*, 285 F.R.D. 418, 422-23 (D. Minn. 2012)

16   (Defendants chose to depose Plaintiff "early in the discovery period, and in spite of

17   the ongoing dispute about the production of various documents, ... knowing full well

18   that the eventual production of such documents might produce new information that

19   Defendants might wish to ask ... about"); *Eaton Corp. v. Weeks*, No. 13-12392, 2014

20   WL 700466, *3 (E.D. Mich. 2014) ("the Court may deny leave to conduct a second

21   deposition of the witness even if relevant documents are produced subsequent to the

22   deposition if the party taking the deposition ... chose to conduct the deposition prior

23   to the completion of document discovery") (citations omitted).

24        In any event, the issue is not whether a party can point to some "new"

25   document that it might conceivably question a witness about at a recalled

26   deposition.  Rather, the question is whether the "new" evidence justifies reopening

27   the deposition.  Accordingly, courts routinely refuse to reopen depositions when

28   parties fail to specify what is in a "new" document that warrants further

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 10 -

examination, or when they merely point to "new evidence" that relates to a subject the deponent already testified about. *Arminak v. Arminak & Assocs., LLC*, No. CV 16-3382 JAK (SSX), 2017 WL 10403032, at *5 (C.D. Cal. May 23, 2017); *Barten v. State Farm Mut. Auto. Ins. Co.*, No. CIV12399TUCCKJLAB, 2014 WL 11512606, at *3 (D. Ariz. July 8, 2014.)  That is particularly true when a moving party, such as NIC does here, "fail[s] to explain in even general terms how" the prior deposition testimony "was inadequate or insufficient." *Goins v. Cty. of Merced*, No. 113CV01245DADSKO, 2015 WL 9304749, at *3 (E.D. Cal. Dec. 22, 2015).

Again, NIC does not even specify what documents it wishes to use for questioning in these reopened depositions, much less show that those documents and the information in them open up entirely new areas of inquiry that it could not have previously explored.  For example, NIC's motion frequently mentions the text exchange between Baslow and Schoonover at SCHOONOVER00083 *et al*.  (Dkt. 881 at 23.)  Those documents were produced to NIC on September 5, 2018.  If NIC were to offer that as the basis for subjecting Schoonover to a third deposition and Baslow to a second deposition, NIC could not possibly show that it was diligent in seeking to reopen the depositions.  Not only did NIC wait over one year, but NIC abandoned a request to reopen the Non-NTG Defendants' (including Schoonover's) depositions.

NIC's position that NTG has somehow added a "tester" affirmative defense which justifies reopening depositions is without merit.  The "tester" issue has always existed in this litigation.  Indeed, NIC's May 10, 2016, Second Amended Complaint refers to NTG's argument regarding the use of "tester plaintiffs."  (Dkt. 92, ¶ 313.)  Moreover, NIC asked about the "tester" issue at numerous depositions that were taken and completed years ago.  (Pfleg Tr. at 60:19-61:8; Torres Tr. at 59:14-21; Nilon Tr. at 128:8-17.)  As the Special Master noted, Schoonover has already been deposed twice "and NIC has not shown that he, Nilon or Demulder refused to answer any question on privilege grounds or that NIC has not been

- 11 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

diligent in examining these three defendants on privilege or tester issues." (Dkt. 876 at 21.) Pfleg was not even "one of NTG's alleged testers" and so "cannot testify regarding the tester defense." (*Id.*) Moreover, as the Special Master noted, "NIC will have the opportunity to obtain pertinent information relating to the tester defense from Defendant Baslow." (Dkt. 876 at 21.) NIC cannot claim that an issue that NIC specifically identified in its own pleadings and about which it already questioned witnesses somehow justifies reopening depositions.

Finally, NIC claims that "[t]he Special Master's order also conflicts with this Court's order in Docket No. 753 because she denied NIC discovery from the tester plaintiffs regarding their tester defense" when the Court indicated that discovery would not be limited to documents. (Dkt. 881 at 15.) But the Special Master did not deny discovery based on the form of discovery sought. She denied discovery because NIC failed to establish that it was entitled to recalled depositions. NIC was not diligent, the discovery sought did not "legitimately flow" from the Court's order, and it was not proportional to the case. (Dkt. 876 at 18-21.) The Special Master clearly did not limit NIC to documentary evidence given that the Order does allow a recalled deposition of Baslow, albeit subject to limitations. Thus, NIC's claim that the Order is contrary to Docket 753 is without merit.

Accordingly, the Special Master was correct in denying NIC's request for recalled depositions.

**B.     The Special Master Correctly Found that NIC Has Not Shown Good Cause for Discovery from Kirtland & Packard**

The Special Master correctly rejected NIC's request for belated discovery against K&P for multiple reasons. *Supra.* Part.II. NIC has known of K&P's role since the inception of this case, and NIC could have sought discovery from it. (Dkt. 876 at 25.) Even setting that aside, interactions with NTG and K&P have "never been an issue in this case – let alone a significant issue." (*Id.* at 25.) While NIC tries to shoehorn them into relevancy by claiming they go to NTG's "mental state"

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 12 -

(Dkt. 881 at 20), the Special Master recognized that "it just as easily can be characterized as discovery into whether K&P 'conspired' with NTG to violate RICO." (*Id.*) This, of course, opens up "new, unresolved and distracting claims of privilege and work product protection by K&P that are unique to K&P as a law firm and which are separate and distinct from NTG's claims of privilege and work product." (Dkt. 876 at 25.) And, as with every other discovery request, NIC failed to show that the request flowed from this Court's prior privilege orders. (*Id.*)

The Special Master was correct on all counts. NIC claims it "has diligently pursued the K&P deposition because the topics for discussion at that deposition arise out of the privilege orders" (Dkt. 881), but NIC has not provided any topics or questions. The fact is that NIC has been making allegations about K&P for years. (Dkt. 92, ¶¶ 205; 232-34; *see also* Dkt. 94-18 at 28-29, 44.) Likewise, NIC's briefing throughout this case has frequently discussed K&P. (*See* Dkt. 292-1 at 53, 63; Dkt. 264-2, ¶¶ 243, 244, 255, 265.) In fact, NIC was even discussing NTG's "Wiretap Referrals" to K&P over two years ago. (Dkt. 264-2, ¶ 265.)

NIC claims that the Special Master "speculates that the deposition should not proceed because K&P may raise privilege objections," then "that speculation is not a valid basis to deny NIC's request." (Dkt. 881 at 21.) Whether a law firm not involved in this case will assert privilege over facially privileged litigation documents is not "speculation," it is self-evident. NIC claims that "[t]he Court's orders regarding privilege related to K&P are clear" (*id.* at 21), but there are no such orders. The Court did not "overrule" privilege *en mass*. Rather, there are specific rulings on specific documents. Because NIC never subpoenaed K&P, no document over which K&P asserts attorney-client privilege or work product protection has been subject to a privilege challenge. NIC may point to prior rulings, but K&P is not a party to this litigation and had no involvement in the privilege motions. "It is axiomatic that law of the case requires an identity of the parties to be bound."

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 13 -

*United States v. Canamari*, 978 F.2d 1266 (9th Cir. 1992).  Thus, K&P will not be bound by any prior decisions on privilege.

The Special Master also properly recognized that what NIC is proposing is more costly discovery and more fights over privilege with a new non-party law firm. The Special Master's Order was thus correct in finding that there is no good cause for that discovery, it does not legitimately flow from this Court's Order, and it is disproportionate to the needs of this case.

**C.**   **The Special Master Correctly Found that NIC Has Not Shown Good Cause to Depose Wynn Ferrell**

The Special Master correctly found that there was not good cause to grant a deposition of Scott Ferrell's father, Wynn Ferrell.  (Dkt. 876 at 23-24.)  NIC did not specify any questions or topics for Wynn Ferrell's deposition.  Nor does NIC claim that it only recently learned that Wynn Ferrell might be a witness in this case.  After all, "Wynn Ferrell" is the first entry on NIC's initial disclosure listing individuals it claimed were "likely to possess knowledge of relevant events or facts, including, *inter alia,* facts surrounding: (1) NTG's acquisition of clients . . ."  (Dkt. 94-18 at 44.)  NIC's First Amended Complaint also referred to Wynn Ferrell.  (Dkt. 30, ¶¶ 217, 248, 251.  And NIC even discussed Wynn Ferrell in its crime-fraud motion.  (Dkt. 292 at 15 16, 67; *see also* Dkt. 403 at 14 (NIC's opposition to MSJ discussing Wynn Ferrell); Dkt. 473 at 7 (NIC objection claiming that "NTG's plaintiff clients were in close contact with NTG agents Baslow and Wynn Ferrell immediately before their calls.")

NIC points to the fact that it now has some documents that mention Wynn Ferrell.  (Dkt. 881 at 19.)  But "[e]ven if Wynn Ferrell were mentioned in a document recently produced by Defendants, that does not change the fact that NIC has known of Wynn Ferrell as a witness since the beginning of the litigation."  (Dkt. 876 at 24.)  NIC told the Special Master it "reasonably delayed seeking a deposition of Wynn Ferrell until after the privilege rulings for a number of reasons."  (Dkt.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

854-1 at 21.)  This is a *post hoc* pretense: if NIC was actually planning on taking Wynn Ferrell's deposition after the Omnibus ruling, it would have said that before now.  Nothing in the Omnibus ruling or in a recent document production shows any need for a post-cutoff deposition.  Indeed, two of the documents cited by NIC, NTG007983 and NTG015268, came within the Court's June 12, 2018, Order and were produced over one year ago.  (Dkt. 659 at 22.)  Thus, even if NIC did argue that new documents justified a deposition (which NIC does not), NIC would not be able to show reasonable diligence in seeking that deposition more than a year after those documents were produced to it.  This is particularly true because, as the Special Master noted, NIC will be able to depose Baslow and can thus direct questions to him.  (Dkt. 876 at 23.)

Accordingly, the Special Master correctly denied NIC's request to depose Wynn Ferrell.

### D.   The Special Master Correctly Found that NIC Has Not Shown Good Cause to Depose Daniel Bobba

NIC sought leave to depose Daniel Bobba, the plaintiff in *Morales, et al. v. Magna, Inc., et al.*, No. 3:10-cv-1601-EDL (N.D. Cal. filed Apr. 14, 2010) and a non-party witness that NIC has always known about.  NIC failed to show that it was reasonably diligent in seeking Bobba's deposition.  NIC has long known of Bobba. (Dkt. 92, ¶¶ 265-281, 375(b), 378; Dkt. 63-6 (Bobba declaration); Dkt. 90 at 3.) Over three years ago, NIC was citing Bobba as supporting its theories, claiming that "Bobba's public statements corroborate NTG's admission concerning 'tester' plaintiffs in CLRA matters, and affirm that NTG had its clients take certain actions to build contrived cases."  (Dkt. 71 at 6.)  NIC claims it has "obtained Bobba's receipt revealing Bobba's declaration and representations NTG made to the Court were false. *See* NTG011063" (Dkt. 881 at 17), but NIC was making the same argument based on the same receipt in 2017.  (Dkt. 291-1 at 70.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 15 -

NIC's only excuse to the Special Master for not taking Bobba's deposition within the discovery time limit was NIC's claim that "NIC did not know Mr. Bobba's whereabouts early in this case." (Dkt. 854-3, ¶ 12.) The Special Master properly rejected this as NIC failed to make any showing of diligence in attempting to locate Bobba. (Dkt. 876 at 22.) NIC now contends that whether it could have "deposed Bobba earlier is irrelevant" because it is asking now. (Dkt. 881 at 17-18.) But, as the Special Master correctly found, NIC has not shown that the Bobba deposition legitimately flows from the Court's recent privilege orders. (Dkt. 876 at 23-24.) NIC also offers no proposed topics or questions for Bobba's deposition and while NIC discusses documents related to the *Manga* matter, NIC has been making such allegations for years and "Bobba regarding his role as plaintiff in *Magna* are already in the record and have been the subject of discovery." (*Id.* at 23.)

In sum, the Special Master was correct in denying NIC leave to take a belated deposition from Bobba.

**E.**     **The Special Master Correctly Denied NIC's Request for Leave to File Yet Another Crime-Fraud Motion**

NIC also sought leave to file another crime-fraud motion based on documents that were logged years ago. As the Special Master found, this request was both procedurally improper and substantively without merit.

First, the request is procedurally barred by the law of the case doctrine and NIC's lack of diligence. In April 2017, sixteen (16) months after this lawsuit was initiated, NIC filed its crime-fraud motion seeking the production or *in camera* review of 1,047 documents from Defendants' privilege log. (*See* Dkt. 291-1.) NIC then filed its Supplemental Memorandum in Support of the Crime-Fraud Motion, adding more documents from that privilege log. Specifically, NIC asked for an order compelling production of an "additional 649 documents now listed in NIC's (Supplemental) Appendix C," or that those documents be added to the *in camera*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    review.  (*See* Dkt. 294 at 2:3-6 (seeking disclosure of 1,696 privileged documents in

2    total).)

3          After dozens of filings and multiple orders by the Special Master, the Court,

4    and even the Ninth Circuit Court of Appeals, NIC's Omnibus motion is resolved.

5    (Dkts. 788; 820).  Now NIC seeks to file another crime-fraud motion regarding

6    documents <u>on the same privilege log</u> that NIC challenged over two years ago.

7    NIC's challenges to that privilege log have already been addressed and the rulings

8    are the law of the case on NIC.  *United Steel Workers of Am. v. Retirement Income*

9    *Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir.

10   2008).

11         NIC also specifically seeks discovery of "Schoonover's lawsuit against

12   Vogue International (a non-SAC case)[.]"  The law of the case doctrine is doubly

13   applicable in this regard because the Court already denied NIC's request for

14   discovery regarding that exact case.  More specifically, the Court ruled:

15         The Court finds that further discovery is not proportional to the needs

16         of the case. First, NIC has not sufficiently connected these new matters

17         to its existing RICO allegations. With respect to Pfleg, NIC has not

18         shown that discovery into four additional lawsuits will yield evidence

19         of RICO activity. Mere participation in multiple lawsuits — without

20         more — is insufficient to show a pattern of racketeering activity. And,

21         with respect to Schoonover, NIC knew from his statements to Baker

22         that he had been involved in multiple cases. See Docket No. 291-6 ¶¶

23         18(d), (g). ***Therefore, NIC has unduly delayed seeking discovery into***

24         ***his case against Vogue International.***

25   (Dkt. 414 at 7 (emphasis added).)

26         As the Special Master correctly found, "[t]hat Order is the law of the case."

27   (Dkt. 876 at 28.)  Moreover, that ruling was made over two years ago.  If by July

28   2017, NIC had already "unduly delayed" in seeking discovery regarding the Vogue

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  case, then seeking discovery in October 2019 is even less acceptable.[3]  Thus, the

2  Special Master was correct in denying NIC's request.  (Dkt. 876 at 29.)

3       NIC's only excuse for attempting to supplement its Omnibus motion over two

4  years after filing and after the motion has already been decided is its claim that

5  "documents revealed new information indicating that the messages NIC was unable

6  to obtain in 2012 are highly relevant to the merits of NIC's RICO claims against

7  NTG and Schoonover."  (Dkt. 881 at 23.)  That is unsupported, which can be seen in

8  the fact that NIC was discussing the very first document on its Appendix,

9  SCHOONOVER00066, back in 2017.  (NIC Appendix A at 1; Dkt. 392 at 7; Dkt.

10  496 at 20.)  If NIC wanted to bring a privilege challenge regarding these documents,

11  it should have done so in its Omnibus motion.

12       Accordingly, the Special Master was correct in denying NIC's request for

13  leave to file another crime-fraud motion.

14  **F.**   **The Special Master Correctly Found that the Discovery NIC Seeks**

15        **is Disproportionate to the Amount in Controversy and Importance**

16        **of the Issues**

17       The Special Master correctly recognized that NIC sought expansive discovery

18  that will not be "significant to resolving the issues in the case."  (Dkt. 876 at 31.)

19  Federal Rule of Civil Procedure 26(b)(1) requires district courts to consider whether

20  discovery is "proportional to the needs of the case, considering the importance of the

21  issues at stake in the action, the amount in controversy, the parties' relative access to

22  relevant information, the parties' resources, the importance of the discovery in

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

[3] NIC takes the position that "whether those messages relate to the *Vogue [matter]* is irrelevant" because "even if the communications centered around the *Vogue* matter, they would still be direct evidence of NIC's conspiracy claim against Schoonover and contextual evidence to explain later communications determined relevant to the *Himalaya* matter."  (Dkt. 881 at 26.)  NIC misses the point.  It is the law of the case that NIC was not diligent is seeking discovery regarding *Vogue*.  As a result, NIC cannot, by definition, be diligent in later seeking *Vogue* documents two years after that ruling.

- 18 -

resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1); *Nation Star Mortgage LLC v. Flamingo Trails No. 7 Landscape Maintenance Ass'n*, 316 F.R.D. 327, 331 (D. Nev. 2016).

Earlier this year, the Court held quite clearly that "the burdens imposed by this litigation are not justified by the amount in controversy" and that "the amount in controversy is not so high as to validate unending discovery, nor is it so high as to justify the substantial burden placed on the parties and the Court by the discovery at issue in this motion [seeking *in camera* review.]"  (Dkt. 788 at 13.)  As the Court explained ultimately, the "Court must draw a line past which discovery is no longer proportional to the needs of the case."  (Dkt. 788 at 15.)

The Court drew that line on March 19, 2019.  (Dkt. 788.)  NIC claims "[t]hat order does not apply to NIC's requests here" because "[i]t was based primarily on the burdens imposed on the Court itself by specific discovery."  (Dkt. 881 at 28.)  Indeed, NIC reads the order as supporting more discovery since, according to NIC, "the Court essentially declined *in camera* review because it believed resources would be better spent on post-privilege discovery."  (Dkt. 881 at 29.)  This Court is, of course, familiar with its own orders.  Suffice to say, the same considerations outlined in this Court's proportionality analysis still apply.  (*See generally* Dkt. 788 at 10-17.)  NIC seems to have interpreted this Court's holding that "[t]he burdens imposed by this litigation are not justified by the amount in controversy" (*id.* at 13) as an invitation to impose more burdens via "post-privilege discovery" (Dkt. 881 at 28).  But nothing in the order supports that reading.  (*See generally* Dkt. 788.)

NIC's current motion seeks to redo almost every party deposition that has been taken and to open up at least three new discovery fronts by seeking discovery from K&P, Wynn Ferrell, and Dan Bobba.  The Special Master summed up the current circumstances perfectly:

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 19 -

Gauging the parties' future conduct by their past conduct, it is apparent that the upcoming depositions of Defendant NTG's four principals and Defendant Baslow may lead to new discovery disputes that require judicial attention and may affect the date by which this action can be brought to trial. Similarly, the question of whether NIC may conduct a Rule 30(b)(6) deposition of Defendant NTG may require judicial attention and may affect the date by which this action can be brought to trial. Expanding the discovery as NIC proposes by recalling four more defendants for second depositions; conducting depositions of three third-party witnesses, including a law firm that may have its own claims of privilege and work product distinct from NTG's claims; and serving a subpoena for documents on a third-party law firm will result in even more discovery disputes, increase the burden on the Court, and increase the burden and expense to the parties, and perhaps delay the trial beyond 2020. The burden, time and expense of the proposed discovery and its likely attendant discovery disputes undercut any claim that the discovery is proportional.

*Id.* at 876 at 31.

Here, there is no question that NIC's additional discovery will be exorbitantly expensive, both in terms of judicial and party resources, and in terms of non-party inconvenience and money.  NIC seeks to reopen five depositions that it completed and closed.  This, in and of itself, would be a significant imposition for witnesses and multiple counsel to review prior testimony, prepare for the deposition, and attend the deposition.  Given that this case has four sets of separate counsel, the cost of those depositions could easily reach six figures.

NIC claims that its proposed additional discovery does not require the Court to take specific action.  (Dkt. 881 at 29.)  Proportionality is not limited to judicial resources.  But even if it was, as experience has taught, subsequent litigation from

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 20 -

those depositions is a virtual certainty.  Indeed, this is the second time Defendants have been put upon to defend against NIC seeking to reopen these depositions. (Dkt. 518.)  Two additional factors make future litigation likely.  First, NIC has categorically refused to indicate the questions, or even subject of questions, it seeks to ask.  Second, NIC clearly has an expansive view of the rulings to date on crime-fraud and implied waiver (which has to be narrowly construed).  Accordingly, there is an overwhelming likelihood that recalled depositions will also result in substantial motion practice.

Beyond the cost, there is great substantive prejudice to Defendants.  *Singleton v. Hedgepath*, No. 1:08-CV-00095-AWI, 2015 WL 1893982, at *1 (E.D. Cal. Apr. 24, 2015) ("The court may also consider the prejudice to the party opposing the modification.").  First, the discovery is all but certain to derail the November 3, 2020, trial date.  NIC's request for additional discovery is tantamount for a "do over" of all discovery.  NIC's request is for depositions without limitation, which all but guarantees broad and over-reaching depositions.  That has two affects.  First, it makes substantial motion practice highly likely.  Second, it potentially means that expert discovery will have to be redone.  After all, the reason for conducting lay discovery before experts are deposed is so that experts assess lay depositions in forming their opinions.  These, taken together, make it likely that if NIC is granted leave, the parties will be litigating discovery on November 3, 2020, conducting trial. "[P]rejudice to the non-moving party can occur when the trial is delayed, additional costs will be incurred, and major alterations in trial tactics and strategy will result." *Morris v. Sutton*, No. 117CV01488AWISAB, 2019 WL 2994291, at *6 (E.D. Cal. July 9, 2019).

Against this cost, there is no attendant benefit in the nonspecific discovery that NIC seeks.  As for the reopened depositions, NIC had a full and fair opportunity to depose those witnesses.  It closed each of the depositions after asking its questions.  NIC initially sought to reopen the depositions in late 2017, then

- 21 -

1   abandoned the effort.  The other discovery NIC seeks is from individuals or entities

2   it has known of for years and simply chose not to depose.  As the Special Master

3   observed, NIC has already obtained extensive discovery.  (Dkt. 876 at 30-31.)  It has

4   taken 22 individual and 10 expert depositions and has received well over 26,000

5   pages of documents just from NTG.  (Dkt. 788 at 14-15.)  Since this Court's

6   reconsideration ruling, NIC has received documents pursuant to the crime-fraud

7   order, which it claims in conclusory fashion throughout its motion are "highly

8   probative" and "highly relevant."  *See Abbott v. Wyoming Cty. Sheriff's Office*, 2017

9   WL 2115381, at *2 (W.D.N.Y. May 16, 2017) (considerations of proportionality

10   can include reviewing whether discovery production has reached a point of

11   diminishing returns); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL

12   6779901, at *3 (S.D.N.Y. Nov. 16, 2016) ("Rule 26(b)(1)'s proportionality

13   requirement means [that a document's] 'marginal utility' must also be considered.")

14   (citations omitted); *Updike v. Clackamas County*, No. 3:15-CV-00723-SI, 2016 WL

15   111424, at *1 (D. Or. Jan. 11, 2016) ("But at some point, discovery yields only

16   diminishing returns and increasing expenses.").

17         Accordingly, the Special Master was correct in holding that NIC's request is

18   not proportionate to the amount in controversy or the issues in this case.

19   **IV.   CONCLUSION**

20         For all of the foregoing reasons, NIC's objections should be overruled, and

21   the Court should order NIC to take the depositions of the four NTG attorneys so that

22   discovery can be completed and the parties can move forward with addressing pre-

23   trial matters and prepare for and proceed to trial on November 3, 2020.

24   Dated:  January 13, 2020                    **CALLAHAN & BLAINE, APLC**

25

26                          By:   */s/ David J. Darnell*

                             David J. Darnell

27                                James M. Sabovich

                             Attorneys for Defendants Newport Trial

28                                Group and Scott J. Ferrell

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 22 -