UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**  **[IN CHAMBERS]** Order Regarding Request for an Order to Show Cause, Motion for Sanctions, and Motion for Leave to Conduct Discovery

Before the Court are three motions.

The Newport Trial Group, Scott J. Ferrell ("Ferrell"), Ryan M. Ferrell, Victoria C. Knowles, David Reid, and Andrew Lee Baslow (collectively, "NTG" or "NTG Defendants") move for an Order to Show Cause regarding sanctions, perjury, and subordination of perjury as to Plaintiff Natural-Immunogenics Corp. ("NIC") and non-party declarants Charlotte Carlberg, MarryAnn Buc, and Jim Buc (the "NIC Witnesses"). OSC Mot., ECF No. 855. NIC filed an opposition. OSC Opp'n., ECF No., 859. NTG replied. OSC Reply, ECF No., 865.

NIC filed a Motion for Sanctions. Sanc. Mot., ECF No. 857. The NTG Defendants filed an opposition. Sanc. Opp'n., ECF No. 861. NIC replied. Sanc. Reply, ECF No., 866.

NTG Defendants filed a motion for leave to conduct discovery. Leave Mot., ECF No. 856. NIC opposed the motion. Leave Opp'n. ECF No. 863. The NTG Defendants replied. Leave Reply, ECF No. 867.

For the following reasons, the Court **DENIES** the Request to Enter an Order to Show Cause, **DENIES** the Motion for Sanctions and **GRANTS** the Motion for Leave to Conduct Discovery.

**I. BACKGROUND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

The background of this case is well known to the parties and the Court. This Order recites background only as relevant to the parties' motions.

### A. Overview

This case concerns litigation between NIC and NTG, its attorneys, and its clients. In brief, NIC alleges that NTG routinely fabricated class-action litigation to extort money from defendants nationwide. Docket No. 92 ¶ 2. In addition to the NTG Defendants, NIC has sued Taylor Demulder ("Demulder"), Matthew Dronkers ("Dronkers"), Andrew Nilon ("Nilon"), Sam Pfleg ("Pfleg"), Giovanni Sandoval ("Sandoval"), and Sam Schoonover ("Schoonover") (collectively, the "Non-NTG Defendants"), who served as lead plaintiffs in these cases. Id. NIC's Second Amended Complaint ("SAC") alleges that the NTG Defendants perpetrated two litigation schemes: (1) the false-advertising scheme and (2) the unauthorized recording, or "wiretapping" scheme. See generally, id.

In the false advertising scheme, NTG and its investigator Andrew Baslow ("Baslow") would identify individuals to serve as lead plaintiffs in consumer fraud class actions against companies selling products in California. Docket No. 92 ¶¶ 23–24. NTG would then bribe these individuals to make intentional false representations that (1) they purchased the defendant's product in reliance on the representations made in defendant's product advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the advertisements. Id. ¶ 29. Using these false allegations, NTG would threaten companies with statewide class actions under various California consumer protection statutes,[1] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id. ¶ 27.

The wiretapping scheme functioned similarly. Under the wiretapping scheme,

---

[1] NIC's SAC identifies four lawsuits filed in connection with the false advertising scheme: (1) Nilon v. Natural-Immunogenics Corp., Case No. 3:12-cv-00930-LAB-BGS (C.D. Cal. 2012) ("Nilon"); (2) Pfleg v. Nature's Way Prods., Inc., Case No. 37-2012-0051979-CU-MT-NC (San Diego Cty. Sup. Ct. 2012) ("Nature's Way"); (3) Dronkers v. Kiss My Face, LLC, Case No. 3:12-01151-JAH (S.D. Cal. 2012) ("Kiss My Face"); and (4) Morales v. Magna, Inc., Case No. 3:10-cv-01601-EDL (N.D. Cal. 2010) ("Magna"). Docket No. 92 ¶¶ 49–147, 175–221, 265–81. Nilon, Pfleg, and Dronkers served as the lead plaintiffs in Nilon, Nature's Way, and Kiss My Face, respectively. (Id.) Sandoval later substituted in as lead plaintiff in Nilon. Id. ¶¶ 105–13. Non-party Dan Bobba ("Bobba") served as a lead plaintiff in Magna. Id. ¶ 266.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

NTG and Baslow would identify individuals to serve as potential lead plaintiffs in consumer privacy class actions. Id. ¶¶ 23–24. NTG would then bribe these individuals to stage private phone calls to various companies, and then later make intentionally false representations that (1) they were not aware that the call was being recorded; (2) they did not consent to the recording; and (3) they later learned that the company recorded all incoming calls only after completing the call. Id. ¶ 34. Using these false allegations, NTG would threaten companies with statewide class actions under the California Invasion of Privacy Act, Cal. Pen. Code §§ 632 et seq., ("CIPA")[2] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id.

### B. Relevant Procedural History

On July 3, 2019 Ferrell submitted a declaration regarding his relationship with Trycia Carlberg explaining that she retained him to send a demand letter on her behalf to NIC. Ferrell Decl., ECF No. 812-1. On September 19, 2019, NIC filed a motion for sanctions against Ferrell arguing that his declaration was false. ECF No. 844-1. As part of this motion, NIC filed the declarations of the NIC Witnesses. Id.

NIC withdrew its motion on September 30, 2019 explaining that new evidence presented in NTG's opposition "includes new evidence the veracity of which is presently unknown, thus warranting withdrawal of the motion in light of the Ninth Circuit's strict standards for sanctions." ECF No., 847, 2.

### C. Declarations of the NIC Witnesses

The declarations of the NIC Witnesses purport that (1) Trycia Carlberg, was not with Ferrell at his home on Christmas Eve of 2011 because the witnesses recalled that

---

[2] NIC's SAC identifies four lawsuits filed in connection with the wiretapping scheme: (1) Nilon v. Chromadex, Inc., Case No. 56-2013-00436790-CU-MT-VTA (Ventura Cty. Sup. Ct. 2013) ("Chromadex"); (2) Demulder v. Carter-Reed Co., LLC, Case No. 3:12-cv-0333-BTM (S.D. Cal. 2012) ("Carter-Reed"); (3) Schoonover v. Himalaya Drug Co., Case No. 12-cv-1782 (S.D. Cal. 2012) ("Himalaya Drug"); and (4) Torres v. Nutrisystem, Case No. 8:12-cv-01854-CJC-JPR (C.D. Cal. 2012) ("Nutrisystem"). Id. ¶¶ 148–74, 222–64, 282–317. Nilon, Demulder, and Schoonover served as the lead plaintiffs in Chromadex, Carter-Reed, and Himalaya Drug, respectively. Id. Non-party Raquel Torres ("Torres") served as a lead plaintiff in Nutrisystem. Id. ¶¶ 289, 295.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

Trycia Carlberg was in a different location on such date; (2) Trycia Carlberg did not take the Sovereign Silver product; and (3) Trycia Calberg did not hire Ferrell to represent her in an action against the Sovereign Silver product. See generally, Charlotte Calberg Decl. ("Calberg Decl."), ECF No. 844-3; Jim Buc Decl. ("J. Buc Decl."), ECF No. 844-5; MaryAnn Buc Decl. ("M. Buc Decl.") ECF No. 844-4.

     Trycia Carlberg's mother, Charlotte Carlberg, declared that Trycia Calberg was at her house on Christmas Eve 2011. Carlberg Decl., ECF No. 844-3, ¶ 5-6. Charlotte Carlberg also attached a picture of Trycia Carlberg taken with her family on December 24, 2011. Id. at 8. The photo was taken and stored on Charlotte's Carlberg's mobile phone and included a date stamp. Id. at Ex. B. Charlotte Carlberg also testified that because Trycia Carlberg lived with her and she helped care for her, she "was aware of all medications, drugs, homeopathics, and alternative therapies Trycia used to treat and manage her illness." Id. at ¶ 9. Despite this she never saw a product by the name of Sovereign Silver in her house, never saw her daughter use the product, and her daughter never spoke to her about the product. Id. at ¶ 10. She also claimed that her daughter never mentioned to her that she was involved in a lawsuit or that Ferell was representing her in any legal matter. Id. at ¶ 11.

     Similarly, Jim Buc declared that through his foundation he "personally purchased Trycia's medications and dietary supplements" and thus had personal knowledge of the dietary supplements and medications Trycia Carlberg used in 2011. J. Buc Decl., ¶ 6. Jim Buc never saw Trycia Carlberg purchase or use Sovereign Silver. Id. at ¶ 10. Jim Buc's recollection was also that Trycia Carlberg was at "her mother's house on Christmas 2011." Id. at ¶ 8. Furthermore, Jim Buc stated that Trycia Carlberg never mentioned that Ferrell represented her or that she was pursuing a legal matter. Id. at 12. He also stated that Trycia Carlberg did stay at Scott Ferrell's home in March 2012, but her "stay with the Ferrells did not end well. Trycia left the Ferrells' house on poor terms." Id. at ¶ 13-15. In March 2012, Jim Buc and his wife visited Ferrell's home for a birthday party and Trycia Carlberg showed him a room identified as Scott Ferrell's office where there were homeopathic and dietary supplement products that Trycia explained were purchased by Ferrell "for the sole intent of pursuing lawsuits." Id. at ¶ 14. Jim Buc's understanding was that Trycia Carlberg "viewed Ferrell's purchase of those products to set up lawsuits with unmistakable disapproval." Id.

     MaryAnn Buc declared that Trycia Carlberg was at her mother's house on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

December 24, 2011. M. Buc Decl. ¶ 9. She recalls having spoken with Trycia Carlberg on Christmas Eve while Trycia Carlberg was at her mother's house. Id. at ¶ 15. MaryAnn Buc also declared that Trycia Carlberg had spoken with her in great detail about Ferrell's suggestions that Trycia Carlberg participate in lawsuits for products and that she had declined to do so because she felt "those lawsuits were immoral and unethical." Id. at ¶ 21-22. She also confirmed that Trycia Carlberg's medications were purchased through the foundation and that Trycia Carlberg had never told her about a product called "Sovereign Silver." Id. at ¶ 26.

### D. Ferrell's Contact With the NIC Witnesses

On September 27, 2019, an investigator hired by Ferrell attempted to contact MaryAnn Buc and Jim Buc by phone. Second M. Buc Decl., ¶ 2, ECF No. 857-3; Furman Decl., Ex. A. That night David Herrera ("Herrera"), a private investigator for Ferrell, sent a text message to MaryAnn Buc. Furman Decl., Ex. A. The following day MaryAnn Buc responded to the text message and the parties exchanged a series of text messages. Id. The text messages read as follow.

Herrera first writes that earlier that day he along with his partner John Marcello had met with Charlotte Carlberg and notified MaryAnn Buc that they would like to meet with her that evening. Furman Decl., ¶4, Ex. A. The following day MaryAnn Buc replied: "Who is this??" Id. at Ex. A. Herrera replies:

> I'm a private investigator working on behalf of the interests of attorney Scott Farrell. We've already met briefly with Charlotte Carlberg. Essence of that conversation is for her and the Bucs I'd [sic] they desire to withdraw from the ongoing case of NIG vs NIC. We've managed a way for it to be done but only if those involved wish to do so. My PI partner and I are willing to discuss this with you and your husband if you are interested. We are willing to meet with you either at your place of residence or at a small restaurant near your home where we can further discuss this issue.

Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

    MaryAnn Buc then asked: "Are you the men that said that Scott would take Chars house and retirement and never stop?" Id. Herrera replied: "That is a misquote. In essence and according to the law, if a judge determines there was a fraudulent declaration submitted, certain sanctions against the person who committed the fraud can be instituted." Id. MaryAnn Buc then replied: "She was pretty clear in what you said to her regarding your client. What is it that you want from us?" Id. Herrera responded: "Basically to discuss if you wish to continue with your declaration as is, whether you wish to modify any aspect of it, or wish to withdraw your declaration and yourselves from the ongoing dispute between the two major entities. lf you wish to do any of the above, we can assist you." Id.

    MaryAnn Buc then asked: "What is it that Scott is threatening us with" and Herrera responded: "There are no threats. Our wish is to meet with us on a voluntary basis. lf you wish not to meet with my PI partner and I, that is fine. Whatever you choose to do is your choice." Id. MaryAnn Buc responded: "What is it he's asking us to modify?" Herrera replied: "The meeting has to do with your previous declaration and whether there are any points who [sic] wish to modify. If there are none, then there are none and your declaration will stand on its own. It's always your choice. No PI or attorney can ever tell you what to write." Id. Once again MaryAnn Buc wrote: "That's what I'm asking you what is that he wants modified" and Herrera replied: "He wants you to review your declaration. If it is 100% correct and truthful, then you can choose to leave as is. If there are points that need correction, modification or deletion, then that can be done. Please be certain that you are not forced to do anything g [sic] with your declaration if you just wish to leave it as is. However chances are great that if you leave your declaration as is, you will appear in federal court to defend your declaration at some point in time." Id. MaryAnn Buc later wrote: "If there is a document he would like signed, let me see it." Id. The last communication comes from Herrera who wrote:

> Mr. Ferrell has asked the Judge to hold you in contempt of court for filing a false declaration. He advised us that he has submitted overwhelming evidence to support his position. You may wish to hire an attorney to represent yourself here, as the penalties for perjury can be very severe if a judge so determines. Mr. Ferrell is very upset and told us he had prepared a lawsuit that he intends to file against you early next week because you falsely accused him of a crime. If you wish

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

to withdraw your declaration and correct the record before this escalates, he invites you to do so by signing a new, truthful declaration.

Id.

On September 27, 2019, at Ferrell's behest, two private detectives visited the home of Charlotte Carlberg to discuss her declaration. Id.

### E. Evidence Provided by NTG to Refute the NIC Witnesses' Declarations

Sariah Para, Office Manager for Pacific Trial Attorneys declared that she was physically present at Ferrell's house on December 24, 2011 and took multiple photographs of Erin Ferrell, Ferrell, and Trycia Carlberg together on the evening of December 24, 2011. Para Decl., ¶¶ 2-3, Ex. A-E, ECF No. 846-4. Attached to Sariah Para's declaration is a March 27-28, 2012 email thread where Ferrell asks Sariah Para to bring "Trycia's check from the most recent settlement to dinner tomorrow" copying Trycia Carlberg who replies "Thank you thank you SO much!!!" Id. at 27. Also attached is a copy of a retainer agreement dated February 8, 2012 and executed by Trycia Carlberg for Ferrell to represent her as the class representative in an anticipated class action lawsuit related to a titanium bracelet. Id. at 19-23.

A Facebook chat between Erin Ferrell (Ferrell's wife) and Trycia Carlberg dated November 8, 2011 describes Trycia Carlberg's estrangement from her mother. Erin Ferrell Decl., 14. In it Erin Ferrell writes: "just because you live with us doesn't mean we are family in her eyes but it does in ours." Erin Ferrell Decl., 14.

In a handwritten card from Trycia Carlberg to Scott and Erin Ferrell dated November 28, 2011 she writes: "I just wanted to take a moment to thank you both for allowing me to live with you in your beautiful home." Erin Ferrell Decl., 28-29.

In a handwritten letter from Trycia Carlberg to Scott and Erin Ferrell dated March 28, 2012, Trycia Carlberg writes: "Thank you both for taking care of me when needed, allowing me space and privacy when needed, making me feel safe and at home here, and just providing me with some stability in my unstable world." Id. at 39-40.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

The NTG Defendants also provide a series of contemporaneous emails and messages suggesting that Trycia Carlberg was in the Ferrells' home between late 2011 to April 2012 and lived with the Ferrells prior to her death. See generally, Erin Ferrell Decl.

Finally, the NTG Defendants provide an email thread between Jim Buc and Ferrell where Jim Buc thanks Ferrell for inviting him to his party and seeks legal representation for a mold related problem. Jim Sabovich Decl., ECF No. 846-1, 31-32.

### F.  The Preparation of the NIC Witnesses' Declarations

Paralegal Jennifer Fernandes ("Fernandes") declared that she spoke with the NIC Witnesses to obtain their declaration in support of their contention that they were truthful declarations. Fernandes Decl., ECF No. 859-1. Fernandes recounted that she spoke with Charlotte Carlberg telephonically and, after Fernandes read her the declaration of Ferrell (ECF No. 81-1), Charlotte Carlberg explained that statements Ferrell had made in his declaration were false. Id. at ¶¶ 10-18. Charlotte Carlberg then agreed to sign a written declaration and Fernandes advised Charlotte Carlberg that she could seek independent counsel prior to signing the declaration. Id. at ¶ 21. Fernandes memorialized the conversation in an email dated August 9, 2011. Id. at ¶ 22; Ex. 1.

Fernandes similarly spoke to MaryAnn Buc and Jim Buc telephonically who also agreed to sign a written declaration reducing what they recounted to Fernandes into writing. Id. at ¶¶ 24-37. After Fernandes drafted the declaration of Charlotte Carlberg she sent the declaration to her in Microsoft Word format asking her to edit the document to ensure that it was "truthful in all respects." Id. at ¶ 39. Charlotte Carlberg did ask Fernandes to make certain changes based on not recalling certain dates, which Fernandes made and again showed to Carlotte Carlberg to ensure its accuracy. Id. at ¶¶ 41-43.[3]

---

[3]In another email attached to the Fernandes declaration there is an exchange between Charlotte Carlberg and Fernandes where Charlotte Carlberg stated: "I cannot sign this due to dates that she actually did stay at their house. I will need to confer with the Bucs to be sure on dates." Fernandes Decl., Ex. 5. Fernandes replies: "We can change anything you want." Id. Later in the day Charlotte Carlberg writes: "My dates, looking back on Trycias Facebook are wrong. I see pics of [Trycia Carlberg] at their house during Nov, Dec, Feb, March. But at my house Dec.24/25 Christmas. Maryann will have pics and dates as well. So, can't sign declaration with certainty." Id. Fernandes replies that she would "revise the declaration regarding those dates and will get a revised version to you shortly." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

Fernandes had similar exchanges with MaryAnn Buc and Jim Buc. Id. at ¶ 46. MaryAnn Buc dictated her declaration into her phone, Fernandes placed her statements in chronological order and formatted it, and then sent it back to MaryAnn Buc letting her know to review the document and make sure that she was in agreement with everything stated. Id. at ¶¶ 49-51. Fernandes also drafted the declaration of Jim Buc who then reviewed the declaration and asked Fernandes to make a correction. Id. at ¶¶ 55, 58-59. Fernandes notes that the NIC Witnesses expressed to her and her firm that they "feared Defendant Scott Ferrell would retaliate against them if they provided testimony against his interests. They repeatedly inquired as to potential protections for witnesses in federal court." Id. at ¶ 64, Ex. 7. Furthermore, the NIC Witnesses "consistently expressed to [Fernandes] that they did not want to speak to Mr. Ferrell or any of his counsel. They asked us to inform his lawyers not to contact them." Id. at ¶ 65.

Fernandes also recounts that she sent the NIC Witnesses a copy of NTG's opposition and request for OSC, and all three witnesses indicated that they stood by their testimony. Id. at ¶ 67. Fernandes adds that after encounters with NTG's private investigators Charlotte Carlberg told her that she no longer wished to participate in the litigation as a result of her fear and anxiety and asked to withdraw as a witness in the case, including withdrawing her prior testimony. Id. at ¶ 74. Two days later, NIC's counsel filed a notice of withdrawal of the motion for sanctions. ECF No. 847.

The declarations of attorneys Peter A. Arhangelsky and Joshua S. Furman purport that NIC's September 19, 2019 motion for sanctions was filed based on the record available at the time and that it was not until NTG filed its opposition that they were supplied with evidence that refuted the NIC Witnesses' declarations. See generally, Arhangelsky Decl., ECF No. 859-2; Furman Decl., ECF No. 859-3.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 11

Fed. R. Civ. P. 11(b) provides as follows:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

>       to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>       (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>       (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
>       (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>       (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Under Rule 11, sanctions may be imposed "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." Estate of Blue v. County of Los Angeles, 120 F.3d 982, 985 (9th Cir. 1997). Sanctions imposed under Rule 11 shall be limited to what is sufficient to deter "repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). Rule 11 sanctions may include an award for "reasonable attorney's fees and other expenses directly resulting from the violation." Id. This Court has substantial discretion regarding the application of Rule 11 sanctions. Committee Notes on Amendments to Federal Rules of Civil Procedure, 146 F.R.D. 401, 587 (1993).

Procedurally, a motion for sanctions under Rule 11 must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

11(b). Fed. R. Civ. P. 11(c)(2). The motion must be served under Rule 5, but it must not be filed or presented to the court if the challenged paper claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets, allowing for a safe harbor provision. Id.

### B. Discovery

"A district court has wide latitude in controlling discovery." Lane v. Dep't of Interior, 523 F.3d 1128, 1134 (9th Cir. 2008) (internal quotation marks and citation omitted). Pursuant to Federal Rule of Civil Procedure 16(b), a district court must issue a scheduling order that limits the time to, among other things, complete discovery. Fed. R. Civ. P. 16(b)(1), (3). A party must show "good cause" for relief from a scheduling order. Fed. R. Civ. P. 16(b)(4); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir. 1992). The good cause standard "primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. The court may grant relief from a scheduling deadline if the deadline could not "reasonably be met despite the diligence of the party seeking the extension." Id. While a court may consider prejudice to the opposing party, "the focus of the inquiry is upon the moving party's reasons for seeking modification." Id.

### III. DISCUSSION

### A. NTG's Request for an Order to Show Cause Why Sanctions Should Not Be Issued

NTG requests that the Court set an Order to Show Cause "regarding sanctions, regarding perjury, and regarding subornation of perjury" as to NIC (including its counsel) and the NIC Witnesses. OSC Mot. 1. NTG also requests that the Court order that "(1) the three NIC witnesses produce all communications related to this matter; (2) NIC produce all communications with the NIC witnesses; (3) NIC be required to identify all witnesses and potential witnesses with whom NIC had any direct or indirect contact regarding its Motion for Sanctions and produce all communications therewith; (4) all documents that relate in any way to NIC's motion, the NIC witnesses, and the false declarations be provided for *in camera* review for purposes of the Order to Show Cause and application of the crime-fraud doctrine; and (5) NIC and its counsel and the NIC witnesses be ordered to show cause why appropriate sanctions should not be levied

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

against them." Id. at 1-2.

NTG brings forth serious accusations alleging that NIC "solicited, drafted, and presented the Court with three pervasively perjured declarations" and by their use attempted to frame Ferrell for multiple felonies and sought that the Court issue "death penalty" sanctions based solely upon the declarations. OSC Mot., 1. Furthermore, NTG argues that NIC then blocked all access to the witnesses including threatening NTG's counsel with charges of witness tampering. Id. NTG contends that it was only once NIC's counsel "had been caught attempting to 'fix' the case through false declarations" that NIC withdrew its Motion for Sanctions. Id.

At oral argument, NTG argued that the standard for a request to show cause is different than a motion for sanctions. NTG provided no precedent or citations in support of its argument. Nor do any of the cases cited in its brief support this argument. Under Federal Rule of Civil Procedure 7(b) "A request for a court order must be made by motion." "Normally, an order to show cause is not an acceptable procedure in the federal courts[. T]he parties are supposed to proceed by motion, although special provisions are available on an informal basis for accelerated consideration of the issues involved." Westhemeco Ltd. v. New Hampshire Ins. Co., 82 F.R.D. 702, 705 (S.D.N.Y. 1979); see also United States v. Rollnick, 33 F. Supp. 863, 865 (M.D. Pa. 1940) ("Since the effective date of the New Rules of Civil Procedure, rules to show cause have not been properly a part of civil practice. . . . The rules and forms then clearly indicate that motions are brought before the court by means of a 'notice of motion' which serves the purpose of a rule to show cause and obviates the necessity for obtaining such a rule."). Thus, "a request for a show cause order usually will be entertained and treated as a motion, if doing so will not prejudice the opposing parties." § 1195, Orders to Show Cause and Rules Nisi, 5 Fed. Prac. & Proc. Civ. § 1195 (3d ed.); see also Marshall v. Weyerhaeuser Co., 456 F. Supp. 474, 478 (D.N.J. 1978) ("While the Federal Rules of Civil Procedure do not specifically recognize an Order to Show Cause, federal courts have uniformly acknowledged such a proceeding and treated it similarly to the typical motion but for its preferential place on the court's docket.").

Sua sponte the Court may order "an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R.Civ.P. 11(c)(3). When the Court issues an order to show cause, it must give the party against whom the order was issued notice and an opportunity to be heard prior to issuing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

sanctions. Id. at 11(c)(1). However, Rule 11 "distinguishes between sanctions imposed upon motion of a party and those imposed by show-cause order on the initiative of the court. The distinction is not merely formal." Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1998). When a party moves for sanctions, such a motion must be made "separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed.R.Civ.P. 11(c)(2). Such a provision is intended to be a "safe harbor" of sorts against motions for sanctions. See Barber, 146 F.3d 707, 710 (9th Cir. 1998). NTG cannot sidestep such a requirement by filing a "request for an order to show cause." Especially where NIC promptly withdrew its motion for sanctions once NTG filed its opposition and presented evidence that refuted the declarations. The Ninth Circuit has rejected the argument that when a party initiates the award for sanctions, the Court's order can be interpreted as a Rule 11 motion on the Court's own initiative. Radcliffe v. Rainbow Const. Co., 254 F.3d 772, 789 (9th Cir. 2001) ("It would render Rule 11(c)(1)(A)'s "safe harbor" provision meaningless to permit a party's noncompliant motion to be converted automatically into a court-initiated motion, thereby escaping the service requirement."). Thus, the Court may not treat this request for an order to show cause as a motion for sanctions because it would prejudice NIC. Given that the Court cannot treat this request as a motion for sanctions and there is no basis upon which the Court can grant relief, NTG's request is denied.

Accordingly, the Court **DENIES** the request to enter an order to show cause regarding why sanctions should not be issued.

### B. NIC's Motion for Sanctions

NIC moves for sanctions against Ferrell for witness tampering seeking the following:

> (1) An injunction barring Scott Ferrell from making any ex parte contacts with MaryAnn Buc, Jim Buc, and Charlotte Carlberg directly or indirectly, personally or through any agent, except through official process (e.g., subpoena);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

      (2) An Order to Scott Ferrell personally, requiring him to pay NIC's reasonable fees and costs associated with this motion for sanctions;

      (3) An Order to Show Cause why Scott Ferrell ought not receive dispositive or issue preclusive sanctions in this case; and

      (4) An Order to Show Cause why this Court ought not refer Scott Ferrell, an attorney licensed to practice law in California, to the California State Bar and the California Attorney General to assess the extent to which further legal action is warranted in light of the witness tampering.

Sanc. Mot., 1-2.

      Under 18 U.S.C. § 1512(b)(d), witness tampering includes the use of intimidation, threats, harassment, or "misleading conduct" with the intent, among others outcomes, for a witness to withhold potential testimony. "It is the endeavor to influence a witness, not whether the witness was actually influenced, that is forbidden. In order to determine the intent of the accused tampering party, the courts look to whether the act complained of would have a reasonable tendency to influence the witness." Helios Software GMBH v. Root Int'l Distribution Sys., Inc., 1996 WL 162962, at *1 (N.D. Cal. Apr. 5, 1996) (citing U.S. v. Maggitt, 784 F.2d 590, 593 (5th Cir. 1986)). However, "[a]ny lawyer in a civil proceeding may commission investigations and query the critical witnesses in the case. . . . 'It is not an unlawful attempt to influence or impede a witness, or the due administration of justice, for one to seek to obtain from a witness a statement of the facts as he believes them to be, without the exercise of undue influence, even though such a statement may conflict with prior testimony given by the one making the statement. Such an effort is not regarded with favor, because of the temptation to influence the witness unduly; but the mere request for a statement believed to be true does not offend against the statute under which this indictment was drawn, because it is not corrupt conduct.'" Stanley v. Wong, 2006 WL 1523128, at *6 (E.D. Cal. May 31, 2006) (quoting Harrington v. U.S., 267 F. 97, 101 (8th Cir. 1920)).

      NIC argues that at Ferrell's direction individuals identifying themselves as his

Case 8:15-cv-02034-JVS-JCG Document 891 Filed 02/07/20 Page 15 of 19 Page ID #:66254

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 15-2034 JVS (JCGx)  Date  February 7, 2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

agent made threats to the NIC Witnesses in an attempt to cause them to change or withdraw their testimony. Id. NIC provides a text message exchange between Ferrel's investigator and MaryAnn Buc. Furman Decl., Ex. A. NIC also provides the Declaration of MaryAnn Buc to support its allegations. See Second M. Buc Decl. NTG filed objections to certain paragraphs in the Buc Declaration. ECF No. 862.[4] The Buc Declaration recounts a conversation between MaryAnn Buc and Charlotte Carlberg wherein Charlotte Carlberg "informed her that two private investigators showed up at her door threatening her that Scott Ferrell would not stop pursuing her until he won a case against her and that she could lose everything." Although this evidence is inadmissable hearsay as to what the investigators told Charlotte Carlberg and whether they met with Charlotte Carlberg, it is not inadmissable hearsay as to what Charlotte Carlberg told MaryAnn Buc. See Fed. R. Evid. 801.

NIC argues that any reasonable person who received the text messages would have believed them to be a serious imminent threat that Ferrell would sue them unless they withdrew or changed their testimony. Sanc. Mot., 8. Having reviewed the evidence presented, the Court finds that the level of conduct while inadvisable does not rise to the level of witness tampering.

The text message exchange reveals that Herrera sought to meet with MaryAnn Buc to probe the veracity of her testimony. Furman Decl., Ex. A. Herrera informed MaryAnn Buc of his conversation with Charlotte Carlberg and what he understood to be the "essence" of his conversation with her, but was also insistent that MaryAnn Buc did not need to make any changes to the declaration or even to meet with the investigator. Id.

Although NIC argues that a threat of litigation is grounds for witness tampering, the conduct here is not the same as that in Hussein v. Frederick, where the Ninth Circuit upheld the district court's findings that appellants acted willfully and in bad faith, including to circumvent a court order in another case and to harass and intimidate witnesses, by filing a complaint that contained only conclusory allegations that the lawyers had conspired with government officials. 436 Fed.Appx. 831, 832 (2011). Nor

---

[4]The Court notes that when the Order cites to evidence to which the parties have objected, the objection is impliedly overruled. To the extent the Court does not rely on the evidence submitted, the Court declines to rule on the objections.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

does it rise to the conduct in United States v. Miller where the party threatened to sue the witness "for defamation solely on the basis of her cooperation with the FBI, regardless of the veracity of [her] statements to investigators." 531 F.3d 340, 351 (6th Cir. 2008).

　　Here, Ferrell had evidence that refuted the NIC Witnesses' declarations, and sought to contact such witnesses to discuss the veracity of their declaration given that they had been filed to support a motion for sanctions on the grounds that Ferrell had committed perjury. See ECF No., 844-1. At no point in the text message exchange did the investigator ask MaryAnn Buc to make a false statement. Instead, the investigator was insistent that if it was "100% correct and truthful, then you can choose to leave as is. If there are points that need correction, modification or deletion, then that can be done. Please be certain that you are not forced to do anything g [sic] with your declaration if you just wish to leave it as is." Furman Decl., Ex. A. He was also truthful in noting that "the penalties for perjury can be very severe if a judge so determines." Id. The fact that the investigator stated: "Mr. Ferrell is very upset and told us he had prepared a lawsuit that he intends to file against you early next week because you falsely accused him of a crime," is not in itself a threat with the intent to influence a witness. See Id.

　　NIC argues that mentioning Ferrell's lawsuit was a frivolous threat because Cal. Civ. Code § 47(b)'s litigation privilege protects the NIC Witnesses against civil lawsuits as a result of their declarations. Sanc. Mot. 9. However, "the litigation privilege does not apply to perjury" People v. Persolve, LLC., 218 Cal. App. 4th 1267, 1274 (2013). Ferrell has a right to sue a party who he believes has committed perjury and defamation against him, so long as it is not done without merit and for the sole purpose of harassing or influencing the witness. Here, Ferrell had grounds to believe that the declarations contained inaccuracies, and cannot be deprived of his right to file a lawsuit when he believes he has been wronged. Furthermore, as NTG notes, perjury and filing false declarations in federal court are federal crimes. See 18 U.S.C. §§ 1621, 1623.

　　Thus, the Court finds that sanctions are not merited here because a reasonable person would not have believed that they were required to withdraw their testimony or change their testimony to a false testimony as a result of the text messages sent by Herrera.

　　Accordingly, the Court **DENIES** the motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
|---|---|---|---|

| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al |
|---|---|

### C. NTG's Motion for Leave

NTG also moves for an Order granting leave to seek limited discovery from NIC and the NIC Witnesses regarding their declarations and the related issues raised by NIC's motion for sanctions. Leave Mot., 1. NTG argues that discovery "will provide information regarding coordinated false declarations and an attempted fraud on this Court." Id. The Court looks to NTG's reasons for seeking modification of the scheduling order and discovery cut off in determining whether to grant such a request. See Johnson, 975 F.2d at 609.

In evaluating whether good cause exists to grant leave to take discovery, the Court considers "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." City of Pomona v. SQM N. Am. Corp., 866 F.3d 1060, 1066 (9th Cir. 2017). However, "Rule 6(a) discovery is not appropriate when the movant's discovery requests are mere 'fishing expeditions' to investigate speculation or to 'explore [the movant's] case in search of its existence.'" Fabricant v. United States, 2015 WL 786981, at *2 (C.D. Cal. Feb. 25, 2015) (citing Calderon v. U.S. Dist. N. Dist. Cal., 98 F.3d 1101, 1106 (9th Cir. 1996) and Barno v. Hernandez, 2011 WL 2039702, at *1 (S.D. Cal. May 25, 2011)).

The Court finds that four of the factors weigh in favor of granting leave. Although this action commenced in December 2015, trial is scheduled for November 3, 2020 which would allow sufficient time for the additional discovery requested. Additionally, the Court does not foresee that there will be a need for additional discovery should the request be granted. NTG was also diligent in bringing its request to the Court after discovering its need for such discovery.

However, the request for leave to take additional discovery is opposed by NIC on the grounds that it would cause additional delay, would not lead to relevant evidence, is a "fishing expedition," and would cause prejudice to NIC. See generally, Leave Opp'n.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

     The arguments made by NTG in its motion largely mirror those made in the request for an order to show cause. Although the Court denied NTG's request for an order to show cause on the grounds that there was no legal basis upon which to grant NTG's request, the Court finds that there is a likelihood here that the evidence will be relevant. NTG has provided evidence, as detailed in the background section of this order, that refutes the NIC Witnesses' declarations by suggesting that Trycia Carlberg lived with the Ferrell's and that Ferrell at some point represented her in a class action lawsuit. See Para Decl., Ex. A-E; Erin Ferrell Decl., 28-29. For example, NTG provides a hand written card from Trycia Carlberg thanking the Ferrells for allowing her to live in their home and an executed retainer agreement. Id. However, the evidence presented does not show that NIC or its counsel tampered with witness testimony or was aware of the falsehoods contained in the declarations. Furthermore, NTG's arguments regarding "NIC's pre- and post-filing witness obstruction" also lack merit. See Leave Mot., 17. The Court notes that there is evidence that NIC conveyed to NTG that the NIC Witnesses "demand[ed] that neither Ferrell nor any person associated with him contact them outside of formal process in this case. Each witness should be contacted through Emord & Associates. To the extent any unauthorized contact occurs, we intend to investigate and pursue potential sanctions for witness tampering." See ECF No., 859-27. However, conveying such a message from the NIC Witnesses is not "witness obstruction." NTG always had the option of seeking testimony from the witnesses through seeking from the Court leave to file a subpoena prior to NIC's withdrawal of its motion. Nonetheless, as of NIC's Sixth Supplemental Disclosure dated August 26, 2019, the NIC Witnesses were listed as "Individuals Likely To Have Discoverable Information." Second Sabovich Decl., Ex. A, ECF 867-2. Therefore, evidence pertaining to their credibility would certainly be relevant for trial. The requested discovery would thus be warranted here because it will likely lead to relevant evidence. This factor weighs heavily in favor of granting leave.

     Having considered the relevant factors and the proportionality of the requested discovery, the Court finds that NTG has established "good cause" upon which the Court can grant leave for discovery. Accordingly, the Court **GRANTS** the Motion for Leave to Conduct Discovery and allows NTG to serve one set of document requests to NIC and its counsel, along with a records subpoena to each of the NIC witnesses.

## V. CONCLUSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | February 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

For the foregoing reasons, the Court **DENIES** the Request to Enter an Order to Show Cause, **DENIES** the Motion for Sanctions and **GRANTS** the Motion for Leave to Conduct Discovery.

**IT IS SO ORDERED.**

                                                                                  :    0

Initials of Preparer     lmb