Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Jonathan W. Emord, Esq. (pro hac vice)
jemord@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Drive, Bldg 6, Ste 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff Natural Immunogenics Corp.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS, a Florida corporation, <br><br> Plaintiff, <br> v. <br><br> NEWPORT TRIAL GROUP, et al., <br><br> Defendants. | Case No.: 8:15-cv-02034-JVS-JCG <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION TO FILE A THIRD AMENDED COMPLAINT** <br><br> Hearing Date:  March 16, 2020 <br> Hearing Time:  1:30 PM <br> Courtroom: 10C <br> Judge:  Hon. James V. Selna |

# **TABLE OF CONTENTS**

I.     INTRODUCTION .........................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.............................2

III.   LEGAL STANDARD ....................................................................4

IV.    ARGUMENT..............................................................................5

   A.   Justice Requires that NIC be Permitted to Amend its
     Complaint to Include Predicate Acts that Were Uncovered
     in Discovery....................................................................7

   B.   Justice Requires that NIC Be Permitted to Amend the
     Complaint to Include Predicate Acts Based on ProMaxal
     Litigation.......................................................................9

   C.   The Court Should Permit NIC to Amend the Corporate
     Defendant's Name and Description.......................................11

   D.   The Court Should Grant NIC Leave to Make Minor
     Changes to Factual Allegations so the Pleading Comports
     with the Evidence Obtained in Discovery ...............................11

   E.   Defendants Do Not Suffer Undue Prejudice from the
     Proposed Amendment........................................................12

   F.   None of the Other Rule 15(a) Factors Bar Amendment......................16

V.     CONCLUSION .........................................................................18

# TABLE OF AUTHORITIES

**Cases**

*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946 (9th Cir. 2006).................................................................................17

*Becker v. Computer Scis. Corp.*, 541 F. Supp. 694 (S.D. Tex. 1982)...........................................................................................6

*Breakdown Servs., Ltd. v. Now Casting, Inc.*, 550 F. Supp. 2d 1123 (C.D. Cal. 2007) .............................................................6

*Butler v. Robar Enterprises, Inc.*, 208 F.R.D. 621 (C.D. Cal. 2002)................................................................................ 4, 5, 12

*Doe v. City of San Diego*, 198 F. Supp. 3d 1153 (S.D. Cal. 2016) .........................4

*Dudley v. Bus. Exp., Inc.*, 882 F. Supp. 199 (D.N.H. 1994)....................................6

*Duttle v. Bandler & Kass*, No. 82 CIV. 5084 (KMW), 1989 WL 31503 (S.D.N.Y. Mar. 27, 1989) ...............................................5

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003)................................................................... 2, 4, 5, 12

*Fed. Trade Comm'n v. Commerce Planet, Inc.*, No. SACV0901324CJCRNBX, 2011 WL 13257942 (C.D. Cal. June 27, 2011)...............................................................................6

*Gen. Credit Corp. v. Goldfarb*, No. 98 CIV. 3188 (DLC), 1998 WL 851592 (S.D.N.Y. Dec. 9, 1998)...........................................5

*Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877 (9th Cir. 1999) ..................... 4, 11, 12

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ..................................15

*Levin v. Weissman*, 594 F. Supp. 322 (E.D. Pa. 1984), *aff'd*, 760 F.2d 258 (3d Cir. 1985), and *aff'd sub nom. Weissman v. Rutenberg*, 760 F.2d 263 (3d Cir. 1985) ...............................................6

*Loehr v. Ventura County Community College District*, 743 F.2d 1310 (9th Cir.1984) ......................................................................5

*Matarazzo v. Friendly Ice Cream Corp.*, 70 F.R.D. 556 (E.D.N.Y. 1976) ......................................................................6

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir.
2001) ..........................................................................................................5

*Pepi, Inc. v. Helcar Corp.*, 458 F.2d 1062 (3d Cir. 1972) ........................6

*Polycast Tech. Corp. v. Uniroyal, Inc.*, 728 F. Supp. 926
(S.D.N.Y. 1989) ..........................................................................................5

*Raymond Int'l, Inc. v. Bookcliff Const., Inc.*, 347 F. Supp. 208 (D.
Neb. 1972), *aff'd sub nom. Raymond Int'l, Inc. v. Bookcliff
Constr., Inc.*, 489 F.2d 732 (8th Cir. 1974) ............................................6

*Seifert v. Solem*, 387 F.2d 925 (7th Cir. 1967) ........................................6

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th
Cir. 2016) ..............................................................................................5, 16

*United States v. Webb,* 655 F.2d 977 (9th Cir. 1981) ..............................4

**Rules**

Fed. R. Civ. P. 15(a) ................................................................. passim

Fed. R. Civ. P. 9(b) ..............................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   __INTRODUCTION__

Plaintiff Natural Immunogenics Corp. ("NIC") hereby moves for leave to file a Third Amended Complaint ("TAC" attached hereto as Exhibit 1).[1]  NIC files this motion in compliance with deadlines imposed under this Court's Order for Jury Trial.  *See* Dkt. 883 at ¶ 1.  The TAC will amend the current complaint in three ways:

1.   Correct the name and description of the corporate defendant to reflect the Newport Trial Group PC's formal name change to Pacific Trial Attorneys, PC;

2.   Add predicate acts regarding NTG's threats and filing of sham litigation based on the Strataluz ProMaxal product; and

3.   Add, modify, or remove certain factual allegations to comport with the evidence and focus the allegations for trial.  This includes the addition of allegations regarding the eight SAC cases to include five additional predicate acts discovered that relate to four SAC cases.[2]

Good cause exists to grant the request.  Rule 15(a) requires that amendment be permitted with extreme liberality so that cases are decided on their merits.  NIC has received hundreds of documents subject to the Court's recent discovery orders.  Those documents establish the existence of additional predicate acts undergirding NIC's RICO claims.  This case should be decided on the merits which requires that NIC be permitted to present evidence of all predicate acts establishing the existence of the NTG racketeering enterprise.  All predicate acts outlined in the proposed TAC occurred in furtherance of lawsuits that were listed in the SAC,[3]

---

[1] NIC also attaches a proposed complaint with redlines consistent with Chamber Rule 1, attached hereto as Exhibit 2.

[2] Specifically, the TAC contains five additional predicate acts based on conduct in *Nilon v. NIC*, *Nature's Way*, *Nutrisystem*, and *Magna*.  The predicate acts are based on evidence uncovered through discovery and the various privilege orders.

[3] *Nilon v. Natural-Immunogenics Corp.*, No. 3:12-cv-00930-LAB-BGS

except predicate acts related to ProMaxal litigation.  The ProMaxal litigation has been fully vetted in discovery.  That discovery demonstrated the existence of predicate acts supporting NIC's RICO claims.  Those predicate acts go to the heart of NIC's RICO case, and should be presented as evidence of the unlawful scheme. Thus, granting NIC's proposed amendment would further the interests of justice by allowing a trial on a complete record as it relates to NIC's RICO claims.

None of the Rule 15(a) factors that justify denial of a motion for leave to amend is present under these circumstances and, thus, NIC is entitled to a presumption that amendment is appropriate.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The courts have generally permitted "post-discovery" amendments to conform the lawsuit to facts and evidence obtained in discovery, and therefore facilitate resolution of all claims on the merits. *See infra* at Section IV.

The Court should grant NIC leave to amend the complaint and file the Third Amended Complaint attached hereto.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

NIC alleges that the Newport Trial Group, its attorneys, and employees operated a racketeering enterprise from at least 2010 until 2015 based on the manufacturing of fraudulent litigation for pecuniary gain.  NTG brought lawsuits on behalf of sham clients who suffered no injuries, and misrepresented the nature of their claims to courts and litigation opponents.  NIC brings claims for Malicious

---

(C.D. Cal. 2012) ("*Nilon v. NIC*"); *Nilon v. Chromadex, Inc.*, Case No. 56-2013-00436790-CU-MT-VTA (Ventura Cty. Sup. Ct. 2013) ("*Chromadex*"); *Demulder v. Carter-Reed Co., LLC*, Case No. 3:12-cv-0333-BTM (S.D. Cal. 2012) ("*Carter-Reed*"); *Schoonover v. Himalaya Drug Co.*, Case No. 12-cv-1782 (S.D. Cal. 2012) ("*Himalaya Drug*"); *Torres v. Nutrisystem*, Case No. 8:12-cv-01854-CJC-JPR (C.D. Cal. 2012) ("*Nutrisystem*"); *Sam Pfleg v. Nature's Way Products, Inc.*, No. 37-2012-0051979-CU-MT-NC (Sup. Ct. San Diego Cnty. 2012); *Dronkers v. Kiss My Face, LLC*, No. 3:12-01151-JAH (S.D. Cal. May 11, 2012).

Prosecution and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Dkt. 92. In August 2016, this Court ruled that NIC's Second Amended Complaint stated a claim for principal RICO liability against Defendants NTG, Scott Ferrell, David Reid, Ryan Ferrell, Victoria Knowles, Andrew Baslow, and Andrew Nilon; and RICO conspiracy against all Defendants. Dkt. 157. The Court upheld NIC's allegations that were based on the following categories of predicate acts: (1) Bribery; (2) Extortion; (3) Wire Fraud; (4) Mail Fraud; (5) Obstruction of Justice; and (6) Witness Tampering. Dkt. 157 at 6-24.

NIC prepared the SAC based exclusively on NIC's pre-suit investigation because discovery had yet to begin in the above-captioned matter. *See* Dkt. 92 (filed May 10, 2016, one month before commencement of discovery in this matter).

Discovery in this case has not gone smoothly. Because the underlying conduct arises in the context of litigation, the vast majority of probative information was shielded by claims of privilege. NIC diligently advanced the privilege disputes before this Court, but, despite that diligence, final orders regarding the scope and application of privilege to documents did not issue until years after the original discovery cut-off. *See e.g.*, Dkt. 659; Dkt. 753; Dkt. 785; Dkt. 820; Dkt. 878. Moreover, because of the need for *in camera* review as a prerequisite to production of "privileged" files, substantial delays resulted from the court's review of responsive and relevant files. NIC received documents in piecemeal productions over the course of nearly two years. *Id*.

In 2016, NIC learned that NTG, Scott Ferrell, and David Reid might have been involved in another fraudulent scheme that mirrored the unlawful conduct identified in the SAC. Dkt. 299 at 7-10. This Court granted NIC leave to take discovery into those activities. Dkt. 299; *see also* Dkt. 198 at 4; Dkt. 820 at 7. That discovery ultimately led to the Court's application of the crime-fraud exception to more than 350 documents based on the Defendants' use of a sham

company, Strataluz LLC, to bring manufactured and fraudulent Lanham Act litigation. *See* Dkt. 820 at 7-12, 20-22. After years of litigation, including the Defendants' failed appeal to the Ninth Circuit, those "privileged" documents were finally produced to NIC in August of 2019.[4] *See* Dkt. 820.

On December 16, 2019, this Court held a trial setting conference and set a firm trial date of November 3, 2020. The Court issued a Trial Setting Order on December 16, 2019, which established deadlines for amending the pleadings. The Court set February 14, 2020 as the deadline to file and serve a motion to amend, and set March 16, 2020 as the deadline for the hearing on those motions to amend. Dkt. 883 at 1-2. NIC timely files this motion within the timeframe set by this Court in Dkt. 883.

## III.   **LEGAL STANDARD**

"[L]eave to amend shall be freely given when justice so requires." *Doe v. City of San Diego*, 198 F. Supp. 3d 1153, 1165 (S.D. Cal. 2016) (citing Fed. R. Civ. P. 15(a)(2)). "This policy is to be applied with extreme liberality." *Id.* (quoting *Eminence Capital*, 316 F.3d at 1051). In exercising its discretion, "a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981). Generally, a court should determine whether to grant leave indulging "all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). "The party opposing the amendment bears the burden of showing why the amendment should not be granted." *Butler v. Robar Enterprises, Inc.*, 208 F.R.D. 621, 622–23 (C.D. Cal. 2002).

In determining whether to grant leave to amend under Rule 15, the Ninth

---

[4] NIC is also entitled to hundreds of additional Strataluz documents based on the Court's finding that privileges do not apply. *See* Dkt. 820 at 29-30. The Court has yet to issue a final order on the precise list of documents to be produced.

Circuit provides factors to guide the Court's decision:  (1) undue delay; (2) bad faith; (3) prejudice to the opponent; and (4) futility of the proposed amendment. *Loehr v. Ventura County Community College District*, 743 F.2d 1310, 1319 (9th Cir.1984).  The four factors are not coequal and it is understood that the "prejudice to the opposing party" factor "carries the greatest weight."  *See Eminence Capital*, 316 F.3d at 1052 (citation omitted).  There is a presumption under Rule 15(a) in favor of granting leave to amend which can only be rebutted by a showing of undue prejudice to the opposing party or a strong showing of the other factors.  *Id*.  However, "undue delay" is given little weight and, by itself, does not preclude leave to amend.  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1167 (9th Cir. 2016); *see also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712–13 (9th Cir. 2001).

## IV.   <u>ARGUMENT</u>

Under Rule 15(a), the Court must freely grant leave to amend unless the amendment is futile, made in bad faith, or causes substantial and undue prejudice to the opposing party.[5]  *Butler*, 208 F.R.D. at 622–23.  Courts frequently permit plaintiffs alleging RICO claims to add newly discovered predicate acts through amendment.  *See e.g.*, *Polycast Tech. Corp. v. Uniroyal, Inc.*, 728 F. Supp. 926, 943 (S.D.N.Y. 1989); *Duttle v. Bandler & Kass*, No. 82 CIV. 5084 (KMW), 1989 WL 31503, at *2-5 (S.D.N.Y. Mar. 27, 1989); *Gen. Credit Corp. v. Goldfarb*, No. 98 CIV. 3188 (DLC), 1998 WL 851592, at *3 (S.D.N.Y. Dec. 9, 1998).  Courts find that justice favors amendment where a plaintiff seeks to add factual allegations based on information obtained in discovery, particularly where the new allegations do not add new causes of action and the defendants have been aware

---

[5] Undue delay can also justify denial of a motion to amend but must be accompanied by other factors.  It cannot, on its own, justify denial.  *Kaiser*, 244 F.3d at 712–13.

that investigation into the conduct was ongoing.  *See e.g., Fed. Trade Comm'n v. Commerce Planet, Inc.*, No. SACV0901324CJCRNBX, 2011 WL 13257942, at *1 (C.D. Cal. June 27, 2011) ("Contrary to [Defendant's] assertion, the proposed amendments are not an unfair expansion of his liability because it was clear throughout discovery that the FTC was investigating his conduct in connection with Commerce Planet starting in July 2005.").

 Federal courts across the county permit post-discovery amendment to conform the lawsuit to facts learned in discovery as the parties head into the trial phase (or even as the parties head into trial).[6]  Here, NIC prepared the operative complaint before any discovery was performed in this case.  Since that time, NIC has worked to diligently pursue discovery under unique circumstances that caused extreme delays in the receipt of the most critical documents.  NIC just received

---

[6] *See, e.g., Matarazzo v. Friendly Ice Cream Corp.*, 70 F.R.D. 556, 559 (E.D.N.Y. 1976) (collecting cases for the proposition that "discovery often justifies a subsequent amendment to the complaint" particularly where there are no "new issues requiring new and extensive preparation detrimental to the speech resolution of the case and prejudicial to the defendant"); *Raymond Int'l, Inc. v. Bookcliff Const., Inc.*, 347 F. Supp. 208, 210 (D. Neb. 1972), *aff'd sub nom. Raymond Int'l, Inc. v. Bookcliff Constr., Inc.*, 489 F.2d 732 (8th Cir. 1974) (allowing amendment where "the discovery adequately covered the subject matter of the [new theory] such that prejudice to the plaintiff was minimized"); *Dudley v. Bus. Exp., Inc.*, 882 F. Supp. 199, 212 (D.N.H. 1994) (permitting an amended following the pretrial conference where amendment "will advance the cause of justice and facilitate a proper decision on the merits"); *Becker v. Computer Scis. Corp.*, 541 F. Supp. 694, 698 (S.D. Tex. 1982) (permitting amendment after lengthy delay where five months still remained before trial); *Breakdown Servs., Ltd. v. Now Casting, Inc.*, 550 F. Supp. 2d 1123, 1133 (C.D. Cal. 2007) (granting motion to amend pleadings with just three months before trial, and despite parties' lack of due diligence); *Seifert v. Solem*, 387 F.2d 925, 929 (7th Cir. 1967) (permitting plaintiff to amend complaint on the first day of trial); *Pepi, Inc. v. Helcar Corp.*, 458 F.2d 1062, 1063 (3d Cir. 1972) (finding no abuse of discretion where district court permitted an amendment on the eve of trial); *Levin v. Weissman*, 594 F. Supp. 322, 329 (E.D. Pa. 1984), *aff'd*, 760 F.2d 258 (3d Cir. 1985), and *aff'd sub nom. Weissman v. Rutenberg*, 760 F.2d 263 (3d Cir. 1985) (finding that the district court did not err in permitting an amended complaint after the plaintiff had rested at trial).

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

productions under the crime-fraud exception and the Court's implied waiver findings in late 2019.  *See* Dkt. Nos. 820, 878.  The discovery completed to date has revealed the existence of five additional predicate acts which occurred in three of the predicate cases (*Nilon v. NIC*, *Nature's Way*, *Nutrisystem*, and *Magna*) and has revealed facts sufficient to allege predicate acts related to NTG's fraudulent ProMaxal litigation.  As explained in greater detail below, NIC should be permitted to include these predicate acts so that this case can be resolved on the merits.

**A. Justice Requires that NIC be Permitted to Amend its Complaint to Include Predicate Acts that Were Uncovered in Discovery**

Through discovery, NIC obtained documents revealing the existence of five additional predicate acts in the underlying SAC cases:

1. *Nilon v. NIC* – Obstruction of Justice through the preparation and submission of an intentionally false declaration in support of an intentionally false and misleading Motion to Withdraw as Counsel for Nilon filed in late 2014. Exhibit 1 (Third Amended Complaint) at ¶¶ 134-144, 427(m).

2. *Pfleg v. Nature's Way* – Mail Fraud through the issuance of an additional demand letter to Nature's Way in June of 2012 in an effort to extort more money from that defendant under false pretenses.  Exhibit 1 (Third Amended Complaint) at ¶¶ 219-220, 429(e).

3. *Torres v. Nutrisystem* – Obstruction of Justice (alternatively Wire Fraud) based on NTG's early-2013 preparation and submission of an intentionally false declaration of Richard Richardson to prevent discovery of NTG's fraudulent litigation practice.  Exhibit 1 (Third Amended Complaint) at ¶¶ 353-356, 433(o).

4. *Morales v. Magna Inc.* – Witness Tampering based on NTG's wrongful acquisition of a fraudulent declaration from Daniel Bobba that NTG used to prevent discovery of NTG's fraudulent litigation practice.  Exhibit 1 (Third Amended Complaint) at ¶¶ 308-314, 434(d).

5.   *Morales v. Magna Inc.* – Obstruction of Justice (alternatively Wire Fraud) based on NTG's submission of the fraudulent Bobba declaration and NTG's attendant false statements made in briefing for the purpose of preventing discovery of NTG's fraudulent litigation practice.  Exhibit 1 (Third Amended Complaint) at ¶¶ 310-312, 434(e).

The Court should grant NIC leave to amend its complaint to include these predicate acts because they support the existing RICO claims, arose in discovery available to all parties,[7] present no unfair surprise to the Defendants, do not expand the scope of this case, and their inclusion allows this case to be resolved on the merits.

Each of these predicate acts arise in the context of an underlying lawsuit that has already been subject to substantial discovery.  Moreover, these additional predicate acts are simply part of the existing RICO claims.  As a result, the inclusion of them presents no increase in liability (since liability in this case is based on the fixed damages to NIC caused by the RICO enterprise), nor do they expand the factual scope of the case beyond the same underlying lawsuits.  The Defendants' conduct in the eight predicate cases has always been the central focus.  These predicate acts fall squarely within those factual bounds.  They were uncovered through the course of discovery into those eight predicate cases.  The documents that NIC has received through crime-fraud orders conclusively establish that these predicate acts occurred.  Justice is furthered by inclusion of these predicate acts because they may lend dispositive support for critical elements of NIC's RICO case (i.e., continuity, pattern, and NIC's injury).

The facts of these predicate acts were also subject to extensive litigation in

---

[7] NIC has requested leave to taker discovery from individuals with personal knowledge of these predicate acts.  Dkt. 881.  To the extent that discovery is permitted, Defendants will have even more opportunity to take discovery germane to these predicate acts over the next few months.

NIC's various privilege motions.  *See e.g.,* Dkt. 292-1 at 20-25, 32-33, 62, 71-72; Dkt. 473 at 11-13, 29-30; Dkt. 617 at 15-16; Dkt. 628 at 13-14.  The Court's orders at Docket Nos. 659 and 820 even reference that conduct as support for invoking the crime-fraud exception to specific documents (documents NIC recently received and which further support NIC's RICO claims based on the new predicate acts).  *See* Dkt. 820 at 3-7, 16; *see also* Dkt. 659 at 24-26.  Thus, in recognition of the Ninth Circuit's preference that amendment be permitted liberally to allow resolution of claims on their merits, the Court should permit NIC leave to add these predicate acts to the complaint so that NIC's RICO claims can be fully and fairly adjudicated on the merits.

## B. Justice Requires that NIC Be Permitted to Amend the Complaint to Include Predicate Acts Based on ProMaxal Litigation

In 2016, NIC's counsel received a tip from in-house counsel at Continuity Products.  *See* Dkt. 165-2 at ¶3; *see also* Dkt. 165-3; Dkt. 198 at 4-5.  Continuity Products provided reason to believe that Scott Ferrell, David Reid, and NTG were manufacturing Lanham Act litigation through use of a shell company that they created.  *See* Dkt. 165-3.  This Court recognized that, if true, such evidence would support NIC's RICO claims and go to the heart of this case.  *See* Dkt. 198 at 4-5; *see also* Dkt. 299; Dkt. 820 at 8-9.

Over the next few years, the Court permitted NIC to take discovery into that entity, Strataluz LLC.  NIC recently received hundreds of documents under the crime-fraud exception after this Court determined that the preponderance of the evidence (including *in camera* review of the privileged files) demonstrated that Scott Ferrell and David Reid advanced intentionally false legal claims under the Lanham Act for the purpose of extorting money from corporations nationwide.  *See* Dkt. 820 at 11-12, 21.  The crime-fraud documents, combined with the non-privileged documentary and testimonial record, reveal that NTG, Scott Ferrell, and David Reid engaged in extortion, wire fraud, mail fraud, and obstruction of justice

by threatening and filing baseless Lanham Act claims.  *See* Exh. 1 (Third Amended Complaint) at ¶¶ 359-377, 435.  That conduct, as this Court has already noted, goes to the heart of NIC's existing RICO claims.  Thus, under Rule 15(a), justice requires that NIC be permitted to add those predicate acts to its RICO claims based on that conduct.

Importantly, while inclusion of these predicate acts will allow the Defendants to be tried on a complete record of their racketeering misconduct, it will not expand the scope of this case beyond the boundaries that have already been set by this Court's discovery orders.  The Court already permitted NIC discovery into Strataluz, and, aside from the forthcoming depositions of Scott Ferrell and David Reid (which will occur regardless of amendment), no further Strataluz discovery is necessary to adjudicate ProMaxal-related predicate acts on their merits.  As such, the boundaries of this case and the boundaries of discovery will not be affected by the proposed amendment.  Nonetheless, the amendment will permit a jury to understand the entire scope of the Defendants' racketeering activity and base their judgment in this case on a complete understanding of the Defendants' motivations.

The ProMaxal-related predicate acts provide the jury with a unique understanding of the Defendants' mental states.  Unlike in the CLRA and CIPA cases where the staged claims involved conduct of others (i.e., the shill plaintiffs), the contrived and manufactured nature of the ProMaxal claims were based entirely on the NTG Defendants' own conduct and personal knowledge.  The Defendants created the company, they knew that their company did not manufacture and sell ProMaxal, and they personally sent fraudulent demand letters and prepared frivolous and false pleadings.  Those predicate acts thus demonstrate the Defendants' knowledge and intent, and are crucial to illustrate that mental state before the jury.  The ProMaxal-related predicate acts are thus of substantial benefit to resolution of this case on the merits and, under the liberal Rule 15(a) standard,

should be presumptively permitted.  *Griggs*, 170 F.3d at 880 (a court should determine whether to grant leave indulging "all inferences in favor of granting the motion").

### C. The Court Should Permit NIC to Amend the Corporate Defendant's Name and Description

During the pendency of this matter, Scott Ferrell formally changed the Newport Trial Group's name to "Pacific Trial Attorneys, PC" but did not file with the clerk of the court any notice of name change.  On August 5, 2016, Scott Ferrell filed amended Articles of Incorporation with the California Secretary of State to change the corporation's name.  *See* Decl. of Joshua Furman ("Furman Decl."), Exhibit 5.  As a result, the name of the corporate defendant in the current matter is not up-to-date.  NIC's proposed Third Amended Complaint corrects the corporate-defendant's name and description for accuracy.  The Court should grant NIC leave to amend the complaint to update the corporate defendant's name and description so that it accurately reflects the corporation's current status.  That change could avoid prejudice to NIC in seeking to later collect a judgment.

During counsel's Local Rule 7-3 meet and confer on this motion, counsel for the Defendants raised no dispute that NTG has formally changed its name to Pacific Trial Attorneys.  *See* Exhibit 4.  Thus, if the Court grants NIC leave to amend the complaint, there is no basis to deny NIC the right to correct the name of the corporate defendant.

### D. The Court Should Grant NIC Leave to Make Minor Changes to Factual Allegations so the Pleading Comports with the Evidence Obtained in Discovery

NIC has obtained evidence through discovery that proves NIC's material allegations in the SAC were accurate.  However, in some instances, the evidence has revealed minor variations from the particularized Rule 9(b) allegations in the SAC.  For instance, certain schemes were developed by NTG a month or two

earlier than NIC had alleged.  In other instances, different or additional Defendants prepared fraudulent documents or engaged in the alleged misconduct.  While these factual variations do not impact the adequacy of NIC's allegations, NIC believes that, if the Court permits amendment to add predicate acts, the Court should also permit NIC to modify factual allegations to comport with the evidence.  NIC has attached a redlined version of the proposed Third Amended Complaint which precisely displays the minor variations proposed.

### E. Defendants Do Not Suffer Undue Prejudice from the Proposed Amendment

The primary focus of the Rule 15(a) inquiry is on whether the opposing party will be unduly prejudiced by amendment.  *See Eminence Capital*, 316 F.3d at 1052.  The Defendants have the burden of demonstrating the existence of undue prejudice and the Court is to draw all inferences in NIC's favor.  *Griggs*, 170 F.3d at 880; *Butler*, 208 F.R.D. at 622–23.  The Defendants will suffer no prejudice from the proposed amendment, let alone *undue* prejudice.

First, the proposed amendment involves conduct that has been heavily litigated through the various privilege motions and discovery disputes thus far. Although NIC has only recently received the documents that prove NIC's allegations true, the Defendants have been on notice of NIC's allegations.  NIC's crime-fraud motions accused the Defendants of submitting a false declaration by Ryan Ferrell in the NIC matter.  *See* Dkt. 292-1 at 32-33.  NIC also argued to this Court that *in camera* review would demonstrate that the Defendants submitted a fraudulent Bobba declaration and deceived the court as part of a cover-up in the *Magna* case.  *See* Dkt. 628 at 14.  NIC noted the impropriety of Defendants' June 2012 letter falsely identifying "new clients" in the *Nature's Way* matter.  *See* Dkt. 473 at 20-21.  NIC also argued that the Richardson declaration submitted in the *Torres* matter was fraudulent and designed to conceal wrongdoing.  *See* Dkt. 473 at

11-13, 22.  Moreover, NTG aggressively defended against those allegations in both motions and discovery practice.  Thus, the Defendants cannot in good faith claim unfair surprise as a source of prejudice as it relates to the five predicate acts derived from those underlying cases.

Similarly, the Parties have heavily litigated NIC's allegations of impropriety in the ProMaxal-related predicate acts.  *See e.g.*, Dkt. Nos. 234, 299, 348, 588, 820.  NIC filed a detailed crime-fraud motion that was subject to preliminary objections by the Defendants, oral argument before the Special Master, objections to the District Court, and oral argument before the District Court.  *See* Dkt. 588; *see also* Dkt. 652.  The Defendants filed an interlocutory appeal to the Ninth Circuit, wherein the parties extensively briefed issues germane to the ProMaxal predicate acts.  *See* Dkt. 786 (Order denying appeal after years of litigation); *see* Dkt. 799 (Order granting attorney fees for frivolous appeal).  The Defendants have been fully aware of the allegations undergirding those predicate acts.  Moreover, although the Strataluz cases were not included in the SAC, the Court has repeatedly recognized that the ProMaxal-related evidence could be admissible at trial to support NIC's RICO claims under Rule 404(b) of the Federal Rules of Evidence.  Thus, there is simply no unfair surprise that these allegations are involved in this case.

Second, the Defendants have had a full and fair opportunity to take discovery into these matters.  The Defendants attended every deposition relevant to the facts undergirding the proposed predicate acts.  NIC deposed Richard Richardson, Raquel Torres, Sam Pfleg, Andrew Nilon, and the three owners of Strataluz LLC that are not Defendants in this case (Hardin, Weiss, and Bentley).  *See* Furman Decl. at ¶¶ 3-9.  The Defendants attended each deposition and had a full opportunity to ask questions of the witnesses (who are friendly to NTG nonetheless).  *Id*.  Moreover, the misconduct alleged in all of the proposed new predicate acts was misconduct by the Defendants themselves.  As such, they

possess personal knowledge of the facts and need no discovery to understand whether NIC's allegations are true or false.  The Defendants have had access to the relevant documents for the duration of this entire case, while NIC has only recently received production of documents.[8]

Third, while NIC does not believe that there is any necessary discovery that Defendants must take to defend against these new predicate acts, if the Defendants believe that there is discovery they need, they have nearly eight months to seek leave of Court to take that discovery.  Thus, the Defendants do not suffer any prejudice from the addition of these predicate acts.

Finally, the new predicate acts will not add any claims or increase liability.  Although NIC seeks to add new predicate acts, those predicate acts are interwoven with NIC's existing RICO claims.  Thus, the new predicate acts do not expose the Defendants to any additional liability.

During the meet and confer process, the Defendants claimed that NIC's proposed amendment would cause them undue prejudice because:  (1) the new predicate acts would inject complex new areas of inquiry into the case; (2) the predicate acts arise out of protected activity and therefore implicate potential Anti-SLAPP motions; and (3) Defendants would need to call a Lanham Act expert.  *See* Exh. 4.  None of those arguments has any merit.

As explained *supra*, the predicate acts do not actually inject new areas of inquiry into the case.  The Defendants apparently appreciate that fact, which is why in their meet and confer letter they argued that "NIC has been making allegations about Strataluz since shortly after this action was filed."  *See* Exh. 4.  Defendants' position is self-contradictory.  They claim that NIC has raised these allegations for years, but then argue that despite extensive discovery into those allegations, the

---

[8] NIC is actually still awaiting a final order on the remaining Strataluz documents and thus does not have all documents related to those predicate acts. Dkt. 820 at 29-30.  The Defendants, however, do have all of those documents.

predicate acts will inject new areas of inquiry into the case.  The record (and the inconsistency in Defendants' position) belies that argument.

Defendants claim that ProMaxal-related activity is protected by the First Amendment and, thus, would be subject to an Anti-SLAPP Motion.  As an initial matter, that position is legally frivolous because the new predicate acts relate only to NIC's federal RICO claims and the state Anti-SLAPP statute would be inapplicable.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n. 2, 901 (9th Cir. 2010) (California's Anti-SLAPP statute "does not apply to federal law causes of action.").  Moreover, this Court has already determined that the *Noerr-Pennington* doctrine would not bar NIC's claims based on ProMaxal-litigation when the Court repeatedly rejected Defendants' *Noerr*-based arguments during the crime-fraud litigation.  *See* Dkt. 348 at 14 (finding that the sham litigation exception applies to the Strataluz issues); Dkt. 820 at 11-12, 21-22 (noting that the company and litigation were shams).  The Court found that the evidence established that the lawsuits were a sham, thus, the sham exception to *Noerr* applies.  As a result, while the Defendants can certainly file a motion to dismiss, that motion would be frivolous and a waste of resources.  More fundamentally, the Defendants essentially argue that they are prejudiced because there might be litigation over a motion to dismiss if NIC is permitted to amend.  But that outcome is probable in every instance of amendment.  If the Court were to find that the potential for 12(b)(6) or Anti-SLAPP motions alone constituted undue prejudice, then amendments would never be permitted.

Lastly, Defendants claim a need to reopen expert discovery to designate a Lanham Act expert.  That position should be rejected.  Expert opinion on the legal contours of the Lanham Act is inadmissible on its face.  The facts of the ProMaxal-related predicate acts are easy for a lay juror to understand:  the Defendants claimed to have a competing product and claimed to have lost sales when, in reality, they had no product and no attempted sales.  Thus, any proposed expert

would not help the jury understand factual issues germane to fraud.  To the extent the Defendants offer an expert to instruct the jury on the law, the expert would be subverting the role of this Court.  There is simply no viable "Lanham Act Expert" that Defendants could propose.  Yet, even if this Court were willing to entertain such an expert, the Defendants have unduly delayed requesting leave to include that expert.  Years ago, Defendants argued that they would need an expert witness if the Court permitted NIC to use the ProMaxal-related evidence at trial as Rule 404(b) evidence.  *See* Dkt. 612 at 28; Exh. 6 (May 14, 2018 Tr. of Proceedings) at 13-14.  Thus, Defendants already knew that these issues would likely arise and chose not to designate a Lanham Act expert.  Regardless, there are eight months remaining before trial and the Defendants can certainly request that the Court permit a brief period of supplemental expert discovery.  Thus, they do not suffer undue prejudice.

## F. None of the Other Rule 15(a) Factors Bar Amendment

Rule 15(a) permits a Court to deny amendment if the amendment would be futile, the amendment is proposed in bad faith, or there is extreme and unexplained delay.  Mere delay, by itself, is never enough to deny leave to amend.  *United Healthcare*, 848 F.3d at 1167.

Here, the amendment is proposed in good faith following completion of document discovery and in conformity with the deadlines imposed by this Court's recent trial setting order.  The proposed amendments are not futile because the Court has already adjudicated NIC's RICO claims as legally sufficient and the new predicate acts follow the exact same mold as the other, similar predicate acts in the SAC.

Finally, NIC has not engaged in extreme, unexplained delay.  NIC only recently obtained final production in response to resolution of the crime-fraud issues that had been pending for years.  While NIC did receive some documents in piecemeal productions from earlier, preliminary orders (such as Docket No. 659

which compelled just 26 files), the entire record was still not available until recently. NIC did not receive any crime-fraud files related to ProMaxal until the order at Docket No. 820. Thus, NIC did not delay in seeking this amendment. Within weeks of the Court's trial setting order and only a few months after the most recent crime-fraud productions, NIC began the meet and confer process on this motion.

During the meet and confer, Defendants suggested that NIC should have moved to amend earlier because it had some of the information undergirding the proposed new predicate acts. But such an approach would have been wasteful and potentially duplicative. When NIC received the first batch of crime-fraud files, this Court also remanded the remaining documents for review by the Special Master. Thus, to the extent that NIC could potentially receive thousands of new files following the remanded crime-fraud procedure, moving to file a Third Amended Complaint to add predicate acts on an incomplete record risked the likelihood that NIC would have to file a Fourth Amended Complaint after the completion of document discovery. NIC instead chose to allow the privilege issues to be resolved and a complete documentary record to be obtained before moving to make a final amendment to the complaint.

Under Rule 15(a), the Court cannot deny NIC's motion for leave to amend based on alleged delay because NIC did not delay, and, even if the Court believes that NIC delayed to some extent, NIC has a legitimate explanation for that delay. The standard is "egregious, unexplained delay." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). Thus, even if the Court believes NIC took the wrong approach (NIC did not), the fact that NIC has a reasonable explanation satisfies the extremely liberal standard under Rule 15(a).

Thus, none of the Rule 15(a) factors bars NIC's request for leave to amend. The Court should grant NIC's motion for leave in its entirety.

## V.    **CONCLUSION**

For the foregoing reasons, the Court should grant NIC's motion for leave to amend the complaint. The amendment furthers the interests of justice and none of the Rule 15(a) factors weighs against the presumption in the Ninth Circuit that leave to amend should be granted freely.


DATED: February 14, 2020

Respectfully submitted,

EMORD & ASSOCIATES P.C.


By:    _/s/ Joshua S. Furman_
Peter A. Arhangelsky, Esq. (SBN 291325)
Joshua S. Furman (pro hac vice)
*Counsel for Plaintiff Natural Immunogenics Corp.*