1  CALLAHAN & BLAINE, APLC
   Edward Susolik (SBN 151081)
2  Esusolik@callahan-law.com
   David J. Darnell (SBN 210166)
3  Ddarnell@callahan-law.com
   James M. Sabovich (SBN 218488)
4  jsabovich@callahan-law.com
   3 Hutton Centre Drive, Ninth Floor
5  Santa Ana, California 92707
   Telephone: (714) 241-4444
6  Facsimile: (714) 241-4445

7  Attorneys for Defendants NEWPORT TRIAL GROUP
   and SCOTT J. FERRELL

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                 SOUTHERN DIVISION

12  NATURAL IMMUNOGENICS          CASE NO.   8:15-cv-02034-JVS-JCG
    CORP., a Florida corporation,  JAMS NO.   1220055347
13
                  Plaintiff,       **NTG'S OPPOSITION TO NIC'S**
14                                 **MOTION FOR LEAVE TO AMEND**
         v.                        **[DKT. 892]**
15
    NEWPORT TRIAL GROUP, et        Special Master: Hon. Rosalyn Chapman
16  al.,                           Judge:          Hon. James V. Selna
17                Defendants.      Date:           March 16, 2020
                                   Time:           1:30 p.m.
18                                 Dept.:          10C
19                                 Complaint Filed:     Dec. 7, 2015
20                                 Trial Date:          November 3, 2020
21
22
23
24
25
26
27
28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  PROCEDURAL BACKGROUND ...................................................... 3

III.  ANALYSIS ......................................................................................... 7

    A.  NIC Has Not Brought the Amendment in Good Faith ...................... 7

    B.  The Proposed Amendment Drastically Complicates this Case and Is Deeply Prejudicial ................................................................. 10

    C.  The Proposed Amendment Is Futile Because it Breaks Continuity and Pattern of NIC's RICO Allegations ................................. 17

    D.  NIC's Housekeeping Amendments are Unnecessary ....................... 20

IV.  CONCLUSION ................................................................................. 21

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO NIC'S MOTION FOR LEAVE TO AMEND

1

# TABLE OF AUTHORITIES

2

<u>**Pages**</u>

3

**Cases**

4

*Acri v. International Ass'n of Machinists & Aerospace Workers*,

5
    781 F.2d 1393 (9th Cir. 1986) ................................................................... 11

6

*Air Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt.,*
    *Inc.*,

7
    744 F.3d 595 (9th Cir. 2014) ...................................................................... 17

8

9

*Allen v. City of Beverly Hills*,
    911 F.2d 367 (9th Cir. 1990) ....................................................................... 8

10

11

*Allwaste, Inc. v. Hecht*,
    65 F.3d 1523 (9th Cir. 1995) ...................................................................... 20

12

13

*Ascon Properties, Inc.*,
    866 F.2d 1149 (9th Cir. 1989) .................................................................... 10

14

15

*Baker v. Pac. Far E. Lines, Inc.*,
    451 F. Supp. 84 (N.D.Cal.1978) ................................................................. 18

16

17

*Bassani v. Sutton*,
    430 Fed.Appx. 596 (9th Cir. 2011) ............................................................ 11

18

19

*Bowles v. Reade*,
    198 F.3d 752 (9th Cir. 1999) ................................................................... 1, 2

20

*Campbell v. Emory Clinic*,
    166 F.3d 1157 (11th Cir. 1999) .............................................................. 2, 11

21

22

*Carrico v. City and Cnty. of San Francisco*,
    656 F.3d 1002 (9th Cir. 2011) .................................................................... 17

23

24

*Casey v Merck & Co., Inc.*,
    653 F.3d 95 (2d Cir. 2011) ......................................................................... 17

25

26

*Chodos v. W. Publ'g Co.*,
    292 F.3d 992 (9th Cir. 2002) ....................................................................... 8

27

*DCD Programs, Ltd. v. Leighton*,
    833 F.2d 183 (9th Cir.1987) ........................................................................ 7

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- ii -

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*Dupree v. Apple, Inc.*,
2017 U.S. Dist. LEXIS 7765 (N.D. Cal. Jan. 18, 2017) ........................................ 8

*Duttle v. Bandler & Kass*,
No. 82 CIV. 5084 (KMW), 1989 WL 31503 (S.D.N.Y. Mar. 27, 1989) ............................................................................................................. 13

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ............................................................... 7, 10

*Forman v. Davis*,
371 U.S. 178 (1962) ...................................................................................... 7

*Forty-Niner Sierra Res., Inc. v. Subaru of Am., Inc.*,
416 F. Supp. 2d 861 (E.D. Cal. 2004) ....................................................... 8

*Gen. Credit Corp. v. Goldfarb*,
No. 98 CIV. 3188 (DLC), 1998 WL 851592 (S.D.N.Y. Dec. 9, 1998) ............................................................................................................. 13

*Gordon v. City of Oakland*,
627 F.3d 1092 (9th Cir. 2010) ................................................................... 17

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
492 U.S. 229 (1989) ..................................................................... 18, 19, 20

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ..................................................................... 16

*Hash v. Lee*,
No. 08-cv-3729-MMC, 2013 WL 4487536 (N.D. Cal. Aug. 19, 2013) ............................................................................................................. 13

*Interlabservice, OOO v. Illumina, Inc.*,
No. 15CV2171-KSC, 2017 WL 4217133 (S.D. Cal. Sept. 20, 2017) .......... 13, 14

*IXYS Corp. v. Advanced Power Tech.*,
No. 02-cv-03942-MHP, 2004 WL 135861 (N.D. Cal. Jan. 22, 2004) ................ 13

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) ...................................................... 8, 10, 11

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- iii -

1

2

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Pages**

3

4

*Janicki Logging Co. v. Mateer*,
  42 F.3d 561 (9th Cir. 1994) ...................................................................... 7

5

6

*Johnson v. Buckley*,
  356 F.3d 1067 (9th Cir. 2004) ................................................................. 18

7

8

*King v. GEICO Indem. Co.*,
  712 Fed. Appx. 649 (9th Cir. 2017) ......................................................... 16

9

*Martensen v. Koch*,
  2015 U.S. Dist. LEXIS 14476 (Dist. Col. 2015) ..................................... 16

10

11

*Messick v. Novartis Pharms. Corp.*,
  747 F.3d 1193 (9th Cir. 2014) ................................................................. 16

12

13

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir.1990) .................................................................... 7

14

15

16

*Morris v. Sutton*,
  No. 117CV01488AWISAB, 2019 WL 2994291 (E.D. Cal. July 9,
  2019) ........................................................................................................ 15

17

*Nunes v. Ashcroft*,
  348 F.3d 815 (9th Cir.2003) .................................................................... 18

18

19

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ................................................................................. 12

20

21

*Philadelphia Indem. Ins. Co. v. Danco Builders*,
  No. 15-CV-03945-WHO, 2017 WL 24755 (N.D. Cal. Jan. 3, 2017) .................. 14

22

23

*Polycast Tech. Corp. v. Uniroyal, Inc.*,
  728 F. Supp. 926 (S.D.N.Y. 1989) ........................................................... 13

24

25

*Priddy v. Edelman*,
  883 F.2d 438 (6th Cir. 1989) ................................................................... 11

26

27

*Primavera Familienstiftung v. Askin*,
  130 F. Supp. 2d 450 (S.D.N.Y. 2001) ..................................................... 17

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- iv -

1

## TABLE OF AUTHORITIES
(CONTINUED)

2

**Pages**

3

*Religious Tech. Ctr. v. Wollersheim*,

4

971 F.2d 364 (9th Cir. 1992) ............................................................. 20

5

*Richman v. Sheahan*,

6

415 F. Supp.2d 929 (N.D. Ill. 2006) .................................................. 16

7

*Rissetto v. Plumbers & Steamfitters Local 343*,

94 F.3d 597 (9th Cir. 1996) ............................................................... 10

8

*Russell v. Rolfs*,

9

893 F.2d 1033 (9th Cir. 1990) ........................................................... 18

10

*SAES Getter S.p.A. v. Aeronex, Inc.*

11

291 F. Supp. 2d 1081 (S.D. Cal. 2002) ............................................... 7

12

*Saul v. United States*,

13

928 F.2d 829 (9th Cir.1991) .............................................................. 18

14

*Specht v. Jensen*,

15

853 F.2d 805 (10th Cir. 1988) ........................................................... 16

16

*Strataluz, LLC v. TruDerma*,

17

LLC, No. 15-cv-1248-JM-RBB (S.D. Cal. June 3, 2015) ............ 19, 20

18

*Ticor Title Ins. Co. v. Florida.*,

937 F.2d 447 (9th Cir. 1991) ............................................................. 18

19

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*,

20

555 F.3d 772 (9th Cir. 2009) ............................................................. 10

21

*United States v. Diaz*,

22

876 F.3d 1194 (9th Cir. 2017) ........................................................... 16

23

*United States v. Lucero*,

24

2018 U.S. Dist. LEXIS 8289 (S.D. Cal. 2018) ................................. 16

25

*Womack v. Windsor*,

26

No. 215CV0533MCEKJNP, 2017 WL 1090164 (E.D. Cal. Mar. 23,
2017) .................................................................................................. 10

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- v -

# TABLE OF AUTHORITIES
## (CONTINUED)

<u>**Pages**</u>

**Statutes**

Fed. R. Civ. Proc. 12 .................................................................................. 21

Fed. R. Civ. Proc. 12(b)(6) ......................................................................... 18

Fed. R. Civ. Proc. 13 .................................................................................. 21

Fed. R. Civ. Proc. 15 .................................................................................. 21

Fed. R. Civ. Proc. 15(a) ............................................................................... 7

**Other Authorities**

*Lanham Act False Advertising: The Expert Is Key*, The New York Law
   Journal (Jul. 2010), Harold Weinberger, Jonathan Wagner, and
   Matthew Temkin ................................................................................... 15

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- vi -

Defendants Newport Trial Group and Scott Ferrell (collectively "NTG") respectfully submit their Opposition to Plaintiff Natural-Immunogenics' ("NIC" or "Plaintiff") Motion for Leave to File Third Amended Complaint [Dkt. 892].

## I.    INTRODUCTION

Plaintiff's Motion for Leave to File Third Amended Complaint is in keeping with its constant effort to expand this case and derail trial.  NIC filed this case in 2015.  It is now 2020, this Court's docket count is a stone's throw from quadruple digits, and the matter is less than eight months from trial.  Yet NIC is seeking to take this case back to 2016, when NIC last tried to file an amended Complaint expanding this litigation.  Only now NIC seeks to do so after fact and expert discovery have closed.

Plaintiff's latest Motion for Leave seeks to make either unnecessary or unreasonable and prejudicial amendments.  NIC offers two superfluous sets of amendments.  First, NIC points out that NTG changed its Pacific Trial Attorneys ("PTA").  NTG and PTA are the same entity.  To the extent any clarification is necessary, NTG offered NIC an unequivocal stipulation on that point.  This issue should have been resolved through meet and confer, and NIC's Motion on this point is an unnecessary use of party and judicial resources.  Second, NIC's request to "conform" the Second Amended Complaint to evidence through minor corrections or adjustments is unnecessary.  This Court decided the adequacy of the Second Amended Complaint years ago, and NIC itself concedes the proposed amendments will have no effect on liability and "do not impact the adequacy of NIC's allegations."  (Dkt. 892-1 at 16.)

The core of NIC's request is not inconsequential housekeeping, but an effort to sandbag NTG with new allegations after lay and expert discovery have closed. While NIC trumpets the "liberal" standard for amendment, "[l]iberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile."

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999).  And "[p]rejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided."  *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999).

NIC seeks to add 60 paragraphs of new substantive allegations.  *Compare* Dkt. 92 *with* Dkt. 892-4.  And that actually understates the extent of modifications since NIC often includes new subparagraphs.  (Dkt. 892-4 at 95.)  As this Court has explained, this case has always been about an alleged "false advertising scheme" and "alleged wiretapping scheme," each with four predicate cases.  (Dkt. 788 at 2.)  Not only does NIC seek to add new predicate acts that have never been part of its claims for those alleged "schemes," but NIC's amendment now includes an entirely new and distinct theory: an alleged supplement industry Lanham Act scheme with five predicate cases.  (Dkt. 892-4, ¶¶ 359-377.)  In other words, NIC seeks to add an entirely new RICO enterprise and thus convert this from a two "scheme" eight predicate matter case to a three "scheme" thirteen predicate matter case.  And it seeks to do so in dispositive motions have been filed and after discovery is closed.

NIC's proposed amendment is not in good faith, is deeply prejudicial, and adds serious complications to this action.  To obtain discovery regarding Strataluz LLC ("Strataluz"), NIC affirmatively represented to this Court that NIC would not "modify any of the allegations in the SAC or the core issues for trial" with that discovery.  (Dkt. 392 at 12 [emphasis added].)  Having gotten its discovery, NIC is now doing the very thing it promised it would not do.  More fundamentally, NIC's allegations drastically change this case *after* NTG took discovery and prepared its expert case.  NIC's amendments, if allowed, inject complicated supplement industry, male enhancement chemistry, patent, trademark, licensing, corporate governance, manufacturing, and supply chain issues that have no relationship to the allegations in the operative Second Amended Complaint.  Addressing these will require redoing lay and expert discovery.  New experts in the above areas will be

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO NIC'S MOTION FOR LEAVE TO AMEND

1   required and previously designed experts will need to assess and address NIC's

2   allegations.  Realistically accessed, NIC's proposed amendment will delay the case

3   by up to a year and would render the November 3, 2020, trial date impossible.

4          Respectfully, this case has already consumed far too much in the way of party

5   and judicial resources.  NIC made its allegations and NTG has prepared its defense

6   to them.  Allowing NIC to drastically and substantively expand its allegations  --

7   after discovery is closed, dispositive motions are filed, and trial is imminent --

8   undermines justice and is gravely prejudicial to NTG.  Accordingly, NIC's Motion

9   should be denied.

10  ## II.   **PROCEDURAL BACKGROUND**

11         NIC initiated this litigation on December 7, 2015.  (Dkt. 1).  On January 25,

12  2016, NIC filed a First Amended Complaint ("FAC").  Dkt. 28.  The FAC brought

13  four claims for relief: (1) Malicious Prosecution; (2) Violation of the RICO Act; (3)

14  Violation of the RICO Act; and (4) Unfair Competition under California Business &

15  Professions Code Section 17200 ("the UCL").  NIC brought its UCL claim "on

16  behalf of themselves [sic] and on behalf of the public as private attorneys general

17  pursuant to Business & Professional Code § 17204," and alleged that "[i]njunctive

18  relief is necessary to prevent continuing or future harm to NIC and the public

19  generally."  (Dkt. 28 at ¶¶ 492 and 494).

20         On February 22, 2016, the NTG Defendants filed a Motion to Dismiss the

21  RICO claims along with a Motion to Strike the malicious prosecution and UCL

22  claims.  (Dkts. 39 and 42).  In their Motion to Strike, the NTG Defendants argued

23  that: (1) NIC's malicious prosecution and UCL claims arose "out of protected

24  activity, *i.e.*, filing a lawsuit for violations of consumer protection and false

25  advertising laws;" and (2) "because the allegations are completely untrue, NIC will

26  not be able to produce any admissible evidence showing the likelihood of prevailing

27  on either state law claim."  (Dkt. 40 at 8:17-21).  The NTG Defendants also argued

28  that NIC could not bring the claim on behalf of the public or "seek injunctive relief

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    'on behalf of the public'" because it made "no attempt to plead a viable class

2    action." *Id.* at 22:3-17.

3         On April 19, 2016, the Court entered an Order granting, in part, the NTG

4    Defendants' Motions to Dismiss and Strike.  (Dkt. 88-1).  The Court granted the

5    Motion to Dismiss the RICO claims with 21 days leave to amend because "NIC has

6    failed to adequately plead any predicate acts to support its RICO claims."  (*Id.* at 16-

7    17.)  The Court granted "Defendants' motions to strike the UCL claim," subject "to

8    repleading the RICO claims" because "NIC cannot borrow RICO to satisfy the

9    'unlawful' prong of the UCL claim when the RICO claims are insufficiently plead.

10   As NIC presents no other argument why the UCL claims should not be struck under

11   California's anti-SLAPP law, the Court is inclined to strike the UCL claims at this

12   time." (*Id.* at 27.)  NIC subsequently filed the currently operative Second Amended

13   Complaint on May 10, 2016.  (Dkt. 92.)

14        The Second Amended Complaint is expansive.  It is 96 pages with 416

15   paragraphs.  As this Court has explained, NIC's lawsuits involve two alleged class

16   action "schemes," each with four underlying predicate cases:

17        In brief, NIC alleges that NTG routinely fabricated class-action

18        litigation to extort money from defendants nationwide . . . NIC's

19        Second Amended Complaint ("SAC") alleges that the NTG

20        Defendants perpetrated two litigation schemes: (1) the false-

21        advertising scheme and (2) the unauthorized recording, or

22        "wiretapping" scheme.  In the false advertising scheme, NTG and its

23        investigator Andrew Baslow ("Baslow") would identify individuals to

24        serve as lead plaintiffs in consumer fraud class actions against

25        companies selling products in California. Docket No. 92 ¶¶ 23–24.

26        NTG would then bribe these individuals to make intentional false

27        representations that (1) they purchased the defendant's product in

28        reliance on the representations made in defendant's product

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO NIC'S MOTION FOR LEAVE TO AMEND

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   advertisements; (2) the product did not work as advertised; and (3)

2   they were injured as a result of their reliance on the advertisements.

3   Id. ¶ 29. Using these false allegations, NTG would threaten companies

4   with statewide class actions under various California consumer

5   protection statutes, and, before the companies could discover that the

6   allegations were false, extort out-of-court settlements from these

7   companies.

8

9   The wiretapping scheme functioned similarly. Under the wiretapping

10   scheme, NTG and Baslow would identify individuals to serve as

11   potential lead plaintiffs in consumer privacy class actions. NTG would

12   then bribe these individuals to stage private phone calls to various

13   companies, and then later make intentionally false representations . . .

14   Using these false allegations, NTG would threaten companies with

15   statewide class actions under the California Invasion of Privacy Act,

16   Cal. Pen. Code §§ 632 et seq., ("CIPA") and, before the companies

17   could discover that the allegations were false, extort out-of-court

18   settlements from these companies.

19   (Dkt. 788 at 2-3.)

20       This made up NIC's RICO "enterprise."  According to the operative

21   Complaint, "Defendants in this action comprise an associated-in-fact enterprise

22   which maintains a 'hub-and-spoke' structure," by which "NTG, through its

23   attorneys, employees and agents" operated "at the center of the enterprise" and the

24   alleged "sham plaintiffs . . . operate as the spokes."  (Dkt. 92, ¶ 378.)  NIC describes

25   the operation of the "enterprise" as follows:  "The hub identifies potential victim

26   corporations and acquires a sham plaintiff" then "the sham plaintiff then engages in

27   whatever conduct and provides whatever testimony is necessary to maintain the

28   pressure of facially valid litigation . . . ."  (Dkt. 92, ¶ 378.)  Accordingly, NIC has

sued the alleged "sham plaintiffs" and claimed that "[t]he plaintiffs-for-hire are indispensable to the enterprise because . . . the sham lawsuits cannot be filed or pursued without a bribed plaintiff willing to support those actions as the "plaintiff" partnered with NTG."  (Dkt. 92, ¶ 379.)

During meet and confer, Plaintiff sought to amend the Complaint in four respects:  (1) to account for NTG changing its name to Pacific Trial Attorneys, (2) to effect minor corrections based on discovery, (3) to add Strataluz allegations regarding ProMaxal, and (4) to modify allegations regarding the predicate cases, including adding new predicate acts.  (Dkt. 892-5 at 3.)  NTG offered to remove the first issue by stipulating "that for purposes of this action, Pacific Trial Attorneys, PC is the same entity as NTG and is therefore subject to any and all rights, obligations, and liabilities of NTG."  (Dkt. 892-6.)  NTG likewise conceded that the Federal Rules did not require NIC to amend its Complaint with minor corrections to "conform" to evidence.  (*Id.*)

NIC's change is to add significant new predicate acts, predominately regarding Strataluz and Promaxal.  With respect to Strataluz and ProMaxal, NIC's proposed amendment alleges something entirely different than the RICO "scheme" alleged in its Second Amended Complaint.  (Dkt. 892-4, ¶¶ 359-377.)  NIC's proposed amendment claims that "Defendants David Reid and Scott Ferrell" started a side business called "Strataluz" and that it made settlement demands, and brought one lawsuit against competitors based on allegedly false allegations.  (*Id.*)  There is no allegation that any defendant besides Reid and Ferrell had anything to do with Strataluz.  (*Id.*)  Nor does Strataluz fit within the "hub-and-spoke" structure" for the enterprise NIC alleged in its Second Amended Complaint.  There is no "hub" allegedly recruiting "sham" plaintiffs.  There is no allegation of "sham" plaintiffs nor any "sham plaintiff" illicitly supporting a false claim.  *Id.*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## III.   ANALYSIS

While leave to amend a pleading is ordinarily granted "when justice so requires," this is not such a case. *See* Fed. R. Civ. P. 15(a).  In assessing the propriety of a motion for leave to amend, Courts should consider four factors: (1) undue prejudice to the opposing party by virtue of the allowance of the amendment; (2) the moving party's undue delay in seeking leave to amend; (3) bad faith or dilatory motive on the party of the movant; and (4) futility of the amendment. *Forman v. Davis*, 371 U.S. 178, 181-182 (1962); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994).  These factors "are not to be understood rigidly or applied mechanically; courts are instead counseled to 'examine each case on its facts' and gauge the propriety of granting leave to amend accordingly." *SAES Getter S.p.A. v. Aeronex, Inc.* 291 F. Supp. 2d 1081, *1086* (S.D. Cal. 2002) (quoting 6 Charles Alan Wright, et al., *Federal Practice and Procedure: Civil 2d* § 1430 (2d ed.1990)). "Not all of the factors merit equal weight.  As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) *citing DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 185 (9th Cir.1987).  Thus, "[l]iberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile." *See DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987).

### A.   NIC Has Not Brought the Amendment in Good Faith

NTG Defendants respectfully submit that the current request for an amendment is not brought in good faith.  Rather, NIC has timed the amendment to both sandbag NTG Defendants and frustrate trial by bringing allegations NIC represented it would not make after discovery has closed.

While this is not solely a matter of undue delay, NIC's undue delay is independently relevant. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1079 (9th Cir.1990).  In evaluating undue delay, courts consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).  A district court will likely find undue delay when the movant knew or should have known the facts or issues contained in the proposed amendment, yet offered no legitimate reason for their exclusion from the earlier pleading.  *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).  It is impermissible to add new allegations, based on information previously known, late in a lawsuit.  In *Dupree v. Apple, Inc.*, 2017 U.S. Dist. LEXIS 7765, *12-14 (N.D. Cal. Jan. 18, 2017), the District Court denied a motion for leave to amend to add new allegations.  It did so because in the Ninth Circuit, late assertion of new allegations "are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

NIC has been making crime fraud assertions regarding Strataluz almost from the inception of this case.  NIC claimed that it "developed information concerning NTG's creation of sham corporate entities for litigation purposes" in February 2016. (Dkt. 262 at 8:5-7.)  Specifically, NIC claimed that "on February 5, 2016, counsel for NIC received an unsolicited call from Allison Borts, an in-house attorney for Continuity Research, LLC" in which she "informed NIC that she had discovered unprivileged email correspondence sent to Continuity Research by NTG attorneys Scott Ferrell and David Reid."  (Dkt. 165-1 at 12:23-24.)  Notably, this call took place two months **prior** to the currently operative Second Amended Complaint that NIC filed on May 10, 2016.  (Dkt. 92.)  The delay here is over three years.  *Forty-Niner Sierra Res., Inc. v. Subaru of Am., Inc.*, 416 F. Supp. 2d 861, 872 (E.D. Cal. 2004) ("Regardless of whether the court measures the length of the delay as one year or four years, the court concludes that Plaintiff inexcusably delayed in seeking leave to amend.")

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    NIC's delay must be considered in the context of NIC's actions and

2    representations regarding Strataluz.  Since filing its Second Amended Complaint,

3    NIC has proceeded for multiple years to seek privileged documents regarding

4    Strataluz based on relevancy to NIC's Second Amended Complaint and response to

5    affirmative defenses.  (*See e.g.*, Dkts. 198; 299; 367-1; 414.)  As this Court noted,

6    NIC sought leave arguing that evidence regarding Strataluz would "show the

7    Newport Trial Group's fraudulent state of mind and allow NIC to defeat the NTG

8    Defendants' affirmative defenses."  (Dkt. 414 at 4; *see also* Dkt. 392 at 11

9    ("Strataluz-related discovery will yield evidence relevant to material facts in the

10   SAC and the Defendants' affirmative defenses.").

11   To obtain that discovery, NIC specifically disclaimed any intent to amend the

12   operative Complaint regarding Strataluz.  NTG raised concerns that NIC's discovery

13   into Strataluz was an attempt to expand the allegations in this case, and NIC assured

14   the Court it was not:

15   > The NTG Defendants argue that NIC's request will cause them

16   > "extreme prejudice" because "NIC seeks to drastically change and

17   > expand its allegations shortly before trial." See Dkt. 376 at 15-16. The

18   > Defendants erroneously argue that NIC's request is tantamount to a

19   > motion for leave to amend the complaint. That position is incorrect.

20   > NIC is not seeking leave to amend its complaint. ***NIC's request will***

21   > ***not modify any of the allegations in the SAC or the core issues for***

22   > ***trial. Instead, NIC seeks leave to obtain discovery relevant to the***

23   > ***pending allegations.  . . . . The Strataluz evidence does not expand***

24   > ***the existing allegations but, rather, supports and provides***

25   > ***explanatory details concerning those allegations***.

26   (Dkt. 392 at 12 (emphasis added).)

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

NIC's volte-face is classic bad faith and manipulation of the Court. "Judicial estoppel enables a court to protect itself from manipulation" by a party taking inconsistent positions. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996). "It was developed to prevent litigants from 'playing fast and loose' with the courts by taking one position, gaining advantage from that position, then seeking a second advantage by later taking an incompatible position." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc*., 555 F.3d 772, 778 (9th Cir. 2009). NIC procured a leave to conduct discovery by promising the Court that it was not using Strataluz evidence to "expand the existing allegations," then did exactly that.

Accordingly, because NIC has not acted in good faith and unduly delayed its proposed amendment, leave should be denied.

## B. The Proposed Amendment Drastically Complicates this Case and Is Deeply Prejudicial

"Prejudice is the touchstone of the inquiry under rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Courts have found that "undue prejudice" sufficient to affirm the denial of a motion for leave to amend may result from the burden of necessary future discovery or the re-litigation of prior issues within a close proximity of the trial date. *See e.g., Jackson, et al. v. Bank of Hawaii, et al.*, 902 F.2d 1385, 1387-88 (9th Cir. 1990); *Ascon Properties, Inc.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (noting that allowing plaintiff to amend Complaint nearly one and a half years after litigation commenced would prejudice the defendant, who had already incurred substantial litigation costs evaluating the prior theory of the case).

Contrary to NIC's claim that "courts across the county permit post-discovery amendment" (Dkt. 892-1 at 10), post-discovery amendments of the sort proposed by NIC are universally disfavored. "The nonmoving party is prejudiced when granting leave to amend would result in a need to reopen the discovery period and the period to file dispositive motions, or when dispositive motions already have been decided."

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Womack v. Windsor*, No. 215CV0533MCEKJNP, 2017 WL 1090164, at *3 (E.D. Cal. Mar. 23, 2017), *report and recommendation adopted*, No. 215CV0533MCEKJNP, 2017 WL 2671010 (E.D. Cal. June 21, 2017); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.") *quoting Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)); *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided."); *Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398-99 (9th Cir. 1986) (affirming the denial of leave to amend and holding that the district court did not abuse its discretion in concluding that allowing amendment would prejudice the defendant because of the necessity for further discovery); *see also Bassani v. Sutton*, 430 Fed.Appx. 596, 597 (9th Cir. 2011) (holding that "the district court's ultimate conclusions—that there would be undue delay and prejudice to the defendants if [the plaintiff] were allowed to amend his complaint two years into litigation and after the close of discovery—were not an abuse of discretion").

NIC has openly acknowledged that its RICO case was already "complex." (Dkt. 591-2 at 3.)  As NIC pointed out, its "case involves twelve (12) defendants. There are four counts seeking relief.  NIC's RICO claims involve seven (7) different statutory bases, with more than fifty (50) predicate acts[1] alleged. . . . The record is measured in the tens of thousands of documents—the majority of which are not from NIC's corporate files. . . .  There have been twenty-two (22) depositions, with several more pending."  (*Id.* at 4.)  Moreover, NIC now apparently intends to present

[1] All predicate acts must be defended.  Moreover, each of those counts requires at least two substantive elements (Dkt. 157 at 12-22 [listing elements]), and each is alleged to implicate between six and eight defendants, depending on the alleged predicate act.  (Dkt. 92, ¶¶ 368-74).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

evidence at trial regarding hundreds of other NTG cases (separate from the eight predicate cases identified in the SAC).  (Dkt. 591-1, ¶¶ 7-8) (noting how on February 2, 2018, NIC produced documents related to approximately 200 cases involving NTG that NIC contends are relevant to and supportive of NIC's RICO claims).  NIC has given a two-week trial estimate, which will already be extremely tight given the depth and complexity of NIC's currently pending allegations.

Now NIC seeks to add 60 new paragraphs of allegations, which include not only entirely new predicate acts, but an entirely new and distinct RICO enterprise theory involving competitor litigation by a side business.

Contrary to NIC's claims, this will necessarily require reopening discovery, conducting new discovery, and preparing expert evidence.  "The scope of discovery is broad and encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978).  The proposition that a plaintiff could amend with 60 new paragraphs of allegations and defendant could not take discovery on them is absurd on its face.  That is particularly true where plaintiff seeks to add a new basis for liability.  The practical effect of NIC's amendment is to add predicate acts on which Defendants have had no discovery and to add a new RICO enterprise after fact discovery has closed and expert discovery has been completed.  Even worse, the ProMaxal litigation is fundamentally different than the eight predicate matters.  Those are false advertising or wiretap cases brought on behalf of consumers.  For those cases, NIC has alleged that "NTG's CLRA/UCL/FAL claims involve a similar pattern of attorney-contrived lawsuits followed by manufactured and false 'injuries' alleged by bribed for-hire plaintiffs acquired by NTG only after it had developed legal claims."  (Dkt. 92, ¶ 283).  ProMaxal is a competitor trademark case that has no relationship to the predicate matters factually or legally.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO NIC'S MOTION FOR LEAVE TO AMEND

NTG has not prepared a defense to a five-predicate case RICO Lanham Act theory, nor NIC's other new predicate acts, because NIC did not allege those predicate acts.  Courts simply do not allow a plaintiff to make late amendments with new allegations, then downplay prejudice concerns by claiming no discovery is necessary.  "[T]he need for a party to conduct supplemental discovery or to consider a new line of legal argument are classic sources of prejudice that have regularly proven sufficient to defeat a motion for leave to amend." *IXYS Corp. v. Advanced Power Tech.*, No. 02-cv-03942-MHP, 2004 WL 135861, at *3 (N.D. Cal. Jan. 22, 2004); *see also Hash v. Lee*, No. 08-cv-3729-MMC, 2013 WL 4487536, at *2 (N.D. Cal. Aug. 19, 2013) ("If the requested leave were granted, defendants would be required to respond to a new set of claims, likely entailing considerable additional discovery, and all after completing plaintiff's deposition and preparing a dispositive motion."); *Interlabservice, OOO v. Illumina, Inc.*, No. 15CV2171-KSC, 2017 WL 4217133, at *9 (S.D. Cal. Sept. 20, 2017) ("The discovery necessary for plaintiff to prepare a defense to these new allegations has the potential to further delay this proceeding for an extended period of time, and the case has already been pending for more than two years since April 29, 2015.  For these reasons, the Court finds that defendant's Motion to Amend must be DENIED.")

NIC's Motion glosses over the fact that NIC is effectively adding an entirely new and highly complex RICO case after discovery has closed.[2]  NIC attempts to blame NTG, arguing that NTG should have already conducted discovery and

---

[2] The cases NIC cites finding a lack of prejudice are generally not applicable.  For example in *Gen. Credit Corp. v. Goldfarb*, No. 98 CIV. 3188 (DLC), 1998 WL 851592, at *3 (S.D.N.Y. Dec. 9, 1998), the defendant did not oppose the motion for leave to amend.  *Id.* ("The Court has seen no papers submitted by defendants in opposition to GCC's motion.")  Likewise, in *Duttle v. Bandler & Kass*, No. 82 CIV. 5084 (KMW), 1989 WL 31503, at *2–3 (S.D.N.Y. Mar. 27, 1989), the court noted that defendants "do not claim prejudice . . . ."  In *Polycast Tech. Corp. v. Uniroyal, Inc.*, 728 F. Supp. 926, 943–44 (S.D.N.Y. 1989), the court did find prejudice but offset it by compelling the "plaintiffs to pay the costs of any duplicative discovery necessitated by such amendments."

OPPOSITION TO NIC'S MOTION FOR LEAVE TO AMEND

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

retained experts to defend itself against theories that NIC had not alleged.[3] (Dkt. 892-1 at 16 to 19.)  NIC even goes so far as to argue that "the Defendants have unduly delayed requesting leave to include" an expert regarding NIC's ProMaxal / Lanham Act violations even though NIC did not plead them.  (*Id.* at 892-1 at 20.) NIC's general position seems to be that because it made some accusations *in discovery motions*, NTG should have guessed that NIC would amend and so should have conducted its own counter-discovery and prepared a defense to allegations that NIC never formally made.  The Court in *Philadelphia Indem. Ins. Co. v. Danco Builders*, No. 15-CV-03945-WHO, 2017 WL 24755, at *3 (N.D. Cal. Jan. 3, 2017) addressed a similar argument in support of a motion for leave to amend and explained:

> It is a plaintiff's burden to give defendants fair notice of the claims at issue and the underlying factual basis for those claims. Fed. R. Civ. P. 8(a)(2). A defendant is not required to conduct discovery and prepare defenses to respond to factual theories and claims that have not been raised. Danco had no obligation to prepare a defense for a possible, but unalleged, draft stop theory.

*Id.*; *Interlabservice, OOO v. Illumina, Inc.*, No. 15CV2171-KSC, 2017 WL 4217133, at *9 (S.D. Cal. Sept. 20, 2017) ("The discovery necessary for plaintiff to prepare a defense to these new allegations has the potential to further delay this proceeding for an extended period of time, and the case has already been pending for more than two years since April 29, 2015.  For these reasons, the Court finds that defendant's Motion to Amend must be DENIED.")

---

[3] Relatedly, NIC claims that NTG's position on prejudice is "self-contradictory" because "[t]hey claim that NIC has raised these allegations for years, but then argue that despite extensive discovery into those allegations, the predicate acts will inject new areas of inquiry into the case."  (Dkt. 892-1 at 18-19.)  At the risk of stating the obvious, defendants do not prepare trial defenses to arguments made in discovery motions.  The fact that NIC has been making statements in discovery motions proves NIC's awareness of the issues.  It in no way supports the proposition that NTG should have been preparing a trial defense to those unpled statements.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Given NIC's proclivity for aggressive discovery motion practice, there is simply no way that the current trial date can hold if NIC's Motion for Leave is granted.  "[P]rejudice to the non-moving party can occur when the trial is delayed, additional costs will be incurred, and major alterations in trial tactics and strategy will result." *Morris v. Sutton*, No. 117CV01488AWISAB, 2019 WL 2994291, at *6 (E.D. Cal. July 9, 2019).  If the Motion is granted, new discovery must be served on NIC and third parties, depositions must re-opened,[4] and expert discovery must be supplemented and largely redone.  After all, both sides' experts' addressed a Complaint that is no longer operative and none assessed issues related to NIC's new allegations.  NIC claims that "[t]he facts of the ProMaxal related predicate acts are easy for a lay juror to understand" and "any proposed expert would not help the jury understand factual issues germane to fraud."  (Dkt. 892-1 at 19-20.)  There is nothing "easy" about, among other things, litigating whether there was probable cause for five health supplemental Lanham Act cases or demands.  "[E]xpert testimony is probably more critical in Lanham Act false advertising litigation than most other litigations."  Harold Weinberger, Jonathan Wagner, and Matthew Temkin, *Lanham Act False Advertising:  The Expert Is Key*, The New York Law Journal (Jul. 2010).)  NIC's amendments, if allowed, inject complicated supplement industry, male enhancement chemistry, patent applicability, trademark, licensing, corporate governance, manufacturing, and supply chain issues that have no relationship to the allegations in the operative Second Amended Complaint.  Just to take one of many new issues, a corporate expert would be required to address NIC's allegation that Reid and Ferrell "concealed their ownership interest in that company through the use of blocker companies and for-hire, fictitious corporate managers."  (Dkt. 892-4, ¶ 360.)  NIC can claim that no expert testimony is necessary, but with

---

[4] NIC argues that the "Defendants attended each deposition and had a full opportunity to ask questions of the witnesses . . . ."  (Dkt. 892-1 at 13.)  But NIC was taking discovery, not NTG, and NTG could hardly ask questions about allegations that NIC had not made.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

respect to expert testimony, "[t]he relevancy bar is low, demanding only that the evidence logically advances a material aspect of the proposing party's case." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).

NIC claims that no expert testimony will be allowed because legal standard testimony would "be subverting the role of this Court." (Dkt. 892-1 at 20.)  This is only one type of expert testimony that would be required.  In any event, it is not the case that experts cannot address legal standards as NIC claims.  The Ninth Circuit has long recognized that "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004); *see also King v. GEICO Indem. Co.*, 712 Fed. Appx. 649, 651 (9th Cir. 2017) ("Nelson did not address an ultimate issue of law but rather testified to GEICO's handling of the claim in relation to industry standards and GEICO's own claim manual.  The fact that GEICO's claim manual incorporated the UTPA [statute] does not lead to a different result."); *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017) ("if the terms used by an expert witness do not have a specialized meaning in law *and* do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion."); *United States v. Lucero*, 2018 U.S. Dist. LEXIS 8289, *6 (S.D. Cal. 2018) (allowing an expert to opine on "jurisdictional characteristics of certain bodies of water, including wetlands and a tributary" even though the opinion involved "legal terminology."); *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) ("We do not exclude all testimony regarding legal issues.  We recognize that a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible."); *Martensen v. Koch*, 2015 U.S. Dist. LEXIS 14476, *7-9 (Dist. Col. 2015) (same); *Richman v. Sheahan*, 415 F.Supp.2d 929, 945 (N.D. Ill. 2006) ("There is no doubt that under Rules 702 and 704 an expert may testify about applicable professional standards and the [opposing party's] performance in light of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 16 -

1   those standards."); *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 529

2   (S.D.N.Y. 2001) ("[I]t is proper for an expert to testify as to the customs and

3   standards of an industry, and to opine as to how a party's conduct measured up

4   against such standards."), abrogated on other grounds by *Casey v Merck & Co., Inc.*,

5   653 F.3d 95 (2d Cir. 2011).

6       Accordingly, NIC's Motion should be denied because it will prejudice NTG.

7   ### C.   The Proposed Amendment Is Futile Because it Breaks Continuity

8   ###        and Pattern of NIC's RICO Allegations

9       NIC's proposed amendment does worse than ambush NTG with 60

10  paragraphs of new allegations after discovery has closed and dispositive motions

11  have been filed.  The gravamen of NIC's RICO case is that NTG, in connection with

12  lead plaintiffs, "routinely fabricated class-action litigation to extort money from

13  defendants nationwide."  (Dkt. 788 at 1).  Thus, NIC has sued NTG and associated

14  agents and has also "sued individuals who served as lead plaintiffs in these cases."

15  (*Id.*)  The problem is that NIC's alleged third "scheme" regarding Strataluz is

16  fundamentally different.  Strataluz was an attempted side business by Reid, Ferrell,

17  and other non-parties.  It has absolutely nothing to do with most of the Defendants

18  in this case, which drastically complicates this action.  A named non-NTG

19  Defendant such as Nilon, for example, cannot be held liable in RICO because his

20  lawyer started a short-lived health company as a side business.  Yet NIC has

21  included Strataluz allegations as foundational predicate acts against all Defendants.

22  *See generally* Dkt. 892-4.  More fundamentally, those allegations fail RICO's

23  pattern and continuity requirements.

24      Leave to amend "is properly denied ... if amendment would be futile."

25  *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011)

26  (*citing Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010)).  Further,

27  "[a] party cannot amend pleadings to 'directly contradict an earlier assertion made in

28  the same proceeding.' " *Air Aromatics, LLC v. Opinion Victoria's Secret Stores*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).  As the Ninth Circuit has held, "[f]utility alone can justify the denial of a motion to amend."  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citing *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir.2003)).  The test for futility is the same as the test for challenges under Fed. R. Civ. P. 12(b)(6).  *Baker v. Pac. Far E. Lines, Inc.*, 451 F. Supp. 84, 89 (N.D.Cal.1978); *see Saul v. United States***,** 928 F.2d 829, 843 (9th Cir.1991) ("A district court does not err in denying leave to amend...where the amended complaint would be subject to dismissal." (citation omitted)).  Here, Plaintiff's proposed amendments will not survive a challenge under Fed. R. Civ. P. 12(b)(6) because the newly-identified purported "predicate acts" do not satisfy the relationship and continuity prongs of a RICO analysis.

In *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229 (1989), the Supreme Court discussed the term "pattern of racketeering activity," and held that it requires a plaintiff to "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  *Id.* at 239 (emphasis in original).  The relationship requirement is satisfied by a showing that the racketeering predicates "have ***the same or similar purposes, results, participants, victims, or methods of commission***, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *Id.* at 240 (quotation omitted) (emphasis added).  To satisfy the continuity prong of the test, one need only show that the predicates pose a threat of continued criminal activity, such as when the illegal conduct is "a regular way of conducting [a] defendant's ongoing legitimate business."  *Id.* at 243; *Ticor Title Ins. Co. v. Florida.*, 937 F.2d 447, 450 (9th Cir. 1991).

The fact that Plaintiff's proposed amendment includes a drastically different RICO theory not only complicates this case, it breaks the "pattern" requirement of RICO.  As discussed above, the proposed amendment adds a new enterprise that has

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 18 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

virtually no relationship with the one Plaintiff alleged in its operative Complaint. The new enterprise is a supplement company, not a law firm. The hub and wheel enterprise that NIC alleged in its Second Amended Complaint is completely inapplicable. The participants are different. Only two of the current Defendants were allegedly involved, and the other owners / agents of Strataluz are not parties to this litigation. The results, purposes, and "victims" of the alleged enterprise are different. After all, these were one suit and demands against competitors, not consumer protection actions. The principal demand was for licensing of a patent, which is completely unrelated to the currently pending predicate cases. Indeed, the only commonality between the predicates alleged in the Second Amended Complaint and the proposed amendment is that both allege improper allegations by Reid and or Ferrell. Litigators making allegations is a job description, not a "pattern" for RICO purposes. Moreover, by NIC's own allegations, Strataluz's ProMaxal was an "isolated event." (Dkt. 892-4, ¶¶ 359-377.) It is the only side business that NIC alleges Ferrell or Reid created. (*See generally* Dkt. 892-4.) It had multiple products that it undisputedly marketed and sold. (Dkt. 718 at 10:6-15:7.) NIC's allegation is that towards the end of its existence, Strataluz filed *one* improper lawsuit over *one* product. (Dkt. 892-4, ¶¶ 359-377.) That one lawsuit was filed on June 3, 2015 (Dkt. 588-73), and was dismissed on September 28, 2015. *See Strataluz, LLC v. TruDerma*, LLC, No. 15-cv-1248-JM-RBB (S.D. Cal. June 3, 2015), Dkt. 12. Demand letters spanned only two months in 2015. (Dkts. 588-15, 588-16, 588-26, 588-27, 588-28.) Nor is there any chance of "continued" allegedly improper conduct.

Nor do Plaintiff's new Strataluz allegations meet the continuity requirements of RICO. In *H.J. Inc.,* the Supreme Court observed that the term "continuity" escapes strict definition: "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. "Closed-ended"

continuity is established by showing that related predicate acts occurred over a "substantial period of time." *Id.* at 242.  The Court thus noted that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement," and concluded that "Congress was concerned in RICO with long-term criminal conduct."  *Id.; Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995).  Under 9th Circuit authority, a series of related predicates must extend over at least 13 months to satisfy the "substantial period of time" requirement for a closed-ended predicate act.  *See Allwaste,* 65 F.3d at 1528 (thirteen months may demonstrate a "substantial period of time"); *see also* Dkt. 157 ("However, courts virtually always find that activity spanning less than one year does not satisfy the close-ended continuity requirement.") (citing *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992).)

Here, Plaintiff alleges that Strataluz sent improper demand letters and filed one improper Complaint over a timespan of about four months in 2015.  (Dkt. 588-73; 588-15, 588-16, 588-26, 588-27, 588-28; *Strataluz, LLC v. TruDerma, LLC*, No. 15-cv-1248-JM-RBB (S.D. Cal. June 3, 2015), Dkt. 12.)  Accordingly, Plaintiff cannot establish closed-ended continuity.  And there is no chance of open-ended continuity because, as this Court has found, "Strataluz formally dissolved under Nevada law in January 2016."  (Dkt. 820 at 24.)  There is no chance of anyone doing anything through Strataluz.  Consequently, because the proposed Strataluz allegations do not fit within the "pattern" alleged in Plaintiff's Second Amended Complaint, and do not satisfy continuity themselves, Plaintiff's proposed amendments are futile.

### D.    NIC's Housekeeping Amendments are Unnecessary

NTG's remaining amendments are unnecessary.  There is no need to formally change the name of NTG to PTA with a formal amendment.  There is no need to dispute that PTA is the same entity as NTG, and NTG has offered a broad stipulation on that point.  (Dkt. 892-6.)  NIC's other changes are unnecessary.  The

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  remaining allegations in the Second Amended Complaint have already been found

2  sufficiently pled.  Dkt. 157.  Indeed, NIC concedes these amendments "do not

3  impact the adequacy of NIC's allegations . . . ."  (Dkt. 892-1 at 16.)

4       To the extent slight variations are necessary (and they are not), they are more

5  appropriately addressed through an order and/or stipulation.  This is so because

6  filing an amended Complaint will trigger NTG's obligation to file a responsive

7  pleading based on its knowledge and information at the time of the response.  *See*

8  Fed. R. Civ. Proc. 12, 13, and 15.  If NTG is forced to file a response to a new,

9  amended Complaint, prudence and the compulsory counter-claim rule require that

10  NTG raise its counter-claims against NIC and those who have acted in concert with

11  it.

## IV.   **CONCLUSION**

13       For all of the foregoing reasons, NIC's Motion should be denied.

15  Dated:  February 24, 2020              **CALLAHAN & BLAINE, APLC**

17                                    By:   */s/ David J. Darnell*
                                         David J. Darnell
18                                       James M. Sabovich
                                         Attorneys for Defendants Newport Trial
19                                       Group and Scott J. Ferrell

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM