UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS]** Order Regarding Objection to the Special Master's Order Regarding Motion for Leave to Take Additional Discovery at Docket No. 876.

Before the Court is Plaintiff Natural-Immunogenics Corp. ("NIC")'s objections to the Special Master's order regarding NIC's Motion for Leave to Take Additional Discovery at ECF No. 876. Obj., ECF No. 881. The Newport Trial Group, Scott J. Ferrell ("Ferrell"), Ryan M. Ferrell, Victoria C. Knowles, David Reid, and Andrew Lee Baslow (collectively, "NTG" or "NTG Defendants") opposed the objections. Opp'n., ECF No. 888. NIC replied. Reply, ECF No.

For the following reasons, the Court **sustains in part and overrules in part** NIC's objections.

## I. BACKGROUND

The background of this case is well known to the parties and the Court. This Order recites background only as relevant to the parties' cross-objections.

### A. Overview

This case concerns litigation between NIC and NTG, its attorneys, and its clients. In brief, NIC alleges that NTG routinely fabricated class-action litigation to extort money from defendants nationwide. Complaint, ECF No. 92, ¶ 2. In addition to the NTG Defendants, NIC has sued Taylor Demulder ("Demulder"), Matthew Dronkers ("Dronkers"), Andrew Nilon ("Nilon"), Sam Pfleg ("Pfleg"), Giovanni Sandoval ("Sandoval"), and Sam Schoonover ("Schoonover") (collectively, the "Non-NTG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

Defendants"), who served as lead plaintiffs in these cases. Id. NIC's Second Amended Complaint ("SAC") alleges that the NTG Defendants perpetrated two litigation schemes: (1) the false-advertising scheme and (2) the unauthorized recording, or "wiretapping" scheme. See generally, id.

In the false advertising scheme, NTG and its investigator Andrew Baslow ("Baslow") would identify individuals to serve as lead plaintiffs in consumer fraud class actions against companies selling products in California. ECF No. 92, ¶¶ 23–24. NTG would then bribe these individuals to make intentional false representations that (1) they purchased the defendant's product in reliance on the representations made in defendant's product advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the advertisements. Id. at ¶ 29. Using these false allegations, NTG would threaten companies with statewide class actions under various California consumer protection statutes,[1] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id. at ¶ 27.

The wiretapping scheme functioned similarly. Under the wiretapping scheme, NTG and Baslow would identify individuals to serve as potential lead plaintiffs in consumer privacy class actions. Id. at ¶¶ 23–24. NTG would then bribe these individuals to stage private phone calls to various companies, and then later make intentionally false representations that: (1) they were not aware that the call was being recorded; (2) they did not consent to the recording; and (3) they later learned that the company recorded all incoming calls only after completing the call. Id. at ¶ 34. Using these false allegations, NTG would threaten companies with statewide class actions under the California

---

[1] NIC's SAC identifies four lawsuits filed in connection with the false advertising scheme: (1) Nilon v. Natural-Immunogenics Corp., Case No. 3:12-cv-00930-LAB-BGS (C.D. Cal. 2012) ("Nilon"); (2) Pfleg v. Nature's Way Prods., Inc., Case No. 37-2012-0051979-CU-MT-NC (San Diego Cty. Sup. Ct. 2012) ("Nature's Way"); (3) Dronkers v. Kiss My Face, LLC, Case No. 3:12-01151-JAH (S.D. Cal. 2012) ("Kiss My Face"); and (4) Morales v. Magna, Inc., Case No. 3:10-cv-01601-EDL (N.D. Cal. 2010) ("Magna"). Compl., ¶¶ 49–147, 175–221, 265–81. Nilon, Pfleg, and Dronkers served as the lead plaintiffs in Nilon, Nature's Way, and Kiss My Face, respectively. (Id.) Sandoval later substituted in as lead plaintiff in Nilon. Id. at ¶¶ 105–13. Non-party Dan Bobba ("Bobba") served as a lead plaintiff in Magna. Id. at ¶ 266.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 15-2034 JVS (JCGx)      Date    3/5/20

Title      Natural-Immunogenics Corp. v. Newport Trial Group, et al

Invasion of Privacy Act, Cal. Pen. Code §§ 632 et seq., ("CIPA")[2] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id.

### B. Relevant Procedural History

The parties have been engaged in a long dispute concerning privilege issues given the nature of NTG's business as a law firm and the underlying facts detailed above. The Court has issued a series of orders concerning privilege. See Orders, at ECF No. 299, 659, 753, 785, 820, 878 (the "Privilege Orders").

On June 12, 2018, the Court held that the Defendants had impliedly waived privilege by asserting the "tester" defense. ECF No. 659 at 20. The Court held that "NIC is entitled to discovery into NIC's [sic] use of tester plaintiffs and any instructions given to tester plaintiffs by the NTG Defendants or its agents." Id. On October 11, 2018, at Defendants' request, the Court issued an Order Clarifying the Scope of Implied Waiver and directed the Special Master to perform an in camera review so that the files appropriately subject to the implied waiver would be identified and produced. ECF No. 753. The Court clarified its prior order and explained that three categories of documents fell within the scope of the implied waiver:

> 1. All communications between the NTG Defendants and its tester plaintiffs regarding the NTG Defendants' tester activity in Chromadex, Himalaya Drug, and Carter-Reed, including but not limited to instructions to testers and information relevant to testers' reasons for making calls giving rise to CIPA injuries, regardless of when the communications occurred;

---

[2] NIC's SAC identifies four lawsuits filed in connection with the wiretapping scheme: (1) Nilon v. Chromadex, Inc., Case No. 56-2013-00436790-CU-MT-VTA (Ventura Cty. Sup. Ct. 2013) ("Chromadex"); (2) Demulder v. Carter-Reed Co., LLC, Case No. 3:12-cv-0333-BTM (S.D. Cal. 2012) ("Carter-Reed"); (3) Schoonover v. Himalaya Drug Co., Case No. 12-cv-1782 (S.D. Cal. 2012) ("Himalaya Drug"); and (4) Torres v. Nutrisystem, Case No. 8:12-cv-01854-CJC-JPR (C.D. Cal. 2012) ("Nutrisystem"). Compl., ¶¶ 148–74, 222–64, 282–317. Nilon, Demulder, and Schoonover served as the lead plaintiffs in Chromadex, Carter-Reed, and Himalaya Drug, respectively. Id. Non-party Raquel Torres ("Torres") served as a lead plaintiff in Nutrisystem. Id. at ¶¶ 289, 295.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

    2.    All internal communications between the NTG Defendants or the NTG Defendants and their agents regarding the NTG Defendants' tester activity in Chromadex, Himalaya Drug, and Carter-Reed, including but not limited to instructions to testers and information relevant to testers' reasons for making calls giving rise to CIPA injuries, regardless of when the communications occurred; and

    3.    Any communications or documents containing the word "tester" in Chromadex, Himalaya Drug, and Carter-Reed.

Id. at 7–8.

    On October 26, 2018, Defendants lodged 25 documents with the Special Master that they claimed encompassed all files within the Court's identified categories. See ECF No. 755 (NTG Notice of Lodging); ECF No. 756 (Non-NTG Notice of Lodging). NIC responded and requested that the Special Master review 289 files concerning the "tester" cases at issue, which were drawn from Defendants' privilege logs pertaining to the applicable CIPA cases. See ECF No. 757. After a telephonic hearing, the Special Master agreed with NIC and ordered the Defendants to produce for in camera review all 289 documents identified by NIC. ECF No. 761. On November 15, 2018, the Defendants lodged those 289 documents requested by the Special Master. ECF Nos. 765, 766.

    The Special Master issued a preliminary order requesting that Defendants lodge proposed redactions to documents that potentially fell within the waiver. ECF No. 764. The Defendants submitted proposed redactions. ECF Nos. 765, 766. Following in camera review, the Special Master issued a Tentative Order finding that 88 (not 25) of the documents fell within the implied waiver. Following oral argument, the Special Master issued a final order finding that implied waiver applied to 88 documents. The Order permitted some of the proposed redactions while denying others. ECF No. 770 (Corrected Order). This court reviewed cross-objections to the Special Master's Order, and overruled the cross objections on November 26, 2019. ECF No. 878.

    Throughout these disputes, the parties have engaged in discovery, with discovery cut-off initially set at August 21, 2017, later extended through December 31, 2017. ECF Nos. 91, 447, 500. Among the depositions that were taken, the deposition of Nilon took

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

place on June 7, 2017. ECF No. 518 at 4. On May 12, 2017, the deposition of Demulder took place. Id. The deposition of Pleg took place on May 24, 2017. Id. The recalled deposition of Schoonover took place on June 2, 2017. Id. at 3-4.

On October 14, 2019, the parties filed a joint stipulation regarding NIC's motion for leave to take discovery following resolution of privilege issues. ECF No. 854. NIC submitted a supplemental memorandum on October 28, 2019. ECF No. 860. After oral argument, the Special Master (1) denied NIC's request to recall for deposition Nilon, Schoonover , Pfleg and Demulder; (2) granted the request to recall for deposition Baslow; (3) denied permission to conduct the depositions of non-parties Bobba, Wynn Ferrell ("W. Ferrell"), and Kirtland & Packard LLP ("K&P"); (4) denied the request to serve a document subpoena on K&P; and (5) denied NIC's request to seek Step Two in camera review of additional documents. ECF No. 876. NIC's objections to the Special Master's order, is currently before the Court.

Trial is currently set for November 3, 2020. ECF No. 883.

## II. LEGAL STANDARD

The Court reviews all objections to the Special Master's findings of fact or conclusions of law de novo. Fed. R. Civ. P. 53(f).

### A. Federal Rule of Civil Procedure 16

"A district court has wide latitude in controlling discovery." Lane v. Dep't of Interior, 523 F.3d 1128, 1134 (9th Cir. 2008) (internal quotation marks and citation omitted). Pursuant to Federal Rule of Civil Procedure 16(b), a district court must issue a scheduling order that limits the time to, among other things, complete discovery. Fed. R. Civ. P. 16(b)(1), (3). A party must show "good cause" for relief from a scheduling order. Fed. R. Civ. P. 16(b)(4); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir. 1992). The good cause standard "primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. The court may grant relief from a scheduling deadline if the deadline could not "reasonably be met despite the diligence of the party seeking the extension." Id. While a court may consider prejudice to the opposing party, "the focus of the inquiry is upon the moving party's reasons for seeking modification." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

In evaluating whether good cause exists to grant leave to take discovery, the Court considers "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." City of Pomona v. SQM N. Am. Corp., 866 F.3d 1060, 1066 (9th Cir. 2017). However, "[i]f the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).

### B. Federal Rule of Civil Procedure 26

To recall a deposition witness, a party must seek leave from the court and discovery must be consistent with Rule 26(b)(1) and (2). Fed.R.Civ.P. 30(a)(2)(A). Rule 26(b)(1) provides that parties may obtain non-privileged discovery that is: "relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Rule 26(b)(2) limits discovery where "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, and less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Information is discoverable when it is both relevant to a party's claim and defense and proportional to the needs of the case. Advis. Comm. Notes to the 2015 Amendment to Rule 26.

### III. DISCUSSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

NIC argues that good cause exists to grant it leave to conduct the discovery it seeks because the Court ruled that NTG's "tester defense" impliedly waived privilege under the fairness doctrine which resulted in a series of new documents produced by NTG. See Obj., 7-9. "Good cause for reopening discovery may exist where evidence was unavailable or a key witness was not revealed prior to the close of discovery." Lehtonen, Tr. of PurchasePro.com, Inc. Liquidating Tr. v. Gateway Companies, Inc., 2007 WL 9733695, at *3 (D. Nev. May 7, 2007) (citing to United States v. $100,348.00 U.S. Currency, 157 F. Supp. 2d 1110, 1119 (C.D. Cal. 2001)). "Absent a showing of 'good need,' such as 'long passage of time with new evidence or new theories added to the complaint,' a court generally will not order a re-opening." Bookhamer v. Sunbeam Prod. Inc., 2012 WL 5188302, at *2 (N.D. Cal. Oct. 19, 2012) (internal citations omitted).

The Court agrees that discovery flowing from the Court's privilege rulings and the resulting productions present good cause to reopen limited discovery (as narrowed and discussed below). Trial is currently not set until November, and the Court does not believe the limited discovery granted below would require the need for additional discovery. The discovery granted is derived from recently produced documents, and relates to a central defense that NIC could not adequately probe prior to the Privilege Orders and is therefore likely to lead to relevant evidence. Although opposed by NTG, the discovery will not significantly prejudice it because it has been limited in scope. Furthermore, the Court has limited the request by granting only relief stemming from the Court's Privilege Orders which NIC was diligent in requesting. See ECF No. 447 (Court's order discussing NIC's diligence in advancing privilege issues.).

A discussion pertaining to each request follows.

### A. Request to Reopen Depositions

NIC objects to the Special Master having (1) denied NIC's request to recall for deposition Nilon, Demulder, Schoonover (collectively, the "Tester Plaintiffs"), and Pfleg; and (2) permitting only an "unreasonably narrow" recalled deposition of Baslow. Obj., 10. Instead, NIC requests that the Court permit the recalled depositions of each of the parties not to last more than four hours each. Id. The Court examines each of these requests separately.

#### 1. The Baslow Deposition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

The Special Master granted NIC's request to reopen Baslow's deposition because it legitimately flowed from this Court's order since the Court found that Baslow's counsel erroneously objected to all questions regarding "testers or NTG's use of tester plaintiffs on the basis of the attorney-client privilege or work product doctrine." SM Order, 18. However, the request was "limited to the questions Baslow improperly refused to answer at his initial deposition on privilege, work product or tester defense grounds, questions logically stemming from his answers to those questions, and questions relating to documents NIC now possesses pursuant to the Court's Orders." Id. The Special Master also permitted NIC to recall Baslow for four additional hours of testimonial time even though Baslow had already been deposed for four hours and eleven minutes. Id. at 19. NIC argues that the subject matter limitation is unduly restrictive.

NIC argues that Baslow's testimony is critical because (1) documents produced under the crime-fraud exception include communications between Baslow and Non-NTG Defendants, and his supervisors; and (2) Baslow "was the only contact between NTG" and the Tester Plaintiffs. Obj., 11. Baslow's testimony regarding these documents flows directly from the Court's Privilege Orders because they are derived from documents produced as a result of such orders. These communications would have been impossible for NIC to have secured earlier. Furthermore, this Court has already found that Baslow and his counsel erroneously "objected to nearly every question asked about testers or NTG's use of tester plaintiffs on the basis of the attorney-client privilege or work product doctrine." ECF No., 753, 2; 659, 20.

However, the limitations imposed by the Special Master allow for questions related to the newly produced documents, but would narrow questioning on the tester defense to those questions that were initially asked, or those that logically follow the responses to those questions. The Court finds the limitations unduly restrictive, **sustains in part** NIC's objections and **grants** leave to recall the deposition of Baslow for no more than four hours on (1) the tester defense generally; (2) questions Baslow improperly refused to answer at his initial deposition on privilege, work product or tester defense grounds, and (3) questions relating to documents NIC now possesses pursuant to the Court's Order. Such limitations will provide for discovery that is proportional to the needs of the case in light of the newly available "deposable subjects" and documents.

    2.    <u>The Tester Plaintiffs</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

The Special Master denied NIC's request to recall for deposition the Tester Plaintiffs because NIC had not identified "any question that the witnesses either answered evasively or refused to answer at their depositions." Id. The Special Master gave little weight to NIC's counsel's "self-serving statement that NIC 'elected' not to examine these defendants on certain topics because NIC was awaiting the Court's ruling on privilege" given that at the depositions counsel stated they had no further questions and did not reserve the right to recall the witnesses, or address reserve topics. Id. The Special Master also noted that NIC's failure to provide the nature of the questions it proposes to ask the witnesses demonstrates that their depositions would be expansive and not proportional to the needs of the case. Id. at 20. The Special Master concluded that NIC would have the opportunity to obtain pertinent information related to the tester defense from Baslow who would have "more wide-ranging knowledge" regarding the tester defense. Id. at 21.

NIC has alleged that deposition testimony of the Tester Plaintiffs arising from the 88 documents "is crucial because the tester defense hinges on the knowledge of [T]ester [P]laintiffs and the information conveyed to them by other Defendants." Obj., 15. The Court agrees. While NIC could obtain information related to the tester defense by recalling only Baslow, questioning the Tester Plaintiffs regarding communications between them and Baslow, would certainly be relevant to the tester defense and NIC's prosecution of its case. Furthermore, recalling only Baslow would provide an incomplete picture concerning the Tester Plaintiff's knowledge. Additionally, NIC diligently sought its crime fraud motion prior to the end of discovery cut off. It would now prejudice NIC not to have the opportunity prior to trial to question the Tester Plaintiff concerning documents that it did not have and a subject it could not probe, until the privilege issues were resolved. Unlike in Goins v. Cty. of Merced, 2015 WL 9304749, at *3 (E.D. Cal. Dec. 22, 2015), the Court is not required to speculate about what NIC hopes to gain from recalling the Tester Plaintiff's depositions. It is clear that what NIC seeks is information pertaining to the Tester Plaintiffs' knowledge and the tester defense related to newly produced 88 documents.

The Court acknowledges but finds less compelling NIC's arguments that a significant passage of time since the depositions were taken approximately two and a half years ago warrants good cause. Although two and a half years is a lengthy period, in the context of a complex federal litigation matter, this is not so significant a length of time. However, NTG's arguments that new documents in and of themselves do not justify reopening depositions because it is "always true when a party takes a deposition before

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 15-2034 JVS (JCGx)                             Date   3/5/20

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al

all discovery is complete" that there are additional documents, is unconvincing. See Opp'n., 10. While that may be so in a different factual situation, NIC could not have been expected to defer taking any depositions until all of the privilege issues were resolved in light of the previously set discovery cut-offs. NIC also could not have been expected to probe issues that were covered by privilege or to ask questions about documents it did not have access to.

There is therefore, good cause to recall the Tester Plaintiffs. The Court **sustains in part** NIC's objections and **grants** leave to recall their depositions for no more than four hours each on (1) the tester defense generally; (2) questions improperly refused at the initial depositions on privilege, work product or tester defense grounds, and (3) questions relating to documents NIC now possesses pursuant to the Court's prior order. Such limitations will provide for discovery that is proportional to the needs of the case in light of the newly available "deposable subjects" and documents.

       3.      The Pfleg Deposition

As for the recalling the deposition of Pfleg, the Special Master denied the request because NIC had provided no rational for recalling Pfleg, "who was not one of NTG's alleged testers and cannot testify regarding the tester defense." ECF No., 876, 21. The only rationale NIC had provided for recalling Pfleg was that "NIC received documents subject to the crime-fraud exception directly relating to the SAC cases involving Andrew Nilon, Sam Schoonover, Sam Pfleg, and Taylor Demulder" and that Pfleg's deposition took place on May 24, 2017. Joint Stip., 13. NIC made no attempt to explain what specifically regarding Pfleg was new or critical to its case. In its objection NIC continues to provide no rationale for recalling Defendant Pfleg. Thus the Court is left to speculate as to what NIC seeks from Pfleg that is proportional to the needs of this case given that Pfleg has already been deposed.

Accordingly, the Court **overrules** NIC's objections as to the Special Master's ruling on recalling Pfleg.

    **B.**    **Request to Depose Three Non-Party Witnesses Who Were Not Previously Deposed**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

NIC also requests leave to depose three non-party witnesses – W. Ferrell, Bobba, and K&P – on the grounds that they were not deposed earlier "because NIC possessed a very limited documentary record regarding their relevance to the case, and the Court had imposed limits on the number of non-party depositions." Reply, 16. NIC contends that new documentation "plainly reveals the witnesses' testimony concerning those documents of high probative value." Id. However, it is undisputed that "NIC disclosed all three third-party witnesses in its Amended Initial Disclosures." ECF No. 876, 22.

      1.      <u>Bobba</u>

The Special Master denied NIC's request for leave to depose Bobba because although NIC had known about Bobba as evidenced by NIC's initial disclosures, it failed act diligently in deposing Bobba. Obj., 22. The Court agrees with the Special Master's assertions that NIC "has not shown that it took reasonable steps to locate Bobba prior to the fact discovery cut-off date." ECF No. 876, 22-23. The declaration referenced by NIC in support for its position states only that "NIC did not know Mr. Bobba's whereabouts early in this case. NIC learned of a possible location for Mr. Bobba in April of 2018. NIC has since confirmed his location through a retained private investigator." Joshua Furman Decl., ECF No. 854-3, ¶ 12. It does not, however, establish that NIC took reasonable steps to locate him prior to discovery cut-off.

However, NIC also argues that it is irrelevant that it did not depose Bobba earlier because the basis for discovery now is highly probative given that it was "only permitted to take seven non-party depositions" pursuant to the initial scheduling order, and at the time it had no meaningful documents that warranted taking Bobba's deposition. Obj., 13-14. Resulting directly from this Court's Privilege Orders, NIC came into possession of NTG011063, a receipt for the product underlying Bobba's claims in the <u>Magna</u> case, which was purchased after the date Bobba claimed he purchased it in his declaration, which appears to have been drafted by Ferrell. <u>See</u> NTG011604, NTG011593 and NTG011988. NTG's argument that "NIC was making the same argument based on the same receipt in 2017" is disingenuous, because at that time NIC was making its argument that it should be entitled to see the receipt under the crime-fraud exception, but it still had not seen the receipt or the date of purchase, which is what makes Bobba's testimony highly probative. <u>See</u> Opp'n., 15 <u>cf.</u> EC No., 291-1, 70. Thus, Bobba's deposition testimony legitimately flows from the Court's Privilege Orders and this new evidence provides good cause to depose Bobba.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

Having found good cause to grant leave to depose Bobba, the Court **sustains in part** NIC's objections and **grants** leave to depose Bobba for no more than four hours on questions and subjects relating to documents NIC now possesses pursuant to the Court's Privilege Orders. Such limitations will provide for discovery that is proportional to the needs of the case in light of the newly available "deposable subjects" and documents.

      2.    <u>W. Ferrell</u>

The Special Master denied NIC's request for leave to depose W. Ferrell because NIC was aware of W. Ferrell being a potential witness as evidence in its disclosures and was aware that W. Ferrell was Ferrell's father. ECF No. 876, 23. The Special Master also found that NIC had not established that W. Ferrell's deposition flowed from the Court's Privilege Orders. <u>Id.</u> at 24.

NIC argues that prior to the production stemming from the Court's Privilege Orders, NTG had not produced any documents involving W. Ferrell. Obj, 14.; Furman Decl., ECF No., 854-3, ¶ 9. NTG argues that NIC has known about W. Ferrell since the beginning of the litigation, discussed him in its crime-fraud motion, and it has never said that it planned to take his deposition after the Omnibus ruling. Opp'n., 14-15. As a result of the documents produced, NIC learned that W. Ferrell was involved in client interaction and recruitment in <u>Nilon</u>, <u>Himalaya</u> <u>Drug</u>, <u>Magna</u>, <u>Carter-Reed</u>, and <u>Nutrisystem</u>. Obj., 14 (citing to NTG007983, NTG017138, NTG022175, NTG022177, NTG015268, NTG000132, NTG006703); <u>see also</u> Reply, 19 (citing to NTG0006708-09, NTG022173) . NIC acknowledges that prior to these documents they knew of W. Ferrell's involvement in two cases, but did not know about his involvement in the additional cases or the extent of his involvement (including that he was involved in recruiting clients to sue NIC). Obj., 15-16; Reply, 19-20. The Court finds that NIC has established good cause for leave to depose W. Ferrell given that it was unaware of the extent of his involvement prior to documents that flowed from the Privilege Orders. <u>See</u> NTG017138. Given that NIC's crime fraud motion also addressed documents that pertained to W. Ferrell and prior to production from the Privilege Orders, NIC had no documents pertaining to W. Ferrell, it was reasonable for NIC to wait to take his deposition until after the Court resolved the outstanding privilege issues which resulted in a series of new probative documents. Furthermore, there is evidence that W. Ferrell communicated by phone with Ferrell and others at NTG which makes it likely that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

record will not be complete with only documentary evidence. See NTG022177. For the foregoing reasons, good cause exists to grant leave to depose W. Ferrell.

Accordingly, the Court **sustains in part** NIC's objections and **grants** leave to depose W. Ferrell for no more than four hours on questions and subjects relating to documents NIC now possesses pursuant to the Court's Privilege Orders. Such limitations will provide for discovery that is proportional to the needs of the case in light of the newly available "deposable subjects" and documents.

        3.     K&P's 30(b)(6) Designee

NIC seeks leave to depose a 30(b)(6) designee from K&P because K&P was co-counsel with NTG on Carter-Reed and Kiss My Face. Obj., 16-17. Prior to the Privilege Orders, NIC did not possess any communications involving K&P. NIC argues that the "communications revealed a lack of factual information conveyed by NTG" to K&P. Id. NIC also acknowledges that it "obviously knew that K&P was counsel in the Carter-Reed matter before the privilege orders," but argues that it had no documents, crime-fraud findings, and no implied waiver findings and therefore, did not have the "evidentiary predicate for a meaningful deposition." Obj., 16-17.

The Special Master properly noted that "[w]hether NTG informed K&P of its 'scheme' has never been an issue in this case – let alone a significant issue." ECF No. 876, 25. While NIC argues that it is relevant to NTG's "state of mind," NIC will have the opportunity to question NTG's principals directly regarding their referrals to K&P and NTG's state of mind. Furthermore, the deposition of K&P's 30(b)(6) designee is not proportional to the needs of this case and its benefit does not outweigh the burdens it presents given that (1) it is likely to create additional disputes regarding privilege that have not already been addressed given that K&P is not a party to this lawsuit; and (2) will prejudice NTG since expert discovery has now closed.

Accordingly, the Court **overrules** NIC's objections as to the deposition of K&P's designee.

        **D.**     **Step Two Crime-Fraud Motion**

NIC seeks leave to submit a limited supplemental crime-fraud motion under Step

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 15-2034 JVS (JCGx) Date 3/5/20

Title Natural-Immunogenics Corp. v. Newport Trial Group, et al

Two of the crime-fraud exception for sixteen pages of text messages (SCHOONOVER00066-81). Obj., 12-13. The text messages pertain to the recruitment of Schoonover into the alleged NTF scheme, the "level of culpability that NTG has regarding its manufacture of CLRA cases[,] NTG's promise of payment for participation in the scheme[,]" and Schoonover's knowledge of the scope of the conspiracy. Mot., 12-13. NIC contends that it did not receive privilege logs identifying those messages until after it had filed the original crime-fraud motion and did not know the significance of those messages until other text messages it received resulting from the Privilege Orders. Id.

The privilege log identified these documents as one of the following: (1) "[c]ommunication seeking legal advice re Vogue International"; (2) "[c]ommunication seeking legal advice re Vogue International prospective litigation"; (3) "[c]ommunication regarding referral; (4) "[c]ommunication seeking legal advice re Vogue International Settlement"; (5) "[c]ommunications regarding potential claims and legal documents; (6) "[c]ommunications regarding legal documents"; (7) seeking legal advice re Vogue International"; and (8) "[c]ommunication regarding Vogue Settlement Agreement." ECF No., 854-2.

The Special Master denied NIC's request finding that "[t]en of the sixteen messages listed on Defendant Schoonover's privilege log are communications that exclusively relate to Schoonover's Vogue litigation", while the remaining six either refer to Vogue in part or are not related to Vogue. ECF No. 876, 28. This Court has already denied NIC's request to discover documents pertaining to Vogue because it is not one of the cases underlying the pending litigation. See Order, 6-7, ECF No. 414 ("[F]urther discovery is not proportional to the needs of the case. First, NIC has not sufficiently connected these new matters to its existing RICO allegations. . . . NIC has unduly delayed seeking discovery into his case against Vogue International"). This is the law of the case and remains applicable to discovery pertaining to Vogue International. See United Steel Workers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc., 512 F.3d 555, 564 (9th Cir. 2008).

NIC argues that it did not receive the privilege logs identifying the relevant text messages until after it had filed the original crime-fraud motion. Reply, 13. NIC argues that even if it had the privilege log, it did not know the importance of the documents at the time because of the way in which they were labeled on the privilege log and "because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

NIC lacked critical communications referring to those earlier messages and providing context for their meaning." Id. NIC points to a series of text messages that were exchanged between Baslow and Schoonover where the parties spoke more candidly than their email communications. See SCHOONOVER00082-92. The text messages suggest that Baslow instructed Schoonover on what his email communications should say, and provided him with directions on how to become a plaintiff in a lawsuit. Id.

At oral argument NIC also argued that it did not know if the designations on the privilege log were correct because the Schoonover text messages immediately following the ones they now seek were not about the "status of the case," despite being designated as such on the privilege log. See ECF No. 473-11. NIC also reiterated that the text messages they seek are critical and unique evidence both because the parties spoke more candidly in the text messages and because they are the only text messages preserved in the case.

The Court finds the request proportional to the needs of this case given: (1) the suggestive nature of the text messages between Schoonover and Baslow that immediately follow the text messages at issue here; (2) that the text messages immediately following the text messages at issue here were vaguely labeled in the privilege log and were ultimately found to have fallen under the crime-fraud exception; and (3) the fact that the burden on this Court would be minimal should the special master grant a step-two crime fraud motion since NIC only seeks in camera review of 16 pages of text messages.

Accordingly, the Court **sustains** NIC's objections as to its request to file an additional step-two crime fraud motion.

E.   **Discovery Granted is Proportional to the Amount in Controversy and Importance of the Issues**

The Court has carefully considered the parties' arguments as to whether the discovery requested by NIC is proportional to the needs of the case, the amount in controversy at issue, and the importance of the issues. The Court finds the requests granted proportional because they arose from the Court's Privilege Orders, and are relevant and probative. However, the upcoming trial, the fact that expert discovery is now closed, and the trajectory of this case weigh against granting leave. In balancing these competing factors, the Court finds that discovery must be limited in order to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 3/5/20 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

proportional. It has carefully limited the discovery granted here accordingly.

### IV. CONCLUSION

For the foregoing reasons, the Court **sustains in part and overrules in part** NIC's objections and:

1. **Grants** leave to recall the deposition of Baslow for no more than four hours on (1) the tester defense generally in addition to questions Baslow improperly refused to answer at his initial deposition on privilege, work product or tester defense grounds, and (2) questions relating to documents NIC now possesses pursuant to the Court's Order.

2. **Grants** leave to recall the depositions of the Tester Plaintiffs for no more than four hours each on (1) the tester defense generally; (2) questions improperly refused at the initial depositions on privilege, work product or tester defense grounds, and (3) questions relating to documents NIC now possesses pursuant to the Court's prior order.

3. **Denies** leave to recall the deposition of Pfleg.

4. **Grants** leave to depose Bobba for no more than four hours on questions and subjects relating to documents NIC now possesses pursuant to the Court's Privilege Orders.

5. **Grants** leave to depose W. Ferrell for no more than four hours on questions and subjects relating to documents NIC now possesses pursuant to the Court's Privilege Orders.

6. **Denies** leave to depose Kirtland & Packard's 30(b)(6) Designee.

7. **Grants** Leave to Supplement the Step Two Crime-Fraud Motion.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 15-2034 JVS (JCGx)                                    Date  3/5/20

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

                                                                              :      0
                                             Initials of Preparer    lmb