1
2
3
4
5

Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Drive, Bldg 6, Ste 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

6
7
8
9

## IN THE UNITED STATES DISTRICT COURT

10

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

11
12
13

NATURAL-IMMUNOGENICS, a
Florida corporation,

14
15

                    Plaintiff,

        v.

16

NEWPORT TRIAL GROUP, et al.,

17
18

                    Defendants.

Case No.: 2:19-mc-00011-JVS (MAA)
JAMS Ref No.: 1220055347

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS OR STRIKE NIC'S THIRD
AMENDED COMPLAINT [Dkt. 913]**

Hearing Date:    May 18, 2020
Hearing Time:    1:30 PM
Courtroom:       10C
Judge:           Hon. James V. Selna

19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................1

II.    FACTS AND PROCEDURAL HISTORY ..............................................3

III.   LEGAL STANDARD ...........................................................................5

IV.    ARGUMENT........................................................................................6

    A.   This Court Correctly Rejected NTG's Arguments Concerning "Continuity" and "Relatedness" .............................................7

       1.   The New Predicate Acts Are Related to the Racketeering Enterprise .................................................................7

       2.   The New Allegations Establish and Support the Elements of "Continuity" and "Pattern" ...............................11

    B.   NIC's Allegations Satisfy Rule 9(b).......................................13

    C.   The Lanham Act Predicate Acts Are Legally Operative and Part of the RICO Enterprise...............................................15

    D.   Leave to Amend Should be Granted ......................................17

    E.   Defendants' Rule 12(f) Arguments Are Meritless ................17

V.     CONCLUSION ...................................................................................18

# **TABLE OF AUTHORITIES**

**Cases**

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988) .............. 6, 14

*Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995) ...............................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................5, 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................5

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
    235 F. Supp. 3d 1132 (E.D. Cal. 2017) .................................................15

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) .......................................5

*Faraj v. 6th & Island Investments LLC*, No. 16-CV-00181, 2016 WL
    5338073 (S.D. Cal. Sept. 23, 2016).........................................................6

*Feinstein v. Resolution Trust Corp.*, 942 F.2d 34 (1st Cir. 1991) .............................8

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ..................................... 8, 11, 12

*Hill v. Opus Corp.*, 841 F. Supp. 2d 1070 (C.D. Cal. 2011) ........................6

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) (en banc) ..................6

*K.H. by & through Humphrey v. Antioch Unified Sch. Dist.*, No. C 18-
    07716 WHA, 2019 WL 3842068 (N.D. Cal. Aug. 15, 2019) ..............6

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ................................ 6, 14

*MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147 (S.D. Cal.
    2016).........................................................................................................5

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 (9th Cir. 1988), *overruled
    on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..............6

*Neder v. United States*, 527 U.S. 1 (1999)...............................................14

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007)............................. 6, 15, 17

*Richmond v. Mission Bank*, No. 1:14-CV-00184 JLT, 2014 WL
    6685989 (E.D. Cal. Nov. 26, 2014)..........................................................6

*Sanford v. MemberWorks*, Inc., 625 F.3d 550 (9th Cir. 2010).....................6

*United States v. DiNome*, 954 F.2d 839 (2d Cir. 1992)..............................................9

*United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004), *modified,*
  425 F.3d 1248 (9th Cir. 2005) ..................................................... 9, 10, 15

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)............................15

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................ passim

Fed. R. Civ. P. 12(f) ........................................................................ 3, 17, 18

Fed. R. Civ. P. 8 .............................................................................. 1, 15

Fed. R. Civ. P. 8(a)..............................................................................5

Fed. R. Civ. P. 9(b) ........................................................................ passim

1

## I.  __INTRODUCTION__

2

3      Plaintiff Natural Immunogenics Corp. ("NIC") hereby opposes Defendants

4  Newport Trial Group and Scott J. Ferrell's (collectively "NTG") Motion to

5  Dismiss NIC's TAC or, in the alternative, Motion to Strike.  *See* Dkt. 913 (the

6  "Motion").  NTG's Motion re-raises arguments previously rejected by this Court

7  under the same legal standard.  *See* Dkt. 910 at 9-10 (rejecting NTG's identical

8  arguments raised against the Third Amended Complaint ("TAC") under the

9  identical standard); *see also* Dkt. 157 (finding NIC's RICO allegations sufficient).

10  Defendants also raise frivolous argument under Rule 9(b), which is unsupported

11  because the TAC provides sufficient particularity.  NIC's new allegations in the

12  TAC follow the same mold as NIC's prior RICO allegations that were upheld by

13  the Court on the pleadings.  *See* Dkt. 157.  The TAC states a claim under Rules 8
   and 9(b).

14      NIC alleges that Defendants operated a racketeering enterprise beginning in

15  or about 2010.  The TAC alleges that the RICO enterprise operated through, at

16  least, three known schemes: (1) the false advertising scheme; (2) the wiretapping

17  scheme; and (3) the Lanham Act scheme.  Dkt. 911 at ¶ 25.  At the center of that

18  enterprise was Defendant NTG, its owner Scott Ferrell, and its attorneys and

19  employees.  *Id*. at ¶ 438.  The enterprise profited from the various schemes by

20  threatening baseless legal claims against targeted corporations on behalf of sham

21  clients.  *Id*. at ¶ 25-45 (describing the three schemes).  In the wiretapping and false

22  advertising schemes, NTG's "clients" were consumers that staged injuries for

23  pecuniary gain (like Defendant Nilon).  *Id*.  In the Lanham Act scheme, NTG's

24  "client" was an NTG attorney-owned company,[1] Strataluz, which NTG used to

25  threaten and pursue baseless litigation to extort settlement payments, falsely

26  representing Strataluz to be a legitimate "competitor" and thus a proper client in

27  litigation.  *Id*.  NTG used Strataluz to seek lucrative settlement payments for the

28  _____

     [1] NTG attorneys concealed their interest in the entity.  Dkt. 911 at ¶ 360.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STRIKE TAC

1

NTG firm based on products that did not exist.  *Id*. at ¶¶ 359-377.  The enterprise's structure is described as a "hub-and-spoke," where NTG and its attorneys are the "hub" and its clients on whose behalf the attorneys claim to have valid legal claims are the "spokes."  *Id*. at ¶ 438.

This Court earlier ruled that "[t]he predicate acts, including the Strataluz ones, are related and part of the larger scheme alleged in the complaint—that NTG engaged in sham litigation to extort out of court settlements."  *See* Dkt. 910 at 10.  The new allegations further support elements of continuity and pattern in the RICO scheme that this Court already deemed sufficiently pled.  *See* Dkt. 157; *see also* Dkt. 910 at 10 ("These new allegations do not break up the continuity and the pattern of NIC's allegations, to the contrary 'proof that a RICO defendant has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into the continuity of the defendant's racketeering activity.'").  "These [new] allegations and predicate acts are relevant and add to the entire RICO enterprise continuity because they show another example of how Defendants created and profited off of sham litigation over time."  Dkt. 910 at 10.

NIC's allegations concerning the Lanham Act scheme and related predicate acts provide all necessary detail that Rule 9(b) requires.  NIC alleges who made the misrepresentations, when those representations were made, who they were made to, the content of those misrepresentations, and why they were false.  Dkt. 911 at ¶¶ 362-73.  This Court has already evaluated the sufficiency of similarly pled allegations in the Second Amended Complaint and found them sufficient.  *See* Dkt. 157 at 12-14.  Thus, Defendants' argument that the TAC fails Rule 9(b) is without merit.

Because NIC's new allegations fit within the RICO pattern described in the SAC, further demonstrate continuity, are related to the body of predicate acts, and fit within the alleged racketeering enterprise, the Court must deny Defendants' Motion.

Finally, to the extent the Defendants request that portions of the TAC be struck under Rule 12(f), none of those arguments has merit.  Thus, the Court should deny that portion of NTG's Motion as well.

## II.   FACTS AND PROCEDURAL HISTORY

NIC filed a motion for leave to file a Third Amended Complaint within the time required by this Court's scheduling order.  Dkt. 910 at 5; Dkt. 883 at 1-2. Consistent with the Local Rules, NIC attached a copy of the proposed TAC, including a version with redlined changes showing how that document differed from the Second Amended Complaint.  Dkt. 892-4 (Redlined TAC).

The proposed TAC added predicate acts arising from the eight "SAC Cases," and added predicate acts based on an additional sham litigation scheme operated by Defendants.  Those additional predicate acts fit within the pattern of racketeering activity already at issue in this case.  *See* Dkt. 910 at 10; *see also* Dkt. 911 at ¶¶ 425-35.  The additional sham litigation scheme, related to NTG's use of an NTG attorney-owned company (Strataluz LLC), has already been the subject of extensive discovery.  *See e.g.,* Dkt. 820 at 7-12, 20-22; Dkt. 299; Dkt. 198 at 4. This court found that the Strataluz conduct was further evidence of the overall RICO enterprise.  *See e.g.,* Dkt. 820 at 20-22; Dkt. 910 at 9-11.

In opposition to NIC's Motion for Leave [Dkt. 892], Defendants argued under 12(b)(6) that amendment would be futile, stating that the Strataluz allegations fail the continuity element of RICO, break the "pattern" element, and are not "related" to other predicate acts.  *See* NTG's Brief, Dkt. 895 at 17-20. Notably, the Defendants argued that the standard for evaluating futility on the motion for leave is identical to the standard on a Rule 12(b)(6) motion to dismiss:

> The test for futility is the same as the test for challenges under Fed. R. Civ. P. 12(b)(6).  Here, Plaintiff's proposed amendments will not survive a challenge under Fed. R. Civ. P. 12(b)(6) because the newly-identified purported "predicate acts" do not satisfy the relationship and continuity prongs of a RICO analysis.

*See* NTG's Brief, Dkt. 895 at 25 (collecting Ninth Circuit authority (internal citations omitted)).

On March 24, 2020, this Court granted NIC leave to file the TAC and, in so doing, rejected under the same 12(b)(6) standard the very same arguments Defendants raise here again.  Dkt. 910 at 9-11.  The Court reasoned:

> Defendants arguments are unconvincing.  The RICO statute defines "pattern of racketeering activity" to require that the defendant at least commit "two acts of racketeering activity" within ten years of each other.  By itself, proving two predicate acts isn't sufficient to establish a pattern, however.  To allege a "pattern of racketeering activity," the plaintiff must also allege that the predicate acts were "related" and "continuous."  To determine whether predicate acts are related, courts must take a "flexible" approach that considers whether the alleged predicate acts have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."

> The predicate acts, including the Strataluz ones, are related and part of the larger scheme alleged in the complaint– that NTG engaged in sham litigation to extort out of court settlements. These new allegations do not break up the continuity and the pattern of NIC's allegations, to the contrary "proof that a RICO defendant has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into the continuity of the defendant's racketeering activity."  While the Court acknowledges that there are some differences in the Strataluz and ProMaxal predicate acts when compared to the wiretapping or false advertising scheme, those differences are viewed through too narrow a lense by the Defendants in their briefs.  These allegations and predicate acts are relevant and add to the entire RICO enterprise continuity because they show another example of how Defendants created and profited off of sham litigation over time.  Therefore, the Court does not believe amendment will be futile.

---

*Id*. at 10 (internal citations omitted).  Despite the Court's rejection of these arguments under the Rule 12(b)(6) standard, Defendants with considerable temerity raise the very same arguments now under the very same Rule 12(b)(6) standard, not even citing, let alone attempting to distinguish, the earlier order of this Court denying the argument when originally made.  *See* Dkt. 913 at 16-22.

## III.   <u>LEGAL STANDARD</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a).  "To survive a motion to dismiss under … [Iqbal/Twombly]..., 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1149 (S.D. Cal. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.  The Court must accept all well-pled factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Iqbal*, 556 U.S. at 678.  The Court must then "determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.  The analysis requires the Court to draw on experience and common sense.  *Id*.

Rule 9(b) requires claims that sound in fraud to be alleged with "particularity."  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  The particularity requirement is commonly described as requiring the "who, what, when, where, and how" of the alleged fraud.  *Id*.  For mail and wire fraud claims, the plaintiff must allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Dkt. 157 at 12 (quoting *Sanford v. MemberWorks*, Inc., 625 F.3d 550, 558 (9th Cir.

2010)).  The complaint must also allege "why [the] statement or omission complained of was false and misleading."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).  "Rule 9(b) does not require… the pleading of detailed evidentiary matter, however."  *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1089 (C.D. Cal. 2011).  "Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  Thus, in a RICO complaint, only the predicate acts that sound in fraud must meet the Rule 9(b) standard and none of the other RICO elements are subject to that standard.  *Id.*; *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).  "While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007).

"For purposes of assessing futility on [a motion for leave to amend], the legal standard is the same as it would be on a motion to dismiss under Rule 12(b)(6)."  *K.H. by & through Humphrey v. Antioch Unified Sch. Dist.*, No. C 18-07716 WHA, 2019 WL 3842068, at *1 (N.D. Cal. Aug. 15, 2019) (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Iqbal*, 556 U.S. 662); *Richmond v. Mission Bank*, No. 1:14-CV-00184 JLT, 2014 WL 6685989, at *5 (E.D. Cal. Nov. 26, 2014) (same); *Faraj v. 6th & Island Investments LLC*, No. 16-CV-00181, 2016 WL 5338073, at *2 (S.D. Cal. Sept. 23, 2016).  The Defendants have conceded that the standard for evaluating "futility" of NIC's Motion to Amend was identical to the standard here at issue under Rule 12(b)(6).  *See* Dkt. 895 at 25.

## IV.   **ARGUMENT**

At the outset, the Defendants' Motion is limited to challenging the predicate acts related to Strataluz, LLC and NTG's use of same in sham litigation.  *See*

*generally* Dkt. 913.  The Motion does not challenge predicate acts previously upheld by this Court.  *Id.*; *see* Dkt. 157.  Moreover, NTG's Motion does not challenge new predicate acts alleged within the false advertising or wiretapping schemes.  *Id.* (presenting no arguments regarding anything but the Lanham Act scheme allegations).  In other words, NTG's motion is limited to challenging the new content in NIC's TAC which relates to Strataluz.

### A. This Court Correctly Rejected NTG's Arguments Concerning "Continuity" and "Relatedness"

The Defendants re-raise arguments in their Motion to Dismiss which are identical to those Defendants raised before; the Court rejected the arguments in a well-reasoned decision backed by controlling precedent.  *See* Dkt. 910 at 9-10.  Defendants concede that the standard governing this Court's prior analysis is "identical" to the standard here on a motion to dismiss.  *See* Dkt. 895 at 25.  Defendants nonetheless re-argue that: (1) the new predicate acts concerning the Strataluz LLC are "unrelated" to the racketeering enterprise; and (2) the new predicate acts concerning Strataluz LLC break the "continuity" of the RICO pattern.  *See* Dkt. 913 at 7-8, 16-21 *and compare to* Dkt. 910 at 9-10 (describing and addressing same arguments).  This Court should reject both arguments for the same reasons explained in its prior Order at Dkt. No. 910, which applied the same legal standard, was well-reasoned, and was supported by controlling precedent.

### 1. The New Predicate Acts Are Related to the Racketeering Enterprise

As this Court previously concluded, the Strataluz-related predicate acts are "related" to the other predicate acts alleged in the TAC.  Dkt. 910 at 10.  Taken together, those predicate acts establish a pattern of racketeering activity.  "To determine whether predicate acts are related, courts must take a 'flexible' approach that considers whether the alleged predicate acts have the 'same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  *See*

Dkt. 910 at 10 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)); *see also* Dkt. 157 at 21; *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 44 (1st Cir. 1991) ("The relatedness test is not a cumbersome one for a RICO plaintiff.").

Here, the ProMaxal-related predicate acts share a common purpose with those predicates occurring in the wiretapping and false advertising schemes.  The predicate acts all sought to achieve a similar result, involved the same participants, were directed at the same and similar victims, and were advanced through similar methods of commission.  Defendants committed every predicate act in the TAC with the common purpose of extorting money from target corporations for the benefit of NTG, its owner Scott Ferrell, its attorneys, and its sham clients (Strataluz was a sham client just as Andrew Nilon was).  *See e.g.*, Dkt. 911 at ¶¶ 36, 226, 287, 359, 366, 373.  Defendants' common motivation was to enrich themselves, *i.e.*, the members of the enterprise, through fraudulent litigation.  *Id.* at ¶ 426 (explaining that all predicate acts, including those related to Strataluz, were performed for the financial benefit of NTG).  In that context, all predicate acts, including the ProMaxal predicates, sought to achieve the same or similar result (i.e., the receipt of ill-gotten moneys through settlements or judgments fraudulently obtained).  *Id.* at ¶¶ 426-35.

The participants were the same or similar among all predicate acts.  Each ProMaxal predicate act was committed by Defendants Newport Trial Group, Scott Ferrell, and David Reid.  Dkt. 911 at ¶ 435.  The TAC alleges that Defendant Newport Trial Group participated in the commission of nearly every single predicate act.  *Id.* at ¶¶ 427-35.  Similarly, attorneys from the firm, including Scott Ferrell and David Reid, committed a substantial number of the more than sixty predicates now alleged.  *Id.*  Defendants have no credible argument that the ProMaxal predicate acts, which involved Defendants NTG, Scott Ferrell, and David Reid, were not committed through the same participants as the other predicate acts in the complaint.  Nonetheless, the RICO Act does not require that

all alleged predicate acts be all committed by the same individuals.  *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004), *modified,* 425 F.3d 1248 (9th Cir. 2005) (quoting *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992)).

The victims were also the same or similar.  The wiretapping scheme and the false advertising scheme targeted corporations nationwide, many of which were dietary supplement or health product manufacturers.  *See e.g.,* Dkt. 911 at ¶¶ 27, 32, 56, 438.  The victims targeted by the ProMaxal predicates were also similarly dietary supplement companies.  *Id*. at ¶¶ 41, 43.  In fact, NIC alleges that NTG and Scott Ferrell targeted, through ProMaxal predicates, the same companies that Defendants had sued in earlier suits under the false advertising and wiretapping schemes.  *Id*. at ¶ 41.  Thus, the predicate acts in the complaint clearly involve the same or similar victims.

Finally, the methods of commission were the same or similar.  The NTG Defendants threatened sham lawsuits on behalf of a sham client that they created for the purpose of extorting money from corporations through pre-suit demand letters and the filing of frivolous complaints.  *Id*. at ¶¶ 40-45.  Strataluz was a "sham client" created by the attorneys and used by the attorneys in sham litigation.  *Id*.; Dkt. 910 at 6 ("While the Strataluz/ProMaxal predicate acts are different from the wiretapping and false advertisement schemes in that they do not involve a sham plaintiff from the community, it is still a "sham plaintiff" in that it is an entity allegedly created by Ferrell and Reid to manufacture litigation and threaten lawsuits in an effort to extort settlements from frivolous lawsuits.").  That is functionally similar to the use of recruited individuals to serve as sham clients in consumer cases.  *Id*.  The point is that NTG did not have valid clients, and the litigation depended on misrepresentations about those sham clients, all pursued for the purpose of extorting settlements pocketed principally by the NTG firm.  The fact that the cause of action (i.e., the legal theory asserted) was different from those advanced in the false advertising or wiretapping schemes does not undercut a

finding of relatedness, because the method of commission need only be similar. Moreover, as the Court has already found, the use of multiple schemes **supports** the existence of a RICO claim.  *See* Dkt. 910 at 10.

The Defendants argue that the predicate acts are not related based on several other factually and legally flawed points.  Each may readily be rejected.

Defendants argue that "only two of the current defendants were allegedly involved in the Lanham Act scheme."  Dkt. 913 at 19-20.  That is a false statement. The TAC clearly enumerates the Defendants alleged to be involved in each predicate act.  Dkt. 911 at ¶¶ 427-35.  For each predicate act associated with the Lanham Act scheme, NIC identified "NTG, Scott Ferrell, and David Reid."  *Id*. at ¶¶ 435.  Thus, three Defendants are alleged to have been involved.  That is significant because NTG is the entity which employed multiple attorneys and staff for use in pursuing the enterprise, and NTG is therefore involved in nearly every predicate act alleged in the TAC.  *Id*. at ¶¶ 427-35 (vast majority of itemized predicate acts list NTG as a participant).  Nonetheless, the law does not require that every member of the enterprise engage in each predicate act.  *See Fernandez*, 388 F.3d at 1242 ("Proof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts.  Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant…"). If that were so, the RICO statute would be rendered anemic.  Here, the participants are the same or similar, and each predicate involved the central figures in the scheme, the Newport Trial Group and its leader, attorney Scott Ferrell.

The Defendants incorrectly argue that "NIC's Lanham Act scheme presents a drastically different RICO enterprise," and they suggest that NIC must show that "Strataluz was a RICO enterprise."  *See* Dkt. 913 at 19-20.  Neither point is correct.  As noted *supra*, Defendant NTG was involved in every ProMaxal predicate act, and the lawsuits were advanced in the name of a sham client,

Strataluz.  The Lanham Act predicates fit within the "hub-and-spoke" enterprise alleged in the TAC.  The NTG Defendants operate the "hub" and the sham clients, among them Strataluz, were the "spokes."  *Id*. at ¶¶ 438; Dkt. 910 at 6 (noting that Strataluz was a "sham client").  The Newport Trial Group, its owner, and its managing partner all used sham clients to allege false and fraudulent legal claims for their own pecuniary gain.  The fact that Strataluz is a corporate "client" (one created by the NTG attorneys and owned by them) as opposed to an individual (like Nilon or Schoonover) is immaterial because the core structure of the RICO enterprise involves a law firm that extorts victims by using sham clients and contrived cases.  The Lanham Act cases filed by NTG using a sham corporate client is not distinct from the existing RICO allegations.

Finally, Defendants argue that victims of the Lanham Act scheme are not similar because NTG's demands using Strataluz were made "against competitors" and not in the context of "consumer protection actions."  Dkt. 913 at 20.  That argument lacks merit.  Whether NTG feigned standing to bring sham lawsuits through a consumer protection theory or competitor theory has nothing to do with whether the victims are similar.

Thus, the Court should reject, as it has before (Dkt. 910 at 10), the Defendants' re-argument that the Lanham Act scheme is not "related to" other predicate acts, or part of the racketeering enterprise alleged.

### 2.  The New Allegations Establish and Support the Elements of "Continuity" and "Pattern"

The Court correctly ruled that the TAC alleges predicate acts that demonstrate RICO pattern and continuity.  Dkt. 910 at 10.  The TAC alleges predicate acts as part of the NTG RICO enterprise spanning more than five years (2010 to 2015).  The predicate acts occurred continuously over that period, which, under the established precedent meets the standard for "closed-ended" continuity. *See H.J. Inc.*, 492 U.S. at 238; *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir.

1995).  Moreover, the predicate acts alleged in the TAC demonstrate open-ended continuity because they show an existing, continuing threat of repetition in the future.  The addition of the Lanham Act scheme to the TAC bolsters the existence of open-ended continuity because, as the Supreme Court has recognized, "proof that a RICO defendant has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into the continuity of the defendant's racketeering activity."  *See* Dkt. 910 at 10 (*H.J. Inc.*, 492 U.S. at 240).  The Lanham Act scheme demonstrates that the racketeering enterprise is likely to continue into the future because Defendants have a demonstrated willingness to manufacture new and unique sham litigation to extort lucrative settlements.  Thus, the TAC properly alleges both closed- and open-ended continuity.

The Defendants argue that the Lanham Act scheme "breaks" the pattern and continuity because the predicate acts specifically related to ProMaxal did not occur over a period greater than one or two years.  Dkt. 913 at 19-21.  That argument is based on the faulty legal presumption that the plaintiff in a RICO case must demonstrate continuity for *each* racketeering scheme comprising the pattern.  The Defendants do not cite precedent to support that position and none exists.  Instead, NIC is only required to demonstrate that all predicate acts are related and, taken as a whole, demonstrate continuity.[2]  *H.J. Inc.*, 492 U.S. at 238.  Here, the predicate acts are related as explained in section IV(A)(1) *supra*, they span more than five years (closed-ended continuity) and demonstrate a likelihood of recurring criminal racketeering activity in the future (open-ended continuity).  *See* Dkt. 911 at ¶¶ 425-35; *see also* Dkt. 910 at 10.  Thus, NIC has demonstrated a continuous racketeering pattern.  Similarly, NIC has sufficiently alleged continuity for each Defendant

---

[2] Even so, NIC has alleged that the Defendants began preparing the Strataluz entity for use as a sham litigation vehicle as early as late-2013.  Dkt. 911 at ¶¶ 359-60.  Thus, the allegations in the complaint demonstrate that Defendants began preparing to commit the Strataluz-related predicate acts at least 18 months prior to their commission.  *Id*.

involved in the Lanham Act scheme. Defendants NTG, Scott Ferrell, and David Reid are each alleged to have committed numerous predicate acts over a period of more than two years. *Id.* at ¶¶ 427-35 (identifying dozens of predicate acts involving each Defendant that span more than two years). Thus, the requirement that NIC demonstrate continuity for each defendant is also met. *See* Dkt. 157 at 29.

The Defendants view NIC's allegations myopically, as this Court previously found. *See* Dkt. 910 at 10 (rejecting Defendants' overly narrow view). NIC has alleged a systematic and continuous racketeering enterprise involving the Newport Trial Group, its attorneys, and its sham clients, based on the manufacture of litigation via three different litigation schemes. *See generally* Dkt. 911. The purpose of the enterprise is consistent across all predicate acts: extort money from corporate defendants nationwide through the threat of knowingly frivolous, contrived legal claims. The enterprise alleged satisfies every element of the RICO statute and differs only to the extent that NIC has *added more* predicate acts than those already sufficient to meet the elements under the Second Amended Complaint. *See* Dkt. 157 (denying motion to dismiss NIC's RICO claims). Thus, Defendants' arguments should be rejected and their motion to dismiss denied.

## B. NIC's Allegations Satisfy Rule 9(b)

The Defendants argue that NIC's new ProMaxal predicate acts fail to satisfy the Rule 9(b) standard. That argument is frivolous, based on false statements about the nature of NIC's allegations. The Defendants' brief regarding Rule 9(b) does not cite any purportedly deficient allegations or paragraphs. Dkt. 913 at 21-25. The language in the TAC reveals the invalidity of NTG's criticisms. Defendants argue that NIC fails to "allege the 'who-what-when-where-how details' of Strataluz's alleged mail and wire fraud." *See id.* at 22. That is false. A plain review of the relevant factual allegations demonstrates that NTG did present detailed allegations addressing all of the required elements.

Defendants argue that NIC does not "specify what statements were made by
Ferrell or Reid in the course of the ProMaxal litigation, how they were made, when
they were made, to whom they were made, or how they were reasonably relied
upon." *Id*. at 21-22.  That argument should be rejected for two reasons.  First, NIC
does in fact allege the who, what, when, where, and how of the Defendants'
misrepresentations.  *See* Dkt. 911 at ¶¶ 362-73.  NIC alleges that NTG, Scott
Ferrell, and David Reid sent demand letters through the US Mail from "late-May
[to] early-June of 2015" to five specifically identified companies.  *Id.* at ¶¶ 362-63.
NIC also alleges the specific demands made in those letters and the specific false
representations made.  *Id.* at ¶¶ 364-66.  NIC also alleges the facts that demonstrate
why the statements are false.  *Id.* at ¶¶ 367-73.  NIC also alleges that, on June 3,
2015, Defendants NTG, Scott Ferrell, and David Reid filed a sham lawsuit against
TruDerma LLC and therein made the same false representations identified in
Paragraphs 362-66.  *Id.* at ¶¶ 374-76.  NIC alleges that the complaint was served
through the U.S. Mail and that the false statements of fact deprived the litigation of
its legitimacy.  *Id.* at ¶¶ 374-77.  Thus, NIC very clearly alleges the who, the what,
the where, the when, and the how of mail and wire frauds.  Second, the mail and
wire fraud statutes do not require reasonable reliance as a matter of law.  Dkt. 157
at 14 (holding that Defendants' very same argument "misstates the law" and that
reliance is not required); *see Neder v. United States*, 527 U.S. 1, 24, 25 (1999)
("The common-law requirements of 'justifiable reliance' and 'damages,' for
example, plainly have no place in the federal fraud statutes.").  Thus, Defendants'
criticism that NIC does not allege reliance is legally infirm.

Defendants also argue that NIC fails to allege with 9(b) particularity how the
Lanham Act scheme fits within the "hub-and-spoke" enterprise.  *See* Dkt. 913 at
22-23.  But Rule 9(b) does not apply to such general allegations.  *Kearns*, 567 F.3d
at 1124; *Alan Neuman*, 862 F.2d at 1392.  NIC is only required to allege the
circumstances of the **misrepresentations** with particularity.  The remaining RICO

elements, and even the *mens rea* elements of the wire and mail fraud claims, need only satisfy Rule 8.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("[w]here allegations of both fraudulent and non-fraudulent conduct are made in the complaint … only allegations [] of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)"); *Odom*, 486 F.3d at 554.  Thus, Defendants' argument must be rejected.

Finally, the Defendants argue that NIC has failed Rule 9(b) by not explaining with particularity how each predicate act associated with the Lanham Act scheme would impose RICO liability on other Defendants who are not alleged to have been involved with the Lanham Act scheme.  Again, Rule 9(b) does not apply to general RICO allegations.  *Vess*, 317 F.3d at 1106.  More fundamentally, however, the argument fails because NIC is not required to allege legal conclusions in its complaint.  NIC has alleged the existence of a RICO enterprise involving the Defendants and acting through a pattern of continuous predicate acts with NTG at the center of the enterprise.  RICO imposes liability on any Defendants who participated in at least two predicate acts and whose activities establish continuity.  *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017).  Thus, NIC can impose liability on any Defendant that is sufficiently part of the enterprise, regardless of whether they engaged in every predicate act.  *Fernandez*, 388 F.3d at 1242.

The Court should therefore reject all of Defendants' arguments based on Rule 9(b) because NIC has alleged facts establishing entitlement to relief with requisite particularity.

## C. The Lanham Act Predicate Acts Are Legally Operative and Part of the RICO Enterprise

The Defendants argue that "the TAC also fails to specify whether the Strataluz claims are legally operative facts or merely character evidence."  *See* Dkt. 913 at 24-25.  Defendants similarly claim that NIC "fail[ed] to include and define

Strataluz as part of the alleged RICO enterprise." *See id.* at 15-16, 24-25.  The arguments are meritless.  NIC **expressly** included the Lanham Act scheme within the enterprise:

> Although NTG's RICO enterprise may include additional predicate acts, the allegations in this Complaint primarily focus on three of NTG's sham litigation schemes: (1) the CLRA/UCL/FAL scheme, (2) the CIPA scheme, and (3) the Lanham Act scheme. All three schemes operate under similar methodologies.

Dkt. 911 at ¶ 25.  NIC summarized each of the three schemes used by the RICO enterprise.  *See id.* at ¶¶ 25-45.  NIC also identified with specificity each predicate act derived from the Lanham Act scheme that is within the pattern of racketeering activity.  *Id.* at ¶ 435.  NIC's format follows that used in the SAC, which this Court earlier deemed sufficient in Docket No. 157.  *See* Dkt. 892-4 (showing minimal redline changes to SAC and new allegations follow same format).  Defendants' professed ignorance or confusion over whether the newly alleged predicate acts are "legally operative facts" appears feigned and is not supported in fact or precedent.  A facial review of the complaint demonstrates that NIC has alleged operation of an enterprise through the commission of predicate acts as part of three similar sham litigation schemes.

Defendants also argue that the Lanham Act scheme does not fit within the "hub-and-spoke" structure that NIC describes at various points in the TAC.  That again is inaccurate.  The "hub-and-spoke" structure is defined as NTG (and its attorneys and agents) operating at the "hub" with NTG's sham clients as the "spokes."  Dkt. 911 at ¶ 438.  The Lanham Act scheme operates within that same structure.  NTG, Scott Ferrell, and David Reid (the "hub") identified, prepared, threatened, and filed frivolous lawsuits against the enterprise's victims to extort money from them.  *Id.* at ¶¶ 40-45, 359-77.  They advanced those frivolous claims using a sham client, Strataluz (the "spoke"), to create standing for suit.  *Id.*  NTG

took steps to make Strataluz appear legitimate, just as it took steps to have other sham clients appear legitimate in the false advertising or wiretapping cases (i.e., by directing clients to purchase certain products).  For instance, NIC alleges that Strataluz used a misleading website to advertise the fake ProMaxal product so that NTG's threats of litigation would appear legitimate.  *Id.* at ¶ 372.  Thus, the Lanham Act scheme fits neatly within the alleged structure.  Regardless, the law does not actually require that an enterprise have a rigid structure to meet the definition under RICO.  *Odom*, 486 F.3d at 551 ("[A]n associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise.").  Thus, Defendants' argument is meritless and the Court should deny the motion to dismiss.

### D. Leave to Amend Should be Granted

NIC does not concede that its complaint is deficient in any respect nor should the Court so find.  If, however, this Court were to determine that the TAC lacks allegations on any material point identified in Defendants' Motion to Dismiss, the Court should grant NIC leave to amend.  The alleged deficiencies identified by the Defendants are all purely technical in nature and easily cured through amendment.  The Third Amended Complaint was NIC's first attempt to plead RICO predicate acts based on the Lanham Act scheme, thus even if amendment were deemed necessary, leave to amend would appropriately be granted.

### E. Defendants' Rule 12(f) Arguments Are Meritless

Defendants ask this Court to strike all paragraphs related to Strataluz and the Lanham Act scheme in the event that the Court denies their 12(b)(6) arguments.  Dkt. 913 at 25-26.  That argument is unsupported and illogical.  If the Court does *not* grant Defendants' Motion to Dismiss, then the Court will have found that NIC's allegations regarding Strataluz and the Lanham Act scheme fit within the RICO claims and are sufficiently pled.  Yet, Defendants ask the Court in such a

circumstance to strike the allegations as "immaterial" or "impertinent" under the *higher* Rule 12(f) standard. *Id.* (arguing the allegations are immaterial because they have "no essential or important relationship to the claim for relief or the defenses being pleaded."). If the Court denies the Motion to Dismiss, then the allegations the Court found sufficient to plead a RICO claim would not be "immaterial" or "impertinent" under Rule 12(f). Thus, the Court should deny Defendants' frivolous request under Rule 12(f).

## V.   **CONCLUSION**

For the foregoing reasons, the Court should deny NTG's Motion in its entirety. NIC has sufficiently pled a RICO claim and incorporated the Strataluz-related allegations into that claim. The Court has already rejected NTG's arguments under the same standard. If, however, the Court were to hold the TAC deficient in any respect, leave to amend should be granted because any alleged deficiencies would be technical in nature and can be easily cured.

DATED:  April 27, 2020

Respectfully submitted,

EMORD & ASSOCIATES, P.C.

By:   /s/ Peter A. Arhangelsky
Peter A. Arhangelsky, Esq. (SBN 291325)
Joshua S. Furman, Esq. (pro hac vice)
*Counsel for Plaintiff Natural Immunogenics Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2020 the foregoing, **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STRIKE NIC'S THIRD AMENDED COMPLAINT [Dkt. 913]** was electronically filed using the Court's CM/ECF system and was sent by that system to the following:

Brendan M. Ford, Esq.
bford@FordDiulio, P.C.
650 Town Center Dr, Ste 760
Costa Mesa, CA 92625
Tel: (714) 384-5540
*Attorney for Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover, Matthew Dronkers, Taylor Demulder, Sam Pfleg,*

David J. Darnell, Esq.
ddarnell@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
*Attorney for Newport Trial Group and Scott Ferrell*

[SERVICE LIST CONTINUES ON NEXT PAGE]

Nicole Whyte
nwhyte@bremerwhyte.com
Benjamin Price
bprice@bremerwhyte.com
Kyle A. Riddles
kriddles@bremerwhyte.com
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000
*Attorneys for Ryan Ferrell, Victoria Knowles, Andrew Baslow, David Reid*


               */s/ Peter A. Arhangelsky*
               Peter A. Arhangelsky, Esq.