**CALLAHAN & BLAINE, APLC**
Edward Susolik (SBN 151081)
Esusolik@callahan-law.com
David J. Darnell (SBN 210166)
Ddarnell@callahan-law.com
James M. Sabovich (SBN 218488)
jsabovich@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Defendants and Counterclaimants
NEWPORT TRIAL GROUP and SCOTT J. FERRELL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>Defendants. | CASE NO.  8:15-cv-02034-JVS-JCG<br>JAMS NO.  1220055347<br><br>**LOCAL RULE 37 JOINT STIPULATION RE: NTG'S MOTION TO COMPEL**<br><br>Special Master: Hon. Rosalyn Chapman<br>Judge:        Hon. James V. Selna |
| AND ALL RELATED ACTIONS | Complaint Filed:   December 7, 2015<br>Trial Date:        November 3, 2020 |

## I.    INTRODUCTION

Pursuant to Local Rule -37, Defendant and Counterclaimant Newport Trial Group ("NTG") and Natural Immunogenics Corp. ("NIC") submit this joint stipulation regarding NTG's Motion to Compel.  NTG sent the Emord firm, who are counsel for NIC, as well as counsel for Charlotte Carlberg, and Jim and MaryAnn Buc (the "Declarants"), meet and confer letters or emails on February 24-27, March 6, March 10, March 11, March 16, March 24, and April 13, 2020, and the parties conducted telephonic meet and confer conferences on February 25, March 12,

1   March 24, and April 13, 2020.  (Sabovich Decl. ¶ 2, Exhs. 1-7.)  The Parties were
2   unable to resolve the issues presented in this joint stipulation.  NTG served its
3   portion of this joint stipulation on NIC, Emord, and the Declarants on April 21,
4   2020.  NIC and the Declarants returned their portion of the joint stipulation on May
5   8, 2020.

6   **II.    NTG'S POSITION**

7        The Court granted NTG's motion for leave to take discovery regarding the
8   false declarations NIC filed from the Declarants in support of NIC's Motion for
9   Sanctions and related filings.  (Dkt. 891.)  Since the Court specifically authorized
10  document discovery on NIC, the Declarants, and NIC's counsel, NTG served
11  corresponding document requests and subpoenas on NIC, the Declarants, and NIC's
12  counsel (namely Emord & Associates, Peter Arhangelsky, Joshua Furman, and
13  Jennifer Fernandes [collectively "Emord"].)

14       NTG seeks the Special Master's assistance because: (1) the responses are
15  deficient and (2) frivolous privilege assertions are being used to obstruct discovery
16  and prejudice NTG's ability to present its case.  As a case-in-point, the recently filed
17  Counterclaim relied on communications that the Declarants produced between
18  Emord and the Declarants.  The communications are by no means privileged.  They
19  directly related to the filed declarations and occurred at a time when NIC told NTG
20  and the Court that the Declarants were "unrepresented" and were "non-parties with
21  no stake in this litigation. . . ."  Yet, after NTG filed its Counterclaim, NIC forced
22  the sealing of significant portions of the Counterclaim by claiming privilege over the
23  communications.

24       The expansive, unsupportable, and inadequate assertion of privilege are issues
25  with the responses and logs.  Emord has taken the outlandish position that a
26  discovery order that authorizes document discovery on "NIC and its counsel"
27  somehow prohibits discovery on "its counsel."   Consequently, Emord has refused to
28  produce any privilege log.  NIC did even worse.  It provided only a categorical log

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

that failed to identify a single document after having secured a ruling from the Special Master and the Court that "to be of any utility privilege logs need to be listed by document, not by category."  NIC and the Declarants have similarly asserted frivolous attorney-client and attorney work product objection over communications regarding the declarations, including NIC's efforts to convince the Declarants to testify for NIC.  NIC and the Declarants logged 220 entries, which is in and of itself remarkable for what are almost entirely communications between counsel and unrepresented third-party percipient witnesses.  Of the 21 attorney-client privilege assertions, only four postdate Emord's February 12, 2020 claim that it now represented the Declarants.  There are 150 assertions of work product protection without any indication that the document included trial preparation materials.  Even if it did, disclosure to the Declarants – whom NIC intended to offer testimony – waived it.  Further, NIC and the Declarants relied on those communications as "[t]he most probative evidence" in their defense, which is a separate and independent waiver.  At the same time, NTG has a compelling need for the claimed work product documents.

Finally, NIC and the Declarants have unjustifiably refused to provide any phone records, even though communications related to the false declarations admittedly took place by phone and even though NIC has sought and obtained comprehensive sets of phone records of the Defendants in this same case.

To address the misconduct and attempted cover-up by NIC, Emord, and the Declarants, NTG requests that the Special Master order that:

1. Emord's failure to provide a privilege log has waived all claims of privilege and work product by Emord;

2. Emord is required to respond to the document subpoenas served on them;

3. NIC's failure to provide an itemized privilege log has resulted in waiver of all claims of privilege and work product by NIC, or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

alternatively, that NIC is required to immediately provide an itemized privilege log consistent with *Dole v. Milonas*, 889 F.2d 885, 888 n. 3, 890 (9th Cir. 1989);

4. Emord is required to establish an attorney-client relationship with through documentary evidence or testimony that is either contemporaneous or predates any assertion of attorney-client privilege, including through the production of a retainer agreement;

5. Responding Parties have failed to establish an attorney-client relationship between Emord and the Declarants, or alternatively, that such a relationship did not exist before February 12, 2020;

6. NIC and the Declarants have failed to establish attorney-client privilege and/or work product protection for all documents contained in NIC's and the Declarants' itemized privilege log.  (Exh. 19.)  Alternatively, all documents contained in their itemized log must be produced to the Special Master for *in camera* review;

7. NIC, Emord, and the Declarants have impliedly waived any claim of privilege or work product over communications between Emord and the Declarants;

8. There is no attorney-client privilege or attorney work product over the documents that NIC claims were inadvertently produced (DEC_00747-53 and DEC_00754-60);

9. The Counterclaim at Docket 918 is to be unsealed;

10. Emord, NIC, and the Declarants are required to produce responsive phone records[1]; and

---

[1]  NTG believes the privilege claims here will implicate and provide further evidence in support of application of the crime-fraud exception.  However, because NIC has not provided a meaningful privilege log and Emord has not provided any log, NTG will reserve its right to assert a crime-fraud challenge after the required privilege logs are produced.

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

11. NIC, Emord, and the Declarants are required to pay NTG's reasonable attorneys' fees and costs pursuant to Rule 37(b).

A.      **Factual and Background**

1.      **NIC Files False Declarations in an Effort to Obtain "Death Penalty" Sanctions Against NTG**

On February 20, 2019, the Court issued an order granting the NTG Defendants' request to proffer additional evidence regarding the existence of an attorney-client relationship between Trycia Carlberg and NTG.  (Dkt. 781 at 1.)  The Court thus directed the NTG Defendants to submit such evidence to the Court for *in camera* review.  *Id.*  On February 28, 2019, the NTG Defendants lodged (for *in camera* review) the Declaration of Scott J. Ferrell with Privileged Information in Support of Attorney-Client Relationship with Trycia Carlberg.  (Dkt. 783.)  That Ferrell Declaration was publicly filed on the Court's docket on July 3, 2019.  (Dkt. 812-1.)

The Ferrell Declaration that prompted NIC's Motion for Sanctions stated truthfully that "Ms. Carlberg was a close friend of my family" who "began living in our home in 2011 because she was very ill with cancer and needed our support and assistance."  (Dkt. 812-1, ¶ 5.)  The Declaration further stated that Trycia Carlberg stayed with the Ferrell family "the latter part of 2011 through the early part of 2012, when she moved into a hospice facility, where she stayed until shortly before her death on May 5, 2012."  (*Id.*)  The Ferrell Declaration further explained that Trycia retained NTG on December 24, 2011, when she had been staying with the Ferrells and that after "receiving Ms. Carlberg's consent to send a demand letter to NIC and after having her sign my firm's engagement letter at my home," Ferrell sent a "December 27, 2011 demand letter to NIC . . . ."  (*Id.*, ¶ 13.)

Beginning on August 26, 2019, NIC began accusing Ferrell of felony perjury based on the Ferrell Declaration and purported testimony that NIC and Emord had elicited from third parties.  On August 26, 2019, NIC sent NTG a meet and confer

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

letter with numerous false accusations about the Ferrell Declaration and a demand that Scott Ferrell stipulate to "dispositive sanctions" and "financial sanctions," among other things.  (Dkt. 846-1 at 7-8.)  In particular, NIC's letter falsely represented that:

- "Ms. Carlberg did not, in fact, live in Ferrell's home at the end of 2011 or in early 2012.  She resided with her mother at the time."

- "Carlberg was not close with Scott Ferrell.  While she had a relationship with Mr. Ferrell's wife, Erin, she had a limited and perfunctory relationship with Scott and would not have confided in him over any personal matters."

- "Carlberg neither purchased nor used Sovereign Silver, nor could she have 'showed [Ferrell] a bottle and box' on December 24, 2011, because she was with her mother at her mother's residence on December 24, 2011."

- "Ferrell falsely testified that his attorney-client relationship began with Carlberg on December 24, 2011.  Again, that narrative is an impossibility, in part, because Carlberg was not in Ferrell's home or his presence on the relevant dates."

- "Ferrell falsely testified to having Carlberg execute a retainer agreement '[o]n either December 24 or December 25, 2011[.]'  Carlberg was never in Ferrell's presence at any point during the holiday, and could not have executed a retainer agreement under the circumstances described in Ferrell's declaration."

- "Carlberg had knowledge of Ferrell's sham litigation enterprise, she considered those lawsuits to be morally reprehensible, and, consequently, she was predisposed against serving as Ferrell's client.  In fact, Carlberg mentioned Ferrell's unlawful scheme to at least three witnesses, each of whom intend to testify that Carlberg distrusted

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

Ferrell, and found his business practices repugnant, morally corrupt and unethical."

(*Id.*)

On September 19, 2019, NIC filed a Motion for Sanctions Re Defendant Scott J. Ferrell's False Declaration [Dkt. 812-1]. (Dkt. 844.) NIC's Motion argued that Ferrell's averment that Trycia Carlberg was his client in 2011 was "unequivocally false" and "impossible" because of the testimony of three witnesses who were "close" with Trycia Carlberg. (Dkt. 844.) NIC assured the Court that their testimony was based on "personal knowledge." (*Id.* at 13.) NIC supported its motions with declarations from Trycia Calberg's mother, Charlotte Carlberg, and a couple that claimed to be friends with Trycia, Jim and MaryAnn Buc.

In choreographed sworn statements, the three NIC witnesses all purported to testify to the assertions made in NIC's meet and confer letter. (Dkts. 844-4, 844-3, 844-5.) They claimed that Scott Ferrell's testimony regarding Christmas Eve 2011 is "false" or "untrue" because Trycia was with her mother over Christmas in 2011. (Dkts. 844-4, ¶¶ 14, 9; 844-3, ¶¶ 4-6; 844-5, ¶ 8.) The NIC witnesses claim that Trycia only stayed with the Ferrells "for a brief period in 2012," and told a Kafkaesque tale of Ferrell essentially holding Trycia prisoner during that time period, claiming Trycia "was unable to even leave the guest room to go upstairs and eat, watch the sunset, or look at the views," and "told her mother that she was starving, and asked if her mother could bring her food." (Dkt. 844-4, ¶¶ 28-30.) The Declarants claimed that Trycia left "the Ferrells' house on poor terms and in distress" in March 2012. (Dkt. 844-4, ¶¶ 28-30; 844-3, ¶ 13.) Finally, NIC's witnesses testified, and NIC claimed, that Trycia Ferrell found Scott Ferrell's business practices repugnant and would not have been his client. (Dkt. 844-1 at 14, 20.) Further, each of the witnesses purported to claim based on personal knowledge that Trycia had not been involved in any legal matters in 2011 through 2012. (Dkt. 844-4, ¶ 24; Dkt. 844-4, ¶ 27; Dkt. 844-5, ¶¶ 11-12; Dkt. 844-3, ¶ 11.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

All of this was complete fiction.  As the Court found in its order authorizing discovery, "Ferrell had grounds to believe that the declarations contained inaccuracies, and cannot be deprived of his right to file a lawsuit when he believes he has been wronged."  (Dkt. 891 at 16.)  Dozens of pieces of evidence, including photographs, videos, Facebook posts, emails, messages, and handwritten cards, confirmed that NIC's and the Declarants' claims were false in every material respect.  (*See generally* Dkts. 846, 855, and 856.)  This evidence conclusively proves that Trycia was with the Ferrells on December 24 and 25, 2011, and did live with them from late 2011 to March 2012, exactly as Ferrell had testified.  (Dkt. 846 at 13-19.)  This evidence also proves Trycia was close to Scott Ferrell and thanked him "for being a true gentleman and a brother to me."  (Dkt. 846 at 15.)  Nor did she "flee" the Ferrells' home on poor terms.  On March 28, 2012 – after NIC claims Trycia had "fled" from the Ferrells' home on "poor terms" – Trycia wrote Scott and Erin Ferrell "[t]hank you both for taking care of me when needed, allowing me space and privacy when needed, making me feel safe and at home here, and just providing me with some stability in my unstable world.  You two are the most caring and generous people I know and I honestly don't know what I would do without you . . . . I love you both. xoxo Trycia."  (Dkt. 846-3 at 39-40 (emphasis added).)

NIC's and the Declarants' claim that Trycia considered Ferrell's business practices to be "repugnant" and refused to be a client of his was also knowingly false.  The Declarants, NIC, and Emord all knew that Trycia Carlberg had filed another consumer lawsuit in the first few months of 2012.  In fact, on August 9, 2019, Emord paralegal Fernandes provided Charlotte Carlberg with a copy of the Ferrell Declaration at issue (Dkt. 812-1), along with a copy of Trycia Carlberg's March 22, 2012 Declaration from the case of *Trycia Carlberg v. Bret Bros Sports International, Inc.*, Case No. 2:12-cv-00259 (Feb. 12, 2012) (W.D. Wash.) ("Trycia Carlberg's titanium bracelet lawsuit").  (Sabovich Decl., Exh. 8.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## 2. Subsequent Filings by NIC and the Declarants Have Directly Placed Communications Between Emord and the Declarants at Issue

Faced with such irrefutable documentary evidence, on September 30, 2019, NIC filed a Notice of Withdrawal of its Motion for Sanctions. (Dkt. 847 at 1-4.) NIC defended its withdrawal by claiming that "communications exchanged between counsel and the non-party witnesses . . . will demonstrate that all of Defendants' allegations of criminal wrongdoing are not simply blind speculation but demonstrably false and that counsel for NIC acted with great care to ensure that the testimony presented in the declarations was thoroughly vetted by the witnesses and signed only upon confirmation of the truthfulness of the representations contained therein." (Dkt. 851 at 7.) In other words, NIC has affirmatively claimed that their communications with these witnesses will demonstrably prove their innocence.

Thereafter, NTG moved for leave to conduct discovery regarding the false declarations filed by NIC. (Dkt. 856.) NIC and the Declarants resisted that, and they also resisted NTG's related request for an order to show cause by repeatedly arguing that communications between Emord and the Declarants exonerate them. More specifically, in Docket 863:

- at 6 [NIC affirmatively claims that "communications" between Emord and the Declarants "prove that the witnesses, NIC, and its counsel did not engage in the alleged misconduct . . . ."];

- at 8 ["Every time NIC's counsel communicated with the witnesses regarding the preparation or execution of their declarations, the witnesses were each repeatedly told to make sure that the statements in their declarations were truthful and accurate in every particular."];

- at 16 ["The communications between Emord & Associates and the witnesses demonstrate that those witnesses endeavored to provide truthful and accurate testimony."];

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- at 17 ["NIC counsel's communications with those witnesses reveal counsel's interest in obtaining truthful testimony, affording no basis to support the false charge that NIC Counsel intended to mislead this Court. Absent from those communications is any indication that NIC counsel intended to mislead or coerce witnesses into signing an incorrect document."]; and

- at 23 ["the communications exchanged between NIC and the witnesses are the most important documents to explore those theories.").

Similarly, in Docket 859:

- at 5 ["The most probative evidence, the communication between NIC counsel and the non-party witnesses, not only fails to support the charge but establishes definitively that the charge is false."];

- at 5 ["communications with the witnesses attached hereto, prove that NIC not only did nothing improper but maintained high ethical standards throughout its dealings with the three witnesses in question, endeavoring repeatedly to ensure that the declarations they offered were accurate and complete in every particular."];

- at 6 ["All three affiants made multiple edits to drafts of their declarations, following repeated requests from NIC Counsel and Counsel's staff that the witnesses ensure the accuracy and completeness of their statements."]; and

- at 6 ["Every effort was made on repeat occasions to ensure that the witnesses understood clearly the need for accuracy and completeness and made every edit they deemed necessary to achieve that end."]

NIC and the Declarants also expressly represented that NIC and Emord made no promises and did not engage in any coercion with respect to the declarations. (Dkt. 871-2 at 2 ["MaryAnn Buc states "there was no coercion, influence, or promises made to me."]; Dkt. 863 at 3 [NIC representing that "[c]orrespondence

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

with the witnesses contained no threats or coercion of any kind."]; Dkt. 871-3 at 2 [Fernandes declares "[a]t no time during my conversations with [the Declarants] did I coerce, threaten, or manipulate any witness to obtain testimony."]; Dkt. 871-4 at 2 [Jim Buc states "I'd like to go on record to state that that [sic] NIC has never coerced or influenced me to make any statements at all regarding my interactions with Trycia Carlberg."]; Dkt. 871-1 at 2 [Charlotte Carlberg states "I was never coerced or influenced to give false testimony."].)

Before NIC, Emord, and the Declarants placed these matters at issue before the Court, they knew that based on NTG's motion for leave, NTG would be seeking discovery from NIC and NIC's counsel. (Dkt 856 at 10, 33.) NIC and Emord clearly understood this was being requested since their opposition stated that "Defendants seek leave to take discovery from NIC's trial counsel[.]" (Dkt. 863 at 14.) The Court granted the motion for leave in its entirety and, in doing so, confirmed that the declarations are false. (Dkt. 891 at 18 ["NTG has provided evidence . . . that refutes the NIC Witnesses' declarations" and also referring to "the falsehoods contained in the declarations."].) Thus, in granting NTG's motion for leave, the Court allowed "NTG to serve one set of document requests to NIC _**and its counsel**_, along with a records subpoena to each of the NIC witnesses." *Id.* (emphasis added).

### 3. NIC, Emord, and the Declarants Refuse to Comply in Good Faith

On February 11, 2020, NTG served document discovery on NIC, NIC's counsel, and the Declarants. (Sabovich Decl., Exhs. 9-15.) That same day, Emord stated for the first time that it would be representing the Declarants in connection with the discovery sought. (Sabovich Decl., Exh. 16.) Prior to February 11, 2020, Emord had repeatedly told NTG and the Court that it did not represent the Declarants. (Dkt. 857-1 at 6 ["The Bucs, who are unrepresented by legal counsel, were sent written text messages by the two Ferrell agents . . . ."]; 11 ["the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   individuals receiving it are unrepresented non-attorneys largely unfamiliar with the

2   legal system."].)

3          NIC, Emord, and the Declarants refused to comply with the authorized

4   discovery in multiple respects.  First, Emord took the position that the Court had not

5   authorized discovery on NIC's counsel.  (Sabovich Decl., Exhs. 1 and 17.)  After

6   meeting and conferring on the frivolity of this claim, Emord provided consolidated

7   subpoena responses that claimed the subpoenas were duplicative because "NIC's

8   Counsel has no relevant information in its possession, custody, or control that differs

9   from content that would be responsive to Rule 34 document requests served on

10  NIC."  (Sabovich Decl., Exh. 17 at 4.)  Emord's other actions and representations,

11  however, are contrary to and undermine this claim.  For example, NTG prepared a

12  stipulation providing that "if NIC and NIC's Counsel will formally stipulate that all

13  documents that are in the possession, custody or control of NIC's Counsel and

14  responsive to the Emord Subpoenas will either be (a) produced in response to the

15  RFPs to NIC or (b) logged on a privilege log in response to the RFPs to NIC, then

16  NTG is willing to withdraw the Emord Subpoenas[.]"  (Sabovich Decl., Exh. 18 at

17  3.)  NIC categorically refused any such stipulation.  (Sabovich Decl., Exh. 5)

18  Ultimately, Emord refused to provide any substantive responses or a privilege log

19  for discovery directed to Emord (i.e., "NIC's counsel").  (Sabovich Decl., Exh. 17 at

20  4.)

21          Second, NIC and Emord refused to provide a meaningful privilege log of

22  responsive communications.  Rather, for responsive communications among NIC's

23  counsel, or between NIC and its counsel, NIC and Emord provided a six-page

24  categorical log that lacks any meaningful detail and that fails to identify a single

25  document.  This categorical log broadly lumps 31 categories of documents, and then

26  vaguely gives a non-exclusive list of recipients as "Emord & Associates, P.C.; Peter

27  Arhangelsky; Josh Furman; Jennifer Fernandes; Jonathan Emord; Eric Awerbuch;

28  Bryan Schatz; Bethany Kennedy; and/or NIC's Officers."  Not one specific date and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

time, not one document identification, not one subject matter, and not one sender or recipient is given for any particular exchange.

Third, NIC and the Declarants have improperly and selectively asserted attorney-client privilege, work product protection, and the "common interest doctrine" over certain communications with the Declarants.  (Sabovich Decl., Exh. 19.)  For all communications that predate Emord's alleged February 12, 2020 representation of the Declarants[2], no conceivable "client" is identified, and in each instance the communication between Emord and the third-party Declarants appears to relate directly to soliciting third-party witness declarations (i.e., non-client declarations) that would be used to try to help or benefit Emord's only client, NIC. (*Id.*)

Fourth, NIC and the Declarants have categorically refused to produce phone records despite insisting on the production of such records from NTG in this case. (Sabovich Decl., Exh. 20 at 11-12 [NIC will not produce any phone records from its counsel].)

On April 7, 2020, NTG and Scott Ferrell filed their Counterclaim.  (Dkt. 918; 920-1.)  That Counterclaim adds the Declarants, Emord & Associates, NIC and its Co-Presidents, and Arhangelsky as RICO defendants.  (*Id.*)  The Counterclaim generally alleges "[f]or the past five years, Counter-Defendants and the Non-Party Co-Conspirators have waged a war of retaliation against Scott Ferrell, his law firm, and his employees and his clients because they exposed NIC's existential danger to the public health."  (Dkt. 920-1, ¶ 3.)  The predicate acts include "actively soliciting and filing knowingly false declarations accusing Scott Ferrell of multiple felonies in an effort to secure 'death penalty' sanctions and avoid a trial on the merits[.]"  (*Id.*)

---

[2]  There is nothing in the production that indicates Emord and the Declarants were contemplating or discussing the retention of Emord, or Emord's possible or actual representation of the Declarants.  There is also nothing in the production that shows the Declarants ever retained Emord, and it is unclear whether they ever even executed a retainer with that firm.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

It is alleged that the "most recent unlawful scheme to provide false testimony to the Court was undertaken by NIC and its executives (Benjamin and Theo Quinto), along with NIC's witnesses [the Declarants] . . . and the legal team at the Emord Firm that procured the false declarations from these Declarants." (*Id.*, ¶ 48.)

The Counterclaim's allegations regarding the false declarations included communications between Emord and the Declarants. (*Id.*, ¶¶ 48-91.) Among the documents produced by NIC and the Declarants were documents identified and marked as DEC_00747-53 and DEC_00754-60, which were not redacted and not designated as privileged. (Dkt. 920 at 2.) After reviewing the filed Counterclaim (Dkt. 918), NIC informed counsel for NTG and Ferrell that the documents in DEC_00747-53 and DEC_00754-60 had been inadvertently produced and that NIC was now designating these documents – after production and disclosure to multiple parties and counsel – as privileged. (*Id.*) Thereafter, on NTG's *ex parte* application to conditionally seal (Dkt. 920), the Court directed the Clerk to "conditionally seal the Counterclaim (Dkt. 918) from public viewing pending further review and any subsequent order by the Court." (Dkt. 923.)

This incident occurred because NIC and Emord are selectively invoking attorney-client privilege and work product protection to shield non-privileged but unfavorable documents. NIC claims that "the content of the emails itself would have alerted a reasonable attorney to the possibility that the document was privileged and inadvertently produced." (Sabovich Dec., Exh. 29 at 4.) Nothing could be further from the truth. The email at issue is simply a communication (albeit highly inappropriate) by party counsel with unrepresented percipient witnesses for the purpose of soliciting favorable testimony to benefit counsels' client.. The attorney-client privilege assertions appear made up from whole cloth. This was an August 18, 2019 email. (*Id.* at 2; *see also* Exh. 19 at 2 (entry for DEC_01047- DEC_1052, which NIC claimed is the same document).) Yet, throughout subsequent meet and confer on NIC's Motion for Sanctions and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1    throughout the litigation of that and related motions, NIC's counsel had repeatedly

2    assured NTG and the Court that the Declarants were unrepresented.  (Dkt. 857-1 at

3    6; 11; Dkt. 859 at 12, 13; Dkt. 859-2, ¶ 11.).

4        **B.**    **The Special Master Should Order NIC's Counsel to Produce All**

5                **Responsive Documents Without Objection.**

6        Emord and its counsel have taken the patently unreasonable position that an

7    order which expressly authorizes discovery to "NIC and its counsel . . . ." actually

8    prohibits direct discovery upon NIC's counsel.  (Dkt. 891 at 18.)

9        Respectfully, this position is not taken in good faith.  NTG's request clearly

10   sought leave to serve document discovery on NIC's counsel.  (Dkt 856 at 10, 33.)

11   Indeed, NIC's counsel had declared that NIC's communications with the Declarants

12   had been through the Emord firm only (Dkt. 859-2, ¶ 6), so discovery from Emord

13   was obviously necessary.  That point was not lost on NIC.  In opposing NTG's

14   request for leave, NIC stated, "Defendants seek leave to take discovery from NIC's

15   trial counsel[.]"  (Dkt. 863 at 14.)  NIC even urged the Court to deny the motion for

16   leave because otherwise it would be "permitting a fishing expedition into NIC's

17   counsel's files and the witnesses' personal devices."  (*Id.* at 19.)  So Emord

18   obviously understood that NTG was seeking discovery from Emord.

19       So did the Court.  The Court's Order granted NTG's motion for leave in its

20   entirety and specifically authorized document discovery on Emord.  (Dkt. 891 at

21   16.)  Specifically, the Court allowed "NTG to serve one set of document requests to

22   NIC ***and its counsel***, along with a records subpoena to each of the NIC witnesses."

23   (*Id.*) (emphasis added.)  Because Emord and its agents were not parties to the

24   lawsuit at the time of service, NTG served its document requests in the form of

25   attachments to subpoenas.

26       Emord's position that NTG was not authorized to serve discovery on it is not

27   credible.  According to NIC, the Court authorized only a single document request on

28   NIC and the language specifically reference NIC's "counsel" is merely intended to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 15 -

include NIC's agents in the definition of NIC.  (Sabovich Decl., Exh. 17.)  This is hardly a natural reading.  Entity definitions in discovery requests almost always include the entity's agents and attorneys.  Because of this, the "and its counsel" language in the Court's Order would be completely superfluous since a document request to NIC would already include NIC's counsel.  Basic rules of interpretation require avoiding surplusage.  *United States v. Corrales-Vazquez*, 931 F.3d 944, 958 (9th Cir. 2019).  Here, NIC's interpretation literally requires reading the words "and its counsel" out of the Order even though, by NIC's own admission, NTG was seeking discovery from NIC's counsel.

Even setting that aside, NIC's subsequent actions have shown its position to be a pretense to manufacture a circumstance in which responsive documents are outside NIC's control.  If it were the case that NIC was in good faith including NIC's counsel's documents within the Request for Production to NIC, this would be much ado about nothing.  That is why NTG offered to withdraw the subpoenas if NIC stipulated that the Emord files would be included in NIC's response.  (*Supra*.Part.II.A.3.)  NIC refused.

Ultimately, NIC and its counsel are playing a shell game.  NIC claims "that nobody from NIC (principals, employees, etc.), except NIC's attorneys, had any contact with any potential witness related to the Carlberg issues in the above-captioned matter."  (Sabovich Decl., Exh. 20 at 11.)  Yet NIC takes the position that its counsel's phone records are not in its possession:  "Defendants cannot demand that NIC produce phone records for accounts held by NIC's counsel.  That information is not in NIC's possession, custody, or control because no client has a right to demand that their attorney provide them with his or her personal or business phone records." (Sabovich Decl., Exh. 20 at 11.)  Thus, NIC is effectively refusing to produce records of its communications regarding the Declarants, regardless of privilege.  Since all communications were via counsel, and NIC's position is that

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1    records of those communications are beyond its reach, the end result of NIC's

2    machinations is that there is no meaningful discovery.

3           So, to be clear, if NIC's counsel used his phone to text an individual in

4    relation to Trycia Carlberg (which they did), NIC's position is that records of that

5    text – which are precisely the type of discovery NTG was seeking – are beyond

6    NIC's control.  That position is without merit and contrary to the Court's Order.

7    (Dkt. 891 at 16.)

8           By resting on a frivolous interpretation of the Order, by refusing to enter into

9    a reasonable stipulation, and by refusing to provide a privilege log, Emord has

10   waived privilege objections.  As the Special Master has previously found, waiver of

11   privilege for failure to produce a proper privilege log is evaluated under the "holistic

12   reasonable analysis" set forth in *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist.*

13   *Court for Dist. of Mont.,* 408 F.3d 1142, 1147 (9th Cir.2005).  (Dkt. 241 at 15.)

14   Specifically, the Ninth Circuit has instructed the district courts to conduct a "holistic

15   reasonableness analysis" through application of the following factors:

16          1.   The degree to which the privilege log enables an evaluation of the

17               privilege ("where providing particulars typically contained in a

18               privilege log is presumptively sufficient and boilerplate objections are

19               presumptively insufficient");

20          2.   the timeliness of the privilege log ("where service within 30 days, as a

21               default guideline, is sufficient");

22          3.   "the magnitude of the document production;" and

23          4.   "other particular circumstances of the litigation that make responding to

24               discovery unusually easy ... or unusually hard."

25   *Id.* at 1149.

26          Here, all factors cut in favor of waiver.  Emord has served no privilege log, so

27   there can be no evaluation whatsoever of any claims of privilege.  NIC previously

28   prevailed on the position that not producing a privilege log "unless . . . ordered to do

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 17 -

so" was "unprecedented" and "inexcusable."  (Dkt. 241 at 18.)  Yet Emord has done exactly that.  "[B]oilerplate objections or blanket refusals," which is all that Emord has provided, "are insufficient to assert a privilege."  *Burlington,* 408 F.3d at 1149.  It is now over two months after the subpoenas were served and there is no indication that Emord will ever provide a privilege log.

Unlike the circumstances with NTG's production, this is not an instance of a large production or broad document requests.  Where NIC served requests that the Special Master found were "anything but narrow or focused" and were in "the words of the Ninth Circuit . . . 'exhaustive,'" (Dkt. 241 at 17), the subpoenas here are discrete.  *Am. Dental Ass'n v. Khorrami*, No. CV 02-3853 DT(CTX), 2003 WL 24141019, at *9 (C.D. Cal. July 14, 2003) (finding waiver for failure to produce privilege log when requests were narrow).  They relate to a single issue that took place over a matter of months.  As the Court noted in its Order, the issue here is "limited discovery" regarding the "declarations and the related issues raised by NIC's motion for sanctions."  (Dkt. 891 at 17.)  The production sizes are miniscule by modern standards.  NIC produced a grand total of three documents exclusively in its possession.  (Sabovich Decl., ¶ 4.)  Even including the Declarants' productions, the total is approximately 250 documents.  (*Id.*)  This factor clearly weighs in favor of waiver.  *Jumping Turtle Bar & Grill v. City of San Marcos*, No. 10-CV-270-IEG BGS, 2010 WL 4687805, at *4 (S.D. Cal. Nov. 10, 2010) (finding that magnitude of production weighed against waiver when "[t]he City has produced approximately 10,000 pages of documents").  This also stands in stark contrast to NTG, which had to review over 80,000 documents and email threads for its privilege log.  (Dkt. 240-12, ¶ 13.)  This was well over one million pages and required nine attorneys tasked solely with the document review.  (*Id.* at 22.)

Finally, the circumstances here make responding to discovery "unusually easy" and NIC's actions particularly unjust.  Emord has known since October 2019 that its communications regarding the false declarations and related filings were at

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

issue.  On October 7, 2019, NTG sent Emord a litigation hold demanding that it "preserve all documents or electronically stored information ("ESI") relevant to the issues raised in NIC's Motion for Sanctions re Defendant Scott J. Ferrell's False Declaration on Docket 844 and the concurrently filed declarations of Jim Buc, MaryAnn Buc, and Charlotte Carlberg in Newport Trial Group and Scott Ferrell's associated opposition papers in Docket 846, and in all subsequent related filings." (Sabovich Decl., Exh. 21.)  Similarly, NTG's Opposition to NIC's Motion for Sanctions requested an order "that all privileged documents related to NIC's motion, the declarants, and the declarations at issue be provided for in camera review for purposes of the Order to Show Cause and crime-fraud."  ((Dkt. 846 at 4.)

This would have made for a simple document collection.  Unlike when NIC sought "exhaustive" discovery of multiple long-closed litigation files (Dkt. 241 at 16), this was limited discovery on a recent and discrete issue.  Emord has stated that it began the investigation that resulted in the false declarations in July 2019, Dkt. 844-2, ¶¶ 7-8.  Collection of documents would have required nothing more than a review of very recent files.

Emord might invoke the categorical log provided by NIC to claim that it did assert privilege.  That argument, however, fails for two separate and independent reasons.  First, that log was provided by NIC, not Emord.  (Sabovich Decl., Exh. 22.)  Emord, in contrast, has unequivocally refused to produce a privilege log. (Sabovich Decl., Exh. 17 at 5 ["NIC Counsel is not required to provide a privilege log to invoke privilege."].)  Second, even if Emord were deemed to have somehow joined in NIC's categorical privilege log, it would not help because (as discussed below) that log is insufficient.

## C.  The Special Master Should Find that NIC Waived Privilege or Require NIC to Produce an Adequate Privilege Log

NIC has taken the remarkably duplicitous approach of providing a "categorical" privilege log, despite multiple rulings specifying the required content

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   of privilege logs and despite having secured a ruling from Judge Selna that

2   categorical logs are insufficient.  Given the gamesmanship and bad faith inherent in

3   this tactic, a finding of waiver is justified.

4        NIC has served a six-page privilege log that fails to identify a single

5   document.  (Sabovich Decl., Exh. 22.)  Rather, NIC lists 31 categories of

6   documents, and then gives a non-exclusive list of recipients.  Since this log fails to

7   identify any document, much less a basis for claiming privilege over[ it, NIC's

8   actions are tantamount to a complete refusal to provide any privilege log.  The log

9   does not provide a Bates range, and it is not clear that Emord even performed a

10   document collection or privilege review of any documents.

11        The law of this case and Ninth Circuit authority generally prohibit NIC's use

12   of a categorical privilege log in these circumstances.  As the Special Master knows,

13   the required content of privilege logs was specifically litigated in this case (Dkt. 241

14   at 15; Dkt. 458 at 18), and there is no basis for NIC's duplicitous position that it is

15   entitled to detailed logs but not obligated to provide them.  The Special Master has

16   repeatedly directed the parties to *Dole v. Milonas*, 889 F.2d 885, 888 n. 3, 890 (9th

17   Cir. 1989) and the Ninth Circuit's requirement that a privilege log identify "(a) the

18   attorney and client involved, (b) the nature of the document, (c) all persons or

19   entities shown on the document to have received or sent the document, (d) all

20   persons or entities known to have been furnished the document or informed of its

21   substance, and (e) the date the document was generated, prepared, or dated."  (Dkt.

22   458 17 *quoting Dole*, 889 F.2d at 888.  To state the obvious, all of that information

23   is missing from a categorical log, which fails to even identify a document.

24        That NIC provided a categorical log is particularly remarkable given that NIC

25   secured an order prohibiting such logs in this very case.  In the Joint Rule 26(f)

26   Report leading up to the May 9, 2016 hearing, Defendants "propose[d] that the

27   parties be able to designate privilege documents by category, to the extent any

28   requested document involves pure work product, communications solely between

CALLAHAN & BLAINE

A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 20 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  NTG and its clients or prospective clients, or communications solely within NTG."

2  (Dkt. 90 at 37.)  NIC opposed.  It argued for "detailed privilege logs" containing "(i)

3  the type of asserted privilege(s); the identity and capacity of all individuals who

4  authored, sent, and received each allegedly privileged document or communication;

5  (iii) the date of creation and, if different, the date sent and received for allegedly

6  privileged documents or communications; (iv) a brief description of each document;

7  and (v) a brief description of its contents or subject matter sufficient to determine

8  whether the privilege applies."  (*Id.* at 36.)  It asserted that the proposed use of

9  categorical logs was a "wish to eliminate the well-established rule requiring the

10  disclosure of all information which bears on the viability of an asserted privilege for

11  any document responsive to a discovery request.  NIC does not believe that such a

12  limitation is warranted."  *Id.*

13          NIC prevailed on this issue and NTG was required, at extraordinary expense,

14  to provide a documents specific log.  At the May 9, 2016 hearing, the Court

15  disallowed categorical logs:

16          You discuss an issue of a privilege log. ***I think to be of any utility***

17          ***privilege logs need to be listed by document, not by category***. I don't

18          know how you can really test a prima facie showing of the state of

19          privilege without knowing the author, addressee, subject, some -- you

20          know, the Bates number identification, things that would usually go

21          into a privilege log.

22  (Sabovich Decl., Exh. 23 at 8:17-23 (emphasis added).)

23          NIC's volte-face is classic bad faith and manipulation of the Court. "Judicial

24  estoppel enables a court to protect itself from manipulation" by a party taking

25  inconsistent positions. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597,

26  603 (9th Cir. 1996).  That doctrine was "developed to prevent litigants from

27  'playing fast and loose' with the courts by taking one position, gaining advantage

28  from that position, then seeking a second advantage by later taking an incompatible

1   position." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc*., 555 F.3d 772, 778

2   (9th Cir. 2009).  That is precisely what NIC is doing here.  It obtained the advantage

3   of detailed log by arguing that Ninth Circuit precedent required one, and now seeks

4   a second advantage by claiming that it is not required to provide the very thing it

5   convinced the Court Ninth Circuit precedent requires.[3]

6       Under these circumstances, NIC's production of a knowingly deficient log

7   waives privilege.[4]  *Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016

8   WL 2908415, at *3 (N.D. Cal. May 13, 2016) (finding waiver of privilege when

9   "Plaintiff's privilege log is plainly deficient.  It contains no information about the

10  titles and descriptions of the withheld documents, nor does it identify the subject

11  matters addressed in the documents."); *Dorf & Stanton Commc'ns, Inc. v. Molson*

12  *Breweries*, 100 F.3d 919, 923 (Fed.Cir.1996) (affirming a waiver of privilege where

13  party "fail[ed] to provide a complete privilege log demonstrating sufficient grounds

14  for taking the privilege").

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

16  [3] NIC has invoked cases such as *In re Imperial Corp. of America*, 174 F.R.D. 475

17  (S.D.Cal.1997) for the proposition that categorical logs can be appropriate.  But as other cases have noted, that matter involved unusual circumstances with "'hundreds

18  of thousands, if not millions'" of documents, for which it would be "unreasonable and unduly burdensome" to require the party claiming the privilege to explain the

19  privileged nature of each and every document."  *Coleman v. Schwarzenegger*, No. C01-1351 TEH, 2008 WL 2732182, at *3 (E.D. Cal. July 8, 2008).  At most, NIC

20  can claim that a few thousand documents would need to be reviewed which, again, is minor when compared to the more 80,000 documents and email threads NTG had

21  to review for its log.  (Dkt. 240-12, ¶ 14.)

22  [4] There are cases in which a deficient privilege log did not result in waiver. However, they are instances in which "the objecting parties in those cases made a

23  good faith effort to provide a privilege log which justified a finding that the privileges had not been waived."  *Fid. & Deposit Co. of Maryland v. Travelers Cas.*

24  *& Sur. Co. of Am.*, No. 213CV00380JADGWF, 2017 WL 2380167, at *4 (D. Nev. May 31, 2017), *adopted sub nom. Fid. & Deposit Co. of Maryland v. Big Town*

25  *Mech., LLC*, No. 213CV00380JADGWF, 2017 WL 4855407 (D. Nev. Oct. 26, 2017).  Those are not the circumstances here.  NIC not only provided a log

26  completely devoid of detail, but it did so knowing full well that the log was deficient under the law of the case.  As the Special Master has repeatedly noted, the required

27  contents of privilege logs has already been decided in this case.  (Dkt. 241 at 15; Dkt. 458 at 18.)  In fact, nearly four years earlier, NIC had secured a ruling from the

28  Court prohibiting the exact type of "categorical" log it intended to file.  (Sabovich Decl., Exh. 23 at 8:17-23 (emphasis added).)

---

All of the *Burlington* factors discussed above apply with full force to NIC. NIC refused to provide a complaint privilege log and affirmatively stated its intent to not do so. As discussed above, the universe of documents is small, recent, and easily accessible, and NIC has long been on notice. Further, evaluation of waiver must take into account NIC's overt gamesmanship. *Cf. Jumping Turtle Bar*, 2010 WL 4687805, at *4 (finding no waiver when "the City does not appear to be engaging in gamesmanship . . . ."). NIC knows full well that the Court does not allow categorical privilege logs in this case. After all, NIC prevailed in arguing against categorical privilege logs. Yet by providing only a perfunctory categorical log devoid of any meaningful detail, NIC has blocked any assessment of its claims of privilege and frustrated the Court's Order granting discovery.

NIC's actions are particularly problematic given the underlying circumstances, namely the filing of false declarations, and the defense of lack of knowledge of falsity. Not only does this implicate crime-fraud, but the particular timing is important. For example, prior to the filing of NIC's Motion for Sanctions on September 19, 2019, Charlotte Carlberg told the Emord firm on August 10, 2019: "I cannot sign this due to dates that she actually did stay at their house" and "[m]y dates, looking back on Trycia[']s Facebook are wrong. I see pics of her at their [the Ferrells'] house during Nov, Dec, Feb and March." (Dkt. 859-8 at 2.) This, at a minimum, calls into serious question the core premise of NIC's Motion for Sanctions. But since NIC has lumped together all documents from "April 2019 through Present," it is impossible to discern if any entry is related to Charlotte Carlberg's email.

Taken together, the circumstances here justify a finding of waiver for the failure to produce a compliant privilege log. Alternatively, NIC should be compelled to provide a document-by-document privilege log.

**D.     NIC and the Declarants Have Asserted Frivolous Privilege Objections, Which Should be Overruled**

The Declarants and NIC have taken the remarkable step of selectively asserting work product protection, attorney-client privilege, and common interest doctrine over communications with unrepresented declarants.  (Sabovich Decl., Exh. 19 [Itemized Priv. Log].)  Their log contains 220 entries, which is itself remarkable given that these are almost all communications by party counsel with unrepresented third-party percipient witnesses.  (*Id*.)  Despite repeatedly assuring the Court and NTG  that the Declarants were "unrepresented" prior to February 12, 2020, 17 of their 21 attorney-client privilege claims are communications that predate that alleged engagement. (*Id.*)  NIC and the Declarants assert work product protection 150 times without ever providing information that would allow the assertion to be assessed.

As seen below, there is no attorney-client privilege or work product protection, and even if there was, NIC and the Declarants waived it by putting communications between the Declarants and NIC's counsel at issue.

**1.     There Was No Attorney-Client Relationship Between Emord and the Declarants Prior to February 12, 2020, if Ever**

As a preliminary matter, it is unclear whether the Declarants ever formally retained Emord.  The privilege log does not disclose any retainer agreement with Emord.  (Sabovich Decl., Exh. 19.)  If Emord and the Declarants are unable to provide evidence of a retainer agreement, all attorney-client privilege objections should be overruled.  (Dkt. 785 at 13 [finding a failure to prove attorney- client relationship when no retainer agreement was produced].)

NIC's and the Declarants' privilege log asserts attorney-client privilege for many communications between Emord and the Declarants that predate February 12, 2020 – when Emord first claimed to represent the Declarants.  (*See generally* Sabovich Decl., Exh. 19.)  Indeed, attorney-client privilege is asserted over

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

communications as early as August 16, 2019.  *Id.* at 1.  But the Declarants were not Emord's clients.

Assuming that the Declarants actually retained Emord on or around February 12, 2020, the assertion of attorney-client privilege over prior documents is improper. The Ninth Circuit describes elements of the attorney-client privilege this way: "(1) [w]hen legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir.2002) (citing 8 WIGMORE, EVIDENCE § 2292, at 554 (McNaughton rev.1961)).  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir.2009).  The attorney-client privilege cannot be asserted absent an attorney-client relationship. "[T]o assert the privilege, [asserting party] must show that he had an attorney-client relationship with [the attorney]." *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002).

Emord expressly disclaimed any representation of the Declarants to both NTG and the Court during the pendency of the underlying motions.  (Dkt. 857-1 at 6 ["The Bucs, who are unrepresented by legal counsel, were sent written text messages by the two Ferrell agents . . . ."]; 11 ["the individuals receiving it are unrepresented non-attorneys largely unfamiliar with the legal system."]; Dkt. 859 at 13 ["NIC counsel made clear that the witnesses were not represented parties, and that NTG's counsel was free to contact those individuals."]; Dkt. 859-2, ¶ 11 ["I (Arhangelsky) explained that the witnesses were not represented parties."].)  Indeed, Emord admits that it advised the Declarants to seek counsel, which it obviously would not do if it represented them: "Fernandes [Emord paralegal] informed the witnesses that they should seek their own attorneys if they had any questions or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 25 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   concerns . . . . At one point, the Bucs said they would consider hiring an attorney,

2   but later they elected not to do so." (Dkt. 859 at 12.)

3       Consequently, there is a complete failure of proof with regard to an attorney-

4   client relationship between Emord and the Declarants.  NIC repeatedly promised

5   that the Declarants were "unrepresented" and had not hired an attorney.  It is true

6   that "the attorney-client privilege applies to confidential communications during

7   preliminary negotiations with an attorney even if employment of the attorney is

8   declined." *Taylor v. Waddell & Reed, Inc*., No. CIV. 09-2909-AJB WVG, 2011 WL

9   1979486, at *1 (S.D. Cal. May 20, 2011).  This is so because under California law

10   the term client "means a person who, directly or through an authorized

11   representative, consults a lawyer for the purpose of retaining the lawyer or securing

12   legal service or advice from him in his professional capacity, and includes an

13   incompetent (a) who himself so consults the lawyer or (b) whose guardian or

14   conservator so consults the lawyer in behalf of the incompetent." *Barton v. U.S.*

15   *Dist. Court for Cent. Dist. of Cal*., 410 F.3d 1104, 1111 (9th Cir. 2005).

16   Consequently, "[t]he fiduciary relationship existing between lawyer and client

17   extends to preliminary consultations by a prospective client with a view to retention

18   of the lawyer, although actual employment does not result." (*Id. quoting People ex.*

19   *rel. Department of Corps. v. Speedee Oil Changes Systems*, 20 Cal.4th 1135, 1147–

20   1148, 86 (1999).

21       But those principles are inapplicable here.  This was an instance of lawyers

22   soliciting favorable testimony for their named client, not of "prospective clients"

23   interviewing potential lawyers.  NIC and Emord cannot represent otherwise, and

24   they cannot legitimately claim that the communications over which they assert

25   privilege were undertaken with a "view to retention of the lawyer."  The Declarants

26   did not consult Emord "for the purpose of retaining the lawyer or securing legal

27   service or advice from him in his professional capacity . . . ." Cal. Evid. Code §

28   952.  Rather, Emord reached out to Declarants (on NIC's behalf) for their testimony.

- 26 -

This is an entirely different scenario from preliminary consultation cases such as *Barton*, 410 F.3d 1104, where a "prospective client" filled out a questionnaire on a law firm's website relating to a potential Paxil class action. *Id.* at 1108. There, the court found that "[a] layman seeing the law firm's internet material would likely think he was being solicited as a potential client," and that "[i]n all likelihood, a very high proportion of questionnaire submitters completed the questionnaire "with a view to retention of" the law firm, and thus submitted them "in the course of" an attorney-client relationship. *Id.* at 1110. Again, the facts here could not be more different. The Declarants were not seeking representation and were, according to NIC, completely disinterested in this action. NIC and the Declarants cannot point to anything in which the Declarants had an expectation that Emord represented them, particularly given all the statements that it did not. *Heller v. Wofsey, Certilman, Haft, Lebow & Balin*, No. 86 CIV. 9867 (LBS), 1989 WL 79386, at *6 (S.D.N.Y. July 11, 1989) (no attorney-client relationship between counsel and witness when "it clearly appears that, in his dealings with this witness, [counsel] was at all times acting on behalf of the Wofsey Certilman defendants.")

What NIC and the Declarants seem to propose is that an attorney-client relationship forms whenever a lawyer tells a third-party witness something about the law. There is no support for such a proposition, and it is deeply problematic. "Interviewing a person who is a witness in a case in which an attorney is defense counsel is a far cry from representing that person." *Hitt v. Quarterman*, No. A-05-CV-618-SS, 2007 WL 3217527, at *10 (W.D. Tex. Oct. 29, 2007). Indeed, no less an authority than the United States Supreme Court has observed that there is no attorney-client privilege in such circumstances. In the seminal case of *Hickman v. Taylor*, 329 U.S. 495, 508 (1947), the High Court stated "[f]or present purposes, it suffices to note that the protective cloak of this privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs,

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories." *Id.*; *see also Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, No. CV058444DDPPLAX, 2012 WL 12875772, at *9 (C.D. Cal. Aug. 29, 2012) ("[A]lthough plaintiff asserted the attorney-client privilege, plaintiff has not established that counsel was contacted for the purpose of providing legal advice.")Accordingly, all of the Declarants' and NIC's attorney-client privilege assertions that predate the attorney-client relationship between Emord and Declarants (if there is one) are without merit.

## 2. Declarants' and NIC's Assertions of Work Product Are Without Merit

NIC and the Declarants assert work product protection for approximately 150 documents, the vast majority of which are communications between Emord and NIC.  (Sabovich Decl., Exh. 19.)

These claims are without merit.

Federal Rule of Civil Procedure 26(b)(3) codifies the work product doctrine and shields from discovery documents and tangible things prepared by a party or its representative in anticipation of litigation.  *See In re Grand Jury Subpoena (Torf),* 357 F.3d 900, 906 (9th Cir.2004). "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238 (1975).  Protected items include the mental impressions, conclusions, opinions, or legal theories of a party's attorney.  *See* Fed. R. Civ. P. 26(b)(3).  To qualify for protection under Rule 26(b)(3), "the documents must be prepared in anticipation of litigation or for trial, and they must be prepared by or for a party to the litigation or by or for that party's representative." *In re California Pub. Utils. Comm'n,* 892 F.2d 778, 780–81 (9th Cir.1989) (quoting Fed. R. Civ. P. 26(b)(3)).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

As NIC has itself noted, and the Court agreed, work product protection does not apply to non-parties.  (Dkt. 820 at 28.)

Rule 26(b)(3) distinguishes work product as one of two types: opinion and fact.  Opinion work product has been offered greater protection against disclosure as core work product because it comprises material prepared in anticipation of litigation and includes the "...mental impression, conclusions, opinion, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B). Fact work product includes material prepared in anticipation of litigation, but does not include an attorney's, consultant's, or agent's mental impressions, conclusions, opinion, or legal theories.  Fed. R. Civ. P. 26(b)(3).  While opinion work product has the benefit of nearly absolute immunity from discovery, in that it requires a showing of "rare and exceptional circumstances" (Fed. R. Civ. P. 26(b)(4)(D)(ii)), fact work opinion product enjoys only qualified immunity and is not discoverable unless the party seeking discovery demonstrates a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). *See Upjohn Co. v. United States,* 449 U.S. 401, 101 S. Ct. 677, 66 L.Ed. 2d 584 (1981).  When a court does order discovery of fact work product upon the required showing, it must also protect against the disclosure of opinion work product material.  449 U.S. at 402; Fed. R. Civ. P. 26(b)(4)(D)(ii); *see Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) ("opinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling"); *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005) ("Fact work product is discoverable only upon a showing of substantial need and an inability to secure a substantial equivalent by alternate means without undue hardship.")  When a party withholds information otherwise discoverable by claiming that the information is protected by the work product doctrine, that party

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   has the burden of establishing the documents' eligibility for protection.

2   Fed.R.Civ.P. 26(b)(5)(A).

3          Work product does not apply here for five separate and independent reasons.

4   First, NIC has not shown that the documents logged are "work product."  Second,

5   the Declarants cannot assert work product because they were not parties.  Third, any

6   work product was waived by disclosing it to the Declarants, with whom NIC had no

7   common interest agreement.  Fourth, NIC has placed those communications at issue,

8   so it cannot assert privilege over them.  And fifth, NTG has a compelling need for

9   the materials that are claimed attorney work product.

10         NIC and the Declarants have failed to establish that any of the logged entries

11  actually contain attorney work product.  Writings created by a lawyer are not *de*

12  *facto* attorney work product.  Rather, "[u]nder Hickman, [ ], the question is not who

13  created the document or how they are related to the party asserting work-product

14  protection, but whether the document contains work product—the thoughts and

15  opinions of counsel developed in anticipation of litigation." *U.S. v. Deloitte*

16  *LLP*, 610 F.3d 129 (D.C. Cir. 2010).  A party does not meet its "burden of showing

17  the documents at issue were created in anticipation of litigation simply because its

18  counsel represents as much in its opposition memorandum."  *United States v. AB*

19  *Electrolux*, No. CV 15-1039 (EGS), 2015 WL 9950141, at *5 (D.D.C. Sept. 25,

20  2015).

21         There is nothing in the log that would indicate that any of these are actually

22  attorney work product documents.  (Sabovich Decl., Exh. 19.)  NIC and the

23  Declarants were obligated to "provide sufficient information (*i.e.*, a privilege log) to

24  enable the requesting party to evaluate the applicability of the privilege or other

25  protection." *Northrop Grumman Corp. v. Factory Mut. Ins. Co*., No.

26  CV058444DDPPLAX, 2012 WL 12875772, at *9 (C.D. Cal. Aug. 29, 2012).  NIC

27  offers the blanket and non-descript assertion that these were "legal advice re federal

28  proceeding," or related statements, or sometimes completely vacuous descriptions

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 30 -

1   such as "email re conference call," "Email re draft declaration," "Email re text

2   messages," "Email re attachments re litigation," or "Email re declarations."

3   (Sabovich Decl., Exh. 19.)  There is simply nothing in these supporting that NIC's

4   counsel was sending non-party, non-lawyers his "trial preparation" materials that

5   could be subject to attorney work product.  Indeed, it is hardly obvious why "non-

6   parties with no stake in this litigation" would be getting "legal advice" on this

7   proceeding.  Rather, as the circumstances with the recently claimed inadvertently

8   produced documents demonstrate, NIC is invoking privilege to conceal effort to

9   influence the Declarants.  At a minimum, NIC and the Declarants must be directed

10  to submit the allegedly work product documents for *in camera* inspection.  *Wal-*

11  *Mart Stores, Inc. v. City of Turlock*, No. CV F 04-5278 OWW DLB, 2005 WL

12  8176375, at *3 (E.D. Cal. July 25, 2005) (requiring *in camera* inspection of

13  allegedly work product and attorney-client privileged documents).  This is

14  particularly necessary for the documents NIC claims to have inadvertently produced

15  (DEC_00747-53 and DEC_00754-60).

16      Second, even if there was work product, sharing with the Declarants – who

17  are third parties with no confidentiality obligations to NIC – resulted in a waiver.  A

18  voluntary waiver "occurs when a party discloses [protected] information to a third

19  party who is not bound [to maintain its confidence], or otherwise shows disregard

20  for the [protection] by making the information public."  *Bittaker v. Woodford,* 331

21  F.3d 715, 719, 720 n. 4, 722 n. 6 (9th Cir.2003).  "[I]n cases where the voluntary

22  disclosure of attorney work product to [a] ... third party substantially increases the

23  possibility of an opposing party obtaining the information, this would defeat the

24  policy underlying the privilege."  *Bd. of Trs. of the Leland Stanford Junior Univ. v.*

25  *Roche Molecular Sys., Inc.,* 237 F.R.D. 618, 624 n. 3 (N.D.Cal.2006).

26      Even if NIC could show the existence of work product, and it cannot, NIC has

27  "failed to prove that the disclosure of the [claimed work product] was anything but

28  voluntary."  *Great Am. Assur. Co. v. Liberty Surplus Ins. Corp*., 669 F. Supp. 2d

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 31 -

1084, 1092 (N.D. Cal. 2009); *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 560 (CD. Cal. 2003) ("a waiver may occur when a party discloses work product in a manner that 'increase[s] the likelihood that a current or potential opponent in the litigation would gain access to the documents in question' "); *City of Almaty, Kazakhstan v. Ablyazov*, No. 15CV05345AJNKHP, 2019 WL 2865102, at *8 (S.D.N.Y. July 3, 2019) ("to the extent work product protection could apply to BSF and Arcanum's investigation, any information exchanged with Sater resulted in a waiver of the information exchanged.  Sater never agreed to maintain any information as confidential and, thus, Plaintiffs had no assurance that information shared would not be disclosed to Defendants or other potentially adverse parties.")

NIC's counsel is sophisticated.  Yet there is no indication that a single one of the documents was labeled confidential, attorney work product, or the like.  Just as in *Great Am. Assur. Co.* where the court found a work product waiver,  NIC provided what it claimed to be attorney work product to third parties with no obligation to maintain confidentiality or to obtain NIC's consent before disclosing the documents.  669 F. Supp. 2d at 1092.  Indeed, NIC is unable to point to communication in which it even asked that the Declarants maintain the confidentiality of any document, much less an agreement that they would do so.  It was a virtual certainty that serious scrutiny would be placed on the Declarants' testimony and NIC's interaction with them.  These were no simple percipient witnesses in a fender-bender.  Rather, they were offering choreographed testimony accusing a licensed attorney of felony perjury.  Those allegations were intended to be used to not only obtain "death penalty" issue sanctions in this case, but also to seek Scott Ferrell's disbarment in the State of Texas.  (Sabovich Decl., Exh. 30 (NIC Texas State Bar Letter).  NIC cannot seriously contend that by providing its supposed "work product" to the Declarants, it was not significantly increasing the risk that its litigation opponent would obtain them.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

"Courts have applied a 'common interest doctrine' to claims that attorney work product disclosed to third parties remains shielded from discovery." *Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2019 WL 3815719, at *3 (N.D. Cal. Apr. 19, 2019). NIC and the Declarants, "as the parties asserting the attorney work product doctrine, have the burden to show that the doctrine applies." *Id.* While it is true that "[d]isclosure to person with interest common to that of attorney or client is not inconsistent with intent to invoke work product doctrine's protection and would not amount to waiver," *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 645 (E.D. Cal. 2014), that doctrine does not apply here. The common interest doctrine is "designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965). The "common interest doctrine" has nothing to do with the circumstances here.

First, it does not apply to non-lawyers. "The requirement that there be an underlying privileged communication is the reason that the common interest exception should not apply to unrepresented parties: 'A person who is not represented by a lawyer and who is not himself or herself a lawyer cannot participate in a common-interest arrangement.'" *State Farm Mut. Auto. Ins. Co. v. Hawkins*, No. 08-10367, 2010 WL 2287454, at *7 (E.D. Mich. June 4, 2010) *quoting* Restatement § 76 cmt. D; *Regents of Univ. of California v. Affymetrix, Inc.*, 326 F.R.D. 275, 281 (S.D. Cal. 2018) (finding no "precedent that extended the benefits of the common interest exception to the attorney client privilege when the disclosure at issue involved an unrepresented third-party employed by a separate entity.") Because the Declarants are non-lawyers, the common interest privilege does not apply to communications with them.

Second, the elements of common interest are not met here. "The common interest privilege ... applies where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

designed to further that effort; and (3) the privilege has not been waived." *United States v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003). "The critical inquiry is whether a sufficient commonality of interests exists between the parties such that the privilege may be asserted." *In re Imperial Corp. of America,* 179 F.R.D. 286, 289 (S.D.Cal.1998) (citations omitted).   In *Verigy US, Inc. v. Mayder*, No. C07-04330 RMW (HRL), 2008 WL 5063873, at *2 (N.D. Cal. Nov. 21, 2008), the court explained that:

> A common interest sufficient to invoke the anti-waiver exception of the doctrine has been found in three general situations. Typically, a sufficient common interest will be found where a single attorney acts for multiple clients or where parties share a common defense (e.g. co-defendants in the same action or defendants sued in separate actions by the same plaintiff). *Nidec Corp.,* 249 F.R.D. at 578; *Bank Brussels Lambert,* 160 F.R.D. at 447. In the third, and perhaps most expansive circumstance, the common interest doctrine has been said to apply to "'interested third parties who have a community of interests with respect to the subject matter of the communications.'" *Nidec Corp.,* 249 F.R.D. at 578 (quoting Rice, Attorney-Client Privilege In The United States § 4:35, at 199-201)). However, "that legal assistance must pertain to the matter in which the parties have a joint interest, and the communications must be designed to further that specific legal interest." *Id.*

*Id.*

None of these situations apply.  NIC told the Court that the Declarants were "non-parties with no stake in this litigation. . . ." (Dkt. 844-1 at 26.)  This, simply put, is individuals offering false testimony that would help NIC and harm a man they dislike.  Admittedly the Declarants harbor a general grudge against Ferrell and no doubt hoped that harm would come to him.  As in *Vergi*, where the plaintiff

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   sought to assert common interest with a "key witness" who also wanted the

2   defendant to lose, the relationship is "[t]he enemy of my enemy is my friend."  *Id.* at

3   *1.  "However, a shared desire to see a party succeed in an action is insufficient to

4   invoke the 'common interest' doctrine."  *Id.*  Rather, as the present circumstances

5   demonstrate, there was and is no legitimate "common legal interest" between the

6   Declarants and NIC.  Common interest requires, at a minimum, that the parties

7   "anticipate litigation against a common adversary on the same issue or issues, they

8   have strong common interests in sharing the fruit of trial preparation efforts."  299

9   F.R.D. at 647.  The Declarants were non-parties with no pre-existing connection to

10  this litigation.  It is unclear how NIC could possibly claim otherwise after it

11  expressly represented to the Court that the Declarants were "non-parties with no

12  stake in this litigation. . . ."  (Dkt. 844-1 at 26.)

13      Courts simply do not allow litigants to influence third-party witnesses, then

14  conceal that influence behind an assertion of "common interest" with the witness.

15  *In re Twitter Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2019 WL 2127820, at *2 (N.D.

16  Cal. May 10, 2019).  Otherwise, "any litigant could participate in the preparation of

17  a third party witness for the purposes of advancing its own interests and conceal its

18  communications with that third party by invoking the common interest doctrine.

19  That is not the law."  *Id.*

20      Here, NIC does not claim that there was any common interest agreement or

21  any agreement of confidentiality with the Declarants.  The circumstances are quite

22  similar to *Shenwick*, 2019 WL 3815719, at *4.  There, plaintiff attempted to assert

23  work product protection over communications with third parties, just as NIC does

24  here.  After noting that disclosure of work product to those third parties would

25  waive work product protection absent a "common interest," the court went on to

26  find that waiver of privilege had occurred in that case:

27          Plaintiffs . . . have provided no information showing that Plaintiffs

28          and the confidential witnesses had entered into any type of agreement

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

of confidentiality or common interest. There is no evidence that Plaintiffs' representatives told the confidential witnesses not to disclose those interviews and no evidence that there was any agreement for them not to disclose the contents of the interviews. After the interviews, the confidential witnesses could have published the contents of the interviews on Twitter. Plaintiffs' choice to speak with confidential witnesses without an agreement of confidentiality substantially increased the chance that Defendants would obtain information about those conversations.

*Id.* at *3.

The exact same is true here. NIC's counsel is thorough and sophisticated, yet there is no joint defense or common interest agreement or written admonitions or agreements about confidentiality. Quite the opposite, NIC apparently urged the Declarants to speak to others about their declaration and related questions. This was not by accident or oversight. NIC wanted to present the Declarants as impartial and disinterested, which it could hardly do if it had a written agreement stating that they were on NIC's side. More fundamentally, there was no common interest. Keeping in mind that the overall arrangement was the Declarants would provide declarations that NIC would then use to seek sanctions, NIC stood to benefit enormously at Declarants' expense. NIC had everything to gain from by aggressively pushing the Declarants for declarations. After all, NIC would be the party obtaining a financial and evidentiary windfall if the sanctions motion was granted. On the other hand, if the declarations were discovered to be false (as they were), NIC and its counsel could plead ignorance while the Declarants would face the legal consequences of having given materially false testimony. While NIC provided the Declarants an opportunity to act upon bizarre personal grudges, it did not share any common legal interest with them.

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1    Accordingly, there is no work product protection for communications

2    between Emord and the Declarants.

3         **3.      To the Extent any Privilege Existed, It Has Been Waived and**

4         **NTG Has a Compelling Need**

5         As seen above, Emord's communications with the Declarants are not

6    privileged.  The Declarants were not Emord's "clients," so no attorney-client

7    privilege could possibly attach to them.  Nor could those communications constitute

8    work product.  The communications were not trial preparation nor were they

9    "prepared by or for a party to the litigation or by or for that party's representative."

10   *In re California Pub. Utils. Comm'n,* 892 F.2d 778, 780–81 (9th Cir.1989)

11   (quoting Fed. R. Civ. P. 26(b)(3)).  At best, this was Emord attempting to talk non-

12   parties into providing favorable declarations, and there is nothing privileged about

13   that.  *Supra*.Part.II.D.1-2.  In terms of privilege, Emord's emails and text messages

14   with the Declarants are not different "in some relevant way from counsel's

15   communications with any other third-party witness."  *Infosystems, Inc. v. Ceridian*

16   *Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000).  But even if the communications

17   were privileged in some way, and they are not, that privilege would have been

18   waived because NIC and the Declarants put the communications at issue.

19        The "Ninth Circuit is clear: a party cannot withhold documents as privileged

20   if it fails to substantiate its privilege assertions" nor can a party "withhold privileged

21   documents when the party raises a claim or defense that put the privileged

22   communication at issue, discloses the documents to unrelated parties or discloses

23   portions of privileged documents."  *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D.

24   234, 239 (N.D. Cal. 2015).  "The principle is often expressed in terms of preventing

25   a party from using the privilege as both a shield and a sword.... In practical terms,

26   this means that parties in litigation may not abuse the privilege by asserting claims

27   the opposing party cannot adequately dispute unless it has access to the privileged

28   materials.  The party asserting the claim is said to have implicitly waived the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

privilege." *Id.*  In other words, "[d]isclosing a privileged communication or raising a claim that requires disclosure of a protected communication results in waiver as to all other communications on the same subject." *Hernandez v. Tannien*, 604 F.3d 1095, 1100 (9th Cir. 2010); *United States v. Nobles*, 422 U.S. 225, 239–40, 95 S. Ct. 2160, 2170–71, 45 L. Ed. 2d 141 (1975) ("Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.")

As the Court observed in its order addressing waiver due to the so-called "tester defense":

> The Ninth Circuit uses a three-prong test to determine whether a party has impliedly waived the attorney-client privilege. United States v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999). "First, the court considers whether the party is asserting the privilege as the result of some affirmative act, such as filing suit.  Second, the court examines whether through this affirmative act, the asserting party puts the privileged information at issue. Finally, the court evaluates whether allowing the privilege would deny the opposing party access to information vital to its defense." Id. (internal citations and quotation marks omitted).

(Dkt. 659 at 19.)

Here, NIC and the Declarants have affirmatively and extensively relied on communications between Emord and the Declarants to exonerate themselves and made affirmative representations regarding those documents.  (*Supra*.Part.II.A.2.) They claim that those communications "prove that the witnesses, NIC, and its counsel did not engage in the alleged misconduct . . . .," (Dkt. 863 at 6), and "that counsel for NIC acted with great care to ensure that the testimony presented in the

- 38 -

declarations was thoroughly vetted by the witnesses and signed only upon confirmation of the truthfulness of the representations contained therein." (Dkt. 851 at 7.) They represented that "[a]bsent from those communications is any indication that NIC counsel intended to mislead or coerce witnesses into signing an incorrect document." (Dkt. 859 at 23.) They claimed there was no coercion or promises made by NIC. MaryAnn Buc, for example, testified that "there was no coercion, influence, or promises made to me." (Dkt. 871-2 at 2.) Moreover, they appear to have settled on a defense that the falsehoods in the declaration were simple memory lapses. *See generally* Dkt. 859; *Apple Inc. v. Samsung Elecs*. Co., 306 F.R.D. 234, 241 (N.D. Cal. 2015) ("Samsung put the disputed documents at issue by raising affirmative defenses about inadvertence.").

These positions clearly put communications between Emord and the Declarants at issue. Emord, NIC, and the Declarants relied on a great many communications between Emord and NIC. *Shenwick*, 2019 WL 3815719, at *4 (finding that "Plaintiffs waived that protection by selectively allowing the witnesses to answer some but not all of the questions about the communications.")

NTG cannot address a defense that is based on the content of communications when NIC and the Declarants are selectively claiming privilege over the content of those very communications. This is doubly concerning because the Declarants have already been proven more than willing to provide false testimony. MaryAnn Buc can simply submit a declaration testifying that NIC did not promise her anything, NIC and Ms. Buc assert work product protection over emails in which NIC promises her something of value, and neither the Court nor NTG are the wiser.[5] Consequently, "allowing the privilege would deny the opposing party access to information vital to its defense." (Dkt. 659 at 19.)

---

[5] NIC has clearly been selective in asserting privilege and has not asserted in over many documents in which NIC's counsel coveys his opinion and legal impressions. (*See e.g.*, Sabovich Decl., Exhs. 24 and 25.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

The Court previously found waiver under much milder circumstances involving the so-called "tester defense."  (Dkt. 659.)  There, NTG did not directly rely on communications, as NIC and the Declarants do.  Nonetheless, the Court found that because the NTG Defendants "intend to continue asserting the tester theory as a defense . . . [f]airness requires disclosure because NIC's ability to assess the validity of the tester defense and the privileged information upon which the defense relies is vital to NIC's challenge to the tester defense."  (Dkt. 659 at 20.)  Here, NIC, Emord, and the Declarants all clearly intend to rely on the Declarants' communications with NIC as exonerating.  Those communications are necessarily vital to NTG's challenge to that defense.

For the same reasons, NTG has a compelling need for the communications between Emord and the Declarants that NIC claims are work product.  See Fed. R. Civ. Pro 26(b)(3)(A)(ii) (permitting disclosure where requesting party shows "that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means").  NICs, Emord's, and the Declarants' submission of false declarations in a significant part of NTG's RICO matter will likewise form a significant basis for an unclean hands affirmative defense.  (Dkt. 920-1 at ¶¶ 48-91.)  As the recent circumstances in which NTG's Counterclaim had to be conditionally sealed because NIC claimed an inadvertently produced document was quoted in it demonstrate, the communications between Emord and the Declarants are essential to NTG's case.  As discussed above, NIC and the Declarants have and will continue to point to the communications between Emord and the Declarants as exonerating them on the issue of intent and knowledge of falsity.  *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) ("the rule permits discovery when mental impressions are the pivotal issue in the current litigation and the need for the material is compelling").  The only means to rebut NIC's, Emord's, and the Declarants' position is with the communications between Emord and the Declarants.  Accordingly, NTG has a

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1  compelling need for the materials that NIC and Declarants claim are attorney work
2  product.

3      Accordingly, any privilege has been waived, and even if it was not, NTG has
4  a compelling need for the claimed work product.

5      **E.**    <u>**NIC and the Declarants Must Produce Phone Records**</u>

6      Finally, NIC and the Declarants have all categorically refused to produce
7  phone records.  Such records are clearly relevant since Emord and the Declarants
8  clearly used phones to communicate regarding the false declarations and NIC's
9  related filings.  (*See e.g.* Dkt. 859-4 at 2 [email from Jennifer Fernandes re "Thank
10  you – Telephone call re Trycia Carlberg."].)

11      NIC has sought and received telephone records in this litigation, so it knows
12  that production of such information is not atypical.  (*See e.g.*, Dkt. 165-1 at 7 (NIC
13  relying on "phone records of NTG's investigator . . . .").  Indeed, courts routinely
14  grant discovery of phone records and text messages.  *Trevino v. Golden State FC*
15  *LLC*, No. 117CV01300DADBAM, 2019 WL 3892356, at *5 (E.D. Cal. Aug. 19,
16  2019); *Calleros v. Rural Metro of San Diego, Inc.*, 2017 WL 4391714, at *3 (S.D.
17  Cal. Oct. 3, 2017); *Crews v. Domino's Pizza Corp.*, 2009 WL 10672572, at *3 (C.D.
18  Cal. July 31, 2009); *Quintana v. Claire's Boutiques, Inc.*, 2014 WL 3371847, at *2
19  (N.D. Cal. July 9, 2014).

20      The Declarants take the position that they do not have access to their own
21  phone records because those records are "in the control of his telephone carrier."
22  (Sabovich Decl., Exhs. 26, Nos. 12-13; 27, Nos. 13-14; and 28, Nos. 14-16.)  This is
23  without merit because discovery respondents are required to produce documents to
24  which they have a right of access.  *Smith v. Tallerico*, No. 1:08-CV-01817-DLB PC,
25  2011 WL 5826038, at *2 (E.D. Cal. Nov. 17, 2011); *Soto v. City of Concord*, 162
26  F.R.D. 603, 620 (N.D.Cal.1995). Respondents can obviously access their own phone
27  records.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

### F.      NTG Is Entitled to Its Reasonable Attorneys' Fees

NTG is entitled to its reasonable attorneys' fees under Rule 37.  Rule 37 is addressed to "Specific Motions" to Compel under Rules 26(a), 31, 30(b)(6) or 31(a)(4), 33, or 34.  Fed. R. Civ. Proc. 37(a)(3).  As to those motions, it provides that "[i]f the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. Proc. 37(a)(5)(A).  Rule 37 fees are proper unless the opposing position was "substantially justified" and "other circumstances make an award of expenses unjust."  Fed. R. Civ. Proc. 37(a)(5)(B).  A request for discovery is substantially justified "if reasonable people could differ as to whether the party requested must comply."  *Reygo Pac. Corp. v. Johnston Pump Co*., 680 F.2d 647, 649 (9th Cir. 1982).

Here, NIC's, Emord's, and Declarants' positions were not substantially justified.  Almost all those positions were complete reversals of earlier positions or representations to the Court.  Emord denied that NTG sought discovery from it after earlier asserting that NTG was doing so.  *Supra*.Part.II.B.  NIC provided only a categorical log after procuring a ruling that such a log was insufficient. *Supra*.Part.II.C.  And NIC and the Declarants offered extensive privilege objections after telling the Court that the Declarants were unrepresented parties. *Supra*.Part.II.D.

Accordingly, NTG is entitled to attorneys' fees relating to this Motion.

### G.      NTG's CONCLUSION

For the foregoing reasons, NTG respectfully requests that the Special Master order that:

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1. Emord's failure to provide a privilege log has waived all claims of privilege and work product by Emord;

2. Emord is required to respond to the document subpoenas served on them;

3. NIC's failure to provide an itemized privilege log has resulted in waiver of all claims of privilege and work product by NIC, or alternatively, that NIC is required to immediately provide an itemized privilege log consistent with *Dole v. Milonas*, 889 F.2d 885, 888 n. 3, 890 (9th Cir. 1989);

4. Emord is required to establish an attorney-client relationship with through documentary evidence or testimony that is either contemporaneous or predates any assertion of attorney-client privilege, including through the production of a retainer agreement;

5. Responding Parties have failed to establish an attorney-client relationship between Emord and the Declarants, or alternatively, that such a relationship did not exist before February 12, 2020;

6. NIC and the Declarants have failed to establish attorney-client privilege and/or work product protection for all documents contained in NIC's and the Declarants' itemized privilege log.  (Exh. 19.)  Alternatively, all documents contained in their itemized log must be produced to the Special Master for *in camera* review;

7. NIC, Emord, and the Declarants have impliedly waived any claim of privilege or work product over communications between Emord and the Declarants;

8. There is no attorney-client privilege or attorney work product over the documents that NIC claims were inadvertently produced (DEC_00747-53 and DEC_00754-60);

9. The Counterclaim at Docket 918 is to be unsealed;

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

10. Emord, NIC, and the Declarants are required to produce responsive phone records; and

11. NIC, Emord, and the Declarants are required to pay NTG's reasonable attorneys' fees and costs pursuant to Rule 37(b).

## III.   NIC'S AND THE DECLARANTS' POSITION

Plaintiff/Counter-Defendant Natural-Immunogenics Corp. ("NIC"), Counter-Defendants Jim Buc, Maryann Buc, Charlotte Carlberg (collectively, the "Declarants"), Peter Arhangelsky, Emord & Associates ("Emord"), and Non-Parties Joshua Furman and Jennifer Fernandes (collectively, the "Responding Parties") hereby oppose Defendants Newport Trial Group and Scott Ferrell's ("NTG" or "Defendants") Motion to Compel.  The District Court permitted Defendants to issue limited, written discovery into the knowledge and credibility of three non-party witnesses, the Declarants.  *See* Dkt. 891 at 18 ("[E]vidence pertaining to their credibility would be relevant for trial").

When issuing that order, the District Court reviewed the same evidence that NTG now presents to the Special Master.  Judge Selna reviewed the correspondence between NIC and the Declarants (which NIC produced to the Court).  *See* Dkt. 891 at 3-9.  The Court also considered NTG's evidence pertaining to the alleged falsity of the Declarants' testimony.  *Id.*  The Court described that evidence in detail in its February Order.  *See id.* at 8-9.  Having reviewed the same evidence, the Court held:

> [T]he evidence does not show that NIC or its counsel tampered with witness testimony or was aware of the falsehoods in the declarations.  Further, NTG's arguments regarding 'NIC's pre- and post-filing witness obstruction' also lacks merit.

Dkt. 891 at 18.

The discovery contemplated by the District Court in Dkt. 891 was narrow.  It concerned the non-party witnesses' testimony and credibility.  Defendants nonetheless served facially overbroad and burdensome discovery.  They issued more

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

than 400 document requests to the non-party witnesses, NIC's counsel, and NIC. That included four (4) separate subpoenas to NIC's Counsel and individual members of opposing counsel's law firm. *See* Exhs. 9-15. Those discovery requests were designed to reach unquestionably privileged information from within NIC's litigation files. The subpoenas violate Rule 45(d)(1), but also the plain meaning of the District Court's order. The District Court never granted Defendants leave to serve subpoenas on NIC's counsel.

Defendants' discovery was wholly disproportional with the needs of this case as defined by the District Court's order. Rather than proceed in good faith with due proportionality, the Defendants discovery on its face reveals a clear intent to abuse discovery by exceeding the ordered limits in a transparent effort to harass a litigation opponent, its counsel, and non-party witnesses.

The Responding Parties nonetheless made timely, good faith productions, supplying all responsive, non-privileged documents within NIC's and the Declarants' possession, custody, and control. With one limited exception (a privileged document discussed below), Responding Parties produced all communications exchanged between NIC (and its counsel) and the Declarants prior to September 27, 2019. *See* Exhibits A, B, C. They provided detailed responses and objections. Exhs. 19, 20, 22, 26, 27, 28. They provided an itemized privilege log for all communications and documents exchanged between NIC (and its counsel) and the Declarants. *See* Exh. 19. NIC provided a categorical privilege log for the thousands of documents within NIC's internal litigation file, which are clearly privileged. *See* Exh. 22. The Responding Parties negotiated modifications to Defendants' facially overbroad and objectionable discovery requests endeavoring to eliminate disputes. *See* Exh. 1-5. Put simply, the Responding Parties produced every document to which the Defendants are entitled under the Rules, the District Court's order, and the law. That production was substantial, supplying hundreds of files, including text message communications exchanged between the Declarants

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

and NIC's counsel, along with email correspondence concerning the Declarant's testimony in this case.

The Defendants now file a motion to compel lacking merit. The issues in controversy primarily concern privileged correspondence exchanged between NIC's counsel and the Declarants, or within NIC Counsel's litigation file. Seeking discovery into opposing counsel's litigation files is facially improper, and Defendants have not justified their pursuit. The Special Master should restore required proportionality and compliance with the District Court's discovery limits by denying the Defendants' motion in its entirety.

The Defendants' motion should be denied entirely for the following specific reasons.

First, NIC and the Declarants have produced privilege logs for all withheld documents, and those logs satisfy Rule 26(b)(5) and applicable precedent under these circumstances.

Second, the documents withheld are subject to the attorney-client privilege and work product doctrine because they were created for the purpose of defending NIC, Emord, and the Declarants from NTG's spurious motions for sanctions and threats of suit. That material would not exist but for the prospect of imminent and active litigation.

Third, all of the withheld privileged and work product material falls within the Joint Defense Privilege/Common Interest Doctrine because it was prepared for the common purpose of defending against Scott Ferrell's frivolous accusations and threats. *See* Exh. G; *see also* Exh. I. The parties to those communications have executed a Joint Defense Agreement that memorializes their intent (retroactive to when they first began working together) to prepare documents for their common defense and interest. *See* Exh. G.

Fourth, NTG's subpoenas to Emord and its employees were unauthorized and violated Rule 45(d)(1) by demanding redundant, cumulative, and unnecessary

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

documents that have already been produced by NIC and the Declarants.  NTG cannot identify any relevant documents responsive to those subpoenas that were not already been produced or logged in response to NTG's Rule 34 Requests to NIC or NTG's subpoenas to the Declarants.

Finally, phone records sought by NTG are entirely irrelevant to claims and defenses in this case, and are not proportional to the needs of the case.

The Special Master should therefore entirely deny the Defendants' motion and find the discovery disproportional with the needs of this case.  In addition, NIC hereby requests under Rule 37(a)(5)(B) a protective order limiting NTG's discovery to reasonable boundaries.  *See* Fed. R. Civ. Pro 37(a)(5)(B); Fed. R. Civ. Pro 45(d)(1) (requiring the court to impose reasonable limitations and sanctions).  The Special Master should award the Responding Parties their attorney fees and costs under Rules 37(a)(5)(B) and 45(d)(1) in light of Defendants' substantially unjustified motion.

## I.   FACTS

### A.  NIC's Motion for Sanctions and the Sanctions Declarations

On March 1, 2019, the District Court ruled that Scott Ferrell did not have an attorney-client relationship with Trycia Carlberg (a friend of Scott Ferrell's wife who died in May 2012) when he sent a demand letter to NIC on December 27, 2011.  *See* Dkt. 785 at 10-14.  The Court issued that order after reviewing all of the evidence submitted by NIC and Defendants, which included an *in camera* declaration by Scott Ferrell.  *Id.* at 14 (finding that the evidence did not show the existence of an attorney-client relationship).  Following that decision, the Court granted NIC's application to publicly docket the Scott Ferrell declaration.  Dkt. 809.  NTG also served a supplemental production on July 3, 2019, which contained a documentary called "Enter Stage 4," a film that documented Trycia Carlberg's final years.  *See* Dkt. 859-1 at ¶3 (JAF Declaration).

CALLAHAN & BLAINE

A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

In July 2019, NIC's counsel examined the Ferrell declaration and the documentary record supplied, during which time it interviewed the producer of the documentary.  *See* Dkt. 859-1 at 2-3 (JAF Decl.).  That individual referred counsel to Trycia Carlberg's mother, Charlotte Carlberg, and Trycia Carlberg's close friends, Maryann and Jim Buc for more information.  *Id.*  Those witnesses reviewed the statements Scott Ferrell made concerning Trycia Carlberg and said the statements were false in material respects.  *Id.* at 2-3.  The witnesses provided information supportive of their recollections regarding Trycia's activities in 2011 and 2012.  *Id.* at 3-10.  Specifically, the witnesses had percipient testimony (from (in the case of the Bucs) buying her medications and (in the case of Charlotte) witnessing her taking medications) that Trycia did not purchase or consume NIC's product and that Trycia Carlberg was at her mother's home on Christmas Eve 2011, not at the Ferrell's home (facts, among others, contradicting Ferrell's declaration).  *Id.*  Charlotte Carlberg possessed a photograph that showed Trycia Carlberg at her home on Christmas Eve 2011.  *See* Dkt. 859-5.

The evidence in the record that remains uncontroverted establishes that Trycia Carlberg was not an NTG client in late December 2011.  *See, e.g.,* Dkt. 785 at 10-14; Dkt. 732-1 at 10-11.  Indeed, NTG has <u>no evidence</u> showing that Trycia Carlberg purchased NIC's product, agreed to be a plaintiff in litigation against NIC, or suffered any harm from NIC's product.  Dkt. 785 at 10-14.  Moreover, NTG's internal documents prove that NTG did not have a client at the time.  *See* Dkt. 732-1 at 10.  For those reasons, the District Court earlier held that Scott Ferrell did not establish an attorney-client relationship with Trycia Carlberg at the time, despite his self-serving testimony to the contrary.  Dkt. 785 at 14.  Judge Selna also acknowledged Scott Ferrell's pattern of false or misleading statements in this case, and the fact that his testimony directly contradicted NTG's prior discovery responses.  *See* Dkt. 785 at 12-13; *see also* Order, Dkt. 708 at 11-14.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

Based on the statements and evidence contradicting the Ferrell declaration, NIC prepared a motion for sanctions against Ferrell for the submission of an apparently false declaration regarding his December 27, 2011 demand letter. Dkt. 844. From August 2019 through September 19, 2019, NIC's counsel and the Declarants prepared declarations based on those Declarants' recollection of events. *See* Dkt. 859-1 at ¶¶16-63. NIC's counsel repeatedly instructed the Declarants to present testimony that was truthful and accurate in every particular, as is reflected not only in declarations of the Emord paralegal with whom the witnesses interacted but also in the correspondence and in the declarations of the Declarants' themselves. *See* Exh. A (chronological emails exchanged between Emord and Declarants; *see also* Dkt. 891 at 8-9 (Judge Selna citing instances where witnesses made revisions to declarations). The Declarants each revised their declarations for accuracy not once but numerous times. Exh. A at 8, 10, 17, 20, 45-46, 50, 67, 70, 107. The Bucs rewrote their declarations to comport with their understanding of the facts. *See* Exh. A at 45-47; Exh. C at 2.

Before NIC filed its Motion for Sanctions, NIC's counsel sent a detailed meet and confer letter to Defendants' counsel explaining the bases for the motion and requesting a telephonic conference. *See* Dkt. 859-27. Defendants' counsel provided no substantive response. Dkt. 859-3 at ¶¶5-8 (Furman Decl.). During the telephonic meet and confer, Defendants' counsel, did not give any substantive response. Defendants' counsel neither mentioned nor supplied any contradictory evidence, never stated that his client possessed any evidence contrary to the Declarants, and simply stated his client would oppose the motion. *Id.* In retrospect, it is clear that those failures to supply a substantive response establish a lack of good faith, as the evidence was in NTG's possession and was employed in an effort to gain tactical advantage in the NTG Opposition and manufacture a basis to impugn the integrity of opposing counsel.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

On September 19, 2019, NIC filed its Motion for Sanctions supported by the Declarants' declarations.  *See* Dkts. 844-3, 844-4, 844-5 (the "Sanctions Declarations").  On September 27, 2019, Defendants filed an opposition, which included a request for sanctions against the Declarants, NIC, and Emord.  Dkt. 846.  The request for sanctions included unsupported allegations of perjury, subornation of perjury, and criminal conspiracy.  *Id.* at 8 (NTG seeking sanctions "regarding perjury, and regarding subornation of perury as to Plaintiff NIC and non-party declarants Charlotte Carlberg, MaryAnn Buc and Jim Buc").  NTG's opposition and request for sanctions attached documents that purport to show Trycia Carlberg at Scott Ferrell's home late on Christmas Eve 2011.  *See* Dkt. 891 at 7-9.

That same day, September 27, 2019, Scott Ferrell sent two private investigators to the home of Charlotte Carlberg.  Dkt. 891 at 5-6.  Those investigators indicated that Carlberg would face litigation from Ferrell in retaliation for her declaration unless she withdrew it and executed another prepared by Ferrell.  *See* Exh. I (Decl. of C. Carlberg at ¶3).  Scott Ferrell also had a private investigator contact MaryAnn and Jim Buc on September 27 and 28, 2019.  *See* Dkt. 891 at 5-6.  That investigator likewise threatened the Bucs with litigation from Ferrell in retaliation for their declarations:

> Mr. Ferrell has asked the Judge to hold you in contempt of court for filing a false declaration.  He advised us that he has submitted overwhelming evidence to support his position.  You may wish to hire an attorney to represent yourself here, as the penalties for perjury can be very severe if a judge so determines.  Mr. Ferrell is very upset and told us he had **prepared a lawsuit that he intends to file against you early next week** because you falsely accused him of a crime.  If you wish to withdraw your declaration and correct the record before this escalates, he invites you to do so by signing a new, truthful declaration.

*See* Dkt. 891 at 6-7 (quoting text message sent from Ferrell's investigator to the Bucs) (emphasis added).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    On September 30, 2019, based on the evidence undisclosed by Defendants

2    until they filed their Opposition, NIC perceived an evidentiary dispute fit for a jury

3    and not for the Court on a sanctions motion.  NIC thus promptly filed a notice of

4    withdrawal of the Motion for Sanctions.  Dkt. 847.  NIC also withdrew the

5    Sanctions Declarations.  *Id.*  NIC explained in its notice of withdrawal that the

6    evidence newly revealed in NTG's Opposition [Dkt. 846] created disputes of fact

7    not appropriate for resolution on a motion for sanctions.  *See* Dkt. 847 at 2-3.  In

8    response, Defendants filed a request to have the Court rule on their pending request

9    for sanctions.  Dkt. 848.  The Court declined Defendants' invitation, declared NIC's

10   Motion for Sanctions moot, and took no further action.  Dkt. 852 (Order re Motion

11   for Sanctions).

12   **B. <u>Defendants' Motion for Sanctions</u>**

13   Defendants filed a renewed motion for sanctions on October 14, 2019.  *See*

14   Dkt. 855.  That Motion specifically sought relief against NIC, the Declarants, and

15   NIC's Counsel ("Emord & Associates, PC") based on frivolous and unsupported

16   allegations of criminal conduct, including perjury, subornation of perjury, fraud on

17   the court, and witness tampering.  *See id.*  The Defendants contemporaneously filed

18   a motion for leave to take discovery into the Sanctions Declarations and the

19   Declarants' credibility.  *See* Dkt. 856.  NIC opposed both motions.  As part of NIC's

20   Opposition, NIC filed with the Court all of the pertinent communications exchanged

21   between NIC's Counsel and the Declarants regarding the preparation of the Carlberg

22   and Buc declarations.  *See* Dkt. 859-4 through 859-26.[6]  The Declarants also

23   supplied declarations denying any attempt to alter their testimony, reconfirming

24   their testimony, and explaining that the Sanctions Declarations were accurate and

25

26

_____

27   [6] NIC also submits for the Court's convenience copies of all such

28   communications here as Exhibit A (emails), Exhibit B (text messages with C. Carlberg), and Exhibit C (text messages with M. Buc).

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1   complete recitations of their perceptions and understanding of the facts.  *See* Dkt.

2   871-1 (Carlberg Decl.); Dkt. 871-2 (M. Buc Decl.); Dkt. 871-3 (J. Buc Decl).

3       On December 13, 2019, the District Court issued a tentative order that

4   rejected Defendants' unsupported assertions of crimes, perjury, subornation of

5   perjury, fraud on the court, and witness tampering.  *See* Exh. E.  The Court wrote

6   that Defendants presented no evidence to support their allegations.  *Id.* at 12.  The

7   Court further wrote that "While the NTG defendants have presented evidence that

8   refutes information contained in the NIC Witnesses' declarations, they have not

9   shown evidence of intent to deceive."  Exh. E at 12.  The Court repeated the same

10  language that eventually appeared in the final order.  *Compare* Exh. E at 12 ("[T]he

11  fact remains that there is no evidence that NIC or its counsel tampered with witness

12  testimony or was aware of the falsehoods contained in the declarations"), *with* Dkt.

13  891 at 18 ("the evidence presented does not show that NIC or its counsel tampered

14  with witness testimony or was aware of the falsehoods contained in the declarations.

15  Further, NTG's arguments regarding 'NIC's pre- and post-filing witness

16  obstruction' also lack merit").

17      The Court consistently noted that NTG lacked evidence:  "Although NTG

18  also argues that at best NIC acted recklessly and with an improper purpose, the

19  Court does not find before it any evidence supporting these claims."  Exh. E at 12.

20  The Court evaluated the email correspondence between NIC and Carlberg in August

21  2019.  *Id.* at 13.  Judge Selna explained that "the email only further confirms

22  [NIC's] attempts to ensure the accuracy of the NIC Witnesses declarations by

23  agreeing to revise anything that Charlotte Carlberg believed was inaccurate."  *Id.*

24      While the Court's Tentative Order is not the final Order of the Court, and is

25  certainly not precedent, it nonetheless reflects a clear position from the District

26  Court that NTG's attacks on counsel were unsupported.  *See* Exh. E at 12-13.

27  Nothing in the final Order reflects any change in the Court's opinion on that point

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

and, in fact, the final Order memorializes the Court's same position. *See* Dkt. 891 at 18.

At oral argument, however, the Court was alerted to a procedural deficiency in Defendants' motion. *See* Dkt. 891 at 12 (noting that "at oral argument … NTG provided no precedent or citations in support of its argument[,] [n]or do any of the cases cited in its brief support this argument"). Thus, after oral argument, the Court issued a Final Order that denied the motion on procedural grounds. *See* Dkt. 891 at 13 ("Given that the Court cannot treat this request as a motion for sanctions and there is no basis upon which the Court can grant relief, NTG's request is denied."). The Court thus removed its substantive discussion on the merits of Defendants' motion, and instead dismissed the motion because it was procedurally meritless. *See* Dkt. 891 at 11-13 ("NTG cannot sidestep [the procedural requirements] . . . [e]specially where NIC promptly withdrew its motion for sanctions once NTG filed its opposition and presented evidence that refuted the declarations."). Importantly, the Court's perspective on Defendants' lack of evidentiary support for the spurious allegations against NIC and its counsel was memorialized in the Court's final order:

> [T]he evidence presented does not show that NIC or its counsel tampered with witness testimony or was aware of the falsehoods contained in the declarations. Furthermore, NTG's arguments regarding "NIC's pre- and post-filing witness obstruction" also lack merit.

Dkt. 891 at 18.[7] When making that finding, the Court rejected Defendants' argument that a specific email communication from Charlotte Carlberg in August 2019 indicated that her declaration was knowingly false. *See* Dkt 891 at 8

---

[7] Despite those factual conclusions, Defendants repeat the very same false allegations against NIC and its counsel in their motion to compel. The record on which the Defendants make those false allegations is substantively the same as before the District Court in Docket No. 891. Those repeated false statements violate Fed. R. Civ. P. 11 as they have already been found rejected by the Court.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1   (describing evidence of communications with Charlotte Carlberg in August 2019);

2   *id.* at 17-18.

3         Although the Court rejected NTG's accusations against NIC's counsel, the

4   Court found limited discovery from the Declarants relevant to the extent they were

5   listed on NIC's Rule 26 disclosures as potential witnesses and that Defendants were

6   entitled to investigate those witnesses' credibility.  *See* Dkt. 891 at 18.  The Court

7   explicitly rejected NTG's theory that the Declarants conspired with Emord and NIC

8   to commit fraud on the Court or that NIC and Emord tampered with witnesses.  *See*

9   *id.*  Thus, the Court made no finding or ruling that NTG could seek discovery into

10   its unsupported allegations against NIC or its counsel.

11   ### C. <u>NTG Issues Scorched Earth Discovery</u>

12         On February 12, 2020, NTG issued requests for production on NIC, along

13   with seven Rule 45 subpoenas to then-non-parties Charlotte Carlberg, Maryann Buc,

14   Jim Buc, Joshua Furman, Peter Arhangelsky, paralegal Jennifer Fernandes, and

15   Emord & Associates.  *See* Exhs. 9-15; Exh. H (NTG Rule 34 Requests to NIC).

16   Defendants' Rule 34 requests and subpoenas contained four hundred and sixty (460)

17   document requests.  *See* Exhs. 9-15; Exh. H.  That single round of discovery

18   doubled the total number of document requests that NTG issued in this entire four-

19   year RICO lawsuit.  *See* Arhangelsky Decl. at ¶3.  Put differently, on this narrow

20   issue regarding the credibility of Carlberg's and the Bucs' testimony, NTG served

21   about as many document requests as it had served in the entire four-year RICO

22   lawsuit that involves sixty predicate acts.

23         Defendants' requests are facially overbroad, seek irrelevant information, were

24   not properly tailored, and are redundant and cumulative.  *See* Exhs. 9-15; Exh. H

25   (NTG Rule 34 Requests to NIC).  A facial review of those requests shows that NTG

26   essentially copied requests verbatim in each subpoena or Rule 34 request.  Given the

27   responsive documents, the universe of responsive files was identical (or

28   substantially overlapping) across each responding party.  *Compare* Exhs. 9, 10, 11,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 54 -

12, 13, 14, 15; Exh. H (NTG Rule 34 Requests to NIC).  Similarly, NTG's requests were redundant and sought the very same documents from each of the eight Responding Parties.  *Id.*  Even where these requests were not copied verbatim, many requests were entirely redundant and overlapping but presented with slightly different language.  *Id.*

The Requests were also overbroad on their face.  As several examples among many, NTG requested "all" documents and communications that Charlotte Carlberg exchanged with her close friends MaryAnn and Jim Buc (who are referred to as Trycia's "Aunt and Uncle") regarding her daughter, Trycia Carlberg, without *any* temporal or subject matter limitations.  *See* Exh. 9 at 7.  NTG also requested "all text messages [Carlberg] sent or received from August 9, 2019 to November 13, 2019" again without *any* subject matter limitations.  *Id.* at 5.

By serving eight overlapping and overbroad requests, NTG vexatiously and needlessly increased the volume of discovery without regard to whether those cumulative requests provided any probative value whatsoever.  *See* Exhs. 9-15; Exh. H.  In Ferrell's Rule 34 requests to NIC, he expressly defined NIC to include its attorneys, thus reaching through the RFPs all information in NIC Counsel's possession:

> "YOU," "YOUR," "NIC," or "PLAINTIFF" shall mean Plaintiff NATURAL-IMMUNOGENICS CORP., and its agents, **attorneys**, associates, employees, representative, and any other person acting or purporting to act on its behalf.

*See* Exh. H at 2 (Definitions Section of Ferrell's Rule 34 Requests to NIC) (emphasis added).  He nonetheless issued four (4) additional subpoenas to NIC counsel.  *See* Exhs. 10, 11, 13, 15.  One of those additional subpoenas was to "Emord & Associates, P.C.," the firm representing NIC in this litigation.  *See* Exh. 10.  That subpoena defined Emord to include its individual attorneys:

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

> "YOU," "YOUR" shall mean and refer to Emord & Associates, P.C. and any of its **attorneys, agents, paralegals, employees**, or other persons acting on its behalf.

*See* Exh. 10 at 1 (Definitions Section of Ferrell's SDT to Emord & Associates) (emphasis added). Ferrell nonetheless served each specific attorney and staff member of Emord with individual subpoenas that requested he exact same information.

The requests to NIC were designed to seek NIC and its counsel's privileged information outside the scope of discovery under Rule 26(b)(1). *See* Exhs. 10, 11, 13, 15; Exh. H. NTG's requests targeted information created or exchanged within the protected attorney-client relationship. *See, e.g.,* Exh. H (Request Nos. 13-57). For instance, NTG requested all documents from NIC "related to" a number of briefs or motions that NIC filed in this suit. *See, e.g.,* Exh. H at 5-10 (seeking documents such as "All communications related to [NTG's] Motion for Leave to Conduct Discovery Regarding False Declarations Filed by NIC, filed on October 14, 2019 as Docket 856). NTG also requested all documents from NIC "related to" investigations that NIC's counsel performed in this suit. *Id.* at 5 (Requests 14, 16, 26, 27). NTG therefore sought production of NIC counsel's *internal correspondence* exchanged between and among NIC's trial counsel in this lawsuit relevant to briefs and motions filed before the Court. Those requests specifically targeted a litigation opponent's work product and attorney-client privileged files.

NTG requested the phone records of non-parties Charlotte Carlberg, Maryann Buc, and Jim Buc for blocks of time in 2019 without regard to relevance. *See* Exh. 9 at 5; Exh. 12 at 5; Exh. 14 at 5. NTG also requested the personal phone records of opposing counsel and their staff, Joshua Furman, Peter Arhangelsky, and Jennifer Fernandes (Emord's paralegal). Exh. 11 at 3; Exh. 13 at 3; Exh. 15 at 3. NTG has never articulated a legitimate basis for requesting that information, and has not explained how the phone logs (e.g., dates and times of phone calls) would be

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

relevant to any issue here in dispute.  Those requests are transparently designed to harass and burden non-parties and opposing counsel.

Despite the harassing and improper nature of NTG's discovery efforts, the Declarants and NIC timely provided fulsome responses and objections.  *See* Exhs. 17, 19, 20, 22, 26, 27, 28.  Responding Parties produced all non-privileged documents and communications responsive to the requests, and provided privilege logs for the privileged documents withheld.  *Id.*  NIC and the Declarants produced all but one email chain and communication exchanged between NIC and the Declarants prior to the date when NTG threatened litigation against those parties on September 27, 2019.[8]  *See* Exh. A (emails produced); Exh. B (text messages with C. Carlberg); Exh. C (text messages with M. Buc).  With nothing to hide, NIC had already produced nearly all of those communications to Judge Selna as part of the underlying briefing leading to the Court's decision in Dkt. 891.  *See* Dkt. 859-4 through 859-26.  Thus, NTG possesses every single communication and document associated with the preparation of the Sanctions Declarations—those communications are the only files germane to NTG's allegations, albeit they establish beyond peradventure of doubt the utter baselessness of NTG's allegations of criminal misconduct against NIC and its counsel.  *See* Exhs. A, B, C.[9]

NIC and the Declarants also provided a 27-page itemized privilege log asserting appropriate privilege and work product objections to documents that were prepared under a Joint Defense Agreement and common interest privilege associated

---

[8] NIC withheld just one privileged email chain from August 2019 between Emord and the Declarants that was produced with redactions.  *See* Exh. 19 at 1 (asserting privilege over August 16th and 18th communications).  As discussed below, that privileged email chain from August 2019 does not relate to the content of witness declarations, but instead concerns plainly privileged legal strategy and advice requested by and given to the Declarants.  *See* Arhangelsky Decl. at ¶4.

[9] Other than through counsel, no officer, employee, or owner of NIC communicated with the three Declarants at any time.  *See* Dkt. 859-2 at ¶6 (Arhangelsky Decl.).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

with the common defense against Scott Ferrell's spurious and active threats of retaliatory litigation (first raised on September 27, 2019).  *See* Exh. 19.  Beginning on September 27, 2019, Ferrell threatened the Declarants with retaliatory litigation.  *See* Dkt. 891 at 6-7.  Two weeks later, he filed a motion seeking significant sanctions against the Declarants, NIC, and NIC's counsel.  *See* Dkt. 855.  Consistent with his threats, in April 2020, without required leave of Court and after the deadline for counterclaims and adding parties in the Scheduling Order [Dkt. 883 at 1], Ferrell filed Counterclaims naming NIC, its counsel, and the three Declarants as Counterclaim-Defendants.  *See* Dkt. 951.  The Declarants, NIC, and NIC's Counsel have entered a Joint Defense Agreement related to Ferrell's allegations.  *See* Exh. G. That agreement retroactively covered communications exchanged between the parties in response to Ferrell's threats beginning in late September 2019.  *Id.* at ¶ F(1).

NIC provided a detailed but categorical privilege log only for documents exchanged exclusively within Emord & Associates or between Emord and NIC in this instant lawsuit.  *See* Exh. 22.  NTG's subpoenas to Emord, its attorneys, and its paralegal were not authorized by the Court's Order at Docket No. 891.  NTG agreed that Emord, Joshua Furman, Peter Arhangelsky, and Jennifer Fernandes could respond to the four subpoenas issued to them individually in one responsive document.  *See* Exh. 18.  Emord thus served objections to those unauthorized subpoenas in one consolidated response.  *See* Exh. 17.

The record demonstrates that NIC and the Declarants have produced all non-privileged records associated with the discovery allowed by the Court in Docket No. 891.  Thus, the issues before this Court focus on whether privileged files must be produced.

### D. **The Responding Parties Prepare a Common Defense**

On September 27, 2019, NTG moved for sanctions against the Declarants, NIC, and Emord based on a frivolous conspiracy theory already rejected by the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

District Court (that NIC and its counsel "solicited, drafted, and presented the Court with three pervasively perjured declarations" and attempted to frame Scott Ferrell for multiple felonies). *See* Dkt. 891 at 12 (describing NTG's allegations). Scott Ferrell also threatened to sue the Declarants based on the same conspiracy theory beginning on September 27 and 28. *See* Dkt. 891 at 6-7 (quoting investigator's messages).[10] Ferrell actually filed a Counterclaim in this case asserting the factually and legally frivolous conspiracy theory as a RICO claim against the Declarants, NIC, NIC's officers, Emord, and NIC's lead counsel, Peter Arhangelsky. *See* Dkt. 951.

Thus, from and after September 27, 2019, the Declarants, NIC, and Emord have been under an imminent and actual threat of retaliatory litigation by Scott Ferrell. From that date forward, the Responding Parties have been cooperating to prepare a common defense to those allegations which NTG has repeatedly asserted in motions, briefs, pleadings, and letters. *See, e.g.,* Dkt. 846 (NTG Opp. and Request for Sanctions); Dkt. 848 (NTG response again asking for sanctions); Dkt. 855 (NTG Request for sanctions against NIC and three witnesses); Dkt. 918 (NTG Counterclaim alleging RICO claims against NIC, its owners, its counsel, and three witnesses); Dkt. 951 (Public Redacted Counterclaim alleging RICO claims).

Emord performed work on behalf of all Responding Parties to defend against the spurious allegations and threats made by Scott Ferrell. *See* Exh. I (Declarations of C. Carlberg, J. Buc, and M. Buc); Decl. of P. Arhangelsky (attached). Emord offered representation to the Declarants as early as August 2019. *See* Decl. of C. Carlberg (attached); Decl. of J. Buc (attached); Decl. of M. Buc (attached). When it became necessary in response to NTG's subpoenas, the Declarants formally retained Emord in February 2020. *See* Arhangelsky Decl. at ¶5. The Responding Parties have also entered a Joint Defense Agreement, which memorializes the terms that the

_____

[10] Ferrell raised those threats several times, including through correspondence on January 31, 2020. *See* Exh. F at 2 n.1.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

parties understood starting in August.  *See* Exh. G; *see also* Exh. I (Declarations of C. Carlberg, J. Buc, and M. Buc).  That agreement is expressly retroactive to include communications and documents prepared in defense of Scott Ferrell's false allegations.  *See* Exh. G at 2-3.  That agreement reaches communications exchanged for the purpose of developing strategies to protect against Scott Ferrell's retaliatory tactics in litigation.  *Id*.  The Declarants explain by declaration testimony that, at all relevant times after September 27, 2019, they were communicating with Emord & Associates under the joint defense privilege with the expectation and understanding that Emord would represent their interests against Scott Ferrell.  *See* Exh. I (Declarations).  Documents subject to that Joint Defense Privilege are logged in the itemized privilege log.  *See* Exh. 19.

## II.   <u>LEGAL STANDARD</u>

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  The parties, their counsel, and the Court have an independent obligation to consider proportionality under Rule 26(b)(1) when propounding discovery and resolving disputes over same.  *Id.*; *Sullivan v. Riviera Holdings Corp.*, No. 2:14-CV-165-APG-VCF, 2015 WL 13678959, at *2 (D. Nev. Apr. 20, 2015) ("Under Rule 26, the court is required to tailor discovery to the nature of the parties' claims, defenses, and burdens in attempting to comply with their discovery obligations."); *Montanans for Cmty. Dev. v. Motl*, No. CV 14-55-H-DLC, 2015 WL 13716091, at *2 (D. Mont. Aug. 7, 2015) ("The party seeking discovery must carefully tailor its requests").

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

That duty applies with greater force to discovery propounded on non-parties. *In re Wells Fargo Bank, N.A.*, No. 18-CV-2617-BAS-MDD, 2019 WL 2223934, at *3 (S.D. Cal. May 22, 2019), *review denied*, No. 18-CV-2617-BAS-MDD, 2019 WL 3069211 (S.D. Cal. July 12, 2019) ("Because non-parties are given even greater protections by the Court in the discovery process than parties, [Movants'] burden is higher."); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) ("the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.").  The Court and parties are to consider the burdens imposed on non-parties with greater sensitivity and should endeavor to limit those burdens where possible, particularly if discovery is available from a party instead.  *See, e.g., Haworth v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (denying request for discovery from nonparty because the discovery sought was clearly available from a party opponent); *Kim v. NuFasive, Inc.*, 2011 WL 3844106, at *3–4 (S.D.Cal. Aug. 29, 2011) (same); *Realtime Data, LLC v. MetroPCS Texas*, LLC, No. C 12-80130 LHK PSG, 2012 WL 3727304, at *2 (N.D. Cal. Aug. 28, 2012) (same).

"Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance."  *Murrey v. City of Los Angeles*, No. CV 19-2501 FMO (AS), 2020 WL 2065019, at *2 (C.D. Cal. Feb. 21, 2020) (quoting *United States v. McGraw-Hill Companies, Inc.*, No. CV 13-0779, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014)).  "Further, district courts have 'broad discretion' to control discovery and in determining relevancy for discovery purposes."  *Id.* (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

Where a responding party withholds documents on the basis of privilege, that withholding party initially bears the burden of asserting privilege in a manner that allows the other party to assess the claim.  *See* Fed. R. Civ. P. 26(b)(5).  However, once that showing is made, "a presumption of privilege then applies to the communication, and the burden shifts to the party opposing the claim 'to establish

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  the communication was not confidential or that the privilege does not for other

2  reasons apply.'"  *Hawkins v. Kroger Co.*, No. 3:15-CV-02320-JM-AHG, 2020 WL

3  1952832, at *19 (S.D. Cal. Apr. 23, 2020) (quoting *Costco Wholesale Corp. v.

4  Superior Court*, 219 P.3d 736, 741 (Cal. 2009)).  As discussed below, NTG has not

5  met its burden to show that privileges do not apply.

6  **III.   ARGUMENT**

7    **A.  NIC's Categorical Privilege Logs Are Appropriate for Facially Protected

8        Categories of Communications**

9      **1.  The Form and Method of Substantiating Privilege Objections Is a

10          Case-by-Case Analysis that Depends on the Specific Circumstances**

11     Rule 26(b)(5) governs the assertion of privilege over documents in federal

12  court.  *See* Fed. R. Civ. P. 26(b)(5).  To assert privilege, the withholding party must

13  expressly make the claim and "describe the nature of the documents,

14  communications, or tangible things not produced or disclosed—and do so in a

15  manner that, without revealing information itself privileged or protected, will enable

16  other parties to assess the claim."  *Id.*  The Advisory Committee Notes explain that

17  what "enable[s] other parties to assess the claim" is fact and circumstance specific.

18  *See* Rule 26(b)(5) Committee Notes to 1993 Amendment ("The rule does not

19  attempt to define for each case what information must be provided when a party

20  asserts a claim of privilege or work product protection.").  Notably, the Committee

21  Notes expressly recognize that "[d]etails concerning time, persons, general subject

22  matter, etc., may be appropriate if only a few items are withheld, but may be unduly

23  burdensome when voluminous documents are claimed to be privileged or protected,

24  **particularly if the items can be described by categories.**"  *Id*. (emphasis added).

25     The Special Master, in earlier discovery disputes, ruled that *Dole v. Milonas*,

26  889 F.2d 885, 888 n. 3, 890 (9th Cir. 1989) sets mandatory minimum requirements

27  for privilege logs in the Ninth Circuit.  *See* Dkt. 661 at 2 (requiring "privilege log

28  that complies with *Dole v. Milonas*").  Respectfully, that conclusion is legally

erroneous. *Dole* was decided in 1989, and Fed. R. Civ. P. 26(b)(5) was added to the Rules four years later in 1993. *See* Fed. R. Civ. P. 26(b)(5) Advisory Notes ("Paragraph (5) is a new provision."). Before 1993, the Rules provided no direction on how to substantiate a claim of privilege. *Id.* The language of Rule 26(b)(5) suggests, and the Committee Notes expressly state, that an itemized privilege log is not required in circumstances where the burden would be great, and the documents can instead be described by category. *Id.*

The purpose of a privilege log is simply to explain the nature of privilege asserted in a manner that allows the opposing party to evaluate those privilege concerns. Thus, Courts that have addressed the question of what must be provided to substantiate privilege have explained that *Dole* does not set a binding rule, but that courts are now to consider each circumstance under Rule 26(b)(5) on a case-by-case basis. *See e.g., Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, No. 2:11-CV-3471, 2017 WL 445722, at *10 (E.D. Cal. Feb. 2, 2017), *reconsideration denied*, No. 2:11-CV-03471, 2017 WL 1382483 (E.D. Cal. Apr. 18, 2017) (summarizing the history of Rule 26(b)(5) and *Dole*). Notably, *Dole* did not squarely address the question of what was required on a privilege log, but simply noted, in a footnote, that the log in that case was sufficient. *Dole*, 889 F.2d at 888, n. 3, 890. Courts have thus harmonized *Dole* with the new Rule 26(b)(5) standard and concluded that each specific circumstance must be addressed independently and that categorical logs can be appropriate under the right circumstances. *See e.g., Mayfield v. Orozco*, No. 2:13-CV-02499 JAM AC, 2016 WL 8731367, at *3 (E.D. Cal. July 1, 2016) (finding that privilege logs must have a description of the documents but that "[w]hen . . . a large volume of documents or electronically-stored information is at issue, a document-by-document log may be unduly burdensome and broad categorical descriptions may suffice."); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 637 (D. Nev. 2013) ("The court agrees with Bard that not every case requires strict adherence to the list of items that should be part of a

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

privilege log as identified in *In re Grand Jury Investigation*, 974 F.2d at 1071, and *Dole*, 889 F.2d at 888 n. 3, 890."). Clearly, if the Committee Notes (which were written about a Rule created after *Dole*) expressly contemplate the provision of categorical privilege logs, then *Dole* cannot be read to create a binding rule or conflict with the amended Rule itself. *In re Imperial Corp. of Am.*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) ("[Rule] 26(b)(5) does not require the production of a document-by-document privilege log. In fact, when the legislature enacted [Rule] 26(b)(5), it expressly recognized that there are circumstances in which a document-by-document privilege log would be unduly burdensome and inappropriate."); *Phillips v. C.R. Bard*, 290 F.R.D. at 637 (same).

Thus, the Special Master must evaluate here whether, under these specific circumstances, the Categorical Privilege Logs provide sufficient information to "enable the other party to assess the claim." As explained *infra,* they do.

### 2. The Categorical Privilege Logs Meet Rule 26(b)(5)'s Requirements Under These Circumstances

NIC and the Declarants produced hundreds of pages of communications between the Declarants and Emord & Associates. *See, e.g.,* Exh. A (emails); Exh. B (text messages); Exh. C (text messages). They also provided an itemized privilege log for hundreds of documents and communications that are subject to attorney-client privilege and work product protections. *See* Exh. 19. However, NIC provided a categorical privilege log for documents that were exchanged among Emord attorneys and firm staff itself, or between Emord and NIC, its litigation client in this matter. *See* Exh. 22. Thus, to be clear, the only documents subject to the "categorical" log are those exchanged exclusively within trial counsel's law firm, or between trial counsel and NIC, that were created for and relate to this instant lawsuit, not those exchanged between the firm and the witnesses Carlberg and the Bucs.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

That distinction is critical to understand, logical, and fully supported by Rule 26(b)(5).  Emord is litigation counsel in the above-captioned matter.  Emord's internal communications and those exchanged with NIC regarding this case are self-evidently subject to the attorney-client privilege and work product doctrine.  Defendants have no good faith basis to argue otherwise and have not provided any basis to conclude that documents of that kind would not be privileged or protected.  In fact, Defendants' blatant effort to seek knowingly privileged and work product protected documents from their opponents' litigation file in the underlying case is in bad faith.  The work product doctrine was designed to protect against precisely this type of discovery abuse.  *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).

NIC's provision of a categorical privilege log in this context is entirely appropriate because: (1) the categorical log provides sufficient information for Defendants to evaluate the claims of privilege; (2) the burden of providing an itemized privilege log is substantial; and (3) there is little or no benefit to the provision of an itemized privilege log in these circumstances.  NTG's demand that NIC produce an itemized privilege log for thousands of internal, obviously privileged communications is wholly disproportionate with the needs of the litigation, excessively burdensome and harassing of a party opponent and its counsel.  This Court should thus issue a protective order under Rule 37(a)(5)(B) protecting NIC from the burden imposed by NTG's demand.

### a. The Categorical Privilege Log Provides All Information Required Under Rule 26(b)(5)

Rule 26(b)(5) only requires NIC to provide enough information to "enable other parties to assess the claim."  *See* Fed. R. Civ. P. 26(b)(5).  Generally, the other party can assess a claim of privilege if they are given (1) the subject matter of the communications, (2) the parties to the communications, (3) the date of the communication, (4) the privilege(s) claimed, and (5) a description of the basis for the privilege(s) claimed.  *See* Rule 26(b)(5) Advisory Committee Notes to 1993

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

Amendment (generally, "[d]etails concerning time, person, general subject matter, etc." may be sufficient.").  Here, NIC has provided all of that information in its categorical log and there is no question that the documents described in the log are privileged on their face.

NIC has organized the communications and documents into thirty-one (31) clearly defined categories that, on their face, demonstrate *prima facie* the application of the work product doctrine and attorney-client privilege.  *See* Exhibit 22.  Those categories are tailored to respond to the specific Requests for Production issued by Defendants.  *See* Exh. H *and compare to* Exh. 22.  For example, where Defendants requested "Documents or communications which relate to the residency of Trycia Carlberg between November 2011 and March 2012," NIC has defined as "Category No. 1" all such documents "that were created for litigation and exchanged internally by and among NIC's litigation counsel in the pending NIC v. NTG case."  *See* Exh. 22.  The category of those documents are all facially subject to work product doctrine protection because they are documents and communications created by a party (NIC) or its litigation counsel (Emord) for the above-captioned litigation and related to a subject matter relevant to issues in dispute.  *See* Fed. R. Civ. P. 26(b)(3). Each of the remaining thirty (30) categories are similarly defined to exclusively relate to material created by NIC's litigation counsel regarding a topic in dispute in the instant litigation.

These documents are clearly work product, certainly entitled to at least as much protection against disclosure as the communications within Callahan & Blaine regarding the defense of Scott Ferrell in this lawsuit.  Were Defendants' own misinterpretation of the law of privilege argued in their motion to compel applied evenhandedly, they would have no basis for defense against full production of all their own internal privileged files to NIC in this case.

Moreover, the documents exchanged between NIC and the Emord firm are facially subject to claims of attorney-client privilege because those communications

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

are between a party and its litigation counsel regarding legal advice on topics pertaining to active litigation.  NTG has no basis to dispute the application of attorney-client privilege to these communications.  Thus, the categorical descriptions on the log are sufficient to substantiate a *prima facie* showing of privilege over documents that the Defendants cannot reasonably understand to be anything but privileged.

NIC identified the "senders and recipients" of the communications within each category.  *See* Exh. 22.  There again, the categorical log provides sufficient information for the Defendants to understand that the communications were exchanged within the confines of a confidential relationship because the only individuals listed are persons within the Emord firm[11] and NIC's officers.  *See* Exh. 22.

NIC provided the applicable date range for the withheld communications within each category.  *See* Exh. 22.  NIC tailored each date range to the specific RFP to which the category relates.  For example, Category No. 1 applies to documents related to Trycia Carlberg's residency in 2011 and 2012.  *See* Exh. 22 at 1.  That issue first arose in the instant litigation in April 2019 when Scott Ferrell's declaration was publicly docketed.  *See* Dkt. 809 (Order); Dkt. 812-1 (Publicly filed declaration).  Emord, on behalf of NIC, began investigating and advancing arguments in litigation related to T. Carlberg's residency after the Court issued its Order in March 2019.  *See* Dkt. 785.  Thus, the applicable date range for responsive documents that are subject to privilege claims is "April 2019 through Present."  The date range provided for each category coincides with the development of litigation strategy and briefs associated with that category.  *See* Exh. 22.  Thus, the date range

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

[11] Peter Arhangelsky, Joshua Furman, Jonathan Emord, Eric Awerbuch, Bethany Kennedy, and Bryan Schatz are all attorneys at the Emord Firm that have worked on the NIC v. NTG litigation file.  *See* Exh. 22.  Jennifer Fernandes is a paralegal at the Emord Firm.  *Id.*

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1    provides the temporal information necessary to evaluate the privilege and work

2    product claims asserted.

3         NIC also described the basis for the privileges asserted for each category, and

4    explained that "[a]ny documents within this category were created for litigation, and

5    involve the instant dispute between the parties or related litigation. The documents

6    are confidential, and were exchanged either exclusively within the attorney-client

7    relationship, or within NIC counsel's law firm in relation to the present pending

8    matter." Exh. 22.

9         The Defendants understand that the documents in each of these categories are

10   privileged and work product protected.  They understood that the documents sought

11   by their overbroad requests necessarily included thousands of privileged documents

12   directly from NIC's litigation file.  The plain language of their requests sought that

13   type of information.  Thus, the Court must reject the Defendants' argument that they

14   require an itemized privilege log to evaluate the privilege claims associated with

15   each document sought directly from opposing counsel's internal communications

16   and counsel's communications with NIC.

17        Put simply, a reasonable attorney acting in good faith understands that

18   documents created for the current litigation within opposing counsel's law firm are

19   protected by the work product doctrine.

### b. NTG's Demand for Greater Itemization Imposes a Substantial Burden that Is Disproportionate

22        Under Rule 26(b)(5), a party may assert privilege using categorical

23   descriptions where a categorical log is sufficient to assert the privileges and the

24   burden of providing an itemized log is substantial.  *Mayfield*, No. 2:13-CV-02499

25   JAM AC, 2016 WL 8731367, at *3 (E.D. Cal. July 1, 2016) (citing Fed. R. Civ. P.

26   26 Advisory Committee's Notes to 1993 Amendments ) ("When, as here, a large

27   volume of documents or electronically-stored information is at issue, a document-

28   by-document log may be unduly burdensome and broad categorical descriptions

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1  may suffice."); *see also In re Imperial Corp. of Am.*, 174 F.R.D. at 479.  That is

2  precisely the circumstance here.  The burden imposed by Defendants' demands for

3  an itemized log is substantial and invasive.

4       In NIC's discovery responses, NIC explained that a preliminary evaluation of

5  the number of responsive documents contained in the 31 categories indicates

6  anywhere from 2,500 to 4,000 responsive documents.  *See* Exh. 20 at 9 (and

7  passim); *see also* Arhangelsky Decl. at ¶6.  The burden of a document-by-document

8  review of plainly privileged files is substantial.  The collection and review of

9  documents and preparation of a privilege log would likely require at least 80 to 160

10  professional hours and cost anywhere from $28,000 to $54,000 in fees.  *See*

11  Arhangelsky Decl. at ¶6.  As counsel in this case, Emord's attorneys communicate

12  in writing frequently, and exchange hundreds of emails and text messages in a given

13  day.  Isolating responsive files requires creation of a discovery database that may

14  require ingestion of substantial blocks of privileged correspondence.

15       This is a massive undertaking that is similar in scope (at perhaps 4,000

16  documents) than the more robust discovery issues on the merits of NIC's RICO

17  case.  Earlier in this case, Judge Selna ruled that it was not proportional under Rule

18  26(b) for the district court to review even 1,699 documents which were directly

19  relevant to the core issues in this lawsuit.  *See* Dkt. 788 at 17 ("*in camera* review of

20  all 1,6969 privileged documents is no longer proportional to the needs of the case").

21  NTG proposes that NIC complete an itemized privilege log of nearly three times

22  that amount of information, all with no legitimate purpose to the litigation.

23       The time dedicated to the preparation of an itemized log detracts from time

24  that NIC can spend preparing this case for trial, which is currently set for November

25  2020.  *See* Dkt. 883 (setting trial date).  The parties are presently litigating a

26  substantial number of dispositive motions and discovery motions that implicate

27  documents central to the merits of this case.  Reviewing thousands of documents

28  from Emord's internal litigation file—which are self-evidently privileged—is a

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

wholly disproportionate exercise, replete with heavy burden and no probative value. Thus, the opportunity cost associated with Defendants' demand is substantial and the probative value of the exercise nil, which fully justifies NIC's provision of a categorical, albeit detailed, log of that attorney-client and work product correspondence.

Without presenting a good faith argument to pierce the privilege, NTG's request here is transparently intended to increase burdens on counsel. A review of the requests that seek the privileged files establishes plainly that they were not tailored reasonably with a due regard for proportionality but were instead broadly worded to embrace all privilege files. *See* Exh. H at 5-10 (seeking documents and communications "related to" motions, briefs, and investigations filed by NIC or opposed by NIC).

NTG argues that Judge Selna earlier ordered the parties to produce itemized privilege logs. *See* Defendant's Portion at Section II(C). Judge Selna was earlier focused on whether itemized privilege logs were required for documents created in NTG's prior lawsuits which are at the heart of NIC's RICO case. *See* Dkt. 90 at 37-38 (NTG's Rule 26(f) report arguing for designation by category of NTG files). The Court's position on NTG's privilege logs is inapplicable here for several reasons. First, the documents here at issue are from NIC trial counsel's internal files relevant to this instant lawsuit, not some prior matter. The Court never evaluated whether privilege logs would be appropriate in this circumstance. Second, the Rules require the Court to evaluate this issue on a case-by-case circumstance, while weighing the relevant burdens and proportionality of requested discovery. *Phillips*, 290 F.R.D. at 638 (explaining that Rule 26(b)(5) is flexible and case-by-case). Finally, unlike NTG's documents from prior legal matters, here NIC's litigation files from the instant lawsuit have no utility in the lawsuit. The privileges of NIC and its counsel have not been pierced, and no argument has been made by NTG otherwise.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

### 3.  <u>A Protective Order Should Issue to Protect NIC from the Undue Burden and Harassing Nature of NTG's Demand for an Itemized Privilege Log</u>

Under Rules 26(c) and 26(b)(5), the Court is authorized to issue a protective order that allows NIC to assert privilege by category where appropriate.  *See* Fed. R. Civ. 26(c); *see also* Fed. R. Civ. P. 26(b)(5) Committee Notes to 1993 Amendments ("A party can seek relief through a protective order under subdivision (c) if compliance with the requirement for providing this information would be an unreasonable burden."); *see also* Rule 37(a)(5)(B)-(C) (if the motion to compel is denied in total or in part, the court "may issue any protective order authorized under Rule 26(c)").  NIC therefore requests that the Special Master issue a protective order permitting NIC to privilege log, by category, its internal communications and files regarding the document requests served by NTG.

As explained in NIC's Section IV(A)(1) *supra*, the Rules expressly authorize such a protective order where, as here, *"voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories."*  *See* Rule 26(b)(5) Advisory Committee Notes to 1993 Amendment (emphasis added).  Moreover, Rule 26(b)(1) requires that all discovery be proportional to the needs of the case and Rule 26(c) provides for the Court to limit discovery to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *See* Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 26(c).  The discovery demanded here is entirely disproportionate with the needs of the case, is designed to harass a party opponent and its counsel, and imposes an undue burden and expense.

NTG issued document requests that were intentionally worded to reach opposing counsel's litigation file.  *See* Exh. H.  Many of the categories expressly request all documents or communications related to briefs that NIC filed in the above-captioned matter.  *Id.* at 5-10 (demanding, e.g., "[A]ll communications

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

related to" specific docket entries).  Other categories seek all documents and communications regarding NIC's "investigation" into factual issues in dispute.  *See* Exh. H at 5-6 (Request Nos. 14, 16, 26, 27).  Those requests were, on their face, overburdensome and designed to reach information outside the bounds of Rule 26(b)(1) which prohibits discovery of "privileged" information.  *See* Fed. R. Civ. P. 26(b)(1).  The bad faith behind those requests is also evident from the fact that Defendants have no legal basis to demand the information.  NTG presents no valid argument for production of NIC's privileged correspondence with its counsel. NTG asserts no basis to compel Emord's mental impression work product developed in response to motions and arguments raised by NTG or in preparation of briefs submitted before this Court.

Moreover, the burdens of this discovery are far outweighed by any probative benefit.  The Declarants possess information related to one issue:  Whether Trycia Carlberg was an NTG client in December 2011.  That issue relates to a single predicate act, out of more than 60 alleged in NIC's TAC.  *See* Dkt. 911 (Third Amended Complaint); *see also* Dkt. 812-1 (claiming, albeit without evidence, that the Demand letter sent in December 2011 was not extortionate because he had a client at the time, Trycia Carlberg).  Moreover, Emord and NIC do not possess personal knowledge of those events and so, the discovery sought from their internal files does not even relate to the merits of that dispute, but is instead apparently targeted at a theory of impeachment against the Declarants.  Thus, even under Defendants' unsupported theory, the *credibility* of the witnesses is germane to one predicate act out of more than 60.  The importance of the discovery is thus very low. *See NIC v. NTG, et al.*, No. 2:19-mc-00011-JVS-MAA, Dkt. 72 at 22 (credibility of a witness is tangential and does not justify burdensome discovery).

The same information is also available from other, non-privileged sources. NIC and the Declarants have already produced all of their communications regarding the preparation of declarations filed in support of NIC's motion for

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

sanctions.  *See, e.g.*, Exh. A (emails); Exh. B (text messages with C. Carlberg); Exh. C (text messages with J. Buc).  Those communications are attached hereto as Exhibits.  *Id.*  Because NIC has produced the communications between NIC and the Declarants related to the preparation of their declarations, NTG already possesses the probative documents related to their unsupported (and by those communications contradicted) impeachment theory.

The District Court already ruled that the *in camera* review of 1,696 files that were direct evidence of dozens of core predicate acts in this case was not proportional to the needs of the case.  *See* Dkt. 788 at 17.  That order establishes as the law of the case that the itemized logs demanded by Defendants, which relate only to the credibility of witnesses associated with a single predicate act, cannot be proportional to the needs of the case.

## 4.  NIC Has Not Waived Privileges By Providing a Categorical Privilege Log

Defendants argue that NIC waived attorney-client privilege and work protect protection by providing a categorical privilege log rather than an itemized log.  The argument lacks merit.  Even if the Special Master determines that NIC should spend tens of thousands of dollars preparing an itemized privilege log for documents that are facially privileged, NIC still timely asserted privilege and provided a privilege log that identified the categories of documents withheld.  Under *Burlington*, NIC's assertion of privilege does not constitute a waiver.  *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (outlining factors for waiver).

The Special Master earlier determined that NTG did not waive privilege even where they failed to produce privilege logs *of any kind* for more than nine months.  *See* Dkt. 241 at 18-22.  By contrast, NIC has timely asserted privilege through the provision of a privilege log; the Parties are litigating over the sufficiency, not the existence, of that log.  Rule 26(b)(5) expressly provides for the provision of a

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

categorical privilege log where appropriate.  If the Court were to find that NIC waived privileges despite its timely assertion, the Court would effectively nullify that portion of Rule 26 because no party could ever risk a waiver no matter how justified their position.  That outcome would conflict with the 1993 Committee Notes to Rule 26(b)(5).

## B.  The Attorney-Client Privilege and Work Product Protection Apply to All Communications that Post-Date NTG's Threats of Imminent Litigation and Request for Sanctions

### 1.  The Documents Were Prepared For, or in Anticipation of, Active or Imminent Litigation

Defendants demand production of documents that are quintessential work product, created as part of a common defense strategy among NIC, Emord, and the Declarants.  **NIC has produced all responsive communications (except one privileged email chain) between Emord and the Declarants** prior to September 27, 2019, which predate Scott Ferrell's threats of imminent litigation and request for serious sanctions.  *See* Exhs. A, B, and C (communications produced to Defendants); *see also* Arhangelsky Decl. at ¶4.  But once Scott Ferrell falsely accused NIC, Emord, and the Declarants of criminal conduct, sought serious sanctions, and threatened to file suit for the alleged submission of perjurious declarations, the dynamic changed substantially.  The interactions between Emord and the Declarants changed as those Declarants became the target of litigation.  The documents and communications created in preparation of a joint defense to Ferrell's litigation threats are work product protected.

To qualify for work-product protection, materials must: "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative."  *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011).  The primary purpose of the work-product doctrine is to "prevent exploitation of a party's efforts in preparing for litigation."  *Admiral Ins. Co. v.*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

*United States Dist. Court for the Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989).  The work product doctrine protects from disclosure "documents and tangible things prepared . . . in anticipation of litigation." *Id.*  A document is understood to be work product where the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568.

On September 27, 2019, NTG and Scott Ferrell moved for sanctions against the Declarants, NIC, and Emord.  *See* Dkt. 846.  The Defendants alleged the existence of a criminal conspiracy involving NIC, its counsel, and those Declarants and asked the Court to find that all had engaged in criminal activity.  *Id*. at 8.  Scott Ferrell also threatened to sue Ms. Buc, her husband, and Charlotte Carlberg for allegedly submitting false declarations (the same allegations asserted in NTG's request for sanctions).  *See* Exh. I (Decl. of C. Carlberg at ¶3); *see also* Dkt. 891 at 5-7.  NIC, the Declarants, and Emord were required to defend themselves against those baseless allegations and prepare for a potential defense to Ferrell's imminently threatened lawsuit.  Dkt. 891 at 6-7 (quoting text message threatening to file suit within one week).  Notably, Scott Ferrell repeatedly threatened to sue NIC, Emord, and the Declarants in writings over the next few months.  *Id.*; *see also*  Exh. F at 2, n. 1; *see also* Exhibit 21 (preservation letter to NIC).  Despite the fact that the District Court rejected NTG's motion for sanctions for lack of evidence (Dkt. 891 at 18), Scott Ferrell followed through on his threat and filed counterclaims asserting claims previously rejected by the District Court and naming MaryAnn Buc, Jim Buc, Charlotte Carlberg, Peter Arhangelsky, Emord and Associates, two NIC principals, and NIC (the "Joint Defense Parties") as RICO defendants based on, inter alia, Ferrell's frivolous allegations that they conspired to submit perjurious declarations.  Dkt. 951.

The Declarants signed their declarations in mid-September, and NIC filed those declarations on September 19, 2019.  *See* Dkts. 844-3, 844-4, 844-5.  Ferrell

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

threatened them with litigation soon thereafter on September 27th and 28th through his private investigators. *See* Exh. I (Decl. of C. Carlberg at ¶3); *see also* Dkt. 891 at 6-7. Every single communication and document created on or after September 27, 2019 that was responsive to NTG's requests would not have been created but for the litigation by Scott Ferrell against the Joint Defense Parties. The communications and documents were created to defend against Ferrell's spurious allegations, including his threat to sue the Joint Defense Parties, and his attempts to obtain sanctions against them. Each communication exchanged among the Joint Defense Parties following September 27, 2019 was sent for the purpose of preparing defensive briefs, defensive declarations, and creating a joint defense strategy against Ferrell's spurious litigation against the Joint Defense Parties. *See* Exhibit 19 (describing the withheld documents); *see also* Exh. I (declarations of the Declarants).

The itemized privilege log shows that NIC and the Declarants withheld communications or documents that post-date Scott Ferrell's active and potential litigation threats made on September 27, 2019. *See* Exhibit 19. The documents withheld relate to the preparation of defensive briefs and declarations. *Id.* They also include discussion of Scott Ferrell's "legal threats." *Id.* None of those files would have been created "but for" the litigation threatened and brought against those parties.

The Declarants' effort to defend themselves against actual and threatened litigation is definitionally work product material. Similarly, documents and communications prepared by NIC and Emord to defend against allegations of impropriety is paradigmatic work product. Moreover, because Scott Ferrell and NTG accused the Joint Defense Parties of a criminal conspiracy and sought an adjudication against all three of those groups, there was a common interest or joint defense strategy that applies to communications exchanged in the preparation of a common defense against Ferrell's false claims. Thus, after September 27, 2019,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

communications and documents exchanged or created by the Joint Defense Parties, are work product protected and subject to the common interest or joint defense doctrine.

NTG does not reasonably dispute that these documents were created to defend against an active legal threat and an imminent prospect of suit. Scott Ferrell repeatedly threatened to sue the Joint Defense Parties. *See* Dkt. 891 at 6-7; *see also* Exh. I (Decl. of C. Carlberg at ¶3); Exh. F at 2, n. 1. He followed through with that threat by filing frivolous counterclaims against the Joint Defense Parties. Ferrell actively sought sanctions against the Joint Defense Parties. *See* Dkt. 891 (denying request for sanctions). The Joint Defense Parties are now Counter-defendants in this above-captioned matter. *See* Dkt. 951. Work product created to defend against the very allegations brought in those Counterclaims is protected from disclosure under Rule 26(b)(3). *See* Fed. R. Civ. P. 26(b)(3). The Special Master must therefore find that all of the documents identified in Exhibit 19 that were created on, or after, September 27, 2019 are work product protected.

Defendants argue that the Declarants cannot assert work product protection because they were not parties when documents were created. But that is immaterial to the analysis. Judge Selna has already ruled that a party to litigation may assert work product over materials prepared *in anticipation* of litigation. *See* Dkt. 820 at 28-31. Here, NTG and Scott Ferrell have filed counterclaims against the Joint Defense Parties which makes them all parties to this litigation. Under Judge Selna's order at Docket No. 820 and the plain language of Rule 26(b)(3), that means each of those parties may assert work product protection over documents they prepared for litigation. *Id.* Notably, the documents at issue here were prepared **for this litigation** (unlike the Strataluz documents at issue in Docket 820 which were prepared for entirely unrelated litigation). Thus, Defendants' argument that the Declarants cannot assert work product protection over documents they created to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

defend against Scott Ferrell's active claims and allegations against them are without merit.

The test for work product protection focuses on when a threat of litigation became apparent, and formal legal process is not required before those work product protections are triggered. *Hertzberg v. Veneman*, 273 F.Supp.2d 67, 75 (D.D.C. 2003) (litigation is sufficiently "imminent" if "some articulable claim, likely to lead to litigation was fairly foreseeable at the time the materials were prepared."); *ACLU of N. Cal. v. Dep't of Justice*, 70 F. Supp. 3d 1018, 1029-30 (N.D. Cal. 2014) ("includes documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated.").  Even so, here there was a threat of actual litigation triggered by (1) Ferrell's threat through his investigators and (2) Ferrell's adversarial process filed against the Declarants in the form of a motion for sanctions.  The Special Master cannot rule that a person subject to the threat of Court-imposed discipline does not have work product protection over documents created to defend themselves.

## 2.  The Attorney-Client Privilege Protects Communications Between Emord and its Clients

The Declarants withheld attorney-client privileged documents exchanged with their counsel, Emord, leading up to and following Emord's retention.  The Defendants have no good faith argument for why those communications with retained counsel are not subject to the attorney-client privilege.

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures."  *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).  The party asserting privilege bears the burden.  *Id.*  "This burden is met by demonstrating that the information adheres to the essential elements of the attorney-client privilege and is generally accomplished by the submission of a

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1   privilege log." *Ruffin Gaming, Inc. v. Dolepex Trading, Ltd.*, No. 2:05-CV-01007,

2   2006 WL 8442526, at *2 (D. Nev. May 5, 2006).

3          Here, the Declarants have established the elements of the attorney-client

4   privilege over communications listed on the privilege log.  *See* Exh. 19.  The log

5   itemizes each communication and attachment, describes the document, identifies the

6   date of the communication and the parties to the communication or document, and

7   states the privilege or protection asserted over the document.  *See generally* Exh. 19.

8          The Declarants submitted declarations explaining that they understood their

9   communications with Emord were made in confidence and that the Declarants

10   contemplated retaining Emord even prior to Emord's actual retention.  *See* Exh. I.

11   Emord is retained counsel for the Declarants which demonstrates the existence of an

12   attorney-client relationship.  *See* Arhangelsky Decl. at ¶5 .  Emord represents the

13   Declarants in responding to the subpoenas issued by NTG.  *See* Arhangelsky Decl.

14   at ¶5.  Thus, the Declarants have substantiated claims of attorney-client privilege

15   over the documents on the log.

16       **3.  The Common Interest/Joint Defense Doctrine Applies**

17          The documents identified on Declarants' privilege log are subject to the Joint

18   Defense Privilege (also referred to as the Common Interest Doctrine).  Because the

19   joint defense privilege applies, NTG's arguments regarding waiver of privilege are

20   unsupported.

21          The Ninth Circuit has long recognized the joint defense privilege.  *United*

22   *States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (noting that it was first

23   adopted in the Ninth Circuit in 1964).  "The privilege is also referred to as the

24   'common interest' privilege or doctrine, because it has not been limited to criminal

25   defense situations or even situations in which litigation has commenced."  *Id.*  The

26   doctrine extends to communications between parties, communications between one

27   party and an attorney for another party, or between attorneys for two different

28   parties.  *Id.* (citing *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005)).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

Similarly, the doctrine "can extend to interested third parties who have a community of interests with respect to the subject matter of the communications." *Youngevity Int'l, Inc. v. Smith*, No. 16-CV-704, 2017 WL 6043669, at *3 (S.D. Cal. Dec. 5, 2017) (citing *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007)); *see also United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir. 1987) (nonparty who "has never been sued on the matter of common interest and faces no immediate liability" can "still be found to have a common interest with the party seeking to protect the communications"), *vacated on other grounds*, 491 U.S. 554 (1989); *Lugosch v. Congel*, 219 F.R.D. 220, 238–39 (N.D.N.Y. 2003) ("A key issue in this case is whether a non-party to the litigation can join a joint defense agreement, receive all of the benefit inured under such agreement, and be obligated to the same degree as the co-parties.  The answer is an unreserved affirmative.").

"The common interest privilege ... applies where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Nidec Corp.*, 249 F.R.D. at 578.  The doctrine is applied where an attorney for a co-defendant works for the common legal interest of both parties.  *Id.* "The theory of this joint defense/community of interest rule is that when an attorney agrees to serve his client's codefendant for a limited purpose, he becomes that codefendant['s] attorney for that purpose."  *Id.*  Importantly, the Ninth Circuit has explained that:

> Whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.

*Gonzalez*, 669 F.3d at 978.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

In that light, Courts have routinely rejected rigid application of the rule.  *Id*. at 979 (rejecting argument that a formal written agreement was required); *Ellis v. J.P. Morgan Chase & Co.*, No. 12-CV-03897, 2014 WL 1510884, at *7 (N.D. Cal. Apr. 1, 2014) ("Keeping *Gonzalez* in mind, the Court declines to adopt Plaintiffs' rigid approach"); *Tekstar Commc'ns, Inc. v. Sprint Commc'ns Co. L.P.*, No. CV 08-1130, 2009 WL 10711788, at *6 (D. Minn. May 14, 2009) ("We decline the Defendant's invitation to exalt form over substance . . . [and we apply the privilege to] unrepresented litigants who share the same liability exposure"); *Ferring B.V. v. Fera Pharm., LLC*, No. CV134640, 2016 WL 5390876, at *3 (E.D.N.Y. Sept. 27, 2016) (the protection applies whether or not an action has been commenced and covers non-parties, regardless of the presence of an attorney).

Here, the Joint Defense Parties are parties to a Joint Defense Agreement.  *See* Exh. G (the "JDA").  The Joint Defense Parties are all named Counterclaim-Defendants.  *See* Dkt. 951.  They have a common interest in preparing a defense against spurious allegations which, on their face, demonstrate the need for a common defense strategy.  *Id.* (accusing the Joint Defense Parties of conspiring together to engage in criminal misconduct).  The Joint Defense Parties began their efforts to defend against Scott Ferrell's false allegations of misconduct on September 27, 2019.  *See* Exh. G at § F(1).  The JDA expressly includes communications exchanged and documents created in defense against Ferrell's litigation threats and request for sanctions beginning on September 27, 2019.  *Id.*

Courts have routinely held that communications created before the existence of a written JDA are still protected by the doctrine so long as the common interest had already arisen.  *See Ellis*, No. 12CV03897YGRJCS, 2014 WL 1510884, at *7; *see also Gonzalez*, 669 F.3d at 979 ("it is clear that no written agreement is required, and that a JDA may be implied from conduct and situation").  In *Ellis*, the court held that a non-party had a common interest with a party where both were subject to an existing threat of litigation and the communication sent by Chase to the non-party

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   vendors was sent for the purpose of collaborating on a joint strategy related to the

2   litigation. *See Ellis*, No. 12CV03897YGRJCS, 2014 WL 1510884, at *7.  The

3   Court determined that communications sent before the formal JDA was executed

4   were still protected because the circumstances and conduct demonstrated the

5   existence of a joint defense interest.  *Id.*  Similarly, in *Greer v. Electronic Arts, Inc.*,

6   the Court held that "at the time of the communications at issue [non-party] and

7   [defendant] continued to share a common interest because they were both vulnerable

8   to related claims by Plaintiff and therefore any communications between them

9   regarding this matter are subject to the joint defense privilege."  *Greer*, No. C10-

10  3601 RS JSC, 2012 WL 299671, at *3 (N.D. Cal. Feb. 1, 2012).  Thus, the

11  precedent is clear that the formal JDA demonstrates the existence of the Joint

12  Defense Privilege and that the protection is retroactive to the first instance where the

13  Joint Defense Parties began collaborating for a common litigation purpose.

14      Defendants argue that the common interest doctrine does not apply to non-

15  lawyers.  *See* Defendants' Portion at 26.  That is incorrect.  "The joint defense

16  privilege may apply as between two individuals within a joint defense effort,

17  regardless of the presence of an attorney."  *Millenium Health, LLC v. Gerlach*, No.

18  15-CV-7235, 2015 WL 9257444, at *2 (S.D.N.Y. Dec. 18, 2015); *Ferring B.V. v.

19  Fera Pharm., LLC*, No. CV134640SJFAKT, 2016 WL 5390876, at *3 (E.D.N.Y.

20  Sept. 27, 2016) (same).  Whether an attorney communicates with an unrepresented

21  non-party, whether two persons with common interests speak with each other, or

22  whether two attorneys speak, the test is only whether the communication was for the

23  purpose of preparing a common defense.  *Tekstar*, No. CV 08-1130 (JNE/RLE),

24  2009 WL 10711788, at *6 ("We decline the Defendant's invitation to exalt form

25  over substance . . . [and apply the privilege to] **unrepresented** litigants who share

26  the same liability exposure" (emphasis added)); *see also Gonzalez*, 669 F.3d at 978

27  ("persons who share a common interest in litigation should be able to communicate .

28  . . with each other to more effectively prosecute or defend their claims.").

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

Similarly, Defendants' argument also fails because lawyers were, in fact, involved in the preparation of the documents in question and the formulation of strategy.  The Declarants and Emord discussed the possibility of retention as early as August 2019, and Emord was eventually retained by the Declarants.  The Declarants and NIC thus shared a common interest and are now co-defendants.  NIC's counsel provided services for the benefit of all.  *Gonzalez*, 669 F.3d at 978 ("The theory of this joint defense/community of interest rule is that when an attorney agrees to serve his client's codefendant for a limited purpose, he becomes that codefendant['s] attorney for that purpose.").  Thus, Joint Defense Privilege applies to all communications and documents created after Ferrell threatened claims and sanctions against the Joint Defense Parties (on September 27, 2019).

Defendants also argue that the common interest doctrine does not apply because Declarants had a "stark conflict of interest."  That position is baseless.  As an initial matter, divergence of interests does not actually defeat the application of the common interest doctrine.  *Youngevity*, No. 16-CV-704 BTM (JLB), 2017 WL 6043669, at *2 (citing *Gonzalez*, 669 F.3d 974).  So long as there is a common litigation objective the doctrine applies even if there are some areas of divergence.  *Id.*  More importantly, there was and is no conflict of interest between the Declarants and NIC.  Defendants argue a strawman—that the common interest doctrine is being asserted to protect communications related to the preparation of declarations filed in support of NIC's Motion for Sanctions.  That is an intentionally false assertion.  The Declarants and NIC have only withheld communications regarding the preparation of defensive declarations and briefs prepared *after NIC withdrew the initial motion for sanctions and declarations* and after NTG had begun threatening the Joint Defense Parties with sanctions and litigation.  The privilege log therefore lists communications that post-date September 27, 2019, when NTG threatened litigation against the Declarants and moved for sanctions against all Joint Defense Parties.  Instead, they relate to the preparation of a common defense.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Defendants' arguments against the existence of the common interest doctrine are
2  frivolous.

3       **4.  <u>Declarations Submitted by NIC Do Not Waive Privilege</u>**

4       The Defendants also argue that the Joint Defense Parties have waived
5  privilege and work product protection over documents listed on the itemized
6  privilege log because NIC submitted declarations describing the preparation of
7  Declarations filed in NIC's Motion for Sanctions on September 19, 2019.  CITE
8  BRIEF.  That argument lacks merit.

9       **NIC and the Declarants have not withheld documents or communications**
10 **exchanged for the purpose of preparing the declarations submitted in NIC's**
11 **Motion for Sanctions.  All of those communications were produced to the**
12 **Defendants.**  *See* Exhs. A, B, and C (Documents produced by NIC that relate to the
13 preparation of the allegedly false declarations); *see also* Arhangelsky Decl. at ¶4.
14 That bears emphasis because NTG's repeated false assertion to the contrary is the
15 basis for their motion on this point.   NIC and the Declarants have produced all
16 communications that predate the Declarants' declarations.  The documents NIC
17 withholds relate to the preparation of briefs and declarations filed thereafter,
18 defending against NTG's subsequent motions for sanctions.  *See* Exh. 19.

19      Critically, the declarations that NTG claims "waived" privilege **<u>attached the</u>**
20 **<u>very communications</u>** that NTG claims are subject to a waiver.  *See* Dkt. 859-4
21 through 859-26 (email exhibits regarding preparation of Sanctions Declarations).
22 Those are the same communications that have been produced to NTG in discovery.
23 *See* Exhs. A, B, and C.  Thus, no communications or documents that are implicated
24 in those declarations have been withheld and their submission cannot constitute a
25 waiver.  Defendants do not have a need for any more information to prepare a
26 defense or assert a claim because they have been provided the non-privileged files
27 that directly relate to the issues at stake.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

Finally, Judge Selna has already ruled that declarations which merely deny or rebut allegations of misconduct do not operate to waive privilege.  *See* Dkt. 568 at 7-8.

Thus, the Special Master must reject Defendants' argument that the work product or attorney client privilege protections have been waived through the submission of the declarations.

## C. The Attorney-Client Privilege and Work Product Doctrine Apply to the August 2019 Email Chain

NIC and the Declarants produced all but one chain of responsive communications and documents exchanged between Emord and the Declarants that predate September 27, 2019 (the date Ferrell and NTG threatened litigation and sought sanctions against the Joint Defense Parties).  *See* Exhs. A, B, and C. However, NIC and the Declarants redacted portions of one email chain exchanged between the Declarants and Emord from August 12, 2019 through August 19, 2019.  *See* Exh. A at 30-35 (Redacted email chain).  The redacted portions were designated attorney-client privilege, work product protected, and common interest protected.  *See* Exh. 19 at 1.  Those designations are appropriate, and the Special Master should deny NTG's motion to compel to the extent it seeks production of the unredacted email.

The email chain contains a direct inquiry by Jim Buc (on behalf of himself, his wife, and Charlotte Carlberg) to Emord attorney Peter Arhangelsky for legal advice and strategy.[12]  Mr. Arhangelsky responded with a detailed, multi-page email that answered the Declarants' legal questions, offered representation, and discussed legal strategy associated with their participation as witnesses in federal litigation.  *See* Arhangelsky Decl. at ¶4.  That email chain does not relate to or discuss specific testimony, and does not include factual material germane to testimony.  *Id.*

---

[12] Unredacted version of the email chain will be provided for the Court's *in camera* review if desired.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

From the outset, the Bucs and Charlotte Carlberg were concerned about Scott Ferrell's retaliatory and vindictive nature, and they feared that becoming involved in litigation would lead to a malicious response from Mr. Ferrell, which fears were prophetic.  *See* Exh. A at 35 ("I understand you are all worried about retaliation from Mr. Ferrell").  Those concerns had no relationship to the content of their testimony, but rather focused on their understanding of Mr. Ferrell's litigious nature and his clear willingness to harass through litigation—an abuse demonstrated on multiple occasions even in the instant lawsuit.  The witnesses thus sought advice concerning protections available to them as witnesses in litigation.

The advice provided by Emord attorneys to the Declarants is protected by the Joint Defense Privilege as it was given by NIC's counsel to a non-party, with a common litigation interest, for the purpose of developing a joint legal strategy to protect those individuals.  Indeed, Ferrell has proven those witnesses' concerns well-founded through his submission of frivolous counterclaims that assert claims previously rejected by the District Court.  The JDA executed by the Joint Defense Parties expressly incorporates the email chain in question as part of the agreement and the Parties' Joint Defense interest.  *See* Exh. G at § F(1).  Thus, the August email chain was properly redacted because the portions that were redacted are subject to valid claims of attorney-client privilege, work product protection, and joint defense privilege.

If the Court determines that *in camera* review is appropriate to adjudicate the privilege dispute associated with this one email chain, NIC will provide the unredacted email chain to the Special Master.  NIC and the Declarants also request the opportunity to submit *in camera* declarations establishing the existence of the attorney-client privilege if the Special Master believes additional information is required.  *See* Dkt. 785 at 14 (noting that the Court allowed NTG to submit *in camera* additional evidence to support their claim of attorney-client privilege).

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

## 1. The Redacted Portions of the Email Chain Contain Attorney-Client Privileged and Work Product Protected Information

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures." *Ruehle*, 583 F.3d at 607. "[T]he word 'client' is defined to mean a person who consults a lawyer for the purposes of "retaining the lawyer," "securing legal service," or securing "advice." *Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005). A lawyer need not be retained at the time of the communication, nor does the lawyer ever need to be retained in the future for the privilege to apply. *Id.* Thus, if a person consults a lawyer for the purposes of securing "legal services" or "advice," the communication is privileged even if the lawyer declines to respond or is not ultimately retained. *Id.* Courts have found that the privilege does not apply where "a lawyer specifically stated that he would not represent the individual and in no way wanted to be involved in the dispute," but otherwise, the communication is protected so long as legal advice is sought. *Id.* Once the communication proceeds "beyond initial peripheral contacts" to disclosure of information or questions "that would be confidential were there to be representation, the privilege applies." *Id.*

Here, the Declarants proceeded well beyond "initial peripheral contacts" having had numerous communications with Emord's paralegal, Jennifer Fernandes, and having received a detailed introductory email from Peter Arhangelsky. *See* Exh. A at 30-35; *see also* Dkt. 859-1. Mr. Arhangelsky's email on August 12, 2019 offered to provide legal advice if the Declarants had additional questions regarding, *inter alia*, the protections available for non-party witnesses. *See* Exh. A at 33-34. On August 16, 2019, in response to Mr. Arhangelsky's email, Jim Buc (on behalf of himself, his wife, and Charlotte Carlberg) asked three specific questions seeking legal advice and inquiring about legal strategy surrounding their potential involvement. *Id.* at 32-33 (the Declarants' legal questions are redacted but can be

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  provided *in camera*); *see also* Arhangelsky Decl. at ¶4.  In response, Mr.

2  Arhangelsky provided a detailed response explaining the law surrounding the

3  Declarants' questions and he offered representation to the Declarants.  *Id.* at 31-32

4  (Arhangelsky's response is redacted but can be provided *in camera*); *see also*

5  Arhangelsky Decl. at ¶4.  On August 19, 2019, Mr. Buc responded and addressed

6  the issue of representation (notably, the Declarants later sought representation from

7  Emord and retained Emord as counsel).  *See* Exh. A at 30-31 (Mr. Buc's response is

8  redacted but can be provided *in camera*); *see also* Arhangelsky Decl. at ¶4.

9  　　　The email exchange between the Declarants and Emord is attorney-client

10  privileged and work product protected on its face.  Emord provided legal advice and

11  strategy in response to specific questions.  *See* Arhangelsky Decl. at ¶4.  The

12  communications were made with an eye towards potential representation and

13  representation was discussed by both the client and the attorney.  *Id.*; Exh. I

14  (Declarations of C. Carlberg, J. Buc, and M. Buc).  Mr. Arhangelsky's response

15  email directly addressed the Declarants' concerns and was written from the

16  perspective of an attorney providing advice for their benefit.

17  　　　Application of the attorney-client privilege looks to the client's intentions in

18  seeking advice.  *Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D. Cal. 1995) ("whether

19  or not a given communication is "confidential" within the meaning of the privilege

20  is determined from the perspective of the client").  Here each of the Declarants

21  submit declarations attesting that each construed their communications with Emord

22  & Associates to be confidential and privileged.  *See* Exh. I.

23  　　　Defendants argue only in general terms that Emord and the Declarants could

24  not assert attorney-client privilege over any communications that predated formal

25  retention in February 2020.  *See* Defendants' Portion at § D(1).  But that argument is

26  in direct conflict with binding precedent holding the privilege applicable where a

27  client has not formally retained an attorney and does not retain the attorney in the

28  future (although here, the Declarants <u>did retain Emord</u>).  *Barton*, 410 F.3d at 1111.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Thus, the redacted portions of the email chain from August 12, 2019 through August

2  19, 2019 are subject to the attorney-client privilege.

3  The redacted emails are also work product protected because they discuss

4  legal strategy and would not have been created but for the Declarants' anticipation

5  of their involvement in active litigation and anticipation of retaliatory litigation by

6  Scott Ferrell.  *See* Exh. 19 at 1; Arhangelsky Decl. at ¶4.  Scott Ferrell did, in fact,

7  file a retaliatory lawsuit against the Declarants (and the other Joint Defense Parties)

8  and move for sanctions against the Declarants in retaliation for their submission of

9  testimony.  *See* Dkt. 965 (Counterclaim); *see also* Dkt. 891 (denying sanctions

10  motion).  As parties to this suit, the Declarants and Emord have the right to assert

11  work product protection over documents that would not have been created but for

12  the instant litigation and but for the threat of retaliatory suit.  Thus, the redacted

13  portions of the email chain are also work product protected.

14  ## 2.  __The Common Interest Doctrine Applies__

15  As explained *supra*, the Joint Defense Parties have entered into a JDA that

16  expressly incorporates the email chain from August 12, 2019 through August 19,

17  2019.  The Declarants had a common legal interest in obtaining legal advice from

18  Emord regarding the available protections for federal witnesses, the strategy

19  associated with providing testimony, and the possibility of representation by Emord.

20  *See* Exh. I; *see also* Exh. G.  Mr. Buc wrote the August 16, 2019 email asking legal

21  advice of Mr. Arhangelsky for the purpose of obtaining advice on behalf of himself,

22  his wife, and Charlotte Carlberg.[13]  Thus, those three individuals had a common

23  interest in pursuing legal advice, which is the purpose of the common interest/joint

24  defense privilege.  Each of these individuals is now a co-defendant in Scott Ferrell's

25  counterclaim.  A ruling that their communications in seeking legal advice and

26

27

28  _____

[13] *In camera* declarations can be provided upon request to provide additional detail that would be subject to privilege.

1  developing strategy against the counterclaims would impermissibly provide a

2  litigation opponent with confidential, privileged information from its adversary.

3  ### D. **Defendants' Subpoenas to Emord and Its Employees Were**
   **Unauthorized, Designed to Harass, and Needlessly Cumulative and**
4  **Duplicative**

5

6  The four NTG subpoenas to NIC's counsel were not authorized by the Court.

7  *See* Dkt. 891 at 18 (granting leave only to serve one set of RFPs and three

8  subpoenas to the three witnesses).  Defendants also fail to identify any documents

9  that would have been produced in response to those subpoenas that were not

10 produced in response to the requests to NIC and the Declarants (except the personal

11 phone records of Emord's employees and staff which are not subject to production

12 as explained in Section IV(E) *infra*).  Moreover, the Defendants received every file

13 to which they are entitled that would have been responsive to those subpoenas, and

14 the burden of providing request-specific responses is unnecessary.  The Court

15 should therefore deny Defendants' motion to compel responses to the Emord

16 subpoenas.

17 The subpoenas to Joshua Furman, Peter Arhangelsky, Jennifer Fernandes, and

18 Emord & Associates were not authorized and violate the Court's Scheduling Order.

19 The Court granted NTG leave to serve "one set of document requests to NIC and its

20 counsel, along with a records subpoena to each of the NIC witnesses."  *See* Dkt. 891

21 at 18.  As an initial matter, the plain language of the order does not allow subpoenas

22 to Emord or its staff under Rule 45.  The Court authorized the issuance of requests

23 for production to "NIC and its counsel" and where the Court meant to authorize

24 subpoenas, the Court used that language.  *Id.*  The Court permitted "NTG to serve

25 one set of discovery requests to NIC and its counsel, along with a records subpoena

26 to each of the NIC witnesses."  *Id.*  But the Court did **not** authorize NTG to serve

27 records subpoenas on NIC's attorneys and the law firm.  That type of request would

28 have altered the Court's analysis on proportionality under Rule 26(b)(1), and the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Court should have been permitted to evaluate that issue.  NTG never asked Judge

2    Selna for anything more than one set of RFPs on NIC, along with the three

3    subpoenas to the witnesses.  *See* Dkt. 891 at 18.

4            Discovery requests to a party necessarily include content within the party's

5    litigation file.  Thus, the Court permitted a request for production to NIC which, of

6    course, reaches content in its counsel's possession that was prepared or created on

7    NIC's behalf.  Defendants even admit that reference to a "party" in litigation

8    commonly refers also to information in counsel's possession on behalf of that party.

9    Defendants' Portion at Section II(B).  The conclusion from the Court's language

10   ("NIC and its counsel") is that the Court authorized a set of discovery requests to

11   NIC (which obviously includes content in its counsel's possession that is part of the

12   litigation file) and one subpoena to each of the three witnesses.  Dkt. 891 at 18.

13   Certainly, the Court did not contemplate that NTG would issue four subpoenas to

14   Emord, its attorneys, and its paralegal.  Nothing in Judge Selna's order suggests the

15   Defendants' approach was authorized or appropriate.  In fact, the Court specifically

16   held that NTG's allegations against opposing counsel "lack[ed] merit," a conclusion

17   that undermines any suggestion that invasive discovery into counsel would be

18   appropriate or proportional.  *See* Dkt. 891 at 18.  Emord, Peter Arhangelsky, Joshua

19   Furman, and Jennifer Fernandes were justified in objecting wholesale to the

20   unauthorized subpoenas.  *See* Exh. 17.

21           The Defendants' request should also be denied because they failed to explain

22   what information they were denied as a result of Emord's refusal to respond to the

23   subpoenas.  NTG's requests to Emord, NIC, and the Declarants were entirely

24   duplicative.  *See* Exhs. 9-15; Exh. H.  When issuing document requests to NIC

25   under Rule 34, NTG expressly defined NIC to include "its counsel:"

26           YOU," "YOUR," "NIC," or "PLAINTIFF" shall mean Plaintiff
             NATURAL-IMMUNOGENICS CORP., and its agents, **attorneys**,
27           associates, employees, representative, and any other person acting
             or purporting to act on its behalf.
28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 91 -

1   *See* Exh. H at 2 (Definitions Section of Ferrell's Rule 34 Requests to NIC)

2   (emphasis added).  Therefore, the plain language of NTG's Rule 34 requests

3   included the relevant documentation within NIC Counsel's possession.  Serving

4   redundant subpoenas on NIC's counsel was therefore unnecessary from the

5   beginning, and also evidences NTG's intent to simply harass opposing counsel with

6   overlapping requests.

7        That tactic directly violates Rule 45(d)(1) because NTG counsel made no

8   effort to "take reasonable steps to avoid imposing undue burden or expense on a

9   person subject to the subpoena."  *See* Fed. R. Civ. Pro. 45(d)(1).  The service of

10  subpoenas that are redundant to Rule 34 requests already served on a party violates

11  the plain meaning of Rule 45(d)(1).  *See, e.g., Haworth*, 998 F.2d at 978 (Fed. Cir.

12  1993) (denying request for discovery from nonparty because the discovery sought

13  was clearly available from a party opponent); *NuFasive*, 2011 WL 3844106, at *3–4

14  (same); *Realtime Data*, No. C 12-80130 LHK PSG, 2012 WL 3727304, at *2

15  (same).

16       The Declarants and NIC produced hundreds of non-privileged

17  communications and documents in the Declarants' possession or in NIC's

18  possession (through Emord as litigation counsel).  That production includes non-

19  privileged communications responsive to NTG's requests which included an Emord

20  attorney or employee.  *See, e.g.,* Exh. A (emails); Exh. B (text messages); Exh. C

21  (text messages).  Emord, as counsel, prepared the production and collected

22  documents (from its own files as litigation counsel).  There are no documents, none,

23  that NTG would have received from subpoenas to Emord that it did not already

24  receive in response to either the subpoenas to Declarants or the Rule 34 requests to

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 92 -

1    NIC.[14]  Thus, NTG's efforts to force opposing counsel to prepare four additional

2    subpoena responses (which required responses to hundreds of requests) is wholly

3    disproportionate with the needs of the case, needlessly cumulative, and

4    unreasonably burdensome.

5        Defendants issued **seven subpoenas** to the Declarants, Emord firm counsel

6    and employees and one set of requests for production that contained **460 requests**.[15]

7    *See* Exhs. 9-15; Exh. H.  NTG served nearly as many requests on this issue than it

8    served Rule 34 requests throughout this entire RICO case.  *See* Arhangelsky Decl. at

9    ¶3.  The requests intentionally sought information that Defendants knew was

10   privileged.  *See* Exh. H at 5-10.  They sought personal telephone records from

11   NTG's opposing counsel and staff even though such documents do not provide any

12   relevant or probative information.  The requests also entirely overlapped with

13   documents NTG sought directly from NIC as a party under Rule 34.  There was

14   simply no need to serve four additional subpoenas on NIC's counsel to obtain

15   documents relevant to this lawsuit.  NIC produced all responsive files, all of which

16   were sourced from Emord.  The subpoenas were thus an abuse on their face, as the

17   precedent makes clear.  *See In re Wells Fargo*, No. 18-CV-2617-BAS-MDD, 2019

18   WL 2223934, at *3 ("[N]on-parties are given even greater protections by the Court

19   in the discovery process than parties").

20       Moreover, Emord and its employees provided their written objections to the

21   subpoenas.  Thus, NTG's claim that the Court should compel Emord to provide

22   responses is misleading and frivolous.

23   ─────────────────

24       [14] NTG argues that it needs the subpoenas to Emord so that it can obtain the
     production of opposing counsel's personal phone records.  As explained in NIC's
25   Section IV(E) *infra*, the phone records are not discoverable and, thus, Defendants
     are unable to identify any type of document they did not receive.
26

27       [15] Fed. R. Civ. P. 26(b)(1) demands that parties and their counsel consider
     proportionality when they engage in discovery and do not unreasonably engage in
28   disproportionate discovery.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

Finally, NTG's argument that Emord waived privileges is frivolous.  Emord asserted privilege in its objections to the subpoenas.  The Responding Parties have provided privilege logs for all responsive files (which are entirely redundant with the files sought in the Emord subpoenas).  Moreover, privilege is held by the client.  Here, the clients are the Declarants and NIC who have provided privilege logs to substantiate privilege over their documents.  Thus, Emord cannot and has not waived privilege over the files.

The Special Master should deny NTG's motion to compel responses from Emord and issue instead a protective order under Rule 26(c) to protect against this type of cumulative and disproportionate discovery.

## E.  NTG's Request for Phone Records Should be Denied

NTG moves to compel production of phone records from Maryann Buc, Jim Buc, Charlotte Carlberg, Joshua Furman, Peter Arhangelsky, Jennifer Fernandes, and Emord & Associates.  As the moving party, Defendants have the burden to prove discovery relevant and proportional to the needs of the case.  Defendants have failed their burden.  The phone records are entirely irrelevant to any claim or defense.  Production of the records would invade the Responding Party's privacy rights and impose burdens in collection, review, and production.  The phone records of NIC's counsel implicate attorney-client privilege and work product concerns for Emord's clients.  Because the records are not relevant to a claim or defense, have no probative value, impose burdens, implicate privacy rights, and invade privileges, Rule 26(b)(1) prohibits the Special Master from ordering production.

The Defendants bear the burden of demonstrating that the phone records are relevant to a claim or defense.  *See* Fed. R. Civ. P. 26(b)(1); *Murrey*, No. CV 19-2501 FMO (AS), 2020 WL 2065019, at *2.  They have not even attempted to do so.  Defendants only state, in conclusory fashion, that "Emord and the Declarants clearly used phones to communicate regarding the false declarations and NIC's related filings."  *See* NTG Portion at 32.  But whether Emord and the Declarants

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

communicated by phone has nothing to do with whether phone records are relevant to a claim or defense in this case. Phone records only show the existence of communications, not their content. One can only glean that a call or text occurred and when it occurred. Because that information is not relevant to a claim or defense, the phone records are not relevant.

Here, none of NTG's allegations are supported or undercut by the existence of bare communications between Emord and the Declarants. NTG does not argue—and they cannot—that Emord was not permitted to speak with Declarants. *See generally* Defendants' Portion. Moreover, the timing of communications is not relevant, nor is it in dispute. Instead, NTG's theories are evidently based on the **content** of communications. *See* Dkt. 891 at 7-9, 16-18 (describing allegations of a conspiracy to manufacture false declarations). Defendants have not articulated a single material fact that would be proven true or untrue by evidence showing that phone calls occurred.

Rather than support the basis for their own request, Defendants simply argue that they should receive phone records because NIC obtained phone records. *See* Defendants' Portion at § E. That argument is frivolous. Relevance in discovery is fact- and issue-specific. The question is whether the specific discovery sought is relevant to a claim or defense. Fed. R. Civ. P. 26(b)(1). NIC obtained phone records because the content of those records was directly germane to material factual allegations and legal issues in NIC's complaint. NIC's RICO theory is predicated on demonstrating the existence of a relationship between NTG and its client *before* the clients suffered their alleged "injuries." *See* Dkt. 659 at . Thus, phone records of Andrew Baslow and the various NTG clients were highly probative of claims in this case. The phone records proved that NTG had been contacting individuals *after* the firm first identified litigation targets but *before* the sham client purchased products or made phone calls to setup wiretap cases. The Court found the timing of communications between NTG and its clients to be highly

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

1   relevant evidence of their fraudulent empire.  *See* Dkt. 659 at 2-3, 13-16.  Thus, NIC

2   articulated precisely why specific phone records were relevant and probative to the

3   core claims in this case.  By contrast, NTG cannot explain how Emord firm phone

4   records are relevant and have not even attempted to do so in good faith.

5          In addition, the undisputed record demonstrates that NIC and its officers have

6   had no telephone contact with the Declarants.  Dkt. 859-2 at ¶ 6.  Thus, their phone

7   records cannot be relevant.

8          Because the Defendants have failed their burden to demonstrate that the

9   phone records are relevant, the inquiry should end.  However, Rule 26(b)(1) also

10  requires that Defendants to demonstrate the records are proportional to the needs of

11  the case.  Given their complete lack of probative value, the Special Master must also

12  conclude that the records are wholly disproportionate with the needs of the case.

13         Seeking records from Emord & Associates and its employees is harassment,

14  evidence of an improper purpose, and raises thorny privilege issues associated with

15  Emord's duty of confidentiality to other clients.  The personal phone records of

16  Emord's employees contain private information showing who those individuals call

17  or text message in their personal lives and when they do so.  *See Henson v. Turn,*

18  *Inc.*, No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22,

19  2018) ("Courts and commentators have recognized that privacy interests can be a

20  consideration in evaluating proportionality" (collecting cases)).  That information is

21  not only irrelevant, it is private.

22         Defendant Scott Ferrell has also demonstrated a blatant desire to defame

23  Emord and its employees.  Recently, Scott Ferrell has been emailing defamatory

24  statements about Emord and Associates and its attorneys to Emord's opposing

25  counsel in unrelated litigation.  *See* Exh. D.  This is at least the second instance

26  where Mr. Ferrell has disseminated maliciously false and defamatory information to

27  members of the bar in an attempt to harm the professional reputation of opposing

28  counsel or induce legal action against them by others.  In 2016, he sent documents

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

to attorneys involved with Emord & Associates which included egregiously false allegations about Emord attorneys, including false allegations of sexual misconduct, plagiarism, etc., and solicited other firms to sue Emord based on the false allegations.  *See* Dkt. 96 at 9-20.

This extreme misconduct by no less than a licensed attorney in this state indicates a likelihood that Scott Ferrell will use personal information obtained to harass or defame in a like manner.  Finally, Emord's phone records would effectively provide a client list, or indicate which witnesses Emord deems important enough to contact.  That could implicate work product protection and attorney-client privilege.  Even if Defendants were to claim that the private information could be redacted, given the lack of any relevance or probative value, the effort of redaction would be unreasonable and disproportionate to the needs of the case.  The plain language of the requests is overbroad and harassing.  Thus, NTG's demand for Emord's phone records should be denied under Rule 26(b)(1).[16]

The pursuit of phone records from the Declarants is also disproportionate with the needs of the case.  The information contained in those records is personal and certainly implicates privacy concerns.  The record also demonstrates that Scott Ferrell would use any information obtained to harass and intimidate the Declarants. The Court earlier ruled that, while Scott Ferrell's threats to the Declarants did not constitute witness tampering, it reflected "inadvisable" conduct.  *See* Dkt. 891 at 15. The investigators that came to Ms. Carlberg's home on Ferrell's behalf tried to pressure Carlberg to change testimony.  *See* Exh. I (Carlberg Declaration). Moreover, the vicious manner by which Defendant Ferrell has pursued sanctions against those witnesses, three elderly individuals, who provided testimony in a civil action (testimony that was later withdrawn) evidences an ill-will that cannot be

---

[16] Because the subpoenas issued to Emord and its employees were unauthorized, the Defendants cannot obtain phone records through enforcement of same.  The Court should thus deny the request for phone records on that basis as well.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL

ignored.  Production of personal phone records by these individuals would expose them to unnecessary risks where the probative value of those records is nil.  The effort of redacting these phone records is similarly not worth the expense because those records provide no probative value.  Again, the phone records cannot identify or show any fact of consequence in this litigation.

Thus, the Special Master must deny NTG's request for phone records.

### F.  NIC Should Be Awarded Its Fees for Opposing this Motion

Rule 37(a)(5)(B) provides for the automatic provision of reasonable fees and costs incurred in defending against a motion to compel that is denied entirely.  *See* Fed. R. Civ. P. 37(a)(5)(B).  Here, NIC should be awarded its fees and costs.

NTG's Motion to Compel should be denied in its entirety.  NIC and the Declarants made a full and fair production of documents, provided sufficient privilege logs to substantiate valid claims of privilege and work product protection, and engaged in good faith discovery.  The Defendants' Motion is a substantial waste of judicial and party resources.  The principal arguments they present relate to privilege disputes for which their positions are unsupported by the law and facts. NTG frequently misleads the Court by presenting strawmen arguments based on misrepresentations of fact.  The resort to this tactic reveals that NTG lacks substantially justified positions.  Under Rule 37(a)(5)(B), NIC is entitled to its fees and costs associated with defending against this spurious and unsupported motion.

The primary disputes relate to the defense of privileges which attorneys must defend vigorously under the ethical rules.  The positions advanced here by NIC and the Declarants are meritorious, but, at a minimum, reasonably disputed.  Thus, under no circumstances should the Court award fees to NTG.

### IV.  NIC'S AND THE DECLARANTS' CONCLUSION

The Special Master should deny NTG's motion to compel in its entirety. Defendants have failed to demonstrate that they are entitled to any documents not already produced.  NIC and the Declarants have produced privilege logs sufficient

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   to establish a prima facie case of privilege and work product protection over all

2   withheld communications.  The Joint Defense Privilege protects all communications

3   withheld.  None of the phone records requested are relevant.  NIC is entitled to its

4   fees and costs under Rule 37(a)(5).

5

6   FOR NTG                                         FOR RESPONDING PARTIES

7   */s/ James M. Sabovich*                         */s/ Peter A. Arhangelsky*
    James M. Sabovich (CA 218488)                   Peter A. Arhangelsky (CA 291325)
8   jsabovich@callahan-law.com                      parhangelsky@emord.com
    CALLAHAN & BLAINE                               EMORD & ASSOCIATES, P.C.
9   3 Hutton Centre Drive, Ninth Floor              2730 S. Val Vista Dr.
    Santa Ana, CA 92707                             Bldg 6, Ste. 133
10  Ph: (714) 241-4444                              Gilbert, AZ 85295
    Fx: (714) 241-4445                              Ph:  (602) 388-8899
11  *Attorneys for Defendant Newport*               Fx:  (602) 393-4361
    *Trial Group PC*                                *Attorneys for Responding Parties*

12

13         Attestation pursuant to L.R. 5-4.3.4(a)(2)(i) regarding signatures: I, James M.

14  Sabovich, attest that all other signatories listed, and on whose behalf this filing is

15  submitted, concur in the filing's content and have authorized the filing.

16

17  DATED:  May 11, 2020

18

19                          By:    */s/ James M. Sabovich*
                                       James M. Sabovich

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION RE: NTG'S MOTION TO COMPEL