Sanjay S. Karnik, Esq. (*pro hac vice*)
Illinois Bar No. 6300156
sanjay@amintalati.com
J. Kathleen Bond, Esq. (*pro hac vice* to be filed)
katie@amintalati.com
Jennifer M. Adams (Ca. Bar No. 319347)
jennifer@amintalati.com
AMIN TALATI WASSERMAN LLP
100 S. Wacker Dr., Ste. 2000
Chicago, IL 60606
Phone: (312) 312-3327
Fax: (312) 884-7352
*Attorneys for Counter-Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS, a Florida corporation,<br><br>Plaintiff,<br>v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>Defendants.<br>---------------------------------------------<br>NEWPORT TRIAL GROUP, a professional corporation; and SCOTT J. FERRELL, an individual,<br><br>Counterclaimants,<br><br>v.<br><br>NATURAL IMMUNOGENICS CORP., et al.<br><br>Counter-Defendants | Case No.: 8:15-cv-02034-JVS-JCG<br><br>**COUNTER-DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE AND FOR SANCTIONS UNDER FED. R. CIV. PRO 12(f) and 16(f)**<br><br>Hearing Date:  July 6, 2020<br>Hearing Time:  1:30 PM<br>Courtroom: 10C<br>Judge:  Hon. James V. Selna |

# **TABLE OF CONTENTS**

I    INTRODUCTION……………………………………………………………………………..1

II.   PROCEDURAL HISTORY……………………………………………………………..…3

III.   LEGAL STANDARDS……………………………………………..…......................4

IV.   ARGUMENT……………………………………………………………………..5

    A.   NTG Violated the Court's Scheduling Order by Filing Counterclaims in April 2020 without Seeking Leave of Court…………………………………6

        1.   NTG Was Required to Seek Leave to File Its Counterclaims………………………………………………………………7

        2.   NTG Cannot Show Good Cause or Excusable Neglect………10

            i.   NTG's Counterclaims Were Delayed by More than Four Years …………………………………………………………12

            ii.   NTG Has No Reasonable Explanation for Its Delay…..15

            iii.   The Counterclaims Impose Substantial Prejudice…….16

            iv.   The Counterclaims Were Not Brought in Good Faith…18

    B.   The Counterclaims Are Futile…….…….…….…….……….…..20

    C.   Rule 16(f) Sanctions Are Appropriate…….…….…….…………20

V.   CONCLUSION……………………………………………………………….23

# <u>TABLE OF AUTHORITIES</u>

## <u>FEDERAL CASES</u>

*Acri v. Int'l Ass'n of Mach. & Aerospace Workers*,
  781 F.2d 1393 (9th Cir. 1986) .......................................................................13

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
  2012 WL 3877783 (N.D. Cal. Sept. 6, 2012)..................................................8

*Chem. Bank v. Star Dev. & Holding, LLC*,
  2017 WL 5587516 (D. Nev. Nov. 17, 2017).................................................22

*Christensen v. CLP Res., Inc.*,
  2018 WL 6017015 (C.D. Cal. Oct. 22, 2018) ...............................................13

*City of W. Sacramento, California v. R & L Bus. Mgmt.*,
  2019 WL 2249630 (E.D. Cal. May 23, 2019). ...............................................7

*Composite Res., Inc. v. Recon Med., LLC*,
  2018 WL 5886530 (D. Nev. Nov. 9, 2018)......................................................8

*Coppola v. Smith*,
  2015 WL 2127965 (E.D. Cal. May 6, 2015) ...................................................8

*Daou v. Abelson*,
  2012 WL 1292475 (D. Nev. Apr. 13, 2012) ....................................................8

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987) .......................................................................17

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .....................................................................16

*Etkin & Co., Inc. v. SBD, LLC*,
  2015 WL 11726454 (S.D. Fla. Sept. 1, 2015)................................................4

*Feezor v. H.I. Mgmt. of Rancho Cordova*,
   2007 WL 117917 (E.D. Cal. Jan. 10, 2007) ...................................................... 5

*Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*,
   980 F. Supp. 2d 1160 (E.D. Cal. 2013) ..........................................................13

*Ginger Root Office Assocs., LLC v. Advanced Packaging & Prod. Co.*,
   2008 WL 11338229 (C.D. Cal. Dec. 9, 2008) ................................................... 5

*Heath v. Google Inc.*,
   2017 WL 4005598 (N.D. Cal. Sept. 12, 2017) ................................................12

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) .......................................................................12, 22

*Kisaka v. Univ. of S. California*,
   2013 WL 12203018 (C.D. Cal. Nov. 20, 2013) ...............................................17

*Kyle v. Campbell Soup Co.*,
   28 F.3d 928 (9th Cir. 1994) ...........................................................................11

*Martin Family Trust v. Heco/Nostalgia Enterprises Co.*,
   186 F.R.D. 601 (E.D. Cal. June 6, 1999) .......................................................21

*Mireles v. Paragon Sys., Inc.*,
   2014 WL 575713 (S.D. Cal. Feb. 11, 2014) ...............................................5, 11

*Mireskandari v. Associated Newspapers, Ltd.*,
   665 F. App'x 570 (9th Cir. 2016) ....................................................................20

*Mireskandari v. Mail*,
   2014 WL 12561581 (C.D. Cal. Aug. 4, 2014) ...........................................20, 21

*Orogem Corp. v. De Beers Societe Anonyme*,

2010 WL 11549347 (C.D. Cal. Dec. 10, 2010)...........................................12

*Pincay v. Andrews*,
   389 F.3d 853 (9th Cir. 2004) ......................................................11

*RePET, Inc. v. Zhao*,
   2017 WL 11444648 (C.D. Cal. Jan. 13, 2017)..............................13

*Rotella v. Wood*,
   528 U.S. 549 (2000) ............................................................13, 15

*Royal Ins. Co. of Am. v. Sw. Marine*,
   194 F.3d 1009 (9th Cir. 1999) ....................................................13

*Russell v. Walmart Inc.*,
   2020 WL 1652544 (C.D. Cal. Mar. 3, 2020) ................................13

*Sahelian v. Orexis, LLC*,
   2009 WL 10675697 (C.D. Cal. Jan. 12, 2009)............................4, 5

*See Regions Bank v. Commonwealth Land Title Ins. Co.*,
   2012 WL 5410948 (S.D. Fla. Nov. 6, 2012) ................................10

*Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd.*,
   2016 WL 6828200 (D. Nev. Nov. 18, 2016)...................................8

*Sloane v. Karma Enterprises, Inc.*,
   2009 WL 10674307 (C.D. Cal. Mar. 16, 2009)............................11

*Softwareworks Grp., Inc. v. Ihosting, Inc.*,
   2007 WL 1279495 (N.D. Cal. Apr. 30, 2007)................................5

*Steinmeier v. Cty. of San Diego*,
   2020 WL 248984 (S.D. Cal. Jan. 16, 2020) .............................2, 16

*Tate-Robertson v. Walmart Inc.*,
    2019 WL 6454392 (C.D. Cal. Aug. 13, 2019) .......................................7, 8, 10

*TMF Tr. Ltd. v. M/T Megacore Philomena*,
    2018 WL 6175700 (C.D. Cal. Sept. 4, 2018) ................................................2, 4

*Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*,
    11 F. Supp. 3d 622 (E.D. Va. 2014)................................................................ 8

*Xyratex Tech., Ltd. v. Teradyne, Inc.*,
    2009 WL 10702550 (C.D. Cal. Aug. 20, 2009) ...........................................12

## FEDERAL RULES

Fed. R. Civ. P. 6(b) .........................................................................11, 12
Fed. R. Civ. P. 6(b)(1)(B) ...................................................................... 5
Fed. R. Civ. P. 12(b)(6)..........................................................................20
Fed. R. Civ. P. 12(f) ...............................................................2, 3, 4, 20
Fed. R. Civ. P. 16(b)(4)............................................................................ 5
Fed. R. Civ. P. 16(f) ....................................................... 2, 3, 5, 20, 22
Fed. R. Civ. P. 16(f)(2) .......................................................................2, 22
Fed. R. Civ. P. 37(b)(2)(A)(iii) .......................................................2, 3, 5

## I.   <u>INTRODUCTION</u>

Counter-Defendants Natural Immunogenics Corp. ("NIC"), Ben Quinto, Theo Quinto, Emord & Associates, P.C., Peter Arhangelsky, Jim Buc, MaryAnn Buc, and Charlotte Carlberg (collectively, "Counter-Defendants" or "NIC") move under Rules 12(f) and 16(f) to strike the out-of-time Amended Counterclaims ("Counterclaims") [Dkt. 951, amended at Dkt. 978-1] filed by Newport Trial Group and Scott Ferrell ("Counterclaimants" or "NTG").   After more than fifty-two (52) months into this litigation and with just six months before trial, NTG has filed, without leave of court, Counterclaims against NIC, its counsel, and several witnesses for alleged conduct occurring in this instant lawsuit.   NTG filed its Counterclaims in violation of the Court's Scheduling Order in Docket 883.   NTG delayed filing these Counterclaims for over four years despite having the alleged grounds to assert them at the time of its original Answer in 2016.   *See, e.g.,* Dkt. 174 at 66 (Amended Answer).

NTG has no reasonable explanation for this profound delay.   It cannot show excusable neglect.   It made no effort to meet the Court-imposed deadlines.   NTG failed to seek leave of Court before gratuitously filing Counterclaims that added seven new parties.

In its most recent Scheduling Order, this Court required that "[a]ll motions to join other parties or to amend the pleadings shall be filed and served within sixty (60) days of the date of this order [December 16, 2019] and noticed for hearing within ninety (90) days hereof." *See* Dkt. 883 at 1.   Accordingly, NTG was required to seek leave of court through a properly noticed motion on or before February 14, 2020.   *Id.*   Yet NTG never sought leave to file its counterclaims or add parties.   Rather, on April 7, 2020, nearly two months after the Court's deadline, NTG unilaterally filed its counterclaims and added parties.   *See* Dkt. 951 (since amended at Dkt. 978-1).   The allegations giving rise to the Counterclaims were known to NTG in 2016.   Yet at no point in over four years of litigation did NTG seek leave of court

to assert them.  NTG now brings Counterclaims for no apparent purpose other than delaying trial and harassing opposing parties, counsel, and witnesses (as shown by a recent unreasonable demand to complete all counterclaims discovery in a 60-day period that includes deposing NIC's counsel and seven new parties).  The Counterclaims obstruct this litigation after the close of discovery and, within months of trial, impose a substantial prejudice on NIC.  *See Steinmeier v. Cty. of San Diego*, No. 18-CV-1603, 2020 WL 248984, at *5 (S.D. Cal. Jan. 16, 2020) ("Being mere months away from trial in this case, [the] request to amend the Complaint to add new parties and an overarching conspiracy would derail the action entirely, open the door to the full panoply of discovery and renewed motions practice").

In these circumstances, Rule 12(f) requires this Court to strike the Counterclaims in their entirety.  *See, e.g., TMF Tr. Ltd. v. M/T Megacore Philomena*, No. CV 17-09010, 2018 WL 6175700, at *4 (C.D. Cal. Sept. 4, 2018) ("Striking a pleading is appropriate when a party fails to seek leave of court before filing an unauthorized pleading").

The Court should also strike the untimely Counterclaims under Rule 16(f). Sanctions are appropriate under Rule 16(f) in light of NTG's deliberate violation of the Scheduling Order.  *See* Fed. R. Civ. Pro 16(f); Scheduling Order, Dkt. 833 at 1. Rule 16(f) permits the Court "[o]n motion or on its own" to issue "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney … fails to obey a scheduling or other pretrial order." *See* Fed. R. Civ. P. 37(b)(2)(A)(iii) ("striking pleadings in whole or in part").  The Court should additionally award attorney fees to NIC incurred because of NTG's noncompliance with Rule 16.  *See* Fed. R. Civ. Pro 16(f)(2).  The failure to seek leave before submitting its counterclaims and adding new parties, including opposing counsel, has forced the counterclaimants to hire independent counsel and incur the related legal fees and costs.

As explained below, NIC requests an order from this Court: (1) striking the

Counterclaims from the docket under Rules 12(f), 16(f), and 37(b)(2)(A)(iii); and (2) awarding NIC its reasonable attorney fees and costs resulting from the improper filing.

## II.   PROCEDURAL HISTORY

NIC filed suit on December 7, 2015.  *See* Dkt. 1.  On February 22, 2016, NTG filed a motion to dismiss and an Anti-SLAPP motion, raising there the very same allegations concerning Clark Baker's conduct that it now reasserts in Counterclaims. *See* Dkt. 40 at 17-18; Dkt. 41 at 14-17; *c.f.* Dkt. 978-1.  On May 9, 2016, the Court issued a Rule 16 calendar, setting August 24, 2016, as the last day to amend or add parties.  *See* Dkt. 91.  NIC timely filed its Second Amended Complaint ("SAC") on May 10, 2016.  *See* Dkt. 92.  NTG filed an Answer on August 26, 2016.  *See* Dkt. 161.  The Answer did not include any counterclaims.  *Id.*  NTG filed an Amended Answer on September 16, 2016.  *See* Dkt. 174.  That Amended Answer did not include any counterclaims, but did make the same allegations concerning Baker in an unsuccessful unclean hands defense as it reasserts now in the Counterclaims.  *See* Dkt. 174 at 66; *see* Dkt. 784 (granting summary judgment against unclean hands defense).

On July 31, 2017, given the still-pending privilege concerns in this case, NIC moved this Court for an extension of the pretrial calendar.  *See* Dkt. 415.  NTG opposed that extension.  *See* Dkt. 428.  This Court granted the extension given the many unresolved privilege issues.  *See* Order, Dkt. 447.  This Court reset the discovery cut-off to November 13, 2017.  *Id.* at 5.  NTG did not then request leave to pursue a counterclaim.

On December 16, 2019, just over four years after NIC filed its lawsuit, the Court entered an Order setting dates for jury trial.  *See* Dkt. 883.  That Order imposed a cutoff: "[a]ll motions to join other parties or to amend the pleadings shall be filed and served within sixty (60) days of the date of this order and noticed for hearing within ninety (90) days hereof."  *Id.* at 1.  At no point did NTG raise the prospect of

filing counterclaims, or seek leave from this Court to file counterclaims.

NIC timely filed a motion for leave to file its Third Amended Complaint ("TAC") on February 14, 2020. *See* Dkt. 892. The Court granted that Motion on March 24, 2020. *See* Dkt. 910. The Court reasoned that NIC's amended allegations concerning Strataluz were related to the allegations in NIC's last complaint. *See id.* at 6. The Court expressed its view that the amended complaint would not require significant new discovery and, even if some discovery were needed, the parties had ample time to complete it. *See id.* at 6-7. NTG never informed the Court that it planned to file counterclaims.

NIC filed its TAC on March 24, 2020. Without seeking leave of Court, NTG then filed Counterclaims on April 7, 2020. *See* Dkt. 951. The Counterclaims add seven new parties, including NIC's counsel: Ben Quinto, Theo Quinto, Emord & Associates, P.C., Peter Arhangelsky, Jim Buc, MaryAnn Buc, and Charlotte Carlberg. *See generally id.* NTG then filed Amended Counterclaims on May 7, 2020. Dkt. 978-1. The Counterclaims span over 228 paragraphs of allegations, essentially bringing an entirely new RICO lawsuit against those newly added parties. *Id.*

## III.   <u>LEGAL STANDARDS</u>

Under Rule 12(f), this Court may strike any unauthorized or untimely pleading. *See TMF Tr. Ltd. v. M/T Megacore Philomena*, No. CV 17-09010, 2018 WL 6175700, at *4 (C.D. Cal. Sept. 4, 2018) ("Striking a pleading is appropriate when a party fails to seek leave of court before filing an unauthorized pleading"); *Sahelian v. Orexis, LLC*, No. 08-CV-03561, 2009 WL 10675697, at *2 (C.D. Cal. Jan. 12, 2009) (striking counterclaims "because Defendants did not first seek leave of court before filing their Counterclaims"); *Etkin & Co., Inc. v. SBD, LLC*, No. 11-21321-CIV, 2015 WL 11726454, at *4 (S.D. Fla. Sept. 1, 2015) ("If a party files an amended pleading outside the court's deadline and fails to properly seek leave to file the amended pleading, the court should strike the pleading."). "A party may …

move to strike an untimely or improper pleading, such as an amended complaint that improperly attempts to join additional parties." *Sahelian*, 2009 WL 10675697, at *2.

Rule 16(f) also grants the Court authority to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney … fails to obey a scheduling order or other pretrial order." Fed. R. Civ. Pro. 16(f)(1)(C). Through Rule 37(b)(2), Courts may strike a pleading that violates Rule 16. *Feezor v. H.I. Mgmt. of Rancho Cordova*, No. CIV. S-06-1638, 2007 WL 117917, at *1 (E.D. Cal. Jan. 10, 2007); *Softwareworks Grp., Inc. v. Ihosting, Inc.*, No. C06-04301, 2007 WL 1279495, at *1 (N.D. Cal. Apr. 30, 2007).

A scheduling order is binding. It may only be amended for good cause. *See* Fed. R. Civ. Pro. 16(b)(4). "Once the district court issues a pretrial scheduling order that establishes a deadline for the amendment of pleadings … consideration of a motion for leave to amend is governed by Rule 16 of the Federal Rules of Civil Procedure rather than Rule 15." *Ginger Root Office Assocs., LLC v. Advanced Packaging & Prod. Co.*, No. 07-CV-05568, 2008 WL 11338229, at *3 (C.D. Cal. Dec. 9, 2008).

When relief is requested *after* time has expired (as is the case here), Rule 6 requires the parties to address excusable neglect. *See* Fed. R. Civ. Pro. 6(b)(1)(B). "Accordingly, a party moving to amend a pleading after a scheduling order deadline has passed must support the motion by demonstrating both excusable neglect and good cause." *Mireles v. Paragon Sys., Inc.*, No. 13-CV-122, 2014 WL 575713, at *2 (S.D. Cal. Feb. 11, 2014).

## IV.   ARGUMENT

NTG's Counterclaims violate this Court's Scheduling Order. *See* Dkt. 883 at 1. NTG failed to seek leave to assert counterclaims or add parties. NTG made no showing of excusable neglect and good cause for its late filed counterclaims and addition of new parties. NTG delayed those counterclaims by over four years

without explanation.  NTG's Counterclaims impose a substantial prejudice on NIC and Counter-Defendants, and further obstruct and seek to delay this litigation. Indeed, NTG now demands discovery arising from its out-of-time Counterclaims that includes 100 new written requests, depositions of all seven newly named parties (including NIC's trial counsel), and recalled depositions of NIC and its principals—all within a 60-day period.  *See* Decl. of Peter Arhangelsky ("PA Decl.") ¶4, Exh. B. NTG's demand to squeeze this discovery into such a limited period reflects an obvious acknowledgement that their Counterclaims are out of time and a willingness to impose as much prejudice as possible on NIC and the newly added parties.  NTG's Counterclaims are filed in bad faith and constitute a vexatious attempt to delay trial and retaliate against NIC and its counsel.

Bad faith is further evidenced by Counterclaimant Scott Ferrell's broad publication of his unsupported allegations to counsel representing party opponents in unrelated lawsuits wherein Emord & Associates, P.C. also represents parties.  In a cover email distributing the Counterclaims pleading, Ferrell falsely accuses NIC's counsel of committing perjury and reasserts as fact allegations that this Court earlier rejected as factually unsupported.  PA Decl. ¶2, Exh. A; Dkt. 891 at 18.  Sanctions are appropriate in these circumstances for NTG's flagrant violation of the Rule 16 scheduling order, as explained in greater detail below.

### A.   NTG Violated the Court's Scheduling Order by Filing Counterclaims in April 2020 without Seeking Leave of Court

This Court's currently operative Trial Setting Order set the deadline to join parties or amend pleadings:

> All motions to join other parties or to amend the pleadings shall be filed and served within sixty (60) days of the date of this order and noticed for hearing within ninety (90) days hereof.

*See* Dkt. 883 at 1.  That Order issued on December 16, 2019.  *Id.*  The deadline to

file motions to amend pleadings or join parties was thus February 14, 2020.[1] NTG never filed a motion for leave to add parties under Rules 13(h), 16, 19, or 20. NTG never filed a motion for leave to amend pleadings to add counterclaims. NTG instead filed standalone Counterclaims on April 7, 2020. *See* Dkt. 918 (now located at Dkt. 951; amended at Dkt. 978-1). NTG had never before filed counterclaims in over four years of this litigation. The Counterclaims added seven (7) new parties to the litigation, and presented for the first time in litigation an entirely new RICO lawsuit. Dkt. 978-1. The Counterclaims were filed in clear violation of the Court's Scheduling Order. *See* Dkt. 883 at 1.

### 1. NTG Was Required to Seek Leave to File Its Counterclaims

The Court's Order of December 16, 2019 required parties to seek leave before adding new parties or amending the pleadings. Dkt. 883 at 1. NIC timely sought leave on February 14, 2020 [*see* n.1, *supra*] and filed its TAC on March 24, 2020. Dkt. 911. The argument that the mere filing of the TAC would impliedly authorize the filing of NTG's Counterclaims has been directly addressed and rejected by courts in the Ninth Circuit.

"[N]ewly alleged counterclaims are allowed as of right **only to the extent they directly relate to changes in the amended complaint**[.]" *Tate-Robertson v. Walmart Inc.*, No. EDCV19-27, 2019 WL 6454392, at *2 (C.D. Cal. Aug. 13, 2019) (collecting cases) (emphasis added). The *Tate-Robertson* court thus explained:

> As noted by the court in *City of W. Sacramento, California v. R & L Bus. Mgmt.*, "[t]he Federal Rules of Civil Procedure and Ninth Circuit precedent do not directly address the issue of whether a defendant may, as a matter of right, assert new counterclaims in response to an amended complaint, or whether the defendant must first seek leave of court." 2019 WL 2249630, at *1 (E.D. Cal. May 23, 2019). It described three approaches taken by district courts across the country: 1) the permissive approach, under which "a defendant served with an amended complaint may amend its

---

[1] NIC timely filed a Motion for Leave to file a TAC on February 14, 2020, which the Court granted on March 24, 2020. *See* Dkt. 892; Dkt. 910.

answer as of right without being limited by the scope of the changes made in the amended complaint[;]" **2) the moderate approach, under which "newly alleged counterclaims are allowed as of right only to the extent they directly relate to changes in the amended complaint[;]"** and 3) the narrow approach, under which "an amended answer must be confined to the amendments to the complaint." *Id.* (citing *Coppola v. Smith*, 2015 WL 2127965, at *2 (E.D. Cal. May 6, 2015); *Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd.*, 2016 WL 6828200, at *2 (D. Nev. Nov. 18, 2016); *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 11 F. Supp. 3d 622, 630 (E.D. Va. 2014)).

*Tate-Robertson*, 2019 WL 6454392, at *2 (emphasis added). The "moderate" approach is used by courts in the Ninth Circuit. *See, e.g., Coppola v. Smith*, No. 1:11-CV-1257, 2015 WL 2127965, at *2–3 (E.D. Cal. May 6, 2015) (collecting cases) ("The district courts within the Ninth Circuit have generally followed the moderate approach."); *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243, 2012 WL 3877783, at *5–6 (N.D. Cal. Sept. 6, 2012) (holding that the "moderate approach is the most equitable and manageable approach"); *Composite Res., Inc. v. Recon Med., LLC*, No. 2:17-CV-01755, 2018 WL 5886530, at *2 (D. Nev. Nov. 9, 2018) (holding that new affirmative defenses cannot be presented without leave where such defenses do not respond to the charges in the amended complaint); *Daou v. Abelson*, No. 2:11-CV-01385, 2012 WL 1292475, at *2 (D. Nev. Apr. 13, 2012) (denying counterclaim where it exceeded the scope of the amended complaint).

Here, that moderate approach required NTG to tether their Counterclaims directly to changes made by NIC in the TAC. NTG was not permitted to file its Counterclaims absent leave of court because the Counterclaims are unrelated to the changes in NIC's amended complaint, and the scope of NTG's Counterclaims far exceeds the limited changes made to NIC's pleading.

NTG's Counterclaims do not "directly relate to changes in the amended complaint." *Compare* Dkt. 892-4 *and* Dkt. 911 *with* Dkt. 978-1. Consistent with the local rules, NIC earlier attached a redlined version of its Third Amended

Complaint that showed changes made to the SAC, the latter of which NIC had filed on May 10, 2016. *See* Dkt. 892-4 (redlined TAC); Dkt. 92 (SAC). The TAC updated NIC's RICO allegations based on content developed in discovery, all of which had been part of this lawsuit for years. *See* Dkt. 892-4. Specifically, NIC added 26 new paragraphs relating to Strataluz, along with several new predicate RICO acts that were supported by the updated fact allegations. *Id.*; *see also* Dkt. 911 (TAC). NIC did not add any new RICO counts. NIC did not add any new parties. NIC did not add new damages, or theories of liability.

Accordingly, when this Court granted NIC leave to file the TAC, the Court held that "these new allegations would not greatly change the parties' positions." *See* Dkt. 910 at 6. This Court rejected NTG's arguments to the contrary:

> The Court disagrees that the Strataluz and newly proposed predicate facts are unrelated to the allegations in the SAC. While the Strataluz/ProMaxal predicate acts are different from the wiretapping and false advertisement schemes in that they do not involve a sham plaintiff from the community, it is still a "sham plaintiff" in that it is an entity allegedly created by Ferrell and Reid to manufacture litigation and threaten lawsuits in an effort to extort settlements from frivolous lawsuits. *See* Proposed TAC ¶¶ 359-377, 435. Furthermore, while Defendants may not yet have prepared a defense into the newly proposed predicate acts, they cannot be surprised given that these allegations arose from documents produced by defendants themselves and as admitted in their briefs, have been disclosed through discovery disputes.

Order Dkt. 910 at 6.

***None* of the allegations or claims in NTG's Counterclaims [Dkt. 978-1] respond or relate to the new allegations in NIC's TAC.** *Compare* Dkt. 892-4 *and* Dkt. 911 *with* Dkt. 978-1. Rather, NTG's Counterclaims bring allegations concerning activities in the pending lawsuit that were already decided against Counterclaimants at earlier stages in the case. *See* Dkt. 978-1. NTG alleges that NIC's lawsuit itself was a RICO enterprise designed to retaliate against Scott Ferrell.

*Id.*, ¶13, 35.  None of NTG's new allegations relate to Strataluz or any of the new content in NIC's TAC.  In over 200 paragraphs of allegations, NTG's Counterclaims fail to even mention Strataluz and make no reference to NIC's allegations against NTG in the TAC.  *See generally*, Dkt. 978-1.

Moreover, the Counterclaims substantially exceed the scope of any changes made to the case by NIC's TAC.  The Counterclaims add seven (7) new parties to the litigation, including three witnesses who are unrelated to Strataluz.  *See* Dkt. 978-1.  The Counterclaims assert two new RICO causes of action alleging several predicate acts.  The bulk of NTG's allegations involve alleged conduct occurring at times in or after 2015, whereas NIC's RICO claim focuses on conduct occurring prior to 2015.  *Id.*, ¶95-166; 204-206.  The Counterclaims are thus plainly unconnected to any new content or allegations in NIC's TAC: they do not "directly relate to changes in the amended complaint."  *Tate-Robertson*, 2019 WL 6454392, at *2 (quoting standard).

Under these circumstances, NTG was legally obligated to file a Motion for Leave to assert counterclaims (thereby amending prior pleadings) or to add new parties.  NTG failed to file any such motion.  *See Regions Bank v. Commonwealth Land Title Ins. Co.*, No. 11-23257-CIV, 2012 WL 5410948, at *3 (S.D. Fla. Nov. 6, 2012) (holding "[Defendant] was not at liberty to self-adjudicate its motion and file a new pleading without permission from the Court.").  Because NTG failed to seek leave, it plainly violated the Court's scheduling order and the Counterclaims are ripe for striking.  Moreover, the failure to seek leave denied this Court its proper gate-keeping function to scrutinize late-filed requests for counterclaims and addition of parties, which would have facilitated disposal of that attempt in a single pleading cycle, conserving judicial and party resources.

## 2.  NTG Cannot Show Good Cause or Excusable Neglect

NTG's failure to seek leave of Court is dispositive.  It requires this Court to strike NTG's Counterclaims.  Even had NTG pursued an untimely Motion for Leave

in April 2020 (or now), that motion would nevertheless lack merit.  Because NTG's Counterclaims are filed well outside the Scheduling Order's set period for amendment [Dkt. 883], this Court applies the Rule 16 analysis.  *Sloane v. Karma Enterprises, Inc.*, No. 08-CV-05094, 2009 WL 10674307, at *3 (C.D. Cal. Mar. 16, 2009).

Because this issue arises after expiration of the time for amendment under Docket 883, this Court looks to whether NTG could show "excusable neglect."  *See Mireles*, 2014 WL 575713, at *2 ("[W]hen any motion to extend time is made *after* time has expired, Rule 6 requires the parties to address excusable neglect").  NTG cannot demonstrate excusable neglect because it took no steps to comply with the Court's deadline (and, as of this filing, still has not sought leave).  "The four factors are: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the moving party's conduct was in good faith."  *Mireles*, 2014 WL 575713, at *2 (citing *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004)).  "[A] lawyer's mistake of law in reading a rule of procedure is not a compelling excuse."  *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004); *see also Kyle v. Campbell Soup Co.*, 28 F.3d 928, 928 (9th Cir. 1994), *as amended on denial of reh'g* (Apr. 8, 1994) (holding that "district court abused its discretion by finding that a mistake of law constitutes excusable neglect under Rule 6(b) of the Federal Rules of Civil Procedure").

As explained below, each factor weighs heavily against NTG's Counterclaims.  Counter-Defendants will first address the length of delay, and then explain that NTG has no reasonable explanation for the years-long delay (the second and third factors listed above).  Then Counter-Defendants will address how the untimely and baseless Counterclaims cause extreme prejudice and were not brought in good faith (the first and fourth factors).  NTG filed unauthorized Counterclaims,

without requisite leave, for which it could not in any event meet the standards for leave, thus warranting action by this Court to strike them and award NIC its attorney fees and costs.  Even if NTG could show excusable neglect (which it cannot), NTG lacks good cause for a late amendment to its pleadings because NTG was grossly dilatory in advancing the claims (diligence is a gatekeeper inquiry) and the Counterclaims impose substantial prejudice on NIC and the newly added parties. The Counterclaims are frivolous, barred by the *Noerr-Pennington* doctrine, and barred by the RICO statute of limitations. NTG can neither show good cause nor excusable neglect.

### i.   NTG's Counterclaims Were Delayed by More than Four Years

NTG engaged in extreme delay by asserting its Counterclaims more than 4.5 years into this litigation.  Under both the Rule 16(b) good cause standard and the excusable neglect standard, that extreme delay is dispositive and bars the Counterclaims in their entirety.

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Heath v. Google Inc.*, No. 15-CV-01824, 2017 WL 4005598, at *2 (N.D. Cal. Sept. 12, 2017) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).  "If that party was not diligent, the inquiry should end." *See Orogem Corp. v. De Beers Societe Anonyme*, No. CV 9-9014, 2010 WL 11549347, at *1 (C.D. Cal. Dec. 10, 2010) (quoting *Johnson*, 975 F.2d at 609).

"The relevant inquiry in the undue delay analysis is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Xyratex Tech., Ltd. v. Teradyne, Inc.*, No. 08-CV-04545, 2009 WL 10702550, at *4 (C.D. Cal. Aug. 20, 2009).  "A party … cannot show good cause if the party knew or should have known of the grounds for the claims [the party] sought to add well before [the party] moved for leave to amend." *RePET, Inc. v. Zhao*, No. ED-CV-15-2315, 2017 WL 11444648, at *2 (C.D. Cal. Jan. 13,

2017); *see also Russell v. Walmart Inc.*, No. CV 19-5495, 2020 WL 1652544, at *2 (C.D. Cal. Mar. 3, 2020) (denying defendant's third-party complaint for lack of diligence when the motion for leave was untimely under the scheduling order).

Even under the more lenient Rule 15 analysis (not at issue here), "an egregious, *unexplained delay alone* may be a sufficient basis for denying leave to amend." *Christensen v. CLP Res., Inc.*, No. CV 14-8073, 2018 WL 6017015, at *2 (C.D. Cal. Oct. 22, 2018) (emphasis original).  The Ninth Circuit has thus explained that "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Mach. & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986); *see also Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1176 (E.D. Cal. 2013) (same); *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016–17 (9th Cir. 1999) (same).

Under *Rotella v. Wood*, 528 U.S. 549 (2000), a RICO claim begins to accrue when a plaintiff "knew or should have known of his injury."  *Id.* at 553.  NTG's Counterclaims contain several admissions that the alleged injury began to accrue in 2015 when NIC filed its lawsuit.  *See* Dkt. 978-1 (*passim*).  NTG alleges that "**[f]or the past five years**, Counter-Defendants and the Non-Party Co-Conspirators have waged a war of retaliation…"  *See* Dkt. 978-1 at ¶3 (emphasis added); *see also id.* at ¶¶6, 12, 13.  Similarly, almost all of Counterclaimants' alleged "predicate acts" occurred between 2015 and early 2016—all past the four-year limit.  *See, e.g.,* Dkt. 978-1 at ¶204(a) (alleged declaration fraud (March of 2016)); ¶204(b) (alleged obstruction of declarations (March 2016)); ¶204(c) (alleged witness tampering related to Baker's conversations with Nilon (August 2015)); ¶204(d) (alleged extortion based on purported threats to Nilon (August 2015)); ¶205(a) (alleged fraud by Baker related to alleged conversations with former NTG clients (2015)); ¶205(b) (alleged extortion based on Baker's alleged conversations (2015)); ¶205(c) (alleged witness tampering based on Baker's alleged conversations (2015)); ¶206(a) (alleged

wire fraud for declaration filed in 2014); ¶206(b) (alleged obstruction of justice for a declaration filed in 2014).

Indeed, NTG has repeatedly raised these *exact same* allegations throughout this case, starting with its first responsive motions in February 2016.  In NTG's initial anti-SLAPP motion, NTG raised the same allegations concerning Baker's interactions with Nilon.  *See* Dkt. 40 at 17-18; Dkt. 41 at 14-17.  In May 2017, NTG unsuccessfully sought to disqualify NIC's counsel using the same allegations.  *See* Dkt. 311.  On June 30, 2017, the Court held that NTG's motion was "untimely" even then, because the "NTG Defendants [had] known of Baker's actions for over a year." Dkt. 365 at 9-11.  In 2017, the NTG Defendants unsuccessfully presented these points again in briefing before the Ninth Circuit.  *See Natural Immunogenics v. Scott Ferrell, et al.*, C.A. No. 17-55661 (9th Cir. 2017), Dkt. No. 29 at 16-17 (NTG's appellate brief in 2017 accused NIC of having a "revenge scheme" against Ferrell and NTG, and "concoct[ing] the fiction that Newport Trial Group engaged in a pattern of fraudulent litigation.").

The Court ruled that NTG's baseless motion for disqualification regarding Baker's actions was "untimely" **three years ago** [Dkt. 365 at 9-11], yet their Counterclaims rehash these same allegations.  NTG alleges that Baker acted improperly with certain former NTG clients in late 2015.  *See* Dkt. 978-1 at ¶¶144-162.  But NTG also alleges that it had awareness of that conduct in 2015: "These illicit contacts by Baker with NTG clients were contemporaneously memorialized in a December 7, 2015 letter from NTG to Emord."  *Id.* at ¶162.  Indeed, earlier in this case, NIC sought relief from this Court because Scott Ferrell was disseminating to attorneys in the bar a defamatory and harassing "RICO Complaint" against NIC and its counsel, soliciting one or more to file the suit (none did).  *See* Dkt. 96 at 9-20. Even then, in May 2016, Ferrell was threatening to advance RICO claims against NIC and its counsel.  *Id.*

NTG's Amended Answer of September 16, 2016 also raised the same

allegations, including concerns about NIC's investigator (Baker).  Dkt. 174 at 66; *see also* Dkt. 161 at 66.

More recently, in February 2019, this Court granted NIC summary judgment on NTG's unclean hands affirmative defense.  Dkt. 784.  That Order focused on NTG's allegations of alleged impropriety by Baker.  *Id.*  The Court held: "There is no record evidence sufficient to create a genuine dispute whether NIC directed Baker to threaten or coerce Nilon as alleged by Defendants."  *Id.* at 15.  Yet in Paragraph 143 of its Counterclaims, NTG asserts that their retread allegations regarding Baker constitute material misrepresentations that led to an ill-gained February 28, 2019 Rule 56 summary adjudication.  Dkt. 978-1, ¶143.  Indeed, the alleged misconduct featured in NTG's Counterclaims was the centerpiece of NTG's purported defense against NIC's RICO claims from the very beginning.

Although NTG knew of its factual allegations throughout this case, it obviously chose not to pursue them until now, just six months before trial.  That delay is dispositive under Rule 16, which bars leave to amend where the party seeking leave was not diligent.  That delay also militates against a finding of excusable neglect.  Yet, NTG must satisfy both standards to meet its burden.

### ii.    NTG Has No Reasonable Explanation for Its Delay

NTG has offered no explanation, let alone a persuasive one, for bringing stale claims, over four years after it knew of them.  NTG alleges several predicate acts that purportedly occurred in 2019 surrounding NIC's Motion for Sanctions [Dkt. 844].  To the extent NTG argues its claims did not accrue until 2019, the argument is foreclosed by precedent (and is specious).  First, the Supreme Court in *Rotella* rejected the "last predicate act" rule.  *See Rotella*, 528 U.S. at 549, 554-555.  The sole injury alleged by NTG—the payment of legal fees in litigation—began to accrue under *Rotella* when NIC filed on December 7, 2015, meaning NTG's claim arose (if at all) in 2015.  Moreover, the majority of predicate acts alleged by NTG occurred prior to 2016.  *See* Dkt. 978-1 at ¶¶200-209.  NTG could thus have presented the

claims in NTG's first Answer back in August 2016.  *See* Dkt. 161.

Regardless, even if NTG's claims arose in 2019, NTG still missed its deadline to seek leave to amend by the February 14, 2020 cutoff set by the Court in Docket 883.  *See* Dkt. 883 at 1.  Meaning, despite having months to seek leave of Court following NIC's motion for sanctions, NTG did nothing and simply filed Counterclaims without leave instead.  NTG failed to diligently raise these issues with the Court within the Rule 16 calendar and under the controlling precedent.  The Counterclaims should therefore be stricken.

### iii.   The Counterclaims Impose Substantial Prejudice

"The consideration of prejudice to the opposing party carries the greatest weight."  *See* Order, Dkt. 910 at 4 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).  Here the Counterclaims threaten to derail this litigation within six months of trial and impose substantial new costs and burdens. *See Steinmeier*, 2020 WL 248984, at *5 (holding that new claims "would derail the action entirely").

NTG asserts an entirely new RICO lawsuit with six months remaining before the pretrial conference.  This Court has set a trial date of November 3, 2020.  Dkt. 883.  Allowing these Counterclaims would make that trial date impossible.  From their outset, NIC's counsel has been required to devote substantial resources to addressing the Counterclaims and legal issues raised therein.  The necessary motions practice alone has drawn away NIC's resources available to complete discovery in the primary lawsuit, which includes tasks necessary to prepare for trial. Furthermore, NTG just recently issued a letter contending that its Counterclaims necessitate the reopening of fact discovery so that they can issue new written requests (despite the stale nature of its claims and the law of the case governing them); depose all seven newly added parties (including NIC's counsel); recall the depositions of NIC and its principals; and reopen expert discovery.  *See* PA Decl., ¶4 Exh. B.  NTG demands that all of this discovery occur within 60 days.  *Id.*  If the

Counterclaims remain, those burdens would become unmanageable in context with a November trial date.

Additionally, NIC and the other Counter-Defendants have been forced to retain outside counsel to defend against the Counterclaims.[2]   That counsel is necessary, in part, because NTG's Counterclaims add NIC's trial counsel as a party in the litigation.  Unless this Court strikes or dismisses those Counterclaims, NIC may be deprived of its chosen counsel.  A substitution of counsel at this point in litigation—over 4.5 years after the filing of this case—imposes irreparable injury. That substitution would force NIC to incur substantial costs, and would require a substantial extension of the trial date.

Were NTG allowed to proceed, the Counterclaims would reset and greatly expand discovery in the case.  Each of the seven (7) newly added parties has a right to discovery in defense of the alleged RICO claims.  Those parties are entitled to expert discovery, and the full panoply of discovery resources available under Rules 26 through 37.  *See, e.g., Kisaka v. Univ. of S. California*, No. 11-CV-01942, 2013 WL 12203018, at *3 (C.D. Cal. Nov. 20, 2013) ("[T]he addition of four new defendants would necessarily require continuing the discovery deadlines and extending the trial schedule, as the new parties would be entitled to full discovery."). The Court would be required to afford each Counter-Defendant due process.  *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) ("Amending a complaint to add a party poses an especially acute threat of prejudice to the entering party.").  Moreover, given the nature of the Counterclaims, a substantial number of complex privilege issues are likely to predominate because NTG sues its adversary's litigation counsel.  As the Court is aware, resolving privilege issues in NIC's primary RICO lawsuit required years.

---

[2] The undersigned counsel from Amin Talati Wasserman represent the Counter-Defendants only in defense of the Counterclaims.  Emord & Associates, P.C. continues to represent NIC in pursuit of the primary RICO claims brought by Plaintiff.

Finally, because NTG now affirmatively sues NIC regarding the underlying RICO claims, NTG's lawsuit likely waives privilege concerning categories of information and documents in NTG's possession that were earlier withheld from NIC on privileged grounds.  The Counterclaims would thus require a reopening of discovery in NIC's plaintiff RICO case so the Court could resolve those concerns with implied and express waiver.

In short, there is no universe where counter-suing opposing counsel with a RICO complaint spanning more than 200 paragraphs six months before trial does not derail litigation.  That was likely NTG's goal when it filed its Counterclaims.  Although NTG has pretended at times to desire a speedy trial, in reality NTG has failed to develop a defense on the merits.  NTG has thus insisted on a speedy trial only in instances where doing so would limit NIC's ability to take discovery.  Now that NIC is on the verge of completing discovery, with multiple favorable privilege rulings in 2018 through 2019, and key depositions looming, NTG has resorted to the extraordinary and egregious tactic of filing time-barred and frivolous counterclaims based on arguments this Court has roundly rejected in this litigation (*see* Dkt. Nos. 365, 784, 891), all in a transparent effort to prevent adjudication of its criminal conduct in the scheduled November trial.

### iv.    The Counterclaims Were Not Brought in Good Faith

NTG's Counterclaims were retaliatory and a bad faith attempt to obstruct NIC's lawsuit.  Bad faith can be inferred from NTG's delay and its choice to reallege numerous factual contentions previously rejected by this Court.  *See, e.g.,* Dkt. 365, 784, 891.  It may also be inferred by how Counterclaimants have used their filing as part of an ongoing pattern of harassing and falsely disparaging Counter-Defendants.  For example, on or around November 4, 2019, Ferrell sent text messages to Charlotte Carlberg.  *See* Decl. of Charlotte Carlberg ("Carlberg Decl.") ¶1, Exh. A. In the text messages, he accuses her of perjury and pressures her to "resolve things" without NTG having to proceed with motions against her "asking the judge to impose

penalties for perjury."  Carlberg Decl. ¶1, Exh. A at 5, 10.  Similarly, on April 8, 2020, the day after filing NTG's Counterclaims, Ferrell contacted all three former non-party witnesses via an email with the subject line, "Ferrell v. Carlberg, Buc, et al."  *See* Carlberg Decl. ¶2, Exh. B.  In the email, he states as follows: "I filed the attached lawsuit against the three of you and several others yesterday.  I urge you to read it, carefully and in its entirety, so that you each understand the gravity of the claims raised."  *Id.*  He also offers, "If you are willing to be completely honest and tell the truth, my claims against you can be quickly resolved." *Id.*  These intimidating contacts demonstrate a transparent, bad faith purpose behind the unauthorized Counterclaims: to intimidate Charlotte Carlberg and the Bucs into changing their sworn testimony.

Bad faith is equally demonstrated by Ferrell's use of the Counterclaims with regard to Emord & Associates.  On April 24, 2020, the Emord firm received an email communication from a colleague ("Unrelated Attorney") who is opposing counsel in an unrelated lawsuit.  PA Decl. ¶2, Exh. A.  The email from the Unrelated Attorney forwarded an email received from Ferrell the same day.  *Id.*  Ferrell's email states, "You may find the attached Complaint relevant to the above litigation.  **It shows numerous documented incidences of perjury, subornation of perjury, and witness tampering by attorney Peter Arhangelsky of the Emord law firm.**"  *Id.* (emphasis added).  The Unrelated Attorney observes in their email to the Emord firm, "It seems Mr. Ferrell is emailing this to every one of your opposing counsel he can find on PACER."  *Id.*  Ferrell is, thus, using the unauthorized Counterclaims for the illicit purpose of inviting counsel in other cases to, at a minimum, harbor distrust toward attorney Arhangelsky and the Emord firm or, at a maximum, to rely upon content in the unauthorized pleading as born of fact, when to the contrary, this Court's rulings have held the same accusations bereft of requisite fact.  *See* Dkt. Nos. 365, 784, 891.  This Court earlier reviewed the relevant evidence and held the same allegations "lack merit."  *See* Dkt. 891 at 18 ("the evidence presented does not show

that NIC or its counsel tampered with witness testimony or was aware of the falsehoods contained in the declarations"). Repeated misuse of the Counterclaims outside of this litigation is plain evidence of retaliatory intent and bad faith.[3]

### B.   The Counterclaims Are Futile

Contemporaneous with this motion, NIC files a Motion to Dismiss under Rule 12(b)(6). That Motion explains that, at a minimum, the Counterclaims are barred under the *Noerr-Pennington* litigation immunity. NTG has no non-frivolous argument to invoke any exception to *Noerr*. NIC hereby incorporates those arguments and asks this Court to consider those positions when evaluating potential remedies under Rules 16(f) and 12(f). Moreover, as stated in NIC's companion Motion to Dismiss, the Counterclaims are also time-barred, and NTG cannot show a pattern of racketeering activity sufficient to state a RICO claim.

Given those glaring deficiencies, this Court would likely have determined that NTG's Counterclaims are futile, even had NTG properly sought leave of court rather than violate the Scheduling Order.

### C.   Rule 16(f) Sanctions Are Appropriate

"Under Rule 16(f), a court may sanction a party or a party's attorney who fails to obey a court order." *Mireskandari v. Mail*, No. 12-cv-02943, 2014 WL 12561581, at *8 (C.D. Cal. Aug. 4, 2014), *aff'd in part, appeal dismissed in part sub nom. Mireskandari v. Associated Newspapers, Ltd.*, 665 F. App'x 570 (9th Cir. 2016). "In deciding whether a sanction under Rule 16(f) is merited, the court need not find that the party acted willfully, intentionally, or in bad faith." *Id.* (collecting authority). "Nor does Rule 16(f) require a showing of prejudice to justify sanctions." *Id.* "Rule 16(f) was designed not only to insure expeditious and sound management of the preparation of cases for trial but to deter conduct that

---

[3] As noted *supra*, this is not the first time Ferrell has used this illicit technique to defame NIC and its counsel. *See* Dkt. 96 at 9-20 (dispatching egregiously false claims about sexual misconduct, plagiarism, etc.).

unnecessarily consumes the Court's time and resources that could have been more productively utilized by litigants willing to follow the Court's procedures." *See id.* (quoting *Martin Family Trust v. Heco/Nostalgia Enterprises Co.*, 186 F.R.D. 601, 603 (E.D. Cal. June 6, 1999)).

Under those guidelines, this Court should sanction NTG. In *Mireskandari*, the Court entered a sanction where "the addition of … new claims violated the court's scheduling order." *Mireskandari*, 2014 WL 12561581, at *9 ("Because the deadline to amend pleadings to add new claims had already passed, and because the court did not … authorize Mireskandari to add new claims, the claims were subject to a motion to strike" and were sanctionable). Here, NTG filed counterclaims that added seven new parties without seeking leave of court and without pursuing a motion to add new parties. NTG filed those counterclaims months after the deadline to add parties or amend. NTG had knowledge of all facts and theories supporting the Counterclaims well before this Court's deadline lapsed on February 14, 2020. *See* Dkt. 883 at 1. NTG also has no reasonable argument that its broad counterclaims were permitted as of right under the "moderate" approach routinely followed by courts in the Ninth Circuit. *See supra* at Section IV(A)(1). This Court earlier rejected NTG's argument that "new" content in NIC's TAC materially altered the lawsuit. *See* Dkt. 910 at 6 ("The Court disagrees that the Strataluz and newly proposed predicate facts are unrelated to the allegations in the SAC").

NTG filed the Counterclaims in retaliation for NIC's decision to file a TAC that identified Strataluz-related predicate acts. NTG filed the Counterclaims and then dispatched those unfounded allegations to members of the bar presently litigating in cases where the party opponents are represented by NIC's counsel. PA Decl. ¶2, Exh. A. By naming *opposing counsel* as a Counterclaim-Defendant, NTG's transparent purpose was to delay and obstruct the current trial proceedings and fuel this illicit defamatory publication. This Court should evaluate the natural and probable effects of the Counterclaims when evaluating the significance of

NTG's violation.

The circumstances defined here fall within the most egregious cases in the precedent. Rule 16(f) affords the Court authority to enter "any just orders" to remedy a violation. Where the violation is transparent, and causes substantial prejudice, the Court should not only strike the Counterclaims in their entirety but also require payment of the Counter-Defendants' attorney fees and costs.

Under Rule 16(f)(2), the Court "must order [NTG], its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with [Rule 16], unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. Pro. 16(f)(2). As explained *supra*, NTG's violation of the scheduling order was direct, egregious, and not substantially justified: NTG asserts stale, time-barred claims; entirely ignores this Court's prior orders resolving the facts alleged against NTG; and never filed its counterclaims despite years of cognizance of them, and it failed fundamentally by not seeking leave from this Court before asserting them.

"A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610. "Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier." *Id.* (denying motion to modify scheduling order to assert late joinder of additional parties); *see also Chem. Bank v. Star Dev. & Holding, LLC*, No. 2:16-CV-01523, 2017 WL 5587516, at *3–4 (D. Nev. Nov. 17, 2017) (denying amendment because, in part, "[w]ere the court to grant the motion, discovery would essentially start over").

The Counterclaims [Dkt. 978-1] reflect an increasing level of desperation on NTG's part. The relief under Rule 16(f) will not only keep this case on track for trial in November 2020, but will serve to deter NTG and its counsel from similar misconduct in the remaining months before trial.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, NIC respectfully requests that this Court (1) strike NTG's out-of-time and meritless Counterclaims in Dkt. 978-1 under Rules 12(f) and/or 16(f); and (2) award NIC its reasonable attorney fees and costs incurred in association with defending against them.


DATED:  May 21, 2020                    Respectfully submitted,


                                        AMIN TALATI WASSERMAN


                                        By:    <u>*/s/ Sanjay S. Karnik*</u>

                                        Sanjay Karnik (*pro hac vice*)
                                        J. Kathleen Bond (*pro hac vice* forthcoming)
                                        Jennifer M. Adams
                                        *Counsel to Counter-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2020 the foregoing, **COUNTERCLAIM DEFENDANTS' MOTION TO STRIKE UNDER FED. R. CIV. P. 12(f) and 16(f)** was served on counsel for the following parties through electronic service by email to the emails on file with the Court's CM/ECF system:

Brendan M. Ford, Esq.
bford@FordDiulio, P.C.
650 Town Center Dr, Ste 760
Costa Mesa, CA 92625
Tel: (714) 384-5540
*Attorney for Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover, Matthew Dronkers, Taylor Demulder, Sam Pfleg,*

David J. Darnell, Esq.
ddarnell@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
*Attorney for Newport Trial Group and Scott Ferrell*

Nicole Whyte
nwhyte@bremerwhyte.com
Benjamin Price
bprice@bremerwhyte.com
Kyle A. Riddles
kriddles@bremerwhyte.com
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000
*Attorneys for Ryan Ferrell. Andre Baslow, David Reid, and Victoria*
*Knowles*

**/s/ Sanjay S. Karnik**
Sanjay S. Karnik