Sanjay S. Karnik, Esq. (*pro hac vice*)
sanjay@amintalati.com
J. Kathleen Bond, Esq. (*pro hac vice*)
katie@amintalati.com
Jennifer M.S. Adams (Ca. Bar No. 319347)
jennifer@amintalati.com
AMIN TALATI WASSERMAN LLP
100 S. Wacker Dr., Ste. 2000
Chicago, IL 60606
Phone: (312) 312-3327
Fax: (312) 884-7352
*Attorneys for Counter-Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS, a Florida corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>    Defendants.<br>------------------------------------------<br>NEWPORT TRIAL GROUP, a professional corporation; and SCOTT J. FERRELL, an individual,<br><br>    Counterclaimants,<br><br>  v.<br><br>NATURAL IMMUNOGENICS CORP., et al.<br><br>    Counter-Defendants | Case No.: 8:15-cv-02034-JVS-JCG<br><br>**REPLY IN SUPPORT OF COUNTER-DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**<br><br>Hearing Date:  July 6, 2020<br>Hearing Time:  1:30 PM<br>Courtroom: 10C<br>Judge:  Hon. James V. Selna |

# **TABLE OF CONTENTS**

I.  INTRODUCTION…………………………………………………….........1

II.  LEGAL STANDARD ...........................................................................4

III.  ARGUMENT IN REPLY .....................................................5

    A.  The Statute of Limitations Bars the Counterclaims ............................ 6

       1.  NTG's Counterclaims Were Actionable by December 2015 at the Latest............................................................ 6

       2.  The Separate Accrual Doctrine Does Not Apply Because NTG Has Not Suffered "Separate" Injuries from Predicate Acts Within the Limitations Period ................................. 8

    B.  The *Noerr-Pennington* Doctrine Bars NTG's Counterclaims ....................................................................12

       1.  The Third *Noerr* Exception Requires Judicial Reliance ..................13

       2.  Misconduct that Comes to Light During the Lawsuit Does Not Deprive the Litigation of Its Legitimacy .........................14

       3.  The Third *Noerr* Exception Does Not Apply to Alleged Predicate Acts in 2019 and, So, NTG's Counterclaims Must be Dismissed with Prejudice ....................................15

       4.  *Noerr-Pennington* Bars NTG's Alleged Predicates Involving Declarations Filed in 2014, 2017, and 2018....................17

       5.  *Noerr-Pennington* Bars NTG's Alleged Predicates Concerning Prelitigation Investigations ...........................................19

    C.  NIC's Single RICO Suit Is Not a Pattern of Racketeering Activity .....................................................................20

    D.  NTG Has Failed to Show That Leave to Amend Is Appropriate ............................................................24

IV.  CONCLUSION ..................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Al George, Inc. v. Envirotech Corp.*,
    939 F.2d 1271 (5th Cir. 1991) .......................................................10

*Allwaste, Inc. v. Hecht*,
    65 F.3d 1523 (9th Cir. 1995) ......................................................1, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................... 4

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
    237 F.3d 394 (4th Cir. 2001) .......................................................13

*California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*,
    669 F. Supp. 2d 1152 (C.D. Cal. 2009).............................................17

*Chancellor v. Legarza*,
    2016 WL 3769341 (D. Nev. July 14, 2016).......................................11

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
    690 F.2d 1240(9th Cir. 1982) ......................................................14

*Delacruz v. State Bar of California*,
    2020 WL 227237 (N.D. Cal. Jan. 15, 2020)......................................10

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
    223 F.3d 12 (1st Cir. 2000).........................................................23

*Freeman v. Lasky, Haas & Cohler*,
    410 F.3d 1180 (9th Cir. 2005) .................................................13, 14

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1996) ...........................................2, 4, 7, 9, 10, 11

*Guerrero v. Greenpoint Mortg. Funding, Inc.*,
   2009 WL 10700622 (N.D. Cal. Nov. 19, 2009), *aff'd,* 403 F. App'x 154 (9th Cir. 2010) ...............................................................................................3, 25

*Hollander v. Pressreader, Inc.*,
   2020 WL 2836189 (S.D.N.Y. May 30, 2020) ...............................................20

*In re Outlaw Labs., LP Litig.*,
   352 F. Supp. 3d 992 (S.D. Cal. 2018) ..........................................................17

*Internet Corporativo S.A. de C.V. v. Bus. Software All., Inc.*,
   2004 WL 3331843 (S.D. Tex. Nov. 15, 2004) .............................................10

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997) ....................................................................................... 9

*Kottle v. Northwest Kidney Centers*,
   146 F.3d 1056 (9th Cir. 1998) ...........................................................3, 14, 18

*Marceau v. Int'l Bhd. of Elec. Workers*,
   2006 WL 1889600 (D. Ariz. July 7, 2006) ...................................................11

*Marina Point Dev. Assocs. v. United States*,
   364 F. Supp. 2d 1144 (C.D. Cal. 2005)........................................................12

*Mazzocco v. Lehavi*,
   2015 WL 12672026(S.D. Cal. Apr. 13, 2015) ..............................................17

*McCormack v. Advanced Micro Devices*,
   1994 WL 715655 (N.D. Cal. Dec. 20, 1994) .............................................4, 19

*Menasco, Inc. v. Wasserman*,
   886 F.2d 681 (4th Cir. 1989) ........................................................................22

*MGA Entm't, Inc. v. Mattel, Inc.*,
  2012 WL 569389 (C.D. Cal. Feb. 21, 2012) ................................................10

*Mostowfi v. 12 Telecom Int'l, Inc.*,
  269 F. App'x 621 (9th Cir. 2008) ................................................... 4

*N. Tr. Co. v. Ralson Purina Co.*,
  1994 WL 605743 (N.D. Ill. Nov. 3, 1994)......................................11

*Nilon v. Natural-Immunogenics Corp.*,
  3:12-00930-LAB  (S.D. Cal. July 31, 2014) .......................................7, 18, 19

*NSI Tech. Servs. Corp. v. Nat'l Aeronautics & Space Admin.*,
  1996 WL 263646 (N.D. Cal. Apr. 13, 1996).......................................3, 21, 24

*Pace Indus., Inc. v. Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987) .....................................................2, 9

*Papasan v. Allain*,
  478 U.S. 265 (1986) ...............................................................4, 19

*Religious Tech. Ctr. v. Wollersheim*,
  971 F.2d 364 (9th Cir. 1992) ....................................................22

*Republic of Kazakhstan v. Stati*,
  380 F. Supp. 3d 55 (D.D.C. 2019), *aff'd sub nom. Republic of Kazakhstan, Ministry of Justice v. Stati*, 801 F. App'x 780 (D.C. Cir. 2020) ....................21

*Richardson v. Reliance Nat. Indem. Co.*,
  2000 WL 284211 (N.D. Cal. Mar. 9, 2000) ....................................22

*Rotella v. Wood*,
  528 U.S. 549 (2000) ...........................................................1, 7, 8

*Rupert v. Bond*,
   68 F. Supp. 3d 1142 (N.D. Cal. 2014) .................................................2, 13, 14

*Sasser v. Amen*,
   2001 WL 764953 (N.D. Cal. July 2, 2001), *aff'd,* 57 F. App'x 307 (9th Cir. 2003) ....................................................................................................................11

*Sequoia Elec., LLC v. Trustees of Laborers Joint Tr. Fund*,
   2013 WL 321661 (D. Nev. Jan. 28, 2013) ...................................................... 4

*Sil–Flo, Inc. v. SFHC, Inc.*,
   917 F.2d 1507 (10th Cir.1990) ....................................................................21

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ...........................................................5, 12, 19

*Streck v. Peters*,
   855 F. Supp. 1156 (D. Haw. 1994) ............................................................. 7

*Swallow v. Torngren*,
   2018 WL 2197614 (N.D. Cal. May 14, 2018)......................... 2, 14, 15, 18, 22

*Thomas v. Hous. Auth. of Cty. of Los Angeles*,
   2006 WL 5670938 (C.D. Cal. Feb. 28, 2006) .........................................12, 19

*Ungureanu v. A. Teichert & Son*,
    2012 WL 1108831 (E.D. Cal. Apr. 2, 2012), *report and recommendation adopted* 2012 WL 13036782 (E.D. Cal. May 29, 2012)................................14

*United States v. Hively*,
   437 F.3d 752 (8th Cir. 2006) ...................................................................... 6

*Western Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
   235 F.3d 629 (D.C. Cir. 2001) .............................................................4, 22, 23

*Williams v. Jones & Jones Mgmt. Grp., Inc.*,
    2015 WL 349443 (C.D. Cal. Jan. 23, 2015) .................................................15

*Zupan v. Cal. Dep't of Corps.*,
    2010 WL 530069 (N.D. Cal. Feb. 8, 2010) .................................................. 2

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................... 4

Fed. R. Civ. P. 11 .........................................................................3, 24

Fed. R. Civ. P. 11(c)(2) ...............................................................3, 12

Fed. R. Civ. P. 12(b)(6) ...........................................................1, 4, 5

Fed. R. Civ. P. 15 ...........................................................................24

Counter-Defendants NIC, Ben and Theo Quinto, Emord & Associates, PC, Peter Arhangelsky, MaryAnn and Jim Buc, and Charlotte Carlberg (collectively "Counter-Defendants" or "NIC") hereby Reply in Support of their Motion to Dismiss the Amended Counterclaims under Fed. R. Civ. P. 12(b)(6) [Dkt. 990-1].

## I.   INTRODUCTION

NTG's Counterclaims [Dkt. 980] fail as a matter of law for several reasons. First, NTG's allegations are time-barred under the RICO four-year statute of limitations.  Faced with that reality, NTG contends that its RICO claim first came to fruition in 2019 when the declarations of MaryAnn and Jim Buc and Charlotte Carlberg were filed and then withdrawn before any decision was rendered based upon them.  *See* Dkt. 1003 at 8[1].  NTG argues that prior to 2019, it lacked the RICO element of "continuity."  *Id.* at 9.  That argument is belied by the content of NTG's Counterclaims wherein it alleges nine (9) predicate acts between June 2014 and March 2016, all of which were outside the four-year limitations period which reaches back no further than April 7, 2016.  *See* Dkt. 980 at ¶209.  Under the precedent, that timeframe and number of predicate acts is sufficient to establish the temporal aspects of RICO continuity that NTG claims it lacked before 2019, as they span over twenty months and the alleged RICO injury arose from legal fees first incurred at the start of NIC's suit against NTG in December of 2015.[2]  *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995) (holding predicate acts spanning thirteen months constitute a "substantial period of time").  Having delayed filing its counterclaims for more than four years, they are time-barred under the RICO statute and *Rotella v. Wood*, 528 U.S. 549, 552 (2000).

Second, the separate accrual doctrine does not save NTG's time-barred

---

[1] All citations refer to the ECF pagination unless noted otherwise.

[2] To be clear, the law prohibits a RICO claim based on a single lawsuit against a single set of alleged victims, but, to the extent that NTG argues it lacked the temporal aspect of "continuity" until 2019, their own allegations belie that position.

claims.[3]  Under that doctrine, NTG had to show that it incurred "new" and "separate" injuries stemming from more recent predicate acts within the limitations period.  The accumulation of legal fees is not, however, a "separate" injury, but rather, a mere continuation of the injury caused by the initial litigation.  *See Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987) (holding "no new injury results" from continued litigation on an underlying claim).  Because NTG does not allege any distinct injury other than fees to defend the one and only suit brought by NIC, the separate accrual doctrine does not apply.

Third, NTG has failed to show that its alleged predicate acts fall under the third exception to *Noerr-Pennington* (i.e., the "sham litigation" exception), which requires a showing that alleged misrepresentations stripped NIC's underlying RICO suit of its legitimacy.  NTG fails to offer any credible argument on that point.  This Court did not rely on the alleged misrepresentations.  Moreover, where the alleged misconduct comes to light in the underlying case, that misconduct has been ruled incapable of delegitimizing the suit because the presiding court has an opportunity to review and adjudicate the matter.  *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1158-59 (N.D. Cal. 2014); *Zupan v. Cal. Dep't of Corps.*, No. C 09-01014 CW, 2010 WL 530069, at *25-26 (N.D. Cal. Feb. 8, 2010).  That is the case here.  This is not a situation where alleged "misrepresentations" are discovered years after the close of litigation.  This Court is well aware of NTG's allegations of impropriety, and has issued multiple orders adjudicating those exact issues against NTG.  In evaluating the third *Noerr* exception, Courts reject precisely this kind of recasting of "disputed issues from the underlying litigation as 'misrepresentations' by the other party." *Swallow v. Torngren*, No. 17-CV-05261, 2018 WL 2197614, at *10 (N.D. Cal. May 14, 2018), *aff'd*, 789 F. App'x 610 (9th Cir. 2020) (quoting *Kottle v. Northwest*

---

[3] Even if the separate accrual doctrine applied, NTG cannot seek recovery for predicate acts that are time-barred.  *See Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996) (holding that "damages may not be recovered for injuries sustained as a result of acts committed outside the limitations period.").

*Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir. 1998)).

Fourth, NTG fails to address the ample precedent governing RICO "continuity" and "pattern," where courts have ruled a single suit does not form a pattern of racketeering activity. NTG's Opposition merely argues the temporal considerations regarding "continuity," claiming that, because the alleged predicate acts spanned several years in litigation, the "continuity" element is satisfied. But an evaluation of "continuity" involves multiple factors, only one of which is temporal span. "A single plan with a singular purpose and effect does not constitute a 'pattern' of racketeering activity." *NSI Tech. Servs. Corp. v. Nat'l Aeronautics & Space Admin.*, No. 95-20559, 1996 WL 263646, at *9 (N.D. Cal. Apr. 13, 1996). Here, NTG has only alleged a single "scheme"—the present suit against Scott Ferrell and NTG for violations of the RICO Act. That single suit fails the basic elements of RICO. The precedent forecloses NTG's attempt to turn a single lawsuit into a "pattern" of racketeering activity.

Finally, NTG has failed to establish good cause for further leave to amend. "To justify the request to amend, Plaintiffs must explain what they can add to the Complaint to overcome the fatal obstacles that exist." *Guerrero v. Greenpoint Mortg. Funding, Inc.*, No. C 09-4211, 2009 WL 10700622, at *7 (N.D. Cal. Nov. 19, 2009), *aff'd*, 403 F. App'x 154 (9th Cir. 2010) (collecting cases). NTG offers no such justification, nor can it given the numerous fatal deficiencies present in its counterclaims. Indeed, NTG amended its counterclaims after Counter-Defendants identified these same deficiencies in a Rule 11(c)(2) notice draft motion served onto NTG on April 28, 2020. *See* Dkt. 980 (Amended Counterclaims filed May 7, 2020); Dkt. 1000-1 at 4 (filed Rule 11 Motion for Sanctions). NTG gives the Court no basis to conclude that further amendment will cure the multiple failings that plague its Counterclaims. The Court should therefore dismiss the Counterclaims with prejudice.

## II.  **LEGAL STANDARD**

When evaluating complaint sufficiency, the Court sets aside legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "The court . . . need not accept legal conclusions asserted in the complaint **even if plead as facts**." *McCormack v. Advanced Micro Devices*, No. C-94-20744 RPA, 1994 WL 715655, at *1 (N.D. Cal. Dec. 20, 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (emphasis added); *Sequoia Elec., LLC v. Trustees of Laborers Joint Tr. Fund*, No. 2:12-CV-00751-KJD, 2013 WL 321661, at *3 (D. Nev. Jan. 28, 2013) ("legal conclusions are not entitled to the assumption of truth.").

In its Amended Counterclaims, NTG impermissibly pleads legal conclusions couched as fact. Regarding continuity and pattern, NTG alleges that the Counter-Defendants employed multiple "schemes," but whether conduct constitutes a distinct "scheme" is a legal conclusion.  Under precedent, what NTG labels distinct "schemes" are a single "scheme."  *Western Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 635 (D.C. Cir. 2001).  In addition, NTG alleges distinct "injuries" from each predicate act, s*ee* Dkt. 980 at ¶217, but whether injuries are distinct is also a legal conclusion under the separate accrual doctrine.  *Grimmet,* 75 F.3d 506, 510.

Moreover, NTG ignores the law requiring civil RICO claims to be pled with particularity. *Mostowfi v. 12 Telecom Int'l, Inc.*, 269 F. App'x 621, 623-24 (9th Cir. 2008).  Similarly, NTG ignores the heightened pleading standards of Rule 9(b) which apply when claims implicate protected conduct under *Noerr-Pennington*. Instead, NTG impermissibly lumps Counter-Defendants together and relies on undefined inferences and speculation.  That is fatal because, although the Counterclaims are reviewed under the 12(b)(6) standard, in this case they are asserted following completion of discovery on these issues.  NTG cannot now reasonably claim the facts are "peculiarly within the [Counter-Defendants'] knowledge" because it has already completed comprehensive discovery on them.

Dkt. 1003 at 29.  Proper application of the Rule 12(b)(6) standard and the law of the case requires dismissal of NTG's claims with prejudice.

## III.  ARGUMENT IN REPLY

NTG's Opposition proves that its Counterclaims in Dkt. 980 are legally barred.  NTG argues that its Counterclaims depend on conduct in 2019, when NIC filed declarations of three non-party witnesses with the Court.  Dkt. 1003 at 8. Without that act, NTG claims it lacked facts sufficient to allege the temporal aspect of "continuity" under RICO.  *Id.* at 7-10.  NTG's argument is contradicted by its plain allegations.  The Counterclaims allege predicate acts beginning in June 2014. *See* Dkt. 980 at ¶¶108-110, 163-166, 206-209.  By the time NIC filed its RICO suit on December 7, 2015, NTG alleges that at least seven (7) predicate acts had occurred, with the acts beginning in June 2014 – a span of seventeen (17) months. *See* Dkt. 980 at ¶¶203-206.  The temporal aspect of the "continuity" element was thus satisfied well over four years before NTG filed its Counterclaims on April 7, 2020 [Dkt. 951], making NTG's claims unquestionably barred by the four-year RICO statute of limitations.

Even were the Court to conclude that the 2019 events were required for establishing NTG's RICO Counterclaim, the claims are still legally barred because they depend entirely on litigation activity immune under *Noerr-Pennington*.  NIC withdrew the declarations filed in 2019 before the Court acted on them.  As such, they could not have "deprive[d] the litigation of its legitimacy," an essential element under the third *Noerr* exception.  *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 936 (9th Cir. 2006).  NTG cannot base its RICO claims on NIC's *Noerr*-protected litigation activity.  Moreover, because NTG represents that without the 2019 predicate acts it cannot prove "continuity," under *Noerr* this Court must dismiss the counterclaims in their entirety and with prejudice.

A.   **The Statute of Limitations Bars the Counterclaims**

1. **NTG's Counterclaims Were Actionable by December 2015 at the Latest**

NTG contends that its RICO claim arose only in 2019, arguing it could not establish "continuity" until that year when NIC filed the three non-party witnesses' declarations. Dkt. 1003 at 15. By so arguing, NTG hopes to escape the RICO statute of limitations. *Id.* (arguing "a plaintiff cannot know or be deemed to know of [the RICO injury] until all of the elements of the plaintiff's cause of action" arise). NTG then argues, falsely, that "[t]he other predicate acts … occurred over a span of mere months in late 2015, and thus do not satisfy the continuity requirement on their own." *See Id.* at 15. NTG's argument conflicts with the plain text of its own allegations [Dkt. 980].

Indeed, the Counterclaims allege multiple RICO predicates beginning in **June of 2014**. *See* Dkt. 980 at ¶206 (alleging predicates of wire fraud and obstruction of justice associated with the filing of a declaration on June 30, 2014). NTG alleges **seven (7) predicate acts between June 2014 and December 2015**. *Id.* at ¶¶204-206. Its Counterclaims allege a total of nine (9) predicate acts between June 2014 and March 2016, all outside the four-year limitations period. *Id.* at ¶204(a) (fraud in March 2016); ¶204(b) (obstruction in March 2016); ¶204(c) (witness tampering from February 2015 through August 2015); ¶204(d) (extortion in August 2015); ¶205(a) (wire fraud in December 2015); ¶205(b) (witness tampering in December 2015); ¶206(a) (wire fraud in June 2014); and ¶206(b) (obstruction in June 2014).

Based on the alleged predicates in the Counterclaims (including seven between June 2014 and December 2015), by the time NIC filed its RICO suit on December 7, 2015, the alleged RICO pattern existed for more than 17 months. That is more than sufficient to plead the temporal requirements for close-ended "continuity." *Allwaste, Inc.*, 65 F.3d at 1528 (holding that predicate acts which occurred over thirteen months satisfied the continuity requirement); *see also United States v. Hively*, 437 F.3d 752, 764 (8th Cir. 2006) (four predicate acts spanning

more than one year was sufficient for continuity); *Streck v. Peters*, 855 F. Supp. 1156, 1164 (D. Haw. 1994) ("numerous courts have announced minimum durations coalescing around a consensus period of one year, short of which closed-ended continuity cannot exist"); *Grimmett*, 75 F.3d at 512 ("[C]ontinuity cannot usually be proven unless the scheme has been in existence for at least one year."). NTG's argument that predicate acts from 2019 are required to show continuity is thus false, belied by its own allegations.

*Rotella v. Wood* held that the RICO statute of limitations runs from the date the plaintiff suffers its injury. 528 U.S. 549 (2000). NTG alleges that it suffered its injury (the incursion of legal fees) when NIC filed its RICO lawsuit on December 7, 2015. Dkt. 980 at ¶216. Taking NTG's allegation as true, NTG was well aware of its RICO injury the very moment that NIC filed its suit. *See* Dkt. 990-1 at 6-7. NTG does not argue to the contrary in its Opposition; so the point is conceded. *See generally* Dkt. 1003.

NTG cannot reasonably argue that the predicate acts alleged in its Counterclaims did not occur in sufficient number and temporal scope by December 2015, giving rise to its argument for a RICO cause of action. NTG appears to argue instead that it did not *discover* that pattern until later. For example, in footnote 3 NTG argues that it did not "discover" the predicate act involving Negrete's June 2014 declaration until sometime in October 2017. *See* Dkt. 1003 at 15 n.3.[4] NTG's position is foreclosed by *Rotella*, because "discovery" of the pattern (based on prior predicate acts) does not commence the RICO statute of limitations time clock.

The precedent draws a clear distinction between circumstances where a

---

[4] NTG's point in footnote 3 is a non-sequitur. NTG was opposing counsel against Negrete in the underlying litigation. *See Nilon v. NIC*, No. 3:12-cv-00930, Dkt. 55 at 2-3 (S.D. Cal. July 31, 2014). NTG alleges Negrete filed a false proof of service stating that he had served NTG with a notice of deposition when, according to NTG, he had not. *See* Dkt. 980 at ¶¶163-166. But as the counsel for the party who Negrete claimed to serve, NTG would have known on June 30, 2014 whether the Negrete declaration was true. NTG's argument is thus not only irrelevant, it lacks credibility.

pattern may not yet exist, and those where a pattern exists but the plaintiff has yet to discover the pattern.  The statute of limitations may not run in the former context, but does run in the latter, from the date of injury.  *Rotella*, 528 U.S. at 555.  The Supreme Court in *Rotella* outright rejected the "injury and pattern discovery" rule.  *Id.* ("We think the minority injury and pattern discovery rule unsound for a number of reasons.").  The High Court held instead that, "in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, ***not discovery of the other elements of a claim***, is what starts the clock."  *Id.* (emphasis added).

The only relevant questions are when NTG incurred its injury, and whether the elements of NTG's RICO claim existed (not whether NTG knew of them) at that time.  Because NTG's Counterclaims allege that the RICO pattern began with predicate acts in June 2014, the alleged pattern was in existence at the time NTG suffered its injury in December 2015.  NTG's claims are thus barred by the statute of limitations without regard to when NTG "discovered" that pattern.   The limitations period lapsed on December 7, 2019.

NTG argues that it discovered predicate acts stemming from Negrete's June 2014 declaration in October of 2017.  *See* Dkt. 1003 at 15 n.3.  Discovery of those predicate acts dating back to June 2014 would have given NTG closed-ended continuity, as noted *supra*.  Yet NTG waited over two and a half years (more than 30 months) before attempting to assert RICO counterclaims, long after the statute of limitations had run.

### 2.   The Separate Accrual Doctrine Does Not Apply Because NTG Has Not Suffered "Separate" Injuries from Predicate Acts Within the Limitations Period

NTG argues that predicate acts occurring within the limitations period (i.e., those from 2019) caused "separately accruing" injuries that restart the statute of limitations.  *See* Dkt. 1003 at 16-17.  But legal fees arising from this suit are the only "injury" NTG pleads in its Counterclaims.  NTG's parsing fees from a single suit and associating them with each predicate act has been ruled incapable of creating a

"separate accrual" by the Ninth Circuit. *See Pace Indus., Inc.*, 813 F.2d at 238 (holding "no new injury results" from continued litigation on a single underlying claim). The mere accumulation of legal fees based on conduct occurring within NIC's single RICO suit does not represent separately accruing, "new" injuries required under the doctrine of separate accrual.

The *Pace* court evaluated whether subsequent conduct occurring within litigation fell within the separate accrual doctrine for purposes of restarting the statute of limitations in a Clayton Act antitrust suit.[5] The Court held that the last overt act in pursuit of litigation was the initiation of the lawsuit itself. *See Pace Ind., Inc.*, 813 F.2d at 239. "Any injury to Pace resulting from continued prosecution through the normal course of the appellate process relates back to the initial decision to file." *Id.* Like NTG, the *Pace* plaintiff argued that initiation of subsequent proceedings in litigation caused new injuries that restart the statute of limitations. *Id.* at 238. The Court rejected that argument:

> The initiation of a lawsuit is the final, immutable act of enforcement of an allegedly illegal contract. At that point in time the lawsuit assumes an existence separate from the contract. All subsequent acts are controlled by the exigencies of litigation, not enforcement of the contract. The complaint puts the aggrieved party on notice that there is a possible antitrust violation. In every lawsuit, a party has a right, and an attorney has a duty, to prosecute or defend vigorously. Furthermore, no new injury results from the act of appealing that the defendant does not already endure as a result of the act of filing the action initially. This is true because the reasonable expectation from the commencement of a lawsuit is that the plaintiff will pursue the litigation until it prevails or the last appeal is exhausted.

*Id.*; *see also Grimmet*, 75 F.3d at 513 (following *Pace* in the RICO context).

Courts applying *Pace*—including those in the RICO context—have explained

---

[5] The federal courts look to Clayton Act decisions when interpreting the RICO statute. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 180-81 (1997). Indeed, the "separate accrual" rule in civil RICO is modeled after the "continuing violation" doctrine in antitrust cases. *Id.*

that, to qualify under the separate accrual doctrine, an act must inflict a "new and independent injury" or "new and accumulating" injury:

> First, the civil RICO limitations period "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." The plaintiff need not discover that the injury is part of a "pattern of racketeering" for the period to begin to run. The second part of the "injury discovery" rule is the "separate accrual rule," which provides that a new cause of action accrues for each **new and independent injury**, even if the RICO violation causing the injury happened more than four years before.

*Delacruz v. State Bar of California*, No. 19-CV-03241, 2020 WL 227237, at *11 (N.D. Cal. Jan. 15, 2020) (emphasis added) (quoting *Grimmett*, 75 F.3d at 510).

Subsequent conduct in the same litigation thus will not restart the limitations period without a showing of a truly "new" form of injury.  *See Al George, Inc. v. Envirotech Corp.*, 939 F.2d 1271, 1274-75 (5th Cir. 1991) ("Plaintiffs argue that … Envirotech committed overt acts in furtherance of its conspiracy to violate antitrust laws every time it acted in pursuance of that litigation…  We agree with the Ninth Circuit's reasoning.  We therefore hold that the last overt act in pursuance of the alleged conspiracy was Envirotech's filing of its … suit"); *Internet Corporativo S.A. de C.V. v. Bus. Software All., Inc.*, No. CIV.A. H-04-2322, 2004 WL 3331843, at *5-6 (S.D. Tex. Nov. 15, 2004) (rejecting separate accrual theory because "[a]ll the actions InterCorp alleged as occurring after May 2000 were directly related to the defendants' continued involvement in pursuing the IMPI proceeding"); *MGA Entm't, Inc. v. Mattel, Inc.*, No. SACV 11-01063, 2012 WL 569389, at *9 (C.D. Cal. Feb. 21, 2012) ("To hold otherwise would allow every victim of an antitrust violation based on sham litigation to file multiple suits at each phase in that sham litigation, a holding which would greatly undermine judicial economy.").

NTG's litigation expenses cannot lawfully be construed to be "new" and "separate" injuries upon each event in a single suit; rather, the precedent holds litigation expenses are the *same* single injury.  "**[L]itigation expenses incurred**

1   **after an overt act do not extend the statute of limitations**."   *See N. Tr. Co. v.*

2   *Ralson Purina Co.*, No. 94 C 4045, 1994 WL 605743, at *8 (N.D. Ill. Nov. 3, 1994)

3   (emphasis added).  The separate accrual rule is not satisfied by "an accumulation of

4   the same injury":

> [E]ven if the predicate acts … were "new and independent" the
> "separate accrual rule" would still not apply because the injuries
> alleged by Plaintiffs resulting from the scheme are not "new and
> accumulating." Rather, the injuries alleged by Plaintiffs are merely
> an accumulation of the same injury. The holding in *Grimmett,* is
> instructive in demonstrating the application of "new and
> accumulating" injuries of the "separate accrual rule." Specifically,
> the Ninth Circuit noted that the injury must be "new and
> independent" of the previous untimely injuries. *Id.* at 513.
> In *Grimmett,* the Ninth Circuit found that the four post limitation
> acts that would potentially fall within the limitations period were not
> sufficient to justify invocation of the "separate accrual rule" because
> the injuries claimed by the plaintiff were identical to those alleged
> prior to the limitations period, which all related to the loss of the
> plaintiffs interest in the business. *Id.* at 514.

16   *Marceau v. Int'l Bhd. of Elec. Workers*, No. 05-02874, 2006 WL 1889600, at *5 (D.

17   Ariz. July 7, 2006); *see also Sasser v. Amen*, No. C 99-3604 SI, 2001 WL 764953,

18   at *7 (N.D. Cal. July 2, 2001), *aff'd,* 57 F. App'x 307 (9th Cir. 2003) ("the Court

19   finds that the fact that Plaintiffs have continued to suffer loss of income due to

20   defendants' policies within the limitations period does not impose 'new' and

21   accumulating injuries sufficient to restart the statute of limitations[]" because "[t]he

22   same injuries resulting from the same policies continuing into the limitations period

23   are not 'new and independent' so as to be saved by the separate accrual rule");

24   *Chancellor v. Legarza*, No. 2:15-CV-01707, 2016 WL 3769341, at *4 (D. Nev. July

25   14, 2016) ("[T]he injuries that Chancellor suffered with each subsequent act—loss

26   of unrestricted medical license, harm to reputation, and loss of income—each flowed

27   naturally from the allegedly wrongful revocation of his license in 1999" and, so,

28   "none of [those acts] inflicted a new and accumulating injury").

NTG's alleged RICO injury is simply an accumulation of the *same* alleged injury incurred throughout NIC's lawsuit. In NTG's initial Counterclaim [Dkt. 951], it described just one injury: legal fees from this single litigation. *See* Dkt. 951 at ¶¶211-212. After receiving Counter-Defendants' draft Rule 11(c)(2) notice brief, NTG amended its counterclaims, breaking down its "fees" into multiple subparts specific to certain events in the litigation. *Cf.* Dkt. 951 at ¶¶211-212 *with* Dkt. 980 at ¶217. But NTG cannot avoid the statute of limitations by merely breaking down "fees" from this single suit into subparts. Litigation expense in the same lawsuit has been held insufficient under the separate accrual rule. Critically, NTG fails to provide a single citation or authority holding to the contrary.[6]

## B. The *Noerr-Pennington* Doctrine Bars NTG's Counterclaims

Even if the Court concludes that NTG's RICO Counterclaim depends on the 2019 predicate acts, it is still barred by the *Noerr-Pennington* doctrine.

NTG argues only that the *Noerr* doctrine's third exception applies to its counterclaims. *See* Dkt. 1003 at 20-25. That exception requires a showing that (1) a party made a knowing fraud upon, or intentional misrepresentation to, the court; and (2) the misrepresentation or fraud "deprived the litigation of its legitimacy." *See* Dkt. 157 Order (Aug. 1, 2016) at 8 (citing *Sosa*, 437 F.3d at 938). Both elements are mandatory, yet NTG wholly neglects the second. *See* Dkt. 1003 at 20.

To deprive the underlying suit of "its legitimacy," alleged acts of misrepresentation or fraud must be shown to "infect the core" of the case, and thus render illegitimate the underlying claims as a whole. *See Thomas v. Hous. Auth. of Cty. of Los Angeles*, No. CV046970, 2006 WL 5670938, at *9 (C.D. Cal. Feb. 28, 2006). Accordingly, "misrepresentations that 'deprive the [action] of its legitimacy

---

[6] To the extent NTG argues it suffered a RICO injury "by having summary adjudication entered against them" [Dkt. 980 at ¶712; Dkt. 1003 at 17], that injury is nonetheless incompetent under RICO, which is limited to economic injuries. *See, e.g., Marina Point Dev. Assocs. v. United States*, 364 F. Supp. 2d 1144, 1148 (C.D. Cal. 2005) ("The Ninth Circuit has defined 'business or property' injury [under RICO] to include only tangible and concrete financial loss").

must not only be knowing and intentional, but must also render the action 'not genuine' as that term is used in *Professional Real Estate Investors*." *Id.* "[I]t is apparent that any misrepresentation exception to the doctrine should be limited to misrepresentations respecting the substance of the claim that show that the party's litigation position had no objective basis, i.e., that it was not 'objectively genuine.'" *Id.* (collecting cases); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) (holding that "isolated instance of litigation misconduct would not, if proven, deprive the defense as a whole of its legitimacy").

This Court has repeatedly found legitimacy in the underlying case, holding by a preponderance of the evidence, proof of crime-fraud by NTG in its operation of a sham litigation mill. These findings reveal that NIC's claims have an objective basis, and are indeed meritorious. *See* Dkt. 990-1 at 9-12. NTG does not dispute that position, and by conspicuous omission concedes the point. *See generally* Dkt. 1003.

### 1.  The Third *Noerr* Exception Requires Judicial Reliance

An alleged misrepresentation to the Court cannot affect the legitimacy of the proceedings if the Court never relies on it in a decision that calls into question the merits of the underlying suit. *See Rupert*, 68 F. Supp. 3d at 1158-59 (explaining that plaintiff's invocation of the sham exception failed because plaintiff did not show how a judge's ruling was proximately caused by the alleged misrepresentation); Dkt. 88 at 12-13 (same, citing *Rupert*); *see also Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 401-02 (4th Cir. 2001) ("Alleged frauds that 'do not infect the core' of a case will receive *Noerr-Pennington* immunity because regardless of the alleged fraud, the outcome would have been the same"); *see also Baltimore Scrap Corp.*, 81 F.Supp.2d 602, 619 (D. Md. 2000) (district court opinion which the Fourth Circuit affirmed *supra*) (finding that conduct did not deprive proceedings of legitimacy because there was "no evidence that the report played a role in the [agency's] decision"). In *Rupert*, the Court's decision hinged on the plaintiff's

failure to show that the Court had relied on alleged misrepresentations. *Rupert*, 68 F.Supp.3d at 1159 (holding that "the misrepresentations [Plaintiff] does allege were clearly not relied upon by Judge Fogel in his written order granting the Joint Motion to Dismiss"). Without that reliance, "any alleged wrongdoing related to the … petitioning activity in *Rupert I*—which includes the filing of the Motion to Dismiss, the obtaining and filing of the Irene and Susan Bond declarations, and the statements made during oral argument—are all entitled to immunity under *Noerr-Pennington*." *Id.* (citing *Freeman*, 410 F.3d at 1184).

Thus, this Court properly held in 2016 that reliance is a consideration in the third *Noerr* exception. *See* Dkt. 157 at 14.[7] NTG's Opposition ignores that clear precedent and fails to demonstrate any court reliance on *Noerr* protected activity.

### 2. Misconduct that Comes to Light During the Lawsuit Does Not Deprive the Litigation of Its Legitimacy

An alleged misrepresentation to the Court cannot affect the legitimacy of the proceedings if that misrepresentation is identified to the Court and litigated in the underlying case. *See Swallow*, 2018 WL 2197614, at *9 (N.D. Cal. May 14, 2018), *aff'd*, 789 F. App'x 610 (9th Cir. 2020). Courts have held that where alleged misconduct "came to light" during the litigation, the misconduct cannot deprive the proceedings of their legitimacy. *See, e.g., Ungureanu v. A. Teichert & Son*, No. CIV S-11-0316, 2012 WL 1108831, at *9 (E.D. Cal. Apr. 2, 2012), *report and recommendation adopted,* No. CVS110316, 2012 WL 13036782 (E.D. Cal. May 29, 2012) ("[D]efendants' actions in the workers' compensation proceedings, as

---

[7] NTG cites *Clipper Exxpress* for the proposition that the Ninth Circuit rejected a reliance requirement. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1262 (9th Cir. 1982). But *Clipper Exxpress* predates *Kottle*, the decision which carved out the three *Noerr* exceptions. Moreover, *Clipper* evaluated a reliance issue concerning a Walker Process doctrine claim, unique to the antitrust context. *See id.* The quoted portion of *Clipper* cited by NTG in its Opposition [Dkt. 1003 at 20-21] does not concern the Court's *Noerr* analysis, and is thus wholly irrelevant to the issues here in controversy. The *Noerr* analysis includes different considerations, including a specific element—"deprivation of legitimacy"—not addressed in *Clipper Exxpress*.

described in the SAC, came to light during that litigation, and therefore did not 'deprive the litigation of its legitimacy.'"); *Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14-2179, 2015 WL 349443, at *10 (C.D. Cal. Jan. 23, 2015) (Alleged "misrepresentations could not have deprived the litigation of its legitimacy given that the content of Plaintiffs' state court complaint was accessible to all involved in the state court litigation."); *see also Swallow*, 2018 WL 2197614, at *9.

If the misconduct "comes to light" during the proceedings, the Court can address the circumstances and make necessary rulings. Courts deal with sanctionable conduct routinely. The presence of misrepresentations does not delegitimize litigation where the Court has a full opportunity to pass on them in the underlying case and take appropriate action. The central consideration in the third *Noerr* exception is whether the misrepresentations so infected the core of the underlying suit that the judicial proceeding itself was tainted. But the process is not corrupted where the Court has the opportunity for a full and frank adjudication of the alleged impropriety.

NTG has not presented a situation where the alleged misconduct came to light years after the suit was terminated and the Court had no timely occasion to consider it. Instead, NTG has repeatedly raised and argued these same allegations throughout the case, yielding decisions on the merits that rejected them. NTG has filed multiple motions for sanctions, presenting the same allegations concerning Clark Baker and NIC's use of allegedly false declarations. *See* Dkt. 311 (concerning Baker); Dkt. 855 (concerning declarations); *see also* Dkts. 365 and 891 (denying sanctions). This Court has issued orders on summary judgment directly rejecting NTG's allegations of misconduct, and those orders overlap with the allegations now in NTG's Counterclaims. *See, e.g.,* Dkt. 296; Dkt. 891.

### 3. The Third *Noerr* Exception Does Not Apply to Alleged Predicate Acts in 2019 and, So, NTG's Counterclaims Must be Dismissed with Prejudice

In arguing against the statute of limitations, NTG concedes that the 2019

predicates are indispensable to its RICO claims.  *See* Dkt. 1003 at 14-16.  NTG argues that without them, it cannot establish "continuity" and thus has no viable claim, inviting 12(b)(6) dismissal.  *Id.*  Either NTG is correct that the 2019 predicates are essential to its claim, or NTG is incorrect and the claims are barred by the statute of limitations as discussed *supra* in Section III(A).  Although dismissible on either ground, NTG's claims fail to state a legal claim on yet another basis.  NTG asserts claims that are privileged under *Noerr-Pennington*.

NIC filed its Motion for Sanctions on September 19, 2019.  Dkt. 844.  NTG filed an Opposition and Request for Sanctions one week later, on September 27, 2019.  Dkt. 846.  The next business day, on September 30, 2019, NIC filed a Notice of Withdrawal, thereby withdrawing "its Motion for Sanctions … and all declarations and exhibits thereto filed as Docket 844."  *See* Dkt. 847.  Having taken no action on the withdrawn documents, this Court entered an Order holding the matter moot: "The matter is moot, and the Court plans to take no further action."  *See* Dkt. 852.  The Court thus did not act in reliance on the declarations filed in Dkt. 844 but withdrawn before decision.  The filings thus do not qualify under the third *Noerr* exception because they had no material outcome on the suit, and most certainly did not strip the judicial process of its legitimacy.

Moreover, the predicates in 2019 do not fall within the third *Noerr* exception because the alleged misconduct has been adjudicated and rejected by the Court as a part of this case.  NTG filed a Motion for Sanctions against NIC, its counsel, and the three witnesses, asking the Court to impose sanctions based on the allegedly false declarations.  *See* Dkt. 855.  The Court also reviewed the circumstances, including all relevant correspondence.  *See* Dkt. 891.  Far from delegitimizing this process, the Court denied the Motion for Sanctions, finding no evidence of perjury or subornation of perjury by counsel.  *Id.*  Moreover, NTG argues elsewhere that these same allegations will be at issue in the case regardless of whether the Counterclaims proceed.  *See* Dkt. 1002 at 25.  Accordingly, the issues have obviously "come to

light" in the underlying case and thus cannot fall within the *Noerr* fraud exception.

Because no exception to *Noerr-Pennington* applies, NTG cannot use the protected litigation activity as a basis for its RICO Counterclaims.  *See California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1167-68 (C.D. Cal. 2009) (holding *Noerr-Pennington* bars RICO claim based on certain alleged predicate acts); *Mazzocco v. Lehavi*, No. 14CV2112, 2015 WL 12672026, at *7-8 (S.D. Cal. Apr. 13, 2015) (holding *Noerr-Pennington* immunizes conduct and bars RICO claim); *In re Outlaw Labs., LP Litig.*, 352 F. Supp. 3d 992, 1006 (S.D. Cal. 2018) (dismissing claim where counterclaimant failed to adequately allege that counter-defendants' conduct fell within *Noerr Pennington* sham litigation exception).  This is wholly fatal to NTG's Counterclaims, because NTG depends on the 2019 predicate acts to evade the statute of limitations, and because NTG has admits it lacks a RICO claim without the 2019 allegations.  *See* Dkt. 1003 at 14-16.

### 4. *Noerr-Pennington* Bars NTG's Alleged Predicates Involving Declarations Filed in 2014, 2017, and 2018

NTG alleges that NIC and its counsel submitted declarations designed to "conceal the coercion of Nilon."  *See* Dkt. 980 at ¶¶141-143.  Those allegations fail to form the basis for a valid claim, let alone an exception to *Noerr* immunity.  NTG alleges, for instance, that NIC filed a declaration "falsely disclaim[ing] coercion." *Id.* at ¶142.  NTG also alleges that NIC filed "false" declarations at summary judgment that included "denials of Baker's wrongdoing and its claims that Baker was not acting at NIC's direction."  *Id.* at ¶143.  What NTG recasts as "false" are, in fact, its own argumentative reinterpretations of evidence at the core of NIC's underlying suit.  Dkts. 671, 703 (NIC's briefing on unclean hands summary adjudication); Dkt. 784 (order granting summary judgment against NTG).  Worse, they are misrepresentations of evidence rejected by this Court.  NTG's claims based on these same misrepresentations were dismissed by the Court after the Court found no facts to support them.  *See* Dkt. 784 at 15.  The Court held, for example: "There

is no record evidence sufficient to create a genuine dispute whether NIC directed Baker to threaten or coerce Nilon as alleged by Defendants."[8]  *Id.*   NTG filed a Motion for Sanctions on this same false basis in 2017, again the Court found no evidence to support NTG's argument: "Baker did not engage in witness tampering because there is no evidence that he threatened Nilon."  *See* Dkt. 365 at 14-15.

Through its Counterclaims, NTG engages in the abusive pleading practice of recasting disagreements with NIC as factual "misrepresentations" to evade *Noerr*. Its problem, however, is that it not only lacks facts to undergird its recreation of history, it argues directly against the Court's factual findings.  The tactic NTG uses is not new and has never been accepted as a basis for invoking an exception to *Noerr-Pennington* immunity.  *Kottle*, 146 F.3d 1056 at 1063 (holding the *Noerr* exception "would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party").  NTG cannot simply "rehash arguments already addressed by [the court] or recast disputed issues from the underlying litigation as 'misrepresentations' by the other party" to evade *Noerr* immunity.  *Swallow*, 2018 WL 2197614, at *10 (quoting *Kottle*, 146 F.3d at 1063).

Finally, Mr. Negrete's submission of an allegedly false declaration in June 2014 is protected under *Noerr* and does not fall within the third sham exception because the court never relied on that declaration.  Magistrate Judge Skomal issued sanctions against NTG for its role in Nilon's missed deposition on May 24, 2014. *See Nilon v. Natural-Immunogenics Corp.*, 3:12-00930-LAB (S.D. Cal.), Dkt. 55. That order expressly disregarded the three prior missed depositions, including the February 7, 2014 deposition about which NTG claims Negrete lied, because they were brought to the Court's attention too late.  *Id.* at 5 ("the Court will not rule on

---

[8] On summary judgment, the burden was on the Defendants to present evidence sufficient to create a genuine dispute as to the elements of their affirmative defense.  *See* Dkt. 784 at 6.  The Defendants failed to present any evidence on a material element.  *See* Dkt. 784.  That failing has nothing to do with NIC's declarations asserting denials.

the legitimacy of Plaintiff's failure to appear at the depositions noticed for May 3, 2013; May 22, 2013; and February 7, 2014.").  Thus, under controlling precedent, Negrete's allegedly false declaration regarding whether he noticed the February 2014 deposition of Andrew Nilon cannot qualify for the third exception.

### 5. *Noerr-Pennington* Bars NTG's Alleged Predicates Concerning Prelitigation Investigations

NTG argues that predicates occurring before NIC filed its suit on December 7, 2015 are not subject to *Noerr-Pennington* because those activities were not "incidental to petitioning activity."  *See* Dkt. 1003 at 19.  NTG fails to comprehend the precedent.  The protections of the Petition Clause and *Noerr-Pennington* extend to prelitigation activities.  *See, e.g., Sosa*, 437 F.3d at 932-38.  That protection has been extended to a party's investigation of legal claims.  *See Thomas*, 2005 WL 6136440, at *12 ("Accordingly, under *Noerr-Pennington*, plaintiffs cannot seek relief based on … defendants' investigation of the allegations…").  In August through December 2015, the underlying suit brought by NTG against NIC was still active.  The Court did not issue its final Order in that suit denying sanctions until October 28, 2015.  *See Nilon v. Nat.-Immunogenics Corp.*, No. 3:12-CV-00930-LAB, 2015 WL 6510540, at *1 (S.D. Cal. Oct. 28, 2015).  Investigation into NTG's scheme was thus germane to both the underlying *Nilon* suit and the prospective RICO suit that NIC filed in December 2015.  The alleged predicates asserted by NTG relate to conduct that would not have occurred but for the pending and prospective litigation.  *See* Dkt. 980 at ¶209.  That conduct is "incidental" to at least two federal lawsuits.  Moreover, NTG cannot plead around *Noerr* by asserting *legal conclusions* in its First Amended Counterclaims that characterize the legal status or nature of this activity.  *See McCormack*, 1994 WL 715655, at *1 (N.D. Cal. Dec. 20, 1994) (*citing Papasan*, 478 U.S. at 286) (The court "need not accept legal conclusions asserted in the complaint even if plead as facts.").

As conduct incidental to petitioning activity, the predicates do not fall within

the third *Noerr* exception because the conduct did not involve specific misrepresentations to, or fraud on, the Court. Moreover, NIC's lawsuit is objectively meritorious, based on the volume of evidence not sourced from Baker's alleged interactions with Nilon or other former NTG clients. *See* Dkts. 659, 820. There is thus no foundation to conclude that Baker's actions deprived the *entire* case of legitimacy, which is the high standard NTG must meet. Moreover, as with all of NTG's other allegations, here Baker's alleged misconduct has been at the center of NTG's defense beginning with NTG's first responsive filing in 2016. *See* Dkt. 40 at 17-19. These issues have thus "come to light," the Court has adjudicated them against the Defendants, and they thus do not affect the legitimacy of these proceedings.

NTG also alleges predicates in early 2015 related to the Electric Family Website. *See* Dkt. 980 at ¶¶109-113. However, the website is speech protected by the First Amendment which cannot animate a RICO claim. *See Hollander v. Pressreader, Inc.*, No. 19-CV-2130 (AJN), 2020 WL 2836189, at *3 (S.D.N.Y. May 30, 2020) (Protected First Amendment speech cannot animate a RICO claim). This Court has already ruled on summary judgment that the website is protected speech. *See* Dkt. 784 at 12-16. Defendants thus cannot use that website to establish any predicate acts.

After proper application of *Noerr* immunity, NTG has no remaining predicates with which to form a pattern of racketeering activity. This Court must therefore dismiss the Counterclaims in their entirety with prejudice on the distinct basis that *Noerr-Pennington* bars all of the allegations.

## C.   NIC's Single RICO Suit Is Not a Pattern of Racketeering Activity

NTG has failed to show that NIC's pursuit of a single RICO suit against NTG involves a "pattern of racketeering activity." NTG argues that the alleged predicate acts spanned several years. *See* Dkt. 1003 at 25-28. NTG rests solely on that temporal component. But a "pattern" under RICO involves more than just a basic

reference to the calendar. *See Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 64 (D.D.C. 2019), *aff'd sub nom. Republic of Kazakhstan, Ministry of Justice v. Stati*, 801 F. App'x 780 (D.C. Cir. 2020) ("[T]he mere longevity of a scheme or schemes does not necessarily mean that a 'pattern of racketeering activity' is present."). Nearly all of the predicates alleged by NTG relate to NIC's pursuit of the RICO suit before this Court.[9] NTG does not address the precedent holding that a single scheme or single suit is insufficient. It also fails to address the elements and factors that Courts must consider when evaluating "continuity." Those failures are dispositive, and this Court must therefore dismiss the Counterclaims with prejudice.

When evaluating "continuity," Courts must consider: (1) the number and variety of predicate acts; (2) the presence of separate schemes; (3) the number of victims; and (4) the occurrence of distinct injuries. *See NSI Tech. Servs. Corp.*, 1996 WL 263646, at *3 (collecting cases). Those factors all weigh against NTG's RICO claims. Here again NTG fails to provide a credible rebuttal in opposition.

Although NTG argues that its Counterclaims involve "four schemes" [Dkt. 1003 at 17], NTG does not actually seek relief against NIC for "multiple" schemes. NTG's Counterclaims relate to just one overarching pursuit: the single RICO suit that NIC filed against NTG in December 2015. A litigant's decision to investigate and file various motions in a single suit does not represent separate "schemes" for RICO purposes. Courts have cautioned against this tactic now employed by NTG:

> The instant case serves as an example of a vain attempt to make a RICO claim seem more viable by parsing one scheme into multiple schemes. *See Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir.1990). Western's subdivision of Market's alleged fraudulent activity is unavailing because the four schemes are so similar in nature and purpose (i.e., they involve contested bookkeeping entries), and they resulted in a single harm rather than

---

[9] Two predicate acts involving Negrete's June 30, 2014 declaration were filed in *defense* of NTG's prior lawsuit filed against NIC in 2012. NTG never explains how that defensive declaration was sufficiently "related" to the scheme to "retaliate" against NTG and Scott Ferrell through litigation in 2015.

> separate injuries. *See supra* p. 632. For the term "scheme" to retain any utility, it cannot be so easily invoked that it allows such closely related accounting misrepresentations involving a single project to be considered distinct schemes. Under Western's interpretation of what constitutes a scheme, almost any fraudulent act could be subdivided to establish a RICO claim. *Cf. Apparel Art,* 967 F.2d at 722-23.

*Western Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship*, 235 F.3d at 635. The *Western Assocs.* decision is instructive. That decision rejected RICO claims for the same reason this Court should dispense with NTG's claims. *Id.* at 634 ("[I]f a plaintiff alleges only a single scheme, a single injury, and few victims it is 'virtually impossible for plaintiffs to state a RICO claim."); *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (no RICO pattern because "Defendants' actions were narrowly directed towards a single fraudulent goal").

The Ninth Circuit has held the "continuity" requirement not met where the defendant's goal is the successful prosecution of a single suit, in part, because there is no threat of activity continuing beyond completion of that suit. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364 (9th Cir. 1992); *see also Swallow*, 2018 WL 2197614, at *12 ("[Plaintiff] obviously cannot demonstrate a future threat because the alleged RICO scheme ceases once the prosecution is complete."); *id.* at *12 (rejecting RICO claim because litigation activity "was designed to achieve one common goal, i.e., to cause Eric to lose his gambling license and force him to sell his interest ... at a price far below fair market value"); *see also Richardson v. Reliance Nat. Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *9 (N.D. Cal. Mar. 9, 2000) (collecting cases; holding "Plaintiff has failed to cite a single case in which a close-ended scheme with a single goal and a single victim was found to violate RICO").

So too here, the predicates alleged by NTG are all "similar in nature and purpose." They all involve allegations that NIC coerced, authored, or sponsored false declarations to the Court for purposes of retaliating against Scott Ferrell in the

instant litigation.  The predicates all "resulted in a single harm rather than separate injuries."  All predicates contributed to a single injury of attorney fees in response to NIC's meritorious suit.  Furthermore, the alleged "scheme" against NTG had only several related defendants—another aspect undermining "pattern."  *See Western Assoc. Ltd.*, 235 F.3d at 635 ("By alleging harm to each individual member of its partnership, Western has again artificially subdivided an aspect of its allegations in a transparent effort to make Market's alleged fraudulent conduct seem more expansive" and, "[f]or purposes of RICO pattern analysis, this set of victims should be viewed as a single victim.").

"RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000).  Those cautions are apt in this case, where the transparent purpose of NTG's Counterclaims is to retaliate against a litigation opponent and hinder NIC's prosecution of its claims on the eve of trial. NTG cannot show—and does not even allege—that NIC's underlying RICO claims are baseless.  The predicates allegedly stemming from NIC's single suit include commonly accepted acts by a litigant, e.g., the collection, presentation, and advocacy of testimony and evidence.  NTG's allegations concern "sporadic and isolated" events in that litigation.  NTG's RICO Counterclaims are based on a few declarations filed in a suit that spans over four years and over 1,000 docket entries.  NTG has no credible factual allegations (other than speculation) that NIC might be involved in future litigation, and NTG has no specific factual allegations indicating that NIC's alleged misconduct (which never occurred) would extend beyond this one suit.  This is far from the "continuous" conduct required to support a RICO case.

At its core, NTG has filed a retaliatory counterclaim that brings suit against an opposing party, its trial counsel, and three witnesses, based entirely on its adversary's litigation of this one suit.  The essence of NTG's Counterclaim targets a

"single plan with a singular purpose and effect": the prosecution of legal claims in this single case against NTG, seeking to hold NTG accountable for an egregious pattern of sham litigation and fraud on courts and corporations nationwide arising in eight separate NTG cases. A pattern does not arise from NIC's single suit. *See NSI Tech. Servs. Corp.*, 1996 WL 263646, at *3 ("A single plan with a singular purpose and effect does not constitute a 'pattern' of racketeering activity.").

Moreover, given that NTG has already taken discovery germane to its allegations throughout this case, the Court should give careful attention to NTG's allegations that contradict the Court's prior findings of fact. NTG is not entitled to a presumption of truthfulness on allegations against NIC that were dismissed on summary judgment for lack of evidence following full discovery. *See* Dkt. 784. To rule otherwise undermines the law of the case and the integrity of the Court's proceedings, calling into question, as if by a late filed motion for reconsideration, the Court's findings of fact in decisions that addressed the merits.

### D.   NTG Has Failed to Show That Leave to Amend Is Appropriate

Finally, this Court should not grant leave to amend. NTG has been on notice of the deficiencies in its Counterclaims since April 28, 2020, when NIC served a notice of its intent to file a Rule 11 motion. NTG filed an Amended Counterclaim in direct response to that notice. NTG failed to remedy the noticed deficiencies because it simply cannot plead viable RICO claims from this single suit. NTG has the burden to show the Court that amendment would not be futile by explaining precisely what content could be added to the Counterclaims to remedy deficiencies. NTG fails that burden. Its Opposition does nothing more than invoke the Rule 15 standard, without providing any analysis or argument explaining how, if at all, the numerous legal bars to its Counterclaims could be remedied with non-frivolous factual allegations. Its position is insufficient as a matter of law:

> To justify the request to amend, Plaintiffs must explain what they can add to the Complaint to overcome the fatal obstacles that exist.

> Otherwise, granting leave to amend amounts to a pure delay in the final disposition of the case

*See Guerrero*, 2009 WL 10700622, at *7 (collecting cases).

## IV.   **CONCLUSION**

For the foregoing reasons, this Court should dismiss the Counterclaims [Dkt. 980] in their entirety and with prejudice.  The claims are barred by the four-year statute of limitations.  The predicate acts target protected litigation activities immune from suit under *Noerr-Pennington*.  NTG has also failed to assert a RICO pattern of activity based on NIC's pursuit of this single suit.  The Court should deny NTG the opportunity to amend, in part, because no set of factual allegations can correct the dispositive legal bars outlined above, and because NTG has failed to meet its burden to show otherwise.

DATED:  June 22, 2020                    Respectfully submitted,

                                  AMIN TALATI WASSERMAN, LLP

                        By:   ***/s/ Sanjay S. Karnik***
                                 Sanjay S. Karnik
                                 J. Kathleen Bond
                                 Jennifer M.S. Adams

                                 *Counsel to Counter-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2020 the foregoing, **REPLY IN SUPPORT OF COUNTER-DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)** was electronically filed using the Court's CM/ECF system and was sent by that system to the following:

Brendan M. Ford, Esq.
bford@FordDiulio, P.C.
650 Town Center Dr, Ste 760
Costa Mesa, CA 92625
Tel: (714) 384-5540
*Attorney for Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover, Matthew Dronkers, Taylor Demulder, Sam Pfleg,*

David J. Darnell, Esq.
ddarnell@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
*Attorney for Newport Trial Group and Scott Ferrell*

Nicole Whyte
nwhyte@bremerwhyte.com
Benjamin Price
bprice@bremerwhyte.com
Kyle A. Riddles
kriddles@bremerwhyte.com
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000
*Attorneys for Ryan Ferrell. Andre Baslow, David Reid, and Victoria*
*Knowles*

Jonathan Emord, Esq.
jemord@emord.com
Peter Arhangelsky, Esq.
parhangelsky@emord.com
Joshua Furman, Esq.
jfurman@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Drive, Bldg. 6, Suite 133
Gilbert, AZ 85295
*Attorneys for Natural Immunogenics Corp.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_/s/ **Sanjay S. Karnik**_
Sanjay S. Karnik, Esq.