**CALLAHAN & BLAINE, APLC**
Edward Susolik (SBN 151081)
Esusolik@callahan-law.com
David J. Darnell (SBN 210166)
Ddarnell@callahan-law.com
James M. Sabovich (SBN 218488)
jsabovich@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Defendants and Counterclaimants
NEWPORT TRIAL GROUP and SCOTT J. FERRELL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>Defendants. | CASE NO.  8:15-cv-02034-JVS-JCG<br>JAMS NO.  1220055347<br><br>**CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY AND TO DESIGNATE AN ADDITIONAL EXPERT REGARDING NEW ALLEGATIONS** |
| AND ALL RELATED ACTIONS | Special Master: Hon. Rosalyn Chapman<br>Judge:          Hon. James V. Selna<br><br>Hearing Date:  July 27, 2020<br>Hearing Time:  1:30 p.m.<br>Courtroom:     10C<br><br>Complaint Filed:  December 7, 2015<br>Trial Date:       November 3, 2020 |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ...................................................................................... 3

    A.   NIC'S Strataluz Allegations Present Good Cause For Limited Discovery And Expert Evidence........................................................ 3

        1.   NTG Did Specify The Discovery It Seeks ................................ 5

        2.   NTG Did Not Unreasonably Delay In Seeking Discovery Of New Allegations........................................................ 8

    B.   NIC's Argument That NTG Must Satisfy Rule 6 Is Without Merit ....................................................................... 9

        1.   Prejudice To The Counter-Defendants.................................... 10

        2.   The Length Of The Delay And Its Potential Impact On Judicial Proceedings ................................................ 11

        3.   The Reason For The Delay........................................ 11

        4.   Whether The Moving Party's Conduct Was In Good Faith ..... 12

    C.   Counter-Defendants' Proportionality Argument Under Rule 26(b)(1) Fails Because NIC's Complaint Tolled The Statute Of Limitations .............................................................. 13

    D.   Counter-Defendants' Request For A Rule 16 Conference Is Unnecessary ........................................................... 15

    E.   Alternatively, Counter-Defendants May File Their Own Motion For Leave If They So Wish......................................... 16

    F.   NTG Should Be Allowed To Designate A Single Additional Expert ................................................................... 18

    G.   Counter-Defendants' Argument That NTG Should Be Allowed Only Limited Discovery Regarding The Counterclaim Is Beside The Point Since That Is All That NTG Is Requesting ................... 19

III. CONCLUSION .............................................................................. 19

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OMNIBUS REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY
AND TO DESIGNATE ADDITIONAL EXPERT

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*City of Pomona v. SQM N. Am. Corp.*,
 866 F.3d 1060 (9th Cir. 2017) ............................................................... 3, 4

*Ezell v. City of Chicago*,
 No. 10 C 5135, 2013 WL 657659 (N.D. Ill. Feb. 22, 2013) ................................. 2

*Hickman v. Taylor*,
 329 U.S. 495 (1947) ...................................................................... 12

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
 218 F.R.D. 667 (C.D. Cal. 2003) .................................................... 9, 10

*Mattel, Inc. v. MGA Entm't, Inc.*,
 705 F.3d 1108 (9th Cir. 2013) ...................................................... 14, 15

*MH Pillars Ltd. v. Realini*,
 No. 15-CV-01383-PJH, 2018 WL 1184847 (N.D. Cal. Mar. 7, 2018)............... 14

*Mireles v. Paragon Sys., Inc.*,
 No 13-CV-122, 2014 WL 575713 (S.D. Cal. 2016) ........................................... 10

*Nat'l Corp. Tax Credit Funds III, IV, VI, VII v. Potashnik*,
 No. CV 07-3528 PSG (FMOX), 2009 WL 4049396 (C.D. Cal. Nov. 19, 2009) ................................................................................ 5, 6

*National Union Fire Ins. Co. of Pittsburgh v. Westport Ins. Co.*,
 No. 10 C 6096, 2012 WL 698540 (N.D.Ill. Feb.29, 2012) ................................. 8

*Nelson v. Adams USA, Inc.*,
 529 U.S. 460 (2000) ....................................................................... 1

*Oracle Am., Inc. v. Terix Computer Co., Inc.*,
 No. 13-cv-03385-PSG, 2014 WL 5847532 (N.D. Cal. Nov. 7, 2014)............... 14

*Orange Cty. Health Care Agency v. Dodge*,
 793 F. Supp. 2d 1121 (C.D. Cal. 2011) .............................................. 13

*In re Pegasus Gold Corp.*,
 394 F.3d 1189 (9th Cir. 2005) ....................................................... 15

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*Pincay v. Andrews*,
   389 F.3d 853 (9th Cir.2004) ................................................................... 10

*Pioneer Investment Services Co. v. Brunswick Associates Limited
   Partnership*,
   507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ........................... 10

*Turkish State Rys. Admin. v. Vulcan Iron Works*,
   153 F. Supp. 616 (M.D. Pa. 1957) ......................................................... 12

*United States v. Sierra Pac. Indus.*,
   F. Supp. 3d 948 (E.D. Cal. 2015) ............................................................. 1

*Yates v. Washoe Cty. Sch. Dist.*,
   No. 07-cv-00200-LRH-RJJ, 2007 WL 3256576 (D. Nev. Oct. 31,
   2007) ....................................................................................................... 13

*Youngevity Int'l, Corp. v. Smith*,
   No. 16-CV-704 BTM (JLB), 2017 WL 6730078 (S.D. Cal. Dec. 29,
   2017) ............................................................................................ 1, 2, 8, 13

**Rules**

Fed. R. Civ. P. 6(b)(1)(B) ........................................................................... 10

Fed. R. Civ. P. 13(a)(1)(A) .......................................................................... 14

**Other Authorities**

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and
   Procedure* § 1419 (3d ed. 1998) ............................................................ 14

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Defendants and Counterclaimants Newport Trial Group and Scott Ferrell (collectively "NTG") respectfully submit this Consolidated Reply in support of their Motion For Leave to Conduct Limited Discovery and to Designate an Additional Expert Regarding New Allegations (the "Motion").

## I.   INTRODUCTION

NTG's position is simple: Limited discovery should be allowed in order to evaluate the over 60 new substantive paragraphs in Natural Immunogenics, Inc.'s ("NIC") Fourth Amended Complaint and the recently filed First Amended Counterclaim.  As counter-defendants NIC, Benjamin Quinto, Theo Quinto, Emord, Peter Arhangelsky, Charlotte Carlberg, Jim Buc, and Maryann Buc (collectively "Counter-Defendants") themselves argue, due process requires that litigants be allowed ". . .a full and fair opportunity to conduct discovery, prepare a defense, and ready themselves for trial."  (Dkt. 1018 at 7 *citing United States v. Sierra Pac. Indus.*, F. Supp. 3d 948, 958 (E.D. Cal. 2015), *aff'd sub nom. United States v. Sierra Pac. Indus.*, Inc., 862 F.3d 1157 (9th Cir. 2017) ("The Supreme Court has explained that '[t]he Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees.'") (quoting *Nelson v. Adams USA, Inc.,* 529 U.S. 460, 465 (2000)).  Indeed, counter-defendants Emord and Peter Arhangelsky specifically understand the need to modify a pretrial scheduling order and conduct discovery when faced with a Fourth Amended Complaint adding new Lanham Act claims.  In *Youngevity Int'l, Corp. v. Smith*, No. 16-CV-704 BTM (JLB), 2017 WL 6730078 (S.D. Cal. Dec. 29, 2017), Magistrate Judge Burkhardt granted a motion presented by Emord for leave under strikingly similar circumstances, finding that their client:

- "[D]id not have an obligation to conduct discovery on its proposed claims before it was granted leave to file the FAC."  *Id.* at *6.
- "[W]as not required to expend the resources to fully conduct discovery on these allegations before it was granted leave to file its FAC" since

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

"Rule 26(b) provides that parties may obtain discovery on matters relevant to any party's claim or defense." *Id.* at *6-7.

- Then only once a claim was filed was there an "obligation to incur the cost of conducting discovery" to support or defend against it. *Id.*

- And "was not obligated to incur the cost" of expert analysis before filed claims were actually in the case. *Id.* at *9.

Here, NTG has litigated its defense for several years relying not only on the operative pleadings, but NIC's own statement that prior Strataluz-related discovery was not an attempt to expand the allegations in this case. (*See e.g.* Dkts. 414 at 4; 392 at 11-12.) Now that NIC has filed the Fourth Amended Complaint and redefined the alleged RICO enterprise to include Lanham Act based allegations, NTG must be provided an opportunity to re-evaluate its approach to discovery and defenses. *Ezell v. City of Chicago,* No. 10 C 5135, 2013 WL 657659, at *6 (N.D. Ill. Feb. 22, 2013).

NIC and Counter-Defendants offer no meaningful arguments to the contrary. They are unable to cite any case denying discovery under remotely similar circumstances. As seen in the Motion, cases are universal in permitting discovery of new allegations. NIC's claim that NTG has failed to specify the discovery it seeks is without merit as NTG has expressly limited that discovery to new allegations in the Fourth Amended Complaint or Counterclaim. Similarly, NTG did not delay in seeking discovery. Counter-Defendants' arguments are predominately beside the point. They argue that NTG should be allowed "limited" discovery regarding the Counterclaim, but that is all NTG seeks. They rather paradoxically claim a need for expansive 16- to 20-month discovery in defense, but, if that is the case, they are free to bring their own motion for leave. Finally, neither NIC nor Counter-Defendants have any meaningful arguments against the designation of a single additional expert.

Accordingly, the Motion should be granted.

OMNIBUS REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY
AND TO DESIGNATE ADDITIONAL EXPERT

II.    **ARGUMENT**

    A.    **NIC'S Strataluz Allegations Present Good Cause For Limited Discovery And Expert Evidence**

The fundamental, all-encompassing flaw with the oppositions is hypocrisy. Both NIC and NTG have made new allegations: NIC via its Fourth Amended Complaint and NTG through its Counterclaim.  The difference between NTG and NIC, for purposes of this Motion, is that NTG appreciates that new allegations entitle any party to discovery regarding those new allegations whereas NIC contends that such allegations only entitle it to discovery.

As seen in the Motion, NIC's Fourth Amended Complaint fundamentally changed the scope of discovery by alleging an entirely new RICO enterprise in a new area.  (Dkt. 1013-1 at 14-16.)  From December 2015 until NIC filed its Fourth Amended Complaint on June 18, 2020, NTG was defending against a lawsuit alleging a "false advertising scheme" and "alleged wiretapping scheme," each with four predicate cases.  (Dkt. 788 at 2.)  Through the Fourth Amended Complaint, not only did NIC add new predicate acts that have never been part of its claims for those alleged "schemes," but NIC amended to add an entirely new and distinct theory: an alleged supplement industry Lanham Act scheme with five predicate cases.  (Dkt. 1007, ¶¶ 359-377.)  In other words, NIC added an entirely new RICO enterprise and thus converted this from a two "scheme" eight predicate matter case to a three "scheme" thirteen predicate matter case.

NIC argues that NTG was not "diligent" in seeking discovery of allegations that NIC had not yet made.  (Dkt. 1019 at 11-2.)  It claims that "[n]one of the information added to the FAC is actually 'new,'" because it has been subject to discovery litigation.  (*Id.* at 12.)

Under *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060 (9th Cir. 2017), the factors used to evaluate a motion for leave to modify a scheduling order include the following: "1) whether trial is imminent, 2) whether the request is opposed, 3)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 3 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  whether the non-moving party would be prejudiced, 4) whether the moving party

2  was diligent in obtaining discovery within the guidelines established by the court, 5)

3  the foreseeability of the need for additional discovery in light of the time allowed for

4  discovery by the district court, and 6) the likelihood that the discovery will lead to

5  relevant evidence." *Id*. At 1066.  Here, all of the factors support NTG's request.

6     NIC's Strataluz allegations expanded the alleged RICO enterprise from an

7  alleged wiretapping and false advertising scheme to include a distinct Lanham Act

8  scheme.  While Counter-Defendants argue NTG was aware of the Strataluz

9  allegations since approximately 2017, they conveniently omit that contextually

10 Strataluz discovery was intended to provide "explanatory details" concerning the

11 allegations." (Dkt 392 at 12.)  Based on this understanding, NTG conducted

12 discovery and prepared its experts with the underlying goal of addressing its alleged

13 liability for the wiretapping and false advertising – not to defend against potential

14 liability for a Lanham Act violation.

15    Turning to the *City of Pomona* factors, trial is imminent but still several

16 months away.  While NTG's request is opposed, NTG has proposed a limited

17 discovery plan specifically targeting the newly asserted allegations.  If the request is

18 not granted, NTG will be prejudiced by being forced to defend a Lanham Act claim

19 without discovery regarding the alleged mechanisms of liability and an expert to

20 assist the jury distinguish between traditional business practices and illegal activity.

21    As to the diligence prong of the analysis, there is simply no basis to argue a

22 lack of diligence for NTG's "failure" to prepare a defense for an unasserted claim.

23 NIC expressly represented the Strataluz facts were not being developed to expand

24 liability.  While Counter-Defendants argue that NTG should have anticipated the

25 claim, this argument also implies that NTG should have recognized that after years

26 of litigation, NIC was still unsure of its theory of the case.  Now that the

27 circumstances have changed, NTG cannot be penalized for relying on NIC's

28 pleadings and previous litigation position.  Finally, given that discovery has closed

- 4 -

1   and liability is now asserted for the Lanham Act claims, the Scheduling Order must

2   be amended in order to ascertain even basic facts now raised by the Fourth

3   Amended Complaint.  Therefore, the "good cause" factors support amending the

4   Scheduling Order.

5        NIC offers two arguments against NTG's showing of good cause under Rule

6   16.  First, it contends that NTG was required to specify the exact interrogatories,

7   requests for admissions, and requests for production it would propound when

8   seeking leave to amend the scheduling order.  (Dkt. 1019 at 14-16.)  Second, NIC

9   argues that NTG has not been diligent because there was discovery litigation over

10  Strataluz.  (*Id.* at 1316-19.)  Neither argument has merit.

### 1.   <u>NTG Did Specify The Discovery It Seeks</u>

12       NIC's first argument is based on the fiction that NTG has not specified the

13  discovery it intends to seek.  Yet NTG's proposal is expressly limited to "the new

14  allegations in the Fourth Amended Complaint or the new allegations in the First

15  Amended Counterclaim."  (Dkt. 1013-1 at 27.)  Thus, NTG has, by definition,

16  specified a subject matter that is within the proper scope of discovery.

17       NIC's position misunderstands NTG's request.  NTG has not sought leave to

18  serve specific, pre-drafted proposed discovery.  Rather, NTG has sought to amend a

19  scheduling order so as to allow discovery on a particular topic – namely, the new

20  allegations in the Fourth Amended Complaint and, to a lesser extent, the

21  Counterclaim.  There is simply no requirement that in seeking to amend the

22  scheduling order to allow limited discovery on that topic, NTG was required to

23  provide and litigate the propriety of the exact requests for admissions,

24  interrogatories, and requests for production it would propound.  NIC has not cited,

25  and NTG is not aware of, any case imposing such a requirement in the context of

26  discovery into new allegations.  NIC cites *Nat'l Corp. Tax Credit Funds III, IV, VI,*

27  *VII v. Potashnik*, No. CV 07-3528 PSG (FMOX), 2009 WL 4049396, at *3 (C.D.

28  Cal. Nov. 19, 2009).  (Dkt. 1019 at 14).  But that case had nothing to do with the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 5 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    circumstances here.  In *Potashnik*, Defendants "failed to conduct discovery and

2    refused to respond to Plaintiffs' discovery requests due to Potashnik's concurrent

3    criminal trial and the ongoing settlement negotiations."  While purporting to request

4    a re-opening for "limited" discovery, they sought seven depositions.  The court held

5    that "[f]unctionally, Defendants' motion is a request for full discovery

6    approximately eight months after the discovery cut-off date and a mere three months

7    before trial."  Here, NTG is seeking limited discovery on new allegations.

8           The simple fact is that several motions for leave to conduct discovery before

9    this Court have not provided the precise proposed discovery request.  For example,

10   in NIC's recent motion for leave to conduct discovery after the cut-off, NIC did not

11   include any subject matter limitations on the proposed depositions.  (*See* Dkt. 876 at

12   14, 20.)  In ruling on NIC's objection to the Special Master's order denying certain

13   discovery, this Court imposed subject matter restrictions but did not deny all the

14   depositions based on NIC's failure to specify topics.  (Dkt. 902 at 16.)  Likewise,

15   this Court granted NTG's request to take discovery regarding the fraudulent

16   declarations even though the precise document requests were not specified.  (Dkt.

17   891 at 16.)[1]

18          Nor did this Court's order granting NIC's motion for leave require NTG to

19   serve proposed discovery along with its request for leave.  While it is true that this

20   Court did not accept NTG's argument that an amendment would require discovery

21   to be "redone," NTG's current request is consistent with this Court's ruling.  (Dkt.

22   910 at 7.)  NTG has proposed modest discovery that specifically targets the new

23   allegations.  NTG has proposed a limited 60-day fact discovery period wherein each

24   side will be allowed to propound 25 special interrogatories, 25 requests for

25

26   _____

27   [1] NIC's position seems to be that the propriety of specific discovery requests must
     be pre-litigated before the scheduling order is amended.  There is no support for
     such a proposition and it confuses the role of this Court and the Special Master, to
28   whom discovery disputes must first be brought.

OMNIBUS REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY
AND TO DESIGNATE ADDITIONAL EXPERT

1    admissions, and 50 requests for production.  While Counter-Defendants will be able

2    to use these discovery devices exclusively on NTG's Counterclaim, NTG's

3    discovery would be split between the Fourth Amended Complaint and

4    Counterclaim.  NIC's actual argument, however, appears to be that *any* additional

5    discovery from NTG would be disproportionate under Rule 26(b)(1).  To obscure its

6    extreme position, NIC alternatively requests that this Court require NTG to "identify

7    precisely what discovery they plan to issue and why they were unable to seek that

8    discovery during the discovery period."  (Dkt. 1019 at 22.)  In the immediate

9    context, NIC's query would seem to answer itself.  NTG seeks discovery on new

10    allegations, and it could not seek that discovery prior because the new allegations on

11    which it seeks discovery had not yet been made.  NIC justifies its alternative

12    position based on the extensive litigation preceding the Fourth Amended Complaint

13    and the argument that NTG has had ample notice and time to conduct discovery.

14    Interestingly, despite arguing that NTG's Counterclaim is also frivolous because it is

15    based on facts that have already been extensively litigated, NIC does not offer to

16    limit its own discovery on the Counterclaim or offer to submit its discovery requests

17    for a "first look."

18        NTG has attempted to ameliorate the prejudice to both sides that will result

19    from proceeding to trial on allegations that fundamentally alter the previously

20    existing nature of this case.  NTG's proposal is specific as to the total number of

21    discovery requests and applicable discovery time frame.  Rather than pointing to

22    facts or authority demonstrating NTG's position is untenable, NIC attempts to draw

23    this issue out procedurally.  Requesting that this Court conduct a discovery hearing

24    to evaluate each proposed request individually is burdensome, unnecessary, and

25    procedurally impracticable.  Moreover, as demonstrated by NIC's failure to cite any

26    authority for this request, Federal Law imposes no such requirement.  Accordingly,

27    NTG has not failed to specify the discovery is seeks.  To the extent this Court

28    should require further specify, NTG is, of course, willing to provide it.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

## 2.   <u>NTG Did Not Unreasonably Delay In Seeking Discovery Of</u> <u>New Allegations</u>

NIC faults NTG for not taking discovery on allegations that NIC had not formally made.  (Dkt. 1019 at 10, 16-20.)  As pointed out in the Motion, it is irrelevant that there was discovery litigation over Strataluz because allegations regarding Strataluz were not formally part of this case.  (Dkt. 1013-1 at 13-14.)

As explained in the Motion, counsel prevailed on the position that NTG is taking here in the matter of *Youngevity Int'l, Corp.*, 2017 WL 6730078, at *3. Despite that case and other similar cases allowing leave to take discovery of new allegations that are extensively discussed in NTG's Motion, NIC offers no rebuttal. *Compare* Dkt. 1013-1 at 13-15 (discussing case law allowing leave to take discovery of new allegations) *with* Dkt. 1019 (not discussing cases relied upon by NTG or any case denying discovery under similar circumstances).

NIC's argument ultimately reduces to the proposition that NTG should have guessed that it would amend to include Strataluz allegations as predicate acts and so should have taken preemptive discovery of those unpled allegations.  *Cf. Youngevity Int'l, Corp.*, 2017 WL 6730078, at *6-7 ("Youngevity [Emord's client] was not required to expend the resources to fully conduct discovery on these allegations before it was granted leave to file its FAC" since "Rule 26(b) provides that parties may obtain discovery on matters relevant to any party's claim or defense."); *National Union Fire Ins. Co. of Pittsburgh v. Westport Ins. Co.*, No. 10 C 6096, 2012 WL 698540, *3 (N.D.Ill. Feb.29, 2012) (because parties approach discovery consistent with theory of case as framed in pleadings, "the defendant has the right to obtain information regarding the new claims through additional discovery.").

Even if lack of clairvoyance equated to lack of diligence, which it does not, it was hardly clear that NTG would be forced to defend against predicate acts based on Strataluz.  Prior to seeking leave to file the Third Amended Complaint, NIC consistently represented that it was not seeking to predicate liability on Strataluz

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    allegations.  Since filing its Second Amended Complaint, NIC has proceeded for

2    multiple years to seek privileged documents regarding Strataluz based on claimed

3    relevancy to NIC's Second Amended Complaint and response to affirmative

4    defenses.  (*See e.g.*, Dkts. 198; 299; 367-1; 414.)  In arguing for leave, NIC claimed

5    that "Defendants erroneously argue that NIC's request is tantamount to a motion for

6    leave to amend the complaint.  That position is incorrect."  (Dkt. 392 at 12.)  NIC

7    went on to argue that "[t]he Strataluz evidence does not expand the existing

8    allegations but, rather, supports and provides explanatory details concerning those

9    allegations."  (*Id.*)  Yet now NIC argues that NTG should have treated that motion

10   as a de facto motion for leave.[2]

11          Accordingly, NTG has been diligent in seeking discovery.

12   **B.      NIC's Argument That NTG Must Satisfy Rule 6 Is Without Merit**

13          NIC argues that under Rule 16, the "[t]he threshold question for the Court,

14   therefore, is whether NTG was diligent in obtaining relevant discovery before the

15   cut-off."  (Dkt. 1019 at 11.)  It claims that NTG must also show "excusable neglect"

16   under Rule 6 and claims that "NTG does not even address, let alone satisfy, the

17   elements of excusable neglect."  (Dkt. 1019 at 12.)

18          NIC's point is unclear.  Courts have rejected the proposition that "excusable

19   neglect" governs amendments of scheduling orders.  *See Matrix Motor Co. v.*

20   *Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 674 (C.D. Cal. 2003) (holding

21   _____

22   [2] NIC accuses counsel for NTG of attempting to "mislead" with this evidence and
     even goes so far as to request that the court "reprove NTG counsel . . . ."  (Dkt. 1019
23   at 13.)  NTG did not say in its Motion for Leave that the statement was a literal
     "pledge not to amend its complaint with Strataluz allegations" as NIC claims.
24   Rather, NTG stated that "NTG raised concerns that NIC's discovery into Strataluz
     was an attempt to expand the allegations in this case, and NIC assured the Court it
25   was not[.]"  (Dkt. 1013-1 at 17.)  NTG then accurately quoted language in which
     NIC stated "[t]he Defendants erroneously argue that NIC's request is tantamount to
26   a motion for leave to amend the complaint. That position is incorrect. NIC is not
     seeking leave to amend its complaint. ***NIC's request will not modify any of the***
27   ***allegations in the SAC or the core issues for trial.***"  (Dkt. 1013-1 at 17.)  This is an
     entirely accurate and fair citation, and NIC's attempt to imply that "NTG counsel"
28   attempted to "mislead" the Court with it is offensive.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OMNIBUS REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY
AND TO DESIGNATE ADDITIONAL EXPERT

that "the standard [for amending a scheduling order] is neither 'extraordinary circumstances' nor 'excusable neglect," but 'good cause.")  Moreover, "good cause" – which NTG demonstrated – "requires more than 'excusable neglect.'"  *Id.*

In any event, NTG meets the excusable neglect standard as well.  Under Federal Rules of Civil Procedure Rule 6, a request to amend a scheduling order to allow for discovery after the discovery cut-off has passed must address excusable neglect.  *See* Fed. R. Civ. P. 6(b)(1)(B); *Mireles v. Paragon Sys., Inc.*, No 13-CV-122, 2014 WL 575713, at *2 (S.D. Cal. 2016).

In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court established a four-part balancing test for determining whether there has been excusable neglect.  The four factors are: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith.  *Id.*  The weight assigned to the various *Pioneer* factors is left to the court's discretion.  *Pincay v. Andrews,* 389 F.3d 853, 860 (9th Cir.2004).  *Mireles v. Paragon Sys., Inc.,* supra, 2014 WL 575713, at *2.  NTG's request satisfies each of the four *Pioneer* factors.

## 1.  <u>Prejudice To The Counter-Defendants</u>

NTG has proposed the following reciprocal discovery plan to ensure no prejudice results to either side:  (1) Fact discovery shall be reopened for a period of 60 days; (2) Each side shall be allowed a total of 25 Interrogatories, which shall be limited to the new allegations in the Fourth Amended Complaint and the new allegations in the First Amended Counterclaim; (3) Each side shall be allowed a total of 25 Requests for Admissions, which shall be limited to the new allegations in the Fourth Amended Complaint and the new allegations in the First Amended Counterclaim; (4) Each side shall be allowed a total of 50 Requests for Production,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

which shall be limited to the new allegations in the Fourth Amended Complaint and the new allegations in the First Amended Counterclaim; (5) Counterclaimants shall be allowed to depose each of the named Counter-Defendants, except that for any named Counter-Defendant who has previously been deposed, said recalled deposition shall be limited to no more than four (4) hours and shall be limited to the new allegations in the Fourth Amended Complaint and the new allegations in the First Amended Counterclaim; and (6) Defendants shall be permitted to designate one (1) additional expert regarding business or corporate practices and standards, as well as marketing practices, in the health supplement industry.  NIC shall be permitted to offer a rebuttal expert report within 30 days, and each side shall be permitted one deposition of the opposing side's expert on those issues.

NTG's proposed reciprocal, limited discovery plan only adds 60 days of fact discovery.  This brief window is narrowly tailored to ensure all parties are provided with the opportunity to ascertain the basis of the new allegations and revise their litigation strategies accordingly.  In sum, NTG's proposed discovery plan is designed to prevent prejudice and expeditiously move the parties towards trial.

### 2. The Length Of The Delay And Its Potential Impact On Judicial Proceedings

Given the current circumstances resulting from the ongoing COVID-19 crisis, a brief discovery window to account for the amended pleading and Counterclaim will not appreciably modify the anticipated trial schedule, if at all.  On the other hand, the potential impact of proceeding to trial without fact or expert discovery on the newly asserted Lanham Act claims will prejudice NTG significantly.  Consequently, this factor also supports NTG's request for additional discovery and the opportunity to designate one additional expert.

### 3. The Reason For The Delay

NTG's request results directly from NIC's amendment adding the Lanham Act claims.  As addressed above, NTG conducted its discovery in reliance on both

- 11 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

NIC's pleadings and the representation that any Strataluz related discovery would only be relevant to explanatory details and supporting facts pertinent to NIC's existing claims.  The requested delay is the result of the changed conditions due to the entirely new RICO enterprise and Lanham Act liability theory asserted in the Fourth Amended Complaint.  These changed circumstances were not within NTG's control and require NTG to revise its litigation strategy to address the new allegations.  Therefore, this factor also supports NTG's request.

### 4.    Whether The Moving Party's Conduct Was In Good Faith

NTG prepared its case based on the claims asserted in the operative pleadings.  NTG could not have been expected to conduct discovery on unasserted claims or designate experts in the event NIC "might" amend its Complaint.  NTG's reliance on the bounds of NIC's claims was not only reasonable given the extensive litigation history preceding the Fourth Amended Complaint, but done in good faith reliance on the asserted RICO enterprise.  While NIC argues that NTG (1) has known since 2017 the Strataluz related allegations were relevant to NIC's RICO claims, and (2) that NIC would attempt to introduce this evidence at trial, the argument ignores how such information would be used.  It is black letter law that pleadings frame the claims.  "To the pleadings is assigned the task of general notice giving; the task of narrowing and clarifying the basic issues, ascertaining the facts relative to those issues, is the role of the deposition-discovery process aided by the pre-trial hearing." *Turkish State Rys. Admin. v. Vulcan Iron Works*, 153 F. Supp. 616, 617 (M.D. Pa. 1957) (citing *Hickman v. Taylor*, 329 U.S. 495, 500 (1947).  If the pleadings did not allege liability for these facts, NTG was justified in choosing to defend them as merely aggravating factors appurtenant to the existing claims.

Since filing its Second Amended Complaint, NIC has proceeded for multiple years to seek privileged documents regarding Strataluz in order to challenge NTG's affirmative defenses.  (*See e.g.*, Dkts. 198; 299; 367-1; 414.)  NTG could not affirmatively propound written discovery targeted towards a specific issue until NIC

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 12 -

filed the Third Amended Complaint.  Indeed, the fact that no Lanham Act scheme was asserted justified NTG to conduct discovery accordingly.  *Youngevity Int'l, Corp. v. Smith*, No. 16-CV-704 BTM (JLB), 2017 WL 6730078, *6 (S.D. Cal. Dec. 29, 2017).  At bottom, NTG's prior discovery was conducted in a good faith reliance on the operative pleadings.  Likewise, the instant request is made in good faith to address the newly asserted claims.

### C.   Counter-Defendants' Proportionality Argument Under Rule 26(b)(1) Fails Because NIC's Complaint Tolled The Statute Of Limitations

Counter-Defendants argue that "[t]he value of NTG's RICO counterclaim is minimal" because "[t]he law limits NTG's damages to injuries flowing from predicate acts that occurred within the statute of limitations period," which they claim to be 2019.  (Dkt. 1018 at 22.)

Counter-Defendants are incorrect because the Counterclaim was equitably tolled during the pendency of this action.[3]  While the Ninth Circuit has not specifically opined on the issue, the majority view is that plaintiff's initiation of a suit tolls or suspends the running of the statute of limitations with respect to a compulsory counterclaim:

> First, although the Ninth Circuit has not opined on the issue, this court is persuaded by the weight of authority that the filing of a complaint tolls the statute of limitations for compulsory counterclaims, which relate back to the date the initial complaint was filed.  *Orange Cty. Health Care Agency v. Dodge*, 793 F. Supp. 2d 1121, 1129 (C.D. Cal. 2011) ("Plaintiff's Complaint tolled the statute of limitations."); *Yates v. Washoe Cty. Sch.*

---

[3] This constitutes a separate and additional reason for rejecting the statute of limitations arguments made in Counter-Defendants' Motion to Dismiss and Motion to Strike.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Dist.*, No. 07-cv-00200-LRH-RJJ, 2007 WL 3256576, at *2 (D. Nev. Oct. 31, 2007) ("The Ninth Circuit has not addressed the issue of whether the filing of an action tolls the running of the statute of limitations with respect to a compulsory counterclaim. However, the majority of courts to address the issue have concluded that a plaintiff's institution of a suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.") (citations omitted); *see also Oracle Am., Inc. v. Terix Computer Co., Inc.*, No. 13-cv-03385-PSG, 2014 WL 5847532, at *6 (N.D. Cal. Nov. 7, 2014) ("The institution of a plaintiff's suit suspends the running of limitations on a compulsory counterclaim while the suit is pending.") (Grewal, Mag. J.) (internal quotation marks omitted); 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1419 (3d ed. 1998) ("Although there is some conflict on the subject, the majority view appears to be that the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.").

*MH Pillars Ltd. v. Realini*, No. 15-CV-01383-PJH, 2018 WL 1184847, at *3 (N.D. Cal. Mar. 7, 2018).

"To be compulsory, a counterclaim must 'arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim.'" *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (citing Fed. R. Civ. P. 13(a)(1)(A)). The Ninth Circuit applies "the logical relationship test for compulsory counterclaims." *Id.* (citation omitted). "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  otherwise dormant in the defendant.... What matters is not the legal theory but the

2  facts." *Id.* (quoting *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005)).

3        As discussed in NTG' Opposition to Counter-Defendants' Motion to Strike,

4  the Counterclaim was compulsory.  (Dkt. 1002 at 14-19.)  To the extent any statute

5  of limitations had even accrued, which none had, it was tolled when NIC filed this

6  action in December 2015.  Accordingly, all damages, not just those occurring in

7  2019, should be considered.  Counter-Defendants' argument that NTG's proposed

8  discovery plan is disproportionate under Rule 26 (b)(1) because the applicable

9  statute of limitations bars recovery is incorrect.

10       **D.    Counter-Defendants' Request For A Rule 16 Conference Is**

11             **Unnecessary**

12        Prior to filing the instant Motion, NTG attempted to meet and confer to

13  establish a mutually acceptable discovery framework.  (Sabovich Decl. Ex. A.)

14  Through the meet and confer process, NTG determined that Counter-Defendants

15  were (1) opposed to allowing NTG to conduct any discovery related to NIC's Fourth

16  Amended Complaint and (2) refused to entertain any discovery limitations on

17  NTG's Counterclaims.  It is beyond dispute that significant discovery has already

18  taken place on both sides.  Having already litigated this case – and the underlying

19  facts – for several years, it is patently unreasonable to argue that discovery on

20  NTG's Counterclaim must start from the beginning and a Rule 16 conference is

21  necessary.  Likewise, it is patently unreasonable to argue that in light of the same

22  litigation history, no additional discovery is necessary regarding NIC's newly

23  asserted Lanham Act claims.  The reasonable approach is that these new allegations

24  require a moderate response allowing the parties to revise their litigation strategies

25  and supplement the existing discovery.  NTG proposed a moderate approach that

26  accounts for prior discovery and limits itself to the new allegations.  Rather than

27  responding in kind, Counter-Defendants assumed an extreme position and forced an

28  impasse.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 15 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

NTG remains committed to resolving discovery disputes informally and efficiently.  If Counter-Defendants believe additional discovery is required beyond the parameters proposed by NTG, they should meet and confer and make a proposal. Simply forcing a procedural impasse by assuming an extreme position unsupported by law or fact is unreasonable.

**E.      Alternatively, Counter-Defendants May File Their Own Motion For Leave If They So Wish**

Much of Counter-Defendants' opposition is spent arguing that they are entitled to "extensive and complete discovery" on the Counterclaim.  (Dkt. 1018 at 15-19.)  Thus, Counter-Defendants complain that "NTG's instant motion does not allow for due process and unfairly truncates discovery for newly added parties . . . ." (*Id.* at 15.)  They go so far as to claim that Counter-Defendants will "require . . . at least 16 to 20 months . . . . to complete discovery in defense of the new RICO Counterclaims[.]"  (*Id.* at 16.)

Counter-Defendants are drastically overstating their need,[4] largely on the fiction that there are functionally "new parties" brought in by the Counterclaim. The only truly "new parties" in the Counterclaim are the declarants, and the allegations against them span only a few months.  (Dkt. 980, ¶ 48.)  The allegations relate to a plot with NIC and its counsel, so relevant documents are by definition within the Counter-Defendants' control.  (*Id.* at ¶¶ 48-93.)  That is, of course, why NTG sought and was granted leave to take discovery of those documents "from NIC

---

[4] Indeed, Counter-Defendants assert that discovery would be even broader for the Counterclaim than for this action.  According to them, because discovery was limited to "the eight lawsuits described in NIC's Second Amended . . . the areas for discovery in response to the FACC will necessarily involve information that was previously unavailable under this Court's prior limitation."  (Dkt. 1018 at 18.)  It is unclear how Counter-Defendants can reconcile this with their argument that NTG should be deprived discovery because NTG's claims have already been "litigated." *Id.* at 5-6.  In any event, the argument is without merit since the allegations in the Counterclaim are based predominantly on areas where discovery has already been authorized.

1  and the NIC Witnesses . . . "  (Dkt. 891 at 17.)  This Court granted the motion for

2  leave after finding that "Ferrell had grounds to believe that the declarations

3  contained inaccuracies, and cannot be deprived of his right to file a lawsuit when he

4  believes he has been wronged." (Dkt. 891 at 16.)  NIC and the Declarants obviously

5  have access to the documents they produced and will, of course, have access to

6  additional documents that could result from the pending motion to compel.

7        All other "new parties" are that in name only.  They are comprised of NIC, its

8  controlling co-presidents, and NIC's counsel.  (Dkt. 980, ¶¶ 17-23.)  All have been

9  involved in this litigation since its inception and are thus already fully apprised of

10  discovery that has been taken.  The proposition that individuals need 16 to 20

11  months of discovery to explore litigation actions that they directed, when virtually

12  all of the relevant evidence is already in their control, is patently unreasonable.

13        Likewise, the extent of the discovery Counter-Defendants assert they must

14  take is not credible.  Counter-Defendants claim in one breath that "NTG's

15  allegations have been thoroughly litigated," (Dkt. 1018 at 5-6) but in the next that

16  they need extensive discovery regarding them, including a substantial number of

17  third-party subpoenas, depositions of counsel, and apparently extensive privilege

18  litigation.  Id. at 15-18.  Again, Counter-Defendants' needs are drastically

19  overstated.  They hardly need subpoenas to "friends and relatives of Trycia

20  Carlberg" when Counter-Defendants themselves are "friends and relatives of Trycia

21  Carlberg," or Clark Baker when he was NIC's agent and NIC already produced a

22  privilege log and documents from him.  (Id. at 16-17.)  The expansive scope of

23  discovery that Counter-Defendants intend to undertake is, if anything, proof of the

24  need to limit discovery for them.

25        Ultimately, however, NTG's proposal to allow Counter-Defendants to take

26  discovery was simply an attempt to simplify and streamline issues.  If, as it appears,

27  Counter-Defendants intend to insist on unreasonable discovery, then this Court

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 17 -

should simply grant NTG the right to take the discovery it requested and require Counter-Defendants to bring their own motion for leave.

**F.     NTG Should Be Allowed To Designate A Single Additional Expert**

NTG reasonably requested leave to designate a single additional expert to address NIC's new allegations.  As explained in the Motion, NIC's new allegations raise particular issues regarding the health and supplement industry that are likely to be beyond the purview of lay jurors.  (Dkt. 1013-1 at 23-26.)  NIC responds that the conduct alleged "does not beget complex questions that would require an expert." (Dkt. 1019 at 21.)

NIC may believe it does not need expert testimony to prove its allegations, but that hardly means that NTG is not entitled to defend itself from those allegations with expert testimony.  The standards for reliable expert testimony are liberal and the relevancy bar low.  (Dkt. 1013-1 at 24-25.)  Expert testimony on industrial standards is quite common.  (*Id.*)  NIC contends that expert testimony is unnecessary because the allegations are a simple matter of allegedly false representations.  (Dkt. 1019 at 21.)  This is neither true nor a reason to deny expert testimony.  NIC's allegations go beyond false representations.  NIC alleges that "NTG's sham plaintiffs also included a manufactured corporate client, Strataluz LLC, which posed as a legitimate competitor of NTG's litigation victims" and that the owners "concealed their ownership interest in that company through the use of blocker companies and for-hire, placeholder corporate managers."  (Dkt. 1007, ¶¶ 359-360.)  Virtually every allegation regarding Strataluz – from licensing to patent applicability – raises this same issue: a finder of fact cannot assess allegedly aberrant conduct in an industry without knowledge of the industry norms.  Similarly, the core allegation that "[t]he ProMaxal product did not exist, had never been manufactured, and was never sold," (Dkt. 1007, ¶ 44) involves complex issues that require expert testimony.  NTG briefed all of this in its Motion, yet NIC has failed to offer any meaningful response.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

Accordingly, NTG should be permitted to designate one additional expert.  It has no objection to NIC being granted leave to offer a rebuttal expert.

### G.   Counter-Defendants' Argument That NTG Should Be Allowed Only Limited Discovery Regarding The Counterclaim Is Beside The Point Since That Is All That NTG Is Requesting

Counter-Defendants argue at length that NTG should be allowed only "limited" discovery regarding allegations in the Counterclaim.  (Dkt. 1018 at 19-23.)  It is unclear why Counter-Defendants feel the need to make this argument since that is all that NTG has requested.

To be clear, NTG agrees that many of the areas in the Counterclaim have been subject to discovery, which is precisely why Counter-Defendants' professed need for expansive discovery is so unreasonable.  Thus, NTG has offered to limit itself to document discovery of 25 Interrogatories, 25 Requests for Admissions, and 50 Requests for Production for both the new allegations in the Fourth Amended Complaint *and* the Counterclaim.  Given that those numbers are totals for both areas of discovery, and NTG needs discovery into the new allegations in the Fourth Amended Complaint, NTG is, in practical terms, requesting extremely limited document discovery to support the Counterclaim.  It has requested no third-party document subpoenas, no third-party depositions, and only short four-hour depositions of the named Counter-Defendants.

Given that NTG is seeking only very limited discovery to support the Counterclaim, its request should be granted.

### III.   CONCLUSION

Because there is good cause for the discovery sought and for allowing NTG to designate a single additional expert, the Court should enter an order directing the following:

1. Fact discovery shall be reopened for a period of 60 days;

2. Each side shall be allowed a total of 25 Interrogatories, which shall be

- 19 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

limited to the new allegations in the Fourth Amended Complaint or the new allegations in the First Amended Counterclaim[5];

3. Each side shall be allowed a total of 25 Requests for Admissions, which shall be limited to the new allegations in the Fourth Amended Complaint and the new allegations in the First Amended Counterclaim;

4. Each side shall be allowed a total of 50 Requests for Production, which shall be limited to the new allegations in the Fourth Amended Complaint and the new allegations in the First Amended Counterclaim;

5. Counterclaimants shall be allowed to depose each of the named Counter-Defendants, except that for any named Counter-Defendant who has previously been deposed, said recalled deposition shall be limited to no more than four (4) hours and shall be limited to the new allegations in the Fourth Amended Complaint and the new allegations in the First Amended Counterclaim;

6. Defendants shall be permitted to designate one (1) additional expert regarding business or corporate practices and standards, as well as marketing practices, in the health supplement industry. NIC shall be permitted to offer a rebuttal expert report within 30 days, and each side shall be permitted one deposition of the opposing side's expert on those issues.

---

[5] Since there are multiple Defendants and multiple Counter-Defendants, the limit of 25 shall apply to those groups collectively. In other words, one "side" shall consist of all named Defendants (which will also include the Counterclaimants) in the above action, while the other "side" shall consist of all named Counter-Defendants (which will also include NIC as the Plaintiff). In addition, the limit of 25 shall apply to both the new allegations in the Fourth Amended Complaint and the new allegations in the First Amended Counterclaim.

OMNIBUS REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY AND TO DESIGNATE ADDITIONAL EXPERT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Dated:  July 13, 2020

**CALLAHAN & BLAINE, APLC**

By: _/s/ James M. Sabovich_
Edward Susolik
David J. Darnell
James M. Sabovich
Attorneys for Defendants and
Counterclaimants NEWPORT TRIAL
GROUP and SCOTT J. FERRELL

OMNIBUS REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY
AND TO DESIGNATE ADDITIONAL EXPERT