UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 8/3/2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS]** Order Regarding Motion to Dismiss, Motion to Strike, and Motion for Sanctions

Before the Court are the following three motions.

Counter-Defendants, Natural Immunogenics Corp. ("NIC"), Ben Quinto, Theo Quinto, Emord & Associates, P.C., Peter Arhangelsky, Jim Buc, MaryAnn Buc, and Charlotte Carlberg (collectively referred to as "Counter-Defendants" or "NIC Defendants"), move to strike the amended counterclaims filed by Newport Trial Group ("NTG") and Scott Ferrell ("Ferrell") (collectively "Counter-Claimants" or "NTG Claimants"). MTS, ECF No. 988. Counter-Claimants oppose the motion. MTS Opp'n, ECF No. 1002. Counter-Defendants replied. MTS Reply, ECF No. 1009.

Counter-Defendants also move to dismiss the amended counterclaims. MTD, ECF No. 990. Counter-Claimants oppose the motion. MTD Opp'n, ECF No. 1003. Counter-Defendants replied. MTD Reply, ECF No. 1008.

Counter-Defendants separately move to sanction Counter-Claimants and their attorneys (David Darnell and James Sabovich) for filing frivolous pleadings. Sanc., ECF No. 1000. Counter-Claimants oppose the motion. Sanc. Opp'n, ECF No. 1005. Counter-Defendants replied. Sanc. Reply, ECF No. 1010.

For the following reasons, the Court **GRANTS** the motion the strike, declines to address the motion to dismiss as **MOOT**, and **GRANTS** the motion for sanctions. Counter-Defendants shall file a supplementary motion concerning the amount of attorneys' fees and costs expended in connection with their motions to dismiss, strike, and for sanctions, within twenty days.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 15-2034 JVS (JCGx)                    Date  8/3/2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

## I. Background

The background of this case is well known to the parties and the Court. This Order recites background only as relevant to the objections currently before the Court.

### A. Overview

This case concerns litigation between NIC and NTG, its attorneys, and its clients. In brief, NIC alleges that NTG routinely fabricated class-action litigation to extort money from defendants nationwide. Third Amended Complaint ("TAC"), ECF No. 911, ¶ 2. NIC's TAC alleges that the NTG Defendants perpetrated three litigation schemes: (1) the false-advertising scheme; (2) the unauthorized recording, or "wiretapping" scheme; and (3) the Lanham Act scheme. See generally, id.

In the false advertising scheme, NTG and its investigator Andrew Baslow ("Baslow") would identify individuals to serve as lead plaintiffs in consumer fraud class actions against companies selling products in California. Id. at ¶¶ 23–25. NTG would then bribe these individuals to make intentional false representations that (1) they purchased the defendant's product in reliance on the representations made in defendant's product advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the advertisements. Id. at ¶ 29. Using these false allegations, NTG would threaten companies with statewide class actions under various California consumer protection statutes,[1] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id. at ¶ 27.

The wiretapping scheme functioned similarly. Under the wiretapping scheme,

---

[1] The TAC identifies four lawsuits filed in connection with the false advertising scheme: (1) Nilon v. Natural-Immunogenics Corp., Case No. 3:12-cv-00930-LAB-BGS (C.D. Cal. 2012) ("Nilon"); (2) Pfleg v. Nature's Way Prods., Inc., Case No. 37-2012-0051979-CU-MT-NC (San Diego Cty. Sup. Ct. 2012) ("Nature's Way"); (3) Dronkers v. Kiss My Face, LLC, Case No. 3:12-01151-JAH (S.D. Cal. 2012) ("Kiss My Face"); and (4) Morales v. Magna, Inc., Case No. 3:10-cv-01601-EDL (N.D. Cal. 2010) ("Magna"). TAC ¶¶ 49–147, 175–221, 265–81. Nilon, Pfleg, and Dronkers served as the lead plaintiffs in Nilon, Nature's Way, and Kiss My Face, respectively. (Id.) Sandoval later substituted in as lead plaintiff in Nilon. Id. at ¶¶ 105–13. Non-party Dan Bobba ("Bobba") served as a lead plaintiff in Magna. Id. at ¶ 266.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 8/3/2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

NTG and Baslow would identify individuals to serve as potential lead plaintiffs in consumer privacy class actions. Id. at ¶¶ 23–25. NTG would then bribe these individuals to stage private phone calls to various companies, and then later make intentionally false representations that: (1) they were not aware that the call was being recorded; (2) they did not consent to the recording; (3) they expected that their call would be private and not recorded; and (4) they learned that the company recorded all incoming calls only after completing the call. Id. at ¶ 34. Using these false allegations, NTG would threaten companies with statewide class actions under the California Invasion of Privacy Act, Cal. Pen. Code §§ 632 et seq., ("CIPA")[2] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id. at ¶¶ 31-33.

Under the Lanham Act scheme NTG, Ferrell, and Reid created a sham "plaintiff" by forming a limited liability company called Strataluz LLC ("Strataluz") and concealing their ownership in the entity. Id. at ¶ 42. NTG, Ferrell, and Reid utilized Strataluz as a plaintiff to threaten companies that sold dietary supplements with lawsuits under a Lanham Act false advertising theory falsely claiming that they had competitor standing and actual damages. Id. at ¶ 43. In May and June 2015, NTG, Ferrell, and Reid falsely threatened companies that sold male enhancement supplements with Lanham Act litigation based on false allegations that Strataluz manufactured, sold, and distributed a patented male enhancement product called ProMaxal. Id. at ¶ 44. In fact, ProMaxal did not exist, had never been manufactured, and was never sold. Id. NTG, Ferrell, and Reid attempted to extort "hundreds of thousands of dollars from unsuspecting companies in exchange for dismissal and the offer of a worthless license that Defendants claimed had significant value" by threatening such frivolous litigation. Id. at ¶ 45.

**B.     Procedural History**

---

[2] NIC's SAC identifies four lawsuits filed in connection with the wiretapping scheme: (1) Nilon v. Chromadex, Inc., Case No. 56-2013-00436790-CU-MT-VTA (Ventura Cty. Sup. Ct. 2013) ("Chromadex"); (2) Demulder v. Carter-Reed Co., LLC, Case No. 3:12-cv-0333-BTM (S.D. Cal. 2012) ("Carter-Reed"); (3) Schoonover v. Himalaya Drug Co., Case No. 12-cv-1782 (S.D. Cal. 2012) ("Himalaya Drug"); and (4) Torres v. Nutrisystem, Case No. 8:12-cv-01854-CJC-JPR (C.D. Cal. 2012) ("Nutrisystem"). Compl., ¶¶ 148–74, 222–64, 282–317. Nilon, Demulder, and Schoonover served as the lead plaintiffs in Chromadex, Carter-Reed, and Himalaya Drug, respectively. Id. Non-party Raquel Torres ("Torres") served as a lead plaintiff in Nutrisystem. Id. at ¶¶ 289, 295.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 8/3/2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

On December 16, 2019, this Court issued a Scheduling Order. ECF No. 883. Under the Scheduling Order, "[a]ll motions to join other parties or to amend the pleadings shall be filed and served within sixty (60) days of the date of this order and noticed for hearing within ninety (90) days hereof." Id. at 1. Therefore, the deadline to file and serve motions to amend pleadings was February 16, 2020.

NIC filed a timely motion for leave to file its TAC on February 14, 2020. ECF No. 892. The proposed TAC added predicate acts under RICO concerning allegations that Ferrell and Reid used their Strataluz business to file lawsuits against competitors based on false allegations. See Redline version of TAC, ECF No. 892-4. The Court granted the motion reasoning that the proposed amendments would not "greatly change the parties' positions." ECF No. 910, 6. NTG moved to dismiss or strike the TAC on April, 7, 2020. ECF No. 913. On May 20, 2020, the Court granted the motion to dismiss with leave to amend. ECF No. 987. On June 18, 2020, the Fourth Amended Complaint ("FAC") was filed. ECF No. 1007.

Without seeking leave from the Court, NTG filed Counterclaims on April 7, 2020. ECF No. 918. The Counterclaims added seven new parties. Id.

### C. The Amended Counterclaim

On May 7, 2020, without seeking leave from the Court, NTG filed an Amended Counterclaim alleging a violation of the RICO Act and conspiracy to violate the RICO Act. ECF No. 978-1. The Amended Counterclaim alleges that NIC and the other Counter-Defendants along with certain non-party co-conspirators[3] "spearheaded a criminal enterprise to retaliate against NTG and Ferrell for their efforts to expose NIC's false advertising of Sovereign Silver and the danger NIC poses to the public health." Id. at ¶ 12. The Amended Counterclaim alleges that Counter-Defendants have participated in criminal acts in their behavior of this litigation by (1) "actively soliciting and filing knowingly false declarations accusing Ferrell of multiple felonies"; (2) suborning perjury by promising witnesses the benefit of NIC's resources in exchange for false declarations; (3) presenting false accusations in filings; (4) "extorting and tampering with a witness by publishing a derogatory website designed to coerce that witness to provide false

---

[3] Attorney Joshua S. Furman, Paralegal Jennifer Fernandes, private investigator Clark W. Baker ("Baker"), and attorney Carlos F. Negrete ("Negrete"). Amd. Count., ¶¶ 31-34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-2034 JVS (JCGx)                              Date   8/3/2020

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al

testimony"; (5) utilizing an investigator who impersonated law enforcement to procure false testimony; and (6) presenting a false declaration claiming a party had evaded a properly noticed deposition. Id. at ¶ 3.

Part of the allegations arise from a dispute between the parties as to whether Trycia Carlberg was a client of Ferrell and declarations and motions that were filed before this Court concerning her relationship with Ferrell. Id. ¶¶ 48-94.[4] Counter-Claimants also allege that after the Nilon action was withdrawn by the named plaintiff, NIC "embarked on a criminal enterprise with Baker, a private investigator, who devised a plan to extort and blackmail false declarations from witnesses." Id. ¶ 104. The Amended Counterclaim alleges that NIC and Negrete hired Baker to create an adverse website designed to target Nilon's business in order to coerce Nilon into speaking out against Ferrell and NTG. Id. ¶¶ 108-143. After the website was initially taken down at Nilon's request, Baker told Nilon that the website "would be put back up if Nilon did not cooperate with him, but it would stay down if Nilon told him what he wanted to hear about." Id. ¶ 120.

Counter-Claimants also allege that Baker contacted former NTG clients in late 2015 while deceptively identifying himself as "Officer Clark Baker" and representing that he was either a "federal law enforcement officer" or an investigator at the "Bureau of Security and Investigation Services." Id. ¶¶ 144-162. Finally, Counter-Claimants allege that prior to the dismissal of the Nilon action, in 2014 NIC was awarded discovery sanctions based in part on a false declaration filed by Negrete indicating that NIC served a deposition notice on Nilon's counsel and that counsel refused to produce Nilon. Id. ¶¶ 163-166. Counter-Claimants accuse Negrete of preparing and filing a false proof of service even though notice of the deposition was not received by them. Id. ¶ 164.

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(f)

Under Rule 12(f), a party may move to strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). A motion to strike is appropriate when a defense is insufficient as a matter of law. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th

---

[4]These same allegations were addressed by the Court at ECF No. 891.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 15-2034 JVS (JCGx)                                     Date  8/3/2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

Cir. 1982). The grounds for a motion to strike must appear on the face of the pleading under attack, or from matters of which the Court may take judicial notice. SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995).

The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). "As a general proposition, motions to strike are regarded with disfavor because [they] are often used as delaying tactics, and because of the limited importance of pleadings in federal practice." Sands, 902 F. Supp. at 1165-66 (alteration in original) (internal quotation marks omitted).

Therefore, courts frequently require the moving party to demonstrate prejudice "before granting the requested relief, and 'ultimately whether to grant a motion to strike falls on the sound discretion of the district court.'" Greenwich Ins. Co. v. Rodgers, 729 F. Supp. 2d 1158, 1162 (C.D. Cal. 2010) (quoting Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F.Supp.2d 1028, 1033 (C.D.Cal.2002)).

### B.     Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-2034 JVS (JCGx)                                    Date   8/3/2020

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al

Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

### C. Sanctions

Federal Rule of Civil Procedure 11(c)(2) ("Rule 11"), the "safe harbor rule," requires a party requesting sanctions under Rule 11 to wait 21 days between serving the opposing party and filing the motion with the Court. This allows the allegedly offending party an opportunity to correct any error.

"Rule 11 imposes a duty on attorneys to certify by their signature that (1) they have read the pleadings or motions they file and (2) the pleading or motion is 'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose." Smith v. Ricks, 31 F.3d 1478, 1488 (9th Cir. 1994) (citing Fed. R. Civ. P. 11; Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)). "[T]he subjective intent of the pleader or movant to file a meritorious document is" not relevant. Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir. 1986), overruled on other grounds by Cooter, 496 U.S. at 400. Instead, the Court must ask whether the "signed document is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Zaldivar, 780 F.2d at 830. An action is not warranted where no "plausible, good faith argument can be made by a competent attorney in support of the proposition asserted." Paciulan v. George, 38 F. Supp. 2d 1128, 1144 (N.D. Cal. 1999) (citing Zaldivar, 780 F.2d. at 829, 833).

Under Rule 11, sanctions may be imposed "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." Estate of Blue v. Cnty. of Los Angeles, 120 F.3d 982, 985 (9th Cir. 1997). The cases warranting imposition of sanctions are "rare and exceptional." Operating Eng'rs Pension Trust v. A-C Co., 859 F.2d 1336, 1344 (9th Cir. 1988). Finally, sanctions imposed under Rule 11 shall be limited to what is sufficient to deter "repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Rule 11 sanctions may include an award for "reasonable attorney's fees and other expenses directly resulting from the violation." Id.

Federal Rule of Civil Procedure 16(f) also allows the Court sua sponte to issue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 8/3/2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

sanctions if a party fails to obey a scheduling or other pretrial order.

### III. DISCUSSION

#### A. Motion to Strike

NIC asks the Court to strike NTG's Amended Counterclaims filed against NIC, its counsel, and several witnesses because they were filed out of time, shortly prior to trial and without leave of court in violation with the Scheduling Order. MTS, 1. NIC argues that this violates the Court's scheduling order and that NTG delayed filing these claims for four years despite having the alleged grounds to assert them at the time of its original answer in 2016. Id. NIC contends that this amended counterclaim will substantially prejudice it and will further obstruct and will delay this action. Mot., 6. NIC notes that NTG has requested that discovery arising from its counterclaims (including 100 new written requests, deposition of seven newly named parties including NIC's trial counsel, and recalled depositions of NIC and its principles) occur within a 60-day period. See Peter Arhangelsky ("PA") Decl., ¶ 4, Ex. B.

In response, NTG argues that the scheduling order does not address or apply to responses to a new amended pleading. MTS Opp'n, 6-8. It is true that the deadline of responsive and compulsory claims flow from the filing of the initial filing (in this case the TAC). However, the scheduling order applied to "[a]ll motions to join other parties or to amend the pleadings." ECF No. 883. Therefore, if the claim was not compulsory as a result of the changes in the TAC, it should have been filed within this Court's stated deadline in the Scheduling Order. NTG argues that the counterclaim was compulsory and therefore it was not obligated to seek leave. MTS Opp'n, 8-19. Specifically, NTG argues that there is an obvious logical relationship between the Amended Counterclaim and NIC's TAC because the predicate acts alleged in the Counterclaim occurred in or leading up to the prosecution of NIC's claims in this action. Id. at 11. NTG lists specific ways in which the Amended Counterclaim allegedly corresponds to allegations in the TAC, but none of these allegations in the TAC are new with the exception of a portion of paragraph 95 alleging that in the alternative to Nilon not having been told about a scheduled deposition, NTG never intended to produce Nilon and intentionally obstructed a duly noticed subpoena. See id. 11-12 cf. ECF No. 892-4.

Under the moderate approach, which district courts in the Ninth Circuit generally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 8/3/2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

utilize and this Court adopts, "newly alleged counterclaims are allowed as of right only to the extent they directly relate to changes in the amended complaint." Tate-Robertson v. Walmart Inc., No. EDCV1927JGBSHKX, 2019 WL 6454392, at *2 (C.D. Cal. Aug. 13, 2019). NTG argues that the claims were compulsory under this approach because the moderate approach "permits the defendant to respond to an amended complaint that changes the theory or scope of the case by adding counterclaims that similarly change the theory or scope of the case." Adobe Sys. Inc. v. Coffee Cup Partners, Inc., No. C 11-2243 CW, 2012 WL 3877783, at *5 (N.D. Cal. Sept. 6, 2012) (internal citation and quotation omitted). However, in its order concerning leave to file the TAC, this Court considered in depth NTG's arguments that NIC's proposed amendment changed the theory of the case, and found that the "new allegations would not greatly change the parties' positions." Order, 6, ECF No. 910. The Court remains of the opinion that the scope of the case was not greatly expanded and that the theory of the case was not changed. What was added was predicate acts that had continuously been discussed and discovery for which was litigated throughout this action by the parties.

It should be noted that the Amended Counterclaim does not focus at all on the changes to the TAC or even address them. Instead, it focuses on alleged conduct by the Counter-Defendants in this litigation and the Nilon action and alleges that Counter-Defendants conducted criminal acts in violation of RICO in a vendetta against NTG and Ferrell for filing an action against NIC. However, the changes in the TAC generally concerned new predicate acts related to the Strataluz/ProMaxal litigation which are included under the same RICO claim that was alleged in the Second Amended Complaint and which have already been discussed before this Court as will be described below. Here, like in Allflex USA, Inc. v. Avid Identification Sys., Inc., No. 5:06-CV-01109-MRP-OP, 2010 WL 11405130, at *14 (C.D. Cal. Feb. 16, 2010), the TAC "did not change or expand the theory of the case in a way that suddenly alerted [Defendants] to claims." Even if the Court were to take the position that the TAC expanded the scope of the case by adding the Strataluz allegations, "the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint." Coppola v. Smith, No. 1:11-CV-1257 AWI BAM, 2015 WL 2127965, at *2 (E.D. Cal. May 6, 2015) (internal quotations and citation omitted); see also Composite Res., Inc. v. Recon Med., LLC, No. 217CV01755MMDVCF, 2018 WL 5886530, at *1 (D. Nev. Nov. 9, 2018). Unlike the TAC which included predicate acts under an already existing RICO claim, NTG's Amended Counterclaim adds an entirely new RICO scheme. Thus, utilizing the moderate approach, the amended counterclaims are not allowed as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 8/3/2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

right because they far exceed the scope of breadth of the changes made in the TAC. NTG's Amended Counterclaim is simply not proportional to the changes in the TAC/FAC. As such, NTG should have sought leave from the Court to file its amended counterclaims. NTG did not.

Additionally, the conduct that is alleged in the Amended Counterclaim has already been before this Court. The Court addressed the latest allegations concerning Trycia Carlberg at ECF 891 based on motions filed in October 2019. The Nilon related allegations have also been made by NTG in briefs and declarations filed before the Court. See ECF No. 40, 41, 174; see also ECF No. 365, 784. The Amended Counterclaim itself acknowledges that Counter-Claimants were aware of misconduct by Baker in 2015 and Negrete in 2017. Amd. Counterclaim ¶¶ 161-62, 166.

Further, although NTG argues that its claims are timely because the 2019 predicate acts were required to satisfy the continuity requirement under RICO (see MTS Opp'n, 18-19), it is evident from the Amended Counterclaims that this is not the case. The Amended Counterclaim alleges a total of seven predicate acts from June 2014-December 2015. Amd. Counterclaim, ¶¶ 203-206. A total of nine predicate acts occurred by August 2016. Id. Therefore, there would have been continuity without the 2019 allegations and NTG's arguments that it needed the 2019 conduct because without it, it could not establish continuity is without merit. NTG also argues that the 2019 injuries restart the statute of limitations period under the "separate accrual rule" wherein a plaintiff could recover damages if new and independent overt acts occur within the limitations period, but not for the acts outside the limitations period. MTS Opp'n, 10; see Tanaka v. First Hawaiian Bank, 104 F. Supp. 2d 1243, 1251 (D. Haw. 2000). But, as to the 2019 conduct, "a claim acquired after service of an answer does not qualify as a compulsory cross-complaint or counterclaim." Beroukhim v. Lincoln Gen. Ins. Co., No. CV0802896MMMMANX, 2008 WL 11336832, at *8 (C.D. Cal. June 9, 2008) (collecting cases). As for the earlier conduct, it is clear that Counter-Claimants were aware of this conduct and have provided no reasonable excuse for why they did not bring an earlier counter-claim.

NTG asks that if the Court finds that leave was required, that it should grant it such leave now. MTS Opp'n, 24. A party seeking to amend pleadings after a scheduling deadline must satisfy the standard for modifying the scheduling order under Rule 16(b) of the Federal Rules of Civil Procedure. Johnson v. Mammoth Recreations, Inc., 975 F.2d

Case 8:15-cv-02034-JVS-JCG Document 1028 Filed 08/03/20 Page 11 of 17 Page ID #:70526

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 15-2034 JVS (JCGx)                                Date   8/3/2020

Title      Natural-Immunogenics Corp. v. Newport Trial Group, et al

604, 607–08 (9th Cir. 1992). A party must show "good cause" for relief from a scheduling order. Fed. R. Civ. P. 16(b)(4). The good cause standard "primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. The court may grant relief from a scheduling deadline if the deadline could not "reasonably be met despite the diligence of the party seeking the extension." Id. While a court may consider prejudice to the opposing party, "the focus of the inquiry is upon the moving party's reasons for seeking modification." Id. If that standard is met, the moving party must still meet the general limitations on the filing of amended pleadings.

NIC also argues that NTG cannot show good cause or excusable neglect because NTG took no steps to file a motion for leave to amend or to file its counterclaims in more than four years despite having raised the exact same allegations throughout this case since at least February 2016. MTS, 12, 14. Specifically, allegations concerning Baker's interactions with Nilon. Id. at 14-15. NIC also argues that NTG has not offered a reasonable explanation for its delay. Id. at 15-16. NIC contends that it will be substantially prejudiced because the counterclaims threaten to derail this litigation and impose new costs and burdens. Id. at 16-18. Finally, NIC contends that the counterclaims were a retaliatory and bad faith attempt to obstruct the lawsuit as can be inferred by NTG's delay, the fact that NTG re-alleges factual contentions previously rejected by the Court, and that Ferrell has sent emails to attorneys who represent clients opposite to the Emord firm in unrelated lawsuits attaching their counterclaim and stating that it "shows numerous documented incidences of perjury, subornation of perjury, and witness tampering by attorney Peter Arhangelsky of the Emord law firm." Id. at 18-19 (quoting PA Decl., ¶ 2, Ex. A).

The Court finds that no good cause exists for relief from its scheduling order. NTG was not diligent in seeking filing its claim and there is significant prejudice to NIC should this counterclaim be allowed to go forward. NTG was aware of the basis for its allegations since, at the latest, August 2019. Amd. Compl., 217. It's delay is inexplicable and unjustified. See Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990) (finding a seven month delay in filing unjustified). Additionally, were the Court to permit the Amended Counterclaim, it would most certainly derail this litigation. Central to the Amended Counterclaim is the allegation that this action itself is a violation of RICO arising from a vendetta by NIC and their attorneys. As a result, discovery which has already been lengthy and troublesome in this case given the privileged nature of many of the documents, would once again delve into privilege issues that are

Case 8:15-cv-02034-JVS-JCG Document 1028 Filed 08/03/20 Page 12 of 17 Page ID #:70527

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 15-2034 JVS (JCGx) Date 8/3/2020

Title Natural-Immunogenics Corp. v. Newport Trial Group, et al

significantly more complicated here because they would likely include communications between NIC and its counsel and work product concerning this very action. Additionally, because NTG has sued NIC's trial counsel who has represented them for over four years, there would be significant prejudice to NIC in having to find new counsel.

Accordingly, the Court **GRANTS** the motion and **STRIKES** the Amended Counterclaims.

### B. Motion to Dismiss

The Court having stricken the amended counterclaims, finds that the motion to dismiss is now moot and declines to address it.

### C. Motion for Sanctions

NIC moves for sanctions against NTG, Ferrell and their counsel for filing frivolous counterclaims barred by the Noerr-Pennington doctrine, the Court's scheduling order, and the RICO statute of limitations. Sanc., 1. NIC contends that the Amended Counterclaims relitigate matters already adjudicated against NTG in this Court's prior orders, and are designed to delay trial, interfere with the legal representation of opposing counsel, intimidate non-party witnesses, and harass NIC's owners. Id.

"Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002) (citing Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997).

#### 1. NTG's Claims are Time Barred

NIC argues that NTG's claims are frivolous because they are time barred under RICO. RICO has a four-year statute of limitations. Pincay v.Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001). As discussed above, some of NTG's claims are outside of the statute of limitations, but some are not. Under the separate accrual rule, a plaintiff can "still obtain RICO recovery for injuries arising during the limitations period[,]" but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 15-2034 JVS (JCGx)     Date  8/3/2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

"damages may not be recovered for injuries sustained as a result of acts committed outside the limitations period." Tanaka, 104 F. Supp. 2d at 1251. NIC argues that NTG has not alleged that it suffered a new and independent injury flowing from the more recent predicate acts because NTG's only injury is legal fees in defending against NIC's RICO suit. Sanc. Reply, 6. Indeed, "litigation expenses incurred after an overt act do not extend the statute of limitations." See N. Tr. Co. v. Ralson Purina Co., No. 94 C 4045, 1994 WL 605743, at *8 (N.D. Ill. Nov. 3, 1994) (citing Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234, 238 (9th Cir. 1987)). NTG provides no precedent to the contrary.

Additionally, the Court notes that NTG cites to the Court's prior order at ECF 891 out of context. There the Court found in considering whether to grant sanctions against NTG for witness tampering, that NTG's investigator's mention of a potential lawsuit against witnesses that Ferrell believed had committed perjury and defamation, was not an entirely frivolous threat amounting to witness tampering because "Ferrell had grounds to believe that the declarations contained inaccuracies, and cannot be deprived of his right to file a lawsuit when he believes he has been wronged." ECF No. 891, 16. That statement says nothing of whether the claims now alleged against Counter-Defendants, are proper, are timely, or have merit in light of the evidence available at the time the declarations at issue were filed. In fact, this Court rejected NTG's request for sanctions against NIC noting that NIC "promptly withdrew its motion for sanctions once NTG filed its opposition and presented evidence that refuted the declarations." Id. at 13. The Court also noted that after reviewing the documents on which NIC based their allegations, "the evidence presented does not show that NIC or its counsel tampered with witness testimony or was aware of the falsehoods contained in the declarations." Id. at 18.

Because the claims are time barred, from an objective perspective, the claims were legally baseless.

      2.    The Noerr-Penington Sham Litigation Exceptions Do Not Apply

NIC also argues that the 2019 predicate acts alleged in the Amended Counterclaims were barred under the Noerr-Pennington doctrine which provides absolute immunity for statutory liability for conduct when petitioning the government for redress. Sosa v. DIRECTV, Inc., 437F.3d 923, 929 (9th Cir. 2006). Immunity under the Noerr-Pennington doctrine includes communications made to the court during the course

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 15-2034 JVS (JCGx) | Date | 8/3/2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

of a lawsuit. Such communications include "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something." Id. at 933.

Noerr-Pennington immunity does not apply to conduct that, although "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere" with the defendant's business practices. Sosa, 437 F.3d at 938. As a result, "'[s]ham' petitions don't fall within the protection of the doctrine." Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1183-84 (9th Cir. 2005). The Ninth Circuit has identified three circumstances when the so-called sham litigation exception applies: "(1) the lawsuit is objectively baseless and the defendant's motive in bringing it is unlawful; (2) the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; or (3) if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." Sosa, 437 F.3d at 936 (internal quotation marks omitted).

The first sham litigation exception "contains both an objective and a subjective component." Freeman, 410 F.3d at 1185. On the first prong, the plaintiff must first show that the lawsuit was "objectively baseless." Id. This requires the plaintiff to show that there is no "probable cause" to support the lawsuit. Id. (quoting Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 62 (1993)). A lawsuit lacks probable cause when "no reasonable litigant could realistically expect success on the merits." UMG Recordings Inc., v. Glob. Eagle Entm't., Inc., 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015) (quoting Prof'l Real Estate Investors, 508 U.S. at 60-61). On the second prong, the plaintiff must show that the defendant brought the lawsuit "with the specific intent to further wrongful conduct through the use of governmental process -- as opposed to the outcome of that process." Nader v. Democratic Nat'l Comm., 567 F.3d 692, 696 (D.C. Cir. 2009).

Given the trajectory and history of this case, the first prong to the Noerr-Pennington does not apply. This Court has applied the crime-fraud exception to NTG's attorney-client correspondence independent of alleged misconduct in the Amended Counterclaims, and NIC has overcome various challenges such as an Anti-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 8/3/2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

SLAPP motion, motion to dismiss, and a motion for summary judgment. See e.g., ECF No. 659, 820, 157, 296. The second prong also does not apply because it pertains to a series of lawsuits and is not relevant here.

NIC argues that NTG has not met the requirements under the third exception because it cannot allege or show that NIC committed a knowing fraud or intentional misrepresentation that deprived the litigation of its legitimacy. Sanc., 8. Specifically because this Court earlier rejected NTG's allegations and concluded that NTG lacked any evidence of impropriety and because none of the predicate acts alleged concern misrepresentations upon which the Court relied. Id., 8-9 (referring to this Court's orders at ECF No. 365, 891). As to the 2019 conduct which as explained is critical for statute of limitation purposes, NIC argues that NTG has no "non-frivolous argument" to invoke the Noerr-Pennington exception. The Court agrees.

The third sham litigation exception applies if unlawful conduct "consists of making intentional misrepresentations to the court." Sosa, 437 F.3d at 938. In such cases, "litigation can be deemed a sham **if** a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." Id. (emphasis added and internal citations and quotations omitted). While the Ninth Circuit has not defined what is a misrepresentation that "deprives the litigation of its legitimacy" a court in this District has noted that it is "apparent that any misrepresentation exception to the doctrine should be limited to misrepresentations respecting the substance of the claim that show that the party's litigation position had no objective basis." Thomas v. Hous. Auth. of Cty. of Los Angeles, No. CV046970MMM(RCX), 2006 WL 5670938, at *9 (C.D. Cal. Feb. 28, 2006). Because the allegedly false declarations that are at the center of the 2019 conduct were promptly withdrawn by NIC when contrary evidence came to light, the Court never relied on the declarations and they never "deprived the litigation of its legitimacy." The declarations cannot be said to have "infected the core" of NIC's claims. See id.; see also Williams v. Jones & Jones Mgmt. Grp., Inc., No. CV 14-2179-MMM JEM, 2015 WL 349443, at *10 (C.D. Cal. Jan. 23, 2015) (finding that conduct that "accessible to all involved" in the litigation could not have deprived the litigation of its legitimacy). Furthermore, in order to overcome Noerr-Pennington protection NTG cannot simply "rehash arguments already addressed by the [Court] . . . to 'recast disputed issues from the underlying litigation as 'misrepresentations' by the other party.'" See Swallow v. Torngren, No. 17-CV-05261-BLF, 2018 WL 2197614, at *10 (N.D. Cal. May 14, 2018), aff'd, 789 F. App'x 610 (9th Cir. 2020).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 15-2034 JVS (JCGx) Date 8/3/2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

      3.      Amended Counterclaim Was Time-Barred Under the Court's Scheduling Order

      Additionally, the Amended Counterclaim was time-barred under the Court's scheduling order as thoroughly discussed above and NTG did not seek leave of court to file its complaint.

* * * * *

      Finally, NTG argues that NIC did not establish that NTG's attorneys did not conduct a reasonable and competent inquiry. However, "when a Rule 11 violation is alleged based solely on legal arguments, a baseless filing will likely itself be evidence that an objectively reasonable inquiry was lacking. When legal arguments are objectively baseless, '[e]ven the most cursory legal inquiry [should] reveal [the deficiency.]'" Lima v. Deutsche Bank Nat. Tr. Co., No. CIV. 12-00509 SOM, 2013 WL 5890662, at *4 (D. Haw. Oct. 30, 2013), aff'd sub nom. Lima v. Deutsche Bank Nat'l Tr. Co., 687 F. App'x 606 (9th Cir. 2017) (citing Holgate v. Baldwin, 425 F.3d 671, 677 (9th Cir. 2005)). In these instances, the two prongs merge and a baseless claim by definition will show the inquiry was not competent and reasonable. See Lima, 2013 WL 5890662, at *4. As explained above, the Amended Counterclaim was legally baseless for a number of reasons. A cursory legal inquiry should have revealed these deficiencies.

      The Court explicitly finds that the Amended Counterclaim was legally "baseless" from an objective perspective for all of the foregoing reasons and that NTG, Ferrell and their attorneys did not conduct a reasonable and competent inquiry before signing and filing it. Therefore, sanctions are warranted. By now Counter-Claimants and counsel should be well familiarized with the Federal Rules of Civil Procedure, relevant precedent, and this Court's scheduling order and deadlines. In an action that has been ongoing since 2015 with more than 1025 docket entries and has been litigated in excess of the value of potential damages, failure to abide by the Court's scheduling order and filings that waste the Court's resources and accrue attorneys fees based on frivolous grounds will not be tolerated. Accordingly, the Court **GRANTS** the motion for sanctions. NTG, Ferrell, and their attorneys shall pay for reasonable attorneys fees incurred by Counter-Defendants in connection with the motion to dismiss, motion to strike, and motion for sanctions. Counter-Defendants shall file a motion and affidavit supporting their reasonable expenses

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-2034 JVS (JCGx) | Date | 8/3/2020 |
|---|---|---|---|
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

and fees incurred **within 20 days**.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion the strike, declines to address the motion to dismiss as **MOOT**, and **GRANTS** the motion for sanctions. Counter-Defendants shall file a supplementary motion concerning the amount of attorneys' fees and costs expended in connection with their motions to dismiss, strike, and for sanctions, within **twenty days**. The Court posted a tentative order and NTG filed a request for a hearing pursuant to the policies set forth by the Court. Having considered the arguments in the briefing (ECF No. 1025, 1026), the request is hereby **DENIED**.

**IT IS SO ORDERED.**

: 0

Initials of Preparer  lmb