Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

NATURAL-IMMUNOGENICS CORP.,

                        Plaintiff,

     v.

NEWPORT TRIAL GROUP, et al.,

                Defendants.

Case No. 8:15-cv-02034-JVS (JCG)

**PLAINTIFF NIC'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UNDER RULE 12(c) ON DEFENDANTS' UNCLEAN HANDS AFFIRMATIVE DEFENSE**

Hearing Date:    October 19, 2020
Time:             1:30PM
Courtroom:      10C
Judge:          Hon. James V. Selna

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................... 1

II.     FACTS AND PROCEDURAL HISTORY ........................................ 4

III.    LEGAL STANDARDS ........................................................................7

IV.     ARGUMENT....................................................................................... 8

    A.   Conduct Which Occurs During the Litigation of a Lawsuit,
        Rather than before the Action, Cannot Form the Basis of an
        Equitable Defense .........................................................................9

    B.   NTG's Unclean Hands Defense Is Impermissibly Based on
        Conduct Protected by the First Amendment .......................................12

    C.   NTG's Unclean Hands Defense Is Not Applicable in Civil RICO
        Actions ....................................................................................18

    D.   The Court Should Sanction NTG for Reasserting Allegations
        Thrice Adjudicated Against Them in this Case .................................19

V.      CONCLUSION ............................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
4
*1-800Contacts, Inc. v. Mem'l Eye, P.A.*, No. 2:08-CV-983, 2010 WL 988524 (D. Utah Mar. 15, 2010) ..........................................................14

5
6
*Adidas Am., Inc. v. TRB Acquisitions LLC*, No. 3:15-CV-2113-SI, 2017 WL 337983 (D. Or. Jan. 23, 2017).............................................10

7
8
*adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029 (D. Or. 2008) .................................................................................2, 13

9
*Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) .................12

10
*Bieter Co. v. Blomquist*, 848 F.Supp. 1446 (D. Minn. 1994) ..................................18

11
12
*Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004 (9th Cir. 2015)..........................................................................................................20

13
14
*CarMax Auto Superstores, Inc. v. Sibley*, 767 F. App'x 462 (4th Cir. 2019) (unpublished)................................................................................19

15
16
*Cortina v. Wal-Mart Stores, Inc.*, No. 13-CV-02054, 2016 WL 4556455 (S.D. Cal. Sept. 1, 2016)................................................................21

17
18
*E.E.O.C. v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167 (E.D.N.Y. 2004) .............................................................................................................9

19
20
*Ellison Educ. Equip., Inc. v. Chen*, No. 02-cv-1184, 2004 WL 3154592 (C.D. Cal. Dec. 21, 2004) ...............................................................10

21
*Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052 (9th Cir. 2005) .............................................................................................................13

22
23
*Fed. Deposit Ins. Corp. v. Dellen*, No. CV 10-4915, 2011 WL 13128983 (C.D. Cal. Sept. 27, 2011) ...........................................................8

24
25
*Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, No. 97-2866-CIV-T-17B, 1999 WL 781812 (M.D. Fla. Sept. 16, 1999)..................18

26
*Foster v. Wilson*, 504 F.3d 1046 (9th Cir. 2007)....................................................20

27
28
*Hugo Neu-Proler Co. v. Local 13 Int'l Longshoremen & Warehouse Union*, 238 F.3d 428 (9th Cir. 2000) (unpublished)............................................19

*In re Bast*, 212 B.R. 499 (Bankr. D. Md. 1997) ............................................13

*In Re National Mortg. Equity Corp. Mortg. Pool Certificates*, 636 F. Supp. 1138 (C.D. Cal. 1986) .............................................................18

*Kasdan v. Cty. of Los Angeles*, No. CV 12-06793, 2014 WL 6669354 (C.D. Cal. Nov. 24, 2014) ..............................................................8

*Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026 (S.D. Cal. 2018).........................10

*Kashyap, LLC v. Nat. Wellness USA, Inc.*, No. CIV.A. CBD-11-459, 2012 WL 115447 (D. Md. Jan. 13, 2012) .........................................21

*Kwok v. Recontrust Co., N.A.*, No. 2:09-CV-2298, 2010 WL 4810704 (D. Nev. Nov. 19, 2010) .............................................................20

*Local 851 v. Kuehne & Nagel Air Freight Inc.*, No. 97 CV 0378, 1998 WL 178873 (E.D.N.Y. Mar. 7, 1998) ....................................18

*Lukas v. Nasco Int'l, Inc.*, 128 F.R.D. 619 (D.N.J. 1989).........................21

*Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944 (C.D. Cal. 1996)...............12

*Maloof v. Level Propane Gasses, Inc.*, 316 F. App'x 373 (6th Cir. 2008)...........................................................................20

*Matter of Caranchini*, 160 F.3d 420 (8th Cir. 1998) ..............................13

*Mayweathers v. Terhune*, 136 F. Supp. 2d 1152 (E.D. Cal. 2001)........................12

*McLaughlin v. Bradlee*, 602 F. Supp. 1412 (D.D.C. 1985), *aff'd,* 803 F.2d 1197 (D.C. Cir. 1986)...............................................19

*McSherry v. City of Long Beach*, 423 F.3d 1015 (9th Cir. 2005), *as amended* (Oct. 27, 2005) ..............................................................8

*Memorex Corp. v. Int'l Bus. Machines Corp.*, 555 F.2d 1379 (9th Cir. 1977)...........................................................................19

*Monster Energy Co. v. Thunder Beast LLC*, No. 18-CV-01367, 2018 WL 6431010 (C.D. Cal. Oct. 22, 2018) .....................................10, 14

*Musacchio v. United State*s, —— U.S. ——, 136 S.Ct. 709, 716, 193 L.Ed.2d 639 (2016).......................................................2, 12

*New York v. Micron Tech., Inc.*, No. C 06-6436, 2009 WL 29883

(N.D. Cal. Jan. 5, 2009) .......................................................................8

*NIC v. NTG et al.*, No. 2:19-mc-00011 (C.D. Cal.) ................................24

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136 (9th Cir. 2013) .............................................................................................13

*Pepper v. United States*, 562 U.S. 476 (2011) ....................................2, 12

*Pierce v. Apple Valley, Inc.*, 597 F. Supp. 1480 (S.D. Ohio 1984) .........10

*Quest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288 (N.D. Cal.2002) ..................................................................................8

*Roma Const. Co. v. aRusso*, 96 F.3d 566 (1st Cir. 1996) ......................18

*S.E.C. v. Cuban*, 798 F. Supp. 2d 783 (N.D. Tex. 2011)..........................9

*S.E.C. v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53 (D. Conn. 1988), *aff'd sub nom. S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir. 1989) ...............9

*Savage v. Council on Am.-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. July 25, 2008), *judgment entered,* No. C 07-6076 SI, 2008 WL 3833501 (N.D. Cal. Aug. 15, 2008) .............8

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981 (9th Cir. 2010)..................................................4

*Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 593 F. Supp. 2d 840 (E.D. Va. 2008)......................................18

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ....................... 13, 15

*Squires Golf Club v. Bank of Am.*, No. CIV.A. 10-6734, 2011 WL 130176 (E.D. Pa. Jan. 13, 2011)................................................20

*Stoller v. Berkshire Hathaway, Inc.*, No. 18-CV-47, 2019 WL 141401 (N.D. Ill. Jan. 9, 2019), *appeal dismissed,* No. 19-1209, 2019 WL 3564552 (7th Cir. Mar. 4, 2019), *and appeal dismissed,* No. 19-1059, 2019 WL 3569772 (7th Cir. Mar. 4, 2019) ...............................9

*Swallow v. Torngren*, No. 17-CV-05261, 2018 WL 2197614 (N.D. Cal. May 14, 2018), *aff'd,* 789 F. App'x 610 (9th Cir. 2020)..................... 16, 17

*Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923, 2007 WL 420184 (N.D. Cal. Feb. 6, 2007)..........................................10

*Thomas v. Hous. Auth. of Cty. of Los Angeles*, No. CV046970, 2006 WL 5670938 (C.D. Cal. Feb. 28, 2006) ........................................................ 15, 16

*Tuck v. Guardian Prot. Servs., Inc.*, No. 15-CV-1376, 2017 WL 1047122 (S.D. Cal. Mar. 20, 2017) ........................................................20

*United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102 (9th Cir. 2001) ........................................................20

*United States v. Nesglo, Inc.,* 744 F.2d 887 (1st Cir. 1984) ................................19

*Virgin Enterprises Ltd. v. Virginic LLC*, No. 19-CV-0220, 2020 WL 1845232 (D. Wyo. Apr. 10, 2020)........................................................14

*White v. Gen. Motors Corp.*, 977 F.2d 499 (10th Cir. 1992)................................19

*White v. Murtha*, 377 F.2d 428 (5th Cir. 1967) ................................ 12, 13

*Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14-2179, 2015 WL 349443 (C.D. Cal. Jan. 23, 2015)........................................................ 15, 16

*X-IT Prod., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577 (E.D. Va. 2001) ........................................................11


**Statutes**

28 U.S.C. § 1927 ........................................................ 3, 19, 20, 24


**Rules**

Fed. R. Civ. P. 11 ........................................................ passim

Fed. R. Civ. P. 11(b) ........................................................20

Fed. R. Civ. P. 11(c)(3) ........................................................20

Fed. R. Civ. P. 12(b)(6) ........................................................ 6, 7, 14

Fed. R. Civ. P. 12(c) ........................................................ passim

Fed. R. Civ. P. 12(f) ........................................................6

Fed. R. Civ. P. 16 ........................................................6

Fed. R. Civ. P. 16(f) ...............................................................................6, 10

Fed. R. Civ. P. 26(a)(1) ...............................................................................23

Fed. R. Civ. P. 26(g) ...................................................................................10

Fed. R. Civ. P. 34 ........................................................................................22

Fed. R. Civ. P. 37 .................................................................................. 10, 23

Fed. R. Civ. P. 45 ........................................................................................22

Fed. R. Evid. 201 ..........................................................................................8

**Constitutional Provisions**

U.S. Const. amend. I ....................................................................................13

Plaintiff Natural Immunogenics Corp. ("NIC") hereby moves under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings over the Defendants' latest "Unclean Hands" defense, which defendants reassert in response to NIC's Fourth Amended Complaint.  *See* Dkt. 1017 at 71 ¶473 (NTG Answer); Dkt. 1016 at 73 ¶473 (Answer by Defendants Knowles, Ryan Ferrell, Dave Reid, and Andrew Baslow); Dkt. 1020 at 79 ¶419 (Answer by Non-NTG Defendants).  For the reasons that follow, this Court should dismiss that defense on the pleadings and impose sanctions.

## I.      **INTRODUCTION**

Defendants reassert an affirmative defense of "Unclean Hands" alleging that Plaintiff NIC's claims are "barred or limited in whole or in part … because Plaintiff has made false claims and solicited and filed false declarations before this Court."  *See* Dkt. 1017 at ¶473.  The factual basis for the defense mirrors the allegations that NTG advanced in Paragraphs 48–84 of its stricken Counterclaims for which the Court imposed Rule 11 sanctions.  *See* Rule 11 Order, Dkt. 1028; *see also* Dkt. 1017 at ¶473 (NTG's unclean hands defense that incorporates by reference Paragraphs 48–94 of the Counterclaims).  In its Rule 11 Order, the Court held that the *Noerr-Pennington* doctrine barred suit over the subject matter of these allegations, and held that NTG had no non-frivolous basis for a *Noerr-Pennington* exception.  *See* Dkt. 1028 at 15.  This Court repeated for a second time that "the evidence presented does not show that NIC or its counsel tampered with witness testimony or was aware of the falsehoods contained in the declarations."  *See id.* at 13 (quoting prior Order in Dkt. 891 at 18).  The Court earlier denied an NTG motion for sanctions, which involved precisely the same allegations now asserted for a third time in NTG's unclean hands defense redux.  *See* Dkt. 891.

From the start of litigation, Defendants have endeavored to defend this case through attacks against NIC and its counsel rather than on the merits of NIC's RICO claims.  Here Defendants' latest unclean hands defense is barred as a matter

of law, and must be dismissed on the pleadings under Rule 12(c) for the following reasons.

First, conduct which occurs during litigation of a lawsuit, rather than leading up to the action, cannot form the basis of an unclean hands equitable defense. *See infra* Section IV(A). The alleged misconduct that supports NTG's reasserted unclean hands defense occurred in 2019 as part of this lawsuit. As a matter of law, that conduct cannot support an unclean hands defense because no nexus exists between the alleged inequitable conduct and the rights forming the basis of NIC's underlying suit. Expanding the equitable defense of unclean hands to permit such retaliatory defenses infringes the First Amendment right to petition.

Second, the alleged conduct is privileged and protected under the First Amendment. This Court earlier ruled that the equitable defense of unclean hands cannot be based on conduct protected by the First Amendment. *See* Dkt. 784 at 12–14 ("The First Amendment applies to Defendants' unclean hands defense[.]"). That finding is the law of the case. *See Musacchio v. United State*s, ––– U.S. –––, 136 S.Ct. 709, 716, 193 L.Ed.2d 639 (2016) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citing *Pepper v. United States*, 562 U.S. 476, 506 (2011)). This Court also ruled that NIC's conduct in 2019 was protected under the *Noerr-Pennington* doctrine—a substantive immunity that protects the First Amendment right to petition. *See* Dkt. 1028 at 13–15. That ruling is also the law of the case. Courts in this Circuit have confirmed that *Noerr-Pennington* bars unclean hands defenses that are based on protected litigation activities. *See infra* Section (IV)(B); *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1079 n.18 (D. Or. 2008). NTG's reassertion of these issues despite this Court's prior orders is contumacious conduct. Because the alleged conduct from 2019 is protected by *Noerr-Pennington*, and NTG has no non-frivolous basis to assert an unclean hands

defense based upon it, the reassertion of it on the heels of a directly applicable Rule 11 sanction constitutes a challenge to the authority of the Court.

Finally, an unclean hands defense is not available in civil RICO lawsuits. *See infra* Section IV(C).  Therefore, at least with respect to NIC's primary RICO claim, this Court would need to dismiss the defense.

NIC asks that this Court issue a suitable sanction taking into account the defendant's failure to heed this Court's prior direction.  The unclean hands defense here is objectively baseless because the conduct supporting NTG's allegations cannot form the basis of an unclean hands defense as a matter of law.  This Court has already ruled that such conduct is protected under *Noerr-Pennington*, and that ruling came within a Rule 11 Order sanctioning NTG and its counsel.  NIC should not have to litigate repeatedly over that settled issue of law.  The Court should award NIC its reasonable attorney fees incurred in litigating these issues yet again, particularly on the heels of this Court's prior Rule 11 sanction that addressed the exact same misconduct.  *See* Dkt. 1028.  The Court should additionally bar defendants from introducing evidence at trial germane to the barred unclean hands defense.

During the parties' conference of counsel, NIC explained that maintenance of the reasserted unclean hands defense was legally untenable, and NIC asked that the defense be withdrawn.  Though fully cognizant at that time of this Court's Rule 11 sanction, NTG refused to withdraw the defense.  *See* Exh. 1.  NTG instead asserted that this Court's Rule 11 Order was not "substantive" but was part of a "procedural" dismissal.  *Id.*  NTG maintained that it was free to reassert in other contexts (here as an unclean hands defense) the very same allegations this Court ruled baseless (which undergirded the stricken Counterclaims that this Court held frivolous and Rule 11-sanctionable). *Compare* Dkt. 1017 at ¶474 *with* Dkt. 980 at ¶¶48-94.

A heightened sanction under 28 U.S.C. § 1927, the Court's inherent powers,

and/or Rule 11 (*sua sponte*) is justified here.  If allowed to proceed, NTG's unclean hands defense would stall this case yet again by requiring additional discovery, and would expand the proceedings to include a bench trial on NTG's otherwise frivolous allegations against NIC's trial counsel.[1]  Those burdens are unjustifiable, particularly this late in the case, and this Court should not countenance NTG's repeated efforts to insinuate back into this case allegations the Court has rejected on multiple occasions.

## II.    FACTS AND PROCEDURAL HISTORY

This Court listed relevant facts and procedure in its two Orders under Dkts. 891 and 1028.  In September 2019, NIC filed a motion for sanctions against Defendant Scott Ferrell, alleging that he had submitted a false declaration.  *See* Dkt. 844.  NIC supported that motion with declarations from three witnesses.  *See* Dkts. 844-3–844-5.  NIC's motion was well-supported by the facts and circumstances then-known to NIC.  Dkt. 891 at 3–9, 18; Dkt. 1000 at 17–23.  In the meet and confer preceding NIC's sanctions motion, when told of the factual recitations supporting NIC's position, NTG was silent as to its reasons for opposing, simply stating that it would oppose the motion and withholding from NIC any reference to evidence then in its possession that called into question NIC's positions.  *See* Dkt. 859 at 12–13; Dkt. 859-2 at ¶¶8–10, 12–13; Dkt. 859-3 at ¶¶3–6, 9; *see also* Dkt. 846.  On September 27, 2019, NTG filed an Opposition brief and there for the first time supplied evidence that reflected on the merits of NIC's motion.  *See* Dkt. 846.  NTG alleged that the three declarations attached to NIC's motion were factually inaccurate.  *See id.* at 13–27.  Upon receipt of the opposition, NIC promptly withdrew its motion for sanctions on the next business

---

[1] The unclean hands defense is tried to the court and not the jury.  *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010) (explaining that equitable defense of unclean hands was for the Court's determination).

1   day.  *See* Dkt. 847.

2           On October 14, 2019, NTG filed a motion seeking sanctions against NIC,

3   the three witnesses, and NIC's counsel.  *See* Dkt. 855.  That motion alleged that

4   NIC's counsel suborned perjury by submitting intentionally false declarations.  *See*

5   *id.*  In opposition, NIC attached communications exchanged among its counsel and

6   the three witnesses leading to NIC's submission of the three declarations under

7   Dkt. 844.  *See* Dkt. 859-4; Dkts. 859-6–859-26.  This Court reviewed that

8   correspondence along with other evidence germane to NTG's request for

9   sanctions; it held that NTG lacked a factual basis for sanctions against NIC and its

10   counsel.  *See* Dkt. 891 at 4–9, 18.  In its February 7, 2020 Order, the Court denied

11   NTG's motion for sanctions on procedural grounds, but also found NTG's

12   allegations factually unsupported, writing:  "The evidence presented does not show

13   that NIC or its counsel tampered with witness testimony or was aware of the

14   falsehoods contained in the declarations.  Furthermore, NTG's arguments

15   regarding 'NIC's pre- and post-filing witness obstruction' also lack merit."  *See*

16   Dkt. 891 at 18.

17           Undeterred, on April 7, 2020, NTG filed Counterclaims against seven new

18   parties, including NIC, its counsel, two of NIC's corporate officers, and three non-

19   party witnesses.  *See* Dkts. 918, 951.  NTG therefore counterclaimed for violation

20   of the RICO Act based, in part, on the same conduct that earlier supported NTG's

21   motion for sanctions.  *Compare* Dkt. 855 *with* Dkt. 951.[2]  NTG alleged yet again

22   that NIC and its counsel suborned perjury on the same factual basis earlier

23   reviewed and found unsupported by the Court.  *See, e.g.*, Dkt. 951 at ¶¶3(b), 36(b),

24   48–91.

25           Those Counterclaims were factually, legally, and procedurally frivolous, as

26   this Court so found.  *See* Dkt. 1028.  NIC and all Counter-Defendants (collectively

27   _____

28           [2] NTG later amended its Counterclaims in response to NIC's draft Rule 11
    motion.  *See* Dkt. 980 (First Amended Counterclaim).

"NIC") filed three motions in response to the frivolous Counterclaims: (1) a
motion to strike under Rules 12(f) and 16(f) [Dkt. 988]; (2) a motion to dismiss
under Rule 12(b)(6) [Dkt. 990]; and (3) a motion for sanctions under Rule 11 [Dkt.
1000]. While NIC's motions were pending, in June 2020, each group of
Defendants filed Answers to NIC's Fourth Amended Complaint ("FAC"). *See*
Dkts. 1016, 1017, 1020. Those Answers asserted a new defense of "unclean
hands" which mirrored the allegations asserted by NTG in its Counterclaims. *See,
e.g.,* Dkt. 117 at ¶473 (First Affirmative Defense). In fact, NTG incorporated
whole sections of its Counterclaims when describing the new unclean hands
defense. *See id.* (citing Dkt. 980 at ¶¶48–94). NTG defines its "unclean hands"
defense as follows:

> [NIC's] claims may be barred or limited in whole or in part by the
> equitable doctrine of unclean hands because Plaintiff has made
> false claims and solicited and filed false declarations before this
> Court. *See, e.g.,* Dkt. 980, ¶¶48–94.

Dkt. 117 at ¶473. The portion of the Counterclaims that NTG cited in its Answer
[Dkt. 980 at ¶¶48–94] includes NTG's allegations that NIC suborned perjury in
September 2019. *See* Dkt. 980 at 15 (alleging that "NIC suborned perjured
declarations from Charlotte Carlberg, MaryAnn Buc, and Jim Buc and then filed
them to request death penalty sanctions from this Court").[3]

On August 3, 2020, this Court granted Counter-Defendants' motions to
strike the Counterclaims and for sanctions under Rule 11. *See* Dkt. 1028.[4] The
Court held NTG's counterclaims barred under Rule 16, substantively barred by the

---

[3] This Court earlier granted NIC summary judgment against all Defendants'
original "unclean hands" defense, and found that NTG failed to raise a genuine
issue of material fact supporting that defense. *See* Dkt. 784. Apparently to avoid
conflict with this Court's prior Order in Dkt. 784, Defendants have limited their
latest unclean hands defense to the alleged conduct occurring in 2019.

[4] The Court found NIC's Rule 12(b)(6) motion moot after having struck the
counterclaims in response to NIC's other motions. *See* Dkt. 1028 at 12.

statute of limitations, and substantively barred by the *Noerr-Pennington* doctrine. *See generally* Dkt. 1028. The Court reiterated that the evidence did not support NTG's allegations against NIC and its counsel. *See* Dkt. 1028 at 13. Relevant here, the Court held that NIC's litigation activities in 2019 were protected by the *Noerr-Pennington* doctrine, and that NTG lacked a non-frivolous basis to invoke an exception to *Noerr*. *See id.* at 13–15. As part of those proceedings, this Court considered in detail whether NIC's alleged conduct from 2019 would fall within the *Noerr-Pennington* doctrine. *See id.* The Court concluded that the conduct was protected:

> As to the 2019 conduct which as explained is critical for statute of limitation purposes, NIC argues that NTG has no "non-frivolous argument" to invoke the *Noerr-Pennington* exception. The Court agrees.

Dkt. 1028 at 15.

Following that Order, on August 7, 2020, NIC inquired as to whether NTG would withdraw the unclean hands defense asserted in its latest Answer. *See* PAA Decl. at ¶2. NIC requested that NTG withdraw the defense, which impermissibly seeks a remedy against NIC's protected litigation activity. *Id.* NTG refused, asserting that the "Court's application of Noerr Pennington on the Rule 11 Order to strike the Counterclaim is not a ruling on the merits." *See* Exh. 1 at 2–3. NIC therefore files this motion for judgment on the pleadings under Rule 12(c), and asks that the Court not only to dismiss the new unclean hands defense but also to impose sanctions.

## III.   **LEGAL STANDARDS**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "[A] Rule 12(c) Motion for Judgment on the Pleadings is identical to the legal standards applied when evaluating a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim." *See New York v. Micron*

*Tech., Inc.*, No. C 06-6436, 2009 WL 29883, at *2 (N.D. Cal. Jan. 5, 2009) (citing *Quest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002)).  A Rule 12(c) motion should be granted if "taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McSherry v. City of Long Beach*, 423 F.3d 1015, 1021 (9th Cir. 2005), *as amended* (Oct. 27, 2005).  Rule 12(c) provides courts with the authority to strike insufficient affirmative defenses.  *See Fed. Deposit Ins. Corp. v. Dellen*, No. CV 10-4915, 2011 WL 13128983, at *1 (C.D. Cal. Sept. 27, 2011); *Savage v. Council on Am.-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, at *2 (N.D. Cal. July 25, 2008), *judgment entered,* No. C 07-6076 SI, 2008 WL 3833501 (N.D. Cal. Aug. 15, 2008).

"When considering a motion on the pleadings, courts may evaluate exhibits submitted or referenced in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201." *Savage*, 2008 WL 2951281, at *2. Courts have relied on the "law of the case" doctrine when granting motions for judgment on the pleadings.  *See, e.g.*, *Kasdan v. Cty. of Los Angeles*, No. CV 12-06793, 2014 WL 6669354, at *4 (C.D. Cal. Nov. 24, 2014).

## IV.    <u>ARGUMENT</u>

The Defendants' reasserted unclean hands defense must be dismissed on the pleadings because the factual allegations supporting it are legally barred.  First, alleged misconduct that occurs during the course of this lawsuit—as opposed to conduct occurring before or leading into litigation—cannot properly support an unclean hands defense as a matter of law.  Second, even were that not the law, the underlying conduct is protected under the *Noerr-Pennington* doctrine, as this Court earlier ruled.  The application of *Noerr-Pennington* is "law of the case."  This Court has held that an unclean hands defense cannot be predicated on conduct protected by the First Amendment.  Dkt. 784 at 13–14.  Finally, even without those dispositive legal bars, the unclean hands defense is inapplicable in RICO

proceedings.  For those reasons, as explained more fully below, no reasonable attorney would maintain NTG's reasserted Unclean Hands defense, particularly following the Rule 11 sanctions.  Accordingly, NIC requests that this Court dismiss Defendants' reasserted unclean hands defense and impose appropriate sanctions for this act of contumacy which needlessly forces expenditure of the Court's and the party opponent's time and resources.

### A.   Conduct Which Occurs During the Litigation of a Lawsuit, Rather than before the Action, Cannot Form the Basis of an Equitable Defense

Defendants argue that NIC's conduct within this lawsuit constitutes inequitable conduct amounting to unclean hands.  *See* Dkt. 1016 at ¶473; Dkt. 1017 at ¶473.  That argument is legally infirm.  "[T]he doctrine of unclean hands only applies to conduct concerning the subject matter of litigation, not the conduct of litigation."  *Stoller v. Berkshire Hathaway, Inc.*, No. 18-CV-47, 2019 WL 141401, at *3 (N.D. Ill. Jan. 9, 2019), *appeal dismissed,* No. 19-1209, 2019 WL 3564552 (7th Cir. Mar. 4, 2019), *and appeal dismissed,* No. 19-1059, 2019 WL 3569772 (7th Cir. Mar. 4, 2019).

Courts have consistently ruled that conduct occurring within litigation— after litigation has been initiated—is not properly subject to an unclean hands defense.  *See, e.g., S.E.C. v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 73 (D. Conn. 1988), *aff'd sub nom. S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir. 1989).  "The defenses of unclean hands and inequitable conduct apply only where there is a direct nexus between the misconduct and the right which is the basis of the suit."  *Id.* (collecting cases).  Thus, "[c]onduct which occurs during the litigation of a lawsuit, rather than during the accrual of the action, cannot form the basis of an equitable defense."  *Id.; see also E.E.O.C. v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 173 (E.D.N.Y. 2004) (same); *S.E.C. v. Cuban*, 798 F. Supp. 2d 783, 792 (N.D. Tex. 2011) (same); *Pierce v. Apple Valley, Inc.*, 597 F. Supp. 1480, 1485–86 (S.D.

Ohio 1984) (same).  The court in *Pierce* explained the rationale underlying this rule:

> [T]he Court concludes that any misconduct by the government during the administrative or litigation stages of this controversy cannot bar it from equitable relief by virtue of unclean hands. Such conduct lacks the required nexus with the equitable right that the government seeks to enforce. Rather than being related to the plaintiff's acquisition of the right he seeks to enforce, this alleged misconduct is related to the process through which the plaintiff seeks to enforce its right. In addition, because the defendants have protections under the Equal Access to Justice Act, 5 U.S.C. § 504, and Federal Rules of Civil Procedure 16(f), 26(g) and 37 against unreasonable conduct by the government, there appears to be little reason to expand the unclean hands doctrine beyond its traditional limits.

*Pierce*, 597 F. Supp. at 1485–86; *see also Adidas Am., Inc. v. TRB Acquisitions LLC*, No. 3:15-CV-2113-SI, 2017 WL 337983, at *8 (D. Or. Jan. 23, 2017) (dismissing unclean hands defense based on alleged misrepresentations to Court in trademark action because "[t]hese are all actions related to Plaintiff's enforcement of its trademark and thus are unrelated to 'getting or using' that trademark."); *Monster Energy Co. v. Thunder Beast LLC*, No. 18-CV-01367, 2018 WL 6431010, at *3 (C.D. Cal. Oct. 22, 2018) ("Because Plaintiff's filing of this lawsuit cannot give rise to an unclean hands defense, the Court finds that this defense is insufficient[.]").

Moreover, Courts have applied that same reasoning to conclude that discovery misconduct cannot form the basis of an unclean hands defense.  *See Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026, 1038 (S.D. Cal. 2018) (collecting authorities).  This Court similarly held in 2004 that an unclean hands defense is not the proper mechanism to challenge litigation conduct.  *See Ellison Educ. Equip., Inc. v. Chen*, No. 02-cv-1184-JVS, 2004 WL 3154592, at *20 (C.D. Cal. Dec. 21, 2004) (Selna, J.); *see also Kaseberg*, 360 F.Supp.3d at 1038; *Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923, 2007 WL 420184, at *5 (N.D. Cal. Feb. 6, 2007) ("Courts have repeatedly held … that a defense of unclean

1    hands may not be based on discovery misconduct.").

2            The Eastern District of Virginia reached a similar conclusion under

3    circumstances similar to those in this case:

> With respect to Kidde's allegation that X–IT has engaged in litigation misconduct, including numerous discovery failures and frauds, the Court finds that the appropriate remedy is for Kidde to file a motion to compel and/or a motion for sanctions in this Court. Indeed, Kidde has already filed both such motions with the Court. Not surprisingly, X–IT likewise has filed a motion to compel and a motion for sanctions with the Court. The procedures and remedies available in the Federal Rules of Civil Procedure were specifically designed to apply to a case such as this in which the parties dispute anything and everything. As Kidde has alternative remedies available to it with regard to X–IT's alleged litigation conduct, the Court **STRIKES** Kidde's unclean hands argument in so far as it relates to alleged litigation misconduct only.

*X-IT Prod., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 601 (E.D. Va. 2001).

        As in the *X-IT Prod.* case, here NTG has already filed a motion for sanctions concerning the same underlying conduct.  *See* Dkt. 855.  This Court denied that motion.  *See* Dkt. 891.  NTG thereafter filed Counterclaims based on the same underlying conduct.  *See* Dkts. 951, 980.  This Court struck those counterclaims and issued Rule 11 sanctions.  *See* Dkt. 1028.  Now a third time NTG pursues the very same conduct, this time as an unclean hands affirmative defense.  All of the conduct supporting the unclean hands defense relates to alleged litigation misconduct in this case, and occurred more than four years into litigation in 2019. For the reasons the Court listed twice before, and because this form of "litigation misconduct" cannot legally support an unclean hands defense, the Court should dismiss that defense now.

**B.  NTG's Unclean Hands Defense Is Impermissibly Based on Conduct Protected by the First Amendment**

This Court earlier ruled that conduct protected by the First Amendment cannot be the basis for an unclean hands defense.  *See* Dkt. 784 at 12–14.  That ruling is law of the case.  In February 2019, this Court dismissed NTG's original unclean hands defense.  *See* Dkt. 784.  That defense was based, in part, on public statements posted online regarding a matter of public importance.  The Court ruled that, "The First Amendment applies to Defendants' unclean hands defense." *Id.* at 12–13.  "Courts may take no adverse action predicated on speech unless it is within a category not protected by the First Amendment." *Id.* at 13.  The Court "[saw] no reason why, if the First Amendment acts as a defense to a cause of action, it cannot also act to defeat an affirmative defense." *Id.* (citing cases that "support the conclusion that the limits of the First Amendment apply to the equitable defense").  This Court therefore held "that an unclean hands defense does not apply to activity protected by the First Amendment." *Id.* at 14.

Law of the case is a prudential doctrine directing that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (quoting *Musacchio*,136 S.Ct. at 716) (citing *Pepper*, 562 U.S. at 506).  The law of the case doctrine covers matters decided "explicitly or by necessary inference from the disposition of the issues." *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 949 (C.D. Cal. 1996) (citation and quotation omitted).  The parties adherence to the law of the case doctrine is expected and may only be departed in the narrow circumstance where there is "substantially different evidence, a change in controlling authority or the need to correct a clearly erroneous decision which would work a manifest injustice." *See Mayweathers v. Terhune*, 136 F. Supp. 2d 1152, 1154 (E.D. Cal. 2001) (citing *White v. Murtha*, 377 F.2d 428, 431–432 (5th Cir. 1967)).  There are no such factors at issue here as would justify any reasonable attorney from

departing from this Court's orders.[5]

The *Noerr-Pennington* doctrine provides an immunity for parties engaging in First Amendment-protected petitioning activities.  *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006) (noting that *Noerr-Pennington* "is based on and implements the First Amendment right to petition"); *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) ("*Noerr–Pennington* is a label for a form of First Amendment protection"); *Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005) (same). "The *Noerr–Pennington* doctrine protects the First Amendment 'right of the people ... to petition the Government for a redress of grievances.'" *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1138–39 (9th Cir. 2013) (citing U.S. Const. amend. I).  Accordingly, a finding that conduct is protected under *Noerr-Pennington* establishes that such conduct is protected under the First Amendment.

For that reason, and consistent with this Court's earlier ruling [Dkt. 784 at 13–14], Courts have dismissed "unclean hands" defenses and other equitable defenses predicated on litigation activities protected under *Noerr-Pennington*.  *See adidas-Am.*, 546 F. Supp. 2d at1079 n.18 ("To the extent that Payless' unclean hands/trademark misuse-antitrust defenses are premised upon adidas' aggressive trademark enforcement efforts, those claims are barred under the *Noerr-Pennington* doctrine."); *Monster Energy Co.*, 2018 WL 3357532, at *4 ("Defendant's defense is based on Plaintiff's filings with the USPTO and the courts, which are protected under the *Noerr-Pennington* doctrine"); *Monster*

---

[5] Regardless of whether a Rule 11 Order is deemed "on the merits," a litigant is precluded from relitigating substantive issues resolved by the Court in a prior Rule 11 order. *See, e.g., Matter of Caranchini*, 160 F.3d 420, 424 (8th Cir. 1998) ("Caranchini next argues that her due process rights were violated because the district court did not grant her a hearing to dispute the facts established in earlier litigation. The facts were proved in Rule 11 sanction proceedings."); *In re Bast*, 212 B.R. 499, 505 (Bankr. D. Md. 1997) (explaining that doctrine of collateral estoppel prevented debtor from relitigating Rule 11 determination that debtor acted wrongfully and without just cause in prior lawsuit).

*Energy Co. v. Thunder Beast LLC*, No. 18-CV-01367, 2018 WL 6431010, at *3 (C.D. Cal. Oct. 22, 2018) ("Here the trademark misuse defense is directed at Plaintiff's conduct in filing this action, so it is subject to dismissal under *Noerr-Pennington*"); *Virgin Enterprises Ltd. v. Virginic LLC*, No. 19-CV-0220, 2020 WL 1845232, at *8 (D. Wyo. Apr. 10, 2020) (rejecting antitrust affirmative defense which attached to petitioning conduct protected by *Noerr-Pennington*); *1-800Contacts, Inc. v. Mem'l Eye, P.A.*, No. 2:08-CV-983, 2010 WL 988524, at *6 (D. Utah Mar. 15, 2010) ("Consequently, the Court finds that Plaintiff's claim is not baseless and, it is therefore, protected by *Noerr–Pennington* immunity. Based on this conclusion, the Court will grant Plaintiff's motion to dismiss the … parallel affirmative defense twenty-five.").

An unclean hands defense that targets protected litigation activity would require the Court to act against a litigant for exercising a constitutionally protected right to petition.  The defense would therefore invite infringement of constitutionally protected rights in conflict with *Noerr-Pennington* and the First Amendment.  For those reasons, and consistent with the precedent (and this Court's prior orders), the Defendants' latest unclean hands defense must fail under the *Noerr-Pennington* doctrine.

On August 3, 2020, this Court ruled that NIC's conduct in 2019 was protected by the *Noerr-Pennington* doctrine.  *See* Dkt. 1028 at 13–15.  *See* Dkt. 1028 at 15 ("As to the 2019 conduct [*i.e.*, the alleged subornation of perjury animating Defendants' unclean hands defense] … NIC argues that NTG has no 'non-frivolous argument' to invoke the *Noerr-Pennington* exception.  The Court agrees.").  This issue was subject to extensive briefing before the Court.  NTG presented its position on the *Noerr* exceptions in no less than three briefs, which included argument under the Rule 12(b)(6) standards.  *See* Dkt. 1003 at 18–25; Dkt. 1005 at 14–20; Dkt. 1025 at 6.  In its August 3rd Order [Dkt. 1028], the Court made substantive rulings regarding *Noerr-Pennington*.  *See* Dkt. 1028 at 13–15.

1   The Court rejected NTG's argument for application of the third "sham" exception

2   under *Noerr*.  *Id.*  The Court's decision on that issue is the law of the case, and

3   should be applied again here.

4       Even if the law of the case doctrine did not apply, the Court nonetheless

5   correctly applied the governing precedent and properly concluded that none of the

6   *Noerr-Pennington* exceptions apply.  Addressing the identical conduct now at issue

7   under NTG's reasserted unclean hands defense, the Court reasoned as follows:

9       As to the 2019 conduct which as explained is critical for statute of
10  limitation purposes, NIC argues that NTG has no "non-frivolous
    argument" to invoke the *Noerr-Pennington* exception. The Court
11  agrees.

12      The third sham litigation exception applies if unlawful conduct
13  "consists of making intentional misrepresentations to the court."
    *Sosa*, 437 F.3d at 938. In such cases, "litigation can be deemed a
14  sham if a party's knowing fraud upon, or its intentional
    misrepresentations to, the court deprive the litigation of its
15  legitimacy." *Id.* (emphasis added and internal citations and
    quotations omitted). While the Ninth Circuit has not defined what
16  is a misrepresentation that "deprives the litigation of its
17  legitimacy" a court in this District has noted that it is "apparent
    that any misrepresentation exception to the doctrine should be
18  limited to misrepresentations respecting the substance of the claim
19  that show that the party's litigation position had no objective
    basis." *Thomas v. Hous. Auth. of Cty. of Los Angeles*, No.
20  CV046970MMM(RCX), 2006 WL 5670938, at *9 (C.D. Cal. Feb.
21  28, 2006). Because the allegedly false declarations that are at the
    center of the 2019 conduct were promptly withdrawn by NIC when
22  contrary evidence came to light, the Court never relied on the
23  declarations and they never "deprived the litigation of its
    legitimacy." The declarations cannot be said to have "infected the
24  core" of NIC's claims. *See id.*; *see also Williams v. Jones & Jones
25  Mgmt. Grp., Inc.*, No. CV 14-2179-MMM JEM, 2015 WL 349443,
    at *10 (C.D. Cal. Jan. 23, 2015) (finding that conduct that
26  "accessible to all involved" in the litigation could not have
27  deprived the litigation of its legitimacy). Furthermore, in order to
    overcome *Noerr-Pennington* protection NTG cannot simply
28

1
2
3
4

"rehash arguments already addressed by the [Court] . . . to 'recast disputed issues from the underlying litigation as 'misrepresentations' by the other party.'" *See Swallow v. Torngren*, No. 17-CV-05261-BLF, 2018 WL 2197614, at *10 (N.D. Cal. May 14, 2018), *aff'd,* 789 F. App'x 610 (9th Cir. 2020).

5
6
7
8
9
10
11

Dkt. 1028 at 15.  As with its Counterclaims, so too here NTG's unclean hands defense is predicated on the same allegations that NIC and its counsel suborned perjury by filing intentionally false declarations before this Court in 2019.  *See* Dkt. 1017 at ¶473 (incorporated by reference Dkt. 980 at ¶¶48–94).  However, that alleged conduct, albeit factually baseless, is nonetheless protected under *Noerr-Pennington* because it relates to petitioning activity, to wit, the filing of motion papers and supporting declarations directly with the Court.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

The third "sham" exception under *Noerr-Pennington* does not apply because NIC's alleged conduct did not infect the core of NIC's underlying lawsuit.  First, NIC promptly withdrew the papers before the Court acted on that submission.  *See* Dkt. 847; *see also* Dkt. 852 (denying NTG request for order to show cause as moot because NIC withdrew underlying Motion); Dkt. 891 (noting that "NIC promptly withdrew its motion for sanctions once NTG filed its opposition and presented evidence that refuted the declarations."); Dkt. 1028 at 15 (holding that NTG lacked a non-frivolous argument that NIC's conduct fell within an exception to *Noerr-Pennington* immunity, in part, because "the allegedly false declarations that are at the center of the 2019 conduct were promptly withdrawn by NIC when contrary evidence came to light").  As a matter of law, the Court could not have relied on NIC's submission in Dkt. 844, and that filing did not influence the proceeding in any material way.  *See* Dkt. 1028 at 15 (citing *Thomas*, 2006 WL 5670938, at *9; *Williams*, 2015 WL 349443, at *10; *Swallow*, 2018 WL 2197614, at *10).  Where the submission has no effect on the proceedings, and is not relied on by the Court, the conduct cannot "deprive the litigation of its legitimacy."  *See id.*

28

Moreover, the alleged misconduct also came to light during this instant

proceeding, and was then fully litigated before this Court.  NTG filed a motion for sanctions that raised the same frivolous allegations against NIC.  *See* Dkt. 855. This Court denied that motion finding no evidence to support NTG's accusations against NIC and its counsel.  *See* Dkt. 891.  NTG then filed Counterclaims based specifically on that same conduct, which Counterclaims the Court struck and imposed Rule 11 sanctions.  *See* Dkt. 980 at ¶¶48–94.  The third *Noerr* exception is not met where alleged misconduct comes to light during the instant litigation.  *See* Dkt. 1028 at 15 (citing *Swallow*, 2018 WL 2197614, at *10).  Such conduct would not "deprive the litigation of its legitimacy" because the presiding Court is afforded a full opportunity to adjudicate those concerns.

Here, the evidence also contradicted NTG's attacks on opposing counsel. NIC submitted the communications exchanged with witnesses leading up to their declarations in September 2019.  *See* Dkt. 859-4; Dkts. 859-6–859-26.  This Court reviewed that correspondence and concluded that NTG lacked evidence showing that NIC or its counsel had knowledge of any impropriety.  *See* Dkt. 859 at 4–9. NIC disputes that any impropriety occurred.  This issue has appeared multiple times before this Court since September 2019 and, each time, adjudicated against the very position that NTG now reasserts as the basis for its unclean hands defense. "[I]n order to overcome *Noerr-Pennington* protection NTG cannot simply 'rehash arguments already addressed by the [Court] … to 'recast disputed issues from the underlying litigation as 'misrepresentations' by the other party.'"  Dkt. 1028 at 15 (citing *Swallow*, 2018 WL 2197614, at *10).

For the same reasons this Court earlier concluded that the *Noerr-Pennington* doctrine barred action against NTG's conduct in 2019, it should similarly conclude that *Noerr-Pennington* bars action here on NTG's reasserted unclean hands defense.

### C.   NTG's Unclean Hands Defense Is Not Applicable in Civil RICO Actions

The majority of Courts have held the unclean hands defense inapplicable in civil RICO claims.[6] *See, e.g., Bieter Co. v. Blomquist*, 848 F.Supp. 1446 (D. Minn. 1994); *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 593 F. Supp. 2d 840, 847 (E.D. Va. 2008) ("it is persuasive that 'an overwhelming majority' of district courts . . . have concluded that 'the defense of unclean hands is not available in civil RICO actions'"); *In Re National Mortg. Equity Corp. Mortg. Pool Certificates*, 636 F. Supp. 1138, 1156 (C.D. Cal. 1986) (holding that unclean hands defense is inapplicable in civil RICO case); *see also Local 851 v. Kuehne & Nagel Air Freight Inc.*, No. 97 CV 0378, 1998 WL 178873 (E.D.N.Y. Mar. 7, 1998) (adopting reasoning of *Bieter* and *In re Nat'l Mortgage Equity Corp*); *Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, No. 97-2866-CIV-T-17B, 1999 WL 781812 (M.D. Fla. Sept. 16, 1999) (granting motion to strike unclean hands affirmative defense to RICO claim); *cf. Roma Const. Co. v. aRusso*, 96 F.3d 566, 581 (1st Cir. 1996) (Lynch, J., concurring) ("I would reject the proposition, urged by defendants, that an absolute *in pari delicto* defense is embedded in RICO.  In construing the language of RICO, the Supreme Court has looked to precedent under the Clayton Act,… [the Supreme Court] explicitly rejected the existence of an *in pari delicto* defense under the Clayton Act… an 'unclean hands' defense would seem to be unavailable, as it is not a defense to an antitrust treble damage action.").

Because antitrust precedent is considered persuasive in the RICO context, the majority rule is consistent with the federal courts' rejection of unclean hands in

---

[6] NIC raised this issue in briefing before this Court leading to the Order in Dkt. 784.  This Court did not reach the issue because it found, instead, that NTG's defense lacked support.  *See* Dkt. 784 at 16 n.7 ("Because NIC's motion for summary adjudication is granted in full based on the above analysis, the Court need not address NIC's arguments that the unclean hands defense is inapplicable to NIC's claims or that the Court should decline to apply Defendants' unclean hands defense as a matter of public policy.").

the anti-trust context.  *See Memorex Corp. v. Int'l Bus. Machines Corp.*, 555 F.2d 1379, 1381 (9th Cir. 1977).  This Court should adhere to the majority view and hold the defense inapplicable in civil RICO.  All defendants exclusively in this case under the RICO statute may not assert the defense and, so, this Court must dismiss that defense as to those individuals, including Non-NTG Defendants Sam Schoonover, Sam Pfleg, Matthew Dronkers, and Taylor Demulder.  Furthermore, this Court must dismiss that defense in its entirety to the extent Defendants apply that theory to the RICO counts.

### D.   The Court Should Sanction NTG for Reasserting Allegations Earlier Adjudicated Against Them in this Case

The Court may enter sanctions under its inherent powers against a party that repeatedly seeks to relitigate settled issues in contumacious disregard of its prior orders.  *See White v. Gen. Motors Corp.*, 977 F.2d 499, 502 (10th Cir. 1992) ("The offending party's litigation history is one factor which the court may consider in determining an appropriate Rule 11 sanction."); *CarMax Auto Superstores, Inc. v. Sibley*, 767 F. App'x 462, 464 (4th Cir. 2019) (unpublished) ("A district court may sanction a party for attempting to relitigate issues already decided by the court."); *McLaughlin v. Bradlee*, 602 F. Supp. 1412, 1417 (D.D.C. 1985), *aff'd,* 803 F.2d 1197 (D.C. Cir. 1986) ("The imposition of sanctions is one of the few options available to a court to deter and punish people who relitigate cases hopelessly foreclosed."); *see also Hugo Neu-Proler Co. v. Local 13 Int'l Longshoremen & Warehouse Union*, 238 F.3d 428 (9th Cir. 2000) (unpublished) ("raising a sanction award based on an attorney's status as a repeat offender would be well within the district court's discretion, … and accords with Rule 11's overriding purpose of deterrence.").

This Court can enter those sanctions under 28 U.S.C. § 1927 in light of the party's vexatious pursuit of baseless positions.  *See United States v. Nesglo, Inc.*, 744 F.2d 887, 891 (1st Cir. 1984) (affirming award of § 1927 sanctions, in part,

because party had "no right to relitigate the well-settled issue."); *Squires Golf Club v. Bank of Am.*, No. CIV.A. 10-6734, 2011 WL 130176, at *5 (E.D. Pa. Jan. 13, 2011) (awarding § 1927 sanction for a party seeking to "relitigate an issue of fact decided adversely to Squires in the prior action."); *Maloof v. Level Propane Gasses, Inc.*, 316 F. App'x 373, 377 (6th Cir. 2008) (affirming §1927 sanctions where party's filing represented a "third attempt" at seeking similar relief originally rejected by Bankruptcy Court).

A District Court can also issue Rule 11 sanctions *sua sponte*. *See* Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."); *Foster v. Wilson*, 504 F.3d 1046, 1053 (9th Cir. 2007) ("A district court may impose sanctions sua sponte."); *Tuck v. Guardian Prot. Servs., Inc.*, No. 15-CV-1376, 2017 WL 1047122, at *2 (S.D. Cal. Mar. 20, 2017) ("While Defendant does not move for sanctions on this basis, the Court admonishes Plaintiff that similar actions in the future may result in the Court sua sponte imposing sanctions pursuant to Federal Rule of Civil Procedure 11(c)(3)."); *Kwok v. Recontrust Co., N.A.*, No. 2:09-CV-2298, 2010 WL 4810704, at *2 (D. Nev. Nov. 19, 2010) ("Even if no motion for sanctions is made, Rule 11(c)(3) of the Federal Rules of Civil Procedure empowers the court to impose sanctions sua sponte."); *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1116 (9th Cir. 2001).

Under Section 1927, the Court may issue a sanction against one "who so multiplies the proceedings in any case unreasonably and vexatiously[.]" *See Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (citing 28 U.S.C. § 1927). The Courts "have held that [b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument ...." *Id.* Such knowledge can be inferred here where this Court already held in Dkt. 1028 that NTG lacked any non-frivolous argument to invoke an exception to the *Noerr-Pennington* doctrine. *See* Dkt. 1028 at 15 ("NIC argues that NTG has no 'non-

frivolous argument' to invoke the *Noerr-Pennington* exception.  The Court agrees.").  "Recklessness may be present when an attorney continues to pursue a claim after it becomes clear that the claim lacks legal or factual support." *Cortina v. Wal-Mart Stores, Inc.*, No. 13-CV-02054, 2016 WL 4556455, at *3 (S.D. Cal. Sept. 1, 2016) (collecting authorities).  That standard of recklessness is here satisfied because this Court has already sanctioned NTG and its counsel under Rule 11 for pursuing the same allegations, found that those allegations target protected activities under *Noerr*, and found NTG's factual allegations against NIC and its counsel baseless.  *See* Dkt. 1028.  NTG's new unclean hands defense proceeds in disregard of this Court's prior Rule 11 Order.  Defendants' position multiplies these proceedings in violation of Section 1927.

A party's failure to acknowledge the court's authority as expressed in its prior decisions can also justify Rule 11 sanctions.  *See, e.g., Lukas v. Nasco Int'l, Inc.*, 128 F.R.D. 619, 623 (D.N.J. 1989) (explaining that the plaintiffs' motion "could not have been filed with a good faith belief, by objective standards, in its well-groundedness in fact or law, as required by Rule 11, because the motion ignored the established law of the case"); *Kashyap, LLC v. Nat. Wellness USA, Inc.*, No. CIV.A. CBD-11-459, 2012 WL 115447, at *3 (D. Md. Jan. 13, 2012).  Moreover, the Ninth Circuit has upheld sanctions for claims that target clearly protected litigation activities under *Noerr-Pennington*.  *See Ferguson v. Waid*, 798 F. App'x 986, 988 (9th Cir. 2020) (unpublished) (upholding Rule 11 sanction for pursuing a claim that was "immunized under the *Noerr-Pennington* doctrine" where litigant did not "plausibly allege application of the sham exception").

At a minimum, NIC asks this Court to award NIC's reasonable fees in pursuing this Motion on grounds that (1) the unclean hands defense targets clearly protected litigation activities under *Noerr-Pennington* and is thus objectively baseless; (2) NTG's defense is based on the same factual allegations already deemed sanctionable under this Court's prior order in Dkt. 1028; and (3) the

defense results in delay and expansion of this case beyond reasonable proportion nearly five years into litigation and just months before trial. *See Ferguson*, 798 F.App'x at 988.

Following this Court's Rule 11 Sanctions Order, NTG refused to withdraw its unclean hands defense which depends on the same conduct the Court in Dkt. 1028 ruled protected by *Noerr-Pennington* after full briefing on the issue. NTG's refusal to withdraw that defense necessitated the filing of this motion. NTG has also argued that this Court's substantive rulings in its Rule 11 Sanctions Order were merely "procedural," thus creating no bar to NTG re-litigating *ad nauseam* the same substantive legal positions rejected by this Court. *See* Dkt. 1032 at 6.

NIC's intent is not to burden this Court with repeated requests for sanctions. But Defendants' latest unclean hands defense again attempts to derail this litigation, and challenges the authority of this Court to have its orders followed. No reasonable party would mistake this Court's holdings in the Rule 11 Sanctions Order as an invitation to reassert the same allegations and legal issues.

NTG's intent to sidetrack this case with attacks on NIC and its counsel is evident and part of a pattern. In just one recent example, this Court permitted NTG to take limited discovery regarding three declarations, with a primary focus on exploring witness credibility. *See* Dkt. 891 at 18 (granting motion for discovery into three witness statements because "evidence pertaining to their credibility would certainly be relevant for trial."). NTG responded to that Order by serving nearly 500 document requests across seven (7) Rule 45 subpoenas, and a new set of Rule 34 requests to NIC. That included subpoenas on NIC's counsel and individual staff members working in the firm. *See* Dkt. 981 at 54–55. NTG subpoenaed the attorneys and staff members' personal phone records, and demanded production of thousands of documents from NIC counsel's litigation file, including counsel's internal work product and attorney-client privileged emails exchanged during this case. *Id.* (citing exhibits). The inevitable dispute

over privileges led NTG to pursue a Local Rule 37-1 motion to compel spanning nearly 1,000 pages of briefing and exhibits.  *See* Dkt. 981.

This Court later denied NTG additional discovery in this case, citing NTG's propensity for "misconduct":

> The days of proportional discovery requests here have long expired.  NTG's discovery request is not proportional given the amount of discovery that has already taken place in this action… Furthermore, given the history of misconduct and excessive discovery in this action, there is a high probability that granting any further discovery here will result in more of the same.

*See* Dkt. 1030 at 7.  In that context, when evaluating the propriety of NTG's new unclean hands defense here, the Court should apply its prior orders holding that NIC's alleged 2019 conduct was protected under *Noerr-Pennington*, but also holding that the new allegations would broadly and unduly expand this lawsuit. *See* Dkt. 1028 at 8–12.

The Court should factor its two prior orders citing the lack of evidence indicating that NIC counsel acted improperly.  *See* Dkts. 891, 1028.  This Court should also consider the expansion of this case resulting from NTG's tactics.  NTG has yet again looked to derail this case by introducing a reasserted unclean hands defense nearly five years into litigation.  Recently on August 18, 2020, NTG served "supplemental" Rule 26(a)(1) disclosures containing the names of twelve witnesses, which included NIC's counsel as potential witnesses.  *See* Exh. 2 at 1–3. NTG also disclosed hundreds of new documents, which included new witness declarations.  *See* PAA Decl. at ¶5.  A significant portion of that material appears relevant to NTG's reasserted unclean hands defense.  If that defense remains, NIC must be permitted discovery, which would almost certainly delay trial in this case yet again and pad the already taxed docket.

NTG has exhibited a significant pattern of sanctionable conduct which challenges the authority of this Court to have its orders obeyed.  This Court, the

Special Master, and the Ninth Circuit have issued at least six fee awards against NTG in this case, and each has found that NTG pursued baseless positions. *See, e.g.,* Dkt. 659 at 8; Dkt. 130; Dkt. 241 at 17-18; Dkt. 284; Dkt. 525; Dkt. 559; Dkt. 799 (Ninth Circuit fee award); Dkt. 853; Dkt. 1028; *NIC v. NTG et al.*, No. 2:19-mc-00011 (C.D. Cal.), Dkts. 84, 90.  By reasserting baseless defenses against protected litigation activities, NTG reveals its intent to continue undeterred even by Rule 11.

NIC requests an order awarding reasonable attorney fees in pursuit of this motion.  NIC also requests an order barring NTG from introducing evidence at trial regarding the barred unclean hands defense.

## V.    **CONCLUSION**

For the foregoing reasons, NIC respectfully requests that this Court grant NIC's Rule 12(c) motion and dismiss the Defendants' latest unclean hands defense.  The defense is not properly pled because it relies on conduct occurring within this lawsuit rather than conduct preceding NIC's claim.  Moreover, the conduct supporting NTG's defense is barred from litigation by the *Noerr-Pennington* doctrine, a ruling made earlier by this Court, which NTG refuses to honor and follow.  NIC asks this Court to take all steps necessary to deter NTG from pursuing its baseless positions further in this litigation by issuing an appropriate sanction under Section 1927, the Court's inherent powers, and/or Rule 11 which, at a minimum, ought to include an award of attorney fees and costs associated with the bringing of this motion and order excluding these allegations from trial.

/ / /

/ / /

1  DATED:  September 21, 2020.

2

3                                    Respectfully submitted,

4                                    EMORD & ASSOCIATES, PC.

5

6                                    By:    */s/ Peter A. Arhangelsky*

7                                    Peter A. Arhangelsky, Esq. (SBN 291325)
                                     Joshua S. Furman, Esq. (pro hac vice)
8                                    *Attorneys for Plaintiff Natural*
                                     *Immunogenics Corp.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2020 the foregoing, **PLAINTIFF NIC'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UNDER RULE 12(c) ON DEFENDANTS' UNCLEAN HANDS AFFIRMATIVE DEFENSE** was electronically filed via the CM/ECF system and sent by that system to the following:

Brendan M. Ford [*bford@forddiulio.com*]
Kristopher P. Diulio [*kdiulio@forddiulio.com*]
Ford & Diulio PC
650 Town Center Drive, Suite 760
Costa Mesa, California 92626
Tel: (714) 450-6830
*Attorney Defendants Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover, Matthew Dronkers, Taylor Demulder, Sam Pfleg*

David J. Darnell, Esq. [*ddarnell@callahan-law.com*]
Edward Susolik, Esq. [*es@callahan-law.com*]
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA  92707
Tel:  (714) 241-4444
*Attorneys for Newport Trial Group and Scott Ferrell*

Nicole Whyte [*nwhyte@bremerwhyte.com*]
Benjamin Price [*bprice@bremerwhyte.com*]
Kyle A. Riddles [*kriddles@bremerwhyte.com*]
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000
*Attorneys for Defendants Ryan Ferrell, Andrew Baslow, David Reid, and*
*Victoria Knowles*

*/s/ Peter A. Arhangelsky*
Peter A. Arhangelsky, Esq.