UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-02034-JVS-JCGx | Date | Oct. 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl/Rolls Royce Paschal | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] <u>Order Regarding Motion for Attorneys' Fees</u>**

In response to the Court's August 3rd, 2020 Order (Dkt. No. 1028) granting Natural-Immunogenics Corporation's ("NIC") motion for sanctions against Newport Trial Group ("NTG"), NIC filed its Motion for Attorneys' Fees on August 24, 2020. Mot. Dkt. No. 1033. NTG opposed. Dkt. No. 1038. NIC then replied. Dkt. No. 1041.

On October 6, 2020, NIC filed a request for hearing regarding the Court's omission of any discussion regarding NIC's ability to recoup fees associated with filing its Reply brief. The Court does not believe oral argument is required on this issue. Fed. R. Civ. P. 78; L.R. 7-15.

For the following reasons, the Court GRANTS the motion in part. The Court awards $157,690.88 in attorneys' fees to NIC. NIC is entitled to the fees listed in Exhibit A of the Furman Declaration and Table A of the Karnik Declaration, subject to a twenty-percent reduction, totaling $140,422.80. It is also entitled to the fees in Table D of the Karnik Declaration, totaling $1,022.42. It is also entitled to the fees in Table C of the Karnik Declaration and the fees associated with filing its Reply, subject to a one-third reduction, totaling $16,245.67. It is not entitled to fees listed in Exhibit B of the Furman Declaration or Table B of the Karnik Declaration.

## I. BACKGROUND

The background of this case is well known to the parties and the Court. This Order recites background only as relevant to the motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:15-cv-02034-JVS-JCGx            Date  Oct. 7, 2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

### A. Overview

This case concerns litigation between NIC and NTG, its attorneys, and its clients. In brief, NIC alleges that NTG routinely fabricated class-action litigation to extort money from defendants nationwide. Third Amended Complaint ("TAC"), ECF No. 911, ¶ 2. NIC's TAC alleges that the NTG Defendants perpetrated three litigation schemes: (1) the false-advertising scheme; (2) the unauthorized recording, or "wiretapping" scheme; and (3) the Lanham Act scheme. See generally, id.

In the false advertising scheme, NTG and its investigator Andrew Baslow ("Baslow") would identify individuals to serve as lead plaintiffs in consumer fraud class actions against companies selling products in California. Id. at ¶¶ 23–25. NTG would then bribe these individuals to make intentional false representations that (1) they purchased the defendant's product in reliance on the representations made in defendant's product advertisements; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the advertisements. Id. at ¶ 29. Using these false allegations, NTG would threaten companies with statewide class actions under various California consumer protection statutes,[1] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id. at ¶ 27.

The wiretapping scheme functioned similarly. Under the wiretapping scheme, NTG and Baslow would identify individuals to serve as potential lead plaintiffs in consumer privacy class actions. Id. at ¶¶ 23–25. NTG would then bribe these individuals to stage private phone calls to various companies, and then later make intentionally false representations that: (1) they were not aware that the call was being recorded; (2) they did not consent to the recording; (3) they expected that their call would be private and not recorded; and (4) they learned that the company recorded all incoming calls only after

---

[1] The TAC identifies four lawsuits filed in connection with the false advertising scheme: (1) Nilon v. Natural-Immunogenics Corp., Case No. 3:12-cv-00930-LAB-BGS (C.D. Cal. 2012) ("Nilon"); (2) Pfleg v. Nature's Way Prods., Inc., Case No. 37-2012-0051979-CU-MT-NC (San Diego Cty. Sup. Ct. 2012) ("Nature's Way"); (3) Dronkers v. Kiss My Face, LLC, Case No. 3:12-01151-JAH (S.D. Cal. 2012) ("Kiss My Face"); and (4) Morales v. Magna, Inc., Case No. 3:10-cv-01601-EDL (N.D. Cal. 2010) ("Magna"). TAC ¶¶ 49–147, 175–221, 265–81. Nilon, Pfleg, and Dronkers served as the lead plaintiffs in Nilon, Nature's Way, and Kiss My Face, respectively. (Id.) Sandoval later substituted in as lead plaintiff in Nilon. Id. at ¶¶ 105–13. Non-party Dan Bobba ("Bobba") served as a lead plaintiff in Magna. Id. at ¶ 266.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:15-cv-02034-JVS-JCGx    Date   Oct. 7, 2020

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al

completing the call. Id. at ¶ 34. Using these false allegations, NTG would threaten companies with statewide class actions under the California Invasion of Privacy Act, Cal. Pen. Code §§ 632 et seq., ("CIPA")[2] and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies. Id. at ¶¶ 31-33.

Under the Lanham Act scheme NTG, Ferrell, and Reid created a sham "plaintiff" by forming a limited liability company called Strataluz LLC ("Strataluz") and concealing their ownership in the entity. Id. at ¶ 42. NTG, Ferrell, and Reid utilized Strataluz as a plaintiff to threaten companies that sold dietary supplements with lawsuits under a Lanham Act false advertising theory falsely claiming that they had competitor standing and actual damages. Id. at ¶ 43. In May and June 2015, NTG, Ferrell, and Reid falsely threatened companies that sold male enhancement supplements with Lanham Act litigation based on false allegations that Strataluz manufactured, sold, and distributed a patented male enhancement product called ProMaxal. Id. at ¶ 44. In fact, ProMaxal did not exist, had never been manufactured, and was never sold. Id. NTG, Ferrell, and Reid attempted to extort "hundreds of thousands of dollars from unsuspecting companies in exchange for dismissal and the offer of a worthless license that Defendants claimed had significant value" by threatening such frivolous litigation. Id. at ¶ 45.

### B.    Procedural History

On December 16, 2019, this Court issued a Scheduling Order. ECF No. 883. Under the Scheduling Order, "[a]ll motions to join other parties or to amend the pleadings shall be filed and served within sixty (60) days of the date of this order and noticed for hearing within ninety (90) days hereof." Id. at 1. Therefore, the deadline to file and serve motions to amend pleadings was February 16, 2020.

NIC filed a timely motion for leave to file its TAC on February 14, 2020. ECF No.

---

[2] NIC's SAC identifies four lawsuits filed in connection with the wiretapping scheme: (1) Nilon v. Chromadex, Inc., Case No. 56-2013-00436790-CU-MT-VTA (Ventura Cty. Sup. Ct. 2013) ("Chromadex"); (2) Demulder v. Carter-Reed Co., LLC, Case No. 3:12-cv-0333-BTM (S.D. Cal. 2012) ("Carter-Reed"); (3) Schoonover v. Himalaya Drug Co., Case No. 12-cv-1782 (S.D. Cal. 2012) ("Himalaya Drug"); and (4) Torres v. Nutrisystem, Case No. 8:12-cv-01854-CJC-JPR (C.D. Cal. 2012) ("Nutrisystem"). Compl., ¶¶ 148–74, 222–64, 282–317. Nilon, Demulder, and Schoonover served as the lead plaintiffs in Chromadex, Carter-Reed, and Himalaya Drug, respectively. Id. Non-party Raquel Torres ("Torres") served as a lead plaintiff in Nutrisystem. Id. at ¶¶ 289, 295.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:15-cv-02034-JVS-JCGx           Date   Oct. 7, 2020

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al

892. The proposed TAC added predicate acts under RICO concerning allegations that Ferrell and Reid used their Strataluz business to file lawsuits against competitors based on false allegations. See Redline version of TAC, ECF No. 892-4. The Court granted the motion reasoning that the proposed amendments would not "greatly change the parties' positions." ECF No. 910, 6. NTG moved to dismiss or strike the TAC on April, 7, 2020. ECF No. 913. On May 20, 2020, the Court granted the motion to dismiss with leave to amend. ECF No. 987. On June 18, 2020, the Fourth Amended Complaint ("FAC") was filed. ECF No. 1007.

Without seeking leave from the Court, NTG filed Counterclaims on April 7, 2020. ECF No. 918. The Counterclaims added seven new parties. Id.

### C. The Amended Counterclaim

On May 7, 2020, without seeking leave from the Court, NTG filed an Amended Counterclaim alleging a violation of the RICO Act and conspiracy to violate the RICO Act. ECF No. 978-1. The Amended Counterclaim alleges that NIC and the other Counter-Defendants along with certain non-party co-conspirators[3] "spearheaded a criminal enterprise to retaliate against NTG and Ferrell for their efforts to expose NIC's false advertising of Sovereign Silver and the danger NIC poses to the public health." Id. at ¶ 12. The Amended Counterclaim alleges that Counter-Defendants have participated in criminal acts in their behavior of this litigation by (1) "actively soliciting and filing knowingly false declarations accusing Ferrell of multiple felonies"; (2) suborning perjury by promising witnesses the benefit of NIC's resources in exchange for false declarations; (3) presenting false accusations in filings; (4) "extorting and tampering with a witness by publishing a derogatory website designed to coerce that witness to provide false testimony"; (5) utilizing an investigator who impersonated law enforcement to procure false testimony; and (6) presenting a false declaration claiming a party had evaded a properly noticed deposition. Id. at ¶ 3.

Part of the allegations arise from a dispute between the parties as to whether Trycia Carlberg was a client of Ferrell and declarations and motions that were filed before this

---

[3]Attorney Joshua S. Furman, Paralegal Jennifer Fernandes, private investigator Clark W. Baker ("Baker"), and attorney Carlos F. Negrete ("Negrete"). Amd. Count., ¶¶ 31-34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:15-cv-02034-JVS-JCGx                              Date  Oct. 7, 2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

Court concerning her relationship with Ferrell. Id. at ¶¶ 48-94.[4] Counter-Claimants also allege that after the Nilon action was withdrawn by the named plaintiff, NIC "embarked on a criminal enterprise with Baker, a private investigator, who devised a plan to extort and blackmail false declarations from witnesses." Id. at ¶ 104. The Amended Counterclaim alleges that NIC and Negrete hired Baker to create an adverse website designed to target Nilon's business in order to coerce Nilon into speaking out against Ferrell and NTG. Id. at ¶¶ 108-143. After the website was initially taken down at Nilon's request, Baker told Nilon that the website "would be put back up if Nilon did not cooperate with him, but it would stay down if Nilon told him what he wanted to hear about." Id. ¶ 120.

Counter-Claimants also allege that Baker contacted former NTG clients in late 2015 while deceptively identifying himself as "Officer Clark Baker" and representing that he was either a "federal law enforcement officer" or an investigator at the "Bureau of Security and Investigation Services." Id. ¶¶ 144-162. Finally, Counter-Claimants allege that prior to the dismissal of the Nilon action, in 2014 NIC was awarded discovery sanctions based in part on a false declaration filed by Negrete indicating that NIC served a deposition notice on Nilon's counsel and that counsel refused to produce Nilon. Id. ¶¶ 163-166. Counter-Claimants accuse Negrete of preparing and filing a false proof of service even though notice of the deposition was not received by them. Id. ¶ 164.

### D.   The Court's Order Regarding NIC Motion for Sanctions

On August 3, 2020, the Court granted NIC's motion for sanctions against NTG for its filing of the Amended Counterclaim. Dkt. No. 1028. In that Order, the Court found that "the Amended Counterclaim was legally "baseless" from an objective perspective . . . .and that NTG, Ferrell and their attorneys did not conduct a reasonable and competent inquiry before signing and filing it." Id. at 17. As a result, the Court ordered the following: "NTG, Ferrell, and their attorneys shall pay for reasonable attorneys fees incurred by Counter-Defendants in connection with the motion to dismiss, motion to strike, and motion for sanctions." Id.

### II. LEGAL STANDARD AND DISCUSSION

### A.   Whether the Fees Motion Was Brought In Bad Faith

---

[4]These same allegations were addressed by the Court at ECF No. 891.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:15-cv-02034-JVS-JCGx  Date  Oct. 7, 2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

Generally, bad faith can be inferred when a party's actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." People of the State of New York v. Operation Rescue Nat'l, 80 F.3d 64, 72 (2d Cir.). This behavior typically includes recklessness, frivolousness, harassment, or other improper purposes. Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001); Zambrano v. City of Tustin, 885 F.2d 1473, 1478 (9th Cir. 1989).

In its Opposition to the instant motion, NTG argues that NIC filed its motion in bad faith on the sole basis that NTG wrote to NIC's attorney of record and offered to "pay the reasonable fees and costs incurred by your firm on the motions in lieu of further briefing and a further order on the issue." Opp'n, Ex. A at 6, Dkt. No. 1038-3. According to NTG, NIC "refused to provide the actual amount of fee by his firm (the only attorney of record for [NIC]) on the motions, and instead responded by demanding payment for NIC and all other Counter-Defendants fees and costs," and later identified $208,000 in fees. Opp'n at 3, Dkt. No. 1038 (internal quotations omitted). NTG requested clarification regarding whether that amount was limited to the motions listed in the Court's August 3, 2020 Order. Id. NIC responded that the aforementioned amount was for fees "fairly related to the three motions." Id. (internal quotations omitted). In its Reply, NIC claims that there was no bad faith and that the communications make clear that the parties disagreed on what costs were permissible and that NTG was not "required to accept counsel's conclusory (and legally erroneous) assertion" regarding those fees. Reply at 21, Dkt. No. 1041.

Quite simply, NIC's decision to file the instant motion was not in bad faith. All NTG's email communications with NIC indicates is a disagreement over what legal fees NTG should pay to NIC as a result of NTG's sanctionable conduct. While NTG may have attempted to resolve the matter in good faith, the inability to do so, either as a result of NIC's or NTG's actions, does not constitute bad faith.

**B.  Whether an *In-Camera* Review of the Billing Records is Appropriate**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:15-cv-02034-JVS-JCGx    Date   Oct. 7, 2020

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al

Whether to conduct an *in-camera* review is a matter left to the Court's discretion. Rock River Commc'ns, Inc. v. Universal Music Grp., Inc., 745 F.3d 343, 353 (9th Cir. 2014); see also United States v. Zolin, 491 U.S. 554, 572 (1989) ("[T]he decision whether to engage in in camera review rests in the sound discretion of the district court."); U.S. ex rel. Hamrick v. GlaxoSmithKline LLC, 814 F.3d 10, 16 (1st Cir. 2016) (trial court did not abuse discretion in declining in camera review, even though the documents were few in number and "thus relatively easy to review," absent a showing that "manifest injustice" would result).[5]

Because NTG claims there are "serious questions about the amount of fees that are now being claimed and whether this Fees Motion includes excessive, duplicative, inefficient, and even. . . false claimed [billing]," NTG requests that the Court conduct an *in-camera* review of the billing records. Opp'n at 3-4, Dkt. No. 1038. In response, NIC claims that there is no basis for an *in-camera* review as their billing records, coupled with "sworn declarations meticulously describing the work" should be sufficient. Reply at 18, Dkt. No. 1041.

The Court finds that an *in-camera* review is unnecessary at this time. NIC has submitted records of the relevant time sheets, and should NTG have wished to contest each entry one-by-one, it may have done so through an exhibit attached to one of its many declarations. Moreover, an *in-camera* review would merely delay the litigation, which now spans five years and one-thousand docket entries.

Therefore, the Court denies NTG's request for an *in-camera* review of the relevant time/billing entries.

### C.     Whether Referral to the Special Master is Appropriate

Decisions related to judicial economy, convenience, and fairness rest in the Court's discretion. DeSoto v. Yellow Freight Sys., Inc., 861 F.2d 536 (9th Cir. 1988).

NTG requests that the Court refer this matter over to the Special Master, Judge Guilford (Ret.). Opp'n at 4, Dkt. No. 1038. NTG argues that because Judge Guilford is

---

[5] The Court recognizes this body of law applies specifically to *in-camera* review of privileged documents, but can be applied more broadly.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:15-cv-02034-JVS-JCGx                         Date    Oct. 7, 2020

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al

highly experienced with complex attorneys' fees, a referral would conserve the Court's judicial resources "while also furthering the interests of the parties." Id. at 4-5. In response, NIC argues that a referral would merely delay the execution of any awards. Reply at 16-17, Dkt. No. 1041. It also argues that any decision by the Special Master would find its way back to the Court. Id.

The Court finds that the instant motion does not warrant referral to the Special Master. First, as the Court, and not the Special Master, sanctioned NTG and requested NIC to file the instant motion. Dkt. No. 1038. Second, given the highly contentious nature of this litigation, the Court views the likelihood of *any* party appealing the Special Master's order, especially regarding attorneys' fees, as high, if not an absolute certainty. Indeed, an appeal of the Special Master's decision regarding attorneys' fees would require *de novo* review of the Special Master's order, which would require that the Court expend more time on the matter rather than resolving it now. Estakhrian v. Obenstine, No. CV 11-3480 FMO (CWX), 2016 WL 6275599, at *1 (C.D. Cal. May 17, 2016).

Therefore, the Court denies NTG's request that the Court refer this issue to the Special Master.

### C. Whether the Court Should Stay Execution of Any Sanction Until Final Judgment

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Whether a Court should stay proceedings "calls for an exercise of a sound discretion" and a weighing of "competing interests." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962). These interests include "the possible damages which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Id.

NTG requests that the Court "stay issuance of a sanction award until final judgment so it may be included with an appeal" because the "amount sought is exceedingly large and includes counsel personally." Opp'n at 25, Dkt. No. 1038. NIC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:15-cv-02034-JVS-JCGx  Date Oct. 7, 2020

Title Natural-Immunogenics Corp. v. Newport Trial Group, et al

replies and claims that NTG "presents no valid legal or fairness argument for postponing" the instant decision. Reply at 18, Dkt. No. 18. It then spells out NTG's actions that led the Court and the parties to this juncture. Id.

The Court agrees with NIC. The various interests at play weigh in favor of executing any sanctions now. NIC may suffer further damages in prosecuting its case and defending itself from any counterclaims absent an ability to pay its counsel. And while the same is true for NTG, NTG's conduct necessitated the instant motion, not NIC's. Lastly, delaying the imposition of any sanctions until later in the proceedings negates the purpose of Rule 11 sanctions, deterrence against additional future sanctionable conduct. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) (noting "the Rule's central goal of deterrence").

Therefore, the Court declines to stay execution of the sanction.

### E. NIC's Request for Attorney's Fees

"Imposing sanctions in the amount of reasonable expenses, including attorneys fees, incurred because of a filing in violation of Rule 11 is permitted." Refac Int'l, Ltd. v. Hitachi Ltd., 141 F.R.D. 281, 287 (C.D. Cal. 1991). The fees must be reasonable and directly result from the violation. Fed. R. Civ. P. 11

To calculate a reasonable award of attorneys' fees, the Court uses the "lodestar adjustment method." See Ketchum v. Moses, 24 Cal. 4th 1122, 1136 (2001). A court begins by calculating "a lodestar figure based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." Id. at 1133 (citing Serrano v. Unruh, 32 Cal. 3d 621, 625 (1982)) (emphasis in original). "[A]n attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." Id. (emphasis in original). Once the lodestar figure has been determined, it may be "adjusted by the court based on factors including, ... (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." Id. at 1132.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:15-cv-02034-JVS-JCGx                                    Date  Oct. 7, 2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

    The party seeking fees bears the burden of "'establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" Christian Research Inst. v. Alnor, 165 Cal. App. 4th 1315, 1320 (2008) (quoting ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1020 (2001)

    When calculating a lodestar figure, the court does not look to the actual rate charged by the attorney. Chalmers v. Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986) ("Determination of a reasonable hourly rate is not made by reference to rates actually charged the prevailing party.") (citing White v. City of Richmond, 713 F.2d 458, 461 (9th Cir. 1983)). Rather, "[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."). A party seeking attorneys' fees must provide "satisfactory evidence ... that the requested rates are in line with those prevailing in the community[.]" Blum v. Stenson, 465 U.S. 886, 895-96 n. 11 (1984). A declaration regarding the prevailing rate in the relevant community is sufficient to establish a reasonable hourly rate. Widrig v. Apfel, 140 F.3d 1207, 1209 (9th Cir. 1998).

    Before the Court can grant this motion, NIC must make the lodestar showing under Ketchum. To do so, NIC must show that the billing rates and hours charged by its counsel were reasonable.

    NIC had two firms perform legal work for it. Emord & Associates' ("Emord") hourly rates were $600 per hour for Virginia-based principal and founding partner, Jonathan W. Emord; $425 for Arizona-based principal attorney Peter Arhangelsky; $275 for Arizona-based Associate Joshua Furman; $175 for Associate Bryan Schatz; and $125 for paralegal Jennifer Fernandes. Amin Talati Wasserman's ("Amin Talati") rates were $590 per hour for Washington, DC-based partner J. Kathleen Bond; $435 for Chicago-based Senior Counsel Sanjay S. Karnik; and $400 for Chicago-based Associate Daniel S. Tyler.

    To assess the reasonableness of these per hour fees, the Court must assess the prevailing rates in those areas. The Special Master previously found Emord's rates to be reasonable (albeit, several years prior to the current date but nonetheless in the same action), and the Court sees no reason to deviate from that earlier finding. Likewise, the Court finds Amin Talati's rates to be reasonable as well, in line with other court's

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-02034-JVS-JCGx | Date | Oct. 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

assessment of the firm's rates as well. Gutierrez v. Wells Fargo Bank, N.A., 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015).

The Court next assesses whether the number of hours required to response to NTG's Counterclaim was reasonable.

NIC has also provided detailed time records for each attorney. NIC notes twenty documents that were filed or served in connection with the pleading. Mot. at 10, Dkt. No. 1033. In order to draft the three motions to respond to NTG's Counterclaim, NIC attorneys performed 405 hours of work which included approximately 150 pages of briefing concerning "complex legal issues related to RICO statute of limitations and Noerr-Pennington." Id. at 11. It argues that the amount of hours it spent were reasonable given that the Counterclaim included over 200 paragraphs which required NIC's attention, and that its motion to dismiss included twelve arguments citing sixty authorities, its motion to strike included nine arguments and cited forty-six authorities, and its Rule 11 motion included eight argument headings and cited fifty-five authorities. Id. at 12.

In total, "Emord spent 235.3 hours and Amin Talati spent 169.70 hours working on three motions." Id. at 13. Amin Talati performed an additional 56.80 hours of work in its role as counsel to Counter-Defendants. Id.

The total fees are $222,037.42, split roughly evenly between work performed by Emord and Amin Talati. Id.

Exhibit A (totaling $94,950) to the Furman Declaration covers billing entries associated with Emord's work "researching, drafting, preparing, revising, and filing the motion" and Exhibit B (totaling $5,740) includes all other work. Dkt. No. 1033-2 at 2-3. Exhibit 1 to the Karnik Declaration covers billing entries associated with Amin Talati's work. Dkt. No. 1033-5. It is broken down into four tables, Table A (totaling $80,578.50) which "includes fees for all work that Atmin Talati performed" on the instant motions, Table B (totaling $26,351.00) which includes "additional work . . . including but not limited to work related to the firm's retention, retention of local counsel" and others, Table C (totaling $13,395.50) which includes the work performed regarding the preparation of attorneys fees and Table D (totaling $1,022.42) which includes costs incurred by NIC arising from Amin Talati's work on the case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:15-cv-02034-JVS-JCGx     Date Oct. 7, 2020

Title    Natural-Immunogenics Corp. v. Newport Trial Group, et al

NTG mounts several attacks on the base amount, and the Court addresses whether the number of hours are reasonable in light of those many objections.

          *i.*       *Whether NIC can Recover Fees for the Emord Firm and Mr. Arhangelsky*

Generally, pro se attorney-plaintiff litigants cannot recover attorneys' fees. Hellmich v. Mastiff Contracting, LLC, No. SACV141354DOCKESX, 2016 WL 11526095, at *2 (C.D. Cal. June 14, 2016); Konkol v. Oakwood Worldwide Local, LLC, No. 2:14-CV-06596-ODW, 2015 WL 46177, at *4 (C.D. Cal. Jan. 2, 2015) ("It is well settled law that pro se litigants may not recover attorney's fees.") (citation omitted). That rule is predicated on the absence of an agency relationship between an attorney and a client, and the idea that a court should award fees "only when there is an independent-client relationship" in an effort to encourage "potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." U.S. S.E.C. v. Chapman, 602 Fed. Appx. 407, 407 (9th Cir. 2015). This rule applies equally to pro se attorney plaintiffs. Kay v. Ehrler, 499 U.S. 432, 437 (1991) ("A rule that authorizes awards of counsel fees to pro se litigants—even if limited to those who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf.").

In its Opposition, NTG argues that the "fees requested, to the extent that they actually relate to the motions, consist of Counter-Defendants' Emord and Mr. Arhangelsky preparing briefs, then Amin Talati spending exorbitant amounts of time to review, revise, and research filings" and that Mr. Arhangelsky, as a party to the matter, cannot recover fees for time spend defending himself, as they acted in a pro se capacity. Opp'n at 6-8, Dkt. No. 1038.

In Reply, NIC argues that the use of multiple law firms was necessary, that the division of labor between Emord and Amin Talati was reasonable, and that Emord and Mr. Arhangelsky were not acting in any pro se capacity. Reply at 5-8, Dkt. No. 1041. NIC argues that NTG's expert admits such, and that at base, "NIC has a right to counsel of its choosing" in this case tasking "trial counsel (Emord) with drafting the relevant briefs as a means to save costs." Id. at 5. It also argues that Emord was not acting pro se as corporations may not act pro se, and that Emord was also acting at NIC's direction. Id. at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:15-cv-02034-JVS-JCGx  Date  Oct. 7, 2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

The Court disagrees with NTG's assessment of the work Emord and Mr. Arhangelsky performed. Specifically, Emord and Mr. Arhangelsky did not act in a pro se capacity. On the docket, Mr. Arhangelsky appears as representing NIC, both in its capacity as Plaintiff and Counter Defendant. He does not appear as counsel for himself. Rather, the only firms representing Mr. Arhangelsky in his capacity as a counter defendant are Amin Talati and Early Sullivan Wright Gizer and McRae LLP. The same is true for Emord. See Hellmich v. Mastiff Contracting, LLC, No. SACV141354DOCKESX, 2016 WL 11526095, at *3 (C.D. Cal. June 14, 2016) (litigant acting in pro se capacity when listed on the docket as acting on behalf of himself).

Therefore, while the Court also discusses the division of labor later in its order, it finds that Emord and Mr. Arhangelsky were not acting in any pro se capacity.

> ii. *Limitation of Fees to Motion to Dismiss, Motion to Strike, and Motion for Sanctions*

Tasks that are generally clerical in nature are generally not recoverable. Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009) (holding that tasks "clerical in nature" should be "subsumed in firm overhead rather than billed" and that "[w]hen clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."). However, tasks directly associated with developing legal arguments are. Keith v. Volpe, 501 F. Supp. 403, 413 (C.D. Cal. 1980) (extensive research to develop novel legal arguments is recoverable).

NTG argues that the fee request should be denied because NIC failed to follow this Court's instruction to limit fees to the motion to dismiss, motion to strike, and motion for sanctions. Opp'n at 8, Dkt. No. 1038. NTG argues that they have expanded the fee request to cover everything that could be fairly related to the entire counterclaim and amended counterclaim. Id. at 9. NIC responds that its request is in line with the Court's order and that NTG failed to demonstrate how the fee incurred by it leading to the drafting, revision, and filing of the motions are not made in connection with these motions. Reply at 3, Dkt. No. 1041.

Subject to this Order's further discussion below, the Court awards fees associated with researching and writing, but declines to award fees for other tasks in connection with the motion to dismiss, motion to strike, and motion for sanctions. Specifically, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:15-cv-02034-JVS-JCGx                     Date  Oct. 7, 2020

Title   Natural-Immunogenics Corp. v. Newport Trial Group, et al

Court declines to award attorneys' fees listed in Exhibit B (totaling $5,740) of the Furman Declaration and Table B of the Karnik Declaration (totaling $26,351.00) which includes "additional work . . . including but not limited to work related to the firm's retention, retention of local counsel" and others.[6]

NIC is also entitled to the fees listed in Table D of the Karnik Declaration(totaling $1,022.42) which includes costs incurred by NIC arising from Amin Talati's work on the case in the Karnik Declaration. See Mitchell v. Metro. Life Ins. Co., No. CV 05-00810 DDPRNBX, 2008 WL 1749473, at *5 (C.D. Cal. Apr. 7, 2008), aff'd sub nom. Mitchell v. CB Richard Ellis Long Term Disability Plan, 611 F.3d 1192 (9th Cir. 2010) (noting that pro hac vice application fees can be awarded as part of attorney's fees).

*iii.    Hours Spent*[7]

"[A] district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" Van Gerwen v. Guarantee Mutual Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000). However, the participation of more than one attorney does not per se constitute an

---

[6] The Court recognizes that "bringing Amin Talati attorneys up to speed on the intricate and lengthy factual and procedural background of a case that was nearly 5 years old and has nearly 1,000 docket entries" was necessary as it was "unrealistic to expect that Amin Talati could, without any background knowledge of the case, immediately begin assisting in the drafting of dispositive motions." Reply at 4, Dkt. No. 1041. The Court acknowledges this argument, but NIC cannot claim that their fees were not duplicative and the hiring of Amin Talati was necessary and then also note how bringing that firm up to speed was necessary. There was a law firm that was already well-versed in the proceedings. That law firm was Emord. And NIC's handling of the response to NTG's Counterclaims, i.e., by having Emord play a significant role in drafting, demonstrates just that.

[7] Lastly, the Court notes NTG's arguments regarding block-billing and otherwise duplicative or grossly excessive hours. It does not consider either Emord's or Amin Talati's entries to constitute block-billing. As the Ninth Circuit recognized in Beltran Rosas v. County of San Bernardino, objections to a fee request should be specific. 260 F. Supp. 2d 990, 996 n.4 (citing Gates, 39 F.3d 1439 (9th Cir. 1994) (stating as a reason for rejecting the defendants' contention that an attorney's fee award was invalid, that the defendants failed to make adequate specific objections)); see also Lawyers' Mut. Ins. Co. v. Home Ins. Co., No. 93-3839, 1995 WL 150556, at *1 (N.D. Cal., Mar. 20, 1995). Almost all of the time entries indicate performance of single or discrete tasks. Other than the Court's noted issues with the hours spent drafting these motions, the Court does not find the billing records unintelligible or opaque as a result of block-billing. Kirschner v. Blixseth, No. CV 11-08283-GAF-SP, 2012 WL 12884846, at *3 (C.D. Cal. Dec. 11, 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:15-cv-02034-JVS-JCGx   Date  Oct. 7, 2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

unnecessary duplication of effort. See Probe v. State Teachers' Retirement System, 780 F.2d 776, 785 (9th Cir. 1986), cert. denied, 476 U.S. 1170 (1986).

NTG claims that the Rule 11 standard is contrary to issues requiring over 400 hours of attorney time to brief and argue the motions, i.e., that because the Court found that a cursory legal inquiry would have revealed these deficiencies, NIC did not need to spend over 400 hours of attorney time, including over 120 hours of legal research, to draft their motions. Opp'n at 12, Dkt. No 1038. In essence, they argue that "[i]t is axiomatic that if a legal claim is deficient on its face, it should not take much legal work to defeat." Id. at 14. NTG also argues that NIC block-billed and as a result, its entries were overly vague. In support of these claims, NTG submits an expert report, which finds that as part of their division of labor, Emord would prepare the motions and then send them to Amin Talati for its review, at which point attorneys at Amin Talati would conduct their own research. Id. at 23.

In one example, NTG demonstrates that the Emord firm billed 32.8 hours to draft the motion to dismiss while the Talati firm billed 58.9 hours to revise and conference about it. Opp'n at 18, Dkt. No. 1038. In another example, the Talati firm billed 67.4 hours of work on the sanctions briefing when the Emord firm billed 94.3 hours drafting it.

In its Reply, NIC argues that the issues presented were complex and that "[w]hile undoubtedly the frivolous nature of the Counterclaims was readily apparent to NTG... it is the case that the Counterclaims contained numerous false charges, presenting as fact demonstrable falsehoods, and relying on law barred by multiple legal doctrines." Reply at 11, Dkt. No. 1041.

The Court partially agrees with NTG.

First, the Court agrees with NTG that the hours spent on some of its motions were excessive. Given that many of the issues overlapped across the three instant motions, spending approximately 400 hours researching and drafting for those motions is excessive. See also Wynn v. Chanos, No. 14-CV-04329-WHO, 2015 WL 3832561, at *5 (N.D. Cal. June 19, 2015), aff'd, 685 F. App'x 578 (9th Cir. 2017), ("[b]ecause of the similarity of the motions, it was unreasonable to bill a significant amount of time for both

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:15-cv-02034-JVS-JCGx    Date  Oct. 7, 2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

motions, and many of the hours spent on the motions to dismiss and motions to strike were duplicative and unnecessary.").

Moreover, in the event of joint representation, especially when dealing with overlapping legal issues, attorney time should be decreased accordingly. Hardenbrook v. United Parcel Serv., Inc., 490 F. App'x 42, 44 (9th Cir. 2012). The Court recognizes that it was NIC's choice to have multiple representation, and even notes earlier in this Order that NIC is entitled to recover for fees charged both by Emord and by Amin Talati. However, that joint representation should not come to the detriment of efficiency. While the Court finds that NTG should pay for fees charged by both Emord and Amin Talati, it should not bear the burden of paying for redundant or inefficient work as a result of that choice.

Based off of these findings, the Court reduces the fees sought in Exhibit A to the Furman Declaration and Table A to the Karnik Declaration by twenty-percent, which is in line with reductions for similar issues. See e.g., Lahiri v. Universal Music & Video Distribution Corp., 606 F.3d 1216, 1222–23 (9th Cir.2010) (affirming reduction of 30% to account for block billing and additional 10% reduction for excessive and redundant work); see also Wynn, 2015 WL 3832561 at *6 (approving reduction of 25%).

Therefore, the Court awards NIC $140,422.80 (comprised of $75,960 from Exhibit A of the Furman Declaration and $64,462.80 from Table A of the Karnik Declaration).

  iv. *Attorneys' Fees for Filing the Instant Motion and the Reply*

A party may recoup attorneys' fees for preparing motions for those attorneys' fees. See D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1387-88 (9th Cir. 1990) overruled on other grounds in Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638 (1992); see also Montano v. Bonnie Brae Convalescent Hosp. Inc., No. CV123462FMOAGRX, 2015 WL 12698407, at *4 (C.D. Cal. Sept. 14, 2015), aff'd, 686 F. App'x 479 (9th Cir. 2017).

NIC requests attorneys' fees for researching and drafting the instant motion, found in Table C of the Karnik Declaration (totaling $13,395.50 for 30.7 hours worth of work). Of those 30.7 hours, approximately ten are spent drafting and revising the Karnik Declaration and thirteen are spent drafting the actual motion for attorneys fees. NIC also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-02034-JVS-JCGx | Date | Oct. 7, 2020 |
| Title | Natural-Immunogenics Corp. v. Newport Trial Group, et al | | |

requests attorneys' fees for filing its Reply brief. Dkt. No. 1041. NIC requests fees in the amount of $10,973 for 23.8 hours worth of work. Dkt. No. 1041-7 at 1. It requests this fees as a result of both Karnik's and Bond's work evaluating experts for rebuttal, telephone conferences with its expert, reviewing the Opposition brief, performing legal research and considering various responsive strategies, and drafting the Reply.

In Montano, the court found that plaintiff's request of 42.8 hours to prepare its motion for attorneys' fees to be excessive. It was persuaded that no more than 15 hours would have been needed, representing a reduction of approximately one-third. Amin Talati's records for the instant filing reveal similar inefficiencies.

The Court is inclined to find the same reduction is appropriate here, especially given that the motion responded to a Court order that NIC was entitled to those funds. Therefore, the Court is inclined to reduce Table C and the amount in Docket No. 1041-7 by one-third. See Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 909 (9th Cir. 1995) (finding that "the district court was well within its discretion" in reducing the fees-on-fees requested).

Therefore, the Court awards NIC $16,245.67 in attorneys fees resulting from filing the instant motion.

### IV. CONCLUSION

For the following reasons, the Court GRANTS the motion in part. The Court awards $157,690.88 in attorneys' fees to NIC. NIC is entitled to the fees listed in Exhibit A of the Furman Declaration and Table A of the Karnik Declaration, subject to a twenty-percent reduction, totaling $140,422.80. It is also entitled to the fees in Table D of the Karnik Declaration, totaling $1,022.42. It is also entitled to the fees in Table C of the Karnik Declaration and the fees associated with filing its Reply, subject to a one-third reduction, totaling $16,245.67. It is not entitled to fees listed in Exhibit B of the Furman Declaration or Table B of the Karnik Declaration.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:15-cv-02034-JVS-JCGx                Date  Oct. 7, 2020

Title  Natural-Immunogenics Corp. v. Newport Trial Group, et al

CC: FISCAL

                                                                    :   0

                                        Initials of Preparer    lmb/rrp