Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Drive, Bldg 6, Ste 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEWPORT TRIAL GROUP, et al.<br><br>Defendants. | Case No. 8:15-cv-02034-JVS (JCG)<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT UNDER RULE 12(c) ON DEFENDANTS' UNCLEAN HANDS DEFENSE [DKT. 1040]**<br><br>Hearing Date:   Oct. 26, 2020<br>Time:             1:30PM<br>Courtroom:      10C<br>Judge:            Hon. James V. Selna |

# **TABLE OF CONTENTS**

I.    INTRODUCTION..................................................................................................1

II.   ARGUMENT ......................................................................................................3

   A.   NIC's Rule 12(c) Motion Does Not Require This Court to
        Resolve Disputes of Fact........................................................................4

   B.   NTG Cannot Base Its Unclean Hands Defense on Conduct that
        Accrued Years After NIC Filed Its RICO Lawsuit................................6

   C.   This Court's Prior Order Addressed the *Noerr-Pennington* Issue,
        that Order Is Law of the Case, and NTG Waived Argument
        Concerning the Law of the Case Doctrine ............................................10

      1.   The Law of the Case Doctrine Applies ........................................10

      2.   NTG Waived Argument Regarding Whether the *Noerr-
           Pennington* Doctrine Applies to NIC's Conduct in 2019.........11

      3.   NTG Waived Argument Regarding Whether the *Noerr-
           Pennington* Doctrine Applies to Affirmative Defenses.............14

      4.   NTG's Claim that It Lacked a "Full and Fair" Opportunity to
           Litigate the *Noerr-Pennington* Issue Is Baseless.....................14

   D.   NTG Has No Non-Frivolous Argument to Invoke an Exception
        to the *Noerr-Pennington* Doctrine.....................................................15

      1.   The Alleged Misconduct Did Not "Deprive the Litigation of Its
           Legitimacy" ..................................................................................16

      2.   Whether an Alleged Misrepresentation Is "Material" Is Not the
           Dispositive Question.....................................................................19

   E.   Sanctions Are Appropriate Because NTG's Reassertion of
        Barred Allegations is Vexatious............................................................20

III.  CONCLUSION ................................................................................................24

# **TABLE OF AUTHORITIES**

## **Cases**

*Adidas Am., Inc. v. TRB Acquisitions LLC*, No. 3:15-CV-2113-SI, 2017 WL 337983 (D. Or. Jan. 23, 2017)..................................................................7

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, No. C 07-05248, 2009 WL 10709718 (N.D. Cal. Nov. 24, 2009).......................................................................................................2, 7

*Atico Int'l USA, Inc. v. LUV N' Care, Ltd.*, No. 09-60397, 2009 WL 2589148 (S.D. Fla. Aug. 19, 2009) .....................................................4

*Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394 (4th Cir. 2001)...........................................................................................................18

*Barber v. Vance*, No. 3:16-CV-2105-AC, 2019 WL 3539819 (D. Or. June 10, 2019), *report and recommendation adopted*, No. 3:16-CV-2105-AC, 2019 WL 3536815 (D. Or. ...................................................21

*Boyington v. Percheron Field Servs., LLC*, No. 3:14-CV-90, 2017 WL 5197159 (W.D. Pa. Nov. 8, 2017)....................................................13

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011)...................................................................................................4

*Chavez v. Bank of Am. Corp.*, No. C-10-0653, 2012 WL 1594272 (N.D. Cal. May 4, 2012)..................................................................................11, 13

*Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119 (3d Cir. 1999) ..................20

*Curtis v. Home Depot U.S.A., Inc.*, No. 1:13-CV-01151, 2014 WL 1419369 (E.D. Cal. Apr. 11, 2014) .............................................................10

*Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 809 F.3d 1223 (Fed. Cir. 2015) ...........................................................................................12

*Durning v. Citibank, N.A.*, 950 F.2d 1419 (9th Cir. 1991).........................................9

*E.E.O.C. v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167 (E.D.N.Y. 2004)...........................................................................................................7

*Ellison Educ. Equip., Inc. v. Chen*, No. 02-cv-1184-JVS, 2004 WL 3154592 (C.D. Cal. Dec. 21, 2004).................................................................7

*Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052 (9th Cir. 2005) ................................................................................4

*FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 95 Cal. Rptr. 3d 307 (2009).........................................................................2, 8

*Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 (9th Cir. 2005) ........................17

*Greene Cty. Tech Sch. Dist. v. MW*, No. 3:17-CV-00047-KGB, 2020 WL 2840156 (E.D. Ark. May 31, 2020) ................................................13

*Hall v. Wright*, 240 F.2d 787 (9th Cir. 1957) ...........................................8

*Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643 (7th Cir. 1983) .............................4

*In re All Am. Semiconductor, Inc.*, 427 B.R. 559 (Bankr. S.D. Fla. 2010) .............13

*In re Fleming Packaging Corp.*, 351 B.R. 626 (Bankr. C.D. Ill. 2006) .................13

*In re Greco*, 113 B.R. 658 (D. Haw. 1990), *aff'd and remanded sub nom. Greco v. Troy Corp.*, 952 F.2d 406 (9th Cir. 1991) .............................21

*In re Halvorson*, No. 8:15-AP-01454 MW, 2018 WL 6728484 (C.D. Cal. Dec. 21, 2018) ....................................................9, 10

*In re Marriage of Nurie*, 176 Cal. App. 4th 478, 98 Cal. Rptr. 3d 200 (2009)..............................................................8

*In re Peoro*, 793 F.2d 1048 (9th Cir. 1986) ...........................................21

*Jones v. Sears Roebuck & Co.*, No. CIVA 5:06CV00345, 2007 WL 964401 (S.D.W. Va. Mar. 28, 2007) .....................................13

*Karst Robbins Coal Co. v. Dir., Office of Workers' Comp. Programs*, 969 F.3d 316 (6th Cir. 2020) ................................................13

*Kasdan v. Cty. of Los Angeles*, No. CV 12-06793, 2014 WL 6669354 (C.D. Cal. Nov. 24, 2014) .....................................................13

*Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026 (S.D. Cal. 2018)........................7

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) ...........................................................9

*Liberty Mut. Fire Ins. Co. v. Bosa Dev. California II, Inc.*, No. 17-CV-0666, 2020 WL 1864645 (S.D. Cal. Apr. 13, 2020) ...............................9

*Loera v. United States*, 714 F.3d 1025 (7th Cir. 2013) ............................................13

*Maloof v. Level Propane Gasses, Inc.*, 316 F. App'x 373 (6th Cir. 2008) ..............21

*MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986) .......................21

*Monster Energy Co. v. Thunder Beast LLC*, No. 18-CV-01367, 2018
  WL 6431010 (C.D. Cal. Oct. 22, 2018) ...............................................................7

*Morales v. Ralphs Grocery Co.*, No. 1:12-CV-00742, 2012 WL 6087699
  (E.D. Cal. Dec. 6, 2012) .....................................................................................10

*Or. Nat. Res. Council v. Mohla*, 944 F.2d 531 (9th Cir. 1991) ................................4

*Pac Dawn LLC v. Pritzker*, 831 F.3d 1166 (9th Cir. 2016)....................................12

*Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Wong*, No. C09-1786,
  2013 WL 1192626 (W.D. Wash. Mar. 22, 2013).................................................10

*Pierce v. Apple Valley, Inc.*, 597 F. Supp. 1480 (S.D. Ohio 1984) .........................7

*Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088 (9th
  Cir. 1994).............................................................................................................12

*Plantronics, Inc. v. Am. Home Assurance Co.*, No. 5:07-CV-06038, 2014
  WL 2452577 (N.D. Cal. May 30, 2014) ..............................................................12

*Plantronics, Inc. v. Am. Home Assurance Co.*, No. 5:07-CV-06038-PSG,
  2014 WL 2452577 (N.D. Cal. May 30, 2014) .....................................................12

*Premier Constr. & Remode, Inc. v. Mesa Underwriters Special Ins. Co.*,
  No. EDCV182582, 2020 WL 5498072 (C.D. Cal. July 8, 2020) .......................12

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S.
  49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) ....................................................6

*Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484 (8th
  Cir. 1985)...............................................................................................................4

*Rupert v. Bond*, 68 F. Supp. 3d 1142 (N.D. Cal. 2014)..........................................17

*S.E.C. v. Cuban*, 798 F. Supp. 2d 783 (N.D. Tex. 2011).........................................7

*S.E.C. v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53 (D. Conn. 1988), *aff'd
  sub nom. S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir. 1989)........................................7

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ..........................................4, 16

*Squires Golf Club v. Bank of Am.*, No. CIV.A. 10-6734, 2011 WL
    130176 (E.D. Pa. Jan. 13, 2011)..........................................................................21

*Stoller v. Berkshire Hathaway, Inc.*, No. 18-CV-47, 2019 WL 141401
    (N.D. Ill. Jan. 9, 2019), *appeal dismissed,* No. 19-1209, 2019 WL
    3564552 (7th Cir. Mar. 4, 2019), *and appeal dismissed,* No. 19-1059,
    2019 WL 3569772 (7th Cir. Mar. 4, 2019) ..........................................................7

*Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98 (2d Cir. 1983) ...............4

*Swallow v. Torngren*, No. 17-CV-05261, 2018 WL 2197614 (N.D. Cal.
    May 14, 2018), *aff'd*, 789 F. App'x 610 (9th Cir. 2020) ..................................6, 18

*Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923, 2007
    WL 420184 (N.D. Cal. Feb. 6, 2007)....................................................................7

*Thomas v. Hous. Auth. of Cty. of Los Angeles*, No. 04-CV-6970, 2006
    WL 5670938 (C.D. Cal. Feb. 28, 2006)..............................................................17

*Tricon Precast, Ltd. v. Easi Set Indus., Inc.*, 395 F. Supp. 3d 871 (S.D.
    Tex. 2019)..............................................................................................................5

*U.S. v. Jingles*, 702 F.3d 494 (9th Cir. 2012) ..........................................................11

*Ungureanu v. A. Teichert & Son*, No. CIV S-11-0316, 2012 WL
    1108831 (E.D. Cal. Apr. 2, 2012), *report and recommendation
    adopted*, No. CVS110316, 2012 WL 13036782 (E.D. Cal. May 29,
    2012) ....................................................................................................................18

*United States v. Nesglo, Inc.*, 744 F.2d 887 (1st Cir. 1984) ...................................21

*United States v. Real Prop. Located at Incline Vill.*, 976 F. Supp. 1327
    (D. Nev. 1997)......................................................................................................11

*Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14-2179, 2015 WL
    349443 (C.D. Cal. Jan. 23, 2015)........................................................................18

*Wingo v. Gedney*, No. 314CV00449RCJVPC, 2016 WL 721306 (D.
    Nev. Jan. 20, 2016), *report and recommendation adopted,* No.
    314CV00449RCJVPC, 2016 WL 730757 (D. Nev. Feb. 23, 2016) ...................13

*X-IT Prod., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp.
    2d 577 (E.D. Va. 2001)..........................................................................................7

*Yavari v. Pompeo*, No. 2:19-CV-02524, 2019 WL 6720995 (C.D. Cal. Oct. 10, 2019) .................................................................................................9

**Statutes**

28 U.S.C. §1927 .............................................................................20, 21

Plaintiff Natural Immunogenics Corp. ("NIC") hereby submits this Reply in Support of Plaintiff's Rule 12(c) Motion for Judgment on Defendants' Unclean Hands Defense [Dkt. 1040].

## I.   <u>INTRODUCTION</u>

Defendants have failed to show that their unclean defense is legally tenable. They have not rebutted the dispositive precedent and have disregarded this Court's Rule 11 Order, which addressed the very same issues of law.  For the following reasons, this Court should grant NIC's motion for judgment and sanction NTG for its misconduct in disregard of this Court's prior Rule 11 sanctions order by awarding NIC its legal fees and costs associated with this motion, and by precluding NTG from introducing the "unclean hands" evidence at trial or in dispositive motions on penalty of contempt.

First, NIC's Rule 12(c) motion is procedurally proper.  NIC does not ask this Court to resolve issues of fact.  NTG asserted an unclean hands defense based on litigation activities occurring within this lawsuit in 2019, more than four years after NIC filed this case.  The Court can determine as a matter of law whether those allegations are sufficient to support an unclean hands defense under the precedent. This Court disposed of the very same allegations earlier on the pleadings when it struck NTG's Counterclaims.  *See* Dkt. 1028.  NTG argues that the "thrust of NIC's motion disputes the truth of Defendant's pleadings by repeatedly denying the wrongful conduct that forms the basis of NIC's unclean hands."  Dkt. 1047 at 7-8.[1]  That position is erroneous.  NIC's motion depends in no part on denials of NTG's allegations or disputes of fact.  Rather, NIC explains in its motion that NTG's allegations are legally insufficient to state a defense.  That position is appropriate for resolution on a Rule 12(c) motion.

Second, NTG may not assert an unclean hands defense based on conduct

---

[1] All docket citations refer to the CM/ECF pagination unless stated otherwise.

that occurs during litigation of a lawsuit, rather than before the accrual of an action.  As a matter of law, conduct occurring after the commencement of litigation lacks a sufficient nexus with underlying rights at issue.  NIC has provided substantial authority holding that NTG's defense is improper on that basis.  *See* 1040-1 at 16-18.  NTG has no viable authority in response.  The outcome is the same whether construed under state or federal law.  Under binding California precedent, "the doctrine of unclean hands relates to misconduct occurring before the lawsuit was filed, not the bad faith filing or maintenance of an action." *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1284, 95 Cal. Rptr. 3d 307, 320 (2009); *see also Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, No. C 07-05248, 2009 WL 10709718, at *4 (N.D. Cal. Nov. 24, 2009) (denying unclean hands defense because "it is undisputed that the five instances of alleged bad faith conduct by Plaintiff occurred after Plaintiff filed this action").  NTG thus argues a position foreclosed by the precedent, and does so without viable authority.

Third, even if NTG could proceed on these allegations (it cannot), NTG does not dispute that the *Noerr-Pennington* doctrine forecloses affirmative defenses based on protected litigation activities.  NTG waives argument on that issue.  NTG also waives argument on applicability of the law of the case doctrine.  *See generally* Dkt. 1047.  This Court earlier held that *Noerr-Pennington* bars action predicated on the alleged 2019 conduct.  *See* Dkt. 1028 at 13-15.  That legal holding is law of this case, and NTG has failed to offer anything in opposition to the law of the case doctrine.  Despite this Court's prior ruling on the same issue, NTG rehashes the very same argument rejected by this Court in its Rule 11 Order concerning the third exception to the *Noerr-Pennington* doctrine.  *Compare* Dkt. 1028 at 13-15 *with* Dkt. 1047 at 25-26.  This Court could not have been clearer and, so, we are left with another instance of conduct in defiance of this Court's authority.  *See* Dkt. 1028 at 13-17.  NTG still lacks a non-frivolous basis to invoke

an exception to *Noerr*.

Finally, the Court should sanction NTG for its disregard of the Rule 11 Order. NTG has chosen to force the Court and opposing counsel to relitigate the exact same allegations previously rejected by this Court without a non-frivolous basis to invoke a *Noerr-Pennington* exception. Defendants' unclean hands defense is baseless. The defense is foreclosed by precedent holding that an unclean hands defense cannot proceed on conduct occurring after the commencement of litigation. NTG offers no valid authority in response. NTG's defense is also barred by the *Noerr-Pennington* doctrine, as this Court has already ruled in its Rule 11 Order that addressed the exact same allegations. NTG now threatens again to put NIC's counsel on trial during the RICO case. It does so based on allegations that this Court has twice before found unsupported. *See* Dkt. 891 at 18; Dkt. 2018 at 13. NIC has well-documented NTG's retaliatory tactics and sanctionable conduct throughout this case. *See* Dkt. 1000-1 at 28-30.

NTG did not oppose NIC's request for sanctions and has therefore waived argument in that respect. *See generally* Dkt. 1047. This proceeding shows that the Court's Rule 11 Order has not functioned to deter NTG or its counsel. NTG's obsession with advancing attacks on opposing counsel is not only factually and legally unsupported, but part of a pattern that evidently will not cease without a stronger sanction from the Court. That sanction is warranted for the reasons stated below and in NIC's opening papers.

## II.   ARGUMENT

NIC established that Defendants' unclean hands defense must be dismissed because: (1) as a matter of law, an unclean hands defense may not be based on alleged litigation misconduct accruing after commencement of the lawsuit; (2) even if that defense could proceed, NTG's allegations impermissibly target protected litigation activities subject to the *Noerr-Pennington* doctrine; and (3) Defendants have no non-frivolous argument for an exception to the *Noerr-*

*Pennington* doctrine.  *See* Dkt. 1040-1 at 16-24.  In Opposition, NTG failed to rebut those positions or demonstrate that the unclean hands defense is legally tenable.  NTG argues that this Court may not dismiss the defense under Rule 12(c) because NIC's motion requires resolution of factual disputes.  But NIC's motion does not ask this Court to resolve questions of fact.  The unclean hands defense is deficient on the pleadings because the allegations are incompetent as a matter of law just as they were when the Court sanctioned NTG under Rule 11.

### A. <u>NIC's Rule 12(c) Motion Does Not Require This Court to Resolve Disputes of Fact</u>

NIC moves on the pleadings under Rule 12(c) and argues that the allegations as pled cannot support a viable defense as a matter of law.  This Court need not resolve any question of fact to evaluate that position.  NIC's argument is properly addressed on a Rule 12(c) motion, which the Court evaluates under the Rule 12(b)(6) standard.  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011).

In Opposition, NTG argues that application of the *Noerr-Pennington* doctrine is an issue of fact that cannot be resolved on the pleadings.  That position lacks merit.  "A court may determine on a motion to dismiss whether underlying litigation falls within the sham exception to the *Noerr-Pennington* doctrine." *Atico Int'l USA, Inc. v. LUV N' Care, Ltd.*, No. 09-60397, 2009 WL 2589148, at *4 n. 6 (S.D. Fla. Aug. 19, 2009) (citing *Or. Nat. Res. Council v. Mohla,* 944 F.2d 531, 533 (9th Cir. 1991)); *Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484, 487 (8th Cir. 1985); *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 649 (7th Cir. 1983); *Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 102 (2d Cir. 1983)).  This Court may therefore resolve the applicability of *Noerr-Pennington* on the pleadings.  *See, e.g., Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (resolving question of *Noerr-Pennington* under Rule 12(b)(6) standard); *Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005) (same);

1    *Tricon Precast, Ltd. v. Easi Set Indus., Inc.*, 395 F. Supp. 3d 871, 883 (S.D. Tex.

2    2019) ("[I]f the applicability of the *Noerr-Pennington* doctrine 'appears on the face

3    of the pleadings, dismissal under Rule 12(b)(6) may be appropriate.'").

4           With respect to *Noerr-Pennington*, and as discussed below, NIC argues that

5    Defendants' unclean hands defense fails as a matter of law on the pleadings.  *See*

6    Dkt. 1040-1 at 14-26.  At no point does NIC's motion [Dkt. 1040-1] ask this Court

7    to resolve questions of fact in NIC's favor.  *See generally* Dkt. 1040-1.  At no point

8    does NIC ask this Court to dismiss the unclean hands defense for lack of evidence.

9    *Id.*[2]  The procedural history at issue in NIC's motion is not in dispute.  NTG

10   alleges that the conduct supporting its defense occurred in 2019, nearly four years

11   after NIC filed its original lawsuit.  *See* Dkt. 1017 at ¶473; Dkt. 980 at ¶¶48-94.

12   NTG alleges that NIC withdrew its motion for sanctions before any action

13   occurred on those papers.  *See* Dkt. 980 at ¶85.  Similarly, the Court may take

14   judicial notice of NTG's earlier motion for sanctions, which presented to this Court

15   the exact same allegations of misconduct.  *See* Dkt. 855.  This Court is also in the

16   best position to determine whether the alleged misconduct could deprive this case

17   of "legitimacy."  Indeed, this Court has already determined based on the *same*

18   NTG pleadings that it did not.  *See* Dkt. 1028 at 13-15.

19          NTG argues that the third *Noerr-Pennington* exception includes a

20   "materiality" element, which involves questions of fact that can only be addressed

21   by the jury.  *See* Dkt. 1047 at 27-29.  NTG argues that, under the sham exception,

22   the "materiality" of misconduct depends on the subjective egregiousness of

23   conduct in question.  *See* Dkt. 1047 at 17 (arguing erroneously that misconduct can

24

25          [2] This Court has nonetheless reviewed the identical factual allegations in two
     prior orders, and expressly found that NTG's accusations against NIC and its
26   counsel lack factual support.  *See* Dkt. 891 at 18; Dkt. 1028 at 13.  The fact that
     NTG continues to advance legally frivolous allegations against opposing counsel
27   in this case is relevant to whether sanctions already imposed under Rule 11 are
     sufficient deterrents or whether, as NIC argues, substantial additional sanctions are
28   now warranted to dissuade continuation of this persistent pattern of misconduct.

be deemed to fall within the "sham" litigation exception "if found by the jury to be material and significant"). NTG lacks support for that theory, which conflicts with applicable precedent. The Supreme Court has rejected an interpretation of the sham litigation exception under *Noerr-Pennington* that depends on the subjective egregiousness of misconduct:

> [F]idelity to precedent compels us to reject a purely subjective definition of "sham." The sham exception so construed would undermine, if not vitiate, *Noerr.* And despite whatever "superficial certainty" it might provide, a subjective standard would utterly fail to supply "real 'intelligible guidance.'"

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 1928, 123 L. Ed. 2d 611 (1993) (internal citations omitted).

For purposes of NIC's motion, the *Noerr-Pennington* analysis does not depend on whether the declarations were alleged to be intentionally false. NIC's Rule 12(c) motion does not require the Court to resolve that issue. NIC establishes that, even assuming *arguendo* that the declarations were intentionally false (they were not), those facts do not alter the *Noerr-Pennington* analysis because the so-called misrepresentations did not affect NIC's underlying RICO lawsuit in any respect. The filings were withdrawn before any action occurred on those papers. *See* Dkt. 847 (NIC Withdrawal). Moreover, NTG promptly brought those issues to light in a motion for sanctions, which this Court denied. *See* Dkt. 855. The alleged misconduct has not surreptitiously undermined the legitimacy of this Court. Rather, the judicial process has functioned properly. *See Swallow v. Torngren*, No. 17-CV-05261, 2018 WL 2197614, at *9 (N.D. Cal. May 14, 2018), *aff'd*, 789 F. App'x 610 (9th Cir. 2020).

## B. **NTG Cannot Base Its Unclean Hands Defense on Conduct that Accrued Years After NIC Filed Its RICO Lawsuit**

The alleged inequitable conduct that supports an unclean hands defense must be sufficiently related to the underlying rights that formed the basis of NIC's

lawsuit.  *See Stoller v. Berkshire Hathaway, Inc.*, No. 18-CV-47, 2019 WL 141401, at *3 (N.D. Ill. Jan. 9, 2019), *appeal dismissed,* No. 19-1209, 2019 WL 3564552 (7th Cir. Mar. 4, 2019), *and appeal dismissed,* No. 19-1059, 2019 WL 3569772 (7th Cir. Mar. 4, 2019) ("[T]he doctrine of unclean hands only applies to conduct concerning the subject matter of litigation, not the conduct of litigation").  Courts have consistently held, therefore, that litigation misconduct occurring after the commencement of litigation cannot support an unclean hands defense because that conduct, as a matter of law, does not sufficiently relate to the underlying claims.  Misconduct that occurs years later could not have affected the equities between the parties at the time NIC's RICO claims first accrued.  NIC provided this court with at least eleven (11) decisions supporting that position, including cases from within the Ninth Circuit and this Court.  *See* Dkt. 1040-1 at 16-17.[3]

In *Applied Materials*, the Northern District of California dismissed entire portions of an unclean hands defense based solely on whether the alleged acts occurred before or after litigation commenced.  *See Applied Materials*, 2009 WL 10709718, at *4.  The Court separately addressed the Plaintiff's "pre-filing conduct" and "post-filing conduct."  *Id.* at *3-4.  For purposes of the unclean hands defense, the Court dismissed all allegations germane to the post-filing conduct:

---

[3] *See, e.g., Stoller v. Berkshire Hathaway, Inc.*, No. 18-CV-47, 2019 WL 141401, at *3 (N.D. Ill. Jan. 9, 2019), *appeal dismissed*, No. 19-1209, 2019 WL 3564552 (7th Cir. Mar. 4, 2019), *and appeal dismissed*, No. 19-1059, 2019 WL 3569772 (7th Cir. Mar. 4, 2019); *S.E.C. v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 73 (D. Conn. 1988), *aff'd sub nom. S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir. 1989); *E.E.O.C. v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 173 (E.D.N.Y. 2004); *S.E.C. v. Cuban*, 798 F. Supp. 2d 783, 792 (N.D. Tex. 2011); *Pierce v. Apple Valley, Inc.*, 597 F. Supp. 1480, 1485–86 (S.D. Ohio 1984); *Adidas Am., Inc. v. TRB Acquisitions LLC*, No. 3:15-CV-2113-SI, 2017 WL 337983, at *8 (D. Or. Jan. 23, 2017); *Monster Energy Co. v. Thunder Beast LLC*, No. 18-CV-01367, 2018 WL 6431010, at *3 (C.D. Cal. Oct. 22, 2018); *Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026, 1038 (S.D. Cal. 2018); *Ellison Educ. Equip., Inc. v. Chen*, No. 02-cv-1184-JVS, 2004 WL 3154592, at *20 (C.D. Cal. Dec. 21, 2004); *Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923, 2007 WL 420184, at *5 (N.D. Cal. Feb. 6, 2007); *X-IT Prod., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 601 (E.D. Va. 2001).

> Here, it is undisputed that the five instances of alleged bad faith conduct by Plaintiff occurred after Plaintiff filed this action. Thus, the Court finds that as a matter of law, Plaintiff's conduct in the maintenance of this action cannot support a defense of unclean hands.

*Id.* at *4 (granting Plaintiff's unclean hands motion "as to the conduct allegedly committed by Plaintiff in the maintenance of this action").

Despite NTG's representations to the contrary, the outcome here is the same under state or federal law.  The California Court of Appeals has concluded that "[T]he doctrine of unclean hands relates to misconduct occurring before the lawsuit was filed, not the bad faith filing or maintenance of an action."  *FLIR Sys.*, 174 Cal. App. 4th at 1284; *see also In re Marriage of Nurie*, 176 Cal. App. 4th 478, 512, 98 Cal. Rptr. 3d 200, 229 (2009) (construing Cal. Family Code and holding that a court must "decline jurisdiction only when the court's jurisdiction is invoked as a result of unclean hands, not when one of the party's hands get dirty after jurisdiction has been properly asserted").

In Opposition, NTG was unable to provide this Court any citable precedent that addressed the many authorities NIC provided.  *See generally* Dkt. 1047.  NTG cited no precedent that undermined NIC's position here.  NTG cited just two decisions in response to NIC's argument.  *See* Dkt. 1047 at 25.  Neither is precedent supporting NTG's opposition, and neither undermines NIC's cited authority.

The Ninth Circuit's 1957 decision in *Hall v. Wright* did not address conduct occurring exclusively after the commencement of litigation.  *See Hall v. Wright*, 240 F.2d 787 (9th Cir. 1957).  That decision instead involved a continuing effort on the Plaintiff's part to "establish a limited monopoly in the manufacture and sale" of certain products.  *Id.* at 795.  The conduct began before litigation commenced.  Moreover, the *Hall* decision predates the authorities cited in NIC's brief by at least fifty years.

NTG relies primarily on the *Halvorson* decision to support the proposition that "bad acts by a plaintiff occurring after the filing of the complaint and during the litigation can be taken into account in determining whether equity's unclean hands doctrine applies…"  *See* Dkt. 1047 at 25.  But the *Halvorson* decision is not precedent.  Although NTG argues that the decision was "vacated on other grounds," the decision was actually vacated in its entirety by this Court because the bankruptcy court lacked jurisdiction.  *See In re Halvorson*, No. 8:15-AP-01454 MW, 2018 WL 6728484, at *1 (C.D. Cal. Dec. 21, 2018) (Selna, J.).  That underlying decision has no precedential value under binding Ninth Circuit law because "vacated" decisions are not precedent.  *See Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 n.5 (9th Cir. 1997)*; Liberty Mut. Fire Ins. Co. v. Bosa Dev. California II, Inc.*, No. 17-CV-0666, 2020 WL 1864645, at *9 (S.D. Cal. Apr. 13, 2020)*; Yavari v. Pompeo*, No. 2:19-CV-02524, 2019 WL 6720995, at *6 (C.D. Cal. Oct. 10, 2019).  The Ninth Circuit has rejected NTG's suggestion that a decision can have precedential value where it was purportedly "vacated on other grounds":

> Although the Authority contends that the decision was 'vacated on other grounds,' we find that contention curious. A decision may be *reversed* on other grounds, but a decision that has been *vacated* has no precedential authority whatsoever.

*See Durning*, 950 F.2d at 1424 n.2 (emphasis original; citation omitted); *see also League of United Latin Am.*, 131 F.3d at 1305 n.5 ("[W]e note that the Ninth Circuit's decision in *Yniguez v. Arizona* was vacated by the Supreme Court, and is thus wholly without precedential authority.").  The "Ninth Circuit precedent suggests that a reversal … still has precedential value while a vacated decision is entirely deprived of precedential effect."  *Yavari*, 2019 WL 6720995, at *6 (C.D. Cal. Oct. 10, 2019) (citation omitted).

Consequently, the only apposite decision NTG presented in support of its position was vacated and is therefore not citable precedent.[4]  Encouraging this Court to sustain its defense based on bad law is improper conduct.  *See Morales v. Ralphs Grocery Co.*, No. 1:12-CV-00742, 2012 WL 6087699, at *8 (E.D. Cal. Dec. 6, 2012) (finding violation of duty of candor because "two of the cases cited by counsel … were either vacated and remanded or overruled, and counsel failed to acknowledge their invalidity as required"); *Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Wong*, No. C09-1786, 2013 WL 1192626, at *4 (W.D. Wash. Mar. 22, 2013) (reminding counsel that duty of candor requires counsel to "cite relevant, binding authority"); *Curtis v. Home Depot U.S.A., Inc.*, No. 1:13-CV-01151, 2014 WL 1419369, at *5 (E.D. Cal. Apr. 11, 2014) ("Defendants' counsel is also admonished for citing authorities that were vacated and/or overruled, in support of this argument.").

Under the applicable precedent, NTG may not use post-filing acts of alleged misconduct from 2019 to form the basis of an unclean hands defense in this case.

## C. This Court's Prior Order Addressed the *Noerr-Pennington* Issue, that Order Is Law of the Case, and NTG Waived Argument Concerning the Law of the Case Doctrine

### 1. The Law of the Case Doctrine Applies

This Court addressed the exact same legal question in its Rule 11 Order: whether the alleged misconduct from 2019 fell within one of the *Noerr-Pennington* exceptions.  *See* Dkt. 1028 at 13-15.  When earlier evaluating NTG's *same factual allegations*, this Court held unequivocally that "The *Noerr-Pennington* sham

---

[4] The vacated *Halvorson* decision was issued in an adversarial bankruptcy proceeding in which the Bankruptcy Judge raised an unclean hands concern *sua sponte*.  *In re Halvorson*, 581 B.R. 610, 637 (Bankr. C.D. Cal. 2018), *vacated,* No. 8:15-AP-01454 MW, 2018 WL 6728484 (C.D. Cal. Dec. 21, 2018).  Although published in 2018, the Bankruptcy Judge failed to cite the prior decisions—including published decisions in California and the Ninth Circuit—that ruled exactly opposite on the same issue.  It is thus not citable precedent and, even were it not vacated, would nevertheless be an outlier, lacking persuasive value.

litigation exceptions do not apply."  *Id.* at 13; *see also id.* at 15 ("As to the 2019 conduct … NIC argues that NTG has no 'non-frivolous argument' to invoke the *Noerr-Pennington* exception.  The Court agrees.").  NIC explained in its opening motion that the Law of the Case doctrine applies and prevents NTG from relitigating this same issue.  *See* Dkt. 1040-1 at 15, 19, 22, 28.

The law of the case doctrine applies to this Court's conclusion that alleged conduct in 2019 fell within the *Noerr-Pennignton* immunity, and that such conduct was not subject to a "sham litigation" exception.  *See* Dkt. 1028 at 13-15.  "The 'law of the case' doctrine precludes a court from reconsidering an issue already decided by the same court or by a higher court in the identical action."  *Chavez v. Bank of Am. Corp.*, No. C-10-0653, 2012 WL 1594272, at *4 (N.D. Cal. May 4, 2012).  The law of the case doctrine should be followed unless NTG can establish one of the exceptions to that rule.  *See U.S. v. Jingles*, 702 F.3d 494, 503 (9th Cir. 2012) ("[Defendant] had his bite at the apple, and we will not give him a second bite unless one of the exceptions to the law of the case doctrine applies"); *United States v. Real Prop. Located at Incline Vill.*, 976 F. Supp. 1327, 1353–54 (D. Nev. 1997) ("Under the law of the case doctrine, a previous decision on a factual or legal issue must be followed in all subsequent proceedings in the trial court or on a later appeal in the appellate court, unless the court is persuaded that one of these five exceptions requires otherwise.").

NTG's unclean hands defense depends on the exact same conduct addressed by this Court in the Dkt. 1028 Order.  The Court concluded that *Noerr-Pennington* protects that exact same conduct.  *See* Dkt. 1028 at 15.  The law of the case doctrine applies on that issue.

### 2.   NTG Waived Argument Regarding Whether the *Noerr-Pennington* Doctrine Applies to NIC's Conduct in 2019

NTG's Opposition waived argument regarding the Law of the Case Doctrine by failing to oppose NIC's position.  *See generally* Dkt. 1047; *see also Premier*

*Constr. & Remode, Inc. v. Mesa Underwriters Special Ins. Co.*, No. EDCV182582, 2020 WL 5498072, at *9 (C.D. Cal. July 8, 2020) ("In Opposition, Plaintiffs fail to address the argument, and therefore waive the issue"); *Pac Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) ("[T]he plaintiffs did not raise that argument to the district court in their … opposition to the defendants' motion…, so the argument was waived").

NTG's Opposition brief makes no mention of the "Law of the Case" doctrine, and fails to explain why that doctrine would not govern here. *See generally* Dkt. 1047. NTG argues instead that this Court's Rule 11 Order has no collateral estoppel or res judicata effect. *See* Dkt. 1047 at 23 (arguing that the "Rule 11 Order was not a ruling on the merits and does not constitute res judicata or collateral estoppel"). NTG's entire argument is irrelevant, however, because questions of claim preclusion and collateral estoppel are independent of, and irrelevant to, whether the law of the case doctrine applies. *See Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1097 (9th Cir. 1994). "Law of the case is not synonymous with preclusion by final judgment." *See id.*; *see also Plantronics, Inc. v. Am. Home Assurance Co.*, No. 5:07-CV-06038, 2014 WL 2452577, at *2 n.22 (N.D. Cal. May 30, 2014) (same); *Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 809 F.3d 1223, 1231 (Fed. Cir. 2015) ("The law of the case [doctrine] does not involve preclusion after final judgment, but rather it regulates judicial affairs before final judgment."). The law of the case doctrine would "become[] meaningless" if parties could continue to litigate the same issues repeatedly through slightly different contexts, as NTG attempts here. *See Plantronics, Inc. v. Am. Home Assurance Co.*, No. 5:07-CV-06038, 2014 WL 2452577, at *2 n.22 (N.D. Cal. May 30, 2014) ("The law of the case doctrine becomes meaningless, at least in the context of a single action, in a single court, before a single judge, if the court accords its own prior rulings no deference. Were it otherwise, a party dissatisfied with a prior ruling could reargue the point, without

end, and without new evidence or new controlling law.").

The "law of the case" rule is a distinct doctrine, and is not to be conflated with collateral estoppel and res judicata as NTG improperly attempts in its Opposition. *See In re All Am. Semiconductor, Inc.*, 427 B.R. 559, 565 (Bankr. S.D. Fla. 2010) ("*Res judicata,* collateral estoppel and the law of the case are three distinct but related court-created rules designed to promote judicial efficiency and systemic consistency"); *Karst Robbins Coal Co. v. Dir., Office of Workers' Comp. Programs*, 969 F.3d 316, 325 (6th Cir. 2020) (finding that party's "argument [improperly] conflates collateral estoppel with the law-of-the-case doctrine"); *Loera v. United States*, 714 F.3d 1025, 1031 (7th Cir. 2013) (ruling that collateral estoppel issues were "not applicable to law of the case"). NTG's suggestion that Rule 11 Orders have no res judicata or collateral estoppel effect is therefore irrelevant.

Courts have dismissed entire claims under the law of the case doctrine. *See Chavez*, 2012 WL 1594272, at *5-6.[5] Courts have dismissed affirmative defenses under the law of the case doctrine. *See Boyington v. Percheron Field Servs., LLC*, No. 3:14-CV-90, 2017 WL 5197159, at *5 (W.D. Pa. Nov. 8, 2017) ("[T]he law of the case doctrine precludes re-litigation of this issue … and the Court holds that the Second Affirmative Defense is dismissed with prejudice"); *In re Fleming Packaging Corp.*, 351 B.R. 626, 639 (Bankr. C.D. Ill. 2006). Courts have granted motions on the pleadings based on the "law of the case" doctrine. *See Kasdan v. Cty. of Los Angeles*, No. CV 12-06793, 2014 WL 6669354, at *4 (C.D. Cal. Nov. 24, 2014).

---

[5] *See also Jones v. Sears Roebuck & Co.*, No. CIVA 5:06-CV-00345, 2007 WL 964401, at *4 (S.D.W. Va. Mar. 28, 2007); *Wingo v. Gedney*, No. 314CV00449RCJVPC, 2016 WL 721306, at *3 (D. Nev. Jan. 20, 2016), *report and recommendation adopted,* No. 314CV00449RCJVPC, 2016 WL 730757 (D. Nev. Feb. 23, 2016); *Greene Cty. Tech Sch. Dist. v. MW*, No. 3:17-CV-00047-KGB, 2020 WL 2840156, at *7 (E.D. Ark. May 31, 2020).

NTG has failed to address the "law of the case" doctrine.  It also failed to provide any authority holding that this Court's prior legal rulings in Dkt. 1028 concerning *Noerr-Pennington* would not be "law of the case" when applied to the identical factual allegations asserted by NTG under an unclean hands defense. Indeed, NTG's unclean hands defense is predicated on wholesale incorporation of the identical allegations from the same Counterclaims that this Court deemed sanctionable under Rule 11 where NTG lacked a non-frivolous argument to invoke an exception to *Noerr-Pennington*.  *See* Dkt. 1017 at ¶473; Dkt. 980 at ¶¶48-94; Dkt. 1028.

### 3. NTG Waived Argument Regarding Whether the *Noerr-Pennington* Doctrine Applies to Affirmative Defenses

NTG also waived argument regarding whether the *Noerr-Pennington* protections extend to encompass unclean hands defenses.  *See* Dkt. 1040-1 at 19-22.  NIC's opening papers cited authority establishing that an unclean hands defense may not proceed based on protected litigation activities.  *Id.*  NIC also cited this Court's prior Order [Dkt. 784] where the Court concluded that an unclean hands defense is subject to limitations of the First Amendment.  *See id.* at 20-21.  NTG failed to address that argument in Opposition.  Therefore, while NTG has argued (erroneously) that alleged misconduct in 2019 falls within an exception to *Noerr-Pennington*, NTG has not contested that the *Noerr-Pennington* doctrine, if applicable, would bar the unclean hands defense.

### 4. NTG's Claim that It Lacked a "Full and Fair" Opportunity to Litigate the *Noerr-Pennington* Issue Is Baseless

NTG argues that it did not have a "full and fair opportunity to adjudicate the issues raised by NIC's Rule 11 motion."  *See* Dkt. 1047 at 23-25.  That argument is frivolous.  Here the question is whether the *Noerr-Pennington* doctrine applies on the face of the pleadings.  NTG had multiple opportunities to address that exact issue, and submitted three briefs on the point.  *See* Dkt. 1003 at 18-25; Dkt. 1005 at

14-29; Dkt. 1025 at 5-6.  NTG's argument in opposition to this Motion simply repeats many of the same arguments that Defendants advanced in those prior briefs.  *Compare* Dkt. 1047 at 17-18, 27-29 *with* Dkt. 105 at 14-29.  The *Noerr-Pennington* issue involved a question of law that this Court resolved on the pleadings against NTG.  *See* Dkt. 1028 at 13-15.  That same issue is before the Court again because NTG draws its unclean hands defense from the exact same allegations that were before the Court in the Dkt. 1028 Order.  *See* Dkt. 1017 at ¶473; Dkt. 980 at ¶¶48-94.

NTG apparently operates on the assumption that repeated assertion of legally barred allegations will eventually cause them to be accepted despite the legal bar and despite defendants' contumacious disregard of the Court's prior orders.  The law of the case doctrine applies.  Otherwise, the Court's Rule 11 Order and the substantive legal conclusions therein would have no effect on this litigation—an outcome that would undermine the Court's well-reasoned decision in Dkt. 1028.  The Rule 11 Order effectively dismissed NTG's allegations after the Court concluded the claims barred under the *Noerr-Pennington* doctrine.  *See* Dkt. 1028.  Indeed, the Court mooted NIC's parallel Rule 12(b)(6) motion to dismiss after having ruled instead under Rule 11, a decision that acknowledged the substantive and precedential effect of the Rule 11 Order.  *See* Dkt. 1028 at 12.

Because the law of the case doctrine applies to the same legal issues previously decided by this Court in August 2020, and because NTG has failed to oppose application of the law of the case doctrine, this Court should apply that doctrine here and rule consistent with its Dkt. 1028 order in context with the *Noerr-Pennington* issue.  The Court should therefore find that the *Noerr-Pennington* doctrine precludes NTG from asserting an unclean hands defense based on protected litigation activities.

### D. **NTG Has No Non-Frivolous Argument to Invoke an Exception to the**

### *Noerr-Pennington* **Doctrine**

Even if this Court revisits the same issues already adjudicated in Dkt. 1028, the Court should nonetheless reach the same conclusion.  NTG reargues the same flawed position that this Court rejected in Dkt. 1028.  NTG argues that the sham litigation exception depends exclusively on the "materiality" of an allegedly false statement to the Court.  *See* Dkt. 1047 at 28-29; *see also* Dkt. 1003 at 20-22; Dkt. 1025 at 6 (NTG arguing that "the reference to misrepresentations that 'deprive the litigation of its legitimacy' is a materiality requirement'").  As before, NTG misconstrues and conflates elements of the test in the Ninth Circuit.

### 1.   The Alleged Misconduct Did Not "Deprive the Litigation of Its Legitimacy"

"The third sham litigation exception applies if unlawful conduct 'consists of making intentional misrepresentations to the court.'"  Dkt. 1028 at 15 (quoting *Sosa*, 437 F.3d at 938).  "In such cases, 'litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.'"  *Id.* (quoting *Sosa*, 437 F.3d at 938).  The third *Noerr-Pennington* exception therefore includes two essential elements.  First, a party must have made an intentional misrepresentation to the Court.  Second, that misrepresentation must have deprived the litigation of its legitimacy.  NTG has only addressed the first element by alleging that NIC facilitated a material misrepresentation.[6]  NTG does not address the second element, and cannot show that the alleged misrepresentations "infected the core" of NIC's RICO lawsuit or deprived this case of legitimacy for two dispositive reasons:  (1) NIC withdrew the

---

[6] NTG argues that questions of fact exist concerning the sham litigation exception.  *See* Dkt. 1047 at 17-18.  Here, NTG fails to engage the issues presented by NIC's motion.  Whether a statement was intentionally false could potentially be an issue of fact in litigation.  But whether that alleged intentional misrepresentation "deprives the litigation of its legitimacy" is a question of law for the Court.  Here, NIC's motion proceeds on the second element only.  Because NTG cannot show that the alleged misrepresentations "deprived the litigation of its legitimacy," NTG cannot establish the third *Noerr* exception.

papers before any action occurred on same; and (2) the alleged misrepresentations "came to light" immediately in litigation and were presented before this Court.  It may be that an intentional misrepresentation must be "material" to fall within the third *Noerr-Pennington* exception because an immaterial misrepresentation will clearly not "infect the core" of a lawsuit.  But not all material misrepresentations are sufficient to trigger the third *Noerr* exception.  Were that so, the third *Noerr-Pennington* exception would swallow the doctrine because "materiality" would become the only relevant question when determining whether litigation activities were protectable.  That is clearly not the law in the Ninth Circuit, as this court has earlier recognized.  *See* Dkt. 1028 at 13-15.

To deprive the underlying suit of "its legitimacy," alleged acts of misrepresentation or fraud must be shown to "infect the core" of the case, and thus render illegitimate the underlying claims as a whole.  *See Thomas v. Hous. Auth. of Cty. of Los Angeles*, No. 04-CV-6970, 2006 WL 5670938, at *9 (C.D. Cal. Feb. 28, 2006).  Accordingly, "misrepresentations that 'deprive the [action] of its legitimacy must not only be knowing and intentional, but must also render the action 'not genuine' as that term is used in *Professional Real Estate Investors*." *Id*. "[I]t is apparent that any misrepresentation exception to the doctrine should be limited to misrepresentations respecting the substance of the claim that show that the party's litigation position had no objective basis, i.e., that it was not 'objectively genuine.'" *Id*. (collecting cases); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) (holding that "isolated instance of litigation misconduct would not, if proven, deprive the defense as a whole of its legitimacy").

An alleged misrepresentation cannot affect the legitimacy of proceedings if the Court never relies on that statement in a manner that calls into question the merits of the underlying suit.  *See* Dkt. 1028 at 15; *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1158-59 (N.D. Cal. 2014) (explaining that plaintiff's invocation of the sham

exception failed because plaintiff did not show how a judge's ruling was proximately caused by the alleged misrepresentation); Dkt. 88 at 12-13 (same, citing *Rupert*); *see also Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 401-02 (4th Cir. 2001).

An alleged misrepresentation cannot affect the legitimacy of proceedings if that misrepresentation was promptly brought to the Court's attention in the underlying case. *See Swallow*, 2018 WL 2197614, at *9. Where alleged misconduct "came to light" during the litigation, the misconduct cannot deprive the proceedings of their legitimacy. *See, e.g.*, Dkt. 1028 at 15; *Ungureanu v. A. Teichert & Son*, No. CIV S-11-0316, 2012 WL 1108831, at *9 (E.D. Cal. Apr. 2, 2012), *report and recommendation adopted*, No. CVS110316, 2012 WL 13036782 (E.D. Cal. May 29, 2012) ("[D]efendants' actions in the workers' compensation proceedings, as described in the SAC, came to light during that litigation, and therefore did not 'deprive the litigation of its legitimacy.'"); *Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14-2179, 2015 WL 349443, at *10 (C.D. Cal. Jan. 23, 2015) (Alleged "misrepresentations could not have deprived the litigation of its legitimacy given that the content of Plaintiffs' state court complaint was accessible to all involved in the state court litigation."). "In order to overcome Noerr-Pennington protection NTG cannot simply 'rehash arguments already addressed by the [Court] . . . to recast disputed issues from the underlying litigation as 'misrepresentations' by the other party.'" *See* Dkt. 1028 at 15 (quoting *Swallow v. Torngren*, No. 17-CV-05261, 2018 WL 2197614, at *10 (N.D. Cal. May 14, 2018), *aff'd*, 789 F. App'x 610 (9th Cir. 2020)).

Here the alleged misrepresentations were not relied on by this Court because the papers were withdrawn before any action occurred on same. The filings had no effect on the proceedings. Moreover, the allegations came to light almost immediately in litigation. On first notice of them, NIC withdrew its motion. *See* Dkt. 847. NTG thereafter filed a motion for sanctions, which this Court denied.

*See* Dkt. 855 (NTG Motion for Sanctions); Dkt. 891 (Order denying NTG Motion). NTG has no non-frivolous basis to invoke the third *Noerr-Pennington* exception, as this Court earlier ruled on the exact same allegations.  *See* Dkt. 1028 at 14-15. NTG has been heard, repeatedly.

### 2.  Whether an Alleged Misrepresentation Is "Material" Is Not the Dispositive Question

NTG argues that the only question is whether an alleged misrepresentation was "material."  Dkt. 1047 at 27-29.  In support of that argument, NTG cites a series of cases that address the elements of a criminal "perjury" charge.  *See* Dkt. 1047 at 28.  None of those cases is relevant to the *Noerr-Pennington* doctrine. This is not a criminal perjury case.  Whether a perjury charge requires proof that a statement was "material" is irrelevant to whether the *Noerr-Pennington* doctrine applies under an entirely different standard set by the Ninth Circuit.

NTG also relies on the Third Circuit's opinion in *Cheminor Drug* to argue that the *Noerr-Pennington* analysis concerns only the "materiality" of a misrepresentation.  *See* Dkt. 1047 at 27-28.  The *Cheminor* decision does not support NTG's argument.  NTG counsel has misconstrued the holding and applicability of that case.  That decision instead supports this Court's prior Order in Dkt. 1028 by explaining that the sham exception to *Noerr* requires a showing that the misrepresentation 'infected the core" of the underlying lawsuit because the entire action lacked objective merit:

> We decline to carve out a new exception to the broad immunity that *Noerr–Pennington* provides. Rather, we will determine whether Ethyl's petition was objectively baseless under the Supreme Court's test in *PRE, without regard to those facts that Cheminor alleges Ethyl misrepresented.* If the alleged misrepresented facts do not infect the core of Ethyl's claim and the government's resulting actions, then the petition had an objective basis and will receive *Noerr–Pennington* immunity under the first step of *PRE.* While we do not condone misrepresentations in a judicial setting, neither will we deprive litigants of immunity derived from the First Amendment's right to

petition the government if the alleged misrepresentations do not affect the core of the litigant's (here, Ethyl's) case. We note that other remedies such as provided by under Federal Rules of Civil Procedure 11 and 60(b)(3), exist for alleged misrepresentations that do not taint the core of the litigant's case.

*Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 123 (3d Cir. 1999).  The *Cheminor* case is not inconsistent with the two-part test in the Ninth Circuit which requires a showing that misrepresentations "deprived the litigation of its legitimacy."  Rather, it is consistent with that two-part test.  But even if *Cheminor* could be construed to require a different analysis, this Court is bound to follow the law in the Ninth Circuit.

Here, as this Court has acknowledged, NIC has an objective basis for its RICO claims.  *See* Dkt. 1028 at 14-15.  "This Court has applied the crime-fraud exception to NTG's attorney-client correspondence independent of the alleged misconduct in [NTG's unclean hands defense], and NIC has overcome various challenges such as an Anti-SLAPP motion, motion to dismiss, and a motion for summary judgment."  *Id.* at 14-15.  The alleged misconduct that supports NTG's unclean hands defense does not affect the objective legitimacy of NIC's RICO claims.  NTG has provided no specific argument to the contrary.

**E. Sanctions Are Appropriate Because NTG's Reassertion of Barred Allegations is Vexatious**

NIC seeks sanctions under 28 U.S.C. §1927 and this Court's inherent powers.  *See* Dkt. 1040-1 at 26-31.  NTG did not oppose NIC's request for sanctions, and therefore waived any opposition on this issue.  *See generally* Dkt. 1047.

In its unclean hands defense, NTG reasserts verbatim the same allegations that were subject to a Rule 11 sanction from this Court.  *See* Dkt. 1017 at ¶473; Dkt. 980 at ¶¶48-94; Dkt. 1028.  The same rationale that justified a Rule 11 sanction on the Counterclaims also applies to the unclean hands defense (i.e., the

*Noerr-Pennington* bar).  Moreover, under well-established law, including binding California state law, NTG may not assert an unclean hands defense based on conduct occurring after commencement of litigation.  *See supra* at Section B (pp. 13-16).  NTG had no valid authority in response.  The unclean hands defense is objectively baseless, just as NTG's counterclaims were objectively baseless.

Sanctions are appropriate where a party like NTG continues to re-litigate issues that have been disposed of by the Court.[7]  Sanctions are particularly justified where this Court already entered a Rule 11 sanction based on the same legal issues raised now again by Defendants.  *See In re Greco*, 113 B.R. 658, 666 (D. Haw. 1990), *aff'd and remanded sub nom. Greco v. Troy Corp.*, 952 F.2d 406 (9th Cir. 1991) (explaining that sanctions may be imposed for seeking reconsideration of issues absent a non-frivolous argument because "motions for reconsideration which seek simply to 'relitigate old issues' are as a matter of law without merit and frivolous."); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986) ("[T]he court found the motion frivolous because it introduced nothing new").

NTG's transparent purpose behind the defense is to put NIC's counsel on trial as part of a retaliatory litigation effort designed to bias the jury.  NTG directly argues in Opposition that its intent is to call NIC's counsel as witnesses at trial,

---

[7] *See, e.g., In re Peoro*, 793 F.2d 1048, 1051 (9th Cir. 1986) (affirming sanctions under 28 U.S.C. § 1927 for "relitigating [an] issue after it was decided against him in the original bankruptcy proceeding"). *Barber v. Vance*, No. 3:16-CV-2105-AC, 2019 WL 3539819, at *2 (D. Or. June 10, 2019), *report and recommendation adopted,* No. 3:16-CV-2105-AC, 2019 WL 3536815 (D. Or. Aug. 2, 2019), *appeal dismissed,* No. 19-35778, 2020 WL 1169673 (9th Cir. Jan. 21, 2020) (imposing sanctions under Section 1927 for party's "refusal to comply with court orders by continuing to assert claims the court had found improper or inappropriate in this matter…"); *United States v. Nesglo, Inc.,* 744 F.2d 887, 891 (1st Cir. 1984) (affirming award of § 1927 sanctions, in part, because party had "no right to relitigate the well-settled issue."); *Squires Golf Club v. Bank of Am.*, No. CIV.A. 10-6734, 2011 WL 130176, at *5 (E.D. Pa. Jan. 13, 2011) (awarding § 1927 sanction for a party seeking to "relitigate an issue of fact decided adversely to Squires in the prior action."); *Maloof v. Level Propane Gasses, Inc.*, 316 F. App'x 373, 377 (6th Cir. 2008) (affirming §1927 sanctions where party's filing represented a "third attempt" at seeking similar relief originally rejected by Bankruptcy Court).

thereby seeking to deprive NIC of its chosen counsel.  *See* Dkt. 1047 at 22 n.7.  In prior submissions, NIC has well-documented Defendant Ferrell's retaliatory and vexatious attempts to attack and smear opposing counsel.  *See, e.g.,* Dkt. 1000-1 at 24-30.  This Court imposed a rare Rule 11 sanction against NTG, Mr. Ferrell, and his counsel for assertion of the same factual allegations in counterclaims.  *See* Dkt. 1028.  The Court imposed a monetary sanction of over $157,000.  Dkt. 1054.  Even that Rule 11 sanction has failed to deter NTG from pursuing allegations that are objectively barred as a matter of law.

The Court has before it substantial evidence of subjective bad faith by Defendants and their counsel.  Defendants' opposition restates false and defamatory allegations against NIC and its counsel that this Court has twice rejected as unsupported by any evidence.  *See* Dkt. 891 at 18; Dkt. 1028 at 13.  The record on which Defendants base these false accusations is the very same record this Court has already considered in both prior orders whereupon the Court rejected them as without factual basis.  *Id*.  NIC has publicly filed every communication between the Declarants and NIC's counsel related to the preparation of the declarations at issue.  *See* Dkts. 1000-3 through 1000-5; Dkts. 859-4 through 859-26.  Not only does the record lend no support to Defendants' false accusations, but it actually proves those accusations false.  *Id*.  Despite this Court's findings, Defendants and their counsel continue their campaign to smear NIC's counsel in filing after filing.

This misconduct does not stand in isolation, but rather is part of an even larger pattern demonstrating vexatious and bad faith litigation tactics.  Defendants have been sanctioned or admonished for taking unjustifiable positions in this case at least six (6) times.  *See, e.g.,* Dkt. 659 at 8; Dkt. 130; Dkt. 241 at 17-18; Dkt. 284; Dkt. 525; Dkt. 559; Dkt. 799; Dkt. 853; Dkt. 1028; *NIC v. NTG et al.*, No. 2:19-mc-00011 (C.D. Cal.), Dkts. 84, 90.  An NTG defendant was sanctioned for filing a false declaration with this Court.  *See* Dkt. 130.  NTG was sanctioned by

the Ninth Circuit for pursuing a frivolous interlocutory appeal.  *See* Dkt. 799. NTG was sanctioned by this Court under Rule 11.  Dkt. 1028; Dkt. 1054.

Defendants' counsel, Callahan & Blaine, is complicit in the Defendants' sanctionable efforts to smear opposing counsel without any factual basis and have unrelentingly advanced legally and factually frivolous positions before this Court. Defendants and their counsel have spewed venomous rhetoric against NIC's counsel in more than one dozen briefs before this Court.[8]  The California Rules of Professional Conduct and the Central District Civility Guidelines demand that attorneys practicing before this venerable Court comport themselves in a manner that reflects well upon the Court and the legal profession.  Similarly, members of the Court, like NIC's counsel, are justified in expecting protection from abusive and unprofessional conduct by opposing counsel.  The intentional, repeat, and malicious misconduct evidences subjective bad faith and warrants stiff sanctions in light of the brazen refusal to abide by this Court's Rule 11 Order.  Absent judicial intervention, the record demonstrates without question that Defendants will continue to advance frivolous accusations against NIC and its counsel.

Given this history, monetary sanctions are evidently inadequate to deter future misconduct.  In addition to an award of its fees and costs, NIC therefore requests that this Court issue a sanction barring NTG from introducing purported "unclean hands" evidence in this case at trial or in support of dispositive motions on penalty of contempt.  That sanction is appropriate given that NTG is legally barred from advancing the frivolous unclean hands defense.  That sanction is also appropriate to focus the parties on triable issues and bring this long-overdue case to trial.  NIC also requests that the Court issue any other sanction that it deems appropriate and necessary to punish and deter Defendants' misconduct.

---

[8] *See, e.g.,* Dkt. 846 at 5, 8; Dkt. 855 at 2, 9-10, 24; Dkt. 856 at 2-3, 23-27; Dkt. 861 at 20-22; Dkt. 865 at 6-8, 10-30; Dkt. 867 at 8-27; Dkt. 918 at 15-35; Dkt. 951 at 15-35; Dkt. 981 at 15-35; Dkt. 1002 at 21-22; Dkt. 1003 at 7-11; Dkt. 1005 at 22-27; Dkt. 1013-1 at 22.

## III.  <u>**CONCLUSION**</u>

For the foregoing reasons, NIC respectfully requests that this Court grant NIC's Rule 12(c) motion for judgment on Defendants' latest reiteration of its unclean hands defense.  The Court should dismiss that defense in its entirety.  The Court should enter sanctions against Defendants for the re-litigation of barred allegations in contumacious disregard of this Court's prior orders on the same issues.  The Court should award NIC its reasonable costs and attorney fees incurred in association with this motion.  The Court should also enter an order precluding NTG from introducing the "unclean hands" evidence at trial or in dispositive motions on penalty of contempt and issue any other sanction that the Court deems appropriate and necessary to punish and deter Defendants' misconduct.

/ / /

1

2    DATED:  October 12, 2020.

3                                          Respectfully submitted,

4

5                                          EMORD & ASSOCIATES, P.C.

6

7                              By:     _/s/ Peter A. Arhangelsky_____

8                                      Peter A. Arhangelsky, Esq. (SBN 291325)
                                       Joshua S. Furman, Esq. (pro hac vice)
9                                      *Attorneys for Plaintiff NIC*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2020 the foregoing, **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT UNDER RULE 12(c) ON DEFENDANTS' UNCLEAN HANDS DEFENSE [DKT. 1040]** was electronically filed using the Court's CM/ECF system and was sent by that system to the following:

Brendan M. Ford, Esq.
bford@FordDiulio, PC
650 Town Center Dr, Ste 760
Costa Mesa, CA 92625
Tel: (714) 384-5540
*Attorney for Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover,Matthew Dronkers, Taylor Demulder, Sam Pfleg,*

David J. Darnell, Esq.
ddarnell@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
*Attorney for Newport Trial Group and Scott Ferrell,*

Nicole Whyte
nwhyte@bremerwhyte.com
Benjamin Price
bprice@bremerwhyte.com
Kyle A. Riddles
kriddles@bremerwhyte.com
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000
*Attorneys for Ryan Ferrell and Andrew Baslow*

Robert Tauler, Esq.
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Blvd., Suite 510
Los Angeles, CA 90017
Tel: (310) 590-3927
*Attorney for David Reid and Victoria Knowles*

           */s/ Peter A. Arhangelsky*
           Peter A. Arhangelsky, Esq.