TAULER SMITH LLP
Robert Tauler (SBN 241964)
rtauler@taulersmith.com
626 Wilshire Boulevard, Suite 510
Los Angeles, California 90017
Tel: (310) 590-3927

Counsel for Defendants
VICTORIA C. KNOWLES and
DAVID REID

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., a Florida Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>Defendants. | CASE NO. 8:15-cv-02034-JVS (JCGx)<br><br>Assigned to the Hon. James V. Selna<br>Courtroom 10C<br><br>**NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS IN FAVOR OF VICTORIA C. KNOWLES AND DAVID REID**<br><br>Hearing Date:  November 16, 2020<br>Time:  1:30 p.m.<br>Place:  None set<br><br>Hon. JAMES V. SELNA<br><br>[Request for Judicial Notice filed concurrently] |

FERRELL'S MOTION FOR JUDGMENT ON THE PLEADINGS

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

NOTICE is given that Defendants VICTORIA C. KNOWLES and DAVID REID respectfully will and hereby do move the Court for an order granting judgment on the pleadings and dismissing without leave to amend Counts Two, Three and Four of the Fourth Amended Complaint (Docket No. 1007). The motion is calendared for Monday, November 16, 2020 at 1:30 p.m.

This motion is and will be based on the grounds that the Fourth Amended Complaint fails to plead those claims for relief plausibly and with particularity, as required by Rule 8(a) and 9(b) of the Fed. R. Civ. P., and that Knowles and Reid are entitled to judgment as a matter of law under Rule 12(c), and that Plaintiff Natural Immunogenics Corp. ("NIC") also lacks standing to pursue injunctive or other equitable relief.

This motion is and will be based on this notice of motion; the accompanying memorandum of points and authorities; the Request for Judicial Notice ("RJN") filed concurrently herewith; the pleadings and papers on file in this action; and on such oral argument and other matters as the Court may properly consider at the time of the hearing of this motion. A [Proposed] Order is attached, *infra*.

This motion is made following the conference of counsel pursuant to Civ. L.R. 7-3 that took place on October 9, 2020. NIC's counsel states that they do not oppose dismissal of Count Four, which alleges violations of the California Unfair Competition Law.

DATED: October 19, 2020

TAULER SMITH LLP

By: /s/ *Robert Tauler*
Robert Tauler
Attorneys for Defendants
VICTORIA C. KNOWLES
and DAVID REID

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I. BACKGROUND ............................................................................................. 1

II. ARGUMENT ................................................................................................... 3

    A. Knowles and Reid Are Entitled to Judgment as a Matter of Law as to Plaintiff's RICO Claims ........................................................................... 3

        1. Plaintiff's Damages are Non-Recoverable Attorney's Fees ....................... 4

        2. Plaintiff's Own Allegations Negate Any Possibility of RICO Injury to its Business and Property Resulting from the Alleged Predicate Offenses .................................................................................................. 6

        3. The RICO Statute Does Not Authorize Private Equitable Relief ............ 11

    B. Plaintiff Has No Plausible Claim for Relief under the California UCL ............ 12

III. CONCLUSION .............................................................................................. 13

CERTIFICATE OF SERVICE ............................................................................... 14

# TABLE OF AUTHORITIES

Cases

*Birmingham Steel Corp. v. Tennessee Valley Authority*, 353 F.3d 1331 (11th Cir. 2003) .................................................................................................................. 8

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008) ........................................................................................................ 6

*City of Oakland v. Wells Fargo & Co.*, 2020 WL 5035815 (9th Cir. Aug. 26, 2020) ...... 10

*CSX Transp., Inc. v. McBride*, 564 U.S. 685, 131 S. Ct. 2630, 180 L. Ed. 2d 637 (2011) ............................................................................................................ 10

*Exxon Co. v. Sofec*, 517 U.S. 830, 116 S. Ct. 1813, 135 L. Ed. 2d 113 (1996) .......... 10, 11

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ................................... 8

*Harmoni Int'l Spice v. Bai*, 2016 WL 6571272 (C.D. Cal. Aug. 5, 2016) ........................ 9

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010) ............................................................................................................ 4, 9

*Herzer v. Redstone*, 2018 WL 5094933 (C.D. Cal. July 10, 2018) .................................. 5

*Holloway v. Clackamas River Water*, 2014 WL 6998069 (D. Or. Sept. 9, 2014) ............. 5

*Holmes v. SIPC*, 503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992) ................. 4, 10

*Hunt v. Zuffa, LLC*, 361 F. Supp. 3d 992 (D. Nev. 2019) ................................................. 6

*Kamal v. Cty. of Los Angeles*, 2019 WL 2502433 (C.D. Cal. May 2, 2019) ..................... 5

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003) ........................................................................................ 12

*Ogden v. Wells Fargo Bank, N.A.*, 2015 WL 13413390 (C.D. Cal Feb. 20, 2015) ............ 5

*Oscar v. University Students Co-Op. Ass'n*, 965 F.2d 783 (9th Cir. 1992) ....................... 4

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243 (9th Cir. 2019) .............................................................. 3, 6

*Paulo v. Holder*, 669 F.3d 911 (9th Cir. 2011) ................................................................ 11

*Pick v. Kay*, 2020 U.S. Dist. LEXIS 119098 (C.D. Cal. July 7, 2020) ............................. 5

*Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076 (9th Cir. 1986) .............................. 12

*Rouse v. United States Dep't of State*, 567 F.3d 408 (9th Cir. 2009) ................................ 9

*Sedima v. Imrex Co.*, 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) ................. 4

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ........................................................ 6

*State v. Valerie Saxion, Inc.*, 450 S.W.3d 602 (Tex. Ct. App. 2014) ................................. 2

*Taylor v. Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) ................. 11

*Thomas v. Baca*, 308 Fed. App'x 87 (9th Cir. Jan. 9, 2009) ......................................... 4, 5

Statutes

18 U.S.C. § 1962(d) ........................................................................................................... 5

18 U.S.C. § 1964(c) ....................................................................................................... 1, 4

Cal. Bus. & Profs. Code § 17203 ................................................................................ 3, 12

Cal. Bus. & Profs. Code § 17204 ..................................................................................... 12

Rules

C.D. Cal. Civ. L.R. 7-3 ...................................................................................................... 1

Fed. R. Civ. P 12(b)(6) ...................................................................................................... 9

Fed. R. Civ. P. 12(c) .......................................................................................................... 1

Fed. R. Civ. P. 8(a) ........................................................................................................... 1

Fed. R. Civ. P. 9(b) ........................................................................................................... 1

Other Authorities

T. Cooley, Law of Torts 73-77, 812-813 (2d ed. 1888) .................................................... 9

W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 65, p. 452 (5th ed. 1984) ............................................................................................ 10

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Victoria C. Knowles and David Reid respectfully move for judgment on the pleadings and dismissal with prejudice of the RICO claims in Counts Two and Three of the Fourth Amended Complaint (Docket No. 1007) and the Unfair Competition Law (the "UCL") claim in Count Four.  *See* Fed. R. Civ. P. 12(c).  The Fourth Amended Complaint fails to plead those claims for relief plausibly and with particularity, as required by Rule 8(a) and 9(b) of the Fed. R. Civ. P., and no amendment is possible that would cure those defects.

Knowles and Reid were attorneys with Defendant Newport Trial Group (or "NTG") where, allegedly, they "designed, initiated, and pursued fabricated and fraudulent legal claims in state and federal court."  *See* Docket No. 1007, ¶ 5 (Knowles) and ¶ 6 (Reid).  Nevertheless, counsel for Plaintiff Natural-Immunogenics Corp. (or "NIC") have told counsel for Knowles and Reid, in connection with their conference under Civ. L.R. 7-3, that NIC agrees the UCL claim in Count Four ought to be dismissed, for lack of a cognizable remedy under the UCL.  Though counsel disagree regarding the RICO claims, NIC also does not (and cannot) plead plausibly and specifically that any alleged RICO predicate crimes by Knowles or Reid have actually or proximately caused any cognizable injury to the business or property of NIC, as required to justify pursuing a civil RICO case against them under 18 U.S.C. § 1964(c).

## I.   BACKGROUND

All the claims in this entire case arise from an underlying suit against NIC, styled as *Nilon v. Natural-Immunogenics Corp.*, No. 3:12- cv-00930-LAB-BGS, in the U.S. District Court for the Southern District of California (the "*Nilon v. NIC* Action").  In the underlying *Nilon v. NIC* Action, "Nilon's claim, as well as the claim of the putative class, [was] that NI made certain representations about the benefits of Sovereign Silver that simply aren't true, leaving every purchaser with a product of either diminished value or no value whatsoever."  *See* Order on NI's Motion to Dismiss and for Class Certification at 8, *Nilon v. NIC* Action (April 15, 2014) (Exhibit 3 to the accompanying

Request for Judicial Notice, or "RJN").  "Sovereign Silver" was a brand name for NIC's colloidal silver product, which "is basically positively charged silver particles suspended in purified water." *Id.* at 1.  NIC now claims the *Nilon v. NIC* Action lacked probable cause, solely because the two class representatives – namely, the "non-NTG Defendants" in this action, Andrew Nilon and Giovanni Sandoval – had not actually purchased the Sovereign Silver product ***in reliance*** on the representations about Sovereign Silver; and also because one of them (Sandoval) was not a member of the class of California residents (since he allegedly lived in Arizona).  *See* Fourth Am. Compl. (Docket No. 1007), ¶¶ 385-386.  Allegedly:

> In that suit [*i.e.*, the *Nilon v. NIC* Action], NTG promised the lead Plaintiff and class representative, Andrew Nilon, $1,000 from any settlement or judgment if he would serve as a putative plaintiff and support false allegations.  Nilon either did not purchase NIC's product before suit was filed or he purchased it at NTG's direction for the sole purpose of staging suit.  Thus, he did not rely on NIC's representations regarding the product and Nilon's allegations were therefore fraudulent and fabricated.

*Id.*, ¶ 13.  NIC therefore alleges that it "endured more than three years of litigation based on Nilon's fabricated and fraudulent claims, and incurred substantial legal fees as a proximate and foreseeable result of NTG's fraudulent scheme involving frivolous shakedown lawsuits." *Id.*, ¶ 14.

Importantly, NIC has never alleged that its own representations about Sovereign Silver's purported benefits were actually true. ***That*** part of the *Nilon v. NIC* Action has never been challenged as being "fabricated and fraudulent." *Cf. State v. Valerie Saxion, Inc.*, 450 S.W.3d 602, 605 n.2 (Tex. Ct. App. 2014) (describing allegations by the State of Texas concerning alleged misrepresentations about colloidal silver's purported benefits).  Instead:

> 29.   In the CLRA Scheme, NTG, its attorneys and its plaintiffs-for-hire made intentionally false representations that (1) the plaintiff purchased

2
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

the defendant's product in reliance on advertising claims and representations; (2) that the product did not work for the "plaintiff" as advertised; and (3) that the plaintiff was injured in their money or property as a result of their reliance on advertising claims.

Fourth Am. Compl. (Docket No. 1007), ¶ 29.  NIC's pleading adds:  "The fraudulent and fabricated Nilon suit was but one of many similar lawsuits filed by NTG over at least a five year period.  This Second Amended Complaint (SAC) [*sic*] sues NTG for its use of for-hire plaintiffs who suffered no actual injury in the suits NTG fabricated." *Id.*, ¶ 13. NIC further describes a "pattern" and "scheme" that spans far beyond the *Nilon v. NIC* Action, to encompass other lawsuits that had no connection with NIC nor any effect on NIC's business.  *See id.*, ¶ 2.  However, NIC only alleges that it suffered any actual injury, based on the expenses of defending the underlying *Nilon v. NIC* Action itself.  *See id.*, ¶ 447.

All of that is deeply ironic (if not malicious, in its own right), since (as it turns out) lack of reliance is also the main reason why NIC's own claims for RICO damages are doomed as a matter of law in this action.  "[L]ogically, a [RICO] plaintiff cannot even establish but-for causation if no one relied on the defendant's alleged misrepresentation." *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1259 (9th Cir. 2019).  Presumably because the UCL does allow actions for damages at all (*see* Cal. Bus. & Profs. Code § 17203), NIC does not expressly claim any damages in Count Four – which is why, now, NIC's counsel has agreed Count Four ought to be dismissed.  Counts Two, Three and Four against Knowles and Reid should be dismissed, without leave to amend.

## II.   ARGUMENT

### A.   Knowles and Reid Are Entitled to Judgment as a Matter of Law as to Plaintiff's RICO Claims.

"RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. University Students Co-Op.*

3

*Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) (en banc).  At bottom, Plaintiff NIC claims to be the victim of an allegedly tortious malicious prosecution in the underlying *Nilon v. NIC* Action – nothing more, nor less.  In contrast, the RICO statute "imposes a standing requirement: a plaintiff must show that the RICO violation proximately caused an injury to his business or property."  *Thomas v. Baca*, 308 Fed. App'x 87, 88 (9th Cir. Jan. 9, 2009).  To be clear, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  *Sedima v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985).  Therefore, "to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.' "  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010) (quoting *Holmes v. SIPC*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)).  Consequently, the inquiry into NIC's alleged injury and its putative RICO standing necessarily disregards the alleged misconduct concerning other lawsuits – where NIC was not involved – and focuses solely on the conduct of the underlying *Nilon v. NIC* Action against NIC itself.  As a matter of law, Knowles and Reid are entitled to judgment because NIC does not (and cannot) plausibly allege that any conduct in the *Nilon v. NIC* action (nor any of the other actions) proximately caused injury to NIC in its business or its property.

    **1.**    **Plaintiff's Damages are Non-Recoverable Attorney's Fees.**

NIC does not (and cannot) plausibly allege that Knowles or Reid have caused any actual injury to its "business or property."  Under RICO:

> **(c)** Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee ….

18 U.S.C. § 1964(c).  The Ninth Circuit "has not recognized the incurment of legal fees as an injury cognizable under RICO, and we decline to do so here."  *Thomas*, 308 Fed.

4

App'x at 88.  This Court acknowledged *Thomas* more than four years ago in this action (back on April 19, 2016), when the Court decided not to dismiss the Corrected First Amended Complaint on the basis of *Thomas* – despite NIC's attempt to recover its attorney's fees as RICO damages – reasoning that *Thomas* "did not affirmatively foreclose that possibility."  *See* Docket No. 88-1 at 18-19.  Today though, the weight of persuasive authority in this District and elsewhere holds that, indeed, legal fees are **not** an injury cognizable under RICO:  "The Ninth Circuit has not recognized, and specifically declined to recognize, legal fees as a cognizable injury under RICO."  *Herzer v. Redstone*, 2018 WL 5094933, at *5 (C.D. Cal. July 10, 2018) (citing *Thomas* and other decisions).

Here and now, Count Two alleges that "Plaintiff NIC was injured in its business and property because it endured approximately three years of protracted and costly litigation stemming entirely from the enterprise's false statements of material facts." Fourth Am. Compl. ¶ 447.  Count Three alleges that, "[a]s a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs [*sic*] have been injured in their [*sic*] business and property as described in paragraphs 453 through 458 herein." *Id.*, ¶ 459.  There is only one plaintiff in this action – namely, Plaintiff NIC – and NIC's only alleged injury to its business and property is the "protracted and costly litigation" of the *Nilon v. NIC* Action.  Protracted and costly litigation can be grounds to sue for malicious prosecution, but it is not a cognizable RICO injury to business or property.  *See also, e.g., Pick v. Kay*, 2020 U.S. Dist. LEXIS 119098, *19 (C.D. Cal. July 7, 2020); *Kamal v. Cty. of Los Angeles*, 2019 WL 2502433, *8-9 (C.D. Cal. May 2, 2019), *report and recommendation accepted*, 2019 WL 2501478 (C.D. Cal. June 17, 2019); *Ogden v. Wells Fargo Bank, N.A.*, 2015 WL 13413390, at *2 (C.D. Cal Feb. 20, 2015); *Holloway v. Clackamas River Water*, 2014 WL 6998069, at *9 (D. Or. Sept. 9, 2014).

Plaintiff also alleges in Count One (for malicious prosecution of the *Nilon v. NIC* Action) that "NIC incurred approximately $250,000 in legal fees and costs, plus damage

to goodwill and reputation (actual and presumed) provable at trial." *Id.*, ¶ 392. But damage to reputation is also insufficient to allege injury under RICO under Counts Two and Three. *See Hunt v. Zuffa, LLC*, 361 F. Supp. 3d 992, 1001 (D. Nev. 2019).

### 2. Plaintiff's Own Allegations Negate Any Possibility of RICO Injury to its Business and Property Resulting from the Alleged Predicate Offenses.

Furthermore (and separately), NIC cannot plausibly allege that its claimed attorney's fee RICO damages were actually caused by anything more direct and proximate than NIC's own lack of diligence. When RICO claims are predicated upon mail fraud or wire fraud (as they are here), the plaintiff must plead facts showing that reliance upon the allegedly false statements would have been reasonable. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006). The plaintiff also cannot plead proximate causation, without alleging facts sufficient to show that "someone" – though, not necessarily the plaintiff itself – actually "relied on the defendant's misrepresentations." *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008). This is because, as the Ninth Circuit has recently explained, "a plaintiff cannot even establish but-for causation if no one relied on the defendant's alleged misrepresentation." *Painters*, 943 F.3d at 1259 (citing *Bridge*, 553 U.S. at 658-59).

Mostly, NIC's current pleading does not even try to plead reliance by anyone. Nobody actually relied upon the demand letter of December 27, 2011. *See* Fourth Am. Compl., ¶¶ 58-62. Nobody actually relied upon the allegations of the *Nilon v. NIC* complaint filed in state court on March 2, 2012. *See id.*, ¶¶ 63-74. Instead, NIC filed an answer that flatly denied the allegations. *See* RJN Exhibit 1. Nobody actually relied upon Nilon's excuses for missing his deposition dates in May 2013, February 2014 or May 2014. *See id.* Fourth Am. Compl., ¶¶ 88-100. There is simply no allegation that NIC or anybody else was ever misled into believing those excuses were true. As a matter of law, therefore, neither Knowles not Reid is liable under RICO for these allegedly false statements.

6

MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

According to ¶ 81 of the Fourth Amended Complaint, the judge allowed leave to amend the *Nilon v. NIC* pleadings on September 30, 2013 in reliance upon the "representations made in the Motion to Certify" filed on behalf of Nilon on February 26, 2013.  According to this allegation, "[h]ad Judge Burns known the truth, he would have denied certification with prejudice since the action was brought by an invalid class representative and knowingly false representations of material fact." *Id.*  Allegedly, that motion "made the following false material representations":

    a.    That Nilon had purchased the Sovereign Silver product in San Diego County.

    b.    That Nilon had relied on representations made by [NIC] regarding the efficacy of Sovereign Silver, and, but for those representations, Nilon would not have purchased or paid as much for the product.

    c.    That Nilon's experience in relying on the representations made by NIC was similar to those of the "Class."

*Id.*, ¶ 67.  But Judge Burns actually said nothing in his ruling to indicate that the decision to allow leave to amend the complaint was based upon any of the cited (mis)representations in the motion to certify.  *See* Order Denying Motion for Class Certification *Without* Prejudice (RJN Exhibit 2), *Nilon v. NIC* Action (Sept. 30, 2013). To the contrary, the entire judicial analysis "reach[ed] beyond the parties' own arguments" (*id.* at 4) – meaning, in other words, that the court did not rely on the parties' contentions whatsoever in reaching its decision.  At the same time, the judge's order specifically "caution[ed]" that Nilon's complaint was really based on little more than "conclusory in nature" allegations, which would need to be "beefed up" if the case were to receive class certification. *Id.* at 5-6.  Thus, NIC can only speculate (at most) as to how Judge Burns might have ruled differently on September 30, 2013 by allowing leave to amend the complaint, if he had known differently *vis-à-vis* the alleged misstatements in the motion to certify.  Similarly, ¶ 86 alleges that the judge granted class certification on April 15, 2014, based upon a finding of "typicality," allegedly in reliance on the same

"intentionally false" statements contained in the amended complaint by Nilon. But the judge's decision expressly disavowed any reliance upon "the specific facts from which it [*i.e.*, Nilon's claim] arise or the relief sought." *See* Order on NI's Motion to Dismiss and Nilon's Motion for Class Certification (RJN Exhibit 3) at 8, *Nilon v. NIC* Action (April 15, 2014) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Once again, therefore, any inference of reliance is entirely speculative.

At most, a plausible allegation of reliance by anyone can only be found in ¶ 102-104, 106-107, 114 and 120 – where NIC alleges that Judge Burns allowed Nilon to withdraw and Sandoval to substitute as the class representative on August 22, 2014, relying upon allegedly false statements by Nilon concerning his grandmother's illness and moving to San Francisco to care for her, and other statements by Sandoval that he was a member of the class of California residents when, according to NIC's allegations, he was a resident of Arizona. *See* Order on Plaintiff's Motion to Substitute Class Representative (RJN Exhibit 5), *Nilon v. NIC* Action (Aug. 22, 2014). However, the court's alleged reliance is still not enough to demonstrate a plausible theory of causation between Knowles or Reid and the injury that NIC alleges was the result – namely, the attorney's fees for defending the *Nilon v. NIC* Action, after Sandoval's substitution. This is because, regardless of these alleged misrepresentations, the *Nilon v. NIC* Action still would not have been dismissed in August 2014 – and nothing in the Fourth Amended Complaint alleges plausibly (or at all) that it ***would*** have been dismissed, but for these alleged misstatements. This is made clear by the Order itself, where the court explained:

> "[O]nce certified, a class acquires a legal status separate from that of the named plaintiffs," and while there may be grounds for dismissing a named plaintiff as a representative, those aren't necessarily grounds "for the simultaneous dismissal of the class action, if members of that class might still have live claims." *Birmingham Steel Corp. v. Tennessee Valley Authority*, 353 F.3d 1331, 1336 (11th Cir. 2003).

RJN Exhibit 5 at 7. This indicates that Judge Burns would not have dismissed the case,

8

MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

*even if* Sandoval had told the truth about allegedly living in Arizona – in other words, not even if there were grounds for ***not*** allowing Sandoval as a named representative.  For the same reason, there is also no plausible basis to infer Judge Burns would have dismissed the case, ***even if*** Nilon had not lied (as alleged) about his grandmother in San Francisco.  At most, perhaps, it could be inferred that Nilon's request to withdraw would have been denied and that Sandoval's request to substitute would have been denied; but, "[i]t is speculation upon speculation" to infer that such denials would have led the court to dismiss the action, and thereby, that they would have saved NIC any of its claimed attorney's fees.  *See Rouse v. United States Dep't of State*, 567 F.3d 408, 417 (9th Cir. 2009) (affirming dismissal under Rule 12(b)(6), for "lack of causation").  To the contrary, the court was clear in stating that "this is a live case that deserves to see a substantive end."  RJN Exhibit 5 at 7.  Thus, the "alleged harm is too speculative and attenuated to have been proximately caused by the … Defendants' purportedly fraudulent submissions" in requesting to substitute Sandoval for Nilon as the class representative.  *See Harmoni Int'l Spice v. Bai*, 2016 WL 6571272, at *13 n.11 (C.D. Cal. Aug. 5, 2016).

   There is also a second and separate reason why the judge's alleged reliance in granting Sandoval's substitution for Nilon as the class representative on August 22, 2014 is not enough to plead a plausible theory of proximate causation.  The reason is that NIC's own lack of diligence, after Sandoval had substituted into the case, contributed to the expenses of defending the case.  "Proximate cause for RICO purposes ... should be evaluated in light of its common-law foundations."  *Hemi*, 559 U.S. at 9 (citation omitted).  The Supreme Court has explained generally that:

> Common-law "proximate cause" formulations varied, and were often both constricted and difficult to comprehend.  See T. Cooley, Law of Torts 73-77, 812-813 (2d ed. 1888) (describing, for example, prescriptions precluding recovery in the event of any "intervening" cause or any contributory negligence).  Some courts cut off liability if a "proximate cause" was not the sole proximate cause.  [W. Keeton, D. Dobbs, R. Keeton, & D. Owen,

9

MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Prosser and Keeton on Law of Torts] § 65, p. 452 [(5th ed. 1984)] (noting "tendency ... to look for some single, principal, dominant, 'proximate' cause of every injury").

*CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692-693, 131 S. Ct. 2630, 180 L. Ed. 2d 637 (2011) (holding that Congress has replaced the common law principles, for claims under the Federal Employers' Liability Act). Yet, despite the "often lamented … degree of disagreement regarding the principles of proximate causation," one thing is clearly agreed, under settled precedent: at common law, the plaintiff's own contributory negligence is an intervening or superseding cause, which precludes recovery. *See Exxon Co. v. Sofec*, 517 U.S. 830, 838, 116 S. Ct. 1813, 135 L. Ed. 2d 113 (1996).

When it comes to proximate cause, "the Supreme Court has clearly held that RICO 'should not get … an expansive reading[.]' " *City of Oakland v. Wells Fargo & Co.*, 2020 WL 5035815, at *14 n.22 (9th Cir. Aug. 26, 2020) (quoting *Holmes*, 503 U.S. at 266). Here, the court in the underlying *Nilon v. NIC* Action determined that NIC itself "contributed to the delay in this case" to such an extent that "[h]ad Natural Immunogenics acted with more diligence, it could have avoided the expenses" – meaning, its attorney's fees – that "it seeks to recover." *See* Order Denying Defendant's Motion for Sanctions (RJN Exhibit 8) at 7, *Nilon v. NIC* Action (Oct. 28, 2015). Importantly, NIC was requesting only $91,863.96 of its fees from NTG and Ferrell, because "NIC … requests only those costs and fees related to legal events that likely would have occurred regardless of whether Sandoval was deposed in October 2014 or April 2015." *See* Memorandum of Points and Authorities in Support of Defendant's Motion for Rule 11 and Other Monetary Sanctions (RJN Exhibit 7) at 2 n.2, *Nilon v. NIC* Action (June 24, 2015).[1] But even ***excluding*** fees that could have been avoided by

---

[1] As NIC itself explained:

In its Final Order on May 22, 2015, the Court noted that NIC's former counsel shared responsibility for delays in this case by failing to depose Plaintiff Sandoval in October 2014. … NIC respects that ruling and, accordingly, limits this instant request to fees and costs directly caused by Plaintiff's sanctionable conduct, while excluding fees and costs that NIC

deposing Sandoval back in October 2014, the court had already observed other instances of NIC's lack of diligence – that is to say, other than its own slow-walking of the Sandoval deposition until April 2015 – namely, NIC's "inexcusable" delay in seeking any orders relating to the deposition of Sandoval's predecessor Nilon on four occasions in May 2013, February 2014 and May 2014. *See* Order Granting in Part and Denying in Part Defendant's Motion to Compel (RJN Exhibit 4), at 5-7, *Nilon v. NIC* Action (July 31, 2014). Thus, by refusing to award even the ***remaining*** $91,863.96 of NIC's fees which the delay in deposing Sandoval did not affect, the court's decision of October 28, 2015 necessarily held that NIC's own lack of diligence contributed to causing all the other fees it incurred, too. That determination is preclusive here. *See Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved …, even if the issue recurs in the context of a different claim") (citation and internal quotation marks omitted); *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011) (stating the requirements for federal issue preclusion). Thus, as a matter of law, NIC's own contributory negligence is a superseding cause of the attorney's fees it incurred, which precludes proximate cause. *See Exxon*, 517 U.S. at 838.

### 3. The RICO Statute Does Not Authorize Private Equitable Relief.

As the Court has previously determined, by granting partial summary judgment nearly three years ago, NIC "does not have standing to seek injunctive relief in this case." *See* Docket No. 552 at 8 (Dec. 22, 2017). Nevertheless, the Fourth Amended Complaint continues to seek a broad set of injunctions and other equitable remedies. *See* Docket No. 1007 at 107 (¶¶ D, E, F and H of the Prayer for Relief). But even if NIC did have

---

incurred during, or as a result of, its failure to timely depose Plaintiff Sandoval in October 2014. In other words, NIC seeks only those costs and fees for legal events that would have occurred regardless of whether Mr. Sandoval was deposed in October 2014 or April 2015.

Notice of Hearing and Defendant's Motion for Rule 11 and Other Monetary Sanctions (RJN Exhibit 6), at iii n.1, *Nilon v. NIC* Action (June 24, 2015).

standing under Article III to pursue an injunction (which, it does not), the RICO statute does not allow for equitable relief in private civil actions like this one. *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1088 (9th Cir. 1986) ("Thus we conclude that Congress did not intend to give private RICO plaintiffs any right to injunctive relief."). This is because, "the inclusion of a single statutory reference to private plaintiffs, and the identification of a damages and fees remedy for such plaintiffs in part (c) [*i.e.*, 1.8 U.S.C. § 1964(c)], logically carries the negative implication that no other remedy was intended to be conferred on private plaintiffs." *Religious Tech.*, 796 F.2d at 1088. For this reason alone, judgment on the pleadings is warranted regarding the requested equitable remedies that are unavailable under RICO.

**B.     Plaintiff Has No Plausible Claim for Relief under the California UCL.**

"Plaintiff NIC brings this Cause of Action" – meaning, Count Four – "on behalf of themselves [*sic*] and on behalf of the public as private attorneys [*sic*] general pursuant to Business & Professional Code § 17204." Fourth Am. Compl. ¶ 466. Private parties like NIC can only seek equitable relief and restitution, not damages, under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003). Section 17203 authorizes the court to "make such orders or judgments . . . to ***restore*** to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (Emphasis added). A UCL restitution order under § 17203 is one " 'compelling a UCL defendant to return money ***obtained*** through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property ….' [Citation.]" *Id.* at 1144-45 (emphasis added). Nothing in the Fourth Amended Complaint even attempts to allege that Knowles or Reid has obtained any property that was ever taken from NIC. Consequently, no restitution is possible. There is nothing to be restored.

NIC's counsel has stated that they do not oppose dismissal of Count Four. Because the Court has already correctly determined that NIC also does not have standing to seek injunctive relief in this case, Knowles and Reid are entitled to judgment as a

matter of law on this UCL claim.

### III. CONCLUSION

Judgment on the pleadings is warranted regarding Counts Two, Three and Four against Knowles and Reid. Those claims for relief should be dismissed with prejudice, and without leave to amend, because any amendment would be futile.

DATED: October 19, 2020  TAULER SMITH LLP

By: /s/ *Robert Tauler*
Robert Tauler
Attorneys for Defendants
VICTORIA C. KNOWLES
and DAVID REID

# CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2020, copies of the foregoing document were served by the Court's CM/ECF system to all counsel of record in this action.

DATED: October 19, 2020                          TAULER SMITH LLP


By: /s/ *Robert Tauler*
Robert Tauler
Attorneys for Defendant
VICTORIA C. KNOWLES and
DAVID REID