1
Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
2
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
3
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
4
Emord & Associates, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
5
Gilbert, AZ 85295
6
Phone: (602) 388-8899
Fax: (602) 393-4361
7
*Attorneys for Plaintiff*

8

9
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11
NATURAL-IMMUNOGENICS
CORP.,
12

13
                    Plaintiff,
14
        v.
15
NEWPORT TRIAL GROUP, et al.,
16

17
                    Defendants.
18

Case No. 8:15-cv-02034-JVS (JCG)
JAMs Ref. No:  1220055347

**PLAINTIFF NIC'S OPPOSITION TO
DEFENDANTS  VICTORIA
KNOWLES AND DAVID REID'S
MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS
[DKT. 1057]**

19
Hearing Date:    November 16, 2020
Time:            1:30 PM
20
Courtroom:       10C
Judge:           Hon. James V. Selna
21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   FACTS AND PROCEDURAL HISTORY ............................................1

III.  LEGAL STANDARD ...........................................................................3

IV.   ARGUMENT.........................................................................................3

    A.   Defendants Have Grossly Delayed Bringing this Motion ............................3

    B.   Attorney's Fees Incurred in Defending Against Sham Lawsuits Are a Cognizable Injury Recoverable Under the RICO Statute ....................................................................................6

        1.   That NIC's Legal Fees Are a Cognizable RICO Injury Is the Law-of-the-Case ...........................................................6

        2.   Plain Application of the RICO Statute Supports the Court's Conclusion that Legal Fees Are a Cognizable RICO Injury ...................7

        3.   Legal Fees Incurred in *Defense* of Fraudulent Lawsuits Are Cognizable Injuries Under RICO..........................................13

    C.   Reliance Is Not an Element of NIC's RICO Claim and Need Not Be Pled ........................................................................15

        1.   Reliance Is Not an Element of a RICO Claim ........................................15

        2.   Because Reliance Is Not an Element of a RICO Claim, NIC Is Not Required To Plead Reliance in the FAC ......................................17

        3.   Assuming, *Arguendo*, That Reliance Is Required at the Pleading Stage, the FAC Adequately Alleges Reliance ........................18

    D.   The Allegations in the Complaint Demonstrate Proximate Causation As a Matter of Law ..................................................19

    E.   NIC Does Not Oppose Dismissal of the UCL Claim ................................23

    F.   NIC Does Not Seek Injunctive Relief Through its RICO Claim ........................................................................23

V.    CONCLUSION....................................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Cases**

*Alexander v. City of Chicago*, 994 F.2d 333 (7th Cir. 1993)......................................4

*Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) ...............6, 7

*Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988) .............................11, 15

*Biggs v. Eaglewood Mortg., LLC*, 353 F. App'x 864 (4th Cir. 2009) (unpublished) .......................................................................................................17

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)..........................*passim*

*Buckley v. Evans*, No. 2:02-CV-01451, 2007 WL 2900173 (E.D. Cal. Sept. 28, 2007)......................................................................................................3

*Burger v. Kuimelis*, 325 F. Supp. 2d 1026 (N.D. Cal. 2004) .................8, 11, 13, 15

*Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008) ........................8

*Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396 (N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001) ...........................................................3

*Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083 (9th Cir.2002) ..............................8

*Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012) ........................................17

*Crandall v. Semillon Inc.*, No. 15CV1257, 2016 WL 4479397 (S.D. Cal. Aug. 25, 2016)....................................................................................................22

*Dela Rosa v. Scottsdale Mem'l Health Sys., Inc.*, 136 F.3d 1241 (9th Cir. 1998) .............................................................................................................22

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (*en banc*) ...........................................8

*Handeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997)..................................11, 15, 21

*Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648 (9th Cir. 2019) ..............12, 13, 21

*Harmoni Int'l Spice, Inc. v. Wenxuan Bai*, No. CV1600614, 2016 WL 9275400 (C.D. Cal. Nov. 14, 2016), *rev'd and remanded sub nom. Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648 (9th Cir. 2019)......................12

*Hoffman v. Zenith Ins. Co.*, No. SACV10355, 2010 WL 11558157 (C.D. Cal. Aug. 31, 2010) ........................................................18

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992) .....................................19, 20

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633 (3d Cir. 2015) ........................................................17

*In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21 (1st Cir. 2013) ........................................................17

*In re Outlaw Lab.*, Case No. 18-cv-840, (S.D. Cal. 2018) ........................................9

*In re Outlaw Lab., LP Litig.*, No. 18-CV-840, 2020 WL 1953584 (S.D. Cal. Apr. 23, 2020), *reconsideration denied,* No. 18-CV-840, 2020 WL 3469387 (S.D. Cal. June 25, 2020) ...........................................*passim*

*In re Outlaw Lab., LP Litig.*, No. 18-CV-840, 2020 WL 5552558 (S.D. Cal. Sept. 16, 2020) ........................................................10

*Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193 (C.D. Cal. 2008).............13, 14

*Johnson v. KB Home*, 720 F. Supp. 2d 1109 (D. Ariz. 2010) ...............................18

*Jones v. Town of Quartzsite*, No. CV-12-2629, 2014 WL 12617038 (D. Ariz. Feb. 24, 2014) ........................................................4

*Kamal v. Cty. of Los Angeles*, 2019 WL 2502433 (C.D. Cal. May 2, 2019), *report and recommendation accepted*, 2019 WL 2501478 (C.D. Cal. June 17, 2019) ........................................................13, 14

*Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060 (C.D. Cal. 2009)...................11, 13, 15

*Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944 (C.D. Cal. 1996).................6

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988).................................3

*Musacchio v. United States*, --- U.S. ---, 136 S. Ct. 709, 716, 193 L. Ed. 2d 639 (2016)........................................................6

*Nilon v. Natural-Immunogenics Corp.*, No. 3:12-cv-00930-LAB-BGS (C.D. Cal. 2012) ........................................................21

*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, No. 05-CV-08444, 2006 WL 8422003 (C.D. Cal. Aug. 9, 2006) ........................................................4, 5

*Ogden v. Wells Fargo Bank*, N.A., 2015 WL 13413390 (C.D. Cal Feb. 20, 2015) ...................................................................................................13

*Pepper v. United States*, 562 U.S. 476 (2011) ..........................................6

*Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131 (D. Haw. 2013) ...............................................................................18

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995) ..................................................................3

*Sec. & Exch. Comm'n v. Hemp, Inc.*, No. 2:16-CV-01413, 2018 WL 1220566 (D. Nev. Mar. 8, 2018) ...........................................................4

*Slaight v. Tata Consultancy Servs., Ltd.*, No. 15-CV-01696, 2018 WL 3820598 (N.D. Cal. Aug. 10, 2018) ...............................................4, 5

*St. Germain v. Howard*, 556 F.3d 261 (5th Cir. 2009) .........................17

*Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993)........11, 15

*Sweden v. Melius*, No. CV1404492, 2015 WL 7573622 (C.D. Cal. Nov. 25, 2015) .............................................................................................4

*Thomas v. Baca*, 308 F. App'x 87 (9th Cir. 2009) ................................14

*Transcription Commc'ns Corp. v. John Muir Health*, No. C 08-4418, 2009 WL 666943 (N.D. Cal. Mar. 13, 2009) .........................................16

*United States v. High Country Broad. Co.*, 3 F.3d 1244 (9th Cir. 1993) ...............22

*Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797 (E.D. Pa. 2007).....13, 14

**Statutes**

18 U.S.C. § 1962(c) .....................................................................8, 9, 15

18 U.S.C. § 1964(c) .................................................................8, 9, 14, 15

**Other Authorities**

VICE NEWS, *A Legal War Is Raging Over "Natural" Boner Pills*, *https://tinyurl.com/ViceTaulerSmith* (last visited Oct. 26, 2020) ........................10

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................3, 18

Fed. R. Civ. P. 12(c)............................................................*passim*

C.D. Cal. Civ. L.R. 83-2.2.2..............................................22

S.D. Cal. CivLR 83.3(j).......................................................22

## I.   <u>INTRODUCTION</u>

Plaintiff Natural-Immunogenics Corp. ("NIC") hereby opposes Defendants Victoria Knowles and David Reid's (the "Defendants'") Motion for Partial Judgment on the Pleadings filed as Docket No. 1057.  Defendants' Motion is untimely, barred by the law-of-the case, and foreclosed under binding precedent. The Court should deny Defendants' Motion.[1]

## II.   <u>FACTS AND PROCEDURAL HISTORY</u>

NIC filed this action on December 7, 2015.  *See* Dkt. 1 (original complaint). The original complaint alleged RICO injury in the form of attorney fees and costs incurred defending against NTG's frivolous and extortionate claims in the *Nilon v. NIC* matter.  *See id.* at ¶¶231–44.  Every iteration of NIC's complaint in this case has alleged that exact same injury.  *See* Dkt. 30 at ¶¶476–82; *see also* Dkt. 92 at ¶¶146–47, 332, 351, 387–91; Dkt. 911 at ¶¶14, 121, 165–66, 411, 447–51; Dkt. 1007 (Fourth Amended Complaint, hereinafter "FAC") at ¶¶14, 121, 165–66, 411, 447–51.

On February 22, 2016, the NTG Defendants, including Defendants Knowles and Reid, moved to dismiss NIC's First Amended Complaint.  *See* Dkt. 42; *see also* Dkt. 43.  Defendants expressly argued that attorney fees incurred while defending against a frivolous suit are not a cognizable injury under RICO.  Dkt. 43 at 25–27.  This Court rejected that argument and refused to rule that legal fees cannot be a sufficient injury under the RICO statute.  *See* Dkt. 88 at 18-19.

---

[1] This Court's Order at Docket No. 552 effectively dismissed NIC's UCL claim by dismissing the sole relief sought through that claim (i.e., a permanent injunction).  *See* Dkt. 552.  In the meet-and-confer process, NIC requested that Defendants note NIC's non-opposition to dismissal of the UCL claim in their opening brief, noting only a reservation of rights as to that claim for ultimate appeal to the Ninth Circuit, but Defendants failed to do so, choosing instead to "litigate" in full what is an uncontested point: that the matter is governed by the Court's prior order in Docket No. 552.

NIC filed a Second Amended Complaint on May 10, 2016 which corrected pleading deficiencies identified in the Court's Order at Docket No. 88-1.  *See* SAC, Dkt. 92.  The Defendants again moved to dismiss but did not reargue the previously addressed question of whether legal fees are a cognizable injury under RICO.  *See generally* Dkt. 120.  Moreover, Defendants did not challenge whether NIC established proximate causation.  *Id.*  The Court upheld NIC's RICO claims and largely denied Defendants' motions.  *See* Dkt. 157.  This lawsuit was thereafter fully litigated and currently exceeds 1,050 docket entries.

Discovery closed on December 31, 2017.  *See* Dkt. 500.  The original deadline to amend pleadings and add parties passed on August 24, 2016.  Then, after the Court issued a number of privilege orders, the Court granted NIC leave to file a Third Amended Complaint based on information obtained in discovery. Dkt. 910.  NIC filed that complaint on March 24, 2020.  *See* Dkt. 911.  Defendants moved to dismiss the TAC.  *See* Dkts. 913, 917.  The Court denied their substantive arguments but dismissed the complaint for failing to include specific allegations regarding the RICO enterprise.  *See* Dkt. 987.  The Court granted NIC leave to correct that deficiency.  *See id.* at 11–12.  NIC duly filed a Fourth Amended Complaint ("FAC") and the Defendants answered.  *See* Dkt. 1007; *see also* Dkts. 1016, 1017, 1020.

On October 19, 2020, Defendants Knowles and Reid filed a Motion for Partial Judgment on the Pleadings.  *See* Dkt. 1057.  Those defendants filed that motion nearly three (3) years after the discovery cut-off in this case.  The arguments raised in defendants' motion regarding proximate causation and injury were apparent on the pleadings as of NIC's very first complaint in December 2015. *See* Dkt. 1; *see also* Dkt. 88-1 at 18-19 (addressing legal fees issue).

For the reasons explained below, the Court should deny the motion.

## III.   LEGAL STANDARD

A motion for judgment on the pleadings is directed at the legal sufficiency of a complaint and is analyzed "virtually identical[ly]" to a Rule 12(b)(6) Motion to Dismiss.  *See Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001).  "A judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1381 (N.D. Cal. 1995).  "In ruling on a motion for judgment on the pleadings, district courts must accept all material allegations of fact alleged in the complaint as true, and resolve all doubts in favor of the nonmoving party."  *Id.* (citation omitted).  "To dismiss, 'it must appear to a certainty that the Plaintiff would not be entitled to relief under any set of facts that could be proved.'"  *Carmen*, 982 F. Supp. at 1401 (quoting *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988)).  Motions for judgment on the pleadings are disfavored.  *See Buckley v. Evans*, No. 2:02-CV-01451, 2007 WL 2900173, at *1 n. 2 (E.D. Cal. Sept. 28, 2007).

## IV.   ARGUMENT

Defendants have filed a grossly untimely motion for judgment on the pleadings which raises arguments against NIC's RICO claims that were adjudicated earlier against Defendants by this Court and are barred under binding precedent.  Defendants also raise argument based on an alleged lack of certain allegations in NIC's FAC even though the operative complaint expressly contains such allegations.  Defendants' arguments against NIC's RICO claims are without merit.  The Court should deny the Motion.

### A. Defendants Have Grossly Delayed Bringing this Motion

A Rule 12(c) motion may be brought "after the pleadings are closed but within such time as not to delay the trial."  *See* Fed. R. Civ. P. 12(c).  Ordinarily, a

motion for judgment on the pleadings should be made promptly after the close of the pleadings. *See Sec. & Exch. Comm'n v. Hemp, Inc.*, No. 2:16-CV-01413, 2018 WL 1220566, at *2 (D. Nev. Mar. 8, 2018). Generally, however, a Rule 12(c) motion is considered timely if it is made early enough not to delay trial or cause prejudice to the non-movant. *Id.* If a party engages in excessive delay before moving under Rule 12(c), the district court should refuse to hear the motion. *Id.* Such delay frustrates "[t]he purpose of a 12(c) motion [which] is to save parties the 'needless and often considerable time and expense which otherwise would be incurred during discovery and trial.'" *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, No. 05-CV-08444, 2006 WL 8422003, at *1 (C.D. Cal. Aug. 9, 2006) (quoting *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)).

Courts deny Rule 12(c) motions when grossly untimely. *See Sweden v. Melius*, No. CV1404492, 2015 WL 7573622, at *7 (C.D. Cal. Nov. 25, 2015) (denying 12(c) motion brought 15 months after complaint was filed); *Slaight v. Tata Consultancy Servs., Ltd.*, No. 15-CV-01696, 2018 WL 3820598, at *3 (N.D. Cal. Aug. 10, 2018) (denying Rule 12(c) motion as untimely when filed three years after "the complaint, both in its operative form as the 4AC and in its original form… put [defendant] on notice of plaintiffs' claims for injunctive relief."); *Jones v. Town of Quartzsite*, No. CV-12-2629, 2014 WL 12617038, at *2 (D. Ariz. Feb. 24, 2014) (denying 12(c) motion as untimely when filed nearly three months after the deadline to amend pleadings). Courts also consider whether the defendant has a valid justification for the delay. *See Northrop Grumman Corp.*, 2006 WL 8422003, at *2 (denying excessively delayed Rule 12(c) motion where "[t]here [was] no reason why Factory Mutual could not have presented these arguments in their earlier motions" and the arguments raised were "well-known and common"); *see also Slaight*, 2018 WL 3820598, at *3 (finding that earlier versions of the complaint put Defendants on notice of the alleged deficiencies and the delay was therefore inexplicable).

Here, Defendants' motion significantly exceeds the length of delays deemed
unreasonable in the precedent.  Defendants have filed their motion nearly three
years after the close of discovery, and just a few months before the currently
scheduled trial date.  The original deadline to amend the pleadings passed in 2016,
more than three years ago.  *See* Dkt. 91 (setting original deadline to amend
pleadings or add parties for August 24, 2016).  Under the precedent, that delay is
extreme and warrants summary denial of the Rule 12(c) motion.  Moreover, as in
*Northrop Grumman Corp.* and *Slaight*, Defendants have provided no reason why
these same arguments regarding proximate causation could not have been raised
when challenging NIC's original complaint or the Second Amended Complaint
more than four years ago in 2016.  Indeed, Defendants raised their argument
regarding the sufficiency of NIC's attorney fees as an injury under the RICO
statute in motions to dismiss NIC's original complaint.  Dkt. 43 at 25–27.  This
Court rejected the argument.  *See* Dkt. 88-1 at 18.  If Defendants believed the
argument worthy of another motion, they should have reargued that position in
their motion to dismiss NIC's Second Amended Complaint.  *See* Dkts. 120, 139.
They did not.  At a minimum, the Court's decision in Dkt. 88-1 at 18-19 clearly
reflects that Defendants were aware of these arguments, and had the capacity to
raise these concerns with the Court.  Their decision to wait another <u>four years and
six months</u> to reargue this position in a Rule 12(c) motion is unjustifiable.
*Compare* Order, Dkt. 88-1 at 18 (Apr. 19, 2016) *with* Knowles/Reid Motion, Dkt.
1057 (Oct. 19, 2020).  This Court denied Defendants' motions to dismiss in 2016,
and this case has now progressed through complicated discovery at considerable
cost to all parties and this Court over nearly five years of litigation and more than
1,000 docket entries.

The Defendants bring their motion now at a time when this Court has
repeatedly commented on the volume and expense of this lawsuit.  *See, e.g.*, Dkts.
788 at 12; 1028 at 16; 1030 at 6.  Defendants file their motion just four months

---

before the scheduled Pretrial Conference on February 19, 2020.  As explained
*infra*, even were the delay not excessive, Defendants' arguments lack merit and,
thus, the motion should be denied.

## B. Attorney's Fees Incurred in Defending Against Sham Lawsuits Are a Cognizable Injury Recoverable Under the RICO Statute

### 1. That NIC's Legal Fees Are a Cognizable RICO Injury Is the Law-of-the-Case

The Court rejected the NTG Defendants' argument that legal fees do not
represent a cognizable injury under RICO.  *See* Dkt. 88-1 at 18–19.[2]  The Court
held that legal fees incurred while defending against frivolous claims and sham
lawsuits can be cognizable injuries under the RICO statute.  *See id.*  Consistent
with that precedent, this Court explained that it "perceives no reason why the
payment of legal fees cannot be injury to a person's 'property' by reason of a
violation of section 1962."  *Id.* at 18.  That decision represents the law of the case
and governs here.

Under the law of the case doctrine, "when a court decides upon a rule of law,
that decision should continue to govern the same issues in subsequent stages in the
same case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir.
2018) (quoting *Musacchio v. United States*, --- U.S. ---, 136 S. Ct. 709, 716, 193 L.
Ed. 2d 639 (2016)) (citing *Pepper v. United States*, 562 U.S. 476, 506 (2011)).
The law of the case doctrine covers all matters decided "explicitly or by necessary
inference from the disposition of the issues." *Magnesystems, Inc. v. Nikken, Inc.*,
933 F. Supp. 944, 949 (C.D. Cal. 1996) (citation and quotation omitted).  The law
of the case will only be departed from in narrow circumstances, and the party
seeking a decision against the law of the case bears a "heightened burden … to

---

[2] The NTG Defendants, including Knowles and Reid, specifically argued this
issue:  "The Defendants second argument pertaining to standing is its argument
that NIC has not alleged an injury cognizable under RICO."  *See* Dkt. 88-1 at 18.

show clear error, changed law, new evidence, changed circumstances, or manifest injustice." *Askins*, 899 F.3d at 1043.

Knowles and Reid have failed the moving party's high burden to demonstrate a legal basis to depart from this Court's prior decision. *See* Dkt. 1057 at 9–10; *see generally id.* Knowles and Reid argued these exact points in earlier briefing, which the Court rejected in the Docket 88-1 Order. *See, e.g.*, Dkt. 43 at 25–27; Dkt. 88 at 18–19. The "fail[ure] to acknowledge the prior procedural history, and [the] fail[ure] to articulate the reasons for the motion in light of the prior relevant orders, implicate the law of the case doctrine, unnecessarily multiply the proceedings, and fall well below the level of practice which is expected in federal court." *Cleveland v. Fitter*, No. 2:17-CV-1893, 2020 WL 2528837, at *3 (C.D. Cal. Apr. 17, 2020), *report and recommendation adopted,* No. 217CV1893, 2020 WL 2523113 (C.D. Cal. May 18, 2020). Knowles and Reid do not establish the existence of an applicable exception.

The Defendants' instant motion was filed as Dkt. No. 1057. After more than 1,050 docket entries in a complex civil RICO lawsuit, this case is at a point where issues that have been settled or raised earlier in the case should not be re-litigated without a substantial justification. This Court should summarily deny the motion on that basis.

## 2. Plain Application of the RICO Statute Supports the Court's Conclusion that Legal Fees Are a Cognizable RICO Injury

Attorney fees incurred in defending against fraudulent lawsuits are a cognizable injury under the RICO statute. A plaintiff has standing under the RICO statute if that plaintiff suffered an injury to "business or property" caused by racketeering activity. *See* 18 U.S.C. §§ 1962(c), 1964(c). "To successfully plead a RICO injury, Plaintiffs … must plausibly allege 'a harm to a specific business interest or property interest' … [and] they must plausibly allege that their injury has resulted in 'concrete financial loss.'" *In re Outlaw Lab., LP Litig.*, No. 18-CV-

840, 2020 WL 1953584, at *8 (S.D. Cal. Apr. 23, 2020), *reconsideration denied,* No. 18-CV-840, 2020 WL 3469387 (S.D. Cal. June 25, 2020) (quoting *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (*en banc*); *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008)).   Attorney fees incurred by a business "directly… after receiving demand letters … are cognizable as an injury to the [plaintiff's] 'business' for the purposes of RICO." *Id.* at *9; *see also* Dkt. 88-1 at 18 ("the Court perceives no reason why the payment of legal fees cannot be injury to a person's 'property' by reason of a violation of section 1962.").   "Legal expenses are concrete financial losses, 'not mere injury to a valuable intangible property interest' and are thus recoverable under RICO." *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035 (N.D. Cal. 2004) (quoting *Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083, 1086–87 (9th Cir. 2002)).

Here, NIC's attorney fees meet that standard.   NIC incurred the relevant attorney fees "directly after receiving [a] demand letter[]" and in direct defense of the NTG firm's complaint in the underlying *Nilon v. NIC* litigation.   The NTG firm's demand letter and complaint threatened and pursued sham claims advanced through false representations and material omissions of fact.   *See* Dkt. 1007 at ¶¶55–159.   Those fees represent an "injury" to NIC's "business" because they were expended by NIC as a distinct financial loss directly connected to the racketeering activity:  NTG's fraudulent lawsuit.   *See In re Outlaw Lab.*, 2020 WL 1953584, at *9.   Those legal expenses are a "concrete financial loss" to NIC's business, and are not merely an "injury to a valuable intangible property."   *See Burger*, 325 F. Supp. 2d at 1035.   NIC's damages in this case (which are attorney fees and costs incurred in defending against the sham claims brought by NIC) are described in a specific dollar value to the penny.   *See* Dkt. 788 at 13.   Put simply, NIC's legal fees incurred responding to NTG's sham demand letter and in defense against the fraudulent *Nilon* action are an injury to NIC's business that is a concrete financial loss.   On their face, those fees are a cognizable RICO injury under Sections

1962(c) and 1964(c).  *See* 18 U.S.C. §§ 1962(c), 1964(c).

This Court's earlier decision explained that legal fees incurred responding to a frivolous demand letter and defending against a baseless suit are a cognizable RICO injury.  *See* Dkt. 88-1 at 18.  That decision is supported by recent decisions from Courts within this Circuit and other Circuit-level authorities.  In particular, the Southern District of California recently addressed this same issue and reached the same conclusion under highly analogous facts.  *See In re Outlaw Lab., LP Litig. See* Case No. 18-CV-840, 2020 WL 1953584, at *9 (S.D. Cal. Apr. 23, 2020), *reconsideration denied,* No. 18-CV-840, 2020 WL 3469387 (S.D. Cal. June 25, 2020).  The RICO scheme alleged in *In re Outlaw* operated similarly to NTG's scheme in this case, including NTG's use of a shell "Strataluz" company to pursue extortionate legal claims.  *See In re Outlaw Lab.*, Case No. 18-cv-840, (S.D. Cal. 2018), at Dkt. 114 (Second Amended Counterclaim).  NIC's Complaint alleges that NTG used "Strataluz LLC" to pursue shakedown settlements from dietary supplement companies selling male enhancement products.  *See* Dkt. 1057 at ¶¶40–45, 359–77.  Similarly, in the *In re Outlaw* matter, the counterclaimants bring RICO claims alleging a litigation racket involving sham lawsuits over male enhancement products.  *See In re Outlaw Lab., LP Litig.*, Case No. 18-CV-840 (S.D. Cal. 2018).  Those counterclaimants allege that attorney Robert Tauler of Tauler Smith LLP pursued baseless and extortionate litigation against retail stores.  *See id.* at Dkt. 114.  The Counterclaimants allege that Tauler designed and managed a scheme whereby Outlaw Laboratories sent sham demand letters containing "fraudulent alleg[ations] that Outlaw Laboratories is a manufacturer, distributor and retailer of male enhancement products," and that Tauler would then send extortionate threats of Lanham Act and UCL litigation on behalf of Outlaw.  *See In re Outlaw Lab.,* 2020 WL 1953584, at *1–3.  In fact, like the Strataluz products at issue in this case, the Outlaw products were never "sold in any stores in [the Southern District of California], California, or anywhere in the country and

were created as artifices upon which to found the enterprise's scheme." *Id.* at *3. The Outlaw demand letters contained additional frivolous and false statements of fact. *Id.* Those demand letters—sent by attorney Tauler—threatened damages of over $100,000 on a class basis, but Tauler would then settle for much lower values. *See id.*

Several of Tauler Smith LLP's targets filed counterclaims under the civil RICO statute for injuries suffered as part of Outlaw Laboratories' and Tauler Smith's extortionate scheme. *See generally id.*[3] Those retail stores specifically claimed RICO injuries by way of legal fees incurred analyzing the Outlaw demand letters and defending against the legal allegations brought by Outlaw and Tauler Smith LLP. *See id.* at *8–10. Tauler Smith (through attorney Robert Tauler) filed a motion to dismiss arguing the exact same points he now presents in Reid's and Knowles' instant Rule 12(c) motion:  that attorney fees incurred defending against sham lawsuits are not a cognizable injury to business or property under RICO. *See id.* at *9. The Court in *Outlaw* rejected that argument and held instead that attorney fees "were directly incurred by the convenience stores after receiving the demand letters, [therefore] they are cognizable as an injury to the Stores' 'business' for the purposes of RICO." *Id.* The *Outlaw* case is on all fours with the facts here. The Court in *Outlaw* later denied Tauler Smith's motion for summary judgment, finding sufficient evidence to create an issue of fact regarding Tauler Smith's role in the racketeering enterprise. *See In re Outlaw Lab., LP Litig.*, No. 18-CV-840, 2020 WL 5552558, at *9–14 (S.D. Cal. Sept. 16, 2020).

Defendants Knowles and Reid recently retained Mr. Tauler as new counsel

---

[3] Tauler's racket was exposed, in part, following an investigative journalist documentary that appeared on HBO's program called "Vice News." *See* VICE NEWS, *A Legal War Is Raging Over "Natural" Boner Pills*, *https://tinyurl.com/ViceTaulerSmith* (last visited Oct. 26, 2020).  A group of stores that were similarly situated banded together to pursue RICO counterclaims. *See In re Outlaw Lab., LP Litig.*, Case No. 18-CV-840 (S.D. Cal. 2018).  Those counterclaimants have pursued a class action, and class certification is pending. *See id.* at Dkt. 296.

in this case.  Mr. Tauler's first motion raises the exact issues rejected by the Southern District of California in *Outlaw* where Mr. Tauler (through Tauler Smith LLP) remains a RICO defendant.  The *Outlaw* decision deconstructed Tauler Smith LLP's argument (reasserted here), and explained why legal fees incurred defending against frivolous claims are cognizable under RICO where "the attorney fees were … incurred in the process of litigating a potential lawsuit that was part and parcel of the [racketeering] scheme."  *In re Outlaw Lab.*, 2020 WL 1953584, at *9.  "[O]btaining such settlements was one of the purposes of the scheme and the most probable response by any [target] reading the demand letters."  *Id.*  That holding was supported by circuit-level authority reaching identical conclusions of law.  For example, the Second Circuit held that a "plaintiff's past legal fees could confer standing as to a RICO violation because those fees were incurred in fighting 'frivolous lawsuits' initiated by the defendants, i.e., the very wrongful conduct that comprised the RICO claim."  *Id.* (citing *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1099, 1105 (2d Cir. 1988); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993)).  The Eighth Circuit held that "'attorneys' fees incurred in objecting to the scheme's supposedly fraudulent claims' were concrete injuries within the meaning of RICO."  *Id.* (brackets omitted) (quoting *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997)).  The *Outlaw* decision holds that "the attorneys' fees incurred in settling are also the result of a predicate act of racketeering, namely mail fraud, because the allegations in the allegedly fraudulent demand letters prompted the convenience stores to settle."  *In re Outlaw Lab.*, 2020 WL 1953584, at *9 (citing *Handeen*, 112 F.3d at 1354).  These decisions are further supported by district court decisions within the Ninth Circuit.  *See id.* at *10 (citing *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1084–85 (C.D. Cal. 2009); *Burger*, 325 F. Supp. 2d at 1035).

Applied here, NTG's scheme was operated in a manner substantively indistinguishable from the scheme in *Outlaw* and *Handeen*.  Notably, NTG's

Strataluz scheme was advanced using a sham product to manufacture Lanham Act claims just like Robert Tauler's scheme in *Outlaw*.  NTG's demand letter sent to NIC in December 2011 required NIC to decide between incurring significant legal expenses defending against the threatened claims or paying an extortionate settlement demand.  The scheme operated when NTG "directly injured" NIC by causing it to incur attorney fees to defend against the extortionate and frivolous claims.  NTG's scheme was effective because many of its targets apparently understood that paying extortionate settlement demands was cheaper than litigating at considerable cost.  The imposition of costly legal fees was therefore a specific and desired goal of the scheme, because those costs increased pressure on NTG's targets to settle claims.

Recent Ninth Circuit precedent also supports this Court's earlier conclusion (and the Southern District's conclusion) that legal fees are a cognizable RICO injury.  The Ninth Circuit recently permitted recovery of all costs incurred defending against an administrative review from the Department of Commerce that was initiated because of sham affidavits.  *See Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648 (9th Cir. 2019).  Those costs included "legal fees [incurred] in defending … against this sham proceeding and the fraudulent statements made regarding its business practices."  *See Harmoni Int'l Spice, Inc. v. Wenxuan Bai*, No. CV1600614, Dkt. 98 at ¶ 274 (C.D. Cal. 2016).  Thus, the Ninth Circuit has recognized that legal fees incurred defending against sham claims can be cognizable injuries to business.  *See Harmoni Int'l Spice, Inc. v. Wenxuan Bai*, No. CV1600614, 2016 WL 9275400, at *1 (C.D. Cal. Nov. 14, 2016), *rev'd and remanded sub nom. Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648 (9th Cir. 2019).

This Court should rule consistent with its earlier decision, with the Southern District's decision in *Outlaw*, and with the Ninth Circuit's decision in *Harmoni Int'l Spice, Inc.,* and hold that NIC's attorney's fees are a cognizable RICO injury.

### 3.  Legal Fees Incurred in *Defense* of Fraudulent Lawsuits Are Cognizable Injuries Under RICO

Defendants argue that certain courts have failed to recognize "legal fees" as a cognizable injury under RICO.  But the precedent draws a clear distinction between fees incurred in *prosecuting* a RICO claim in contrast with fees incurred in *defending* the prior underlying litigation.  Here NIC seeks fees incurred when defending against NTG's prior litigation.  NIC's alleged RICO injury does not include its fees incurred in prosecuting this instant lawsuit.  NIC's legal fees are therefore cognizable under the precedent as explained in more detail below.

The precedent regarding whether legal fees are a cognizable RICO injury establishes a clear, common-sense distinction between defensive and offensive legal fees.  The former is cognizable while the latter is not.  Courts that have addressed a party's legal fees incurred in direct *defense* of sham legal threats found that such fees are a cognizable RICO injury.  *See e.g.*, *In re Outlaw*, 2020 WL 1953584, at *9; *Lauter*, 642 F. Supp. 2d at 1084–85; *Burger*, 325 F. Supp. 2d at 1035; *see also Harmoni*, 914 F.3d 648 (reversing district court and finding defensive legal fees to be cognizable RICO injury).

By contrast, other Courts have addressed alleged RICO injuries that include legal fees incurred through the plaintiff's own decision to pursue offensive claims or proceedings.  Those Courts concluded that such *offensive* legal fees, not at issue here, are not cognizable under RICO.  *See e.g., Kamal v. Cty. of Los Angeles*, 2019 WL 2502433, at *8-9 (C.D. Cal. May 2, 2019), *report and recommendation accepted*, 2019 WL 2501478 (C.D. Cal. June 17, 2019); *Ogden v. Wells Fargo Bank*, N.A., 2015 WL 13413390, at *2 (C.D. Cal Feb. 20, 2015).  Similarly, where a plaintiff asserts an injury of legal fees incurred when prosecuting their own RICO claim, Courts have held that such offensive fees are not a cognizable injury.  *See e.g., Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008); *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007).  In fact, the unpublished Ninth Circuit decision in *Thomas v. Baca* was such a case.

*See* Request for Judicial Notice (filed concurrently herewith), at Exhs. 1–3.[4]  The Ninth Circuit declined to find that legal fees were a cognizable injury under RICO based on the facts of that case where the plaintiff argued that it suffered injury through legal fees incurred in prosecution of their own RICO lawsuit.  *See Thomas v. Baca*, 308 F. App'x 87, 88 (9th Cir. 2009) (unpublished).

This distinction is appropriate because a RICO injury must be incurred "by reason of" racketeering conduct and must be proximately caused by that conduct.  *See* Dkt. 88-1 at 19.  This Court earlier explained that "District courts in this circuit have gravitated instead towards the 'by reason of' element of § 1964(c) in holding there has been a failure to sufficiently allege standing."  *Id*.  Where legal fees are incurred in direct *defense* of sham litigation, as is the case here, those fees are certainly incurred "by reason of" racketeering conduct and are proximately caused by same.  *In re Outlaw*, 2020 WL 1953584, at *9.  However, where legal fees are incurred as a result of the plaintiff's decision to initiate legal proceedings, those fees may not necessarily be incurred "by reason of" or "proximately caused" by the racketeering conduct.  *See e.g., Kamal*, 2019 WL 2502433, at *2, *8-9 (finding a lack of proximate causation where legal fees were incurred in proceeding initiated by RICO plaintiff).  Otherwise, a RICO plaintiff could nullify the statute's injury requirement merely by filing a lawsuit and then bootstrapping the injury-in-fact with ensuing litigation expenses.  *See  Walter*, 480 F. Supp. 2d at 805 ("It would be illogical to allow a plaintiff to have RICO standing based on damages incurred by the plaintiff in paying his attorney to file the RICO action. RICO's injury requirement would be a nullity if paying an attorney to initiate the RICO action itself sufficed as a damage."); *see also Izenberg*, 589 F. Supp. 2d at 1204.  The Courts have rightfully rejected that approach.  The Courts have also rightfully

---

[4] Notably, the issue of whether legal fees are a cognizable injury was not addressed by the district court or in the opening or response briefs before the Ninth Circuit.  Instead, it was raised for the first time in Reply and the Ninth Circuit performed no substantive analysis of the issue.  *See Thomas*, 308 F. App'x at 88; *see also* Request for Judicial Notice, Exhs. 1–3.

accepted that legal fees incurred in *defense* of prior lawsuits are sufficient.  Unlike fees incurred in offensive or affirmative litigation, a civil defendant victimized by fraudulent litigation practices lacks the choice to avoid such fees.

Here, NIC's fees were exclusively incurred in direct defense of sham legal proceedings threatened and pursued by NTG from 2011 through 2015.  Those fees are a cognizable RICO injury under the plain application of the statutory definition and the applicable precedent.

Defendants attempt to create a broad and unsustainable rule that categorically excludes legal fees as a cognizable injury under RICO.  That is not the law and is unsupported by the precedent.  That rule would require this Court to reject the holdings in a number of well-reasoned decisions within this circuit.  *See e.g., In re Outlaw*, 2020 WL 1953584, at *9; *Lauter*, 642 F. Supp. 2d at 1084–85; *Burger*, 325 F. Supp. 2d at 1035.  That holding would also conflict with decisions by the Second and Eighth Circuits (*Handeen*, 112 F.3d at 1354; *Bankers Tr. Co.*, 859 F.2d at 1105; *Stochastic*, 995 F.2d at 1167), and conflict with the plain text of the RICO statute because prior-incurred legal fees are certainly a concrete and ascertainable financial loss to "business or property."  *See* 18 U.S.C. §§ 1962(c), 1964(c).  Instead, this Court should uphold its prior decision and find that NIC's legal fees incurred in defense of the *Nilon v. NIC* matter are a cognizable RICO injury.

**C. Reliance Is Not an Element of NIC's RICO Claim and Need Not Be Pled**

    **1. Reliance Is Not an Element of a RICO Claim**

Knowles and Reid argue that the Court must dismiss NIC's RICO claim because NIC does not allege "reliance."  Dkt. 1057 at 11–16.  That argument is foreclosed as a matter of law by controlling authorities and by the law of the case.  The Supreme Court and this Court have ruled that "reliance" is not an element of a RICO claim.

Reliance is not an element regardless of whether the RICO claim is premised on a pattern of mail and wire fraud or other predicate acts.  *See* Dkt. 157 at 13-14 (finding Defendants "misstate[] the law" and that allegations of reliance are not required).  Defendants argue that reliance is a required element of proximate cause. Knowles and Reid thus seek to engraft a "reliance" element into the proximate cause inquiry for all RICO claims.  *See, e.g.*, Dkt. 1057 at 11 (arguing that "plaintiff also cannot plead proximate causation, without alleging facts sufficient to show that 'someone' – though, not necessarily the plaintiff itself – actually 'relied on the defendant's misrepresentations.'") (citation omitted).  But the Supreme Court has rejected that same position and has held reliance not an element of proximate causation:

> [I]t may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation. "***But the fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance itself into an element of the cause of action***."

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 659 (2008) (emphasis added) (citation and quotation omitted).  Thus, evidence of reliance—while potentially relevant to establishing proximate causation at trial—is not a required element of a RICO claim and therefore does not permit judgment on the pleadings for its (alleged) absence from the Complaint (although allegations of reliance are made throughout NIC's Complaint).  *See Transcription Commc'ns Corp. v. John Muir Health*, No. C 08-4418, 2009 WL 666943, at *13 (N.D. Cal. Mar. 13, 2009) ("Just as in *Bridge*, TCC may be able to recover for the injuries it alleges resulted from Defendants' fraudulent misrepresentations to JMH; whether such injuries occurred is inappropriate for resolution on a motion to dismiss.").

Courts interpreting *Bridge* have uniformly agreed that reliance is not an element of a RICO claim.  *See In re Neurontin Mktg. & Sales Practices Litig.,* 712 F.3d 21, 37 (1st Cir. 2013) ("The *Bridge* Court rejected the attempt to impose a direct reliance requirement on top of the statutory language providing a private right of action under RICO, finding no support for it in the common law…. We likewise find none here.") (citation omitted); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 645 (3d Cir. 2015) ("The plaintiffs in *Bridge* were the 'primary and intended victims of the scheme to defraud' and their injury was a 'foreseeable and natural consequence of the scheme,' regardless of whether they relied on the misrepresentations.  The same is true here.") (brackets and footnote omitted); *Biggs v. Eaglewood Mortg., LLC*, 353 F. App'x 864, 866 (4th Cir. 2009) (unpublished) ("Though the district court was correct in determining that the instant situation was somewhat different from the facts in *Bridge,* it nevertheless erred by finding that '*Bridge* did not eliminate reliance as an element of a RICO claim predicated on mail fraud.'"); *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (citing *Bridges* for proposition that "no reliance requirement exists for civil causes of action under RICO for victims of mail fraud.").

Knowles and Reid's argument that NIC must plead reliance contradicts the precedent and expressly conflicts with binding law.  This Court should deny the motion.

## 2.  Because Reliance Is Not an Element of a RICO Claim, NIC Is Not Required To Plead Reliance in the FAC

"Analysis under Rule 12(c) is 'substantially identical to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and quotation omitted).

A party is not required to plead "reliance," and the absence of reliance from a complaint is not grounds for dismissal of a RICO claim.  *See, e.g.*, *Johnson v. KB Home*, 720 F. Supp. 2d 1109, 1119 (D. Ariz. 2010) ("Because *Bridge* does not require plaintiffs to plead reliance and Countrywide/Landsafe does not offer a cogent argument for why they must otherwise do so to show causation under the circumstances of this case, we deny Countrywide/Landsafe's motion to dismiss with respect to causation."); *Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131, 1162 (D. Haw. 2013) ("Kaiser also states that Plaintiff must allege actual and justified reliance, but Plaintiff is not required to plead such reliance under RICO.") (footnote omitted) (citing *Bridge*, 553 U.S. at 648); *Hoffman v. Zenith Ins. Co.*, No. SACV10355, 2010 WL 11558157, at *4 (C.D. Cal. Aug. 31, 2010) ("Zenith's only response is that Plaintiffs cannot show they relied upon Zenith's alleged misrepresentations.  However, this argument is premised upon the misunderstanding of law identified above—i.e., even if reliance needed to be shown, reliance would only need to be shown as to the scheme itself, not the communications in executing the scheme.  Moreover, reliance is not required to establish a claim under the mail fraud or wire fraud statutes.").

Because reliance is not an element of RICO, it need not be alleged in NIC's FAC.  Thus, the alleged absence of "reliance" from the FAC is not a basis for judgment on the pleadings in Knowles and Reid's favor.

### 3. Assuming, *Arguendo*, That Reliance Is Required at the Pleading Stage, the FAC Adequately Alleges Reliance

The FAC contains allegations supporting reliance on NTG's fraudulent representations and omissions.  NIC alleges that the *Nilon* Court relied on specific misrepresentations by NTG, Knowles, and Reid throughout the FAC.  For example, NIC alleges in paragraph 121 that Judge Burns relied on the false Sandoval documents to permit the *Nilon* action to proceed.  Dkt. 1007 at ¶121. NIC alleges that Judge Burns relied on the misrepresentations in the Second

Amended Complaint filed in the *Nilon* action to allow Sandoval's substitution in that matter.  *See id.* at ¶131.  NIC alleged that the Court relied on the fraudulent misrepresentations in granting the Motion to Withdraw in the *Nilon* matter.  *Id.* at ¶142; *see also id.* at ¶¶448-449.  Thus, NIC repeatedly alleges "reliance" throughout the FAC, contrary to Knowles and Reid's arguments.

In paragraph 448, NIC alleges reliance on NTG's misrepresentations about Nilon and Sandoval:  "NIC relied to its detriment on the representations made by the NTG Defendants, Nilon, and Sandoval."  *Id.* at ¶448.  Additionally, NIC alleges that it relied on the representations of NTG's licensed attorneys, such as Knowles and Reid, when defending against the allegations and claims in the *Nilon* action.  *Id.* at ¶449.  "Plaintiff NIC reasonably relied on NTG—licensed attorneys—to obey and properly assert statutes, court orders, court rules, rules of evidence, written agreements, representations to the court by officers of the court, ethical rules, and representations made under oath to the court by NTG's attorneys, agents, and clients."  *Id.*  Despite NIC's explicit allegations of both third-party reliance and NIC's own reliance, Knowles and Reid falsely argue in their Rule 12(c) Motion that NIC did not allege reliance in the complaint.  Dkt. 1057 at 11–16; *see, e.g.*, *id.* at 11 ("Mostly, NIC's current pleading does not even try to plead reliance by anyone.").  Thus, even were NIC required to allege reliance (the Supreme Court has said it is not), NIC has adequately pled reliance in the FAC.

### D. The Allegations in the Complaint Demonstrate Proximate Causation As a Matter of Law

Proximate cause turns on whether there is "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992).  The Supreme Court in *Bridge* held that the plaintiff's injury was a "direct result" of defendants' misrepresentations to a third party.  The Supreme Court further explained that plaintiff's injury "was a foreseeable and

natural consequence of [defendants'] scheme" and there were no "independent factors that account for [plaintiff's] injury, [thus] there [was] no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim [was] better situated to sue." *Bridge*, 553 U.S. at 658 (2008); *see also Holmes*, 503 U.S. at 269–70.

The allegations in this case establish proximate causation.  The NTG scheme was predicated on threatening and pursuing sham litigation to extort payment from the victim by leveraging high litigation costs and potential damages.  *See, e.g.*, Dkt. 1007 at ¶¶409–15, 417.  Defendants' false claims and misrepresentations directly caused injury to NIC—the exact party to whom the misrepresentations were made, and the party who had to defend against false claims and misrepresentations submitted to a third party government actor, the courts.  Here, there were no independent factors that accounted for NIC's injury.  Defendants made the false claims and misrepresentations, and operated the racketeering scheme, which involved a lawsuit against NIC directly causing NIC to incur substantial legal fees and costs.  There are no more "immediate victims" capable of suing Defendants, and no additional "plaintiffs" at different "levels of injury."  *See Bridge*, 553 U.S. at 654–55.

Where the relevant legal fees are "incurred in the process of litigating a potential lawsuit that was part and parcel of the [defendants'] scheme," those fees are proximately caused by the RICO activity.  *In re Outlaw Lab.*, 2020 WL 1953584, at *9.  The *In re Outlaw* Court explained that where the Defendants' scheme intended to obtain settlements, and settling represented the "most probable response by any [target]," the legal fees incurred and the settlement payments themselves are injuries proximately caused by the scheme.  *See id.*  Stated differently, "the attorneys' fees incurred … [are] the result of a predicate act of racketeering, namely mail fraud, because the allegations in the allegedly fraudulent

demand letters prompted the convenience stores to settle." *Id.* (citing *Handeen*, 112 F.3d at 1354).

The Ninth Circuit has also held that proximate cause is satisfied where a sham proceeding is initiated through use of a government body.  In *Harmoni*, plaintiff alleged that defendants filed "sham administrative review requests with the Department of Commerce … to force [plaintiff] to incur significant expenses defending itself during the course of the administrative review process" which injured plaintiff.  *Harmoni Int'l Spice, Inc.*, 914 F.3d at 650.  The Ninth Circuit reversed the District Court and held that plaintiff's allegations of "expenses incurred in responding to the Department of Commerce's administrative review" sufficiently alleged "proximate cause" where the Department of Commerce was required to investigate and plaintiffs were obligated to defend against that investigation.  *Id.* at 651–52.  Proximate cause is satisfied where "the defendants used the government as a tool to inflict harm on the plaintiff, which was the intended direct victim."  *See Mason v. AshBritt, Inc.*, No. 19-CV-01062, 2020 WL 127666, at *9 (N.D. Cal. Jan. 10, 2020) (interpreting *Harmoni*, 914 F.3d at 652).

Here, the Defendants initiated a legal proceeding in federal court against NIC that was based on fraudulent representations and omissions to extort money from NIC.  *See Nilon v. Natural-Immunogenics Corp.*, No. 3:12-cv-00930-LAB-BGS (C.D. Cal. 2012).  Like in *Harmoni* and *Outlaw*, NIC was the direct intended victim of the scheme and the sham proceeding was used to achieve Defendants' illicit extortion purpose.  As such, proximate causation exists between the racketeering activity and the legal fees incurred directly in defense of the sham claims.  Knowles and Reid's argument that the Court did not "rely" on the misrepresentations is irrelevant because in cases such as this—where government is used as a tool in defendants' extortionate scheme—the Court's third-party reliance is not a necessary inquiry.  Instead, here, similar to *Harmoni* and *Outlaw*,

NIC was a directly injured party, directly targeted by the racketeering scheme at the first level.

NIC was actually obligated by law to incur legal fees in defense of NTG's sham claims.  A corporation *must* retain counsel to defend against a lawsuit or risk default.  *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) ("A corporation may appear in federal court only through licensed counsel."); *Crandall v. Semillon Inc.*, No. 15CV1257, 2016 WL 4479397, at *2 (S.D. Cal. Aug. 25, 2016) ("When a corporation fails to retain counsel to represent it in an action, its answer may be stricken and a default judgment entered against it."); *see also* S.D. Cal. CivLR 83.3(j) (permitting a corporation to appear *only* through counsel); C.D. Cal. Civ. L.R. 83-2.2.2 (same).  NIC therefore could not have avoided payment of legal expenses, or else it would suffer default judgment on a complaint that sought millions of dollars in damages.  Moreover, Defendants reasonably anticipated that their sham legal threats would cause NIC to incur those legal fees because, as lawyers, they understood the requirement that a corporation must retain counsel.  *See id.*; *Dela Rosa v. Scottsdale Mem'l Health Sys., Inc.*, 136 F.3d 1241, 1244 (9th Cir. 1998) ("Just as an attorney who always practices in state court is expected to know the rules of administration and operation particular to that court, we expect an attorney practicing law in federal court to become familiar with and follow rules applicable to practice in this court.").  In fact, NIC alleges that Defendants' scheme was predicated on forcing defendants into settlements to avoid the legal fees incurred in defense.  *See, e.g.*, Dkt. 1007 at ¶¶183, 196, 218, 240, 246, 273, 287, 315, 364–65, 388, 408–15.  Defendants therefore intended to have NIC incur significant legal fees as a result of their sham suit.

Thus, NIC was directly and purposely injured in the form of legal fees by NTG's scheme, thereby establishing proximate cause.

### E. NIC Does Not Oppose Dismissal of the UCL Claim

Defendants move to dismiss NIC's UCL claim and purported monetary relief associated with that claim such as disgorgement and restitution.  For the reasons discussed below, NIC does not oppose the request.  At the outset, NIC never sought disgorgement or restitution under the UCL claim.  NIC did not seek restitution through its UCL claim because NIC never paid any money to NTG.  NIC only sought injunctive relief.  This Court's Order at Docket No. 552 dismissed NIC's only form of available relief under the UCL, rendering continued pursuit of that claim meaningless.  *See* Dkt. 552.  NIC earlier interpreted the Court's Order at Docket No. 552 as a dismissal of the UCL claim.  NIC listed the UCL claim in its Fourth Amended Complaint only as a vestige of the earlier pleading.  NIC therefore does not oppose an order formally dismissing the UCL claim, however, that non-opposition is made with a reservation of rights to appeal the Court's Order at Docket No. 552 (which NIC respectfully believes was erroneously decided).  During the meet-and-confer process, NIC notified defendants of its position that the UCL claim was not operative, and that no proceedings on the claim had occurred since at least this Court's Order in Dkt. 552.  NIC requested that Defendants note NIC's non-opposition in Defendants' moving papers.  Defendants did not provide NIC's position, and instead provided this Court with full briefing, which unnecessarily wastes the Court's time in evaluating a matter not in dispute.

### F. NIC Does Not Seek Injunctive Relief Through its RICO Claim

Defendants move to dismiss NIC's purported claim for injunctive relief under the RICO claim.  But NIC has never sought injunctive relief through its RICO claim, in part, because that relief is unavailable in a civil RICO lawsuit.  NIC notified Defendants during the meet and confer process that NIC does not seek injunctive relief through its RICO claim.  NIC informed defendants that, because NIC did not actually seek an injunction under RICO, filing a motion on

those grounds was unnecessary, wasting the Court's time in evaluating a matter not in dispute. The Court need not address this issue because it already dismissed injunctive relief from this case in Docket No. 552.

## V.    **CONCLUSION**

For the foregoing reasons, this Court should deny Defendants Knowles and Reid's motion under Rule 12(c) for judgment on the pleadings. That motion is grossly untimely, and, even if considered on the merits despite its untimeliness, conflicts with the law of the case and controlling precedent.

DATED: October 26, 2020

Respectfully submitted,

EMORD & ASSOCIATES, PC.

By:    */s/ Peter A. Arhangelsky*
Peter A. Arhangelsky, Esq. (SBN 291325)
Joshua S. Furman, Esq. (pro hac vice)
*Attorneys for Plaintiff Natural Immunogenics Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2020 the foregoing, **PLAINTIFF NIC'S OPPOSITION TO DEFENDANTS  VICTORIA KNOWLES AND DAVID REID'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS [DKT. 1057]** was electronically filed using the Court's CM/ECF system and was sent by that system to the following:

Brendan M. Ford, Esq.
bford@FordDiulio, PC
650 Town Center Dr, Ste 760
Costa Mesa, CA 92625
Tel: (714) 384-5540
*Attorney for Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover, Matthew Dronkers, Taylor Demulder, and Sam Pfleg,*

David J. Darnell, Esq.
ddarnell@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
*Attorney for Newport Trial Group and Scott Ferrell*

Nicole Whyte
nwhyte@bremerwhyte.com
Benjamin Price
bprice@bremerwhyte.com
Kyle A. Riddles
kriddles@bremerwhyte.com
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000
*Attorneys for Ryan Ferrell, Victoria Knowles, David Reid, and Andrew Baslow*

Robert Tauler, Esq.
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Blvd., Suite 510
Los Angeles, CA 90017
Tel: (310) 590-3927
*Attorney for David Reid and Victoria Knowles*

                     */s/ Peter A. Arhangelsky*

                    Peter A. Arhangelsky, Esq.