Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Drive, Bldg 6, Ste 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS, a Florida corporation,<br><br>Plaintiff,<br>v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>Defendants. | Case No.: 8:15-cv-02034-JVS (JCG)<br><br>**RULE 37 JOINT STIPULATION RE:**<br><br>**PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE**<br><br>Judge: Hon. James V. Selna<br>Special Master: Hon. Andrew Guilford (Ret.)<br><br>Fact Discovery Cut-off: Dec. 31, 2017<br>Expert Discovery Cut-off: Dec. 31, 2017<br>Pretrial Conf. Date: Feb. 22, 2021<br>Trial Date: Mar. 23, 2021 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................- 1 -

II.  PLAINTIFF'S PORTION .............................................................- 1 -

  A.   Procedural Background ..........................................................- 2 -

  B.   Legal Standard ......................................................................- 5 -

  C.   Argument ...............................................................................- 7 -

    1.   NIC Is Entitled to Take the Deposition of Defendant
      NTG's 30(b)(6) Designee .................................................- 7 -

    2.   Good Cause Exists to Extend the Presumptive Time Limit
      to 2 Days ..........................................................................- 9 -

    3.   Every Noticed Topic Is Relevant to the Claims or Defenses
      in this Case ......................................................................- 11 -

    4.   NIC's Noticed Topics Are Reasonable and Proportional to
      the Needs of the Case......................................................- 14 -

    5.   Defendants' "Scope of Discovery" Objection Is Meritless ..................- 18 -

  D.   NIC Should Be Awarded its Fees and Costs for Having to
    Bring this Motion..................................................................- 25 -

III. DEFENDANTS' PORTION ........................................................- 26 -

  A.   Procedural History ..............................................................- 28 -

    1.   The August 2, 2019 Hearing ...........................................- 30 -

    2.   NIC Raises the Issue of NTG's 30(b)(6) Deposition for the
      First Time in Late August 2019 .......................................- 31 -

    3.   The August 26, 2019, Hearing .........................................- 32 -

    4.   December 16, 2019, Hearing and Scheduling Order ..............- 32 -

    5.   NIC Waits Until February 21, 2020, to Serve its Rule
      30(B)(6) Notice ...............................................................- 33 -

    6.   NIC Refuses a Reasonable Compromise ..............................- 33 -

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF
DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

ii

B.  NIC Is Not Permitted to Take a 30(b)(6) Deposition of NTG Without Leave of Court ................................................................ - 35 -

   1.  NIC Never Obtained Leave to Take a Post Discovery Cut-off 30(b)(6) Deposition ............................................................ - 36 -

   2.  NIC Unreasonably Delayed in Raising the Issue of a 30(b)(6) Deposition and in Bringing the Instant Motion ..................... - 41 -

C.  NIC's 30(b)(6) Topics Are Grossly Excessive, Unreasonable, and Not Proportional to the Needs of this Case ............................................................................................... - 43 -

   1.  NIC's Notice is Excessive and Unreasonable on Its Face ................... - 43 -

   2.  NIC's 30(b)(6) Notice is Not Proportional to the Needs of this Case ............................................................................. - 48 -

D.  NIC's Justifications for its Topics Are Without Merit ........................... - 52 -

E.  NIC Should Not Be Permitted a Two-Day Deposition ........................... - 56 -

F.  NTG Should Be Granted a Protective Order ......................................... - 56 -

G.  NTG, Not NIC, Should Be Awarded Its Costs and Reasonable Attorneys' Fees ............................................................... - 57 -

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

iii

## I.   **INTRODUCTION**

Plaintiff Natural-Immunogenics Corp. ("Plaintiff" or "NIC") moves to compel the deposition of Defendant Newport Trial Group's 30(b)(6) Designee. NIC further moves for leave to increase the time limit for that deposition from 1 day (7 hours) to 2 days (14 hours).  Defendant NTG opposes.  Under Local Rule 37-2, the parties state their respective positions below.

The parties have met and conferred extensively by telephone and in writing regarding NIC's motion and were unable to reach an agreement that would eliminate or narrow issues here in dispute.

## II.   **PLAINTIFF'S PORTION**

NIC sues Defendant NTG under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and for malicious prosecution due to its central role in a sham litigation racketeering enterprise spanning more than six years.  *See generally* Dkt. 1007, Fourth Amended Complaint ("FAC"). The NTG firm is the "hub" of the Defendants' sham litigation enterprise.  Dkt. 1007 at ¶ 438. NTG is a principal participant in nearly every predicate act alleged in NIC's complaint (50 of 72 predicate acts).  *See* Dkt. 1007 at ¶¶ 427-35.  Those predicate acts occurred in association with nine specific lawsuits that are at issue in this case. *See* Dkt. 1007.  The NTG law firm possesses the most complete understanding of the facts relevant to NIC's case.  No single individual in this lawsuit possesses more knowledge of the allegations at issue in this case than NTG.  On May 15, 2020, NIC issued an Amended Notice of Deposition to NTG's 30(b)(6) Designee that identified 36 topics that targeted information within NTG's possession, custody, or control relevant and proportional to the issues in this case.  *See* Declaration of Joshua S. Furman Declaration ("Furman Decl.) at ¶ 8; *see also* Exhibit 3 (NIC's Amended Notice of Deposition).

NTG has refused to prepare anyone for the deposition on the topics listed and has claimed that NIC lacks the right to take NTG's deposition (despite the

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 1 -

Court's express statement to the contrary at the Rule 16 conference). *See* Exhibit 1 at 1-2 (claiming NIC has no right to depose Defendant NTG); *see also* Exhibit 6 at 1-2 (same); Exh. 13 (same).

### A. Procedural Background

NIC filed this action on December 7, 2015. *See* Dkt. 1. The parties submitted a Rule 26(f) Report on May 2, 2016. *See generally* Dkt. 90. In NIC's portion of that report, NIC requested that the Court modify the presumptive limits on depositions to instead allow NIC to depose every Defendant and take seven (7) additional non-party depositions. *Id.* at 28-29. The Court granted NIC's request over Defendants' objections. *See* Exhibit 8 at 5:20—25 (approving NIC's request and stating that NIC has the "right to take the deposition of each defendant.").

Discovery has been difficult and complicated in this case.[1] Judge Selna has explained that "[g]iven the nature of NTG's business as a law firm and the [fact that this case revolves around alleged litigation misconduct]," the parties have heavily litigated privilege issues. *See* Dkt. 902 at 3 (summarizing the privilege disputes). The Defendants withheld more than 6,000 files under claims of privilege, all of which were responsive to NIC's discovery requests that the Special Master deemed proportional to the needs of the case. Dkt. 241 at 16-17, 19.

NIC intended to move to compel those documents based, in part, on the crime-fraud exception. NIC needed preliminary discovery before it could file that motion. To that end, NIC deposed certain Non-NTG Defendants early in the case

---

[1] Defendants have been sanctioned in relation to this case six times. *See* Dkt. Nos. 130, 241, 525, 853, 1028; *see also Natural Immunogenics v. Newport Trial Group, et al.*, No. 2:19-mc-00011 (C.D. Cal.), Dkt. 84. Four of those sanctions were for taking frivolous positions in discovery, including a frivolous Ninth Circuit appeal of a discovery order. *Id.* They were recently sanctioned more than $157,000 for filing a frivolous counterclaim against opposing counsel and others. *See* Dkt. 1054. NTG was also sanctioned in the underlying matter for its discovery misconduct and violation of Rule 11. *See Nilon v. NIC*, No. 3:12-cv-00930 (S.D. Cal. July 31, 2014), Dkt. 55 at 2-3 (Discovery misconduct), Dkt. 117 at 5 (Rule 11).

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 2 -

because those individuals possessed knowledge of non-privileged facts. *See* Dkt. 902 at 4-5. NIC could not depose the attorney Defendants before receiving privilege rulings from the District Court because the majority of information at issue in those attorney depositions would otherwise have involved privileged areas. *See* Dkt. 447 at 3-4.

The Court has held that NIC diligently advanced its "Omnibus" Motion to Compel (based, in part, on the crime-fraud exception) and that, through no fault of NIC's, resolution of those key privilege issues occurred well after the discovery cut-off. *See* Dkt. 902 at 9. The Court also ruled that NIC was reasonable to postpone depositions of the NTG Defendants until after receiving rulings on NIC's privilege motions because those depositions would be document-intensive and should proceed on a more developed record. *See id.*; Dkt. 447 at 3-4. The Court stated that NIC would be permitted to take depositions of remaining Defendants "after it receives a ruling on the pending crime-fraud motion." *See* Dkt. 447 at 4. On January 22, 2018, the Court reiterated that NIC would be permitted to take the NTG Defendants' depositions after the crime-fraud proceedings were completed, and NTG counsel stated on the record that they "agree[] that the NTG defendants' depositions would go forward after the crime-fraud ruling." *See* Exhibit 7 (Jan. 22, 2018 Hearing Transcript) at 62:11—63:7. The term "NTG Defendants" has always included the corporate defendant NTG. *See e.g.,* Dkt. Nos. 88, 118, 154, 195, 198, 200, 234, 235, 238, 241, 296, 298, 299, 304, 338, 348, 350, 360, 365, 385, 412, 414, 423, 426, 447, 458, 479, 483, 488, 494, 516, 518, 519, 550, 559, 567, 568, 587, 606, 625, 652, 659, 677, 681, 753, 769, 770, 778, 786, 788, 891, 902, 910, 923, 945, and 1030.

From 2017 to the end of 2019, the Court issued a series of privilege-piercing orders following *in camera* review. Those Orders mandated the production of hundreds of documents which the Court found to be not-privileged, subject to the crime-fraud exception, or subject to the implied waiver doctrine. *See* Dkt. 902 at 3

(citing Dkt. Nos. 299, 659, 753, 785, 820, 878 (the "Privilege Orders")).  The Court granted NIC the right to recall certain depositions following those Privilege Orders.  *See* Dkt. 902 at 16.  The Court also reiterated that NIC would have the opportunity to depose all NTG defendants.  *Id* at 13 (noting that NTG will have the opportunity to depose NTG's principals directly).  NIC promptly sought to begin "post-privilege" discovery flowing from those Orders.  NIC's discovery efforts were initially delayed by the COVID-19 pandemic, along with NTG's decision to pursue frivolous counterclaims.[2]

NIC did not seek leave to take depositions of NTG Defendants that were not previously deposed because no party disputed that the Court's order at Docket No. 447 (and subsequent statements on the record) established that NIC could take depositions of NTG Defendants after NIC received privilege orders (even if those orders occurred after the cut-off).  NIC has already deposed Defendant Knowles, an attorney-defendant who NIC had not deposed prior to the privilege rulings consistent with Judge Selna's order at Docket No. 447.  *See* Exh. 10.  NIC has scheduled the deposition of Defendant Ryan Ferrell for October 29, 2020.  *See* Exh. 9.  The Defendants have not objected to those depositions because they recognize that NIC did not need leave.

On February 21, 2020, NIC served a Notice of Deposition of Defendant NTG's 30(b)(6) Designee.  *See* Furman Decl. at ¶2.  On March 23, 2020 NTG served Responses and Objections to NIC's listed topics.  *Id*. at ¶3; *see also* Exh. 13.  NTG responded with a global objection arguing that NIC is not permitted to take a deposition of Defendant NTG.  *See* Exhibit 13; *see also* Exh. 1.  On March 30, 2020, NIC served a meet and confer letter regarding its intent to file a motion to compel the deposition on the topics listed in NIC's Notice.  *See* Exhibit 2.  The

---

[2] On August 3, 2020, the Court struck Defendants NTG's and Scott Ferrell's Counterclaim and imposed Rule 11 sanctions against Defendants and their counsel for the frivolous filing. *See* Dkt. 1028.

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 4 -

parties met and conferred regarding NTG's objections.  *See* Furman Decl. at ¶ 6. In the interest of compromise, NIC agreed to serve amended topics in an effort to narrow disputes.  *See* Furman Decl at ¶ 7.  On May 15, 2020, NIC served Amended Topics for Examination of Newport Trial Group's Rule 30(b)(6) Designee.  *See* Exhibit 3.  NTG served Responses and Objections to NIC's Amended Notice on June 1, 2020 wherein NTG refused to produce a 30(b)(6) designee on the topics in NIC's Amended Notice of Deposition.  *See* Furman Decl. at ¶ 7; *see also* Exh. 4.

On June 29, 2020, NIC served a meet and confer letter regarding its intent to file a motion to compel the deposition on the topics listed in NIC's Amended Notice.  *See* Furman Decl at ¶ 10; *see also* Exhibit 5.  The parties held a telephonic conference on July 14, 2020.  *See* Furman Decl at ¶ 11.  On that call, counsel for NTG stated that he would again review NIC's Topics and provide feedback regarding NTG's specific position on the 30(b)(6) Deposition.  *Id.* at ¶ 12.  On July 17, 2020, counsel for NTG served a letter wherein NTG refused to produce an NTG Designee for deposition unless the deposition was unreasonably limited in scope.  *See* Exhibit 6.  The Parties were unable to resolve that dispute and agreed the matter would proceed to motions.

However, on August 6, 2020, Special Master Chapman resigned and withdrew from this case. *See* Dkt. 1029.  The Court selected Judge Guilford as the new Special Master on September 9, 2020.  *See* Dkt. 1039.  The Parties held an initial status conference with Judge Guilford on October 14, 2020.  NIC served its portion of this Joint Stipulation on Defendants on October 20, 2020.

### B. Legal Standard

Pursuant to Rule 30(b)(6), a party may notice the deposition of a corporation and identify with reasonable particularity the topics on which that corporation must be prepared to testify.  *See* Fed. R. Civ. P. 30(b)(6).  "The named organization

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 5 -

must then designate one or more [persons] who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id.* "The persons designated must testify about information known or reasonably available to the organization." *Id.* The purpose of a 30(b)(6) deposition is to bind the corporation to its positions in litigation, including those positions with regard to claims and defenses. *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012).

"The proper scope of the questioning of a Rule 30(b)(6) witness is not defined by the notice of deposition, but by Rule 26(b)(1) of the Federal Rules of Civil Procedure, unless a court otherwise directs." *Campbell v. Facebook Inc.*, 310 F.R.D. 439, 450 (N.D. Cal. 2015) (collecting cases). "In fact, a notice of deposition ... constitutes the minimum, not the maximum, about which a deponent must be prepared to speak." *Id.* Thus, as is always the case in discovery, the party seeking the discovery has the initial burden of demonstrating that the topics listed are relevant and then "the burden [shifts to] the refusing party to show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery." *Prasad v. George Washington Univ.*, 325 F.R.D. 1, 3 (D.D.C. 2018); *see also Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) ("the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence."). The Court must therefore evaluate the proportionality of the noticed topics through the lens of Rule 26(b)(1)'s proportionality factors. *Buie v. D.C.*, 327 F.R.D. 1, 6 (D.D.C. 2018).

Although the presumptive time limit for a deposition is 1 day (7 hours), "[t]he court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent." *See* Fed. R. Civ. P. 30(d)(1); *see also Schoonmaker v. City of Eureka*, No. 17-CV-06749-VC (RMI), 2018 WL 4896177,

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 6 -

at *3 (N.D. Cal. Oct. 9, 2018).  The relevant standard is "good cause."  *See Schoonmaker*, 2018 WL 4896177, at *3.

## C. Argument

### 1. NIC Is Entitled to Take the Deposition of Defendant NTG's 30(b)(6) Designee

At the initial Case Management Conference before Judge Selna in 2016, the Court ordered that, absent leave of Court, NIC would be permitted to take the deposition of every Defendant and seven (7) non-parties. *See* Exhibit 8 at 5:20-23; *see also* Dkt. 90 at 28 (Plaintiff's proposal that was adopted by the Court).  The Court expressly stated that NIC had a "**right** to take the deposition of each defendant." *See See* Exhibit 8 at 5:20—25 (emphasis added).  Despite the District Court's order on May 9, 2016, the Defendants have objected to NIC's Notice of Deposition on the grounds that NIC is not entitled to depose Defendant Newport Trial Group. *See* Exh. 13; *see also* Exh. 1; Exh. 6.  That position lacks merit.

Defendants' argument appears to be that NIC cannot take Defendant NTG's deposition after the initial discovery cut-off which passed in December 2017. *Id*. However, Judge Selna has already ruled that NIC will be permitted to take depositions of NTG Defendants following the cut-off because it was reasonable for NIC to wait until the Court ruled on NIC's numerous privilege motions. *See* 447 at 3-4.  The Court held that NIC could not have been expected to take depositions of NTG Defendants before first receiving hundreds of documents that were at issue in various privilege orders and, further, that NIC could not be faulted for the fact that those motions took years to resolve. *Id.*; *see also* Dkt. 902 at 7, 9-10; Dkt. 910 at 3.  NIC filed its motions well in advance of the cut-off, but the complexity of those disputes rendered depositions of the NTG Defendants on a sufficient record impossible until recently. *Id*.

Critically, on January 22, 2018, in response to the Court's reiteration that NIC could defer NTG Defendant depositions until after the privilege rulings, counsel for NTG expressly stated in open Court that:

> Your Honor, just to be clear, we have agreed that the NTG defendants' depositions would go forward after the crime-fraud ruling.

*See* Exhibit 7 at 63:5-7 (Jan. 22, 2018 Transcript of Proceedings).  From the outset of this case, the parties and the Court have referred to Defendants NTG, Scott Ferrell, David Reid, Victoria Knowles, Ryan Ferrell, and Andrew Baslow, collectively, as the "NTG Defendants."[3]  Defendants thus agreed in open Court on January 22, 2018 that NIC could take the deposition of Defendant NTG after receiving the privilege rulings.  Defendants' position now is therefore in direct conflict with their admission in open court on January 22, 2018 that they "agreed that the NTG Defendants' depositions would go forward after the crime-fraud ruling." *Id. but see* Exh. 1 (claiming NIC is not permitted to take the deposition of NTG because the discovery cut-off passed while NIC awaited privilege rulings). The Special Master should thus reject Defendants' effort to take a position directly contrary to the Court's prior orders and their prior agreement.

Defendants also suggest in their meet and confer correspondence that NIC only asked the Court to permit depositions of NTG "principals" after the cut-off which they claim does not include the corporation.  *See* Exh. 1.  Defendants therefore argue that a semantic disagreement over the definition of "principal" should manifest a denial of NIC's right to depose the central defendant in this case. As an initial matter, NTG is incorrect that the term principals would exclude the

---

[3] *See e.g.,* Dkt. Nos. 88, 118, 154, 195, 198, 200, 234, 235, 238, 241, 296, 298, 299, 304, 338, 348, 350, 360, 365, 385, 412, 414, 423, 426, 447, 458, 479, 483, 488, 494, 516, 518, 519, 550, 559, 567, 568, 587, 606, 625, 652, 659, 677, 681, 753, 769, 770, 778, 786, 788, 891, 902, 910, 923, 945, and 1030.

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 8 -

corporation. When discussing deposition practice, NIC always intended its reference to NTG principals or the NTG Defendants to include all named NTG defendants, including the corporate principal, and no reasonable litigant would actually interpret that term to exclude the central corporate defendant in this case. The District Court ruled that NIC had a **right** to depose every Defendant. The Court ruled that deposing the attorney defendants without privilege rulings or privileged documents made little sense, and those depositions could therefore proceed after receipt of the relevant information. *See* Dkt. 447 at 3-4. That order applies to the law firm defendant from which the vast majority of relevant information was supplied after the Court's decisions overruling NTG privilege objections. The Court's language at subsequent hearings made clear that the Court's ruling included all NTG Defendants, including Defendant NTG.

In sum, Defendants' position is untenable and conflicts with the prior orders of the Court and Defendants' own representations in open court. NIC has a right to depose the NTG 30(b)(6) designee.

### 2. Good Cause Exists to Extend the Presumptive Time Limit to 2 Days

"The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent." *Schoonmaker v. City of Eureka*, No. 17-CV-06749-VC (RMI), 2018 WL 4896177, at *3 (N.D. Cal. Oct. 9, 2018). "Considerations relevant to granting an extension include events occurring over a long period of time, the need fully to explore the theories upon which the witness relies, or, in multi-party cases, the need for each party to examine the witness with the understanding that duplicative questioning is to be avoided." *Thomas-Young v. Sutter Cent. Valley Hosps.*, No. 1:12-CV-01410-AWI, 2013 WL 3054167, at *2 (E.D. Cal. June 17, 2013); *see also Schoonmaker*, 2018 WL 4896177, at *3 (finding that period of 7 years and a large number of relevant allegations justified an extension of time). Courts also consider the complexity and number of issues at

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 9 -

stake in the litigation.  *Schoonmaker*, 2018 WL 4896177, at \*3.  Courts have extended the time for a deposition where a witness plays a "uniquely large role in the case" and the case was factually complex.  *See Glaukos Corp. v. Ivantis, Inc.*, No. 818CV00620JVSJDEX, 2020 WL 1625836, at \*5 (C.D. Cal. Mar. 2, 2020); *see also Smith Grybowski v. Hewlett-Packard Co.*, No. 2:15-CV-484-GMN-VCF, 2015 WL 9294572, at \*2 (D. Nev. Dec. 21, 2015) (extending time for deposition because where witness was "important" and possessed information about each claim at issue); *Valois v. Airlines*, No. CV 10-2030 RGK(JCX), 2011 WL 13042826, at \*3 (C.D. Cal. Apr. 4, 2011).  Courts explain that extending the time for deposition where there are a substantial number of documents and topics saves resources by eliminating the need to recall the deposition when the presumptive limit is ultimately insufficient.  *Owino v. CoreCivic, Inc.*, No. 3:17-CV-1112-JLS-NLS, 2019 WL 2867278, at \*1 (S.D. Cal. July 3, 2019).

Here, NTG is the central figure in the RICO enterprise at issue in this case.  *See generally* Dkt. 1007.  Of the 72 predicate acts alleged in the Fourth Amended Complaint, NTG is alleged to have committed 50 of them.  *Id*. at ¶¶ 427-35.  NTG is the hub of Defendants' sham litigation enterprise and operates as the "legitimate business" front used to facilitate illegal conduct.  *Id.* at ¶¶ 438.  NTG was involved in all of the nine predicate cases at issue in the FAC.  *Id.* at ¶¶ 427-35.  The facts surrounding those cases span more than five years, from 2009 until July 2015.  *Id.* at ¶ 442.  Moreover, NTG's financials are directly relevant to NIC's claim for punitive damages.  *See* Dkt. 356 (ordering production of NTG tax returns as relevant to both NIC's state and federal claims); *see also* Dkt. 304 (ordering production of financial documents).  NTG also asserts a number of affirmative defenses that must be explored, in part, because NIC must obtain the corporation's testimony sufficient to bind the corporation on those defenses.  *See* Dkt. 1017 at ¶¶ 473-80.  NIC cannot reasonably cover that content in seven hours.

For comparison, NIC deposed Victoria Knowles on July 31, 2020. *See* Exh. 10. Ms. Knowles was involved in five of the cases at issue in this case, and she often claimed to lack knowledge of the events within those cases. *See* Dkt. 1007 at ¶¶ 427-433 (identifying Knowles' involvement in five matters); *see also* Exh. 10 at 25, 65-66, 68, 70, 75, 78, 79, 80, 103, 104, 105, 112-113, 116, 123-124,133-136, 140-171, 173-184, 188-190, 193, 201-202, 204-207, 209-214, 217-225, 228-230. Her deposition nonetheless lasted approximately 6.5 hours largely because of the volume of information at issue in this case. Furman Decl. at ¶¶ 17. By contrast, the NTG corporation has knowledge of every aspect of NTG's work in all nine cases. An examination covering those nine cases in sufficient detail to evaluate all of the factual issues outlined in the FAC would easily require twice the amount of time as the deposition of Victoria Knowles.

NTG does not appear to dispute that a deposition covering all topics outlined in NIC's Notice of Deposition would require more than seven hours. *See* Exhibit 6. The Defendants repeatedly argued that it would be **<u>impossible</u>** to cover all topics outlined in NIC's Notice in just one day of questioning. *See* Exh. 1; Exh. 4; Exh. 13; *see also* Exh. 6 at 2 (stating that the deposition could be completed in one day if the topics were significantly narrowed and more than half were eliminated). As a result, if the Court determines that NIC can proceed with the deposition of the NTG 30(b)(6), it should grant NIC leave to take that deposition in up to 14 hours.

### 3. Every Noticed Topic Is Relevant to the Claims or Defenses in this Case

On a motion to compel, the movant bears the initial burden of demonstrating that the noticed topics are relevant. *See Louisiana Pac. Corp.*, 285 F.R.D. at 485. Here, each of NIC's topics is directly relevant to central issues in this case.

The majority of NIC's listed topics are expressly limited to content related to "SAC Cases," which NIC defined as the 8 underlying lawsuits that support NIC's

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 11 -

RICO claims.  *See* Exhibit 3 at 1-8.  That subject matter limitation ensures that all such topics are relevant on their face.  NIC's RICO claims are built on the facts and circumstances from those eight SAC Cases as well as the facts and circumstances surrounding the Strataluz allegations.  *See generally* Dkt. 1007; *see also* Dkt. 659 at 13-23.

The first 17 topics and topic 27 target information relevant to NIC's malicious prosecution claim and RICO predicate acts that are based on SAC Cases. Those topics identify circumstances within those cases, including "client recruitment," firm retention, representations to opposing counsel, allegations in the complaint, declarations filed in the matters, deposition testimony, settlement discussions and agreements, etc.  *See* Exh. 3 at 4-7.  Those topics are relevant to NIC's RICO claims which allege that each case was staged and manufactured as part of a fraudulent scheme to advance sham litigation for profit through extortionate settlements.

Topic 18 asks that NTG be prepared to testify regarding facts and evidence concerning its affirmative defenses.  *Id*. at 6.  The topic is relevant on its face. Under Rule 26(a), NIC may inquire into matter that relates to claims **or defenses**. *See* Fed. R. Civ. P. 26(a).

Topics 19 through 24 concern NTG's representation of Strataluz LLC.  *Id*. at 7.  NIC's Fourth Amended Complaint adds predicate acts concerning NTG's threat and filing of lawsuits on behalf of Strataluz LLC.  *See* Dkt. 1007 at ¶¶ 40-45, 359-77, 435.  The Court has repeatedly held that NIC's allegations concerning Strataluz are relevant and probative of the RICO claims at issue in this case.  *See* Dkt. 198 at 5 (If true, this evidence [regarding Strataluz] would support Natural-Immunogenics' claim of a pattern of RICO activity.");  *see also* Dkt. 414 at 4-6; Dkt. 820 at 7-10; Dkt. 910 at 5-7.  Now that the Strataluz issues are alleged as predicate acts in NIC's Complaint, NTG has no reasonable dispute that Strataluz-related discovery is relevant.

Topic 25 is relevant to NIC's RICO claims because NTG's case management systems and procedures were critical to NTG's efforts to develop and threaten manufactured cases on the order of magnitude that it accomplished. The Court has found relevant to its crime-fraud findings the "staggering scope" of NTG's sham litigation operation. *See* Dkt. 820 at 11. The Court has also explained that the crime-fraud findings overlap the merits of this case. *See* Dkt. 1022 at 5-6. How NTG managed and tracked its litigation mill practices is highly relevant to establishing the existence of a structured RICO enterprise and RICO continuity (i.e., the threat of repetition). Moreover, NTG's procedures and databases also shed light on which NTG attorneys and employees worked on which cases. Both the malicious prosecution and RICO claims require evidence of participation by specific Defendants. Thus, information regarding who worked on what matters is relevant.

Topics 28 through 30 relate to NTG's discovery efforts and document retention practices in this case. *See* Exh. 3 at 7-8. That information is relevant because it may relate to admissibility issues or demonstrate the existence of additional information that was either withheld or destroyed.

Topics 26 and 31 through 36 (the "Financial Topics") concern NTG's and other NTG Defendants' financials. *Id.* at 7-8. That information is relevant to issues of punitive damages under malicious prosecution and RICO issues. *See* Dkt. 356. The District Court has already rejected Defendants' arguments against the production of financial information. *See* Dkt. 356; *see also* Dkt. 304. The Court ruled that all malicious prosecution Defendants must provide evidence related to financial condition. *See* Dkt. 356 at 5-9. The information identified in the Financial Topics is therefore relevant under the controlling precedent and the Court's prior orders.

For the foregoing reasons, each noticed topic is relevant to the issues in this case. NIC expressly limited most topics to the SAC cases so those topics would

clearly fall within the bounds of relevance in the discovery context. The burden thus shifts to NTG to demonstrate a basis to limit or exclude noticed topics.

### 4. NIC's Noticed Topics Are Reasonable and Proportional to the Needs of the Case

Because every Topic listed in NIC's Notice is relevant to claims and defenses at issue in this case, NTG bears the heavy burden to support, with evidence, their objections that Topics impose an undue burden and are not proportional to the needs of the case. NTG cannot meet that burden because the topics are reasonably tailored and proportional to the needs of the case.

A Rule 30(b)(6) deposition is governed by the proportionality factors set forth in Rule 26(b)(1). *See Detoy v. City & Cty. of San Francisco*, 196 F.R.D. 362, 366-67 (N.D. Cal. 2000); *see also Louisiana Pac. Corp.*, 285 F.R.D. at 485; *Prasad v. George Washington Univ.*, 325 F.R.D. 1, 3 (D.D.C. 2018). The 30(b)(6) notice merely sets the floor for what may be asked, but the proportionality factors set the ceiling. *See Louisiana Pac. Corp.*, 285 F.R.D. at 486. Rule 26(b)(1) instructs the Court to consider the following proportionality factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Here, every single proportionality factor weighs in favor of NIC or is neutral.

First, the Court has already held that the "importance of the issues at stake in the action" weighs strongly in favor of NIC. *See* Dkt. 788 at 15. That ruling is the law-of-the-case.

Second, the Court has also stated that the amount in controversy is substantial, but not so high as to permit unending discovery. *Id.* at 13. The proposed deposition,

however, does not represent "unending discovery," but rather represents minimum discovery to which a party is entitled, i.e., the deposition of the primary corporate defendant.  The Court has already ruled that NIC has the "right" to depose every Defendant.  *See* Exh. 8 at 5:20-24.  The cost of a two-day deposition of the primary corporate defendant in a large-scale RICO suit is minimal in comparison to the millions of dollars in controversy.  This factor therefore weighs in favor of NIC, or, is at worst neutral.

Third, the parties' relative access to information weighs in favor of NIC.  NIC's case revolves primarily around information personally known to the Defendants.  NTG is the "hub" of the racketeering enterprise, and was involved in the vast majority of predicate acts alleged in the FAC.  The corporate entity possesses the most information concerning the facts of this case (more than any single individual) and certainly possesses more information about what occurred internally at the firm than NIC.  Moreover, NIC has been unable to obtain a significant portion of the information surrounding NTG activity from individual defendants.  NIC has deposed Andrew Baslow and Victoria Knowles, and each has professed a lack of personal knowledge on relevant topics.  *See e.g.,* Exh. 10 (Knowles) at 212-214, 220-221, 223, 226-227, 241-246, 249-259, 261-262, 265-266, 271, 279-280, 286, 289-290, 301-302; *see also* Exh. 11 (Baslow) at 25, 65-66, 68, 70, 75, 78, 79, 80, 103, 104, 105, 112-113, 116, 123-124,133-136, 140-171, 173-184, 188-190, 193, 201-202, 204-207, 209-214, 217-225, 228-230.  They claimed that others within the company would have the information.  *Id.*  The Rule 30(b)(6) deposition was actually created to eliminate the prejudice caused by that type of deflection by forcing a corporation to educate a representative on relevant topics from any source within the company.  *Louisiana Pac. Corp.*, 285 F.R.D. at 486; *see also Buie*, 327 F.R.D. at 8 (D.D.C. 2018).  Thus, this 30(b)(6) deposition may well be the only viable source of complete testimony regarding NTG's RICO activity.  The third factor therefore weighs heavily in NIC's favor here.

Fourth, the "parties' resources" are neutral in this case. *See* Dkt. 521 at 19 ("the parties' resources is a neutral factor."). Both Parties have heavily litigated this matter and neither has demonstrated an inability to fund this litigation. In fact, Defendants frequently file frivolous and unsupported motions and pleadings which further demonstrates their substantial financial reserves. *See* Dkt. Nos. 241, 525, 853, 1028; *see also Natural Immunogenics v. Newport Trial Group, et al.*, No. 2:19-mc-00011 (C.D. Cal.), Dkt. 84. Those frivolous filings have resulted in more than $260,000 in fee awards to NIC, all of which have been promptly paid by Defendants and have not deterred Defendants from litigating aggressively in this case. Defendants NTG and Scott Ferrell also apparently have sufficient resources to pay for numerous law firms to represent other Defendants and witnesses in this case and to indemnify Defendant Nilon against a judgment in this matter. *See e.g.,* Exh. 12 at 20:5-22 (Nilon testified that NTG is paying his attorney fees and has promised to indemnify him in the event of a judgment). Thus, the record indicates that NTG's resources are certainly equal to, if not greater than NIC's. This factor is therefore neutral, if not favorable to NIC.

Fifth, the relative importance of the evidence weighs strongly in NIC's favor. The topics identified on NIC's Notice of Deposition cover the core issues in dispute in this case. A 30(b)(6) deposition is the primary way a party can bind the corporate defendant to positions in litigation. As the central Defendant in this matter, a deposition covering the factual issues relevant to nearly all RICO predicate acts represents evidence of the highest importance. Moreover, now that NIC has received the critical internal files associated with the Court's numerous privilege-piercing orders, the testimony that NIC can obtain from NTG has far more probative value. NIC is entitled to discovery of NTG's testimony on these topics before trial and dispositive motions. Moreover, the Court should be afforded the opportunity to review dispositive motions and pretrial matters on a complete discovery record.

Finally, the burden imposed versus the benefit obtained weighs in NIC's favor.  Courts have explained that "although adequately preparing a Rule 30(b)(6) deposition can be burdensome, 'this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business.'"  *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 5786492, at *3 (D. Mass. Sept. 24, 2014) (collecting cases). Thus, while any 30(b)(6) deposition imposes a measure of burden associated with proper preparation, that burden is not undue simply because it may be great.  The corporate form provides significant protections and benefits, but that form cannot be permitted to prevent proper investigation into corporate conduct, particularly where the corporation was a central figure in tortious and criminal activity. Certainly, the amount of burden that is appropriate to impose on a corporate defendant will be greater than that of a non-party.  Here, NTG is the central defendant in this case, and every topic listed on NIC's notice of deposition goes to core issues in dispute.  The benefit of this discovery is therefore substantial. Courts recognize that there is significant value in binding a corporate defendant to positions in litigation through testimony (as opposed to other forms of discovery). *See Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) (collecting cases) ("A party should not be prevented from questioning a live corporate witness in a deposition setting just because the topics proposed are similar to those contained in documents provided or interrogatory questions answered.").  "[A] witness may still be useful to testify as to the interpretation of papers, and 'any underlying factual qualifiers of those documents' (i.e. information which the defendant knows but is not apparent on the face of the documents)."  *Id.*

The Special Master in this case earlier explained that simply because discovery efforts are "exhaustive" does not mean they are unduly burdensome or disproportionate.  *See* Dkt. 434 at 7.  Similarly, here, NIC seeks to obtain material and critical information within the corporate Defendant's possession and control

1     through the primary means provided by the Rules.  Notably, Rule 30(b)(6)

2     provides a remedy for circumstances where the 30(b)(6) designee must prepare on

3     many topics spanning a broad period of time:  the corporation may designate more

4     than one person as a 30(b)(6) representative.  *See* Fed. R. Civ. P. 30(b)(6).  That

5     option may well be prudent for NTG, but the breadth and depth of material

6     evidence within NTG's control cannot be used as a basis to deny NIC's ability to

7     collect that evidence.

8

9     **5.  Defendants' "Scope of Discovery" Objection Is Meritless**

10          NTG refuses to prepare a 30(b)(6) designee on many topics on the basis that

11    such topics allegedly include information falling outside the scope of permissible

12    discovery under the Court's Order at Docket No. 155.  *See generally* Exhibit 4.

13    Those objections should be overruled.

14          As an initial matter, the objection is premature and does not justify NTG's

15    refusal to attend the deposition.  Whether a topic could arguably be said to include

16    information that exceeds the scope of discovery is, at this time, speculation.  Rule

17    30 expressly permits a deponent to refuse to answer a question on the basis that the

18    question exceeds the bounds of discovery or violates an existing Court order.  Rule

19    30(c)(6).  The Defendants therefore need not prepare a witness on information that

20    they believe is outside the scope of discovery because they may instead refuse to

21    answer the question, and, if they are correct, the witness will suffer no

22    repercussions for a refusal to answer.  Thus, **if** NIC asks questions that exceed the

23    scope of discovery, the Defendants can address that issue in real time at deposition,

24    but NTG lacks justification for its refusal to attend the deposition on the

25    speculative assumption that NIC will ask questions that exceed the permissible

26    scope.  Moreover, to the extent they complain of the "burden of preparation"

27    associated with aspects of a topic that they argue exceeds the scope of discovery,

28    that objection also lacks merit.  NTG need not prepare the witness on information

that they claim is outside the scope of discovery because they are not required to provide that information if asked.  Certainly, however, if NTG misjudges the bounds of the Court's discovery limitation and refuses to prepare on a topic or respond to questioning that **is** within the scope of discovery, the Rules provide an appropriate remedy for that behavior.  Here the issue is premature and speculative.

However, even if the Court evaluates their objection at this stage, as explained below, NIC's topics are entirely within the scope of discovery and, as to Topics 7 and 12, NIC is willing to add minor limitations to ensure they remain within the scope.

### a) *Topics 14, 15, and 27*

NTG objects that Topics 14, 15, and 27 "exceed the scope of permissible discovery," but those topics are, on their face, limited to matters within the SAC cases.  *See* Exhibit 4 at 14-16, 27-28.  As a result, the objection is meritless.  The District Court's Order unequivocally permits discovery that is related to one of the eight matters contained in the SAC.  *See* Dkt. 155.  To the extent that NIC included an express subject matter limitation on a topic that limited such topic to SAC cases, the topic, by definition, does not exceed the scope of discovery.  NTG's assertion of this objection evidences bad faith because there is simply no justification for the frivolous objection.

### b) *Topic 17*

NTG also objects to Topic 17 on the basis that the topic "exceeds the scope of permissible discovery."  *See* Exhibit 4 at 17-18.  That objection should be overruled because the Topic clearly relates to matters relevant to an SAC Case, specifically *Demulder v. Carter-Reed*.  *See id*.  Topic 17 states:

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 19 -

> All facts and evidence concerning settlement with Carter-Reed,
> Basic Research, or any related entity or subsidiary thereof,
> regarding litigation brought by Carter-Reed against Taylor
> Demulder.

*See* Exhibit 4 at 6.

The SAC case of *Demulder v. Carter-Reed* set off a chain of litigation between Demulder and Carter-Reed.  After the case was dismissed, Carter-Reed sued Demulder in multiple forums under claims of abuse of process and malicious prosecution.  *See Taylor Demulder v. Carter-Reed Company, LLC. ("Demulder v. Carter-Reed")*, Case No. 3:12-cv-02232-BTM-MDD (S.D. Cal., 2012); *see also Carter-Reed v. Demulder,* Case No. 2:16-cv-00054-DB, ,(C.D. Utah, 2016)  .  The central allegations in those cases directly pertain to whether Demulder's case against Carter-Reed was fraudulent.  *See Demulder v. Carter-Reed,* Dkt. 1; *see also Carter-Reed Company, LLC v. Taylor Demulder, et al.* Case No. 2:13-cv-01098-PMW (C.D. Utah, 2013) Dkt. 1; *Carter-Reed v. Demulder,* Case No. 2:16-cv-00054-DB (C.D. Utah, 2016), Dkt. 2-5.  That is also the central allegation in NIC's case against Demulder and NTG.  The multi-year, multi-jurisdictional suit between Carter-Reed and Demulder was ultimately resolved by a global settlement wherein, upon information and belief, NTG paid Carter-Reed to drop claims against Demulder and stop investigating NTG's conduct.

Moreover, the Court has already ruled that NIC's allegations about NTG's involvement in the subsequent Carter-Reed lawsuits against Taylor Demulder is evidence of "relatedness" as required by the RICO statute.  *See* Dkt. 157 at 22.  The Court held that NIC had properly alleged that the Demulder v. Carter-Reed lawsuit was "related" to the other racketeering acts at issue in this case, in part, because NIC had shown that NTG represented Demulder in the abuse of process action filed by Carter-Reed against Demulder.  *Id*.  Thus, the Court has already ruled that the issues surrounding NTG's involvement in the related Carter-Reed

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 20 -

lawsuits against Demulder are relevant to NIC's RICO claims and must be within the scope of discovery.

At bottom, NTG, Demulder, and Carter-Reed entered into a settlement agreement to resolve all claims arising from Demulder's suit against Carter-Reed, which is the subject matter of NIC's RICO claims. The terms of that settlement agreement are thus directly relevant because the settlement agreement directly concerned an SAC case. Moreover, the terms of that agreement are likely to lead to relevant evidence because a reasonable jury could conclude that NTG's willingness to pay a large settlement on behalf of Taylor Demulder to end Carter-Reed's investigation into his fraudulent claims is evidence indicating that Demulder would lie to protect NTG or prevent disclosure of that information. Thus, the matter for examination in Topic 17 is not outside the scope of discovery and NTG's objection should be overruled.

c) *Topic 25*

NTG objects that Topic 25 is "outside the scope of permissible discovery." That objection should be overruled because the information sought in that topic is directly relevant to the RICO scheme as a whole. The Court has repeatedly held that such information falls within the scope of discovery. *See* Dkt. 348. Topic 25 states:

> Facts and evidence concerning NTG's case management systems and procedures.

*See* Exhibit 4 at 24.

NIC alleges that NTG is the hub of a RICO enterprise predicated on a law firm's systematic manufacture of sham litigation. *See* Dkt. 1007 at ¶ 438. NTG's case management systems and procedures are a critical component to understanding how the scheme operated. That information does not relate to any specific case, but provides background information for the fact finder. Discovery

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 21 -

in this case has revealed that NTG maintained numerous case management databases that were updated by various employees to keep attorneys and staff informed of the status of each sham case. *See* Exh. 10 at 83:15—84:25. Those case management documents apparently correlated NTG cases to specific "field agents" and NTG attorneys assigned to specific cases. *Id.* These systems were critical because, as other documents show, NTG often had more than 50 active cases per scheme (wiretapping, false advertising, etc.). This type of general information concerning the NTG RICO enterprise is within the scope of discovery because NIC must prove the existence of an enterprise at trial, which is often demonstrated by showing evidence of an ongoing organization and evidence that a group of persons engaged in racketeering operate as a continuing unit. *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007).

Moreover, Judge Selna has already ruled that where evidence relates to the scheme as a whole, it is within the scope of discovery. *See* Dkt. 659 at 16; *see also* Dkt. 820 at 6 (citing Dkt. 659); Dkt. 1022 at 3-4. Defendants' arguments to the contrary have been rejected on numerous occasions. *Id.* The Court confirmed that their interpretation of the case limitation is erroneous in a recent order at Docket No. 1022. *See* Dkt. 1022 at 3-4.

Thus, NTG's objection should be overruled.

### d) *Topics 26, 31, 32, 33, 34, 35, and 36:  Financial Topics*

NTG objects to Topics 26, 31, 32, 33, 34, 35, and 36 which are related to the NTG Defendants' financials on the grounds that they "exceed the scope of financial discovery as ordered by the Court on January 24, 2018." *See* Exh. 4 at 25-26, 30-38.  That objection is meritless.

As an initial matter, in 2017, the Court largely overruled NTG's objections to NIC's Rule 34 requests related to the Defendants' financial information.  The

Court held that the NTG Defendants' financials were relevant to punitive damages and to the scope of the RICO scheme as a whole.  *See* Dkt. 356.  Thus, the law-of-the-case is that NIC is entitled to take discovery of Defendants' financial information.[4]  *See* Dkt. 356 at 5-9.

The Defendants' objection references an irrelevant order of the Court issued on January 22, 2018.  *See* Exhibit 4 at 31-38.  After the close of written discovery in December 2017, NIC sought leave to serve one <u>additional</u> Rule 34 written request related to financials.  *See* Dkt. 567 at 5-6.  The Court denied NIC leave to serve those specified additional written discovery requests, but noted that financial evidence was still crucial and, if NIC established liability for punitive damages at trial, the Court would permit supplemental written financial discovery at that time.  *Id.* at 6.

But whether NIC is permitted to serve new, written discovery is irrelevant here.  The Court has never imposed a bar against financial discovery in general.  The Court simply denied NIC leave to serve one additional written Rule 34 request after the cut-off.  Rather, the Court's order finding financial information relevant controls here.  NTG's financials are relevant to numerous issues in this case, and NIC has not yet taken a deposition of NTG.  This would be the first and only opportunity for NIC to bind the NTG corporation to responses related to its relevant financials.  That discovery must be permitted under the Court's prior orders and to ensure NIC has the full and fair discovery necessary to satisfy California's punitive damages requirements.

Moreover, the Defendants' conduct demonstrates that they lack confidence in their own objection.  NIC recently deposed Andrew Baslow, Andrew Nilon, and Victoria Knowles.  Each of those Defendants are subject to claims of punitive

---

[4] Defendants were later sanctioned for withholding production of their financial documents on the basis that they should be given an "Attorney's-Eyes-Only" designation.  The Court rejected that contention and ordered NTG to pay NIC's fees.  *See* Dkt. 488.

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 23 -

damages and thus, their financials are relevant.  At those depositions, NIC questioned the witnesses regarding their financial information, and those Defendants were permitted to answer such questions without objection.  *See* Exhibit 10 (Deposition of Victoria Knowles) at 35-38, 46-49, 56-57, 83-84, 115-116, 251-256; Exhibit 11 (Deposition of Andrew Baslow) at 211-214, 217-225; Exhibit 12 (Deposition of Andrew Nilon) at 24-33.

The Court should overrule Defendants' objection that NIC is not permitted to obtain relevant financial information from Defendant NTG through oral examination.

e) *Topic 7 and 12*:  *NIC Will Narrow the Topics in Good Faith*

NTG also objects that Topics 7 and 12 "exceed the scope of permissible discovery."  *See* Exhibit 4 at 7-13.

As to Topic 12, NIC is willing to place additional limitations on the topic to eliminate any confusion regarding its scope.  Topic 12 includes:

> All facts and evidence related to NTG's use of tester plaintiffs in CIPA and CLRA cases.

*See* Exhibit 3 at 6.  To the extent this topic would require NTG's 30(b)(6) to prepare for testimony regarding NTG's general tester policies and program, the topic does not exceed the scope of discovery.  NIC is entitled to inquire into general information regarding NTG's alleged tester program because that information relates to the scheme as a whole.  *See* Dkt. 659 at 16; *see also* Dkt. 820 at 6 (citing Dkt. 659); Dkt. 1022 at 3-4.  Moreover, Defendants have injected "general practice" evidence into this defense by claiming that it had policies in place regarding the firm's interactions with clients.  *See* Exhibit 10 at 84, 115-116; *see also* Exhibit 11 at 211-213.  NIC should have the ability to probe those policies and general practices through the corporate representative.  However, to the extent

this topic also includes case-specific information, NIC will limit the topic to SAC Cases. That limitation prevents any risk that the topic exceeds the scope of permissible discovery.

Regarding Topic 7, NIC has demanded that NTG's 30(b)(6) be prepared to discuss the corporation's communications with specified individuals or entities who are relevant to NIC's RICO allegations.[5] *See* Exhibit 3 at 5. NIC included subject matter limitations for several individuals or entities listed. *Id.* Those subject matter limitations largely eliminate any concern that the topic exceeds the scope of discovery. However, in an effort to eliminate this issue entirely, NIC is willing to limit all sub-topics not already subject to a specified limitation to content related to SAC Cases, *except* Andrew Nilon, Sam Schoonover, Taylor Demulder, Trycia Carlberg, and Giovanni Sandoval. That additional limitation eliminates any argument that Topic 7 exceeds the scope of discovery.

### D. NIC Should Be Awarded its Fees and Costs for Having to Bring this Motion

Under Rule 37(a)(5), the prevailing party on a motion to compel discovery must be awarded their fees and costs incurred in bringing the motion unless the losing party's position was substantially justified or the award of expenses would otherwise be unjust. *See* Fed. R. Civ. P. 37(a)(5). The Court should grant NIC's motion in its entirety and award NIC its fees and costs pursuant to Rule 37(a)(5).

NTG's position is not substantially justified. NTG has no basis to assert that NIC is not permitted to take NTG's deposition. Not only has the Court already ruled that NIC can take the deposition following the privilege orders, but ***NTG***

---

[5] NTG objects that the topic does not clearly identify the other party to the communication. *See* Exhibit 1. NIC hereby clarifies to the extent it was not already clear, that the communications at issue are those between NTG (i.e., NTG officer, agents, or employees in their official capacity) and the identified persons or entities.

*itself admitted on record that they agree that NIC could depose all NTG Defendants after the privilege rulings*.  NTG's volte-face is in bad faith and certainly is not substantially justified.  Moreover, none of NTG's objections is valid, nor do they justify NTG's complete refusal to attend the deposition.  NTG's objections regarding the scope of discovery can and should be made in response to specific questions at deposition, not in an effort to delay or prevent the deposition *ab initio*.

The award of fees here would not be unjust.  NTG and Scott Ferrell have been sanctioned for taking frivolous positions in discovery on four occasions.  They have been sanctioned under Rule 11 by the District Court for advancing a frivolous counterclaim.  They have been sanctioned by the Ninth Circuit under FRAP 38 for filing a frivolous appeal.  The Court recently denied their request for discovery citing, in part, their pattern of misconduct.  Dkt. 1030 at 6-7.  Their unjustified refusal to prepare a designee on behalf of NTG is part of a pattern of delay and obstruction.

Because NTG's position is not substantially justified and the award of fees would not be unjust, the Court should grant NIC its reasonable fees and costs associated with bringing this motion.

## III.    DEFENDANTS' PORTION

NIC's motion must be denied. For starters, NIC never reserved the right and never was granted the right to take a Rule 30(b)(6) deposition after the discovery cut-off in this case.  Instead, as confirmed by NIC's own counsel on the record before the Court on August 2, 2019, NIC only asked to take "four of the principals" after the cut-off (i.e., Scott Ferrell, Dave Reid, Ryan Ferrell, and Victoria Knowles).  Sabovich Decl., Exh. A at 8:24-9:16 (8.2.2019 Hearing Tr.) (wherein Mr. Arhangelsky agrees NIC only needed to complete depositions of "four of the principals.").

In fact, at no point in 2016, 2017, 2018, or prior to late August 2019, did NIC even state its desire to take a Rule 30(b)(6) deposition.  Since it was not expressly reserved pre cut-off or authorized post cut-off, since the discovery cut-off has long since passed, and since the parties are now preparing for trial in just a few months (i.e., on March 23, 2021), NIC must seek and obtain leave of court in order to take a Rule 30(b)(6) deposition. And here, any request for leave (which NIC does not make) must be denied.

To state the obvious, NIC unreasonably delayed in requesting this deposition by waiting until February 21, 2020, (in what appears to be an afterthought) to finally serve its Rule 30(b)(6) notice with a disproportionately broad and unduly burdensome list of topics.  NIC also unreasonably delayed and acted in bad faith in the meet and confer process by not immediately requesting two days for the deposition (which also appears to be an afterthought) and then waiting more than nine months after serving its deposition notice to file the instant motion so close to the trial date.  In addition, the topics as a whole are excessively broad and not reasonably particularized.  "Rather than targeting those issues in which Rule 30(b)(6) testimony is truly needed, the deposition notice appears to have been drafted as a means to cover nearly every conceivable facet of this litigation." *Reno v. W. Cab Co.*, No. 218CV00840APGNJK, 2020 WL 5902318, at *2 (D. Nev. Aug. 31, 2020).  The fact that NIC wrote them this way does not justify expanding a deposition into two days.  At the same time, many of these topics have nothing to do with the timing of the Court's crime-fraud rulings that caused NIC to delay in taking the remaining four principal depositions. The Court has already found that this case does not justify the number of docket entries that have already burdened Defendants and the Court, and the same rationale should apply here, particularly when it was NIC who failed to be diligent in the first place.

For all of these reasons and as explained below, the Special Master should deny NIC's motion, enter a protective order, and award NTG its attorneys' fees and costs.

## A. Procedural History

NIC filed this action nearly five years ago on December 7, 2015.  On May 10, 2016, NIC filed its Second Amended Complaint ("SAC") (Dkt. 92), which was the operative complaint for close to four years.  At its core, NIC alleged that Defendants threatened and filed false claims in litigation.  More specifically, the SAC was based on what NIC has described as two litigation schemes: (1) the false advertising scheme; and (2) the wiretapping scheme.  *Id.*  On March 24, 2020, NIC filed a Third Amended Complaint that alleged a new or third litigation scheme, which NIC described as (3) the Lanham Act scheme.  Dkt. 911.  NIC then filed its Fourth Amended Complaint on June 18, 2020 (Dkt. 1007), which is the current operative pleading.

Discovery and motions relating to discovery have been long, extremely burdensome, and out of all proportion to the needs of this case.  The amount in controversy is in the low six figures as NIC has stipulated that its compensatory damages are no more than $234,966.52, which is based on its defense costs in the *Nilon* matter for which NIC claims malicious prosecution.  *See* Dkt. 612-3 at 3:1-2. Yet the docket now stands at over 1,000 entries with millions in attorneys' fees having been incurred on top of the enormous consumption of judicial resources. Over two years ago, the Court indicated that it could not "in good conscience continue to give the level of attention to this case that parties have thrust upon the Court. The burden I think is disproportionate to the significance and value of the controversy, so I'm going to regulate the manner in which the Court disposes of pending motions."  Oct. 11, 2018 Hearing Tr. at 37:2-7.  Thereafter, on March 19, 2019, this Court issued its Order on NTG's motion for reconsideration of certain

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 28 -

discovery orders based on proportionality, which sharply curtailed discovery sought by NIC based on proportionality.  Dkt. 788.

Proportionality concerns have also been used to restrict and curtail further depositions in this case.  For example, in the deposition of NIC's former counsel, Carlos Negrete, Mr. Negrete refused to answer numerous questions and interposed then sustained his own objections to questioning.  *NIC v. Nilon*, Case No. 2:19-mc-00011 (*Negrete* Matter), Dkt. 71.  The prior Special Master denied NTG's motion, and even awarded costs against NTG based in part on proportionality.  *Negrete* Matter, Dkt. 72 at 9, 14 ("Considering the parties' history of litigating each and every minor disagreement in the Primary Case, to allow these questions would undoubtedly expand our discovery disputes . . . .Clearly, such an expansion is not proportional to the needs of the case . . . ")  In considering objections to the Special Master's Order denying a motion to compel a recalled deposition of Mr. Negrete, the Court noted "there can be no doubt that Negrete appears to have argued with counsel and was combative in his deposition." *Negrete Matter*, Dkt. 84 at 6. Nevertheless, the Court went on to find that a further deposition of Mr. Negrete was neither warranted nor proportional:

> The Court has carefully considered the parties' arguments as to whether the discovery requested by NTG is proportional to the needs of the case, the amount in controversy at issue, and the importance of the issues. The Court finds that recalling Negrete is not proportional to the needs of the case. The upcoming trial, the trajectory of this case, and the fact that NTG has already had the opportunity to question Negrete weigh against recalling Negrete. Additionally, Negrete's deposition is out of state and counsel from both sides would be required to travel to take the deposition. This additional burden is not warranted in light of the unlikelihood that the deposition will lead to

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 29 -

new and relevant evidence. Therefore, the discovery sought is not proportional to the needs of this case.

*Negrete Matter*, Dkt. 84 at 9.

### 1.  The August 2, 2019 Hearing

At no point in 2016, 2017, 2018, or prior to late August 2019, did NIC even state its desire to take a Rule 30(b)(6) deposition.  This is evidenced by the discussions with the Court at a hearing on August 2, 2019, where the Court and NIC's counsel agreed that depositions of "only four of the principals" still remained (i.e., Scott Ferrell, Dave Reid, Ryan Ferrell, and Victoria Knowles):

> THE COURT: I think that's a good suggestion. I'm going to order you to meet and confer in advance of the August 26 hearing and put in a joint or separate proposals leading to a trial date, and I guess I would like also an inventory from each side as to what discovery in addition you think you need. ***I think the depositions of the principals are still outstanding. That's the biggest item I think.***
>
> ***MR. ARHANGELSKY: Yes.***
>
> ***MR. DARNELL: Only four of the principals, but yes.***
>
> ***MR. ARHANGELSKY: Right. We can present that to the Court***, and I think there are more. We expect that there will be other potentially recalled depositions based on the information in the crime-fraud documents now that we don't have certain privileges applied, but that's I suppose for another day once we have a chance to review the information.

Sabovich Decl., Exh. A at 8:24-9:16 (8/2/2019 Hearing Tr.) (emphasis added).

### 2. NIC Raises the Issue of NTG's 30(b)(6) Deposition for the First Time in Late August 2019

After the hearing on August 2, 2019, the parties met and conferred and then filed their respective reports outlining the remaining discovery to be completed in this case.  Based on the representations by NIC's counsel that NIC only need to complete the depositions of the remaining four principals, the NTG Defendants informed the Court that "Defendants are prepared to move forward with scheduling the four remaining depositions of Scott Ferrell, David Reid, Victoria Knowles and Ryan Ferrell."  Dkt. 834 at 2.

In NIC's report, however, NIC noted that it intended to take numerous post discovery cut-off depositions that had not – and still have never been – authorized by the Court, including the "Deposition of Kirtland & Packard LLP's 30(b)(6) corporate designee," the "Deposition(s) of witness(es) regarding Scott Ferrell's recently disclosed declaration (Dkt. 812-1)," and the "Deposition(s) of individuals recently identified or discovered in documents produced under the crime-fraud orders."  Dkt 833 at 6.  In addition, NIC stated its desire to take the deposition of Newport Trial Group's 30(b)(6) designee, which NIC raised for the first time in the meet and confer process in late August 2019.  *Id.* at 5.  As acknowledged in NIC's own report:

> The Defendants dispute that NIC should be permitted to take any discovery other than the depositions of Scott Ferrell, David Reid, Victoria Knowles, and Ryan Ferrell. However, at this time, the Court should not rule on specific discovery issues or events. That case-by-case analysis should be performed by the Special Master who is intimately familiar with discovery issues in this case. NIC only identifies here the areas that may require further discovery given the Court's recent orders. The Special Master can expeditiously rule on requests for supplemental discovery, and also ensure that such

discovery remains relevant to the subject matter of the Court's recent privilege orders.

*Id.* at 7.

### 3. The August 26, 2019, Hearing

As a similar exchange occurred at the August 26, 2019 hearing following the Court's rulings on long-pending crime-fraud motions, the Court again confirmed that at that time, the parties and the Court had only agreed to allow the depositions of the remaining principals to be completed post cut-off.

> THE COURT: What's your estimate to present the issues to the special master regarding additional discovery and ***to take the depositions of the principals***?
>
> MR. ARHANGELSKY: First we need to get the documents, because until we have the documents, we don't know what we actually need to do. Assuming that can be completed within 30 to 60 days, I think we can advance the motions to the special master within a 30-day period seeking leave.

Sabovich Decl., Exh. B at 10:18-11:23 (8/26/2019 Hearing Tr.) (emphasis added).

### 4. December 16, 2019, Hearing and Scheduling Order

At a Status Conference on December 16, 2019, the Court again noted that it would allow limited discovery of the principals to be taken after the cut-off:

> Let's discuss the additional discovery that the Court is now going to allow with the fraud exception issues resolved. ***I would allow NIC to take the depositions of the principals that they have not previously taken***. …

Sabovich Decl., Exh. C at 21:12-16 (12/16/2019 Hearing Tr.)

On December 16, 2019, the Court also entered a Rule 16 Scheduling Order, which set pre-trial dates. Dkt. 883. This Scheduling Order again confirmed that

unless granted leave for specific exceptions, all depositions and discovery had to be completed before the cut-off date, which was previously set as December 31, 2017. *Id*. at 2.

### 5. NIC Waits Until February 21, 2020, to Serve its Rule 30(B)(6) Notice

On February 21, 2020, NIC served a Rule 30(b)(6) notice for NTG, including a remarkable 47 topics – many with subparts. Sabovich Decl., Exh. D. One topic alone, for example, included 21 subparts. *Id.* NTG served formal objections to NIC's 30(b)(6) notice on March 23, 2020. Sabovich Decl., Exh. E. NTG also opened meet and confer with a detailed letter on March 24, 2020. Sabovich Decl., Exh. F. In the objections and letter, NTG pointed out multiple problems with the subpoena and requested that NIC withdraw it. *Id.* The discovery cut-off had long since passed, having expired over two years ago on December 31, 2017. Dkt. 1030 at 2. As NTG pointed out in its letter, NIC had also repeatedly represented to the Court and counsel that NIC only intended to take the depositions of NTG's principals after the discovery deadline. Again, prior to late August 2019, all exchanges before the Court and between the parties over post cut-off depositions were limited to discussing only the four NTG principals, and none had indicated that NIC would be noticing or taking a Rule 30(b)(6) deposition.

### 6. NIC Refuses a Reasonable Compromise

Plaintiff refused to withdraw the Notice or to bring its scope within reason. Sabovich Decl., Exhs. G and H. Instead, NIC waited nearly two months until May 15, 2020, to serve NIC's Amended Notice, which included 36 topics for examination, again with many having express or implicit subparts. *Id.*, Exh. G. For example, one topic was "[a]ll facts and evidence related to the preparation, execution, and submission of declarations that were filed by NTG in each of the SAC CASES." *Id.* at 6. The term "SAC CASES" encompasses eight lawsuits (*id.* at 4), and there are

of course many declarations filed in each case.  As the Special Master knows, even routine motions typically include a supporting declaration.  So just this one request – which makes up less than 3% of topics, would require a 30(b)(6) designee to have thorough knowledge of "all facts and evidence" pertaining to a massive number of declarations.  Another topic is "all communications" with 21 individuals.  *Id.*

On June 1, 2020, NTG served Responses and Objections to NIC's Amended Notice, wherein NTG again noted its general and specific objections based on the substantial defects with the scope of NIC's 30(b)(6) notice.  Sabovich Decl., Exh. J.  In addition, NTG sent NIC's counsel as part of the meet and confer process that specifically noted:

> … since your Deposition Notice still has 36 separate matters of examination, most of which are still extremely broad and some of which include numerous sub-topics (matter for examination no. 7 has twenty-one (21) broad sub-topics) or prompt other objections, we intend to move for a protective order if we are not able to resolve these issues through the meet and confer process.
>
> We also ask that you review each of the matters of examination (and where applicable, each sub-topic) and provide an estimate of the approximate time that you expect to require for each matter and each sub-topic. As noted in the objections, we believe such a time estimate will help facilitate the meet and confer process and allow all sides (yourself included) to better review and assess the Deposition Notice and (a) whether a deposition on these matters can be completed within the time permitted, (b) whether certain matters or sub-topics are still uncertain and/or overbroad, and (c) and whether certain matters

or sub-topics can or should be withdrawn or revised to be described with more reasonable particularity.

Sabovich Decl., Exh. I.

NIC then sent a further meet and confer letter on June 29, 2020, and the parties held a telephonic conference on July 14, 2020. Sabovich Decl., Exh. K. In an effort to avoid motion practice, counsel for NTG further reviewed the Rule 30(b)(6) topics and provided feedback. Sabovich Decl., Exh. L.

On July 17, 2020, NTG wrote proposing to resolve the disagreement. Even though NIC was seeking an unauthorized deposition <u>years</u> after the discovery cut-off and without first seeking leave of court, NTG nonetheless indicated that it would agree to a reasonable 30(b)(6) deposition. NIC had multiple times taken the position that it could not take certain depositions without crime-fraud documents. So NTG offered to "allow a Rule 30(b)(6) deposition to proceed on certain limited topics that "will address one or more documents that have now been produced in response to the Court's production orders" regarding crime-fraud. *Id.* Such a limitation would bring the topics down to a more reasonable number of 15 and probably allow the deposition to be completed in one day. *Id.*

NIC refused any such limitation and just filed the instant motion.

## B. <u>NIC Is Not Permitted to Take a 30(b)(6) Deposition of NTG Without Leave of Court</u>

NIC's motion fails at its inception because NIC is seeking to take an unauthorized deposition over two years after the discovery cut-off without seeking leave of court to do so. In addition, NIC has unreasonably delayed in bringing its motion, which is prejudicial to Defendants' ability to prepare this matter for trial in just a few months.

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 35 -

### 1. NIC Never Obtained Leave to Take a Post Discovery Cut-off 30(b)(6) Deposition

Rule 16(b) provides that a Court must enter a scheduling order "as soon as practicable" within time limits set by the Rule. Fed. R. Civ. P. 16(b)(2). Pursuant to the Rule, the scheduling order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). "The objective of Rule 16 is to expedite and manage the disposition of a particular action." *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998). As such, once issued, a scheduling order may be modified only upon a showing of good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4); *see also Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citing same). As the Ninth Circuit has explained:

> A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." [*Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)]. The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of [plaintiff's] case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation...

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992); *see also L.H. v. Schwarzenegger*, 2008 WL 268983, at *6 (E.D. Cal. Jan. 29, 2008) ("Rule 16 and the court's scheduling order are not optional directives; the court is bound by them."); *Tessera, Inc. v. Sony Corp.*, 2013 WL 97794, at *3 (N.D. Cal. Jan. 7, 2013) ("A scheduling order is not a mere suggestion or a trifle that can be

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 36 -

disregarded when it becomes inconvenient; it is an order from the court. Just like any other order, the court expects compliance.").

Indeed, NIC recently obtained six-figure sanctions against NTG and its counsel based on, *inter alia*, the argument that Defendants had violated the Court's Rule 16 Scheduling Order.[6]  Dkts. 1028 at 11-12; 1054 at 17.  While NTG respectfully disagrees with the award and believes it to be erroneous, the fact that NIC successfully advocated alleged non-compliance with a scheduling order cut-off as grounds for Rule 11 sanctions, at a minimum, indicates that scheduling order deadlines must be taken literally and extremely seriously in this case.

Here, it is undisputed that the "[d]iscovery cut-off in this case expired on December 31, 2017 after th[e] Court extended the deadline."  Dkt. 1030 at 2.  A party seeking to take a deposition after the discovery cut-off is thus required to seek leave to do so.  *J.W. Pharm. Corp. v. Kahn*, No. CV 12-1006 JGB (RZX), 2014 WL 12639070, at *2 (C.D. Cal. Dec. 11, 2014).  Both parties were granted leave to take certain discovery post cut-off, and there was an agreement that NTG principal depositions could proceed following resolution of crime-fraud motions. But NIC is unable to point to any order or agreement wherein the Court granted leave to take a 30(b)(6) deposition of NTG or NTG agreed to that, post cut-off. Indeed, those discussions were always in the context of the actual principals of NTG.  Sabovich Decl., Exh. A at 8:24-9:16 (8.2.2019 Hearing Tr.) ("THE COURT:  I think the depositions of the principals are still outstanding. That's the biggest item I think. MR. ARHANGELSKY: Yes.  MR. DARNELL: Only four of

---

[6] NIC attempts to create the impression that it routinely obtains sanctions in this matter presumably to undermine Defendants' and their counsel's credibility. Respectfully, Defendants do not view this tactic as helpful.  The fact is that NIC requests attorneys' fees and costs with practically every motion.  NIC is denied attorneys' fees and costs far more often than it is granted them.  Counsel for NTG, in contrast, does not subscribe to the view that attorneys' fees should be routinely requested in every dispute.  So NTG requests fees only when truly warranted..

the principals, but yes. MR. ARHANGELSKY: Right."); *Id.*, Exh. B at 10:18-11:23 (August 26, 2019 Hearing Tr.) ("THE COURT: What's your estimate to present the issues to the special master regarding additional discovery and to take the depositions of the principals?  MR. ARHANGELSKY: First we need to get the documents . . . ."); *Id.*, Exh. C at 21:12-16 (Dec. 19, 2019 Hearing Tr.) ("I would allow NIC to take the depositions of the principals that they have not previously taken.").  In sum, NIC never requested an NTG 30(b)(6) deposition, and neither the Court nor NTG agreed to provide one.

NIC offers two counter-arguments.  First, it claims generally that "NIC could not have been expected to take" a 30(b)(6) deposition prior to receiving crime-fraud documents.  Second, NIC posits that NTG somehow agreed to a post cut-off 30(b)(6) deposition at the December 22, 2018, hearing.  Neither argument has merit.

Contrary to NIC's position, the discovery cut-off was not extended for a 30(b)(6) deposition of NTG.  Again, there is no order granting leave to take a post cut-off 30(b)(6) deposition, and NTG never agreed to that.  Rather, the understanding was always that only the four individuals would be deposed post discovery cut-off.  NIC claims that the Court's Minute Order at Docket 447 authorized a 30(b)(6) deposition, but that is not true.  It is simply a minute order extending all dates by 75 days.  Dkt. 447 at 4.  It had nothing to do with a 30(b)(6) deposition or whether depositions could be taken after the discovery cut-off.  The order makes clear "the extension's primary purpose is to permit NIC to take discovery, including depositions, after it receives a ruling on the pending crime-fraud motion" but before fact discovery closed.  That is an entirely separate issue from whether NIC can take a 30(b)(6) deposition of NTG over three years after discovery closed.

Despite this, NIC claims that NTG agreed to post discovery cut-off 30(b)(6), but that is completely untrue.  NIC represents that "Defendants . . . agreed in open

Court on January 22, 2018 that NIC could take the deposition of Defendant NTG [including a 30(b)(6) deposition] after receiving the privilege rulings."  As the actual transcript shows, that is not what happened:

> MS. SPERBER: Your Honor, just to be clear, we have agreed that the NTG defendants' depositions would go forward after the crime-fraud ruling. However, to the extent that NIC is asking today that discovery be reopened or that the opportunity to file additional discovery motions be reopened, we think that that proposition should be rejected.
>
> THE COURT: *I'm not going to do that.* I'm certainly not going to do it on the basis of a status conference report. I'm probably not going to do that, period, but you are always free to make any application you want.
>
> MS. SPERBER: If we understand then, *it's the status quo based on prior orders.*
>
> THE COURT: *Right*.

Sabovich Decl., Exh. M at 63:5-18 (emphasis added).

First, NTG did agree to post-crime fraud depositions of NTG principals and has kept to its word.  Second, this exchange simply confirms that the "status quo" remains.  Moreover, the exchange has nothing to do with a 30(b)(6) deposition.  . NIC attempts to put words in NTG's counsel's mouth by pretending that counsel meant for the words "NTG defendants" to mean the corporate entity NTG.  NIC points to briefs in which the use of the term "NTG Defendants" is defined to include the corporate entity NTG.  But the whole premise of a defined term is that it has been defined in the communication employing it.  Counsel did not define "NTG defendants" at the hearing and it is not reasonable to import the technical definition from briefs.  This is particularly true given that after the January 22, 2018, hearing, the post-crime-fraud ruling NTG depositions were always referred

to in the context of NTG's "principals" and never as a corporate NTG 30(b)(6) deposition.

This is not a minor issue and is significant in terms of proportionality. As discussed above, in the 2018 and early 2019 timeframe – when NIC seems to indicate this "agreement" to an NTG 30(b)(6) deposition took place – the Court raised and acted upon significant concerns over proportionality. Oct. 11, 2018, Hearing Tr. at 37:2-7. The Court expressly indicated at that time that the burden of the litigation was "disproportionate to the significance and value of the controversy, so I'm going to regulate the manner in which the Court disposes of pending motions." *Id.* Later, the Court held quite clearly that "the burdens imposed by this litigation are not justified by the amount in controversy" and that "the amount in controversy is not so high as to validate unending discovery, nor is it so high as to justify the substantial burden placed on the parties and the Court by the discovery at issue in this motion [seeking in camera review.]" Dkt. 788 at 13. The Court went on to reject NIC's claim that it could receive punitive damages up to 72 times the award and stated it "fundamentally disagrees with NIC's argument" that "the parties' access to resources also favors the discovery at issue because the NTG Defendants' defense 'is funded by an unlimited insurance contract.'" *Id*. at 14. As the District Court explained at that time, the "Court must draw a line past which discovery is no longer proportional to the needs of the case." Dkt. 788 at 15.

Given the Court's comments in late 2018, had NIC been clear in noting its desire to take a 30(b)(6) deposition – it was not and did not do so until much later in August 2019 – the Court would immediately have shut that down as disproportionate. Moreover, even if NIC sought leave (which it has not), that should be denied.

NIC would not likely be granted leave if it so sought now. NIC recently amended its complaint to add new allegations regarding Strataluz and an entirely

new RICO enterprise.  Dkt. 1030 at 2.  The Court denied NTG limited discovery regarding those new allegations because "opening discovery would further delay resolution of this action and potentially lead to further discovery disputes which in this action have been extraordinary in number."  *Id.* at 4.  The Court made clear that "[t]he days of proportional discovery requests here have long expired."  *Id.* at 6, 7 ("given the history of misconduct and excessive discovery in this action, there is a high probability that granting any further discovery here will result in more of the same.")

### 2. NIC Unreasonably Delayed in Raising the Issue of a 30(b)(6) Deposition and in Bringing the Instant Motion

Respectfully, NIC's efforts to take an expansive 30(b)(6) deposition appear to be an afterthought calculated to prejudice NTG at precisely the time NTG should be preparing for the upcoming March 2021 trial.  NIC filed this action in 2015.  Yet it waited until after the discovery cut-off and until close to trial to even raise the prospect of a 30(b)(6) deposition.  Then it extensively delayed in bringing the instant motion.

This action was filed more than five years ago and has been extensively litigated throughout this period.  For most of these years, NIC knew the discovery cut-off came and went on December 31, 2017, and that it applied to all discovery except for agreed upon and Court authorized exceptions.  NIC also knew that it never notified Defendants of its desire to take a 30(b)(6) deposition until late August 2019, and that Defendants immediately disputed this.  Dkt. 833 at 7 (where NIC acknowledges in its filing on August 23, 2020, that "Defendants dispute that NIC should be permitted to take any discovery other than the depositions of Scott Ferrell, David Reid, Victoria Knowles, and Ryan Ferrell.").  Despite this, NIC waited approximately six months before NIC served the first 30(b)(6) notice on February 21, 2020.  Sabovich Decl., Exh. D.  NIC then waited another ten months after that before filing the instant motion.  Hence, all told, despite knowing about

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 41 -

this disputed discovery, NIC waited more than 16 months and filed its motion only a few short months before trial.  A party may not unduly delay in moving to compel discovery (e.*g., Gault v. Nabisco Biscuit Co*., 184 F.R.D. 620, 622 (D. Nev. 1999). "Untimeliness is sufficient ground, standing alone, to deny a discovery motion." *KST Data, Inc. v. DXC Tech. Co*., 344 F. Supp. 3d 1132, 1136 n.1 (C.D. Cal. 2018) *quoting Williams v. Las Vegas Metro. Police Dept*., Case No. 2:13-cv-01340-GMN-NJK, 2015 WL 3489553, at *1 (D. Nev. June 3, 2015)). Indeed, courts "will often deny Rule 37(a) motions because the moving party delayed too long." 8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure, § 2285 (3d ed. Supp. 2019) (collecting cases).

Here, NIC's delay is undue and highly prejudicial.  The result is that NTG is forced to deal with a burdensome and expansive 30(b)(6) deposition notice and discovery dispute when the case should be being finalized for trial.  Indeed, NIC obtained sanctions based on the argument that NTG's now-dismissed counterclaim would "substantially prejudice" it because it would "derail this litigation and impose new costs and burdens."  Dkt. 1028 at 11 (citing Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990) for finding "a seven month delay in filing unjustified").  Similarly, NIC's unreasonable delay in seeking to take an expansive 30(b)(6) deposition will not only lead to further disputes at deposition, but also further law and motion that will undoubtedly derail this litigation and the trial in March 2021.  Yet NIC seeks to do precisely that to NTG.

Accordingly, the Special Master should find that NIC's 30(b)(6) deposition is not permitted under the scheduling order and that NIC unduly and unreasonably delayed in bringing this dispute before the Special Master and/or the Court, and therefore deny NIC's motion.

## C. **NIC's 30(b)(6) Topics Are Grossly Excessive, Unreasonable, and Not Proportional to the Needs of this Case**

Even if NIC was implicitly granted leave to take a post discovery cut-off 30(b)(6) deposition of NTG, and it was not, the deposition it seeks is patently unreasonable to the point of being near impossible to comply with and out of all proportion to the needs of this case.

### 1. **NIC's Notice is Excessive and Unreasonable on Its Face**

"A party who notices a Rule 30(b)(6) deposition should apply fairness and reasonableness to the scope of the matters that the witness is required to testify about." *Mailhoit v. Home Depot U.S.A., Inc.*, No. CV1103892DOCSSX, 2012 WL 12884049, at *2 (C.D. Cal. Aug. 27, 2012). For "Rule [30(b)(6) ] to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000). "Rule 30(b)(6) witnesses must be prepared and knowledgeable, but they need not be subjected to a 'memory contest.'" *Alexander v. F.B.I.*, 486 F.R.D. 137, 143 (D.D.C. 1998).

While a corporation must make a good faith effort to prepare a 30(b)(6) witness to "fully and unevasively answer questions about the designated subject matter ... that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 1511901 at *2 (N.D. Cal. Jan. 27, 2012) (internal quotation marks omitted); *see also Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) ("An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task."). Toward this end, "the court has an obligation to prevent a party from using a Rule 30(b)(6) deposition to harass the opposing party or to subject the opposing party to unreasonably burdensome or cumulative discovery, Fed. R. Civ. P.

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 43 -

26(b)(2)(C)."  *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012).

Moreover, topics cannot be overbroad or poorly described.  "A party noticing a deposition pursuant to Rule 30(b)(6) must describe with reasonable particularity the matters on which the examination is requested. Fed. R. Civ. P. 30(b)(6)."  *Louisiana Pac. Corp.*, 285 F.R.D. at 486.  "The scope of the matters or categories that are 'reasonably particularized' cannot be arbitrary to the corporate entity. The reasonably particularized categories must have some reasonable and rational relationship to the operation of the entity sought to be deposed."  *Hardin v. Wal-Mart Stores, Inc.*, No. 08-CV-0617 AWI BAM, 2011 WL 11563217, at *2 (E.D. Cal. Dec. 2, 2011); *see also McArthur v. Rock Woodfired Pizza & Spirits*, 318 F.R.D. 136, 143 (W.D. Wash. 2016) (finding that certain FRCP 30(b)(6) topics lack particularity when they fail to provide a date range).  Finally, it bears noting that the "Rule 30(b)(6) depositions, like all other discovery requests are subject to Fed. R. Civ. P. 26's proportionality standards."  *Luken v. Christensen Grp. Inc.*, No. C16-5214 RBL, 2018 WL 1994121, at *1 (W.D. Wash. Apr. 27, 2018); *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 233 n.3 (E.D. Pa. 2008).

Here, NIC's 30(b)(6) deposition is overly burdensome and disproportionate as a whole and as to individual topics.  The current Rule 30(b)(6) notice lists 36 topics, which is already excessive for a small matter such as this case.  But given the lack of particularity and breadth of each, the actual number of topics is easily several hundred.  For example, topics one through six, eight and nine list as topics for examination "facts and evidence related to" pre-litigation investigations, demand letters, settlements, client deposition preparation, deposition testimony, document exchanges, and client payment, in each of the eight SAC cases.  All told, 13 topics include the compound term "SAC Cases," and so implicitly include at least eight subparts each.  (*Id.*, Request Nos. 1, 2, 3, 4, 5, 6, 8, 9, 10, 13, 14, 15,

27.)  Topic number seven – communications – has 21 subparts.  Just those – less than one half of the requests – bring the number of topics to at least 124.  But there are others, for example, the requests for "[f]acts and evidence of compensation paid to NTG employees, agents, attorneys, and partners from 2010 to present (including but not limited to salary, hourly wages, bonuses, incentives, or contract terms)," that necessarily include multiple subparts since they cover multiple individuals for multiple years.

It is not only the sheer number of requests.  Many are so nonspecific as to be completely meaningless.  (*Id.*, No. 19 "All facts and evidence concerning NTG's legal representation of Strataluz LLC . . . ."); 24 ("All facts and evidence related to Strataluz (or any of Strataluz's parent entities, subsidiaries, or affiliated companies) operations.")  Others are nonspecific and completely unlimited in scope.  Number 10, for example, calls for "[a]ll facts and evidence related to payments made by NTG, or facilitated by NTG, to any witness in this lawsuit."  This, on its face, would call for knowledge of every invoice from every expert witness, or reasonable witness travel expenses.  Others try to get around the close of expert discovery in this matter.  Topic number 16 calls for "[a]ll communications and documents that NTG exchanged with any individual who produced a Rule 26(a)(2) expert report in this case."  As NIC knows full well, "Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications" except for narrow areas such as "compensation," "identifying facts or data . . . that the expert considered in forming the opinions to be expressed," and the like.  Fed. R. Civ. P. 26(b)(4)(C)  So this request would require NTG's designee to have knowledge of every communication between each of NTG's four testifying experts and NTG's counsel (i.e., Mr. Darnell or Mr. Sabovich) even though those communications are not discoverable and even though expert discovery closed over two years ago.

Once the express and implied subparts and compound topics are unpacked, NIC has probably noticed over 200 topics. This is grossly unreasonable and an abuse of the Rule 30(b)(6) mechanism:

> [T]he purpose served by [Rule] 30(b)(6)—to require an organization to identify and designate a witness who is knowledgeable on the noticed topic, particularly where the noticing party is unable to itself identify an appropriate witness because that knowledge lies within the organization—does not extend to burdening the responding party with production and preparation of a witness on every facet of the litigation. This would render unworkable the obligation of the responding party to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the subject matter, as that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand. To require [the opposing party] to respond to [an excessive] notice would be to ignore the directive of [Rule] 26(b)(2)(C)(iii) to limit the extent of otherwise relevant discovery where the benefit to and need of the propounding party is outdone by the burden, expense, and ... impracticable demand imposed on the other side.

*Apple Inc. v. Samsung Elecs. Co.*, Case No. C 11-1846 LHK (PSG), 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) (internal quotations, footnotes, and citations omitted). Even a relatively low number of deposition topics may be deemed burdensome if sufficiently broad. *See, e.g., Bowers v. Mortg. Elec. Registration Sys., Inc.*, No. 10-4141, 2011 WL 6013092, at *6 (D. Kan. Dec. 2, 2011) ("The Court has reviewed the 22 disputed deposition topics contained in the

deposition notice ... [and] finds that the wide-ranging and broad nature of the deposition topics subjects [defendant] to an undue burden").

"It is simply impractical to expect a Rule 30(b)(6) witness to know the intimate details of everything." *United States v. HVI Cat Canyon, Inc.*, Case No. CV 11-5097 FMO (SSx), 2016 WL 11683593, at *7-8 (C.D. Cal. Oct. 26, 2016). In particular, "it is well accepted that Rule 30(b)(6) does not permit 'burdening the responding party with production and preparation of a witness on every facet of the litigation.'" *DarbeeVision, Inc. v. C&A Mktg., Inc*., No. CV 18-0725 AG (SSX), 2019 WL 2902697, at *8 (C.D. Cal. Jan. 28, 2019 *quoting* Apple, 2012 WL 1511901, at *2. *Acton v. Target Corp.*, 2009 WL 5214419, at *4 (W.D. Wash. Dec. 22, 2009) ("No reasonable person could believe that [defendant] could prepare one or more deponents to testify on the [96 noticed] topics [plaintiff] has proposed without incurring undue burden and expense."); *FDIC v. Wachovia Ins. Servs., Inc*., No. 05-929, 2007 WL 2460685, at *3-4 (D. Conn. Aug. 27, 2007) (finding it "difficult to imagine how [defendant's] 30(b)(6) notice could be more broadly drawn" and noting discovery already completed would allow defendant to significantly narrow the topics appropriately subject to 30(b)(6) notice). Yet that is precisely what NIC has done.

Here, it is simply impossible to prepare a 30(b)(6) witness without incurring undue burden or expense. *Acton*, 2009 WL 5214419 at *4. NIC has quite literally demanded that NTG produce a 30(b)(6) witness knowledgeable of every conceivable topic, from the drafting of every declaration in the eight cases to current counsel's communications with expert witnesses in this case. Given their breadth, even a few of the topics would be a significant undertaking. Complete knowledge of the circumstances surrounding the drafting of declarations filed in eight separate lawsuits over multiple years (which is only one of 36 topics) could easily require dozens of hours of study. And that is presuming it is an intelligible topic. NIC was required to provide "with painstaking specificity, the particular

subject areas that are intended to be questioned." *Prokosch*, 193 F.R.D. 633, 638.
Instead, it has given topics like "[a]ll facts and evidence concerning NTG's legal
representation of Strataluz LLC . . . ." and "[a]ll facts and evidence related to
Strataluz (or any of Strataluz's parent entities, subsidiaries, or affiliated
companies) operations." It is not possible to even know what NIC means, much
less prepare a 30(b)(6) witness to meaningfully testify.

Given the facially excessive and unreasonable nature of NIC's 30(b)(6)
notice, its motion should be denied and a protective order issued. *Reno v. W. Cab
Co.*, No. 218CV00840APGNJK, 2020 WL 5902318, at *2 (D. Nev. Aug. 31, 2020)
(denying motion to compel 30(b)(6) deposition when "[r]ather than targeting those
issues in which Rule 30(b)(6) testimony is truly needed, the deposition notice
appears to have been drafted as a means to cover nearly every conceivable facet of
this litigation.").

**2. NIC's 30(b)(6) Notice is Not Proportional to the Needs of this Case**

NIC's 30(b)(6) notice would be unreasonable for a case with tens or
hundreds of millions at stake, but is borderline surreal in a small case like this one.
To repeat, the compensatory damages in this case – if NIC wins a full recovery of
them – are only $234,966.52. Dkt. 612-3 at 3:1-2. Moreover, it is the law of the
case that "[t]he burdens imposed by this litigation are not justified by the amount
in controversy" and that "the amount in controversy is not so high as to validate
unending discovery . . . ." Dkt. 788 at 13. Since NIC has brought this motion, it
has the burden of showing relevance and proportionality. *Louisiana Pac. Corp. v.
Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).

As the Court previously explained, "Federal Rule of Civil Procedure
26(b)(1) requires district courts to consider whether discovery is 'proportional to
the needs of the case, considering the importance of the issues at stake in the
action, the amount in controversy, the parties' relative access to relevant
information, the parties' resources, the importance of the discovery in resolving the

issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit.'"  Dkt. 788 at 10.  All of these factors cut against allowing NIC an expansive 30(b)(6) deposition.

As the Court already found, the amount in controversy is not high.  NIC claims that the Court found that the amount was "substantial" but that is not true.  Rather, the Court rejected every one of NIC's arguments in favor of a large judgment.  The Court rejected NIC's claim that it could receive punitive damages up to 72 times the award and stated it "fundamentally disagrees with NIC's argument" that "the parties' access to resources also favors the discovery at issue because the NTG Defendants' defense 'is funded by an unlimited insurance contract.'"  *Id.* at 14.  As the District Court explained ultimately, the "Court must draw a line past which discovery is no longer proportional to the needs of the case."  Dkt. 788 at 15.

The parties' relative access to information does not favor NIC as NIC claims.  NIC has already received extensive discovery on all of the topics it lists and has deposed, or will depose, all of the principals of NTG (who are also defendants).  There is, for example, no cause for an NTG designee to spend potentially hundreds of hours preparing on all of the topics related to the eight predicate matters, or Strataluz, when NIC has all the documents and is deposing everyone individually.  NIC argues that it needs a 30(b)(6) deposition because Andrew Baslow and Victoria Knowles did not have perfect knowledge of everything.  NIC does not show how any of the exchanges it cites are relevant to its case or how it was prejudiced by the responses in any way.  Rather, NIC seems to have simply compiled the times a witness stated "I don't know."  In the first cited instances from the Victoria Knowles' deposition, for example, she states she does not remember if she reviewed certain information before preparing a letter.  Furman Decl., Exh. 10 at 212:14-22.  Later, she testifies that she does not recall if she prepared a declaration, spoke with Ryan Ferrell about "Giovanni Sandoval," or

participated in meet and confer.  *Id.* at 220:8-23.  Other citations by NIC are generally similar.  To state the obvious, the fact that witnesses do not recall everything about events that happened years ago is just part of litigation.  It is not a justification for an expansive 30(b)(6) deposition.

More fundamentally, this argument highlights NIC's misperception of 30(b)(6) depositions.  A 30(b)(6) deposition is simply a means to take an organization's deposition.  It does not require that organization to transform itself into an oracle with knowledge of "every facet of the litigation.'"  *DarbeeVision*, 2019 WL 2902697, at *8.  NIC's cited example demonstrates that NIC's approach "would render unworkable the obligation of the responding party to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions."  *Id.*  How is a 30(b)(6) deponent supposed to know whether Victoria Knowles participated in declarations or meet and confer or read certain things when she herself does not know?  Ultimately, NIC has completely failed to identify any information it claims it needs that it would obtain from a 30(b)(6) deposition.[7]

Finally, the burden on NTG far outweighs any benefit to NIC. Even a relatively low number of deposition topics may be deemed burdensome if sufficiently broad.  *See, e.g., Bowers v. Mortg. Elec. Registration Sys., Inc*., No. 10-4141, 2011 WL 6013092, at *6 (D. Kan. Dec. 2, 2011) ("The Court has reviewed the 22 disputed deposition topics contained in the deposition notice ... [and] finds that the wide-ranging and broad nature of the deposition topics subjects [defendant] to an undue burden").  Here, a 30(b)(6) designee would have to

---

[7] NIC cites *Louisiana Pac. Corp.*, 285 F.R.D. at 486  and claims that "[t]he Rule 30(b)(6) deposition was actually created to eliminate the prejudice caused by that type of deflection by forcing a corporation to educate a representative on relevant topics from any source within the company."  NIC misses the point.  As numerous cases discussed above had made clear, 30(b)(6) simply does not allow a party to create an entity that knows everything about all.

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 50 -

1   prepare on literally hundreds of topics, each taking at a minimum several hours.  It

2   is unlikely that this is even humanly possible for one individual.  Although a party

3   may produce multiple corporate designees to cover multiple topics in a single Rule

4   30(b)(6) deposition, this mechanism does not obviate a potential undue burden.

5   *See, e.g., Braun v. Medtronic Sofamor Danek, Inc*., No. 10-1283, 2013 WL

6   1566692, at *1 (D. Utah Apr. 12, 2013) (recognizing that 48 topics spread across 2

7   designees is "considerable").  Not only would this be prohibitively expensive and

8   disruptive at a time when counsel and NTG should be preparing for trial, but NIC

9   is likely to turn this into another of its sanctions gambits by claiming that NTG did

10  not adequately prepare (since no mortal could).

11        Against this, NIC offers only theoretical benefits and generalities.  While it

12  mouths the words "critical," "material" and "core," the fact is that NIC already has

13  extensive discovery and has taken or will take the deposition of all relevant actors.

14  NIC acts as the proverbial discovery glutton where the more it gets, the more it

15  argues it needs.  *See Abbott v. Wyoming Cty. Sheriff's Office*, 2017 WL 2115381,

16  at *2 (W.D.N.Y. May 16, 2017) (considerations of proportionality can include

17  reviewing whether discovery production has reached a point of diminishing

18  returns); *Alaska Elec. Pension Fund v. Bank of Am. Corp*., 2016 WL 6779901, at

19  *3 (S.D.N.Y. Nov. 16, 2016) ("Rule 26(b)(1)'s proportionality requirement means

20  [that a document's] 'marginal utility' must also be considered.") (citations

21  omitted); *Updike v. Clackamas County*, No. 3:15-CV-00723-SI, 2016 WL 111424,

22  at *1 (D. Or. Jan. 11, 2016) ("But at some point, discovery yields only diminishing

23  returns and increasing expenses.").  NIC is unable to identify anything concrete it

24  needs for its case that a 30(b)(6) deposition is likely to yield.

25        Accordingly, the 30(b)(6) deposition is not proportional to the needs of this

26  case.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D. __NIC's Justifications for its Topics Are Without Merit__

Even setting aside the issues discussed above, all of which are fatal to NIC's motion, the individual topics themselves are improper both generally and given the scope of discovery in this case.  NIC argues the issue is premature because "NTG need not prepare the witness on information that they claim is outside the scope of discovery because they are not required to provide that information if asked," and that its topics are justified.  Neither contention has merit.

As a preliminary matter, NIC simply cannot enforce a 30(b)(6) notice with improper topics and NTG is entitled to a protective order from the same.  NTG does not, as NIC contends, have to take the risk of not preparing, objecting at deposition, and risking a subsequent motion.  Turning to the topics themselves, NIC's justifications are without merit:[8]

_Topics 14, 15, and 27._  These topics include referral of clients to "other law firms in SAC CASES," "communications germane to SAC CASES that NTG exchanged with individuals or entities listed on NIC's Rule 26(a)(1)," and "[f]acts and evidence concerning NTG's staffing and allocation of work for attorneys and employees in SAC CASES."  As explained in the objections, these requests lack particularity, are burdensome, are overbroad, and extend beyond the eight cases.  NIC responds that the topics are within the eight cases because they include the limiter "SAC CASES."  First, NIC's response ignores the other fatal flaws with these topics.  Second, the mere inclusion of that term without reference to what is actually being specified does not solve the problem.  Topic 14, for example, covers referrals to other firms that were in the SAC CASES.  That, by its terms, could include referrals to firms that appear in the SAC CASES but where the referred case was not one of the SAC CASES.  Topic 15 is unintelligible.  Staffing and

---

[8] NIC has not addressed all the objections made by NTG to the 30(b)(6 ) notice and NTG stands on all those objections.  Sabovich Decl., Exh. J.  The below argument addresses NIC's response but does not waive other objections.

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 52 -

attorney allegation for attorneys involved in SAC CASES – in addition to being completely irrelevant – necessarily includes other matters since attorneys do not simply work on one case.

*Topic 17.*  NIC seeks "[a]ll facts and evidence concerning settlement with Carter-Reed, Basic Research, or any related entity or subsidiary thereof, regarding litigation brought by Carter-Reed against Taylor Demulder."  Sabovich Decl., Exh. J at 19.  As NTG pointed out in its objections, discovery is limited to the eight predicate matters.  *Id.* at 19-20.  NIC seems to argue that because, according to it, these other matters were "related" to a predicate matter, they fall within the eight predicate cases.  But the Court has been quite clear that the eight cases are the eight cases and has denied other discovery.  *See* Transcript of May 9, 2016, Scheduling Conference at 7:10-8:4; *see also* Dkt. 155 (where the Court again confirmed that based on NIC's representations, discovery is limited to the eight cases at issue in the SAC that NIC must seek leave to take any discovery beyond those cases), Dkt. 198 at 4 (denying NIC's motion for leave to take discovery regarding the Hanberg Litigation), Dkt. 404 at 2 and 6-7 (again confirming prior orders limiting discovery and denying NIC's request to seek discovery into five additional cases involving the Non-NTG Defendants), and Dkt. 902 at 14 (confirming prior ruling in Docket 404 and noting "[t]his Court has already denied NIC's request to discover documents pertaining to Vogue because it is not one of the cases underlying the pending litigation. […] This is the law of the case and remains applicable to discovery pertaining to Vogue International.").  NIC cannot change the definition of the predicate matters three years after discovery closed to allow an out-of-scope 30(b)(6) topic.

*Topic 25*.  This topic includes "[f]acts and evidence concerning NTG's case management systems and procedures."  It is impossibly broad to the point of being nonsense.  It could literally include biographical information on the developer of

NTG's case management software.  NIC admits that this information "does not

relate to any specific case" but claims it would be good "background information

for the fact finder."  But NTG's case management is outside the eight predicate

matters and so is beyond the scope of discovery in this matter.  Moreover, NIC

offers nothing but generalities to justify the request.  Case management procedures

– calendaring, case tracking, and the like – have nothing to do with this matter.

Moreover, NIC has deposed or will depose NTG attorneys and can ask them.

_Topics 26, 31, 32, 33, 34, 35, and 36_.  These topics seek various financial

information either already subject to discovery or having nothing to do with this

case.  NIC argues that "the law-of-the-case is that NIC is entitled to take discovery

of Defendants' financial information."  This overstates the Court's holding, but

more fundamentally, underscores that NIC already took financial discovery three

years ago.  Dkt. 356 at 5.[9]  NIC claims that "the Defendants' conduct demonstrates

that they lack confidence in their own objection" because certain defendants

answered financial information at deposition.  But this only shows NIC's lack of

need.  Why does NIC need to depose an NTG designee about Victoria Knowles'

salary (which is not even a tangential issue in the case) when it already asked her?

Moreover, as explained in NTG's objections, all of these topics are overbroad and

seek to end-run the Court's denial of certain financial discovery on the grounds

that NIC had shown a "lack of diligence."  Dkt. 567 at 6 ("Given that from the

outset NIC intended to seek an award of punitive damages under Cal. Civ. Code §

3294, reasonable due diligence would have revealed that under California law, net

worth analyses require an examination of a defendant's assets as well as liabilities.

---

[9] NIC claims that "Defendants were later sanctioned for withholding production of
their financial documents on the basis that they should be given an 'Attorney's-
Eyes-Only' designation."  That is inaccurate.  Defendants sought to amend the
operative protective order to add an "Attorneys' Eyes Only" provision for sensitive
financial information.  _See_ Dkt. 488.

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF
DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 54 -

Accordingly, the Court denies NIC's request to issue the Requests for Production."); Sabovich Decl., Exh. J at 28.

*Topics 7 and 12.*   Topic 7 is communications with 21 individuals or entities (which are themselves compound since they include entities like law firms with multiple attorneys). This lacks specificity as for most, there is no subject or date limitation. Even setting that aside, the request is grossly burdensome and disproportionate as it would require the designee to have knowledge of literally tens of thousands of communications. Not only is this burdensome as NIC has already taken discovery, but it violates the Court's prohibition on NIC taking discovery beyond the eight cases. Sabovich Decl., Exh. J at 10-12. Topic 12 is "[a]ll facts and evidence related to NTG's use of tester plaintiffs in CIPA and CLRA cases." *Id.* at 14-15. As explained in NTG's objections, this is by its terms beyond the scope of the eight cases as it necessarily includes all CIPA and CLRA cases. *Id.* NIC responds that "Defendants have injected 'general practice' evidence into this defense by claiming that it had policies in place regarding the firm's interactions with clients." But NTG did not inject anything. NIC cites to the deposition testimony of Victoria Knowles and Andrew Baslow where they (not NTG) answer questions posed by NIC. For example, counsel for NIC asks Victoria Knowles "what's included in the case file for a CIPA case?" and she explains "[i]t would vary sometimes from case to case.· But generally, there would be a retainer, typically.· A class action representative sheet, typically.· There would probably, or in most cases be, like, some sort of client memo." Furman Decl., Exh. 10 at 115:3-23. This shows a deponent giving a good-faith answer to a question – it does not somehow alter the permissible scope of discovery. Moreover, it highlights the duplicative nature of this topic as NIC can and has asked other deponents questions on these issues.

For the foregoing reasons, NIC's rebuttals to NTG's objections are without

merit.

**E.  NIC Should Not Be Permitted a Two-Day Deposition**

Having served a vastly overbroad and improper 30(b)(6) deposition notice covering literally "every facet of the litigation," (*Apple Inc*, 2012 WL 1511901 *2) NIC requests double the normal deposition time to complete it.  NIC's request should be denied.

"Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). "The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." *Id.*  The advisory committee notes Rule 30(d) instructs that the party seeking an extension beyond the presumptive seven hours must show "good cause" for such an order. Fed. R. Civ. P. 30 advisory committee's note to 2000 amendment.  However, "there may more often be a need for additional time" for expert witnesses "for full exploration of the theories upon which the witness relies." *Id.*  Further, "if the deponent or another person impedes or delays the examination, the court must authorize extra time." Fed. R. Civ. P. 30(d)(1).

Here, NIC is the author of its own prejudice.  It claims it cannot complete a 30(b)(6) deposition in one day, but the only reason for that is NIC improperly drafted its deposition notice "to cover nearly every conceivable facet of this litigation." *Reno*, 2020 WL 5902318, at *2.  Had NIC offered a reasonable 30(b)(6) notice, the deposition could easily be done in one day.

Accordingly, NIC's request to double the deposition time should be denied.

**F.  NTG Should Be Granted a Protective Order**

As explained above, NIC's motion should be denied.  But additionally, the Special Master should enter a protective order prohibiting the 30(b)(6) deposition.

RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE

- 56 -

"In circumstances where a party abuses the discovery process, Fed. R. Civ. P. 26(c)(1) permits a party from whom discovery is sought to move for a protective order to safeguard the party from annoyance, embarrassment, oppression, undue burden, or expense." *Luken v. Christensen Grp. Inc*., No. C16-5214 RBL, 2018 WL 1994121, at *1 (W.D. Wash. Apr. 27, 2018). The entire 30(b)(6) mechanism is predicated on *"parties' reciprocal obligations to identify topics with particularity and prepare witnesses in good faith,"* (*DarbeeVision*, 2019 WL 2902697, at *8) which NIC has not done. Courts "have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) deposition notices." *Lipari*, 2008 WL 4642618, at *6; *see also In re Independent Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (granting protective order where plaintiff's attempt to discover facts underlying defendant's defenses and counterclaims through a Rule 30(b)(6) deposition was "overbroad, burdensome, and a highly inefficient method through which to obtain otherwise discoverable information"); *RM Dean Farms v. Helena Chem. Co.*, 2012 WL 169889, at *1 (E.D. Ark. Jan. 19, 2012) (granting protective order where "[t]he 30(b)(6) notice would require [defendant] to produce a corporate representative or corporate representatives to testify on topics so vast in number, so vast in scope, so open ended, and so vague that compliance with the notice would be impossible").

As seen above, NIC has served an unauthorized, unreasonable, and disproportionate Rule 30(b)(6) notice. Accordingly, NTG is entitled to a protective order prohibiting a 30(b)(6) deposition.

## G. NTG, Not NIC, Should Be Awarded Its Costs and Reasonable Attorneys' Fees

Unlike NIC, NTG does not routinely request attorneys' fees with every discovery dispute. However, given the extreme nature of NIC's positions and that this entire dispute could have been avoided had NIC acted reasonably, they are

warranted here.

Rule 37 fees are proper when a party unsuccessfully brings a discovery motion that was not "substantially justified" and "other circumstances" do not "make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). A request for discovery is substantially justified "if reasonable people could differ as to whether the party requested must comply." *Reygo Pac. Corp. v. Johnston Pump. Co*., 680 F.2d 647, 649 (9th Cir. 1982).

Here, NIC's 30(b)(6) notice was entirely improper. As seen above, it was served nearly three years after discovery closed and without leave of Court. NTG is mindful of the difficulties posed by the current COVID 19 crisis and the ensuing strains on the federal courts. NTG tried to avoid motion practice and the ensuing consumption of judicial resources by offering NIC a 30(b)(6) deposition (to which NIC was not entitled) with reasonable limitations. NIC refused and persisted with the type of overbroad, burdensome 30(b)(6) notice that numerous courts have ruled improper.

Accordingly, NIC's position was not "substantially justified" and NTG should be awarded its reasonable attorneys' fees and costs.

1    SO SUBMITTED:

2

3    DATED:  November 3, 2020

4

5    FOR PLAINTIFF NATURAL                    FOR NTG DEFENDANTS
     IMMUNOGENICS CORP.
6
     */s/ Peter A. Arhangelsky*                */s/ David Darnell*
7    Peter A. Arhangelsky (CA 291325)          David Darnell (CA 210166)
     parhangelsky@emord.com                    ddarnell@callahan-law.com
8    EMORD & ASSOCIATES, P.C.                  CALLAHAN & BLAINE
     2730 S. Val Vista Dr.                     3 Hutton Centre Drive, Ninth Floor
9    Bldg 6, Ste. 133                          Santa Ana, CA 92707
     Gilbert, AZ 85295                         Ph: (714) 241-4444
10   Ph:  (602) 388-8899                       Fx: (714) 241-4445
     Fx:  (602) 393-4361
11                                             *Attorneys for Defendants Newport Trial*
     *Attorneys for Plaintiff Natural-*         *Group PC, Scott Ferrell, Ryan Ferrell,*
12   *Immunogenics*                             *Victoria Knowles, David Reid and*
                                               *Andrew Baslow*
13   FOR THE NON-NTG                           FOR THE ATTORNEY DEFENDANTS
     DEFENDANTS
14
      */s/   Brendan M. Ford*                   */s/   Kyle Riddles*
15   Brendan M. Ford (CA 224333)              Kyle Riddles (CA 309854
     bford@forddiulio.com                      kriddles@bremerwhyte.com
16   FORD & DIULIO PC                          BREMER WHYTE BROWN &
     650 Town Center Drive, Suite 760          O'MEARA LLP
17   Costa Mesa, CA 92626                      20320 S.W. Birch Street
     Ph:  (714) 384-5540                       Second Floor
18   Fx:  (844) 437-7201                       Newport Beach, CA 92660
                                               Ph: (949) 221-1000
19   *Attorney for Defendants Andrew*           Fx: (949) 221-1001
     *Nilon, Sam Schoonover, Sam Pfleg,*
20   *Giovanni Sandoval, Taylor*                *Attorney for Ryan Ferrell, Victoria C.*
     *Demulder, and Matthew Dronkers*           *Knowles, David Reid, and Andrew Lee*
21                                             *Baslow*

22

23          Attestation pursuant to L.R. 5-4.3.4(a)(2)(i) regarding signatures:  I, Peter A.

24   Arhangelsky, attest that all other signatures listed, and on whose behalf this filing

     is submitted, concur in the filing's content and have authorized the filing.
25
     DATED:  November 3, 2020                  EMORD & ASSOCIATES, P.C.
26

27                                        By:   */s/ Peter A. Arhangelsky*
                                                Peter Arhangelsky
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2020 the foregoing, **RULE 37 JOINT STIPULATION RE: PLAINTIFF NIC'S MOTION TO COMPEL THE DEPOSITION OF DEFENDANT NEWPORT TRIAL GROUP'S 30(b)(6) DESIGNEE** was electronically filed using the Court's CM/ECF system and was sent by that system to the following:

Brendan M. Ford, Esq.
bford@FordDiulio, PC
650 Town Center Dr, Ste 760
Costa Mesa, CA 92625
Tel: (714) 384-5540
*Attorney for Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover, Matthew Dronkers, Taylor Demulder, and Sam Pfleg,*


David J. Darnell, Esq.
ddarnell@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
*Attorney for Newport Trial Group and Scott Ferrell*

/ / /

/ / /

/ / /

/ / /

/ / /

Nicole Whyte
nwhyte@bremerwhyte.com
Benjamin Price
bprice@bremerwhyte.com
Kyle A. Riddles
kriddles@bremerwhyte.com
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000
*Attorneys for Ryan Ferrell, Victoria Knowles, David Reid, and Andrew Baslow*

Robert Tauler, Esq.
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Blvd., Suite 510
Los Angeles, CA 90017
Tel: (310) 590-3927
*Attorney for David Reid and Victoria Knowles*

                                        */s/ Peter A. Arhangelsky*
                                        Peter A. Arhangelsky, Esq.