Hon. Andrew J. Guilford, Ret.
Judicate West
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340

Special Master

FILED
CLERK, U.S. DISTRICT COURT
1/20/21
CENTRAL DISTRICT OF CALIFORNIA
BY: LB  DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., <br><br> Plaintiff, <br><br> vs. <br><br> NEWPORT TRIAL GROUP, SCOTT J. FERRELL, RYAN M. FERRELL, VICTORIA C. KNOWLES, DAVID REID, ANDREW LEE BASLOW, ANDREW NILON, SAM PFLEG, MATTHEW DRONKERS, TAYLOR DEMULDER, SAM SCHOONOVER, GIOVANNI SANDOVAL, and DOES 1 through 10, inclusive <br><br> Defendants. | Case No. 8:15-cv-02034 JVS (JCGx) <br><br> (JW Reference No.: A270221) <br><br> SPECIAL MASTER'S ORDER REGARDING (1) NIC'S MOTION TO COMPEL NTG RULE 30(B)(6) DEPOSITION (DKT. NO. 1064) AND (2) NIC'S MOTION TO EXCLUDE WITNESSES AS UNTIMELY DISCLOSED (DKT. NO. 1073) |

Plaintiff Natural-Immunogenics Corp. ("NIC") has filed two motions before the Special Master. First, NIC moves to compel a Rule 30(b)(6) deposition of Defendant Newport Trial Group ("NTG"). (Dkt. No. 1064.) Second, NIC moves to exclude five individuals first listed by Defendants in August 2020 supplemental initial disclosures on the basis that they were not timely disclosed. (Dkt. No. 1073.) The Special Master asked that all C.D. Cal. Local Rule 37-2.3 supplemental briefs be filed by December 16, 2020. NIC filed supplemental briefs in support of its motions (Dkt. Nos. 1074, 1085) and Defendants only filed a supplemental brief regarding NIC's motion to compel a Rule 30(b)(6) deposition (Dkt. No. 1084). The Court, Special Master, and parties participated in a conference call before the Court on December 18, 2020 regarding the remaining deadlines in the case, and the parties' pending discovery disputes before the Special Master were briefly referenced. The Special Master also later requested, and NIC provided on January 4, 2021, additional information regarding NIC's motion to compel a Rule 30(b)(6) deposition.

The Special Master held a hearing regarding NIC's two motions, as well as another dispute, on January 11, 2021. Before the hearing, the Special Master provided the parties with a tentative order regarding NIC's two motions.

The Special Master has considered all the parties' timely-presented arguments, including those presented at the hearing, and now **GRANTS-IN-PART** and **DENIES-IN-PART** each of NIC's motions and **DENIES** the parties' dueling requests for fees.

## 1. BACKGROUND

The general background of this case is familiar to the Court, the Special Master, and the parties. In this ruling and any later ones, the Special Master will focus on a brief, specific review of background facts relevant to the particular dispute. At the hearing, the parties were asked to correct any factual errors in this order.

This matter has been pending since 2015. The parties served their Rule 26(a)(1)(A) initial disclosures in the case in April 2016. (*See, e.g.*, Dkt. No. 1073-2.) Discovery closed on December 31, 2017. (Dkt. No. 500.)

Since the close of fact discovery, the Court, the previous Special Master, and the current

Special Master have collectively heard numerous discovery motions and motions for sanctions. These have included disputes regarding whether Defendants are required to produce certain categories of documents under the crime-fraud exception to the attorney-client privilege or the work product doctrine. Multiple disputes also arose after NIC proffered witness declarations in response to a declaration from Defendant Scott Ferrell regarding his relationship with Trycia Carlberg.

The parties previously agreed that these ongoing disputes supported NIC's taking at least some party depositions after the discovery cutoff. Indeed, NIC took Victoria Knowles' deposition in summer 2020. (*See* Dkt. No. 1064 at 11.) Both parties refer to a January 2018 hearing where the issue was discussed with the Court. (*See, e.g.*, Dkt. No. 1084.) The parties disagree over whether the 2018 hearing discussion, as well as other filings and hearing discussions, specifically addressed the possibility of a deposition of Defendant NTG. Defendants concede that NIC at least raised the issue of a deposition of NTG in August 2019. (Dkt. No. 1064 at 31.)

In February 2020, NIC served a Notice of Deposition of Defendant NTG's 30(b)(6) Designee. (*See* Dkt. No. 1064 at 4.) NTG later served responses and objections, and the parties met and conferred regarding those objections. In May 2020, NIC served Amended Topics for Examination of Newport Trial Group's Rule 30(b)(6) Designee. In July 2020, the parties met and conferred regarding NTG's objections as well as regarding a compromise offer from NTG to narrow the scope of the deposition topics. (*See id.* at 35.)

Meanwhile, in August 2020, Defendants served supplemental initial disclosures naming ten new potential witnesses. (Dkt. No. 1073-3.) The parties currently dispute whether the circumstances of this case obligated Defendants to disclose five of these witnesses at an earlier date. Specifically, NIC challenges Defendants' August 2020 disclosure of Isabella Janovick, Deborah Winzen, Erin Ferrell, Derrick Reidenbaugh, and Robert Scott Bell. (Dkt. No. 1073 at 1.)

The parties filed their joint stipulations regarding their two disputes in November 2020.

## 2. Rule 30(b)(6) Deposition Dispute

### 2.1 Whether Rule 30(b)(6) Deposition of NTG Should Be Permitted

The parties dispute whether the Court previously permitted NIC to take NTG's deposition after the discovery cutoff. To the extent the Court didn't previously permit a late deposition of NTG, NIC must show that good cause supports modifying the scheduling order so that it can take the deposition now. *See* Rule 16(b)(4); *see also Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*, No. SACV 19-00835 JVS (DFMx), 2020 U.S. Dist. LEXIS 229898, at *2 (C.D. Cal. July 30, 2020) (citing *Johnson v. Mammoth Recreations*, 975 F.2d 604, 607 (9th Cir. 1992)); (Dkt. No. 1064 at 36 (NTG's portion of joint stipulation on Rule 30(b)(6) motion, referencing Rule 16's good cause standard).).

In the papers, the parties' dispute appeared to rest on debating the meaning of certain words and phrases that they and the Court previously used in this proceeding. In earlier hearings in this case, the Court and parties agreed that depositions of "NTG Defendants" or "depositions of the principals" would be permitted after the discovery cutoff. (*See, e.g.* Dkt. No. 1084 (Defendants' supplemental brief, discussing this at length).) Defendants argue that these phrases as used show that NIC only ever sought the post-discovery depositions of the four individual NTG attorney Defendants, not a later deposition of NTG itself. The Special Master finds no basis to show that the word "principal" was limited to encompassing only the individual NTG Defendants, and Defendants do not otherwise sufficiently support their narrowed view of the meaning of the term "principal" in the context of this dispute. Defendants also support their position by citing, among other things, a portion of a joint report that they wrote and statements that they made at hearings. Although Defendants may have themselves consistently taken the position that NTG should not have its deposition taken after rulings on the crime-fraud disputes, the record is not clear that the Court or NIC necessarily shared that position.

Indeed, the statements at the January 2018 hearing support the opposite view. The Court agreed with NIC that it couldn't "lay a definitive timetable in place until we get the Crime-Fraud Motion ultimately resolved. There are a number of matters of discovery as you represent that will flow from that ruling. Some depositions have been deferred until that ruling is here."

(Dkt. No. 1064-8 at 62:21–63:1.) As NIC notes, it was NTG itself that was responsible for producing many of the documents implicated by the crime-fraud rulings in this case, including the Strataluz-related documents that are the subject of ongoing motion practice. (*See* Dkt. No. 1064 at 9.) Practically speaking, the argument that the Court permitted the individual NTG Defendants, but not NTG itself, to have their depositions taken after the discovery cutoff and specifically after the parties received the outcome on their crime-fraud disputes is unpersuasive given the circumstances of this case.

At the hearing, Defendants' counsel argued that the dispute didn't concern the meaning of the phrases "principals" or "NTG Defendants." Instead, he quoted an excerpt from an August 2019 hearing transcript where *he* stated depositions of "only four of the principals" remained outstanding, and NIC's counsel agreed by stating, "right." (Dkt. No. 1064-16 at 8:24–9:10.) NTG's counsel also referenced an earlier excerpt of one of NIC's briefs requesting discovery after the discovery cutoff. (Dkt. No. 415-1 at 16–17.) Ultimately, the Special Master finds these references, also submitted in Defendants' supplemental brief on the motion, insufficient to warrant a different outcome here, including when considering other aspects of the procedural history and nature of this case.

And in any event, the Special Master finds that for similar reasons, good cause would support permitting the Rule 30(b)(6) deposition of NTG after the discovery cutoff. Some of the unique disputes in this case can be attributed at least in part to the fact that Newport Trial Group is a law firm accused of fraudulent conduct. Resolving discovery issues regarding attorney-client privilege and the work product doctrine are highly relevant here. The Court previously found that NIC timely moved to compel discovery from NTG under the crime-fraud exception to these doctrines. (Dkt. No. 447 at 3–4.) As noted, the parties' disputes on some of these issues (particularly related to Strataluz) are ongoing even now.

In these circumstances, NIC acted with sufficient diligence when it served NTG with a Rule 30(b)(6) deposition subpoena in February 2020. Indeed, another ruling regarding the parties' privilege disputes was issued just a few weeks later in March 2020. (Dkt. No. 902 (sustaining-in-part certain objections to the previous Special Master's order and permitting NIC

to reopen certain other depositions considering the Court's various rulings on privilege issues).) The parties also met and conferred to attempt to resolve their dispute regarding an NTG Rule 30(b)(6) deposition through July 2020, making the filing of a motion on the dispute in November 2020 not unreasonable. Moreover, given the uncertainty in the record regarding whether the Court previously permitted a Rule 30(b)(6) deposition of NTG and the dueling expectations of the parties in that regard, the Special Master is persuaded that NTG did not act with undue delay or in bad faith in the timing of its request for a Rule 30(b)(6) deposition.

In addition to NIC's sufficient diligence, Defendants have not reasonably shown undue prejudice from the timing of a Rule 30(b)(6) deposition now. The parties and Court have already agreed that the trial in this case won't go forward in March 2021 (the trial date has now been reset to November 2021), and the expense is not unreasonable for a Rule 30(b)(6) deposition of the corporate law firm defendant central to this case after the resolution of privilege disputes regarding that defendant's produced discovery.

### 2.2 Scope of Rule 30(b)(6) Deposition

Although the Special Master agrees with NIC that a Rule 30(b)(6) deposition of NTG should proceed, proportionality doesn't support expanding that deposition beyond seven hours or covering all the matters listed in NIC's May 2020 notice of amended topics. As drafted, NIC's amended notice is overbroad. The Special Master agrees that its vast scope would make it difficult if not impossible for NTG to adequately prepare a Rule 30(b)(6) witness, and isn't warranted by the late stage of the case. At the Special Master's direction, the parties met and conferred before the January 11, 2021 hearing and NIC submitted 20 proposed narrowed topics for the Special Master's review.

Having reviewed those narrowed topics, the Special Master finds that they remain overbroad. As the parties acknowledged at the hearing, Rule 30(b)(6) requires the notice or subpoena to "describe with reasonable particularity the matters for examination." The Special Master finds that topics 1, 2, 5, 9, 10, 11, and 13 do not meet this standard. After now taking two opportunities to narrow the scope of the requests (once during meet and confer efforts with NTG and now at the Special Master's direction), the Special Master finds that, having failed to

reasonably particularize these requests, NIC will not be permitted to take NTG's deposition on these topics.

Of the remaining thirteen topics, the Special Master finds that NIC must further pare down to ten topics of its choosing from the current list. As Judge Selna has previously found and the Special Master has already quoted, "[t]he days of proportional discovery requests here have long expired." (Dkt. No. 1030 at 6–7.) NIC will be permitted to take this Rule 30(b)(6) deposition, but it will not be permitted excessive Rule 30(b)(6) topics at this eleventh hour and in the circumstances of this case that will simply breed more opportunities for disproportional disputes and discovery.

The Special Master accordingly **GRANTS-IN-PART** and **DENIES-IN-PART** NIC's motion to compel NTG's Rule 30(b)(6) deposition. NIC may seek testimony from NTG on ten of the following topics in its narrowed Rule 30(b)(6) topics list: 3, 4, 6, 7, 8, 12, and 14–20.

### 3. Witness Disclosure Dispute

The parties dispute whether Defendants timely disclosed five of the ten new individuals listed in Defendants' August 2020 supplemental initial disclosures. A party, without awaiting a discovery request and usually no more than 14 days after the parties' Rule 26(f) conference in a case, must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party must use to support its claims or defenses, unless the use would be solely for impeachment." Rule 26(a)(1)(A)(i); *see also* Rule 26(a)(1)(C). A party must supplement these initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e)(1)(A).

Defendants appear to generally present three overall arguments. First, for at least some of the challenged individuals, Defendants argue that they are being offered for impeachment purposes, such that their disclosure wasn't required. Second, Defendants somewhat suggest that the supplemental disclosures are timely because the newly-listed individuals "had become

relevant due to recent events or allegations." (Dkt. No. 1073 at 40.) Third, Defendants argue that NIC already knew of these individuals, such that Defendants weren't required to include them in initial disclosures. The Special Master considers these arguments in turn.

### 3.1 Whether Disclosures Are Unnecessary Because Witnesses Will Offer Impeachment Testimony

In their excerpt of the joint stipulation on the motion, Defendants argue that Bell and Reidenbaugh are offering impeachment testimony that did not need to be disclosed under Rule 26(a) at all. (*See, e.g.* Dkt. No. 1073 at 56 ("Derrick Reidenbaugh testimony is impeachment testimony that is [exempt] from the disclosure requirement under Rule 26(a)."), 58 (stating in a subsection titled "Robert Scott Bell" that "[a]s a preliminary matter, this is impeachment testimony not subject to Rule 26(a).").) Rule 26(a) requires disclosure of individuals with relevant information "*unless* the use would be solely for impeachment." Rule 26(a)(1)(A)(i) (emphasis added). NIC doesn't dispute this, but instead argues that NTG's refusal to withdraw its new disclosures "establish[es] *prima facie* that NTG offers them beyond impeachment." (Dkt. No. 1085 at 3.) In the tentative ruling, the Special Master took Defendants at their word that they would rely on Bell and Reidenbaugh solely for impeachment (and that some of the other challenged witnesses are being offered for impeachment as well).

To make sure the record was clear, the tentative ruling also noted that legal authority provides that testimony "solely for impeachment" represents a very specific, narrow category of testimony. As Judge Feess aptly explains, "evidence material to the substance of the case — evidence that would tend to prove the truth of a matter to be determined by the jury — must be disclosed even if it could also be considered impeaching with respect to some aspect of a witness's testimony." *Norwood v. Children & Youth Servs.*, CV 10-7944 GAF (MANx), 2013 U.S. Dist. LEXIS 206023, at *9 (C.D. Cal. Dec. 3, 2013). Anything beyond non-substantive testimony "to encourage the trier of fact to look critically at whether the evidence should be believed" required timely disclosure. *See id.* at *10.

At the hearing, Defendants urged that the Special Master should modify his tentative ruling regarding Reidenbaugh and Bell. In other words, Defendants largely conceded that they

were seeking to offer Reidenbaugh and Bell for more than solely impeachment purposes. The Special Master has considered Defendants' additional arguments regarding these witnesses and finds them unpersuasive. Regarding Bell, Defendants fail to explain their delay from February 2020 to August 2020 in adding him to supplemental disclosures. Regarding Reidenbaugh, Defendants' delay from (1) fall 2019 to May 2020 in contacting Reidenbaugh and (2) May 2020 to August 2020 in adding him to their initial disclosures is also insufficiently explained. Moreover, although Defendants insist that Reidenbaugh's signed declaration is "on the record," to support this assertion, they cite an attachment to NIC's November 2020 motion to exclude addressed by this Order. As further discussed in the sections that follow, these circumstances don't support a determination that Defendants timely disclosed these witnesses or that NIC could otherwise be expected to anticipate Defendants would identify these individuals as potential witnesses.

### 3.2   Whether Disclosures Are Timely Due to Recent Events in the Case

Defendants argue that the five challenged witnesses "are known witnesses who in large part were put at issue because of NIC's actions and allegations in late 2019." (Dkt. No. 1073 at 40.) Specifically, Defendants refer to a dispute between the parties that began in September 2019 when NIC submitted witness declarations in response to Ferrell's declaration regarding his relationship with Trycia Carlberg. (*Id.* at 43.) Defendants also filed a (later-dismissed) counterclaim referring to the same dispute in April 2020. (Dkt. Nos. 918, 980.) To the extent NTG argues that its August 2020 supplemental initial disclosures are timely because of this dispute ignited in September 2019, that position is unpersuasive. NTG waited far too long from fall 2019 to serve its supplemental disclosures. Moreover, the topics disclosed for some of the challenged witnesses (*e.g.* Janovick and Winzen) relate to disputes that arose long before fall 2019, and as early as December 2015. (See Dkt. No. 1073-3 at 3 ¶¶ 9, 10.) (NTG did not present oral argument regarding Janovick and Winzen at the hearing.) For these witnesses, their disclosure by Defendants as potential witnesses in August 2020 is even more untimely.

### 3.3 Whether Disclosures Unnecessary Because Witnesses Were Already Otherwise Known to NIC Under Rule 26(e)(1)(A)

Perhaps recognizing the large gap in time between even fall 2019 and August 2020, Defendants seem to focus instead on arguing that NIC should have already known that the challenged witnesses had knowledge relevant to Defendants' claims and defenses, such that Defendants did not need to supplement their initial disclosures at all. The Special Master agrees with NIC that simply because a party knows of an individual's existence doesn't necessarily mean a party knows that the individual is another party's potential witness. *Withers v. eHarmony, Inc.*, No. CV 09-2266 GHK (RCx), 2010 U.S. Dist. LEXIS 148482, at *7 (C.D. Cal. Apr. 1, 2010) (Chapman, J.) (quoting Advisory Committee Notes to 2000 Amendment to Rule 26(a)(1)) ("A party is no longer obligated to disclose witnesses . . . whether favorable or unfavorable, that it does not intend to use."). But this appears to be Defendants' argument for all of the challenged witnesses, and particularly Janovick and Winzen. (Dkt. No. 1073 at 60.) Because Defendants did not otherwise timely disclose information during the course of this case to suggest that they considered these individuals to be potential witnesses, Defendants cannot rely on Rule 26(e)(1)(A) to excuse their late initial disclosures.

The situation is different for Erin Ferrell. As NIC acknowledges, Erin Ferrell did file a declaration supporting NTG's position in this case in fall 2019. (Dkt. No. 846-3.) That declaration didn't itself include much written testimony, but did attach eight exhibits involving Erin Ferrell and Trycia Carlberg that were directly relevant to the parties' fall 2019 dispute. Specifically, Erin Ferrell's submitted exhibits related to whether Carlberg was living with the Ferrells during portions of late 2011 and early 2012. This declaration timely placed NIC on notice that Erin Ferrell would act as a potential witness for Defendants on that topic, *i.e.* regarding her "knowledge of facts relating to Trycia Carlberg and the fact that she was living at the home of Ferrell at time periods that are relevant to issues in this case." (Dkt. No. 1073-3 ¶ 8.)

NIC insists that the parties' dispute regarding Carlberg has been ongoing since this case began. NIC suggests that it is unduly prejudiced by Defendants' failure to list Erin Ferrell in their

initial disclosures before the discovery deadline. (Dkt. No. 1085 at 5.) NIC has not shown that the specific issue of where Carlberg lived during certain time periods in 2011 and 2012 has been a contested issue in this case since the beginning. Instead, the record shows that it was first challenged by NIC in its fall 2019 witness declarations. Moreover, given the limited scope of both Erin Ferrell's submitted declaration and the subject matter listed for her in Defendants' supplemental disclosures, NIC has not shown undue prejudice. The Special Master declines to exclude Erin Ferrell from Defendants' supplemental initial disclosures.

At the hearing, NIC disputed the Special Master's statements in the tentative ruling regarding when Carlberg's living arrangements first became a contested issue in this case. NIC also disputed the Special Master's tentative finding that Erin Ferrell's declaration reasonably placed NIC on notice that NTG considered Ferrell an individual with relevant knowledge in this case, referring to Erin Ferrell's declaration as only offering impeachment testimony. The Special Master does not disagree that there was a general dispute between the parties regarding Carlberg's relationship to the Ferrells earlier in proceedings. But whether originally by NIC's or NTG's doing, it wasn't until fall 2019 that the issue was brought to the forefront of this case. The Special Master also notes that NIC's characterization of Erin Ferrell's declaration as solely impeachment testimony is inconsistent with the discussion of impeachment testimony that the Special Master has provided in this ruling, and would create a double-edged sword for NIC if the Special Master were to accept it. Ultimately, the Special Master has considered NIC's arguments, including regarding the procedural history of this case, and finds them unpersuasive.

NIC also argued that it should be permitted further discovery regarding Erin Ferrell. NTG responded by arguing that Erin Ferrell's declaration and its accompanying documents have already been produced (and indeed filed on the docket in the case), such that additional discovery isn't warranted. The Special Master agrees. Given the narrow scope of Erin Ferrell's declaration and the documents attached, proportionality does not support reopening discovery due to Erin Ferrell's inclusion on Defendants' supplemental initial disclosures.

### 3.4 Summary Conclusion Regarding NIC's Motion to Exclude

The Special Master accordingly finds that, given the circumstances of this case, exclusion of Bell, Reidenbaugh, Janovick, and Winzen except "solely for impeachment" is warranted. The Special Master reaches this determination based in part on finding that Defendants have failed to show these witnesses' late disclosure was substantially justified or harmless. The Special Master finds that exclusion of Erin Ferrell is unwarranted, and she should be permitted to testify regarding issues covered by her September 27, 2019 declaration (Dkt. No. 846-3) and its attached exhibits as they relate to whether Carlberg lived with the Ferrells during time periods relevant to this case. The Special Master thus GRANTS-IN-PART and DENIES-IN-PART NIC's motion to exclude these witnesses as stated herein.

### 4. Fee Shifting

Because the Special Master finds that each of NIC's motions should be granted-in-part and denied-in-part, Rule 37(a)(5)(C) applies. In this case, having considered the dispute, the Special Master does not find any fees are warranted and DENIES all requests for fees and expenses associated with NIC's motions.

### 5. CONCLUSION

The Special Master has considered all the parties' timely-presented arguments, including those presented at the hearing, and now GRANTS-IN-PART and DENIES-IN-PART each of NIC's motions and DENIES the parties' dueling requests for fees.

THUS, IT IS ORDERED.

Dated: January 20, 2021

_____
Hon. Andrew J. Guilford, Ret.
Special Master