Hon. Andrew J. Guilford, Ret.
Judicate West
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340

Special Master

FILED
CLERK, U.S. DISTRICT COURT

1/20/21

CENTRAL DISTRICT OF CALIFORNIA
BY: ___LB___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., <br><br> Plaintiff, <br><br> vs. <br><br> NEWPORT TRIAL GROUP, SCOTT J. FERRELL, RYAN M. FERRELL, VICTORIA C. KNOWLES, DAVID REID, ANDREW LEE BASLOW, ANDREW NILON, SAM PFLEG, MATTHEW DRONKERS, TAYLOR DEMULDER, SAM SCHOONOVER, GIOVANNI SANDOVAL, and DOES 1 through 10, inclusive <br><br> Defendants. | Case No. 8:15-cv-02034 JVS (JCGx) <br><br> (JW Reference No.: A270221) <br><br> ORDER OF SPECIAL MASTER REGARDING STRATALUZ DISCOVERY DISPUTES |

In August 2019, Judge Selna resolved various objections to rulings made by the Honorable Rosalyn M. Chapman. (Dkt. No. 820.) After sustaining some of the objections, he directed Plaintiff Natural-Immunogenics Corp. ("NIC") to submit lists of certain categories of documents that had been privilege logged by Defendant Newport Trial Group ("NTG"). (*Id.* at 32.) NIC later did so. (*See* Dkt. Nos. 823-2, 823-3, 823-4). NTG then provided an updated submission for one of the lists (Dkt. No. 830-1, in response to Dkt. No. 823-4) and objections to the production of documents in one of other the lists (Dkt. No. 836, in response to Dkt. No. 823-3).

After the Court's acceptance of the Honorable Rosalyn M. Chapman's retirement from her role in the case and the appointment of this Special Master (*see* Dkt. Nos. 1029, 1039), the Court directed the Special Master to conduct an *in camera* review of the documents referenced by NIC's lists. (Dkt. No. 1049.) The Special Master held a telephonic status conference with the parties and set a hearing on the dispute for November 9, 2020, which was later moved to November 19, 2020. At the Special Master's request, NTG provided all disputed documents in the lists to the Special Master for *in camera* review. Before the hearing, the parties were provided with a tentative order regarding this dispute.

Based on the arguments presented at that November 19, 2020 hearing, the Special Master permitted an additional hearing on January 11, 2021 to further address the issues presented. The parties were also provided with a revised tentative order regarding the dispute before the additional hearing.

Overall, and before proceeding, this Special Master here notes numerous factors complicating and informing this matter. The documents are voluminous. There are numerous Orders from multiple judicial officers setting standards. There are numerous objections and remands. The Special Master, of course, was strongly committed to following existing standards set by Judge Selna. Following previous Orders, the Special Master found that criminal activity was pervasive. Many documents found to be unprotected nevertheless added little to the voluminous documents already produced. This at times raised proportionality and simplicity issues when such documents were analyzed for producibility. (*See also* Dkt. No. 1030 at 6–7 ("The days of proportional discovery requests here have long expired . . . . Furthermore, given the history of

misconduct and excessive discovery in this action, there is a high probability that granting any further discovery here will result in more of the same.").)

That being said, this Order provides clarification regarding the Special Master's review and **ORDERS** NTG to produce:

- All documents listed in Dkt. No. 823-2, because they are required by Judge Selna's August 2019 Order.
- All documents listed in Dkt. No. 823-3 because they are required by Judge Selna's August 2019 Order and alternatively fall under the crime-fraud exception.
- Almost all documents in Dkt. No. 823-4 under the crime-fraud exception except for the few documents identified in the conclusion section of this Order.

## 1. BACKGROUND

The Special Master recently prepared a separate order regarding another pending dispute between the parties. That order includes a very detailed background section. At hearings on this matter, the parties were specifically asked to correct any factual errors for this complicated case. The Special Master does not repeat the more general background again, but instead turns to the specific dispute here, which relates to discovery into non-party company Strataluz, LLC. As Judge Selna explains,

> Strataluz was a Nevada LLC formed in January 2014 and owned by Reid, Ferrell, and non-parties [Joshua] Weiss, Jarrod Bentley [ ], and James Hardin [ ]. Docket Nos. 588-93 at 772, 776. According to Reid, Weiss, and Ferrell, Strataluz marketed and sold personal health products. Id. It also pursued Lanham Act claims against companies that sold dietary supplements or health products, particularly with regard to its product ProMAXAL. Id. at 1–2.

(Dkt. No. 820 at 8.)

In an earlier order in this case, Judge Selna found that the crime-fraud exception applied to certain Strataluz emails that Reid, Ferrell, and Weiss had sought to withhold on the basis of the attorney-client privilege. (Id. at 8–9; see Dkt. No. 299.) "The Court concluded that 'there is significant evidence in the record that [Defendants and Weiss] did not form Strataluz for legitimate business purposes.'" (Dkt. No. 820 at 9 (citing Dkt. No. 299 at 19).) The Court then

3

permitted discovery of Strataluz-related documents. In response, Ferrell and Reid served a privilege log for the Strataluz documents, "withholding 1,321 documents under claims of attorney-client privilege, work-product protection, and the common interest doctrine." (*Id.* at 10.) Judge Chapman denied NIC's motion to compel production of these 1,300+ documents. (*Id.* (citing Dkt. No. 634).)

Later, Judge Chapman conducted an *in camera* review of an entirely overlapping collection of 364 Strataluz-related documents under the crime fraud exception. (*Id.* at 10–11.) She held "that all 364 privilege-logged Strataluz documents sought by NIC . . . were subject to the crime-fraud exception, with the exception of seven documents determined to be improperly logged as privileged." (*Id.* at 11 (citing Dkt. No. 712).) As Judge Selna explained,

> The Special Master found that the Strataluz documents fall into four categories: (1) the "smoking gun" documents disclose directly or indirectly by reasonable inference NTG's fraudulent litigation scheme; (2) the drafts of demand letters to companies which raise Strataluz's fraudulent claims; (3) the drafts of summonses, cover sheets, and Complaints filed against companies which raise Strataluz's fraudulent claims; and (4) the drafts and finalized versions of Rule 998 settlement offers, non-disclosure agreements, and settlement agreements with companies which were based on Strataluz's fraudulent claims. [Dkt. No. 712] at 22. The Special Master found by a preponderance of the evidence that each of these categories of documents are "sufficiently related to" and "in furtherance of" NTG's sham litigation scheme. Id. at 22, 24.
>
> As the Court has previously noted, the strength and force of the Special Master's statements regarding the Strataluz documents is notable. The Special Master found that the Strataluz documents "dramatically demonstrate the magnitude of Defendants' use of Strataluz as a litigation vehicle to perpetrate fraud on the court; Defendants ran a litigation mill through Strataluz, the size of which is staggering." Id. at 22. The Special Master also stated that the 364 privileged Strataluz documents "appear to be 'the tip of the iceberg'; ***Strataluz's privilege log . . . most likely contains hundreds of additional documents to which the crime-fraud exception might apply . . . .***" Id. at 22 n.6.

(*Id.* at 11–12 (emphasis added).) Judge Selna overruled NTG's objections to Judge Chapman's ruling regarding the 364 Stratraluz-related documents. (*Id.* at 20–22.) In doing so, he provided his own description of some of the evidence in the documents supporting the application of the crime-fraud exception. (*Id.* at 21–22.) Judge Selna also rejected NTG's request for an *in camera*

4

hearing regarding certain documents ordered produced under the crime-fraud exception. (*Id.* at 31.)

In the same order, the Court considered objections to the Special Master's order denying NIC's motion to compel the 1,300+ Strataluz documents withheld on other grounds of privilege or work product. The Court found that Strataluz cannot properly assert the attorney-client privilege because it "was wound up in 2016, and Nevada law does not preserve Strataluz to defend itself from the instant action because there is no suit, action, claim, or proceeding pending against it." (*Id.* at 25.) In a separate section of the order, the Court found that Ferrell and Reid had "failed to substantiate their right to assert the attorney-client privilege in their *individual capacities* as to the Strataluz documents." (*Id.* at 27 (emphasis added).) The Court further stated that "NTG has shown that *Strataluz's* attorney-client privilege extends [to] Ferrell and Reid as its managers or agents, and as its counsel" and overruled NIC's objection to "Defendants' assertion of the attorney-client privilege on behalf of Strataluz." (*Id.* at 28 (emphasis added).)

Regarding work product protection, the Court agreed with the Special Master that "as the Special Master pointed out, Defendants *are* parties to the pending litigation and, as counsel for Strataluz, prepared the Strataluz documents at issue. Therefore, they may assert work product protection independently from Strataluz as to the documents they prepared." (*Id.* at 28 (citations omitted) (emphasis in original).) However, the Court further stated

> NIC argues that, under this interpretation of the work product doctrine, Defendants must still produce the hundreds of documents listed on Defendants' Strataluz privilege log which were "prepared" by individuals not named David Reid or Scott Ferrell. Docket No. 751 at 19–20. The Court agrees. The reason that this case is distinguishable from the situation in <u>Tambourine</u> is that here the attorney-defendants prepared the documents, whereas in <u>Tambourine</u> the agents of attorney's client, an accountant, was the one who prepared the documents at issue. [See <u>Tambourine Comercio Int'l SA v. Solowsky</u>, 312 F. App'x 263, 282–87 (11th Cir. 2009).] Therefore, there is no credible justification [for] allowing individuals such as Hardin, Weiss, or Bentley to assert work-product protection over the Strataluz documents. Bentley is not an attorney, and Hardin and Weiss each testified that they had no knowledge of litigation and did no work on Strataluz-related litigation. Docket Nos. 588-91 at 154, 588-92 at 54–55, 588-93 at 72–73.
>
> It also follows from this conclusion that Ferrell and Reid do not have the

> right to assert the attorney-client privilege over Strataluz-related work product when they were acting in capacities other than as Strataluz's lawyers, i.e., as managers officers, agents, business advisers, etc . . . . The Court directs NTG to supplement its Strataluz privilege log with an additional column which designates whether each such communication was made in Ferrell and Reid's capacities as Strataluz's attorneys, or in some other capacity.

(*Id.* at 29–30.)

At Judge Selna's direction, NIC submitted lists of certain categories of documents implicated by this order. (Dkt. No. 823.) NIC chose to submit three lists:

- Dkt. No. 823-2: "Strataluz documents withheld by the Defendants solely on the basis of attorney-client privilege." (Dkt. No. 823 at 1.)
- Dkt. No. 823-3: "all Strataluz documents prepared by individuals other than David Reid and Scott Ferrell that Defendants withheld under the work product doctrine and attorney-client privilege." (Dkt. No. 823 at 1.)
- Dkt. No. 823-4: "all Strataluz documents prepared by David Reid and Scott Ferrell that they withheld on the basis of the attorney-client privilege and the work product doctrine." (Dkt. No. 823 at 1.)

As also ordered by Judge Selna, NTG followed up with an updated version of Dkt. No. 823-4 that added a column designating whether each communication was made by Ferrell or Reid in their capacities as Strataluz's attorneys, or in some other capacity. (Dkt. No. 830-1; *see also* Dkt. No. 820 at 30.) With its filing, NTG also identified ten documents that had been listed in Dkt. No. 823-4 that had not been prepared by Ferrell or Reid. (Dkt. No. 830.) NTG separately filed "responses and objections" to the production of Strataluz documents prepared by individuals other than Ferrell or Reid, *i.e.* the documents listed in Dkt. No. 823-3. (Dkt. No. 836.)

In October 2020, Judge Selna stated, "[b]ecause of the vast number of documents contained in these logs and that the validity of each assertion of privilege is subject to question, the Court deems an *in-camera* review of the exhibits appropriate . . . . [T]he Court deems it appropriate to defer this review to the Special Master." (Dkt. No. 1049 at 3.) Thus, the Special Master has conducted an extensive *in camera* review of most of the referenced "vast number of

documents."

## 2. ANALYSIS

### 2.1 Document Lists Considered

Judge Selna's October 2020 order stated that "[t]he Special Master is requested to review NIC's exhibits at Dkt. Nos. 823-1 and 823-2." (Dkt. No. 1049 at 3.) Dkt. No. 823-1 is labeled as "Exhibit A" and lists all of the 1,300+ Strataluz-related documents withheld on the basis of attorney-client privilege or work product. The lists at Dkt. Nos. 823-2, 823-3, and 823-4 are described as the three Appendices A–C to Exhibit A. (*See* Dkt. No. 830.) Based on the Special Master's review of the submissions and the Court's order, the Special Master has considered the issues relating to all three Appendices A–C (Dkt. Nos. 823-2, 823-3, and 823-4), which are subsets of the documents listed in Exhibit A (Dkt. No. 823-1).

To ensure ample time in the review process, the Special Master requested that NTG submit documents from all three lists for *in camera* review. But as discussed in this Order and based on a review of Judge Selna's rulings, the Special Master ultimately did not conduct an *in camera* review of the documents listed at Dkt. No. 823-2.

### 2.2 Dkt. No. 823-2 (Strataluz Documents Where Only Attorney Client Privilege Is Asserted)

The Special Master invited a very short, supplemental submission from NTG regarding the documents listed at Dkt. No. 823-2. (Dkt. No. 1066.) The Special Master also permitted NIC to file a response. (Dkt. No. 1066.)

NTG argues that the documents at Dkt. No. 823-2 "are properly withheld on the basis of attorney-client privilege based on the Court's Order in Docket 820 confirming that Scott Ferrell and David Reid can assert attorney client privilege 'as [Strataluz's] managers or agents, and as its counsel.'" (Dkt. No. 1066.) NIC disagrees (Dkt. No. 1068), and so does the Special Master.

Judge Selna's order found that because Strataluz had wound down in 2016 and is not a party to this litigation, it could not properly assert the attorney-client privilege. (Dkt. No. 820 at 25.) This holding controls. Ferrell and Reid cannot assert attorney-client privilege on behalf of an entity when the entity itself can no longer assert that privilege. Although Judge Selna provided an

additional, separate analysis finding that Ferrell and Reid could assert attorney-client privilege on behalf of Strataluz, given the determination regarding Strataluz itself, it would be improper to interpret the analysis regarding Ferrell and Reid in the manner NTG proposes. Doing so would effectively ignore the determination regarding Strataluz itself, when it is the analysis regarding Strataluz that informs the outcome. Indeed, in the conclusion of his order, Judge Selna reiterated that NIC was being directed to prepare a list of documents for production based on his determination that Strataluz could not properly assert attorney-client privilege. (*See* Dkt. No. 820 at 25, 32.)

Given this determination, it was unnecessary for the Special Master to conduct *in camera* review of the documents listed in Dkt. No. 832-2, and he did not do so. Judge Selna's order at Dkt. No. 820 requires that each of the documents listed in Dkt. No. 832-2 be produced, and the Special Master reiterates that order here. The Special Master accordingly **ORDERS** NTG to produce all documents listed at Dkt. No. 823-2, totaling 92 documents.

### 2.3 Dkt. No. 823-3 (Strataluz Documents Not Created by Ferrell/Reid Where Work Product Privilege Is Also Asserted)

Although already quoted in the Background section of this order, Judge Selna's analysis is critical to considering whether the documents listed in Dkt. No. 823-3 should be produced. The Special Master thus quotes the two key sentences of that analysis here:

> NIC argues that, under this interpretation of the work product doctrine, Defendants must still produce the hundreds of documents listed on Defendants' Strataluz privilege log which were "prepared" by individuals not named David Reid or Scott Ferrell. Docket No. 751 at 19–20. ***The Court agrees.***

(*Id.* at 29–30 (emphasis added).)

Judge Selna's order permitted NTG "an opportunity to raise any issues with the Court" after NIC submitted its various document lists for review. NTG filed a brief arguing that the documents listed in Dkt. No. 823-3 should not be produced. (Dkt. No. 836.) NTG argued that "nearly all of the 716 emails and email attachments on NIC's list in Docket No. 823-3 were (a) prepared by NTG attorneys/legal staff or other attorneys representing Strataluz (which obviously constitutes protected work product); and/or (b) prepared in response to and include emails from

8

NTG attorneys/legal staff or other attorneys representing Strataluz (which is also protected work product)." (*Id.* at 2–3.)

The Special Master must adhere to the plain language of Judge Selna's order. Judge Selna found that Strataluz itself, as a non-party, does not have work-product protection in this case. In other words, he explicitly rejected the premise of NTG's arguments (repeated again at the January 2021 hearing), which assert that the documents should be work-product protected because they relate to materials prepared by agents and attorneys "representing Strataluz."

But Judge Selna's order also went one step further. Judge Selna specifically agreed with NIC that NTG must produce the "hundreds of documents" in NTG's privilege log prepared by individuals other than Ferrell or Reid. The Special Master thus finds that production of all of the documents listed in Dkt. No. 823-3 is warranted by Judge Selna's explicit ruling, and NTG's objections to the contrary must be rejected.

Still, even if Judge Selna's ruling was interpreted differently, an *in camera* review of the documents listed in Dkt. No. 823-3 supports that production of almost every document listed would still be warranted. First, it is important to bear in mind that attorney-client privilege is not at issue. *See supra* § 2.2. Second, even if Ferrell's or Reid's personal work product protections could be understood to extend to cover documents created by others, the Special Master's review supported that many of the listed documents would not be considered work product in the first instance. This is clear when taking as a sample just five particularly egregious examples: NTG067179, NTG070557 (opposing counsel listed as a recipient to the top email in the email chain), NTG070743 (which, as an aside, was also already ordered produced under crime-fraud by Judge Chapman), NTG070825, and NTG070878, all listed in Dkt. No. 823-4.

But the critical reason production of the documents listed in Dkt. No. 823-3 would still be warranted is that they are subject to the crime-fraud exception. (And here, the Special Master pauses to note that he might have found an exception to the crime-fraud exception for NTG070417 and its attachments, and unredacted versions of NTG067483, NTG067486, NTG067955 and their attachments. However, with the conclusion that the language of Judge Selna's order requires production of the Dkt. No. 823-3 documents, this note is ultimately of no

consequence and production is required.)

Determinations regarding whether Strataluz's documents come within the crime-fraud exception have been at issue in this case for more than two years. In August 2018, Judge Chapman conducted a thorough crime-fraud analysis under steps 1 and 2 of *Zolin* and found that 357 documents (the 364 she reviewed minus 7 email attachments where she found privilege should not apply) were subject to the crime-fraud exception. (Dkt. 712.) As part of her *Zolin* Step 1 analysis, she considered some evidence relating to Strataluz's ProMaxal product as well as other evidence extending to Strataluz's conduct generally. She explained:

> [T]he Special Master notes that in determining to conduct an *in camera* review, she relied primarily on the following evidence and established facts: The evidence supporting the Court's finding that the crime-fraud exception applies to the Continuity Document; the Continuity Document itself, which is "sufficiently related to" and made "in furtherance of" Defendants' sham litigation scheme; Defendants Ferrell's and Reid's modest financial investments in Strataluz and its health-related products, and even smaller financial investments in the "development" and "dry-testing" of ProMaxal; ProMaxal was never produced or sold; Defendant Ferrell's numerous demand letters on behalf of Strataluz threatening companies with litigation under the Lanham Act related to false claims about Strataluz's products, including ProMaxal; and the problematic $1 "license agreement" between Strataluz and Harcol Research to license an "ingredient" allegedly used in ProMaxal.

(*Id.* at 18.)

At *Zolin* Step 2, Judge Chapman found that review under the crime-fraud exception applied to all of the 357 documents, stating,

> Strataluz was formed and used by Defendants to assist them in "engag[ing] in a pattern or scheme of manufacturing litigation, which threaten[ed] to harm the integrity of the judicial process" or to commit fraud upon the court (Dkt. No. 659). In other words, Strataluz was not a legitimate company; it "served primarily as a litigation vehicle" (Dkt. No. 299) to perpetrate fraudulent litigation in the state and federal courts.

(*Id.* at 21.) In other words, Judge Chapman did not limit her *Zolin* Step 2 findings to Strataluz's actions regarding ProMaxal. Instead, she found that the 357 Strataluz documents generally fell into four broad categories. Indeed, this Special Master has had reason to review those 357 documents because each of them was listed again in either Dkt. No. 823-3 or 823-4. Many of

them do not relate to ProMaxal alone, but instead also implicate other Strataluz activities. This did not stop Judge Chapman from directing their production. And as a foreshadowing of this Special Master's current rulings, in a footnote later re-quoted by Judge Selna, Judge Chapman stated: "[t]he documents listed . . . appear to be 'the tip of the iceberg'; *Strataluz's privilege log . . . most likely contains hundreds of additional documents to which the crime-fraud exception might apply, if the documents were reviewed in camera*." (*Id.* at 22 n.6 (emphasis added).)

Indeed, Judge Selna confirmed each of Judge Chapman's determinations regarding crime-fraud as applied to the Strataluz documents. After his own *in camera* review, he reiterated the four crime-fraud categories that Judge Chapman identified for the Strataluz documents: (1) "smoking gun" documents that disclose Strataluz's fraudulent litigation schemes directly or indirectly; (2) correspondence regarding drafts of demand letters to companies in furtherance of Strataluz's fraudulent litigation schemes; (3) correspondence regarding drafts of summonses, cover sheets, and Complaints filed against companies in furtherance of Strataluz's fraudulent claims; and (4) correspondence regarding drafts and finalized versions of Rule 998 settlement offers, non-disclosure agreements, settlement agreements with companies in response to Strataluz's fraudulent claims, as well as regarding the allocation of money received from those settlements. (*See* Dkt. No. 820 at 22.) Neither Judge Selna nor Judge Chapman couched these findings as solely related to documents involving ProMaxal.

At the November 19, 2020 hearing before the Special Master regarding this dispute, NTG urged that its due process rights had been violated by this Special Master's determination in the tentative ruling that the crime-fraud exception should be applied here. NTG repeated similar arguments regarding *Zolin* at the January 2021 hearing. These arguments are unpersuasive. First, in directing the Special Master to review the Dkt. No. 823-1 documents, Judge Selna placed no limits on the nature of that review. (*See* Dkt. No. 1049.) Rather, Judge Selna generally directed the Special Master to determine whether the documents should be produced. (*See id.* at 4.) Second, for over two years now, Judges Selna and Chapman have reached clear crime-fraud determinations regarding a subset of the same collection of documents now subject to this Special Master's review. Those determinations were not limited to Strataluz's conduct regarding

1  ProMaxal. Instead, they generally refer to Strataluz's overall conduct and use as a vehicle for
2  sham litigation. Third, in addition to their clear rulings regarding application of the crime-fraud
3  exception to Strataluz documents, Judge Selna reiterated Judge Chapman's footnote stating that
4  the documents appear to be the "tip of the iceberg." Given the extensive history of crime-fraud
5  analysis as to some of the exact same documents this Special Master was asked to review, and
6  Judge Chapman's spot-on premonition that a review of the remainder of the documents would
7  likely reveal more, NTG's arguments fail.

8  However, to avoid any doubt, the Special Master adopts here in full Judge Chapman's and
9  Judge Selna's *Zolin* Step 1 and 2 analyses. Their analyses supported a reasonable belief as to all
10 the documents reviewed by this Special Master that an *in camera* review may reveal crime-fraud
11 evidence. And indeed, almost every document reviewed fell into the same four *Zolin* Step 2
12 categories that both Judges identified. Again, that list includes: (1) "smoking gun" documents that
13 disclose Strataluz's fraudulent litigation schemes directly or indirectly; (2) correspondence
14 regarding drafts of demand letters to companies in furtherance of Strataluz's fraudulent litigation
15 schemes; (3) correspondence regarding drafts of summonses, cover sheets, and Complaints filed
16 against companies in furtherance of Strataluz's fraudulent claims; and (4) correspondence
17 regarding drafts and finalized versions of Rule 998 settlement offers, non-disclosure agreements,
18 settlement agreements with companies in response to Strataluz's fraudulent claims, as well as
19 regarding the allocation of money received from those settlements. (*See* Dkt. No. 820 at 22.)

20 Moreover, lest there *still* be any doubt, the Special Master identifies the following
21 additional smoking gun documents (including duplicates), from Dkt. No. 823-3 which relate to
22 some of Strataluz's non-ProMaxal activities and further support the Special Master's crime-fraud
23 conclusions: NTG066239, NTG066311, NTG067445, NTG067448, NTG067453, NTG068763,
24 NTG067636, NTG068135, NTG068317, NTG068435, NTG068439, NTG068728, NTG068740,
25 NTG068745, NTG068765, NTG066220, NTG066226, NTG066318, NTG067455, NTG067456,
26 NTG067458, NTG067460, NTG068770, NTG068771, NTG068773, NTG068775, NTG068814,
27 NTG068815, NTG068817, NTG068819, NTG068821, NTG068834, NTG068837, NTG068839,
28 NTG068840, NTG068841, NTG068843, NTG068845, NTG068847, NTG068848, NTG068850,

NTG068852, NTG068860, NTG068864, NTG068866, NTG068868, NTG068870, NTG068876, NTG068878, NTG068880, NTG068881, NTG068882, NTG070187, NTG071179, NTG071180, NTG066637 (already ordered produced with one, not all, attachments), NTG066638, NTG066643, NTG066651, NTG066654 (only attachment ordered produced with parent email), NTG066658, NTG066659, NTG066663, NTG066278, NTG066280, NTG066282, NTG066284, NTG066286, NTG066288, NTG066290, NTG066292, NTG067585, NTG067594, NTG068167, NTG069320, NTG067488, NTG067597, NTG067645, NTG067958, NTG068099, NTG068150, NTG068183, NTG068322, NTG068443, NTG069303, NTG069331, NTG068143, NTG068446, NTG068449, NTG068755, NTG068758, and NTG068761.

The Special Master also notes that many of the listed documents in Dkt. No. 823-3 (and 823-4) further specifically related to ProMaxal and lawsuits/demands against other companies selling male enhancement products, although they were not included in the list of documents that Judge Chapman previously reviewed and found subject to the crime-fraud exception (in particular, documents created by Knowles, Jung, Kirshner, and Rice regarding demands, suits, or settlements against TruDerma, Twinlab, and one other company selling a male enhancement product)). (See Dkt. No. 602-3.) This provides yet another direct basis for those documents' production.

In addition to the four crime-fraud categories identified by Judge Selna and Judge Chapman, the Special Master further finds, as did the other Judges (*e.g.*, Dkt. No. 788 at 6), that documents relating to Strataluz's corporate formation must be produced. Even if some work product protection attaches to these documents, they refer to structuring Strataluz to conceal the identities of certain individuals or entities associated with the company. Given the circumstances of this case, the Special Master finds that they thus fall under the crime-fraud exception. And moreover, NTG's arguments for work product protection of these particular documents in the first instance are particularly weak. For some creators of these documents, NTG has argued that while they have provided "advice on Strataluz's formation, that same advice and work would clearly be relevant to anticipated litigation." (Dkt. No. 836 at 8.) Elsewhere, NTG argues that because emails regarding Strataluz's corporate formation included litigation counsel, they "thus implicate

13

anticipated litigation." (*Id.*) These arguments, which would permit an unreasonably sweeping view of work product protection simply on the basis of a litigation attorney being present on an email chain or a possibility of some (unknown) litigation at some point down the road, are not persuasive. (*See, e.g.*, Dkt. No. 785 at 8–9.) (Moreover, they underhandedly suggest that Strataluz was indeed formed with a primary purpose being to serve as a litigation vehicle.) The Special Master finds that production of the documents regarding Strataluz's corporate formation is ultimately appropriate.

   The Special Master also finds it appropriate to highlight two other specific categories of documents as they relate to crime-fraud, with some documents from each category already ordered produced by Judge Chapman. First, correspondence regarding a declaratory judgment action filed in Maryland against Strataluz must be produced. That declaratory judgment action was filed in direct response to a Strataluz Lanham Act demand letter, and thus directly relates to the second category of crime-fraud documents identified by Judge Selna and Judge Chapman. *See also, e.g.* NTG066739, NTG066763, NTG066742, NTG066765, NTG066792, NTG066796, NTG066835, NTG066839, NTG069690, NTG069729, NTG069879, NTG069882 (some of the documents related to the declaratory judgment action already ordered produced by Judge Chapman). Second, internal correspondence in 2016 regarding letters from former NTG client, ORI, to Ferrell, Reid, and others fall under the crime-fraud exception. They either directly or indirectly show the Defendants' attempts to minimize and cover up Strataluz's litigation scheme. Most of these documents appear listed in Dkt. No. 823-4. *See, e.g.*, NTG071253, NTG071254, NTG071257, NTG071259, NTG071281, NTG071292 (some of the 2016 correspondence documents listed in Dkt. No. 823-4 and already ordered produced by Judge Chapman).

   The Special Master must apply the same tests and determinations that Judge Selna and Judge Chapman have already established in this case. Having done so, and for all the reasons stated here, the Special Master finds that production of the documents listed at Dkt. No. 823-3 is warranted.

   But before moving on to the list at Dkt. No. 823-4, redactions must be discussed. NTG identified a handful of the documents listed in Dkt. No. 823-3 (and Dkt. No. 823-4) as having

been produced with redactions. The Special Master has reviewed each of those produced, redacted documents compared to the unredacted versions and finds that *none* of the redactions are appropriate. The material redacted is contextually related to the crime-fraud exception, and much (if not all) is not work-product protected. As part of this Order, the Special Master is directing NTG to re-produce those particular documents in unredacted form (including NTG069303 and NTG069331).

Moreover, the Special Master will not permit NTG to produce any of the documents listed in Dkt. No. 823-3 (or Dkt. No. 823-4) with redactions. Judge Chapman ordered production of the 357 documents without any redactions. (Dkt. No. 712 at 26.) Judge Selna overruled all of NTG's objections to Judge Chapman's Dkt. No. 712 order. (*See* Dkt. No. 820 at 22.) This Special Master again takes his cues from these determinations, and directs the same.

The Special Master **ORDERS** production of unredacted versions of all documents in Dkt. No. 823-3.

### 2.4 Dkt. No. 823-4 (Strataluz Documents Created by Ferrell/Reid Where Work Product Privilege Is Also Asserted)

The Special Master has also conducted a full *in camera* review of the documents listed in Dkt. No. 823-4. In doing so, the Special Master has applied the same analysis and reasoning discussed *supra* in § 2.3 regarding work-product protection, the crime-fraud exception, and redactions. Based on that analysis, the Special Master finds that unredacted versions of almost every document listed at Dkt. No. 823-4 are subject to the crime-fraud exception and must be produced. Again, these documents either fall into the same four crime-fraud categories previously identified by Judge Selna and Judge Chapman, or relate to: (1) Strataluz's corporate formation, (2) a declaratory judgment action filed against Strataluz, or (3) a 2016 dispute involving ORI.

Again, the Special Master identifies the following additional smoking gun documents from Dkt. No. 823-4 to support his conclusions: NTG063722, NTG063805, NTG066212, NTG066216, NTG066219, NTG066220, NTG066224, NTG066276 (previously ordered produced), NTG066294, NTG066296, NTG066305, NTG066306, NTG066316, NTG066323, NTG066326, NTG066329, NTG066330, NTG066336, NTG066338, NTG066344, NTG066346, NTG066393,

NTG066395, NTG066416, NTG066417, NTG066418, NTG066448, NTG066453, NTG066480, NTG066543, NTG066556, NTG066571, NTG066584, NTG066718, NTG066862, NTG066866, NTG066870, NTG066897, NTG066920, NTG067006, NTG067073, NTG067124, NTG067126, NTG067131, NTG067135, NTG067138, NTG067177, NTG067188, NTG067191, NTG067199, NTG067200, NTG067202, NTG067203, NTG067205, NTG067206, NTG067208, NTG067226, NTG067228, NTG067269, NTG067271, NTG067307, NTG067406, NTG067413, NTG067437, NTG067441, NTG067652, NTG067655, NTG067671, NTG067710, NTG067715, NTG067895, NTG067898, NTG067900, NTG067903, NTG067904, NTG067907, NTG067915, NTG067919, NTG068178, NTG068188, NTG068192, NTG068197, NTG068312, NTG068718, NTG069254, NTG069444, NTG069876, NTG070517, NTG070520, NTG070525, NTG070527, NTG070529, NTG070533, NTG070534, NTG070536, NTG070537, NTG070539, NTG070541, NTG070546, NTG070550, NTG070557, NTG070562, NTG070598, NTG070599, NTG070602, NTG070603, NTG070604, NTG070618, NTG070626, NTG070742, NTG070757, NTG070780, NTG070865, NTG070866, NTG070870, NTG071165, and NTG071178.

And here, in addition to the discussion in § 2.3 regarding crime-fraud, the Special Master must take a final moment to echo the strength and force of Judge Chapman's remarks regarding the crime-fraud exception. (*See* Dkt. No. 820 at 11.) Like the documents she reviewed, these similarly "dramatically demonstrate the magnitude of Defendants' use of Strataluz as a litigation vehicle to perpetrate fraud on the court[.] Defendants ran a litigation mill through Strataluz, the size of which is staggering." (*Id.*) The documents Judge Chapman reviewed were the tip of the iceberg indeed.

The Special Master **ORDERS** production of most documents in Dkt. No. 823-4, except for the few documents identified in the conclusion section of this order. Those documents did not adequately fall into the crime-fraud exception in a manner that warranted their production.

3. **CONCLUSION**

The Special Master **ORDERS** NTG to produce:

- All documents listed in Dkt. No. 823-2, because they are required by Judge Selna's August 2019 Order.

- All documents listed in Dkt. No. 823-3 because they are required by Judge Selna's August 2019 Order and alternatively they fall under the crime-fraud exception.
- All documents in Dkt. No. 823-4 (including those inadvertently listed and created by individuals other than Ferrell or Reid) because they fall under the crime-fraud exception, <u>except that</u> the following documents are <u>not</u> ordered produced: NTG066051, NTG066053, NTG066465, NTG066467, NTG067122, NTG067248, NTG067250, NTG067665, and NTG070910.

THUS, IT IS ORDERED.

Dated: January 20, 2021

_____
Hon. Andrew J. Guilford, Ret.
Special Master