Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., | Case No. 8:15-cv-02034-JVS (JCG) |
| Plaintiff, | **PLAINTIFF NIC'S OPPOSITION TO DEFENDANTS' OBJECTIONS TO ORDER OF SPECIAL MASTER REGARDING STRATALUZ DISCOVERY DISPUTE (DKT. 1091)** |
| v. | |
| NEWPORT TRIAL GROUP, et al., | |
| Defendants. | |

| | |
|---|---|
| Hearing Date: | March 8, 2021 |
| Time: | 1:30PM (Telephonic Requested) |
| Courtroom: | 10C |
| Judge: | Hon. James V. Selna |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   PROCEDURAL HISTORY AND FACTUAL
      BACKGROUND ...................................................................................3

III.  LEGAL STANDARD ...........................................................................8

IV.   ARGUMENT..........................................................................................8

      A. The Special Master Correctly Compelled Strataluz
         Documents that NTG Withheld Solely Under the Attorney-
         Client Privilege.............................................................................9

      B. The Special Master Correctly Compelled Production of
         Nearly All Documents Under the Crime-Fraud Exception.......................12

         1.  The Special Master Did Not Abuse His Discretion
             When Evaluating Strataluz Documents Under the
             Crime-Fraud Exception................................................................12

         2.  The Special Master Correctly Applied the Crime-
             Fraud Exception to Documents Listed in Docket
             Nos. 823-3 and 823-4...............................................................14

      C. Defendants' Arguments Regarding Work Product are
         Irrelevant .....................................................................................19

      D. If the Court Adopts Defendants' Positions, It Must Perform
         Another Complete Review *In Camera* to Evaluate Reid and
         Ferrell's "Capacity" Designations...........................................21

V.    CONCLUSION....................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Arfa v. Zionest Org. of Am.*, No. CV 13-2942, 2014 WL 815496
(C.D. Cal. Mar. 3, 2014)................................................................21

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343
(1985)..............................................................................................11

*In re Cal. Util. Comm'n ("CPUC")*, 892 F.2d 778 (9th Cir. 1989)...................6, 20

*In re Grand Jury Investigation*, 810 F.3d 1110 (9th Cir. 2016) ...........................16

*United States v. De la Jara*, 973 F.2d 746 (9th Cir. 1992)....................................16

*United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010) ...........................................11

**Rules**

C.D. Cal. L.R. 7-18 ...................................................................................................3

Fed. R. App. Pro. 53(f)(5)...................................................................................1, 12

Fed. R. Civ. P. 60(b) .................................................................................................3

Fed. R. Civ. Pro 26(b)(3) .......................................................................................20

# I.   **INTRODUCTION**

Plaintiff Natural-Immunogenics Corp. ("NIC") hereby opposes Defendants Newport Trial Group's ("NTG") and Scott Ferrell's ("Ferrell") (collectively, "Defendants") Objection to the Order of Special Master Regarding Strataluz Discovery Disputes (Dkt. 1091).  *See* Dkt. 1092 (the "Objection"); Dkt. 1091 (the "Order").  The Special Master's Order in Dkt. 1091 was correct in every respect and Defendants' objections should be denied.

First, the Special Master correctly compelled all Strataluz documents withheld only under the attorney-client privilege because this Court earlier ruled that Strataluz's privilege was destroyed on windup and Defendants did not otherwise substantiate claims of individual privilege.  *See* Dkt. 1091 at 5.  As the Special Master observed, the attorney-client privilege belongs to the client and there can be no privilege in Strataluz documents when that client's privilege dissolved.  *Id.*  Defendants present no substantive argument to the contrary, but instead argue for an interpretation of this Court's prior order that conflicts with the Court's findings on Strataluz and the ordering paragraph.  *See* Dkt. 1092 at 12-13 (citing Dkt. 820 at 28, 30).  The portion of Dkt. 820 referenced by the Defendants discussed whether Reid and Ferrell had standing to assert Strataluz's privilege as its former corporate officers.  But that discussion does not mean Strataluz's non-existent privilege can become a basis to withhold documents.  The Court should overrule Defendants' objection to the Special Master's Order compelling production of documents listed on Docket No. 823-2.

Second, the Special Master did not abuse his discretion when he evaluated Strataluz documents under the crime-fraud exception.  That procedural decision is given deference under FRAP 53(f)(5).  The Special Master was already tasked with reviewing those same documents *in camera* under this Court's Order in Dkt. 1049.  The documents were clearly subject to the crime-fraud exception and fell within crime-fraud findings that this Court earlier issued regarding Strataluz.  *See* Dkt. 1091 at 9-15.  The Special Master's forceful crime-fraud findings reached all but 9

documents.  *Id.*  Defendants present little argument on the merits of those crime-fraud findings and instead challenge the procedure.  But, as explained below, the procedure was adequate under Ninth Circuit precedent.  Defendants had ample opportunities to litigate crime-fraud issues concerning Strataluz, and this Court has issued multiple orders on that subject after full briefing and oral argument, including Orders finding that Strataluz was designed and used primarily for the purpose of advancing fraudulent litigation.[1]  In this instant proceeding alone, Defendants were afforded 2 hearings before the Special Master and that opportunity to be heard is sufficient under the law.  *See* Dkt. 786 (Ninth Circuit decision denying NTG's interlocutory appeal and holding that "our precedent … in fact gives district courts discretion in how they evaluate claims of attorney-client privilege").  Defendants' objections regarding the crime-fraud exception should be overruled.

Third, Defendants argue that the Special Master incorrectly compelled documents subject to work product protection.  But they ignore the fact that the Special Master compelled those same documents under the crime-fraud exception and therefore did not need a document-by-document work product analysis.  Defendants' work product concerns are moot because the crime-fraud findings require production regardless.  Moreover, Defendants misinterpret this Court's findings regarding who may assert work product in this case.  The Court held that under Ninth Circuit precedent only David Reid and Scott Ferrell can assert work product over Strataluz documents that they personally prepared in their role as counsel, not corporate officers.  *See* Dkt. 820 at 29-30.  Defendants now asks the

---

[1] *See, e.g.,* Dkt. 820 (compelling Strataluz documents following oral argument); Dkt. 712 (compelling Strataluz documents following oral argument); Dkt. 652 (denying NTG's objections to Special Master preliminary order requiring production of Strataluz files for *in camera* review); Dkt. 299 (compelling Strataluz-related files under crime-fraud exception); Dkt. 414 (granting NIC leave to take discovery into Strataluz).  Defendants also challenged the Court's decisions regarding Strataluz before the Ninth Circuit on interlocutory appeal.  *See* Dkt. 302 (Notice of Appeal); Dkt. 306 (Notice of Appeal).

Court to reconsider its prior holding, but they fail to address or meet the appropriate standards for reconsideration.  *See* C.D. Cal. L.R. 7-18 (Motion for Reconsideration); Fed. R. Civ. P. 60(b).

Finally, even if the Court were to overrule the Special Master's crime-fraud findings, the Court would need to perform another *in camera* review to evaluate Defendants' work product claims.  The Special Master found that Defendants egregiously over-designated documents as "work product."  *See* Dkt. 1091 at 9, 13. NIC could directly evaluate those designations for certain files that received earlier through crime-fraud orders.  Those examples reveal that Defendants grossly mis-identified the "capacity" that Reid and Ferrell acted under when preparing Strataluz documents.  Thus, even if the Court modifies or overrules the production order under the crime-fraud exception (it should not), the Court must proceed through an *in camera* review to evaluate which documents are subject to production based on work product concerns in Dkt. 820 at 30.

## II.  <u>PROCEDURAL HISTORY AND FACTS</u>

In March 2017, the Special Master issued an initial order compelling production of Strataluz documents under crime-fraud exception.  *See* Dkt. 234. She found that "it is more likely than not that the Document contains instructions from Defendant S. Ferrell to counsel in furtherance of a scheme to defraud by forming sham corporate entities."  *Id.* at 20.  This Court upheld the Special Master's determination, finding that "the Court concludes that the preponderance of the evidence shows that (1) Reid, Weiss, and Ferrell were "engaged in or planning" a fraudulent scheme when they formed Strataluz and (2) made these communications 'in furtherance of' that scheme."  Dkt. 299 at 21.  Neither crime-fraud order was limited to ProMaxal or otherwise limited the scope of crime-fraud findings to ProMaxal litigation.  *See generally* Dkt. 234 and 299.  The crime-fraud order at Docket No. 299 was upheld on appeal by the Ninth Circuit.  *See* Dkt. 786 at 6 ("[T]he district court had adequate support for its conclusion that the relevant

communications between the attorneys and clients were subject to the crime-fraud exception").

In August 2018, the Special Master issued a much broader crime-fraud order concerning Strataluz after performing *in camera* review of more than 350 documents. *See* Dkt. 712. That order followed a period of Strataluz discovery where NIC elicited documentary and testimonial evidence from Strataluz's owners. *See* Dkt. 414 (granting leave to take Strataluz discovery). The Special Master reiterated that the thrust of those crime-fraud findings against Strataluz concerned the company as a whole and its formation for illegitimate purposes. *See* Dkt. 712 at 10. Specifically, the Special Master held that:

> Although Defendants attempted to show that Strataluz was not a sham company since it produced, marketed and sold a few "real" health-related products, and the Special Master has weighed and considered that evidence, it is not sufficient to rebut the overwhelming evidence presented by NIC showing that Strataluz's *raison d'etre* was to bring fraudulent litigation.

*Id.* at 17. Again, the Special Master's crime-fraud analysis was not expressly or implicitly limited to ProMaxal litigation and instead concerned the totality of NTG's use of that entity in its scheme:

> [T]he crime-fraud exception applies to **all** of the documents listed on revised Appendix A . . . since Strataluz was formed and used by Defendants to assist them in "engag[ing] in a pattern or scheme of manufacturing litigation, which threaten[ed] to harm the integrity of the judicial process" or to commit fraud upon the court (Dkt. No. 659) . . . [and] Strataluz was not a legitimate company; it "served primarily as a litigation vehicle" (Dkt. No. 299) to perpetrate fraudulent litigation in the state and federal courts."

*Id.* at 21 (emphasis original). Based on her *in camera* review and broad crime-fraud findings, the Special Master compelled all documents that she reviewed, many of which concerned general Strataluz activities such as corporate formation,

wind-up, and pre-litigation discussions with Continuity Products regarding allegations against Strataluz and its owners.  *See* Dkt. 712 (listing Bates numbers of documents reviewed).  The Special Master included language in her order to reflect the breadth and scope of crime-fraud findings:  "These documents dramatically demonstrate the magnitude of Defendants' use of Strataluz as a litigation vehicle to perpetrate fraud on the court; Defendants ran a litigation mill through Strataluz, the size of which is Staggering."  Dkt. 712 at 22.  Again, the Special Master's description of those crime-fraud findings did not contain any limitations associated with ProMaxal.  *Id.* at 21-22.  As the language in those orders also makes clear, NTG has had many opportunities to fully ventilate the exact same arguments they now raise again in their instant Objections [Dkt. 1092].

In August 2019, this Court upheld the entirety of the Special Master's broad crime-fraud order.  *See* Dkt. 820 at 20-22.  The Court reiterated and agreed with the reasoning and findings of the Special Master.  *Id.* at 21-22.  Those crime-fraud findings were premised on the conclusion that "Strataluz was intended to serve as a litigation vehicle to bring contrived lawsuits, particularly with respect to the purported male enhancement product ProMAXAL."  *Id.* at 21.  While the Court referenced evidence related to ProMAXAL as being particularly persuasive, nothing in the Order limited crime-fraud findings to ProMAXAL litigation.  *Id.* at 20-22.  Each crime-fraud order has described findings regarding Strataluz in broad terms related to its creation and use by NTG to advance fraudulent litigation generally.  *See, e.g.,* Dkt. 712; Dkt. 820; Dkt. 1091; Dkt. 299; Dkt. 234.

In its August 2019 order regarding Strataluz documents, the Court also held that Defendants could not assert attorney-client privilege over any Strataluz files and that work-product protections were limited to files prepared by Scott Ferrell and David Reid in their capacities as counsel to Strataluz.  *See* Dkt. 820 at 23-30. Regarding the attorney-client privilege, this Court held that:

> Strataluz was wound up in 2016, and Nevada law does not preserve Strataluz to defend itself from the instant action because there is not suit, action, claim, or proceeding pending against it, nor is there a potential for such claims in the future.  Therefore, the Court sustains NIC's objections to the Special Master's holding that Strataluz can properly assert the attorney-client privilege.
>
> . . .
>
> NTG has not shown that any Defendant has the right to assert personal privilege over the Strataluz documents, and NIC's objection to the Special Master's holding to the contrary is sustained.

Dkt. 820 at 25, 27-28.  Because the entity no longer has privileges to assert, the Court ordered production of all documents that NTG withheld under Strataluz's privilege.  *Id.* at 32.

Regarding work product protection, the Court held that Strataluz cannot assert work product protection under Rule 26(b)(3) because it is not party to this case.  *Id.* at 28 (citing *See In re Cal. Util. Comm'n ("CPUC")*, 892 F.2d 778, 781 (9th Cir. 1989)).  However, the Court determined that because Scott Ferrell and David Reid are parties to this lawsuit, they could assert work product protection over documents that they prepared in their capacities as counsel to Strataluz, but not over documents prepared in their capacity as corporate officers.  *Id.* at 29-30.  The Court expressly held that "Strataluz documents which claim only work product protection and which were prepared by individuals other than Reid and Ferrell" must be produced.  *Id.* at 30.  That holding required the Court to review each document and determine the capacity under which each author was acting when preparing those files.

To facilitate that Order, the Court directed NIC to submit a list of documents sought for production.  *Id.*  The Court also required NTG to submit a revised privilege log that identified Reid and Ferrell's "capacity" when creating Strataluz documents (either as attorneys or as officers).  *Id.*  NIC timely complied and

submitted the following: (1) a list of documents that NTG had withheld solely on the basis of attorney-client privilege (Dkt. 823-2); (2) a list of documents that NTG withheld under claims of work product that were not prepared by Reid or Ferrell (Dkt. 823-3); and (3) a list of documents NTG withheld under claims of work product that were prepared by Reid or Ferrell (Dkt. 823-4).  Defendants also submitted their revised privilege log.  *See* Dkt. 830-1.  In an effort to prevent disclosure, Defendants categorically labeled *every single document* as having been prepared by Reid and Ferrell in the capacity as "attorneys."  *Id.* at 2-25.

Although the plain text of this Court's Order at Docket No. 820 directed production of Strataluz documents withheld solely on the basis of attorney-client privilege, the Defendants never produced those documents (listed at Dkt. 823-2).

On October 6, 2020, the Court issued an order remanding the issues identified in Docket 820 to the Special Master.  This Court explained that "the validity of each assertion of privilege is subject to question" and directed the Special Master to perform an *in camera* review to resolve the outstanding dispute over documents that should be produced based on Dkt. 820 Order.  *See* Dkt. 1049 at 3.

The Special Master performed the *in camera* review of all documents listed on NIC's Appendices at Docket Nos. 823-3 and 823-4.  *See* Dkt. 1091 at 2. Following his review, the Special Master compelled production of all documents that NTG had withheld solely on the basis of attorney-client privilege (Dkt. 823-2) and, based on application of the crime-fraud exception, he compelled all but nine documents listed on Docket Nos. 823-3 and 823-4.  *See* Dkt. 1091 at 3, 16-17.  The Special Master reiterated the force and effect of prior crime-fraud findings, and held that the new documents he reviewed lent additional support for those conclusions.  Dkt. 1091 at 8-16.  The Special Master also "[took] a final moment to echo the strength and force of Judge Chapman's remarks regarding the crime-fraud exception" and found that "these [documents] similarly dramatically demonstrate

the magnitude of Defendants' use of Strataluz as a litigation vehicle to perpetrate fraud on the court."  Dkt. 1091 at 16.

The Defendants filed objections to the Special Master's Order at Docket No. 1091.  *See* Dkt. 1092.  For the reasons explained below, the Court should overrule their Objections.

## III.   **LEGAL STANDARD**

The Court reviews all objections to the Special Master's findings of fact or conclusions of law de novo.  *See* Fed. R. Civ. P. 53(f).  "A ruling on a procedural matter is reviewed for abuse of discretion."  *See* Dkt. 1022 at 3 (citing Fed. R. Civ. P. 53(f)(5)).

## IV.   **ARGUMENT**

The Special Master correctly compelled Strataluz-related documents listed in Docket Nos. 823-2, 823-3, and 823-4 (except the 9 files he specifically omitted). This Court held that Strataluz documents may not be withheld under the attorney-client privilege and, thus, the Special Master compelled all documents listed in Docket No. 823-2 because those files were withheld exclusively under the attorney-client privilege.  The Special Master then correctly compelled remaining documents under the crime-fraud exception after he performed a complete review of those documents at this Court's direction.  *See* Dkt. 1049 (directing the Special Master to perform an *in camera* review because "the validity of each assertion of privilege is in question.")  The Special Master did not err in compelling production of these documents, and based on the language in his order, there is little doubt that these documents fall within the crime-fraud exception.  *See* Dkt. 1091 at 16 ("the Special Master must take a final moment to echo the strength and force of Judge Chapman's remarks regarding the crime-fraud exception…  Like the documents she reviewed, these similarly 'dramatically demonstrate the

magnitude of Defendants' use of Strataluz as a litigation vehicle to perpetrate fraud on the court[.]").

## A. The Special Master Correctly Compelled Strataluz Documents that NTG Withheld Solely Under the Attorney-Client Privilege

This Court held in Docket No. 820 that Defendants were not permitted to withhold documents in discovery based on Strataluz's privileges, and that Defendants had failed their burden to show that individual attorney-client privileges applied over any Strataluz document. *See* Dkt. 820 at 25-27, 32.  The Court specifically held that "Strataluz was wound up in 2016, and Nevada law does not preserve Strataluz to defend itself from the instant action . . . [and the Court sustains NIC's objection to the Special Master's holding that Strataluz can properly assert the attorney-client privilege." *Id*. at 25.  The Court stated, "NIC argues that Defendants have failed to substantiate their right to assert the attorney-client privilege in their individual capacities as to the Strataluz documents . . . [and] [t]he Court agrees." *Id*. at 27.  Because there are no enduring corporate or individual privileges in Strataluz documents, the Court ordered NIC to submit a list of documents that NTG had withheld solely under the attorney-client privilege. *Id*. at 32.

Despite that unambiguous direction, Defendants refused to produce documents listed on NIC's Appendix at Docket No. 823-2 (which listed documents withheld solely on the basis of A/C Privilege).  The Special Master held that Defendants were not permitted to withhold those documents that had only been designated attorney-client privilege because the Court already ruled no such privilege applied. *See* Dkt. 1091 at 7-8.  The Special Master correctly found that NTG's strained interpretation of Docket 820 "would effectively ignore the determination regarding Strataluz itself, when it is the analysis regarding Strataluz that informs the outcome," and that this Court had "directed [NIC] to prepare a list

of documents for production based on his determination that Strataluz could not properly assert attorney-client privilege." *Id.* at 8.

Defendants now argue that, although Strataluz no longer has attorney-client privilege following windup, and Defendants also failed to establish personal attorney-client privileges, the Court nonetheless contemplated that they could assert *Strataluz's* attorney-client privilege as agents or attorneys for the corporation. *See* Dkt. 1092 at 12-13. The Special Master correctly held that NTG's argument would undermine this Court's prior opinion. *See* Dkt. 1091 at 7-8. This Court's determination [Dkt. 820 at 28] that Reid and Ferrell could assert "attorney-client privilege on behalf of Strataluz" was merely an analysis of their standing to argue—not a finding on the validity or merits of the asserted privilege. The Court's thorough analysis only a few pages prior determined that Strataluz *no longer had privilege at all. Id.* at 25 (ordering NIC to submit "a list of documents which are now subject to production in light of this holding"). Because Strataluz's privilege is dissolved, then Ferrell and Reid cannot withhold documents by asserting a derivative privilege on "Strataluz's behalf." Defendants ask the Court to interpret its Dkt. 820 Order in a manner that is internally inconsistent.

The Defendants' assertion of a distinct "corporate officer privilege" also conflicts with controlling precedent holding that a corporate officer merely asserts the corporation's privilege, not their own individual privilege (unless they meet the test in *Graf*). *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) (explaining that the privilege is held by the corporation and the question of who has authority or standing to assert or waive the privilege is a different issue); *see also United States v. Graf*, 610 F.3d 1148, 1159-61 (9th Cir. 2010). Strataluz has no privilege under federal common law. Dkt. 820 at 25. Thus, nobody (not even Strataluz's former corporate officers) can assert Strataluz's privilege, the Court having already concluded no such privilege exists. *Id.* at 32. Defendants' interpretation would conflict with law concerning dissolution of

corporate privilege on wind-up because they argue that the corporate privilege attaches to the officers—not the entity—such that the privilege would dissolve only upon death of the last corporate officer.  No precedent stands for that proposition, which contradicts this Court's prior ruling, and Defendants do not attempt to justify that rule.  *See* Dkt. 1092 at 7-8.  To assert an individual privilege, defendants were required to meet the standard in *Graf*.  *See* Dkt. 820 at 26-28.  This Court expressly held that they failed that standard.  *Id.* at 27-28 ("NTG has not shown that any Defendant has the right to assert personal privilege over the Strataluz documents").

The potential confusion regarding this Court's final order in Dkt. 820 likely stems from the Court's revisions to the tentative order following oral argument.  The Court's tentative order initially held that Strataluz's privilege survived and, thus, the tentative had a discussion of whether Reid and Ferrell had standing to assert the corporate privilege.  *See* Dkt. 1068-1 at 24-26.  However, following oral argument, this Court eventually concluded that Strataluz's privilege had been destroyed.  *See* Dkt. 820 at 25.  The Court evidently did not remove its discussion of Reid's and Ferrell's standing to assert Strataluz's privileges, which was a relic from the tentative order.  But that discussion was nonetheless mooted by the Court's subsequent ruling that Strataluz may no longer assert an attorney-client privilege.  Thus, Defendants' argument must be rejected because the Court unmistakably (and correctly) held that Strataluz documents were no longer covered by any form of attorney-client privilege, corporate or individual.

The Court should overrule Defendants' objection to the Special Master's order compelling production of documents designated solely attorney-client privilege (listed at Docket N0. 823-2).

**B. The Special Master Correctly Compelled Production of Nearly All Documents Under the Crime-Fraud Exception**

**1. The Special Master Did Not Abuse His Discretion When Evaluating Strataluz Documents Under the Crime-Fraud Exception**

Defendants object to the Special Master's procedural decision to perform a crime-fraud analysis on the Strataluz documents that he was already ordered to review *in camera*.  The Special Master did not abuse his discretion when, during that court-ordered *in camera* review, he also considered whether the crime-fraud exception applied.  *See* Fed. R. Civ. P. 53(f)(5) (procedural decisions are evaluated for abuse of discretion).

This Court earlier recognized that the Special Master's procedural decisions are given deference under the abuse of discretion standard.  *See* Dkt. 1022 at 4 (applying abuse of discretion standard to Special Master's decision regarding under seal filings).  The Special Master's decision to also evaluate the crime-fraud exception contemporaneous with his broad privilege review was a procedural decision.  He did not abuse his discretion.

First, this Court expressly ordered the Special Master to perform an *in camera* review of Strataluz documents at issue in Docket No. 820.  *See* Dkt. 1049 at 3.  The Court tasked the Special Master with evaluating whether files were privileged.  This Court did not limit that review to specific bases for relief or theories regarding those privileges.  *Id.*  The Court broadly ordered review on remand because "the validity of each assertion of privilege is subject to question." *See* Dkt. 1049 at 3.  As the Special Master noted, the Court's order at Docket No. 820 contained significant crime-fraud findings, including a Step One determination that "Strataluz was intended to serve as a litigation vehicle to bring contrived lawsuits" and that "the privilege-logged documents strongly support NIC's contention that NTG and its agents were engaging in illegal and extortionate activities through Strataluz."  Dkt. 820 at 21.  Thus, based on the Court's direction to perform a complete privilege evaluation consistent with Docket 820, the Special

Master reasonably determined that evaluation of the crime-fraud exception during that review would be an appropriate and efficient use of resources.

Second, the Court has previously ruled that reviewing for crime-fraud concurrent with other privilege considerations is an appropriate use of resources. *See* Dkt. 878 at 6. The Court earlier performed an *in camera* review concerning the Parties' dispute over the implied waiver doctrine regarding NTG's "tester defense." *See id.* NIC asked the Court to perform a "concurrent review of the implied-waiver documents under the crime-fraud exception to the attorney-client privilege." *Id.* The Court agreed with NIC that such a concurrent review was "an appropriate and efficient use of the Court's resources." *Id.* The Special Master reviewed for crime-fraud here under nearly identical circumstances. He was ordered to perform a privilege review of Strataluz documents where multiple crime-fraud orders had already issued regarding NTG's use of Strataluz as a fraudulent litigation vehicle. As in the Dkt. 878 proceedings, the Special Master determined that a concurrent crime-fraud review would be an efficient and just use of resources. That decision is in accord with this Court's earlier decision to perform a concurrent review.

Finally, public policy supports the Special Master's procedural decision to perform a crime-fraud review. This Court earlier held that public policy disfavors the use of privilege to conceal fraud. Nearly all files of any consequence in this case have been concealed from NIC under claims of privilege, and these *in camera* reviews are the only safeguard NIC has to obtain files critical to its RICO lawsuit. Defendants now ask the Court to disregard evidence of unlawful activity simply because the Court initiated its *in camera* review based on a work product concern. The Defendants argue that the Special Master should have ignored documents that clearly furthered a scheme to defraud, and instead limited any production order to a general work-product evaluation. But if these files fall within the crime-fraud exception, then they are not privileged and NTG has no basis to shield those

documents from NIC in discovery.  Notably, the Special Master "echo[ed] the strength and force of Judge Chapman's remarks regarding the crime-fraud exception." *See* Dkt. 1091 at 16.  He found that "[l]ike the documents she reviewed, these similarly 'dramatically demonstrate the magnitude of Defendants' use of Strataluz as a litigation vehicle to perpetrate fraud on the court. . . Defendants ran a litigation mill through Strataluz, the size of which is staggering.'" *Id.*  Given that language, the Defendants' are not reasonable in arguing that the Special Master should have simply overlooked "Smoking Gun" documents clearly subject to production under the crime-fraud exception.

For the foregoing reasons, the Special Master's decision to perform a crime-fraud review was not an abuse of discretion.

### 2.  The Special Master Correctly Applied the Crime-Fraud Exception to Documents Listed in Docket Nos. 823-3 and 823-4

The Special Master's crime-fraud findings were clear, explicit, and satisfied the Ninth Circuit standard.  The Special Master's order reiterates and restates the Court's prior crime-fraud findings:  "[T]o avoid any doubt, the Special Master adopts here in full Judge Chapman's and Judge Selna's *Zolin* Step 1 and 2 analyses." *See* Dkt. 1091 at 12.  His determinations were made after a lawful *in camera* review ordered by the District Court.  *See* Dkt. 1049.  The Special Master's decision was based on the largest evidentiary record of any crime-fraud finding concerning Strataluz LLC because the Special Master reviewed every Strataluz-related document.  *See* Dkt. 1091.  The Special Master categorized those documents in the same manner as Judge Chapman had in her order upheld by this Court.  *See id.* at 12-14.  The Special Master listed the Bates numbers of each "Smoking Gun" document.  *Id.* at 13, 15-16.  Those crime-fraud findings were issued in an identical manner to those upheld earlier in this case.

The Special Master's findings come after this Court already held that Strataluz was designed and used primarily as a vehicle for fraudulent litigation.

*See* Dkt. 820 at 28; Dkt. 634 at 25-26.  Those prior findings proceeded under Steps One and Two of the Ninth Circuit test after many briefs and hearings.  *See, e.g.,* Dkt. 820 at 3-12 (summarizing procedural history); Dkt. 712 at 2-13 (same).  The Court's prior crime-fraud findings concerning Strataluz were also upheld on appeal by the Ninth Circuit.  *See* Dkt. 786 (9th Cir. Memorandum Decision).  Here, the Special Master determined that additional documents were all part of the same crime-fraud concerns.  *See generally* Dkt. 1091.

Defendants had due process on these issues.  The remand in Dkt. 1049 followed after substantial briefing and argument specifically on these same crime-fraud issues.  *See* Dkt. 820; *see also* Dkt. 1049.  The Special Master and this Court each provided opportunities for briefing and oral argument before finding that Strataluz was designed and used as a fraudulent litigation vehicle, and that documents in furtherance of that scheme were subject to the crime-fraud exception. *See* Dkt. 820 at 21 ("The record indicates that Strataluz was used primarily as a litigation vehicle" and "NTG's arguments to the contrary are unpersuasive"). Moreover, following remand, here the Special Master issued two tentative orders applying the crime-fraud exception and allowed for two, extensive oral arguments. *See* Dkt. 1091 at 2.  Defendants have had ample opportunity to be heard on these issues and, on the specific issues raised here, they had two hearings to make argument on why the crime-fraud exception does not apply.  The Special Master rejected those arguments.  *See generally id.*

Defendants argue that the Special Master's order "violated *Zolin* and Ninth Circuit precedent by performing an *in camera* crime-fraud review when no threshold showing has been made."  Dkt. 1092 at 24.  That argument is baseless. The threshold showing required to satisfy *Zolin* Step One had already been satisfied numerous times in the Court's prior-related orders.  The Court in Dkt. 820 held that *in camera* review of Strataluz documents under *Zolin* was warranted because of the strong evidence that NTG used Strataluz primarily as a fraudulent

litigation vehicle.  *See* Dkt. 820 at 21-22.  The record overwhelmingly supported that conclusion, and the Court's determination applied to NTG's use of Strataluz as a whole.  *See id.*  Even assuming the Court needed a "threshold showing" here to review under the crime-fraud standard, that threshold showing had already been satisfied.

More fundamentally, Defendants' argument must be rejected because Step One of the *Zolin* test simply evaluates whether *in camera* review is permissible, but the Court had already ordered the *in camera* review.  *See In re Grand Jury Investigation*, 810 F.3d 1110, 1114 (9th Cir. 2016) (summarizing and distinguishing *Zolin* steps one and two).  Even if the Court's basis for ordering *in camera* review was not expressly related to the crime-fraud exception, the Court's order satisfied the applicable standard.  *See* Dkt. 1049 at 3 (citing precedent regarding Court's discretion to perform *in camera* review).  The Court explained its reasons for exercising discretion to review documents *in camera*.  *Id*.  Thus, the Special Master's *in camera* review was lawful, and that review ultimately provided evidence sufficient to meet all elements of the crime-fraud exception.  *See* Dkt. 1091 at 8-17.

Defendants cite one Ninth Circuit case in support of their argument that "*sua sponte*" crime-fraud reviews are unlawful.  *See* Dkt. 1092 at 24-25 (citing *United States v. De la Jara*, 973 F.2d 746, 749 (9th Cir. 1992)).  *De la Jara* does not stand for that broad proposition and is materially distinguishable from the facts here.  In *De la Jara*, the Court reviewed a purportedly privileged letter *without any legal basis* and later justified that review by arguing that the letter was already in the government's possession because it was seized when police executed a search warrant.  *Id.*  The Ninth Circuit held that the review was not proper because the ease of access to a document is not relevant to whether *in camera* review is appropriate.  *Id*.  Instead, the Court must have a legal basis to perform the review. That holding does not apply here.  First, this Court had already made a *Zolin* Step

One finding in Docket 820 as it related to Strataluz documents.  Second, the Special Master had also been ordered to review the documents *in camera* under either the *Zolin* standard (from the existing finding) or under the discretionary standard for general privilege reviews.  *See* Dkt. 1049; *see also* Dkt. 786 (Ninth Circuit decision holding that "our precedent … in fact gives district courts discretion in how they evaluate claims of attorney-client privilege").  Either way, the Special Master had a lawful basis to review documents *in camera*, unlike the District Court in *De la Jara*.

Were the Court to adopt Defendants far-reaching argument, Courts that lawfully review a document *in camera* would be required to ignore fraudulent activities whenever the purpose of that initial review was not directly related to the crime-fraud exception.  That would result in outcomes contrary to the policy of preventing attorneys and their clients from using "privileges" to conceal unlawful activities.  On this issue, here the Court would also be ruling inconsistently with its prior order at Dkt. 878 wherein the Court determined that a concurrent crime-fraud review was appropriate when the initial basis for review was an implied waiver analysis.  *See* Dkt. 878 at 6.

Defendants apparently argue that the Special Master's Order was not "document specific."  *See* Dkt. 1092 at 26-27.  But the Special Master reviewed every single document, categorized them, and listed specific documents that he found to be "Smoking Gun" files.  *See* Dkt. 1091 at 12-14.  In fact, the Special Master expressly excluded nine documents from production because they did not fall within the crime-fraud exception.  *Id.* at 17.  The order was consistent with all of other crime-fraud orders issued in this case, including those upheld by the Ninth Circuit following interlocutory appeal.  Defendants' suggestion that they required additional briefing (beyond the briefs submitted in proceedings for Dkt. Nos. 820, 712, 659, 299, 414, and 234) also lacks merit.  *See* Dkt. 1092 at 26-27.  The Defendants have been afforded extensive briefing on the merits of these same

issues on multiple occasions leading to Orders in Dkt. Nos. 299, 414, 712, and 820. They even raised these same points to the Ninth Circuit in a request for mandamus. Defendants now argue again that crime-fraud findings "include documents pertaining to real products with actual sales." *See* Dkt. 1092 at 29.  This Court earlier rejected that *same* argument. *See* Dkt. 820 at 12 (affirming Special Master's order and noting that the "Special Master determined that, although NTG attempted to show that Strataluz was not a sham company with evidence that it produced and sold a few 'real' health-related products, such evidence was 'not sufficient to rebut the overwhelming evidence presented by NIC showing that the Strataluz's *raison d'etre* was to bring fraudulent litigation.").   Additional briefing would not have provided document specific argument for the more than one thousand documents at issue here.

Finally, Defendants argue in conclusory fashion that the crime-fraud findings are without merit. *See* Dkt. 1092 at 28-29 (one page of argument).  NIC has produced substantial evidence that NTG developed and used Strataluz as a vehicle for fraudulent litigation. *See, e.g.,* Dkt. 749; Dkt. 588; Dkt. 589; Dkt. 594. NIC need not rehash that evidence here.  NIC supported its prior briefs with substantial evidence concerning NTG's fraudulent ProMAXAL litigation activities, and evidence regarding additional Strataluz products that NTG used in litigation. *See* Dkt. 746 at 10-21 (summarizing facts and evidence).  NIC attached demand letters related to Glutia and EverSilk that NTG used as part of its fraudulent litigation mill. *See id.* at 20 (explaining that "NTG's misrepresentations were not limited to ProMaxal").  NIC proved that NTG made material misrepresentations about those products in connection with litigation activities. *Id.* at 10-21.  The Court relied on that evidence—and the crime-fraud documents—in finding earlier that the crime-fraud exception applied. *See* Dkt. 820 at 7-13, 20-22. The crime-fraud issues concerning Strataluz have been well-ventilated repeatedly in this case.  Upon review of additional documents related to that same activity, the

Special Master uncovered a startling amount of evidence again supporting the crime-fraud exception.  *See* Dkt. 1091 at 16.

Defendants present no substantive argument disputing those findings.  *See* Dkt. 1092 at 28-29.  The Special Master's order is supported by the record that includes all non-privileged evidence presented by NIC earlier in this case.  This Special Master has now reviewed more Strataluz documents than any jurist in this case.  His findings are supported by a complete review of all Strataluz-related NTG documents.  Those findings are also consistent with conclusions reached by two other independent jurists (this Court and the former Special Master, Hon. Rosalyn Chapman (Ret.)).  The Court should uphold the Special Master's crime-fraud findings.

**C. Defendants' Arguments Regarding Work Product are Irrelevant**

Defendants devote the majority of their brief arguing that each document listed in Docket Nos. 823-3 and 823-4 is protectable work product and, thus, should not be compelled.  That argument is irrelevant and erroneous.

First, the Special Master compelled nearly all documents listed in Docket Nos. 823-3 and 823-4 under the crime-fraud exception.  As explained *supra*, his crime-fraud order satisfied the Ninth Circuit standard and should be upheld.  As such, arguments regarding the applicability of work product protection are either moot or irrelevant because the Special Master's principal basis for production was under crime-fraud exception.

Second, the Defendants' various arguments regarding whether specific agents or employees of Newport Trial Group can create work product are irrelevant under the applicable law and this Court's prior analysis.  The Court has already held that under binding Ninth Circuit precedent, *non-parties* cannot assert work product protection in this lawsuit under FRCP 26(b)(3).  *See* Dkt. 820 at 28-29.  Thus, here the relevant inquiry focuses on the identity of the person who prepared each document.  *Id.* at 30 ("the Court sustains NIC's objection to the …

order compelling Strataluz documents which claim only work product protection and which were prepared by individuals other than Reid and Ferrell"). This Court concluded that documents not prepared by David Reid or Scott Ferrell were not subject to work product protection under FRCP 26(b)(3) and the Ninth Circuit's holding in *CPUC*. *Id.* at 28-30. Defendants' argument here either misses the point or asks this Court to reconsider its holding in Docket No. 820 without attempting to meet the relevant standard for reconsideration. Indeed, the Special Master recognized that "[Judge Selna] explicitly rejected the premise of NTG's arguments (repeated again at the January 2021 hearing), which assert that the documents should be work-product protected because they relate to materials prepared by agents and attorneys 'representing Strataluz.'" *See* Dkt. 1091 at 9 (noting that Strataluz does not have work product protection in this case).

Finally, the Defendants offer no explanation or rebuttal to the Special Master's findings that a significant number of documents designated work product were simply not work product at all. *See generally* Dkt. 1092 at 14-23. The Special Master found that "many of the listed documents would not be considered work product in the first instance." Dkt. 1091 at 9 (identifying five "particularly egregious examples"). He further noted that Defendants' earlier redactions appear to have been improper because "much (if not all) is not work product protected." *Id.* at 15. Those findings reveal that Defendants significantly over-designated documents as work product. They claimed work product over corporate formation documents that merely mention the potential for future, non-specific litigation even though such documents could never satisfy the "imminent litigation" element of the work product test. *See Arfa v. Zionest Org. of Am.*, No. CV 13-2942, 2014 WL 815496, at *4 (C.D. Cal. Mar. 3, 2014) ("The work product rule does not apply merely because there is a remote prospect of future litigation"); Dkt. 659 at 28-29 (collecting authorities and holding that work product protections will apply only where the is "more than a remote possibility of litigation"). Even if the Court

evaluates Defendants' work product argument, it must nonetheless perform a complete *in camera* review to determine whether sanctions are appropriate for Defendants mass over-designation of documents the Special Master found to be "egregiously" mis-designated.

### D. If the Court Adopts Defendants' Positions, It Must Perform Another Complete Review *In Camera* to Evaluate Reid's and Ferrell's "Capacity" Designations

Defendants argue that the Court should reverse the Special Master's crime-fraud findings.  As explained *supra*, that argument is without merit.  However, if the Court were to agree, it must perform a second *in camera* review for the purpose of evaluating Reid and Ferrell's "capacity" designations under Dkt. 830-1 [*see* 820 at 32; Dkt. 1049] and, as discussed *supra*, Defendants' mass over-designations. *See* Dkt. 830-1 (NTG privilege logs).

The Court has held that only documents prepared by Reid and Ferrell can be withheld under the work-product doctrine in this case.  *See* Dkt. 820 at 30.  Even among those documents, only files prepared in Reid and Ferrell's capacities as attorneys for Strataluz can be withheld (as opposed to their capacity as Strataluz corporate officers).  *See* Dkt. 820 at 29-30.  To that end, the Court ordered Defendants to submit a revised log identifying the capacity in which Reid and Ferrell created Strataluz documents.  *Id.* at 30.  The Court contemplated that the Special Master would check those designations during the *in camera* review, but the Special Master instead found that documents were so clearly and pervasively subject to the crime-fraud exception that he never performed the "capacity" analysis.  *See* Dkt. 1091.

An analysis of the capacity issue would nonetheless be required to properly administer the Court's order at Docket No. 820 if the crime-fraud findings are rejected.  That review is necessary because Defendants grossly over-designated ever document categorically under the "attorney" designation.  *See* Dkt. 830-1 at 2-25.  That categorical approach facially suggests over-designation.  The Special

Master also found irregularities in Defendants' designations.  He found they NTG failed to properly designate many documents as "ProMAXAL related," that they improperly designated documents work product, and that they improperly designated redactions.  *See* Dkt. 1091 at 13.  Defendants have a pattern of mis-designation or misconduct regarding privilege logs in this case.  *See, e.g.,* Dkt. 625 at 7-8; Dkt. 610 at 3 (noting counsel for non-NTG defendants' "evolving representations" concerning privileged files); Dkt. 1091 at 9, 13, 14 (finding unpersuasive NTG's position that "would permit an unreasonably sweeping view of work product protection simply on the basis of a litigation attorney being present on an email chain or a possibility of some (unknown) litigation at some point down the road"); Dkt. 241 at 17-18 ("NTG Defendants took the unprecedented stance that they would not produce any privilege logs unless they were ordered to do so (or changed their mind)" and such "refusal was inexcusable").

The evidence shows that Defendants improperly designated documents under an "attorney" capacity when they actually prepared those files in their capacity as corporate officers.  Some of the documents listed on Defendants' "capacity" log [Dkt. 830-1] were already produced to NIC under the crime-fraud exception and NIC could therefore evaluate the accuracy of NTG's designations for certain documents.  Some examples include:

- **NTG063580**.  The email title is "Business Plan," and was sent from Ferrell to other Strataluz officers in December 2013.  The file discusses the "keys to success" for the company, and is clearly written in Ferrell's capacity as an officer (or member of the LLC).  The document discusses business strategies using terms like "we" "us" and "our."  Those pronouns show that Ferrell was discussing business affairs not as Strataluz's litigation counsel, but as a joint business venturer.  This document is also facially not work product.

- **NTG066354**.  This email from Ferrell to Weiss/Bentley discusses ingredients that could be used in the product.  The document involves discussion of timelines for production of certain marketing materials.  First,

the file is simply not privileged.  But, even assuming privilege applied, the email discussed business strategy and development of product.  Those subjects do not implicate Ferrell in his role as an attorney.

- **NTG067128**.  This document involves Reid's offer to broker a deal on Strataluz's behalf.  The file was created in Reid's capacity as an officer.

- **NTG063804**.  Here Reid comments on the "Business Plan."  The file contains no indication that Reid was acting in any capacity other than as an officer or owner of the corporation.

- **NTG066439**.  Here Ferrell comments on the product name.  He also proposes names for the "patented" technology.  These discussions are between owners of the business.

- **NTG066375** and **NTG070661**.  Here Ferrell circulates a licensing agreement and discusses payment for that license.  His language indicates that this is a conversation between owners, given his use of the pronoun "us" when describing corporate action.

- **NTG070553**.  This email from Bentley discusses the proposed formulation of product and that product's efficacy.

- **NTG070903**.  This is a one-word email that relates to ProMaxal marketing.

- **NTG070634**.  Ferrell's email proposes a business idea and comments on his intellectual property holdings.

- **NTG070750**.  Ferrell's email requests corporate action related to product sales.

- **NTG070875**.  Ferrell's email discusses commercial aspects of the business including potential website content.

- **NTG070652**.  Ferrell's email organizes and initiates payment for Strataluz assets, including the license.  This email relates to Ferrell's conduct as an officer directing distribution of company funds to acquire intellectual property.

These examples, combined with the Special Master's findings and the Defendants' pattern of improper designation demonstrate the necessity of a full *in camera*

review on the issue of capacity in the event this Court does not sustain crime-fraud findings.  The Court should also note the Defendants' repeated abuse of privilege designations in this case as a tool to avoid disclosure of inculpatory discovery materials.[2]

Finally, the Special Master performed a complete review of over 1,300 Strataluz files, and properly applied the facts and law of this case in reaching his conclusions with respect to those documents.  This Court cannot alter or reverse the Special Master's findings without reviewing each document.  Yet this Court earlier granted NTG's motion to reconsider the crime-fraud process and limited NIC's right judicial review of the Special Master's decisions following her *in camera* review of 1,696 documents.  *See* Dkt. 788 at 16 ("[T]he Court finds that a second review of the 1,696 underlying-case documents is no longer supported…").  In so ruling, the Court overruled NIC's concern that the Special Master's initial review was deficient or in error, and that Rule 53(f) entitled NIC to *de novo* review.  *Id.*  NTG now asks this Court to provide the very due process that the Court denied NIC in Dkt. 788.  The Court is obligated instead to follow the law of the case in this context and accept the Special Master's findings, particularly in the absence of any specific briefing or evidence from NTG demonstrating that the Special Master's decisions were erroneous.  A second *in camera* review by this Court is not proportional.

### V. <u>CONCLUSION</u>

For the foregoing reasons, the Defendants' objections should be entirely overruled.

---

[2] To the extent this Court did not receive the underlying record from the Special Master, NIC will promptly file or lodge relevant Bates-numbered files for the Court's review upon request.

DATED:  February 15, 2021

                              Respectfully submitted,

                              EMORD & ASSOCIATES, PC.


                              By:    */s/ Peter A. Arhangelsky*
                              Peter A. Arhangelsky, Esq. (SBN 291325)
                              Joshua S. Furman, Esq. (pro hac vice)
                              *Attorneys for Plaintiff Natural*
                              *Immunogenics Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2021, the foregoing, **PLAINTIFF NIC'S OPPOSITION TO DEFENDANTS' OBJECTIONS TO ORDER RE STRATALUZ DISCOVERY (DKT. 1091)** was electronically filed via the CM/ECF system and sent by that system to the following:

Brendan M. Ford [*bford@forddiulio.com*]
Kristopher P. Diulio [*kdiulio@forddiulio.com*]
Ford & Diulio PC
650 Town Center Drive, Suite 760
Costa Mesa, California 92626
Tel: (714) 450-6830
*Attorney Defendants Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover, Matthew Dronkers, Taylor Demulder, Sam Pfleg*

David J. Darnell, Esq. [*ddarnell@callahan-law.com*]
Edward Susolik, Esq. [*es@callahan-law.com*]
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA  92707
Tel:  (714) 241-4444
*Attorneys for Newport Trial Group and Scott Ferrell*

Nicole Whyte [*nwhyte@bremerwhyte.com*]
Benjamin Price [*bprice@bremerwhyte.com*]
Kyle A. Riddles [*kriddles@bremerwhyte.com*]
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000
*Attorneys for Defendants Ryan Ferrell, Andrew Baslow, David Reid, and Victoria Knowles*

/ / /

/ / /

/ / /

Robert Tauler, Esq.
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Blvd., Suite 510
Los Angeles, CA 90017
Tel: (310) 590-3927
*Attorney for David Reid and Victoria Knowles*


                    */s/ Peter A. Arhangelsky*
                    Peter A. Arhangelsky, Esq.