1  Nicole Whyte, State Bar No. 156503
   nwhyte@bremerwhyte.com
2  Benjamin Price, State Bar No. 267400
   bprice@bremerwhyte.com
3  Kyle A. Riddles, State Bar No. 309854
   kriddles@bremerwhyte.com
4  BREMER WHYTE BROWN & O'MEARA LLP
   20320 S.W. Birch Street
5  Second Floor
   Newport Beach, California 92660
6  Telephone:  (949) 221-1000
   Facsimile:  (949) 221-1001
7
   Attorneys for Defendants,
8  Ryan Ferrell; Victoria Knowles; Dave Reid; and
   Andrew Lee Baslow
9

10            **UNITED STATES DISTRICT COURT**

11           **CENTRAL DISTRICT OF CALIFORNIA**

12              **SOUTHERN DIVISION**

| | |
|---|---|
| 13  NATURAL-IMMUNOGENICS CORP., a Florida Corporation, | Case No. 8:15-cv-02034-JVS-JCG |
| 14          Plaintiff, | Judge:  Hon. James V. Selna |
| 15     vs. | **DECLARATION OF KYLE A. RIDDLES IN SUPPORT OF DEFENDANT VICTORIA KNOWLES' MOTION FOR SUMMARY JUDGMENT** |
| 16  NEWPORT TRIAL GROUP, et al., | |
| 17          Defendants. | |
| 18 | Complaint Filed:  December 7, 2015 |
| | Trial Date:       November 1, 2021 |

19

20       **DECLARATION OF KYLE A. RIDDLES, ESQ.**

21       I, Kyle A. Riddles, Esq., declare as follows:

22       1.     I am an attorney at law duly licensed to practice before all of the courts

23  in the State of California.  I am an Associate of the law firm of BREMER WHYTE

24  BROWN & O'MEARA LLP, counsel of record for Defendants, Victoria Knowles,

25  Andrew Baslow, Ryan Ferrell, and David Reid in this action.  I have personal

26  knowledge of the facts set forth in this Declaration and, if called as a witness, could

27  and would testify competently to such facts under oath.

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

DECLARATION OF KYLE A. RIDDLES

1601.116  4824-6626-3270.4

2.      Attached are true and correct copies of documents filed with the San Diego Superior Court in Nilon v. Natural Immunogenics Corp., Case No. 37-2012-00093325-CU-MT-CTL, and, after removal, with the United States District Court, Southern District of California, in Nilon v. Natural Immunogenics Corp., Case No. 3:12-CV-00930-LAB (BGS).  Specifically, the  "Class Action Complaint," filed on March 5, 2012, in Nilon v. Natural Immunogenics, Corp., California Superior Court, County of San Diego, Case No. 37-2012-00093325-CU-MT-CTL is attached hereto as "**Exhibit A**" concurrently filed herewith and incorporated herein by this reference. This Court previously took judicial notice of this document pursuant to its Order at Docket 296.

3.      A true and correct copy of relevant portions of the certified copy of the deposition transcript from the July 31, 2020 deposition of Victoria Knowles in this case is attached to hereto as "**Exhibit B**" concurrently filed herewith and incorporated herein by this reference.

4.      A true and correct copy of NTG's Responses to NIC's Special Interrogatories, set one, is attached hereto as "**Exhibit C**" concurrently filed herewith and incorporated herein by this reference.

5.      A true and correct copy of an e-mail dated December 25, 2011 from Scott Ferrell to Victoria Knowles is attached hereto as "**Exhibit D**" concurrently filed herewith and incorporated herein by this reference.

6.      A true and correct copy of an e-mail dated December 27, 2011 from Victoria Knowles to Scott Ferrell is attached hereto as "**Exhibit E**" concurrently filed herewith and incorporated herein by this reference.

7. A true and correct copy of a letter dated December 27, 2011 from NTG to NIC is attached hereto as "**Exhibit F**" concurrently filed herewith and incorporated herein by this reference.

/ / /

/ / /

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

2
DECLARATION OF KYLE A. RIDDLES

1601.116  4824-6626-3270.4

1   9. A true and correct copy of an e-mail dated January 21, 2021 is attached

2   hereto as "**Exhibit G**" concurrently filed herewith and incorporated herein by this

3   reference.

4   I declare under penalty of perjury under the laws of the State of California that

5   the foregoing is true and correct.

6   Executed this 26th day of April, 2021, at Newport Beach, California.

7

8   _____

9   Kyle A. Riddles

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3
DECLARATION OF KYLE A. RIDDLES

1601.116  4824-6626-3270.4

# EXHIBIT "A"

# EXHIBIT "A"

NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@trialnewport.com
James B. Hardin, Bar No. 205071
jhardin@trialnewport.com
Victoria C. Knowles, Bar No. 277231
vknowles@trialnewport.com
895 Dove Street, Suite 425
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Class

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

ANDREW NILON, individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

NATURAL-IMMUNOGENICS CORP. and DOES 1-25, Inclusive,

Defendants.

Case No.: **37-2012-00093325-CU-MT-CTL**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff ANDREW NILON ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following on information and belief:

### I.    INTRODUCTION

1.    Natural-Immunogenics, Corp. ("Defendant") manufactures, markets, and sells the "Sovereign Silver" line of products ("the Products") as a colloidal silver hydrosol dietary supplement with the ability to provide "immune support." Defendant claims its Products have the ability to support consumers' immune systems based on "silver's well-established biological catalytic activity which may excite higher life forms into maximal states of immune function when the silver is in an oligodynamic state."

2.    In reality, not only has Sovereign Silver's alleged ability to provide immune support never been scientifically substantiated. Therefore, Defendant's statements about the Products' efficacy are false and misleading.

- 1 -

3.     Defendant's misrepresentations regarding the efficacy of Sovereign Silver were designed to, and did, lead Plaintiff and others similarly situated (collectively the "Class") to believe that these Products were effective at providing immune support.  Plaintiff and members of the Class relied on Defendant's misrepresentations and would not have paid as much, if at all, for the Product but for Defendant's misrepresentations.

4.     Plaintiff brings this class action lawsuit to enjoin the ongoing deception of thousands of California consumers by Defendant, and to recover the money taken by this unlawful practice.

## II.     THE PARTIES

**A.     Plaintiff.**

5.     Plaintiff is a resident of San Diego County, California and purchased Sovereign Silver in this County.  Plaintiff relied on Defendant's representations regarding the efficacy of the Product, as detailed herein, and but for those representations, Plaintiff would not have purchased or paid as much for the Product.

**B.     Defendant.**

6.     Upon such information and belief, Defendant Natural-Immunogenics, Corp. is a Florida corporation with its principal place of business in Pompano Beach, Florida.   Natural-Immunogenics, Corp. develops and markets Sovereign Silver and does business in California.

7.     The true names and capacities, whether individual, corporate, associate, representative, alter ego or otherwise, of defendants and/or their alter egos named herein as DOES 1 through 25 inclusive are presently unknown to Plaintiff at this time, and are therefore sued by such fictitious names pursuant to California Code of Civil Procedure § 474.  Plaintiff will amend this Complaint to allege the true names and capacities of DOES 1 through 25 when the same have been ascertained. Plaintiff is further informed and believe and based thereon allege that DOES 1 through 25 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages hereinafter set forth below.

## III.     JURISDICTION AND VENUE

8.     This Court has jurisdiction over all causes of action asserted herein.

9.      Venue is proper in this Court because Defendant does business in this County and Defendant has received substantial compensation from sales in this County.  Specifically, Defendant knowingly engages in activities directed at consumers in this County, and Defendant obtains substantial benefits from their scheme perpetrated in this County.  Plaintiff has filed concurrently herewith the declaration of venue required by Civil Code Section 1780(d) and is attached hereto as Exhibit One.

10.      Defendant and other out-of-state participants can be brought before this Court pursuant to California's "long-arm" jurisdictional statute.

## IV.      FACTS

11.      Defendant manufactures, markets, and sells the Sovereign Silver product line as a colloidal silver hydrosol dietary supplement with the ability to provide "immune support."  Defendant claims its Products have the ability to support consumers' immune systems based on "silver's well-established biological catalytic activity which may excite higher life forms into maximal states of immune function when the silver is in an oligodynamic state."  Defendant further claims that colloidal silver's "physical characteristics [] establishes that it possesses the greatest electrical and thermal conductivity of all metals while possessing the lowest contact resistance" and thus supports immune function.  *See* Exhibit Two.

12.      Defendant draws parallels to the wide variety of colloidal silver's uses in an attempt to substantiate its Products' efficacy claims.  For example, Defendant states that since silver has such diverse and important uses in such fields as "medicine and dentistry," "sanitation, hygiene and water purification," "electrical engineering," and "weather management," silver likewise must have powers to provide immune support.  Defendant's logic is attenuated at best and at worst, completely false and misleading.  *See* Exhibit Two.

13.      In reality, Sovereign Silver's alleged ability to provide immune support has never been scientifically substantiated.[1]  In fact, "[colloidal silver] products are purported to alleviate all sorts of

_____

[1] *See* Fung MC, Bowen DL (1996). "Silver products for medical indications: risk-benefit assessment". Journal of Toxicology 34 (1): 119–26 *stating* "We emphasize the lack of established effectiveness and potential toxicity of these products."

medical conditions and diseases *but there's no substantiation for that*."[2]  Colloidal silver "[is] not a legitimate dietary ingredient[].  [It] plays no role in the diet… [and is] not essential in the diet."[3]

14.     Defendant's blatant misrepresentations regarding the efficacy of its Products were designed to, and did, lead Plaintiff and others similarly situated (collectively the "Class") to believe that the Products were effective at providing immune support.

15.     Plaintiff and members of the Class relied on Defendant's misrepresentations and would not have paid as much, if at all, for the Products but for Defendant's misrepresentations.

16.     Defendant charges between $13.99 and $329.99 based on the preceding false advertising claims.  As a result, Defendant has wrongfully taken hundreds of thousands of dollars from California consumers.

17.     Accordingly, Plaintiff brings this lawsuit to enjoin the ongoing deception of thousands of California consumers by Defendant, and to recover the funds taken by this unlawful practice.

## V.     CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this class action for damages and other monetary relief on behalf of the following class:

> All persons located within California who purchased any Sovereign Silver Products either from a retail location or over the internet at any time during the four years preceding the filing of this complaint through the date of trial in this action (the "Class").

19.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, and individuals bound by any prior settlement involving Sovereign Silver.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

---

[2] *Comment by* Andrew Shao, PhD, vice president of scientific and regulatory affairs at the Council for Responsible Nutrition, a trade group for the dietary supplements industry *available at* http://www.webmd.com/news/20080905/colloidal-silver-faq.
[3] *Id.*

20. The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of Class members is at least in the tens of thousands and members of the Class are numerous and geographically dispersed across California. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

21. There is a well-defined community of interest in the questions of law and fact involved affecting the plaintiff class and these common questions predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

a. Whether Defendant's efficacy claims are accurate;

b. Whether Defendant's efficacy claims are properly substantiated;

c. Whether Defendant has falsely represented that Sovereign Silver products have uses and benefits which they do not have;

d. Whether Defendant knew that its efficacy claims were false;

e. Whether Defendant's conduct constitutes a violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*);

f. Whether Defendant's conduct constitutes a violation of California's false advertising law (Cal. Bus. & Prof. Code §§ 17500, et seq.);

g. Whether Defendant's conduct constitutes an unfair, unlawful, and/or fraudulent business practice in violation of California's unfair competition law (Cal. Bus. & Prof. Code §§ 17200, et seq.);

h. Whether Plaintiff and Class members are entitled to compensatory damages, and if so, the nature of such damages;

i. Whether Plaintiff and Class members are entitled to restitutionary relief; and

j. Whether Plaintiff and Class members are entitled to injunctive relief.

22.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they all relied on Defendant's representations concerning the Products and purchased them based on those representations.

23.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Plaintiff has retained a law firm who is widely recognized as one of the most successful and effective class action litigators in California, and whose victories have been publicized on CNN, Fox News, MSNBC, and nearly every major California newspaper.  The firm has also been certified as lead class counsel in similar class actions.

24.     Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the class is impracticable.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

25.     Adjudication of individual class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

/ / /

/ / /

# VI.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

### (CAL. CIV. CODE §§ 1750, *ET SEQ.*)

**(By Plaintiff and on Behalf of the Class Against Defendant)**

26.     Plaintiff incorporates by this reference the allegations contained in the paragraphs above as if fully set forth herein.

27.     Plaintiff has standing to pursue this cause of action because Plaintiff has suffered injury in fact and has lost money as a result of Defendant's actions as set forth herein.  Specifically, Plaintiff purchased the Products in reliance on Defendant's marketing claims with respect to efficacy.  Plaintiff used the Products as directed, but it did not work as advertised and was not of the quality and standard advertised by Defendant.

28.     Defendant has engaged in and continues to engage in business practices in violation of California Civil Code §§ 1750, *et seq*. (the "Consumers Legal Remedies Act") by making false and unsubstantiated representations concerning the efficacy of the Products.  These business practices are misleading and/or likely to mislead consumers and should be enjoined.

29.     Defendant has engaged in deceptive acts or practices intended to result in the sale of Sovereign Silver in violation of Civil Code § 1770.  Defendant knew and/or should have known that its representations of fact concerning the efficacy of the Products were material and likely to mislead the public.  Defendant affirmatively misrepresented that the Products were of a certain standard and quality with certain benefits which they did not have.

30.     Defendant's conduct alleged herein violates the Consumers Legal Remedies Act, including but not limited to, the following provisions:   (1) using deceptive representations in connection with goods or services in violation of Civil Code § 1770(a)(4); (2) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Civil Code § 1770(a)(5); and/or (3) advertising goods or services with intent not to sell them as advertised in violation of Civil Code § 1770(a)(9).  As a direct and proximate result of Defendant's conduct, as set forth herein, Defendant has received ill-gotten gains and/or

profits, including but not limited to, money.  Therefore, Defendant has been unjustly enriched.

31.     There is no other adequate remedy at law, and Plaintiff and Class members will suffer irreparable harm unless Defendant's conduct is enjoined.

32.     Plaintiff's counsel mailed to Defendant, by certified mail, return receipt requested, the written notice required by Civil Code Section 1782(a) on December 27, 2011.  A copy of this letter is attached hereto as Exhibit Three.

33.     The declaration of venue required by Civil Code § 1780(d) is attached hereto as Exhibit One.

34.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the Consumer Legal Remedies Act since Defendant is still representing that their Products have characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiff and the Class.

35.     Plaintiff and the Class seek:

(a)     an order of this court enjoining Defendant from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in the complaint, pursuant to California Civil Code Section 1780(a)(2);

(b)     actual damages pursuant to Civil Code Section 1780(a)(1);

(c)     punitive damages pursuant to California Civil Code Section 1780(a)(4) due to the fraudulent, malicious, and willful nature of Defendant's conduct;

(d)     statutory damages of no less than $1,000 per class member pursuant to California Civil Code Section 1780(a)(1);

(e)     restitution pursuant to Civil Code Section 1780(a)(3); and

(f)     any other equitable or legal relief that the Court deems proper pursuant to California Civil Code Section 1780(a)(5).

/ / /

/ / /

/ / /

/ / /

**SECOND CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**

**(CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)**

**(By Plaintiff and on Behalf of the Class Against Defendant)**

36. Plaintiff incorporates by this reference the allegations contained in the paragraphs above as if fully set forth herein.

37. Plaintiff has standing to pursue this cause of action because Plaintiff has suffered injury in fact and has lost money as a result of Defendant's actions as set forth herein. Specifically, Plaintiff purchased Sovereign Silver in reliance on Defendant's marketing claims. Plaintiff used the Products as directed, but it did not work as advertised and did not provide any of the promised benefits.

38. Defendant has engaged in false advertising as they have disseminated false and/or misleading representations about the Products.

39. Defendant knew or should have known by exercising reasonable care that its representations were false and/or misleading. During the Class Period, Defendant engaged in false advertising in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*, by misrepresenting in its advertising and marketing of the Products to Plaintiff, Class members, and the consuming public that its Products are effective.

40. Each of the aforementioned representations alleged in this Complaint was false and misleading because the Products are not of the standard, quality or grade advertised, and are in reality, ineffective.

41. By disseminating and publishing these statements in connection with the sale of the Products, Defendant has engaged in and continues to engage in false advertising in violation of Bus. & Prof. Code §§ 17500, *et seq.*

42. As a direct and proximate result of Defendant's conduct, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to, money. Therefore, Defendant has been unjustly enriched. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff requests restitution and restitutionary disgorgement for all sums obtained in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

43.     Plaintiff seeks injunctive relief, restitution, and restitutionary disgorgement of Defendant's ill-gotten gains as specifically provided in Cal. Bus. & Prof. Code § 17535.

44.     Plaintiff and Class members seek to enjoin Defendant from engaging in these wrongful practices, as alleged herein, in the future.  There is no other adequate remedy at law and if an injunction is not ordered, Plaintiff and the Class will suffer irreparable harm and/or injury.

### THIRD CAUSE OF ACTION

### UNLAWFUL, FRAUDULENT & UNFAIR BUSINESS PRACTICES

### (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)

**(By Plaintiff and on Behalf of the Class Against Defendant)**

45.     Plaintiff incorporates by this reference the allegations contained in the paragraphs above as if fully set forth herein.

46.     Plaintiff has standing to pursue this cause of action because Plaintiff has suffered injury in fact and has lost money as a result of Defendant's actions as set forth herein.  Specifically, Plaintiff purchased Sovereign Silver in reliance on Defendant's marketing claims.  Plaintiff used the Products as directed, but it did not work as advertised and were not of the standard, quality and grade advertised.

47.     Defendant's actions as alleged in this Complaint constitute an unfair or deceptive business practice within the meaning of California Business and Professions Code §§ 17200, *et seq.*, in that Defendant's actions are unfair, unlawful, and fraudulent, and because Defendant has made unfair, deceptive, untrue, or misleading statements in advertising media, including the Internet, within the meaning of California Business and Professions Code §§ 17200, *et seq.*

48.     Defendant knew or should have known by exercising reasonable care that its representations were false and/or misleading.  During the Class Period, Defendant engaged in unfair, unlawful, and fraudulent business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, by misrepresenting in its advertising and marketing of the Products to Plaintiff, Class members, and the consuming public that, the Products were effective.

49.     Each of the aforementioned representations alleged in this Complaint was false and misleading because the Products are not of the standard, quality or grade advertised.

50.     Defendant's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers in that consumers are misled by the claims made with respect to the Products as set forth herein.

51.     Defendant's business practices, as alleged herein, are unlawful because they violate the Consumer Legal Remedies Act and False Advertising Law.

52.     Defendant's business practices, as alleged herein, are fraudulent because they are likely to, and did, deceive customers—including Plaintiff and members of the Class—into believing that the Products have characteristics and benefits they do not have.

53.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendant is marketing and selling its Products in a manner likely to deceive the public.

54.     As a direct and proximate result of Defendant's wrongful business practices in violation of Business and Professions Code §§ 17200, *et seq.*, Plaintiff and members of the Class have suffered economic injury by losing money as a result of purchasing the Products.  Plaintiff and members of the Class would not have purchased or would have paid less for the Products had they known that they were not as represented.

55.     Pursuant to Business and Professions Code § 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in the Complaint. Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all moneys they wrongfully obtained from Plaintiff and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the Class request that the Court enter an order or judgment against Defendant, and each of them as named in the future, as follows:

1.     For an order certifying the Class, appointing Plaintiff and his counsel to represent the Class, and notice to the Class to be paid by Defendant;

2.     For damages suffered by Plaintiff and Class members;

3.      For restitution to Plaintiff and Class members of all monies wrongfully obtained by Defendant;

4.      For an injunction ordering Defendant to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

5.      For both pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded;

6.      For Plaintiff's costs of the proceedings herein;

7.      For reasonable attorneys' fees as allowed by statute; and

8.      For any and all such other and further relief that this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated:  March 5, 2012

NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell

By:_____
Scott J. Ferrell
Attorney for Plaintiff and the Class

EXHIBIT 1

1    I, Andrew Nilon, declare as follows:

2    1.    I am a Plaintiff in this action, and am a citizen of the State of California.  I have

3    personal knowledge of the facts herein and, if called as a witness, I could and would testify

4    competently thereto.

5

6    2.    The Complaint in this action, filed concurrently with this Declaration, is filed in the

7    proper place for trial under Civil Code Section 1780(d) in that San Diego County is a county in which

8    Defendants are doing business.

9

10   I declare under penalty of perjury under the laws of the State of California that the foregoing is

11   true and correct.

12

13

_____

Andrew Nilon

# EXHIBIT 2



**Our Product:**

Why Sovereign Silver ◂
Unique Silver Species ◂
Comparative Analysis ◂
Benefits of Silver ◂
History of Silver ◂
Dosage Information ◂
Safety ◂

**News**

**October-December 2010 Sovereign Silver Newsletter**

Featured in this issue: 1) Supplement Freedoms - The Silver Bullet May Not Always Be; 2) Science News - Silver Bio-Activity; 3) Regulatory News - Nutrient Claims; 4) Testimonial Corner

# The Benefits of Silver

## The Many Benefits of Silver

Nanotechnology has rendered silver into an exceedingly powerful tool destined to be one of the most commonly used minerals in the health industry, communications industry, sanitation industry, energy industry, alternative power industry, environmental management industry among many others.

The reason for this wide-spread application is because of nanotechnology's influence upon silver's well-established (A) biological catalytic activity which may excite higher life forms into maximal states of immune function when the silver is in an oligodynamic state,1, 2, 3, 4* and (B) its physical characteristics which establishes that it possesses the greatest electrical and thermal conductivity of all metals while possessing the lowest contact resistance.5

For example, the demand for silver, as well documented by The Silver Institute, is reflected in the following many uses of silver in today's economy:

---

Featured in this issue: 1) Supplement Freedoms - The Silver Bullet May Not Always Be; 2) Science News - Silver Bio-Activity; 3) Regulatory News - Nutrient Claims; 4) Testimonial Corner - First Aid Use; 5) Nov-Dec Shipping Alerts

**See all news articles »**

**Events**

**February 26, 2010**

**Integrative Healthcare Symposium**
Hilton New York
New York City

**See all events »**

**Argentyn 23**

**Our Professional Formulation**

Argentyn 23 was developed specifically for healthcare professionals. The product offers

For example, the demand for silver, as well documented by The Silver Institute, is reflected in the following many uses of silver in today's economy:

- Silver in medicine and dentistry
- Silver in sanitation, hygiene and water purification
- Silver in jewelry, silverware and decorative purposes where appearance is paramount.
- Silver in photography (AgBr)
- Silver in electrical engineering
- Silver in alternative energy
- Silver in power storage systems
- Silver in weather management
- Silver in hard currencies (coins)
- Silver in high tech paints and photography
- Silver as a mineral for dietary supplements*



EXHIBIT 3

# NEWPORT
## T R I A L   G R O U P
*A Professional Corporation*

895 Dove Street, Suite 425
Newport Beach, CA 92660
Phone(949) 706-6464
Fax (949) 706-6469
www.trialnewport.com

December 27, 2011

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Natural-Immunogenics Corp.
3265 W. McNab Rd.
Pompano Beach, FL 33069
Attn:  Legal Department

     *Re:*    *Violations of California Consumer Protection Laws and Breach of Warranties*

Dear Sir or Madam:

I am writing on behalf of an individual California consumer, as well as a putative class of similarly situated consumers, to advise you that we believe you are violating the California Consumer Legal Remedies Act.

Specifically, you market "Sovereign Silver" as a colloidal silver hydrosol dietary supplement that has the ability to provide "immune support."  You claim that silver has the ability to support consumers' immune systems based on "silver's well-established biological catalytic activity which may excite higher life forms into maximal states of immune function when the silver is in an oligodynamic state" and because "its physical characteristics [] establishes that it possesses the greatest electrical and thermal conductivity of all metals while possessing the lowest contact resistance."  You further claim that since silver has such diverse and important uses in such fields as "medicine and dentistry," "sanitation, hygiene and water purification," "electrical engineering," and "weather management," silver likewise must have powers to provide immune support.  Your logic is attenuated at best and at worst, completely false and misleading.  Our client relied on your assertions and did not experience any of the promised benefits.  In fact, your product was completely worthless to her.

The preceding claims made by you on your product labeling and website are false and misleading, and are not supported by competent and reliable scientific evidence.  In reality, Sovereign Silver's alleged ability to provide immune support has never been scientifically substantiated.  Further, colloidal silver is not bio-available so human ingestion cannot provide the benefits promised.  Therefore, your product does not provide benefits though digestion or by

December 27, 2011
Page 2

its mere presence in the human system.  What is more, colloidal silver may in fact be *dangerous and undesirable for human consumption*: "Chronic ingestion or inhalation of silver preparations (especially colloidal silver) can lead to deposition of silver metal/silver sulphide particles in the skin (argyria), eye (argyrosis) and other organs." A.B. Lansdown, "Silver in health care: antimicrobial effects and safety in use," Curr. Probl. Dermatol. (2006).  In sum, the manner and presentation of your marketing leaves consumers with a misleading overall net impression regarding Sovereign Silver.

As such, we believe that you are advertising Sovereign Silver as having characteristics, uses and benefits that it does not have in violation of the Consumer Legal Remedies Act.  We further believe that the aforementioned representations regarding the purported benefits, qualities and characteristics of Sovereign Silver constitutes: (1) breach of express warranty; (2) breach of the implied warranty of fitness for a particular purpose; (3) negligent misrepresentation; (4) a violation of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*); and (5) a violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*).

We respectfully request that you agree to irrevocably stop all false and misleading advertising and labeling of this and similar products marketed and that you provide all consumers who have purchased the product with a full refund.  If you conform your activities to comply with California law, we will take no further action in this matter.  We invite you to contact us to further discuss and resolve this matter.

Very truly yours,

NEWPORT TRIAL GROUP
A Professional Corporation

Scott J. Ferrell

SJF:cl

# EXHIBIT "B"

# EXHIBIT "B"

Atkinson-Baker, Inc.
www.depo.com

1              IN THE UNITED STATES DISTRICT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4

5   NATURAL-IMMUNOGENICS CORP.,        )  No. 8:15-cv-02034
                                       )       JVS (JCG)
6            Plaintiff,                )
                                       )
7         vs.                          )   **CERTIFIED COPY**
                                       )
8   NEWPORT TRIAL GROUP, et al.,       )
                                       )
9            Defendants.               )
    _____)

10

11

12

13      ** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

14

15            VIDEOTAPED DEPOSITION OF

16            VICTORIA CAMPBELL KNOWLES

17             Costa Mesa, California

18              July 31, 2020

19

20

21

22  ATKINSON-BAKER, INC.
    (800) 288-3376
23  www.depo.com

24  REPORTED BY:   MONICA T. VOGELBACHER, CSR No. 6406

25  FILE NO.:      AE0428C

# "PAGES REMOVED FOR BREVITY"

.  0.0

Atkinson-Baker, Inc.
www.depo.com

1     Q   So when you were a new associate, let's say in     10:07
2   2011-2012, what would you say your daily workload        10:08
3   consisted of?                                            10:08
4     A   At the time, I think I was actually a contract     10:08
5   attorney on 1099, I think.  So I was really more of an   10:08
6   assignment type of a basis.  I'd be assigned drafting    10:08
7   CLRA letters.  I'd be assigned drafting complaints,      10:08
8   drafting discovery, answering discovery.                 10:08
9           That was typical at the time.                    10:08
10    Q   In the time period of 2011 and 2012, how would     10:08
11  you say your workload was divided between, let's say,    10:08
12  CLRA cases and everything else?  You know, by percentage 10:08
13  maybe.                                                   10:08
14    A   I don't know.  I did defense work, too, so...      10:08
15          I don't know.  For CLRA cases, probably          10:09
16  60-ish percent.                                          10:09
17    Q   And what about CIPA cases?                         10:09
18    A   I believe I started working on those later.  I     10:09
19  don't know when those started specifically.  But I think 10:09
20  that started to probably share the percentage with CLRA  10:09
21  cases.  I don't know what the ratio would be, but that   10:09
22  would probably be about 70-ish percent altogether.       10:09
23    Q   Okay.  So once the firm started pursuing CIPA      10:09
24  cases, you'd say that your workload of combined CIPA and 10:09
25  CLRA cases was maybe 70 percent -                        10:09

# "PAGES REMOVED FOR BREVITY"

.  0.0

| | | |
|---|---|---|
| 1 | Q   Now, did you also do work in the Torres versus | 02:12 |
| 2 | Nutrisystem case? | 02:12 |
| 3 | A   Yes. | 02:12 |
| 4 | Q   Did you prepare the complaint in that case? | 02:12 |
| 5 | A   I think I did, yes. | 02:12 |
| 6 | Q   And where did you obtain the factual information | 02:12 |
| 7 | for that complaint? | 02:12 |
| 8 | A   I don't have a specific memory of what I did to | 02:12 |
| 9 | prepare that complaint. | 02:12 |
| 10 | Q   Do you recall speaking to Scott Ferrell about | 02:12 |
| 11 | that complaint? | 02:12 |
| 12 | A   I don't recall whether I did or didn't. | 02:12 |
| 13 | Q   Do you know if Scott Ferrell ever e-mailed you | 02:12 |
| 14 | information about the client in that case? | 02:12 |
| 15 | A   I don't remember, but it's -- it's likely. | 02:12 |
| 16 | Q   Now, was Callahan & Blaine co-counsel in that | 02:12 |
| 17 | case? | 02:13 |
| 18 | A   I believe they were. | 02:13 |
| 19 | Q   Did you communicate with them at all -- | 02:13 |
| 20 | A   I -- | 02:13 |
| 21 | Q   -- during that case? | 02:13 |
| 22 | A   I did not, no. | 02:13 |
| 23 | Q   And who did you communicate -- oh, I'm sorry. | 02:13 |
| 24 | You did not. | 02:13 |
| 25 | A   No, I did not. | 02:13 |

# "PAGES REMOVED FOR BREVITY"

.  0.0

1    BY MR. FURMAN:                                              03:50

2        Q    Are you familiar with the obligations imposed on   03:50

3    you by the licensure that you have in the state of          03:50

4    California?                                                 03:50

5            MR. DARNELL:  Objection, vague.                     03:50

6            MR. RIDDLES:  Join.                                 03:50

7            THE WITNESS:  Generally, am I aware that certain    03:50

8    rules and laws apply to me as an attorney?  Yes, I am       03:51

9    aware of that.                                              03:51

10   BY MR. FURMAN:                                              03:51

11       Q    Are you familiar with Federal Rule of Civil        03:51

12   Procedure 11?                                               03:51

13       A    Somewhat.  I don't know the text of it.            03:51

14       Q    So are you aware that that rule requires that      03:51

15   you do a reasonable investigation before you make           03:51

16   allegations in a complaint?                                 03:51

17       A    I'm unaware that's what the rule states.           03:51

18       Q    Okay.  Now, you said that you drafted the          03:51

19   complaint in the Nilon versus NIC action, right?            03:51

20       A    I think so, yeah.                                  03:51

21       Q    Have you ever spoken to Andrew Nilon?              03:51

22       A    No.                                                03:51

23       Q    Did you draft the CLRA letter in that case as      03:51

24   well?                                                       03:52

25       A    I don't remember specifically.  I may have.  It    03:52

Atkinson-Baker, Inc.
www.depo.com

1  might have also been Ryan Ferrell.  I can't remember for   03:52
2  that one, for that case.   03:52
3          (Deposition Exhibit 481 was marked for
4          identification by the court reporter
5          and attached hereto.)
6  BY MR. FURMAN:   03:52
7     Q   All right, so I've placed in front of you a   03:52
8  document I've marked as Exhibit 481.   03:52
9          Do you see that?   03:52
10    A   Yes.   03:53
11    Q   And in this document -- strike that.   03:53
12         This appears to be an e-mail from Scott Ferrell   03:53
13  to you on December 25th, 2011, right?   03:53
14    A   I don't know one way or the other about the   03:53
15  accuracy of the date, but, yes, it looks like it is an   03:53
16  e-mail from Scott Ferrell to me.   03:53
17    Q   And the e-mail says:   03:53
18         "Victoria, this product is water with   03:53
19         silver in it.  Can you send this   03:53
20         to" -- "can you send them a CLRA   03:53
21         letter?"   03:53
22         Do you see that?   03:53
23    A   Yes.   03:53
24    Q   Okay.  Does this refresh your memory as to   03:53
25  whether you're the one that prepared the CLRA letter   03:53

```
 1  related to Sovereign Silver?                              03:53
 2      A   I -- yes, I believe I prepared a CLRA letter for  03:53
 3  Sovereign Silver, yes.                                    03:53
 4      Q   And just for clarity, Sovereign Silver is the     03:53
 5  Natural-Immunogenics product --                           03:54
 6      A   I believe so.                                     03:54
 7      Q   -- that was at issue in the Nilon versus          03:54
 8  Natural-Immunogenics case?                                03:54
 9          Okay.                                             03:54
10      A   I believe so, yes.                                03:54
11      Q   Now, what information did you use to draft that   03:54
12  letter?                                                   03:54
13      A   I don't remember specifically.  I can tell you   03:54
14  about what my general practice would have been at the     03:54
15  time, but I don't remember specifically for this case.    03:54
16      Q   Does your CLRA letter come off of a template     03:54
17  that you use?                                             03:54
18      A   I don't think it was a template at the time, but 03:54
19  I believe I would use prior CLRA letters as a starting    03:54
20  point, I believe.                                         03:54
21      Q   Did you prepare that letter based on information  03:54
22  contained in this e-mail?                                 03:55
23      A   In part, likely, yes.                             03:55
24      Q   What other investigation did you do in preparing  03:55
25  the CLRA letter?                                          03:55
```

# "PAGES REMOVED FOR BREVITY"

.  0.0

1      I don't think I participated in the class cert     04:15

2  motion.  My recollection is that there was a late motion   04:15

3  to dismiss, I think, and I might have drafted something   04:15

4  for that.     04:15

5      And I know I was copied on or received     04:15

6  communications from opposing counsel in collection with   04:15

7  some of the other attorneys on the case, I believe.   04:15

8      Q   Did you ever prepare declarations to be filed in   04:15

9  that case?     04:16

10     A   I don't remember if I did or not.     04:16

11     Q   So you don't remember whether you prepared a     04:16

12  declaration for Andrew Nilon at any point in that case?   04:16

13     A   I don't remember if I did or not.     04:16

14     Q   Did you ever prepare a declaration for Giovanni     04:16

15  Sandoval?     04:16

16     A   I don't think so, but I don't remember.     04:16

17     Q   Did you ever speak with Giovanni Sandoval?     04:16

18     A   No.     04:16

19     Q   Did you ever speak with Ryan Ferrell about     04:16

20  Giovanni Sandoval?     04:16

21     A   I don't think so, no.     04:16

22     Q   Did you participate in meet and confers with     04:16

23  opposing counsel in that case?     04:16

24     A   "Participate" is a bit of a tricky word.     04:16

25      I don't remember if I spoke to opposing counsel   04:17

# "PAGES REMOVED FOR BREVITY"

.  0.0

Atkinson-Baker, Inc.
www.depo.com

```
 1    STATE OF CALIFORNIA          )
                                   : ss
 2    COUNTY OF LOS ANGELES        )

 3

 4            I, the undersigned, a Certified Shorthand

 5    Reporter of the State of California, do hereby certify:

 6            That the foregoing proceedings were taken before

 7    me at the time and place herein set forth; that any

 8    witnesses in the foregoing proceedings, prior to

 9    testifying, were placed under oath; that a verbatim

10    record of the proceedings was made by me using machine

11    shorthand which was thereafter transcribed under my

12    direction; further, that the foregoing is a true record

13    of the testimony given.

14            Before completion of the deposition, review of

15    the transcript [ ] was [X] was not requested.  If

16    requested, any changes made by the deponent (and provided

17    to the reporter) during the period allowed are appended

18    hereto.

19            I further certify that I am not interested in

20    the outcome of the action.

21            WITNESS my hand this date

22    August 18, 2020.

23            _____

24

25            MONICA T. VOGELBACHER, CSR No. 6406
```

# EXHIBIT "C"

# EXHIBIT "C"

**CALLAHAN & BLAINE, APLC**
Edward Susolik, Esq. (SBN 151081)
ES@callahan-law.com
Michael S. LeBoff, Esq. (SBN 204612)
Mleboff@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for NEWPORT TRIAL GROUP; SCOTT J. FERRELL; RYAN M. FERRELL; VICTORIA C. KNOWLES; DAVID REID and ANDREW LEE BASLOW

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., | **CASE NO. 8:15-cv-02034-JVS-JCG** |
| Plaintiff, | **DEFENDANT NEWPORT TRIAL GROUP'S RESPONSES TO PLAINTIFF NATURAL IMMUNOGENIC CORP.'S INTERROGATORIES [SET ONE]** |
| v. | |
| NEWPORT TRIAL GROUP, et al., | Judge:    Hon. James Selna |
| Defendants. | Dept.:     10C |
| | Complaint Filed: December 7, 2015 |
| | Trial Date: December 5, 2017 |

PROPOUNDING PARTY:      PLAINTIFF, NATURAL IMMUNOGENICS CORP

RESPONDING PARTY:      DEFENDANT, NEWPORT TRIAL GROUP

SET NUMBER:      One (1)

    Defendant NEWPORT TRIAL GROUP ("Defendant" or "Responding Party"), hereby responds as follows to the First Set of Interrogatories propounded by Plaintiff NATURAL IMMUNOGENICS CORP. ("Plaintiff" or "Propounding Party"):

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## **PRELIMINARY STATEMENT**

It should be noted that Defendant has not yet fully completed its investigation of the facts relating to this lawsuit.  Therefore, the statements made herein are based upon such information and documents as are presently available, and specifically known to Defendant and disclose only those facts and documents, which presently are available to Defendant.  It is anticipated that future independent investigation and legal research and analysis will make known the existence of additional facts and documents and will add further significance to the known facts and documents, all of which may lead to substantial additions to, and changes and variations of, the facts and documents set forth herein.

The following responses are given without prejudice to the right to produce evidence of any fact, which may later be recalled or discovered.  Defendant accordingly reserves its right to change any responses as additional facts are ascertained, documents are discovered, analyses are made, legal research is completed and the issues are framed.  The statements set forth below and documents produced are made in a good faith effort to supply as much relevant factual information and identify documents as possible, but in no way are prejudicial to Defendant's rights and interests, particularly in relation to future investigation, research, and analysis.

Based on the foregoing, the information set forth below is provided without representation, express or implied, as to the existence or nonexistence of other possibly responsive information.

## **RESPONSES TO INTERROGATORIES**

### **INTERROGATORY NO. 1:**

Identify every individual who served as a Tester plaintiff for you in a case involving claims under California Penal Code sections 632.7, and/or 637.2, and/or 632, and for each individual identified, what payments were made to them (i.e., from whom, date of payment, amount of payment), if any, and what form of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  payment was made to each.  If no monetary payment was made but a thing of value

2  given, please identify the thing of value, the date it was conveyed, and from whom it

3  was conveyed.

4  **RESPONSE TO INTERROGATORY NO. 1:**

5       Defendant objects on the grounds that the interrogatory is overly broad,

6  compound, and seeks confidential and privileged information that is not relevant to

7  any issue in this case, nor reasonably calculated to lead to the discovery of

8  admissible evidence.  Defendant further objects on the ground that the request is not

9  proportional to the needs of the case.  Defendant further objects on the ground that

10  the request goes beyond the permissible scope of discovery established at the

11  Scheduling Conference, particularly, the following:

12       THE COURT: Okay. One thing I'm concerned about is the

13       potential number of other lawsuits that you are going to

14       want to inquire into.

15       MR. ARHANGELSKY: Let me address that. Our

16       Amended Complaint is due tomorrow, and we intend to

17       substantially narrow the scope of our RICO allegations. I

18       believe in its current format our Amended Complaint will

19       inquire into about seven to eight specific cases. We are

20       reducing the number of RICO defendants.

21       The discovery taken with respect to those cases within

22       those cases is also narrow. We are not relitigating these

23       cases. We are looking only at recruitment, acquisition,

24       those types of aspects of the relationship early before the

25       cases are often even filed. So with that, we think our

26       Amended Complaint will be far more circumscribed

27       certainly imposing no greater burdens than many other

28       civil cases.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 3 -

1   THE COURT: Well, that sounds like a reasonable

2   limitation, seven or eight cases to explore at least initially.

3   (May 9, 2016 Transcript at 7:10-8:4).  Defendant further objects on the ground that

4   the request infringes on third-parties constitutional right to privacy, seeks

5   disclosures of confidential settlement agreements, terms and related

6   communications.

7

8   **INTERROGATORY NO. 2:**

9   Identify every individual who served as a Tester plaintiff for you in a case

10  involving California Business and Professions Code sections 17500 (FAL), and/or

11  17200 (UCL), and/or California Civil Code section 1750 (CLRA) claims, and for

12  each individual identified, what payment(s) were made to them (i.e., from whom,

13  date of payment, amount of payment), if any, and what form of payment was made

14  to each.  If no monetary payment was made but a thing of value given, please

15  identify the thing of value, the date it was conveyed, and from whom it was

16  conveyed.

17  **RESPONSE TO INTERROGATORY NO. 2:**

18  Defendant objects on the grounds that the interrogatory is overly broad,

19  compound, and seeks confidential and privileged information that is not relevant to

20  any issue in this case, nor reasonably calculated to lead to the discovery of

21  admissible evidence.  Defendant further objects on the ground that the request is not

22  proportional to the needs of the case.  Defendant further objects on the ground that

23  the request goes beyond the permissible scope of discovery established at the

24  Scheduling Conference, particularly, the following:

25  THE COURT: Okay. One thing I'm concerned about is the

26  potential number of other lawsuits that you are going to

27  want to inquire into.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 4 -

MR. ARHANGELSKY: Let me address that. Our Amended Complaint is due tomorrow, and we intend to substantially narrow the scope of our RICO allegations. I believe in its current format our Amended Complaint will inquire into about seven to eight specific cases. We are reducing the number of RICO defendants.

The discovery taken with respect to those cases within those cases is also narrow. We are not relitigating these cases. We are looking only at recruitment, acquisition, those types of aspects of the relationship early before the cases are often even filed. So with that, we think our Amended Complaint will be far more circumscribed certainly imposing no greater burdens than many other civil cases.

THE COURT: Well, that sounds like a reasonable limitation, seven or eight cases to explore at least initially.

(May 9, 2016 Transcript at 7:10-8:4).  Defendant further objects on the ground that the request infringes on third-parties constitutional right to privacy, seeks disclosures of confidential settlement agreements, terms and related communications.

**INTERROGATORY NO. 3:**

Identify every phone number used by NTG (including facsimile lines, direct lines to attorneys, paralegals, administrators, investigators, or any other employee or agent, or cellular lines) to communicate with NTG clients, potential clients, or opposing parties (including their attorney(s)), since January 1, 2010.

- 5 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   **RESPONSE TO INTERROGATORY NO. 3:**

2        Defendant objects on the grounds that the interrogatory is overly broad,

3   compound, and seeks confidential and privileged information that is not relevant to

4   any issue in this case, nor reasonably calculated to lead to the discovery of

5   admissible evidence.  Defendant further objects on the ground that the request is not

6   proportional to the needs of the case.  Furthermore, to the extent the request seeks

7   information that relates to cases or clients not at issued in the Second Amended

8   Complaint, the request goes beyond the permissible scope of discovery established

9   at the Scheduling Conference, particularly, the following:

10        THE COURT: Okay. One thing I'm concerned about is the

11        potential number of other lawsuits that you are going to

12        want to inquire into.

13        MR. ARHANGELSKY: Let me address that. Our

14        Amended Complaint is due tomorrow, and we intend to

15        substantially narrow the scope of our RICO allegations. I

16        believe in its current format our Amended Complaint will

17        inquire into about seven to eight specific cases. We are

18        reducing the number of RICO defendants.

19        The discovery taken with respect to those cases within

20        those cases is also narrow. We are not relitigating these

21        cases. We are looking only at recruitment, acquisition,

22        those types of aspects of the relationship early before the

23        cases are often even filed. So with that, we think our

24        Amended Complaint will be far more circumscribed

25        certainly imposing no greater burdens than many other

26        civil cases.

27        THE COURT: Well, that sounds like a reasonable

28        limitation, seven or eight cases to explore at least initially.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

NTG's Resp to NIC's ROGS Set 1

1  (May 9, 2016 Transcript at 7:10-8:4). Defendant further objects on the ground that

2  the request infringes on third-parties constitutional right to privacy.

3

4  **INTERROGATORY NO. 4:**

5  Identify every email address and the account information for same (i.e.,

6  account holder, service provider, dates of service) associated with NTG, its

7  attorneys, paralegals, administrators, investigators, or any other employee or agent,

8  that has been used since January 1, 2010.

9  **RESPONSE TO INTERROGATORY NO. 4:**

10  Defendant objects on the grounds that the interrogatory is overly broad,

11  compound, and seeks confidential and privileged information that is not relevant to

12  any issue in this case, nor reasonably calculated to lead to the discovery of

13  admissible evidence. Defendant further objects on the ground that the request is not

14  proportional to the needs of the case. Furthermore, to the extent the request seeks

15  information that relates to cases or clients not at issued in the Second Amended

16  Complaint, the request goes beyond the permissible scope of discovery established

17  at the Scheduling Conference, particularly, the following:

18  THE COURT: Okay. One thing I'm concerned about is the

19  potential number of other lawsuits that you are going to

20  want to inquire into.

21  MR. ARHANGELSKY: Let me address that. Our

22  Amended Complaint is due tomorrow, and we intend to

23  substantially narrow the scope of our RICO allegations. I

24  believe in its current format our Amended Complaint will

25  inquire into about seven to eight specific cases. We are

26  reducing the number of RICO defendants.

27  The discovery taken with respect to those cases within

28  those cases is also narrow. We are not relitigating these

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 7 -

cases. We are looking only at recruitment, acquisition,

those types of aspects of the relationship early before the

cases are often even filed. So with that, we think our

Amended Complaint will be far more circumscribed

certainly imposing no greater burdens than many other

civil cases.

THE COURT: Well, that sounds like a reasonable

limitation, seven or eight cases to explore at least initially.

(May 9, 2016 Transcript at 7:10-8:4).  Defendant further objects on the ground that the request infringes on third-parties constitutional right to privacy.

**INTERROGATORY NO. 5:**

Identify each instance of an NTG attorney communicating with Andrew Nilon prior to the filing of the original state court complaint in the Nilon v. Natural-Immunogenics action, and identify the date, time and medium (e.g., telephone, email, text message) of each communication responsive to this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant responds as follows:  Defendant does not believe that any NTG attorney communicated directly with Mr. Nilon prior to filing the original state court complaint in the Nilon v. Natural-Immunogenics act.  Defendant believes Andrew Baslow, who is not an attorney, communicated on behalf of Defendant with Mr. Nilon prior to the filing the state court lawsuit in the underlying matter.

**INTERROGATORY NO. 6:**

Identify all cases in which any lawyer employed by NTG or associated as co-counsel to NTG has been reprimanded, admonished, sanctioned, held in contempt, or convicted of a crime by any bar, any court, or any administrative agency and describe the circumstances of any such instances.

- 8 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**RESPONSE TO INTERROGATORY NO. 6:**

Defendant objects on the grounds that the interrogatory is overly broad, compound, and seeks confidential and privileged information that is not relevant to any issue in this case, nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects on the ground that the request is not proportional to the needs of the case. Furthermore, to the extent the request seeks information that relates to cases or clients not at issue in the Second Amended Complaint, the request goes beyond the permissible scope of discovery established at the Scheduling Conference, particularly, the following:

> THE COURT: Okay. One thing I'm concerned about is the potential number of other lawsuits that you are going to want to inquire into.
>
> MR. ARHANGELSKY: Let me address that. Our Amended Complaint is due tomorrow, and we intend to substantially narrow the scope of our RICO allegations. I believe in its current format our Amended Complaint will inquire into about seven to eight specific cases. We are reducing the number of RICO defendants.
>
> The discovery taken with respect to those cases within those cases is also narrow. We are not relitigating these cases. We are looking only at recruitment, acquisition, those types of aspects of the relationship early before the cases are often even filed. So with that, we think our Amended Complaint will be far more circumscribed certainly imposing no greater burdens than many other civil cases.
>
> THE COURT: Well, that sounds like a reasonable limitation, seven or eight cases to explore at least initially.

NTG's Resp to NIC's ROGS Set 1

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   (May 9, 2016 Transcript at 7:10-8:4). Defendant further objects to the extent the

2   interrogatory could be interpreted to apply to any sanctions, reprimands,

3   admonishments, contempt findings or conviction by any NTG attorney prior to or

4   after their employment with NTG, or any NTG co-counsel in any matter in which

5   they were not co-counsel to NTG. Defendant further objects to the extent the

6   request requires Defendant obtain information from individuals no longer affiliated

7   with NTG. Defendant further objects on the ground that the term "admonished" is

8   vague and ambiguous, and therefore, will exclude admonishments from any

9   response. Defendant further objects on the ground that the term "reprimanded" is

10  vague and ambiguous, and therefore, will limit its response only to formal

11  reprimands. Defendant further objects to the extent it requires the responding party

12  to review every docket of every case NTG has been involved with over the past 7.5

13  years, and NTG declines to undertake that unreasonable burden. Subject to and

14  without waiving the above, Defendant responds as follows: Except as noted below,

15  NTG does not believe that any attorney was sanctioned, reprimanded, held in

16  contempt, or convicted of a crime in any of the eight matters identified in the

17  Second Amended Complaint; however, to the extent any order could be construed as

18  a sanction or reprimand, the order would be available from the Court and is equally

19  available to Plaintiff.. Defendant David Reid was formally reprimanded in the

20  present matter. Plaintiff is aware of the circumstances of such reprimand so there is

21  no need to restate the circumstances in this response. On or about August 11, 2014,

22  Defendants Ryan Ferrell and Scott Ferrell were sanctioned $5,053.90 in the

23  underlying case because Mr. Nilon failed to attend a deposition in May 2014. To

24  the best of Defendant's present recollection, no NTG lawyer has been held in

25  contempt in any matter during the relevant time period. To the best of Defendant's

26  present recollection, no NTG lawyer has been disciplined by any state bar or other

27  administrative agency during the relevant time period. To the best of Defendant's

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 10 -

1  present recollection, no NTG lawyer has been convicted of a crime relating to the

2  practice of law during the relevant time period.

3

4  **INTERROGATORY NO. 7:**

5       Identify the date, time, location and participants for all in-person

6  communications between You and the following individuals:

7       • Andrew Nilon;

8       • Giovanni Sandoval;

9       • Sam Schoonover;

10      • Taylor Demulder;

11      • Sam Pfleg;

12      • Matthew Dronkers;

13      • Raquel Torres; and

14      • Dan Bobba.

15  **RESPONSE TO INTERROGATORY NO. 7:**

16      Defendant objects on the grounds that the interrogatory is overly broad,

17  compound, and seeks confidential and privileged information that is not relevant to

18  any issue in this case, nor reasonably calculated to lead to the discovery of

19  admissible evidence.  Defendant further objects on the ground that the request is not

20  proportional to the needs of the case.  Furthermore, because this interrogatory

21  contains eight distinct subparts, Defendant will consider this interrogatory to be

22  eight separate interrogatories to count against the total number of interrogatories

23  Plaintiff is permitted to propound in this case. See Fed.R.Civ.Proc. 33 1993

24  Advisory Committee Notes ("Parties cannot evade this presumptive limitation

25  through the device of joining as 'subparts' questions that seek information about

26  discrete separate subjects."); Kendall v. GES Exposition Servs., 174 F.R.D. 684,

27  685-686 (D. Nev. 1997) ("[D]iscrete or separate questions should be counted as

28  separate interrogatories, notwithstanding they are joined by a conjunctive word and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 11 -

1    may be related."). Defendant further objects to the extent the request requires

2    Defendant to identify every possible in person meeting over a seven year period, and

3    Defendants do not maintain records that would record the existence of each in

4    person meeting. Defendant's response is limited to information in its present

5    recollection as well as its review of readily available information. Defendant further

6    objects on the ground the term "in person" meeting is vague and ambiguous.

7    Defendant understands that term to refer only to live, face-to-face meetings, and is

8    excluding from its response, any written or telephonic communications. Subject to

9    and without waiving the above, Defendant responds as follows:

10       **Andrew Nilon:** Andrew Baslow met with Mr. Nilon in person at a Starbucks

11   in Newport Beach on or about March 2, 2012. Responding party cannot recall any

12   additional "in-person" meetings with Mr. Nilon; however, discovery and

13   investigation are ongoing.

14       **Giovanni Sandoval:** Ryan Ferrell recalls several in person meetings with

15   Mr. Sandoval, but cannot recall the specific dates and times of those meetings.

16   Defendant recalls meeting with Mr. Sandoval in January 2014. Defendant also met

17   with Mr. Sandoval in April/May 2014. Defendant recalls meeting with Mr.

18   Sandoval in the Fall of 2014. Defendant recalls meeting with Mr. Sandoval in the

19   Winter of 2015. Defendant cannot recall the exact location of each of the above-

20   described meetings, but believes that each took place at a mall in or near El Cajon,

21   California. Finally, Defendant recalls meeting with Mr. Sandoval on April 19,

22   2015. That meeting took place at a hotel in Irvine, California. Defendant also

23   attended the deposition of Mr. Sandoval on April 20, 2015. In total, Defendant

24   believes that he had six to eight meetings with Mr. Sandoval in connection with the

25   prior lawsuit, although it is possible that there were additional meetings that

26   Defendant cannot presently recall. Defendants also recalls meeting with Mr.

27   Sandoval two or three times in and around December 2015. Those meetings took

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 12 -

1   place in or around Phoenix, Arizona.  Defendant also recalls meeting with Mr.

2   Sandoval on or about February 17, 2016 in Yuma, Arizona.

3       **Sam Schoonover:**  Andrew Baslow met Mr. Schoonover at a party on March

4   17, 2012 in Yorba Linda.  The two did not discuss Newport Trial Group or anything

5   related to any cases or disputes.  Responding party cannot recall any additional "in-

6   person" meetings with Mr. Schoonover; however, discovery and investigation are

7   ongoing.

8       **Taylor Demulder:**  Andrew Baslow met with Mr. Demulder in Las Vegas.

9   Defendant believes that meeting was on or about January 10, 2014.  David Reid met

10  Taylor Demulder on May 25, 2016 in connection with Mr. Demulder's deposition in

11  the lawsuit that Carter-Reed filed against Mr. Demulder.  The deposition lasted

12  approximately 2½  hours and Mr. Reid met with Mr. Demulder privately for

13  approximately thirty minutes after the conclusion of the deposition.  Responding

14  party cannot recall any additional "in-person" meetings with Mr. Demulder;

15  however, discovery and investigation are ongoing.

16      **Sam Pfleg:**  Defendant does not recall any "in-person" meetings with Mr.

17  Pfleg; however, discovery and investigation are ongoing.

18      **Matthew Dronkers:**  Defendant does not recall any "in-person" meetings

19  with Mr. Dronkers; however, discovery and investigation are ongoing.

20      **Raquel Torres:**  Scott Ferrell had a brief in-person meeting with Ms. Torres

21  prior to her deposition on February 20, 2013.  James Hardin, who is no longer

22  affiliated with NTG, attended the deposition of Ms. Torres on February 22, 2013

23  and would have met with Ms. Torres prior to the deposition.  Defendant does not

24  recall any other "in-person" meetings with Ms. Torres; however, discovery and

25  investigation are ongoing.

26      **Dan Bobba:**  Ryan Ferrell met with Mr. Bobba on or about September 5,

27  2010 in San Jose, California.  Wynn Ferrell was also present at that meeting on

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 13 -

1  behalf of Newport Trial Group.  Defendant does not recall any other "in-person"

2  meetings with Mr. Bobba; however, discovery and investigation are ongoing.

3

4  **INTERROGATORY NO. 8:**

5       For each case listed, identify every attorney who performed work on the case

6  or entered a time entry in the case:

7     • Nilon v. Natural-Immunogenics Corp., No. 3:12-cv-930-LAB;

8     • Nilon v. Chromadex, No. 56-2013-00436790-CU-MT-VTA (Sup. Ct.

9       Ventura Cnty. 2013);

10    • Schoonover v. Himalaya Drug Co., No. 12-cv-1782 (S.D. Cal. July 19,

11      2012);

12    • Dronkers v. Kiss My Face, LLC, No. 3:12-01151-JAH (S.D. Cal. May

13      11, 2012);

14    • Sam Pfleg v. Nature's Way Products, Inc., No. 37-2012-0051979-CU-

15      MT-NC (Sup. Ct. San Diego Cnty. 2012);

16    • Torres v. Nutrisystem Inc., et al., No. 12-cv-1854 (C.D. Cal. 2013);

17      and,

18    • Morales, et al. v. Magna, Inc., et al., No. 3:10-cv-1601-EDL (N.D. Cal.

19      filed Apr. 14, 2010).

20  **RESPONSE TO INTERROGATORY NO. 8:**

21       Defendant objects on the grounds that the interrogatory is overly broad,

22  compound, and seeks confidential and privileged information that is not relevant to

23  any issue in this case, nor reasonably calculated to lead to the discovery of

24  admissible evidence.  Defendant further objects on the ground that the request is not

25  proportional to the needs of the case.  Furthermore, because this interrogatory

26  contains seven distinct subparts, Defendant will consider this interrogatory to be

27  seven separate interrogatories to count against the total number of interrogatories

28  Plaintiff is permitted to propound in this case.  See Fed.R.Civ.Proc. 33 1993

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 14 -

Advisory Committee Notes ("Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects."); <u>Kendall v. GES Exposition Servs.</u>, 174 F.R.D. 684, 685-686 (D. Nev. 1997) ("[D]iscrete or separate questions should be counted as separate interrogatories, notwithstanding they are joined by a conjunctive word and may be related."). Defendant did not track time for the seven matters identified above, and objects to the extent it requires Defendant to do an exhaustive review of the entire case file to determine all attorneys who performed work on the case. Defendant's response is based on its present recollection as well as its review of files readily ascertainable. Defendant further objects to the term "performed work on the case," as vague and ambiguous. Defendant further objects to the extent the request requires Defendant to identify attorneys at other law firms who may have also performed work on each of the cases referenced below, and therefore, limits its response to NTG Defendants. Subject to and without waiving the above, Defendant responds as follows:

**Nilon v. Natural-Immunogenics Corp., No. 3:12-cv-930-LAB:** Scott Ferrell, Ryan Ferrell, Victoria Knowles, Steven Telles, David Reid and Richard Hikida.

**Nilon v. Chromadex, No. 56-2013-00436790-CU-MT-VTA (Sup. Ct. Ventura Cnty. 2013):** Scott Ferrell, David Reid and Victoria Knowles.

**Schoonover v. Himalaya Drug Co., No. 12-cv-1782 (S.D. Cal. July 19, 2012):** Scott Ferrell, Victoria Knowles, David Reid

**Dronkers v. Kiss My Face, LLC, No. 3:12-01151-JAH (S.D. Cal. May 11, 2012):** Scott Ferrell and Victoria Knowles.

**Sam Pfleg v. Nature's Way Products, Inc., No. 37-2012-0051979-CU-MT-NC (Sup. Ct. San Diego Cnty. 2012):** Scott Ferrell, Ryan Ferrell, Victoria Knowles and Steven Telles.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 15 -

**Torres v. Nutrisystem Inc., et al., No. 12-cv-1854 (C.D. Cal. 2013):**  Scott Ferrell, Ryan Ferrell, Victoria Knowles, Steven Telles, David Reid, Richard Hikida, and James Hardin.

**Morales, et al. v. Magna, Inc., et al., No. 3:10-cv-1601-EDL (N.D. Cal. filed Apr. 14, 2010):**  Scott Ferrell, Roger Borg, Michael Velarde and Ryan Ferrell.

**INTERROGATORY NO. 9:**

For each case listed, identify the amount of revenue that you received (if any) in connection with any settlement or judgment obtained, and the amount paid (if any) to any plaintiff associated with the listed case(s):

- Nilon v. Natural-Immunogenics Corp., No. 3:12-cv-930-LAB;
- Nilon v. Chromadex, No. 56-2013-00436790-CU-MT-VTA (Sup. Ct. Ventura Cnty. 2013);
- Schoonover v. Himalaya Drug Co., No. 12-cv-1782 (S.D. Cal. July 19, 2012);
- Dronkers v. Kiss My Face, LLC, No. 3:12-01151-JAH (S.D. Cal. May 11, 2012);
- Sam Pfleg v. Nature's Way Products, Inc., No. 37-2012-0051979-CU-MT-NC (Sup. Ct. San Diego Cnty. 2012);
- Torres v. Nutrisystem Inc., et al., No. 12-cv-1854 (C.D. Cal. 2013); and,
- Morales, et al. v. Magna, Inc., et al., No. 3:10-cv-1601-EDL (N.D. Cal. filed Apr. 14, 2010).

**RESPONSE TO INTERROGATORY NO. 9**

Defendant objects on the grounds that the interrogatory is overly broad, compound, and seeks confidential and privileged information that is not relevant to any issue in this case, nor reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, because this interrogatory contains seven

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   distinct subparts, Defendant will consider this interrogatory to be eight separate

2   interrogatories to count against the total number of interrogatories Plaintiff is

3   permitted to propound in this case. <u>See</u> Fed.R.Civ.Proc. 33 1993 Advisory

4   Committee Notes ("Parties cannot evade this presumptive limitation through the

5   device of joining as 'subparts' questions that seek information about discrete

6   separate subjects."); <u>Kendall v. GES Exposition Servs.</u>, 174 F.R.D. 684, 685-686

7   (D. Nev. 1997) ("[D]iscrete or separate questions should be counted as separate

8   interrogatories, notwithstanding they are joined by a conjunctive word and may be

9   related."). Defendant further objects to the extent requested information is subject

10  to a confidentiality provision. Subject to and without waiving the above, Defendant

11  responds as follows:

12      **Nilon v. Natural-Immunogenics Corp., No. 3:12-cv-930-LAB:** Defendant

13  did not receive any revenue in connection with this matter. Defendant's clients,

14  Andrew Nilon and Giovanni Sandoval, were not paid any money in connection with

15  this matter.

16

17      **RESPONSE CONTINUED ON NEXT PAGE**

18

19

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 17 -

<u>**CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER**</u>

**Nilon v. Chromadex, No. 56-2013-00436790-CU-MT-VTA (Sup. Ct. Ventura Cnty. 2013):** Mr. Nilon was not paid any money in connection with the lawsuit which was dismissed without prejudice prior to any settlement being reached. Mr. Nilon settled his dispute with Chromadex for $8,500. Mr. Nilon received $1,000 and the remainder was paid to Newport Trial Group.

**Schoonover v. Himalaya Drug Co., No. 12-cv-1782 (S.D. Cal. July 19, 2012):** This matter settled for $17,500. Mr. Schoonover and a second plaintiff, Randall Harris, received $2,000 each. The remaining $13,500 was paid to Newport Trial Group.

**Dronkers v. Kiss My Face, LLC, No. 3:12-01151-JAH (S.D. Cal. May 11, 2012):** Newport Trial Group received $5,138.05 as part of the settlement of this matter. Responding party believes that Mr. Dronker's portion of the settlement payment was sent to him by co-counsel, Kirtland & Packard. Defendant believes that Mr. Dronkers received $1,500.

**Sam Pfleg v. Nature's Way Products, Inc., No. 37-2012-0051979-CU-MT-NC (Sup. Ct. San Diego Cnty. 2012):** Mr. Pfleg settled his dispute with Nature's Way for $62,000. Mr. Pfleg received $2,000, and the remainder was paid to Newport Trial Group.

**Torres v. Nutrisystem Inc., et al., No. 12-cv-1854 (C.D. Cal. 2013):** Ms. Torres settled her dispute with Nutrisystem for $5,000. MS. Torres received $2,000 and the remainder was paid to Newport Trial Group.

**Morales, et al. v. Magna, Inc., et al., No. 3:10-cv-1601-EDL (N.D. Cal. filed Apr. 14, 2010):** Because this case was resolved nearly six years ago, Defendant has been unable to locate its entire file on this matter. Nevertheless, Defendant believes that it received $1,000 as part of a settlement of the case, and the entirety of that amount may have been paid to Mr. Bobba.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Dated:  July 7, 2016

CALLAHAN & BLAINE, APLC

By:  */s/ Michael LeBoff*
Edward Susolik
Michael S. LeBoff
Attorneys for NEWPORT TRIAL GROUP; SCOTT J. FERRELL; RYAN M. FERRELL; VICTORIA C. KNOWLES; DAVID REID and ANDREW LEE BASLOW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 19 -

## VERIFICATION

I, Scott Ferrell, am a partner at Newport Trial Group, and am authorized to sign this declaration on its behalf. I have reviewed the foregoing responses to Defendant Newport Trial Group's Responses To Plaintiff Natural Immunogenic Corp.'s Interrogatories [Set One]. I declare under penalty of perjury of the laws of the United States of America, that, while I do not have personal knowledge of all facts stated in response to these interrogatories, to the best of my knowledge, the responses to the interrogatories are accurate. Executed this ___ day of July 2016 at Newport Beach, California.

Scott Ferrell

- 19 -

1

PROOF OF SERVICE

2

(CODE CIV. PROC. § 1013A(3))
STATE OF CALIFORNIA, COUNTY OF ORANGE

3

4

I am employed in the County of Orange, State of California.  I am over the age of 18 years and am not a party to the within action; my business address is **3 Hutton Centre Drive, Ninth Floor, Santa Ana, California 92707**.

5

6

On July 7, 2016, I served the following document(s) described as **DEFENDANT NEWPORT TRIAL GROUP'S RESPONSES TO PLAINTIFF NATURAL IMMUNOGENIC CORP.'S  INTERROGATORIES [SET ONE]**

7

8

on the interested parties in this action by placing: ☐ the original  ☐ a true copy thereof enclosed in a sealed envelope addressed as follows:

9

Please see attached "Service List".

10

☒   **BY MAIL:**  I deposited such envelope in the mail at Santa Ana, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

11

12

13

14

☐   **BY PERSONAL SERVICE:**  I caused such envelope to be hand delivered by Nationwide Legal to the addressees below.

15

16

☐   **BY FEDERAL EXPRESS**:  I deposited such envelopes at Santa Ana, California for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices.  I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by Federal Express.  They are deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.

17

18

19

☐   **BY FAX TRANSMISSION:**  I transmitted the foregoing document by facsimile to the party(s) identified above by using the facsimile number(s) indicated.  Said transmission(s) were verified as complete and without error.

20

21

☐   **BY EMAIL:**  I transmitted the foregoing documents by electronic mail to the party(s) identified on the attached service list by using the electronic mail as indicated.  Said electronic mail was verified as complete and without error.

22

23

24

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

25

26

Executed on July 7, 2016, at Santa Ana, California.

27

28

MARIA MARTINEZ

- 21 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## SERVICE LIST

### Natural Immunogenics  v.  Newport Trial Group
### Case No.: 8:15-cv-02034-JVS (JCG)

| | |
|---|---|
| Peter A. Arhangelsky | ***Attorneys for Plaintiff*** |
| Eric J. Awerbuch | |
| Joshua S. Furman | |
| **EMORD & ASSOCIATES, P.C.** | |
| 3210 S. Gilbert Road, Suite 4 | |
| Chandler, AZ 85286 | |
| Phone: (602) 388-8899 | |
| Fax: (602) 393-4361 | |
| parhangelsky@emord.com | |
| eawerbuch@emord.com | |
| jfurman@emord.com | |
| | |
| Leah M Kaufman | ***Attorneys for Plaintiff*** |
| **LMK STRATEGIES AND** | |
| **RESEARCH** | |
| 1001 North Ross Street | |
| Santa Ana, CA 92701 | |
| 949-939-1351 | |
| leah@leahmkaufman.com | |
| | |
| Gillian L. Wade | ***Attorneys for Defendants*** |
| Marc Cataneda | *Andrew Nilon, Giovanni Sandoval, Sam* |
| Mayo L. Makarczyk | *Schoonover, Matthew Dronkers, Taylor* |
| Sara D. Avila | *Demulder, Sam Pfleg,* |
| **MILSTEIN ADELMAN JACKSON** | |
| **FAIRCHILD AND WADE LLP** | |
| 10250 Constellation Boulevard | |
| Suite 1400 | |
| Los Angeles, CA 90067 | |
| Tel: (310) 396-9600 | |
| Fax: (310) 396-9635 | |
| gwade@majfw.com | |
| mcastaneda@majfw.com | |
| savila@majfw.com | |
| mmakarczyk@majfw.com | |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 22 -

NTG's Resp to NIC's ROGS Set 1

# EXHIBIT "D"

# EXHIBIT "D"

Message

| | |
|---|---|
| **From:** | Scott Ferrell [/O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=SFERRELL] |
| **Sent:** | 12/25/2011 7:04:26 PM |
| **To:** | Victoria Knowles [vknowles@trialnewport.com] |
| **CC:** | Carla Wise [carla@trialnewport.com] |
| **Subject:** | FW: Sovereign Silver |
| **Attachments:** | IMG00251-20111224-1709.jpg |

Victoria:

This product is water with silver in it.  Can you send them a CLRA letter?  They claim it will offer immune support, safeguard human health, but silver is not bio-available.

Carla: Will you update mdb, seasoning, etc.?

Thanks,

EXH_481
Plaintiff
Victoria Knowle
07/31/2020(JF

**CONFIDENTIAL**

NTG022158

Disco ID 9958-2

CONFIDENTIAL



# EXHIBIT "E"

# EXHIBIT "E"

Message
_____

| From: | Victoria Knowles [/O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=VKNOWLES] |
| --- | --- |
| Sent: | 12/27/2011 9:36:40 AM |
| To: | Scott Ferrell [sferrell@trialnewport.com] |
| CC: | Carla Wise [carla@trialnewport.com] |
| Subject: | RE: Sovereign Silver |
| Attachments: | CLRA breach of warranty letter - Sovereign Silver.doc |


Hi Scott,

Attached please find a draft of the CLRA letter for Sovereign Silver.  Please review and let me know if there are any necessary revisions.

Thanks,
VIC

-----Original Message-----
From: Scott Ferrell
Sent: Sunday, December 25, 2011 7:04 PM
To: Victoria Knowles
Cc: Carla Wise
Subject: FW: Sovereign Silver

Victoria:

This product is water with silver in it.  Can you send them a CLRA letter?  They claim it will offer immune support, safeguard human health, but silver is not bio-available.

Carla: Will you update mdb, seasoning, etc.?

Thanks,

EXH_482
Plaintiff
Victoria Knowles
07/31/2020(JF)

CONFIDENTIAL

# EXHIBIT "F"

# EXHIBIT "F"

Case 8:15-cv-02034-JVS-JCG   Document 1106-1   Filed 04/26/21   Page 68 of 73   Page ID
#74062
Case 3:12-cv-00930-LAB-BGS   Document 223-3   Filed 08/25/14   Page 2 of 3

# NEWPORT
## TRIAL GROUP
*A Professional Corporation*

895 Dove Street, Suite 425
Newport Beach, CA 92660
Phone(949) 706-6464
Fax (949) 706-6469
www.trialnewport.com

December 27, 2011

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Natural-Immunogenics Corp.
3265 W. McNab Rd.
Pompano Beach, FL 33069
Attn: Legal Department

Re:     *Violations of California Consumer Protection Laws and Breach of Warranties*

Dear Sir or Madam:

I am writing on behalf of an individual California consumer, as well as a putative class of similarly situated consumers, to advise you that we believe you are violating the California Consumer Legal Remedies Act.

Specifically, you market "Sovereign Silver" as a colloidal silver hydrosol dietary supplement that has the ability to provide "immune support." You claim that silver has the ability to support consumers' immune systems based on "silver's well-established biological catalytic activity which may excite higher life forms into maximal states of immune function when the silver is in an oligodynamic state" and because "its physical characteristics [] establishes that it possesses the greatest electrical and thermal conductivity of all metals while possessing the lowest contact resistance." You further claim that since silver has such diverse and important uses in such fields as "medicine and dentistry," "sanitation, hygiene and water purification," "electrical engineering," and "weather management," silver likewise must have powers to provide immune support. Your logic is attenuated at best and at worst, completely false and misleading. Our client relied on your assertions and did not experience any of the promised benefits. In fact, your product was completely worthless to her.

The preceding claims made by you on your product labeling and website are false and misleading, and are not supported by competent and reliable scientific evidence. In reality, Sovereign Silver's alleged ability to provide immune support has never been scientifically substantiated. Further, colloidal silver is not bio-available so human ingestion cannot provide the benefits promised. Therefore, your product does not provide benefits though digestion or by

NTG003539

Case 8:15-cv-02034-JVS-JCG   Document 1106-1   Filed 04/26/21   Page 69 of 73   Page ID
Case 3:12-cv-00930-LAB-BGS   Document 40-3   Filed 08/25/14   Page 3 of 3
#:74063

December 27, 2011
Page 2

its mere presence in the human system. What is more, colloidal silver may in fact be *dangerous and undesirable for human consumption*: "Chronic ingestion or inhalation of silver preparations (especially colloidal silver) can lead to deposition of silver metal/silver sulphide particles in the skin (argyria), eye (argyrosis) and other organs." A.B. Lansdown, "Silver in health care: antimicrobial effects and safety in use," <u>Curr. Probl. Dermatol.</u> (2006). In sum, the manner and presentation of your marketing leaves consumers with a misleading overall net impression regarding Sovereign Silver.

As such, we believe that you are advertising Sovereign Silver as having characteristics, uses and benefits that it does not have in violation of the Consumer Legal Remedies Act. We further believe that the aforementioned representations regarding the purported benefits, qualities and characteristics of Sovereign Silver constitutes: (1) breach of express warranty; (2) breach of the implied warranty of fitness for a particular purpose; (3) negligent misrepresentation; (4) a violation of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*); and (5) a violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*).

We respectfully request that you agree to irrevocably stop all false and misleading advertising and labeling of this and similar products marketed and that you provide all consumers who have purchased the product with a full refund. If you conform your activities to comply with California law, we will take no further action in this matter. We invite you to contact us to further discuss and resolve this matter.

Very truly yours,

NEWPORT TRIAL GROUP
A Professional Corporation

Scott J. Ferrell

SJF:cl

# EXHIBIT "G"

# EXHIBIT "G"

Message

| From: | Scott Ferrell [/O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=SFERRELL] |
|---|---|
| Sent: | 1/21/2012 11:06:59 AM |
| To: | Victoria Knowles [vknowles@trialnewport.com] |
| Subject: | Complaints |

Vic:

Will you draft complaints in;

1. ████████
2. Soverien Silver
3.
4. ████████████████████████
5.
6.

I will send you client and venue info!

Thx :-)

EXH_483
Plaintiff
Victoria Knowles
07/31/2020(JF)

CONFIDENTIAL

1

## CERTIFICATE OF SERVICE

2

3      I am employed in the County of Orange, State of California.  I am over the age
of 18 and not a party to the within action.  My business address is 20320 S.W. Birch
4      Street, Second Floor, Newport Beach, California 92660.

5      On April 26, 2021, I served the within document(s) described as:

6   **DECLARATION OF KYLE A. RIDDLES IN SUPPORT OF DEFENDANT**
**VICTORIA KNOWLES' MOTION FOR SUMMARY JUDGMENT**
7

8      on the interested parties in this action as stated on the attached mailing list.

9   [X]   (BY CM/ECF) I hereby certify that I have caused the foregoing to be served
upon counsel of record and all interested parties through the Court's electronic
10      service system.

11      I certify that I am employed in the office of a member of the bar of this Court
at whose direction the service was made.

12
       Executed on April 26, 2021, at Newport Beach, California.
13
       I declare under penalty of perjury that the foregoing is true and correct.
14

15   _____          _____
       Laurinda L. Palacio                    /s/ Laurinda L. Palacio
16      (Type or print name)                    (Signature)

17

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

1

1601.116  4828-1753-6181.1

## Natural-Immunogenics Corp. v. Newport Trial Group, et al

### Case No. 8:15-cv-02034-JVS-JCG

**BWB&O CLIENT:**      Ryan Ferrell; Victoria Knowles; Dave Reid; and Andrew Lee Baslow

**BWB&O FILE NO.:**      1601.116

### SERVICE LIST

**James M Sabovich**
jsabovich@callahan-law.com
mkingsbury@callahan-law.com

**Peter A Arhangelsky**
parhangelsky@emord.com

**Joshua S Furman**
jfurman@emord.com

**Kristopher Price Diulio**
kdiulio@forddiulio.com

**Brendan M Ford**
bford@forddiulio.com

**Leah M Kaufman**
leah@leahmkaufman.com

**Rosalyn Chapman (Ret.)**
rchapman@jamsadr.com

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

1601.116  4828-1753-6181.1