1 **CALLAHAN & BLAINE, APLC**
Edward Susolik (SBN 151081)
2 Esusolik@callahan-law.com
David J. Darnell (SBN 210166)
3 Ddarnell@callahan-law.com
James M. Sabovich (SBN 218488)
4 jsabovich@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
5 Santa Ana, California 92707
Telephone: (714) 241-4444
6 Facsimile: (714) 241-4445

7 Attorneys for Defendants NEWPORT TRIAL GROUP
and SCOTT J. FERRELL

8

9 **UNITED STATES DISTRICT COURT**

10 **CENTRAL DISTRICT OF CALIFORNIA**

11 **SOUTHERN DIVISION**

12 NATURAL IMMUNOGENICS          CASE NO.   8:15-cv-02034-JVS-JCG
CORP., a Florida corporation,
13                               **OPPOSITION OF DEFENDANTS**
        Plaintiff,              **NEWPORT TRIAL GROUP AND**
14                               **SCOTT FERRELL TO NIC'S**
                                **MOTION FOR PARTIAL**
    v.                          **SUMMARY ADJUDICATION ON**
15                               **COUNT II (RICO)**
NEWPORT TRIAL GROUP, et al.,
16
        Defendants.
17                               Judge:        Hon. James V. Selna

18                               Hearing Date: June 14, 2021
                                Hearing Time: 1:30 p.m.
19                               Courtroom:    10C

20

21                               Complaint Filed: December 7, 2015
                                Trial Date:      November 1, 2021
22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

1

# TABLE OF CONTENTS

2
**Page**

3   I.   INTRODUCTION ......................................................................... 1

4   II.  FACTUAL BACKGROUND .......................................................... 3

5   III. NIC HAS NO STANDING TO SEEK PARTIAL SUMMARY
         ADJUDICATION BASED ON PREDICATE ACTS HAVING
6        NOTHING TO DO WITH NIC ...................................................... 4

7   IV.  GENUINE ISSUES OF FACT PRECLUDE SUMMARY
         JUDGMENT ON ANY RICO ELEMENT.......................................... 7

8
         A.   Material Issues of Fact Exist as to the Application of *Noerr-*
9             *Pennington* Immunity, which Precludes Summary Adjudication
              of Any RICO Element.......................................................... 8

10
              1.   NIC Has Not Shown that the CIPA Cases Lacked Probable
11                 Cause ....................................................................... 13

12            2.   NIC Has Not Shown that the Nature's Way Case Lacked
                   Probable Cause ......................................................... 17
13
              3.   NIC Has Not Shown that Each of the Four Predicate
14                 Matters Involving Strataluz Were Objectively Baseless.......... 20

15                 a.   The Evidence Shows Strataluz Was Founded as a
                        Legitimate Health Products Company ..................... 20
16
         B.   NIC Has Not Proven Intent for Any Predicate Act, Which
17            Precludes a Finding on the RICO Elements of Conduct, Pattern,
              and Racketeering Activity.................................................... 25

18
              1.   CIPA Cases ............................................................... 27
19
              2.   Nature's Way Case ..................................................... 28
20
              3.   NIC Has Not Proven Intent to Deceive and Cheat With
21                 Regard to the Strataluz Demand Letters.......................... 29

22       C.   Material Issues of Fact Preclude a Finding of a RICO Enterprise ..... 29

23       D.   NIC Cannot Show a RICO Pattern Because Strataluz Demand
              Letters Are Unrelated to Other Predicate Acts .................... 29
24
    V.   CONCLUSION ........................................................................ 30
25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- i -

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
   46 F. Supp. 3d 999 (C.D. Cal. 2014) ............................................................. 14, 15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .......................................................................................... 1, 7

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ............................................................................................... 5

*Blair v. City of Pomona*,
   223 F.3d 1074 (9th Cir. 2000) ............................................................................... 8

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
   2016 U.S. Dist. LEXIS 84756 (S.D. Cal. June 29, 2016) ................................... 15

*Boyle v. United States*,
   556 U.S. 938 (2009) ............................................................................................. 29

*California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*,
   669 F. Supp. 2d 1152 (C.D. Cal. 2009) ............................................................... 12

*Camelio v. American Federation*,
   137 F.3d 666 (1st Cir. 1998) ................................................................................. 5

*Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*,
   528 F.3d 1001 (8th Cir. 2008) ............................................................................... 8

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ............................................................................... 18

*Dice Corp. v. Bold Techs. Ltd.*,
   No. 11-CV-13578, 2014 WL 2763618 (E.D. Mich. June 18, 2014) ..................... 9

*In re EPD Inv. Co., LLC*,
   No. BR 12-02424 ER, 2019 WL 4233575 (C.D. Cal. June 4, 2019) .................... 7

*Flanagan v. Flanagan*,
   27 Cal. 4th 766 (2002) ......................................................................................... 13

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*Garcia v. United States*,
No. SACV091169DOCRNBX, 2011 WL 13224877 (C.D. Cal. Sept. 19, 2011) ....................................................................................................... 9

*Garter-Bare Co. v. Munsingwear, Inc.*,
650 F.2d 975 (9th Cir. 1981) ............................................................................ 1

*In re Google Inc.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...................................................................................................... 15

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) ...................................................................................... 30

*Harper House, Inc. v. Thomas Nelson, Inc.*,
889 F.2d 197 (9th Cir. 1989) ........................................................................ 24

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
335 F.3d 303 (4th Cir. 2003) ........................................................................ 12

*Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*,
19 F.3d 431 (8th Cir. 1994) .......................................................................... 26

*Just Film, Inc. v. Merch. Servs., Inc.*,
No. C 10-1993 CW, 2012 WL 6087210 (N.D. Cal. Dec. 6, 2012) ................. 6

*Karpenski v. Am. Gen. Life Companies, LLC*,
999 F. Supp. 2d 1235 (W.D. Wash. 2014) .................................................... 26

*Kearney v. Foley & Lardner, LLP*,
590 F.3d 638 (9th Cir. 2009) ........................................................................ 10

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal.4th 95 (2006) ..................................................................... 13, 15, 16, 17

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011) ...................................................................... 14

*Kramer v. Midamco, Inc.*,
No. 1:07 CV 3164, 2010 WL 11561728 (N.D. Ohio Jan. 15, 2010) ............... 8

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## TABLE OF AUTHORITIES
### (CONTINUED)

**Pages**

*LendingTree, LLC v. Zillow, Inc.*,
  54 F. Supp. 3d 444, 459 (W.D.N.C. 2014)........................................................9

*Lieberman v. KCOP Television, Inc.*,
  110 Cal. App. 4th 156 (2003)................................................................14, 17

*Louisiana Wholesale Drug Co. v. Sanofi-Aventis*,
  No. 07 CIV.7343 (HB), 2009 WL 2708110 (S.D.N.Y. Aug. 28, 2009)........................................................................................................8

*Marbury v. Hometown Bank*,
  No. 10-cv-3936, 2012 U.S. Dist. LEXIS 124375 (S.D. Tex. Aug. 30, 2012)......................................................................................................16

*Marich v. MGM/USA Telecommunications, Inc.*,
  113 Cal. App. 4th 415 (2003)...............................................................17

*Marshall & Ilsley Trust Co. v. Pate*,
  819 F.2d 806 (7th Cir. 1987).....................................................................6

*Mattel, Inc. v. MGA Ent., Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011).......................................................5

*Mazzocco v. Lehavi*,
  No. 14CV2112, 2015 WL 12672026 (S.D. Cal. Apr. 13, 2015)..................12

*McQueeney v. Wilmington Tr. Co.*,
  779 F.2d 916 (3d Cir. 1985).......................................................................6

*Mendocino Envtl. Ctr. v. Mendocino Cnty.*,
  192 F.3d 1283 (9th Cir. 1999).................................................................26

*National Lampoon, Inc. v. American Broadcasting Co.*,
  376 F. Supp. 733 (S.D.N.Y. 1974)...........................................................24

*Neff Instrument Corp. v. Cohu Elecs., Inc.*,
  269 F.2d 668 (9th Cir. 1959)................................................................1, 8

*In re Outlaw Labs., LP Litig.*,
  352 F. Supp. 3d 992 (S.D. Cal. 2018)......................................................12

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## TABLE OF AUTHORITIES
### (CONTINUED)

**Pages**

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997) ..................................................................... 24, 25

*Pers. Dep't, Inc. v. Pro. Staff Leasing Corp.*,
  297 F. App'x 773 (10th Cir. 2008) ...................................................... 13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  402 F. Supp. 3d 615 (N.D. Cal. 2019) .................................................. 5

*In re Plise*,
  719 F. App'x 622 (9th Cir. 2018) ........................................... 2, 27, 29

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
  508 U.S. 49 (1993) ......................................................................... 11, 12

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ....................................................... 25

*Raffin v. Medicredit, Inc.*,
  No. CV154912GHKPJWX, 2017 WL 131745 (C.D. Cal. Jan. 3, 2017) ....................................................................................... 13

*Raffin v. Mericredit, Inc.*,
  2016 U.S. Dist. LEXIS 181819 (C.D. Cal. Dec. 19, 2016) ............... 14

*Religious Tech. Ctr. v. Wollersheim*,
  971 F.2d 364 (9th Cir. 1992) ......................................................... 30

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) .................................................................... 14

*S.E.C. v. M & A W., Inc.*,
  538 F.3d 1043 (9th Cir. 2008) ........................................................ 7

*SEC v. Koracorp Indus., Inc.*,
  575 F.2d 692 (9th Cir. 1978) ........................................................... 7

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ................................................................. 1, 5, 6

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- v -

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) .................................................................. 9, 11, 12, 25

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ............................................................................ 23

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
  No. 2:13-CV-02468-CAS, 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) ...................................................................................................................... 14

*Stolinski v. Pennypacker*,
  772 F. Supp. 2d 626 (D.N.J. 2011) .................................................................. 9, 12

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
  546 F.3d 991 (9th Cir. 2008) .................................................................................. 9

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
  633 F. Supp. 2d 1063 (C.D. Cal. 2008) ......................................................... 24, 25

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) ......................................................................... 23, 24

*UMG Recordings Inc., v. Glob. Eagle Entm't., Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................... 11

*United States v. Miller*,
  953 F.3d 1095 (9th Cir. 2020) ............................................................. 8, 25, 26, 27

*United States v. Shipsey*,
  363 F.3d 962 (9th Cir.2004) .................................................................................. 7

*United States v. Turkette*,
  452 U.S. 576 (1981) ............................................................................................ 29

*United Steel Workers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*,
  512 F.3d 555 (9th Cir. 2008) ............................................................................... 10

*Vargas v. City of Los Angeles*,
  No. 216CV08684SVWAFM, 2018 WL 8786633 (C.D. Cal. Aug. 7, 2018) ...................................................................................................................... 20, 24

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- vi -

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*Vaughn v. Teledyne, Inc.*,
   628 F.2d 1214 (9th Cir. 1980) ............................................................. 26

*Watts v. United States*,
   703 F.2d 346 (9th Cir. 1983) ............................................................. 12

*White v. Arlen Realty & Development Corp.*,
   540 F.2d 645 (4th Cir. 1975) ............................................................. 16

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ............................................... 9, 11, 12

## Statutes and Rules

15 U.S.C. § 1125(a)(1)(A) ...................................................................... 23

15 U.S.C. § 1125(a)(1)(B) ...................................................................... 23

18 U.S.C. § 1961(5) ................................................................................ 29

Cal. Penal Code § 637.2(a) .................................................................... 13

Cal. Penal Code § 637.2(c) .................................................................... 14

Fed. R. Civ. Proc. 11 .............................................................................. 11

Fed. R. Civ. Proc. 56(a) ...................................................................... 7, 12

## Other Authorities

Gregory P. Joseph, Civil RICO: A Definitive Guide 58–59 (3d ed. 2010) ........................................................................................................ 6

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

## I.   __INTRODUCTION__

NIC's Motion contravenes virtually every rule associated with summary judgment, beginning with the Supreme Court's pronouncement that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  NIC's Motion may be directed at only three of the named defendants, but NIC has chosen to use seven different "cases" for the purpose of establishing four of the RICO elements, which means that this Court is required to adjudicate a massive number of factual and legal issues.  As the Ninth Circuit has explained, if there is "a single, genuine issue of material fact before the district court," then "summary judgment [cannot be properly] granted." *Neff Instrument Corp. v. Cohu Elecs., Inc*., 269 F.2d 668, 669 (9th Cir. 1959).  Of NIC's 464 "facts," literally hundreds are disputed.  As a result, this Court could only grant summary adjudication in favor of NIC – who bears both the burden of proof and persuasion – if the Court disregarded all of the Defendants' testimony (and all of the additional supporting evidence they cite in the form of documents and non-parties' testimony), as well as the additional Counter Statement of Undisputed Material Facts ("CSUF") submitted herewith.[1]  The Supreme Court has made clear that this cannot be done.  *See Anderson*, 477 U.S. at 255.

Moreover, the Ninth Circuit recognizes that fraud claims "are so larded with fact issues (including issues as to intent) that summary judgment is seldom possible."  *Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 981 (9th Cir. 1981).  This case is not the exception.  For starters, the relief NIC seeks is procedurally improper.  NIC asks this Court to establish four of RICO's five elements ***based exclusively on predicate acts that have nothing to do with NIC.*** This runs directly counter to Supreme Court precedent holding that "the

---

[1] For clarity, Defendants' responses to NIC's claimed statements are cited as Statements of Genuine Disputes ("SGD").

1    compensable injury necessarily is the harm caused by predicate acts," *Sedima,*

2    *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985).  Absent a predicate act that caused

3    injury to NIC, NIC does not have standing to adjudicate any element of RICO.

4    *Infra.*III.

5        NIC's Motion is no better on the merits.  NIC's predicate acts are all based on

6    litigation conduct protected by *Noerr-Pennington* immunity such that NIC must

7    show that each claim or contemplated claim was "objectively baseless."

8    *Infra.*Part.IV.A.  NIC makes no attempt in its Motion to conclusively prove that the

9    seven "cases" identified in its Appendix A were "objectively" baseless.  The

10   evidence shows that they were not and that, at a minimum, they raise genuine issues

11   of fact for the jury to decide.  *Infra.*Part.IV.A.1-3.

12       Even if NIC could show that all seven of the "cases" were "objectively

13   baseless" – which it cannot – it would run headlong into Ninth Circuit precedent

14   disallowing fraud summary judgment for plaintiff when a defendant denies the

15   requisite intent.  *Infra.*Part.IV.B.1-3.  Here, Defendants deny any intent to "deceive

16   and cheat" under oath.  Under controlling Ninth Circuit precedent, that precludes

17   summary judgment.  *In re Plise*, 719 F. App'x 622, 624 (9th Cir. 2018).  For each of

18   the 12 alleged predicate acts – comprising seven filed or contemplated cases – there

19   are issues of intent.  *Infra.*Part.IV.B.1-3.  Absent racketeering, which NIC has not

20   shown, NIC cannot establish a RICO enterprise.  *Infra.*Part.IV.C.

21       NIC's Motion is all the more improper because the Strataluz demand letters

22   that NIC relies upon for four of its 12 predicate acts are not "related" and therefore

23   not part of a pattern.  While NIC has alleged similarities that suffced at the pleading

24   stage, there are genuine issues of material fact as to assertions NIC relies upon to

25   support relatedness.  Without the "Strataluz predicate acts," for which genuine

26   disputes of fact exist regarding the merit of those claims and their relatedness to the

27   alleged CLRA and CIPA schemes, NIC cannot establish the RICO element of

28   pattern.  *Infra.*Part.IV.D.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

For all of these reasons and those described more fully below, NIC's Motion should be denied.

## II.  **FACTUAL BACKGROUND**

Defendant NTG is a consumer protection firm that pursues, *inter alia*, class action lawsuits against corporations and other business entities who violate laws designed to protect the public or consumers, or to safeguard an individual's right to privacy, among other things.  (CSUF 465.)  NIC is a company in the business of selling proverbial snake oil, which is generally understood to mean "a substance with no real medicinal value sold as a remedy for all diseases."  (CSUF 466.)

More specifically, NIC labels and markets colloidal silver as providing "IMMUNE SUPPORT," even though it has been recognized for over 100 years that such claims are false.  (CSUF 466, 471.)  NIC and NTG intersected due to NIC's practice of marketing its worthless product to the sick and vulnerable.  Trycia Carlberg – who was a close friend of NTG's owner, Scott Ferrell, and his wife – "began living in [the Ferrells'] home in 2011 because she was very ill with cancer and needed [their] support and assistance."  (NIC's RJN, Exh. 8, ¶ 5.)  Trycia Carlberg stayed with the Ferrell family from the end of 2011 through early 2012 when she moved into a hospice facility where she stayed until shortly before her death on May 5, 2012.  (*Id*.)  Regarding NIC's Sovereign Silver, on Christmas Eve 2011, "Ms. Carlberg told [Scott Ferrell] that her naturalpathic doctor had recommended a variety of alternative treatments and actions to fight her cancer . . . one of which was Sovereign Silver, for which she showed [Scott Ferrell] a bottle and a box that were labeled with the words "IMMUNE SUPPORT."  (*Id*. ¶ 7.)  Recognizing the falsity of this claim, and after receiving Ms. Carlberg's consent, Scott Ferrell sent a demand letter to NIC on December 27, 2011.  (*Id*. ¶ 13.)  That matter would ultimately become the false advertising class action of *Nilon v. Natural-Immunogenics Corp.* (the "*Nilon* Action").  (*Id*. ¶ 14.)  The evidence in the *Nilon* Action confirmed that "[NIC's] claim that Sovereign Silver™ provides

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 3 -

1   'immune system support' has no scientific basis and is false."  (CSUF 471.)

2   However, due to suitability issues with a replacement class representative that had

3   nothing to do with the merits of whether NIC's product was falsely advertised for

4   immune support, the *Nilon* Action was ultimately dismissed without prejudice to the

5   class.  (CSUF 472.)

6          Although NIC's Complaint alleged RICO claims based on four CLRA claims

7   (like the *Nilon* Action), four CIPA claims, and an unknown number of Lanham Act

8   claims, it is undisputed that only the *Nilon* Action is alleged to have caused harm to

9   NIC.  (CSUF 467.)  Yet the *Nilon* Action is peculiarly ***not included*** in any of the

10  predicate acts NIC seeks to summarily adjudicate.  (Dkt. 1107-2.)  Of the 12 alleged

11  predicate acts at issue in NIC's Motion, none has anything to do with NIC.  (*Id.*)

12  **III.   NIC HAS NO STANDING TO SEEK PARTIAL SUMMARY**

13  **ADJUDICATION BASED ON PREDICATE ACTS HAVING**

14  **NOTHING TO DO WITH NIC**

15         Recognizing that predicate act allegations based on the only lawsuit that

16  impacted NIC are so weak, NIC has taken an approach that is literally unheard of in

17  RICO jurisprudence and which runs directly counter to the text of RICO and

18  decades of Supreme Court and Ninth Circuit precedent.  Here, NIC seeks to

19  establish the elements of RICO (except damages) through predicate acts that have

20  nothing to do with NIC.  NIC seeks summary adjudication on all RICO elements

21  (conduct, enterprise, pattern, and racketeering activity) based on 12 alleged non-NIC

22  predicate acts involved in seven different non-NIC "cases."  (Dkt. 1107 and 1107-

23  2.)  NIC has not shown, and it cannot show, that any of those predicate acts have

24  anything to do with NIC: it is a stipulated fact that NIC's claimed damages are

25  associated with only the *Nilon* Action.  (CSUF 467.)

26         NIC has not cited, and defense counsel have not located, any case allowing a

27  plaintiff to prevail on RICO elements using _only_ predicate acts that undisputedly

28  caused no injury to the plaintiff.  The reason no other RICO plaintiff has attempted

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

1  to do so is because controlling jurisprudence is clear that unless one of the predicate

2  acts used to establish the RICO elements caused an injury to plaintiff, the plaintiff

3  does not have standing.

4      In 1985, the United States Supreme Court clarified that in RICO cases, "the

5  plaintiff only has standing if, and can only recover to the extent that, he has been

6  injured in his business or property by the conduct constituting the violation."

7  *Sedima, S.P.R.L.*, 473 U.S. at 496.  For a plaintiff to have RICO standing, the

8  predicate acts used to show a "pattern" of racketeering activity must include at least

9  one predicate act that caused injury to the plaintiff:

10      …the compensable injury necessarily is the harm caused by predicate

11      acts sufficiently related to constitute a pattern, for the essence of the

12      violation is the commission of those acts in connection with the conduct

13      of an enterprise.  Those acts are, when committed in the circumstances

14      delineated in § 1962(c), "an activity which RICO was designed to deter."

15      Any recoverable damages occurring by reason of a violation of §

16      1962(c) will flow from the commission of the predicate acts.

17  *Id.* at 497.

18      This framework simply does not allow a RICO plaintiff to mix and match

19  predicate acts for different elements.  If "the compensable injury necessarily is the

20  harm caused by predicate acts sufficiently related to constitute a pattern," the RICO

21  elements of conduct, enterprise, pattern, or racketeering activity cannot be proven by

22  using only predicate acts that did not cause any injury to plaintiff.  The Supreme

23  Court confirmed as much in 2006, when it held that the "'proper referent of the

24  proximate-cause analysis' is the predicate acts alleged."  *Planned Parenthood Fed'n*

25  *of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 652 (N.D. Cal. 2019)

26  (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006)).  Following

27  *Sedima*, jurisdictions – including the Ninth Circuit – are universal in their

28  requirement that a plaintiff's RICO "pattern" include at least one predicate act that

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 5 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

harmed the plaintiff.  *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 1023 (C.D. Cal. 2011) ("At least one of the defendant's predicate acts" must have been "the proximate cause of the plaintiff's injuries.") (quoting *Camelio v. American Federation*, 137 F.3d 666, 670 (1st Cir. 1998)); *Just Film, Inc. v. Merch. Servs., Inc.*, No. C 10-1993 CW, 2012 WL 6087210, at *12 (N.D. Cal. Dec. 6, 2012) (to have standing, a RICO plaintiff must show "'an injury directly resulting from some or all of the activities comprising the violation'") (quoting *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809–10 (7th Cir. 1987)); Gregory P. Joseph, Civil RICO: A Definitive Guide 58–59 (3d ed. 2010) (RICO plaintiff must plead and prove that it "has been injured by at least one predicate act").  Here, NIC has tactically chosen to omit any alleged predicate acts related to NIC.  (Dkt. 1107-2 at 2-6.)  NIC purports to reserve the issue of whether there has been "an injury to money or property from the conduct constituting the violation" for trial (Dkt. 1107-1 at 12, fn. 4), but that misses the point.  NIC cannot prove RICO elements using only predicate acts that did not affect that plaintiff.  *Sedima,* 473 U.S. at 497.

The fact is that NIC is essentially a malicious prosecution plaintiff with a problematic case on the merits.  (CSUF 470-71.)  Moreover, Defendants can show extensive fraud by NIC and/or its agents in connection with the *Nilon* Action.  Specifically, NIC – in a desperate effort to prove its claims in this case – procured and submitted knowingly false testimony on the core issue of whether NTG had a client at the time it sent the demand letter in the *Nilon* Action.  (CSUF 476-77.)  Similarly, NIC's hired private investigator, Clark Baker (now a convicted felon for possession of child pornography), coerced the plaintiff in the *Nilon* Action to make false statements about himself, NTG, and others, also in a desperate attempt to prove NIC's claims in this case.  (CSUF 473-75.)  While the Court has not allowed NTG to affirmatively pursue counterclaims in this action, a jury can rightly consider NIC's conduct in evaluating the credibility, veracity, and validity of NIC's claims and evidence.  *Cf. McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 921 (3d Cir.

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

1  1985).

2        Because none of the predicate acts that NIC relies upon in its Motion caused

3  NIC any injury, NIC's Motion must be denied on the ground that it lacks standing.

4  Indeed, the fact that NIC would push a massive motion based on 464 "facts," based

5  exclusively on predicate acts that did not affect it, highlights the fact that this Court

6  should reconsider Defendants' prior request to bifurcate the malicious prosecution

7  claim from the RICO claims.  (Dkt. 630 at 4 ("The Court acknowledges that, as the

8  NTG Defendants argue, a finding of probable cause for purposes of the malicious

9  prosecution claim may be dispositive of the RICO claims . . . ."); *In re EPD Inv.*

10 *Co., LLC,* No. BR 12-02424 ER, 2019 WL 4233575, at *1 (C.D. Cal. June 4, 2019)

11 ("the Court may bifurcate a trial *sua sponte* . . .").

12 **IV.    GENUINE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT**

13       **ON ANY RICO ELEMENT**

14       Summary judgment is proper where a movant "shows that there is no genuine

15 dispute as to any material fact and the movant is entitled to judgment as a matter of

16 law."  Fed. R. Civ. Proc. 56(a).  The summary judgment rule "by no means

17 authorizes trial on affidavits."  *Anderson*, 477 U.S. at 255.  "Credibility

18 determinations, the weighing of the evidence, and the drawing of legitimate

19 inferences from the facts are jury functions, not those of a judge, whether he is

20 ruling on a motion for summary judgment or for a directed verdict."  *Id.*  Further,

21 "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are

22 to be drawn in his favor."  *Id.*  The Ninth Circuit and other courts "have long

23 recognized that summary judgment is singularly inappropriate where credibility is at

24 issue.  Only after an evidentiary hearing or a full trial can these credibility issues be

25 appropriately resolved."  *S.E.C. v. M & A W., Inc.*, 538 F.3d 1043, 1054–55 (9th Cir.

26 2008) (quoting *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978).)

27       The breadth and scope of NIC's Motion is remarkable.  NIC has posited close

28 to 500 material facts.  It asks this Court to summarily adjudicate four RICO

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

elements, based on 12 alleged predicate acts of wire or mail fraud, against three defendants.  Considering that wire and mail fraud have three elements that must be proven (separate from the other RICO elements), *United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir.2004), and that all elements must be proven against each defendant, *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027-28 (8th Cir. 2008), NIC's Motion effectively asks this Court to adjudicate more than 100 issues.

Under Ninth Circuit law, if there is "a single, genuine issue of material fact before the district court," then "summary judgment [cannot be properly] granted." *Neff*, 269 F.2d at 669; *Blair v. City of Pomona*, 223 F.3d 1074, 1082 (9th Cir. 2000) (concurring opinion).  Here, the sheer volume of the issues coupled with the complexity of RICO, as well as the fact that NIC has alleged predicate acts that are *Noerr-Pennington* protected (and which require a showing of intent to "deceive and cheat") – whether viewed on their own or in the collective – necessarily precludes summary judgment.  *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1085 (2021).

A.   **Material Issues of Fact Exist as to the Application of *Noerr-Pennington* Immunity, which Precludes Summary Adjudication of Any RICO Element**

It is one thing for a party to assert allegations at the pleadings stage that fit within the sham litigation exception and plead around *Noerr-Pennington* immunity. It is quite another to prove them on summary judgment.  To state the obvious, the latter is highly dependent on the facts, which are often disputed and require a weighing of the evidence.  Indeed, whether other lawsuits were "objectively baseless" for purposes of *Noerr-Pennington* is commonly decided by juries. *Louisiana Wholesale Drug Co. v. Sanofi-Aventis*, No. 07 CIV.7343 (HB), 2009 WL 2708110, at *4 (S.D.N.Y. Aug. 28, 2009) (the court explaining that it "instructed the jury[] to determine whether the Citizen Petition was objectively baseless"); *Kramer*

- 8 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*v. Midamco, Inc.*, No. 1:07 CV 3164, 2010 WL 11561728, at *2 (N.D. Ohio Jan. 15, 2010) (holding that "the question as to whether Midamco's claims are "objectively baseless" remains a question of fact for the jury."); *LendingTree, LLC v. Zillow, Inc.*, 54 F. Supp. 3d 444, 459 (W.D.N.C. 2014) (finding that "[t]he jury rejected Zillow's claims that LendingTree had brought an objectively baseless case"); *Dice Corp. v. Bold Techs. Ltd.*, No. 11-CV-13578, 2014 WL 2763618, at *15 (E.D. Mich. June 18, 2014) (jury finding on whether the lawsuit was "so objectively baseless that no reasonable litigant could realistically be expected to win.").

NIC seeks partial summary adjudication on the RICO elements of (1) conduct (2) enterprise, (3) pattern, and (4) racketeering activity. (Dkt. 1107.) None of these elements can be satisfied with litigation conduct that is not "objectively baseless." All of NIC's alleged predicate acts are based on *Noerr-Pennington* protected activities. Under controlling Supreme Court and Ninth Circuit precedent, "a court may not even consider the defendant's allegedly illegal objective unless it first determines that his lawsuit was objectively baseless." *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000). Thus, NIC effectively asks this Court to decide that seven actual or contemplated lawsuits lacked probable cause even though "[p]robable cause is a sufficiently fact-laden issue as to typically be a question for the jury." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 638 (D.N.J. 2011); *Garcia v. United States*, No. SACV091169DOCRNBX, 2011 WL 13224877, at *7 (C.D. Cal. Sept. 19, 2011) ("when the facts are disputed–as they are here–and those disputes are material–as they are here–then the Court cannot grant summary judgment on the probable cause issue.").

As this Court has previously found, "[t]he Noerr-Pennington doctrine provides absolute immunity for statutory liability for conduct when petitioning the government for redress." (Dkt. 652 (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)).) In addition to litigation filings, "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, [also] falls within the protection of the

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Noerr-Pennington doctrine." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). Other conduct related to the litigation, such as "discovery communications" and other communications in "preparation" for the litigation, has been recognized as incidental to litigation.[2] *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009).

Here, all of the predicate acts alleged by NIC are incidental to litigation. (Dkt. 1107-2.) NIC's 12 predicate acts consist of:

- four (4) phone calls made to a company potentially violating CIPA, either by Baslow or by a person who later filed suit against the company;

- two (2) emails between a CIPA tester and Baslow related to the call the tester made to the company potentially violating CIPA;

- one (1) wire payment pursuant to the settlement of the Himalaya lawsuit for its CIPA violations; and

- five (5) demand letters sent by NTG, one of behalf of Sam Pfleg and the other four on behalf of Strataluz.

(*Id.*) NIC's own allegations as to why the predicate acts were in "furtherance" of NTG's alleged scheme makes clear that all were litigation related. In order to "base a claim on conduct incidental to litigation, and avoid the *Noerr-Pennington* bar, a plaintiff must demonstrate that the lawsuit itself was a sham." *See Thomas*, 2006 WL 5670938, at *8. To meet this exception, "the plaintiff must first show that the lawsuit was 'objectively baseless' by showing that it lacks 'probable cause' such

---

[2] This Court previously applied *Noerr-Pennington* immunity to allegations of out-of-court fraud, including solicitation of false testimony and bribery to obtain favorable but false testimony. (Dkt. 1028 at 13-15.) Accordingly, it is the law of the case that *Noerr-Pennington* applies to litigation-related out-of-court conduct. *See United Steel Workers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008).

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

that 'no reasonable litigant could realistically expect success on the merits.'"[3]  (Dkt. 1028 at 14 (quoting *UMG Recordings Inc., v. Glob. Eagle Entm't., Inc*., 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015) and *Prof'l Real Estate Investors*, 508 U.S. at 60-61.)  In the Ninth Circuit, courts "do not lightly conclude in any *Noerr–Pennington* case that the litigation in question is objectively baseless, as doing so would leave that action without the ordinary protections afforded by the First Amendment, a result we would reach only with great reluctance."  *White v. Lee*, 227 F.3d at 1232.  As the United States Supreme Court held in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49 (1993), this is the same inquiry as in the "common-law tort of wrongful civil proceedings" – such as malicious prosecution.  *Id.* at 62-63.  Thus, to meet the sham exception here, NIC must substantively "win" seven malicious prosecution actions on summary judgment.  It does not even attempt to do so.

A lawsuit does not qualify as a "sham" if it is "arguably warranted by existing law or at the very least based on an objectively good faith argument for the extension, modification, or reversal of existing law."  *Prof'l Real Estate Inv'rs*, 508 U.S. at 65 (quoting Fed. R. Civ. Proc. 11)).  "The court must remember that even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."  *Id.* at 60 fn. 5.  After proving that the lawsuit is "objectively baseless," the plaintiff must demonstrate that "the defendant's motive in bringing it was unlawful."  *Sosa*, 437 F.3d at 938.  Even setting aside the sham pleading exception, the Ninth Circuit has made clear that litigation conduct – such as a demand letter – that is not "objectively baseless" does not satisfy the mail or wire fraud statutes.  *Id.* at 942 ("we hold that RICO and the predicate statutes at issue here do not permit the maintenance of a lawsuit for the

---

[3] Other exceptions do not apply because none of the alleged predicate acts are Defendants making an alleged material misrepresentation to a court.  Nor has NIC shown a series of cases.

1    sending of a prelitigation demand to settle legal claims that do not amount to a

2    sham.  Because the demand letters at issue here sought settlement of claims against

3    Sosa under the Federal Communications Act, and no sham is claimed, they cannot

4    form the basis of liability under RICO.").

5         Per controlling Ninth Circuit precedent, "proof of a lawsuit's objective

6    baselessness is the 'threshold prerequisite': a court may not even consider the

7    defendant's allegedly illegal objective unless it first determines that his lawsuit was

8    objectively baseless."  *White*, 227 F.3d at 1232 (quoting *Prof'l Real Estate*

9    *Investors*, 508 U.S. at 60-61).  Even "litigation that is deceitful, underhanded, or

10   morally wrong will not defeat immunity unless it satisfies the objective baselessness

11   requirement."  *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 312 (4th

12   Cir. 2003).

13        Despite basing its predicate acts on conduct that it knows is subject to *Noerr-*

14   *Pennington*, and despite the fact that "objectively baseless" is a required showing

15   when seeking to predicate wire fraud liability on conduct incidental to litigation,

16   *Sosa*, 437 F.3d at 942, NIC has not addressed this issue.  This alone is sufficient

17   grounds to deny NIC's Motion.  *Watts v. United States*, 703 F.2d 346, 347 (9th Cir.

18   1983) ("A plaintiff who seeks summary judgment and who fails to produce

19   sufficient evidence on one or more essential elements of the claim is [not] . . .

20   entitled to a judgment . . . .").

21        As the moving party, NIC must prove there is no genuine dispute as to any

22   material fact, and "[p]robable cause is a sufficiently fact-laden issue as to typically

23   be a question for the jury[.]"  *Stolinski*, 772 F. Supp. 2d at 638; *see also California*

24   *Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1167-68 (C.D. Cal.

25   2009) (holding *Noerr-Pennington* bars RICO claim based on certain alleged

26   predicate acts); *Mazzocco v. Lehavi*, No. 14CV2112, 2015 WL 12672026, at *7-8

27   (S.D. Cal. Apr. 13, 2015) (holding *Noerr-Pennington* immunizes conduct and bars

28   RICO claim); *In re Outlaw Labs., LP Litig.*, 352 F. Supp. 3d 992, 1006 (S.D. Cal.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 12 -

2018) (dismissing claim where counterclaimant failed to adequately allege that counter-defendants' conduct fell within *Noerr Pennington* sham litigation exception). Indeed, the "Supreme Court precedent clearly contemplates that when genuine issues of material fact exist regarding a defendant's probable cause to institute the underlying lawsuit, summary judgment on Noerr–Pennington immunity is improper[.]" *Pers. Dep't, Inc. v. Pro. Staff Leasing Corp.*, 297 F. App'x 773, 780 (10th Cir. 2008).

As seen below, NIC's general arguments against each type of consumer case are legally incorrect and would not allow this Court to reach a conclusion that each of the seven actual or contemplated cases was "objectively baseless" as a matter of law.

### 1. NIC Has Not Shown that the CIPA Cases Lacked Probable Cause

NIC never clearly states any theory for why the *Carter-Reed* and *Himalaya* suits were "objectively baseless." (*See generally* Dkt. 1107-1.) Remarkably, NIC does not even address the legal requirements or jurisprudence of CIPA cases, much less conclusively demonstrate that the suits were so meritless as to constitute a "sham." (*Id.*; *see* SGD 47-185.)

CIPA was enacted "to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 769 (2002). CIPA grants a private right of action to any person "who has been injured by a violation of this chapter." Cal. Penal Code § 637.2(a). This private right of action is "perhaps the most effective enforcement mechanism available" to protect the privacy rights covered by the statute. *Kearney*, 39 Cal. 4th at 116.

By its terms, CIPA "prohibits a defendant from recording a telephone conversation without first informing the parties to the conversation that the conversation is being recorded." *Raffin v. Medicredit, Inc.*, No.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CV154912GHKPJWX, 2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017).  CIPA,

like other notice or consent requirement statutes, does not require an injury in fact.

Indeed, "district courts in the Ninth Circuit consistently have concluded that, to

satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond

the invasion of the private right conferred by the statute."  *Id.*, at *3.  This is because

"the harm consists of the unauthorized recording."  *Ades v. Omni Hotels Mgmt.

Corp.*, 46 F. Supp. 3d 999, 1018 (C.D. Cal. 2014).  CIPA further provides that "[i]t

is not a prerequisite to an action pursuant to this section that the plaintiff has

suffered, or be threatened with, actual damages."  Cal. Penal Code § 637.2(c).  It is

thus well settled that a CIPA plaintiff does not need to allege any injuries other than

a statutory violation in order to have standing or to bring a valid claim for relief.

*Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 166 (2003); *Ribas v.

Clark*, 38 Cal. 3d 355, 365 (1985).

NIC's only substantive attack on the CIPA claims is the assertion that "NTG

knew Schoonover and Demulder would be recorded before they called"[4] and that

this knowledge is imputed to their clients.  (Dkt. 1107-1 at 24-26.)  But this

argument leads nowhere as there is no rule requiring a lack of awareness of the

recording beforehand.  NIC cites no case espousing it, and the California Supreme

Court has directly rejected the proposition that CIPA does not apply when callers

"know or have reason to know' that their telephone calls . . . are being recorded."

*Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1399 (2011).  Similarly, in *Steven

Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13-CV-02468-CAS, 2014

WL 4627271, at *11–12 (C.D. Cal. Sept. 8, 2014), the district court directly rejected

the argument that "some class members *expected* their calls to be recorded" to even

---

[4]  NIC's arguments largely consist of hyperbole regarding alleged false
representations to everyone from "co-counsel" to courts and even ethical violations.
(*See generally* Dkt. 1107-1 at 24-25.)  None of this has anything to do with the
predicate acts actually at issue or with the sham exception.  Moreover, NIC's
general attempt to smear NTG runs afoul of Federal Rule of Evidence 404(b).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   raise issues for class certification, much less preclude claims.

2     While NIC is quick to insult tester plaintiffs as "shill" plaintiffs bringing

3   "sham" lawsuits under CIPA, it cannot support its rhetoric with any credible legal

4   argument.  As the Special Master found and NIC cannot meaningfully rebut, "there

5   simply is no authority that precludes the use of 'testers' under CIPA."  (Dkt. 458 at

6   13).  This Court reached the same conclusion, "acknowledg[ing], as did the Special

7   Master, that there is no clear authority on the issue of whether tester plaintiffs are

8   permitted to bring CIPA claims."  (Dkt. 659 at 17.)  NIC equates the use of testers to

9   "staging" injuries and cites a series of cases.  (Dkt. 1107-1 at 23.)  These are the

10   same arguments NIC previously made in connection with the tester issue and which

11   neither the Special Master nor this Court accepted.  (*Compare id. with* Dkt. 264 at

12   96-97 and Dkt. 489 at 19.)

13     Under CIPA, a plaintiff suffers an injury when a call is recorded without

14   notice.  *Ades*, 46 F. Supp. 3d 999, at 1018.  Nothing more is needed.  *See e.g.*, *Bona*

15   *Fide Conglomerate, Inc. v. SourceAmerica*, 2016 U.S. Dist. LEXIS 84756, at *29

16   (S.D. Cal. June 29, 2016) (holding that plaintiff had alleged statutory damages under

17   CIPA and denying motion to dismiss).  Moreover, as with NIC's other arguments,

18   this is nothing more than an untested hypothetical defense, which hardly renders the

19   underlying case frivolous.

20     NIC's theory seems to be that CIPA plaintiffs were indirectly advised that

21   calls would be recorded because Baslow was told that the companies recorded calls

22   and his knowledge is imputed to them.  (Dkt. 489 at 16:18-20.)  No court has ever

23   adopted such a position.  Instead, they have rejected implied consent arguments in

24   wiretap cases because "[c]ourts have cautioned that implied consent applies only in

25   a narrow set of cases."  *See, e.g., In re Google Inc.*, No. 13-MD-02430-LHK, 2013

26   WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013).  In *Kearney v. Salomon Smith*

27   *Barney, Inc.*, 39 Cal.4th 95, 116, fn. 6 (2006), the high court rejected the Court of

28   Appeal's suggestion that under California law there was no need for an explicit

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 15 -

1   advisement regarding the secret recording because "clients or customers of financial

2   brokers . . . 'know or have reason to know' that their telephone calls with the

3   brokers are being recorded."  Rather, it held that "in light of the circumstance that

4   California consumers are accustomed to being informed at the outset of a telephone

5   call whenever a business entity intends to record the call, it appears equally

6   plausible that, in the absence of such an advisement, a California consumer

7   reasonably would anticipate that such a telephone call is not being recorded,

8   particularly in view of the strong privacy interest most persons have with regard to

9   the personal financial information frequently disclosed in such calls."  *Kearney*, 39

10  Cal. 4th 95, 118, fn. 10.

11       Federal cases have likewise rejected NIC's argument in the context of other

12  statutes that require notice.  For example, courts considering cases involving the

13  Electronic Funds Transfer Act in 15 U.S.C. §§ 1693 *et seq*. have consistently held

14  that plaintiffs suffered "informational injury" when the required notice was not

15  given, even when the plaintiff had actual knowledge of the fee being charged.

16  *Marbury v. Hometown Bank*, No. 10-cv-3936, 2012 U.S. Dist. LEXIS 124375 (S.D.

17  Tex. Aug. 30, 2012) ("Even though Plaintiff received notice of the fee in one

18  form—on the ATM screen—Plaintiff's alleged failure to receive notice in both

19  statutorily mandated forms is an injury.").  Similarly, in *White v. Arlen Realty &*

20  *Development Corp*., 540 F.2d 645, 646 (4th Cir. 1975), the Fourth Circuit addressed

21  and rejected the very argument NIC raises here, namely, that a consumer who

22  already knows of the information not provided by the defendant cannot claim to be

23  injured.  *White* involved a claim under the Truth in Lending Act ("TILA"), in which

24  the plaintiff sued the creditor for its failure to identify his purchases on his credit

25  card statement, even though he knew what those purchases were.  *Id*. at 646-48.

26  Despite this knowledge, the court in *White* still held that the failure to disclose

27  constituted an injury.  *Id*. at 650.

28       Even if the law were such that a CIPA case could be "objectively baseless"

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 16 -

1  because the caller had some knowledge that their call might be recorded (it is not),

2  there would still be material issues of fact regarding whether the CIPA plaintiffs at

3  issue here had knowledge that rendered their claim objectively baseless.  In other

4  words, there still remain disputed issues of fact that require denial of NIC's Motion.

5  Scott Ferrell testified that he informed counsel for both Carter-Reed and Himalaya

6  Drugs that the plaintiffs were "test" plaintiffs.  (CSUF 515-516.)   Far from being

7  "objectively baseless," the evidence shows that the CIPA cases had merit.  After all,

8  Demulder and Schoonover called Carter-Reed and Himalaya, respectively, and were

9  not informed that their calls were being recorded.  (SGD 85, 94, 140, 144.)  As a

10  matter of law, Demulder and Schoonover suffered statutory injuries the moment

11  their calls were recorded without their consent, which gives them standing to bring

12  their claims.  *Marich v. MGM/USA Telecommunications, Inc*., 113 Cal. App. 4th

13  415, 425 (2003) ("Penal Code section 632 is violated the moment a confidential

14  communication is recorded without consent"); *Lieberman*, 100 Cal. App. 4th at 167.

15  These facts raise genuine disputes as to whether these plaintiffs had a "reasonable

16  expectation" that their calls would not be recorded sufficient for their claims to have

17  been valid, contrary to NIC's position.  *See Kearney*, 39 Cal. 4th at 118 fn. 10;

18  *Lieberman*, 110 Cal. App. 4th at 169 ("It is for the jury to decide whether under the

19  circumstance presented Lieberman could have reasonably expected that the

20  communications were private."). Accordingly, because NIC has not proven and

21  cannot conclusively prove that these cases were "objectively baseless," the Court

22  cannot grant summary adjudication that the conduct related to those cases

23  constitutes RICO predicate acts.

### 2.    NIC Has Not Shown that the Nature's Way Case Lacked Probable Cause

26        Similarly, NIC has not shown, and it cannot show, that the false advertising

27  claims by Sam Pfleg against Nature's Way products were "objectively" baseless and

28  brought for an "unlawful" purpose.  NIC's general theory is that Pfleg purchased

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

Nature's Way products at Baslow's direction – which is clearly disputed – and therefore cannot show standing since "Plaintiffs must have suffered an actual injury through reasonable reliance on false advertising to have standing." (Dkt. 1107-1 at 4.) Importantly, NIC does not argue that Nature's Way's advertisement was true, that Pfleg never saw the advertisement, or that he never purchased the product. Moreover, as with other causes of action, NIC fails to discuss the actual elements or jurisprudence of the cause of action alleged, thus leaving unclear why it believes the cause of action under the CLRA would have failed.

As demonstrated below, there are genuine disputes of fact as to NIC's position. But even if true, controlling Ninth Circuit case law rejected the proposition that a consumer who "knows" the advertisement is false lacks standing under the CLRA. In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018), the Ninth Circuit addressed an argument similar to the one made by NIC. There, the Ninth Circuit evaluated whether a consumer who knew the defendant's advertisement of "flushable" wipes to be false still had Article III standing. It held she did, explaining that previously "misled consumers may properly allege a threat of imminent or actual harm sufficient to confer standing to seek injunctive relief" because "[a] consumer's inability to rely on a representation made on a package, even if the consumer knows or believes the same representation was false in the past, is an ongoing injury that may justify an order barring the false advertising. *Id.* at 961. In doing so, the Ninth Circuit expressly rejected the proposition that "plaintiffs who are already aware of the deceptive nature of an advertisement" are not capable of being harmed by it because "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id.* at 968. While this holding was in the context of injunctive relief, it is nonetheless applicable since Pfleg's complaint did seek an injunction. (CSUF 504.) Thus, even if all of NIC's facts were undisputed – and they most certainly are not – Pfleg would still have standing for his claim.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 18 -

But again, there are genuine issues of material fact in NIC's version of events. Importantly, every witness with direct knowledge – Pfleg, Baslow, and Ferrell – refute NIC's assertion that Pfleg only purchased Nature's Way products at NIC's direction for litigation.  Baslow confirmed that with regard to Nature's Way, his instructions were to "investigate a product, find a suitable representative who had tried, bought, and been dissatisfied with the product in the past[.]"  (CSUF 505.) Baslow also explained that he and NTG did not stage lawsuits as NIC claims: "we don't just contact clients, suitable representatives, and say, go purchase these products and you can serve as a class representative or a plaintiff in a lawsuit.  We don't do that.  I don't do that."  (CSUF 506-7, 510-11; *see generally* SGD 186-326.)

But Baslow explained that when a client no longer had a receipt, potential clients would make confirmatory purchases:

> Q:  Okay.  But you knew you needed a POP that listed both products; correct?
>
> A:  I knew that, yes. We -- the client didn't have his product and receipt and packaging from, you know, years past using it and being dissatisfied, and he needed to make a purchase, confirmatory purchase, to make sure that we had the right products.

(CSUF 511.)

> Q:  Was it common for you to ask firm clients to purchase products as part of false advertising cases?
>
> A:  And you're -- to be clear, you're talking about like the Organix product; right?
>
> Q:  I'm asking in false advertising cases generally.
>
> A:  So, yeah, at times, we would ask clients to pick up the product or repurchase the product if they didn't have their receipt and packaging from years past.

(*Id*.)  Third party Wynn Ferrell confirmed the same at his deposition.  He explained

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

a reasonable protocol for a "repurchase" where a credible potential client no longer had a receipt.  Wynn Ferrell said that under those circumstances, he would ask questions about the label, the person's frequency and duration of use, if the person gave "it a chance to work," and if the person "followed the directions exactly . . . ." (CSUF 512; *see generally* SGD 186-326.)

Regarding Pfleg, Baslow clearly explained that Pfleg had "told me that he had purchased Boericke & Tafel products in the past.  He had tried them, they didn't work, and that's one of the components that made him suitable."  (CSUF 508.) Likewise, Pfleg confirmed that nobody told him to "buy those products before you went into the store[.]"  (CSUF 509.)

In order to accept NIC's claims and hold that the *Pfleg v. Nature's Way* Action was "objectively" baseless as a matter of law, this Court would have to find the testimony of Baslow, Wynn Ferrell, and Pfleg was not credible at all.  But since "[t]he Court may not make credibility determinations at summary judgment," NIC's Motion must be denied.  *Vargas v. City of Los Angeles,* No. 216CV08684SVAFM, 2018 WL 8786633, at *1, 7 (C.D. Cal. Aug. 7, 2018).

### 3. NIC Has Not Shown that Each of the Four Predicate Matters Involving Strataluz Were Objectively Baseless

NIC asserts four (4) predicate acts consisting of demand letters sent on behalf of Strataluz to companies selling competing products.  (Dkt. 1107-2 at 5-6.)  As with other cases, NIC has not established that the underlying claims were "objectively" baseless.  (*See* SGD 327-464.)  Accordingly, there are genuine issues of fact that necessarily preclude summary judgment.

### a. The Evidence Shows Strataluz Was Founded as a Legitimate Health Products Company

Contrary to NIC's assertion that "Ferrell created Strataluz to defraud litigation defendants and the courts, part of his overall sham litigation scheme to extort settlement payments" (Dkt. 1107-1 at 32), the evidence shows Strataluz grew out of

a "general business plan" by Bentley to "market products via television infomercials."  (CSUF 478.)  When asked why "you needed Scott F[e]rrell, James Hardin and David Reid," Bentley explained "I needed capital."  (CSUF 479.)  Consistent with this, early emails between Bentley and the future owners of Strataluz, including Reid and Ferrell, discuss plans and hopes for an "extremely successful" health and supplement company.  (CSUF 480.)  By mid-2014, Strataluz was close to being fully operational with accounts, logistics, advertising, and multiple products.  (CSUF 481.)  There are numerous internal Strataluz documents discussing Strataluz's real products, strategies for them, order fulfillment, and business strategies for Strataluz overall, which would not exist if Strataluz was a simply "sham."  (CSUF 482.)

Internal Strataluz documents also confirm hundreds of sales and substantial spending on advertising.  (CSUF 483.)  Strataluz's websites for many products allowed consumers to make direct purchases.  (CSUF 484.)  In one of the many Strataluz marketing strategy emails, Bentley explained that "I want to focus on products that have the highest potential reward" and "I believe that without a doubt these products **are our Male Enhancement pill – ProMaxal** and a diet pill."  (CSUF 485.)

Bentley, Weiss (Strataluz's internal counsel), and Ferrell all testified that ProMaxal was formulated.  (CSUF 486.)  On July 3, 2014, Bentley updated the owners of Strataluz on his meeting with a "product formulator" on three new products, including a "Male Enhancement Pill."  (CSUF 487.)  Bentley stated he would like to "start developing these new products ASAP" and requested a release of $50,000 to do so.  (*Id.*).  By late 2014, Strataluz was working on specific marketing for the product that would become ProMaxal.  (CSUF 488.)

That pill was one of the topics of a meeting with a formulation expert in July of 2014, and $50,000 in funding was approved for that and other projects.  (CSUF 489.)  Internal discussions show the male enhancement project was favored due to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

weak competition: "As to male enhancement, the category used to be dominated by Extenze and Enzyte, but both of them have had serious problems recently and don't advertise much."  (CSUF 490.)  By September 2014, Strataluz was already testing commercials for the product.  (CSUF 491.)  Beginning in May 2015, the product took final shape.  Strataluz executed a license for the active ingredient.  (CSUF 492.)  It commissioned graphic design work for the packaging.  (CSUF 493.)  The principals discussed and decided on the name ProMaxal.  (CSUF 494.)  They also discussed the branding of the "propriety blend" it would contain, including the name "LIFTGATE," which was to be based on the patent that Strataluz had licensed. (CSUF 495.)  The product was actually created and marketed.  Internal emails confirm that formulation work, including the specific ingredients and dosage, and estimates for obtaining inventory of ProMaxal in the near term.  (CSUF 496.)  Internal documents likewise demonstrate extensive and sophisticated direct marketing as well as sales work and strategies for ProMaxal.  (CSUF 497.)  Bentley – who NIC agrees was not involved in litigation – stated, "I really believe that the male enhancement pill and a diet pill is the way to move forward" and reiterated his commitment to the project: "[f]rom my perspective, these two products MUST work."  (CSUF 498.)  When Bentley requested additional funding of $50,000 for ProMaxal work, the money was allocated.  (CSUF 499.)  Overall, the owners invested $250,000 in Strataluz, which is inconsistent with NIC's theory that it was a sham created to bring litigation.  (CSUF 500.)

So is Strataluz's history.  It did not even file a claim or send a demand letter in the first 18 months of its existence.  (CSUF 502.)  As to ProMaxal, it sent only five demand letters and received only one monetary settlement.  (CSUF 501.)  This tends to support Ferrell's testimony that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law."  (CSUF 503.)

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Given this history, NIC cannot show, as a matter of law or through undisputed facts, that the Lanham Act claims contemplated by the demand letters were "objectively baseless."  At best, NIC's discussion of Strataluz is comprised of selective and misleading citations and quotations to create the impression of multiple bad acts.  (Dkt. 1107-1 at 15-17.)  NIC includes 137 separate facts related to Strataluz, but only a handful has anything to do with the four contemplated Lanham Act cases.  (Dkt. 1125, ¶¶ 327-464; *see* SGD 327-464.)

Remarkably, NIC does not even discuss the Lanham Act or cases applying it. (*See generally* Dkt. 1107-1, Dkt. 1125 at 104-113.)  Thus, it is unclear why NIC believes any of the contemplated Lanham Act claims would have been "objectively" baseless.  This omission is critical as Section 43(a) creates a federal remedy against a person who, in connection with any goods, uses in commerce a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that is likely to cause confusion as to the origin of the goods, 15 U.S.C. § 1125(a)(1)(A), or misrepresents the nature, characteristics, or qualities of the goods, § 1125(a)(1)(B).  Under Ninth Circuit law the elements are "a false statement," that "actually deceived or has the tendency to deceive," materiality, interstate commerce, and actual or likely injury.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (internal citations omitted).

NIC does not and cannot show that any of these elements were lacking.  Each of the four demand letters listed false claims made by the respective companies in connection with their male enhancement products.  (Dkt. 1112-6 to Dkt. 1112-9.) NIC does not claim that any of the advertisements were truthful, does not dispute that the statements had at least the "tendency to deceive" and were material, and does not claim that the products were not sold through interstate commerce.  (*See generally* Dkt. 1107-1.)  Indeed, none of the facts asserted by NIC have anything to do with four of the five elements of a Lanham Act claim.

Presumably, NIC's position is that Strataluz could not establish injury.  But

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 23 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

"the Lanham Act is at heart a consumer protection statute," *TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820, 827 (9th Cir. 2011), and injury is not an exacting requirement.  "[W]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing."  *TrafficSchool.com, Inc.*, 653 F.3d at 827.  As the Ninth Circuit explained, "[r]equiring proof that defendant's ads caused plaintiff to lose sales as a prerequisite to bringing suit would frustrate its ability to act as the fabled vicarious avenger of the consuming public.  *Id.*  In fact, "[u]nder the Lanham Act, a plaintiff need not actually be injured to have standing—likelihood of injury is enough." *TrafficSchool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1071 (C.D. Cal. 2008), *aff'd in part, rev'd in part and remanded*, 653 F.3d 820 (9th Cir. 2011). Moreover, "because of the possibility that a competitor may suffer future injury, as well as the additional rationale underlying section 43(a)—consumer protection—a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)."  *Harper House, Inc. v. Thomas Nelson, Inc*., 889 F.2d 197, 210 (9th Cir. 1989).

Here, the evidence supports that ProMaxal was a legitimate product.  The documents, as well as witnesses with personal knowledge, confirm that it existed. To conclude otherwise, this Court would necessarily have to find the testimony of Ferrell, Bentley, and Weiss non-credible.  This Court may not do so on summary judgment.  *Vargas*, 2018 WL 8786633 at *7.  But even if NIC could show that Strataluz did not have ProMaxal in physical inventory at the time of the demand letters, it would not mean that any Lanham Act claim would be objectively baseless. Under Lanham Act precedent, "a commercial interest, present or contemplated" confers standing.  *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1111 (2d Cir. 1997); *National Lampoon, Inc. v. American Broadcasting Co.*, 376 F. Supp. 733, 746 (S.D.N.Y. 1974) (plaintiff's standing established by allegation of plans to expand into television market where potential confusion would arise), *aff'd*, 497

- 24 -

F.2d 1343 (2d Cir. 1974).  In *PDK Labs, Inc.*, 103 F.3d at  1112, the Court agreed that "a future 'potential for a commercial or competitive injury'" can establish standing under the Lanham Act, the plaintiff's "hopes of eventually obtaining FDA approval and selling a retail weight loss product are too remote at this stage to confer standing to challenge defendant's advertising." *Id.* at 1112.  For ProMaxal, it is undisputable that Strataluz contemplated, funded, studied, formulated, licensed a patent ingredient for, and marketed a real product.  (CSUF 485-500.)  Even if all inferences are made in favor of NIC, which this Court cannot do on summary judgment, the worst NIC could show is that Strataluz was at most just weeks from obtaining an inventory of ProMaxal.  (CSUF 496 ("As for the [ProMaxal] product, I'll have a good estimate when we'll have inventory very soon.  As mentioned to Scott, this will be around 5-6 weeks but I'll do my best to get sooner.").)  Again, Strataluz need only show a "likelihood of injury" at the time of actual litigation. *TrafficSchool.com, Inc.*, 633 F. Supp. 2d at 1071.

Accordingly, NIC has not shown that any Lanham Act claims against Natural Product Solutions, LLC, Nutrex Research, Inc., Twinlab Corp., and/or Pristine Bay, LLC, based on those company's male enhancement products were objectively baseless.  Moreover, as seen in Section III.F, NIC failed to satisfy unlawful intent, which is required both for the sham exception to *Noerr-Pennington* and as an element of wire and/or mail fraud.  Absent application of the sham exception, sending demand letters is protected conduct that cannot be used as a basis for tort liability. *Sosa*, 437 F.3d at 929, 942.

**B.**     <u>**NIC Has Not Proven Intent for Any Predicate Act, Which Precludes a Finding on the RICO Elements of Conduct, Pattern, and Racketeering Activity**</u>

NIC's Motion is all the more inappropriate because it seeks judgment on fraud claims that require intent, and it is universally accepted that "scienter should not be resolved by summary judgment." *Provenz v. Miller*, 102 F.3d 1478, 1489–90

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

(9th Cir. 1996).  As the Ninth Circuit recently clarified in *United States v. Miller*, 953 F.3d at 1101, both the wire fraud and mail fraud statutes require a showing of "intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions." *Id.*  In that case, a district court instructed a jury that to be guilty of wire fraud, defendant must "have acted with the intent to 'deceive or cheat.'" *Id.* at 1101.  The Ninth Circuit had "no trouble concluding that this instruction was erroneous" because "[l]ike the mail fraud statute from which it is derived, the wire fraud statute, in plain and simple language, criminalizes the use of interstate wires to further, not mere deception, but a scheme or artifice to defraud or obtain money or property, i.e., in every day parlance, to cheat someone out of something valuable." *Id.*  Thus, to be "guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions.  In other words, a defendant must intend to deceive *and* cheat."

Plaintiff has alleged 12 predicate acts of mail/wire fraud against four (4) defendants.  Thus, NIC necessarily seeks 48 separate findings of intent to "deceive and cheat."  Yet it is generally accepted that any issue of intent precludes summary judgment.  "'Where there is no evidence establishing intent as a matter of law, intent to deceive is a jury question,' and summary judgment is not warranted . . . ." *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1235, 1248 (W.D. Wash. 2014), *quoting Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 435 (8th Cir. 1994).  "Cases where intent is a primary issue generally are inappropriate for summary judgment unless all reasonable inferences that could be drawn from the evidence defeat the plaintiff's claim." *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980); *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1302 (9th Cir. 1999) ("Questions involving a person's state of mind ... are generally factual issues inappropriate for resolution by summary judgment").

- 26 -

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

Indeed, a defendant's simple denial of intent to defraud will bar a plaintiff's motion for summary judgment on a fraud claim.  In *In re Plise*, 719 F. App'x at 624, the Ninth Circuit reversed a grant of partial summary judgment for plaintiff on plaintiff's claim that defendant "knowingly and fraudulently made a false oath" even though the defendant had filed a "declaration wherein he flatly denied that he possessed any fraudulent intent[.]"  *Id.* at 623.  The lower court considered the declaration, disbelieved it, and granted partial summary judgment.  *Id.* at 624.  In reversing that summary judgment, the Ninth Circuit explained that "[b]y disregarding such evidence the bankruptcy court was, in effect, weighing it and making a credibility determination.  While the bankruptcy court is entitled to make such a determination following a bench trial and may be entirely justified in doing so in this case, it was nonetheless improper for the court to do so at the summary judgment stage."  *Id.* at 625.  It was only where "there was no evidence in the record to contradict a finding of fraudulent intent" that resolving the issue on summary judgment had been found proper.  *Id.* at 624-25.

Here, there are genuine issues of intent for each of the predicate acts.  Importantly, NIC offers no admissions of intent and does not cite any principle allowing intent to be established as a matter of law in these circumstances.  (Dkt. 1107-1.)  In contrast, Defendants have offered a declaration denying any intent to deceive or cheat.  (*See* Declaration of Scott Ferrell; CSUF 468-69.)

### 1.   CIPA Cases

NIC cannot establish that any of the phone calls or emails connected to CIPA cases were undertaken with the intent to "deceive and cheat," as required for mail or wire fraud.  *Miller*, 953 F.3d at 1101.  First, and most fundamentally, Plaintiff cannot possibly show an intent to "deceive and cheat" in CIPA cases through the use of what NIC terms "sham" plaintiffs when case law permits the use of "tester" plaintiffs.  *Supra.*Part.IV.A.1.  NTG has acknowledged that it used tester plaintiffs in CIPA cases and offered detailed testimony at deposition on why the use of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

"tester" plaintiffs is proper.  (CSUF 513.)  Lest there by any ambiguity, Ferrell has submitted a declaration confirming his understanding that the use of tester plaintiffs in, *inter alia*, CIPA was proper and not fraudulent.  (CSUF 514.)  Moreover, Ferrell confirmed at NTG's 30(b)(6) deposition that he specifically informed "Himalaya Drug's counsel that Sam Schoonover was a tester[.]"  (CSUF 515.)  Similarly, Ferrell explained that "Carter-Reed's counsel is a good friend of mine" and they had "discussed the profiles of the CIPA plaintiffs in similar context to the discussions that I had with [counsel for [Himalaya Drugs]."  (CSUF 515-16.)  All of NIC's factual statements that could relate to intent to "deceive and cheat" in CIPA cases are credibly disputed.  (CSUF 47-185.)

## 2.    Nature's Way Case

Likewise, NIC has not shown intent to "deceive and cheat" in connection with the demand letter sent by Pfleg.  Ferrell attested to his genuine belief that the claim had merit and that he did not intend to deceive or cheat any defendant, including Nature's Way.  (CSUF 468-69.)  As with all other claims, there are also disputes as to NIC's purported facts.  As discussed above, NIC's narrative regarding the *Pfleg v. Nature's Way* Action is highly disputed and contradicted by consistent deposition testimony.  *Supra*.Part.IV.A.2.  Even NIC's core facts are credibly disputed.  (*See* SGD 205-266.)  For example, NIC claims that "[t]here is no evidence that Pfleg ever purchased Boericke & Tafel products at any time other than on March 14, 2012 from Vitamin Shoppe."  (*Id.*, ¶ 243.)  Yet Baslow offered sworn testimony exactly to that effect.  (*Id.*)  Likewise, NIC's assertions that NTG "knew" Pfleg had not previously purchased the product or used the product is controverted by Baslow's testimony regarding the actual instructions he was given and the protocol for re-purchases, as well as Pfleg's own testimony.  (*Id.* at 240-43, 505-12; *supra*. Part.IV. A.2.)

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

### 3.   NIC Has Not Proven Intent to Deceive and Cheat With Regard to the Strataluz Demand Letters

NIC cannot prove that any demand letter sent on behalf of Strataluz was to "deceive and cheat" the recipient.  As with every other predicate act alleged by NIC, the only direct evidence on this point is testimony contradicting NIC's position. *Supra.*Part.IV.A.3.  Controlling Ninth Circuit authority forbids this Court "from weighing the evidence or making credibility determinations" on summary judgment. *In re Plise*, 719 F. App'x at 624.  Here, the factual propositions that NIC argues shows "intent" to deceive and cheat have nothing to do with intent ( Dkt. 1107-1 at 26-27), and are disputed.  (SGD 327-464.)  Moreover, Scott Ferrell has denied any intent to "deceive and cheat."  (CSUF 468-469, 503.)

### C.   Material Issues of Fact Preclude a Finding of a RICO Enterprise

An enterprise "is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  To show the existence of an association-in-fact enterprise, a plaintiff must allege (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Here, because NIC's RICO allegations are disputed, there are issues of fact as to all of these elements.  NIC argues that "the question of whether the Defendants formed a RICO enterprise rests on whether the enterprise engaged in racketeering." (Dkt. 1107-1 at 20.)  But since NIC cannot establish racketeering on summary judgment, it cannot establish an enterprise either.

### D.   NIC Cannot Show a RICO Pattern Because Strataluz Demand Letters Are Unrelated to Other Predicate Acts

As this Court is aware, the RICO statute defines "pattern of racketeering activity" to require that the defendant commit at least "two acts of racketeering activity" within 10 years of each other.  18 U.S.C. § 1961(5).  However, "proving

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

two predicate acts isn't sufficient to establish a pattern" because the plaintiff "must also allege that the predicate acts were 'related' and 'continuous.'" (Dkt. 157 at 20.) While there is no absolute rule, "courts virtually always find that activity spanning less than one year does not satisfy the close-ended continuity requirement." (Dkt. 157 at 30 (citing *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992)).) To be part of a "pattern," acts must be "related." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). "Related" conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.*[5]

Here, NIC's entire argument that the Strataluz predicate acts are "related" depends on resolving disputed issues of fact in NIC's favor. (Dkt. 1107-1 at 35.) As to "motivation," the ProMaxal demand letters were against businesses who were "competing unfairly against [Strataluz] in [Strataluz's] space or distorting the market in a way that prevented." (CSUF 503.) A company's desire to lessen unfair competition against its product is a completely different "motivation" than consumer suits against a company. The results are different, since, to the extent the letters resulted in anything, it was an ingredient license. (CSUF 402, 409.) The participants are mostly dissimilar and the alleged "victims" were competitors. *Supra*.Part.IV.A.3. Accordingly, at a minimum, there are issues of fact as to relatedness. Without the 2015 Strataluz demand letters, NIC has only predicate acts spanning 10 months. (Dkt. 1107-2 at 1-4.) That is insufficient to establish close-ended continuity. (Dkt. 157.)

## V.   **CONCLUSION**

For all of the forgoing reasons, NIC's Motion must be denied.

---

[5] While the Court previously credited NIC's allegations that the "predicate acts, including the Strataluz ones, are related and part of the larger scheme . . ." (Dkt. 910 at 10), that ruling was in the pleading context where the Court was required to accept NIC's allegations as true.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Dated:  May 17, 2021                **CALLAHAN & BLAINE, APLC**

2
                                       By: */s/ David J. Darnell*
3                                          _____
                                           Edward Susolik
4                                          David J. Darnell
                                           James M. Sabovich
5                                          Attorneys for Defendants
                                           NEWPORT TRIAL GROUP and
6                                          SCOTT J. FERRELL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28