1  **CALLAHAN & BLAINE, APLC**
   Edward Susolik (SBN 151081)
2  Esusolik@callahan-law.com
   David J. Darnell (SBN 210166)
3  Ddarnell@callahan-law.com
   Stephanie A. Sperber (SBN 230006)
4  SSperber@callahan-law.com
   3 Hutton Centre Drive, Ninth Floor
5  Santa Ana, California 92707
   Telephone: (714) 241-4444
6  Facsimile: (714) 241-4445

7  Attorneys for NEWPORT TRIAL GROUP and
   SCOTT J. FERRELL
8

9          **UNITED STATES DISTRICT COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

11              **SOUTHERN DIVISION**

12  NATURAL IMMUNOGENICS         CASE NO.   8:15-cv-02034-JVS-JCG
    CORP., a Florida corporation,
13                               **THE NTG DEFENDANTS'**
              Plaintiff,          **STATEMENT OF GENUINE**
14                               **DISPUTES, COUTER STATEMENT**
        v.                        **OF MATERIAL FACTS NOT IN**
15                               **DISPUTE, AND CONCLUSIONS OF**
                                  **LAW**
    NEWPORT TRIAL GROUP, et al.,
16
              Defendants.
17                               Judge:        Hon. James V. Selna
                                 Hearing Date: June 14, 2021
18                               Hearing Time: 1:30 p.m.
                                 Courtroom:    10C
19
                                 Complaint Filed:  December 7, 2015
20                               Trial Date:       November 1, 2021
21
22
23
24
25
26
27
28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Defendants Newport Trial Group ("NTG"), Scott J. Ferrell and Andrew Baslow (collectively, "Defendants") hereby respond to Plaintiff's Statement of Undisputed Material Facts.

To the extent Defendants have stated an NIC fact is "undisputed," Defendants only concede that the fact is undisputed for purposes of this motion in this specific action. Defendants' reference to undisputed should not be interpreted as a concession that NIC has supported the fact with relevant or admissible evidence because, in fact, NIC often failed to do this.

| | NIC'S FACT | DEFENDANTS' RESPONSES AND OBJECTIONS TO NIC'S FACTS AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Scott Ferrell incorporated Newport Trial Group, PC in the State of California in 2009. | **Undisputed.** |
| 2. | Scott Ferrell has owned 100% of the firm since its creation and through present. | **Undisputed.** |
| 3. | Newport Trial Group has maintained its principal place of business in Orange County, California at all times since its creation. | **Undisputed.** |
| 4. | In 2016, Newport Trial Group, PC formally changed its name to Pacific Trial Attorneys, PC with the California Secretary of State. | **Undisputed.** |
| 5. | The Newport Trial Group has employed attorneys, paralegals, and field representatives from 2010 to present. | **Undisputed.** |
| 6. | David Reid is a licensed attorney and was hired by NTG as an attorney in 2010. | **Undisputed.** |
| 7. | Reid was promoted to managing partner of the firm in 2013. | **Undisputed.** |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1

| 8. | As of his January 31, 2021 deposition, David Reid is still the managing partner of the Newport Trial Group (now Pacific Trial Attorneys). | **Undisputed.** |
|---|---|---|
| 9. | In his capacity as an attorney at Newport Trial Group, Reid has been involved in the preparation and revision of demand letters, complaints, and settlement agreements. He has also defended depositions and negotiated settlements. | **Objection** – overbroad, vague, irrelevant as Reid is not a target of NIC's Motion, and the exhibit NIC cites does not provide competent evidence in support of this fact.<br><br>**Undisputed** that Reid has generally been involved in demand letter, complaints, settlement agreements, defending depositions and negotiating settlements in his capacity as an attorney at NTG. |
| 10. | Reid has worked on NTG's plaintiff-side practice, including California false advertising cases, wiretapping cases, and Lanham Act cases. | **Objection** – overbroad, vague, irrelevant as Reid is not a target of NIC's Motion, and the exhibit NIC cites does not provide competent evidence in support of this fact.<br><br>**Undisputed** that Reid has worked on claims for false advertising, wiretapping, and Lanham Act violations on both the plaintiff and defense side. |
| 11. | While employed at NTG, David Reid has been directed by Scott Ferrell in his work for the firm. | **Objection** – overbroad, vague, ambiguous, irrelevant as Reid is not a target of NIC's Motion, misleading, and the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.<br><br>**Disputed** to the extent NIC is suggesting that Scott Ferrell is (1) aware of all work that Reid performs on a day-to day basis; (2) oversees or instructs Reid on the details of how to perform tasks, interact with clients, NTG staff or opposing counsel; or (3) does not provide Reid with autonomy regarding his work. (*See, e.g.*, NIC's Exh. 87 (email between Reid and S.Ferrell regarding strategy on managing firm, cases, and employees); NIC's Exh. 88 (S.Ferrell noting that "Dave can share additional thoughts" regarding strategy).) NTG's attorneys and employees are trusted and expected to use their independent |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | judgment when handling clients, cases, dealing with the courts, and dealing with opposing counsel. (*See* S.Ferrell Decl. ¶ 6.) |
|---|---|---|
| 12. | Victoria Knowles is a licensed attorney and was hired by NTG as an attorney in 2011. | **Undisputed** that Victoria Knowles is a licensed attorney and began working for NTG in 2011.<br><br>**Disputed** that she was hired as an employee. Victoria testified that she was a 1099 contract attorney when she was first hired in 2011 through 2012. (Exh. 230 at 46:1-8.)[1] |
| 13. | Victoria Knowles was promoted to Partner in 2017 and as of her deposition on July 30, 2020, she is still employed by NTG in that position. | **Objection** – irrelevant because this (1) post-dates the events at issue as set forth in NIC's Motion; and (2) Knowles is not a target of NIC's Motion and does not have any RICO claims against her.<br><br>**Undisputed.** |
| 14. | In her capacity as an attorney at NTG, Knowles has drafted demand letters and complaints in false advertising cases, wiretapping cases, and Lanham Act cases. | **Objection** – overbroad, vague, irrelevant as Knowles is not a target of NIC's Motion and does not have any RICO claims against her, and the exhibit NIC cites does not provide competent evidence in support of this fact.<br><br>**Undisputed** that Knowles has worked on claims for false advertising, wiretapping, and Lanham Act violations on both the plaintiff and defense side. |
| 15. | While employed at NTG, Victoria Knowles has been directed by Scott Ferrell in her work for the firm. | **Objection** – overbroad, vague, ambiguous, misleading, irrelevant as Knowles is not a target of NIC's Motion and does not have any RICO claims against her, and the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.<br><br>**Disputed** to the extent NIC is suggesting that Scott Ferrell is (1) aware of all work that Knowles |

---

[1] To the extent exhibits are cited, they are attached to the concurrently-filed Declaration of James Sabovich unless they are referred to as an "NIC Exh."

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | performs on a day-to day basis; (2) oversees or instructs Knowles on the details of how to perform tasks, interact with clients, NTG staff or opposing counsel; or (3) does not provide Knowles with autonomy regarding her work. (*See, e.g.*, NIC's Exh. 8 at 51:10-19 (Knowles testifying that she reports to "all of the attorneys" she "was working with on any specific project or case.").) NTG's attorneys and employees are trusted and expected to use their independent judgment when handling clients, cases, dealing with the courts, and dealing with opposing counsel. (*See* S.Ferrell Decl. ¶ 6.) |
| 16. | Ryan Ferrell is a licensed attorney in the State of California and was hired by NTG as an attorney in 2010. | **Objection** – irrelevant as Ryan Ferrell is not a target of NIC's Motion. **Undisputed.** |
| 17. | Ryan Ferrell stopped working for the Newport Trial Group in 2015. | **Objection** – irrelevant as Ryan Ferrell is not a target of NIC's Motion. **Undisputed.** |
| 18. | Ryan Ferrell was disbarred from the State Bar of Arizona and the Ninth Circuit Court of Appeals in 2019. | **Objection** – misleading, irrelevant and unduly prejudicial as Ryan Ferrell is not a target of NIC's Motion and the facts post-date any issue relevant to NIC's Motion. *See* FRE 401-404.[2] |

---

[2] FRE 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." For example, in *Barrett v. Negrete*, a district court held that FRE 404(b) barred admitting its issuance of sanctions against NIC's prior counsel, Carlos Negrete, as evidence to support a malicious prosecution claim against Negrete. 2010 U.S. Dist. LEXIS 52258, at *15 (S.D. 2010); *see also Rengo v. Cobane*, 2013 U.S. Dist. LEXIS 91613, at *2 (W.D. Wash. 2013) (excluding evidence of other lawsuit as "propensity evidence" in malicious prosecution action); *Williams v. City of Chi.*, 2015 U.S. Dist. LEXIS 11247, at *13 (N.D. Ill. 2015) (verdict against defendant for malicious prosecution in other litigation excluded under FRE 404(b)); *see e.g., United States v. Bevelle*, 437 Fed. Appx. 399, 405 (6th Cir. 2011) ("Informing the jury that a defendant currently on trial for conspiring to distribute drugs was involved in a

4

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | **Disputed** that the State Bar of Arizona disbarred Ryan Ferrell as he consented to this action.  The allegations against Ryan Ferrell were lodged by NIC's counsel and stemmed from (1) the allegation in this lawsuit, which have not been proven; and (2) a case R.Ferrell pursued in 2018 on behalf of Apex Law Firm.  (*See*  NIC's Exhs. 10-11.)  **Disputed** that Ryan Ferrell was disbarred from the Ninth Circuit.  He was removed from the roll of attorneys admitted to practice before the Ninth Circuit, but the Ninth Circuit does not mention disbarment.  (*See* NIC's Exh. 12.) |
| 19. | While Ryan Ferrell worked at the Newport Trial Group as an attorney, he took direction from Scott Ferrell. | **Objection** – overbroad, vague, ambiguous, misleading,  irrelevant as R.Ferrell is not a target of NIC's Motion, and the exhibit NIC cites does not provide competent evidence in support of this overbroad purported fact.  **Disputed** to the extent NIC is suggesting that Scott Ferrell is (1) aware of all work that Ryan Ferrell performed on a day-to day basis; (2) oversaw or instructed Ryan Ferrell on the details of how to perform tasks, interact with clients, NTG staff or opposing counsel; or (3) did not provide Ryan Ferrell with autonomy regarding his work. (*See, e.g.*, NIC's Exh. 9 at 69:7-70:21 (Ryan Ferrell testifying that he reported to any attorneys whose case he was working on and that he considered them to be supervisors).)  NTG's attorneys and employees are trusted and expected to use their independent judgment when |

previous, unrelated DEA investigation would presumptively prejudice the defendant.  Indeed, the prejudicial inference is so commonplace that it is enshrined in the adage, "where there is smoke, there is fire.'"); *Hickey v. Myers*, 2013 U.S. Dist. LEXIS 77419, at *10-11 (N.D.N.Y. 2013) ("It is well settled that it is improper for a court to admit evidence of prior lawsuits for the purpose of demonstrating that a plaintiff is a 'chronic litigant.'").

| | | | |
|---|---|---|---|
| | | | handling clients, cases, dealing with the courts, and dealing with opposing counsel. (*See* S.Ferrell Decl. ¶ 6.) |
| | 20. | While working for NTG, Ryan Ferrell worked on false advertising cases. | **Objection** – overbroad and irrelevant as Ryan Ferrell is not a target of NIC's Motion.<br><br>**Undisputed.** |
| | 21. | Since 2010, the Newport Trial Group has employed paralegals and legal secretaries to assist the firm's attorneys in litigation and communicate with firm clients. | **Objection** – vague, ambiguous, overbroad, and the exhibit NIC cites does not provide competent evidence in support of this overbroad purported fact.<br><br>**Undisputed** that the paralegals and legal secretaries assist the attorneys and communicate with firm clients. **Disputed** that the paralegals and secretaries assist in every piece of litigation or communicate with all firm clients for all matters NTG has ever handled. (*See* NIC's Exh. 1 at 104:23-106:8.) |
| | 22. | Carla Wise has worked at the firm as a paralegal for approximately 10 years and still works at the firm as of March 30, 2021. | **Objection** – irrelevant as Wise is not a target of NIC's Motion and does not have any RICO claims against her.<br><br>**Undisputed.** |
| | 23. | Katherine Kirshner has worked at the firm as a paralegal since 2012 and still works at the firm as of March 30, 2021. | **Objection** – irrelevant as Kirschner is not a target of NIC's Motion and does not have any RICO claims against her.<br><br>**Undisputed.** |
| | 24. | Mandy Jung has worked at the firm as a secretary and paralegal since 2015 and still works at the firm as of March 30, 2021. | **Objection** – irrelevant as Jung is not a target of NIC's Motion and does not have any RICO claims against her.<br><br>**Undisputed.** |
| | 25. | Sariah Para has worked at the firm since at least 2010 as the Office Manager and she still works at the firm as of March 30, 2021. | **Objection** – irrelevant as Para is not a target of NIC's Motion and does not have any RICO claims against her.<br><br>**Undisputed.** |
| | 26. | As Office Manager, Sariah Para coordinates firm payroll and vendors, and issues settlement checks to firm clients in plaintiff litigation. She communicates | **Objection** – irrelevant as Para is not a target of NIC's Motion and does not have any RICO claims against her.<br><br>**Disputed** that Para has substantive |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

6

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | with firm clients in her capacity as Office Manager. | conversations with clients regarding their cases. (*See* NIC's Exh. 1 at 104:23-105:3.)  Otherwise, undisputed. |
| | 27. | Sariah Para is a joint signatory on all Newport Trial Group bank accounts. | **Objection** – vague as to time and irrelevant as Para is not a target of NIC's Motion and does not have any RICO claims against her.  **Undisputed.** |
| | 28. | Since 2010, the Newport Trial Group has employed field representatives to communicate with clients, collect and provide client paperwork, and perform investigatory functions. | **Objection** – misleading, overbroad, and the exhibit NIC cites does not provide competent evidence in support of this overbroad purported fact.  **Disputed** that (1) only "field representatives . . . communicate with clients, collect and provide client paperwork, and perform investigatory functions"; and (2) that all clients communicated or worked with "field representatives."  As NIC has created this term, NTG has only ever used two field representatives:  Andrew Baslow and Wynn Ferrell.  NTG has handled many cases and represented many clients that do not involve either of these individuals.  For example, no field representative was involved with Sandoval who was the second plaintiff to pursue a claim against NIC.  (*See, e.g.*, Exh. 231 at 183:12-21.) |
| | 29. | From 2010 to 2017, Wynn Ferrell (Scott Ferrell's father) acted as a field representative for the Newport Trial Group. | **Objection** – misleading, overbroad, irrelevant as Wynn Ferrell was not involved in any of the predicate acts identified in NIC's Appendix A, and the exhibit NIC cites does not provide competent evidence in support of this overbroad purported fact.  **Disputed.**  In 2012, Wynn Ferrell spent nearly a year in China teaching English. (Exh. 231 at 97:3-16.)  Other times, he did not work at all since it was assignment specific. (*Id*. at 98:1-99:13.)  Wynn further testified that he stopped working for NTG in 2015. (*Id*. at 44:12-15.) |

7

| | | |
|---|---|---|
| 30. | Wynn Ferrell communicated with clients on behalf of the firm in false advertising cases and wiretapping cases. | **Objection** – overbroad and irrelevant as Wynn Ferrell was not involved in any of the predicate acts identified in NIC's Appendix A.<br><br>**Undisputed** that Wynn Ferrell had limited communications with Bobba, Vaughn, Morales, Rhodes, and Torres. (*See* NIC's Exhs. 49, 70, 77, RJN 15.) |
| 31. | Wynn Ferrell performed work for the NTG firm at Scott Ferrell's direction. | **Objection** – overbroad, vague, ambiguous, misleading, irrelevant as Wynn Ferrell was not involved with any case identified in NIC's Appendix A, and the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.<br><br>**Disputed** to the extent NIC is suggesting that Scott Ferrell is (1) aware of all work that Wynn Ferrell performed on a day-to day basis; (2) oversaw or instructed Wynn Ferrell on the details of how to perform tasks, interact with clients, NTG staff or opposing counsel; or (3) did not provide Wynn Ferrell with autonomy regarding his work. NTG's attorneys and employees are trusted and expected to use their independent judgment when handling clients, cases, dealing with the courts, and dealing with opposing counsel. (*See* S.Ferrell Decl. ¶ 6.) |
| 32. | When performing work for the NTG firm, Wynn Ferrell met in person with clients but also spoke with them on the phone using his home phone with the number (480) 507-2222. | **Objection** – overbroad, vague, misleading, irrelevant as Wynn Ferrell was not involved with any case identified in NIC's Appendix A, and the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.<br><br>**Disputed.** NIC has not provided any evidence in support of this irrelevant and overbroad purported fact. |
| 33. | Andrew Baslow was hired by Scott Ferrell to work as a field representative for NTG in 2011. | **Undisputed.** |
| 34. | Andrew Baslow was later promoted to "Director of Field | **Objection** – misleading and irrelevant as the change in title occurred after the |

CALLAHAN & BLAINE<br>A PROFESSIONAL LAW CORPORATION<br>3 HUTTON CENTRE DRIVE, NINTH FLOOR<br>SANTA ANA, CALIFORNIA 92707<br>TELEPHONE: (714) 241-4444<br>WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | Operations" in approximately 2013. | predicate acts at issue in NIC's Motion.

**Disputed.** Baslow testified that he received the title of Director of Field Operations when he started working full time, which was in approximately 2015, and that he did not consider this to be a promotion or change in his role. (*See* NIC's Exh. 14 at 216:19-217:1; NIC's Exh. 15 at 47:16-49:25.) |
| | 35. | Scott Ferrell directed Andrew Baslow in his work for the firm from the time he was hired until the present. | **Objection** – overbroad, vague, ambiguous, misleading, and the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.

**Disputed** to the extent NIC is suggesting that Scott Ferrell is (1) aware of all work that Baslow performs on a day-to day basis; (2) oversaw or instructed Baslow on the details of how to perform tasks or interact with clients and NTG staff; or (3) did not provide Baslow with autonomy regarding his work. (*See, e.g.,* NIC's Exh. 14 at 213:11-19, 215:14-21 (Baslow testifying that he reports to Scott and Reid); NIC's Exh. 15 at 60:15-23 (same).) NTG's attorneys and employees are trusted and expected to use their independent judgment when handling clients, cases, dealing with the courts, and dealing with opposing counsel. (*See* S.Ferrell Decl. ¶ 6.) |
| | 36. | While working for the Newport Trial Group, Baslow communicated with Scott Ferrell regarding his work for the firm daily. | **Objection** – overbroad and misleading.

**Disputed.** Baslow said he would communicate with his supervisors on a daily basis, but that his supervisors also included David Reid. (*See* NIC's Exh. 15 60:15-23.) |
| | 37. | Baslow has communicated with NTG clients using cellular phone with the phone number (818) 519-0164. | **Objection** – overbroad and misleading.

**Undisputed** that Baslow has communicated with some NTG clients using his cellular phone. |

9

| 38. | Scott Ferrell has directed Baslow to find class representatives for NTG lawsuits. | **Objection** – overbroad, vague, misleading, and the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.<br><br>**Disputed.** Scott Ferrell testified that it would not be "accurate to say that Andrew had a role in helping [NTG] find plaintiffs. It's more accurate to say that Andrew had a role in screening individuals who wanted to work with us and then at the end of the case convey to our clients that if they were pleased with our work to please refer us to their friends and family." *(Exh. 231 at 50:4-15.)* Similarly, Baslow testified that his main job at NTG was to "screen potential incoming clients" to "see if they're a good fit to retain our firm" and that included "ask[ing] them about their experience," "see[ing] how reliable they were," but "first and foremost be sure that if we were to represent them, that they were in it to benefit the public . . ." (Exh. 233 at 211:18-212:8.) He also testified that while he has been asked by Scott Ferrell to help find a suitable class representative, "it's pretty rare that that happens." *(Id. at 219:2-9.)* Instead, Baslow explained that they typically learn about potential clients in two ways: (1) through referrals from clients, family and friends, and (2) as a result of Scott Ferrell's reputation. *(Id. at 219:10-19.)* In this context, Baslow testified that "since we do get a lot of family and friend referrals and we do have a lot of clients, my network of people that I can reach out to and ask if they've had an experience with a certain product or a company after almost 10 years being with the firm is quite vast." (*Id. at 220:9-17.*) In addition, Baslow testified that "[w]e would turn away a lot more potential clients than we would actually retain – many, many more because they weren't suitable, they weren't reliable, they couldn't communicate well." (*Id. at 291:10-13.*) |
|---|---|---|

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| 39. | Newport Trial Group operates at least three bank accounts, an operating account, a reserve account, and a client trust account. | **Objection** – irrelevant.<br><br>**Undisputed.** |
|---|---|---|
| 40. | NTG issues payments to clients in false advertising and wiretapping litigation from its bank accounts. | **Objection** – irrelevant and unduly prejudicial.  NTG is required to maintain client property including settlement funds in a bank account pursuant to Cal. R. Prof. Conduct 1.15.<br><br>**Undisputed.** |
| 41. | NTG field representatives directed individuals to call specific companies in pursuit of wiretapping litigation. | **Objection** – overbroad, misleading, unduly prejudicial, and the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.<br><br>**Disputed** that NTG or its field representatives had individuals call companies for the purpose of pursuing wiretapping litigation.  Rather, NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of California's Invasion of Privacy Act ("CIPA").  (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").)  Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation.  (*See id.* at 293:9-20.)  Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med.  (See Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.)<br><br>In fact, it was impossible that the volunteer individuals would necessarily pursue litigation because it was impossible to know whether (1) the individual would receive a |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | disclosure during their as required by CIPA; or (2) whether the individual's call would actually be recorded or monitored, which is prohibited by CIPA.  (*See* Exh. 233 at 294:4-23.)<br><br>With regard to the predicate acts alleged in NIC's Appendix A, **undisputed** that Schoonover and Demulder volunteered to call Himalaya and Carter-Reed to investigate whether they were illegally recording or monitoring phone calls in violation of CIPA. |
| 42. | NTG field representatives directed potential plaintiffs to purchase products associated with lawsuits. | **Objection** – misleading, overbroad and vague, and the exhibits NIC cites regarding a case not at issue in the operative Complaint do not provide competent evidence in support of this overbroad purported fact much less any fact that relates to the predicate acts NIC alleged in Appendix A.<br><br>**Disputed**.  The only time an NTG field representative would ask a potential client to purchase a product was after confirmation that the potential client had used the product and had a claim, and only because the client had not kept proof of purchase that would verify the exact product and/or the labeling or advertising that was concerning to the potential client. (*See* Exh. 232 at 107:1- 110:16; *see also* Exh. 233 at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit.  He will have had to have used the product in the past, which I'm pretty sure [Schoonover] used [the Organix shampoo] for a really long time, and he will have had to have been dissatisfied."); 248:6-25 (explaining that Nilon could have told Baslow that Schoonover was dissatisfied with a product he had tried or used in the past); 251:3-18, 252:1-13; 252:24-253:16  (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products.").)  As a result of this |

12

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | action, NTG has referred to these as confirmatory purchases, which assisted NTG in confirming the exact product a client had purchased previously, the exact labeling or advertising that the client had seen and relied on, and the general price the client had paid for the product. |
| 43. | | Scott Ferrell directed corporate clients to take specific actions to improve or benefit litigation strategy. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – overbroad, vague, misstates the evidence, assumes facts not supported by evidence, and misleading as the exhibits NIC cites do not support NIC's argumentative contentions relating to this purported fact.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion.  Improper character evidence.  FRE 404(b).<br><br>**Disputed**.  It is undisputed that Ferrell, like any other litigation attorney, has and will provide advice to clients and that said advice will tend to "improve or benefit" their position in actual or anticipated litigation.  However, to the extent NIC contends that there is anything nefarious, unlawful or objectively baseless in the advice given by Ferrell, this purported fact is disputed as it is overbroad, is not supported by the evidence, and has mischaracterized the content of the evidence submitted.  Also disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  Eversilk is not ProMaxal and |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion.  Also disputed that there was anything nefarious, unlawful or objectively baseless in the evidence identified by NIC or with the use of the term "target."  *See* Exh. 231, at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, 136:19-137:12, and 186:2-16; *see also* Exh. 235, at 155:9-156:4, 156:10-19, and 158:2-5.)  Moreover, at deposition, Ferrell provided context to his advice when he explained that his paralegal was instructed to research "[c]ompanies that were distorting the market, that were violating our patent, that were making unsupportable claims, or that were otherwise engaged in illegal conduct."  (*See* Exh. 231 at 203:11-16.*) |
| 44. | The Newport Trial Group maintained charts in false advertising, wiretapping, Lanham Act, and ADA cases. | | **Objection** – overbroad, irrelevant and unduly prejudicial regarding whether a law firm would keep track of its cases in chart form.  Further, ADA cases are not relevant to the allegations in the case or to the predicate acts identified in Appendix A.  **Undisputed** that NTG generally maintained charts to keep track of potential cases and investigations. |
| 45. | Scott Ferrell and David Reid often discussed the importance of obtaining money and focusing on the most profitable lines of cases in plaintiff-side litigation. | | **Objection** – misleading and overbroad.  Further, the exhibits NIC cites do not provide competent evidence of this overbroad purported fact.  **Disputed** that Ferrell and Reid "often discussed the importance of obtaining money" and also **disputed** that they "often discussed the importance of . . . focusing on the most profitable lines of cases . . . ."  NIC's citations to Exhs. 200 and 201 reflect communications where they are managing firm tasks and employees.  NIC's Exh. 189 is not a communication between Ferrell and Reid.  Thus, there are 4 emails from 2015 where Scott and Dave are talking about litigation strategy, which hardly |

14

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | qualifies as "often discuss[ing] the importance of money . . ." |
|---|---|---|
| 46. | NTG often targeted companies through multiple types of cases. | **Objection** – misleading and overbroad.  Further, the exhibits NIC cites do not provide competent evidence of this overbroad purported fact.<br><br>**Disputed.**  NIC cites to Exh. 205, which refers to whether Scott Ferrell would mind if Ryan Ferrell (in 2015 after he was no longer with NTG) made a claim against a company that he believed Scott currently had a claim against.  There is no evidence as to whether that even occurred.  NIC has provided no evidence of NTG targeting companies through multiple types of cases. |

## A. **Wiretapping Scheme**

| | | |
|---|---|---|
| 47. | Beginning in 2012, NTG began threatening and pursuing lawsuits on behalf of individuals under the California Invasion of Privacy Act (CIPA). | **Undisputed** that NIC is a law firm that has filed litigation on behalf of clases of individuals whose rights were violated pursuant to numerous statutes, including the California Invasion of Privacy Act ("CIPA"). |
| 48. | At any given time, the NTG firm maintained more than thirty active wiretapping lawsuits. | **Objection** – misleading, irrelevant, unduly prejudicial, overbroad and vague as to time.<br><br>**Disputed.**  NIC has misstated the evidence.  NIC's Exh. 20 refers to 32 cases as of May 3, 2013 that are in the "seasoning stage," which is entirely different from "active [] lawsuits." The evidence will show that seasoning is a term of art that NTG uses to describe a process, which includes screening a client, investigating the facts and law, and collecting signed documents from a client.  Seasoning does not refer to "active [] lawsuits" and also does not refer to pre-litigation demands.  (*See, e.g.*, Exh. 236 at 66:11-69:23; 78:10-14 (explaining certain cases did not proceed from the seasoning stage to the demand letter phase).) |

15

| | | | |
|---|---|---|---|
| | | | NIC's Exh. 21 at NTG066666 refers to 7 lawsuits that were filed between June 2014-June 2015, but is irrelevant as none of these are cases addressed in the Operative Complaint or in Appendix A. NIC's Exh. 22 is irrelvant as these are ADA cases, none of which are addressed in the Complant or in Appendix A. |
| | 49. | The firm maintained case charts that tracked the wiretapping suits from the pre-client stage through settlement. | **Objection** – misleading, irrelevant and unduly prejudicial.<br><br>**Undisputed** that NTG maintained charts to keep track of investigations they were conducting as well as active cases.<br><br>**Disputed** that the use of charts is somehow nefarious or that NTG maintained charts of cases without clients as there are no cases without a client. |
| | 50. | The charts often listed dozens of companies and their associated toll free numbers even though the "plaintiff" column of the chart was blank. | **Objection** – irrelevant, unduly prejudicial, and improper character evidence as this chart regarding wiretap cases is from 2015, thus post-dating the cases identified in NIC's Appendix A. Nor has NIC demonstrated the impropriety of the cases NIC is citing. *See* FRE 401-404<br><br>**Undisputed** that NIC's exhibit reflects a 2015 chart that NTG had put together regarding CIPA investigations and cases, including notations where no violation was occurring. |
| | 51. | The charts identified whether the potential defendant corporation's phone line allowed a caller to bypass a recording disclosure or whether the line provided no disclosure at all. | **Objection** – misleading, irrelevant, unduly prejudicial, and improper character evidence as this chart regarding wiretap cases is from 2015, thus post-dating the cases identified in NIC's Appendix A. Nor has NIC demonstrated the impropriety of the cases NIC is citing. *See* FRE 401-404<br><br>**Disputed.** NTG's 30(b)(6) witness testified that much of the information |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | appeared to be a data dump from another source. (Exh. 231 at 89:23-90:7.) |
|---|---|---|
| 52. | Scott Ferrell directed Andrew Baslow to "audit" potential target companies by calling their toll free phone numbers and determining whether the company provided a warning that calls were recorded, whether the warning could be "bypassed" or "minimally bypassed," and whether the company recorded or monitored incoming calls. | **Objection** – misleading, irrelevant, unduly prejudicial, and improper character evidence as Exhs. 21 and 22 (charts) are from 2015, thus post-dating the cases identified in NIC's Appendix A, and do not involve audits. Nor has NIC demonstrated the impropriety of the settled cases NIC is citing. *See* FRE 401-404<br><br>**Disputed**. The only exhibit NIC cites in support of this fact is Exh. 27 and it confirm that Scott Ferrell has directed Baslow to "audit" whether companies record phone calls, but not to determine whether the warning could be bypassed in any manner. (*See* NIC's Exh. 27.) Exhs. 21, 22 and 80 are not relevant to Baslow. (NTG Depo Tr. at 94:14-98:19 |
| 53. | Andrew Baslow performed dozens of "audit" calls per day to toll free numbers from 2012 through 2014. | **Objection** – overbroad, lack of foundation, misleading, irrelevant, unduly prejudicial, and improper character evidence. *See* FRE 401-404.<br><br>**Disputed** that Baslow performed dozens of audit calls her day to toll free numbers for a period of 2-3 years (which would be over 17,500 calls over a 2-year period). (*See* NIC's Exh. 23 (reflecting AT&T records that NIC cited in support of this overbroad purported fact). |
| 54. | Baslow's audits were performed before the firm's client identified in the lawsuit made the phone call that undergirded the claim:<br><br>a. Baslow audited Nutrisystem Inc. on August 6 and 7, 2012 and Raquel Torres made her | **Objection** – lack of foundation and authentication, misleading, irrelevant, unduly prejudicial, and improper character evidence. *See* FRE 401-404; FRE 602 and 901.<br><br>**Disputed.** NIC fails to explain how the evidence ties together to allow a response. First, NIC cites Exh. 23 (Items 2301, 2307 and 2310) to |

17

| | | | |
|---|---|---|---|
| | | phone call on August 24, 2012.<br><br>b. Baslow audited Carter-Reed Co. on August 1, 2012 and Taylor Demulder made his phone call on September 6, 2012.<br><br>c. Baslow audited ChromaDex Inc. on January 28, 2013 and Andrew Nilon made his phone call on February February 26, 2013.<br><br>d. Baslow audited Himalaya Drug Company on July 16, 2012 and Sam Schoonover made his call on July 17, 2012 | compare to Exh. 50. The three calls from Exh. 23 reflect calls on Oct. 28, 2011 whereas Exh. 50 shows a call on Aug. 24, 2012 with none of the same originating or terminating numbers as the Oct. 28, 2011 calls.<br><br>Second, NIC cites Exh. 23 (Item No. 9148, 8765 and 8777), but only provided evidence of 2 of these calls purportedly occurring on Aug. 13, 2012, which doesn't line up with NIC's facts.<br><br>Third, NIC cites Exh. (Item No. 3745) to compare to Exh. 26. Item 3745 appears to be a text message on Nov. 16, 2011 to a 714 phone number whereas Exh. 26 is an email from Schoonover regarding a call to Himalaya on July 17, 2012.<br><br>Last is NIC's Exh. 29, which is an email where Schoonover states he called Himalaya at 800-869-4640.<br><br>None of this proves anything regarding NIC's purported facts. |
| 55. | | The Newport Trial Group directed wiretapping plaintiffs to make phone calls to targeted companies for the purpose of bringing a lawsuit. | **Objection** – overbroad, vague as to time, misleading.<br><br>**Disputed** that NTG or its field representatives had individuals call companies for the purpose of pursuing wiretapping litigation. Rather, NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of California's Invasion of Privacy Act ("CIPA"). (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | regarding a potential legal violation. (*See id*. at 293:9-20.)  Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med.  (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 8/26/20 at 313:1-25; Demulder Decl. ¶ 23.)<br><br>In fact, it was impossible that the volunteer individuals would necessarily pursue litigation because it was impossible to know whether (1) the individual would receive a disclosure during their as required by CIPA; or (2) whether the individual's call would actually be recorded or monitored, which is prohibited by CIPA.  (*See* Exh. 233 at 294:4-23.) |
| 56. | The firm openly referred to the lawsuits as "wiretapping" suits when communicating with clients prior to the clients' phone calls. | | **Objection** – overbroad and misleading.<br><br>**Disputed** that NTG or its field representatives had individuals call companies for the purpose of pursuing wiretapping litigation.  Rather, NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of California's Invasion of Privacy Act ("CIPA").  (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").)  Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (*See id*. at 293:9-20.)  Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med.  (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ |

19

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | 23.)<br><br>In fact, it was impossible that the volunteer individuals would necessarily pursue litigation because it was impossible to know whether (1) the individual would receive a disclosure during their as required by CIPA; or (2) whether the individual's call would actually be recorded or monitored, which is prohibited by CIPA. (*See* Exh. 233 at 294:4-23.) |
| 57. | Baslow admits that he told wiretapping plaintiffs that the purpose of their calls was to see if they would be recorded without receiving a warning. | **Objection** – overbroad and misleading.<br><br>**Disputed** that NTG or its field representatives had individuals call companies for the purpose of pursuing wiretapping litigation. Rather, NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of California's Invasion of Privacy Act ("CIPA"). (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (*See id.* at 293:9-20.) Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med. (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23<br><br>In fact, it was impossible that the volunteer individuals would necessarily pursue litigation because it was impossible to know whether (1) the individual would receive a disclosure during their as required by CIPA; or (2) whether the individual's |

| | | |
|---|---|---|
| | | call would actually be recorded or monitored, which is prohibited by CIPA.  (*See* Exh. 233 at 294:4-23.) |
| 58. | Scott Ferrell and David Reid believed that the provision of confidential and sensitive information by their clients on their calls would increase the potential settlement value of the case. | **Objection** – vague, overbroad, and misleading.<br><br>**Disputed.**  While NIC's fact is overbroad, it appears its evidence relates solely to CIPA claims.  As David Reid explained, there are two potential CIPA statutes at issue and a company's potential liability and the settlement value may not be impacted at all by whether a caller disclosed confidential or sensitive information. (Exh. 235 at 128:2-129:1.)  To the extent that NIC cites to Exh. 49, it only reflects the fact that NTG will need their client to provide accurate details of what was conveyed in any call that may have been recorded since the defendant company would have a recording of that call.  NIC misrepresents Exh. 79, which is actually a strategy discussion of seeking high damages regardless of whether a class action is certified. |
| 59. | Scott Ferrell knew that courts had considered the provision of personal information, like a social security number, as evidence supporting the inference that the call was expected to be confidential. | **Objection** – vague, overbroad, and misleading.  Further, NIC's only cite is to RJN 34, which is an opposition to a motion to dismiss that NTG filed in a CIPA case on October 29, 2012. However, the alleged predicate acts by NTG identified in Appendix A regarding the "wiretapping scheme" all occurred before October 2012 (*see* #s 1-6 (July-Sept. 2012).) Accordingly, this exhibit is irrelevant, unduly prejudicial and should be excluded.  *See* FRE 401-403.<br><br>**Disputed**.  NIC misstates the evidence.  As reflected in NIC's RJN 34 in the Table of Contents, NTG's brief pointed out that "the California Supreme Court Decided a Decade Ago that Penal Code Section 632 Protects Against . . . Recording of Telephone Conversations Regardless |

CALLAHAN & BLAINE<br>A PROFESSIONAL LAW CORPORATION<br>3 HUTTON CENTRE DRIVE, NINTH FLOOR<br>SANTA ANA, CALIFORNIA 92707<br>TELEPHONE: (714) 241-4444<br>WWW.CALLAHAN-LAW.COM

21

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | of the Content . . .” |
|---|---|---|
| 60. | Andrew Baslow directed clients to share "confirmation statements" once they completed their calls. | **Objection** – overbroad.<br><br>**Disputed** to the extent that NIC suggests that confirmation statements are improper or reflect a nefarious intent.  As Baslow explained, obtaining confirmation statements was a best practice that was implemented to make sure NTG had a summary about the caller's experience.  (Exh. 233 at 293:5-25.) |
| 61. | Andrew Baslow directed clients in the language to use in their confirmation statements. | **Objection** – vague, overbroad and misleading.<br><br>**Disputed.**  As Baslow explained, obtaining confirmation statements was a best practice that was implemented to make sure NTG had a summary about the caller's experience.   (Exh. 233 at 293:5-25.)  In order to make sure the confirmation statement included the necessary information, such as the number called, and the number called from, Baslow would give guidance to these volunteers, which would explain why confirmation statements would seem similar. |
| 62. | Baslow instructed clients not to address the confirmation statement to him personally. | **Objection** – vague, overbroad and misleading.<br><br>**Undisputed** that Baslow provided some instruction to Schoonover given that his first confirmation statement did not identify the number he called or the number he called from, which are important facts.  (*See* NIC's Exh. 26.)  However, there is no other evidence of instructions he gave to clients.  Given that the communications he had with Nilon, Schoonover and Demulder were in 2012, it is not surprising that none of them could testify to any detail regarding the conversations they had. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | (*See, e.g.*, Exh. 234 at 39:24-41:4.) |
| 63. | Baslow instructed clients not to include in their confirmation statements the fact that he directed them to make the calls or that he provided them with the phone number to call. | **Objection** – overbroad and misleading.<br><br>**Undisputed** that Baslow provided some instruction to Schoonover given that his first confirmation statement did not identify the number he called or the number he called from, which are important facts.  (*See* NIC's Exh. 26.)  However, there is no other evidence of instructions he gave to clients.  Given that the communications he had with Nilon, Schoonover and Demulder were in 2012, it is not surprising that none of them could testify to any detail regarding the conversations they had.  (*See, e.g.*, Exh. 234 at 39:24-41:4.) |
| 64. | NTG sent the confirmation statements to litigation adversaries to demonstrate the legitimacy of the claim. | **Objection** – overbroad and misleading.<br><br>**Disputed**.  NIC's overbroad statement makes this fact difficult to address.  However, as Schoonover v. Himalaya and Demulder v. Carter-Reed are the only cases at issue in Appendix A, Defendants address those by noting that there is no such evidence to support NIC's purported fact, which it is their burden to prove as the party with the burden of proof and persuasion.  NIC's citation does not support any fact with regard to the cases at issue for which thousands of documents have been produced. |
| 65. | NTG sent the confirmation statements to co-counsel to provide them with the facts to include in their complaint. | **Objection** – overbroad and misleading.<br><br>**Disputed**.  NIC's overbroad statement makes this fact difficult to address.  However, as Schoonover v. Himalaya and Demulder v. Carter-Reed are the only cases at issue in Appendix A, Defendants address those by noting that there is no evidence that NIC |

23

| | | provided Demulder's statement to the attorneys that ended up handling the case. However, as noted, this was not for co-counsel to include in their complaint, but rather so co-counsel could conduct its own due diligence. (Exh. 236 at 135:23-136:10.) |
|---|---|---|

## 1. **Schoonover v. Himalaya Drug Co.**

| 66. | On July 13, 2012 at 9:59 AM, Scott Ferrell emailed Baslow and said:<br><br>"Baz: Would you please 'audit' the below 800 numbers ((1) call and see if they auto-disclose that they record or monitor; (2) if they do not, ask a basic question or two of a customer service rep when you get through to one; (3) close by asking if they record or monitor; and (4) report back?" | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient. FRE 602 and 901.<br><br>**Undisputed** that NIC accurately quoted the email. |
|---|---|---|
| 67. | Scott Ferrell's email listed ten companies and their 800 numbers, and the first listed company was Himalaya Drug Co. at 800-869-4640. | **Objection** – NIC cannot properly argue regarding the characterization of the redacted portions of the email due to privilege.<br><br>**Undisputed** that the email lists Himalaya Drug Co. and the number noted. |
| 68. | On July 16, 2012, Andrew Baslow made dozens of phone calls to toll free numbers. | **Objection** – overbroad, lack of foundation, irrelevant and unduly prejudicial.<br><br>**Undisputed** that the AT&T records shows "dozens of phone calls" being made on July 16, 2012, but it is (1) both disputed and there is a lack of foundation that Baslow made the calls from this phone number; (2) disputed, vague and overbroad, misstates the evidence, and irrelevant regarding the statement that "dozens of phone calls [were] to toll free numbers." Phone calls to toll free numbers generically is not relevant to this case, it is unduly prejudicial, and it should be excluded. *See* FRE 401-403. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 69. | On July 16, 2012 at 1:15 PM, Baslow called Himalaya Drug Company's number (800-869-4640). | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate. FRE 602 and 901. Inadmissible hearsay. FRE 801-803.<br><br>**Disputed.** NIC's Exhibit 23 (item 3745) refers to a phone call on November 16, 2011. |
| 70. | Baslow called Himalaya Drug Company from a location in California and Himalaya Drug Company is located in Texas. | **Objection** - Lack of foundation that Baslow called Himalaya. FRE 602 and 901. Inadmissible hearsay. FRE 801-803.<br><br>**Disputed.** As explained in response to NIC's purported Fact # 69, NIC has not established that Baslow made a phone call to Himalaya, that a phone call to Himalaya was made from a location in California, or that Himalaya is located in Texas. At most, NIC's evidence establishes that Baslow lived in California in 2014. To the extent that NIC asks for judicial notice of Exhibit 2, that request is appropriate as it is a legal court document. However, NIC's citation to an allegation in the court documents made on "information and belief" that Himalaya is a Delaware corporation with its principal place of business in Texas is not admissible for the truth and does not establish that Himalaya is or was located in Texas. |
| 71. | On that call, Baslow followed Scott Ferrell's emailed instructions, asked the customer service representative what their best product is, and asked about the main ingredient is.<br><br>He then asked "are your calls recorded and monitored there at Himalaya?" to which the customer service representative responded "uh, yes." | **Objection** - Lack of foundation that Baslow called Himalaya or when any such call would have taken place. FRE 602 and 901. Inadmissible hearsay to the extent NIC cites a recording that it has not demonstrated relates to a call Baslow made. FRE 801-803.<br><br>**Disputed.** As explained in response to NIC's purported Fact # 69, NIC has not established that Baslow made a phone call to Himalaya or when that call was made. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | **Disputed** that Baslow followed Scott Ferrell's emailed instructions by asking the customer service what their best product is and the main ingredient. NIC offers to evidence of this emailed instruction. |
| 72. | Less than an hour later, at 2:03 PM, Baslow emailed Scott Ferrell and confirmed that Himalaya recorded incoming calls:<br><br>"Answers to these 10 audits are below:<br><br>Himalaya Drug Co. – spoke to CS REP and asked questions about their best products. I was never told my call was R/M until I asked at the conclusion of the conversation. The rep then confirmed that they are R/M." | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient. FRE 602 and 901.<br><br>**Undisputed** that NIC accurately quoted the email. Disputed that this email was sent "[l]ess than an hour later." NIC's statement is vague and ambiguous. Further, there is no foundation as to what this email was "an hour later" than. If it was the purported phone call by Baslow, as discussed in response to Fact # 69, NIC did not establish that Baslow made a call to Himalaya or when. |
| 73. | As used in NTG's emails, R/M means recorded or monitored. | **Objection** – lack of foundation, overbroad, NIC failed to provide evidence in support of this overbroad fact.<br><br>**Undisputed** that in certain contexts R/M means recorded or monitored. |
| 74. | As used in NTG's emails, CS REP means customer service representative. | **Objection** – lack of foundation, overbroad, NIC failed to provide evidence in support of this overbroad fact.<br><br>**Undisputed** that in certain contexts CS Rep means customer service representative. |
| 75. | On July 16, 2012 at 2:19 PM, Scott Ferrell emailed Baslow in | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

26

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

|  |  |  |
|---|---|---|
|  | response to his audit email:<br><br>"Baz: Based on the comments below, it seems like we should proceed with Himalaya Drug . . . [i]s that correct."<br><br><br>Baslow responded at 2:35pm: "Correct." | what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Undisputed** that NIC correctly quoted the email. |
| 76. | Less than 20 minutes later, on July 16, 2012 at 2:52 PM, Andrew Baslow sent Sam Schoonover a text message:<br><br>"Hey man, I've got another case for you and have confirmation that we can use you again.  You down?" | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Disputed** regarding "Less than 20 minutes later…"<br><br>**Undisputed** that NIC accurately quoted the message. |
| 77. | Schoonover responded to Baslow and said:<br><br>"Yup. Send me over the information or lemme know what I have to do" | **Undisputed** that NIC accurately quoted the message. |
| 78. | Baslow responded to Schoonover and wrote:<br><br>"This one is a little different. You won't have to buy anything. Just make a phone call, but I'll need to chat with you on the phone to tell you all the details." | **Undisputed** that NIC accurately quoted the message. |
| 79. | Schoonover and Baslow agreed to speak on the phone and Baslow told Schoonover that he will "prob wanna take a couple notes, too." | **Undisputed** that NIC accurately quoted the message. |
| 80. | On July 16, 2012 at 3:14 PM, Baslow and Schoonover spoke on the phone for six and a half minutes. | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate.  FRE 602 and 901. Inadmissible hearsay to the extent NIC cites a recording that it has not demonstrated relates to a call Baslow |

| | | | |
|---|---|---|---|
| | | | made.  FRE 801-803. **Disputed** to the extent that NIC has not laid a foundation for the phone records and the phone numbers. |
| 81. | | On that call, Baslow told Sam Schoonover "that [NTG is] investigating the fact that companies could possibly be illegally recording and monitoring conversations and to let us know if that's the experience that he has, if he's ever told by anybody, being an automated greeting or whatever, that his conversation is recorded, and then report back to us." | **Objection** – misleading. **Disputed** to the extent that NIC has not laid a foundation for the phone records and the phone numbers that purported to establish that Baslow and Schoonover spoke on July 16, 2012 at 3:14pm. **Undisputed** that Baslow testified that he generally told Schoonover something similar to what NIC has quoted, which came from Baslow's deposition testimony given approximately 8 years after the relevant time period at issue. |
| 82. | | Baslow gave Schoonover the name of the company, Himalaya Drug Company, and provided him with the phone number to call. | **Undisputed** |
| 83. | | Baslow instructed Schoonover to send him a confirmation statement describing his call. | **Disputed** to the extent that NIC suggests that confirmation statements are improper or reflect a nefarious intent.  As Baslow explained, obtaining confirmation statements was a best practice that was implemented to make sure NTG had a summary about the caller's experience.  (Exh. 233 at 293:5-25.) |
| 84. | | Baslow text messaged Schoonover telling him that he could "call tomorrow" if they are closed due to east coast hours. | **Undisputed** that NIC accurately quoted the message. |
| 85. | | The next morning, on July 17, 2012, at 8:58 AM, Schoonover called Himalaya Drug Company (800-869-4640) from his friend Austin Glenn's cell phone (714- | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | 396-6971). | **Disputed**.  NIC's own cited exhibits create a factual dispute because Exh. 28 states the call occurred at 8:58am whereas Exh. 26 states the call occurred at 9:05am.<br><br>**Undisputed** that the call was made from 714-396-6971. |
| 86. | Schoonover called Himalaya Drug Company from a location in California and Himalaya Drug Company is located in Texas. | **Objection** - Lack of foundation that Himalaya is located in Texas.  FRE 602 and 901.  Inadmissible hearsay. FRE 801-803.<br><br>**Disputed.**  As explained in response to NIC's purported Fact #70, NIC has not established that Himalaya is located in Texas. |
| 87. | On July 17, 2012 at 9:10 AM, Schoonover emailed Baslow:<br><br>"Hello Andrew, I called Himalaya drug group at 9:05AM on July 17th with the number that you provided me on July 16th at 3PM." | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Undisputed** that NIC accurately quoted the message. |
| 88. | On July 17, 2012, Schoonover texted Baslow to let him know that he had "[j]ust sent over" the confirmation statement email. | **Objection** - Lack of foundation and authentication for whether dates in this purported fact are accurate.  FRE 602 and 901.<br><br>**Undisputed** that NIC accurately quoted the message. |
| 89. | On July 17, 2012 after 9:10am Baslow texted Schoonover and said:<br><br>"Hey. Got your email. Everything is good except a few things. 1.) don't address it to me nor say that I provided you with the number 2.) please include the number you called from besides your cell and the actual number I gave you to call, and 3.) make sure you mention that through all of this nobody told you that your call would be recorded/monitored." | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Undisputed** that NIC accurately quoted the message. |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 90. | On July 17, 2012 at 9:24 AM, Schoonover sent a revised email to Baslow that complied with his instruction | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Undisputed** that Schoonover sent more than one email on July 17, 2012. |
| 91. | The revised email was not addressed to "Andrew" but simply said "Hello." | **Disputed.**  NIC's Exhibit 29 is an email from Schoonover that is addressed to Andrew Baslow's email address.  **Undisputed** that the intro to the email states "Hello." |
| 92. | The revised email no longer stated that Schoonover had been given Himalaya Drug Company's phone number. | **Undisputed** that NIC's Exh. 29 does not state that Schoonover had been given Himalaya's phone number. |
| 93. | The revised email stated that Schoonover called from 714-396-6971 (his roommate Austin Glenn's phone). | **Undisputed** that NIC's Exh. 29 states "The number I used to reach them [referring to Himalaya Drug Group] was 714-396-6971."<br><br>**Disputed** that the email says the call was made from Schoonover's roommate Austin Glenn's phone and NIC does not cite evidence to establish this foundation. |
| 94. | The revised email contained the sentence: "During the entire exchange.  No one told me that the call would be recorded/monitored. I just wanted to let someone at Trial Newport know that this was going on." | **Undisputed** that NIC has accurately quoted the email. |
| 95. | After sending the revised email, Schoonover told Baslow "K check that one" and Baslow responded "Excellent. I'll get back to you soon." | **Objection** - Lack of foundation and authentication for whether dates/times in the text messages and emails are accurate and thus what relationship they have to each other.  FRE 602 and 901.<br><br>**Undisputed** that NIC accurately quoted the messages. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 96. | Less than an hour later, on July 17, 2012 at 9:59 AM, Scott Ferrell directed Victoria Knowles to draft a complaint against Himalaya Drug Co. on behalf of Sam Schoonover.<br><br>In that email Ferrell stated that Schoonover's call to Himalaya "was monitored and recorded but that was not disclosed to client." | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Undisputed**. |
| 97. | On July 19, 2012, NTG filed a lawsuit against Himalaya Drug Co. on behalf of Sam Schoonover and a class of similarly situated persons alleging violations of the CIPA. | **Undisputed** except that the lawsuit was also on behalf of Randall Harris. |
| 98. | Scott Ferrell signed the complaint. | **Undisputed** that Scott Ferrell signed the First Amended Complaint. |
| 99. | The complaint alleged:<br><br>"In the summer of 2012, [Schoonover] called Defendant's customer service telephone number (800-869-4640) to gain information about one of Defendant's organic personal care products.<br><br>…<br><br>[Schoonover] was not aware that the call was being recorded . . . [and] [Schoonover] did not give either express or implied consent to the recording.<br><br>…<br><br>After completing her call, [Schoonover] learned that Defendant makes a habit and practice of recording *every* incoming telephone call to its customer service line." | **Objection** – misstates the evidence.<br><br>**Disputed**.  NIC's cite to RJN 2 is to the incorrect complaint thus making the citations and some of the quoted language inaccurate. |
| 100. | Those representations were false | **Objection** – argumentative, misleading, lack of foundation, and |

CALLAHAN & BLAINE<br>A PROFESSIONAL LAW CORPORATION<br>3 HUTTON CENTRE DRIVE, NINTH FLOOR<br>SANTA ANA, CALIFORNIA 92707<br>TELEPHONE (714) 241-4444<br>WWW.CALLAHAN-LAW.COM

31

because:

- Schoonover called at Andrew Baslow's direction and for the purpose of bringing a wiretapping lawsuit based on call recording practices.

- Schoonover impliedly consented to being recorded.

- Schoonover did not learn that Himalaya recorded every incoming call *after* he made his call.

improper legal conclusion.

**Disputed** that Baslow directed Schoonover to call Himalaya for the purpose of brining a wiretap lawsuit. Rather, NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA. (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (Exh. 233 at 292:4-25 at 293:9-20.) In fact, it was impossible that the volunteer individuals would necessarily pursue litigation because it was impossible to know whether (1) the individual would receive a disclosure during their as required by CIPA; or (2) whether the individual's call would actually be recorded or monitored, which is prohibited by CIPA. (*See id.* at 294:4-23.) Accordingly, it is disputed that Schoonover impliedly consented to being recorded or that he already knew Himalaya recorded every incoming call. Indeed, Himalaya denied that it had recorded Schoonover's call for many months. (*Compare* NIC's Exh. 7 at NTG006169 ("claim[ing] Himalaya does not record all calls") and NIC's Exh. 35 at NTG006229 (Himalaya claiming it was "trying to determine how [Baslow] could possibly have been provided inaccurate information") *with* NIC's Exh. 36 (Oct. 2012 before Himalaya acknowledged that Schoonover's call was recorded and said the other plaintiff, Randall Harris, had not been recorded).)

Finally, NIC has mischaracterized *Negro v. Superior Court*, 230 Cal.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

|  |  |  |
|---|---|---|
|  |  | App. 4th 879, 892 (2014). The *Negro* Court was discussing "continued use of a communication device or system after receiving notice that his or her communications may be intercepted." That has no applicability to *Schoonover v. Himalaya* where Himalaya never provided "notice" it would record phone calls. California and Ninth Circuit law has rejected the proposition that there is no need for an explicit advisement of the secret recording if the caller "knows or have reason to know" that the call may be record. *See* concurrently-filed Opposition Brief at Part.IV.A.I. |
| 101. | The complaint omitted the following facts:<br><br>• Sam Schoonover called Himalaya Drug Co. at the direction of the Newport Trial Group<br><br>• Sam Schoonover was given the phone number by an NTG agent<br><br>• Sam Schoonover made the phone call to create a pretext for a lawsuit<br><br>• Sam Schoonover knew that Himalaya Drug Co. records incoming calls when he made his phone call and did not expect privacy when he called.<br><br>• NTG investigated the viability of a lawsuit against Himalaya Drug Company before they directed Schoonover to | **Objection** – lack of foundation, argumentative, misleading.<br><br>**Disputed** to the extent NIC's fact suggests an obligation to state the facts NIC sets forth or that those facts are true. Further **disputed** that Baslow directed Schoonover to call Himalaya for the purpose of brining a wiretap lawsuit. Rather, NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA. (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (Exh. 233 at 292:4-25 at 293:9-20.) In fact, it was impossible that the volunteer individuals would necessarily pursue litigation because it was impossible to know whether (1) the individual would receive a disclosure during their as required by CIPA; or (2) whether the individual's |

| | | | |
|---|---|---|---|
| | | make his call. | call would actually be recorded or monitored, which is prohibited by CIPA. (*See id.* at 294:4-23.) Accordingly, it is disputed that Schoonover impliedly consented to being recorded or that he already knew Himalaya recorded every incoming call. Indeed, Himalaya denied that it had recorded Schoonover's call for many months. (*See* NIC's Exh. 36 (Oct. 2012 before Himalaya acknowledged that Schoonover's call was recorded and said the other plaintiff, Randall Harris, had not been recorded).) |
| | 102. | Scott Ferrell had knowledge that Andrew Baslow contacted Himalaya Drug prior to speaking with Sam Schoonover specifically about the upcoming Himalaya wiretap case. | **Objection** – lack of foundation and misstates the evidence.<br><br>**Disputed** that Scott Ferrell had knowledge that Baslow spoke to Schoonover about Himalaya. (*See* Exh. 236 at 131:5-132:11.) Further **disputed** to the extent NIC's fact suggests an obligation to state the facts NIC sets forth or that those facts are true. |
| | 103. | After the complaint was filed, Scott Ferrell communicated with counsel for Himalaya Drug Company, Angel Garganta, concerning the litigation and potential resolution of same. | **Objection** – overbroad and vague.<br><br>**Undisputed** that Scott Ferrell communicated with Himalaya's counsel, Angel Garganta, and proposed an "early, individual resolution if the defendant would agree to add an automated disclosure noting that incoming calls are recorded for quality assurance purposes." (NIC's Exh. 7 at NTG006172.) |
| | 104. | Himalay's counsel inquired into the circumstances of NTG's investigation and Schoonover's phone call. Himalaya was specifically interested in the number from which Schoonover made his call to Himalaya. | **Objection** – misleading.<br><br>**Disputed** that Himalaya's counsel inquired into the circumstances of NTG's investigation and Schoonover's phone call.<br><br>**Undisputed** that Himalaya's counsel asked for the phone number and dates that the calls were made while simultaneously deying "claim[ing] Himalaya does not record all calls." |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

34

| | | | |
|---|---|---|---|
| | | | (NIC's Exh. 7.) |
| 105. | | In response to Himalaya's request for information, Scott Ferrell emailed Andrew Baslow on 8/11/12 at 10:21am and asked about the number Schoonover used to call Himalaya.  Ferrell asked,<br><br>"Is there any reason not to share that with them, and do you know the background (is it a landline, who owns it, etc.)?  For example, I want to make sure it wasn't your [Baslow's] house, your cell, or anything like that where they [Himalaya] could link it back to us[.]" | **Objection -** lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Undisputed** that NIC has accurately quoted the email. |
| 106. | | In an email on 8/11/2012 at 10:59am, Baslow advised Scott Ferrell not to share the number with Himalaya counsel:  "I think it is best not to share number in which he called from.  It is a cell phone of his roommate Austin Glenn." | **Objection -** lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Disputed** that "Baslow advised Scott Ferrell not to share the number," but rather Baslow asks Scott Ferrell for his thoughts and states his opinion that he "think[s] it is best not to share …" (NIC's Exh. 33).  In fact, Scott Ferrell does share the number.  (NIC's Exh. 35 at NTG006228.) |
| 107. | | Austin Glenn had also been a plaintiff in CLRA litigation that was filed in April 2012. | **Objection** – irrelevant and unduly prejudicial as to the false advertising lawsuit of Glenn to the extent that NIC has not demonstrated this case lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.  Further, lack of foundation and authentication regarding who Baslow was communicating with from the phone number alleged to be Glenn since |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | Schoonover has stated that he has used Glenn's phone.<br><br>**Undisputed** that NIC's RJN 35 reflects a lawsuit with an Austin Glenn as a plaintiff, filed by the law firm of Hiden, Rott & Oertle, LLP |
| 108. | In response to Himalaya's inquiries, Dave Reid emailed Scott Ferrell and asked for information about the case and Schoonover's phone call. | **Objection** – vague and misleading.<br><br>**Undisputed** that Reid provided Scott Ferrell an update and asked Ferrell, "Do you have the number Schoonover used to call in?"  (*See* NIC's Exh. 34.) |
| 109. | In response, Scott Ferrell provided information to Reid, and advised him to "Push toward an individual settlement" because "This is probably one our weaker cases."<br><br>Ferrell nonetheless instructed Reid to inform Himalaya:  "Let him know that Sam was definitely expecting privacy since he disclosed a sensitive skin condition, depression, etc." | **Undisputed** that NIC accurately quoted the email. |
| 110. | In his phone call with Himalaya Drug on July 17, 2012, Sam Schoonover never disclosed a sensitive skin condition or depression. | **Undisputed** that the recording NIC cites does not refer to a sensitive skin condition or depression. |
| 111. | Himalaya's counsel also asked for information about the phone call placed by Baslow in July 2012:<br><br>"Scott also states … that [NTG's] investigator called and was told all calls are recorded. Can you provide the number from which the investigate called and the date?  We are trying to determine how he could possibly have been provided inaccurate information." | **Objection** – misleading and hearsay with regard to Himalaya's statements.<br><br>**Undisputed** that NIC has quoted the statement from Himalaya's counsel correctly, but **disputed** that those statements were correct or admissible for the truth of the matter asserted. (*See* NIC's Exh. 36 (Himalaya later acknowledged that the investigator did receive accurate information about the fact that Himalaya records some calls and that Himalaya had improperly recorded Schoonover's call ("He then |

CALLAHAN & BLAINE<br>A PROFESSIONAL LAW CORPORATION<br>3 HUTTON CENTRE DRIVE, NINTH FLOOR<br>SANTA ANA, CALIFORNIA 92707<br>TELEPHONE: (714) 241-4444<br>WWW.CALLAHAN-LAW.COM

36

| | | |
|---|---|---|
| | | read to me the transcript of Schoonover's call.").) |
| 112. | In response to that inquiry, Scott Ferrell falsely informed Dave Reid that NTG's investigator had "called on Wednesday, July 18th". | **Objection** – lack of foundation and misleading.<br><br>**Disputed**. The evidence NIC cites does not establish this purported fact. Nor is there any evidence that Scott Ferrell made any false statement intentionally. |
| 113. | On October 25, 2012, Dave Reid provided Scott Ferrell with an update on litigation, including the Himalaya Drug matter. In reference to Schoonover's case, Reid summarized a conversation that he had with Himalaya counsel:<br><br>"He then read me a transcript of the Schonover's call. I believe this is one of the first ones we filed so the content of the conversation is not really private or personal in any way. He just asks what their most successful product is and then nothing else is disclosed and the conversation ends." | **Undisputed** that NIC has correctly quoted this email. |
| 114. | The Himalaya matter eventually settled for $17,500, with NTG's clients (including Schoonover) each receiving $2,000 and NTG keeping the remainder. | **Objection** – misleading.<br><br>**Undisputed** that the case settled for $17,500 with Schoonover and Harris each receiving $2,000. **Disputed** that NTG "keep[s] the remainder" as NTG has out-of-pocket costs that must first be reimbursed. (*See, e.g.*, Exh. 256 (Schoonover retainer agreement explaining "costs, disbursements, and litigation expenses shall be paid out of any recovery . . .:").) |
| 115. | The settlement agreement with Himalaya Drug Company did not contain any provisions requiring changes to Himalaya's business practices or recording practices. | **Objection** – misleading and irrelevant.<br><br>**Undisputed** that the settlement agreement did not contain a provision requiring changes to Himalaya's practice of recording conversations in violation of CIPA. However, **disputed** that this was necessary because Himalaya had already |

37

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| | | | changed its practices by the time of the settlement. In fact, it was common practice for NTG to investigate whether companies had changed their practice following a demand letter or complaint. (*See, e.g.*, Exh. 257.) |
| 116. | | Scott Ferrell and NTG never informed Himalaya Drug Company or its counsel, that:<br><br>• NTG "audited" Himalaya's phone line before Schoonover called;<br><br>• NTG directed Schoonover to call Himalaya and provided him with the phone number to call for his new "case"; | **Objection** – misleading and irrelevant.<br><br>**Disputed** to the extent that NIC is suggesting that NTG or Ferrell were required to share the information. Further, NTG and Scott Ferrell did share with Himalaya's counsel that they use testers for certain cases. (*See* Exh. 236 at 40:20-41:9, 46:8-18.) |
| 117. | | Following the Himalaya Settlement, Baslow asked Schoonover to make additional phone calls for litigation: "Hey Same did you make that call?" (Nov. 1, 2012) | **Objection** – lack of foundation and misleading.<br><br>**Disputed** that Baslow was asking about a call related to a wiretapping investigation or that there is any evidence as to what this call may have related to. (*See* Schoonover 9/11/20 Depo Tr. at 103:21-104:7.) |
| 118. | | In early November 2012, Schoonover informed Baslow that he no longer wished to participate in wiretap cases, in part, because his father found those lawsuits unethical:<br><br>"I'm having an issue though. See, my dad and I are very close and we talk about everything. He's been financially helping me out with my entrepreneurial ventures and after I told him about the last case we won, he decided that he doesn't want me | **Objection** – hearsay as to what Schoonover's dad said and improper, irrelevant and unduly prejudicial opinion evidence. FRE 401-403, 701, 801-803.<br><br>**Undisputed** that NIC has accurately quoted the text message. |

CALLAHAN & BLAINE<br>
A PROFESSIONAL LAW CORPORATION<br>
3 HUTTON CENTRE DRIVE, NINTH FLOOR<br>
SANTA ANA, CALIFORNIA 92707<br>
TELEPHONE: (714) 241-4444<br>
WWW.CALLAHAN-LAW.COM

38

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | participating in any more phone call cases because he feels like its not as 'ethically correct' his words, not mine. I've tried today to convince him otherwise but he's unwilling to budge. I can't risk going forward without his consent for one, because he's my dad and were (sic) very close, and for two, because he would stop assisting me with my ventures which mean the world tome. So if you have any more product based cases, I'd be glad to assist you. It's not a judgment on you or your firm, just his own personal opinions. I wish it were different because that last 1500 and this forthcoming 2000 have been extremely helpful. Let me know if there are any product based cases ad (sic) I'd be glad to help you out." | |
| 119. | Scott Ferrell supervised Baslow in his interactions with NTG clients. | **Objection** – overbroad and misleading.<br><br>**Disputed** that Scott Ferrell is the only person that supervises Baslow or that he supervises Baslow's interactions with NTG clients. Further, depending on the case, Baslow reports to other attorneys as reflected by the evidence NIC cites. (*See* NIC's Exh. 1 at 91-92, 98-99 (testifying that Baslow "reports to the other attorneys as appropriate" and that Ferrell's supervision of Baslow's interactions with clients referred to the fact that he would "identify the best practice protocol regarding client communications" and "instruct our employees to observe them, and that includes Andrew").)<br><br>Further **disputed** to the extent NIC is suggesting that Scott Ferrell is (1) aware of all work that Baslow performs on a day-to day basis; (2) oversaw or instructed Baslow on the details of how to perform tasks or interact with clients and NTG staff; or (3) did not provide Baslow with autonomy regarding his work. (*See, e.g.*, NIC's Exh. 14 at 213:11-19, | |

39

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | 215:14-21 (Baslow testifying that he reports to Scott and Reid); NIC's Exh. 15 at 60:15-23 (same).) NTG's attorneys and employees are trusted and expected to use their independent judgment when handling clients, cases, dealing with the courts, and dealing with opposing counsel. (*See* S.Ferrell Decl. ¶ 6.) |
| 120. | Andrew Baslow followed Scott Ferrell's instructions when dealing with NTG wiretap clients. | **Objection** – overbroad and misleading.<br><br>**Disputed** that Scott Ferrell is the only person that supervises Baslow or that he supervises Baslow's interactions with NTG clients. Further, depending on the case, Baslow reports to other attorneys as reflected by the evidence NIC cites. (*See* NIC's Exh. 1 at 91-92, 98-99 (testifying that Baslow "reports to the other attorneys as appropriate" and that Ferrell's supervision of Baslow's interactions with clients referred to the fact that he would "identify the best practice protocol regarding client communications" and "instruct our employees to observe them, and that includes Andrew").) Further, while Scott Ferrell is aware of all work that Baslow performs on a day-to day basis, and oversaw or instructed Baslow on the details of how to perform tasks or interact with clients and NTG staff, he also provided Baslow with autonomy regarding his work. (*See, e.g.*, NIC's Exh. 14 at 213:11-19, 215:14-21 (Baslow testifying that he reports to Scott and Reid); NIC's Exh. 15 at 60:15-23 (same).) NTG's attorneys and employees are trusted and expected to use their independent judgment when handling clients, cases, dealing with the courts, and dealing with opposing counsel. (*See* S.Ferrell Decl. ¶ 6.) |
| 121. | Scott Ferrell was the ultimate decision-maker in NTG regarding whether the firm | **Objection** – overbroad and misleading. |

40

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | would pursue cases on behalf of specific clients. | **Disputed** that NIC has established this overly broad proposition.<br><br>**Undisputed** that Scott Ferrell testified in response to the question regarding who decided to use testers<br><br>Q: "I'm asking who at NTG decided to use tester plaintiffs in litigation?"<br><br>And Scott Ferrell responded as follows:<br><br>A: "So ultimately it's my decision and my obligation to ensure that the clients that we [NTG] work with are individuals who intend to act lawfully and ethically to help eradicate unlawful practices that harm consumers and the general public." |
| 122. | Andrew Baslow received a promotion by Scott Ferrell to Director of Field Operations. | **Disputed. Objection – misstates the facts, vague as to time and therefore irrelevant as this occurred after the predicate acts identified in Appendix A.**<br><br>NIC cites to Baslow's deposition testimony, but that testimony makes clear that this was a title change that corresponded to Baslow moving from a part-time to a full-time employee. (NIC's Exh. 14 at 215:22-217:1.) |
| 123. | On NTG's behalf, Baslow communicated with Schoonover regarding the Himalaya settlement and receipt of Schoonover's signed settlement agreement. | **Undisputed.** |
| 124. | At deposition, Sam Schoonover testified that he lacked memory of communications that he had with Andrew Baslow in 2012:<br><br>Q. Did you speak to Mr. Baslow at any point in time in July 2012?<br><br>A. I don't remember | **Objection** – misleading.<br><br>**Undisputed** that NIC has accurately quoted this specific deposition testimony, but **disputed** because NIC misrepresents the deposition testimony to suggest that Schoonover had no memory of communication with Baslow in 2012 when the questions were target to specific communications in specific months of |

41

| | | | |
|---|---|---|---|
| | | (Tr. at 73)<br><br>Q.  Do you recall whether you spoke to Mr. Baslow in May of 2012?<br><br>A.  No.<br><br>(Tr. at 75).<br><br>Q.  Did you speak with Andrew Baslow before you sued the Himalaya Drug Company?<br><br>A.  I don't remember what I spoke with him about and when the lawsuit was.<br><br>(June 2 Tr. at 16).<br><br>Q.  Now, your lawsuit against the Himalaya Drug Company, that related to a phone call you made to them, correct?<br><br>A.  Yes.<br><br>Q.  Did you speak with Andrew Baslow before you made that phone call?<br><br>A.  Don't remember.<br><br>Q.  Did you learn about the Himalaya Drug Company from Andrew Baslow?<br><br>A.  I do not remember.<br><br>(*id.* at 16-17). | 2012, which would understandably be difficulty to testify to accurately when the questions are asked more than 5 years later. |
| 125. | | Pursuant to the settlement agreement, Himalaya (a company with its principal place of business in Texas) wired $17,500 to the Newport Trial Group (a company with its principal place of business in California). | **Objection** – lack of foundation.<br><br>**Undisputed** that the settlement agreement required Himalaya to wire $17,500 to Newport Trial Group.<br><br>**Disputed** that Himalaya is a company with its principal place of business in Texas.  NIC has not provided any evidence of this. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 126. | Sam Schoonover was sent a check containing his portion of the settlement by US Mail. | **Objection** – irrelevant and misleading to the extent that NIC is suggesting that NTG mailing correspondence or client funds constitutes a predicate act when the issue is whether the claims or cases at issue are "objectively baseless" or lacking in probable cause.<br><br>**Undisputed** that NTG mailed a check to Schoonover for his portion of the settlement with Himalaya. |

## 2. Demulder v. Carter-Reed Co.

| | | |
|---|---|---|
| 127. | On June 2, 2012, Scott Ferrell sent Andrew Baslow an email asking him to locate a client for litigation against Carter-Reed:<br><br>"We would like to work with someone who has called 1-800-506-1577 to order a diet pill called Relacore, asked a few questions of a customer service rep, and not told that their call was being recorded. This one is somewhat time sensitive and needs to be an outstanding potential client whose deposition may be taken." | **Undisputed** that NIC accurately quoted the email, which refers to NTG being interested in "work[ing] with someone" and that this person would be a "potential client."<br><br>**Disputed** to the extent that NIC implies that NTG hid the fact that, at times, it used testers in an effort to eradicate companies' violations of the privacy rights protected by CIPA. (*See* Exh. 236 at 41:2-49:16.) This is consistent with the fact that NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA. (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (*See id*. at 293:9-20.) Indeed, NIC's Exhibit 39 refers to a call that Demulder made to |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | Healthy Med, but no litigation was pursued against Healthy Med. (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.) |
| 128. | | On August 1, 2012, Baslow completed an audit call to Carter-Reed by calling the phone number: 1-800-506-1577. | **Objection** - Lack of foundation and authentication for whether dates in this purported fact are accurate, what time zone, and whether for the sender or recipient. FRE 602 and 901. Further, irrelevant and unduly prejudicial as it has no bearing on whether Demulder's case lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that AT&T records indicate a call placed to 1-800-506-1577. This is consistent with the fact that NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA. (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (*See id.* at 293:9-20.) Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med. (*See* Exh. 234 at 52:17-53:3; Exh. 236 at |

44

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.) |
| 129. | On August 13, 2012, Baslow also called the phone number 800-836-3177 on two separate occasions. | **Objection** - Lack of foundation and authentication for whether dates in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.  Further, irrelevant and unduly prejudicial as it has no bearing on whether Demulder's case lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.  <br><br>**Undisputed** that AT&T records indicate 2 calls placed to 1-800-506-1577.  This is consistent with the fact that NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA.  (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").)  Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation.  (*See id.* at 293:9-20.)  Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med.  (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.) |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 130. | The number 800-836-3177 was associated with a company called "Healthy Med," which was later targeted by Demulder and NTG. | **Objection** – hearsay, lack of foundation and misleading.<br><br>**Disputed** that Demulder or NTG targeted a company called Healthy Med. Rather, NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of California's Invasion of Privacy Act ("CIPA"). (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (*See id.* at 293:9-20.) Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med. (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.) |
| 131. | Baslow later contacted Taylor Demulder by text message on August 17, 2012 at 11:44am. Baslow and Demulder also spoke by phone on August 17, 2012 for nearly 13 minutes. | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient. FRE 602 and 901. Further, irrelevant and unduly prejudicial as it has no bearing on whether Demulder's case lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | at issue in Appendix A was wrongful. |
|---|---|---|
| | | **Disputed** that NIC has provided any evidence of a text message between Demulder and Baslow. |
| | | **Undisputed** that NIC has cited AT&T records reflecting a communication with 858-335-8857.  This is consistent with the fact that NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA.  (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").)  Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation.  (*See id.* at 293:9-20.)  Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med.  (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.) |
| 132. | In total, Baslow and Demulder exchanged thirty (30) text messags on August 17, 2012. | **Objection** - Lack of foundation and authentication for whether dates in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.  Further, irrelevant and unduly prejudicial as it has no bearing on whether Demulder's case lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | at issue in Appendix A was wrongful. |
|---|---|---|
| | | **Disputed.** NIC has cited AT&T records that reflect 11 text messages to the same phone number. |
| 133. | Demulder also called Healthy Med on August 17, 2012 at 800-836-3177. | **Objection -** irrelevant and unduly prejudicial as it has no bearing on whether Demulder's case against Carter-Reed lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful. <br><br> **Undisputed** that Demulder sent an email stating he called Healthy Med on August 17, 2012 at around 3:30pm. This is consistent with the fact that NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA. (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (*See id.* at 293:9-20.) Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med. (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1- |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | 25.) ; Demulder Decl. ¶ 23.) |
| 134. | On August 18, 2012, Demulder sent Baslow a confirmation email related to a wiretap investigation involving Healthy Med.  Demulder explained that:<br><br>"I spoke with Mark at Health Med (800) 836-3177… From the start of the call to the finish Mark never told me that the call was being monitored or recorded." | **Objection -** irrelevant and unduly prejudicial as it has no bearing on whether Demulder's case against Carter-Reed lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that NIC has correctly quoted the email.  This is consistent with the fact that NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA.  (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation.  (*See id.* at 293:9-20.) Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med.  (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.) |
| 135. | On August 22, 2012, Demulder and Baslow exchanged another sixteen (16) text messages.  Baslow was the | **Objection** - Lack of foundation and authentication for whether dates in this purported fact are |

49

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | party who first initiated those text messages on that day. | accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.

**Undisputed** that NIC has cited AT&T records that reflect 16 text messages with the same phone number.  This is consistent with the fact that NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA.  (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").)  Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation.  (*See id.* at 293:9-20.)  Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med.  (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.) |
| 136. | Demulder also communicated with Baslow by phone on August 22, 2012. | **Objection** - Lack of foundation and authentication for whether dates in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.

**Undisputed** that NIC cites an AT&T record reflecting a phone call with 858-335-8857 on August 22, 2012.  This is consistent with the fact that NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed |

50

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | recording or monitoring of phone calls in violation of CIPA. (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (*See id.* at 293:9-20.) Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med. (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.) |
|---|---|---|---|
| 137. | | Three days later, on August 25, 2012, Andrew Baslow sent a follow-up email to Demulder asking for an update on the confirmation statement for Demulder's new wiretap case. The title of that email was "Re:  New Case – Relacore"<br><br>Baslow was in Israel at the time. He specifically wrote:<br><br>"Just wanted to check in with you as I have not seen your confirmation statement come through for the new Relacore wiretap case.  Do you still plan on making this call? If so, please send over your summary ASAP, as I will continue to check my e-mail for it while I am here in Israel." | **Objection** - Lack of foundation and authentication for whether dates in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Undisputed** that NIC has accurately quoted the email.  This is consistent with the fact that NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA.  (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation.  (*See id.* at 293:9-20.) Indeed, NIC's Exhibit 39 refers to |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med. (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.) |
| 138. | Baslow emailed Demulder again on September 5, 2012:<br><br>"I am back in the US now. Sent you a text message yesterday to follow up on your new case. Are you still planning on participating, or should I move forward and find someone else?" | | **Objection** - Lack of foundation and authentication for whether dates in this purported fact are accurate, what time zone, and whether for the sender or recipient. FRE 602 and 901.<br><br>**Undisputed** that NIC has accurately quoted the email. This is consistent with the fact that NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA. (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (*See id.* at 293:9-20.) Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med. (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.) |
| 139. | On or about September 6, 2012 at 8:30 a.m. Demulder called 1-800-506-1577, which he believed at that time to be associated with Carter-Reed Company, LLC ("Carter-Reed") or one of its affiliates and | | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient. FRE 602 and 901. |

52

| | | spoke with a customer service representative named Melissa. | **Disputed** that NIC has provided any evidence that Demulder knew 1-800-506-1577 was associated with Carter-Reed or one of its affiliates. According to NIC's exhibits, the customer service representative introduced herself as Melissa and said "Thank you for calling Triadalean." |
| --- | --- | --- | --- |
| | | | **Undisputed** that the law firm of Kirtland & Packard filed a Complaint alleging that Demulder called Carter-Reed. |
| | | | **Undisputed** that Carter-Reed later filed suit against Demulder and argued to the Court that Demulder had "acted in part to manufacture a claim against Carter-Reed," lied "about his identity, the location of the origin of the call, his residency, providing confidential information without prompting, bypassing the warning regarding recording the call, and the purpose of the call," all in an attempt to extort money from Carter-Reed. (*See* Exh. 290.) The Court rejected Carter-Reed's arguments finding that "there was probable cause for [Demulder's] causes of action." (*See id.*) |
| 140. | | Demulder made that call to Carter-Reed from his office phone in Las Vegas, Nevada. Carter-Reed is a company with its principal place of business in Utah. | **Objection** – lack of foundation and hearsay to the extent NIC is attempting to use RJN 1 for the truth of the matter asserted within the document filed with the Court by the law firm Kirtland & Packard. |
| | | | **Undisputed** that Demulder's call to 1-800-506-1577 was made from a land line in Las Vegas, Nevada from the office building of his former. **Disputed** that Demulder had an office in Las Vegas, Nevada. (*See* NIC's Exh. 40 at 74:18-75:8.) **Disputed** that NIC has established that Carter-Reed is a company with its principal place of business in Utah. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | **Undisputed** that Carter-Reed later filed suit against Demulder and argued to the Court that Demulder had "acted in part to manufacture a claim against Carter-Reed," lied "about his identity, the location of the origin of the call, his residency, providing confidential information without prompting, bypassing the warning regarding recording the call, and the purpose of the call," all in an attempt to extort money from Carter-Reed. (*See* Exh. 290.) The Court rejected Carter-Reed's arguments finding that "there was probable cause for [Demulder's] causes of action." (*See id.*) |
| 141. | During his call, Demulder provided a false last name. He falsely claimed to have lost his job. He falsely claimed to be overweight. He falsely claimed to have purchased the Carter-Reed product on a prior occasion. He sought to provide his social security number without being asked. | **Objection** – irrelevant, lack of foundation and hearsay to the extent NIC is attempting to use RJN 6 for the truth of the matter asserted within the document filed with the Court by Carter-Reed.<br><br>**Disputed** as to whether Demulder falsely claimed to be overweight, falsely claimed to have purchased the product on a prior occasion, and sought to provide his social security number without being asked. As NIC's cited exhibit reflects, Demulder stated that he had previously purchased the product and offered his social security number because he believed he had previously ordered the product, and also stated that he wanted to lose weight. (*See* Exh. 97; *see also* NIC's Exh. 40 at 85:23-252 and 86:4-17.) Whether this was true or not true was not known to NTG, Scott Ferrell or Baslow as this was what Demulder told them about the call. (*See* NIC's Exh. 41.) Defendants asked for these calls to be made by volunteers who wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA. (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

54

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | message to Schoonover asking if he knows any individuals "who would like to benefit the public".) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (*See id.* at 293:9-20.)

**Undisputed** that Carter-Reed later filed suit against Demulder and argued to the Court that Demulder had "acted in part to manufacture a claim against Carter-Reed," lied "about his identity, the location of the origin of the call, his residency, providing confidential information without prompting, bypassing the warning regarding recording the call, and the purpose of the call," all in an attempt to extort money from Carter-Reed. (*See* Exh. 290.) The Court rejected Carter-Reed's arguments finding that "there was probable cause for [Demulder's] causes of action." (*See id.*) |
|---|---|---|
| 142. | Like Demulder, many of NTG's wiretap clients alleged that they disclosed their social security numbers during wiretap phone calls. | **Objection** – overbroad, misleading, irrelevant and unduly prejudicial as RJN 34, 36, 37, 38, 39, 42 and Exh. 207 on the ground that they are irrelevant and unduly prejudicial as well as improper character evidence. These cases have no bearing on whether Demulder's case lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the *Demulder* lawsuit at issue in Appendix A was wrongful, which separately was not pursued by NTG, Scott Ferrell or Baslow.

**Undisputed** that NTG had clients whose right to privacy had been violated pursuant to the CIPA statutes and some of those clients had disclosed their social security number and other private |

55

| | | | |
|---|---|---|---|
| | | | information, but were not informed that their calls were being recorded.

**Disputed** to the extent that NIC is implying that the 7 lawsuits cited did not involve plaintiffs with valid claims of a CIPA violation or that those lawsuits did not involve claims where the person disclosed their social security number. |
| 143. | | NTG has used the fact that its clients disclosed social security numbers to argue in briefs that the client's calls were objectively confidential:

"The nature of such communications is inherently personal and private in nature, unlike the bare content of the communications at issue in *Hilton*, which this Court deemed to be not objectively reasonable to expect confidentiality.  Indeed, the defendants in *Hilton* pointed out that the plaintiff in that case did allege any "personal or confidential information, *such as a Social Security number.*"  Here, in contrast, Plaintiff Clark disclose[d] his social security number to Defendant's customer service representative.  Thus, the First Amended Complaint alleges precisely the type of confidential communication that would have met the legal standard articulated by the defendants in the *Hilton* action." | | **Objection** – vague, overbroad, and misleading.  Further, NIC's only cite is to RJN 34, which is an opposition to a motion to dismiss that NTG filed in a CIPA case on October 29, 2012.  However, the alleged predicate acts by NTG identified in Appendix A regarding the "wiretapping scheme" all occurred before October 2012 (*see* #s 1-6 (July-Sept. 2012).)  Accordingly, this exhibit is irrelevant, unduly prejudicial and should be excluded.  *See* FRE 401-403.

**Disputed**.  NIC misstates the evidence.  As reflected in NIC's RJN 34 in the Table of Contents, NTG's brief pointed out that "the California Supreme Court Decided a Decade Ago that Penal Code Section 632 Protects Against . . . Recording of Telephone Conversations Regardless of the Content . . .'" |
| 144. | | On September 6, 2012 at 8:30am, Demulder sent his confirmation email to Baslow by email, stating as follows:

"To whom this may concern:

I spoke with Melisa at Rela Core (800) 506-1577 at around 8:30 a.m. on 9/6/12 from (702) 407-0591. I | | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.

**Undisputed** that NIC has accurately quoted the email. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

56

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | told her my first name and then asked her to see if she could look up an account I may have already started. I then gave her my social security number and then she asked for my last name. She then proceeded to tell me about the diet pills they have to offer. I then began to tell her about my dissatisfaction with my weight and my social life and that I really wanted to loose weight. We then talked about how much weight I could loose if I used the diet pills. we then began to talk about the cost of the pills. I expressed to her that I recently lost my job and that I may not be able to afford the pills. From the start of the call to the finish Melisa never told me that the call was being monitored or recorded." | |
| 145. | Demulder was in Nevada on Septembre 6, 2012 when he exchanged emails with Baslow, who was located in California. | **Objection** - lack of foundation for where Baslow was on September 6, 2012, and irrelevant.  FRE 602 and 901.<br><br>Undisputed that Demulder was in Nevada, but this was not known to Baslow, NTG or Scott Ferrell.  (*See* NIC's Exh. 41 (Demulder signing off on his email with a California address).)<br><br>**Undisputed** that Carter-Reed later filed suit against Demulder and argued to the Court that Demulder had "acted in part to manufacture a claim against Carter-Reed," lied "about his identity, the location of the origin of the call, his residency, providing confidential information without prompting, bypassing the warning regarding recording the call, and the purpose of the call," all in an attempt to extort money from Carter-Reed.  (*See* Exh. 290.) The Court rejected Carter-Reed's arguments finding that "there was probable cause for [Demulder's] causes of action."  (*See id.*) |
| 146. | About twenty minutes later, Demulder sent Baslow an email referencing his confirmation | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | statement:<br><br>"Hey Andrew!<br><br>I hope you had a good trip!  I sent over everything and It is pretty strong.  I hope im not too late.  Thanks again and ill talk to you soon.  Have a Great day!" | are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Undisputed** that NIC has accurately quoted from the exhibit. |
| 147. | Baslow responded to Demulder one minute later on September 6, 2012 at 8:52am:<br><br>"Got it all.  Not too late.  Nice work.  I'll be in touch soon." | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Undisputed** that NIC has accurately quoted from the exhibit. |
| 148. | Later on September 6, 2012, Baslow provided Demulder's confirmation statement to NTG employees, and Scott Ferrell indicated that Demulder's wiretap case would be referred out to Kirtland & Packard. | **Objection** - Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Undisputed**. |
| 149. | NTG would send the confirmation statements to opposing counsel and also co-counsel as a means to demonstrate the merits of its wiretap cases. | **Objection** – overbroad, lack of foundation and misleading.  .<br><br>**Disputed**.  NIC's overbroad statement makes this fact difficult to address.  However, as *Schoonover v. Himalaya* and *Demulder v. Carter-Reed* are the only cases at issue in Appendix A, Defendants address those by noting that there is evidence that NIC provided Demulder's statement to the attorneys that ended up handling the case.  However, as noted, this was not for co-counsel to include in their complaint, but rather so co-counsel could conduct its own due diligence.  (Exh. 236 at 135:23-136:10.)  This is not an issue for Schoonover's CIPA claim although the opposing counsel in the *Schoonover v. Himalaya* case knew that NTG used testers just as the attorney representing Carter-Reed similarly knew that NTG |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | used testers.  (*See id*. at 41:2-49:16.) |
| 150. | | NTG referred the Demulder case to Kirtland & Packard LLP, but never informed K&P in writing that Demulder had already been a client of NTG, that Demulder had already performed a wiretap phone call earlier in August, or that Demulder was instructed to call Carter-Reed by NTG. | **Objection** – misleading.

**Disputed** that Demulder had previously been a client.  NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of CIPA.  (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").)  Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation.  (*See id.* at 293:9-20.)  Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med and he thus never became an NTG client.  (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.)

In fact, it was impossible that the volunteer individuals would necessarily pursue litigation because it was impossible to know whether (1) the individual would receive a disclosure during their as required by CIPA; or (2) whether the individual's call would actually be recorded or monitored, which is prohibited by CIPA.  (*See* Exh. 233 at 294:4-23.)

With regard to the predicate acts alleged in NIC's Appendix A, **undisputed** that Schoonover and Demulder volunteered to call |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | Himalaya and Carter-Reed to investigate whether they were illegally recording or monitoring phone calls in violation of CIPA.<br><br>**Disputed** to the extent that NIC implies that NTG hid the fact that, at times, it used testers in an effort to eradicate companies' violations of the privacy rights protected by CIPA. (*See* Exh. 236 at 41:2-49:16; *see also id.* at 164:16-165:14 (explaining that NTG does not know what Demulder shared with Kirtland & Packard, but the fact that Demulder had previously volunteered as a tester was not a secret).)<br><br>**Undisputed** that Carter-Reed later filed suit against Demulder and argued to the Court that Demulder had "acted in part to manufacture a claim against Carter-Reed," lied "about his identity, the location of the origin of the call, his residency, providing confidential information without prompting, bypassing the warning regarding recording the call, and the purpose of the call," all in an attempt to extort money from Carter-Reed. (*See* Exh. 290.) The Court rejected Carter-Reed's arguments finding that "there was probable cause for [Demulder's] causes of action." (*See id.*) |
| 151. | Demulder alleged in his Complaint that he was a resident of Las Vegas Nevada as of September 6, 2012. | | **Disputed.** (*See* NIC's RJN 1 at ¶ 1.)<br><br>**Undisputed** that Carter-Reed later filed suit against Demulder and argued to the Court that Demulder had "acted in part to manufacture a claim against Carter-Reed," lied "about his identity, the location of the origin of the call, his residency, providing confidential information without prompting, bypassing the warning regarding recording the call, and the purpose of the call," all in an attempt to extort money from Carter-Reed. (*See* Exh. 290.) The Court rejected Carter-Reed's arguments finding that "there was |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1 | | | probable cause for [Demulder's] causes of action." (*See id*.) |
| 2 | 152. | Scott Ferrell provided instructions to NTG field representatives in the Demulder matter, including instructing Wynn Ferrell and Baslow to prepare Demulder for an initial interview with Kirtland & Packard. | **Objection** – misleading. |
| | | | **Disputed** to the extent NIC is suggesting that preparing Demulder was nefarious or some form of coaching. As Baslow explained, when NTG referred a case out, "it would be standard beset practice to let the client know, hey, we're going to refer this case to another firm, here is the individual that you are going to speak to, here is the telephone number that they'll be calling from, and set up a time that works for those parties. . . . Just making sure it wasn't like a surprise that Mr. Demulder would get a call out of nowhere from another firm when he thinks that we are his attorneys." (Exh. 233 at 325:12-326:4.) Similarly, as Scott Ferrell testified, "we always tell our clients that they should not . . . speak with anyone about the case unless we've given them the authority to do so. And so in order for Heather or anyone else to speak to our clients, the clients would have to be prepared to know that she was an ally and not someone who is going to try to deceive them." (Exh. 236 at 163:21-164:2.) |
| | 153. | Scott Ferrell also offered to assist Kirtland & Packard in communicating with wiretap clients: "Can I do anything to help put you in touch with everyone, get signatures, etc.?" | **Objection** – irrelevant and misleading. |
| | | | **Undisputed** that Scott Ferrell offered to provide assistance with helping Kirtland & Packard get in touch with clients, "get signatures, etc." |
| | 154. | Despite having called Carter-Reed specifically for his "new Relacore wiretap case," in his Complaint filed against Carter-Reed, Demulder alleged that he "was not aware that the call was being recorded" and | **Objection** – argumentative and misleading. |
| | | | **Disputed** that Demulder's claims were false because he made his call |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | |
|---|---|
| that he "did not give either express or implied consent to the recording." | for the purpose of pursuing litigation, that he already knew his call would be recorded, or that he gave express or implied consent for his call to be recorded. As previously explained, NTG (at times) would utilize individuals who volunteered because they wanted to provide a service that would benefit the public by ferreting out illegal conduct such as the undisclosed recording or monitoring of phone calls in violation of California's Invasion of Privacy Act ("CIPA"). (Exh. 233 at 292:4-25; *see also* Schoonover00069 (Baslow text message to Schoonover asking if he knows any individuals "who would like to benefit the public").) Any such person who agreed to volunteer their time for this purpose was not told that it would be in pursuit of litigation, but rather that it was part of an investigation regarding a potential legal violation. (*See id.* at 293:9-20.) Indeed, NIC's Exhibit 39 refers to a call that Demulder made to Healthy Med, but no litigation was pursued against Healthy Med. (*See* Exh. 234 at 52:17-53:3; Exh. 236 at 156:5-157:23; Exh. 233 at 313:1-25; Demulder Decl. ¶ 23.)

In fact, it was impossible that the volunteer individuals would necessarily pursue litigation because it was impossible to know whether (1) the individual would receive a disclosure during their as required by CIPA; or (2) whether the individual's call would actually be recorded or monitored, which is prohibited by CIPA. (*See* Exh. 233 at 294:4-23.)

**Undisputed** that Carter-Reed later filed suit against Demulder and argued to the Court that Demulder had "acted in part to manufacture a claim against Carter-Reed," lied "about his identity, the location of the origin of the call, his residency, providing confidential information without prompting, bypassing the |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | warning regarding recording the call, and the purpose of the call," all in an attempt to extort money from Carter-Reed.  (*See* Exh. 290.) The Court rejected Carter-Reed's arguments finding that "there was probable cause for [Demulder's] causes of action."  (*See id.*) |
|---|---|---|
| 155. | Demulder alleged that "[a]fter completing his call," he learned that Carter-Reed recorded the conversation.  He also alleged that he thought his conversation was "confidential" because "such communications are carried on under circumstances that reasonably indicate that the customer-party to the communication desires it to be confined to them and Defendant." | **Undisputed** that NIC has accurately quoted allegations from the lawsuit Kirtland & Packard pursued on behalf of Demulder. |
| 156. | Demulder alleged that he had "suffered an injury in fact" from his Carter-Reed phone call. | **Undisputed** that Demulder alleged a CIPA violation and the requirement of an "injury in fact" when it comes to CIPA violation is satisfied by the act of the unauthorized recording. *See, e.g., Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1018 (C.D. Cal. 2014); *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 166 (2003)

**Undisputed** that Carter-Reed later filed suit against Demulder and argued to the Court that Demulder had "acted in part to manufacture a claim against Carter-Reed," lied "about his identity, the location of the origin of the call, his residency, providing confidential information without prompting, bypassing the warning regarding recording the call, and the purpose of the call," all in an attempt to extort money from Carter-Reed.  (*See* Exh. 290.) The Court rejected Carter-Reed's arguments finding that "there was probable cause for [Demulder's] causes of action."  (*See id.*) |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

### 3.  <u>Torres v. Nutrisystem – Demonstrating Pattern, Plan, Motive, Intent</u>

| | | |
|---|---|---|
| 157. | NTG filed a wiretap complaint against Nutrisystem in 2012 on behalf of Raquel Torres. | **Objection** – irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A.  *See* FRE 401-404.<br><br>**Undisputed.** |
| 158. | In that complaint, NTG and Torres represented to Nutrisystem, Inc. that: (1) Torres made a call to Nutrisystem on August 24, 2012 that conveyed sensitive, private, and confidential information; (2) Torres did not know the call was being recorded; (3) Torres did not give express or implied consent to the recording; and (4) Torres only learned Nutrisystem recorded her conversation *after* that call. | **Objection** – irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A.  *See* FRE 401-404.<br><br>**Undisputed** that Torres's Complaint against Nutrisystem made those accurate representations. |
| 159. | Before Torres's August 24, 2012 call to Nutrisystem, NTG's Director of Field Operations, Andrew Baslow, called Nutrisystem to determine whether Nutrisystem "recorded calls and if they provided [a recording] disclosure."  Baslow testified at deposition that he performed that task at the direction of NTG attorneys. | **Objection** – lack of foundation, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A.  *See* FRE 401-404.  Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Undisputed** that Baslow called Nutrisystem to investigate whether they recorded calls.  **Disputed** that Baslow was the Director of Field Operations in 2012.  (*See* Exh. 237 at 47:16-48:4 (testifying he received the title of Director of Field Operations when he started working full time, which was in approximately 2015)) and **Disputed** that NIC has established when Baslow called Nutrisystem, whether it was before or after Torres called on August 24, 2012. |

CALLAHAN & BLAINE<br>A PROFESSIONAL LAW CORPORATION<br>3 HUTTON CENTRE DRIVE, NINTH FLOOR<br>SANTA ANA, CALIFORNIA 92707<br>TELEPHONE: (714) 241-4444<br>WWW.CALLAHAN-LAW.COM

| 160. | Baslow called Nutrisystem five times on August 6 and 7, 2012. | **Objection** – lack of foundation, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404. Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Disputed** that NIC has established Baslow called Nutrisystem, whether it was before or after Torres called on August 24, 2012 or whether it was on August 6 and/or 7, 2012. |
| 161. | Nutrisystem's call center announced to callers that incoming calls were recorded as part of the initial automated greeting. | **Objection** – overbroad, lack of foundation, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404. Further, the exhibit NIC cites does not provide competent evidence in support of this fact.<br><br>**Disputed.** Nutrisystem has provided sworn testimony that prior to Torres filing her lawsuit in October 2012, Nutrisystem did not disclose to callers that their incoming calls would be recorded until 9 seconds into their call. (*See* NIC's RJN 40 ¶ 8.) Further, in response to Torres's lawsuit, Nutrisystem did an analysis of calls made from California area codes during the 12-month period before and after Torres made her call. (*Id.*) Nearly 20% of those calls did not receive a disclosure that their call might be recorded. (NIC's Exh. 94 at 222-2-230:15.) Nutrisystem's PMK then determined that more than 10% of those calls (during that same 12-month period) reached a customer service representative and were therefore recorded without a disclosure in violation of CIPA. (*Id.*; *see also* NIC's RJN 40 at ¶¶ |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | 26-35.) |
| 162. | In his five phone calls, Baslow learned that by pressing "1" within the first eight seconds of a call, he could bypass the automated notice of recording and reach a live Nutrisystem representative. | **Objection** – argumentative, misleading, lack of foundation, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404. Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Disputed.** NIC has not presented evidence that Baslow learned to bypass the automated notice of recording. To the contrary, Baslow explained that he was tasked with talking to a customer service representative to find out whether Nutrisystem recorded its calls and therefore pushed buttons in an effort to reach a live person. (*See* Exh. 238 at 49:16-23, 69:1-71:7. Based on the analysis Nutrisystem did in response to the Torres litigation, Nutrisystem learned that it was a common occurrence that callers would attempt to bypass the recording to reach a live person. Specifically, Nutrisystem did not disclose to callers that their incoming calls would be recorded until 9 seconds into their call. (*See* NIC's RJN 40 ¶ 8.) Nutrisystem did an analysis of calls made from California area codes during the 12-month period before and after Torres made her call. (*Id.*) Nearly 20% of those calls did not receive a disclosure that their call might be recorded. (NIC's Exh. 94 at 222-2-230:15.) Nutrisystem's PMK then determined that more than 10% of those calls (during that same 12-month period) reached a customer service representative and were therefore recorded without a disclosure in violation of CIPA. (*Id.*; *see also* NIC's RJN 40 at ¶¶ 26-35.) |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| 163. | NTG's case charts for wiretap cases indicated which companies used disclosures that could be bypassed by using the tag "minimal bypass" or MB on those charts. | **Objection** – argumentative, misleading, irrelevant, unduly prejudicial, and improper character evidence as the chart has nothing to do with the Torres case or any of the cases identified in NIC's Appendix A.  *See* FRE 401-404. Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Disputed** that these charts from 2015 have anything to do with the Torres case or any other case at issue in NIC's Complaint or Appendix A.  Indeed, NIC's Exh. 22 does not even refer to wiretap cases. |
|---|---|---|
| 164. | About two weeks after Baslow contacted Nutrisystem and discovered a dialing method that evaded the recording notice, on August 22, 2012 Torres began her attempts to contact Nutrisystem, but she apparently had the number wrong. | **Objection** – argumentative, misleading, irrelevant, unduly prejudicial, and improper character evidence as the chart has nothing to do with the Torres case or any of the cases identified in NIC's Appendix A.  *See* FRE 401-404. Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Disputed.**  The exhibit reflects the fact that Torres called 1-800-435-4497 on August 24, 2012. |
| 165. | Three hours before completing her call to Nutrisystem, on August 24, 2012 at 12:17pm, Torres's phone records show a phone call to the number associated with Wynn Ferrell, one of two NTG field representatives at the time. | **Objection** – misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.  Further, the exhibit NIC cites does not provide competent evidence in support of this fact.<br><br>**Disputed.**  The exhibit does not reflect call to any phone number associated with Wynn Ferrell. |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| 166. | Wynn Ferrell was the NTG field representative who assisted NTG in the Torres v. Nutrisystem matter. | **Objection** – misleading, overbroad, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A.  *See* FRE 401-404.  Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Undisputed** that Wynn Ferrell appears to have had some involvement when Torres was initially retaining NTG regarding the claim that Nutrisystem violated CIPA. |
|---|---|---|
| 167. | In an email on February 4, 2013, Baslow stated that Raquel Torres was "one of Wynn's people[.]" | **Objection** – misleading irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A.  *See* FRE 401-404.<br><br>**Undisputed** that Baslow made that statement.  **Disputed** that this meant anything more than the fact that Wynn Ferrell had been the field representative at NTG with whom Torres had communicated. |
| 168. | On August 27, 2012, Scott Ferrell sent Wynn Ferrell an email thanking him for assisting with wiretap cases and reminding him of the need to have clients disclose confidential information:<br><br>"As a reminder to our plaintiffs, each of them will need to advise us of what confidential information that they shared with the defendant. It will need to be completely accurate because the defendants will have a recording of the calls." | **Objection** – misleading irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A.  *See* FRE 401-404.<br><br>**Disputed** that Scott Ferrell "reminded" anyone that clients needed to disclose confidential information.  NIC misrepresents the document, which speaks for itself, and makes clear that Scott Ferrell is asking what, if any, confidential information the clients may have disclosed as it will be relevant to the claim. |

| | | |
|---|---|---|
| 169. | Several hours after connecting with the phone number associated with Wynn Ferrell, Torres dialed Nutrisystem (1-800-435-4490) and completed her call to Nutrisystem which ultimately supported her complaint. | **Objection** – lacks foundation, misleading irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404. Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Disputed** that Torres called Wynn Ferrell before her call to Nutrisystem. |
| 170. | The phone number at Nutrisystem that Torres called was not a phone number that Nutrisystem "actively marketed" to consumers at the time. | **Objection** – misleading irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.<br><br>**Disputed** as to relevance whether the phone number Torres called at Nutrisystem was not actively mamketed. Notably, Nutrisystem's PMK representative testified that the phone number Torres called had not been used in any promotions since 2008 (NIC's Exh. 94 at 58:15-60:18), this fact is irrelevant because Nutrisystem's PMK representative was forced to acknowledge during his deposition that Nutrisystem advertised the number Torres called as an active number to reach customer service at Nutrisystem (*id.* at 179:18-181:25). |
| 171. | Torres specifically pressed "1" within the first six seconds of her call to Nutrisystem on August 24, 2012, which routed her around the Nutrisystem Disclosure, and which mirrored Andrew Baslow's August 7, 2012 phone calls to Nutrisystem. | **Objection** – misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.<br><br>**Disputed** as to the fact that Torres specifically pressed 1 in order to route her around the Nutrisystem Disclosure. As Nutrisystem's PMK noted, during the 12-month |

CALLAHAN & BLAINE<br>A PROFESSIONAL LAW CORPORATION<br>3 HUTTON CENTRE DRIVE, NINTH FLOOR<br>SANTA ANA, CALIFORNIA 92707<br>TELEPHONE: (714) 241-4444<br>WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | period before and after Torres made her call, there were 64,940 calls made to Nutrisystem from phone numbers with California area codes that pressed a button and were therefore "routed . . . around the Nutrisystem Disclosure."  This was nearly 20% of the total calls in the sample size. (NIC's Exh. 94 at 222-2-230:15.) Nutrisystem's PMK then determined that more than 10% of those calls (during that same 12-month period) reached a customer service representative and were therefore recorded without a disclosure in violation of CIPA. (*Id.*; *see also* NIC's RJN 40 at ¶¶ 26-35.)  Further, Torres testified that she "tr[ies] to get somebody on the phone right away  . . . I try not to listen, but to talk to somebody." (Exh. 239 at 30:16-25; *see also* Exh. 240 at 44:6-46:16 (testifying that it is her practice to try to get to a live person right away "[b]ecause usually I don't have to sit and wait to go through the automated system").) |
| 172. | Torres gratuitously disclosed her Social Security Number when calling Nutrisystem. | | **Objection** – misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.  <br><br>**Disputed**.  It is true that Torres disclosed her Social Security Number, but it was not gratuitous. During the call itself, Torres made clear that she thought the Nutrisystem representative had asked for her SSN.  (*See* NIC's Exh. 223.)  When Torres realized she may have been mistaken about what the representative had asked for, Torres asked, "I'm sorry, what did you ask?" and then fixed her answer.  (*See id*.)  As Torres has now testified (back in 2013 and again in 2018), she disclosed her SSN because she mistakenly |

| | | |
|---|---|---|
| | | thought that was what Nutrisystem had requested. (*See* Exh. 240 at 101:11-103:7; *see* Exh. 239 at 31:1-13.)<br><br>Torres further testified that she considered the information she provided to Nutrisystem to be private and would be treated as confidential. (*See* Exh. 240 at 65:12-18; *see* Exh. 239 at 28:9-19) |
| 173. | Nutrisystem's Manager of Business Information Services testified that Raquel Torres's call pattern was extraordinary and inconsistent with the overwhelming majority of calls Nutrisystem received. | **Objection** – argumentative, misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.<br><br>**Disputed**. The Nutrisystem PMK never testified that Torres's call parttern was "extraordinary" or "inconsistent" with other calls Nutrisystem received. In fact, while Nutrisystem analyzed only a limited sample of calls, it discovered that nearly 20% of its sample had done exactly what Torres had done (*i.e.*, pushed a button to try and get to a customer service representative as quickly as possible). (NIC's Exh. 94 at 222-2-230:15; *see also* NIC's RJN 40 at ¶¶ 26-35.) Further, Nutrisystem's PMK acknowledged that almost immediately upon being sued in the *Torres v. Nutrisystem* matter, Nutrisystem decided to changes its phone systems to ensure it was comply with CIPA, *i.e.*, no caller to Nutrisystem would be recorded following Torres's lawsuit without receiving a disclosure of this fact beforehand. (NIC's Exh. 94 at 203:11-204:20.) |
| 174. | On January 23, 2013, NTG filed a motion to certify class in the Nutrisystem matter. *Torres v. Nutrisystem Inc.*, No. 8:12-cv- | **Objection** – irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

71

| | | | |
|---|---|---|---|
| | | 01854, Dkt. 17 (C.D. Cal.). | NIC's Appendix A. *See* FRE 401-404. |
| | | | **Undisputed.** |
| 175. | | On March 8, 2013, Nutrisystem filed an Opposition to NTG's Motion to Certify a Class. In that brief, Nutrisystem argued that Torres' case appeared to be an attorney-drive set-up because NTG "retained an investigator to find out exactly how to bypass the Disclosure, then found a Plaintiff who intentionally bypassed the Disclosure in the same way." | **Objection** – argumentative, hearsay, misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.<br><br>**Undisputed** that Nutrisystem filed an Opposition to NTG's Motion to Certify a Class, which is established by the Request for Judicial Notice. However, Nutrisystem's advocacy piece is hearsay, cannot be used for the truth of the matter, is irrelevant, unduly prejudicial, and improper character evidence as to the predicate acts at issue in NIC's Motion. In fact, as addressed above, Nutrisystem's conclusory argument was incorrect and is refuted by the evidence. |
| 176. | | In response to Nutrisystem's allegations, NTG filed a brief acknowledging that Nutrisystem's allegations of attorney-driven litigation involved "foul play":<br><br>"If the Court credits Defendant's completely unsupported allegations of foul-play, it would have to conclude that Plaintiff, Mr. Baslow, and Mr. Richardson have all lied." | **Objection** – argumentative, hearsay, misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.<br><br>**Undisputed** that Nutrisystem filed an Opposition to NTG's Motion to Certify a Class, which is established by the Request for Judicial Notice. However, Nutrisystem's advocacy piece is hearsay, cannot be used for the truth of the matter, is irrelevant, unduly prejudicial, and improper character evidence as to the predicate acts at issue in NIC's Motion. In fact, as addressed above, Nutrisystem's conclusory argument was incorrect and is refuted by the evidence. |

72

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 177. | Raquel Torres was scheduled for deposition in the *Nutrisystem* case for February 2013.  On February 3, 2013, Scott Ferrell sent an email instructing his employees to prepare Raquel Torres "and make sure she is absolutely ice cold[.]" | **Objection** – misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.<br><br>**Undisputed** that Scott Ferrell sent the email indicating that he wanted the named plaintiff in a case pending class certification to be completely prepared for her deposition.  **Disputed** to the extent that NIC is attempting to imply that a law firm's desire to thoroughly prepare a client for a deposition is somehow nefarious. |
| 178. | In response, Victoria Knowles inquired as to whether the NTG firm had used Torres in other cases: "Have we filed any other suits with Ms. Torres in the past?" | **Objection** – misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.<br><br>**Undisputed** that Victoria Knowles asked this question and that NTG has had clients pursue more than one case in an effort to benefit the public.  **Disputed** that Torres had any other lawsuits with NTG. |
| 179. | In preparation for Torres' deposition, on February 3, 2013, Scott Ferrell sent instructions to his subordinate attorney to prepare Torres in response to certain deposition questions. | **Objection** – argumentative, misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.<br><br>**Undisputed** that Scott Ferrell sent the email indicating that he wanted the named plaintiff in a case pending class certification to be completely prepared for her deposition.  **Disputed** to the extent that NIC is attempting to imply that a law firm's desire to thoroughly prepare a client for a deposition is somehow nefarious or that Victoria Knowles should be described as a |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

73

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

|  |  |  |
|---|---|---|
|  |  | "subordinate attorney." |
| 180. | In his 2/3/2013 email, Ferrell provided answers to anticipated questions that Torres might encounter at deposition. | **Objection** – misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.<br><br>**Disputed**. The document speaks for itself and makes clear that Ferrell was not providing answers for Torres, but rather was providing his notes, which would address the questions he thought she might be asked. |
| 181. | Ferrell instructed Knowles to prepare Torres to testify that:<br><br>• She did not speak to anyone about a potential lawsuit against Nutrisystem before calling;<br><br>• She did not speak to anyone at NTG before calling;<br><br>• The lawsuit was "not a 'set-up' or 'gotcha' of any kind. She had no intention of suing anyone until her final call, when she realized it was recorded; and<br><br>• She had not been in contact with any lawyer until after she learned that her call was secretly recorded. | **Objection** – misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.<br><br>**Disputed**. The document speaks for itself and makes clear that Ferrell was not providing answers for Torres, but rather was providing his notes, which would address the questions he thought she might be asked. |
| 182. | Prior to sending his email on Feb. 3, 2013, Scott Ferrell had never communicated with Raquel Torres about the substance or circumstances of her case. | **Objection** – misleading, irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404. Further, the exhibit NIC cites does not provide competent evidence in support of this fact. |

74

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | **Disputed**. While Scott Ferrell's testimony in 2021 was not perfect, he testified that he recalled speaking to Torres at least once, which may have been prior to sending his email on February 3, 2013. (*See* Exh. 236 at 189:21-190:13.) While 8 years later, he could not specifically recall more than that 1 meeting, that testimony does not conflict with the fact that he had taken notes regarding her claim, which were then reflected in the email he sent on February 3, 2013. |
| 183. | | Raquel Torres was deposed in the Nutrisystem matter on February 22, 2013. | **Objection** –irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404. Further, the exhibit NIC cites does not provide competent evidence in support of this fact.<br><br>**Undisputed**. |
| 184. | | Consistent with Ferrell's instructions in NTG017134, Torres testified falsely at deposition regarding the first time she communicated with NTG:<br><br>Q.  Do you remember who from the firm you contacted?<br><br>A.  I don't know who answered the phone, but I ultimately talked to Ryan Ferrell.<br><br>Q.  And was that the first time you'd ever spoken to anyone from the Newport Trial Group?<br><br>A.  Yes.<br><br>Q.  And do you remember when that was?<br><br>A.  Early September, about then. | **Objection** –irrelevant, unduly prejudicial, and improper character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404. Further, the exhibit NIC cites does not provide competent evidence in support of this fact.<br><br>**Disputed.** NIC's evidence does not support these facts. |
| 185. | | The settlement agreement in the Nutrisystem matter, signed by Scott | **Objection** – misleading, irrelevant, unduly prejudicial, and improper |

75

| | | |
|---|---|---|
| | Ferrell, did not include any provisions that would require Nutrisystem to change its business practices or recording practices. | character evidence as these facts are not material to the cases identified in NIC's Appendix A. *See* FRE 401-404.  Further, the exhibits NIC cites does not provide competent evidence in support of this fact.<br><br>**Disputed** because it is misleading since Nutrisystem had already changed its business practices and recording practices as a result of Torres's lawsuit.  (*See* NIC's Exh. 94 at 203:11-204:20 (Nutrisystem PMK testifying that Nutrisystem changed its recording/disclosure practice in 2012 shortly after receiving the Torres lawsuit, which was well before the June 2013 settlement.) |

## B. False Advertising Scheme

| | | |
|---|---|---|
| 186. | By at least 2010, NTG had begun pursuing lawsuits on behalf of individuals under California's false advertising laws. | **Objection** – overbroad and irrelevant that NTG was generally filing lawsuits as of 2010 to the extent the only lawsuit NIC cites from 2010 is not at issue as a predicate act in NIC's Appendix A.<br><br>**Undisputed** that NTG, in 2010, had filed at least one lawsuit on behalf of a group of individuals asserting defendant had engaged in false advertising.  (*See* NIC's RJN 9.) |
| 187. | Those cases were pursued under the CLRA, FAL, and UCL. | **Objection** – overbroad and irrelevant what claims NTG pursued in cases that are not at issue in NIC's Motion or part of the predicate acts listed in NIC's Appendix A, and particularly to the extent they are not cases at issue in the operative Complaint.  *See* FRE 401-404.<br><br>**Disputed.**  NIC cites RJN 9, but that case does not involve a claim pursuant to the FAL. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 188. | NTG did not act as litigation counsel in every case, but often referred clients to other law firms in exchange for a referral fee. | **Objection** – overbroad and irrelevant whether NTG referred potential cases to other law firms in exchange for a referral fee to the extent those cases are not at issue in NIC's Motion or part of the predicate acts listed in NIC's Appendix A. *See* FRE 401-404.<br><br>**Disputed.** NIC does not provide competent evidence in support of its overbroad purported fact that NTG "often referred clients to other law firms in exchange for a referral fee."<br><br>**Undisputed** that NTG referred the *Dronkers* case to another law firm and received a referral fee, but that case is not at issue in NIC's Motion or Appendix A. |
| 189. | NTG obtained false advertising clients through direct solicitation and referrals from other clients, not through advertising. | **Objection** – overbroad, vague and ambiguous regarding advertising, irrelevant, and the exhibits NIC cites do not provide competent evidence of this overbroad purported fact.<br><br>**Disputed.** The reference to "advertising" is vague and ambiguous. However, Scott Ferrell testified that the firm does advertise itself through lectures, achievements, Super Lawyer designations, and various other ways although not with radio or TV advertisements. (*Exh. 231* at 96:8-18.) |
| 190. | NTG requested that clients provide the contact information for other individuals that would be willing to be plaintiffs in pre-identified legal matters. | **Objection** – overbroad, irrelevant as it is not tied to any predicate act identified in Appendix A, and the exhibit NIC cites does not provide competent evidence of this overbroad purported fact.<br><br>**Disputed.** Scott Ferrell testified that NTG would ask former clients to refer their friends and family if appropriate. (*Exh. 231 at 50:4-* |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | *15.*)  Baslow testified that he also had been asked by Scott Ferrell to help find a suitable class representative, but "it's pretty rare that that happens." (*Exh. 233 at 219:2-9.*)  Instead, Baslow explained that they typically learn about potential clients in two ways: (1) through referrals from clients, family and friends, and (2) as a result of Scott Ferrell's reputation. (*Exh. 233 at 219:10-19.*)  In this context, Baslow testified that "since we do get a lot of family and friend  referrals and we do have a lot of clients, my network of people that I can reach out to and ask if they've had an experience with a certain product or a company after· almost 10 years being with the firm is quite vast." (*Exh. 233 at 220:9-17.*)  In addition, Baslow testified that "[w]e would turn away a lot more potential clients than we would actually retain – many, many more because they weren't suitable, they weren't reliable, they couldn't communicate well." (*Exh. 233 at 291:10-13.*) |
| 191. | NTG solicited clients to participate in litigation against companies that NTG had already identified or sued. | **Objection** – overbroad, misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A.  *See* FRE 401-404.<br><br>**Disputed.**  First, Scott Ferrell testified that NTG did not solicit clients, but would "screen[] individuals who wanted to work with us . . ." *(Exh. 231 at 50:4-15.)* Similarly, Baslow testified that his main job at NTG was to "screen potential incoming clients"  to "see if they're a good fit to retain our firm" and that included "ask[ing] them about their experience," "see[ing] how reliable they were," but "first and foremost be sure that if we were to represent them, that they were in it to benefit the public . . ." *(Exh. 233 at 211:18-212:8.)* He also testified that while he had |

been asked by Scott Ferrell to help find a suitable class representative, "it's pretty rare that that happens." (*Id. at 219:2-9.*) Instead, NTG typically learns about potential clients in two ways: (1) through referrals from clients, family and friends, and (2) as a result of Scott Ferrell's reputation. (*Id. at 219:10-19.*) In this context, Baslow testified that "since we do get a lot of family and friend referrals and we do have a lot of clients, my network of people that I can reach out to and ask if they've had an experience with a certain product or a company after· almost 10 years being with the firm is quite vast." (*Id. at 220:9-17.*)

Separately, with regard to cases involving products, Wynn Ferrell testified that the only time an NTG field representative would ask a potential client to purchase a product was after confirmation that the potential client had used the product and had a claim, and only because the client had not kept proof of purchase that would verify the exact product and/or the labeling or advertising that was concerning to the potential client. (*See* Exh. 232 at 107:1- 110:16.)

As Baslow explained in response to questions regarding Schoonover's purchase of the Organix shampoo and conditioner, "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit. He will have had to have used the product in the past, which I'm pretty sure [Schoonover] used [the Organix shampoo] for a really long time, and he will have had to have been dissatisfied." (Exh. 233 at 247:1-12; *see also id.* at 248:6-25 (explaining that Nilon could have told Baslow that Schoonover was dissatisfied with a product he had tried or used in the past); 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

79

investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products.").)

Separately, Scott Ferrell has explained that the demand letter to NIC regarding Sovereign Silver was initially sent on behalf of Trycia Carlberg, but due to Carlberg's health issues, the lawsuit was filed on behalf of Nilon after NTG learned that he also had complaints about NIC's product. (NIC's RJN 8.) Nilon also testified that he had purchased the product prior to filing the lawsuit and felt that it did not provide immune support as labeled. (*See* Exh. 241 at 76:3-12, 78:4-22, 81:5-15.) To the extent that Nilon made statements that contradict this, Nilon explained that he was coerced by NIC/Clark Baker who were actively attempting to sabotage Nilon's business. (*See, e.g.,* Exh. 258.)

With regard to the *Pfleg v. Nature's Way* case, Pfleg testified that he had used these products "at least a handful of times . . . before [he] sued Nature's Way." (Exh. 242 at 38:17-39:24.) Baslow testified that he talked to Pfleg before the March 14, 2012 purchase receipt and confirmed that Pfleg had previously used these products. (Exh. 233 at 338:16-339:18 (testifying that Pfleg told Baslow "that he had purchased Boericke & Tafel products in the past. He had tried them, they didn't work …"). This testimony is consistent with the fact that the March 14, 2012 receipt must have been a confirmatory purchase. (*See id.* at 247:1-12, 251:3-18, 252:1-13, 252:24-253:16, 335:13-336:6. Further, NIC's reference to Pfleg's confirmatory purchase receipt in March 2012 does not relate to the January 2012 demand letter because that was sent on behalf of Theresa Martinez who had purchased her product on July 27,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

80

2011.  (*See* NIC's Exh. 18.)

Last, with regard to the Bobba case, NIC relies on Bobba's post made on an Internet message board, but he recanted that statement in a sworn declaration filed with the Court.  (*See* – Exh. 259.)  He verified that he had "purchased . . . Magna-RX . . . in late 2009."  (*Id.*)  This was consistent with Wynn Ferrell's testimony that he believed Bobba had purchased the product prior to signing a retainer agreement.  (Exh. 232 at 115:13-116:13.)  At deposition, Bobba's testimony was inconsistent with his Internet post. For example, he could not identify or even reasonably describe the person who allegedly drove him to the store, gave him cash, directed him to buy a specific product, and to whom he then provided a receipt.  Nor could Bobba testify that this person was affiliated with or a representative of NTG.  Bobba also could not say that this person was Ryan Ferrell, Wynn Ferrell or anyone else who matched a description of any person at NTG. (*See* NIC's Exh. 58 at 33:2-34:5, 79:15-83:16 (testifying that some unknown person took him to the store, gave him money, and "suggested" he purchase Magna Rx); *see also* Exh. 232 at 115:13-116:13 (testifying that he never picked Bobba up in a car, drive him to a store, or give him money to buy Magna).)

Further, Bobba's credibility is shaky and an issue for the jury to consider.  (*See, e.g.*, NIC's Exh. 58 at 13:21-14:2, 76:10-78:5 (testifying he sustained serious head injuries due to assaults that were near fatal and have affected his memory); *id.* at 95:5-96:6, 103:6-9, 104:6-9 (living in sober-living environments during 2009 and 2010 at the time of Bobba's involvement with NTG).)  Indeed, Scott Ferrell was appalled when he was informed about Bobba's

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | Internet posts because they were untrue and completely inconsistent with the information they had about Bobba's experience with the product. (*See* Exh. 260 (Sept. 3, 2010 email from Scott Ferrell).) |
|---|---|---|
| 192. | NTG directed clients to purchase specific products for false advertising litigation. | **Objection** – misleading, overbroad and vague, and the exhibit NIC cites does not provide competent evidence in support of this overbroad purported fact much less any fact that relates to the predicate act NIC alleged in Appendix A.<br><br>**Disputed**. The only time an NTG field representative would ask a potential client to purchase a product was after confirmation that the potential client had used the product and had a claim and only because the client had not kept proof of purchase that would verify the exact product and/or the labeling or advertising that was concerning to the potential client. (*See* Exh. 232 at 107:1- 110:16; *see also* Exh. 233 at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit. He will have had to have used the product in the past, which I'm pretty sure [Schoonover] used [the Organix shampoo] for a really long time, and he will have had to have been dissatisfied."); 248:6-25 (explaining that Nilon could have told Baslow that Schoonover was dissatisfied with a product he had tried or used in the past); 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products.").) |
| 193. | NTG would collect the product | **Objection** – misleading, overbroad |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | receipt following the directed purchase as a means of proving the individual had been injured under the law. | and vague, and the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact much less any fact that relates to the predicate act NIC alleged in Appendix A.<br><br>**Disputed.** The only time an NTG field representative would ask a potential client to purchase a product was after confirmation that the potential client had used the product and had a claim and only because the client had not kept proof of purchase that would verify the exact product and/or the labeling or advertising that was concerning to the potential client. (*See* Exh. 232 at 107:1- 110:16; *see also* Exh. 233 at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit. He will have had to have used the product in the past, which I'm pretty sure [Schoonover] used [the Organix shampoo] for a really long time, and he will have had to have been dissatisfied."); 248:6-25 (explaining that Nilon could have told Baslow that Schoonover was dissatisfied with a product he had tried or used in the past); 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products.").) |
| 194. | NTG threatened lawsuits under the false advertising laws through demand letters. | **Objection** – misstates the evidence, overbroad, irrelevant to the predicate acts identified in NIC's Appendix A, and the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.<br><br>**Disputed.** NTG's demand letters made clear that NTG would not file lawsuits if the company agreed to stop violating the false advertising laws. (*See* NIC's Exhs. 59 and 62 |

83

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | ("we will agree to take no further action in this matter if you will agree to conform your conduct to the requirements and prohibitions of [California law]"); NIC's Exh. 60, 61 and 63 (requesting "that you agree to irrevocably stop all false and misleading advertising and labeling" of the products).) |
| 195. | NTG filed lawsuits, directly or through co-counsel for a referral fee, alleging that the defendants' false advertising plaintiff had bought the product based on its advertising, the product did not work as advertised, and that the plaintiff would not have bought the product but-for the advertising representations. | **Objection** – overbroad, the documents speak for themselves, and irrelevant to the predicate acts identified in NIC's Appendix A.<br><br>**Undisputed** that NTG filed lawsuits against Magna, NIC, Nature's Way, Kiss My Face, and Vogue that properly alleged each defendant was violating California law. |
| 196. | NTG knew those representations were false because NTG had directed the clients to make the purchases for litigation. | **Objection** – overbroad and vague, and the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact much less any fact that relates to the predicate act NIC alleged in Appendix A.<br><br>**Disputed**. The only time an NTG field representative would ask a potential client to purchase a product was after confirmation that the potential client had used the product and had a claim and only because the client had not kept proof of purchase that would verify the exact product and/or the labeling or advertising that was concerning to the potential client. (*See* Exh. 232 at 107:1- 110:16; *see also* Exh. 233 at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit. He will have had to have used the product in the past, which I'm pretty sure [Schoonover] used [the Organix shampoo] for a really long time, and he will have had to have been |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

dissatisfied."); 248:6-25 (explaining that Nilon could have told Baslow that Schoonover was dissatisfied with a product he had tried or used in the past); 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products.").)

Nilon also testified that he had purchased NIC's product prior to filing his lawsuit and felt that it did not provide immune support as labeled. *(See* Exh. 241 at 76:3-12, 78:4-22, 81:5-15.)  To the extent that Nilon made statements that contradict this, Nilon explained that he was coerced by NIC/Clark Baker who were actively attempting to sabotage Nilon's business. *(See, e.g.,* Exh. 258.)*

As to Bobba, NIC relies on Bobba's post made on an Internet message board, but he recanted that statement in a sworn declaration filed with the Court.  *(See* – Exh. 259.)  He verified that he had "purchased . . . Magna-RX . . . in late 2009."  (*Id.*)  This was consistent with Wynn Ferrell's testimony that he believed Bobba had purchased the product prior to signing a retainer agreement.  (Exh. 232 at 115:13-116:13.)  At deposition, Bobba's testimony was inconsistent with his Internet post.  For example, he could not identify or even reasonably describe the person who allegedly drove him to the store, gave him cash, directed him to buy a specific product, and to whom he then provided a receipt.  Nor could Bobba testify that this person was affiliated with or a representative of NTG.  Bobba also could not say that this person was Ryan Ferrell, Wynn Ferrell or anyone else who matched a description of any person at NTG. (*See* NIC's Exh. 58 at 33:2-34:5, 79:15-83:16 (testifying that some unknown person took him to the

85

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | store, gave him money, and "suggested" he purchase Magna Rx); *see also* Exh. 232 at 115:13-116:13 (testifying that he never picked Bobba up in a car, drive him to a store, or give him money to buy Magna).) |
| | | Further, Bobba's credibility is shaky and an issue for the jury to consider. (*See, e.g.*, NIC's Exh. 58 at 13:21-14:2, 76:10-78:5 (testifying he sustained serious head injuries due to assaults that were near fatal and have affected his memory); *id.* at 95:5-96:6, 103:6-9, 104:6-9 (living in sober-living environments during 2009 and 2010 at the time of Bobba's involvement with NTG).) Indeed, Scott Ferrell was appalled when he was informed about Bobba's Internet posts because they were untrue and completely inconsistent with the information they had about Bobba's experience with the product. (*See* Exh. 260 (Sept. 3, 2010 email from Scott Ferrell).) |
| 197. | At least two NTG clients in false advertising cases have written statements claiming that they purchased the products at the firm's direction and did not do so based on the product advertising or labeling. | **Objection** – irrelevant and unduly prejudicial as NIC's evidence does not relates to the predicate act NIC alleged in Appendix A.

**Disputed.** Nilon testified that he purchased NIC's product prior to filing his lawsuit, it was not at NTG's direction, and Nilon felt that it did not provide immune support as labeled. *(See* Exh. 241 at 76:3-12, 78:4-22, 81:5-15.) To the extent that Nilon made statements that contradict this, Nilon explained that he was coerced by NIC/Clark Baker who were actively attempting to sabotage Nilon's business. *(See, e.g., Exh.258.)*

As to Bobba, NIC relies on Bobba's post made on an Internet message board, but he recanted that statement in a sworn declaration |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

filed with the Court. (*See* – Exh. 259.) He verified that he had "purchased . . . Magna-RX . . . in late 2009." (*Id.*) This was consistent with Wynn Ferrell's testimony that he believed Bobba had purchased the product prior to signing a retainer agreement. (Exh. 232 at 115:13-116:13.) At deposition, Bobba's testimony was inconsistent with his Internet post. For example, he could not identify or even reasonably describe the person who allegedly drove him to the store, gave him cash, directed him to buy a specific product, and to whom he then provided a receipt. Nor could Bobba testify that this person was affiliated with or a representative of NTG. Bobba also could not say that this person was Ryan Ferrell, Wynn Ferrell or anyone else who matched a description of any person at NTG. (*See* NIC's Exh. 58 at 33:2-34:5, 79:15-83:16 (testifying that some unknown person took him to the store, gave him money, and "suggested" he purchase Magna Rx); *see also* Exh. 232 at 115:13-116:13 (testifying that he never picked Bobba up in a car, drive him to a store, or give him money to buy Magna).)

Further, Bobba's credibility is shaky and an issue for the jury to consider. (*See, e.g.*, NIC's Exh. 58 at 13:21-14:2, 76:10-78:5 (testifying he sustained serious head injuries due to assaults that were near fatal and have affected his memory); *id.* at 95:5-96:6, 103:6-9, 104:6-9 (living in sober-living environments during 2009 and 2010 at the time of Bobba's involvement with NTG).) Indeed, Scott Ferrell was appalled when he was informed about Bobba's Internet posts because they were untrue and completely inconsistent with the information they had about Bobba's experience with the product. (*See* Exh. 260 (Sept. 3, 2010 email from Scott Ferrell).)

| | | |
|---|---|---|
| 198. | One client has admitted under oath that he was driven to the store by an NTG agent, given cash, directed to buy a specific product, and then provided his receipt. | **Objection** – irrelevant and unduly prejudicial as NIC's evidence does not relates to the predicate act NIC alleged in Appendix A.<br><br>**Disputed.**  NIC relies on Bobba's post made on an Internet message board, but he recanted that statement in a sworn declaration filed with the Court.  (*See* – Exh. 259.)  He verified that he had "purchased . . . Magna-RX . . . in late 2009."  (*Id.*)  This was consistent with Wynn Ferrell's testimony that he believed Bobba had purchased the product prior to signing a retainer agreement.  (Exh. 232 at 115:13-116:13.)  At deposition, Bobba's testimony was inconsistent with his Internet post. For example, he could not identify or even reasonably describe the person who allegedly drove him to the store, gave him cash, directed him to buy a specific product, and to whom he then provided a receipt.  Nor could Bobba testify that this person was affiliated with or a representative of NTG.  Bobba also could not say that this person was Ryan Ferrell, Wynn Ferrell or anyone else who matched a description of any person at NTG. (*See* NIC's Exh. 58 at 33:2-34:5, 79:15-83:16 (testifying that some unknown person took him to the store, gave him money, and "suggested" he purchase Magna Rx); *see also* Exh. 232 at 115:13-116:13 (testifying that he never picked Bobba up in a car, drive him to a store, or give him money to buy Magna.)<br><br>Further, Bobba's credibility is shaky and an issue for the jury to consider.  (*See, e.g.*, NIC's Exh. 58 at 13:21-14:2, 76:10-78:5 (testifying he sustained serious head injuries due to assaults that were near fatal and have affected his memory); *id.* at 95:5-96:6, 103:6-9, 104:6-9 (living in sober- |

CALLAHAN & BLAINE<br>A PROFESSIONAL LAW CORPORATION<br>3 HUTTON CENTRE DRIVE, NINTH FLOOR<br>SANTA ANA, CALIFORNIA 92707<br>TELEPHONE: (714) 241-4444<br>WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | living environments during 2009 and 2010 at the time of Bobba's involvement with NTG).) Indeed, Scott Ferrell was appalled when he was informed about Bobba's Internet posts because they were untrue and completely inconsistent with the information they had about Bobba's experience with the product. (*See* Exh. 260 (Sept. 3, 2010 email from Scott Ferrell).) |
| 199. | NTG obtained financial payments from CLRA litigation defendants. | **Objection** – overbroad, misleading, irrelevant, and unduly prejudicial as NIC's cites relate to numerous cases not relevant to the predicate acts in NIC's Appendix A nor has NIC demonstrated the impropriety of the settled cases NIC is citing. *See* FRE 401-404.<br><br>**Undisputed** that certain cases NTG pursued based on violation of the CLRA resulted in settlements where NTG obtained a financial payment. |
| 200. | NTG would pay the clients $1,000 to $2,000 out of the settlement proceeds and keep the entire remainder. | **Objection** – overbroad, misleading, irrelevant, and unduly prejudicial as NIC's cites relate to numerous cases not relevant to the predicate acts in NIC's Appendix A nor has NIC demonstrated the impropriety of the settled cases NIC is citing. *See* FRE 401-404.<br><br>**Undisputed** that certain clients might only receive between $1,000 to $2,000 out of the settlement proceeds depending on their damage claim, which might be actual damages and/or statutory damages, whether the client was deposed or required to provide discovery responses, and how much work and costs NTG was required to put into the case. NIC's contingency fee agreements with clients made clear that the contingency fee arrangement was negotiable. **Disputed** that NTG |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | would "keep the entire remainder" as misleading because NTG would incur out-of-pocket costs for which NTG was entitled to reimbursement. (*See, e.g.*, Exh. 261 at NTG000210 (Pfleg retainer explaining "costs, disbursements, and litigation expenses shall be paid out of any recovery . . .:").) |
| 201. | NTG's clients were motivated by the desire to obtain financial compensation through the manufactured false advertising suits. | **Objection** – overbroad, misleading, argumentative, irrelevant, and unduly prejudicial as NIC's cites relate to cases not relevant to the predicate acts in NIC's Appendix A and NIC has not shown that NTG, Scott Ferrell or Baslow who are the focus of NIC's Motion were aware of any financial motivations of NTG's clients. **Disputed.** Before NTG would sign a client for a potential class action (including false advertising suits), the client was required to sign a document entitled "Duties of a Class Representative," which made clear that they were motivated by a desire to act on behalf of the public good to enforce public rights. (*See, e.g.*, Exh. 262 NTG057949.) The fact that NTG's client were motivated by the desire to obtain financial compensation is further negated by the fact that there was never any guarantee of financial compensation. (*See, e.g.*, NIC's Exh. 66 ("NTG has made no representation or warranty as to Client's entitlement to any fee award and has specifically instructed Client as to the possibility that he/she may not recover any fee award whatsoever."). The fact that Schoonover commented that he appreciated the money he received in settlement does not lead to the indisputable conclusion that he was motivated by this or that any lawsuit was manufactured. (NIC's Exh. 25.) Similarly, Nilon has made clear |

| | | that his false advertising suit was not manufactured and any statements he made that contradict this were coerced by NIC/Clark Baker who were actively attempting to sabotage Nilon's business. (*See, e.g.,* Exh. 258.*)* <br><br> Likewise, the statement Bobba made about financial motivation was entirely unknown to NTG and inconsistent with NTG's understanding about Bobba's motivations. (*See* Exh. 232 at 115:13-116:13 (confirming his belief that Bobba had purchased the product prior to signing a retainer agreement); *see also* Exh. 260- NTG011592 (Sept. 3, 2010 email from Scott Ferrell expressing dismay at Bobba's Internet post because it was completely inconsistent with the information they had about Bobba's experience with the product).) |
|---|---|---|
| 202. | A plaintiff does not have a valid claim under California's false advertising laws if they purchased the product for the purpose of bringing a lawsuit. | **Objection** – argumentative, overbroad, vague, this is a legal statement and not an appropriate factual recitation. <br><br> **Disputed** to the extent that California has many false advertising laws and Defendants are not in a position to address each one. For purposes of this motion, however, undisputed that the underlying CLRA cases that are the basis of NIC's claims did not involve plaintiffs who purchased the product for the first time for the purpose of bringing a lawsuit. (*See* S.Ferrell Decl. ¶ 8.) |
| 203. | Scott Ferrell knew that a false advertising plaintiff who purchased product for litigation did not have a valid claim under California law. | **Objection** – argumentative, overbroad, vague, this is a legal statement and not an appropriate factual recitation. <br><br> **Disputed** to the extent that California has many false advertising laws and Defendants are not in a position to address each |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | one. For purposes of this motion, however, undisputed that the underlying CLRA cases that are the basis of NIC's claims did not involve plaintiffs who purchased the product for the first time for the purpose of bringing a lawsuit. (*See* S.Ferrell Decl. ¶ 8.) |
| 204. | NTG is known in the legal community as a "CLRA shop" that brings volume litigation under the false advertising laws based on a "matrix" of products. | **Objection** – inadmissible hearsay, incompetent opinion, overbroad, and unduly prejudicial. *See* FRE 401-404; FRE 801-803.<br><br>**Disputed**. Not only is NIC unable to establish this fact with admissible evidence, it is directly contrary to the many accolades and accomplishments of NTG and Scott Ferrell (*See* S.Ferrell Decl. ¶¶ 2-3.) |

## 1. **Pfleg v. Nature's Way**

| | | |
|---|---|---|
| 205. | On January 2, 2012, Ryan Ferrell sent a demand letter on NTG letterhead to Nature's Way Products on behalf of a "California Consumer" alleging violations of California's false advertising laws. | **Undisputed** that NTG sent a letter outlining Nature's Way's false advertising for one of its products and asked Nature's Way "to conform [its] conduct to the requirements and prohibitions of the California Consumer Legal Remedies Act." (NIC's Exh. 62.) |
| 206. | On February 1, 2012, Amy Lally (counsel for Nature's Way) sent a response letter questioning the veracity of the allegations and whether NTG's client truly bought the product in reliance on the advertising. | **Objection** – hearsay that cannot be used for the truth of the matter, misleading to the extent NIC implies that letter's queries have merit, unduly prejudicial.<br><br>**Undisputed** that counsel for Nature's Way wrote a letter defending its product from NTG's demand letter that Nature's Way was violating California's false advertising laws and made queries regarding NTG's claim that Nature's Way's false advertising would be appropriately addressed as a class action. |
| 207. | On March 13, 2012 at 3:11 PM, Scott Ferrell emailed Victoria Knowles regarding "Boericke & Tafel – New homeopathy investigation" and instructed | **Undisputed** |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | Knowles as follows:<br><br>"Will you begin drafting a CLRA and complaint – I'll send you specific product info and plaintiff info in the next day or so."<br><br>Scott Ferrell also provided a link to vitamineshoppe.com. | |
| 208. | Boericke & Tafel is a Nature's Way products brand. | **Objection** – the RJN admits only the fact of the documents, but not the truth of statements within it. Further, the exhibit NIC cites does not provide competent evidence in support of this fact.<br><br>**Disputed** that NIC has established that Boericke & Tafel is a brand versus a product name. **Undisputed** that the demand letter attached to the Complaint references a product called Boericke & Tafel Arnica Montatna 30C. |
| 209. | Approximately 30 minutes later, Carla Wise informed Scott Ferrell that Nature's Way is already on Ryan Ferrell's case list, the client is Theresa Martinez, and a demand letter was sent on January 2, 2012. | **Objection** – hearsay that cannot be used for the truth of the matter, misleading to the extent NIC implies that letter's queries have merit, unduly prejudicial.<br><br>**Undisputed** and Carla Wise also noted that NTG had a proof of purchase from Ms. Martinez for July 27, 2011.  (NIC's Exh. 18 at NTG005199) |
| 210. | Scott Ferrell replied: "Even better – let's just file the complaint tomorrow.  Vic: Plead it to include all of their homeopathic products." | **Undisputed** that NIC accurately quoted the email. |
| 211. | On March 14, 2012 at 7:37 AM, Victoria Knowles told Scott Ferrell that she would begin preparing the complaint once she received a copy of Ryan Ferrell's January 2012 CLRA letter. | **Undisputed** that NIC accurately quoted the email. |
| 212. | 2 hours later, at 9:46 AM, Scott Ferrell forwarded the email chain regarding the Nature's Way matter to Andrew Baslow and said: "Bas: | **Undisputed** that NIC accurately quoted the email. |

93

| | | | |
|---|---|---|---|
| | | Can you go ahead and move forward on this?  I have concerns about the person who originally retained us." | |
| | 213. | Baslow testified that he understood Scott Ferrell's email to mean that he needed to find a class representative for a case related to the Nature's Way product. | **Objection** – lack of foundation. The exhibit NIC cites does not provide competent evidence in support of this fact.<br><br>**Disputed**.  NIC did not provide evidence in support of this fact. |
| | 214. | Approximately one and a half hours later, at 11:19 AM on March 14, 2012, Baslow sent a text message to Andrew Nilon, Sam Pfleg's close friend and co-worker. | **Objection** – lack of foundation. The exhibit NIC cites does not provide competent evidence in support of this fact.<br><br>**Undisputed** that Nilon and Pfleg were close friends.  **Disputed** that they were co-workers in March 2012.  **Disputed**.  NIC did not provide evidence that Baslow sent a text message to Nilon on March 14, 2012 at 11:19am. |
| | 215. | Andrew Nilon provided Andrew Baslow with contact information for his friends who might be interested in pursuing lawsuits with NTG. | **Objection** – overbroad and misleading.  The exhibit NIC cites does not provide competent evidence in support of this overbroad purported fact.<br><br>**Undisputed** that NIC's Exh. 24 indicates Andrew Nilon provided Baslow with the phone number of Sam Schoonover, which is different from Sam Pfleg. |
| | 216. | Five hours later, at 4:18 pm on March 14, 2012, Sam Pfleg purchased six Boericke & Tafel Nature's Way products at Vitamin Shoppe.<br><br>Pfleg purchased: Arniflora Arnica GE; Triflora Arthritis; Florasone Cream; Sciatic Aide; Nighttime Cough/BR; Cough & Bronchial; Jacked Lemon Lime; and | **Objection** – lack of foundation because NIC did not establish Fact # 214, which is the basis for the premise of "Five hours later …"<br><br>**Disputed** that NIC has demonstrated that Pfleg's purchase was "five hours later" than any other event.  **Undisputed** that NIC's Exh. 65 includes a receipt dated March 14, 2012 reflecting purchases Sam |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | Braintoniq | Pfleg made. **Disputed** that NIC has shown what the relationship is between these products, Boericke & Tafel and Nature's Way. |
| 217. | The Vitamin Shoppe store was fifteen to twenty minutes by motor vehicle from Pfleg's residential address at the time. | **Objection** – lack of foundation, irrelevant and unduly prejudicial. Further, the exhibits NIC cites do not provide competent evidence in support of this fact. <br><br> **Disputed** that NIC has shown that the store was 20 minutes from Pfleg's residence at the time or that Pfleg traveled to the Vitamin Shoppe from his home or that he went home after visiting the Vitamin Shoppe. |
| 218. | Just three minutes after completing his purchase, at 4:21 PM, Sam Pfleg calls Andrew Nilon and they speak for six minutes. | **Objection** – lack of foundation, Further, the exhibits NIC cites do not provide competent evidence in support of this fact. <br><br> **Disputed.** NIC cites to Exh. 23 (Item No. 6655), but this is a December 13, 2011 call. Further, NIC does not establish that Exh. 23 is a phone record for Pfleg or Nilon. |
| 219. | Just 40 minutes after Pfleg and Nilon end their call, Andrew Baslow sends Pfleg two text messages at 5:07 PM. | **Objection** – lack of foundation because NIC did not establish Fact # 218, which is the basis for the premise of "Just 40 minutes after Pfleg and Nilon end their call …" Further, the exhibits NIC cites do not provide competent evidence in support of this fact. <br><br> **Disputed.** NIC has not established the premise that Pleg and Nilon had a call 40 minutes earlier on March 14, 2012 and NIC's Exh. 211 (Items 19039 and 19040) shows text messages on March 15, 2012. |
| 220. | Approximately three hours later, at 8:20 PM, Sam Pfleg emails his Vitamin Shoppe receipt to Baslow's direct email address at the Newport Trial Group. | **Objection** – lack of foundation because NIC did not establish Fact # 218 or 219, which is the basis for the premise of "Approximately three hours later, at 8:20pm …" |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

95

| | | |
|---|---|---|
| | | **Disputed**. NIC has not established the premise that Pleg and Nilon had a call on March 14, 2012and NIC's Exh. 211 (Items 19039 and 19040) showed text messages on March 15, 2012.

**Undisputed** that Pfleg sent an email to Baslow on March 14, 2012 at 8:20pm with a receipt from Vitamin Shoppe. |
| 221. | Baslow then forwarded the receipt to Scott Ferrell and other NTG employees. | **Undisputed** that Baslow forwarded the March 14, 2012 email from Pfleg to Christine Loeza with a cc to Scott Ferrell and Carla Wise. |
| 222. | At 8:31 PM, Baslow emailed Scott Ferrell and Knowles stating that he has a "new client who purchased half a dozen Boericke & Tafel Homeopathy products at the Vitamin Shoppe, is dissatisfied, has [proof of purchase] and would like to move forward." | **Undisputed** that NIC has accurately quoted the email that Baslow sent Scott Ferrell with a cc to others. |
| 223. | Notably, on the same day that Pfleg purchased the Nature's Way products after Baslow was directed to find a client, Baslow contacted Sam Schoonover based on Nilon's referral and directed him to buy a product for litigation. | **Objection** – argumentative, misleading, and lack of foundation.

**Disputed** as misleading to the extent NIC is stating that Pfleg and Schoonover were directed to buy products for litigation. The only time an NTG field representative would ask a potential client to purchase a product was after confirmation that the potential client had used the product and had a claim, and only because the client had not kept proof of purchase that would verify the exact product and/or the labeling or advertising that was concerning to the potential client. (*See* Exh. 232 at 107:1-110:16; *see also* Exh. 233 at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit. He will have had to have used the product in the past, |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | which I'm pretty sure [Schoonover] used [the Organix shampoo] for a really long time, and he will have had to have been dissatisfied."); *id*. at 248:6-25 (explaining that Nilon could have told Baslow that Schoonover was dissatisfied with a product he had tried or used in the past); *id*. at 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products."); *id*. at 335:13-336:6 (testifying that he would have talked to Pfleg before the March 14, 2012 purchase receipt regarding whether he had used the products "because [] we don't just contact clients, suitable representatives, and say, go purchase these products and you can serve as a class representative or a plaintiff in a lawsuit. We don't do that. I don't do that."); *id*. at 338:16-339;18 (testifying that Pfleg told Baslow "that he had purchased Boericke & Tafel products in the past. He had tried them, they didn't work …").) |
| 224. | | Baslow also requested that Schoonover provide him with the names of individuals that would be interested in serving as class representatives on cases NTG already had. | **Objection** – misleading and argumentative.<br><br>**Disputed.** NIC's Exh. reflects Baslow's question to Schoonover of "Do you happen to have any other contacts available who would like to benefit the public?" There is no reference to "serving as class representatives on cases NTG already had." |
| 225. | | Similarly, Baslow contacted Nilon shortly after he was asked to find a client and Pfleg called Nilon minutes after he purchased the Boericke & Tafel products. | **Objection** – lack of foundation, Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Disputed.** NIC's Exh. 23 (Item No. 14633) reflects a call on January 9, 2013 and NIC has not established this is a call with Nilon or Pfleg. Likewise, NIC's Exh. 23 (Item No. 6655) appears to be a text message on December 13, 2011, and NIC has |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | not established that this is with Nilon or Pfleg. |
| 226. | Pfleg sent the receipt directly to Baslow's firm email address even though they had never met in-person or communicated with each other prior. | **Objection** – argumentative, misleading, and lack of foundation. Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Disputed**.  NIC's Exh. 65 indicates that Pfleg sent an email to Baslow's personal email address.  Further, while Baslow did not have an explicit memory of a conversation that would have occurred 8 ½ years before his deposition was taken, Baslow testified that he would have talked to Pfleg before the March 14, 2012 purchase receipt regarding whether he had used the products "because [] we don't just contact clients, suitable representatives, and say, go purchase these products and you can serve as a class representative or a plaintiff in a lawsuit.  We don't do that.  I don't do that."  (Exh. 233 at 335:13-336:6; *see also id.* at 338:16-339; 18 (testifying that Pfleg told Baslow "that he had purchased Boericke & Tafel products in the past.  He had tried them, they didn't work …").) |
| 227. | On March 15, 2012, Baslow sends Pfleg retention documents, including a retainer agreement and NTG's "Duties of a Class Representative" document. Baslow also send Pfleg various venue declarations for signature. | **Objection** – lack of foundation as NIC is attempting to use a privilege log to establish the facts asserted.<br><br>**Disputed**.  NIC has not presented competent evidence of this fact. |
| 228. | That same day, Pfleg signs and returns the retainer agreement, Duties of a Class Representative document, and the various venue declarations. | **Objection** – lack of foundation as this fact is premised on NIC establishing fact # 227, which it did not.  Likewise, NIC's attempt to establish additional facts here with the use of a privilege reflects a lack of competent evidence.<br><br>**Undisputed** that Exh. 66 reflects the fact that Pfleg signed a retainer agreement and wrote the date as 3-15-12. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

98

| 229. | Although the retainer agreement was styled as a contingency fee agreement, the agreement contained no provision delineating the terms of the contingency arrangement in the event of recovery (i.e., the percentage recovery for the client versus the firm). | **Objection** – argumentative and misleading.<br><br>**Disputed**. NTG's contingency retainer agreements on class action matters generally do not specify a percentage or amount that the client may be entitled to receive because that could make the class representative unsuitable and/or create a conflict that would disqualify class counsel. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959-960 (9th Cir. 2009) (holding that incentive agreements with class representatives that were tied to the amount requested and obtained "put class counsel and the contracting class representatives into a conflict position from day one" and "created an unacceptable disconnect between the interests of the contracting representatives and class counsel, on the one hand, and members of the class on the other."); *see also Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) ( "a disparate distribution favoring the named plaintiffs requires careful judicial scrutiny into whether the settlement allocation is fair to the absent members of the class" and creates an "inference of unfairness").<br><br>Further, Cal. Bus. & Prof. Code § 6147(a)(2) states that the contract will be voidable at the choice of the client if the agreement does not include a "statement of the contingency fee rate that the client and attorney have agreed upon." (Emphasis added.) However, the retainer agreements at issue here were for representation on a contingency basis in class action matters. (*See* NIC's Exh. 66 at 2 (stating in the first sentence that NTG "will represent you as a putative class representative") and at 3 (explaining legal fees and costs will only be paid if "a recovery is obtainer for Client and/or the putative class or approved by an appropriate Court" and that client |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | may be entitled "as a class representative, to an 'enhancement fee' award to be determined by the Court.".) Because of this, the retainer agreement "tracks the language for model engagement letters designed to ensure that the engagement letter itself won't serve as a source of potential disqualification to the plaintiff as a class representative by giving the individual incentives that might be contrary to class." (*See* Exh. 231 at 63:6-65:25 (also noting "it would not be a best practice, in a class action case, to specify the division that an individual would expect s you phrased it, because it could make them an unsuitable class representative" because "it would have been a potentially disqualifying factor if NTG had promised to pay [a class action representative] a certain amount of money in this retainer agreement").) For similar reasons, the retainer agreement confirms that "NTG has made no representation or warrant as to Client's entitlement to any fee award and has specifically instructed Client as to the possibility that he/she may not recover any fee award whatsoever." (NIC's Exh. 66 at 3.) In addition, the retainer agreement makes clear that the fee arrangement is "not set by law" and "negotiable" between NTG and the client. (*Id.*) |
| 230. | On March 15, 2012, Knowles drafts a new demand letter to Nature's Way based on Pfleg's purchase, Scott Ferrell reviews the demand letter, and the demand letter is sent to Nature's Way Products. | | **Objection** – misleading. Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Disputed** that NIC has established that Knowles "drafts a new demand letter to Nature's Way …" Rather, Knowles refers to a letter that was sent that day. |
| 231. | The March 15, 2012 demand letter that Scott Ferrell sent to Nature's Way Product was sent by Certified | | **Undisputed** that the letter states it was sent "by certified mail-return receipt requested" and contains an |

| | | US Mail from California to Utah. | address in Utah. Whether this was the manner in which the demand letter was actually sent is not clear from this document nor is it clear that it went to Utah. |
|---|---|---|---|
| | 232. | The March 15, 2012 demand letter represented that "[Nature's Way Products'] misleading marketing and advertising of [Arnica Montana 30C], and similar products, caused [Sam Pfleg] to purchase this product but she(sic) did not experience any of the promised benefits. In fact, the product was completely useless to her." | **Undisputed** that NIC has accurately recited some of the statements in the March 15, 2012 letter, which clearly pulled from the letter originally sent on behalf of Theresa Martinez in January 2012 and contained typos from that letter, which did not apply to Pleg, such as referring to Pfleg as a "she." (*See* NIC's Exh. 62; *see also* S.Ferrell Decl. ¶ 9.) |
| | 233. | Those representations were false because:<br><br>• Sam Pfleg did not purchase Arnica Montana 30C;<br><br>• Pfleg purchased the products that he did buy only 46 minutes before he was in contact with Baslow and NTG and could not have used them or determined their efficacy; and<br><br>• Pfleg purchased the product to bring litigation after Scott Ferrell directed Baslow to find a new client and Baslow reached out to Nilon to recruit his friend, Pfleg. | **Objection** - argumentative, misleading, lack of foundation, and improper character evidence unrelated to Pfleg in violation of FRE 404.<br><br>**Disputed.** NIC has never established that Pleg purchased products "only 46 minutes before he was in contact with Baslow" or that "Baslow reached out to Nilon to recruit his friend, Pleg." Further, while the letter was incorrect in its statement that Pleg purchased Arnica Montana 30C because this was a typo left from the January 2012 letter on behalf of Theresa Martinez (*see* NIC's Exh. 62), the Complaint Pfleg filed did not state that he purchased Arnica Montana 30C. (*See* NIC's RJN 11 ¶ 10.) Further, Pfleg did not purchase the product to bring litigation. While Pfleg's memory wasn't crystal clear five years after the events at issue, Pfleg testified that he purchased the products before the lawsuit and used them "at least a handful of times . . . before [he] sued Nature's Way." (Exh. 242 at 38:20-39:24; *see also* S.Ferrell Decl. ¶ 9.) |
| | 234. | On March 15, 2012, Knowles also drafted a complaint against Nature's Way Products on behalf | **Objection –** lack of foundation as explained in Fact # 230, misleading. Further, the exhibits NIC cites do |

| | | |
|---|---|---|
| | of Sam Pfleg. | not provide competent evidence in support of this fact.<br><br>**Disputed** that NIC has established that Knowles drafted the letter. **Undisputed** that Knowles was involved in the drafting of the Complaint. |
| 235. | Knowles sent the draft complaint to Scott Ferrell for his review. | **Undisputed**. |
| 236. | On March 16, 2012, NTG filed the complaint against Nature's Way Products and Scott Ferrell signed the complaint as the filer. | **Undisputed.** |
| 237. | NTG served the complaint on Nature's Way Products using Beehive Attorney Service which provides nationwide courier and legal process services. | **Undisputed.** |
| 238. | The complaint against Nature's Way made the following representations to Nature's Way Products and the Court:<br><br>• Pfleg purchased several Nature's Way Boericke & Tafel products and "relied on [Nature's Way's] representations regarding the efficacy of the products . . . and but for those representations, [Pfleg] would not have purchased or paid as much for the Products."<br><br>• "Pfleg used the products as directed, but they did not work as advertised and did not provide any of the promised benefits."<br><br>• Pfleg's experience and injury were representative of the class who purchased the | **Undisputed.** |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | product as consumers and relied on Nature's Way's advertising. | |
|---|---|---|---|
| 239. | | Those representations were false because:<br><br>• Pfleg purchased the products only 46 minutes before he was in contact with the firm and could not have used them as directed or determined their efficacy;<br><br>• Pfleg purchased the product to bring litigation after Scott Ferrell directed Baslow to find a new client and Baslow reached out to Nilon to recruit his friend, Pfleg;<br><br>• Pfleg's experience as an individual directed to buy the products was not at all representative of the class members' experiences and he did not make his purchase based on Nature's Way's advertising. | **Objection** – argumentative, misleading, lack of foundation, and Exhs. 24 and 25 are irrelevant and misleading as they are communications with Sam Schoonover, not Sam Pfleg. Further, the exhibits NIC cites do not provide competent evidence in support of this fact.<br><br>**Disputed.** First, while Baslow did not have an explicit memory of a conversation that would have occurred 8 ½ years before his deposition was taken, Baslow testified that he talked to Pfleg before the March 14, 2012 purchase receipt regarding whether he had used the products "because [] we don't just contact clients, suitable representatives, and say, go purchase these products and you can serve as a class representative or a plaintiff in a lawsuit. We don't do that. I don't do that." (Exh. 233 8/26/20 at 335:13-336:6; *see also id.* at 338:16-339; 18 (testifying that Pfleg told Baslow "that he had purchased Boericke & Tafel products in the past. He had tried them, they didn't work …"); *see also id.* at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit. He had to have been dissatisfied."); *id.* at 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products."); *see also* Exh. 232 at 107:1- 110:16; *see also* S.Ferrell Decl. ¶ 9.)<br><br>Second, NIC has never established that Pleg purchased products "only 46 minutes before he was in contact with Baslow" or that "Baslow |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | reached out to Nilon to recruit his friend, Pleg." Further, Pfleg did not purchase the product to bring litigation. While Pfleg's memory wasn't crystal clear five years after the events at issue, Pfleg testified that he purchased the products before the lawsuit and used them "at least a handful of times . . . before [he] sued Nature's Way." (Exh. 242 at 38:20-39:24.)<br><br>Last, NIC cites to Exh. 23 (Item No. 6655), but this is a December 13, 2011 text message. NIC also cites Exh. 23 (Item No. 14633), but this is a January 9, 2013 call. NIC does not establish either of these communications were with Pfleg or Nilon. Nor do they tie to the March 14, 2012 receipt. Finally, NIC cites Exh. 211 (Item 19039), which are 2 text messages on March 15, 2012. |
| 240. | Scott Ferrell knew that Sam Pfleg had not purchased Arnica Montana 30C because he had been provided a copy of his receipt before revising and sending the letter. | **Objection** – misleading, lack of foundation, argumentative. Further, the exhibits NIC cites do not provide competent evidence in support of the fact that Scott Ferrell reviewed the receipt or knew exactly what Pleg had purchased.<br><br>**Disputed**. Baslow sent a copy of Pfleg's receipt to Christine Loeza, but only a copy to Scott Ferrell who did not review the receipt or have actual knowledge of the details within the receipt. (NIC's Exh. 65; S.Ferrell Decl. ¶ 9.) |
| 241. | Scott Ferrell knew that Sam Pfleg had purchased the product without any opportunity to use them as advertised or evaluate their efficacy because he received a copy of the receipt just four hours after the time of purchase shown on the receipt. | **Objection** – misleading, lack of foundation, argumentative. Further, the exhibits NIC cites do not provide competent evidence in support of the fact that Scott Ferrell reviewed the receipt.<br><br>**Disputed**. Baslow sent a copy of Pfleg's receipt to Christine Loeza, but only a copy to Scott Ferrell who did not review the receipt or have actual knowledge of the details |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | within the receipt.  (NIC's Exh. 65; S.Ferrell Decl. ¶ 9.)  Further, the practice at NTG indicates that Pfleg's receipt was a confirmatory purchase, which is consistent with Pfleg's testimony that he had used these products "at least a handful of times . . . before [he] sued Nature's Way."  (Exh. 242 at 38:20-39:24.)  Baslow testified that he talked to Pfleg before the March 14, 2012 purchase receipt and confirmed that Pfleg had previously used these products.  (Exh. 233 at 338:16-339;18  (testifying that Pfleg told Baslow "that he had purchased Boericke & Tafel products in the past.  He had tried them, they didn't work …").  This testimony is consistent with the fact that the March 14, 2012 receipt was a confirmatory purchase.  (*See id.* at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit.  He had to have been dissatisfied."); *id.* at 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products."); *id.* at 335:13-336:6 (explaining a purchase must have been made prior "because [] we don't just contact clients, suitable representatives, and say, go purchase these products and you can serve as a class representative or a plaintiff in a lawsuit.  We don't do that.  I don't do that."); *see also* Exh. 232 at 107:1- 110:16.) |
| 242. | Scott Ferrell knew that Pfleg had purchased the same products (B&T homeopathic products) from the same store (VitaminShoppe) that Scott Ferrell had identified in his emails to Knowles and Baslow and that Pfleg had made his purchase *after* Scott Ferrell directed Baslow to obtain a new client. | **Objection** – misleading, lack of foundation, argumentative.  Further, the exhibits NIC cites do not provide competent evidence in support of the fact that Scott Ferrell reviewed the receipt or knew exactly what Pleg had purchased.<br><br>**Disputed**.  Baslow sent a copy of Pfleg's receipt to Christine Loeza, but only a copy to Scott Ferrell who did not review the receipt or have |

105

| | | |
|---|---|---|
| | | actual knowledge of the details within the receipt. (NIC's Exh. 65; S.Ferrell Decl. ¶ 9.) |
| 243. | There is no evidence that Pfleg ever purchased Boericke & Tafel products at any time other than on March 14, 2012 from Vitamin Shoppe. | **Objection** – misleading, lack of foundation, argumentative.<br><br>**Disputed**. Pfleg testified that he had used these products "at least a handful of times . . . before [he] sued Nature's Way." (Exh. 242 at 38:20-39:24.) Baslow testified that he talked to Pfleg before the March 14, 2012 purchase receipt and confirmed that Pfleg had previously used these products. (Exh. 233 at 338:16-339;18 (testifying that Pfleg told Baslow "that he had purchased Boericke & Tafel products in the past. He had tried them, they didn't work …"). This testimony is consistent with the fact that the March 14, 2012 receipt was a confirmatory purchase. (*See id.* at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit. He had to have been dissatisfied."); *id.* at 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products."); *id.* at 335:13-336:6 (explaining a purchase must have been made prior "because [] we don't just contact clients, suitable representatives, and say, go purchase these products and you can serve as a class representative or a plaintiff in a lawsuit. We don't do that. I don't do that."); *see also* Exh. 232 at 107:1- 110:16.) |
| 244. | Nature's Way Products engaged in settlement negotiations with NTG and at no point during those negotiations did NTG inform | **Objection** – misleading, lack of foundation, argumentative, assumes facts not in evidence or, at minimum, disputed that Pfleg had |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | counsel for Nature's Way that Sam Pfleg had purchased the product at issue at NTG's direction. | purchased the products at NTG's direction. |
| | | **Disputed** to the extent that NIC implies NTG should have informed Nature's Way that (1) Pfleg was not a true consumer who had purchased the products prior to March 14, 2012; and (2) that NTG knew that Pfleg was not a true consumer who had purchased the products prior to March 14, 2012. As set forth above, Pfleg testified that he had used these products "at least a handful of times . . . before [he] sued Nature's Way." (Exh. 242 at 38:20-39:24.) Baslow testified that he talked to Pfleg before the March 14, 2012 purchase receipt and confirmed that Pfleg had previously used these products. (Exh. 233 at 338:16-339:18 (testifying that Pfleg told Baslow "that he had purchased Boericke & Tafel products in the past. He had tried them, they didn't work …"). This testimony is consistent with the fact that the March 14, 2012 receipt was a confirmatory purchase. (*See id.* at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit. He had to have been dissatisfied."); *id.* at 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products."); *id.* at 335:13-336:6 (explaining a purchase must have been made prior "because [] we don't just contact clients, suitable representatives, and say, go purchase these products and you can serve as a class representative or a plaintiff in a lawsuit. We don't do that. I don't do that."); *see also* Exh. 232 at 107:1- 110:16.) |
| 245. | On June 28, 2012 at 3:10 PM, Scott Ferrell represented to Nature's Way's counsel that he spoke to his clients and they | **Objection** – misleading.<br><br>**Undisputed** that NIC has fairly characterized Scott Ferrell's |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | authorized him to make a settlement offer including a payment by Nature's Way Products of $62,500. | statements regarding his authorization to make the demand.<br><br>**Disputed** that Scott Ferrell's statement that he had not communicated with his client since that could reasonably reference communications he had through an agent, such as Baslow. |
| 246. | Scott Ferrell never communicated with Sam Pfleg and the only person at NTG who ever had was Andrew Baslow. | **Objection** – misleading, overbroad, argumentative, irrelevant and lack of foundation.  Further, the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.<br><br>**Disputed** that NIC has conclusively established that Scott Ferrell never communicated with Pfleg and that only Baslow communicated with Pfleg because the exhibits NIC cites only indicate an uncertainty on this issue due to the number of years that have passed.  Regardless, this fact is irrelevant to this Motion. |
| 247. | Sam Pfleg and Andrew Baslow did not communicate at any time in June prior to Scott Ferrell's June 28, 2012 email to Amy Lally at 3:10pm | **Objection** – misleading, overbroad, argumentative, and lack of foundation.  Further, the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.<br><br>**Disputed** that NIC has conclusively established that no one from NTG spoke with Pfleg "at any time in June prior to Scott Ferrell's June 28, 2012 email to Amy Lally" because the exhibits NIC cites only indicate an uncertainty on this issue due to the number of years that have passed.  In fact, NIC's Exh. 106 wherein Scott Ferrell states that he had spoken with Pfleg is direct evidence to the contrary. |
| 248. | On June 28, 2012 at 3:12 PM, Scott Ferrell directs Baslow to contact Sam Pfleg and get his consent to settle the case on terms where Pfleg would receive $2,000. | **Undisputed** that Ferrell asks Baslow to obtain Pfleg's consent to the settlement. |

108

| | | |
|---|---|---|
| 249. | Three minutes later, at 3:15 PM, Baslow contacted Sam Pfleg for the first time since March 2012. | **Objection** – lack of foundation.<br><br>**Disputed**.  NIC has not established that Baslow had no contact with Pfleg since March 2012.  NIC also has not established that "Baslow contacted . . . Pfleg" on June 28, 2012 at 3:15pm.  NIC cites Exh. 23 (Item No. 6681-84), but those messages are from December 13, 2011 and NIC has not established that those messages were with Pfleg. |
| 250. | Scott Ferrell knew his representation to Nature's Way that he had communicated with his client prior to making a settlement offer was false because he did not communicate with his client, ever and because he only directed Andrew Baslow to contact the client *after* he sent the email.  In fact, Scott Ferrell did not even know Sam Pfleg's gender at the time. | **Objection** – misleading, overbroad, argumentative, and lack of foundation.  Further, the exhibits NIC cites do not provide competent evidence in support of this overbroad purported fact.<br><br>**Disputed** that NIC has conclusively established that Scott Ferrell never communicated with Pfleg and that only Baslow communicated with Pfleg because the exhibits NIC cites only indicate an uncertainty on this issue due to the number of years that have passed.  In fact, NIC's Exh. 106 wherein Scott Ferrell states that he had spoken with Pfleg is direct evidence to the contrary that someone from NTG (on Scott Ferrell's behalf) spoke with Pfleg. |
| 251. | On June 30, 2012, Sam Pfleg agreed to receive $2,000 to settle his claim. | **Undisputed.** |
| 252. | On July 6, 2012, Sam Pfleg signs the settlement agreement after receiving it from Andrew Baslow. | **Undisputed** that Pfleg executed the settlement agreement and dated it July 6, 2012.  **Disputed** that NIC has provided any evidence that Pfleg received the settlement agreement from Baslow. |
| 253. | Scott Ferrell executed the Nature's Way Settlement Agreement on July 6, 2012 | **Undisputed** that Scott Ferrell executed the settlement agreement and dated it July 6, 2012. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| 254. | Nature's Way executed the settlement agreement on July 10, 2012 | **Undisputed** that Nature's Way executed the settlement agreement and dated it July 10, 2012. |
|---|---|---|
| 255. | The settlement agreement required Nature's Way to wire $62,500 to NTG within ten days. | **Objection** – hearsay, the document speaks for itself.<br><br>**Undisputed** that there is a provision that states "within ten (10) days of the effective date of this Agreement, Nature's Way will wire a total of $62,500 to counsel for Pfleg." |
| 256. | Scott Ferrell directed Nature's Way to wire $60,500 to the firm's Bank of America account with "Scott Ferrell/Newport Trial Group" as the beneficiary and to wire $2,000 to the firm's trust account "REF: PFLEG." | **Undisputed.** |
| 257. | Nature's Way Products is a company with its principal place of business in the State of Utah. | **Objection** – hearsay. The filing of the Complaint at RJN 11 is subject to judicial notice, but the allegations within remain hearsay.<br><br>**Undisputed** that NTG filed a Complaint that alleged upon information and belief that Nature's Way is a Utah corporation. **Disputed** that NIC has provided competent evidence to establish this fact. |
| 258. | Scott Ferrell, NTG, and his bank accounts that received the wire payments are located in the State of California. | **Objection** – lack of foundation.<br><br>**Undisputed** that the address provided for 1 of the banks in NIC's Exh. 110 is in California, but **disputed** as to whether the other bank identified. Further, the manner in which the 2 different banks handle wire transactions and receipt of wire payments is unknown and not established by NIC's evidence. |
| 259. | NTG received the wired funds from Nature's Way Products. | **Undisputed.** |
| 260. | The wire payments from Nature's Way Products to NTG thus traveled interstate. | **Objection** – lack of foundation. Further, the exhibits NIC cites do not provide competent evidence in support of this overbroad purported |

110

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1 | | | fact. |
| 2 | | | **Disputed**.  NIC presumably relies on the unsupported fact that Nature's Way has its principal place of business in Utah, but NIC never established this fact much less that Nature's Way does its banking in Utah or that the wire payments went to California. |
| 6 | 261. | Nature's Way's counsel expressed confusion over whether Pfleg was the only NTG client in the Nature's Way false advertising matter because they had received multiple demand letters. | **Objection** – relevance, hearsay.<br><br>**Undisputed** that Nature's Way stated they had received multiple demand letters. |
| 10 | 262. | Scott Ferrell assured Nature's Way's counsel that the "agreement encompasses all claims" and they do not have any other clients regarding Nature's Way. | **Objection** – relevance.<br><br>**Undisputed** that Nature's Way stated they had received multiple demand letters and Scott confirmed that, if true, this would be an error and the "agreement encompasses all claims." |
| 16 | 263. | That representation was false as Theresa Martinez, on whose behalf the January 2, 2012 letter was sent, had retained the firm. | **Objection** – misleading, irrelevant, unduly prejudicial, particularly because Theresa Martinez's alleged claim is not an issue in the operative Complaint or in the predicate acts identified in Appendix A.  Further, the exhibits NIC cites do not provide competent evidence regarding Martinez's retention of the firm, the scope of that retention and whether it had changed once the Nature's Way claim was pursued with Pfleg as the class representative, etc.<br><br>**Disputed** that NIC has established this representation was false or that Martinez still had a claim that she wished to pursue against Nature's Way. |
| 26 | 264. | After the settlement was executed, Scott Ferrell writes internally to staff at the firm: "Let my dad know that we actually had two people on | **Objection** – misleading, irrelevant, unduly prejudicial, particularly because Theresa Martinez's alleged claim is not an issue in the operative |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | this but that we'll work with Ms. Martinez on another appropriate case" | Complaint or in the predicate acts identified in Appendix A. Further, the exhibits NIC cites do not provide competent evidence regarding Martinez's retention of the firm, the scope of that retention and whether it had changed once the Nature's Way claim was pursued with Pfleg as the class representative, etc.<br><br>**Disputed** that NIC has established that Martinez still had a claim that she wished to pursue against Nature's Way or that NTG was still serving as her attorney at this point. |
| 265. | Thus, Theresa Martinez was not told that NTG abandoned her claims and settled with Nature's Way on behalf of Pfleg until after they had completed the settlement. | **Objection** – misleading, irrelevant, unduly prejudicial, particularly because Theresa Martinez's alleged claim is not an issue in the operative Complaint or in the predicate acts identified in Appendix A. Further, the exhibits NIC cites do not provide competent evidence regarding Martinez's retention of the firm, the scope of that retention and whether it had changed once the Nature's Way claim was pursued with Pfleg as the class representative, etc.<br><br>**Disputed** that NIC has established that Martinez still had a claim that she wished to pursue against Nature's Way or that NTG was still serving as her attorney at this point. |
| 266. | Pfleg pursued four additional lawsuits through the Newport Trial Group, including two wiretapping matters in the summer of 2012. | **Objection** – lack of foundation, relevance and undue prejudice.<br><br>**Disputed**. NIC cites only to Pfleg's interrogatory response about his communications with Baslow on matters, but only one of those matters is identified as a lawsuit (*i.e.*, Pfleg v. Nature's Way). In fact, the response is unclear in light of the fact that Pfleg then refers to "the Boericke & Tafel Arnica Montana matter," but that is a reference to the Nature's Way action (as discussed extensively above). (*See* NIC's Exh. 114 at 9.) |

112

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## 2. **Additional False Advertising Cases that Demonstrate Pattern, Plan, and Intent**

| 268. | In March 2012, NTG filed false advertising lawsuits on behalf of Sam Schoonover, Andrew Nilon, Sam Pfleg, and Matthew Dronkers. | **Objection** – irrelevant and unduly prejudicial as to the false advertising lawsuits of Schoonover, Nilon and Dronkers to the extent that NIC has not demonstrated they lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed.** |
|---|---|---|
| 269. | Nilon, Schoonover, Dronkers, and Pfleg were friends and business associates. | **Objection** – irrelevant and unduly prejudicial as to the false advertising lawsuits of Schoonover, Nilon and Dronkers to the extent that NIC has not demonstrated they lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that they were friends. **Disputed** that they were business associates in March 2012 and that Schoonover was a business associate at all.  (*See* NIC's Exh. 115 at 29:1-7.) |
| 270. | Nilon, Dronkers, and Schoonover were roommates at the time. | **Objection** – irrelevant and unduly prejudicial as to the false advertising lawsuits of Schoonover, Nilon and Dronkers to the extent that NIC has not demonstrated they lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed.** |
| 271. | | Nilon first communicated with NTG through Andrew Baslow in October 2011. | **Objection** – irrelevant and unduly prejudicial as Nilon and his relationship with NTG are not at issue in the Motion. Further, NIC's Exh. 214 lacks foundation and does not establish this purported fact.<br><br>**Undisputed** that Nilon recalled meeting Baslow "in person at the end of 2011." **Disputed** that NIC has established with competent evidence this was the first time Nilon had communicated with NTG. |
| 272. | | NTG filed a false advertising suit on behalf of Nilon on March 5, 2012. The complaint alleged false advertising in relation to NIC's Sovereign Silver product. | **Objection** – irrelevant and unduly prejudicial as to the false advertising lawsuit of Nilon to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed.** |
| 273. | | NTG sent a false advertising demand letter to NIC on December 27, 2011. | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Nilon to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in |

114

| | | |
|---|---|---|
| | | Appendix A was wrongful.<br><br>**Undisputed** that NTG sent the demand letter cited. **Disputed** that the letter was sent on behalf of Nilon. Scott Ferrell has explained that the December 27, 2011 demand letter to NIC regarding Sovereign Silver was initially sent on behalf of Trycia Carlberg, but due to Carlberg's health issues, the lawsuit was filed on behalf of Nilon after NTG learned that he also had complaints about NIC's product. (NIC's RJN 8.) |
| 274. | In January 2012, Scott Ferrell determined that the individual on whose behalf he had purportedly sent the original letter was not suitable to be a class representative. | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Nilon to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Disputed**. Scott Ferrell did not state that Carlberg "was not suitable to be a class representative," but rather that "she might not be healthy enough to serve as a class representative." (NIC's RJN 8 at ¶ 14.) Scott Ferrell then went on to state that he thought "it would be prudent to try to identify additional consumers of Sovereign Silver who had complaints . . . who may be suitable to serve as a class representative . . ." (*Id.*) |
| 275. | Scott Ferrell inquired to his father, Wynn Ferrell, about potential replacement clients in January 2012. | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Nilon to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Disputed**. NIC's representation of the emails is inaccurate. As Scott Ferrell testified regarding the exchange he had with his father, Scott Ferrell believed that there were at least two people who had either contacted the NTG office and been routed to Wynn Ferrell or who Wynn Ferrell had found when he had made inquiries about whether there were consumers of Sovereign Silver who had been dissatisfied. (Exh. 236 at 181:6-182:25 (discussing NIC's Exh. 83).) |
| 276. | As of January 31, 2012, NTG did not have client information for its case against NIC's Sovereign Silver product. | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Nilon to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful. Further, the exhibit NIC cites does not provide competent evidence in support of this purported fact.<br><br>**Disputed**. NIC cites an exhibit where the paralegal states that she does not have the name of the client for the case against NIC. The fact that the paralegal did not have the name does not support NIC's position that "NTG did not have client information" simply because a paralegal was unaware that it was Carlberg who had retained NTG in December 2011 to pursue the case against NIC. (*See* NIC's RJN 8.) |
| 277. | On February 24, 2012, Andrew Baslow called Andrew Nilon. | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Nilon to the |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that the phone records reflect a call made by Baslow to Nilon on February 24, 2012. |
|---|---|---|
| 278. | Nilon claims he purchased the Sovereign Silver product in "early 2012," after he connected with NTG in late 2011 and after NTG had already identified NIC's Sovereign Silver product as a litigation target. | **Objection** – argumentative, misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Nilon to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that Nilon purchased Sovereign Silver in early 2012. **Disputed** to the extent NIC is suggesting that Nilon's communications with NTG dating back to at least 2011 had anything to do with his purchase of Sovereign Silver. In fact, NIC's exhibit, RJN 16, is Nilon's declaration where he stated he relied on the immune support claim when he purchased Sovereign Silver. |
| 279. | Similarly, Nilon's roommate, Sam Schoonover, purchased the products associated with his false advertising lawsuit at NTG's direction and after NTG had already identified Vogue International as a litigation target. | **Objection** – argumentative, misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Schoonover to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE |

117

404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.

**Disputed** that Nilon's purchase of Sovereign Silver was at all similar to Schoonover's purchase of Vogue's Organix shampoo and conditioner. Schoonover testified that he had "been using this shampoo in college and for a number of years." (Exh. 243 at 40:18-41:3.) Schoonover started college in 2007, years before his lawsuit regarding the shampoo. (Exh. 244 at 32:24-33:1.) This is consistent with Baslow's testimony in response to questions regarding Schoonover's purchase of the Organix shampoo and conditioner, "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit. He will have had to have used the product in the past, which I'm pretty sure [Schoonover] used [the Organix shampoo] for a really long time, and he will have had to have been dissatisfied." (Exh. 233 at 247:1-12; *see also id.* at 248:6-25 (explaining that Nilon could have told Baslow that Schoonover was dissatisfied with a product he had tried or used in the past); 251:3-18; 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products.").)

As a result of this action, NTG has referred to receipts, such as the receipt from Schoonover in March 2012, as confirmatory purchases, which assisted NTG in confirming the exact product a client had purchased previously, the exact labeling or advertising that the client had seen and relied on, and the general price the client had paid for the product. (*See, e.g.*, Exh. 232 at

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | 107:1- 110:16.) |
|---|---|---|---|
| 280. | | On March 14, 2012, Andrew Baslow sent Sam Schoonover the following text message:<br><br>"Hey Sam, it's Andrew Baslow. I got your contact information from Andrew Nilon as he mentioned you would like to participate in a class action. I have a case for you, but it is very urgent and you would have to move quickly. I need you to pick up a bottle of 'Organix' shampoo and conditioner sold at CVS. Also, throw a couple household items on there that you need at the moment so it isn't just the shampoo. Can you do that today and the proof of purchase (POP) over to me?" | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Schoonover to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Disputed** to the extent NIC is suggesting that Schoonover was anything other than a confirmatory purchase of a product he previously used and was unhappy to learn had been falsely marketed in a manner that would imply it was Organic. (*See* NIC's RJN 19.) Schoonover testified that he had "been using this shampoo in college and for a number of years." (Exh. 243 at 40:18-41:3.) Schoonover started college in 2007, years before his lawsuit regarding the shampoo. (Exh. 244 at 32:24-33:1.) This is consistent with Baslow's testimony in response to questions regarding Schoonover's purchase of the Organix shampoo and conditioner, "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit. He will have had to have used the product in the past, which I'm pretty sure [Schoonover] used [the Organix shampoo] for a really long time, and he will have had to have been dissatisfied." (Exh. 233 at 247:1-12; *see also id.* at 248:6-25 (explaining that Nilon could have told Baslow that Schoonover was dissatisfied with a product he had tried or used in the past); 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a |

| | | |
|---|---|---|
| | | routine practice for me to ask around and see if anybody had tried and used certain products.").)<br><br>As a result of this action, NTG has referred to receipts, such as the receipt from Schoonover in March 2012, as confirmatory purchases, which assisted NTG in confirming the exact product a client had purchased previously, the exact labeling or advertising that the client had seen and relied on, and the general price the client had paid for the product. (*See, e.g.*, Exh. 232 at 107:1- 110:16.) |
| 281. | Baslow sent that text message on the very same day that Sam Pfleg purchased his product from Vitamin Shoppe after Scott Ferrell directed Andrew Baslow to find a new client. | **Objection** – argumentative, misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Schoonover to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Disputed** that Scott Ferrell directed Baslow to find a new client or the implication that Pfleg's March 14, 2012 purchase receipt was anything other than a confirmatory purchase. Pfleg testified that he had used the Nature's Way products "at least a handful of times . . . before [he] sued Nature's Way." (Exh. 242 at 38:20-39:24.) Baslow testified that he talked to Pfleg before the March 14, 2012 purchase receipt and confirmed that Pfleg had previously used these products. (Exh. 233 at 338:16-339;18 (testifying that Pfleg told Baslow "that he had purchased Boericke & Tafel products in the past. He had tried them, they didn't work …"). This testimony is consistent with the fact that the March 14, 2012 receipt was a confirmatory purchase. (*See id.* at 247:1-12 (testifying that "[w]e don't |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit.  He had to have been dissatisfied."); *id.* at 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products."); *id.* at 335:13-336:6 (explaining a purchase must have been made prior "because [] we don't just contact clients, suitable representatives, and say, go purchase these products and you can serve as a class representative or a plaintiff in a lawsuit.  We don't do that.  I don't do that."); *see also* Exh. 232 at 107:1- 110:16.) |
|---|---|---|---|
| 282. | On March 20, 2012, Baslow sent Schoonover the following text:<br><br>"Hey dude.  Good to see you on Saturday.  Thanks for coming. Do you happen to have any other contacts available who would like to benefit the public?  They have to have a clean record, very reliable, and can communicate well." | | **Objection** – misleading, irrelevant and unduly prejudicial as to investigation of unidentified cases to the extent that NIC has not demonstrated that any such unknown, unidentified cases lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, NIC is violating FRE 404(b) by attempting to utilize conduct that was not wrongful to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that NIC has accurately quoted the message.  This is consistent with Baslow's testimony that NTG "get[s] our clients in two ways.  Number one way is that we do great work.  And when we settle our cases with our clients, we ask them to refer us, family and friends, and we get a lot of our clients that way.  The other way that I would say we get our clients is that Scott is a great attorney, and people know his reputation and clients come to us that way too."  (Exh. 233 at 219:10-19; *see also* Exh. 236 at 50:4-15.) |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 283. | Schoonover responded and said "[f]or sure man! Just emailed you contact information for two great contacts." | **Objection** – misleading, irrelevant and unduly prejudicial as to investigation of unidentified cases to the extent that NIC has not demonstrated that any such unknown, unidentified cases lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize conduct that was not wrongful to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that NIC has accurately quoted the message. |
| 284. | Baslow wrote Schoonover back and said:<br><br>"I already have Matt signed up. Just got him on one." | **Objection** – misleading, irrelevant and unduly prejudicial as to investigation of unidentified cases to the extent that NIC has not demonstrated that any such new case lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize conduct that was not wrongful to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that NIC has accurately quoted the message. |
| 285. | The day before that exchange, Matthew Dronkers had purchased Kiss My Face products and he later pursued a false advertising case against that company with NTG set to receive a referral fee from his litigation counsel. | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Dronkers to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Disputed** to the extent NIC is implying that Dronkers purchased a product for the purpose of pursuing a CLRA lawsuit. Dronkers testified that he had used many Kiss My Face products in the past. (Exh. 245 |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | at 52:5-7, 66:6-19; *see also id.* at 42:23-43:7, 43:25-44:13, 46:2-47:3.)  This testimony is consistent with the fact that the March 14, 2012 receipt was a confirmatory purchase.  (*See* Exh. 233 at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit.  He had to have been dissatisfied."); *id.* at 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products."); *id.* at 335:13-336:6 (explaining a purchase must have been made prior "because [] we don't just contact clients, suitable representatives, and say, go purchase these products and you can serve as a class representative or a plaintiff in a lawsuit.  We don't do that.  I don't do that."); *see also* Exh. 232 at 107:1- 110:16.) |
| 286. | After learning that Matt was already signed up for an NTG case, Schoonover pledged to get Baslow "another [referral] in the next day or so." | **Objection** – misleading, irrelevant and unduly prejudicial as to investigation of unidentified cases to the extent that NIC has not demonstrated that any such unknown, unidentified cases lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, NIC is violating FRE 404(b) by attempting to utilize conduct that was not wrongful to prove that conduct in the lawsuits at issue in Appendix A was wrongful. <br><br> **Disputed** that Schoonover "***pledged*** to get Baslow 'another [referral] . . .'"  Schoonover stated, "Ok.  Cool.  I should be able to get you another in the next day or two" |
| 287. | Baslow responded and said: <br><br> "Great. As soon as you talk to them send info my way.  I have some | **Objection** – misleading, irrelevant and unduly prejudicial as to investigation of unidentified cases to the extent that NIC has not |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | potentially very good cases on deck right." | demonstrated that any such unknown, unidentified cases lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize conduct that was not wrongful to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that NIC has accurately quoted the message. This is consistent with Baslow's testimony that NTG "get[s] our clients in two ways. Number one way is that we do great work. And when we settle our cases with our clients, we ask them to refer us, family and friends, and we get a lot of our clients that way. The other way that I would say we get our clients is that Scott is a great attorney, and people know his reputation and clients come to us that way too." (Exh. 233 at 219:10-19; *see also* Exh. 236 at 50:4-15.) Further, as Baslow testified at deposition, this was a reference to cases that NTG was investigating, but any individual "absolutely" "would have had to have already purchased the products." (Exh. 233 at 267:13-269:10.) |
| 288. | Schoonover then inquired as to what law firm the cases were for and Baslow responded "Newport Trial Group." | **Objection** – misleading, irrelevant and unduly prejudicial as to investigation of unidentified cases to the extent that NIC has not demonstrated that any such unknown, unidentified cases lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize conduct that was not wrongful to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that NIC has accurately quoted the message. |
| 289. | When Schoonover informed Baslow that he would email "a couple friends about it," Baslow | **Objection** – misleading, irrelevant and unduly prejudicial as to investigation of unidentified cases to |

124

| | | | |
|---|---|---|---|
| 1 | | instructed him to "stay away from e-mail" and to communicate "[i]n person or over the phone" because the "process is very confidential and e-mails can translate to other things very quickly." | the extent that NIC has not demonstrated that any such unknown, unidentified cases lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize conduct that was not wrongful to prove that conduct in the lawsuits at issue in Appendix A was wrongful.

**Disputed** that NIC has accurately characterized Baslow's message, which informed Schoonover:

"It's very important to explain to the people you are talking to how confidential it is, and that they are benefitting the public first, rather than being in it for the reward/if there is one. Make sense?" |
| 290. | On April 13, 2012, Baslow asked Schoonover if he had "anyone else [he] can refer to [Baslow]." | **Objection** – misleading, irrelevant and unduly prejudicial as to investigation of unidentified cases to the extent that NIC has not demonstrated that any such unknown, unidentified cases lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize conduct that was not wrongful to prove that conduct in the lawsuits at issue in Appendix A was wrongful.

**Undisputed** that NIC has accurately quoted the message. |
| 291. | Schoonover received $1,500 in a settlement with Vogue. | **Objection** – irrelevant and unduly prejudicial as to the false advertising case of Schoonover against Vogue to the extent that NIC has not demonstrated that any such unknown, unidentified cases lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize conduct that was not wrongful to prove that |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | conduct in the lawsuits at issue in Appendix A was wrongful. **Undisputed**. |
| 292. | After Schoonover's Vogue case settled, Baslow told Schoonover that he could "get [Schoonover] going on another case if [he] wish[ed]" and that NTG "ha[d] one ready." | **Objection** – misleading, irrelevant and unduly prejudicial as to Schoonover's case against Himalaya to the extent that NIC is apparently attempting to use an unknown potential case to prove that Pfleg's CLRA case lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Not only is Schoonover's CIPA case entirely different from Pfleg's CLRA case to the extent that NTG had explained that Schoonover was a tester, NIC has not proven that Schoonover's CIPA was lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize dissimilar conduct that was not wrongful to prove that conduct in the Pfleg lawsuit was wrongful. **Undisputed** that NIC has accurately quoted the message, but for reasons unknown, NIC removed pages from this exhibit to reflect the fact that this communication was on June 26, 2012 and that no further case with Schoonover occurred until there were additional follow-up conversations in July 2012 at which point Schoonover called Himalaya as a tester, which led to Schoonover then serving as one of two named plaintiffs in a proposed class action against Himalaya for its violation of CIPA. The evidence shows that Himalaya recorded Schoonover's call without his consent and without any disclosure, in violation of CIPA. (*See* NIC's Exh. 36 (Himalaya confirmed that one of the named plaintiffs did not have his call recorded, but Schoonover's call was |

126

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | recorded. "He then read to me the transcript of Schoonover's call.").) |
| 293. | | In August 2015, Andrew Nilon sent an email describing his experience with NTG wherein he explained that he, Sam Pfleg, Matthew Dronkers, and Sam Schoonover pursued false advertising cases through NTG at the same time and that they were told to buy products for litigation. | **Objection** – misleading, hearsay, irrelevant and unduly prejudicial.<br><br>**Disputed** that Nilon voluntarily sent this email or was making accurate statements in this email. This email that Nilon sent was sent under duress and as a result of coercion by NIC in an effort to create evidence in support of this action. Specifically, NIC hired Clark Baker to put pressure on Nilon to provide a document that created this false narrative seen in the exhibit NIC cites. *(See, e.g., Exh. 258; see also Exh. 263 (pp. 14-17);* ) |
| 294. | | Giovanni Sandoval also purchased NIC's Sovereign Silver product after NTG had already targeted NIC in litigation, needed a new class representative, and after the firm met with Giovanni Sandoval. | **Objection** – argumentative, misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Disputed.** In May 2013, NTG started to realize that it may have had a problem with Nilon serving as the class representative for the case against NIC because Nilon had failed to appear for his deposition. (Exh. 241 at 97:7-98:2.) It turned out that this was because Nilon had moved to the Bay Area in order to be close to his sick grandma and also to focus on his new business. (*Id.* at 42:15-43:5; *see also id.* at 99:3-15; Exh. 246 at 184:7-20.) Unrelated, Sandoval had contacted the NTG firm as a user of Sovereign Silver. (Exh. 246 at 184:21-24; 186:18-24; *see also* Exh. 317 ¶ 3.) Sandoval informed NTG that he had |

127

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | previously purchased and used Sovereign Silver and was unhappy with it. (Exh. 246 at 189:4-191:15.) He also led NTG to believe that he was a California resident and did not have a criminal history, which NTG and its attorneys reasonably relied on, but turned out to be not true. (*See id.*) |
| 295. | In January 2014, Giovanni Sandoval met with Ryan Ferrell to discuss the lawsuit against NIC. | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Disputed** as incomplete. NIC's evidence states that Sandoval and Ryan Ferrell met "in January 2014 to discuss Mr. Sandoval's experience with Sovereign Silver and possibilities of serving as a class representative." (NIC's Exh. 99 at 4; *see also* Exh. 246 at 189:4-191:15 (elaborating on the topics that would have been discussed in January 2014).) |
| 296. | Sandoval was substituted into *Nilon v. NIC* case as a replacement class representative for Nilon, who no longer wished to be part of the case. | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Disputed** as incomplete. NIC's |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | evidence fails to include the fact that Nilon was no longer interested because he had moved to the Bay Area in order to be close to his sick grandma and also was working ___ hours to focus on his new business. (Exh. 246 at Exh. 532; Exh. 241 at 42:15-43:5; *see also id.* at 99:3-15; Exh. 246 at 184:7-20.).) |
| 297. | Sandoval testified numerous times that he bought Sovereign Silver in November 2013, before he met with NTG in January 2014. | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that Sandoval told NTG that he had purchased Sovereign Silver in November 2013 before he met with Ryan Ferrell in January 2014, and that NTG made this allegation in the Second Amended Complaint in *Nilon v. NIC*. |
| 298. | Sandoval produced an image of the Sovereign Silver bottle he claims to have bought from Sprouts in November 2013. | **Objection** – misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that Sandoval told NTG that he had purchased Sovereign Silver in November 2013 from Sprouts and that he identified |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

129

| | | |
|---|---|---|
| | | the specific bottle that he purchased by UPC number, Lot code, and expiration date, which is consistent with the picture of a bottle that Sandoval said reflected his November 2013 purchase. |
| 299. | Yet, that bottle was not manufactured until February 2014. | **Objection** – hearsay. Specifically, NIC's attempt to seek judicial notice of a declaration it filed in support of its case and then to use that declaration for the truth of the matter is improper. Further, NIC's purported fact is irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.

**Undisputed** that NIC has taken the position that the bottle Sandoval claimed to reflect his purchase of Sovereign Silver in November 2013 was not manufactured until February 2014 and that it could not have been purchased by Sandoval "until at least May 2014." (NIC's RJN 23 ¶¶ 11-12.) However, Sandoval testified on April 20, 2015 that he already had the bottle of Sovereign Silver. (Exh. 247 at 42:5-16.) At no point in time is it alleged that NTG or any member of NTG had this bottle so the Defendants who are subject to this Motion do not have any knowledge of whether Sandoval's testimony was false (as claimed by NIC's evidence) or whether NIC's testimony is false (as it is contradicted by Sandoval's testimony). However, it is clear that the investigation NIC conducted regarding its documentary evidence that the product could not have been purchased by Sandoval before May 2014 is imperfect. (*See, e.g.*, Exh. 248 at 160:1-163:24; *see also* Exh. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | 249 at 90:11-124:15.) And NIC refused to produce complete unredacted records regarding the Lot number at issue, other stores that it was shipped to, and could not confirm that a sales representative would not have received samples from that Lot number that could have been the product Sandoval received. (*See, e.g., id.*) |
| 300. | The bottle could not have appeared on a store shelf at a Sprouts, given shipping times, until April 2014. | **Objection** – hearsay. Specifically, NIC's attempt to seek judicial notice of a declaration it filed in support of its case and then to use that declaration for the truth of the matter is improper. Further, NIC's purported fact is irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove conduct in the lawsuits at issue in Appendix A was wrongful. <br><br> **Undisputed** that NIC has taken the position that the bottle Sandoval claimed to reflect his purchase of Sovereign Silver in November 2013 was not manufactured until February 2014 and that it could not have been purchased by Sandoval "until at least May 2014." (NIC's RJN 23 ¶¶ 11-12.) However, Sandoval testified on April 20, 2015 that he already had the bottle of Sovereign Silver. (Exh. 247 at 42:5-16.) At no point in time is it alleged that NTG or any member of NTG had this bottle so the Defendants who are subject to this Motion do not have any knowledge of whether Sandoval's testimony was false (as claimed by NIC's evidence) or whether NIC's testimony is false (as it is contradicted by Sandoval's testimony). However, it is clear that |

| | | the investigation NIC conducted regarding its documentary evidence that the product could not have been purchased by Sandoval before May 2014 is imperfect. (*See, e.g.,* Exh. 248 at 160:1-163:24; *see also* Exh. 249 at 90:11-124:15.) And NIC refused to produce complete unredacted records regarding the Lot number at issue, other stores that it was shipped to, and could not confirm that a sales representative would not have received samples from that Lot number that could have been the product Sandoval received. (*See, e.g., id.*) |
|---|---|---|
| 301. | Sandoval therefore testified falsely about buying the product in November 2013 and he actually bought the product *after* meeting with Ryan Ferrell in January 2014. | **Objection** – hearsay. Specifically, NIC's attempt to seek judicial notice of a declaration it filed in support of its case and then to use that declaration for the truth of the matter is improper. Further, NIC's purported fact is irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated it lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that NIC has taken the position that the bottle Sandoval claimed to reflect his purchase of Sovereign Silver in November 2013 was not manufactured until February 2014 and that it could not have been purchased by Sandoval "until at least May 2014." (NIC's RJN 23 ¶¶ 11-12.) However, Sandoval testified on April 20, 2015 that he already had the bottle of Sovereign Silver. (Exh. 247 at 42:5-16.) At no point in time is it alleged that NTG or any member of NTG had this bottle so the Defendants who are subject to this Motion do |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | not have any knowledge of whether Sandoval's testimony was false (as claimed by NIC's evidence) or whether NIC's testimony is false (as it is contradicted by Sandoval's testimony).  However, it is clear that the investigation NIC conducted regarding its documentary evidence that the product could not have been purchased by Sandoval before May 2014 is imperfect.  (*See, e.g.,* Exh. 248 at 160:1-163:24; *see also* Exh. 249 at 90:11-124:15.)  And NIC refused to produce complete unredacted records regarding the Lot number at issue, other stores that it was shipped to, and could not confirm that a sales representative would not have received samples from that Lot number that could have been the product Sandoval received.  (*See, e.g., id.*) |
| 302. | Sandoval also had family members who had pursued lawsuits through NTG before he met with the firm and before he made his purchase. | **Objection** – overbroad as to "family members," lack of foundation, and NIC's purported fact is irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval or any other person to the extent that NIC has not demonstrated any such other lawsuits lacked probable cause or were "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that NTG represented Heidi Franco in a lawsuit filed in August 2013.  **Disputed** that NTG or any of its members knew that Heidi Franco and Giovanni Sandoval were related prior to NIC's investigation, and **disputed** that NTG represented any other family member of Giovanni Sandoval in a lawsuit other than Heidi Franco.  (*See* Exh. 246 at 204:17-211:5.) |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 303. | Despite that, Sandoval testified that he learned of NTG's suit against NIC through a website. | **Objection** – lack of foundation. The exhibit NIC cites does not support this fact. Further, NIC's purported fact is irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated the lawsuit lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Undisputed** that Sandoval learned that there were lawsuits regarding NIC or Sovereign Silver, but it remains unclear from Sandoval's testimony whether he learned of NTG's suit against NIC through a website. (Exh. 247 at 28:4-29:2; Exh. 231 at 98:6-24.) |
| 304. | Sandoval did not remember any details about the purported website. | **Objection** – misleading. The exhibit NIC cites does not support this fact. Further, NIC's purported fact is irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated the lawsuit lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine. Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Disputed.** Sandoval testified that a website mentioned "that there was lawsuits being taken out on the product for it not working . . ." (Exh. 247 at 28:23-29:2.) |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 305. | But NTG does not advertise for clients online and Sandoval's sister and mother both pursued NTG lawsuits only a few months before Sandoval met with Ryan Ferrell in January 2014. | **Objection** – argumentative, lack of foundation, misleading, irrelevant and unduly prejudicial as to the false advertising lawsuit of Sandoval to the extent that NIC has not demonstrated the lawsuit lacked probable cause or was "objectively baseless" under the *Noerr-Pennington* doctrine.  Without such, NIC is violating FRE 404(b) by attempting to utilize allegedly similar non-wrongful conduct to prove that conduct in the lawsuits at issue in Appendix A was wrongful.<br><br>**Disputed** that NTG or any of its members knew that Heidi Franco and Giovanni Sandoval were related prior to NIC's investigation.  (*See* Exh. 246 at 204:17-211:5.)<br><br>**Disputed** that NTG represented any other family member of Giovanni Sandoval in a lawsuit other than Heidi Franco.  (*See id.*)<br><br>**Undisputed** that NTG does not generally advertise for clients online, but that it is possible Sandoval learned about NTG's lawsuit against NIC regarding Sovereign Silver through a website. (Exh. 247 at 28:4-29:2; Exh. 231 at 98:6-24.) |
| 306. | Sandoval was later determined by the Court to be an inadequate class representative, the Court found that NTG's conduct had fallen below Rule 11 standards, and the Court explained that the *Nilon v. NIC* matter would have been dismissed if the Court had known that Sandoval was not an adequate representative to replace Nilon. | **Objection** – the fact that the Court issued this *Tentative Order* is subject to judicial notice, but the statements within the *Tentative* are hearsay.<br><br>**Disputed**.  The document speaks for itself.  The Court's determination that Sandoval was not an adequate class representative was based on the evidence that he was not a California resident.  However, Sandoval had informed NTG that he was a California resident.  (*See* Exh. 256.)  Further, NIC has misrepresented the Court's statements, just as it did in the underlying action when it took this |

135

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | same position with the Magistrate Judge and requested sanctions against NTG. (*See* Exh. 266 at 8 (noting NIC's argument "that Judge Burns found several Rule 11 violations . . . therefore, this Court's only task is to determine the amount of monetary sanctions to award. [] Defendant is incorrect.").) |
| 307. | Dan Bobba was also directed to purchase products by NTG agents for use in a lawsuit. | **Objection** – misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404.<br><br>**Disputed.** NIC's exhibit does not support this purported fact. First, Bobba stated in a declaration that "[p]rior to September 4[th], 2010, [he] had never met with, spoke to, or communicated with any attorney from Newport Trial Group." (Exh. 259 at ¶ 2.) He further stated that he had previously "purchased several penis enhancement products" and had purchased Magna-RX "in late 2009." (*Id.* at ¶ 5.) There was no mention of someone (much less someone affiliated with NTG) driving him to the store and giving him cash to purchase Magna-RX. (*See id.*)<br><br>Second, NIC's exhibit does not support its fact that Bobba was "directed to purchase products by NTG agents for use in a lawsuit." NIC cites Bobba's deposition, but Bobba could not identify or even reasonably describe the person who allegedly drove him to the store, gave him cash, directed him to buy a specific product, and to whom he then provided a receipt. *See* NIC's Exh. 58 at 33:2-34:5, 79:15-83:16 (testifying that some unknown person took him to the store, gave him money, and "suggested" he purchase Magna Rx.) Nor could Bobba testify that this person was affiliated with or a representative of NTG. Bobba also could not say that |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | this person was Ryan Ferrell, Wynn Ferrell or anyone else who matched a description of any person at NTG. (*Id.*; *see also* Exh. 232 at 115:13-116:13 (testifying that he never picked Bobba up in a car, drive him to a store, or give him money to buy Magna).) |
| | | Further, Bobba's credibility is shaky and an issue for the jury to consider. (*See, e.g.*, NIC's Exh. 58 at 13:21-14:2, 76:10-78:5 (testifying he sustained serious head injuries due to assaults that were near fatal and have affected his memory); *id.* at 95:5-96:6, 103:6-9, 104:6-9 (living in sober-living environments during 2009 and 2010 at the time of Bobba's involvement with NTG).) Indeed, Scott Ferrell was appalled when he was informed about Bobba's Internet posts because they were untrue and completely inconsistent with the information they had about Bobba's experience with the product.  (*See* Exh. 260 (Sept. 3, 2010 email from Scott Ferrell).) |
| 308. | Dan Bobba was substituted into the *Morales v. Magna* lawsuit after NTG "lost track" of their plaintiff. | **Objection** – hearsay and misleading.  NIC is quoting the statement of the Court, which was a question to NTG.  This exhibit is not subject to judicial notice.  Irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A.  *See* FRE 401-404. |
| | | **Disputed**.  As NIC's exhibit makes clear, NTG was not able to get a declaration from their client prior to the hearing date because he was out of the country.  And there is no reference to Bobba or substituting Bobba. |
| 309. | NTG's false advertising suit against Magna Rx was at risk of dismissal for improper venue and, | **Objection** – hearsay and misleading.  While the Court's Order is subject to judicial notice, |

| | | | |
|---|---|---|---|
| | | at hearing, on June 22, 2010, NTG attorney Michael Velarde told the Court that NTG had two new clients who met the venue requirements. | the transcript from a hearing is not. Further, the statements within are still hearsay. Irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404.<br><br>**Disputed**. As NIC's exhibit makes clear, the issue was venue and the Court had to decide whether they were in the correct federal district. (NIC's RJN 27.) |
| 310. | | NTG substituted Chris Rhodes and Daniel Bobba into the case as class representatives to prevent dismissal. | **Objection** – hearsay, misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404.<br><br>**Disputed**. NIC mischaracterizes the document, which is a First Amended Complaint that added Dan Bobba and Chris Rhodes to the case. (*See* NIC's RJN 9.) |
| 311. | | However, Dan Bobba purchased his Magna Rx product *after* the June 22, 2010 hearing where NTG represented that it had two new clients. | **Objection** –misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404.<br><br>**Disputed.** Bobba stated he had previously "purchased several penis enhancement products" and had purchased Magna-RX "in late 2009." (Exh. 259 at ¶ 5.) The only time an NTG field representative would ask a potential client to purchase a product was after confirmation that the potential client had used the product and had a claim, and only because the client had not kept proof of purchase that would verify the exact product and/or the labeling or advertising that was concerning to the potential client. (*See* Exh. 232 at 107:1-110:16; *see also* Exh. 233 at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM



CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | starting a lawsuit); *id*. at 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products.").) As a result of this action, NTG has referred to these as confirmatory purchases, which assisted NTG in confirming the exact product a client had purchased previously, the exact labeling or advertising that the client had seen and relied on, and the general price the client had paid for the product. |
| 312. | His June 24, 2010 purchase was the only time that Bobba ever purchased Magna Rx+ or any male enhancement product. | **Objection** –misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404.<br><br>**Disputed.** Bobba stated he had previously "purchased several penis enhancement products" and had purchased Magna-RX "in late 2009." (Exh. 259 at ¶ 5.) The only time an NTG field representative would ask a potential client to purchase a product was after confirmation that the potential client had used the product and had a claim, and only because the client had not kept proof of purchase that would verify the exact product and/or the labeling or advertising that was concerning to the potential client. (*See* Exh. 232 at 107:1-110:16; *see also* Exh. 233 at 247:1-12 (testifying that "[w]e don't just reach out to clients on false advertising cases and ask them to just go buy stuff for the sake of starting a lawsuit); *id*. at 251:3-18, 252:1-13; 252:24-253:16 (explaining that "when we were investigating cases, it would be a routine practice for me to ask around and see if anybody had tried and used certain products.").) As a result of this action, NTG has referred to these as confirmatory |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | purchases, which assisted NTG in confirming the exact product a client had purchased previously, the exact labeling or advertising that the client had seen and relied on, and the general price the client had paid for the product. |
| 313. | | On July 8, 2010, Bobba publicly posted the following statement:<br><br>"So my friend called me up the other day with a great opportunity. I'm all ears as he explains how his girlfriend's brother is a class action lawsuit attorney in need of clients. I go buy this stuff called magna rx plus which is supposed to permanently increase your penis size. Everyone knows that s\*\*t doesn't work, but I go drop 40 on it. anyway (sic) the lawyer comes over twice and has me sign some documents for this suit saying i (sic) took it, it doesn't work, and that the company is false advertising. Long story short it's supposed to pay between 2-10k once settled and these guys have a 90% winrate so I'm hopeful!" | **Objection** – hearsay, misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404.<br><br>**Disputed.** Bobba recanted that statement in a sworn declaration filed with the Court. (*See* Exh. 259.) He verified that he had "purchased . . . Magna-RX . . . in late 2009." (*Id.*) This was consistent with Wynn Ferrell's testimony that he believed Bobba had purchased the product prior to signing a retainer agreement. (Exh. 232 at 115:13-116:13.) At deposition, Bobba's testimony was inconsistent with his Internet post. For example, he could not identify or even reasonably describe the person who allegedly drove him to the store, gave him cash, directed him to buy a specific product, and to whom he then provided a receipt. Nor could Bobba testify that this person was affiliated with or a representative of NTG. Bobba also could not say that this person was Ryan Ferrell, Wynn Ferrell or anyone else who matched a description of any person at NTG. (*See* NIC's Exh. 58 at 33:2-34:5, 79:15-83:16 (testifying that some unknown person took him to the store, gave him money, and "suggested" he purchase Magna Rx); *see also* Exh. 232 at 115:13-116:13 (testifying that he never picked Bobba up in a car, drive him to a store, or give him money to buy Magna).)<br><br>Further, Bobba's credibility is shaky and an issue for the jury to consider. (*See, e.g.,* NIC's Exh. 58 at 13:21-14:2, 76:10-78:5 (testifying he |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | sustained serious head injuries due to assaults that were near fatal and have affected his memory); *id.* at 95:5-96:6, 103:6-9, 104:6-9 (living in sober-living environments during 2009 and 2010 at the time of Bobba's involvement with NTG).) Indeed, Scott Ferrell was appalled when he was informed about Bobba's Internet posts because they were untrue and completely inconsistent with the information they had about Bobba's experience with the product.  (*See* Exh. 260 (Sept. 3, 2010 email from Scott Ferrell).) |
| 314. | In this case, Bobba testified under oath at deposition that his case was staged, that he was driven to the store by an NTG representative, that he was given cash, he was told to buy the Magna product, and he provided his receipt to the individual that drove him. | | **Objection** – hearsay, misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A.  *See* FRE 401-404.<br><br>**Disputed.**  Bobba has made numerous inconsistent statements.  For example, he recanted the Internet post with a sworn declaration filed with the Court.  (*See* Exh. 259.)  Further, Bobba's testimony was wholly unreliable.  He could not identify or even reasonably describe the person who allegedly drove him to the store, gave him cash, directed him to buy a specific product, and to whom he then provided a receipt.  Nor could Bobba testify that this person was affiliated with or a representative of NTG.  Bobba also could not say that this person was Ryan Ferrell, Wynn Ferrell or anyone else who matched a description of any person at NTG.  (*See* NIC's Exh. 58 at 33:2-34:5, 79:15-83:16 (testifying that some unknown person took him to the store, gave him money, and "suggested" he purchase Magna Rx); *see also* Exh. 232 at 115:13-116:13 (testifying that he never picked Bobba up in a car, drive him to a store, or give him money to buy Magna).) |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW



Further, Bobba's credibility is shaky and an issue for the jury to consider. (*See, e.g.*, NIC's Exh. 58 at 13:21-14:2, 76:10-78:5 (testifying he sustained serious head injuries due to assaults that were near fatal and have affected his memory); *id.* at 95:5-96:6, 103:6-9, 104:6-9 (living in sober-living environments during 2009 and 2010 at the time of Bobba's involvement with NTG).) Indeed, Scott Ferrell was appalled when he was informed about Bobba's Internet posts because they were untrue and completely inconsistent with the information they had about Bobba's experience with the product. (*See* Exh. 260 (Sept. 3, 2010 email from Scott Ferrell).)

| 315. | After seeing Bobba's internet post, Magna moved for sanctions against NTG, in part, because NTG solicited plaintiffs to purchase Magna RX+ and then serve as class representatives. | **Objection** – hearsay, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404. Taking judicial notice of the fact that Magna filed a motion for sanctions is allowed, but the statements within the motion remain hearsay. |
|---|---|---|
| | | **Disputed** that NIC's characterization of a hearsay motion is an appropriate fact or that NTG solicited plaintiffs to purchase Magna RX+. Bobba recanted the Internet post in a sworn declaration filed with the Court. (*See* Exh. 259.) He verified that he had "purchased . . . Magna-RX . . . in late 2009." (*Id.*) This was consistent with Wynn Ferrell's testimony that he believed Bobba had purchased the product prior to signing a retainer agreement. (Exh. 232 at 115:13-116:13.) At deposition, Bobba's testimony was also inconsistent with his Internet post. For example, he could not identify or even reasonably describe the person who allegedly drove him to the store, gave him cash, directed him to buy a specific product, and to |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | whom he then provided a receipt. Nor could Bobba testify that this person was affiliated with or a representative of NTG. Bobba also could not say that this person was Ryan Ferrell, Wynn Ferrell or anyone else who matched a description of any person at NTG. (*See* NIC's Exh. 58 at 33:2-34:5, 79:15-83:16 (testifying that some unknown person took him to the store, gave him money, and "suggested" he purchase Magna Rx); *see also* Exh. 232 at 115:13-116:13 (testifying that he never picked Bobba up in a car, drive him to a store, or give him money to buy Magna).)<br><br>Further, Bobba's credibility is shaky and an issue for the jury to consider. (*See, e.g.*, NIC's Exh. 58 at 13:21-14:2, 76:10-78:5 (testifying he sustained serious head injuries due to assaults that were near fatal and have affected his memory); *id.* at 95:5-96:6, 103:6-9, 104:6-9 (living in sober-living environments during 2009 and 2010 at the time of Bobba's involvement with NTG).) Indeed, Scott Ferrell was appalled when he was informed about Bobba's Internet posts because they were untrue and completely inconsistent with the information they had about Bobba's experience with the product. (*See* Exh. 260 (Sept. 3, 2010 email from Scott Ferrell).) Last, Scott Ferrell explained that NTG was referred various potential plaintiffs for the Magna case by an attorney who worked at the California AG's office who did not have the resources to pursue a case against Magna for false claims. (Exh. 231 at 76:22-77:8, 113:17-116:19.) |
| 316. | Ryan Ferrell and Scott Ferrell prepared a declaration for Bobba's signature to be used in opposition to Magna's sanctions motion. | **Objection** – misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404. |

143

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | **Disputed** to the extent NIC states that Scott Ferrell prepared the declaration. (Exh. 231 at 204:11-205:13.)<br><br>**Disputed** to the extent NIC implies the declaration did not comport with exactly what Bobba said to Ryan Ferrell and Wynn Ferrell. For example, at the time the declaration was being prepared, Ryan Ferrell sent an email that made clear that the declarations had undergone changes in response to Bobba's comments. (Exh. 267 (noting the changes to Bobba's declaration because Bobba "originally thought he had been drinking when he made the statements [in the Internet post], but when he thought more about it, he determined that he had not been drinking . . .").) |
| 317. | The declaration that Ryan Ferrell had Bobba sign claimed that Bobba purchased the Magna RX+ product in 2009 (before the case was ever filed and before NTG knew it needed a new client to prevent dismissal). | **Objection** – argumentative, misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404.<br><br>**Undisputed** that NIC has correctly explained what the document states.<br><br>**Disputed** to the extent that NIC is suggesting that this was not true. In fact, the First Amended Complaint against Magna comports with the statement in Bobba's declaration prepared a year later. (*See* NIC's RJN 9 ¶ 6 ("Bobba . . . purchased Magna-Rx+ in the fall of 2009 . . .").) |
| 318. | Bobba testified that the declaration NTG prepared for him and had him sign was false and that he did not revise or review it before he signed. | **Objection** – misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404.<br><br>**Disputed.** When the declaration was being prepared, there are |

144

| | | | |
|---|---|---|---|
| | | | contemporaneous emails regarding revisions based on Bobba's comments. (*See, e.g.*, Exh. 267 (noting the changes to Bobba's declaration because Bobba "originally thought he had been drinking when he made the statements [in the Internet post], but when he thought more about it, he determined that he had not been drinking . . .").) |
| 319. | | Like Bobba, the original plaintiff in the *Morales v. Magna* case, Felipe Morales, purchased the Magna Rx+ product *after* Scott Ferrell represented to Magna's counsel that he had a client and after NTG had already threatened to bring claims in federal court against Magna. | **Objection** – hearsay, argumentative, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404. NIC's reliance on a motion Magna filed is inadnmissible hearsay and does not constitute evidence at all.<br><br>**Disputed** that NIC has properly characterized its evidence, which is simply an advocacy piece on behalf of Magna RX with no supporting documents regarding the allegations. |
| 320. | | In November of 2009, Scott Ferrell filed a false advertising lawsuit in state court against Magna RX on behalf of Kevin Vaughn. | **Objection** – irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404. NIC's reliance on a motion Magna filed is inadnmissible hearsay.<br><br>**Undisputed** that NTG filed this complaint asserting claims for CLRA, fraud and breach of warranty. |
| 321. | | On April 7, 2010, Scott Ferrell emailed counsel for Magna RX and said that NTG had a new client on whose behalf the firm will be filing a federal complaint. | **Objection** – hearsay, argumentative, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404. NIC's reliance on a motion Magna filed is inadnmissible hearsay and does not constitute evidence at all.<br><br>**Disputed** that NIC has properly characterized its evidence, which is |

145

| | | simply an advocacy piece on behalf of Magna RX with no supporting documents regarding the allegations. |
|---|---|---|
| 322. | Also on April 7, 2010, Scott Ferrell directed his father, Wynn Ferrell, to investigate claims against Magna. | **Objection** – lack of foundation regarding anything else that occurred on April 7, 2010, misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404. Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient. FRE 602 and 901.<br><br>**Undisputed** that Scott Ferrell sent an email to Wynn Ferrell asking that he investigate an individual who had contacted NTG and stated they had claims against Magna. |
| 323. | In response, Wynn Ferrell emailed Scott Ferrell and provided information for a person named Felipe Morales and said he would be meeting with Morales the following evening, April 8, 2010. | **Objection** – misleading, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404.<br><br>**Disputed** as misleading because Wynn Ferrell had already communicated with Morales and said Morales wanted NTG to represent him. (NIC's Exh. 77.) |
| 324. | The next evening, on April 8, 2010, Felipe Morales purchased the Magna Rx+ product from Walmart at 20:51. | **Objection** – lack of foundation, hearsay, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A. *See* FRE 401-404. Lack of foundation and authentication for whether dates/times in this purported fact are accurate, and what time zone. FRE 602 and 901.<br><br>**Disputed** as NIC has failed to establish when Morales purchased |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | Magna Rx or whether the hearsay receipt identified as an exhibit came from Morales.  In contrast, Scott Ferrell has stated that his understanding from when Morales retained NTG was that Morales purchased the product in February 2010.  (Exh. 268 ¶ 2.) |
| 325. | | Thus, Morales purchased his Magna RX+ product after NTG had already identified Magna Inc. as a litigation target and told Magna's counsel that they had a new client for litigation. | **Objection** – lack of foundation, hearsay, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A.  *See* FRE 401-404.<br><br>**Disputed** as NIC has failed to establish when Morales purchased Magna Rx or whether the hearsay receipt identified as an exhibit came from Morales.  In contrast, Scott Ferrell has stated that his understanding from when Morales retained NTG was that Morales purchased the product in February 2010.  (Exh. 268 at ¶ 2.) |
| 326. | | Morales' purchase also occurred the very same evening that he had a meeting with Wynn Ferrell. | **Objection** – lack of foundation, hearsay, irrelevant and unduly prejudicial to the extent NIC's exhibits are not tied to any predicate act identified in Appendix A.  *See* FRE 401-404.<br><br>**Disputed** as NIC has failed to establish when Morales purchased Magna Rx or whether the hearsay receipt identified as an exhibit came from Morales.  In contrast, Scott Ferrell has stated that his understanding from when Morales retained NTG was that Morales purchased the product in February 2010.  (Exh. 268 at ¶ 2.) |

## C. <u>Strataluz Scheme</u>

| | | | |
|---|---|---|---|
| 327. | | On December 20, 2013, Scott Ferrell emailed Jarrod Bentley, | **Objection specific to Baslow** – irrelevant and unduly prejudicial as |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Joshua Weiss, Dave Reid, and James Hardin and expressed interest in forming a company with them but expressed a desire to "incorporate in a jurisdiction with maximum privacy to prevent public disclosure of the shareholders beyond our registered agent for service of process."

Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, incomplete quote, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.

**Disputed** as NIC mischaracterizes the content of NIC's Exh. 121. The cited document does not "express[] an interest" or "express[] a desire" as claimed by NIC. Instead, as noted in the document, the email merely "represents my 'stream of conciousness' ideas" rather than actual proposals or the final structure for how Strataluz was ultimately formed. Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz. At deposition, Ferrell explained the many legitimate reasons for wanting to protect of the privacy of the Strataluz's shareholders since Strataluz was entering a very competitive marketplace and there were concerns about actions competitors might take against Strataluz, through litigation or otherwise. (Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12) ("They were manyfold, but most importantly, the companies in the direct-to-consumer space treated it as a market that they owned and that they were oligopolistic over, and were very effective at shutting out small start-up companies from competing with them.· In addition to that, I didn't want any notoriety that might be associated with me to burden the company from succeeding or failing on its own merits."); (*Id.* at 131:17-25) ("…it was to prevent the large companies that operated in this space and acted anticompetitively from being able to take actions against us independent of our capacity as passive shareholders in the company."); (*Id.* at

148

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

132:19-133:2) ("I feared that by entering into this space, we would be subject to a significant amount of claim from the· large troika of companies that dominated this space and that tried to overwhelm any new competitors with litigation costs."); (*Id.* at 134:15-135:1) ("My primary concern was that by entering into this market, that we would subject the company to some fairly brutal competition tactics, which often include preemptive litigation, and that I wanted to avoid, as I indicated before, having the costs and distractions of having the passive shareholders involved in the litigation or having the passive shareholders harassed by the large companies in that space.").)  Moreover, Ferrell testified that he was not trying to hide the fact that he was an owner in Strataluz to litigation adversaries.  (*Id.* at 132:15-18.)  Reid likewise testified that did not believe Strataluz's corporate structure was set up for the purpose of concealing the company's association with NTG, Reid and Ferrell.  (Exh. 235, *Reid Dep. Tr.* at 155:9-156:4 (Reid stating that he does not believe it was designed for that purpose and instead "was designed to be a structured company with holding·companies as we launched with the Two-Minute Booty product -- and we hoped and anticipated that we would have various products, consumer – direct to market consumer products that would be successful," and that he also believed "there were tax implications and other reasons for forming and holding it in that manner.").)  The testimony of Ferrell also shows that while there were discussions about structure and formation in late 2013, Strataluz was not a plaintiff in litigation until "18 months later [when] Strataluz was sued twice and filed two lawsuits, if I recall" and that NTG did not send out a Strataluz demand letter until May of 2015 and they stopped shortly thereafter in June of 2015.  (Exh 231, *S. Ferrell Dep. Tr.* at 136:19-137:12 and at 215:18-22.)  Reid also testified that at the time Strataluz was formed, he did not envision that the company

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | would be utilized for plaintiff litigation. (Exh. 235, *Reid Dep. Tr.* at 156:10-19 ("I did not envision that the company would be utilized for plaintiff litigation. We were trying to successfully market and launch direct-to-consumer products which we made a good faith effort in, but businesses don't always pan out the way you want them to.") and at 158:2-5 ("...when Strataluz was launched, my desire was that we would successfully market and produce direct-to-consumer products and so I did not anticipate litigation at all.").) |
| 328. | Scott Ferrell also stated that he "envision[ed] that [he] will own 51% of the company, and that James and Dave ("the NTG side") will participate in profits through my ownership." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | **Objection** – Misstates the evidence, incomplete quote, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. |
| | | **Disputed** as NIC mischaracterizes the content of NIC's Exh. 121. The cited document contains the quoted text but as the email makes clear that these were simply "'stream of conscious' ideas" rather than actual proposals or the final structure for how Strataluz was ultimately formed. |
| 329. | Scott Ferrell explained that "[a] second key to our success will be our immunity from litigation costs. Jarrod, this means that we can push the envelope in terms of our efficacy claims. It also means that we can sue our competitors if they make claims that we believe are hurting us." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | **Objection** – Misstates the evidence, incomplete quote, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. |

150

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1–9 | | | **Disputed** as NIC mischaracterizes the content of NIC's Exh. 121. The cited document contains the quoted text but as the email makes clear that these were simply "'stream of conscious' ideas" rather than actual proposals or the final structure for how Strataluz was ultimately formed. Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 10–28 | 330. | The new company was going to "handle set-up and accounting issues through the NTG back-office, the way that [Scott Ferrell] d[id] with Tawnsaura and Harcol." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | | **Objection** – Misstates the evidence, incomplete quote, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. Irrelevant, unduly prejudicial, argumentative and overbroad to the extent NIC is attempting to use this purported fact to contend that unsubstantiated claims and allegations about other companies (Tawnsaura and Harcol) should somehow be attributed to Strataluz. FRE 401-403. Improper character evidence, particularly given NIC's attempt to use other, non-predicate act lawsuits as allegedly illicit propensity evidence without providing evidence to establish any crimes or wrongs in other lawsuits. FRE 404(b). |
| | | | **Disputed** as NIC mischaracterizes the content of NIC's Exh. 121. The cited document contains the quoted text but as the email makes clear that these were simply "'stream of conscious' ideas" rather than actual proposals or a statement of what the company actually did. Moreover, at deposition, |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5 | | | Ferrell clearly explained that the quoted language merely meant "[t]hat we would utilize my office's back-office operations to handle the paperwork of the start-up so that it wasn't burdened by the·typical costs of paperwork associated with a start-up." (Exh. 231, *S. Ferrell Dep. Tr.* at 138:1-14). |
| 6<br>7<br>8<br>9<br>10<br>11<br>12<br>13 | 331. | In December of 2013, Scott Ferrell sought the assistance of Craig Etem, a corporate formation lawyer in Nevada, and Etem's associate, Brian Schusterman. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed** that Scott Ferrell sought the assistance of attorneys Craig Etem and Brian Schusterman relating to the corporate structure, formation or actions of what ultimately became Strataluz. |
| 14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | 332. | On December 23, 2013, Scott Ferrell emailed Brian Schusterman and Craig Etem seeking their assistance in forming a new company. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection -** Misstates the evidence, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.<br><br>**Undisputed** that Scott Ferrell emailed attorneys Craig Etem and Brian Schusterman relating to the corporate structure, formation or actions of what ultimately became Strataluz. |
| 25<br>26<br>27<br>28 | 333. | In that email, Scott Ferrell wrote:<br><br>"I want to form a new company that is nearly identical to Tawnsaura (a company in which I own 51% of the shares and have a couple minority | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

shareholders).  The only difference is that we want to completely cloak the identity of the shareholders – it is going to be a company that is involved in significant litigation, and I would like to avoid having the shareholders deposed."

defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, incomplete quote, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.  Irrelevant, unduly prejudicial, argumentative and overbroad to the extent NIC is attempting to use this purported fact to contend that unsubstantiated claims and allegations about other companies (Tawnsaura and Harcol) should somehow be attributed to Stratatuluz.  FRE 401-403.  Improper character evidence, particularly given NIC's attempt to use other, non-predicate act lawsuits as allegedly illicit propensity evidence without providing evidence to establish any crimes or wrongs in other lawsuits.  FRE 404(b).

**Disputed.**  The cited email includes the quoted text, but NIC's quotation is out of context because it quotes the first email on the chain even though there are later emails on this subject.  In particular, in the responding email, Mr. Etem explains that if incorporated in Nevada and "if the company were requested in discovery to reveal the names of its shareholders, so long as the request was otherwise proper, I would think the officers and directors would have to provide those names." (*See* NIC's Exh. 122.)  Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Stratatuluz.  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.)

| 334. | In that same email, Scott Ferrell asked:<br><br>"What is your recommendation as to how to proceed with this?  Should we incorporate in a | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Stratatuluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | jurisdiction that will ignore U.S. subpoenas? Or, should we incorporate in a jurisdiction where we only have to identify a single officer, and then have the company owned by a foreign corporation?" | defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Objection** – Misstates the evidence, incomplete quote, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. **Disputed.** The cited email includes the quoted text, but NIC's quotation is out of context because because it quotes the first email on the chain even though there are later emails on this subject. In particular, in the responding email, Mr. Etem explains that if incorporated in Nevada and "if the company were requested in discovery to reveal the names of its shareholders, so long as the request was otherwise proper, I would think the officers and directors would have to provide those names." (*See* NIC's Exh. 122.) Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 335. | | On December 23, 2012 at 12:58 PM, Craig Etem responded to Scott Ferrell and explained that "[t]here are companies in Nevada that will provide nominee officers and directors for listing on the Nevada Secretary of State's website" but "if the company were requested in discovery to reveal the names of its shareholders, so long as the request was otherwise proper, I would think the officers and directors would have to provide those names." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Objection** – Misstates the evidence and incomplete quote. **Undisputed** that the cited email includes the quoted text. **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1 | | | 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 2 | | | |
| 3 | 336. | Scott Ferrell responded to Etem's email and said:<br><br>"I think that the best way to go may be as follows:<br><br>1. Incorporate the company that will be the plaintiff in the anticipated litigation, in Nevada, and utilize a nominee officer/director.<br><br>2. Have ownership of the first company held by a second company (that will not be a plaintiff in any litigation), utilizing another nominee officer/director.<br><br>I believe this will satisfy us.  One of my concerns is that, in federal court, a party must file a 'Certificate of Interested Parties' that shows ownership of the company.  As such, company one (the plaintiff) will be required to show that it is owned by company two, but the chain stops there." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, incomplete quote, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.<br><br>**Disputed.**  The cited email includes the quoted text, but Ferrell clarified at deposition "I should have used the word 'party' rather than 'plaintiff'." (Exh. 231, *S. Ferrell Dep. Tr.* at 135:25-136:22.)  Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz.  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | 337. | Craig Etem responded to Ferrell at 4:44 PM on December 23, 2013 and provided him the information for "Joshua Miller, one of the owners of the Keystate Company" which "provide[d] corporate services, including nominee directors and officers." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence and incomplete quote.<br><br>**Undisputed** that the cited email includes the quoted text.  **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz.  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| 1 | | 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
|---|---|---|
| 338. | On December 26, 2013, Scott Ferrell forwarded his December 23, 2013 email chain to David Reid and stated that "I have asked David Reid – who is a partner at Newport Trial Group as well as the new venture – to reach out to Josh Miller." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | **Objection** – Misstates the evidence and incomplete quote. |
| | | **Disputed.** It is undisputed that Ferrell copied Reid on the email response to Craig Etem in NIC's Exh. 122 that has a date and time stamp of December 26, 2013 at 6:13:01 PM, but NIC's description of this email and its content is incomplete and inaccurate. (*See* NIC's Exh. 122.) |
| 339. | On January 8, 2014, Scott Ferrell emailed Etem and Schusterman and wrote:<br><br>"In a nutshell, we would like to set up for(sic) Nevada corporations utilizing nominee directors and officer from Keystate Corporation. The structure should be:<br><br>1. The "bottom" corporation will be named 'Quintogos.' Ownership percentages will follow soon and will be among five people: Scott Ferrell, James Hardin, David Reid, Josh Weiss, and Jarrodd Bentley.<br><br>2. The 100% owner of Strataluz will be a corporation that we describe as 'Blocker 1' that will have nominee owners and directors from Keystate.<br><br>3. The 100% owners of 'Blocker 1' will be 'Blocker 2' that will have nominee owners and directors from Keystate. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | **Objection** – Misstates the evidence, incomplete quote, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. Irrelevant, unduly prejudicial, argumentative and overbroad to the extent NIC is attempting to use this purported fact to contend that unsubstantiated claims and allegations about other companies (Tawnsaura and Harcol) should somehow be attributed to Strataluz. FRE 401-403. Improper character evidence, particularly given NIC's attempt to use other, non-predicate act lawsuits as allegedly illicit propensity evidence without providing evidence to |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | 4. The 'top' corporation – which will be the operating company that is the face of the business – will be 'Strataluz Corporation' – and will be the 100% owner of 'Blocker 2.' It also be staffed with nominee owners and dirctors from Keystate.<br><br>. . .<br><br>"Sariah: As soon as we have the corporations formed and the taxpayer I.D. number, please open an account at Wells Fargo for 'Strataluz' that will be operated just like Tawnsaura and Harcol. I'll fund it with an initial $125,000." | establish any crimes or wrongs in other lawsuits. FRE 404(b).<br><br>**Disputed.** It is undisputed that the cited email contains the quoted text, but NIC's description of this email and its quote is incomplete. (*See* NIC's Exh. 123.) Also disputed to the extent NIC claims this email accurately reflects how the companies were untimately structured. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 126:23-128:5) (where Ferrell explained that he did not know if this email reflected how "Craig and Josh ultimately structured" the company. Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 340. | | On January 8, 2014 at 2:16 PM, Scott Ferrell emailed Schusterman and Etem and said:<br><br>"In a nutshell, this enterprise will have similar dynamics to Tawnsaura and Harcol, so I'd like to them set up the same way – with the majority shareholder (which will be me) having maximum control." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Misstates the evidence, incomplete quote, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. Irrelevant, unduly prejudicial, argumentative and overbroad to the extent NIC is attempting to use this purported fact to contend that unsubstantiated claims and allegations about other companies (Tawnsaura and Harcol) should somehow be attributed to Strataluz. FRE 401-403. Improper character evidence, particularly given NIC's attempt to use other, non-predicate act lawsuits as allegedly illicit propensity evidence without providing evidence to establish any crimes or wrongs in other |

| | | |
|---|---|---|
| 1 | | lawsuits.  FRE 404(b). |
| 2 | | **Disputed.**  It is undisputed that the cited email contains the quoted text, but NIC's description of this email and its quote is incomplete and taken out of context. (*See* NIC's Exh. 124.)  In addition, at deposition, Ferrell explained that "[o]ne of the ways that they were set up gave majority shareholder maximum control, and I was the majority shareholder, but I don't believe they were set up for the purpose of giving me maximum control."  (Exh. 231, *S. Ferrell Dep. Tr.* at 152:17-153:15.)  Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz.  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 14  341. | Tawnsaura LLC and Harcol LLC were companies that filed, through NTG, more than one hundred patent lawsuits. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, incomplete quote, assumes facts not in evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.  Lack of foundation and authentication.  FRE 602 and 901. Inadmissible hearsay.  FRE 801-803. Irrelevant, unduly prejudicial, argumentative and overbroad to the extent NIC is attempting to use this purported fact to contend that unsubstantiated claims and allegations about lawsuits filed by other companies (Tawnsaura and Harcol) should somehow be attributed to Strataluz.  FRE 401-403. Improper character evidence, particularly given NIC's attempt to use other, non-predicate act lawsuits as allegedly illicit propensity evidence |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | without providing evidence to establish any crimes or wrongs in other lawsuits. FRE 404(b). |
| | | | **Disputed** that NIC has provided admissible and competent evidence to establish this purported fact.  Also disputed that there was anything nefarious, unlawful or objectively baseless with the structure, formation or actions of Strataluz.  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 342. | In August 2012, the Central District of California held that Tawnsaura's patents were invalid and unenforceable. | | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | | **Objection** – Mistates the evidence and assumes facts in that NIC has failed to provide the parties and the Court with the evidence that NIC has cited to and the citation that NIC has provided appears to be erroneous.  Irrelevant, unduly prejudicial, argumentative and overbroad to the extent NIC is arguing its claims and allegations about patents of Tawnsaura, which had nothing to do with Strataluz and for which the evidence is defective as noted above, should somehow be attributed to Strataluz.  FRE 401-403.  Improper character evidence, particularly given NIC's attempt to use other, non-predicate act lawsuits as allegedly illicit propensity evidence without providing evidence to establish any crimes or wrongs in other lawsuits. FRE 404(b). |
| | | | **Disputed** that NIC has provided admissible and competent evidence to establish this purported fact.  Also disputed that there was anything nefarious, unlawful or objectively |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | baseless with the structure, formation or actions of Strataluz. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 343. | | Scott Ferrell was the majority shareholder in both Tawnsaura LLC and Harcol LLC. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Mistates the evidence and assumes facts not supported by the evidence NIC cited. NIC has failed to provide the parties and the Court with all of the evidence that NIC has cited to here, and the citations that NIC has provided appear to be erroneous. Irrelevant, unduly prejudicial, argumentative and overbroad to the extent NIC is attempting to use this purported fact to contend that its claims and allegations about other companies (Tawnsaura and Harcol) should somehow be attributed to Strataluz and Ferrell. FRE 401-403. Improper character evidence, particularly given NIC's attempt to use other, non-predicate act lawsuits as allegedly illicit propensity evidence without providing evidence to establish any crimes or wrongs in other lawsuits. FRE 404(b).<br><br>**Disputed** that NIC has provided admissible and competent evidence to establish this purported fact. Also disputed that there was anything nefarious, unlawful or objectively baseless with the structure, formation or actions of Strataluz. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1 | | | |
| 2 | 344. | The next day, on January 9, 2014, Joshua Weiss emailed Scott Ferrell and asked him "[i]n reviewing the below, what does Quintogos own?" | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | **Objection –** Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | **Undisputed** that the cited email includes the quoted text. |
| 11 | | | |
| 12 | 345. | Scott Ferrell responded and stated that: | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 13 | | "I think quintogos is the company that owns all of our stuff – as though the other companies only exist [to] prevent people from finding out who owns quintogos." | |
| 14 | | | |
| 15 | | | |
| 16 | | | **Objection –** Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | **Disputed.** NIC has misquoted from the cited email. In addition, Ferrell clarifies later in the email that "[t]o be honest, I may have gotten the structure wrong." (*See* NIC's Exh. 123.) Also disputed that there was anything nefarious, unlawful or objectively baseless with the structure, formation or actions of Strataluz. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16 | 346. | On January 10, 2014, Joshua Weiss inquired about whether the corporate structure had any tax consequences to which Scott Ferrell replied:<br><br>"HAHAHAHA.  He told me that the tax consequences were 'nil' – that these will all be pass throughs and that the only tax liability will be on our personal W2s for any pass through income." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Irrelevant, unduly prejudicial, argumentative and overbroad to the extent NIC is attempting to use this purported fact to present arguments about taxes or tax consequences, neither of which has any bearing on any issue in NIC's motion. FRE 401-403.<br><br>**Undisputed** that the cited email includes the quoted text.  **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz.  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 17<br>18<br>19<br>20<br>21<br>22<br>23 | 347. | On January 15, 2014, Schusterman emailed Josh Miller (copying Scott Ferrell) and provided him with a copy of the draft operating agreement for Quintogos, LLC "for [his] review and comment." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed** that the cited email includes a copy of the draft operating agreement for Quintogos, LLC. |
| 24<br>25<br>26<br>27<br>28 | 348. | On January 16, 2014 at 11:55 AM, Josh Miller provided feedback to Scott Ferrell and Schusterman regarding the Quintogos, LLC operating agreement. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Misstates the evidence, |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.  The email NIC cites to also is not the original email from Josh Miller and instead appears to be an altered version with comments from someone else incorporated into it. Lack of foundation and authentication for both the author and content, as well as for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Disputed.**  It is undisputed that the exhibit NIC cited to includes an email bearing Josh Miller's email signature, but NIC's description is erroneous as it is not the original email from Josh Miller and instead appears to be an altered version with comments from someone else incorporated into it. (*See* NIC's Exh. 125.)  In addition, there is no foundation or authentication for any of the claims made by NIC about this email or its content. |
| 349. | Josh Miller inquired:<br><br>"I know there are multiple entities contemplated.  Will any of them utilize our address in Nevada, rather than this Newport address.  I know that other clients have structured this way so that the ownership can't be traced back." | | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.  The email NIC cites to also is not the original email from Josh Miller and instead appears to be an altered version with comments from someone else incorporated into it. Lack of foundation and authentication for both the author and content, as well as for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Disputed.**  It is undisputed that the |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| 1 | | | exhibit NIC cited to includes an email bearing Josh Miller's email signature, but NIC's description is erroneous as it is not the original email from Josh Miller and instead appears to be an altered version with comments from someone else incorporated into it. (*See* NIC's Exh. 125.)  Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz.  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
|---|---|---|---|
| 350. | | On January 16, 2014 at 2:01 PM, Scott Ferrell responded to Josh Miller's email by writing "[his] comments in ALLCAPS" directly into the body of Miller's email. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection –** Misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.  The email NIC cites to also is not the original email from Josh Miller and instead appears to be an altered version with comments from someone else incorporated into it. Lack of foundation and authentication for both the author and content, as well as for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.

**Disputed.** It is undisputed that the exhibit NIC cited to includes an email bearing Josh Miller's email signature, but NIC's description is erroneous as it is not the original email from Josh Miller and instead appears to be an altered version with comments from someone else incorporated into it. (*See* NIC's Exh. 125.)  In addition, there is |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | no foundation or authentication for any of the claims made by NIC about this email or its content.  Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz.  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 351. | Scott Ferrell wrote in "ALLCAPS" in response to the inquiry about using Miller's Nevada address rather than the Newport address affiliated with Ferrell:<br><br>"IT IS IMPERITIVE THAT THEY ALL USE YOUR ADDRESS IN NEVADA SO THEY CAN'T BE TRACED BACK TO US." | | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.  The email NIC cites to also is not the original email from Josh Miller and instead appears to be an altered version with comments from someone else incorporated into it.  Lack of foundation and authentication for both the author and content, as well as for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient.  FRE 602 and 901.<br><br>**Disputed.** It is undisputed that the exhibit NIC cited to includes an email bearing Josh Miller's email signature, but NIC's description is erroneous as it is not the original email from Josh Miller and instead appears to be an altered version with comments from someone else incorporated into it. (*See* NIC's Exh. 125.)  In addition, there is no foundation or authentication for any of the claims made by NIC about this email or its content.  Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz.  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 352. | On January 16, 2014 at 4:57 PM, Schusterman circulated the draft operating agreements for the other three entities associated with the new company: International Brandery, LLC, Binary Resource Management, LLC, and Strataluz, LLC. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). <br><br> **Undisputed** that the cited email includes operating agreements described by NIC. |
| 353. | Schusterman explained that "for each of these entities, I have listed the address of the manager as the address Josh provided." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). <br><br> **Undisputed** that the cited email includes the quoted text. |
| 354. | On January 28, 2014, the Operating Agreement for Quintogos LLC was executed by Scott Ferrell, James Hardin, David Reid, Jarrod Bentley, and Joshua Weiss. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). <br><br> **Objection –** Misstates the evidence and assumes facts not in evidence as the operating agreement in NIC's exhibit merely shows that it was executed with an effective date of January 28, 2014. <br><br> **Undisputed** that the operating agreement cited by NIC was executed with an effective date of January 28, |

166

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | 2014. |
|---|---|---|
| 355. | The company's initial capitalization came from three loans: (1) a $180,000 loan from Scott Ferrell; (2) a $35,000 loan from David Reid; and (3) a $35,000 loan from James Hardin. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Undisputed** that the company's initial capitalization is accurately described by NIC. |
| 356. | The ownership percentages of the Quintogos LLC's members were: Scott Ferrell – 37% David Reid – 7% James Hardin – 7% Joshua Weiss – 20% Jarrod Bentley – 29% | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Undisputed** that the ownership percentages of the Quintogos LLC's members is accurately described by NIC. |
| 357. | On January 29, 2014, the Operating Agreements for International Brandery, LLC, Binary Resource Management, LLC, and Strataluz, LLC were executed by Scott Ferrell. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Objection –** Misstates the evidence and assumes facts not in evidence as the operating agreements in NIC's exhibits merely show that they were executed with an effective date of January 29, 2014. **Undisputed** that the operating agreements cited by NIC were executed with an effective date of January 29, 2014. |
| 358. | Under the executed operating agreements: (1) Quintogos LLC was the sole member of | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | International Brandery, LLC; (2) International Brandery, LLC was the sole member of Binary Resource Management, LLC; and (3) Binary Resource Management, LLC was the sole member of Strataluz, LLC. | alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed** that the operating agreements cited by NIC reflect the sole initial members of the entities as described by NIC. |
| | 359. | The Articles of Organization for the four entities each listed an address of 101 Convention Center Dr., Suite 850, Las Vegas, Nevada 89109. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed** that the articles of organization for the four entities reflect the address described by NIC. |
| | 360. | The Articles of Organization did not identify Scott Ferrell, David Reid, James Hardin, Joshua Weiss, or Jarrod Bentley, but instead simply named the "blocker" companies or the nominee manager, Josh Miller. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading as the Articles of Organization do not require or call for the identification of Scott Ferrell, David Reid, James Hardin, Joshua Weiss, or Jarrod Bentley, nor do they include the words "blocker" or "blocker" companies. (*See* NIC's RJN 31.)<br><br>**Disputed.** The Articles of Organization do not require or call for the identification of Scott Ferrell, David Reid, James Hardin, Joshua Weiss, or Jarrod Bentley, nor do they include the words "blocker" or |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | "blocker" companies.  (*See* NIC's RJN 31.) |
| 361. | | Josh Miller was hired to be the nominee manager of Quintogos, LLC and he was indemnified to the fullest extent of the law through an indemnification agreement executed by Scott Ferrell. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. |
| | | | **Disputed.**  It is undisputed that Josh Miller and Quintogos, LLC entered into the indemnity agreement that bears Ferrell's signature and includes the specific terms set forth in NIC's Exh. 131, but NIC's other descriptions and characterizations of this document are not accurate.  The documents cited by NIC also do not indicate that Josh Miller was "hired" to be the nominiee manager of Quintogos, LLC.  Moreover, while he was the "manager" of Quintogos, NIC's Exhs. 131 and 132 do not state that he was hired for that exclusive purpose. |
| 362. | | Quintogos agreed to pay Josh Miller $5,000 per year for his role as a nominee manager. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. |
| | | | **Disputed.**  It is undisputed that Quintogos, LLC and Keystate Corporate Management (NV), LLC (KCMNV) entered into the agreement in NIC's Exh. 219, but NIC's other |

169

| | | |
|---|---|---|
| | | descriptions and characterizations of this document are not accurate.  (See NIC's 219 [no reference to "pay Josh Miller" or "nominee manager" as claimed by NIC].) |
| 363. | Scott Ferrell's, David Reid's, and James Hardin's ownership percentages in the Strataluz Entities³ totaled a controlling 51% interest. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).  **Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Vague, ambiguous and legally incorrect for NIC to try to define or group separate holding company entities together and treat them as one, particularly for purposes of establishing corporate ownership applicable to all.  **Disputed.**  It is undisputed that in Scott Ferrell's, David Reid's, and James Hardin's ownership percentages in Quintogos, LLC totaled 51%, but NIC's other descriptions and characterizations of this purported fact are vague, ambiguous and legally incorrect as a result of NIC's attempt to define or group separate holding company entities together as one. |
| 364. | On January 14, 2014, Scott Ferrell responded to an email from Craig Etem by providing answers to Etem's questions "in ALLCAPS" directly into Etem's email.  Ferrell wrote:  "DAVE REID AND JAMES HARDIN ARE MY LAW | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |

<div style="margin-left:2em">

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

</div>

---

³ NIC hereinafter refers to the companies Quintogos LLC, Binary Resource Management LLC, International Brandery LLC, and Strataluz LLC as the "Strataluz Entities."

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | PARTNERS, AND WE WILL ACT US(sic) ONE VOICE WITH RESPECT TO THE 51 PERCENT WE OWN." | **Objection** – Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. The email NIC cites to also is not the original email from Craig Etem and instead appears to be an altered version with comments from someone else incorporated into it. Lack of foundation and authentication for the author and content of the email in question. FRE 602 and 901.<br><br>**Disputed.** It is undisputed that the exhibit NIC cited to includes an email bearing Craig Etem's email signature, but NIC's description is erroneous as it is not the original email from Craig Etem and instead appears to be an altered version with comments from someone else incorporated into it. (*See* NIC's Exh. 133.) Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Stratuluz. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| | 365. | On January 29, 2014, Scott Ferrell executed a "Written Consent of the Manager of Stratuluz, LLC" which designated Jarrod Bentley as the President of Stratuluz LLC but limited his ability to "enter into any transaction or series of transactions on behalf of the Company involving the incurrence of any indebtedness or the hypothecation, encumbrance, or granting of a security interest or lien upon any Company property, which, in the aggregate amount, exceeds $7,500, without the express consent of the Manager." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Stratuluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed** that the Written Consent is set forth in NIC's Exh. 134 and that said document designated Jarrod Bentley at the President of Stratuluz and authorized him to "contract debts or liabilities, and sign contracts or agreements" on behalf of Stratuluz subject to the limitations described by NIC in this purported fact. **Disputed** as to NIC's other characterizations of |

171

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | | this document, which are not reflecting in the document and incorrect. |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14 | 366. | On January 31, 2014, Sariah Para emailed Scott Ferrell and David Reid and said:<br><br>"I am working on getting the EIN's and bank accounts for Quintogos and the associated companies which is taking longer than expected because of the extra measures we are taking to protect NTG/You from being associated with it." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed** that the cited email includes the quoted text. **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 367. | The Strataluz Entities had no office or principal place of business. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Vague, ambiguous and legally incorrect for NIC to try to define or group separate holding company entities together and treat them as one.<br><br>**Disputed.** Bentley testified that "I had my own·office, and I conducted Strataluz business out of that·office and used that office as an address, but it wasn't officially Strataluz's office." (NIC's Exh. 137 at 12-13 (*Bentley Tr.* at 50:23-51:2). In addition, Ferrell testified that whether Strataluz had an office was "not an easy question to |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1 | | | answer" because, for example, when Weiss and Bentley "were working the operations, [they] did it from wherever they were," but Strataluz had a "home base" for where it did business, which was Bentley's house, and that Strataluz did not provide anyone with a physical address because they all already had physical addresses. (NIC's Exh. 1 at 39 (*S. Ferrell Tr.* at 148:21-149:17.) |
| 368. | Jarrod Bentley, the President of Strataluz LLC, received no salary or financial compensation as part of his role. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. **Undisputed** that Bentley was not paid a salary from Strataluz. **Disputed** to the extent NIC contends Bentley did not receive other consideration or have an expectation of financial compensation from Strataluz profits. Bentley did not pay any money (whether in the form of a loan or a capital contribution) for his 29% interest in Strataluz. (*See* NIC's Exh. 126 at 2 (NTG062923 – describing loans by others, not Bentley and 7 (NTG062928 – identifying 29% interest for Bentley and zero capital contribution from him); *see also* Exh - 250, *Bentley Dep. Tr.* at 37:14-16 (confirming Bentley put no money into Strataluz).) Instead, in exchange for his role as President and being "in charge of marketing and operations" and managing "the day-to-day company" (*Id.*, *Bentley Dep. Tr.* at 38:9-14), Bentley received a 29% interest for which he expected to be compensated through Strataluz profits (NIC's Exh. 137 at 14 (*Bentley Tr.* at 53:8-9). | |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

173

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1 | | | |
| 2 | 369. | On May 4, 2015, Jarrod Bentley emailed Scott Ferrell, Reid, Weiss, and Hardin to explain that he was in the process of developing a commercial for EverSilk (a cellulite product) and he had been running test advertisements. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b). |
| | | | **Undisputed** that Bentley sent the email in NIC's Exh. 136.  **Disputed** as NIC's description of the content of this email is inaccurate and incomplete.  The referenced email provides a detailed and lengthy "update" on numerous tasks and tests relating to Eversilk that had previously been done or completed, including Bentley describing thorough market testing, pricing, advertising, as well as "progress on things like the website, telemarketing, and fulfillment" and a strategy for generating a profit through "retail" of the Eversilk product, among other things.  Disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.    Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2) |
| | 370. | Bentley noted that:<br><br>"[B]ecause the commercial is so | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any |

174

| | | | |
|---|---|---|---|
| 1 | | aggressive and makes claims about cellulite and weight loss, most of the stations won't run it. That will require doing another test that is somewhat watered down. Sadly, to get any kind of clearance we need to remove most of the 'eliminates cellulite' type of language as well as the no diet and exercise claims. It stands to reason that this will weaken response but hopefully it will still be strong enough to run and make a profit." | alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**Objection** – Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, argumentative and misleading as the quote is taken out of context and relates only to market testing for Eversilk.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b).

**Undisputed** that the cited email includes the quoted text.  **Disputed** as NIC has misleadingly taken this quote out of context.  Disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).

| | | | |
|---|---|---|---|
| 371. | | Scott Ferrell responded to Bentley's email and said:<br><br>"I have two thoughts re ever silk:<br><br>1. Let's keep the claims as aggressive as possible.  If we get sued, we have a shield from litigation costs through NTG.<br><br>2. what about the idea of having quintogos sue a few companies who are litigation averse and who are selling cellulite products? we could model it after what fiber research is doing to ORI.  If no one strenuously objects to this.  I will research and identify a few targets.  Anyone have | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk |

175

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 1 | any suggestions offhand?" | is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). |
| | | **Undisputed** that the cited email includes the quoted text. **Disputed** as NIC has misleadingly taken this quote out of context as this email pertains to only market testing for Eversilk (*see* NIC's Exh. 136). Disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Disputed to the extent NIC is attempting to mischaracterize the term "target." When asked about researching potential "targets" for Strataluz demand letters, Ferrell testified that he "had a role in determining who was violating the law and identifying whether and to· the extent to which Strataluz would have standing to enforce it…" (Exh. -231, *S. Ferrell Dep. Tr.* at 186:2-7.) In addition, Ferrell clarified that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law." (*Id.* at 186:8-16.) Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the structure, formation or actions of Strataluz. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, and 136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 372. | On May 4, 2015, Scott Ferrell directed Katherine Kirshner, a firm paralegal, to "research [] potential targets" for the cellulite lawsuits. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable |

176

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1 defendants"); *see also* FRE 401-403;
FRE 404(b)(1).

2 **Objection** – Misstates the evidence,
3 assumes facts not supported by the
evidence, argumentative and
4 misleading, especially in the way that
NIC's is mischaracterizing the word
5 "target." Irrelevant, unduly prejudicial,
and overbroad to the extent NIC is
6 attempting to contend that purported
facts and evidence relating to Eversilk
7 should somehow be attributed to
ProMaxal. FRE 401-403. Eversilk is
8 not ProMaxal and ProMaxal is the only
Strataluz product at issue in the
9 predicate acts in NIC's motion (*see*
Dkt. 1107-2). Improper character
10 evidence. FRE 404(b).

**Disputed**. The documents cited by
11 NIC do not show an assignment being
given to Katherine Krishner on May 4,
12 2015. Disputed to the extent NIC is
attempting to contend that purported
13 facts and evidence relating to Eversilk
should somehow be attributed to
14 ProMaxal. Eversilk is not ProMaxal
and ProMaxal is the only Strataluz
15 product at issue in the predicate acts in
NIC's motion (*see* Dkt. 1107-2).
16 Disputed to the extent NIC is
attempting to mischaracterize the term
17 "target." When asked about
researching potential "targets" for
18 Strataluz demand letters, Ferrell
testified that he "had a role in
19 determining who was violating the law
and identifying whether and to· the
20 extent to which Strataluz would have
standing to enforce it…" (Exh. -231,
21 *S. Ferrell Dep. Tr.* at 186:2-7.) In
addition, Ferrell clarified that "an
22 entity would only be a target if they
were competing unfairly against us in
23 our space or distorting the market in a
way that prevented our industry into
24 the space and doing so in a way that
violated the law." (*Id.* at 186:8-16.)
25 Also disputed that there was anything
nefarious, unlawful or objectively
26 baseless in this email or with the
structure, formation or actions of
27 Strataluz. (*See* Exh. 231, *S. Ferrell
Dep. Tr.* at 131:1-12 and 17-25,
28 132:15-133:2, 134:15-135:1, and

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

136:19-137:12; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.)

---

373.

That evening, Scott Ferrell emailed Bentley, Reid, Weiss, and Hardin about the plan to sue companies selling cellulite products. He wrote:

"I have a few strategy thoughts upon which I would like your input:

1. Have we trademarked Eversilk yet? If not, we should do so immediately. It will make our suits stronger.

2. Jarrod, can you tell me something that is unique about Eversilk as compared to other products? We'll use that as our 'competitive advantage' in the allegations.

3. In terms of a fee agreement, here is what I propose: a contingency where NTG fronts the costs for Quintogos with NTG receiving 50% of the proceeds. Of the remaining 50%, half go to Quintogos to fund the company and the other half get distributed between the five of us as owners in proportion to our percentages.

4. we will have a couple of these cases ready to go by Friday. As to some companies that I know are litigation averse, we will send a demand letter and let them negotiate peace with Dave. As to others, we will simply file immediately."

**Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).

**Undisputed** that the cited email includes the quoted text. **Disputed** as to NIC's characterization of that email as being "about the plan to sue companies selling cellulite." The email refers only to "strategy thoughts." Disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Also disputed that there was anything nefarious, unlawful or objectively baseless in this email, with the structure, formation or actions of Strataluz, or with the use of the term "target." (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, 136:19-137:12, and 186:2-16; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.)

---

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 374. | James Hardin responded on May 4, 2015 and expressed skepticism on the validity of the cases:<br><br>"Scott, I am not sure what the damage theory is in these cases. I think the defendants are likely to dig in and fight, like ORI." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).<br><br>**Disputed**. James Hardin did not express "skepticism" on the validity of the cases. In the quoted email, he posed a question regarding damage theory and gave his impression that defendants are likely to "dig in and fight." (NIC's Exh. 198.) Neither is an indictment of the validity of such cases. Disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Also disputed that there was anything nefarious, unlawful or objectively baseless in this email, with the structure, formation or actions of Strataluz, or with the use of the term "target." (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, 136:19-137:12, and 186:2-16; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW



| 375. | On May 5, 2015, Jarrod Bentley responded to Scott Ferrell and explained that the formula for Eversilk "is fairly generic" and the "ingredients are common among many other cellulite creams." Bentley explained that "the main ingredient (not unique to us) is called PRO-SVETYL." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
|---|---|---|
| | | **Objection –** Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). |
| | | **Disputed**. NIC's description and selective quote is highly misleading and inaccurate. First, Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Second, NIC omits that there are "3 main claims" associated with PRO-SVELTYL. Moreover, Bentley went on to explain that "as the commercial progresses we do actually have a custom formula that we can start selling instead of this generic one. The reason I went with the generic formula first was that the start up cost were significantly smaller. I believe the custom formula will allow us to at least substantiate more aggressive claims." (NIC's Exh. 150.) Third, there is no indication in this email or other documents cited by NIC that PRO-SVELTYL was ultimately used in Eversilk. Even if it was used, that would not mean that the product was generic. In this regard, Jarrod Bentley testified that "EverSilk -- the person that we contacted added some specific ingredients to make it special. I don't remember what they were, but it wasn't a completely 100 percent generic formula." (Exh 250, *Bentley* |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | *Tr.* at 49:24-50:2.)  Disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). |
| 376. | Bentley explained that he had specifically elected not to obtain a custom formula that could substantiate aggressive claims because the start up costs were higher. | | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b).

**Disputed**.  NIC's description and selective quote is highly misleading and inaccurate.  First, Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Second, NIC omits that there are "3 main claims" associated with PRO-SVELTYL.  Moreover, Bentley went on to explain that "as the commercial progresses we do actually have a custom formula that we can start selling instead of this generic one. The reason I went with the generic formula first was that the start up cost were significantly smaller. I believe the custom formula will allow us to at least substantiate more aggressive claims." (NIC's Exh. 150.)  Third, there is no indication in this email or other |

181

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | documents cited by NIC that PRO-SVELTYL was ultimately used in Eversilk. Even if it was used, that would not mean that the product was generic. In this regard, Jarrod Bentley testified that "EverSilk -- the person that we contacted added some specific ingredients to make it special. I don't remember what they were, but it wasn't a completely 100 percent generic formula." (Exh 250, *Bentley Tr.* at 49:24-50:2.) Disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). |
| | 377. | On May 6, 2015, David Reid wrote an email responding to Scott Ferrell's strategy email about brinding lawsuits against cellulite companies. Reid wrote:<br><br>"We are sending out letters on these [cellulite] matter first, right? I think it will be good to get a sense of the value of these matters before getting some on file. I'm quite sure I can get some decent settlements from these guys." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, argumentative and misleading. In addition, the exhibit NIC cites (NIC's Exh. 190) is not the email NIC is quoting from. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).<br><br>**Disputed.** The exhibit NIC cites (NIC's Exh. 190) is not the email NIC is quoting from. But even assuming NIC meant to cite to NIC's Exh. 90, NIC's characterization of Ferrell's email is still incorrect. That email |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | (NIC's Exh. 90) refers only to "strategy thoughts." In addition, Reid clarified and corrected NIC's mischaracterization of this email at deposition: "I meant exactly what I said, that I want to get a good sense of the values of·these matters which includes whether or not these entities·would be changing any unlawful disclosures that they may·be making that would distort or otherwise be a·preventative barrier for the market." (Exh 235, *Reid Dep. Tr.* at 182:13-22.) Disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.   Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). |
| 378. | | On May 8, 2015, Scott Ferrell responded to David Reid's inquiry about sending demand letters to gauge the profitability of the cellulite lawsuits.  Scott Ferrell wrote:<br><br>"1. We should send letters on some, but not all.  There are some companies that I know from past experience have no appetite for litigation, and some that will file a DJ action against us if they get a letter from us.<br><br>. . .<br><br>3. There is money to be had here, but I believe that the dynamics are different than with class actions or patents.  The thing that will make these companies settle are the things that made Iovate write Basic research a check for $2M in response to a single letter: fear that we will use discovery to learn about their sales figures, product formulations, etc.  Add that to the knowledge that we have an active class action practice and can hit an | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, argumentative and misleading.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b).<br><br>**Disputed**.  Reid's email was not an inquiry about "sending demand letters to gauge the profitablility of the cellulite lawsuits."  Reid clarified and corrected NIC's mischaracterization of this email at deposition: "I meant |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | offending target in two different ways, and companies should be willing to pay for peace.<br><br>Once Kat gets me the list of initial products, I can give my thoughts about which ones to start with." | exactly what I said, that I want to get a good sense of the values of·these matters which includes whether or not these entities·would be changing any unlawful disclosures that they may·be making that would distort or otherwise be a·preventative barrier for the market." (Exh 235, *Reid Dep. Tr.* at 182:13-22.) Disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Also disputed that there was anything nefarious, unlawful or objectively baseless in this email, with the structure, formation or actions of Strataluz, or with the use of the term "target." (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, 136:19-137:12, and 186:2-16; *see also* Exh. 231, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 379. | On May 8, 2015, Jarrod Bentley sent Scott Ferrell, Joshua Weiss, and David Reid an email with the subject "Re: Eversilk First Cellulite Demand Letter." Bentley said:<br><br>"In the event of a potential counter-claim, our commercial won't stand up to much/any scrutiny. It has several claims that simply can't be substantiated.<br><br>. . .<br><br>"Of more concern than the claims on the commercial, are the testimonials with accompanying before and after pictures. For lack of a better phrase, these are totally bogus. The testimonials were never on the product and the pictures are from google images. While we are working on getting real testimonials and pictures – this is still a couple of months away. In the meantime, would you have us run the existing | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).<br><br>**Undisputed** that the cited email includes the quoted text. **Disputed** to |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | commercial or should we wait on getting real people? <br><br> . . . <br><br> As for PRO-SVETYL, we don't have an agreement with the maker of this ingredient (Silab -Company out of France) for use in our cream – we simply get it from our manufacturer. . .  However, I have no idea what the actual arrangement is between our manufacturer and Silab.  If this is an issue, I do have an older formula cellulite cream. . . [i]t's probably a more effective cream and has some patented ingredients too.  Also, it's actually a custom formula.  We didn't use it for EverSilk as the cost proved a little high for the small quantities that we needed." | the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Also disputed that there was anything nefarious, unlawful or objectively baseless in this email, with the structure, formation or actions of Strataluz, or with the use of the term "target."  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, 136:19-137:12, and 186:2-16; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 380. | On May 7, 2015, Scott Ferrell directed Katerine Kirshner to "prepare and maintain a report that gets updated and added to the list of reports that you give me each week."  He explained that the report will "track the status of our cellulite lawsuits, similar to how the charts tack the status of our ada and wiretap lawsuits." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). <br><br> **Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b). <br><br> **Undisputed** that the cited email includes the quoted text.  **Disputed** to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the |

185

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1<br>2 | | | predicate acts in NIC's motion (*see* Dkt. 1107-2). |
| 3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 381. | Scott Ferrell directed Victoria Knowles to "work with Kat to ensure that she gets updated as to any progress from each target." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).<br><br>**Undisputed** that the cited email includes the quoted text. **Disputed** to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Disputed to the extent NIC is attempting to mischaracterize the term "target." When asked about researching potential "targets" for Strataluz demand letters, Ferrell testified that he "had a role in determining who was violating the law and identifying whether and to· the extent to which Strataluz would have standing to enforce it…" (Exh. -231, *S. Ferrell Dep. Tr.* at 186:2-7.) In addition, Ferrell clarified that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1 | | | violated the law." (*Id.* at 186:8-16.) |
| 2 | 382. | Scott Ferrell informed Katherine Kirshner (Kat) that NTG "will be sending demand letters, to go out [May 8, 2015] by FedEx, to the following companies on the chart you prepared: bliss, mio, osmotic a, skintight, celluscript, nuve, and lipoconquer." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).

**Undisputed** that the cited email includes the quoted text. **Disputed** to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Disputed to the extent NIC is attempting to mischaracterize the term "target." When asked about researching potential "targets" for Strataluz demand letters, Ferrell testified that he "had a role in determining who was violating the law and identifying whether and to· the extent to which Strataluz would have standing to enforce it…" (Exh. -231, *S. Ferrell Dep. Tr.* at 186:2-7.) In addition, Ferrell clarified that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law." (*Id.* at 186:8-16.)

| | | | |
|---|---|---|---|
| 28 | 383. | In response, Knowles inquired | **Objection specific to Baslow** – |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| | | whether Scott Ferrell "only want[ed] letters on the targets listed [in Scott Ferrell's email]." | irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).

**Undisputed** that the cited email includes the quoted text. **Disputed** to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Disputed to the extent NIC is attempting to mischaracterize the term "target." When asked about researching potential "targets" for Strataluz demand letters, Ferrell testified that he "had a role in determining who was violating the law and identifying whether and to· the extent to which Strataluz would have standing to enforce it…" (Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-7.) In addition, Ferrell clarified that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law." (*Id.* at 186:8-16.) |
| 384. | | Scott Ferrell responded, "yes," and then directed Knowles to "[d]raft | **Objection specific to Baslow** – irrelevant and unduly prejudicial as |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | the first complaint for nip fab, which we will simply file and not send a letter." | Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).

**Undisputed** that the cited email includes the quoted text. **Disputed** to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Disputed to the extent NIC is attempting to mischaracterize the term "target." When asked about researching potential "targets" for Strataluz demand letters, Ferrell testified that he "had a role in determining who was violating the law and identifying whether and to· the extent to which Strataluz would have standing to enforce it…" (Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-7.) In addition, Ferrell clarified that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law." (*Id.* at 186:8-16.)

| 385. | Victoria Knowles then inquired if she should only draft a letter for "Fat Girl Slim" and Scott Ferrell | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any |
|---|---|---|

| | | |
|---|---|---|
| 1 | responded, "[y]es, for now . . . [t]hey tend to pay out." | alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 2 | | |
| 3 | | |
| 4 | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | **Undisputed** that the cited email includes the quoted text. **Disputed** to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Disputed to the extent NIC is attempting to mischaracterize the term "target." When asked about researching potential "targets" for Strataluz demand letters, Ferrell testified that he "had a role in determining who was violating the law and identifying whether and to· the extent to which Strataluz would have standing to enforce it…" (Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-7.) In addition, Ferrell clarified that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law." (*Id.* at 186:8-16.) |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | 386. | Victoria Knowles drafted a demand letter to send to companies selling cellulite products on behalf of Strataluz alleging Lanham Act violations. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable |
| 26 | | |
| 27 | | |
| 28 | | |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1 | | | defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 2 | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b). |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | **Disputed**.  The demand letter in NIC's Exh. 142 was in reference to "fat girl slim" cellulite treatment.  Demand letters were not simply sent to companies selling cellulite products.  Further disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Also disputed that there was anything nefarious, unlawful or objectively baseless in this demand letter or with the use of the term "target."  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-28.) |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | 387. | On May 7, 205, Victoria Knowles sent the draft demand letter regarding cellulite products to Scott Ferrell for his feedback. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b).

**Disputed**.  The demand letter in NIC's Exh. 142 was in reference to "fat girl slim" cellulite treatment.  It was not just "regarding cellulite products." Further disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Also disputed that there was anything nefarious, unlawful or objectively baseless in this demand letter or with the use of the term "target."  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-28.) |
| 388. | On May 11, 2015, NTG sent demand letters via Federal Express on behalf of Strataluz alleging violations of the Lanham Act against cellulite product companies to the following companies:<br><br>• Bliss Direct, Inc.<br><br>• Dermelect Cosmeceuticals<br><br>• Mio Skincare<br><br>• Osmotics Corporation | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b).

**Undisputed** that the demand letters listed by NIC in this purported fact were sent.  **Disputed** to the extent NIC |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1 | | | is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Also disputed that there was anything nefarious, unlawful or objectively baseless in these demand letters or with the use of the term "target." (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-28.) |
| 8 | 389. | On May 13, 2015, NTG sent demand letters via Federal Express on behalf of Strataluz alleging violations of the Lanham Act against cellulite product companies to the following companies: <br><br> • LIERAC Service International <br><br> • Nuxe, Inc. <br><br> • Prtty Peaushun | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). <br><br> **Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). <br><br> **Undisputed** that the demand letters listed by NIC in this purported fact were sent. **Disputed** to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Also disputed that there was anything nefarious, unlawful or objectively baseless in these demand letters or with the use of the term "target." (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-28.) |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

193

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 390. | The cellulite demand letters sent on May 11, 2015 and May 13, 2015 were signed by Scott Ferrell. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | | |
| | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). |
| | | | |
| | | | **Undisputed** that the demand letters listed in NIC's purported fact nos. 388 and 389 bear Scott Ferrell's signature. **Disputed** to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Also disputed that there was anything nefarious, unlawful or objectively baseless in these demand letters or with the use of the term "target." (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-28.) |
| 391. | The cellulite demand letters sent on May 11 and 13, 2015 made the following representations:<br><br>• Strataluz has confirmed through analysis that the recipient's product "is not an equivalent cellulite reducing | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1 | | product" to Strataluz's EverSilk product. | assumes facts not supported by the evidence, argumentative and misleading. It is also generally understood that demand letters include puffery. *Badell v. Advanced Anabolic Scis. LLC*, No. 210-CV-250JCMPAL, 2010 WL 2571359, at *1 (D. Nev. June 23, 2010) (accepting that "demand letter requesting damages in excess of five million dollars" was "puffery" and thus did not satisfy jurisdictional minimum); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006) (holding that "legal representations made by potential litigation adversaries are exceedingly unlikely to be believed without investigation.")  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b). |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 | | product" to Strataluz's EverSilk product.<br><br>• As a result, Strataluz has suffered "significant" damages.<br><br>• Strataluz "has invested a significant amount of money researching, formulating, developing and clinically studying its PRO-SVELTYL® product."<br><br>• The recipient is unfairly competing with Strataluz "which has commercially damaged Strataluz LLC's sales of their superior and scientifically validated product." | assumes facts not supported by the evidence, argumentative and misleading. It is also generally understood that demand letters include puffery. *Badell v. Advanced Anabolic Scis. LLC*, No. 210-CV-250JCMPAL, 2010 WL 2571359, at *1 (D. Nev. June 23, 2010) (accepting that "demand letter requesting damages in excess of five million dollars" was "puffery" and thus did not satisfy jurisdictional minimum); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006) (holding that "legal representations made by potential litigation adversaries are exceedingly unlikely to be believed without investigation.")  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b).<br><br>**Undisputed** that the demand letters listed by NIC in this purported fact were sent. **Disputed** as the demand letters did not make "representations" and NIC has inaccurately paraphrased and taken quoted language out of context.   Further disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).   Also disputed that there was anything nefarious, unlawful or objectively baseless in these demand letters or with the use of the term "target."  (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-28.) |
| 26 27 28 | 392. | In truth, Strataluz never performed any clinical testing on its EverSilk product. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding |



Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).

**Disputed**. The testimony of Scott Ferrell and Jarrod Bentley that NIC has cited does not say anything about Eversilk, nor does it say anything about "clinical testing." In fact, that testimony itself shows that it relates to only ProMaxal, not Eversilk. (*See* NIC's Exh. 1 and 137.) Further disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal (or vice versa). Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).

| 393. | In truth, Strataluz acquired the EverSilk product through a supplier in a formula that was generic and did not involve any financial investment in research, formulation, or development. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Stratluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).

**Disputed**. NIC's purported fact is factually incorrect and not supported by the evidence. Jarrod Bentley testified that "EverSilk -- the person that we contacted added some specific ingredients to make it special. I don't remember what they were, but it wasn't a completely 100 percent generic formula." (Exh 250, *Bentley Tr.* at 49:24-50:2.) Further, Bentley explained in an email cited by NIC that "as the commercial progresses ***we do actually have a custom formula*** that we can start selling instead of this generic one. The reason I went with the generic formula first was that the start up cost were significantly smaller. I believe the custom formula will allow us to at least substantiate more aggressive claims." (NIC's Exh. 150.) Moreover, nothing cited by NIC refutes spending on research, formulaton, or development relating to Eversilk. Indeed, the fact that Bentley is referencing a "custom formula" indicates that Stratluz did expend resources on developing Eversilk. In addition, Bentley testified that "[w]e developed a product called Eversilk." (Exh. 250, *J. Bentley Dep. Tr.* at 46:10.) He also testified that he contacted "bunch of manufacturers in that area, did·some searches, and found companies that I felt were·able to provide product at a reasonable price" and then "private labeled that [Eversilk] product" for sales. (*Id.* at 47:10-20.) He also testified that two different nutraceutical companies provided the Eversilk product. (*Id.* at 47:23-48:2.) All of this also shows Stratluz expended resources on developing Eversilk. Further disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 1<br>2<br>3 | | Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). |
| 4<br>5<br>6<br>7<br>8 | 394. | In truth, Strataluz was still testing the advertising for the EverSilk product and it had not yet been launched. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).

**Disputed**. NIC's purported fact is factually incorrect and not supported by the evidence. Internal Strataluz documents show that it began selling EverSilk in March 2015 – well before any demand letter was sent. (Exh 286 (NTG065457) (spreadsheet showing 77 units in March 2015, 31 units in April, and 59 in May). In addition, Jarrod Bentley testified that "[w]e developed a product called Eversilk." (Exh. 250, *J. Bentley Dep. Tr.* at 46:10.) He also testified that he contacted "bunch of manufacturers in that area, did·some searches, and found companies that I felt were·able to provide product at a reasonable price" and then "private labeled that [Eversilk] product" for sales. (*Id.* at 47:10-20.) He also testified that two different nutraceutical companies provided the Eversilk product. (*Id.* at 47:23-48:2.) Also disputed to the extent NIC is attempting to contend that purported

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| | | | facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Also disputed that there was anything nefarious, unlawful or objectively baseless in these demand letters or with the use of the term "target." (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-28.) |
| 395. | In truth, Strataluz and NTG had done no clinical testing or analysis on the comparative efficacy of the EverSilk product versus the demand letter recipients' products. | | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b).<br><br>**Disputed**.  The testimony of Scott Ferrell cited by NIC does not say anything about "clinical testing or analysis" of Eversilk.  In fact, the testimony itself shows that it relates to only ProMaxal, not Eversilk.  (*See* NIC's Exh. 1, *S. Ferrell Tr.* at 198.)  Further disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal (or vice versa).  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|

| | 396. | Scott Ferrell knew that Strataluz and NTG had done no clinical testing on the EverSilk product. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). |
| | | | **Disputed**. The testimony of Scott Ferrell cited by NIC does not say anything about "clinical testing or analysis" of Eversilk. In fact, the testimony itself shows that it relates to only ProMaxal, not Eversilk. (*See* NIC's Exh. 1, *S. Ferrell Tr.* at 198.) Further disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal (or vice versa). Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). |
| | 397. | Scott Ferrell knew that the EverSilk product was generic, contained no unique ingredients, and that Strataluz had not invested significant resources in research, formulation, or development. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | | **Objection** – Misstates the evidence, |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

assumes facts not supported by the evidence, argumentative and misleading.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2.)  Improper character evidence.  FRE 404(b).

**Disputed**.  NIC's purported fact is factually incorrect and not supported by the evidence.  Jarrod Bentley testified that "EverSilk -- the person that we contacted added some specific ingredients to make it special. I don't remember what they were, but it wasn't a completely 100 percent generic formula."  (Exh 250, *Bentley Tr.* at 49:24-50:2.)  Further, Bentley explained in an email cited by NIC that "as the commercial progresses ___*we do actually have a custom formula*___ that we can start selling instead of this generic one. The reason I went with the generic formula first was that the start up cost were significantly smaller. I believe the custom formula will allow us to at least substantiate more aggressive claims."  (NIC's Exh. 150.)  Moreover, nothing cited by NIC refutes spending on research, formulaton, or development relating to Eversilk.  Indeed, the fact that Bentley is referencing a "custom formula" indicates that Stratlauz did expend resources on developing Eversilk.  In addition, Bentley testified that "[w]e developed a product called Eversilk."  (Exh. 250, *J. Bentley Dep. Tr.* at 46:10.)  He also testified that he contacted "bunch of manufacturers in that area, did·some searches, and found companies that I felt were·able to provide product at a reasonable price" and then "private labeled that [Eversilk] product" for sales.  (*Id.* at 47:10-20.)  He also testified that two different nutraceutical companies provided the Eversilk product.  (*Id.* at 47:23-48:2.)  All of this also shows Strataluz expended resources on

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | developing Eversilk.  Also disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). |
| 398. | Scott Ferrell knew that Strataluz was still testing the advertising for the EverSilk product and it had not yet been launched. | | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). <br><br> **Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b). <br><br> **Disputed**.  NIC's purported fact is factually incorrect and not supported by the evidence.  Internal Strataluz documents show that it began selling EverSilk in March 2015 – well before any demand letter was sent. (Exh 286 (NTG065457 (spreadsheet showing 77 units in March 2015, 31 units in April, and 59 in May).  In addition, Jarrod Bentley testified that "[w]e developed a product called Eversilk." (Exh. 250, *J. Bentley Dep. Tr.* at 46:10.)  He also testified that he contacted "bunch of manufacturers in that area, did·some searches, and found companies that I felt were·able to provide product at a reasonable price" and then "private labeled that [Eversilk] product" for sales.  (*Id.* at 47:10-20.)  He also |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | testified that two different nutraceutical companies provided the Eversilk product. (*Id.* at 47:23-48:2.) Also disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). |
| | 399. | The cellulite demand letters sent on May 11 and 13, 2015 did not inform the recipient that 51% of Strataluz LLC's shares were owned by NTG attorneys. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).<br><br>**Undisputed** that the demand letters are attached as exhibits to NIC's motion. **Disputed** to the extent that NIC's contends that there was some type of requirement that corporate structure and a list of members or owners and their percentage share be disclosed in a demand letter. Also disputed to the extent NIC has misstated the ownership and member interests at issue as these individuals held an ownership interest in Quintogos, not in Strataluz directly. Also disputed to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | | ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | 400. | On May 12, 2015, NTG filed a lawsuit in the Central District of California against Nip+Fab Limited alleging violations of the Lanham Act on behalf of Strataluz LLC related to Nip+Fab's product "Cellulite Fix." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).<br><br>**Undisputed** that the Complaint described by NIC in this purported fact is include in NIC's RJN 32.<br><br>**Disputed** to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Also disputed that there was anything nefarious, unlawful or objectively baseless in this Complaint. |
| 25<br>26<br>27<br>28 | 401. | NTG filed a corporate disclosure statement in that matter that falsely claimed that "Strataluz d[id] not have a parent company" when, in reality, Strataluz was wholly owned by a chain of companies that led to | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1 | | Quintogos LLC. | defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 2 | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). |

**Disputed.** NIC's purported fact is not supported by the evidence, ambiguous and legally incorrect. For starters, NIC's RJN 32 does not include a corporate disclosure statement. NIC's purported fact is also disputed and legally incorrect to the extent NIC's claims a corporate disclosure statement was false in stating "Strataluz d[id] not have a parent company." Strataluz was an LLC that had a sole member that was another LLC (Binary Resource Management, LLC) and Binary Resource Management also had a sole member that was another LLC. (*See* NIC's Exhs. 128, 129 and 130.) Also disputed to the extent NIC contends the applicable rules required Strataluz to disclose LLC members when no such rule exists. *See Obesity Research Institute, LLC v. Fiber Research Int'l, LLC*, Case No. 3:15-cv-00595-BAS-MDD (S.D. Cal. Feb. 25, 2016) ("…[N]o rule in this district requires the corporate disclosure statement to include a list of the LLC members."). Also disputed that there was anything that was objectively baseless in a corporate disclosure statement.

| | | | |
|---|---|---|---|
| 27 | 402. | On May 14, 2015, Scott Ferrell emailed David Reid, Joshua Weiss, and Jarrod Bentley: | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | "Guys, Had a thought – once we have a male enhancement pill, we can sue the competitors – and none of them like litigation or want to hear from NTG.<br><br>Jarrod, if there is some unique or esoteric ingredient to which we can secure exclusive rights to in the US, we can also force the competitors to license that ingredient through us as part of the settlement.<br><br>Ditto goes for who we sue on cellulite – we should force them to licesne our special ingredient from us." | alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.<br><br>**Undisputed** that the cited email includes the quoted text.  **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email. |
| 403. | On May 14, 2015, Scott Ferrell wrote to David Reid, Jarrod Bentley, and Joshua Weiss:<br><br>"Take a look at a few of these products and let me know if you guys think that any of them deserve a demand letter or lawsuit. . .<br><br>I was thinking that one avenue to monetize these (and the cellulite cases) would be to sue a competitor and retailer in each case.  We could then settle with the competitor for money and with the retailer for an agreement to sell our products." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.<br><br>**Undisputed** that the cited email includes the quoted text.  **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email. |
| 404. | In response, David Reid wrote:<br><br>"I really like it.  I'm pretty certain I can shake loose some coin on these. :)" | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| 1 | | | NIC cites does not support NIC's argumentative contentions relating to this purported fact. |
| 2 | | | |
| 3 | | | **Undisputed** that the cited email includes the quoted text. **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email. |
| 4 | | | |
| 5 | | | |
| 6 | 405. | On May 21, 2015, Scott Ferrell emailed Joshua Weiss, David Reid, and Jarrod Bentley, stating: | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 7 | | | |
| 8 | | "Guys, I have an idea upon which I would like your input: | |
| 9 | | | |
| 10 | | 1. My company owns U.s.(sic) Patent No. 5,817,364, which relates to the uee(sic) of alpha-ketoglutarate (AKG) to improve "energy supply composition before, during and after physical exertion | |
| 11 | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. |
| 12 | | | |
| 13 | | | |
| 14 | | 2. It is a pretty easy leap of logic to conclude that AKG would improve male sexual performance. | |
| 15 | | | **Undisputed** that the cited email includes the quoted text. **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email. |
| 16 | | 3. We can have my company exclusively license some AKG blend that we will call "Ghetto Balls" (placeholder name, lol) to Strataluz for the use in the sale of male enhancement products in the U.S. | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | 4. We can then threaten suit and/or sue any male enhancement companies under the Lanham Act as to any products that don't contain AKG, which should be just about all of them. | |
| 21 | | | |
| 22 | | | |
| 23 | | 5. The key point is for us to have a product that we are advertising and arguably trying to sell. How long until we can make that happen? | |
| 24 | | | |
| 25 | 406. | In response, Jarrod Bentley explained that he could have a website and commercial prepared in 7-8 days, but he made no mention of when he would have a product ready for sale. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable |
| 26 | | | |
| 27 | | | |
| 28 | | | |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.

**Disputed.** NIC's purported fact is not supported by the evidence as NIC's Exh. 153 does not include an email from Jarrod Bentley. Also disputed to the extent that NIC's characterization is inaccurate and misleading. In addition, contrary to NIC's arguments about this purported fact, there is substantial testimony and evidence relating to the development and formulation of ProMaxal before any demand letter was sent, as well as the belief that Strataluz had ProMaxal in inventory, had offered it for sale, or was close to having it ready for sale. (Exh 250, *J. Bentley Dep. Tr.* at 54:14-21; *see also* Exh 251, *J. Weiss Dep. Tr.* at 59:17-20) ("Q. And was ProMaxal ever formulated? A. Yes, to the best of my knowledge."); Exh. 231 *Ferrell Dep. Tr.* at 209:10-210:9 (Ferrell testified that he believed Strataluz had ProMaxal in inventory, offered it for sale, and had "finished-product packaging" for ProMaxal."). The evidence also shows that on July 3, 2014 (nearly a year before any ProMaxal demand letter was sent), Bentley updates the owners of Stratauz on his meeting with a "product formulator" on three new products, including a "Male Enhancement Pill." (Exh. 269 (NTG063546)). He stated he would like to "start developing these new products ASAP" and requests a release of $50,000 to do so. (*Id.*). The $50,000 is released with Ferrell stating he "I like the idea of the male enhancement pill and the sleeping pill very much. As to male enhancement, the category used to be dominated by Extenze and Enzyte, but both of them have had serious problems recently and don't advertise much." (Exh. 270 (NTG063550)). Moreover, by late 2014 (some six months before any

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  ProMaxal demand letter was sent out),
2  Strataluz was working on specific
   marketing for the product that would
3  become ProMaxal. (Exh. 271
   (NTG063560); Exh. 272
4  (NTG066431); Exh. 273
   (NTG064335).).  Furthermore, the
5  male enhancement pill was one of the
   topics of a meeting with a formulation
6  expert in July of 2014 and $50,000 in
   funding was approved for that and
7  other projects. (Exh.269
   (NTG063546).  And by September
8  2014, Strataluz was already testing
   commercials for the product.  (Exh.
9  271 (NTG063560)).  Beginning in May
   2015, the product took final shape.  On
10 May 21, 2015, Strataluz executed a
   license for the active ingredient.  (Exh.
11 274 (NTG065720)).  It commissioned
   graphic design work for the packaging.
12 (Exhs. 275 and 276 (NTG065976;
   NTG065975)).  The principals
13 discussed and decided on the name
   ProMaxal.  (Exh. 277 (NTG070553)).
14 They also discussed the branding of the
   "propriety blend" it would contain,
15 including the name "LIFEGATE,"
   which was to be based on the patent
16 that Strataluz had licensed.  (Exh. 278
   (NTG066446)).   Internal emails also
17 confirm formulation work, including
   the specific ingredients and dosage, as
18 well as estimates for obtaining
   inventory of ProMaxal in the near
19 term.  (Exhs. 277, 278 and 279
   (NTG070553, NTG066446, and
20 NTG063447.)  Internal documents
   likewise demonstrate extensive and
21 sophisticated direct marketing as well
   as sales work and strategies for
22 ProMaxal.  Multiple commercials were
   produced, aired and the results
23 analyzed.  (Exhs. 280, 281, 282, 283,
   284, 285 and 286 (NTG063577;
24 NTG063614; NTG063430;
   NTG065929; NTG063457;
25 NTG063495; NTG065457)).  Specific
   adjustments were made to marketing
26 based on issues identified, such as
   "clearance" issues with stations.  (Exh.
27 285  (NTG063495)).  Bentley – who
   NIC contends was not involved in
28 litigation – stated "I really believe that
   the male enhancement pill and a diet
   pill is the way to move forward" and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

reiterated his commitment to the project: "[f]rom my perspective, these two products MUST work." ((Exh. 287 (NTG063999)). When Bentley requested additional funding of $50,000 for ProMaxal work, the money was allocated. Even as late as September 29, 2015 – over three months after demand letters were sent – internal documents show diligent and genuine work on ProMaxal and an optimistic assessment by its President: "I'm working on doing this but I'm also putting together a very comprehensive web campaign. This should be completed very soon and I'll send you the web videos as they are done. I'm still optimistic about everything and hope to send you good news soon." (Exh. 285 (NTG063495); *see also* (Exh. 279 and 288 (NTG063447; NTG065997 (inventory expense related to "private label nutrition – ProMaxal formulation)). This evidence further proves there was anything nefarious, unlawful or objectively baseless in the email that NIC may have intended to cite.

| | 407. | Jarrod Bentley also inquired about Scott Ferrell's thoughts on formulation. He asked whether the AKG would be a stand alone ingredient or if it should be combined with other potential ingredients. Bentley noted that it "[d]oesn't really matter, [he was] just curious." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| | | | **Objection –** Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. |
| | | | **Disputed.** NIC's purported fact is not supported by the evidence as NIC's Exh. 153 does not include an email from Jarrod Bentley. Also disputed to the extent that NIC's incomplete quote and characterization is inaccurate and misleading. In addition, contrary to |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW



NIC's arguments about this purported fact, there is substantial testimony and evidence relating to the development and formulation of ProMaxal before any demand letter was sent, as well as the belief that Strataluz had ProMaxal in inventory, had offered it for sale, or was close to having it ready for sale. (*See* Exh. 231, *Ferrell Dep. Tr.* at 209:10-210:9; Exh 250, *J. Bentley Dep. Tr.* at 54:14-21; Exh 250, *J. Weiss Dep. Tr.* at 59:17-20; *see also* Exhs. 269-288 (internal documents showing extensive efforts at Strataluz to develop and pursue Strataluz as a legitimate male enhancement consumer product).)

| 408. | Scott Ferrell responded that he would like the formulation to include the AKG and the other two ingredients that Bentley had already contemplated because the "claims against the competitors would be much stronger if we had a combination of yohimbe, horny goat weed, AND AKG." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| --- | --- | --- |
| | | **Objection** – Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. |
| | | **Disputed.** NIC's purported fact is not supported by the evidence as NIC's Exh. 153 does not include an email from Jarrod Bentley. Also disputed to the extent that NIC's incomplete quote and characterization is inaccurate and misleading. In addition, contrary to NIC's arguments about this purported fact, there is substantial testimony and evidence relating to the development and formulation of ProMaxal before any demand letter was sent, as well as the belief that Strataluz had ProMaxal in inventory, had offered it for sale, or was close to having it ready for sale. (*See* Exh. 231, *Ferrell Dep. Tr.* at 209:10-210:9; Exh 250, *J. Bentley Dep. Tr.* at 54:14-21; Exh 250, *J. Weiss Dep. Tr.* at 59:17-20; *see also* Exhs. 269-288 (internal documents showing extensive |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | efforts at Strataluz to develop and pursue Strataluz as a legitimate male enhancement consumer product).) |
| | 409. | On May 22, 2015, Scott Ferrell emailed attorneys and staff at NTG: "Team, I am pleased to report that I convinced a company named Harcol Research (which owns a patent on AKG) to grant an exclusive license for the use of AKG in male enhancement products to our client Strataluz. (If anyone does not understand this inside joke, just ask. . . ) . . . Kat is currently researching our competitors and preparing templates on each like the attached, and we should have our first round of target letters to send out within two weeks." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Objection –** Misstates the evidence, incomplete quote, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. **Disputed**. The cited email includes the quoted text, but NIC's quotation is is misleading and out of context because, as stated in the email itself and as clarified by Ferrell at deposition, the sentence that starts out "Team…" was an "inside joke." (*See* NIC's Exh. 154; *see also* Exh. 231, *S. Ferrell Dep. Tr.* at 202:8-15. Also disputed that there was anything nefarious, unlawful or objectively baseless in this email or with the use of the term "target." *See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, 136:19-137:12, and 186:2-16; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) Moreover, at deposition Ferrell provided critical context when he explained that his paralegal was instructed to research "[c]ompanies that were distorting the market, that were violating our patent, that were making unsupportable claims, or that were otherwise engaged in illegal conduct." (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 203:11-16.) |
| | 410. | Harcol Research, a company that Scott Ferrell owned, licensed the AKG patent to Strataluz LLC, a | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1 2 3 4 5 | | company that Scott Ferrell owned, for $1. | alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Undisputed.** |
| 6 7 8 9 10 11 12 13 14 15 16 | 411. | On May 26, 2015, Scott Ferrell drafted the male enhancement product demand letters that NTG would send on behalf of Strataluz. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Objection –** Misstates the evidence and assumes facts not supported by the evidence. **Disputed.** NIC's purported fact is not supported by the evidence as NIC's Exh. 157 does not reflect that Scott Ferrell "drafted" a letter on May 26, 2015, only that he requested language to be used in the drafting of a letter. |
| 17 18 19 20 21 22 23 24 25 26 | 412. | On May 27, 2015, Jarrod Bentley and Joshua Weiss created the name "ProMaxal" for the Strataluz male enhancement product and received Scott Ferrell's approval for the name. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Objection –** Misstates the evidence and assumes facts not supported by the evidence. **Undisputed** that on May 27, 2015, Jarrod Bentley send an email stating that "[t]he name that we've come up with is ProMAXAL." |
| 27 28 | 413. | On May 27, 2015, Scott Ferrell circulated the draft demand letter regarding the ProMaxal product to | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | Reid, Knowles, and Hikida. Ferrell explained that:<br><br>"From past experience litigating against male enhancement companies, I know that they will be most concerned about an injunction – which would be costly to oppose, require them to provide substantiation that they lack, and could catch the attention of the FTC or another regulatory body. As such, I think our model will be best-served by offering them a license to our proprietary technology in return for a one-time fee, and filing suit against those who decline the license – and promptly seeking a preliminary injunction in those suits." | alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed** that Scott Ferrell sent an email on May 27, 2015 to Reid, Knowles, and Hikida and that the cited email includes the quoted text. |
| | 414. | Shortly after sending that email, Scott Ferrell emailed David Reid directly and said "I think we can wrangle six figures out of these defendants with a combination of the letter, draft complaint, threatened injunction, and the 'crazy cop blue eyes' routine." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence and assumes facts not supported by the evidence. Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient. FRE 602 and 901.<br><br>**Undisputed** that the cited email includes the quoted text. **Disputed** to the extent that NIC has taken the quoted language out of context. Ferrell explained at deposition that this email was part of a "wrangle" joke and that the ""crazy cop, blue eyes' routine" does not exist. (Exh. 231, *S. Ferrell Dep. Tr.* at 204:8-205:5.) |
| | 415. | ProMaxal was not formulated as of May 27, 2015. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1 | | | identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 2 | | | |
| 3 | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. |
| 4 | | | |
| 5 | | | |
| 6 | | | **Disputed.** NIC's purported fact is not supported by the evidence as NIC's Exh. 158 does not say that ProMaxal was not formulated as of May 27, 2015. Instead, it merely says "[a]s for the blend, our formulation guy should have it to us within the next couple days. Also disputed to the extent that NIC's characterization is inaccurate and misleading. In addition, contrary to NIC's arguments about this purported fact, there is substantial testimony and evidence relating to the development and formulation of ProMaxal before any demand letter was sent, as well as the belief that Strataluz had ProMaxal in inventory, had offered it for sale, or was close to having it ready for sale. (*See* Exh. 231, *Ferrell Dep. Tr.* at 209:10-210:9; Exh 250, *J. Bentley Dep. Tr.* at 54:14-21; Exh 250, *J. Weiss Dep. Tr.* at 59:17-20; *see also* Exhs. 269-288 (internal documents showing extensive efforts at Strataluz to develop and pursue Strataluz as a legitimate male enhancement consumer product).) |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | 416. | On May 27, 2015, Scott Ferrell emailed Victoria Knowles, David Reid, and Mandy Jung with the email subject: "Strataluz Male Enhancement Demand Letters." He wrote:<br><br>"Team, These are the first ten targets in the male enhancement demand letters. We need to both prepare and proof them very carefully to ensure that all of the variables match (i.e., we don't want to send a demand letter to the wrong company, identify the wrong | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed** that the cited email includes the quoted text. **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email or with the use of the term "target." (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1- |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | product, or identify efficacy claims that they do not make).<br><br>1. Nutrex Libido Booster<br><br>2. Enzyte<br><br>3. Virmax<br><br>4. Twinlab<br><br>5. M-Drive<br><br>6. Amidren<br><br>7. Vitalast new vigor<br><br>8. Prolongz<br><br>9. Libido-Max<br><br>10. Ageless Male | 12 and 17-25, 132:15-133:2, 134:15-135:1, 136:19-137:12, and 186:2-16; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
|---|---|---|---|
| 417. | Also on May 27, 2015, Scott Ferrell added two more "targets" for "male enhancement demand letters" and asked Mandy Jung to update the male enhancement case chart. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed** that the cited email includes the quoted text. **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email or with the use of the term "target." (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 131:1-12 and 17-25, 132:15-133:2, 134:15-135:1, 136:19-137:12, and 186:2-16; *see also* Exh. 235, *Reid Dep. Tr.* at 155:9-156:4, 156:10-19, and 158:2-5.) |
| 418. | Scott Ferrell directed NTG attorneys and staff regarding the ProMaxal lawsuits and pre-suit demands. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Overbroad, vague, |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.<br><br>**Disputed**. It is undisputed that Ferrell, like any other litigation attorney, has made requests from other attorneys and staff regarding litigation matters, but NIC's purported fact is not supported by the evidence as NIC's exhibits do not demonstrate that Ferrell "directed" NTG attorneys and staff. At most, they show Ferrell makes requests. Also disputed that there was anything nefarious, unlawful or objectively baseless in these requests. |
| 419. | On May 28, 2015, Jarrod Bentley emailed Scott Ferrell regarding formulation of the ProMaxal product and asked if "300mg [of AKG is] an effective dose." Scott Ferrell responded less than an hour later, "Yep." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection.** Lack of foundation and authentication for whether dates/times in this purported fact are accurate, what time zone, and whether for the sender or recipient. FRE 602 and 901.<br><br>**Undisputed** that the cited email includes the quoted text. **Disputed** that there was anything nefarious, unlawful or objectively baseless in this email. |
| 420. | On June 3, 2015, Scott Ferrell sent Ryan Ferrell an email with the subject line "Male Enhancement Demands," and asked:<br><br>"Would you share these with Doug and see if he has any additional targets that he thinks we should go after? We should make clear to him that we are only interested in going after people who we can force to | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed** that the cited email includes the quoted text. **Disputed** that |

217

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1 2 | | license our ingredients and pay us, not just people that he doesn't like." | there was anything nefarious, unlawful or objectively baseless in this email. |
| 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 | 421. | Scott Ferrell created a form letter with fill-in-the-blank variables to send to companies that sold male enhancement products. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.<br><br>**Disputed**. NIC has inaccurately and misleadingly characterized the letters and who they would be sent to. Ferrell stated he was drafting a "template," not a "form letter." (Dkt. 1111-16 at 2.) Also disputed that there was anything nefarious, unlawful or objectively baseless in these letters. Further, Ferrrell explained at his deposition that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law." (Exh. 231, *S. Ferrell Dep. Tr.* at 186:8-16.) |
| 21 22 23 24 25 26 27 28 | 422. | On June 2, 2015, NTG sent demand letters via Federal Express on behalf of Strataluz alleging violations of the Lanham Act against male enhancement companies to the following companies:<br><br>• Natural Product Solutions, LLC re VirMax<br><br>• Nutrex Research, Inc. re Vitrix | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed**. |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | • Twinlab Corp. re Horny Goat Weed<br><br>Pristine Bay, LLC re Enzyte | |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 423. | The male enhancement demand letters sent on June 2, 2015 made the following representations:<br><br>• ProMaxal is "sold in the United States"<br><br>• That Strataluz's formula is a proven technology<br><br>• That Strataluz has invested a significant amount of resources in researching, formulating, developing, and obtaining the exclusive rights to the Patented LIFTGATE Technology for male enhancement purposes.<br><br>Strataluz has substantial monetary damages. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.  It is also generally understood that demand letters include puffery. *Badell v. Advanced Anabolic Scis. LLC*, No. 210-CV-250JCMPAL, 2010 WL 2571359, at *1 (D. Nev. June 23, 2010) (accepting that "demand letter requesting damages in excess of five million dollars" was "puffery" and thus did not satisfy jurisdictional minimum); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006) (holding that "legal representations made by potential litigation adversaries are exceedingly unlikely to be believed without investigation.")<br><br>**Undisputed** that the demand letters listed by NIC in this purported fact were sent.  **Disputed** as the demand letters did not make "representations" and NIC has inaccurately paraphrased and taken quoted language out of context.  Also disputed that there was anything nefarious, unlawful or objectively baseless in these letters. Further, Ferrrell explained at his deposition that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law." (Exh. 231, *S. Ferrell Dep. Tr.* at 186:8-16.) |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 424. | The male enhancement demand letters sent on June 2, 2015 demanded a one-time payment of $200,000 to resolve the claims. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.  It is also generally understood that demand letters include puffery. *Badell v. Advanced Anabolic Scis. LLC*, No. 210-CV-250JCMPAL, 2010 WL 2571359, at *1 (D. Nev. June 23, 2010) (accepting that "demand letter requesting damages in excess of five million dollars" was "puffery" and thus did not satisfy jurisdictional minimum); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006) (holding that "legal representations made by potential litigation adversaries are exceedingly unlikely to be believed without investigation.")<br><br>**Disputed**.  NIC has mischaracterized the demand letters.  They did not "demand" a $200,000 payment but rather offered "a fully paid-up, non-assignable license to the Patented LIFTGATE Technology in return for a one-time payment of $200,000."  (*See* NIC's Exhs. 172-175.)  Also disputed that there was anything nefarious, unlawful or objectively baseless in these letters.  Further, Ferrrell explained at his deposition that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law."  (Exh. 231, *S. Ferrell Dep. Tr.* at 186:8-16.) |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW



| | | | |
|---|---|---|---|
| 1 | 425. | The male enhancement demand letters sent on June 2, 2015 threatened to "file suit against [the recipient] and any retailers that independently promote or advertise [the product], wherein Strataluz will promptly seek a preliminary injunction and permanent injunction to enjoin [the recipient] mfrom making further false or misleading claims about [the product], as well as substantial monetary damages." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. It is also generally understood that demand letters include puffery. *Badell v. Advanced Anabolic Scis. LLC*, No. 210-CV-250JCMPAL, 2010 WL 2571359, at *1 (D. Nev. June 23, 2010) (accepting that "demand letter requesting damages in excess of five million dollars" was "puffery" and thus did not satisfy jurisdictional minimum); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006) (holding that "legal representations made by potential litigation adversaries are exceedingly unlikely to be believed without investigation.")

**Disputed**. NIC has mischaracterized the demand letters. They did not "threaten" the recepient. Rather, they invited out-of-court settlement and advised that "[i]f this dispute cannot be cooperatively resolved," Strataluz would file suit. (*See* NIC's Exhs. 172-175.) Also disputed that there was anything nefarious, unlawful or objectively baseless in these letters. Further, Ferrrell explained at his deposition that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law." (Exh. 231, *S. Ferrell Dep. Tr.* at 186:8-16.) |

| | | | |
|---|---|---|---|
| | 426. | Scott Ferrell signed each of the June 2, 2015 demand letters that were | **Objection specific to Baslow** – irrelevant and unduly prejudicial as |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 1 | sent via Federal Express. | Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 2 | | |
| 3 | | |
| 4 | | **Objection** – Overbroad, vague, misstates the evidence and assumes facts not supported by the evidence. |
| 5 | | |
| 6 | | **Undisputed** that the demand letters bear Scott Ferrell's signature. |
| 7 | | |
| 8 | | |
| 9 | 427. | On June 1, 2015, Scott Ferrell emailed Victoria Knowles, David Reid, and Mandy Jung and explained that he would like to file a Lanham Act complaint against Viaxus regarding their male enhancment product without first serving a demand letter because "[he] know[s] this company from past litigation and it will make our negotiations with other defendants stronger once they see we have already filed one complaint." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 10 | | |
| 11 | | |
| 12 | | **Objection** – Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | **Disputed.** NIC has misleadingly characterized the cited email. The cited email does not state that a complaint is being filed against Viaxus "because" Ferrell knows "this company from past litigation and it will make our negotiations with other defendants stronger once they see we have already filed one complaint." In the email, Ferrell explained why he wished to file "without a demand letter," not why the complaint was being filed generally. Also disputed that there was anything nefarious, unlawful or objectively baseless in this email. When asked about researching potential "targets" for Strataluz demand letters, Ferrell testified that he "had a role in determining who was violating the law and identifying whether and to· the extent to which Strataluz would have standing to enforce it…" (Exh. 231, *S.* |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

222

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | *Ferrell Dep. Tr.* at 186:2-7.)  In addition, Ferrell clarified that "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law." (*Id.* at 186:8-16.) |
| 428. | Victoria Knowles drafted a complaint on behalf of Strataluz LLC against TruDerma alleging Lanham Act violations related to TruDerma's male enhancement product (Viaxus) | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection.**  Overbroad, vague, irrelevant and unduly prejudicial, particularly since NIC's motion is not directed at Knowles.  FRE 401-403.<br><br>**Undisputed**. |
| 429. | Scott Ferrell revised the draft complaint against TruDerma and sent it back to Knowles requesting that she "insert pictures of the label." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection.**  Overbroad, vague, irrelevant and unduly prejudicial, particularly since NIC's motion is not directed at Knowles.  FRE 401-403.<br><br>**Undisputed**. |
| 430. | Knowles responded and asked Scott Ferrell to send her "the pics" because "[she] only ha[d] the commercial and can't find anything | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding |

223

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | | for them online since I assume the product isn't on the market yet." | *Strataluz.* *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection.** Overbroad, vague, irrelevant and unduly prejudicial, particularly since NIC's motion is not directed at Knowles. FRE 401-403.<br><br>**Undisputed**. |
| 7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15 | 431. | Scott Ferrell responded and explained that he "meant the pictures of Viaxus, not of our product." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding *Strataluz.* *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection.** Overbroad, vague, irrelevant and unduly prejudicial, particularly since NIC's motion is not directed at Knowles. FRE 401-403.<br><br>**Undisputed**. |
| 16<br>17<br>18<br>19<br>20<br>21 | 432. | On June 3, 2015, Scott Ferrell approved the draft complaint for filing and directed NTG staff to file a complaint in federal court on behalf of Strataluz LLC against TruDerma alleging Lanham Act violations related to TruDerma's male enhancement product (Viaxus). | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding *Strataluz.* *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed.** |
| 22<br>23<br>24<br>25<br>26<br>27<br>28 | 433. | The complaint, signed by Scott Ferrell, alleged:<br><br>• Strataluz "owns, markets, and sella the ProMAXAL male enhancement pill;"<br><br>• Defendant's products "divert sales away from products such as Plaintiff's | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding *Strataluz.* *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Overbroad, vague, incomplete and inaccurate quotes, misstates the evidence, assumes facts not supported by the evidence, and |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

ProMAXAL;"

- ProMAXAL "contains active ingredients with a proven ability to aid in erectile dysfunction and enhance male performance;"

- ProMAXAL's main ingredient, AKG, "is a patented performance enhancer" that has "clinical, scientific evidence supporting its ability to increase penis size, strength, and endurance;"

- "Plaintiff has invested a significant amount of money researching, formulating, developing and clinically studying its [AKG] product that can actually provide the results that Defendant misleadingly claims its 'Viaxus' product can provide."

Twinlab's claims "have diverted, do divert . . . sales to 'Viaxus' at the expense of Plaintiff's ProMAXAL products . . .'"

misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. Assumes and misstates the law. In the context of the Lanham Act, actual "sales" – in the lay sense of a customer physically purchasing something – are not required. Rather, a plaintiff has standing to pursue a claim under the Lanham Act based on merely "a commercial interest, present or contemplated." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1111 (2d Cir. 1997); *National Lampoon, Inc. v. American Broadcasting Co.*, 376 F. Supp. 733, 746 (S.D.N.Y. 1974) (plaintiff's standing established by the allegation of plans to expand into television market where potential confusion would arise), *aff'd*, 497 F.2d 1343 (2d Cir. 1974). Further, "[w]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).

**Undisputed** that the Complaint in NIC's RJN 33 bears Scott Ferrell's signature, that it was filed with the District Court and that it includes some (but not all) of the language quoted by NIC. **Disputed** to the extent NIC has misquoted from the Complaint and has taken quotes out of context. Further disputed as NIC's purported fact references "Twinlab's claims" when that does not appear in the Complaint. Also disputed that there was anything nefarious, unlawful or objectively baseless in this Complaint. Furthermore, there is substantial testimony and evidence relating to the development and formulation of ProMaxal before any demand letter was sent and before any Complaint was filed, as well as the belief that Strataluz had ProMaxal in inventory, had offered it for sale, or was close to having it ready for sale. (*See* Exh. 231, *Ferrell Dep. Tr.* at 209:10-210:9; Exh 250, *J. Bentley Dep. Tr.* at 54:14-21; Exh 250, *J. Weiss Dep. Tr.* at 59:17-20; *see also* Exhs. 269-288 (internal documents

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | showing extensive efforts at Strataluz to develop and pursue Strataluz as a legitimate male enhancement consumer product.) |
| 434. | In truth, Strataluz never manufactured or sold a single unit of ProMaxal. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |

**Objection** – Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.  Assumes and misstates the law.  In the context of the Lanham Act, actual "sales" – in the lay sense of a customer physically purchasing something – are not required.  Rather, a plaintiff has standing to pursue a claim under the Lanham Act based on merely "a commercial interest, present or contemplated." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1111 (2d Cir. 1997); *National Lampoon, Inc. v. American Broadcasting Co.*, 376 F. Supp. 733, 746 (S.D.N.Y. 1974) (plaintiff's standing established by the allegation of plans to expand into television market where potential confusion would arise), *aff'd* 497 F.2d 1343 (2d Cir. 1974). Further, "[w]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).

**Disputed** to the extent NIC's purported fact assumes a plaintiff must manufacture a product or sell a product in order to have standing bring a Lanham Act claim, which is incorrect. Ferrell testified to his understanding of the term "sales" in the Lanham Act

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

context, namely: "the word 'sale' has a very broad perspective to embrace any participation in the market.· So, if you're using it that way, it's different than the ordinary vernacular …" (Exh. 231, *S. Ferrell Dep. Tr.* at 156:2-9.) Also disputed that there was anything nefarious, unlawful or objectively baseless in this Complaint.  Further, contrary to NIC's claim, there is substantial testimony and evidence that ProMaxal was formulated and developed, as well as the belief that Strataluz had ProMaxal in inventory, had offered it for sale, or was close to having it ready for sale.  (*See* Exh. 231, *Ferrell Dep. Tr.* at 209:10-210:9; Exh 250, *J. Bentley Dep. Tr.* at 54:14-21; Exh 250, *J. Weiss Dep. Tr.* at 59:17-20; *see also* Exhs. 269-288 (internal documents showing extensive efforts at Strataluz to develop and pursue Strataluz as a legitimate male enhancement consumer product).)

| 435. | In truth, Strataluz never developed packaging for the purported ProMAXAL product, had no source for ingredients, and had not identified a supplier. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact.  Assumes and misstates the law. In the context of the Lanham Act, actual "sales" – in the lay sense of a customer physically purchasing something – are not required.  Nor is the development of packing, having a source for ingredients or the identification of a supplier as incinuated by NIC.  Rather, a plaintiff has standing to pursue a claim under the Lanhan Act based on merely "a commercial interest, present or contemplated."  *PDK Labs, Inc. v.* |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Friedlander*, 103 F.3d 1105, 1111 (2d Cir. 1997); *National Lampoon, Inc. v. American Broadcasting Co.*, 376 F. Supp. 733, 746 (S.D.N.Y. 1974) (plaintiff's standing established by the allegation of plans to expand into television market where potential confusion would arise), *aff'd*, 497 F.2d 1343 (2d Cir. 1974). Further, "[w]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).

**Disputed.** The evidence is contrary to NIC's claim. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 209:10-210:9 (Scott Ferrell testified that he believed Strataluz had ProMaxal in inventory, offered it for sale, and had "finished-product packaging" for ProMaxal.") and at 209:10-21 ("Q· · Isn't it true that Strataluz never had a manufacturer for Promaxil? A· · No, I don't think that's true at all, just based on the documents that we looked at today."). The evidence also shows Strataluz did develop packaging for ProMaxal, including by commissioned graphic design work for the packaging. (See Exhs. 275 and 276 (NTG065976 and NTG065975); see also Exh. 318 (NTG063578) (email from Jarrod Bentley to David Reid indicating that he was "working on a plaster pack" for ProMaxal).) Bentley's testimony does not show that Strataluz did not develop packaging. (NIC's Exh 137 at 64:1-22). Bentley's testimony also indicates that Strataluz commissioned graphics work on packaging, not that no packing was ultimately developed. (*Id.*) Furthermore, Strataluz was not a package manufacturing company, so it makes no difference that it did not "manufacture" packaging itself. Moreover, the testimony cited by NIC does not show Strataluz had "no source for ingredients" and "had not identified a supplier" as NIC claims. Instead, the testimony was merely that Strataluz did not "select a supplier," which is a different issue. (NIC's Exh. 137 at

| | | | |
|---|---|---|---|
| 1 | | | 52:24-53:14.) |
| 2 | | | |
| 3 | 436. | In truth, ProMAXAL was never available for sale and the website did not contain a functioning e-commerce engine. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |

**Objection –** Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. Assumes and misstates the law. In the context of the Lanham Act, actual "sales" – in the lay sense of a customer physically purchasing something – are not required. Rather, a plaintiff has standing to pursue a claim under the Lanham Act based on merely "a commercial interest, present or contemplated." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1111 (2d Cir. 1997); *National Lampoon, Inc. v. American Broadcasting Co.*, 376 F. Supp. 733, 746 (S.D.N.Y. 1974) (plaintiff's standing established by the allegation of plans to expand into television market where potential confusion would arise), *aff'd*, 497 F.2d 1343 (2d Cir. 1974). Further, "[w]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).

**Disputed.** The cited testimony does not show that ProMaxal was never available for sale or that there was never a functioning e-commerce engine. NIC cites to pages 53 and 54 of Bentley's testimony. But on those pages, Bentley testified that Strataluz conducted a test commercial for ProMaxal – not that it "only ran a test commercial" as NIC claims. (*See* NIC's Exh. 137 at 53:17-54:5.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

229

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | Indeed, that testimony has nothing to do with whether ProMaxal was offered for sale or whether there was a functioning e-commerce engine. Even if it did, testimony that a website associated with a "dry test" of ProMaxal had no e-commerce engine does not mean that ProMaxal was never offered for sale. Moreover, there is substantial testimony and evidence that ProMaxal was formulated and developed, as well as the belief that Strataluz had ProMaxal in inventory, had offered it for sale, or was close to having it ready for sale. (*See* Exh. 231, *Ferrell Dep. Tr.* at 209:10-210:9; Exh 250, *J. Bentley Dep. Tr.* at 54:14-21; Exh 250, *J. Weiss Dep. Tr.* at 59:17-20; *see also* Exhs. 269-288 (internal documents showing extensive efforts at Strataluz to develop and pursue Strataluz as a legitimate male enhancement consumer product).) |
| 437. | In truth, Strataluz never performed any product testing or clinical trials on ProMAXAL. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, incomplete and inaccurate quotes, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported fact. Assumes and misstates the law. In the context of the Lanham Act, actual "sales" – in the lay sense of a customer physically purchasing something – are not required. Nor is product testing or clinical trials as incinuated by NIC. Rather, a plaintiff has standing to pursue a claim under the Lanhan Act based on merely "a commercial interest, present or contemplated." *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1111 (2d Cir. 1997); *National Lampoon, Inc. v. American Broadcasting Co.,* 376 F. Supp. 733, 746 (S.D.N.Y. 1974) |



(plaintiff's standing established by the allegation of plans to expand into television market where potential confusion would arise). *aff'd.* 497 F.2d 1343 (2d Cir. 1974). Further, "[w]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).

**Disputed** to the extent NIC's purported fact assumes a plaintiff must perform product testing or clinical trials on a product in order to have standing bring a Lanham Act claim, which is incorrect.  Ferrell testified to his understanding of the Lanham Act and that "the word 'sale' has a very broad perspective to embrace any participation in the market.· So, if you're using it that way, it's different than the ordinary vernacular …" (Exh. 231, *S. Ferrell Dep. Tr.* at 156:2-9.) The testimony also does not indicate that Strataluz did not perform "product testing," as NIC claims.  There is substantial testimony and evidence relating to the development and formulation of ProMaxal before any demand letter was sent and before any Complaint was filed, as well as the belief that Strataluz had ProMaxal in inventory, had offered it for sale, or was close to having it ready for sale. (*See* Exh. 231, *Ferrell Dep. Tr.* at 209:10-210:9; Exh 250, *J. Bentley Dep. Tr.* at 54:14-21; Exh 250, *J. Weiss Dep. Tr.* at 59:17-20; *see also* Exhs. 269-288 (internal documents showing extensive efforts at Strataluz to develop and pursue Strataluz as a legitimate male enhancement consumer product).)  In addition, as to "clinical trials," Ferrell testified that he knew "that the component ingredients were the subject of substantial clinical research over a number of decades." (*See* Exh. 231, *Ferrell Dep. Tr.* at 198:7-13).

| 438. | As of the date that Scott Ferrell sent the June 2, 2015 demand letters and | **Objection specific to Baslow –** irrelevant and unduly prejudicial as |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

filed the June 3, 2015 complaint, he knew that ProMAXAL was not available for sale, had never sold a single unit, did not have a functioning e-commerce portal, and had performed no clinical testing.

Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, and misleading as the exhibits NIC cites do not support NIC's argumentative contentions relating to this purported fact.  Assumes and misstates the law.  In the context of the Lanham Act, actual "sales" – in the lay sense of a customer physically purchasing something – are not required.  Rather, a plaintiff has standing to pursue a claim under the Lanham Act based on merely "a commercial interest, present or contemplated." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1111 (2d Cir. 1997); *National Lampoon, Inc. v. American Broadcasting Co.*, 376 F. Supp. 733, 746 (S.D.N.Y. 1974) (plaintiff's standing established by the allegation of plans to expand into television market where potential confusion would arise), *aff'd*, 497 F.2d 1343 (2d Cir. 1974). Further, "[w]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).

**Disputed**.  Contrary to NIC's arguments about this purported fact, there is substantial testimony and evidence relating to the development and formulation of ProMaxal before any demand letter was sent, as well as the belief that Strataluz had ProMaxal in inventory, had offered it for sale, or was close to having it ready for sale.  (*See* Exh. 231, *Ferrell Dep. Tr.* at 209:10-210:9; Exh 250, *J. Bentley Dep. Tr.* at 54:14-21; Exh 250, *J. Weiss Dep. Tr.* at 59:17-20; *see also* Exhs. 269-288 (internal documents showing extensive efforts at Strataluz to develop and pursue Strataluz as a legitimate male enhancement consumer product).)  In

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | fact, when NIC claimed that he had "no recollection as to whether or not Strataluz ever had·Promaxil available to sell," Ferrell responded "I think that's the approximate opposite of what I've been telling you for the past few minutes." (*See* Exh. 231, *Ferrell Dep. Tr.* at 210:23-211:2; *also see* 212:6-9 ("So, Strataluz started selling product in 2014, and I believe we sold a total of seven different products, one of which was Promaxil, and I believe we stopped selling products in 2015.") As to clinical trials, NIC's purported fact assumes a plaintiff must perform product testing or clinical trials on a product in order to have standing bring a Lanham Act claim, which is incorrect. Ferrell testified to his understanding of the Lanham Act and that "the word 'sale' has a very broad perspective to embrace any participation in the market.· So, if you're using it that way, it's different than the ordinary vernacular …" (Exh. 231, *S. Ferrell Dep. Tr.* at 156:2-9.) In this respect, there is substantial testimony and evidence showing extensive efforts at Strataluz to develop and pursue Strataluz as a legitimate male enhancement consumer product Furthermore, as to "clinical trials," Ferrell testified that he knew "that the component ingredients were the subject of substantial clinical research over a number of decades." (*Ferrell Dep. Tr.* at 198:7-13). |
| 439. | Scott Ferrell knew that Strataluz had only spent $1 to obtain the "patented" ingredient and that the company had not invested in testing or research. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Overbroad, vague, misstates the evidence, assumes facts not supported by the evidence, incomplete and inaccurate quotes, and misleading as the exhibit NIC cites does not support NIC's argumentative contentions relating to this purported |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

fact. Assumes and misstates the law. In the context of the Lanham Act, actual "sales" – in the lay sense of a customer physically purchasing something – are not required. Rather, a plaintiff has standing to pursue a claim under the Lanham Act based on merely "a commercial interest, present or contemplated." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1111 (2d Cir. 1997); *National Lampoon, Inc. v. American Broadcasting Co.*, 376 F. Supp. 733, 746 (S.D.N.Y. 1974) (plaintiff's standing established by the allegation of plans to expand into television market where potential confusion would arise), *aff'd*, 497 F.2d 1343 (2d Cir. 1974). Further, "[w]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).

**Disputed.** The evidence cited does not indicate that $1 was the only amount invested, but rather that the $1 payment was only in reference to the license fee with Harcol. (Exh. 231, *S. Ferrell. Dep. Tr.* at 14-17.). There is also substantial testimony and evidence relating to the development and formulation of ProMaxal before any demand letter was sent, as well as the belief that Strataluz had ProMaxal in inventory, had offered it for sale, or was close to having it ready for sale. (*See* Exh. 231, *Ferrell Dep. Tr.* at 209:10-210:9; Exh 250, *J. Bentley Dep. Tr.* at 54:14-21; Exh 250, *J. Weiss Dep. Tr.* at 59:17-20; *see also* Exhs. 269-288 (internal documents showing extensive efforts at Strataluz to develop and pursue Strataluz as a legitimate male enhancement consumer product).) Given the amount of work done on ProMaxal, the assertion that Strataluz only "invested" $1 in it is not true and highly misleading. Furthermore, as to product testing (to the extent NIC is referring testing other than marketing), Ferrell testified that he knew "that the component ingredients were the subject of substantial clinical research over a

| | | | |
|---|---|---|---|
| 1 | | | number of decades." (*See* Exh. 231, *Ferrell Dep. Tr.* at 198:7-13). |
| 2 | | | |
| 3 | 440. | Scott Ferrell and NTG did not disclose that he and other NTG attorneys owned Strataluz LLC in any of the male enhancement demand letters or the TruDerma complaint. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative, and misleading. Vague, ambiguous and legally incorrect as phrased. Irrelevant, unduly prejudicial, and overbroad. FRE 401-403.

**Undisputed** that the demand letters are attached as exhibits to NIC's motion. **Disputed** to the extent that NIC's contends that there was some type of requirement that corporate structure and a list of members or owners be disclosed in a demand letter. Also disputed to the extent NIC has misstated the ownership and member interests at issue as these individuals held an ownership interest in Quintogos, not in Strataluz directly. Also disputed that there was anything nefarious, unlawful or objectively baseless in these demand letters. (*See* Exh. 231, *S. Ferrell Dep. Tr.* at 186:2-28.)

| | | | |
|---|---|---|---|
| 441. | | Companies that received demand letters related to the ProMAXAL product and the EverSilk product responded with skepticism about the validity of the claims. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Vague, ambiguous and overbroad as phrased. Irrelevant,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW



unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).

**Disputed**. It is undisputed that a corporate defendant will generally deny the validity of accusations of unlawful conduct after receiving a demand letter from an adverse party and their counsel. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003) ("Settlement negotiations are typically punctuated with numerous instances of puffing and posturing since they are motivated by a desire for peace rather than from a concession of the merits of the claim."). But NIC's broad characterization here is vague and misleading and the cited documents do not all express "skepticisims about the validity of the claims."

442. On June 5, 2015, Scott Ferrell emailed Jarrod Bentley and said:

"Can we get the Promaxal available for sale asap? I have a defendant who wants to license from/settle with us, but he is wondering why he can't find anything about us online."

**Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Undisputed** that the cited email includes the quoted text. **Disputed** as the quote is taken out of context and omits the other communications in this email string, including those about getting inventory and showing that orders and sales of ProMaxal were intended to be fulfilled. (*See* NIC's Dkt. 178, where Ferrell wrote "I'm okay taking six weeks to fill if we actually get orders before we get product.")

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| 443. | In response, Jarrod Bentley wrote to Scott Ferrell:<br><br>"I can have the website up very quickly – by Monday at the latest. However, getting inventory will take 4-5 weeks.<br><br>I can put something up that takes a person all the way through the shopping experience – but then have a page that says we're temporarily out of stock.<br><br>Let me know what you need and I'll make it happen." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed**. |
| 444. | Scott Ferrell responded:<br><br>"Let's do that – get it up, take someone through the experience, and then say we are on back order. I'm okay taking six weeks to fill if we actually get orders before we get product." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed**. |
| 445. | On June 10, 2015, Scott Ferrell emailed David Reid and Richard Hikida and wrote:<br><br>"1. In general, it may turn out that the Strataluz cases are not a profitable line.  That is why I sent the e-mail earlier today saying to hold off on future demand letters. If that's the case, I'd rather pivot out of them sooner rather than later." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed**. |
| 446. | On June 24, 2015, Scott Ferrell sent a letter to Nip+Fab Limited's counsel and demanded that Nip+Fab pay Strataluz $100,000 to settle Strataluz's threatened Lanham Act claims regarding EverSilk. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Vague, ambiguous and overbroad as phrased.  Irrelevant, |



CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).

**Disputed**. NIC has not accurately or fairly described this letter or its content. The letter did not "demand" anything and that word appears nowhere in the letter. Instead, the letter states "I am writing with an offer of settlement" that included "(1) a complete release for past liability, and (2) a fully paid-up, non-assignable license to the patented PROSVELTYL® technology in return for a one-time payment of $100,000." (*See* NIC's Exh. 187.)

447. On July 1, 2015, Scott Ferrell emailed Jarrod Bentley, Joshua Weiss, David Reid, and Victoria Knowles that NTG and wrote:

"It looks like we will be banking our first settlement from the Strataluz cases. Per the below, Nip/Fab has offered us $6,700, which is suspect means that their real "bottom line' is about $10k. I think our total costs are about $1K, so that woud mean about $,500 to NTG and about $4,500 to Josh/Jarrod."

**Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Vague, ambiguous and overbroad as phrased. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).

**Disputed.** NIC has not accurately quoted from the content of this letter as NIC's purported fact includes

238

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | numerous errors and/or typos, including but not limited to the omission of "With everyone's blessing, I will accept this." and "Let me know if everyone is on board with this.", along with the erroneous reference to "$,500" (sic). |
| 448. | On July 22, 2015, Scott Ferrell notified James Hardin, Dave Reid, Joshua Weiss, Jarrod Bentley, and Sariah Para that "[they] settled [the Strataluz v. Nip/Fab lawsuit] for $20K" and the "money should land in August" to be wired "between the five owners . . . per [their ownership(sic) percentages." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Objection** – Misstates the evidence, incomplete and inaccurate quote, assumes facts not supported by the evidence, argumentative and misleading. Vague, ambiguous and overbroad as phrased. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal. FRE 401-403. Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). **Undisputed** that the cited email was sent and is set forth in NIC's Exh. 189. **Disputed** as the quoted language and characterization in NIC's purported fact is incomplete and inaccurate. (*See* NIC's Exh. 189.) |
| 449. | James Hardin responded with excitement over receiving his portion of the settlement, exclaiming "[w]here is my 12.5% baby!" | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). **Objection** – Misstates the evidence, assumes facts not supported by the |

239

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | evidence, argumentative and misleading.  Vague, ambiguous and overbroad as phrased.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk is not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b).  <br><br>**Undisputed** that the cited email was sent and is set forth in NIC's Exh. 189.  **Disputed** as NIC's characterization of "with excitement" is subjective and speculative.  (*See* NIC's Exh. 189.) |
| 450. | When Scott Ferrell communicated with opposing counsel regarding Strataluz's litigation threats, he never disclosed that he or any other NTG attorney was a shareholder in the company. | | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).  <br><br>**Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Vague, ambiguous and legally incorrect as phrased.  Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk or other products should somehow be attributed to ProMaxal.  FRE 401-403.  Eversilk and other products are not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2).  Improper character evidence.  FRE 404(b).  <br><br>**Disputed** to the extent that NIC's contends that there was some type of requirement that corporate structure and a list of members or owners be disclosed.  Also disputed to the extent NIC has misstated the ownership and member interests at issue as Ferrell was |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5 | | not a "shareholder" in Strataluz. Further disputed as this is not factually correct. (*See* Exh. 231, Ferrell Dep. Tr. at 132:15 ("Q· · You didn't want to reveal the fact that you were an owner in Strataluz to litigation adversaries; is that right? ·A· · You are sadly mistaken."; *see also* Ferrell Decl., ¶11.) |
| 6<br>7<br>8<br>9<br>10 | 451. | In fact, Scott Ferrell repeatedly made statements designed to suggest that Strataluz was a truly independent client with whom he communicated before making litigation decisions or settlement offers. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | | | **Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Vague, ambiguous, speculative and legally incorrect as phrased. As an LLC, Strataluz is a distinct legal entity with a corporate existence separate from that of its members or owners. *Abrahim & Sons Enterprises v. Equilon Enterprises, LLC*, 292 F.3d 958, 962 (9th Cir. 2002) ("Corporations and LLCs are distinct legal entities, separate from their stockholders or members."). In this sense, NIC's phrase "truly independent client" is nonsensical and argumentative. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk or other products should somehow be attributed to ProMaxal. FRE 401-403. Eversilk and other products are not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). |
| 25<br>26<br>27<br>28 | | | **Disputed** as NIC's phrase "designed to suggest" is speculative and argumentative, and its phrase "truly independent client" is nonsensical and argumentative in this context. Further disputed as this is not factually correct. |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4 | | | (*See* Exh. 231, Ferrell Dep. Tr. at 132:15 ("Q· · You didn't want to reveal the fact that you were an owner in Strataluz to litigation adversaries; is that right? ·A· · You are sadly mistaken."; *see also* Ferrell Decl., ¶11.) |
| 5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21 | 452. | Jarrod Bentley, James Hardin, and Joshua Weiss all testified that they were not consulted regarding Strataluz's litigation strategy or settlement positions. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.<br><br>**Disputed.**  NIC has misstated and mischaracterized the deposition testimony that it has cited and even documents filed by NIC with NIC's motion show Ferrell discussing litigation strategy and settlement with Bentley, Hardin, and Weiss.  (*See e.g.*, NIC's Exh. 188 (Ferrell sending proposed settlement to Bentley, Hardin, and Weiss, among others, and stating "With everyone's blessing, I will accept this" and "[l]et me know if everyone is on board with this" to which Bentley responds "I'm on board. Still amazed at how you're able to do it — but definitely on board."). |
| 22<br>23<br>24<br>25<br>26<br>27<br>28 | 453. | On July 10, 2015, David Reid wrote Scott Ferrell about counsel for Natural Products Solution, stating: "Little biatch certainly has changed his tone." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection.**  Irrelevant and unduly prejudicial as this purported fact has no bearing on NIC's motion and appears to only be intended to harass and |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| 1 | | | annoy.  FRE 401-403. |
| 2 | | | **Undisputed** that the cited email includes the quoted text. |
| 3 | | | |
| 4 | 454. | Scott Ferrell responded and wrote: | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 5 | | "HAHAHAHA So true.  And I think we may want to investigate a consumer class action against them – its at least worth a CLRA letter to see if they file a dec action that we can SLAPP." | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | **Objection.**  Irrelevant and unduly prejudicial as this purported fact has no bearing on NIC's motion and appears to only be intended to harass and annoy.  FRE 401-403. |
| 10 | | | |
| 11 | | | |
| 12 | | | **Undisputed** that the cited email includes the quoted text. |
| 13 | | | |
| 14 | 455. | Scott Ferrell communicated with counsel for Twinlab and demanded settlement payment to Strataluz regarding its ProMAXAL claims. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz.  *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | **Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading.  Vague, ambiguous and overbroad as phrased. |
| 20 | | | |
| 21 | | | |
| 22 | | | **Undisputed** that Scott Ferrell exchanged emails with counsel for Twinlab as reflected in NIC's Exh. 192.  **Disputed** to the extent that NIC has not accurately or fairly described these emails.  The email from Ferrell was not phrased as a demand.  Instead, Ferrell's email states "…Strataluz would prefer to have TwinLabs as a partner rather than an adversary. With that in mind,Strataluz remains willing to provide TwinLabs with (1) a complete release for past liability for |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | |
|---|---|---|
| | | all products, and (2) a fully paid-up, non-assignable sub-license to the patented technology in return for a one-time payment of $144,000, which your client may elect to pay over twelve months." (*See* NIC's Exh. 192.) |
| 456. | On July 2, 2015, Scott Ferrell demanded that Twinlab pay Strataluz $144,000 to settle the claim. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Vague, ambiguous and overbroad as phrased.<br><br>**Undisputed** that Scott Ferrell exchanged emails with counsel for Twinlab as reflected in NIC's Exh. 192. **Disputed** to the extent that NIC has not accurately or fairly described these emails. The email from Ferrell was not phrased as a demand. Instead, Ferrell's email states "…Strataluz would prefer to have TwinLabs as a partner rather than an adversary. With that in mind, Strataluz remains willing to provide TwinLabs with (1) a complete release for past liability for all products, and (2) a fully paid-up, non-assignable sub-license to the patented technology in return for a one-time payment of $144,000, which your client may elect to pay over twelve months." (*See* NIC's Exh. 192.) |
| 457. | On July 24, 2015, Scott Ferrell sent a draft complaint to Dan Silverman, counsel for Twinlab, to convince Twinlab that Strataluz would pursue litigation if Twinlab did not pay money. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection** – Misstates the evidence, assumes facts not supported by the |

| | | | |
|---|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 11 | | | evidence, argumentative and misleading. Vague, ambiguous, speculative and overbroad as phrased. In addition, the exhibit NIC cites (NIC's Exh. 193) is not the email and draft complaint that is described in this purported fact.<br><br>**Disputed**. The exhibit NIC cites (NIC's Exh. 193) is not the email and draft complaint that is described in this purported fact. The email dated July 24, 2015 in NIC's Exh. 193 was not sent to Dan Silverman. Instead, that email was merely an internal email at NTG that makes certain requests, but it does not establish that this was done, nor does it establish the broader statements in NIC's purported fact. |
| 12 13 14 15 16 17 | 458. | On August 14, 2015, TwinLab agreed to pay Strataluz and NTG $10,000 to settle Strataluz's threatened claims regarding ProMAXAL. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed**. |
| 18 19 20 21 22 23 24 | 459. | On August 21, 2015, Twinlab executed a settlement agreement with Strataluz, LLC regarding the Lanham Act claims that NTG and Strataluz threatened in the June 2, 2015 demand letter sent by Scott Ferrell and NTG. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Undisputed**. |
| 25 26 27 28 | 460. | The settlement required Twinlab Corporation, a company with its principal place of business in Florida, to wire $10,000 in four separate $2,500 payments to the Newport Trial Group's Wells Fargo IOLTA client trust account. | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

245

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

FRE 404(b)(1).

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Vague, ambiguous and overbroad as phrased. Lack of foundation and authentication. FRE 602 and 901.

**Undisputed** that settlement agreement with Twinlab Corporation is set forth in NIC's Exh. 195 and that said settlement agreement states that the settlement payment "shall be wired to Newport Trial Group in four separate $2,500 payments…" **Disputed** that Twinlab Corporation is a company with its principal place of business in Florida and further disputed to the extent NIC is contending that the settlement payments were made from Florida as there is nothing in NIC's cited evidence to support its claim.

| 461. | In September of 2015, NTG received a response to a cellulite demand letter and Reid wrote Scott Ferrell: "This came in on the Nuxe matter. This one came in after we decided to let most of these die out. Not sure if you want to do a little Brown Eyes and shake some money loose from these guys." | **Objection specific to Baslow** – irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).

**Objection** – Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant and unduly prejudicial as this purported fact has no bearing on NIC's motion and appears to only be intended to harass and annoy. FRE 401-403. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk or other products should somehow be attributed to ProMaxal. FRE 401-403. Eversilk and other products are not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). |
|---|---|---|

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | **Undisputed** that the cited email includes the quoted text. |
| | 462. | Scott Ferrell responded and expressed an inclination to "let it die" and David Reid agreed, writing "I think that's the better option for his(sic) one. We have more profitable matters to attend to." | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Irrelevant and unduly prejudicial as this purported fact has no bearing on NIC's motion and appears to only be intended to harass and annoy. FRE 401-403. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to contend that purported facts and evidence relating to Eversilk or other products should somehow be attributed to ProMaxal. FRE 401-403. Eversilk and other products are not ProMaxal and ProMaxal is the only Strataluz product at issue in the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b).<br><br>**Undisputed** that the cited email includes the quoted text. |
| | 463. | Strataluz's owners decided to wind down the company as the litigation was not profitable and the company sold almost no product. | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had <u>no involvement</u> with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1).<br><br>**Objection –** Misstates the evidence, assumes facts not supported by the evidence, argumentative and misleading. Vague, ambiguous, speculative and overbroad as phrased. Irrelevant and unduly prejudicial as this purported fact has no bearing on NIC's motion and appears to only be intended to harass and annoy. FRE 401-403. |

247

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | | | |
|---|---|---|---|
| | | | **Disputed**. It is undisputed that Strataluz wound down, but NIC's mischaracterization and argument about the reasons it wound down (i.e., "the litigation was not profitable and the company sold almost no product") is speculative, not supported by the evidence NIC cited and incorrect. The evidence is that Strataluz dissolved because it "[w]asn't making any money." (Exh. 251, *J. Bentley Dep. Tr.* at 50:14-19.) This does not have to do with litigation not being profitable as NIC contends. The evidence in this case as establishes that there is no merit to NIC's claim that "the company sold almost no product." (*See* Exh. 286 (reflecting Strataluz sales of numerous products.) |
| 464. | Like NTG did for its wiretapping, false advertising, and ADA matters, the firm maintained case charts that tracked Strataluz litigation. | | **Objection specific to Baslow –** irrelevant and unduly prejudicial as Baslow had no involvement with any alleged crime, wrong or act regarding Strataluz. *See* Appendix A (8-12 identifying Ferrell and NTG as "liable defendants"); *see also* FRE 401-403; FRE 404(b)(1). <br><br> **Objection –** Vague, ambiguous, speculative and overbroad as phrased. Irrelevant, unduly prejudicial, and overbroad to the extent NIC is attempting to establish immaterial facts on cases and matters that have no bearing on the predicate acts in NIC's motion (*see* Dkt. 1107-2). Improper character evidence. FRE 404(b). <br><br> **Undisputed** that at various times and in various cases, NTG maintained charts that reflected certain information on certain matters. |

## COUNTER STATEMENT OF MATERIAL FACTS

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| 465. | Defendant NTG is a consumer protection firm that pursues, *inter alia*, class action lawsuits against corporations and other business entities who violate laws designed to protect the public or consumers, or to safeguard an individual's right to privacy, among other things. | Ferrell Decl., ¶ 2 |
| 466. | NIC labels and markets colloidal silver as providing "IMMUNE SUPPORT," even though it has been recognized for over 100 years that such claims are false. | Exhs. 294, 291, S. Silver, *Bacterial silver resistance: molecular biology and uses and misuses of silver compounds*, FEMS Microbiology Reviews, 27 (2003) 341-353 at 349; 61 Fed. Reg. 53686 *citing* Fung, M. C., and D. L. Bowen, "Silver Products for Medical Indications: Riskbenefit Assessment," Clinical Toxicology, March 1996; 64 Fed. Reg. 44656; National Institute of Health, Silver available at https://nccih.nih.gov/health/colloidalsilver (Silver "has no known function or benefits in the body when taken by mouth."); https://www.mayoclinic.org/healthy-lifestyle/consumer-health/expert-answers/colloidal-silver/faq-20058061; *see* R. Cairns, Insider, *Colloidal silver is not safe to consume or apply to your skin* (Mar. 26, 2020) available at https://www.insider.com/is-colloidal-silver-safe ("companies selling |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | **DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS** | **EVIDENCE** |
|---|---|---|
| | | products with colloidal silver that claim to prevent or cure illnesses like coronavirus are a major threat to public health, as they might stop or delay consumers from seeking the appropriate medical treatment."). |
| 467. | NIC admits that the only harm it is claiming in this litigation arose from the case of *Nilon v. Natural-Immunogenics Corp.*, No. 3:12-cv-00930-LAB-BGS (S.D. Cal. 2012). | Exh. 292 (NIC's stipulation "that its request for compensatory damages is limited to the recovery of attorney fees and costs it spent defending *Nilon v. Natural-Immunogenics Corp.*") |
| 468. | Scott Ferrell has declared under penalty of perjury that "I unequivocally dispute that any of the preceding acts involved any wrongdoing or misconduct by NTG or me. I have never intended to deceive, cheat, or mislead any defendant or potential defendant in connection with the twelve predicate acts listed by NIC. At all times I held and still hold a genuine belief that the claims asserted had merit. To be clear, I categorically deny NIC's allegations of scienter on the part of NTG and on behalf of myself." | Ferrell Decl., ¶ 5 |
| 469. | Scott Ferrell has declared under penalty of perjury that he "held a genuine belief that each of the underlying claims on which NIC's 12 predicate matters are predicated | Ferrell Decl., ¶ 5 |

250

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | had merit." | |
| 470. | *Nilon v. Natural-Immunogenics Corp.*, No. 3:12-cv-00930-LAB-BGS (S.D. Cal. 2012) involved a claim "that colloidal silver is snake oil and [NIC] is advertising otherwise." | Exh. 293 at 112 |
| 471. | The evidence in *Nilon v. Natural-Immunogenics Corp.*, No. 3:12-cv-00930-LAB-BGS (S.D. Cal. 2012) confirmed that NIC's claims regarding its product were false. | Exh. 294 (Dr. Saxon testified unequivocally in the *Nilon* Action that "Natural-Immunogenics claim that Sovereign Silver™ provides 'immune system support' has no scientific basis and is false."); *McGuire v. Sec'y of HHS*, 2015 U.S. Claims LEXIS 1348, *11 (Fed. Cl. 2015) (explaining that Dr. Saxon's "research has focused on immunologic concepts" and is well-respected, having "written nearly 200 articles that have appeared in peer-reviewed publications.") |
| 472. | Due to suitability issues with a replacement class representative that had nothing do with the merits of whether NIC's product provided immune support as claimed, the Nilon Action was ultimately dismissed without prejudice to the class. | Exh. 295 |

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| 473. | NIC, via its investigator Clark Baker, previously attempted to extort a false declaration from Andrew Nilon, which NIC has filed in support of the instant Motion. | Exh. 263, ¶ 22 ("Baker told [Nilon that] the Website would be put back up if [Nilon] did not cooperate with him, but it would stay down if [Nilon] told him what he wanted to hear about Newport Trial group."); <br><br> Exh. 258, ¶ 7 (Baker told Nilon that if McNair and Baker were not satisfied with Nilon's cooperation, then the Website would be put back up.); <br><br> Exh. 312 at 5 (demonstrating that Baker has a history of using derogatory websites to blackmail witnesses and prohibiting Baker from contesting "Baker's scienter and purpose that Baker uses 'adverse websites' to coerce witnesses."); <br><br> Exh. 263, ¶¶ 14 and 24. <br><br> Exh. 313 at 2 (Baker threatening "I recommend that we get a declaration signed and to them today. If you drag it on they might misinterpret your delays.") <br><br> Exh. 315 at 3, 5 (Baker testifying that "[d]uring the period of August 20, 2015 through August 25, 2015, when I was communicating with Andrew Nilon . . . [m]y client was NIC . . . .") |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| 474. | Baker has an adjudicated history of coercing false declarations from witness through the use of derogatory websites. | Exh. 312 at 5 (demonstrating that Baker has a history of using derogatory websites to blackmail witnesses and prohibiting Baker from contesting "Baker's scienter and purpose that Baker uses 'adverse websites' to coerce witnesses.");

Exh. 316 (declaration from former witness that "Baker told me that he would take down a webpage about me which was negative and which I feared would cause me to lose my work and interfere with my relationships. Baker's condition for taking down the webpage was that I had to sign a declaration, which he sent to me and which I did sign."); |
| 475. | The supposed admissions that Baker coerced from Nilon, including that his grandmother was not actually sick as stated in his prior declaration, were false and were only made due to Nilon's fear of NIC and Baker reactivating the derogatory website. | Exh. 263

Exh. 258 at 4 and 6-10 (records confirming that Nilon's grandmother had chronic stage V kidney disease, hypertension, acute renal failure, renal artery stenosis, and atheroembolic disease of multiple blood vessels as reflected by the medical records of Williams's May 17, 2013 medical visit.);

Exh. 258 at 4 (Nilon was fearful and |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

253

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | | scared that Baker would re-publish the Website as Baker had explicitly threatened to do earlier that same day) |
| 476. | NIC has solicited and filed false declarations in this matter in an effort to obtain an "adverse factual finding that Ferrell did not have a client when he sent the December 27, 2011 demand letter to NIC." | Exh. 296 at 24 (NIC motion seeking adverse inference), 13 (NIC motion representing "[e]ach witness testified that Ferrell's declaration described an impossible set of circumstances. Trycia never resided or lived at the Ferrells' home in December 2011—a fact which undermines every material position in Ferrell's declaration.  See CC Decl. ¶¶ 5-8 (Dkt 844-3); MAB Decl. ¶¶ 9-15 (Dkt. 844-4); JB Decl. ¶ 8 (Dkt. 844-5). Trycia spent the last days of December 2011 with her mother at her mother's home in San Clemente.  Id.  On the same day Ferrell claims to have had a conversation about Sovereign Silver with Carlberg in Ferrell's house, Carlberg was actually residing in her mother Charlotte's home, spending her last Christmas with immediate family.")

Exh. 300 (The documentary evidence in the form of photographs, emails, and other written documents conclusively showed that Trycia Carlberg did, in fact, live with the Ferrells from late 2011 through early 2012, consistent with Ferrell's testimony, and that Trycia Carlberg |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | | did spend time at the Ferrells' home during the Christmas 2011 holiday (including Christmas Eve, December 24, 2011, Christmas Day, December 25, 2011, and the day after Christmas, December 26, 2011)<br><br>Exh. 301 (November 28, 2011 letter from Trycia Carlberg to the Ferrell's stating "I just wanted to take a moment to thank you both for allowing me to live with you in your beautiful home.")<br><br>Trycia Carlberg – who was a close friend of NTG's owner, Scott Ferrell, and his wife – "began living in [the Ferrells'] home in 2011 because she was very ill with cancer and needed [their] support and assistance." (NIC's RJN 8, ¶ 5.) Trycia Carlberg stayed with the Ferrell family from the end of 2011 through early 2012 when she moved into a hospice facility where she stayed until shortly before her death on May 5, 2012.  (NIC's RJN 8)  Regarding NIC's Sovereign Silver, on Christmas Eve 2011, "Ms. Carlberg told [Scott Ferrell] that her naturalpathic doctor had recommended a variety of alternative treatments and actions to fight her cancer . . . one of which was Sovereign Silver, for which she showed [Scott Ferrell] a bottle and a box that were labeled with the words |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

255

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | | "IMMUNE SUPPORT."  (*Id.*, ¶ 7.)  Recognizing the falsity of this claim, and after receiving Ms. Carlberg's consent to send a demand letter to NIC, Scott Ferrell sent a demand letter to NIC on December 27, 2011.  (*Id.*, ¶ 13). |
| | ***Nilon v. NIC*** | |
| 477. | NIC knew, or had reason to know, that the declarations regarding Trycia Carlberg were false before it filed them. | Exh. 302 at 2 (future declarant Charlotte Carlberg informing NIC's counsel regarding the draft declaration "I cannot sign this due to dates that she actually did stay at their house . . . [m]y dates, looking back on Trycia['s] Facebook are wrong.  I see pics of her at their [the Ferrells] house during Nov, Dec, Feb and March.");

Exh. 303 (Charlotte Carlberg texted Fernandes "Ill find date from her Facebook to show during time she was there and came home at that time too" showing that NIC had access to Trycia Carlberg's facebook);

Exh. 298, ¶ 14 (despite being expressly told that there were photographs showing Trycia in the Ferrell's house in December 2011, the Emord's counsel drafted and filed |

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | | a statement in MaryAnn Buc's declaration that "I spoke with Trycia daily in December 2011 and she was at no time with the Ferrell's."); |
| | | Exh. 296 at 13 (despite being expressly told that there were photographs showing Trycia in the Ferrell's house in December 2011, the Emord's counsel represented to the Court that "[e]ach witness testified that Ferrell's declaration described an impossible set of circumstances. Trycia never resided or lived at the Ferrells' home in December 2011—a fact which undermines every material position in Ferrell's declaration.") |
| 478. | Strataluz grew out of a "general business plan" by Bentley to "market products via television infomercials." | Exh. 250 at Tr. at 6: 8-16 |
| 479. | When asked why "you needed Scott F[e]rrell, James Hardin and David Reid," Bentley explained "I needed capital." | *Id.* at 6:23-7:10 |
| 480. | Early emails between Bentley and the future owners of Strataluz, including Reid and Ferrell, discuss plans and hopes for an "extremely successful" health and supplement company. | Exh. 304 ("I wanted to get you something to start going over. I've included some initial numbers, and will also send you some rough commercials that we can discuss . . . I'm convinced that we can be |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | | extremely successful."); |
| | | Exh. 305 (email from Reid responding, "I like what I see and think we can really build something successful); |
| | | Exh. 306 (product planning email from Bentley stating listing "timing/things to do" as "2 Minute Booty, Glutia, Acne Freeze, Diet Pill, More for All Products, including Telemarketing, Fulfillment, SEO, getting the product and procuring testimonials, can't wait to get started.") |
| 481. | By mid-2014, Strataluz was close to being fully operational with accounts, logistics, advertising, and multiple products. | Exh. 307 |
| 482. | There are numerous internal Strataluz documents discussing Strataluz's real products, strategies for them, order fulfillment, and business strategies for Strataluz overall | Exh. 308 (Aug. 13, 2014: detailed update on multipole products); |
| | | Exh. 309 (Aug. 24, 2014: discussion of Strataluz progress to date, noting that "most of the costs to-date have been setup" and that they do not want to "buy other people's ideas or spread themselves too thin launching 8 products"); |
| | | Exh. 269 (June 4, 2014: Bentley |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | | updating owners on a meeting he had with a "product formulator" in which they "discussed 3 new products: 1.) Sleeping Pill, 2.) Male Enhancement Pill, and 3.) Diet Pill."); Exh. 270 (June 4, 2014: email from Ferrell stating "I share Jarrod's perception that, with our infrastructure in place, it will be easier to launch additional products.")); Exh. 310 (contract with Moulton Logistics Management for fulfillment services)). |
| 483. | Internal Strataluz documents also confirm hundreds of sales and substantial spending on advertising. | Exh. 286 |
| 484. | Strataluz's websites for many products allowed consumers to make direct purchases. | Exh. 250 at 61:4-13 |
| 485. | In one marketing strategy emails, Bentley explained that "I want to focus on products that have the highest potential reward" and "I believe that without a doubt these products *are our Male Enhancement pill – ProMaxal* and a diet pill." | Exh. 311 at 2; Exh. 308 at 2-3 (Bentley providing updates on the results of product testing) |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|
| 486. Bentley, Weiss (Strataluz's internal counsel), and Ferrell all testified that ProMaxal was formulated. | Exh. 250 at 16:14-24 (Bentley testified that the product was formulated with a "specific ingredient that [Strataluz] billed ProMaxal around."); <br><br> Exh. 251 at 59:17-20 ("Q. And was ProMaxal ever formulated? A. Yes, to the best of my knowledge.")); <br><br> Exh. 231 at 209:10-210:9 (Scott Ferrell testifies that Strataluz had ProMaxal in inventory, offered it for sale, and had "finished-product packaging" for ProMaxal." |
| 487. On July 3, 2014, Bentley updates the owners of Strataluz on his meeting with a "product formulator" on three new products, including a "Male Enhancement Pill." | Exh. 269 |
| 488. By late 2014, Strataluz was working on specific marketing for the product that would become ProMaxal. | Exhs. 271, 272, 273 |
| 489. That pill was one of the topics of a meeting with a formulation expert in July of 2014 and $50,000 in funding was approved for that and other projects. | Exh. 269 |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| 490. | Internal discussions show the male enhancement project was favored due to weak competition: "As to male enhancement, the category used to be dominated by Extenze and Enzyte, but both of them have had serious problems recently and don't advertise much." | Exh. 270 |
| 491. | By September 2014, Strataluz was already testing commercials for ProMaxal. | Exh. 271 |
| 492. | Beginning in May 2015, Strataluz executed a license for the active ingredient in ProMaxal. | Exh. 274 |
| 493. | Stratlauz commissioned graphic design work for the packaging for Strataluz. | Exhs. 275, 276. |
| 494. | The principals discussed and decided on the name ProMaxal. | Exh. 277 |
| 495. | They also discussed the branding of the "propriety blend" it would contain, including the name "LIFEGATE," which was to be based on the patent that Strataluz had licensed. | Exh. 278 |
| 496. | Internal emails confirm that formulation work, including the | Exh. 279 |

261

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | specific ingredients and dosage, and estimates for obtaining inventory of ProMaxal in the near term. | |
| 497. | Internal documents likewise demonstrate extensive and sophisticated direct marketing as well as sales work and strategies for ProMaxal. Multiple commercials were produced, aired, and the results analyzed. | Exhs. 280; 281; 282; 283; 284; 285; 286 |
| 498. | Bentley stated, "I really believe that the male enhancement pill and a diet pill is the way to move forward" and reiterated his commitment to the project: "[f]rom my perspective, these two products MUST work." | Exh. 287 |
| 499. | When Bentley requested additional funding of $50,000 for ProMaxal work, the money was allocated. Even as late as September 29, 2015 – more than three months after demand letters were sent – internal documents show diligent and genuine work on ProMaxal and an optimistic assessment by its president, "I'm working on doing this but I'm also putting together a very comprehensive web campaign. This should be completed very soon and I'll send you the web videos as they are done. I'm still optimistic about everything and hope to send you | Exh. 285; Ehx. 279; Exh. 288 (inventory expense related to "private label nutrition – ProMaxal formulation) |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | good news soon." | |
| 500. | The owners of Strataluz invested $250,000 dollars in the company. | Exh. 309 |
| 501. | Strataluz sent only five demand letter related to ProMaxal, and only one of those resulted in a monetary settlement. | *See* NIC Exhs. 172-175 (ProMaxal letters); NIC Exh. 195 (ProMaxal settlement). |
| 502. | Ferrell explained at deposition that Strataluz was not involved in until "18 months" after it was created and that "Strataluz was sued twice and filed two lawsuits." | Exh. 231 at 136:12-22. |
| 503. | Ferrell testified "an entity would only be a target if they were competing unfairly against us in our space or distorting the market in a way that prevented our industry into the space and doing so in a way that violated the law." | Exh. 231 at 186:8-16. |
| | | |
| 504. | Pfleg's complaint sought an injunction. | NIC's RJN 11 ¶¶ 26(j), 47. |
| 505. | Baslow confirmed that with regard to Nature's Way, his instructions were to "investigate a product, find a suitable representative who had tried, bought, and been dissatisfied with | Exh. 233 at 331:3-7 |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

| DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|
| the product in the past[.]" | |
| 506. Baslow testified that "we don't just contact clients, suitable representatives, and say, go purchase these products and you can serve as a class representative or a plaintiff in a lawsuit.· We don't do that.· I don't do that." | Exh. 233 at 335:24-336:6 |
| 507. Baslow testified that "Mr. Pfleg will have had to have told me and made a representation that he tried these products in the past because I don't just send clients to the store to pick up products to say that they can be part of a lawsuit." | *Id.* at 339:8-16 |
| 508. Baslow testified that Pfleg had "told me that he had purchased Boericke & Tafel products in the past.· He had tried them, they didn't work, and that's one of the components that made him suitable." | Exh. 233 at 338:21-339:2 |
| 509. Pfleg confirmed that nobody told him to "buy those products before [he] went into the store[.]" | Exh. 242 at 44:11-13 |
| 510. Baslow testified that "It would not be like me or us to just tell a client to go out the day of and have a proof of purchase if they hadn't already purchased it in the past and didn't | Exh. 233 at 341:13-18 |

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | have their receipt or the products." | |
| 511. | Baslow explained that when a client no longer had a receipt, potential clients would make confirmatory purchases. | Exh. 233 at 335:24-336:6 (Q· · Okay.· But you knew you needed a POP that listed both products; correct? A· · I knew that, yes.· We -- the client didn't have his product and receipt and packaging from, you know, years past using it and being dissatisfied, and he needed to make a purchase, confirmatory purchase, to make sure that we had the right products."); *see also* 256:11-19 ("So, yeah, at times, we would ask clients to pick up the product or repurchase the product if they didn't have their receipt and packaging from years past.") |
| 512. | Wynn Ferrell testified that potential clients who would "repurchase" if the person previously purchased the product but no longer had the receipt. | Exh. 232 at 106:17-109:7 |
| | | |
| 513. | NTG has acknowledged that it used tester plaintiffs in CIPA cases and offered detailed testimony at deposition on why the use of "tester" plaintiffs is proper. | Exh. 236 at 37:2-7; 32:22-33:21; 34:3-8 |
| 514. | Ferrell has submitted a declaration confirming his understanding that | Ferrell Decl., ¶ 7 |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

| | DEFENDANTS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS | EVIDENCE |
|---|---|---|
| | the use of tester plaintiffs in, *inter alia*, CIPA was proper and not fraudulent. | |
| 515. | Ferrell confirmed at NTG's 30(b)(6) deposition that he specifically informed "Himalaya Drug's counsel that Sam Schoonover was a tester[.]" | Exh. 236 at 46:14-18 |
| 516. | Ferrell explained that "Carter-Reed's counsel is a good friend of mine" and they had "discussed the profiles of the CIPA plaintiffs in similar context to the discussions that I had with [counsel for [Himalaya Drugs]." | Exh. 236 at 48:11-16 |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND CONCLUSIONS OF LAW

# **CONCLUSIONS OF LAW**

1. Summary judgment is proper only where a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

2. In assessing the evidence before the Court, the district court must read the record in the "light most favorable to the nonmovant." *See Mankaruse v. Raytheon Co.*, 2016 WL 7324154, at *2 (C.D. Cal. Dec. 8, 2016) (Selna, J.) (citing Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

3. Rule 56 requires that the moving party to establish that there is not a genuine factual dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Thus, if a material fact is unsupported by the evidence cited, the moving party will not have met its burden of proof.

4. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

5. If there is "a single, genuine issue of material fact before the district court," then "summary judgment [cannot be properly] granted." *Neff Instrument Corp. v. Cohu Elecs., Inc.*, 269 F.2d 668, 669 (9th Cir. 1959).

6. Fraud claims "are so larded with fact issues (including issues as to intent) that summary judgment is seldom possible." *Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 981 (9th Cir. 1981).

7. The Ninth Circuit and other courts "have long recognized that summary judgment is singularly inappropriate where credibility is at issue. Only after an evidentiary hearing or a full trial can these credibility issues be appropriately

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

267

1   resolved." *S.E.C. v. M & A W., Inc.*, 538 F.3d 1043, 1054–55 (9th Cir. 2008)

2   *quoting SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir.1978).

3       8.    In RICO cases, "the plaintiff only has standing if, and can only recover

4   to the extent that, he has been injured in his business or property by the conduct

5   constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496

6   (1985).

7       9.    If "the compensable injury necessarily is the harm caused by predicate

8   acts sufficiently related to constitute a pattern," the RICO elements of conduct,

9   enterprise, pattern, or racketeering activity cannot be proven by using only predicate

10  acts that did not cause any injury to plaintiff.  The Supreme Court confirmed as

11  much in 2006, when it held that the "'proper referent of the proximate-cause

12  analysis' is the predicate acts alleged." *Planned Parenthood Fed'n of Am., Inc. v.*

13  *Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 652 (N.D. Cal. 2019) (quoting *Anza v.*

14  *Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006)); *see also Hemi Grp., LLC v.*

15  *City of N.Y.*, 559 U.S. 1, 9 (2010) (citation omitted) (explaining that the civil RICO

16  statute requires plaintiffs "to show that a RICO predicate offense not only was a 'but

17  for' cause of [their] injury, but was the proximate cause as well").

18      10.   Following *Sedima*, jurisdictions – including the Ninth Circuit – are

19  universal in their requirement that a plaintiff's RICO "pattern" include at least one

20  predicate act that harmed the plaintiff.  *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp.

21  2d 911, 1023 (C.D. Cal. 2011) ("At least one of the defendant's predicate acts" must

22  have been "the proximate cause of the plaintiff's injuries.") (quoting *Camelio v.*

23  *American Federation*, 137 F.3d 666, 670 (1st Cir.1998)); *Mendoza v. Zirkle Fruit*

24  *Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002) (requiring that RICO plaintiffs show the

25  alleged injury "was 'by reason of' the growers' alleged violations . . ."); *Pac.*

26  *Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1025 (N.D. Cal.

27  2020) ("To establish RICO standing, a plaintiff must plead an injury to business or

28  property that was proximately caused by the alleged RICO predicate offense."); *Just*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

268

*Film, Inc. v. Merch. Servs., Inc.*, No. C 10-1993 CW, 2012 WL 6087210, at *12 (N.D. Cal. Dec. 6, 2012) (to have standing, a RICO plaintiff must show "'an injury directly resulting from some or all of the activities comprising the violation'") (quoting *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809–10 (7th Cir.1987)); Gregory P. Joseph, Civil RICO: A Definitive Guide 58–59 (3d ed. 2010) (RICO plaintiff must plead and prove that it "has been injured by at least one predicate act").

11.    "One who believes his own case to be weak is more likely to suborn perjury than one who thinks he has a strong case, and a party knows better than anyone else the truth about his own case. Thus, subornation of perjury by a party is strong evidence that the party's case is weak." *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 921 (3d Cir. 1985).

12.    Whether other lawsuits were "objectively baseless" for purposes of *Noerr-Pennington* is commonly decided by juries. *Louisiana Wholesale Drug Co. v. Sanofi-Aventis*, No. 07 CIV.7343 (HB), 2009 WL 2708110, at *4 (S.D.N.Y. Aug. 28, 2009) (the court explaining that "instructed the jury[] to determine whether the Citizen Petition was objectively baseless . . . ."); *Kramer v. Midamco, Inc.*, No. 1:07 CV 3164, 2010 WL 11561728, at *2 (N.D. Ohio Jan. 15, 2010) (holding that "the question as to whether Midamco's claims are "objectively baseless" remains a question of fact for the jury."); *LendingTree, LLC v. Zillow, Inc.*, 54 F. Supp. 3d 444, 459 (W.D.N.C. 2014) (explaining that "[t]he jury rejected Zillow's claims that LendingTree had brought an objectively baseless case."); *Dice Corp. v. Bold Techs. Ltd.*, No. 11-CV-13578, 2014 WL 2763618, at *15 (E.D. Mich. June 18, 2014) (jury finding on whether the lawsuit was "so objectively baseless that no reasonable litigant could realistically be expected to win.").

13.    "The Noerr-Pennington doctrine provides absolute immunity for statutory liability for conduct when petitioning the government for redress." (Dkt. 652 (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)).)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

14. In addition to litigation filings, "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, [also] falls within the protection of the Noerr-Pennington doctrine." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).

15. In order to "base a claim on conduct incidental to litigation, and avoid the *Noerr-Pennington* bar, a plaintiff must demonstrate that the lawsuit itself was a sham." *See Thomas*, 2006 WL 5670938, at *8. To meet this exception, "the plaintiff must first show that the lawsuit was 'objectively baseless' by showing that it lacks 'probable cause' such that 'no reasonable litigant could realistically expect success on the merits.'" (Dkt. 1028 at 14 (quoting *UMG Recordings Inc., v. Glob. Eagle Entm't., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015) and *Prof'l Real Estate Investors*, 508 U.S. at 60-61).)

16. In the Ninth Circuit, courts "do not lightly conclude in any *Noerr–Pennington* case that the litigation in question is objectively baseless, as doing so would leave that action without the ordinary protections afforded by the First Amendment, a result we would reach only with great reluctance." *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000).

17. A lawsuit does not qualify as a "sham" if it is "arguably warranted by existing law or at the very least based on an objectively good faith argument for the extension, modification, or reversal of existing law." *Prof'l Real Estate Inv'rs*, 508 U.S. at 65 (quoting Fed. R. Civ. P. 11)).

18. After proving that the lawsuit is "objectively baseless," the plaintiff must demonstrate that "the defendant's motive in bringing it was unlawful." *Sosa*, 437 F.3d at 938.

19. "RICO and the predicate statutes [of mail and wire fraud] . . . do not permit the maintenance of a lawsuit for the sending of a prelitigation demand to settle legal claims that do not amount to a sham. Because the demand letters at issue here sought settlement of claims against Sosa under the Federal Communications

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Act, and no sham is claimed, they cannot form the basis of liability under RICO."

2   *Id.* at 942.

3       20.    "[P]roof of a lawsuit's objective baselessness is the 'threshold

4   prerequisite': a court may not even consider the defendant's allegedly illegal

5   objective unless it first determines that his lawsuit was objectively baseless." *White*,

6   227 F.3d at 1232 (quoting *Prof'l Real Estate Investors*, 508 U.S. at 60-61).

7       21.    Even "litigation that is deceitful, underhanded, or morally wrong will

8   not defeat immunity unless it satisfies the objective baselessness requirement."

9   *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 312 (4th Cir. 2003).

10      22.    "Probable cause is a sufficiently fact-laden issue as to typically be a

11  question for the jury." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 638 (D.N.J.

12  2011).

13      23.    "[W]hen the facts are disputed–as they are here–and those disputes are

14  material–as they are here–then the Court cannot grant summary judgment on the

15  probable cause issue." *Garcia v. United States*, No. SACV091169DOCRNBX,

16  2011 WL 13224877, at *7 (C.D. Cal. Sept. 19, 2011).

17      24.    "Supreme Court precedent clearly contemplates that when genuine

18  issues of material fact exist regarding a defendant's probable cause to institute the

19  underlying lawsuit, summary judgment on Noerr–Pennington immunity is

20  improper[.]" *Pers. Dep't, Inc. v. Pro. Staff Leasing Corp.*, 297 F. App'x 773, 780

21  (10th Cir. 2008).

22      25.    CIPA was enacted "to protect the right of privacy by, among other

23  things, requiring that all parties consent to a recording of their conversation."

24  *Flanagan v. Flanagan*, 27 Cal. 4th 766, 769 (2002).

25      26.    CIPA "prohibits a defendant from recording a telephone conversation

26  without first informing the parties to the conversation that the conversation is being

27  recorded." *Raffin v. Medicredit, Inc.*, No. CV154912GHKPJWX, 2017 WL 131745,

28  at *9 (C.D. Cal. Jan. 3, 2017).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

271

27.     CIPA, like other notice or consent requirement statutes, does not require an injury in fact.  district courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statute." *Raffin v. Mericredit, Inc.*, 2016 U.S. Dist. LEXIS 181819, at *3 (C.D. Cal. Dec. 19, 2016).  This is because "the harm consists of the unauthorized recording."  *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1018 (C.D. Cal. 2014).

28.     It is thus well-settled that a CIPA plaintiff does not need to allege any injuries other than a statutory violation in order to have standing or to bring a valid claim for relief.  *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 166 (2003) ("[T]o recover statutory damages for violation of section 632, Lieberman was not required to prove actual damages resulting from the recording."); *Ribas v. Clark*, 38 Cal. 3d 355, 365 (1985) (Section 637.2 "authorizes statutory damages for each violation of the Privacy Act despite a party's inability to prove actual injury").

29.     The California Supreme Court has directly rejected the proposition that CIPA does not apply when callers "know or have reason to know' that their telephone calls . . . are being recorded."  *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1399 (2011).

30.     There is no authority precluding the use of tester plaintiffs in CIPA cases.  Dkt. 458 at 13 (Special Master finding "there simply is no authority that precludes the use of 'testers' under CIPA.").  This Court reached the same conclusion, "acknowledg[ing], as did the Special Master, that there is no clear authority on the issue of whether tester plaintiffs are permitted to bring CIPA claims."  (Dkt. 659 at 17.)

31.     But under CIPA, a plaintiff suffers an injury when a call is recorded without notice.  *Ades*, 46 F. Supp. 3d 999, at 1018.  Nothing more is needed.  *See e.g.*, *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 U.S. Dist. LEXIS 84756, at *29 (S.D. Cal. June 29, 2016) (holding that plaintiff had alleged statutory

272

1  damages under CIPA and denying motion to dismiss).

2     32.    Implied consent arguments are of limited applicability to wiretap cases

3  because "[c]ourts have cautioned that implied consent applies only in a narrow set

4  of cases."  *See, e.g., In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918,

5  at *12 (N.D. Cal. Sept. 26, 2013).  In *Kearney v. Salomon Smith Barney, Inc.*, 39

6  Cal.4th 95, 116, fn. 6 (2006), the high court rejected the Court of Appeal's

7  suggestion that under California law there was no need for an explicit advisement

8  regarding the secret recording because "clients or customers of financial brokers . . .

9  'know or have reason to know' that their telephone calls with the brokers are being

10 recorded."  Rather, it held that "in light of the circumstance that California

11 consumers are accustomed to being informed at the outset of a telephone call

12 whenever a business entity intends to record the call, it appears equally plausible

13 that, in the absence of such an advisement, a California consumer reasonably would

14 anticipate that such a telephone call is not being recorded, particularly in view of the

15 strong privacy interest most persons have with regard to the personal financial

16 information frequently disclosed in such calls."  *Kearney*, 39 Cal. 4th 95, 118, fn.

17 10; *White v. Arlen Realty & Development Corp.*, 540 F.2d 645, 646 (4th Cir. 1975);

18 *Marbury v. Hometown Bank*, No. 10-cv-3936, 2012 U.S. Dist. LEXIS 124375 (S.D.

19 Tex. Aug. 30, 2012) ("Even though Plaintiff received notice of the fee in one

20 form—on the ATM screen—Plaintiff's alleged failure to receive notice in both

21 statutorily mandated forms is an injury.").

22    33.    "Penal Code section 632 is violated the moment a confidential

23 communication is recorded without consent."  *Marich v. MGM/USA*

24 *Telecommunications, Inc.*, 113 Cal. App. 4th 415, 425 (2003)

25    34.    A consumer who "knows" the advertisement is false has standing under

26 the CLRA.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir.

27 2018).

28    35.    The elements of a Lanham Act § 43(a)2 false advertising claim are: (1)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

273

a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)

36.     "[W]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).

37.     "Under the Lanham Act, a plaintiff need not actually be injured to have standing—likelihood of injury is enough." *TrafficSchool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1071 (C.D. Cal. 2008), *aff'd in part, rev'd in part and remanded*, 653 F.3d 820 (9th Cir. 2011).

38.     Under the Lanham Act "a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989).

39.     Under Lanham Act precedent, "a commercial interest, present or contemplated" confers standing. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1111 (2d Cir. 1997); *National Lampoon, Inc. v. American Broadcasting Co.*, 376 F. Supp. 733, 746 (S.D.N.Y. 1974) (plaintiff's standing established by allegation of plans to expand into television market where potential confusion would arise), *aff'd*, 497 F.2d 1343 (2d Cir. 1974).

40.     "[S]cienter should not be resolved by summary judgment." *Provenz v. Miller*, 102 F.3d 1478, 1489–90 (9th Cir. 1996).

41.     The wire fraud and mail fraud statutes require a showing of "intent not

274

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions." *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 1085, 208 L. Ed. 2d 539 (2021).

42.    To be "guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions.  In other words, a defendant must intend to deceive *and* cheat." *Id.*

43.    "'Where there is no evidence establishing intent as a matter of law, intent to deceive is a jury question,' and summary judgment is not warranted . . . ." *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1235, 1248 (W.D. Wash. 2014), *quoting Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 435 (8th Cir.1994).

44.    "Cases where intent is a primary issue generally are inappropriate for summary judgment unless all reasonable inferences that could be drawn from the evidence defeat the plaintiff's claim." *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980); *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1302 (9th Cir. 1999) ("Questions involving a person's state of mind ... are generally factual issues inappropriate for resolution by summary judgment"); *SEC v. Seaboard Corp.*, 677 F.2d 1297, 1298 (9th Cir. 1982); *Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 981 (9th Cir. 1981) ("Fraud claims normally are so larded with fact issues (including issues as to intent) that summary judgment is seldom possible."); *Polara Eng'g, Inc. v. Campbell Co.*, No. SACV1300007CJCJPRX, 2015 WL 12914378, at *1 (C.D. Cal. Apr. 27, 2015) ("Determining such inherently factual disputes, especially with respect to a patentee's intent to deceive, is not appropriate on summary judgment."); *In re O'Brien*, No. 10-00161-TLM, 2011 WL 1457304, at *3 (Bankr. D. Idaho Apr. 15, 2011) ("All of these authorities recognize that, when intent is at issue, summary

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

275

adjudication is likely inappropriate."); *Skedco, Inc. v. Strategic Operations, Inc.*, 287 F. Supp. 3d 1100, 1147 (D. Or. 2018) (Finding issue of fact regarding intent to deceive when "[d]eliberate intent to deceive is one reasonable inference.  But, another reasonable inference is that patent counsel acted negligently or recklessly.").

45.    A defendant's simple denial of intent to defraud will bar a plaintiff's motion for summary judgment on a fraud claim.  In *In re Plise*, 719 F. App'x 622, 624 (9th Cir. 2018) ("[b]y disregarding [the declaration denying intent] the bankruptcy court was, in effect, weighing it and making a credibility determination. While the bankruptcy court is entitled to make such a determination following a bench trial and may be entirely justified in doing so in this case, it was nonetheless improper for the court to do so at the summary judgment stage.").

46.    An enterprise "is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  To show the existence of an association-in-fact enterprise, a plaintiff must allege (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.  *Boyle v. United States*, 556 U.S. 938, 946 (2009).

47.    The RICO statute defines "pattern of racketeering activity" to require that the defendant commit at least "two acts of racketeering activity" within 10 years of each other.  18 U.S.C. § 1961(5).

48.    While there is no absolute rule, "courts virtually always find that activity spanning less than one year does not satisfy the close-ended continuity requirement."  (Dkt. 157 at 30 (citing *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992)).)

49.    To be part of a "pattern," acts must be "related."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).

50.    "Related" conduct "embraces criminal acts that have the same or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

276

similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*.

Dated:  May 17, 2021                          **CALLAHAN & BLAINE, APLC**

                                             By:  */s/ Stephanie A. Sperber*
                                             Edward Susolik
                                             David J. Darnell
                                             Stephanie A. Sperber
                                             Attorneys for NEWPORT TRIAL
                                             GROUP and SCOTT J. FERRELL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DEFENDANTS' STATEMENT OF GENUINE DISPUTES, COUNTER STATEMENT OF MATERIAL FACTS, AND
CONCLUSIONS OF LAW