Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., <br><br> Plaintiff, <br><br> v. <br><br> NEWPORT TRIAL GROUP, et al., <br><br> Defendants. | Case No. 8:15-cv-02034-JVS (JCG) <br><br> **PLAINTIFF NIC'S REPLY TO DEFENDANTS NTG'S AND SCOTT FERRELL'S OPPOSITION TO NIC'S MOTION FOR PARTIAL SUMMARY ADJUDICATON ON COUNT II (RICO)** <br><br><br> Hearing Date:  June 21, 2021 <br> Time:  1:30PM <br> Courtroom:  10C <br> Judge:  Hon. James V. Selna |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................1

II.    NTG FAILED TO ESTABLISH GENUINE DISPUTES OF
       MATERIAL FACT .................................................................................1

III.   ARGUMENT..........................................................................................3

       A. NIC Has Standing to Seek Partial Summary Adjudication........................3

       B. *Noerr-Pennington* Does Not Bar Partial Summary Adjudication.............4

          1. The Court Need Not Address *Noerr* to Resolve NIC's Motion...........4

             a. NIC's Motion does not implicate *Noerr* because NIC is not
                seeking a determination on liability ...................................4

             b. Defendants have not demonstrated entitlement to summary
                judgment on their *Noerr-Pennington* Affirmative Defense
                and, thus, that defense has no impact on NIC's motion...................4

          2. NIC Need Not Demonstrate That Any of The Lawsuits
             Relevant to Its Motion Were Sham .........................................5

          3. The undisputed record proves each suit in NIC's Motion falls
             under the sham exception ...................................................6

             a. NTG brought a series of suits without regard to their merits
                and for an unlawful purpose............................................7

             b. The Third Sham Exception Applies to All Cases at Issue ...............8

             c. The *Pfleg v. Nature's Way* case was objectively baseless .............10

             d. The *Himalaya* and *Carter-Reed* cases were objectively
                baseless ...............................................................14

             e. The Strataluz suits were objectively baseless .......................18

       C. NIC Has Demonstrated Defendants' Fraudulent Intent and
          Defendants Fail to Raise a Genuine Dispute............................................20

          1. NIC has established Defendants Scott Ferrell and Baslow's
             intent to defraud in each of the three schemes ...................................20

          2. Defendants' mere denials of fraudulent intent are insufficient

to raise a genuine dispute.................................................21

3. NTG's reliance on irrelevant and inadmissible testimony does not raise a genuine dispute...................................................23

4. The Court should strike or disregard Defendants' arguments based on good faith or justification .....................................24

D. There Is No Dispute Regarding the "Enterprise" Element .....................24

E. There Is No Dispute Regarding the "Relatedness" and "Continuity" Elements..................................................................24

IV. CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*A.B.C. Chevrolet Co. v. Kirk*, No. 85 C 10001, 1986 WL 10045 (N.D. Ill. Sept. 8, 1986) ............................................................................20, 21

*Aguilar v. Kuloloia*, No. 2:06-CV-01002, 2007 WL 2891503 (D. Nev. Sept. 28, 2007)................................................................................13

*Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995) ..............................25

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 129 F. Supp. 2d 578 (W.D.N.Y.), *aff'd*, 229 F.3d 1135 (2d Cir. 2000)......................8

*Bodney v. Pima Cty. Sheriff's Dep't*, No. CV 06-0015, 2009 WL 2513786 (D. Ariz. Aug. 7, 2009)..............................................2, 13, 18

*Brady v. Dairy Fresh Prod. Co.*, 974 F.2d 1149 (9th Cir. 1992) ...........21

*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798 (2007), *as modified* (Oct. 22, 2007), *and disapproved of on other grounds by Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011) ......................11

*Carrese v. Yes Online Inc.*, 2016 WL 6069198 (C.D. Cal. Oct. 13, 2016)..........................................................................................15

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors*, *Inc.*, 944 F.2d 1525 (9th Cir. 1991) ......................................................2, 13

*Dakis on Behalf of Dakis Pension Plan v. Chapman*, 574 F. Supp. 757 (N.D. Cal. 1983) ..........................................................................19

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) .........11

*Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173 (S.D.N.Y. 2006)................................................................................6

*Evans Hotels, LLC v. Unite Here Local 30*, 433 F. Supp. 3d 1130 (S.D. Cal. 2020), *reconsideration denied sub nom. EVANS HOTELS, LLC, et al, v. UNITE HERE LOCAL 30; et al*, No. 18-CV-2763, 2020 WL 1911557 (S.D. Cal. Apr. 20, 2020) ..................................................4, 6

*F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997), *as amended* (Apr. 11, 1997)........................................................22

*Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017 (9th Cir. 2013).........................15

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) ..............................................15, 16

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ........................................25

*IGEN Int'l, Inc. v. Roche Diagnostics GMBH*, 335 F.3d 303 (4th Cir. 2003)............................................................................................5

*In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, No. 13-2438, 2017 WL 385042 (C.D. Cal. Jan. 24, 2017)...............................................11

*In re LLS Am., LLC*, No. 09-06194, 2013 WL 3305393 (Bankr. E.D. Wash. July 1, 2013), *report and recomm. adopted as modified*, No. ADV 11-80299, 2013 WL 4480667 (E.D. Wash. Aug. 19, 2013)......................22

*In re Matter of Hinsley*, 201 F.3d 638 (5th Cir. 2000) ...................................21

*In re Plise*, 719 F. App'x 622 (9th Cir. 2018) ...........................................23

*Jackson Hill Rd. Sharon CT v. Town of Sharon*, 561 F. Supp. 2d 240 (D. Conn. 2008)............................................................................8

*Jones v. City of Chicago*, 787 F.2d 200 (7th Cir.1986)...................................23

*Just Film, Inc. v. Merch. Servs., Inc.*, No. C10-1993 CW, 2012 WL 6087210 (N.D. Cal. Dec. 6, 2012)...........................................................3

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009)....................8, 16

*Knight v. CashCall, Inc.*, 200 Cal. App. 4th 1377 (2011) .................................16

*Leines v. Homeland Vinyl Prod., Inc.*, No. 2:18-CV-00969, 2020 WL 4194054 (E.D. Cal. July 21, 2020).......................................................5

*Living Designs, Inc. v. E. I. Dupont de Numours and Co.*, 431 F.3d 353 (9th Cir. 2005) .......................................................................3

*McCollough v. Johnson, Rodenberg & Lauinger*, 587 F. Supp. 2d 1170 (D. Mont. 2008), a*ff'd sub nom. McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011)....................................5

*Moore v. Saniefar*, No. 114CV01067, 2016 WL 2764768 (E.D. Cal. May 12, 2016)......................................................................8

*Mut. Fund Invs., Inc. v. Putnam Mgmt. Co.*, 553 F.2d 620 (9th Cir.

1977) ................................................................................................20

*Negro v. Superior Court*, 230 Cal. App. 4th 879 (2014) ..............................15

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ................................15, 16

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007).............................24

*Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531 (9th Cir. 1991) .......................6

*Paragon Podiatry Lab'y, Inc. v. KLM Lab'ys, Inc.*, 984 F.2d 1182 (Fed. Cir. 1993).....................................................................................23

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) ...............................19

*Pinnacle Fitness & Recreation Mgmt., LLC v. Jerry & Vickie Moyes Fam. Tr.*, 844 F. Supp. 2d 1078 (S.D. Cal. 2012) ...................................3

*Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146 (7th Cir. 1994) ...........................20

*Romero v. Securus Techs., Inc.*, 331 F.R.D. 391 (S.D. Cal. 2018)..........................3

*S. Nev. Shell Dealers Ass'n v. Shell Oil Co.*, 725 F.Supp. 1104 (D. Nev. 1989) .......................................................................................17

*Saniefar v. Moore*, No. 117CV00823, 2017 WL 5972747 (E.D. Cal. Dec. 1, 2017) .........................................................................8, 10, 19

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ........................................7, 8

*State Auto Prop. & Cas. Ins. Co. v. Sigismondi Foreign Car Specialists, Inc.*, No. CV 19-5578, 2021 WL 1343116 (E.D. Pa. Apr. 12, 2021) .................20

*Suits v. Little Motor Co.*, 642 F.2d 883 (5th Cir. 1981)...........................................20

*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)....................................13

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011) ..................19

*United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal.*, 252 F. Supp. 2d 1060 (E.D. Cal. 2003), *aff'd*, 385 F.3d 1187 (9th Cir. 2004) ..............................................................................21

*United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996).......................................15

*USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades*

*Council, AFL-CIO*, 31 F.3d 800 (9th Cir. 1994)......................................................7

*Voskanyan v. Mcdonnell*, 2021 WL 1235032 (C.D. Cal. Feb. 10, 2021),
  *report and recomm. adopted*, 2021 WL 1235030 (C.D. Cal. Mar. 10,
  2021) ...............................................................................................................2, 13

**Statutes**

18 U.S.C. §1962(c) ...............................................................................................3

18 U.S.C. §1964(c) ...............................................................................................3

Cal. Penal Code §632(a) ......................................................................................15

**Rules**

Fed. R. Civ. P. 56(a)...............................................................................................3

## I.  INTRODUCTION

Plaintiff Natural-Immunogenics Corp. ("NIC") replies in support of NIC's Motion for Partial Summary Adjudication on Count II. *See* Dkt. 1107 ("Motion"). Defendants fail to raise genuine issues of material fact. They focus on incompetent legal arguments, including whether NIC can move for partial summary adjudication on the RICO Count and whether *Noerr-Pennington* immunizes their racketeering activity. Those arguments fail. They rely on inadmissible, speculative, and self-serving testimony, including *post hoc* affidavits that present general denials. Where Defendants have professed a total lack of memory of the material facts in their depositions, their testimony as to what they would have done under comparable circumstances is inadmissible speculation. Under the law, such self-serving and speculative testimony is inadmissible because it is assumptive and not based on requisite "personal knowledge." Shorn of the inadmissible content, nothing in NTG's opposition gives rise to a genuine dispute of material fact. A decision may thus issue as a matter of law.

## II.  NTG FAILED TO ESTABLISH GENUINE DISPUTES OF MATERIAL FACT

The contemporaneous record from NTG's internal documents confirms that Defendants engaged in the routine and systematic manufacture of litigation. That record establishes they concealed the contrived nature of their lawsuits from litigation adversaries and the Courts and thereby misled them. The documents show Defendants made affirmative false representations to their adversaries and the Courts in pleadings and declarations, and that they omitted material information (like the contrived nature of the suits). Defendants' own files confirm that NTG, Scott Ferrell, and Andrew Baslow were routinely engaged in the creation of litigation, manufacturing suits as part of a scheme or artifice to defraud opponents and the Courts, doing so to extort lucrative settlement payments.

Of NIC's 464 statements of undisputed material fact, NTG concedes 174 to be undisputed. Regarding the remainder in NIC's Statement of Undisputed Material

Facts, the Defendants fail to raise genuine disputes because they do not cite competent, admissible evidence in conflict with NIC's stated facts backed by the contemporaneous documentary record.  At deposition, the Defendants universally testified to profound memory losses whenever asked about specific material events. Baslow professed no recollection of a single conversation he had with Demulder, Schoonover, Nilon, Pfleg, and Dronkers.  *See* Appendix B ("App'x B") at §I. Baslow claimed no specific recollection of the facts and circumstances of his work in the cases at issue.  *Id*.[1]  The Non-NTG Defendants testified to no memory of any material conversations or interactions with NTG agents (and no memory of the specific events associated with their purported injuries in the cases at issue).  *Id*. at §§II-V.  As a matter of law, Defendants may not now belatedly attempt to create disputes of fact based on selective recollections in the face of that prior sworn testimony and the contemporaneous documentary record.

When a person testifies to a lack of memory regarding an event, he is legally without "personal knowledge" and cannot create a dispute of fact.  *See Bodney v. Pima Cty. Sheriff's Dep't*, No. CV 06-0015, 2009 WL 2513786, at *10 (D. Ariz. Aug. 7, 2009) (citing *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991)).  That is true even when the witness testifies about what they "would do" or "would have done" in a comparable situation because that testimony is speculative, not based on requisite personal knowledge.  *Voskanyan v. Mcdonnell*, 2021 WL 1235032, at *7 (C.D. Cal. Feb. 10, 2021), *report and recomm. adopted*, 2021 WL 1235030 (C.D. Cal. Mar. 10, 2021).

When confronted with documents supporting the facts in NIC's motion, the Defendants testified that, although they lacked any memory of the relevant events, their general practice was to act differently than what the documents revealed they

---

[1] Baslow was the individual at NTG who communicated with the non-NTG "clients" on behalf of the NTG firm.  Dkt. 1125 ("SOF") ¶ 28, 33.  Thus, Baslow is the only person who could have personal knowledge of NTG's client recruitment in those cases, and he professes no memory.

did.  *See e.g.*, Exh. 323 at 244:8—248:25, 338:2—339:23.  But mere denials and speculation do not create disputes of fact.  The Court is not obligated to and, under the law, cannot credit such inadmissible and speculative testimony.  Shorn of it, there is no genuine dispute of material fact and a decision may issue as a matter of law.

## III.   ARGUMENT

### A.   NIC Has Standing to Seek Partial Summary Adjudication

NIC moves for partial summary adjudication on the first four elements of its RICO claim.  Rule 56(a) permits motions for partial summary judgment or adjudication on "part of [a] claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment on some elements of a claim is permitted if genuine disputes of fact do not exist regarding those elements.  *Pinnacle Fitness & Recreation Mgmt., LLC v. Jerry & Vickie Moyes Fam. Tr.*, 844 F. Supp. 2d 1078, 1093 (S.D. Cal. 2012); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 400 (S.D. Cal. 2018).

18 U.S.C. §1962(c) defines the criminal RICO elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *See* 18 U.S.C. §1962(c). In the civil context, however, Congress added a fifth element, §1964(c): "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor. . ."  *See* 18 U.S.C. §1964(c).  "[A] plaintiff must show an injury to money or property from the conduct constituting the violation" to satisfy this fifth element.  *See Living Designs, Inc. v. E. I. Dupont de Numours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005).  A plaintiff need only demonstrate injury flowing from at least one predicate act in the RICO pattern. *Just Film, Inc. v. Merch. Servs., Inc.*, No. C10-1993 CW, 2012 WL 6087210, at *12 (N.D. Cal. Dec. 6, 2012) (collecting circuit court authority).

Because the first four RICO elements are free-standing and distinct from the fifth, the Court can adjudicate those without reaching the fifth until trial.  NIC can and will prove at trial that Defendants committed additional predicate acts in the *Nilon v. NIC* matter that caused NIC injury and that those predicate acts were

sufficiently related to the pattern of racketeering activity at issue in NIC's Motion.

Defendants argue that NIC asks the Court to adjudicate all elements of the RICO claim and reserve only the question of damages for trial.  Dkt. 1135 at 12. That is false.  NIC has asked the Court to reserve **injury and damages** for trial.

## B. *Noerr-Pennington* Does Not Bar Partial Summary Adjudication

Defendants' opposition brief argues their *Noerr-Pennington* affirmative defense. *Id*. at 16-33.  But *Noerr* is raised prematurely, need not be addressed by the Court in ruling on NIC's motion for summary judgment, and serves to distract from the issues presented. Even were the Court to evaluate *Noerr*, the record is undisputed and the prior decisions of this Court are clear that NTG's fraudulent conduct is not immune under a *Noerr* exception.

### 1. The Court Need Not Address *Noerr* to Resolve NIC's Motion

#### a. NIC's Motion does not implicate *Noerr* because NIC is not seeking a determination on liability

Whether Defendants' *Noerr* affirmative defense operates as a shield is not implicated by NIC's motion which not request a ruling on liability.  NIC has not moved for an order finding liability.  *See* Dkt. 1107.  NIC has reserved that and damages (i.e., whether NIC was injured by predicate acts that were part of the RICO enterprise) for trial.  *Id*. at 2; *see also* Dkt. 1107-1 at 7.  Whether a sham exception to *Noerr* applies is determined by an evaluation of the Defendants' conduct *directed at the plaintiff*.  *Evans Hotels, LLC v. Unite Here Local 30*, 433 F. Supp. 3d 1130, 1148 (S.D. Cal. 2020), *reconsideration denied sub nom. EVANS HOTELS, LLC, et al, v. UNITE HERE LOCAL 30; et al*, No. 18-CV-2763, 2020 WL 1911557 (S.D. Cal. Apr. 20, 2020).  NIC has not asked the Court to evaluate Defendants' conduct directed at the plaintiff (i.e., the *Nilon v. NIC* matter) at this time.  Dkt. 1107-1 at 7.

#### b. Defendants have not demonstrated entitlement to summary judgment on their *Noerr-Pennington* Affirmative Defense and, thus, that defense has no impact on NIC's motion

Although NIC has not moved for summary judgment on RICO liability, even

had it, the precedent establishes that this Court may enter an order finding defendants liable unless they can meet their burden to establish an affirmative *Noerr* defense on summary judgment or at trial. *McCollough v. Johnson, Rodenberg & Lauinger*, 587 F. Supp. 2d 1170, 1176 (D. Mont. 2008), *aff'd sub nom. McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011). A defendant who opposes summary judgment by raising an affirmative defense must demonstrate that he or she is entitled to summary judgment on that affirmative defense for it to defeat plaintiff's motion. *Leines v. Homeland Vinyl Prod., Inc.*, No. 2:18-CV-00969, 2020 WL 4194054, at *12 (E.D. Cal. July 21, 2020) (collecting cases).

The Defendants chose not to seek summary judgment on their *Noerr-Pennington* defense, leaving it for trial. In their opposition, Defendants do not argue they are entitled to summary judgment on the *Noerr* defense. Dkt. 1135 at 16-33. They instead assert genuine issues of fact exist as to whether that defense applies. *Id*. at 16 (section entitled "Material Issues of Fact Exist as to the Application of *Noerr*"). Assuming *arguendo* that genuine issues do exist, those fact questions can be put to the jury and the Court will ultimately determine the applicability of that defense under separate process. *IGEN Int'l, Inc. v. Roche Diagnostics GMBH*, 335 F.3d 303, 310 (4th Cir. 2003) (Application of *Noerr* is a question of law). But those issues have no impact on NIC's present motion. The Court can enter an order finding NTG demonstrated no issue of material fact regarding the Defendants' direction of an enterprise through a pattern of racketeering activity (thereby streamlining issues for trial) while reserving for trial the questions of whether NIC was injured by the enterprise's conduct and whether *Noerr* bars NIC's recovery.

## 2. NIC Need Not Demonstrate That Any of The Lawsuits Relevant to Its Motion Were Sham

*Noerr* operates as a shield from civil liability; it does not bar the use of evidence to establish elements of a claim. *See* Dkt. 652 at 5 (collecting precedent). Courts thus focus on whether defendants can be held civilly liable under a sham exception to the petitioning conduct that was specifically directed at the plaintiff.

*Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 192 (S.D.N.Y. 2006) ("sham conduct" refers to conduct that while "ostensibly directed toward influencing governmental action, is a mere sham to cover ... an attempt to interfere directly" with the plaintiff's business relationships."); *Evans Hotels*, 433 F. Supp. 3d at 1148 (the relevant question to determine whether the sham exception applies is whether the conduct directed at the plaintiff was sham); *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (same).  That is because the defendant is held civilly liable only for damages caused by conduct directed at the plaintiff and not for damages associated with other conduct not directed at the plaintiff which undergirds or supports elements of the claim.  Thus, the shield to liability under *Noerr* centers on whether the specific conduct that injured the plaintiff is protected.  The conduct in *Nilon v. NIC* forms the basis for Defendants' liability and the other suits are simply evidence to establish the requisite elements of the claim.

NIC does not seek to hold Defendants liable for RICO damages caused to anyone other than NIC.  NIC's motion seeks to establish the enterprise and pattern of racketeering activity through wire and mail fraud predicate acts.  NIC will prove additional predicate acts that caused injury to NIC at trial, and further prove that the suit against NIC was a sham (under all applicable *Noerr* exceptions).

## 3. The undisputed record proves each suit in NIC's Motion falls under the sham exception

Even were the Court to address *Noerr* at this stage (it need and should not), *and* it assumes *Noerr* extends beyond the petitioning conduct directed at the plaintiff (contrary to precedent), the undisputed record nonetheless proves that all three *Noerr* exceptions apply.  The Ninth Circuit defines the exceptions: (1) where the lawsuit is objectively baseless and defendant's motive in bringing it was unlawful; (2) where the conduct involves a series of suits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and (3) where the allegedly unlawful conduct consists of making intentional misrepresentations to

the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006). Each NTG suit at issue was baseless and brought for an unlawful purpose (satisfying the first exception). Each was part of a pattern of filing suits without regard to their merits and for an unlawful purpose (satisfying the second). Each involved intentional misrepresentations to the Court and opposing counsel, depriving the litigation of its legitimacy (satisfying the third). Thus, all three *Noerr* exceptions apply.

### a. NTG brought a series of suits without regard to their merits and for an unlawful purpose

"When dealing with a series of lawsuits, the question is . . . whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for [an improper purpose]." *USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994). The Court asks: "Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken [for an improper purpose]?" *Id.*

The undisputed record confirms NTG brought its suits without regard to the merits and for the unlawful purpose of extorting money from targets through fabricated claims of injury. Although NIC's Motion addresses predicate acts arising out of three litigation schemes involving at least four filed suits, the undisputed record evidences additional fraudulent suits (e.g., *Nilon v. NIC*, *Torres v. Nutrisystem*, *Schoonover v. Vogue*, *Morales v. Magna*, and the suits threatened on behalf of Stratalux). *See* Dkt. 1125 at 36-41, 57-67. The record shows NTG systematically recruited individuals to be shill plaintiffs in false advertising and wiretapping suits prepared in advance by NTG. Dkt. Nos. 1108-22, 1108-23, 1108-34. NTG directed its shills to purchase product for litigation or make phone calls to manufacture "injuries." *Id*. NTG never disclosed the truth to opponents or Courts

and endeavored to extort settlement money (with the illicit monetary motivations revealed in internal communications).  SOF ¶¶ 45, 101, 116, 150. That conduct satisfies the second exception and encompasses all activity addressed in NIC's Motion. Defendants fail to address this exception and thus waive argument on it.

### b. The Third Sham Exception Applies to All Cases at Issue

The third *Noerr* exception applies to all suits at issue. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006).  Under the third, "if the allegedly unlawful conduct 'consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.'"  The submission of "intentional misrepresentations" to a Court "[is] precisely" the misconduct "the sham exception was created to address." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009).  The litigation is deprived of its legitimacy if the other party is denied "meaningful access" to the proceedings or the misrepresentations caused a "continuation of the proceedings." *Jackson Hill Rd. Sharon CT v. Town of Sharon*, 561 F. Supp. 2d 240, 245 (D. Conn. 2008); *Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 129 F. Supp. 2d 578, 593 (W.D.N.Y.), *aff'd*, 229 F.3d 1135 (2d Cir. 2000).

In each suit, NIC has established undisputed evidence that Defendants knowingly made false representations to the Courts and their opponents.  SOF ¶¶ 97-103, 112, 184, 196-97, 231-43, 250, 433-40.   NIC has also established the materiality of those representations because they each related to the merits of the claims. *Moore v. Saniefar*, No. 114CV01067, 2016 WL 2764768, at *6 (E.D. Cal. May 12, 2016). NTG also omitted material facts in complaints and concealed the contrived nature of its suits.  SOF ¶¶ 97-103, 112, 184, 196-97, 231-43, 250, 433-40.  Through that conduct, NTG deprived the cases of their legitimacy, effectively preventing defendants and Courts from evaluating the legal sufficiency of asserted claims based on the true facts.  Through NTG's misrepresentations, the defendants

were denied the ability to pursue motions to dismiss or otherwise seek an adjudication from the Courts that the cases against them lacked merit (were shams).

In the false advertising context, NTG falsely alleged Pfleg purchased the Nature's Way products in reliance on the company's advertising and that he used products as advertised but did not receive advertised benefits. Those falsehoods defined an ostensibly valid claim that could not be challenged by the defendant absent expensive discovery. The false allegations improperly continued the litigation and deprived that defendant of access to a proceeding that could have ended the matter.

In the wiretapping context, NTG falsely alleged Schoonover and Demulder called the respective defendants expecting their calls would not be recorded and did not know they were recorded. Those falsehoods conveyed the misimpression that Demulder and Schoonover were *bona fide* callers genuinely interested in purchasing services or products and were recorded unawares and without consent. In fact, the callers were directed to make the calls by NTG, which had already investigated and determined that the defendants recorded all incoming calls. The callers knew this at the time they made the calls and called for the very purpose of being recorded to lay a foundation for litigation. As this Court has explained, Defendants Schoonover and Demulder were not "mere tester[s]," they operated at NTG's direction to manufacture claims that deceived opposing counsel and the Courts. *See* Dkt. 659 at 18. Defendants argue no Court has ever ruled their CIPA testers inappropriate, but that misleads because **they universally concealed the "tester" status from Defendants and the Courts.** Had they revealed that status, a defendant would have been able to litigate the sham nature of the complaints. Defendants intentionally deprived the Courts and opponents of the opportunity to evaluate that issue by invoking the precedent NTG knew forbad their conduct.

Similarly, in the Lanham Act cases, the Defendants pursued claims based on knowing misrepresentations to opposing parties and Courts. NTG argues that those

claims were not objectively baseless because the true facts (if alleged) would have stated a claim under a "future likelihood of injury" theory. Dkt. 1135 at 31-33. But under the third exception, that argument is irrelevant. The fact is Defendants did not assert a "future likelihood of injury" theory in their suits and, instead, knowingly asserted false claims of present injury and present market participation. The Defendants did not allege they were preparing to enter the market with a *future* likelihood of injury. *See* Dkt. 1117-33 (RJN 33). Defendants falsely alleged they sold ProMaxal and had actual sales, had it clinically tested and proven superior to the defendant's product, and were currently suffering from diverted sales. SOF ¶¶ 432-37. Those allegations were all false and in conflict with the future likelihood of injury theory Defendants now claim they might have asserted. Indeed, Scott Ferrell directed Jarrod Bentley to create a legitimate looking, but faux website to deceive a target company to stop questioning the validity of ProMaxal claims and pay the sum demanded. *See* Exh. 346. Defendants falsely conveyed they were active competitors and had suffered concrete financial losses. SOF ¶¶ 432-37. Misrepresentations that go to the plaintiff's standing or the court's jurisdiction are "material" and "undermine[] the legitimacy of the litigation." *Saniefar*, 2017 WL 5972747, at *6. Through those falsehoods, Defendants deprived their litigation adversaries and the Courts of the ability to evaluate whether Strataluz had a valid claim. The target companies were deprived of their ability to argue Strataluz was not a competitor because it did not yet sell ProMaxal.

Thus, the third exception to *Noerr* applies to each of the cases at issue and the Defendants have failed to raise argument regarding that exception. The Court should reject Defendants' *Noerr* arguments because the third sham exception applies.

### c. The *Pfleg v. Nature's Way* case was objectively baseless

NIC shows based on NTG's own files that the Defendants knowingly alleged false facts and omitted material facts in the demand letter and complaint filed against Nature's Way. SOF ¶¶ 205-43. NTG raises two arguments against the conclusion

that the demands and complaints were "objectively baseless:" (1) even if NIC's allegations are true, Pfleg would still have standing to pursue injunctive relief and so his claim did not entirely lack merit; and (2) the Defendants' deposition testimony is sufficient to create a dispute of fact as to whether Pfleg purchased the products for litigation. *See* Dkt. 1135 at 26-28.

Defendants' first argument is frivolous. California law holds that one who purchases a product to bring litigation does not have an injury-in-fact under California's false advertising laws, and cannot bring a claim. *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 808 (2007), *as modified* (Oct. 22, 2007), *and disapproved of on other grounds by Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011). That precedent has been settled since 2007. *Id.*; *see also In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, No. 13-2438, 2017 WL 385042, at *7 (C.D. Cal. Jan. 24, 2017). Defendants cite *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) for the proposition that a "consumer who 'knows' the advertisement is false" does not necessarily lack standing under the CLRA. *See* Dkt. 1135 at 26. They misrepresent *Davidson* which held "that a **previously deceived plaintiff** may have standing to seek injunctive relief" even though that plaintiff now knows the advertising is false. *Davidson*, 889 F.3d 969 (emphasis added). The circumstances here are entirely different, because Pfleg's original purchase was for the very purpose of bringing litigation and he never had a valid claim based on actual deception. *Id.* That latter circumstance has been resolved by binding California precedent against Defendants. *Buckland*, 155 Cal. App. 4th at 808. Thus, Defendants' legal argument is frivolous and must be rejected.

Defendants argue secondarily that genuine disputes arise in the depositions of Wynn Ferrell, Baslow, and Pfleg. *See* Dkt. 1135 at 26-28. They claim that testimony reveals Pfleg actually purchased the Nature's Way products at some earlier time than March 14, 2012 and his NTG directed purchase of March 14, 2012 was merely "confirmatory." *See id.* at 28. The cited testimony does not support the proposition.

In fact, Pfleg's discovery responses attest, under oath, that he only purchased the Nature's Way Products on March 14, 2012. Dkt. 1115-18 (Exh. 113) at 20-21; *see also* Exh. 340 at 14 (producing only his March 14 receipt).

Pfleg testified he could not remember anything about his purchase or communications with Baslow. *See* App'x B at 72-74. Baslow likewise testified to a complete lack of memory concerning his interactions with Pfleg. *See* App'x B at 9-10, 17-18. None of Wynn Ferrell's testimony has anything to do with the Pfleg matter. *See generally* Exh. 332 (W. Ferrell Tr.). Pfleg never testified to purchasing the products on more than one occasion; he actually attested under oath in sworn interrogatory responses to only one purchase on March 14, 2012.[2] *See* App'x B at 73; *but see* Dkt. 1115-18 (Exh. 113) at 20-21 (identifying only one purchase by reference to the receipt produced). Defendants offered no admissible testimony regarding the specific events in question and the only sworn statement made on personal knowledge Defendants have given contradicts Defendants' *post hoc* argument. In an effort to trick the Court into believing a dispute exists, Defendants misrepresent Pfleg and Baslow's testimony in their citations to their CSUF 508 and 509. *See* Dkt. 1135 at 28. There, Baslow did not testify that Pfleg told him "he had purchased Boericke & Tafel products in the past[,] [that] [h]e had tried them, and that they didn't work." *See* Dkt. 1135 at 28. Instead, Baslow testified he had no memory of his interactions or communications with Pfleg. *See* App'x B at 9-10, 17-18. His testimony regarding what Pfleg told him was not based on personal knowledge and was admitted speculation:

**Q:** When did this conversation happen?

**A:** I'm not sitting here saying that I remember that conversation. I'm sitting here stating that at some point, Mr. Pfleg will have

---

[2] NIC's Interrogatory asked Pfleg to identify every purchase he made of a Nature's Way Product. Dkt. 1115-18 (Exh. 113) at 20-21. In response, Pfleg stated: "Defendant will produce a copy of a receipt evidencing his purchase of Nature's Way Products, LLC products." He then produced only the March 14, 2012 receipt. *See* Exh. 340 at 14; *see also* Dkt. 1109-6 (Receipt produced).

1
2
3

> had to have told me and made a representation that he tried these products in the past because I don't just send clients to the store to pick up products to say that they can be part of a lawsuit.

4

**Q:** You don't remember that conversation at all?

5

**A:** I don't remember those conversations.

6
7
8
9
10
11
12
13

Exh. 323 (Baslow II) at Tr. 339:5-23.  Baslow's testimony cited by Defendants is not based on personal knowledge.  Baslow testified to having **<u>no recollection</u>** of the conversations and instead speculated as to what he thinks that he ***<u>would have done</u>*** under comparable circumstances.  *Id*.  Similarly, the Defendants state Pfleg testified that nobody told him to "buy those products before [he] went into the store."  *See* Dkt. 1135 at 28 (citing CSUF 509).  That is false.  Pfleg testified he had no memory of his purchase or conversations with Baslow and did not recall if anyone told him to buy the products before he went into the store.  Exh. 333 at Tr. 44:8-13.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Failure to remember or to be aware of factual information, like having a 'belief' in factual information, is insufficient to show a material factual dispute because [the witness] cannot show personal knowledge."  *See Bodney v. Pima Cty. Sheriff's Dep't*, No. CV 06-0015, 2009 WL 2513786, at *10 (D. Ariz. Aug. 7, 2009) (citing *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors*, *Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991); *Taylor v. List*, 880 F.2d 1040, 1045 n.3 (9th Cir. 1989)).  Courts reject the tactic used now by Defendants.  *Voskanyan v. Mcdonnell*, 2021 WL 1235032, at *7 (C.D. Cal. Feb. 10, 2021), *report and recomm. adopted*, 2021 WL 1235030 (C.D. Cal. Mar. 10, 2021); *Aguilar v. Kuloloia*, No. 2:06-CV-01002, 2007 WL 2891503, at *9 (D. Nev. Sept. 28, 2007); *Phillips v. Mason*, No. CV121131, 2014 WL 12769270, at *13 (D. Ariz. Sept. 25, 2014).  In *Aguilar v. Kuloloia*, the defendant testified that he "cannot recall this particular incident" but went on to "speculate."  *Aguilar*, 2007 WL 2891503, at *9.  The Court held the testimony insufficient to raise a genuine dispute.  *Id*.  In *Voskanyan*, the defendants testified to no specific memory, but attempted to create disputes of fact through testimony about

"what he or she *would generally* do under the circumstances." 2021 WL 1235032, at *7 (emphasis original). The Court rejected that "evidence" as lacking personal knowledge.

The Defendants concoct hypothetical "disputes" *post hoc* in each instance where NIC has presented contemporaneous, admissible evidence from Defendants' own files. No genuine issue of material fact exists under these circumstances. Critically, Defendants concede if the Court finds that Baslow, Wynn Ferrell, and Pfleg's testimony create no genuine disputes, it must then find "*Pfleg v. Nature's Way* Action . . . 'objectively' baseless as a matter of law." *See* Dkt. 1135 at 28. Indeed. Defendants erroneously argue the question of credibility rather than *admissibility*. The precedent bars reliance on speculative testimony not based on personal knowledge. As a result, the Court must find *Pfleg v. Nature's Way* objectively baseless. The admissible evidence proves Pfleg purchased the product at NTG's direction to bring suit, that Pfleg and NTG knowingly misrepresented material facts to the Court and Nature's Way, and that under binding precedent the case had no merit.

### d. The *Himalaya* and *Carter-Reed* cases were objectively baseless

NIC presented undisputed contemporaneous documentary evidence from Defendants' own files showing *Demulder v. Carter-Reed* and *Schoonover v. Himalaya Drug* were manufactured at Defendant's direction and with Defendant Scott Ferrell's and Baslow's knowledge. SOF ¶¶ 66-102, 127-56. NIC has also established Schoonover and Demulder made their phone calls for the purpose of being recorded to bring litigation. *Id*. NIC has shown that, at the time Baslow directed Demulder and Schoonover to call, Baslow and Ferrell were on notice that the target companies recorded all incoming calls. *Id*. NIC has also established that Defendants misrepresented the contrived nature of the lawsuits to litigation adversaries and Courts. *Id*. Defendants do not raise genuine dispute of material fact on these points. *See* NIC's Resp. and Obj. to Defendants' Statement of Genuine

Disputes ("ROSGD") at ¶¶ 66-102, 127-56.

Defendants principally argue the CIPA does not bar a claim if the plaintiff called with knowledge that the call was recorded and to bring suit.  Dkt. 1135 at 21-25. The material and dispositive CIPA elements are: (1) that the caller was recorded without his or her consent; and (2) that the communication was confidential. "Section 632 of CIPA establishes liability against a 'person who, **intentionally and without the consent** of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or **record the confidential communication**."[3]  *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *6 (C.D. Cal. Oct. 13, 2016) (citing Cal. Penal Code §632(a)) (emphasis original). "Consent may be express or . . . implied in fact from the 'surrounding circumstances indicating that [the party to the call] knowingly agreed to the surveillance.'"  *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) (citing *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996)).  "In the typical implied in fact consent scenario, a party is informed that his call will be recorded, and he continues to use the communication system after receiving notice . . ."  *Id*. (citing *Negro v. Superior Court*, 230 Cal. App. 4th 879, 892 (2014)).  A confidential communication is where the plaintiff "had an objectively reasonable expectation [the communication] was not being recorded."  *Carrese*, 2016 WL 6069198, at *6 (quoting *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013)); *see also Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002) (caller must have "an objectively reasonable expectation that the conversation is not being overheard or recorded.").

Here, NIC has demonstrated (and Defendants do not reasonably dispute) that NTG "audited" Carter-Reed's and Himalaya's lines before directing Demulder and

---

[3] A claim under Cal. Penal Code Section 632.7 has three elements: (1) the communication was recorded; (2) that one of the parties to the recorded call was using a cell phone; and (3) that the plaintiff did not consent to the recording. *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016).

Schoonover to stage calls for litigation.  SOF ¶¶ 54, 66, 128.  In those audit calls, the targets expressly informed NTG they recorded incoming calls.  *Id*. at ¶¶ 71-72. Baslow directed them to make calls to pursue "wiretapping cases."  *Id*. at ¶¶ 76-87, 135-47.  Each completed their calls and then immediately notified NTG they had done so, providing details needed for suit (including whether they were told they would be recorded) in pre-requested "confirmation statements."  *Id*.  Those facts demonstrate implied consent as a matter of law and show neither Schoonover nor Demulder had any reasonable expectation of privacy when they made their calls. They knew they would be recorded and they called anyway, a classic example of implied consent.  *Nei Contracting*, 2016 WL 4886933, at *3.  They called for the purpose of pursuing litigation based on those same phone calls.

Defendants insist the wiretapping claims had merit. The law plainly bars a claim when the caller had advance knowledge the call would be recorded because such knowledge creates (at a minimum) implied consent and destroys a reasonable expectation of privacy.  *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002).  The cases cited by Defendants are inapposite.  *Knight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1399 (2011)) refers to the holding in *Kearney* wherein the Court ruled that the callers in question reasonably may not have known they were being recorded and thus summary judgment was inappropriate. *Id*.  The Court held the initial disclosure made to the borrowers by the lender only stated that the first call would be recorded and was silent regarding subsequent calls (for which they received no warnings) and, thus, a dispute existed as to knowledge of subsequent call recording. *CashCall*, 200 Cal. App. 4th at 1399.  By contrast, here Baslow specifically asked the companies in advance of Schoonover and Demulder's calls whether they recorded all calls (not just the one he made) and received an affirmative response.  SOF ¶¶ 71-72. Moreover, Schoonover and Demulder were calling for the very purpose of being recorded to stage suits, meaning they had no reasonable expectation of privacy and certainly impliedly consented to the recordings. SOF ¶¶ 76-87, 135-47.  None of the

cases cited by Defendants involved individuals who made calls with knowledge that they would be recorded and with the *goal* of being recorded to bring litigation.

Defendants also fail to address NIC's argument that Demulder and Schoonover are imputed as a matter of law with NTG's knowledge that the target companies record all incoming calls. *See* Dkt. 1135 at 21-25. NIC presented binding precedent holding that knowledge by one's attorney is imputed to the client as a matter of law. Dkt. 1107 at 25-26. Defendants have not disputed Baslow and Scott Ferrell were informed by the target companies that they recorded all incoming calls before NTG directed Schoonover and Demulder to make the staged calls. *See* Dkt. 1135 at 21-25. Consequently, Defendants have conceded Schoonover and Demulder are imputed with the knowledge of NTG. *See S. Nev. Shell Dealers Ass'n v. Shell Oil Co.*, 725 F.Supp. 1104, 1109 (D. Nev. 1989). That knowledge renders the CIPA claims objectively baseless.

Defendants' argument that Scott Ferrell "informed counsel for both Carter-Reed and Himalaya Drugs(sic) that the plaintiffs were 'test' plaintiffs" [Dkt. 1135 at 16-1] is unsupported and contradicted. Ferrell testified under oath that he thought he suggested to Angel Garganta (counsel for Himalaya) that NTG used "public interest" plaintiffs in CIPA cases, but Ferrell could not recall when that conversation occurred, where it occurred, who was present, or whether he ever mentioned Schoonover or Schoonover's case against Himalaya. Exh. 321 at Tr. 46:8—48:7. There is no documentary evidence suggesting that NTG ever informed Himalaya or its counsel that Schoonover was a tester and, in their opposition, Defendants do not cite any. In fact, the contemporaneous documents from Defendants' own files establish the opposite: that NTG falsely claimed their investigator called the day after Schoonover's call (as opposed to the day before), thereby confirming intentional concealment of the contrived nature of the claim. SOF ¶¶ 111-13. Similarly, Ferrell's actual testimony regarding the Carter-Reed suit was that he did not "recall specifically" ever talking to Carter-Reed's counsel about Demulder's

1   status as a tester and Carter-Reed's counsel testified he did not.  Exh. 321 at Tr. 48:8-
2   22; Exh. 341 at 41:23—42:10.  Ferrell's testimony cannot create a genuine dispute
3   of material fact because his actual testimony is that he does not remember.  *See*
4   *Bodney*, 2009 WL 2513786, at *10.

5       **e.  The Strataluz suits were objectively baseless**

6       NIC presented undisputed evidence that Defendants created Strataluz to
7   pursue sham litigation; they structured the company to conceal their ownership
8   interests and threatened suits based on false claims about male enhancement
9   products that were never available for sale.  SOF ¶¶ 327-62, 402-40.  Defendants
10  raise no genuine disputes of material fact.  ROSGD ¶¶ 327-62, 402-40.  Instead, they
11  argue the suits were not shams because Strataluz was a real company with standing
12  to sue competitors on a *post hoc* "future injury" theory.  *See* Dkt. 1135 at 28-33.

13      First, NTG's claim that Strataluz was "legitimate" is dubious but irrelevant.
14  Strataluz's advertising for ProMaxal and EverSilk was knowingly unlawful and
15  designed to deceive.  From the outset, Ferrell wanted to use "aggressive" claims
16  because he believed he was effectively immune from suit.  Jarrod Bentley, Strataluz
17  President, told Ferrell on May 8, 2015 that the advertising for EverSilk was
18  "completely bogus" and contained unsubstantiated claims.  SOF ¶ 379.  ProMaxal
19  was "dry tested" without disclosing the unavailability of product (Exh. 338 at Tr.
20  58:25-59:20), which the FTC has determined to be a false and misleading advertising
21  practice in violation of the FTCA[4].  Internal emails among Strataluz's owners show
22  they understood their claims to be false (had even been rejected by TV stations for
23  that very reason).  *See e.g.,* SOF ¶ 379.  At Ferrell's direction, ProMaxal's website
24  falsely claimed the product was out-of-stock due to high demand but also made
25  outright and knowingly false claims that the product was clinically tested.  *See* Dkt.
26  262-3 and 262-4 (ProMaxal Website); Exh. 346.  The conclusory claim that the
27  company was operating "legitimately" is thus false on the undisputed record.

---

[4] https://tinyurl.com/FTC-Mail-Rule (last accessed June 7, 2021).

Even were it "legitimate," that says nothing about whether NTG's use of the company constituted a fraudulent scheme or whether the claims NTG threatened or asserted against target companies were shams.  RICO was designed to punish racketeering activity involving otherwise "legitimate" companies.  *Dakis on Behalf of Dakis Pension Plan v. Chapman*, 574 F. Supp. 757, 759 (N.D. Cal. 1983).  This Court has explained racketeering activity is often disguised under the veil of a "legitimate" façade or may well be intermingled with "legitimate" activities.  Dkt. 820 at 21 ("a business may engage in both legitimate and illegitimate activities at the same time, and its engagement in legitimate activities does not sanitize its illegitimate ones.").  NTG Defendants' ***use*** of Strataluz in litigation was unlawful and constitutes a sham, thus its corporate status is irrelevant.

Second, the Defendants argue that, although ProMaxal was not manufactured, sold, or marketed through a functioning e-commerce engine, the claims made and threatened were not objectively baseless on a *post hoc* "likelihood of injury" theory.  *See* Dkt. 1135 at 31-32.  That argument is legally erroneous.  The plaintiff must be a direct competitor of the defendant for "likelihood of injury" to arise.  *See TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820, 827 (9th Cir. 2011) ("[W]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing.").  Where a plaintiff has not entered the market with no product produced or sold, it does not compete and cannot assert a Lanham Act claim under "competitor" standing.  *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1110-11 (2d Cir. 1997) ("Friedlander and PDK are not competitors for purposes of the Lanham Act standing because Friedlander does not currently sell a retail weight loss product that competes . . .").  The Defendants had no saleable product, no sales, no viable e-commerce engine, and no single unit manufactured.  SOF ¶¶ 434-39; Exh. 346.  They thus lacked standing to assert claims.  *Saniefar v. Moore*, No. 117CV00823, 2017 WL 5972747, at *2 (E.D. Cal. Dec. 1, 2017).  The first sham exception applies to the Strataluz legal

matters and Defendants' arguments regarding *Noerr* should be rejected.

## C.   NIC Has Demonstrated Defendants' Fraudulent Intent and Defendants Fail to Raise a Genuine Dispute

NIC presented undisputed contemporaneous documentary evidence from Defendants' own files that requires a finding of fraudulent intent as a matter of law.  NIC's evidence confirms Scott Ferrell and Baslow had actual knowledge of the true facts and then took steps to conceal them and make knowingly false representations to adversaries and the Courts to extort adversaries.  SOF ¶¶ 97-103, 112, 184, 196-97, 231-43, 250, 433-40.  In opposition, the Defendants present declarations containing conclusory denials.  Dkt. 1140; *see also* Dkt. 1135 at 33-35.  Under binding precedent, conclusory denials do not raise a genuine dispute of material fact and the Court should so find.

### 1.  NIC has established Defendants Scott Ferrell and Baslow's intent to defraud in each of the three schemes

"Summary judgment will not be defeated simply because motive or intent are involved."  *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 148 (7th Cir. 1994). Where the undisputed record supports a finding of actual knowledge of falsity (or where it supports a finding that the defendant misleads by withholding material facts), "a court may infer as a matter of law that he did so with intent to defraud." *A.B.C. Chevrolet Co. v. Kirk*, No. 85 C 10001, 1986 WL 10045, at *1–2 (N.D. Ill. Sept. 8, 1986) (citing *Suits v. Little Motor Co.*, 642 F.2d 883, 886 (5th Cir. 1981); *see also State Auto Prop. & Cas. Ins. Co. v. Sigismondi Foreign Car Specialists, Inc.*, No. CV 19-5578, 2021 WL 1343116, at *7 (E.D. Pa. Apr. 12, 2021).  The Ninth Circuit has explained that a defendant may not use the issue of scienter as a "magic wand" to defeat summary judgment.  *Mut. Fund Invs., Inc. v. Putnam Mgmt. Co.*, 553 F.2d 620, 624 (9th Cir. 1977).  "A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud." *United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles,*

*Cal.*, 252 F. Supp. 2d 1060, 1064 (E.D. Cal. 2003), *aff'd*, 385 F.3d 1187 (9th Cir. 2004) (quoting *In re Matter of Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000)).

The record confirms that Scott Ferrell[5] made knowingly false representations to opposing parties and Courts in the false advertising scheme, the wiretapping scheme, and the Lanham Act scheme.  SOF ¶¶ 97-103, 112, 184, 196-97, 231-43, 250, 433-40. The contemporaneous record confirms Ferrell concealed information from his adversaries and omitted information that he knew was material, including the contrived nature of the wiretapping and false advertising suits. *Id*. The making of knowingly false representations, and the concealment of material information, is defined as intent to defraud. *A.B.C. Chevrolet Co.*, 1986 WL 10045, at *1–2.

The record also confirms Ferrell perpetrated the three schemes with intent to extort money from each target.  Numerous documents involve Ferrell and Reid discussing their goal of extorting targets. SOF ¶45 (collecting exhibits).  Ferrell and Reid discussed "shak[ing] that money loose" and obtaining "six figures" from each target in the Strataluz scheme.  SOF ¶¶404, 461. Ferrell and Reid discussed the monetary value they could extort from Himalaya Drug Co.  SOF ¶¶109, 113. NTG obtained substantial funds from Nature's Way, kept over 95% of it without requiring any injunctive relief or changes to defendant's practices.  SOF ¶256.  The record thus all points in one direction, that Defendants' purpose in pursuing the three fraudulent schemes was to extort money from adversaries.

Because NIC has presented evidence demonstrating intent to defraud as a matter of law, the Defendants can only prevent summary judgment if they create genuine disputes regarding their intent through the submission of competent and admissible counter-evidence.  As explained *infra*, they have failed to do so.

### 2.  Defendants' mere denials of fraudulent intent are insufficient to raise a genuine dispute

---

[5] As the owner of Newport Trial Group, Scott Ferrell's intent and conduct is imputed to the company as a matter of law. *Brady v. Dairy Fresh Prod. Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992).

In response to the documentary record from their own files, Defendants offer *post hoc* denials contradicted by that record. Scott Ferrell's declaration contains conclusory denials of intent to defraud. *See* Dkt. 1140 at ¶ 5. No evidence is attached to the declaration. *Id.* Defendants then argue "a defendant's simple denial of intent to defraud will bar a plaintiff's motion for summary judgment on a fraud claim." Dkt. 1135 at 35. Defendants err. Under the precedent, Ferrell's conclusory, self-serving affidavit void of any evidentiary support and containing only general denials is insufficient to create a dispute of material fact at summary judgment.

"Self-serving declaration[s]" containing "general and conclusory" content that do not identify specific facts cannot create a genuine dispute on summary judgment. *See* Dkt. 784 at 16 (citing *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997)). Ferrell simply "dispute[s]" the general allegation that he had an intent to deceive, and then generally claims to have believed his suits had merit. Dkt. 1140 at ¶ 5. Similarly, Ferrell offers general denials regarding whether he ever sent a demand letter or filed a complaint that he believed not meritorious. *Id.* at ¶ 10. Ferrell provides no testimony disputing the circumstantial and direct evidence of fraudulent intent through specific rebuttals regarding the events in question. Ferrell does not provide any testimony that disputes or addresses the specific evidence cited by NIC from NTG's own files. The Court must reject Scott Ferrell's conclusory denials:

> To allow a defendant accused of wrongdoing to defeat summary judgment by simply denying any intent to do wrong would render summary judgment motions futile. Intent to defraud, harm, or delay creditors may be demonstrated and typically is demonstrated by circumstantial evidence. The defendant must create a genuine issue of fact regarding the circumstantial evidence, not simply deny any intent.

*In re LLS Am., LLC*, No. 09-06194, 2013 WL 3305393, at *4 (Bankr. E.D. Wash. July 1, 2013), *report and recomm. adopted as modified*, No. ADV 11-80299, 2013 WL 4480667 (E.D. Wash. Aug. 19, 2013); *Jones v. City of Chicago*, 787 F.2d 200,

206 (7th Cir.1986)); *Paragon Podiatry Lab'y, Inc. v. KLM Lab'ys, Inc.*, 984 F.2d 1182, 1191 (Fed. Cir. 1993).  Thus, an affiant may not make general and conclusory denials but must instead "state facts supporting a plausible justification or excuse for the misrepresentation."  *Id.*  At no point in Ferrell's declaration does he explain or justify the specific misrepresentations at issue.

Defendants cite to the unpublished decision *In re Plise*, 719 F. App'x 622, 624 (9th Cir. 2018).  *Id.*  The *Plise* Court concluded that "[v]iewing Plise's declaration in the light most favorable to him, a reasonable finder of fact could find that his version of events does not support a finding of fraudulent intent."  *Id*. at 625.  Plise's declaration described in detail his version of events and explained why he believed what he had done was not fraudulent.  *See* Exh. 347 (Decl. of Plise). The declaration contained specific explanations, not general denials.  *Id*. That is why the Ninth Circuit determined that a jury could reasonably believe his version of events.  Ferrell's declaration, by contrast, is one of general denials that conflict with the contemporaneous documentary record and fails to dispute the evidence from NTG's own files of fraudulent intent.

### 3.  NTG's reliance on irrelevant and inadmissible testimony does not raise a genuine dispute

As explained *supra*, Ferrell actually testified he did not remember if he told Himalaya's and Carter-Reed's counsel that he was using "testers" in the CIPA cases against their clients.  *See* Section III(B)(3)(d). The documentary record contains no instance where Scott Ferrell or NTG informed opposing counsel that the *Himalaya* or *Carter-Reed* cases were staged.  *See* Exh. 341 at 41:23—42:10; SOF ¶¶104, 116 (and ROSGD at ¶116).   In fact, Scott Ferrell directed Reid to misrepresent the timeline of NTG's investigation into Himalaya so that Himalaya would not know that NTG had actually investigated the claim *before* Schoonover called.  ROSGD at ¶112.  Similarly, Scott Ferrell argued in the *Nutrisystem* matter that attorney-driven CIPA cases constituted "foul play."  *See* SOF at ¶176 (citing RJN 42, Dkt. 1117-42).

Regarding the *Nature's Way* matter, the defendants attempt to create disputes through inadmissible testimony.  Defendants dispute NTG's intent by referencing Baslow's testimony regarding hypothesized general practices, not testimony concerning the specific facts of the Pfleg case.  *See* Dkt. 1135 at 28.  A defendant cannot create a dispute of fact where, as here, he or she professes no memory of the specific event and instead offers speculative testimony about what he or she would have done under comparable circumstances.  *Voskanyan*, 2021 WL 1235032, at *7.

**4.   The Court should strike or disregard Defendants' arguments based on good faith or justification**

In their Statement of Genuine Disputes, the Defendants frequently argue they acted with an intent to benefit the public.  *See, e.g.,* ROSGD at ¶¶38, 41, 55, 56, 57, 100, 101, 127 (responding to Dkt. 1141). In their opposition brief, they never once raise this argument. *See generally*, Dkt. 1135.  The Court should strike it or disregard it because the defendants have withdrawn their good faith and justification affirmative defenses.  *See* Dkt. 575.  The intent to benefit the public claim is irrelevant to the issue of intent to defraud and is a disguised attempt to inject long-abandoned defenses back into this case.  NIC addresses this issue in greater detail in its contemporaneously filed Reply to Baslow's Opposition.

**D.   <u>There Is No Dispute Regarding the "Enterprise" Element</u>**

Defendants incorrectly argue whether NIC established the existence of an enterprise rests on whether NIC can establish racketeering activity through predicate acts.  But the enterprise is distinct from the racketeering activity as a matter of law, and the enterprise is also distinct from the unlawful activity.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007).  The question of enterprise is one of structure.  The structure here is not disputed by Defendants.  The Court can thus enter an order finding that NIC has demonstrated the existence of an enterprise.

**E.   <u>There Is No Dispute Regarding the "Relatedness" and "Continuity" Elements</u>**

The undisputed record confirms all predicate acts at issue are related.  This

Court has repeatedly held that, if NIC's allegations are true, the Strataluz predicate acts are related to the wiretapping and false advertising predicate acts. Dkt. 910 at 10-11; Dkt. 987 at 6-12. The Defendants offer arguments against relatedness previously rejected by the Court. Because the undisputed facts show predicate acts in all three schemes involved the same or similar participants (NTG, its attorneys and clients), the same or similar methods (the filing of fraudulent suits containing misrepresentations and material omissions), the same or similar victims (manufacturers of health products), and the same or similar results (extortion of targets by NTG and its clients), the Court should find relatedness as a matter of law.

The Defendants also argue NIC fails to establish closed-ended continuity if the Court does not grant summary judgment on Strataluz-related predicate acts because the other predicates span 10 months. *See* Dkt. 1135 at 37. Defendants thus concede that if the Court finds Strataluz predicate acts undisputed, closed-ended continuity is established. However, even without them, 10 months is sufficient to establish closed-ended continuity, and undisputed facts also demonstrate open-ended continuity because the pursuit of manufactured litigation had become a part of NTG's regular business operation.[6] *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995) (rejecting "one-year rule"); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989) (continuity exists where conduct is "regular way of doing business").

Thus, NIC has shown a pattern of racketeering activity through related and continuous predicate acts.

## IV.   CONCLUSION

For the foregoing reasons and those addressed in NIC's Motion, the Court should grant NIC's Motion for Partial Summary Adjudication.

/ / /

---

[6] NIC addresses open-ended continuity in detail in NIC's Reply to Baslow's Opposition. NIC directs the Court to that discussion and hereby incorporates that argument by reference.

1     / / /

2     / / /

3     DATED:  June 7, 2021

4

5                                              Respectfully submitted,

6                                              EMORD & ASSOCIATES, PC.

7

8                                              By:     /s/ Peter A. Arhangelsky

9                                              Peter A. Arhangelsky, Esq. (SBN 291325)
                                               Joshua S. Furman, Esq. (pro hac vice)
10                                             *Attorneys for Plaintiff Natural*
                                               *Immunogenics Corp.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2021 the foregoing, **PLAINTIFF NIC'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY ADJUDICATON ON COUNT II (RICO)** was electronically filed via the CM/ECF system and sent by that system to the following:

Brendan M. Ford [*bford@forddiulio.com*]
Kristopher P. Diulio [*kdiulio@forddiulio.com*]
Ford & Diulio PC
650 Town Center Drive, Suite 760
Costa Mesa, California 92626
Tel: (714) 450-6830
*Attorney Defendants Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover, Matthew Dronkers, Taylor Demulder, Sam Pfleg*


David J. Darnell, Esq. [*ddarnell@callahan-law.com*]
Edward Susolik, Esq. [*es@callahan-law.com*]
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
*Attorneys for Newport Trial Group and Scott Ferrell*


Nicole Whyte [*nwhyte@bremerwhyte.com*]
Benjamin Price [*bprice@bremerwhyte.com*]
Kyle A. Riddles [*kriddles@bremerwhyte.com*]
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000
*Attorneys for Defendants Ryan Ferrell, Andrew Baslow, David Reid, and*
*Victoria Knowles*

Robert Tauler, Esq.
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Blvd., Suite 510
Los Angeles, CA 90017
Tel: (310) 590-3927
*Attorney for David Reid and Victoria Knowles*


 */s/ Peter A. Arhangelsky*
Peter A. Arhangelsky, Esq.