Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>　　　　　　Defendants. | Case No. 8:15-cv-02034-JVS (JCG)<br>JW Reference No.: A270221<br><br>**REPLY IN SUPPORT OF PLAINTIFF NIC'S OBJECTION TO SPECIAL MASTER'S ORDER AT DOCKET NO. 1146**<br><br>Hearing Date:　August 16, 2021<br>Time:　　　　　1:30 p.m.<br>Courtroom:　　10C<br>Judge:　　　　Hon. James V. Selna |

# **TABLE OF CONTENTS**

I.   ARGUMENT ......................................................................................................2

   A. NIC's Requested Relief Is Proportional .......................................................2

   B. NIC's Motion Was Timely ............................................................................6

   C. NTG Waived Privileges Through Testimony of Its Agents
      on Privileged Subject Matters While Failing to Object ...............................7

      1. NTG Does Not Dispute That Dan Bobba Waived
         his Privileges by Testifying Without Objection..............................8

      2. The Witnesses Testified Fully on Privileged
         Matters to the Best of their Recollection and NTG
         Counsel Never Asserted Privilege .................................................9

         a.  The NTG Witnesses Did Not "Merely Deny"
            Allegations ..........................................................................13

         b.  Whether NTG's Witnesses Were Still Employed
            by NTG During Their Depositions Is Irrelevant......................14

      3. The Court Must Either Compel Documents or
         Exclude Portions of the NTG Witnesses' Testimony
         That Relates to Privileged Subject Matters if NTG
         Insists on Maintaining Privilege ....................................................15

II.  CONCLUSION ................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234 (N.D. Cal. 2015) ....................12

*Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003)......................................6, 12, 16

*Cason-Merenda v. VHS of Michigan, Inc.*, No. 06-15601, 2013 WL
   5449159 (E.D. Mich. Sept. 30, 2013) ....................................................................10

*Diemer v. Fraternal Ord. of Police, Chicago Lodge 7*, 242 F.R.D.
   452 (N.D. Ill. 2007) ...............................................................................................10

*Fox v. Cal. Sierra Financial Servs.*, 120 F.R.D. 520 (N.D. Cal.
   1988) ........................................................................................................................13

*IMC Chemicals, Inc. v. Niro Inc.*, No. CIV.A.98-2348-JTM, 2000
   WL 1466495 (D. Kan. July 19, 2000)...................................................................10

*In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996).....................12

*Ironburg Inventions Ltd. v. Valve Corp.*, No. C17-1182-TSZ, 2018
   WL 4281531 (W.D. Wash. Sept. 7, 2018) ...........................................................11

*Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No.
   06CV2804 BTM (WM), 2010 WL 275083 (S.D. Cal. Jan. 13,
   2010)........................................................................................................................10

*Medicines Co. v. Mylan Inc.*, 936 F. Supp. 2d 894 (N.D. Ill. 2013).......................11

*Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) ...........................................10

*Orthopaedic Hosp. v. DJO Glob., Inc.*, No. 319CV00970JLSAHG,
   2020 WL 5363307 (S.D. Cal. Sept. 8, 2020) .......................................................10

*Shaffer v. Pennsbury Sch. Dist.*, No. CV 20-3415, 2021 WL 966208
   (E.D. Pa. Mar. 15, 2021) .......................................................................................10

*Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650
   (N.D. Cal. 1994) ....................................................................................................12

*Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18 (9th Cir.
   1981).....................................................................................................................7, 13

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................2, 5

Fed. R. Civ. P. 26(b)(3)(A) ...........................................................................8

Fed. R. Evid. 502(a)(2) ................................................................................15

Plaintiff Natural-Immunogenics Corp. ("NIC") files this reply in support of its Objections to the Special Master's Order Regarding NIC's Motion to Compel Documents Concerning Dan Bobba.  *See* Dkt. 1146.  The Court should grant NIC's motion and compel production of the documents requested.  In the alternative, the Court should exclude testimony of NTG witnesses that relates to the allegedly "privileged" subject matters here in controversy.

As described below, NIC's motion was proportional and supported by the need to remedy the unfairness and prejudice caused by NTG's eleventh-hour privilege waiver at depositions.  NTG continues to assert privilege over 99.2% of its documents germane to the *Bobba* action.  The documents at issue are critical to a resolution of this case, and granting NIC's requested relief imposes no significant burdens.

NIC's motion was timely because the waiver first arose in late 2020, and NIC was reasonable in pursuing this motion following Ryan Ferrell's deposition. The record establishes that NIC began conferring on this motion within a few weeks after receiving the transcript from Ryan Ferrell's deposition.

Finally, NTG has not met its burden to show that it did not waive the privilege.  NTG's agents testified fully regarding NTG's privileged relationship with its former client, Dan Bobba.  The testimony went well beyond "mere denials" of NIC's allegations, and instead involved the defendants' disclosure of a counter-narrative in direct response to adverse testimony by Dan Bobba, NTG's former client.  NTG counsel made no attempt to assert privilege, and raised no privilege objections in any of the depositions at issue.  The law requires that NIC be afforded additional discovery or, if not, that the Court exclude testimony associated with privileged subject matters.

# I.   **ARGUMENT**

## A. **NIC's Requested Relief Is Proportional**

The Rule 26(b)(1) factors favor resolution of this dispute on the merits.  The relative access to relevant information is greatly to NIC's detriment because it consists of content in Defendants own communications over which the Defendants asserted a blanket claim of privilege.  NTG argues that "NIC has already received extensive discovery on Bobba…,"  Dkt. 1168 at 9:22-23, declaring NIC's request an improper, eleventh hour demand not "proportional" to resolution of this lawsuit.  NTG mischaracterizes the record.  NTG submitted a privilege log listing 1,232 documents related to the "*Bobba*" lawsuit, *Morales v. Magna-RX*, No. 3:10-cv-01601-EDL (N.D. Cal.).  Following the Court's prior orders compelling production, NTG produced to NIC **just 10 out of the 1,232 documents**.  *See* Dkt. 659 at 30.  In other words, of the allegedly "privileged" documents germane to the *Bobba* lawsuit, NIC has received **0.8%** of the total universe, while NTG continues to claim privilege over more than **ninety-nine percent (99.2%)**.  NTG has continued to conceal that information notwithstanding the fact that its own former client, Bobba, testified that the case NTG brought on his behalf was a sham.  NIC has simply not received "extensive discovery" related to the *Magna-RX* lawsuit.  Rather, NIC has been deprived of the vast majority of NTG documentation relevant to factual disputes now extant between NTG and its former client, Bobba, including documents that bear on NTG's client recruitment practices in the *Bobba* matter, Bobba's interaction with the NTG firm, and the preparation of the declaration that NTG drafted for Bobba in September 2010.

That concealed information allowed NTG witnesses to testify liberally knowing that NIC could not test the veracity of their statements or impeach through underlying documents.  In one example, Ryan Ferrell testified that his brother, Scott Ferrell, never edited the declaration that NTG had Bobba sign on September 5, 2010.  *See* Dkt. 1102-5 (R. Ferrell Tr.) at 221:11-14, 227-230,

231:14-20, 232:14- 23 (Ryan drafted it; Scott did not edit it; Bobba provided feedback).  Whether Scott Ferrell manipulated Bobba's testimony is important because it reflects on Ferrell's participation in a RICO predicate act (i.e., obstruction of justice), and also bears on the credibility of Ryan Ferrell's narrative concerning Bobba's declaration and whether the declaration was false and "fabricated."  Dkt. 1102-3 at 64-65.  NTG's privilege logs show that Scott Ferrell returned a different version of the Bobba declaration in Word format to his brother, Ryan Ferrell, hours before Ryan had Bobba sign that document.  Dkt. 1102-20 at 50 (NTG011601).  The edits made in that document are significant to the jury. This is likely *direct* evidence on RICO predicate acts described in NIC's operative complaint [Dkt. 1007].  Yet, like many other relevant documents here at issue, NIC has been barred from that information.  Under applicable law (discussed in more detail below), NTG and its witnesses may not use the disparity in information against NIC for tactical advantage at trial.  NTG witnesses may not testify on privileged subject matters without affording NIC the opportunity to investigate the underlying facts.

      In that context, the Court should evaluate the testimony given by NTG witnesses and NTG's former client, Mr. Bobba, at depositions in late 2020.  The Court should juxtapose the narrow scope of privilege productions in this case with the broad scope of testimony given at each deposition.  Testimony was complete and extensive when considering that NTG continues to assert privilege over 99.2% of its case file.

      Second, the requested discovery is critical to resolving the issues in controversy.  The record shows that NTG improperly uses privilege as both a sword and a shield for tactical advantage.  For the first time, Mr. Bobba disclosed at deposition new facts that were unknown to NIC, including that NTG's agent had paid him $60 in cash to purchase product from a local retailer for the purpose of

staging his lawsuit.  Dkt. 1102-3 at 34-35.[1]  Throughout this lawsuit, NTG strictly claimed privilege over its entire client file in the *Magna-RX* lawsuit.  *See* Dkt. 1102-20 (NTG privilege logs associated with *Magna-RX* lawsuit).  NTG also consistently denied that its agents instructed clients to purchase products in CLRA cases.  *Compare* NIC's SAC, Dkt. 92 at ¶191 (alleging that, "to the extent Pfleg purchased the product at all, he did so *after* meeting with NTG's agent, and pursuant to the NTG agent's instructions"), *with* NTG Answer, Dkt. 174 at ¶191 (denying "each and every other allegation contained herein"); *but see* NTG Resp. to MSJ, Dkt. 1141 at 80 ¶191 (NTG claiming now that Pfleg's purchase "must have been a confirmatory purchase"); Dkt. 1141 at 106 ¶241 (NTG stating that "Pfleg's receipt was a confirmatory purchase").

Only after Bobba's revelatory testimony, did NTG agents perform a *volte face* and testified to a new counter-narrative.  NTG's agents testified in late 2020 that, although they now admit sending clients to stores for the purpose of purchasing products, those were "confirmatory" purchases so NTG could allegedly verify that its clients had purchased the same product earlier.  *See* Dkt. 1154-2 at 19-20; Dkt. 1102-3 at 116, 120-122, 126.  NTG's agents testified fully on those issues subject only to the limitations of their memories.  Ryan Ferrell—Mr. Bobba's former counsel—also testified about the process by which NTG prepared Bobba's declaration down to the questions that he asked Bobba when assembling that document.  Ryan Ferrell answered substantive questions about whether his brother, Scott Ferrell, edited the declaration.  Yet, NTG continues to claim

---

[1] NTG argues that Bobba did not connect the driver to NTG, but the testimony makes clear that he did.  *See* Bobba Tr., Dkt. 1109-8 at 119 (pp. 118) ("It was a pretty safe assumption.  Otherwise, why would they just come pick me up and bring me to get a supplement?").  Moreover, the evidentiary record proves that NTG's agent, Wynn Ferrell, was the only individual associated with the lawsuit who met with Bobba in June 2010.  Dkt. 1102-8 at ¶7.  Bobba testified that he only met once with someone associated with litigation in June 2010.  Dkt. 1102-3 at 56-58.  Wynn Ferrell testified that he performed Bobba's "intake" during an in-person meeting with Bobba in June.  Dkt. 1102-8 at ¶7; Dkt. 1102-4 at 27 (pp. 69).

privilege over documents on these same subject matters, including over drafts of Bobba's declaration exchanged within the NTG firm. *See* Dkt. 1102-20. These are live issues for the jury that can only be resolved through examination on a complete record.

The concerns over late testimonial waivers must be addressed before trial and, if left unaddressed, will continue to reappear at trial. Here, the testimony of NTG's former client was in direct conflict with NTG witness testimony on a critical issue in this case: whether NTG staged Bobba's lawsuit and then concealed that fact by having Bobba sign a false declaration. Bobba is NTG's former client, and NTG intends to discredit its own client's testimony at trial by disputing Mr. Bobba's version of events, even going so far as to call into question Mr. Bobba's mental health. *See* Dkt. 1102-3 at 75-79. The documents NIC requests will shed light directly on this dispute, which will need to be submitted to the jury. This is a circumstance where, at a minimum, "the importance of the discovery in resolving the issues" would alone require that the Court address these evidentiary concerns now. *See* Fed. R. Civ. P. 26(b)(1). The remaining Rule 26(b)(1) factors nonetheless favor NIC, and NTG has not sufficiently rebutted that point.

Third, the volume of documents at issue is relatively small and not burdensome. NIC seeks production of approximately 140 documents, many of which are contained in just ten email threads. The Special Master has already performed a number of *in camera* evaluations. The history of this case indicates that the Special Master's review of relevant documents likely requires at most several hours of the Special Master's time. That burden is negligible when construed next to the potential benefit at trial, the factual clarity the evidence will afford the jury, and the jury's need to adjudicate the case on the actual merits. NIC is not requesting discovery beyond the production of these files. No additional discovery events will (or can) occur at this point. There is therefore no risk of additional discovery, and the production of 140 documents can occur within the

existing schedule before the final Pretrial Conference.

NTG's position on "proportionality" lacks relevance under the legal framework concerning privilege waiver.  The law imposes a requirement of fairness and Due Process that prevents NIC from suffering undue prejudice through Defendants' tactical decision to waive privilege at the eleventh hour. Thus, even if this Court determined that production of the 140 documents was disproportionate at this stage, the remedy is not to disregard NIC's motion, *but instead to exclude NTG's witness testimony and require NTG to abandon its positions based on same.  See Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003).  NTG recognizes and concedes that very point [Dkt. 1168 at 21] when it argues that "the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition."  An exclusion remedy imposes no associated discovery burdens. That type of remedy is nonetheless mandated to remedy the effects of NTG's waiver if and only if this Court does not compel production of the documents.  In either scenario, NIC's motion seeks relief that is proportional to the lawsuit and necessary to the just resolution of issues before the jury.

**B. NIC's Motion Was Timely**

NIC's motion raised concerns with NTG's waiver of privilege occurring at depositions in late 2020.  NIC began meeting and conferring on this motion just several weeks after receiving the final transcript from Ryan Ferrell's deposition in November 2020.  *See* Dkt. 1102-21; Dkt. 1154-1 at ¶8.  NTG argues that NIC delayed "over three years" [Dkt. 1168 at 17] simply because NTG first listed relevant documents on a privilege log back in 2017.  But 2017 is not the relevant measuring date.  NIC could not have raised the issue of waiver until the waiver actually occurred, which was in late 2020.  R. Ferrell Tr., Dkt. 1102-5 (Oct. 29,

2015; Dkt. 1154-1 at ¶7.  NTG has not opposed or responded to that position.[2]

Testimony occurring at Ryan Ferrell's deposition on October 29, 2020 was a key part of NIC's request for relief, in part, because that testimony effected a waiver over subject matters related to Bobba's September 2010 declaration.  *See* Dkt. 1102 at 25.  NIC was reasonable in waiting until after Ryan Ferrell's deposition to bring its motion, particularly because both Bobba and Wynn Ferrell's deposition testimony implicated Ryan Ferrell.  *See* Dkt. 1154 at 26-27 (citing relevant testimony).[3]  Presenting this motion prematurely after Bobba's deposition or Wynn Ferrell's deposition would have resulted in an adjudication on an incomplete record, and would have encouraged the type of piecemeal proceedings that NTG ironically now argues is a basis to deny NIC its requested relief.

## C. NTG Waived Privileges Through Testimony of Its Agents on Privileged Subject Matters While Failing to Object

The burden remains on NTG to prove that privileges are not waived.  *See, e.g., Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).  "As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it."  *Id.* (collecting cases).  Thus, the "bare assertion" that a party did not waive privilege "is insufficient to make out the necessary element of nonwaiver."  *Id.*  NTG has not met its burden to prove nonwaiver.  NTG has either abandoned or waived privileges in the subject matter and, so, the Court should sustain NIC's objections and grant the requested relief.

Importantly, NTG does not oppose and thus concedes that Bobba waived his

---

[2] NTG instead argues that these issues "have been raised in prior briefing."  *See* Dkt. 1168 at 18:14. NTG provides no citation to the record for that flawed position because, in fact, these questions of waiver could not have been raised in prior briefing given that they first arose in late 2020.

[3] Ryan Ferrell was the lead NTG attorney who visited with Bobba in September 2010 to have Bobba sign the declaration purporting to absolve NTG of any wrongdoing in the case.

attorney-client privilege by testifying fully regarding the attorney-client relationship and communications had with NTG agents.  NTG counsel later permitted NTG's witnesses to testify (to the limits of their memory) regarding privileged areas and, through that testimony, those witnesses laid a counter-narrative in response to Bobba's testimony.  NTG's agents injected new factual allegations into this case, the veracity of which can be examined only through review of underlying documentation withheld by NTG on privilege grounds.

### 1. NTG Does Not Dispute That Dan Bobba Waived his Privileges by Testifying Without Objection

In briefing before the Special Master, NIC established that Dan Bobba waived his privileges by testifying regarding communications had with his NTG counsel (or NTG agents) in the *Bobba* lawsuit.  *See* Dkt. 1102 at 24-26.  NIC raised similar points in its opening objections.  *See* Dkt. 1154 at 21-22.  NTG did not respond to that position or provide rebuttal in Dkt. 1168.  *See generally* Dkt. 1168.  NTG has not opposed and therefore has conceded the position that Bobba waived his privileges by testifying in depth about his relationship with NTG in the underlying *Bobba* lawsuit.

Because Dan Bobba has waived privilege (a point NTG fails to contest), the only remaining privilege asserted is work product, which is a qualified privilege.  The Court should compel NTG's work product here because the witnesses waived privileges, but also because NIC has a "substantial need for the materials to prepare its case" and, given the nature of this information, NIC cannot obtain the substantial equivalent of this content by any other means.  *See* Fed. R. Civ. P. 26(b)(3)(A).  The deposition testimony of Bobba, W. Ferrell, and R. Ferrell created a heretofore undisclosed conflict between NTG and its former client on issues that are directly in controversy in this RICO suit and directly relevant to alleged predicate RICO acts.  *See* Dkt. 1154 at 26-27 (collecting citations).  Bobba testified that NTG representatives paid him $60 in cash to purchase product for litigation,

and then later had him sign a false and fabricated declaration to exonerate NTG after Magna-RX's counsel discovered NTG's unlawful practices.  *See* Dkt. 1102-3 at 34-35.  NTG's agents provided a counter-narrative, including Wynn Ferrell's claim that Bobba lied during his testimony, and that NTG had a practice of sending clients to purchase product as "confirmatory purchases."  *See* Dkt. 1154-4 at 122:13-23, 124:13-20; Dkt. 1102-4 at 68:9-15, 73:5-15, 73:24-75:2, 150:13-151:6, 107:6-109:22, 110:2-16.  The only contemporaneous documentary record on these issues is the so-called "work product" files possessed by NTG, which include NTG's internal correspondence about Bobba's suit and NTG's recruitment of Bobba as a plaintiff in the *Bobba* lawsuit.

If this Court denies NIC's motion here, the Court would be permitting NTG to label its former client a liar in front of the jury while it concurrently withholds documents that could prove Bobba's testimony truthful.  The qualified work product privilege must yield under these circumstances to prevent manifest injustice, eliminate jury confusion, and permit the truth to come to the fore.

### 2.  The Witnesses Testified Fully on Privileged Matters to the Best of their Recollection and NTG Counsel Never Asserted Privilege

NIC documented the broad scope of testimony on the allegedly "privileged" relationship between NTG and Dan Bobba.  *See* Dkt. 1154 at 9-13, 26-27.  Both Wynn and Ryan Ferrell testified fully and completely to their memory of those events, communications, discussions, and conduct within that privileged relationship.  *See* Dkt. 1154 at 20 (collecting citations).  Those witnesses were limited only by their ability to recall events that transpired ten years ago.  But, certainly, NTG made no effort to prevent disclosure of privileged information through objection or otherwise.  Indeed, NTG does not contest that the witnesses were examined on privileged areas.  *See generally* Dkt. 1168 at 19-23.  NTG counsel was present at each deposition, and routinely raised other objections.  *See generally* Dkt. Nos. 1102-3, 1102-4, 1102-5.  Yet NTG counsel failed to assert

even a single objection based on privilege throughout the course of each deposition.  By allowing its witnesses to testify without interposing privilege objections, NTG exhibits a clear intent to abandon or waive privilege claims over the subject areas at issue.

The failure to object to questions seeking privilege information is a waiver or abandonment of the privilege.  *See, e.g., IMC Chemicals, Inc. v. Niro Inc.*, No. CIV.A.98-2348-JTM, 2000 WL 1466495, at *15 (D. Kan. July 19, 2000) ("Courts may find the attorney-client privilege waived when a party fails to object to 'all questions designed to elicit information about privileged communications'") (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 206-207 (5th Cir. 1999)); *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06CV2804 BTM (WM), 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010) (same); *Orthopaedic Hosp. v. DJO Glob., Inc.*, No. 319CV00970JLSAHG, 2020 WL 5363307, at *6 (S.D. Cal. Sept. 8, 2020) (same); *Shaffer v. Pennsbury Sch. Dist.*, No. CV 20-3415, 2021 WL 966208, at *5 (E.D. Pa. Mar. 15, 2021) (same); *Cason-Merenda v. VHS of Michigan, Inc.*, No. 06-15601, 2013 WL 5449159, at *3 (E.D. Mich. Sept. 30, 2013) ("courts have held that … a failure to object to depositions questions or testimony on grounds of attorney-client privilege operates to waive a claim of privilege as to this testimony"); *Diemer v. Fraternal Ord. of Police, Chicago Lodge 7*, 242 F.R.D. 452, 459 (N.D. Ill. 2007) ("[B]y its failure to timely object to the question of whether the statements were made, it has waived any privilege claim it might otherwise have had").  Whether the witness could not recall privileged information when asked is irrelevant to whether NTG counsel allowed those witnesses to answer questions that clearly sought such information.  Each witness indeed answered questions on allegedly "privileged" topics.

NTG's witnesses did, in fact, disclose substantial information regarding the NTG interaction and relationship with Dan Bobba.  In particular, NTG's agent, Wynn Ferrell, testified (for the first time in this case) that NTG had a pattern and

practice of having clients purchase products from retail stores for the purpose of litigation.  *See* Dkt. 1154-4 at 9-15; *see also* Dkt. 1102-4 at 68:9-15, 73:5-15, 73:24-75:2, 150:13-151:6, 107:6-109:22, 110:2-16.  Wynn Ferrell testified, however, that clients would make "confirmatory purchases" designed to help NTG evaluate whether those clients were somehow fit to serve as class representatives. *Id*.  Wynn Ferrell claimed that he could not recall his interactions with Bobba in June 2010, but heavily implied that Bobba's product purchase in June 2010 was a "confirmatory purchase."  Based, in part, on this type of testimony, NTG has argued in opposition to summary judgment that it directed clients to make "confirmatory purchases."  *See, e.g.,* Dkt. 1141 at 80 ¶¶42, 191, 241, 243, 244, 279, 280, 281, 311, 312.

The Courts have found privilege waivers based on substantially less.  In *Medicines Co.*, the plaintiff's attorney testified to privileged conversations regarding whether plaintiff had followed a certain manufacturing process.  *See Medicines Co. v. Mylan Inc.*, 936 F. Supp. 2d 894, 901-902 (N.D. Ill. 2013).  The Court held the proffered testimony both "support[ed plaintiff's] position … but simultaneously seeks to conceal information that potentially does not support its position," requiring a waiver.  *See also Ironburg Inventions Ltd. v. Valve Corp.*, No. C17-1182-TSZ, 2018 WL 4281531, at *2-4 (W.D. Wash. Sept. 7, 2018).  The *Ironburg* decision also found a waiver and compelled plaintiff to produce, *inter alia*, "all communications and documents bearing on [plaintiff's agents'] knowledge of the Mod reference and the UK Examiner's combined report, and their intent in failing to disclose or withholding these documents from the PTO[.]" *See id.* at *4.

In *Starsight Telecast*, one defendant, an inventor of the relevant product, testified to having a "custom and practice to disclose to [inventor's patent attorney] or to other lawyers working for [his] law firm, any or all prior art about which [he was] aware that is material to any invention that [he was] seeking to have patented."

*See Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650, 654 (N.D. Cal. 1994).  The Court also cited deposition testimony from defendant's counsel on the issue.  *Id*.  The Court held that such testimony "more than merely deny [plaintiff's] charge of inequitable conduct, and therefore [defendants] have partially waived the attorney-client privilege."  *Id*.  So, too, here NTG's testimony "more than merely den[ied]" Bobba's testimony.  It provided an affirmative narrative explaining NTG agents' interactions with Bobba.  NTG's W. Ferrell also testified to having a custom and practice of sending NTG clients to purchase products from stores for what he claimed were "confirmatory" purchases.  *See* Dkt. 1150-16 (W. Ferrell Tr.) at 108-111 (Tr. pp. 107-110).  NIC must be able to review documents germane to NTG's alleged custom and practice, at least with respect to Bobba.

Under *Bittaker*, the waiver extends to all information that NIC requires to adequately dispute or evaluate the truthfulness of NTG's testimony.  *See Bittaker*, 331 F.3d at 719 ("In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials."); *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 244 (N.D. Cal. 2015) ("A party may neither disclose nor dispute contents of documents while simultaneously concealing other portions under a claim of privilege, when the truth of the party's statements can only be assessed by examination of the privileged communication."); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) ("The waiver may be found even if the privilege holder does not attempt to make use of a privileged communication; he may waive the privilege if he makes factual assertions the truth of which can only be assessed by examination of the privileged communication.").

In opposition, NTG argues only that these witnesses "merely denied" allegations and that, because Wynn and Ryan Ferrell were no longer employed by NTG in 2020, their decision to testify on privileged areas does not waive privilege. *See* Dkt. 1168 at 19-23.  Both of those positions lack merit.

### a.  The NTG Witnesses Did Not "Merely Deny" Allegations

Wynn and Ryan Ferrell's testimony went beyond "mere denials."  The witnesses provided counter-narratives that introduced for the first time a substantial narrative regarding "confirmatory purchases" that had never before been discussed or raised by NTG or its clients in this lawsuit.  R. Ferrell testified in detail concerning his preparation of the Bobba declaration that is now directly at issue for trial.

NTG cites *Fox v. Cal. Sierra Financial Servs.*, 120 F.R.D. 520, 530 (N.D. Cal. 1988) for the proposition that waiver occurs only where a defendant does "more than merely deny a plaintiff's allegation."  *See* Dkt. 1168 at 20.  But the *Fox* decision fully supports NIC's motion.  The *Fox* decision cited *Weil*, 647 F.2d at 25 n.13, for the proposition that, "[i]ndeed, when … the privileged communication is voluntarily disclosed without objection by the asserting party's counsel and in the absence of surprise or deception by opposing counsel, it may be unnecessary to look beyond the objective fact of disclosure in ruling on the question of waiver."  *See Fox*, 120 F.R.D. at 526.  Significantly, the *Fox* decision found a privilege waiver through deposition testimony, as this Court should find here.  *Id.* at 526-27.  But NTG instead chose to cite portions of the *Fox* decision that concerned whether waiver had occurred through assertion of affirmative defenses—a separate issue addressed in the *Fox* decision not relevant here.  *See* Dkt. 1168 at 20:18).

NTG argues that this proceeding is akin to declarations at issue before the Court in Dkt. 568, wherein this Court held that privilege was not waived.  But the declarations at issue in Dkt. 568 were fundamentally different, and this Court's Order in Dkt. 568 is not applicable to the more robust deposition testimony at issue in this proceeding.  Relevant to Dkt. 568, the declarations executed by defendants had simply denied verbatim specific allegations in the complaint, and contained nothing more than flat denials.  *See* Dkt. 568 at 7-8 ("The Court has conducted its own comparison and agrees with the Special Master that the declarations simply

deny the allegations made against the declarants in the SAC.").

Here, NTG was not denying allegations brought by NIC in the complaint. Rather, NTG was addressing and rebutting the testimony of its own former client, Dan Bobba, who provided testimony beyond the scope of NIC's complaint. Bobba's testimony was adverse to NTG and revelatory of information from within the attorney-client relationship.  Attorneys within NTG who represented Bobba had an affirmative ethical duty to avoid divulging privileged material against Mr. Bobba's interests.  *See, e.g., United States v. Stepney*, 246 F. Supp. 2d 1069, 1081 (N.D. Cal. 2003) (discussing the "obligation on the part of an attorney not to use confidential information against a client").  But NTG's witnesses nonetheless elected to testify in rebuttal to Mr. Bobba's testimony, and they offered a counter-narrative that directly conflicted with Mr. Bobba's characterization of events transpiring within the attorney-client relationship.  That content is much more than mere denial.

### b.  Whether NTG's Witnesses Were Still Employed by NTG During Their Depositions Is Irrelevant

Whether Wynn or Ryan Ferrell were still employed by NTG at the time of their depositions is irrelevant.  NTG presents no case law indicating that disclosure of privileged information by a former counsel or agent of the firm does not waive the privilege, particularly where that disclosure occurred with NTG counsel present and objecting at deposition.  NTG does not dispute that both individuals worked for NTG during the relevant times in 2010 through 2011 and that, during the course of their work, they were subject to privileged relationships and received privileged information.  *See generally* Dkt. 1168.  Indeed, NTG continues to maintain privilege over files that were created by or exchanged with Wynn and Ryan Ferrell during that time frame.  *See* Dkt. 1102-20.  NTG does not dispute that those witnesses were asked questions at deposition which implicated privileged information.

NTG counsel, David Darnell, was present for both depositions and also examined Wynn Ferrell in detail, including through questions that elicited testimony on privileged matters.  *See* Dkt. 1102-4 at 3.  Mr. Darnell was the primary attorney defending those depositions who objected to questions at those depositions.  *See generally* Dkt. 1150-16 (W. Ferrell full transcript); Dkt. 1102-5; Dkt. 1102-3.  Mr. Darnell met with Wynn Ferrell for several hours prior to his depositions.  *See* Dkt. 1150-16 at 16-18.  Mr. Darnell was formerly counsel for Ryan Ferrell in this lawsuit.  Ryan Ferrell is a defendant in this case, and his document productions flowed through the NTG firm.  The NTG defendants have also attempted to use the deposition testimony of Wynn and Ryan Ferrell against NIC in briefing before this court, thus taking advantage of the selective disclosures at issue here.  *See, e.g.,* Dkt. 1141 at 80, 82, 85, 88, passim.

As noted *supra*, a party's failure to lodge privilege objections at deposition is grounds for waiver.  *See supra* at Section C.1 (collecting cases).  NTG's counsel cannot permit the examination of NTG's witnesses on privileged areas only to later argue against waiver merely because those witnesses are no longer employed by NTG.  NTG provides no law supporting that position.

### 3. The Court Must Either Compel Documents or Exclude Portions of the NTG Witnesses' Testimony That Relates to Privileged Subject Matters if NTG Insists on Maintaining Privilege

Because NTG has waived privilege as discussed *supra*, the Court must evaluate whether production of the underlying, relevant documents is appropriate or, if not, then the Court must exclude portions of the NTG witnesses' testimony that concerns privileged subject matters.  Because NTG's waiver here was intentional (as opposed to inadvertent), the Court should compel production of all "undisclosed communications or information [that] concern the same subject matter."  *See* Fed. R. Evid. 502(a)(2).  NIC's opening motion identified a narrow set of 140 documents that are closely tailored to the subject matters of disclosures

occurring in the depositions at issue.  *See* Dkt. 1154 at 14-15.

However, if the NTG parties prefer to avoid disclosure, then under *Bittaker*, 331 F.3d at 720, "the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition."  Here, that means NTG must exclude testimony from Wynn Ferrell regarding his intake of Dan Bobba and his discussion of "confirmatory purchases" made by clients at his direction.  NTG must also exclude any testimony regarding "confirmatory purchases" if they do not intend to produce documents regarding that late-disclosed claimed practice.  NTG must exclude testimony of Ryan Ferrell regarding his interactions with Dan Bobba in September 2010, including NTG's preparation of Dan Bobba's declaration.  If NTG intends instead to attempt that testimony at trial, it must disclose the underlying privileged documents that would allow NIC to investigate the truthfulness of such testimony.

## II.  **CONCLUSION**

For the foregoing reasons, and those articulated in NIC's opening brief (Dkt. 1154) and supporting materials and exhibits, NIC respectfully requests that this Court sustain its objections to the Special Master's Order in Dkt. 1146, and either (1) compel NTG to produce documents; or (2) exclude from trial NTG witness testimony on the relevant subject matters.

DATED:  August 2, 2021

Respectfully submitted,

EMORD & ASSOCIATES, PC.

By:    */s/ Peter A. Arhangelsky*
Peter A. Arhangelsky, Esq. (SBN 291325)
Joshua S. Furman, Esq. (pro hac vice)
*Attorneys for Plaintiff Natural Immunogenics Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2021, the foregoing, **REPLY IN SUPPORT OF PLAINTIFF NIC'S OBJECTION TO SPECIAL MASTER'S ORDER AT DOCKET NO. 1146** was electronically filed via the CM/ECF system and sent by that system to the following:

Brendan M. Ford
bford@forddiulio.com
Kristopher P. Diulio
kdiulio@forddiulio.com
Ford & Diulio PC
650 Town Center Drive, Suite 760
Costa Mesa, California 92626
Tel: (714) 450-6830
*Attorney Defendants Andrew Nilon, Giovanni Sandoval,*
*Sam Schoonover, Matthew Dronkers, Taylor Demulder, Sam Pfleg*

David J. Darnell, Esq.
ddarnell@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA  92707
Tel:  (714) 241-4444
*Attorney for Newport Trial Group, Scott Ferrell*

Nicole Whyte
nwhyte@bremerwhyte.com
Benjamin Price
bprice@bremerwhyte.com
Kyle A. Riddles
kriddles@bremerwhyte.com
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000
*Attorneys for Ryan Ferrell. Andrew Baslow, David Reid, and Victoria Knowles*

///

///

///

Robert Tauler, Esq.
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Blvd., Suite 510
Los Angeles, CA 90017
Tel: (310) 590-3927
*Attorney for David Reid and Victoria Knowles*


 */s/ Peter A. Arhangelsky*
Peter A. Arhangelsky, Esq.