Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Joshua S. Furman, Esq. (pro hac vice)
jfurman@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP.,<br><br>                    Plaintiff,<br><br>    v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>                    Defendants. | Case No. 8:15-cv-02034-JVS (JCG)<br><br>**PLAINTIFF NIC'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT RELATED TO CLARK BAKER**<br><br><br>Hearing Date:    September 27, 2021<br>Time:            11:00 AM<br>Courtroom:       10C<br>Judge:           Hon. James V. Selna |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................ 1

II.  FACTS AND PROCEDURAL HISTORY ........................................... 2

  A.  Baker's Involvement in the *Nilon v. NIC* matter........................... 3

  B.  Baker's Unrelated Matters ............................................................. 4

  C.  The Court's Rulings Regarding Baker's Conduct .......................... 5

III.  LEGAL STANDARDS ...................................................................... 6

IV.  ARGUMENT ...................................................................................... 7

  A.  Evidence of Baker's Conduct Other than in the *Nilon v. NIC*
      Matter and Baker's Interactions with Nilon in August 2015 Is
      Inadmissible ...................................................................................... 8

    1.  The Court must exclude evidence or testimony related to
        Baker's bankruptcy proceeding, Murtagh's adversarial case
        against Baker, and any other lawsuits in which Baker is a
        party ......................................................................................... 9

    2.  The Defendants should be barred from calling James Murtagh
        as a witness.............................................................................. 11

    3.  The Court should exclude evidence related to Baker's
        interactions with witnesses other than Nilon ........................ 12

  B.  Evidence of Baker's Criminal Conviction .................................... 13

  C.  Evidence Related to Baker's Alleged Use of Defamatory
      Websites Must Be Excluded .......................................................... 15

    1.  The Court should exclude evidence and argument regarding
        Baker's creation or use of websites other than the E-Fam
        Website...................................................................................... 15

    2.  The Court should bar Defendants from calling the E-Fam
        Website "defamatory," claiming the content was false, or
        using other similar language .................................................. 16

V.  CONCLUSION ................................................................................. 17

# TABLE OF AUTHORITIES

1

## Cases

*In re McCoy*, No. BR 14-30381 HLB, 2017 WL 1028016, at *2–3
    (N.D. Cal. Mar. 17, 2017) ........................................................................9

*Maddox v. City of L.A.*, 792 F.2d 1408 (9th Cir. 1986)...............................6

*Molina v. City of Visalia*, No. 113CV01991DADSAB, 2016 WL
    8730723 (E.D. Cal. Sept. 16, 2016) ................................................9, 11

*Rodgers v. Cmty. Educ. Centers, Inc.*, No. CV 18-1954, 2019 WL
    2409834 (E.D. Pa. June 6, 2019).......................................................15

*United States v. Bosley*, 615 F.2d 1274 (9th Cir. 1980) ..........................12

*United States v. Condon*, 720 F.3d 748 (8th Cir. 2013) ..........................14

## Rules

Fed. R. Civ. P. 26(a)....................................................................... 11, 12

Fed. R. Evid. 401 ...................................................................... 1, 6, 9, 11

Fed. R. Evid. 402 ...................................................................................6

Fed. R. Evid. 403 ........................................................................... passim

Fed. R. Evid. 404 ........................................................................... passim

Fed. R. Evid. 608 ........................................................................... passim

Fed. R. Evid. 609 ...................................................................... 1, 7, 13, 14

Plaintiff Natural Immunogenics Corp. ("NIC") hereby moves *in limine* to exclude from trial the following evidence:

1.     Documents or testimony related to litigation in which Clark Baker was or is a party, including his active bankruptcy proceeding and any sanctions orders issued in that case, which are irrelevant and prejudicial under FRE 401, 403, 404, and 608;

2.     Documents or testimony related to Clark Baker's alleged tampering with or coercion of witnesses other than Andrew Nilon as irrelevant and prejudicial under FRE 401 and 403 and prohibited character evidence under FRE 404;

3.     Documents or testimony related to Clark Baker's criminal conviction which is irrelevant and prejudicial under FRE 401 and 403 and prohibited evidence under FRE 404 and 609; and,

4.     Documents or testimony related to Clark Baker's alleged use or creation of defamatory websites as irrelevant and prejudicial under FRE 401, 403, and 404.

5.     Exclude Murtagh from testifying as testimony he could provide on personal knowledge is inadmissible under FRE 401, 403, 404, and 608.

## I.     **INTRODUCTION**

Since the outset of this case, the Defendants have sought to distract from the merits and focus on prejudicial and irrelevant issues. Defendants have name-called NIC's officers and relentlessly attacked the character of Clark Baker, NIC's investigator in the underlying case. Defendants have accused Baker of engaging in a history of using "unlawful and fraudulent websites and other defamatory and coercive tactics as well as . . . fraudulent, frivolous and contrived lawsuits and litigation tactics." *See* Exh. 14 at 6. But the Federal Rules of Evidence do not permit defenses built on prejudicing the jury with irrelevant and inflammatory

information.

This Court has already ruled that Baker's conduct in other legal matters, such as his bankruptcy proceeding, are irrelevant to whether Andrew Nilon's written statement to Baker in 2015 is accurate, and irrelevant to the other issues in this case. Dkt. 365 at 6-7, 14-15.   The Court has also held, on summary judgment, that Defendants failed to raise a dispute of fact on whether the website Baker created for NIC was defamatory or false (it was not).  *See* Dkt. 784 at 15-16. Under the Federal Rules of Evidence, each of the enumerated topics identified *supra* are inadmissible due to prejudice and irrelevance.  The Court must therefore exclude all such evidence under the applicable Rules.

## II.    FACTS AND PROCEDURAL HISTORY

NIC's complaint alleges malicious prosecution and federal racketeering based on the underlying action, *Nilon v. Natural-Immunogenics Corp.*, No. 3:12-cv-00930 (S.D. Cal. 2012) (the "Nilon Action" or "*Nilon*").  The Fourth Amended Complaint outlines NIC's basis for filing a malicious prosecution suit against the NTG Defendants, Nilon, and Sandoval.  *See* Dkt. 1007 ("FAC") at 80-82.  This Court summarized NIC's allegations related to the Nilon Action as follows:

> In March 2012, Newport Trial Group and its attorneys Scott Ferrell, Ryan Ferrell, Knowles, and Reid filed a consumer class action lawsuit against Natural-Immunogenics for making false and misleading statements in connection with its Sovereign Silver products. Nilon served as lead plaintiff and class representative. Id. Natural-Immunogenics alleges that the lawsuit was fraudulent: Newport Trial Group bribed Nilon to both (1) serve as the lead plaintiff and class representative and (2) fraudulently allege that he purchased Natural-Immunogenics's products and relied on Natural-Immunogenics's false and misleading statements when purchasing the product. Natural-Immunogenics further alleges that this action was part of Newport Trial Group's broader scheme to bring fraudulent consumer class action lawsuits against corporate

defendants for the improper purpose of extracting out-of-court settlements from these defendants.

Dkt. 157 at 2 (internal citations omitted). NIC's theory of malicious prosecution is thus that the NTG Defendants manufactured the suit against NIC by directing Nilon (and later Sandoval) to purchase NIC's product for the purpose of bringing a lawsuit and **not** in reliance on NIC's advertising. *Id.* Under an Anti-SLAPP analysis, the Court held that NIC's theory made out a claim for malicious prosecution and that NIC had sufficient evidence to survive Anti-SLAPP scrutiny. *See* Dkt. 88-1 at 25-26. The predicate acts related to the Nilon Action (which undergird NIC's RICO claim) are based on the same theory. Dkt. 1007 at ¶ 427 (outlining predicate acts of extortion, bribery, fraud, witness tampering, and obstruction as a result of the staged and fabricated lawsuit). This Court similarly found that NIC's allegations, if proven, establish RICO predicate acts, demonstrate a RICO pattern, impose RICO liability and would not be barred by the *Noerr-Pennington* doctrine. *See generally* Dkt. 157; *see also* Dkt. 1072.

A. **Baker's Involvement in the *Nilon v. NIC* matter**

In the underlying case, NIC's original counsel, Carlos Negrete, retained Clark Baker as a private investigator to perform routine litigation services. *See* Dkt. 365 at 4. Clark Baker researched the plaintiffs in the case, Andrew Nilon and Giovanni Sandoval. *Id.* at 4-5. He also investigated the connection between Nilon's close group of friends and the Newport Trial Group. *Id.* Baker assisted in the creation of a website that outlined his investigatory findings regarding Nilon, his associates from the Electric Family LLC, and the Newport Trial Group. *Id.* at 5. The purpose of the website was to notify the public of what appeared to be an ongoing scam and to attract potential witnesses to assist in the active litigation. Dkt. 784 at 4.

In May 2015, the *Nilon v. NIC* case was dismissed. *Nilon v. NIC*, Dkt. 117. A few months later in August of 2015, Andrew Nilon initiated contact with Clark

Baker regarding the Electric Family Scam website by contacting the webhost, John McNair. Dkt. 365 at 5-6. Nilon and Baker exchanged emails that this Court concluded "did not display any obvious animus" and, in fact, Nilon appeared "eager" and "enthusiastic[]" to speak with Baker. *See id.* at 6-7, 14. Nilon and Baker had a phone call, after which Baker wrote a summary of Nilon's story regarding the contrived nature of his lawsuit against NIC. *Id.* at 7. Baker invited Nilon to revise the statement and to ensure its accuracy. *Id.* Nilon sent the statement back to Baker with minor changes. *Id.* Baker then converted the statement into a declaration that Nilon did not sign. *Id.* at 7-8. Once Nilon was named a Defendant in this lawsuit, he began claiming that his written statement was coerced and that the statements contained therein are false. Dkt. 41 at 16-17 (Declaration of Nilon), at ¶¶ 21-25.

**B.   Baker's Unrelated Matters**

In June of 2015, Baker filed for Chapter 7 bankruptcy. *See In re Clark Baker*, No. 2:15-bk-20351-BB. In October 2015, James Murtagh filed an adversary proceeding against Baker wherein Murtagh alleged a variety of improper acts against Baker. *See* Dkt. 365 at 3 (citing *Murtagh v. Baker*, No. 2:15-AP-01535-BB (the "Adversary Case")). A witness named David Bender (who used to work with Murtagh) executed a declaration that made damaging statements about Murtagh. *Id.* Murtagh's counsel claimed that Bender had told him that he made the damaging statements under duress from Clark Baker. *Id.* The court found that Bender had changed his story so many times that he was not reliable and excluded him as a witness in the case. *See* Adversary Case, Dkt. 203 at 5-6 (Judge Bluebond stated that "this witness is . . . useless to [the Court] [because] [h]e's lying – either he's lying then or he's lying now."). Judge Bluebond did not find that Baker had engaged in witness tampering but did refer the matter for investigation to the US Attorney's Office on January 8, 2017. Dkt. 365 at 3. No charges for witness tampering were ever filed against Clark Baker related to David Bender.

Baker was later sanctioned for contempt related to discovery misconduct in the Adversary Case. *See* Adversary Case, Dkt. 369. His digital devices were taken by a Court-appointed neutral and those devices were later determined to contain child pornography. *Id.*, Dkt. 380. Clark Baker was charged and pled no contest to possession of child pornography. Baker was also held in contempt of a court order for failing to pay a fee award to Murtagh which Baker claimed he could not pay. *Id.*, Dkt. 466.

Baker has also been engaged in a number of other lawsuits where he was either a plaintiff or defendant. Outside the Adversary Case, Murtagh has sued Baker twice and Baker has sued Murtagh once. *See e.g., Moore, et al., v. Semmel Weis Society Int'l, Inc*., No. 08-430 (Tenn. Ct. Ch., 14th Jud. Dist. July 12, 2012) (Order and Dismissal of Murtagh's case against Baker); *see also Murtagh, M.D. v. Baker*, 2015 WL 9252634 (Cal. Super. Ct. filed Nov. 15, 2013) (stayed pending the bankruptcy case). Baker has also been engaged in litigation against an individual named Todd DeShong related to websites the two had made about one another. *See Clark Baker, et al. v. Jeffery Todd DeShong*, No. 4:13-cv-552-C (N.D. Texas filed July 9, 2013). None of these legal matters involve the parties or conduct at issue in the *NIC v. NTG* case whatsoever.

## C.    The Court's Rulings Regarding Baker's Conduct

The Defendants have moved for sanctions against NIC and asserted an unclean hands defense based on Baker's interactions with Nilon in August 2015 and his creation of the Electric Family Scam website. *See* Dkt. 365 (denying NTG's motion for sanctions); Dkt. 784 (dismissing NTG's Unclean Hands defense). In each of those proceedings, the Court has made findings that are relevant to this motion.

First, the Court held on summary judgment that "it is undisputed that Baker was not acting at the direction of NIC when he communicated with Nilon via telephone and email in August 2015." Dkt. 784 at 11.

Second, the written communications between Nilon and Baker do not evidence coercion or animus, but instead appear cordial.  Dkt. 365 at 6-7, 14.

Third, Baker did not engage in witness tampering when he communicated with Nilon in August 2015.  *See* Dkt. 365 at 14-15.

Fourth, whether Baker engaged in witness tampering in the Murtagh litigation is irrelevant to whether Baker coerced or tampered with Nilon in August 2015.  Dkt. 365 at 15.

Fifth, the Court held on summary judgment that "[t]here is no record evidence sufficient to create a genuine dispute whether NIC directed Baker to threaten or coerce Nilon [in August 2015] as alleged by Defendants."  Dkt. 784 at 15.

Finally, the Defendants "create no issue of material fact regarding the falsity of the information in the Electric Family website because Defendants do not cite any evidence indicating that any statement in the [website] was false."  Dkt. 784 at 15.  The Court further found that, as a result, the Electric Family Website was not defamatory.  *Id*. at 16.

## III.    **LEGAL STANDARDS**

Evidence must be relevant to be admissible.  Fed. R. Evid. 401, 402.  Evidence is relevant if it: (1) has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action.  Fed. R. Evid. 401.

Federal Rule of Evidence 403 provides that evidence, although relevant, may be excluded "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  This is a balancing test left to the sound discretion of the trial court. *See, e.g., Maddox v. City of L.A.*, 792 F.2d 1408, 1417–18 (9th Cir. 1986).

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion that person acted in accordance with the character trait." Fed. R. Evid. 404(a)(1). Similarly, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

"[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). Moreover, the use of a prior criminal conviction to impeach credibility or character for truthfulness is limited by FRE 403. Fed. R. Evid. 609(a)(2).

## IV.  **ARGUMENT**

Baker's only relationship to this case is that he received a written admission from Andrew Nilon in August of 2015, and Nilon claims that the admission is inaccurate. Nilon and the Defendants seek to bolster the claim that the admission is inaccurate by alleging that Baker coerced the statement. While the relationship between coercion and the veracity of the statement is tenuous, the Court may well permit Nilon to advance his coercion narrative in an effort to discount the validity of his damning admission. However, as this Court has already acknowledged, Baker's conduct in other matters has no bearing on the truth or falsity of the admission or whether Baker engaged in coercive conduct when he interacted with Nilon in 2015. *See* Dkt. 365 at 15 (finding that Baker's conduct in other matters is not relevant to whether Baker engaged in coercive conduct). The jury will be able to evaluate the credibility of Nilon's story versus the statement he made to Baker through an evaluation of the documentary and testimonial record that address the facts in Nilon's statement. The question of whether Nilon's statement is accurate is, of course, dependent on whether the evidentiary record supports or undermines Nilon's statement and not on whether Baker has allegedly coerced a witness in an

unrelated case or whether Baker has committed unrelated crimes.

Baker is not a party in this action and the question of whether he coerced Andrew Nilon is not an element of any claim or defense. *See generally* Dkt. 1007; *see also* Dkt. Nos. 1016, 1017, 1020 (Defendants' Answers). Thus, Baker's conduct in other matters could only be relevant to the question of Baker's credibility. As a result, if NIC does not call Baker as a witness, the evidence would be automatically subject to exclusion as irrelevant.[1] However, even if NIC called Baker, the evidence would still be inadmissible as irrelevant to whether Baker engaged in coercion with Nilon in 2015, inadmissible under the FRE 403 balancing test, and inadmissible under FRE 404(b)(1)'s prohibition of other act evidence as proof of conformity with a predisposition on a particular occasion.

For these reasons, explained in greater detail herein, the Court should entirely exclude all evidence and argument related to Baker's conduct outside of the *Nilon v. NIC* action and his direct interactions with Nilon in the summer of 2015.

### A. Evidence of Baker's Conduct Other than in the *Nilon v. NIC* Matter and Baker's Interactions with Nilon in August 2015 Is Inadmissible

Clark Baker's litigation history or conduct in other cases does not undergird any claims or defenses in this case. None of Clark Baker's litigation against Murtagh or DeShong has anything to do with any party in this case or the conduct at issue in the FAC or Defendants' affirmative defenses. The Defendants cannot argue to the contrary. Instead, the Defendants have attempted to shoehorn Baker's alleged misdeeds into this case by claiming they are relevant to whether Nilon's

---

[1] NIC has only listed Baker as a witness on its "May Call" list and does not anticipate calling him as a witness at trial. The Court should enter an order conditionally excluding evidence related to Baker outside of Nilon's testimony based on personal knowledge unless NIC actually calls Baker as a witness. The remainder of arguments within this motion are not conditional and apply even if NIC calls Baker as a witness.

coercion story is true or false and to attack Baker's credibility.[2]

The Federal Rules of Evidence generally prohibit the use of "[e]vidence of a person's character or character trait" (FRE 404(a)(1)) or the use of other crimes, wrongs, or acts to prove "a person's character in order to show that on a particular occasion the person acted in accordance with the character" (FRE 404(b)(1)).  *See* Fed. R. Evid. 404.  Similarly, Rule 608 prohibits the use of extrinsic evidence regarding a "specific instance[] of a witness's conduct in order to attack or support the witness's character for truthfulness."  *See* Fed. R. Evid. 608(b).

In light of these prohibitions, the Defendants bear the burden to explain why they should be permitted to introduce evidence of Baker's conduct in other lawsuits or his interaction with witnesses other than Nilon.  *See In re McCoy*, No. BR 14-30381 HLB, 2017 WL 1028016, at *2–3 (N.D. Cal. Mar. 17, 2017) (party proffering the evidence must demonstrate how the evidence falls within an exception); *Molina v. City of Visalia*, No. 113CV01991DADSAB, 2016 WL 8730723, at *3 (E.D. Cal. Sept. 16, 2016) (same).  As explained below, the Defendants will not be able to do so for each category of evidence.

1.  <u>The Court must exclude evidence or testimony related to Baker's bankruptcy proceeding, Murtagh's adversarial case against Baker, and any other lawsuits in which Baker is a party</u>

Clark Baker's bankruptcy proceeding, James Murtagh's adversary case, and Baker's other lawsuits against DeShong and Murtagh are entirely irrelevant to the issues in this case.  The Defendants may not submit evidence of those unrelated proceedings or any orders issued in those cases because such evidence does not bear on a claim or defense in this case and is therefore not "of consequence" as required by FRE 401.  There are no allegations in the FAC or in any of

---

[2] To the extent the Defendants have previously suggested Baker's alleged misconduct in other cases might be relevant to their Unclean Hands defense, the Court dismissed that defense.  *See* Dkt. 784.

Defendants' active affirmative defenses related to Clark Baker, his bankruptcy matter, the Adversarial Case, any other lawsuit in which Baker is a party, or any orders issued by Judges in those cases. *See generally* Dkt. 1007; *see also* Dkt. Nos. 1016, 1017, 1020 (Defendants' Answers). Absent any tether between those legal matters and the allegations in this case, evidence about those matters is irrelevant under FRE 401.

Evidence that Baker is in bankruptcy or that he is being sued for allegedly engaging in improper behavior towards Murtagh is unfairly prejudicial. Jurors may draw negative conclusions about Clark Baker and discount his testimony simply because he is in bankruptcy. Similarly, mere knowledge that Murtagh has levied allegations of cyber-stalking and defamation against Baker may poison the jury's view of him. Yet that information carries no probative value on any issue "of consequence" to this action. Similarly, evidence regarding whether Baker has won or lost prior lawsuits against DeShong or Murtagh has no bearing on any issues in this case, but may cause unfair prejudice in the form of improper negative opinions formed by the jury.

Because evidence of Baker's personal lawsuits bears no relationship to the issues in this case, the presentation of such evidence is a distraction to the jury and a waste of time. This trial will already be substantial and contain a significant amount of documentary and testimonial evidence. The jury does not need its time wasted with totally irrelevant matters like the personal legal battles of NIC's former investigator.

Finally, the subject matter of Baker's personal lawsuits involves specific instances of conduct. For instance, Murtagh alleges in the Adversary Case that Baker engaged in cyber-stalking and defamation. *See* Adversary Case, Dkt. 16. Evidence of specific instances of conduct is impermissible as a general rule. The Court must exclude that type of evidence unless the Defendants can identify and substantiate a claim that it falls within a recognized exception. Even then, the

Court is to consider FRE 403. *Molina*, 2016 WL 8730723, at *3 (evidence under FRE 404(b)(2) must still pass muster under FRE 403).

The Court must therefore exclude all evidence related to Baker's bankruptcy, the Adversary proceeding, Baker's other prior lawsuits under FRE 401 and 403, and any orders issued in those legal matters.

2. <u>The Defendants should be barred from calling James Murtagh as a witness</u>

Defendants have expressed an intent to call James Murtagh as a witness to testify about Baker's alleged instances of misconduct. *See* Exh. 14 at 6 (listing James Murtagh as a witness on their Rule 26(a) disclosure). Defendants state that Murtagh has knowledge of:

> Mr. Baker's history of using unlawful and fraudulent websites and other defamatory and coercive tactics as well as Mr. baker's prior use of fraudulent, frivolous and contrived lawsuits and litigation tactics. Dr. Murtagh is also expected to have evidence of Mr. Baker's history of committing perjury, intimidating witnesses, obstruction of justice and destroying and altering evidence.

*See* Exh. 14 at 6.[3] Defendants' description of Murtagh's anticipated testimony demonstrates that the entirety of Murtagh's anticipated testimony involves specific instances of Baker's conduct and evidence of Baker's alleged other crimes, wrongs, or acts. *Id*. Thus, that evidence is presumptively inadmissible because the Federal Rules generally exclude that type of evidence. *Molina*, 2016 WL 8730723, at *3 ("the general rule is that evidence of other crimes, wrongs, or acts is inadmissible "to prove a person acted in conformity with a character trait on a specific occasion); *see also* Fed. R. Evid. 608(b) ("extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or

---

[3] Notably, the Defendants do not (and cannot) allege that Murtagh possesses any information relevant to the conduct undergirding NIC's claims in this case or any of Defendants' defenses.

support the witness's character for truthfulness").  A defense witness that is called to testify about specific instances of conduct for the purpose of impeaching the plaintiff's witness is properly excluded under FRE 608(b).  *United States v. Bosley*, 615 F.2d 1274, 1276-77 (9th Cir. 1980) (holding the "admission of Rhodes's testimony for impeachment purposes was error").

Under that Ninth Circuit precedent, the Defendants may not call James Murtagh to testify on the matters outlined in their Rule 26(a) disclosure because those subjects all constitute impermissible extrinsic evidence offered for the purpose of impeachment.  *See* Fed. R. Evid. 608(b).  Alternatively, the Defendants offer evidence of alleged witness intimidation or coercion for the purpose of proving that Baker acted in conformity with his propensity for that type of conduct when he interacted with Nilon.  That is an expressly prohibited purpose under the Rules.  *See* Fed. R. Evid. 404(b)(1).  Defendants bear the burden to demonstrate that Murtagh can be called to testify as to matters that are admissible, and they cannot do so.

Thus, the Court should exclude James Murtagh from testifying at trial as his testimony is irrelevant to the issues in controversy and constitutes impermissible testimony on specific instances of conduct under FRE 404 and 608.

3.   The Court should exclude evidence related to Baker's interactions with witnesses other than Nilon

Defendants may not introduce evidence that Baker has engaged in witness intimidation or tampering of individuals other than Andrew Nilon.  Evidence of other specific instances of alleged coercion, witness intimidation, or witness tampering constitutes evidence that Baker bears a predisposition to coerce or tamper with witnesses and thus acted in conformity with that character trait when he interacted with Nilon in August of 2015.  *See* Fed. R. Evid. 404(b)(1) (prohibiting such evidence).  There is no permissible purpose for the presentation of that evidence and the Defendants bear the burden to demonstrate otherwise.

Critically, the Defendants are attempting to use evidence that Baker allegedly coerced or intimidated witnesses in unrelated proceedings to demonstrate that he did so when he interacted with Nilon, but that issue is not central to the elements of any claim. The coercion narrative is simply the Defendants' explanation to reduce the weight of Nilon's written admission. Defendants hope to bolster Nilon's story of coercion and cast doubt on Baker's version by introducing evidence that suggests Nilon was coerced and thus cause the jury to conclude that the admission is less reliable. That inferential chain is weak and attenuated. The Defendants would be using extrinsic evidence to impeach Baker's dispute of Nilon's narrative designed to impeach Nilon's own written admission. Thus, while the evidence would be facially improper under FRE 404(b) and 608 as propensity or character trait evidence, it is also a waste of time and confusing under FRE 403 because the evidence does not bear directly on any core issue in this case. Baker is not on trial and whether he has engaged in improper conduct that is totally unrelated to this lawsuit is irrelevant, confusing, and a waste of the jury's time.

The Court must therefore exclude any evidence or argument related to Baker's alleged witness tampering or coercion of witnesses other than Andrew Nilon.

## B.  Evidence of Baker's Criminal Conviction

In 2019, Baker was convicted of possession of child pornography. That charge carried a maximum punishment of three years in prison. The Court must exclude evidence, testimony, or questioning about Baker's conviction because it is entirely irrelevant to any matter in controversy except to the extent the Defendants may attempt to offer it under FRE 609 to attack Baker's character for truthfulness. However, under FRE 609(a)(1)(A), the Court must evaluate the probative value of the conviction against its risk of unfair prejudice under FRE 403. *See* Fed. R. Evid. 609(a)(1)(A). Given the extraordinarily prejudicial and inflammatory nature of a conviction for possession of child pornography and the lack of any connection

between the elements of that conviction and Baker's character for truthfulness, the FRE 403 analysis clearly requires exclusion.

Baker's criminal conviction is not relevant to any claim or defense in this matter. Baker is not a party and his only relationship to the case is that he performed investigative services for NIC in the underlying case and he obtained a written statement from Defendant Andrew Nilon in August of 2015. Defendants certainly cannot argue that Baker's 2019 criminal conviction for possession of child pornography is relevant to whether Nilon's suit was maliciously prosecuted or whether the Defendants operated a RICO enterprise.

Moreover, this case contains no allegation by any party related to sexual offenses or misconduct and, as such, could not be offered under FRE 404. *See* Fed. R. Evid. 404(b)(1). Similarly, Baker's conviction bears literally no nexus to the events at issue in this case and thus cannot be offered for a permitted purpose under 404(b)(2). *See* Fed. R. Evid. 404(b)(2).

Thus, to the extent Defendants would attempt to admit or discuss the conviction or charge, they would be offering it under FRE 609 which permits the use of a prior conviction to impeach a witness. *See* Fed. R. Evid. 609(a)(1). However, such evidence is subject to exclusion under FRE 403. *Id.* Evidence is unfairly prejudicial when it creates an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Condon*, 720 F.3d 748, 755 (8th Cir. 2013). There is no doubt that the average juror would have a strong emotional reaction to the knowledge that a witness was convicted for possession of child pornography. Such emotions could easily sway the jury to entirely disregard Baker's testimony based on a visceral, emotional reaction. That is why courts routinely exclude prior convictions for sex offenses given the significant prejudicial effect that such convictions can have on the jury and the lack of relationship to such convictions and the witnesses character for truthfulness (the purpose for which the evidence is being proffered). *Rodgers v.*

*Cmty. Educ. Centers, Inc.*, No. CV 18-1954, 2019 WL 2409834, at *2 (E.D. Pa. June 6, 2019) (excluding prior sexual assault conviction in negligence case because the "probative value of admitting Rodgers's rape conviction would be substantially outweighed by the prejudicial effect on the jury in assessing the merits of the case.").

Because there is no nexus between the conduct undergirding Baker's conviction and the facts underlying this case, there is very little, if any, probative value to the information. By contrast, the prejudicial nature of the information is self-evident and extreme. Thus, under FRE 403, the Court must exclude any evidence, testimony, or questioning relating to Baker's conviction for possession of child pornography.

**C.    Evidence Related to Baker's Alleged Use of Defamatory Websites Must Be Excluded**

The Court should exclude any documentary or testimonial evidence of Baker's alleged use of defamatory websites and further prohibit the use of the word defamatory or similar terminology to describe the E-Family Scam website.

1.    The Court should exclude evidence and argument regarding Baker's creation or use of websites other than the E-Fam Website

The Defendants have claimed that Baker had a practice of creating defamatory websites for the purpose of tampering with witnesses. Dkt. 311 at 11-12. Evidence and argument regarding Baker's creation of websites other than the E-Fam website and any alleged history of creating defamatory or coercive websites must be excluded as irrelevant, unfairly prejudicial, and improper propensity evidence under FRE 404(b)(1) or 608. Essentially, Defendants submit the evidence to suggest that Baker has a propensity to defame or make false statements for the purpose of extortion and that he acted in conformity with that character trait when he made the E-Fam website and interacted with Nilon. That is improper under FRE 404(b)(1). Similarly, to the extent the Defendants would argue that

Baker's alleged creation of defamatory or false websites goes to his credibility, Rule 608 bars the submission of that evidence (because it is extrinsic evidence of specific acts and is inadmissible to impeach credibility). *See* Fed. R. Evid. 608(b).

Moreover, because the Court has already held on summary judgment that the E-Fam website was not defamatory, did not contain false information, and constituted protected speech under the First Amendment, there is no nexus or relationship between other alleged defamatory websites that Baker created and the E-Fam website. Even if Baker has created defamatory websites in the past, that bears no relationship to the E-Fam website because that site was not defamatory or false as a matter of law. *See* Dkt. 784 at 13-15. Thus, the connection between those allegedly improper acts and the facts of this case is not established. To use other bad acts evidence, even for a permissible purpose, the acts must bear a relationship and similarity. That is not the case here.

The Court should therefore exclude all evidence, testimony, or argument related to Baker's alleged creation of defamatory or false websites.

    2.   <u>The Court should bar Defendants from calling the E-Fam Website "defamatory," claiming the content was false, or using other similar language</u>

This Court has already ruled on summary judgment that the Defendants have presented no evidence that any statement made on the E-Fam Website was false or defamatory. *See* Dkt. 784 at 13-15. The Court held the website was protected by the First Amendment as a matter of law. *Id.* Thus, the Defendants cannot be permitted to describe the website as "defamatory," "libelous," "slanderous," or claim that it contained false information. Those terms have specific legal meaning and thus should not be permitted where the Court has already found that the evidence demonstrates the terms inapplicable as a matter of law. Similarly, the Defendants cannot claim the website contained false information when this Court has already found on summary judgment that they do not possess any evidence in

support of that claim.  *See* Dkt. 784 at 13-15.

## V.    __CONCLUSION__

For the foregoing reasons, the Court should issue an order finding that, if NIC does not call Clark Baker as a witness, the Defendants are barred from introducing any evidence or argument related to Baker's conduct outside of his work in the underlying *Nilon v. NIC* matter and his interactions with Nilon in August 2015.  If NIC does call Baker as a witness, the Court should exclude each of the enumerated categories of information identified in this motion.


DATED:  August 16, 2021.


Respectfully submitted,

EMORD & ASSOCIATES, PC.


By:    */s/ Peter A. Arhangelsky*
Peter A. Arhangelsky, Esq. (SBN 291325)
Joshua S. Furman, Esq. (pro hac vice)
*Attorneys for Plaintiff Natural
Immunogenics Corp.*