# Exhibit "1"

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

CERTIFIED TRANSCRIPT

NATURAL-IMMUNOGENICS CORP., )
                   PLAINTIFF,  }
      VS.                      }
                               }  SACV-15-2034-JVS
NEWPORT TRIAL GROUP, ET AL.,)
                   DEFENDANTS. }
----------------------------}

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

MAY 14, 2018

SHARON A. SEFFENS, RPR
UNITED STATES COURTHOUSE
411 WEST 4TH STREET, SUITE 1-1053
SANTA ANA, CA  92701
(714) 543-0870

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFF:

PETER A. ARHANGELSKY
EMORD & ASSOCIATES, P.C.
3210 SOUTH GILBERT ROAD, SUITE 4
CHANDLER, AZ   85286
(602) 388-8899

FOR DEFENDANT NEWPORT TRIAL GROUP:

DAVID J. DARNELL
STEPHANIE A. SPERBER
CALLAHAN & BLAINE
3 HUTTON CIRCLE DRIVE
SANTA ANA, CA   92707
(714) 241-4444

SANTA ANA, CALIFORNIA; MONDAY, MAY 14, 2018; 1:36 P.M.

THE CLERK: ITEM NO. 12, SACV-15-02034-JVS, NATURAL-IMMUNOGENICS CORPORATION VERSUS NEWPORT TRIAL GROUP, ET AL.

COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD.

MR. DARNELL: GOOD AFTERNOON, YOUR HONOR. DAVID DARNELL ON BEHALF OF THE NTG DEFENDANTS.

THE COURT: GOOD AFTERNOON.

MS. SPERBER: GOOD AFTERNOON, YOUR HONOR. STEPHANIE SPERBER ON BEHALF OF THE NTG DEFENDANTS.

THE COURT: GOOD AFTERNOON.

MR. ARHANGELSKY: GOOD AFTERNOON, YOUR HONOR. PETER ARHANGELSKY ON BEHALF OF THE PLAINTIFF, NATURAL-IMMUNOGENICS.

THE COURT: GOOD AFTERNOON.

IT'S NTG'S MOTION. WHO'S GOING TO ADDRESS IT? MR. DARNELL.

MR. DARNELL: YES, YOUR HONOR.

YOUR HONOR, I WANT TO KIND OF BACK UP ON THE STRATALUZ DISCOVERY AND HOW WE GOT TO THIS POINT. SO AT THE OUTSET I THINK IT'S IMPORTANT TO CONSIDER THE THREE PRIOR STRATALUZ DISCOVERY ORDERS AND THE FACT THAT THESE ORDERS STAND ALMOST 18 MONTHS IN TIME FROM WHERE WE ARE TODAY TO WHERE WE STARTED AND HOW WE GOT HERE.

THE FIRST ORDER, YOUR HONOR, WAS ISSUED ON OCTOBER 25, 2016, AS THE COURT WILL RECALL. THAT'S THE ORDER IN DOCKET 198. THAT WAS THE ORDER THAT GRANTED NIC LEAVE. NOW, NIC HAD TO SEEK LEAVE BECAUSE THERE WAS A LIMITATION ON DISCOVERY, AS THE COURT WILL RECALL.

THE COURT: RIGHT.

MR. DARNELL: AND THEY GRANTED THEM LEAVE TO ISSUE A SUBPOENA SEEKING A THREE E-MAIL CHAIN -- THE STRATALUZ CORPORATE FORMATION E-MAIL CHAIN AT ISSUE.

NOW, IN ISSUING THAT ORDER, THE FUNDAMENTAL PREMISE WAS BASED ON THE ALLEGATION BY NIC -- AND THIS IS AT PAGE 5 OF DOCKET 198 -- THAT THE CORRESPONDENCE CONTAINS CONVERSATIONS BETWEEN NEWPORT TRIAL GROUP ATTORNEYS ABOUT A PLAN TO FORM SHAM CORPORATE ENTITIES SOLELY TO PURSUE LEGAL CLAIMS. THAT WAS EXTREMELY IMPORTANT TO THE COURT. IT WAS OUTLINED IN THE ORDER ITSELF.

THE COURT ALSO NOTED THAT THERE WERE DUELING DECLARATIONS AND DISPUTES BETWEEN THE PARTIES AS TO WHAT THE EVIDENCE ACTUALLY SHOWED.

NEVERTHELESS, THE COURT NOTED THAT, QUOTE, "SUCH ALLEGATIONS ABOUT THE PLAN TO FORM SHAM CORPORATE ENTITIES SOLELY TO PURSUE LEGAL CLAIMS ARE AT THE HEART OF THIS CASE." THE COURT CONTINUED: "IF TRUE, THIS EVIDENCE WOULD SUPPORT NIC'S CLAIM OF A PATTERN OF RICO ACTIVITY."

SO THIS EVIDENCE WENT TO NOT JUST SOME ATTENUATED

SIDE ISSUE OR SOME OTHER ISSUE UNDER 404(B)(2). IT WENT TO THE HEART OF THEIR CASE, THE CLAIM THAT THERE WAS A PATTERN OF RICO ACTIVITY.

BECAUSE OF THAT -- AND THE COURT NOTED THE IMPORTANCE OF THAT DISCOVERY AND HOW IT OUTWEIGHED THE BURDEN ON THE PARTIES -- THE COURT FOUND THAT THAT WAS WHY IT WAS PROPORTIONAL TO THE NEEDS OF THIS CASE. SO THAT'S THE FIRST ORDER.

THE SECOND ORDER WAS ISSUED ON MAY 2, 2017. THAT'S IN DOCKET 299. THAT ORDER, YOUR HONOR, WAS BASED ON THE SAME FUNDAMENTAL PREMISE THAT NIC ALLEGED THAT STRATALUZ WAS FORMED SOLELY TO BRING SHAM LAWSUITS. THAT'S SET FORTH IN DOCKET 202. AND IN THE ORDER ITSELF, THE COURT NOTED AT PAGE 19 OF DOCKET 299 THAT "THE EVIDENCE IN THE RECORD SUGGESTS THAT STRATALUZ MAY HAVE BEEN DESIGNED PRIMARILY AS A LITIGATION VEHICLE."

NOW, BECAUSE OF THAT, THE COURT'S PRIOR ORDER, AND THE FINDING THAT IT MAY BE RELEVANT TO THE CLAIM OF A PATTERN OF RICO ACTIVITY, THE COURT OVERRULED THE DEFENDANTS' MOTION TO QUASH AND ALLOWED THE ISSUE TO GO FORWARD.

THAT LED US UP TO THE ORDER IN JULY OF 2017. THAT'S AT DOCKET 414. NOW, THIS IS THE ORDER THAT THE COURT RELIES UPON AS THE LAW OF THE CASE IN THE TENTATIVE RULING THAT WE HAVE BEFORE THE COURT TODAY. THAT SAME ORDER WAS

6

BASED UPON NIC'S INITIAL PREMISE CITED IN THE FIRST ORDER, CITED AGAIN IN THE SECOND ORDER, AND AGAIN CITED IN THE ORDER AT DOCKET 414 THAT, QUOTE, "STRATALUZ MAY HAVE BEEN DESIGNED PRIMARILY AS A FRAUDULENT LITIGATION VEHICLE AND THAT THE EVIDENCE MAY BE RELEVANT TO ESTABLISH A SCHEME TO FORM DUMMY CORPORATIONS."

SO ALL THREE ORDERS BASED UPON STRATALUZ DISCOVERY, ALLOWING STRATALUZ DISCOVERY, DEAL WITH THIS FRAUDULENT FORMATION, DUMMY CORPORATION, WHEN THE CORPORATION WAS FORMED.

WHAT WE HAVE TODAY IS AN ENTIRELY DIFFERENT BEAST. WE'RE NOT TALKING ABOUT FRAUDULENT FORMATION.  WHAT WE ARE TALKING ABOUT TODAY IS WHETHER OR NOT PROMAXYL LAWSUITS, OF WHICH THERE WERE THREE DIFFERENT LAWSUITS -- WHETHER EACH OF THOSE LAWSUITS CONSTITUTES SHAM LITIGATION.  WE ARE FAR AFIELD FROM WHERE WE STARTED.

NOW, THIS IS REALLY IMPORTANT BECAUSE THE INITIAL PREMISE WAS THAT IT WAS RELEVANT TO THE RICO PATTERN.  NOW NIC HAS BACKED AWAY FROM THAT PREMISE.  THEY HAVE SEEN THE DISCOVERY.  THEY'VE SEEN ALL THE EVIDENCE THAT WE HAVE PRODUCED -- 5,000-PLUS PAGES OF DOCUMENTS, YOUR HONOR.  AND THEY KNOW THAT THIS WAS NOT A SHAM CORPORATION OR A SHELL CORPORATION FORMED SOLELY TO PURSUE FRAUDULENT CLAIMS.

SO NOW THEY'RE FOCUSING IN ON ONE PRODUCT INVOLVING THREE LAWSUITS, AND THEY CONTEND THAT THAT IS SHAM

LITIGATION.  THAT'S AN ENTIRELY DIFFERENT ISSUE, AND BECAUSE OF THAT, THE LAW OF THE CASE DOES NOT APPLY.  WE'RE DEALING WITH A NEW BEAST, AND THE COURT'S PRIOR RULINGS ARE COMPLETELY DIFFERENT AND BASED ON A DIFFERENT PREMISE.

THE OTHER IMPORTANT FACTOR HERE IS THAT WHEN THESE PRIOR ISSUES WERE BRIEFED BEFORE THE COURT AND WHEN ARGUMENT WAS PRESENTED TO THE COURT, ON BEHALF OF THE DEFENDANTS WE ATTEMPTED TO ADDRESS THE NOERR-PENNINGTON IMMUNITY, AND YOUR HONOR DISTINGUISHED THAT IMMUNITY AS BEING NOT APPLICABLE HERE BECAUSE AGAIN WE'RE NOT DEALING WITH SHAM LITIGATION.

THE COURT NOTED IN DOCKET 299 THAT THE ONLY ISSUE WAS WHETHER FERRELL, REID, AND WEISS FORMED STRATALUZ TO UNDERTAKE FRAUDULENT LITIGATION.  IT WAS A FRAUDULENT FORMATION ISSUE -- AGAIN, YOUR HONOR, COMPLETELY DIFFERENT FROM WHERE WE ARE NOW.

THE COURT:  BUT IF FRAUDULENT FORMATION IS ESTABLISHED, ISN'T IT REASONABLE TO PURSUE WHAT ACTS WERE TAKEN IN FURTHERANCE OF THE FRAUDULENT FORMATION, NAMELY, BRINGING FRAUDULENT LAWSUITS?

MR. DARNELL:  IF FRAUDULENT FORMATION IS ESTABLISHED, IT DOESN'T MEAN THAT EVERY LITIGATION IS FRAUDULENT.

THE COURT:  I AGREE WITH THAT.

MR. DARNELL:  AND BY THE WAY, YOUR HONOR, I DISAGREE WITH THE CONTENTION OR THE CONCLUSION THAT

FRAUDULENT FORMATION HAS BEEN ESTABLISHED.  I UNDERSTAND THAT THERE IS SOME PRIOR RULINGS THAT MAY TOUCH UPON THAT ISSUE.

I BELIEVE THE EVIDENCE THAT WE HAVE SUBSEQUENTLY PRODUCED IN THIS CASE PROVE THAT TO NOT BE THE TRUTH, AND THAT'S WHY NIC HAS COMPLETELY BACKED AWAY FROM THAT POSITION.  THEY'RE NOT ARGUING FRAUDULENT FORMATION.  IT'S NOWHERE IN THEIR BRIEFS IN THE LATEST ROUND OF BRIEFING BEFORE THE COURT.

THEY'RE REALLY FOCUSING ON PROMAXYL.  THEY'RE NOT FOCUSING ON WHAT HAPPENED WITH THE CORPORATE FORMATION E-MAIL.  THEY SAY NOTHING ABOUT IT.  IT'S ONLY ABOUT PROMAXYL LITIGATION WHICH OCCURRED TWO YEARS AFTER FORMATION.  I CORRECT MYSELF.  IT MIGHT BE CLOSER TO 18 MONTHS.

THE COURT:  OKAY.

MR. DARNELL:  SO THE REASON THIS IS MATERIAL IS THAT THE COURT ITSELF FOUND THAT THERE WAS A MATERIAL DIFFERENCE BETWEEN FRAUDULENT FORMATION AND SHAM LITIGATION, THE FORMER OF WHICH DID NOT TRIGGER NOERR-PENNINGTON BUT THE LATTER OF WHICH DID.

SO IF YOU HAVE SHAM LITIGATION, THEN THE COURT HAS TO ADDRESS NOERR-PENNINGTON.  IF YOU'RE JUST TALKING ABOUT FRAUDULENT FORMATION --

THE COURT:  RIGHT.

MR. DARNELL: -- BASED ON WHAT WE HAVE IN DOCKET 299, WE DON'T HAVE TO GO THERE. THE COURT DID NOT GO THERE. THE BOTTOM LINE IS THAT SINCE THE COURT DID NOT GO THERE, THEY CANNOT AS A MATTER OF LAW CONSTITUTE THE LAW OF THE CASE. THE TENTATIVE RULING WITH RESPECT TO THAT PARTICULAR ISSUE IS ERRONEOUS, AND WE WOULD ASK THE COURT TO RECONSIDER THAT.

NOW, THE SECOND ISSUE THAT I THINK IS REALLY IMPORTANT IS THAT UNDER ZOLIN, THE SPECIAL MASTER AND THE COURT IS REQUIRED TO RECONSIDER PROPORTIONALITY BEFORE ORDERING IN-CAMERA REVIEW. IN DOCKET 299, THIS COURT SPECIFICALLY REFERRED TO THE CRITERIA THAT MUST BE ESTABLISHED FOR CRIME-FRAUD AND THE CRITERIA THAT MUST BE ESTABLISHED UNDER ZOLIN FOR IN-CAMERA REVIEW.

SPECIFICALLY AT PAGE 14 THE COURT NOTED THAT FOR IN-CAMERA REVIEW, THE PARTIES SEEKING TO VITIATE PRIVILEGE MUST FIRST SHOW, QUOTE, "A FACTUAL BASIS ADEQUATE TO SUPPORT A GOOD-FAITH BELIEF BY A REASONABLE PERSON THAT IN-CAMERA REVIEW OF THE MATERIALS MAY REVEAL EVIDENCE TO ESTABLISH THE CLAIM THAT THE CRIME-FRAUD EXCEPTION APPLIES," SO WHETHER A REASONABLE TRIER OF FACT MIGHT BELIEVE THAT THIS COULD RESULT IN EVIDENCE ESTABLISHING CRIME-FRAUD.

BUT THE COURT WENT ON TO NOTE AT DOCKET 299, PAGE 14, WHICH WOULD BE THE LAW OF THE CASE HERE, THAT AFTER THE PARTY MAKES A THRESHOLD SHOWING BUT BEFORE IN-CAMERA

10

REVIEW IS ACTUALLY ORDERED, THE DISTRICT COURT MUST ALSO BALANCE THREE FACTORS.  AND IT SPECIFICALLY CITED ZOLIN FOR THAT, THE FIRST FACTOR BEING, QUOTE, "THE VOLUME OF THE MATERIALS THE DISTRICT COURT HAS BEEN ASKED TO REVIEW, THE SECOND FACTOR BEING THE RELATIVE IMPORTANCE TO THE CASE OF THE ALLEGED PRIVILEGED INFORMATION."

THAT'S A VERY IMPORTANT ISSUE.  I'M GOING TO COME BACK TO THAT.  THE THIRD FACTOR BEING THE LIKELIHOOD THAT THE EVIDENCE PRODUCED THROUGH IN-CAMERA REVIEW TOGETHER WITH OTHER AVAILABLE EVIDENCE THEN BEFORE THE COURT WILL ESTABLISH IF THE CRIME-FRAUD EXCEPTION APPLIES.

GETTING BACK TO THE SECOND FACTOR, RELATIVE IMPORTANCE OF THE INFORMATION, I READ THE WORDS RELATIVE IMPORTANCE AS BEING NO DIFFERENT FROM RELEVANT AND PROPORTIONALITY READ TOGETHER.  THEY ARE ESSENTIALLY ONE AND THE SAME.  IF THERE IS NO RELATIVE IMPORTANCE, THAT INFORMATION BY DEFINITION --

THE COURT:  ARE YOU CONCEDING THE IMPORTANCE BUT JUST NOT THE RELATIVE IMPORTANCE?

MR. DARNELL:  AM I CONCEDING THE IMPORTANCE?  NO.

THE COURT:  OKAY.

MR. DARNELL:  ACTUALLY I THINK THEY LOOKED AT SHAM LITIGATION HERE AND WHETHER WHAT HAPPENED IN PROMAXYL WITH RESPECT TO A COMPETITOR LANHAM ACT CASE.  AND THE DISTINCT ISSUES THAT ARE RAISED BY THOSE TYPES OF CLAIMS IS NOT

11

RELEVANT TO WHAT HAPPENED IN THE EIGHT UNDERLYING CONSUMER CASES. I THINK THEY ADMIT AS MUCH.

THEY ORIGINALLY WERE ARGUING THAT FRAUDULENT FORMATION IS RELEVANT TO A RICO PATTERN. WE DON'T SEE THAT ARGUMENT AT ALL ANYMORE. NOW THEY'RE ARGUING PROMAXYL LITIGATION, THAT'S ENOUGH TO ESTABLISH SOME KIND OF INTENT. I DON'T KNOW WHAT THAT MEANS. I'M GOING TO GET INTO THAT, THE AMBIGUITY OF WHICH DOES NOT SATISFY RULE 404(B).

BUT I DO NOT BELIEVE THAT THEY'RE ARGUING THAT PROMAXYL LITIGATION IS A NEW PREDICATE ACT OR THAT IT'S PART OF THE PATTERN. IT'S SET FORTH NOWHERE IN THE SECOND AMENDED COMPLAINT. WE SEE NOTHING ABOUT PROMAXYL. WE SEE NOTHING ABOUT STRATALUZ. WE SEE NOTHING ABOUT COMPETITOR LANHAM ACT CLAIMS.

SO THIS IS A NEW BEAST, AND YOU HAVE TO LOOK AT THAT AND SAY, OKAY, HOW DOES THIS NEW BEAST -- HOW IS IT RELEVANT? HOW IS IT PROPORTIONAL TO WHAT WE'RE DEALING WITH IN THE EIGHT CONSUMER CLAIMS?

I ASK YOU TO PUT THAT QUESTION TO OPPOSING COUNSEL, BECAUSE IT'S NOT. THE ONLY ARGUMENT THAT THEY HAVE PRESENTED IN THEIR BRIEF IS THAT IT'S SOMEHOW RELEVANT TO INTENT. I RESPECTFULLY DISAGREE WITH THAT. I DON'T THINK THAT THERE IS ANY NEXUS BETWEEN WHAT HAPPENED IN A LANHAM ACT CASE AND WHAT HAPPENED IN THE EIGHT UNDERLYING CONSUMER CASES. I DON'T THINK THAT THE CONNECTION IS THERE AT ALL

12

THAT WOULD SATISFY ANY TYPE OF 404(B) ALTERNATIVE BASIS OR ADMITTING THAT EVIDENCE, AND I'M NOT HEARING ANYTHING ABOUT HOW THEY WANT TO AMEND THEIR COMPLAINT.

THE COURT:  BUT YOU DON'T HAVE TO AMEND YOUR COMPLAINT TO PLEAD 404(B) BAD ACTS.

MR. DARNELL:  YOU DON'T, BUT YOU HAVE TO SATISFY THE REQUIREMENTS OF 404(B) IN ORDER FOR THEM TO BE RELEVANT AND ADMISSIBLE.

THE COURT:  RIGHT, BUT WE'RE AT THE DISCOVERY STAGE.  I MEAN, IF I OVERRULE THE OBJECTION, I SUSPECT I WILL SEE THIS ON A MOTION IN-LIMINE CONTESTING THE ADMISSIBILITY UNDER 404(B)(2).

MR. DARNELL:  WE'RE AT THE DISCOVERY STAGE AT THE END OF LITIGATION ESSENTIALLY.  WE'RE ALMOST AT THE CLOSE OF DISCOVERY.  WE'RE AT THE DISCOVERY STAGE ON A CRIME-FRAUD MOTION THAT MUST SATISFY ZOLIN, WHICH MEANS THEY HAVE TO IDENTIFY HOW THIS IS IMPORTANT, THE RELATIVE IMPORTANCE, AND SATISFY THE OTHER ELEMENTS.

THIS COURT HAS SPECIFICALLY NOTED AT PAGE 6 OF THE TENTATIVE THAT, QUOTE, "IT IS ALSO STILL UNCLEAR FOR WHAT PURPOSE NIC INTENDS TO USE SUCH EVIDENCE."

IF NIC CAN'T IDENTIFY THE PURPOSE, IF THE COURT DOESN'T KNOW THE PURPOSE, IF THE SPECIAL MASTER SAYS NOTHING ABOUT THE ZOLIN THREE FACTORS IN HER ORDER, AND IF ZOLIN APPEARS NOWHERE IN THIS COURT'S ORDER, HOW CAN THERE BE

13

COMPLIANCE WITH THE ZOLIN REQUIREMENTS?  THERE CAN'T.

SO I THINK IT'S ERRONEOUS BECAUSE THE SHIFTING PROMAXYL ALLEGATIONS DO NOT ESTABLISH OR SHOW WHAT THE LATEST DISCOVERY IS SUPPOSED TO BE SOUGHT OR OFFERED FOR. THE COURT ACKNOWLEDGES THAT IT DOESN'T KNOW.  THE SPECIAL MASTER'S ORDER IN DOCKET 603 SAYS ABSOLUTELY NOTHING ABOUT ZOLIN, AND THIS COURT DOESN'T CONDUCT THE ANALYSIS.

SO AS A MATTER OF LAW IN A PROCEDURE UNDER ZOLIN, I THINK WE NEED TO FIX THIS.  I THINK THE WAY TO FIX IT IS AT A MINIMUM FORCE NIC TO EXPLAIN THE BASIS FOR THIS DISCOVERY, HOW IT'S RELEVANT, THE RELATIVE IMPORTANCE, AND WHAT IT ESTABLISHES, IF IT'S A MATERIAL ELEMENT IN RICO, A PATTERN, OR IF IT'S SOME OTHER BASIS.

SO I THINK IT EITHER HAS TO SUPPORT THE CLAIM FOR LIABILITY UNDER RICO, WHICH I THINK WOULD REQUIRE AN AMENDMENT TO THE SECOND AMENDED COMPLAINT, OR IT HAS TO BE OFFERED FOR SOME OTHER PURPOSE UNDER 404(B).  IT'S GOT TO BE ONE OR THE OTHER.  PLAINTIFF CAN'T HAVE IT BOTH WAYS AS THEY SEEM TO BE HEDGING.

THE COURT:  WHY NOT?

MR. DARNELL:  WHY NOT?  BECAUSE THE COURT HAS TO ESTABLISH HOW IT IS IMPORTANT TO THE CASE UNDER ZOLIN, AND IT CANNOT DO THAT UNLESS IT KNOWS WHAT THE PREMISE OR WHAT THE FOCUS IS, WHY THIS EVIDENCE IS BEING SOUGHT, WHAT THE DISCOVERY IS SUPPOSED TO DO.

14

THE REASON IT CANNOT DO THAT ALSO, YOUR HONOR, IS DISCOVERY IS CLOSED.  WE'VE ALREADY HAD ALL EXPERTS PREPARE -- FIRST, BE DESIGNATED.

THE COURT:  BUT ISN'T SOME DISCOVERY CONTINGENT UPON THE ULTIMATE DISPOSITION OF THE CRIME-FRAUD EXCEPTION?

MR. DARNELL:  I BELIEVE THE ONLY DISCOVERY THAT'S CONTINGENT IS DEPOSITIONS OF MY CLIENT.

THE COURT:  RIGHT.

MR. KATZENELLENBOGEN:

MR. DARNELL:  BUT, YOUR HONOR, THE DEFENDANTS BECAUSE OF THESE SHIFTING ALLEGATIONS, THE CHANGE IN THEORIES, WE HAVEN'T BEEN GIVEN THE OPPORTUNITY TO EVEN PRESENT A DEFENSE THROUGH EXPERTS ON A LANHAM ACT CASE, WHICH IS VERY COMPLEX, WHICH HAS A NUMBER OF ISSUES INVOLVED THAT ARE SO FAR REMOVED FROM THE UNDERLYING ALLEGATIONS.

SO WE'RE BEING SEVERELY PREJUDICED BY THE SHIFTING ALLEGATIONS OF THE PLAINTIFF AT THIS LATE HOUR, AND THE PLAINTIFF HAS NOT ESTABLISHED WHAT IS REQUIRED FOR IN-CAMERA REVIEW UNDER ZOLIN.  I RESPECTFULLY BELIEVE THAT UNDER THE COURT'S PRIOR RULINGS, WHICH HAVE NOT ADDRESSED NOERR-PENNINGTON, THAT YOU DO HAVE TO ESTABLISH SHAM LITIGATION IN ORDER TO GET AROUND THAT IMMUNITY IF THAT'S A BASIS FOR LIABILITY.

THE COURT:  BUT THE COURT HAS REJECTED THAT.  I MEAN, THE CASES GO THE OTHER WAY.  BUT IT SEEMS TO ME THAT

15

NOERR-PENNINGTON IS NOT AN EVIDENTIARY EXCLUSION.  IT'S AN EXCLUSION FOR LIABILITY WHICH CAN BE DEALT WITH DOWN THE LINE IN A NUMBER OF DIFFERENT WAYS, INCLUDING, AS THE TENTATIVE SUGGESTS, POTENTIAL PRETRIAL MOTION WORK.  BUT IT SEEMS TO ME IF THEY MAKE OUT A COLORABLE SHOWING OF A SHAM EXCEPTION, THAT WE DON'T HAVE TO LITIGATE THAT TO CONCLUSION IN THE DISCOVERY PROCESS.

MR. DARNELL:  WELL, YOUR HONOR, THEY HAVE NOT DONE THAT.  THE SPECIAL MASTER REFUSED TO EVEN GO DOWN THAT ROAD. IT WOULD BE ONE THING IF --

THE COURT:  BUT I'M SUGGESTING THAT WE DON'T HAVE TO DO THAT IN THE DISCOVERY PROCESS.

MR. DARNELL:  I WOULD RESPECTFULLY DISAGREE.  I DON'T THINK THE CASES CAN BE READ TO ESSENTIALLY SWALLOW UP THE IMMUNITY THAT COMES WITH NOERR-PENNINGTON.

THE COURT:  IT DOESN'T SWALLOW IT.  IT JUST RECOGNIZES IT AT THE APPROPRIATE POINT AS A LIABILITY EXCLUSION, NOT AN EVIDENTIARY EXCLUSION.

MR. DARNELL:  I THINK THAT WHEN YOU READ THE CRIME-FRAUD REQUIREMENTS UNDER ZOLIN, THE THIRD OF WHICH ESSENTIALLY REQUIRES THAT THE LIKELIHOOD THAT THE EVIDENCE PRODUCED FOR IN-CAMERA REVIEW WILL ESTABLISH THE CRIME-FRAUD EXCEPTION APPLIES.

IF THEIR CRIME-FRAUD BASED ON PETITIONING ACTIVITY IS THAT THE LITIGATION ITSELF CONSTITUTES SHAM LITIGATION

16

AND THEY'RE SEEKING TO SOMEHOW IMPOSE LIABILITY UPON MR. FERRELL, MR. REID, AND NTG FOR THAT ASSOCIATED ACTIVITY WITH STRATALUZ IN THIS CASE, THAT IS A LIABILITY ARGUMENT. IT'S NOT AN ADMISSIBILITY OR AN EVIDENCE ARGUMENT.

THE COURT:  BUT MY POINT IS LIABILITY ARGUMENTS DON'T COME INTO PLAY AT THIS POINT.

MR. DARNELL:  THEY DO COME INTO PLAY WHEN THE COURT IS REQUIRED TO LOOK AT THE RELATIVE IMPORTANCE TO THE CASE OF THE INFORMATION, THE VOLUME OF THE MATERIALS, AND THE LIKELIHOOD THAT THE EVIDENCE WILL ESTABLISH CRIME-FRAUD BECAUSE THEIR CRIME-FRAUD HERE IS SHAM LITIGATION.

SO THEY HAVE TO -- IN ORDER TO ESTABLISH THE THREE ELEMENTS UNDER ZOLIN, THEY HAVE TO ESTABLISH CRIME-FRAUD AND THEY HAVE TO ESTABLISH IT THROUGH SHAM LITIGATION.  THAT'S THEIR ALLEGATION.

THE COURT:  RIGHT, BUT THE QUESTION IS WHEN.  I DON'T THINK IT'S APPROPRIATE TO IMPOSE A DISPOSITIVE DETERMINATION STANDARD AT THE DISCOVERY STAGE.  THAT CAN BE DEALT WITH DOWN THE ROAD.  WE'RE TALKING ABOUT DO THEY GET THE DISCOVERY, NOT WHETHER THE DEFENDANTS ARE IMMUNE FROM LIABILITY FOR BRINGING THOSE LAWSUITS OR HAVING SOME INVOLVEMENT IN THEM.

MR. DARNELL:  AND I'M NOT ARGUING ABSOLUTE IMMUNITY.  WHAT I AM ARGUING, YOUR HONOR, IS --

THE COURT:  WELL, I THINK YOU'RE BACK-DOORING IN

HE REQUIREMENT WITH RESPECT TO PROOF OF THE CRIME-FRAUD

EXCEPTION THAT'S NOT THERE AND NOT NECESSARY FOR AN

IN-LIMINE REVIEW UNDER THE CRIME-FRAUD EXCEPTION.

MR. DARNELL:  I RESPECTFULLY DISAGREE.  I DON'T

THINK I'M TRYING TO BACK-DOOR.  I'M JUST TRYING TO APPLY THE

THREE FACTORS THAT THE COURT HAS TO BALANCE UNDER ZOLIN, ONE

OF WHICH IS THE RELATIVE IMPORTANCE.  AND IF IT'S NOT

RELEVANT TO ESTABLISHING LIABILITY, IT CANNOT BE RELATIVELY

IMPORTANT TO THE CASE.

AND IF WHAT WE'RE TALKING ABOUT HERE IS SOMETHING

THAT'S COMPLETELY DIFFERENT FROM WHAT WE'RE TALKING ABOUT IN

THE EIGHT UNDERLYING CASES AND THE ONLY REASON THAT IT'S

BEING OFFERED IS FOR SOME TYPE OF, I GUESS, UNIQUE INTENT OR

KNOWLEDGE EXCEPTION UNDER 404(B), I THINK YOU HAVE TO

CLOSELY ANALYZE THAT.

AND THE CASE LAW SUPPORTS THAT IN THE CASES THAT

WE PRESENTED TO YOUR HONOR FOR WHY 404(B) NEEDS TO BE

CLOSELY SCRUTINIZED.  AND THE PLAINTIFF HAS THE BURDEN UNDER

THOSE CIRCUMSTANCES TO SHOW THAT IT'S NOT PROPENSITY.  IF

YOU'RE ARGUING THAT, WELL, THEY LIED -- THIS IS IN THE

ALLEGATION, I THINK -- THEY LIED IN ONE CASE.  THEY MUST

HAVE LIED IN THE OTHER.  THAT'S CHARACTER EVIDENCE.  THAT'S

PROPENSITY, AND THAT'S NOT ALLOWED UNDER 404(B).

THE WORD PATTERN IS NOT IN 404(B).  SO THE INTENT

HAS TO BE -- IN ORDER TO HAVE 404(B) EVIDENCE RELEVANT AND

18

ADMISSIBLE, THE INTENT MUST BE SUFFICIENTLY -- THERE MUST BE A SUFFICIENT NEXUS BETWEEN THE INTENT IN ONE ACT AND THE INTENT IN ANOTHER.  AND I DON'T THINK WE HAVE THAT.

NOW, I JUST WANT TO FOLLOW UP ON THAT POINT.  THE NINTH CIRCUIT CASE IN UNITED STATES VERSUS BURTON SPECIFICALLY HOLDS -- THAT'S AT 489 F.3D 935 -- THAT WHEN YOU'RE TALKING ABOUT 404(B)(2) EVIDENCE, THE PROPONENT OF THE EVIDENCE MUST, QUOTE, "IDENTIFY THE SPECIFIC PURPOSE OR PURPOSES FOR WHICH THE PARTY OFFERS THE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS."

AND THEN THE COURT WENT ON TO HOLD THAT THE COURT MUST THEN DETERMINE WHETHER THE IDENTIFIED PURPOSE IS MATERIAL, THAT IS, WHETHER IT'S AT ISSUE IN THIS CASE.

I THINK THAT WHEN YOU READ THAT NINTH CIRCUIT REQUIREMENT ALONG WITH THE REQUIREMENTS UNDER ZOLIN, THAT YOU HAVE TO CONDUCT THIS ANALYSIS IN THE UNIQUE CRIME-FRAUD SETTING.  I'M NOT ASKING FOR A BROAD RULE TO BE APPLIED ACROSS ALL DISCOVERY THAT SAYS PROVE YOUR CASE BEFORE YOU CAN CONDUCT ANY DISCOVERY.

THE COURT:  BUT YOU'RE SAYING PROVE THE ADMISSIBILITY UNDER 404(B) BEFORE YOU GET DISCOVERY UNDER THE CRIME-FRAUD EXCEPTION, RIGHT?

MR. DARNELL:  I'M SAYING --

THE COURT:  ISN'T THAT WHAT YOU'RE SAYING?

MR. DARNELL:  IF THAT'S THE SOLE BASIS --

19

THE COURT:  YOU HAVE TO PROVE THAT THE EVIDENCE WILL BE ADMISSIBLE UNDER 404(B) BEFORE YOU GET THE EVIDENCE, THE DISCOVERY ON THE CRIME-FRAUD EXCEPTION.  IS THAT YOUR POINT?

MR. DARNELL:  NO, IT'S NOT, YOUR HONOR.

THE COURT:  OKAY.

MR. DARNELL:  I WOULD SLIGHTLY MODIFY THAT, AND MAYBE IT'S SOMETHING THAT YOU MIGHT THINK ABOUT.  WHAT I WOULD SAY IS THAT THE PLAINTIFF HAS TO IDENTIFY THE SPECIFIC PURPOSE FOR WHICH IT'S INTENDED TO BE OFFERED UNDER 404(B)(2) SO THAT THE COURT COULD THEN CONDUCT THE PROPER ZOLIN ANALYSIS AND DETERMINE WHETHER THAT INFORMATION, HOW IMPORTANT IS IT TO THE CASE AND DOES IT SATISFY PROPORTIONALITY.

UNLESS THE PLAINTIFF DOES THAT, THE COURT IS BACKING ITS WAY INTO A CRIME-FRAUD IN-CAMERA REVIEW THAT'S SPECIFICALLY BARRED OR AT LEAST NOT ALLOWED UNDER THE REQUIREMENTS OF ZOLIN.

YOUR HONOR, I JUST WANT TO CLARIFY A COUPLE POINTS AS IT RELATES TO THE TENTATIVE AND AS IT RELATES TO WHERE WE ARE IN THIS CASE.

FIRST, AT PAGE 7 OF THE TENTATIVE, THE COURT NOTES THAT "RESOLUTION OF NOERR-PENNINGTON IMMUNITY MAY BE POSSIBLE UPON A MOTION FOR SUMMARY JUDGMENT."  THAT'S INCORRECT.  WE DON'T HAVE THE ABILITY TO FILE A MOTION FOR

20

SUMMARY JUDGMENT BASED UPON STRATALUZ OR PROMAXYL OR ANY OF THOSE ISSUES BECAUSE THEY'RE NOT IDENTIFIED ANYWHERE IN THE OPERATIVE PLEADING.

THE COURT:  WELL, WHY IS THAT?  I MEAN, IT'S CLEAR THAT GIVEN THE LEEWAY TO DO SO, IF PLAINTIFF WANTS TO OFFER EVIDENCE OF THESE ACTS, WHY CAN'T YOU BRING A MOTION FOR PARTIAL SUMMARY JUDGMENT TO EXCLUDE THEM -- IN ESSENCE, AN EARLY IN-LIMINE MOTION?

MR. DARNELL:  WELL, THAT MIGHT BE AN EARLY IN-LIMINE MOTION, BUT A MOTION FOR SUMMARY JUDGMENT TO ME IS BASED UPON THE ALLEGATIONS IN THE PLEADINGS.  WE DON'T HAVE AN ALLEGATION IN THE PLEADINGS DEALING WITH STRATALUZ OR PROMAXYL.

THE COURT:  WELL, IT SEEMS TO ME THAT WHATEVER THE PROCEDURAL VEHICLE IS, IF YOU'RE ON NOTICE THAT PLAINTIFF INTENDS TO PRESENT A PARTICULAR THEORY IN THE EVIDENCE, WHETHER DIRECT LIABILITY OR 404(B), THAT THERE IS A PROCEDURAL VEHICLE OUT THERE SHORT OF TRIAL FOR YOU TO BRING THAT ISSUE TO THE COURT.

MR. DARNELL:  I DON'T THINK I'M ON NOTICE.

THE COURT:  WELL, YOU'RE NOT.  I MEAN, WHAT ARE WE TALKING ABOUT?

MR. DARNELL:  I WANT TO KNOW WHAT THE BASIS OF THIS IS, YOUR HONOR.  I THINK AS REPRESENTING A DEFENDANT --

THE COURT:  WELL, WAIT A MINUTE.  YOU KNOW THAT

THEY HAVE INTENTIONS TO PURSUE THE PROMAXYL LITIGATION AS A 404(B) MATTER.  ARE YOU NOT AWARE OF THAT?

MR. DARNELL:  I'M AWARE OF A --

THE COURT:  ARE YOU AWARE OF THAT?

MR. DARNELL:  YOUR HONOR, IF I COULD ANSWER THE QUESTION.

THE COURT:  YES.  PLEASE, DO.  YES OR NO?

MR. DARNELL:  NO, NOT AS YOU PHRASED IT, YOUR HONOR.  I WOULD RESPECTFULLY DISAGREE WITH THAT.  WHAT I'M AWARE OF IS A VAGUE ALLEGATION ABOUT INTENT.  I DON'T KNOW HOW THAT SATISFIES 404(B).

THE COURT:  BUT MY POINT IS YOUR OWN RECITATION, ALTHOUGH SOMEWHAT VAGUE, OF WHAT THEIR ALLEGATION OF INTENDED USE IS IS SUCH THAT YOU'RE IN A PROCEDURAL POSTURE TO BRING THAT ISSUE BEFORE THE COURT TO EXCLUDE THE EVIDENCE, WHETHER IT'S ON A SUMMARY JUDGMENT MOTION OR AN EARLY IN-LIMINE MOTION.

MR. DARNELL:  I DON'T THINK I HAVE ENOUGH SPECIFICITY TO PRESENT AN ARGUMENT THAT WOULD KNOCK THIS OUT, YOUR HONOR.  AND THE PROBLEM --

THE COURT:  CAN'T YOU PRESENT THAT VERY ARGUMENT, THAT THERE IS INSUFFICIENT NEXUS TO ADMIT EVIDENCE OF THE PROMAXYL LITIGATION?  I MEAN, ISN'T THAT A 404(B) ARGUMENT THAT WOULD TYPICALLY BE PRESENTED IN A MOTION IN LIMINE AT THE PRETRIAL CONFERENCE?  BUT YOU CAN BRING MOTIONS IN

22

LIMINE ANYTIME.

MR. DARNELL: I APPRECIATE THAT CLARIFICATION. WE DO INTEND TO DO THAT, YOUR HONOR.

THE COURT: OKAY.

MR. DARNELL: I DIDN'T INTEND TO DO IT SPECIFICALLY WITH RESPECT TO THIS ISSUE BECAUSE I WAS HOPING THAT BASED UPON THE ZOLIN FACTORS THAT THE REQUIREMENTS AS I READ THEM, THAT THE SPECIAL MASTER HAS TO AT LEAST PUT THE PLAINTIFF TO THE TASK TO IDENTIFY WHAT THIS IS INTENDED TO BE USED FOR SO THAT THE COURT CAN THEN ASSESS THE RELATIVE IMPORTANCE OF PROPORTIONALITY AND DECIDE WHETHER FURTHER BRIEFING ON CRIME-FRAUD ISSUES WHICH ARE CONTINUING, FURTHER BRIEFING ON STRATALUZ DISCOVERY WHICH IS PENDING -- WE HAVE ANOTHER MOTION AT DOCKET 641 THAT'S GOING TO BE HEARD NEXT MONTH ON STRATALUZ -- IS NECESSARY.

NOW, I ALSO NOTE THAT PLAINTIFF'S SHIFTING ALLEGATIONS ARE AMBIGUOUS BECAUSE IN DOCKET 641 AT PAGE 8, FOOTNOTE 1, NIC MAKES A VAGUE ALLEGATION THAT STRATALUZ IS RELEVANT TO NIC'S RICO CLAIMS.

SO THIS GETS BACK TO THE HEDGING ARGUMENT. WHICH ONE IS IT? I DON'T KNOW WHICH ONE IS IT. IT'S NOT SET FORTH IN THE SECOND AMENDED COMPLAINT. I BELIEVE AS A DEFENDANT THAT YOU'RE ENTITLED TO HAVE MORE NOTICE THAN THAT, ESPECIALLY IN THE CONTEXT OF A CRIME-FRAUD MOTION AND THE REQUIREMENTS OF ZOLIN.

23

THE COURT:  OKAY.  I THINK YOU NEED TO WRAP UP, PLEASE.

MR. DARNELL:  I WILL, YOUR HONOR.

THE LAST POINT THAT I WOULD LIKE TO MAKE IS THAT THE SHIFTING ALLEGATIONS IN THIS CASE HAVE MADE MANAGEMENT OF THIS CASE AND TRIAL PREPARATION NEARLY IMPOSSIBLE.

I APOLOGIZE FOR MY FRUSTRATION AND MY TONE, AND I SINCERELY MEAN THAT, BUT MY FRUSTRATION IS VERY, VERY SINCERE IN THE FACT THAT HOW MUCH DISCOVERY WE'VE HAD TO DEAL WITH AND THE AMOUNT OF MONEY THAT HAS HAD TO BE SPENT AND THE BURDEN ON THIS COURT AND THE PARTIES' RESOURCES.

WHAT WE'RE DEALING WITH NOW IS A CASE WHERE I DON'T KNOW --

THE COURT:  YOU KNOW, I WOULD HAVE THOUGHT THAT GIVEN THAT OBSERVATION, WHICH IS PROBABLY TRUE ON BOTH SIDES OF THE FENCE, THE PARTIES LONG AGO WOULD HAVE TAKEN A STEP BACK IN AN ATTEMPT TO RESOLVE THIS.  WHEN I LAST HEARD A NUMBER, THE MORE OR LESS AGREED ACTUAL DAMAGES WERE NO MORE THAN A QUARTER OF A MILLION DOLLARS, PLUS OR MINUS.

MR. DARNELL:  YES, YOUR HONOR.

THE COURT:  IT GIVES ME PAUSE.

MR. DARNELL:  IT GIVES ME PAUSE, TOO.

THE COURT:  IT GIVES ME PAUSE TO SEE THE EXTENT OF THE EXTENSIVE EXTENDED LITIGATION ON VIRTUALLY EVERY ORDER THAT THE SPECIAL MASTER ISSUES.  YOU KNOW, THE AMOUNT IN

24

CONTROVERSY LONG AGO I AM SURE WAS EXCEEDED BY BOTH SIDES IN

TERMS OF THEIR FEES AND EXPENSES, IF NOT MULTIPLE TIMES.

SO, YOU KNOW, I'VE JUST WONDERED ALL ALONG WHY

REASONABLE MINDS COULDN'T COME TO A RESOLUTION OF THIS.

MR. DARNELL:  I HAVE WONDERED THE SAME.

THE COURT:  BUT THAT'S NOT THE POINT BEFORE THE

COURT AT THE MOMENT.

MR. DARNELL:  THE POINT BEFORE THE COURT THAT I

WANT TO MAKE RIGHT NOW -- AND I DON'T DISAGREE WITH

EVERYTHING, ANYTHING YOU JUST SAID.  I TOTALLY DO AGREE WITH

IT.  I WOULD BE HAPPY TO OFFER YOU MORE INFORMATION IF YOU'D

LIKE.

THE COURT:  WELL, I DON'T THINK I'M ENTITLED TO

IT.

MR. DARNELL:  I UNDERSTAND.

THE POINT IS WHERE WE ARE NOW AND HOW ARE WE GOING

TO GET THIS CASE MOVING THROUGH TRIAL.  I HAVE A SIGNIFICANT

PROBLEM BECAUSE I DON'T KNOW WHAT THE PROMAXYL RELATIONSHIP

IS TO THIS CASE OR HOW IT'S RELEVANT, IF IT'S STILL RELEVANT

TO A PATTERN.  I DON'T THINK IT IS.  OR IF CORPORATE

FORMATION IS STILL AT ISSUE.  I DON'T THINK IT IS.

THE OTHER PROBLEM THAT I HAVE IS THAT THE

DISCLOSURES THAT I CONTINUE TO GET AND THE SUPPLEMENTAL

DISCLOSURES THAT I CONTINUE TO RECEIVE IN THIS CASE ON

BEHALF OF THE DEFENDANTS HAVE NOW LISTED MORE THAN 200 OTHER

25

CASES.

AND IF PROMAXYL IS RELEVANT FOR SOME REASON AND THEY CONTEND 200 OTHER CASES ARE RELEVANT AND THEY'VE LISTED 80 WITNESSES, I DON'T KNOW, YOUR HONOR -- I KNOW THAT YOU SAID THAT THIS IS NOT A SIX-WEEK JURY TRIAL.  I DON'T KNOW HOW WE COULD GET THIS DONE IN SIX MONTHS WITH ALL THE STUFF THAT'S BEING FLOODED THROUGH, AND IT CONTINUES TO SHOW UP IN BRIEFS.

IT'S NOT AS IF THEY'RE NOT USING THESE OTHER ALLEGATIONS IN OTHER CASES REPEATEDLY BEFORE THE COURT AND THEN THEY STAND UP AND SAY THAT'S NOT GOING TO HAPPEN.

SO THE ONLY THING I WOULD ASK IN CLOSING IS THAT, YOU KNOW, IN ADDITION TO THE RELIEF THAT I'VE ARGUED FOR HERE TODAY, THAT THE COURT SET A CASE MANAGEMENT CONFERENCE SO THAT WE CAN HAVE A TRUE ASSESSMENT, HEAR FROM THE PLAINTIFF ON THE NUMBER OF WITNESSES, THE NUMBER OF EXHIBITS.

I THINK WE SHOULD HAVE EARLY DISCLOSURE OF EXHIBIT LISTS AND WITNESS LISTS FOR TRIAL SO THAT WE CAN UNDERSTAND HOW TO PRESENT A DEFENSE, BECAUSE IF THEY HAVE 80 WITNESSES, YOU KNOW, I'M GOING TO HAVE A NUMBER OF REBUTTAL WITNESSES.

THE COURT:  WHAT, 120?

MR. DARNELL:  NO.

THE COURT:  160?

MR. DARNELL:  I'D HAVE TO SEE WHAT THEIR TRUE LIST

IS.  WE'RE PLAYING GAMES OF MOVING CUPS.  I HAVE NO IDEA.

SO THAT'S WHY I ASK FOR THE COURT'S ASSISTANCE.

THE COURT:  OKAY.

MR. DARNELL:  THANK YOU.

THE COURT:  MR. ARHANGELSKY.

MR. ARHANGELSKY:  THANK YOU, YOUR HONOR.

THE COURT:  HOW DOES THE PROMAXYL LITIGATION LINE UP WITH THE EIGHT CASES THAT THIS CASE IS GOING TO BE PREDICATED ON IN TERMS OF THE RICO PREDICATE ACTS?

MR. ARHANGELSKY:  SURE.

YOUR HONOR, WE DO SEE THIS AS 404(B) TERRITORY IN THIS CAPACITY, AND I DO THINK WE SEE THIS AS AN INFORMATION THAT GOES TO KNOWLEDGE OF THE ATTORNEYS.

THE COURT:  TELL ME SPECIFICALLY HOW THE CASES LINE UP ONE VERSUS THE OTHER IN TERMS OF THE SIMILARITIES THAT THE COURT WOULD HAVE TO FIND IN SUCH EVIDENCE UNDER 404(B)(2).

MR. ARHANGELSKY:  PART OF THE ISSUE THAT WE TAKE -- AND I HAVE TO REVISIT SOME OF THE PROMAXYL FACTS TO GET THERE.  PART OF THE ISSUE WE TAKE IS THAT DEFENSE COUNSEL HAS CONSISTENTLY LOOKED AT THE ALLEGATIONS UNDER THE RICO COUNT TOO MYOPICALLY.

THIS IS A CASE THAT'S FUNDAMENTALLY ABOUT ATTORNEYS THAT HAVE CONTRIVED PLAINTIFFS CASES.  AND, YES, WE HAVE BEEN LIMITED TO THE EIGHT SAC CASES BASED ON

DISCOVERY ORDERS, BUT WE ASK FOR LEAVE TO TAKE INFORMATION ON STRATALUZ BECAUSE WE BELIEVE THAT THAT STILL DOES PROVE THAT THE KNOWLEDGE COMPONENT OF THESE ATTORNEYS WITH RESPECT TO ELEMENTS LIKE INTENT TO DEFRAUD WHEN YOU HAVE A MINDSET ELEMENT THAT GOES TO THE ATTORNEYS' CONDUCT.

HERE YOU HAVE A SITUATION WHERE UNDOUBTEDLY ALL OF THE SO-CALLED FRAUDULENT ACTIVITY THAT WE'VE IDENTIFIED FOR THE COURT IN VARIOUS BRIEFS, IT COMES RIGHT FROM THE ATTORNEYS.

GOING BACK TO THE PROMAXYL SITUATION, YOU HAVE IN THAT CASE A CIRCUMSTANCE WHERE THESE CLAIMS WERE UNQUESTIONABLY FALSE AND, WE BELIEVE, FRAUDULENT.  THIS CAME FROM THE ATTORNEYS, YOU KNOW, THE ORIGINS OF IT.  THEY PURSUED THESE CASES.

THEY SERVED DOZENS OF DEMAND LETTERS ON OTHER CORPORATIONS NATIONWIDE ALL WITHOUT THEIR SO-CALLED BUSINESSMEN, THEIR PARTNERS IN THE BUSINESS, EVEN UNDERSTANDING OR KNOWING ABOUT THE LITIGATION.

THE COURT:  SUPPOSE THE FIRM FILED A SHAM AUTOMOBILE ACCIDENT CASE.  THEY FOUND A MALINGERING PLAINTIFF WHO THEY PROPPED UP AND BROUGHT A SUIT ON THAT PERSON'S BEHALF.  WOULD THAT KIND OF A FRAUDULENT CASE BE ADMISSIBLE IN THIS CASE?

MR. ARHANGELSKY:  WELL, I THINK IN THAT --

THE COURT:  WOULD THAT KIND OF A FRAUDULENT CASE

28

BE ADMISSIBLE IN THIS CASE?

MR. ARHANGELSKY:  WE WOULD ARGUE THAT IT IS.

THE COURT:  OKAY.

MR. ARHANGELSKY:  AND I THINK THAT IT IS BECAUSE IT GOES TO THIS PART OF THE COMMON SCHEME OR PLAN TO CONTRIVE LAWSUITS.  WE HAVE SEEN THIS THROUGH VARIOUS CIRCUMSTANCES.  AND YES, THE LAWSUITS, EACH ONE OF THEM, THEY DIFFER AND THERE'S DIFFERENT CIRCUMSTANCES IN EACH ONE OF THESE CASES, OF COURSE.

BUT PRIMARILY WHAT WE HAVE IS AT ITS CORE ATTORNEYS INITIATING LAWSUITS FROM THE LAW FIRM BASED ON THEIR INVESTIGATIONS ON BEHALF OF WHAT WE DEEM ARE, YOU KNOW, SHELL PLAINTIFFS.  IN THIS CASE YOU HAVE WHAT WE CONSIDER TO BE THE ULTIMATE OF THAT.  THEY CREATED THEIR OWN PLAINTIFF FOR THE PURPOSES OF PURSUING THESE CASES.

AND I THINK IN THAT CONTEXT -- WELL, TO BACK UP, WE HAVE SEEN ARGUMENT BEFORE THE COURT PRIOR THAT THEY ARE -- OF COURSE, THEY POSIT THEY ARE LEGITIMATE ATTORNEYS PURSUING THESE RIGHTEOUS CONSUMER ACTIONS.

I MEAN, I THINK IT'S RELEVANT, TOO, THAT THE --

THE COURT:  BUT YOUR POINT IS STRATALUZ, PROMAXYL, IS NOT -- WELL, THEIR POINT IS IT'S NOT CONSUMER LITIGATION.

MR. ARHANGELSKY:  WELL, IT IS NOT CONSUMER LITIGATION, BUT IT'S ACTUALLY ADVANCING CLAIMS AGAINST OTHER CORPORATIONS OF THE EXACT SAME TYPE THAT THEY CHALLENGE

OTHER CORPORATIONS IN THE CONSUMER CASES.  WE HAVE EVIDENCE I THINK THAT'S LARGELY UNDISPUTED THAT THE CLAIMS THAT THEY MADE WERE COMPLETELY FALSE AND CONTRIVED.

I MEAN, THEY CAN'T SUPPORT ALMOST EVERYTHING THAT THEY SAID ABOUT THE COMPANY IN THESE CLAIMS.  THEY WOULD NEVER HAVE HAD STANDING TO PURSUE THESE ACTIONS.  THESE CASES ARE OUT OF WHOLE CLOTH.  I THINK IN THAT RESPECT, I MEAN, WE CERTAINLY HAVE A GOOD-FAITH ARGUMENT AND I THINK A MERITORIOUS ARGUMENT THAT THIS INFORMATION SHOULD COME IN UNDER 404(B) TO DEMONSTRATE PART OF THIS PLAN, PART OF THE KNOWLEDGE ON THE PART OF THE ATTORNEYS TO SHOW MINDSET WITH RESPECT TO HOW THESE ATTORNEYS WERE OPERATING IN THESE VARIOUS CASES AT THE EXACT SAME TIME.  THE TIMELINE OVERLAPS AT THE SAME POINT.

I ALSO WANT TO NOTE THAT IT'S HARD FOR ME TO SIT HERE NOW AT A DISADVANTAGE AND POSIT A THEORY OF ADMISSIBILITY WHEN WE HAVEN'T EVEN SEEN THE FILES.  SO WHILE I CAN THINK OF A NUMBER OF DIFFERENT MECHANISMS BY WHICH WE WOULD ADMIT THIS CONTENT IF OUR ALLEGATIONS PROVE TO BE TRUE THROUGH THE CRIME-FRAUD PROCESS, AT THIS POINT I'VE NEVER EVEN SEEN THE DOCUMENTS, AND YET IT SOUNDS LIKE I'M BEING FORCED TO DEFEND THE ADMISSIBILITY OF FILES THAT I HAVEN'T YET REVIEWED.

SO FROM THAT POINT I THINK THAT'S AN INHERENT PROBLEM TO COUNSEL'S POSITION, THAT WE SHOULD SOMEHOW JUMP

THROUGH THE HURDLES OF ESTABLISHING TRIAL ADMISSIBILITY WHEN THE ADMISSIBILITY STANDARD IN DISCOVERY IS NOTHING CLOSE TO THAT.  OBVIOUSLY THE STANDARD IN DISCOVERY WOULD BE WHETHER IT'S LIKELY TO LEAD TO ADMISSIBLE EVIDENCE.

THIS COURT RELATED TO THE PROPORTIONALITY CONCERNS.  THIS COURT HAS RULED MULTIPLE TIMES THAT THIS INFORMATION WOULD BE RELEVANT UNDER THE UNDERSTANDING IN DISCOVERY TO ALLEGATIONS WE HAVE IN THIS CASE.

MOST RECENTLY THE COURT OVERRULED THEIR SAME PROPORTIONALITY OBJECTION -- I THINK AT LEAST BY NECESSITY OVERRULED THEIR OBJECTIONS TO OUR MOTION TO FILE THIS INSTANT MOTION.  WE'RE HERE AT A REALLY ODD PROCEDURE.  THE COURT HAS GIVEN US LEAVE TO FILE THE MOTION.  WE HAVE PURSUED THE MOTION.

THEY'VE GOT AN ADVERSE FINDING FROM THE SPECIAL MASTER REQUIRING THEM TO PRODUCE 51 DOCUMENTS THAT MAY PROVIDE PROOF OF CRIME OR FRAUD.  NOW WE'RE HERE ON AN OBJECTION TO A PRELIMINARY ORDER.  WE HAVE NO IDEA WHAT THE FACTS ARE GOING TO SHOW AT THIS POINT.

YOU KNOW, WITH RESPECT TO THE BALANCE OF COUNSEL'S ARGUMENTS ON NOERR-PENNINGTON AND WEAVING THAT IN WITH ZOLIN, AS I HAVE MENTIONED, WE HAVE BRIEFED THESE ISSUES EXTENSIVELY TO THE SPECIAL MASTER.  WE HAVE PROVIDED OUR EVIDENCE CONCERNING THE PROMAXYL LITIGATION.  WE HAVE NOT ABANDONED PRIOR POSITIONS THAT THE CORPORATION WAS FORMED

31

FOR THE PURPOSE OF PURSUING THESE TYPES OF ACTIONS.

THE COURT:  IT JUST ISN'T RELEVANT ON THE MOTION HERE.  IT'S NOT WHAT WE'RE TALKING ABOUT.

MR. ARHANGELSKY:  FAIR ENOUGH.

WITH RESPECT TO -- COUNSEL DID ARGUE THAT THE PROMAXYL LITIGATION ITSELF HAS NO NEXUS TO WHAT WE HAVE ARGUED IN THE PRIOR PLEADINGS.  I JUST WANTED TO CORRECT THAT FOR THE RECORD BECAUSE IT'S IMPORTANT THAT THE COURT UNDERSTAND THAT PROMAXYL HAS ALWAYS BEEN A CENTRAL POINT OF OUR BRIEFING BEFORE THE COURT.  IT WAS BEFORE THE COURT ON THE CONTINUITY MOTION WHICH WE HAD TO RAISE IN OPPOSITION TO A MOTION TO QUASH.

IT'S IMPORTANT FROM OUR PERSPECTIVE TO KNOW THAT MOST OF THE POSITIONS WE HAVE HAD TO TAKE ON THE STRATALUZ DOCUMENTS HAVE COME BEFORE WE'VE EVER EVEN HAD DISCOVERY.

AS I MENTIONED, THE FIRST TIME WE WERE FORCED TO RAISE THESE ISSUES OF CRIME-FRAUD TO GAIN ACCESS TO INFORMATION WAS IN RESPONSE TO A MOTION TO QUASH.  WE FILED A MOTION FOR LEAVE TO TAKE STRATALUZ-RELATED DISCOVERY, AND THAT WAS OBVIOUSLY LATER IN THE CASE.  WE HADN'T EVEN HAD ACCESS TO THE INFORMATION.

IT IS TRUE THAT PERHAPS -- I DON'T KNOW BECAUSE WE HAVEN'T COMPLETED THE PROCESS -- THAT PERHAPS OUR THEORY MAY CHANGE.  BUT WE HAVEN'T COMPLETED OUR DISCOVERY, SO I CAN'T TELL YOU WHETHER OR NOT OUR THEORY ON ADMISSIBILITY MAY

32

CHANGE AT THE END OF THE PROCESS VERSUS WHAT IT IS NOW.

WHAT I CAN SAY IS ON ITS FACE THIS INFORMATION SEEMS RELEVANT TO THE LARGER PATTERN THAT THIS LAW FIRM HAD OF CONTRIVING LAWSUITS FOR PROFIT WHICH ORIGINATED SOLELY FROM THE ATTORNEYS.

ANOTHER ISSUE THAT I SEE IN THIS IDEA OF RELEVANCE, YOU KNOW, FROM A DISCOVERY CONTEXT IS THEY HAVE A NOERR-PENNINGTON AFFIRMATIVE DEFENSE.  ONE OF THE NOERR-PENNINGTON EXCEPTIONS EXPRESSLY CONTEMPLATES THAT WE SHOULD BE ABLE TO OFFER PROOF OF A PATTERN OF LAWSUITS BROUGHT BEFORE COURTS WITHOUT REGARD TO THE MERITS OF THE CASE.  IT'S THE SECOND EXCEPTION OF THE NOERR-PENNINGTON OR SECOND PRONG, I WOULD SAY, OF THE SHAM EXCEPTION.  THERE'S THREE PRONGS YOU CAN USE TO SHOW SHAM LITIGATION.

SO WITH RESPECT TO THEIR AFFIRMATIVE DEFENSE ALONE, I THINK WE WOULD BE ENTITLED TO TAKE SOME LIMITED DISCOVERY TO UNDERSTAND THE SCOPE AND BREADTH OF THIS TYPE OF PRACTICE AND WHETHER OR NOT THIS WAS COMMON TO THE LAW FIRM AND NOT JUST ACROSS THE SAC CASES PERHAPS.

YES, THE COURT LIMITED US IN DISCOVERY ON THESE POINTS.  WE SOUGHT LEAVE ON THE STRATALUZ-RELATED FILES.  WE OBTAINED THAT LEAVE.  WE'VE PURSUED THE DISCOVERY.  WE WENT ALL THE WAY TO THE FINISH LINE.  WE WERE FULLY BRIEFED ON MOTIONS BEFORE THE SPECIAL MASTER.

AND NOW HERE WE ARE ON OBJECTIONS CHALLENGING A

33

PRELIMINARY ORDER WHICH HAS HALTED THE PROCESS.  I KNOW COUNSEL HAS COMPLAINED OF THE COSTS, AND THIS IS AN EXAMPLE HERE.  WE'RE GOING TO NOW HAVE TWO OF THESE PROCEEDINGS PERHAPS ON OBJECTIONS ON THE SAME UNDERLYING THEORY BECAUSE WE'RE HERE ON A PRELIMINARY ORDER RATHER THAN AWAITING A FINAL ORDER FROM THE SPECIAL MASTER WHICH LIKELY WOULD HAVE BEEN FORTHCOMING ONLY WEEKS LATER.

YOUR HONOR, I DON'T HAVE ANY OTHER POINTS TO RAISE WITH RESPECT TO THE TENTATIVE.  WE AGREE WITH THE COURT'S REASONING.  WE AGREE, OF COURSE, THAT NOERR-PENNINGTON IS NOT AN EVIDENTIARY BAR, AND OBVIOUSLY WE HAVE A NUMBER OF DIFFERENT CITATIONS FROM ACROSS THE NATION SUPPORTING THAT PROPOSITION.

I DISAGREE WITH COUNSEL'S EXTENSION OF THE NOERR-PENNINGTON DOCTRINE IN A WAY THAT WOULD CREATE A CATEGORICAL BEND IN DISCOVERY.  HIS POSITION, WHETHER HE WOULD ADMIT TO IT OR NOT, IT IS EFFECTIVELY REQUIRING A PARTY TO SATISFY NOERR-PENNINGTON BY A LIABILITY STANDARD CASE, DISPOSITIVE STANDARD BEFORE ANYBODY COULD EVEN SEEK DISCOVERY.  NO CASE LAW HAS GONE THAT FAR.  I AGREE WITH THE TENTATIVE ON ALL FOURS.

THE COURT:  BUT COUNSEL DOES TAKE ONE INTERVENING STEP.  HE CONTENDS THAT IT'S PART OF THE SECOND FACTOR UNDER ZOLIN.  THE COURT NEEDS TO LOOK AT THE ADMISSIBILITY UNDER 404(B)(2) AND THEN POTENTIAL FOR EXCLUSION UNDER

34

NOERR-PENNINGTON.  I MEAN, THAT'S HOW HE GETS THERE.  HE DIDN'T GET THERE DIRECTLY.

MR. ARHANGELSKY:  WELL, THAT'S RIGHT.  AND WHILE THEIR BRIEF PERHAPS IS UNCLEAR ON THAT, CONSIDERING THAT THEIR ENTIRE ARGUMENT WAS BASED ON NOERR-PENNINGTON WITH LITTLE REGARD TO THE STANDARDS EXPRESSED UNDER ZOLIN OR NAPSTER, BUT I THINK THE SPECIAL MASTER HAS REACHED THAT CONCLUSION AND SO HELD THAT THERE IS A LIKELIHOOD THAT THE INFORMATION PRODUCED TO THE CRIME-FRAUD ANALYSIS IS LIKELY TO BEAR ON THE ALLEGATIONS WE HAVE BROUGHT IN OUR PLEADINGS, WHICH IS THAT THESE LAWYERS HAVE ATTEMPTED TO DEFRAUD CORPORATIONS AGAIN.  THIS TIME, YES, THROUGH A DIFFERENT PLAINTIFF BUT IN THE SAME METHOD, SAME STYLE AS MANY OF THESE OTHER PLAINTIFFS' CASES.

I WOULD SUBMIT THAT JUST BECAUSE THEY DON'T BEAR THE HALLMARKS OF A CONSUMER CASE IN THIS INSTANCE, THEIR THEORIES ARE VERY SIMILAR.  THEY BRING SIMILAR FALSE-ADVERTISING ALLEGATIONS.  HERE THE MAIN DIFFERENCE IS THEY'RE JUST CREATED THE CLIENT FOR THEMSELVES.

THE COURT:  INSTEAD OF HAVING AN INDIVIDUAL CONSUMER AS THE STALKING HORSE, THEY CREATED THE CORPORATION AS THEIR STALKING HORSE.  I MEAN, THAT'S YOUR THEORY?

MR. ARHANGELSKY:  YES, YOUR HONOR.

THE COURT:  OKAY.

MR. ARHANGELSKY:  THANK YOU, YOUR HONOR.

35

MR. DARNELL:  BRIEFLY, YOUR HONOR?

THE COURT:  BRIEFLY, MR. DARNELL.

MR. DARNELL:  YOUR HONOR, I HEARD COUNSEL MENTION HOW THIS EVIDENCE -- IT TOOK A WHILE TO GET THERE, BUT I THINK HE SAID THIS EVIDENCE IS RELEVANT TO A COMMON SCHEME OR PLAN.

COMMON SCHEME OR PLAN RELATES TO PATTERN.  PATTERN IS NOT SET FORTH ANYWHERE IN 404(B)(2).  404(B)(2) HAS THE WORDS PLAN, BUT THE WORD PLAN THERE WOULD HAVE TO BE TO ESTABLISH A PLAN WITH RESPECT TO THE EIGHT UNDERLYING CASES.

THE COURT:  NO, NO, NO, NO.  A SIMILAR PLAN OR MODUS OPERANDI -- THAT'S THE WAY I READ THE RULE -- PLUS PREPARATION, A SIMILAR MODE OF PREPARATION OF A SHAM LAWSUIT.  YOU KNOW, REGARDLESS OF THE FLAVOR OF THE LAWSUIT, IF THE PREPARATION IS A SHAM, I THINK IN THEORY IT CAN BE SHOWN UNDER 404(B)(2).

MR. DARNELL:  WELL, I CAN'T ARGUE WITH YOU ABOUT WHAT IN THEORY COULD BE SHOWN.  I CAN ONLY ARGUE ABOUT WHAT HAS TO BE SHOWN UNDER ZOLIN.  AND WHAT I DON'T BELIEVE, THAT THEY HAVE ESTABLISHED A SUFFICIENT NEXUS BETWEEN THE PROMAXYL LITIGATION AND WHAT WE'RE TALKING ABOUT HERE.

THE COURT:  OKAY.  I'M JUST NOT PREPARED TO ACCEPT AT THIS STAGE THAT I HAVE TO MAKE A 404(B)(2) FINDING EVEN IN REACHING THE ZOLIN FACTORS WITH RESPECT TO 404(B)(2) OR NOERR-PENNINGTON.

36

THAT SAID, I THINK A 404(B) MOTION WOULD BE A VIGOROUS UNDERTAKING THAT WOULD NOT BE BURDENED BY ANY FINDING I MAKE ON THIS MOTION.

MR. DARNELL:  I APPRECIATE THAT CLARIFICATION, YOUR HONOR.

THE SECOND ISSUE I JUST WANTED TO RESPOND TO IS COUNSEL INSINUATED THAT WE'RE SOMEHOW UNNECESSARILY FILING MOTIONS.  WE'RE HERE ON A PRELIMINARY ORDER BECAUSE WE BELIEVE THAT ORDER DOES NOT SATISFY ZOLIN.  I THINK I'VE MADE MY POINT ON THAT.

I WOULD ALSO QUOTE TO THE ZOLIN OPINION WHERE THE U.S. SUPREME COURT AT PAGE 572 SAID, QUOTE:  "BEFORE ENGAGING IN IN-CAMERA REVIEW TO DETERMINE THE APPLICABILITY OF A CRIME-FRAUD EXCEPTION, THE JUDGE SHOULD REQUIRE A SHOWING OF A FACTUAL BASIS ADEQUATE TO SUPPORT A GOOD-FAITH BELIEF BY A REASONABLE PERSON THAT IN-CAMERA REVIEW OF THE MATERIALS MAY REVEAL EVIDENCE TO ESTABLISH THE CLAIM THAT THE CRIME-FRAUD EXCEPTION APPLIES."

I BELIEVE THAT THAT LANGUAGE COUPLED WITH THE OTHER LANGUAGE AND THEIR RELATIVE IMPORTANCE SHOWS WHY PROPORTIONALITY HAS NOT BEEN ESTABLISHED HERE.  AND FOR THE REASONS PREVIOUSLY STATED, I DON'T BELIEVE THE COURT HAS ADDRESSED PROPORTIONALITY IN THIS SPECIFIC CONTEXT.

FINALLY, IN CLOSING -- I THINK I'VE SAID IT BEFORE -- I THINK COUNSEL ARGUED AGAINST THIS.  THE SPECIAL

37

MASTER'S ORDER IN DOCKET 603 AND THIS COURT'S TENTATIVE, NEITHER OF THEM SAY ANYTHING ABOUT THE ZOLIN FACTORS.  SO IF THEY DON'T MENTION ZOLIN, HOW CAN THEY ANALYZE --

THE COURT:  HASN'T THE COURT PREVIOUSLY DEALT WITH PROPORTIONALITY WITH RESPECT TO THE SCOPE OF THIS DISCOVERY?

MR. DARNELL:  NO, YOUR HONOR, IT HAS NOT.  IT DEALT WITH PROPORTIONALITY WITH RESPECT TO ALLOWING THEM TO SERVE WRITTEN DISCOVERY RELATING TO ONE ENTITY, PROMAXYL. IT DID NOT DEAL WITH PROPORTIONALITY WHEN IT COMES TO A CRIME-FRAUD MOTION SEEKING TO VITIATE PRIVILEGE -- I'M SORRY, WITH RESPECT TO ONE ENTITY, STRATALUZ, FOR WHICH THERE WERE MULTIPLE PRODUCTS.

IT DID NOT DEAL WITH PROPORTIONALITY WHEN IT COMES TO CRIME-FRAUD EXCEPTION SEEKING TO VITIATE ATTORNEY/CLIENT PRIVILEGE FOR ALL PROMAXYL LITIGATION.  THAT IS SOMETHING COMPLETELY DIFFERENT, BUT I BELIEVE IT'S DIFFERENT FROM WHAT WE'RE DEALING WITH IN THE UNDERLYING CASE.

FOR THAT REASON I WOULD ASK THE COURT TO RECONSIDER THE TENTATIVE AND TO ISSUE A FURTHER RULING IN LIGHT OF MY ARGUMENTS.

THE COURT:  THANK YOU.  THE MATTER WILL STAND SUBMITTED.  I WILL TAKE ANOTHER LOOK.

ANYTHING ELSE WE OUGHT TO BE DISCUSSING, GIVEN THAT YOU'RE HERE TODAY?

MR. DARNELL:  CASE MANAGEMENT, YOUR HONOR.  I

38

02:22    ADDRESSED THAT AT THE END OF MY ARGUMENT.  I WOULD LIKE TO
HAVE THE COURT ISSUE EITHER A CASE MANAGEMENT CONFERENCE SO
WE CAN TALK ABOUT TRIAL DATES, SCHEDULING, WITNESSES.

        I THINK WE NEED A REASONABLE ASSESSMENT.  I
UNDERSTAND THE COURT'S CONCERNS.  I JUST DON'T BELIEVE THAT
I'M GOING TO BE ABLE TO GET IT DONE WITH WHAT I'M DEALING
WITH THAT'S COMING AT ME EVERY DAY.

        I DON'T KNOW WHAT THE TRIAL ESTIMATE IS FROM
COUNSEL.

        THE COURT:  DO YOU HAVE A PRELIMINARY TRIAL
ESTIMATE?

        MR. ARHANGELSKY:  YOUR HONOR, WE THINK THAT THE
TRIAL IS LIKELY TO PROBABLY TAKE SOMEWHERE AROUND TWO WEEKS
I WOULD THINK AT THIS POINT.  I MEAN, WE DISAGREE COMPLETELY
WITH REPRESENTATIONS OF COUNSEL CONCERNING THE SCOPE OF THIS
CASE, INCLUDING DISCLOSURES THAT HAVE GONE OVER TO OPPOSING
PARTIES.

        THE CASE HAS BEEN SIGNIFICANTLY LIMITED BY THIS
COURT'S DISCOVERY RULINGS EARLIER IN THE CASE.  AND, YES, WE
HAVE ADDITIONAL MATTERS TO HANDLE AFTER THE CRIME-FRAUD
RULINGS.  BUT AT THIS POINT, WITHOUT HAVING AN UNDERSTANDING
OF WHAT THOSE ARE, I THINK A LOT OF THIS TALK IS PREMATURE.

        THE COURT:  WELL, LET'S GET THE DISCOVERY BEHIND
US AND ANY PENDING MOTIONS.  I WOULD PLAN A VERY SUBSTANTIAL
TRIAL SETTING CONFERENCE AND GETTING INTO THE PARTICULARS SO

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

39

THAT WE KNOW WHAT'S COMING AND NOT COMING.

I MUST SAY, I THINK ABOUT TEN DAYS IS ABOUT RIGHT TO TRY THIS CASE.  I MEAN, I COME TO NO FINAL CONCLUSION BUT, YOU KNOW, GIVEN WHERE WE ARE IN THIS CASE AND ALL I'VE SEEN AND HEARD, IT SEEMS ABOUT RIGHT.

OKAY.  ANYTHING ELSE FOR TODAY?

MR. DARNELL:  NO, YOUR HONOR.

THE COURT:  OKAY.  THANK YOU.

(WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

*     *     *

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

40

CERTIFICATE

I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATE:  JUNE 12, 2018

/S/   SHARON A. SEFFENS  6/12/18
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER