**CALLAHAN & BLAINE, APLC**
Edward Susolik (SBN 151081)
Esusolik@callahan-law.com
David J. Darnell (SBN 210166)
Ddarnell@callahan-law.com
James M. Sabovich (SBN 218488)
jsabovich@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Defendants NEWPORT TRIAL GROUP
and SCOTT J. FERRELL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| NATURAL IMMUNOGENICS CORP., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEWPORT TRIAL GROUP, et al.,<br><br>Defendants. | CASE NO. 8:15-cv-02034-JVS-JCG<br>JAMS Case No.: 1220055347<br><br>**DEFENDANTS NEWPORT TRIAL GROUP AND SCOTT J. FERRELL'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Pretrial Conf.: September 27, 2021<br>Time: 11:00 am<br>Courtroom: 10C<br><br>Special Master: Hon. Andrew Guilford<br>Judge: Hon. James V. Selna<br><br>Complaint Filed: December 7, 2015<br>Trial Date: November 1, 2021 |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF CONTENTS

**Page**

I.   Claims and Defenses [L.R. 16-4.1] ......................................................... 1

   A.   NIC's Complaints and Summary of Core Allegations ...................... 1

   B.   NIC's Operative Claims [L.R. 16-4.1(a) ......................................... 3

   C.   Required Elements for NIC's Claims [L.R. 16-4.1(b)] ..................... 3

      *Elements Required to Establish NIC's Claim 1 for Malicious Prosecution* ........................................... 3

      *Elements Required to Establish NIC's Claim 2 for Violation of RICO* ................................................... 7

      *Elements Required to Establish NIC's Claim 3 for Conspiracy to Violate RICO* ........................... 9

      *Additional Jury Instructions and Authorities on NIC's Claims:* ...................................................... 9

   D.   Defendants' Affirmative Defenses and Required Elements [L.R. 16-4.1(d)-(f)] ............................................................. 11

      *Elements Required to Establish Affirmative Defense of Waiver* ................................................................. 11

      *Elements Required to Establish Affirmative Defense of Estoppel* ................................................................ 12

      *Elements Required to Establish Affirmative Defense of Failure to Mitigate* .................................. 13

      *Elements Required to Establish Affirmative Defense of Noerr-Pennington* ............................................ 13

      *Elements Required to Establish Affirmative Defense of Free Speech and Right to Petition* ................ 16

      *Other Affirmative Defenses* ........................................ 16

   E.   Anticipated Evidentiary Issues [L.R. 16-4.1(h)] ........................... 16

      1.   *Defendants Expect to Prevail on the Merits at Trial* ............... 16

      2.   *The Parties' Motions in Limine and the Large Number of NIC Witnesses and Exhibits for Trial* .................... 17

      3.   *NIC Has Serious Credibility Problems and its False Advertising of Sovereign Silver Will Have to be Considered by the Jury.* ............................................. 18

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# TABLE OF CONTENTS
## (CONTINUED)

**Page**

        4.    *Even if NIC Prevails, its Compensatory Damages are Still Capped at $234,966.52 and Actually Much Lower than That* ........................................................................ 19

    F.    Anticipated Issues of Law [L.R. 16-4.1(h)] ........................................ 20

II.    Bifurcation of Issues [L.R. 16-4.3] ............................................................. 21

III.    Jury Trial [L.R. 16-4.4] .................................................................................. 23

IV.    Attorneys' Fees [L.R. 16-4.5] ...................................................................... 23

V.    Abandonment of Issues [L.R. 16-4.6] ......................................................... 25

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Aguilar v. Avis Rent A Car Sys., Inc.*,
 21 Cal.4th 121 (1999) ........................................................................ 16

*Allwaste, Inc. v. Hecht*,
 65 F.3d 1523 (9th Cir. 1995) ............................................................... 8

*Alutiiq Int'l Solutions, LLC v. OIC Marianas Ins. Corp.*,
 149 F. Supp. 3d 1208 (D. Nev. 2016) ................................................ 10

*Carrion v. Kirby Oldsmobile, Inc.*,
 No. SACV1700231JVSJCGX, 2018 WL 6137127 (C.D. Cal. Nov. 9, 2018) ................................................................................................ 25

*Citizens of Humanity, LLC v. Ramirez*,
 63 Cal.App.5th 117 (2021), review denied (Aug. 11, 2021) ............ 5, 7, 21

*City of Long Beach v. Mansell*,
 3 Cal.3d 462 (1970) ........................................................................... 12

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
 690 F.2d 1240 (9th Cir. 1982) ........................................................... 15

*Downey Venture v. LMI Insurance Co.*,
 66 Cal.App.4th 478 (1998) ................................................................. 4

*Drummond v. Desmarais*,
 176 Cal.App.4th 439 (2009) ............................................................ 4, 5

*Fassberg Constr. Co. v. Hous. Auth. of City of Los Angeles*,
 152 Cal. App. 4th 720, 60 Cal. Rptr. 3d 375 (2007) .......................... 10

*Freeman v. Lasky, Haas & Cohler*,
 410 F.3d 1180 (9th Cir. 2005) ....................................................... 14, 15

*Fuentes v. Berry*,
 38 Cal.App.4th 1800 (1995) ........................................................... 5, 23

*Green v. Smith*,
 261 Cal.App.2d 392 (1968) ............................................................... 13

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# TABLE OF AUTHORITIES
## (CONTINUED)

<u>Pages</u>

*Grindle v. Lorbeer*,
   196 Cal.App.3d 1461 (1987) ................................................................. 5

*H.J., Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ....................................................................... 7, 8

*Harmoni International Spice, Inc. v. Hume*,
   914 F.3d 648 (9th Cir. 2019) ............................................................... 9

*HMS Capital, Inc. v. Lawyers Title Co.*,
   118 Cal. App. 4th 204 (2004) ............................................................... 4

*Hopkins v. Kedzierski*,
   225 Cal.App.4th 736 (2014) .............................................................. 12

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ............................................................ 8, 9

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) ............................................................... 7

*Medallion Television Ent., Inc. v. SelecTV of California, Inc.*,
   833 F.2d 1360 (9th Cir. 1988) .............................................................. 8

*Nader v. Democratic Nat'l Comm.*,
   567 F.3d 692 (D.C. Cir. 2009) ............................................................ 15

*Neibel v. Trans World Assur. Co.*,
   108 F.3d 1123 (9th Cir. 1997) ............................................................ 10

*Nilon v. NIC*,
   Dkt. 120 ...................................................................................... 20

*Nilon v. NIC*,
   Dkt. 90 ................................................................................. *passim*

*Oki Semiconductor Co. v. Wells Fargo Bank*,
   298 F.3d 768 (9th Cir. 2002) ............................................................... 9

*Old Republic Ins. Co. v. FSR Brokerage, Inc.*,
   80 Cal.App.4th 666 (2000) ............................................................... 12

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1

## TABLE OF AUTHORITIES
### (CONTINUED)

2

**Pages**

3

*Religious Tech. Ctr. v. Wollersheim*,

4

971 F.2d 364 (9th Cir. 1992) ................................................................. 8

5

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,

6

473 U.S. 479 (1985) ............................................................................... 8

7

*Sever v. Alaska Pulp Corp.*,

978 F.2d 1529 (9th Cir. 1992) 978 F.2d ............................................... 7

8

*Shaffer v. Debbas*,

9

17 Cal.App.4th 33 (1993) ..................................................................... 13

10

*Sheldon Appel Co. v. Albert & Oliker*,

11

47 Cal.3d 863 (1989) ............................................................................. 4

12

*Sierra Club Found. v. Graham*

13

(1999) 72 Cal.App.4th 1135 .................................................................. 5

14

*Silas v. Arden*,

15

213 Cal.App.4th 75 (2013) .................................................................... 5

16

*Simon v. San Paolo U.S. Holding Co.*,

35 Cal.4th 1159 (2005) ........................................................................ 10

17

18

*Solomon v. Onyx Acceptance Corp.*,

222 F.R.D. 418 (C.D. Cal. 2004) ........................................................ 24

19

20

*Sosa v. DIRECTV, Inc.*,

437 F.3d 923 (9th Cir. 2006) ................................................. 13, 14, 15

21

22

*SouthStar Funding, LLC v. Sprouse*,

No. 3:05-CV-253-W, 2007 WL 812174 (W.D.N.C. Mar. 13, 2007) ................ 10

23

24

*State Farm Mut. Auto Ins. Co. v. Campbell*,

538 U.S. 408 (2003) ............................................................................. 10

25

26

*Strong v. County of Santa Cruz*,

15 Cal.3d 720 (1975) ........................................................................... 12

27

28

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,

546 F.3d 991 (9th Cir. 2008) ............................................................... 14

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF AUTHORITIES
## (CONTINUED)

<u>**Pages**</u>

*UMG Recordings, Inc., v. Glob. Eagle Entm't., Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........................................... 15

*United States v. Alvarez*,
   567 U.S. 708 (2012) ...................................................................... 16

*United States v. Georgia–Pacific Co.*,
   421 F.2d 92 (9th Cir.1970) ............................................................ 12

*Waller v. Truck Ins. Exch., Inc.*,
   11 Cal. 4th 1 (1995) ...................................................................... 11

*Wilcox v. First Interstate Bank*,
   815 F.2d 522 (9th Cir. 1987) ........................................................... 9

**Statutes**

18 U.S.C. § 1961 .......................................................................... 7, 8

18 U.S.C. § 1962 ................................................................... 3, 7, 9

18 U.S.C. § 1964 ........................................................................... 23

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Defendants Newport Trial Group and Scott J. Ferrell ("Defendants") submit the following Memorandum of Contentions of Fact and Law:

## I.      Claims and Defenses [L.R. 16-4.1]

### A.      NIC's Complaints and Summary of Core Allegations

NIC initiated the current litigation by filing its Complaint on December 7, 2015.  (Dkt. 1.)  On June 18, 2020, NIC filed its Fourth Amended Complaint ("FAC"), which asserts claims for (1) malicious prosecution; (2) violation of RICO; and (3) conspiracy to violate RICO.  (Dkt. 1007.)[1]

The FAC is based on allegations that Defendants perpetrated three litigation schemes: (1) the CLRA or "false advertising scheme"; (2) the California Invasion of Privacy Act (CIPA) or "wiretapping scheme"; and (3) the "Lanham Act scheme." (*Id.,* ¶25.)  The "false advertising scheme" is based on four CLRA class action lawsuits, the "wiretapping scheme" is based on four CIPA class action lawsuits, and the "Lanham Act scheme" is based on five Strataluz demand letters, only one of which resulted in a lawsuit involving ProMaxal filed by Strataluz.[2]

Under the "false advertising scheme," NIC alleges that NTG would identify individuals to serve as lead plaintiffs in CLRA class action lawsuits and would then bribe these individuals (i.e., "plaintiffs-for-hire") to falsely testify that (1) they purchased the relevant product in reliance on the company's representations; (2) the product did not work as advertised; and (3) they were injured as a result of their reliance on the company's representations.  (*Id.,* ¶¶26-30.)  Defendants deny that the

---

[1]      NIC's prior complaint included a UCL claim that sought injunctive relief, but on December 22, 2017, the Court granted Defendants' Motion for Partial Summary Judgment on the UCL claim and ruled that NIC does not have standing to seek injunctive relief. (Dkt. 552.)

[2]      The four CLRA cases are referenced as:  (1) *Nilon v. NIC,* (2) *Pfleg v. Nature's Way Products*, (3) *Dronkers v. Kiss My Face*, and (4) *Morales v. Magna.* The four CIPA cases are referenced as:  (1) *Demulder v. Carter-Reed Co., LLC*, (2) *Schoonover v. Himalaya Drug Co.*, (3) *Torres v. Nutrisystem*, and (4) *Nilon v. Chromadex*.  The one lawsuit filed by Strataluz is referenced as *Strataluz, LLC v. TruDerma, LLC*.

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

underlying plaintiffs were "plaintiffs-for-hire" and that the underlying claims were false or fraudulent in any way.[3]

Under the "wiretapping scheme," NIC alleges NTG would identify individuals to serve as lead plaintiffs in CIPA class action lawsuits and would then bribe these individuals (i.e., "plaintiffs-for-hire") to falsely testify to (1) they were not aware that the call was being recorded; (2) they did not give express or implied consent to the recording; (3) they expected that his/her telephone call would be private and not recorded; and (4) they only learned that the defendant recorded all incoming calls after completing his/her call.  (*Id.*, ¶¶31-34.)  Defendants also deny these accusations.[4]

Under the new "Lanham Act scheme," NIC alleges that Scott Ferrell and Dave Reid started a side business called "Strataluz," which NTG allegedly used to send demand letters to companies that sold products that competed with Strataluz.  (*Id.*, ¶¶40-44.)  In this regard, NIC alleges that Strataluz was not a legitimate company and that it did not actually have competing products (i.e., a "dummy company").  (*Id.*, ¶43.)  NIC further alleges that on June 3, 2015, NTG, Ferrell and Reid filed a Lanham Act lawsuit in *Strataluz, LLC v. TruDerma, LLC* and that said lawsuit included false claims.  (*Id.*, ¶374-377.)  Defendants likewise deny these accusations.

Finally, despite NIC's grand allegations and nearly 1,200 docket entries in this case, NIC has stipulated that its compensatory damages are limited – subject to proof and a finding that NIC's damages were reasonable and proximately caused by defendants – to no more than $234,966.52.  (Dkts. 237 and 612-3 at 3; *see also* Dkt.

---

[3]     There is no evidence of bribery in this case.  Nor is there any credible evidence of false claims or false testimony.

[4]     These claims are based on a mischaracterization or misunderstanding of the CIPA statute.  In addition, not only is there no evidence of bribery, but there also is no evidence that a client knew a call was being recorded or monitored at the time of the call.  Nor is there any evidence that a client consented to a call being recorded or monitored.

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

788 at 13 [Order from this Court confirming that "NIC has stipulated that its compensatory damages are no more than $234,966.52."].)

## B. NIC's Operative Claims [L.R. 16-4.1(a)

*Claim 1:*     Defendants NTG, Scott Ferrell, Ryan Ferrell, Victoria Knowles, Andrew Baslow, Andrew Nilon and Giovanni Sandoval are liable for malicious prosecution.[5]

*Claim 2:*     Defendants NTG, Scott Ferrell, Dave Reid, Ryan Ferrell and Andrew Baslow are liable for violation of RICO.[6]  18 U.S.C. § 1962(c).

*Claim 3:*     Defendants NTG, Scott Ferrell, Dave Reid, Ryan Ferrell and Andrew Baslow, Andrew Nilon, Giovanni Sandoval, Sam Schoonover, Taylor Demulder, Sam Pfleg, and Matthew Dronkers are liable for conspiracy to violate RICO.[7]  18 U.S.C. § 1962(d).

## C. Required Elements for NIC's Claims [L.R. 16-4.1(b)]

*Elements Required to Establish NIC's Claim 1 for Malicious Prosecution*

NIC claims that Defendants NTG, Scott Ferrell, Ryan Ferrell, Victoria Knowles, Andrew Baslow, Andrew Nilon and Giovanni Sandoval wrongfully brought a lawsuit against it.  To establish this claim against each defendant, NIC must prove all of the following:

1.     That defendant was actively involved in bring or continuing the lawsuit;

2.     That the lawsuit ended in NIC's favor;

---

[5]     On April 30, 2021, after more than 5 years of litigating the claim and related discovery against him, NIC dismissed its malicious prosecution claim against Defendant Dave Reid *with prejudice*.  (Dkt. 1124.)

[6]     Victoria Knowles, Sam Pfleg, Matthew Dronkers, Taylor Demulder and Sam Schoonover were dismissed from the second count for violation of RICO on August 1, 2016 when the Court granted Defendants' motion to dismiss.  (Dkt. 157.)

[7]     Victoria Knowles was also dismissed from the third count for conspiracy to violate RICO on August 1, 2016 when the Court granted Defendants' motion to dismiss.  (Dkt. 157.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

3.    That no reasonable person in the circumstances of defendant would have believed that there were reasonable grounds to bring the lawsuit against NIC;

4.    That defendant acted primarily for a purpose other than succeeding on the merits of the claim;

5.    That NIC was harmed; and

6.    That the conduct of defendant was a substantial factor in causing NIC's harm.

*See* Judicial Council of California Civil Jury Instructions ("CACI") (2017), No. 1501, Wrongful Use of Civil Proceedings (as modified).

A claim for malicious prosecution has three elements. A plaintiff must establish that the prosecution "(1) was commenced by or at the direction of the defendant, or the defendant continued to prosecute it after discovering it lacked probable cause, and it was pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice." *HMS Capital, Inc. v. Lawyers Title Co.*, 118 Cal. App. 4th 204, 213 (2004).

Probable cause is to be decided by the Court as a matter of law.  CACI No. 1501.  However, the jury may be required to find some preliminary facts before the Court can make its legal determination, including facts regarding what the defendant knew or did not know at the time.  *See Sheldon Appel Co. v. Albert & Oliker,* 47 Cal.3d 863, 881 (1989).  ("When there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute, . . . the jury must resolve the threshold question of the defendant's factual knowledge or belief.").  In addition, "[a]s an element of the tort of malicious prosecution, malice at its core refers to an improper motive for bringing the prior action." *Drummond v. Desmarais*, 176 Cal.App.4th 439, 451 (2009); *see also Downey Venture v. LMI Insurance Co.*, 66 Cal.App.4th 478, 494 (1998) ("The motive of the defendant must have been something other than that of bringing a perceived guilty

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   person to justice or the satisfaction in a civil action of some personal or financial

2   purpose."); *Silas v. Arden*, 213 Cal.App.4th 75, 90 (2013) ("A lack of probable

3   cause is a factor that may be considered in determining if the claim was prosecuted

4   with malice [citation], but the lack of probable cause must be supplemented by

5   other, additional evidence."); *Grindle v. Lorbeer*, 196 Cal.App.3d 1461, 1468

6   (1987) ("Negligence does not equate with malice. Nor does the negligent filing of a

7   case necessarily constitute the malicious prosecution of that case.").  But again,

8   "[b]ecause malice concerns the former plaintiff's actual mental state, it necessarily

9   presents a question of fact." *Drummond*, 176 Cal.App.4th at 452.

10          Favorable termination is handled in much the same way.  CACI No. 1501.  If

11   a proceeding is terminated other than on the merits, there may be disputed facts that

12   the jury must find in order to determine whether there has been a favorable

13   termination.  *See Fuentes v. Berry,* 38 Cal.App.4th 1800, 1808 (1995).  In other

14   words, "[i]f a conflict arises as to the circumstances explaining a failure to prosecute

15   an action further, the determination of the reasons underlying the dismissal is a

16   question of fact." *Id.*  Once these facts are resolved by the jury, the matter is

17   determined by the court based on the resolution of the disputed facts.  *See Sierra

18   Club Found. v. Graham* (1999) 72 Cal.App.4th 1135, 1159 (element of favorable

19   termination is for court to decide).

20          Moreover, on the issue of favorable termination, the California Court of

21   Appeal recently held that "[t]he determination that the class action procedure is

22   inapplicable in a particular case is not a resolution of the case on its merits, and does

23   not constitute a favorable termination for malicious prosecution purposes." *Citizens

24   of Humanity, LLC v. Ramirez*, 63 Cal.App.5th 117, 132 (2021), review denied (Aug.

25   11, 2021).  The Court in *Citizens of Humanity* also confirmed other requirements for

26   favorable termination under California law, including:

27          First, favorable termination requires favorable resolution
     of the underlying action in its entirety, not merely a single
28          cause of action. *Crowley v. Katleman,* 8 Cal.4th 666, 686

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

(1994).  "[I]f the defendant in the underlying action prevails on all of the plaintiff's claims, he or she may successfully sue for malicious prosecution if any one of those claims was subjectively malicious and objectively unreasonable. But if the underlying plaintiff succeeds on any of his or her claims, the favorable termination requirement is unsatisfied and the malicious prosecution action cannot be maintained." *Lane v. Bell* (2018) 20 Cal.App.5th 61, 64, 228 Cal.Rptr.3d 605.)

Second, the action must have been terminated on a basis which reflects upon the innocence of the underlying defendant. "A 'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.' [Citation.]  "[W]hen the underlying action is terminated in some manner other than by a judgment on the merits, the court examines the record 'to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed.'" [Citations.]  "Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact. [Citations.]" *Sycamore Ridge Apartments LLC v. Naumann*, 157 Cal.App.4th 1385, 1399 (2007).

Cases have identified specific types of termination which are generally considered favorable and others which are generally considered unfavorable. A voluntary dismissal may or may not constitute a favorable termination. If the voluntary dismissal is an implicit concession that the dismissing party cannot maintain the action, it may constitute a dismissal on the merits which is a favorable termination. *JSJ Limited Partnership v. Mehrban*, 205 Cal.App.4th 1512, 1524 (2012). "A voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury. [Citation.] This is because ' "[a] dismissal for failure to prosecute ... does reflect on the merits of the action [and in favor of the defendant] .... The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted." ' [Citation.]" *Sycamore Ridge*, 157 Cal.App.4th at 1400.

In contrast, a dismissal on technical or procedural, rather than substantive, grounds is not considered favorable for purposes of malicious prosecution. *JSJ*, 205 Cal.App.4th at 1525.  These include dismissals for lack of jurisdiction, for lack of standing, to avoid litigation expenses, or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  pursuant to settlement. *Id*. Generally, a dismissal resulting
   from a settlement does not constitute a favorable
2  termination because the dismissal reflects ambiguously on
   the merits of the action. The purpose of a settlement is
3  specifically to avoid a determination on the merits. *Dalany
   v. American Pacific Holding Corp.* 42 Cal.App.4th 822,
4  827 (1996). When litigation is terminated by agreement
   "there is ambiguity with respect to the merits of the
5  proceeding and in general no favorable termination for
   purposes of pursuing a malicious prosecution action
6  occurs. [Citations.]" *Id.* at 828. Even if the action was tried
   to a verdict, a subsequent bilateral settlement in which
7  each side gave up something of value (reduced payment
   accepted in exchange for waiving right to appeal) defeats
8  favorable termination as a matter of law. *Ferreira v. Gray,
   Cary, Ware & Freidenrich,* 87 Cal.App.4th 409, 412–413
9  (2001).

10  *Citizens of Humanity*, 63 Cal.App.5th at 128-129.[8]

11  ***Elements Required to Establish NIC's Claim 2 for Violation of RICO***

12      To prevail on a claim for violation of RICO under section 1962(c), NIC must

13  prove:

14      (1)    conduct,

15      (2)    of an enterprise,

16      (3)    through a pattern,

17      (4)    of racketeering activity (known as "predicate acts"),

18      (5)    causing injury to the NIC's "business or property" by the

19              conduct constituting  the violation.

20  *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th

21  Cir. 2005).

22      A pattern is defined as "at least two acts of racketeering activity" within ten

23  years of each other.  18 U.S.C. § 1961(5).  Proving two predicate acts is a necessary

24  condition for finding a violation, but may not be sufficient.  *See H.J., Inc. v. Nw.*

25  *Bell Tel. Co.*, 492 U.S. 229, 238 (1989).  To establish a "pattern of racketeering

26

27  [8]    As noted in section I(F), Defendants respectfully request that the Court allow
28  the parties to present briefing on this new decision and its impact on prior rulings on
    favorable termination in this case.  (Dkts. 88 and 297.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   activity," the predicate acts must be both "related" and "continuous." *Id.*; *Sever v.*

2   *Alaska Pulp Corp., 978 F.2d 1529, 1534 (*9th Cir. 1992) 978 F.2d at 1529.

3         Related conduct "embraces criminal acts that have the same or similar

4   purposes, results, participants, victims, or methods of commission, or otherwise are

5   interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc.*,

6   492 U.S. at 240.  However, merely alleging that the predicate acts share the same

7   participants is insufficient to establish that they are related.  *See Howard v. Am.*

8   *Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (finding that when the purpose,

9   result, victim and method of one set of predicate acts were "strikingly different"

10  from those of the other set of alleged predicate acts, fact that both sets implicated

11  same participants was not enough to establish relatedness).

12        The continuity requirement reflects Congress's concern in RICO with long-

13  term criminal conduct.  *See H.J., Inc.*, 492 U.S. at 242.  Plaintiff must prove either

14  "open-ended" or "closed-ended" continuity—that is, a plaintiff must either prove a

15  series of related predicate acts committed over a substantial period of time (known

16  as closed-ended continuity), or show past conduct that by its nature projects into the

17  future with a threat of repetition (known as open-ended continuity).  *See id.* at 241-

18  42; *Howard*, 208 F.3d at 750.  There is no bright line rule for what period of time

19  the pattern of activity must extend to establish closed-ended continuity, though

20  activity spanning less than one year is unlikely to satisfy the requirement. *Allwaste,*

21  *Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995); *Religious Tech. Ctr. v.*

22  *Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992) ("We have found no case in

23  which a court has held the [closed-ended continuity] requirement to be satisfied by a

24  pattern of activity lasting less than a year.").  Open-ended continuity is shown

25  through "predicate acts that specifically threaten repetition or that become a regular

26  way of doing business."  *Allwaste*, 65 F.3d at 1528; *see also Medallion Television*

27  *Ent., Inc. v. SelecTV of California, Inc.,* 833 F.2d 1360, 1364 (9th Cir. 1988)

28  (continuity not satisfied when there is no threat of future activity).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 8 -

To constitute racketeering activity, the relevant conduct must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961.  *Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate act.").  Predicate acts must be proved by a preponderance of the evidence.  *See Wilcox v. First Interstate Bank*, 815 F.2d 522, 531-32 (9th Cir. 1987).

Finally, as to the element of causation, a plaintiff must prove that the defendant's unlawful conduct was the proximate cause of the plaintiff's injury.  *See Harmoni International Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019)).

***Elements Required to Establish NIC's Claim 3 for Conspiracy to Violate RICO***

A RICO conspiracy under section 1962(d) may be established by proof of an agreement to commit a substantive violation of RICO.  *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774-75 (9th Cir. 2002) ("It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy").  The conspirator need not have agreed to commit or facilitate each and every part of the substantive offense.  *Howard*, 208 F.3d 741, 751 (9th Cir. 2000) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)).  However, the conspirator must have been "aware of the essential nature and scope of the enterprise and intended to participate in it." *Id*. (citing *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)).  The "agreement need not be express as long as its existence can be inferred from words, actions, or interdependence of activities and persons involved." *Oki Semiconductor Co.*, 298 F.3d at 775.  If a RICO conspiracy is demonstrated, "[a]ll conspirators are liable for the acts of their co-conspirators." *Id.*

***Additional Jury Instructions and Authorities on NIC's Claims:***

Other jury instructions and authorities that are relevant to issues raised in NIC's claims include but are not limited to CACI No. 1530 (Apportionment of Attorney Fees and Costs Between Proper and Improper Claims) and Ninth Circuit

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 9 -

Manual of Model Civil Jury Instructions §§ 5.1 (Damages), 5.2 (Measure of Types of Damages), 5.3 (Damages - Mitigation), 5.5 (Punitive Damages) and 5.6 (Nominal Damages), as well as cases confirming limitations on treble damages[9] and the Supreme Court's presumptive constitutional limits of no more than a single-digit multiplier for punitive damages based on the compensatory award.  *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003); *see also Simon v. San Paolo U.S. Holding Co.*, 35 Cal.4th 1159, 1182 (2005).

As it relates to treble damages and punitive damages, Defendants also contend that under California law, a plaintiff may not recover punitive damages if that plaintiff also recovers a "penalty," such as RICO's treble damages provision. *Fassberg Constr. Co. v. Hous. Auth. of City of Los Angeles*, 152 Cal. App. 4th 720, 759–60, 60 Cal. Rptr. 3d 375, 409 (2007), as modified on denial of reh'g (June 21, 2007) ("California courts have held that if a defendant is liable for a statutory penalty or multiple damages under a statute, the award is punitive in nature, and the award penalizes essentially the same conduct as an award of punitive damages, the plaintiff cannot recover punitive damages in addition to that recovery but must elect its remedy.").  Furthermore, while *Neibel v. Trans World Assur. Co.*, 108 F.3d 1123, 1131 (9th Cir. 1997) allowed recover of both treble damages and punitive damages based on RICO's saving clause, the issue in this case is whether California law and public policy allow such a duplicative award on the state law malicious prosecution claim.  *See SouthStar Funding, LLC v. Sprouse*, No. 3:05-CV-253-W, 2007 WL 812174 at *5 (W.D.N.C. Mar. 13, 2007) (distinguishing *Neibel* because "[e]ven if RICO's saving clause is construed to authorize the recovery of both treble damages and state law punitive damages, the public policy of North Carolina would not permit it.").  It does not.

---

[9]    *Alutiiq Int'l Solutions, LLC v. OIC Marianas Ins. Corp.*, 149 F. Supp. 3d 1208, 1218 (D. Nev. 2016) (compensatory damages are "multiplied by three to treble it; the court does not multiply the base figure by three and add that on top of the base figure.").

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**D.**   **Defendants' Affirmative Defenses and Required Elements [L.R. 16-4.1(d)-(f)]**

NTG and Ferrell's Answer to NIC's Fourth Amended Complaint (Dkt. 1017) responded to each of NIC's material allegations and also included affirmative defenses that are addressed below:

***Elements Required to Establish Affirmative Defense of Waiver***

Defendants NTG and Scott Ferrell claim that they do not have to pay for the legal fees and costs that NIC allegedly incurred in *Nilon v. NTG* because NIC gave up its right to seek those fees when it blamed NIC's former counsel for not obtaining and completing essential discovery in *Nilon v. NTG* and for not timely taking the deposition of Giovanni Sandoval as ordered by the court in *Nilon v. NTG*, and when it failed to seek or recover those fees and costs from the court in Nilon v. NTG.  This is called a "waiver."

To succeed, Defendants must prove both of the following by clear and convincing evidence:

1.   That NIC knew that it had a claim that Defendants were required to pay for the legal fees and costs that NIC allegedly incurred in *Nilon v. NTG*; and

2.   That NIC freely and knowingly gave up its right to have Defendants pay these fees and costs.

A waiver may be oral or written or may arise from conduct that shows that NIC gave up that right.

If Defendants prove that NIC gave up its right to have Defendants pay for the legal fees and costs that NIC allegedly incurred in *Nilon v. NTG*, then Defendants were not required to pay these fees and costs.

CACI No. 336, Affirmative Defense – Waiver (as modified).

"California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

as to induce a reasonable belief that such right has been relinquished." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 33–34 (1995) (quoting *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir.1991).)

### Elements Required to Establish Affirmative Defense of Estoppel

Defendants contend that NIC's claims are barred or limited in whole or in part by the equitable doctrine of estoppel because NIC could and should have taken the deposition of Giovanni Sandoval at an earlier date, and because it blamed NIC's former counsel for not obtaining and completing essential discovery and for not timely taking the deposition of Giovanni Sandoval as ordered by the court in *Nilon v. NTG*, all of which were relied on by the court in the underlying matter.[10]

Estoppel prevents a party from showing the truth contrary to a representation of facts after another has relied upon the representation. *United States v. Georgia–Pacific Co.*, 421 F.2d 92 (9th Cir.1970). "The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." *Strong v. County of Santa Cruz*, 15 Cal.3d 720, 725 (1975) (citing *City of Long Beach v. Mansell,* 3 Cal.3d 462, 488–489 (1970)); *see also Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal.App.4th 666, 678 (2000) ("estoppel is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts.") (citing and quoting *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal.App.4th 54, 59 (1994)).

The traditional elements of estoppel are: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so

---

[10]   Defendants acknowledge that equitable estoppel is decided by the Court. *Hopkins v. Kedzierski*, 225 Cal.App.4th 736, 745 (2014).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."  *City of Long Beach v. Mansell,* 3 Cal.3d at 489.

### *Elements Required to Establish Affirmative Defense of Failure to Mitigate*

Defendants contend that NIC failed to mitigate, minimize or avoid the attorney's fees and costs it now seeks, for example, by not pursuing the deposition of Giovanni Sandoval at an earlier date or by spending money to develop a website intended to attack Defendants' former clients and extort misstatements for the purpose of initiating this action, and thus request the following jury instruction:

> If you decide Defendants are responsible for the original harm, NIC is not entitled to recover damages for harm that Defendants prove NIC could have avoided with reasonable efforts or expenditures.

> You should consider the reasonableness of NIC's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

> If NIC made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

CACI No. 3931, Mitigation of Damages (Property Damage), as modified.

"It has been the policy of the courts to promote the mitigation of damages. The doctrine applies in tort, wilful as well as negligent.  A plaintiff cannot be compensated for damages which he could have avoided by reasonable effort or expenditures."  *Green v. Smith,* 261 Cal.App.2d 392, 396 (1968).  "A plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided."  *Shaffer v. Debbas*, 17 Cal.App.4th 33, 41 (1993).

### *Elements Required to Establish Affirmative Defense of Noerr-Pennington*

Defendants contend that NIC's claims are barred or limited in whole or in part

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  because Defendants' conduct related to litigation activity protected by the First

2  Amendment, thus making the *Noerr-Pennington* doctrine applicable.

3       The *Noerr-Pennington* doctrine provides absolute immunity for statutory

4  liability for conduct when petitioning the government for redress.  *Sosa v.*

5  *DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  Immunity under the *Noerr-*

6  *Pennington* doctrine includes communications made to the court during the course

7  of a lawsuit.  Such communications include "[a] complaint, an answer, a

8  counterclaim and other assorted documents and pleadings, in which plaintiffs or

9  defendants make representations and present arguments to support their request that

10  the court do or not do something." *Id.* at 933.  "Conduct incidental to a lawsuit,

11  including a pre-suit demand letter, [also] falls within the protection of the Noerr-

12  Pennington doctrine." *Theme Promotions, Inc. v. News Am. Mktg. FSI,* 546 F.3d

13  991, 1007 (9th Cir. 2008).

14       The Ninth Circuit has recognized an exception to the *Noerr-Pennington*

15  doctrine.  Noerr-Pennington immunity does not apply to conduct that, although

16  "ostensibly directed toward influencing governmental action, is a mere sham to

17  cover what is actually nothing more than an attempt to interfere" with the

18  defendant's business practices.  *Sosa*, 437 F.3d at 938.  As a result, "'[s]ham'

19  petitions don't fall within the protection of the doctrine." *Freeman v. Lasky, Haas*

20  *& Cohler,* 410 F.3d 1180, 1183-84 (9th Cir. 2005).  The Ninth Circuit has identified

21  three circumstances when the so-called sham litigation exception applies:

22       (1)   the lawsuit is objectively baseless and the
       defendant's motive in bringing it is unlawful;

23

24       (2)   the conduct involves a series of lawsuits brought
       pursuant to a policy of starting legal proceedings without
       regard to the merits and for an unlawful purpose; or

25

26       (3)   if the allegedly unlawful conduct consists of making
       intentional misrepresentations to the court, litigation can

27       bedeemed a sham if a party's knowing fraud upon, or its
       intentional misrepresentations to, the court deprive the

28       litigation of its legitimacy.

- 14 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Sosa*, 437 F.3d at 936 (internal quotation marks omitted).

Since this action is clearly based on petitioning conduct, NIC has the burden of proofing facts that demonstrate an exception to *Noerr-Pennington* applies.  In this regard, the first sham litigation exception "contains both an objective and a subjective component."  *Freeman*, 410 F.3d at 1185.  Hence, on the first prong, the plaintiff must first show that the lawsuit was "objectively baseless."  *Id*. This requires the plaintiff to show that there is no "probable cause" to support the lawsuit.  *Id*. (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993)).  A lawsuit lacks probable cause when "no reasonable litigant could realistically expect success on the merits."  *UMG Recordings, Inc., v. Glob. Eagle Entm't., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015) (quoting *Prof'l Real Estate Investors*, 508 U.S. at 60-61).  On the second prong, the plaintiff must show that the defendant brought the lawsuit "with the specific intent to further wrongful conduct through the use of governmental process -- as opposed to the outcome of that process."  *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009).

In addition, the third sham litigation exception applies if unlawful conduct "consists of making intentional misrepresentations to the court." *Sosa*, 437 F.3d at 938.  In such cases, "litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Id.*  However, this Court has expressly held that in order for the third sham litigation exception to apply, the misrepresentations must have been relied upon by the court in order for them to have "infected the core" of the claims and "deprive[]the litigation of its legitimacy."  (Dkt. 1028 at 15 [citing *Thomas v. Hous. Auth. of Cty. of Los Angeles*, No. CV046970MMM(RCX), 2006 WL 5670938, at *9 (C.D. Cal. Feb. 28, 2006) and *Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14-2179-MMM JEM, 2015 WL 349443, at *10 (C.D. Cal. Jan. 23, 2015) (finding conduct that was "accessible to all involved" in the litigation could not have

deprived the litigation of its legitimacy)]; *see also* Dkt. 1062 at 18 [finding that *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982) "clearly considered – and did not reject – the notion of reliance"].)

### *Elements Required to Establish Affirmative Defense of*
### *Free Speech and Right to Petition*

Defendants contend that NIC's claims are barred or limited in whole or in part by the First Amendment of the United States Constitution and/or Article I, Sections 2 or 3 of the California Constitution.

Courts may take no adverse action predicated on speech unless it is within a category not protected by the First Amendment.  *United States v. Alvarez*, 567 U.S. 708, 717 (2012); *see also Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal.4th 121, 185 (1999) (court's equitable power to enjoin speech limited by the First Amendment).

### *Other Affirmative Defenses*

NTG and Ferrell's Answer also included affirmative defenses of "Justification," "Reasonableness and Good Faith," and "Unclean Hands."  However, on February 2, 2018, Defendants withdrew their affirmative defenses of "Justification" and "Reasonableness and Good Faith" subject to the limitations described in their Notice re: Affirmative Defenses.  (Dkt. 575.)  In addition, on October 28, 2020, the Court issued an Order dismissing Defendants affirmative defense of "Unclean Hands."  (Dkt. 1062.)

### E.   <u>Anticipated Evidentiary Issues [L.R. 16-4.1(h)]</u>

1.   <u>*Defendants Expect to Prevail on the Merits at Trial*</u>

Defendants look forward to a trial on the merits.  This case has been subject to substantial law and motion on both pleading and discovery issues where both sides have won and lost arguments before the Court.  Defendants also acknowledge that NIC has obtained some favorable rulings on discovery motions based on the arguments of counsel, but none of these were subject to the Rules of Evidence or the requirements for what must be proven at trial.  Defendants thus look forward to their

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

day in court and the opportunity for the tier of fact to consider all of the relevant and admissible evidence and testimony on these issues, and not just NIC's argumentative views of this case.

In this regard, Defendants expect that NIC and its counsel will fully comply with any pre-trial orders issued by the Court, and also respectfully request that the Court hold all parties – especially NIC, who has the burden of proof on its claims – to both the Rules of Evidence and the requirements of the law at trial.

2. *The Parties' Motions in Limine and the Large Number of NIC Witnesses and Exhibits for Trial*

The parties have filed a number of pre-trial motions that are scheduled to be heard by the Court at the Final Pre-Trial Conference.  *See* NTG and Ferrell's pre-trial motions (Dkts. 1176, 1182, 1183, 1184, 1185 and 1186); Reid and Ryan Ferrell's pre-trial motions (Dkts. 1171 and 1172); and NIC's pre-trial motions (Dkts. 1173, 1174, 1175, 1177, 1178, 1179, 1180 and 1192).  The Court's rulings on these pre-trial motions may impact the scope of evidence and number of witnesses at trial.

In addition, through pre-trial disclosures and the L.R. 16-2 meeting of counsel, NIC has identified as large number of witnesses and exhibits that NIC intends to call or use at trial, which NIC now estimates will last at least three weeks for NIC's case in chief alone.  More specifically, NIC identified 52 witnesses (25 of which NIC "will call") and 927 exhibits (362 of which NIC "will use") for trial. (Dkts. 1176-3 and 1176-4).  Hence, with these disclosures and if the Court accepts NIC's new trial estimate, jury trial in this matter will likely last at least six weeks.[11]

Given NIC's expansive view of what is required for trial, as well as NIC's stipulation that compensatory damages are limited to no more than $234,966.52. (Dkts. 237 and 612-3 at 3), Defendants respectfully request the Court's assistance in

---

[11]    If NIC is allowed three weeks to present its case in chief, then fairness dictates that the various defendants – collectively – have at least the same amount of time to present their defenses.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   requiring NIC to focus and narrow the issues, evidence and witnesses that will be

2   allowed at trial.

3       3.   *NIC Has Serious Credibility Problems and its False Advertising*
        *of Sovereign Silver Will Have to be Considered by the Jury.*
4

5       NIC is not an innocent victim.  Nor is it a sympathetic plaintiff.  After all,

6   NIC is in the business of falsely marketing its product for "IMMUNE SUPPORT."

7   Despite specific prohibitions on marketing colloidal silver for health benefits or as a

8   treatment, NIC profits by doing exactly that.  The Federal Trade Commission, which

9   previously warned NIC regarding its own false advertising, has said of companies

10  like NIC: "What we don't need in this situation are companies preying on

11  consumers by promoting products with fraudulent prevention and treatment claims."

12  An expert from the Mayo Clinic has issued a similar warning:

13          Colloidal silver isn't considered safe or effective for any
            of the health claims manufacturers make. Silver has no
14          known purpose in the body. Nor is it an essential mineral,
            as some sellers of silver products claim. …
15
            Manufacturers of colloidal silver products often claim that
16          they are cure-alls, boosting your immune system, fighting
            bacteria and viruses, and treating cancer, HIV/AIDS,
17          shingles, herpes, eye ailments and prostatitis.

18          However, no sound scientific studies to evaluate these
            health claims have been published in reputable medical
19          journals. In fact, the Food and Drug Administration has
            taken action against some manufacturers of colloidal silver
20          products for making unproven health claims.

21  *See* https://www.mayoclinic.org/healthy-lifestyle/consumer-health/expert-

22  answers/colloidal-silver/faq-20058061.

23      To be clear, NIC's advertising practices will be front and center at trial.  NIC

24  does not like this and has argued that the issue of "whether NIC's 'immune support'

25  advertising claim was truthful is irrelevant to the claims in this case."  (Dkt. 434 at

26  4.)  However, this Court disagreed and held otherwise when it ruled that "the

27  efficacy of NIC's product is relevant in assessing whether there was a basis for

28  Nilon's claim."  (*Id.*)  Hence, the efficacy of Sovereign Silver and NIC's false

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 18 -

claims and advertising practices will be a core issue at trial in this case.

Moreover, based on the available evidence, particularly the evidence of NIC's own expert (Dr. Devlin), it is clear that NIC's decision to market Sovereign Silver for "IMMUNE SUPPORT" is premised on nothing more than conjecture and hope. In fact, NIC's own NIC's expert agrees with Defendants' expert on the adverse effects that silver can have on the immune system.  Notably, this opinion completely contradicts NIC's marketing, which urges consumers to take Sovereign Silver once a day for "maintenance" and "3 times daily" for "immune-building."  *See* https://sovereignsilver.com/dosing-information.  Accordingly, the testimony of NIC's own expert proves that NIC's marketing of Sovereign Silver is false and misleading.

### 4.     *Even if NIC Prevails, its Compensatory Damages are Still Capped at $234,966.52 and Actually Much Lower than That*

NIC has stipulated that its request for compensatory damages is limited to no more than the $234,966.52.  (Dkts. 237 and 612-3.)  However, even if the jury finds in favor of NIC, this amount will be substantially reduced.  For starters, approximately 80% these fees and costs ($186,341.52 of the $234,966.52 total claimed) were incurred by the Emord firm that was brought into the case because of the incompetence and malpractice of NIC's former counsel, Carlos Negrete.  The statements of NIC and its counsel before the trial judge in *Nilon v. NIC* prove this. After all, they pulled no punches when they repeatedly blamed Negrete by stating:

- Negrete "did not obtain essential discovery";

- "Significant discovery events have not occurred";

- NIC's "prior counsel either failed to perform discovery or deliberately avoided discovery essential to [NIC's] defense";

- "[H]eading toward the trial phase, [NIC] has in its possession almost no testimonial evidence, no fact evidence from the plaintiff, and few substantive discovery responses from the plaintiff"; and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- "[W]ith respect to Plaintiff's deposition - which was required by this Court - the failure to take that deposition, or raise the issue with this Court, was wholly deficient discovery practice."

*Nilon v. NIC*, Dkt. 90 at 5, 7, 8, 14 and 18.

These statements prove that the Emord law firm's entry into the case – and the damages claimed by and through Emord – were proximately caused by and directly attributable to Negrete's malfeasance.[12]   At the same time, the timeline of events clearly shows that when the deposition of Giovanni Sandoval was finally taken on April 20, 2015, that was quickly followed by the Order of Dismissal only 32 days later on May 22, 2015.  *Nilon v. NIC*, Dkt. 120.

In other words, had Negrete just done his job and taken the deposition of Sandoval earlier as ordered by the trial court – and as acknowledged and confirmed by NIC and its counsel – the fees that costs that NIC paid to Emord would not exist. Because of this, the trier of fact will have to substantially reduce NIC's claim for compensatory damages because the vast majority of the fees and costs that NIC claims were proximately caused by or attributable to Negrete's conduct.

At trial, Defendants will also present expert testimony on Negrete's incompetent representation and other reasons NIC's compensatory damages should be reduced, including the fact that nearly $30,000 in attorney's fees were unnecessary because it was work done in support of NIC's unsuccessful motion for sanctions after the order of dismissal had been entered.  Defendants' expert thus concludes that NIC's compensatory damages, at most, total $72,792.50.  Hence, NIC's claimed compensatory damages should be substantially reduced at trial.

## F.    Anticipated Issues of Law [L.R. 16-4.1(h)]

In addition to the factual and legal issues raised by NIC's claims and Defendants' affirmative defenses (discussed above), as well as in the parties' pre-

---

[12]    This is just one of several reasons that NIC's trial counsel in this action (Mr. Arhangelsky and Mr. Furman) will testify as witnesses at the trial in this action.

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   trial motions set for hearing at the Final Pretrial Conference, Defendants request that

2   the Court consider and allow the parties to present briefing on the impact of the

3   California Court of Appeal's recent decision on favorable termination in *Citizens of*

4   *Humanity, LLC v. Ramirez*, 63 Cal.App.5th 117, 132 (2021), review denied (Aug.

5   11, 2021), which held that de-certification of the class and dismissal without

6   prejudice is not a "favorable termination."  More specifically, the core holding in

7   *Citizens of Humanity* is that "[t]he determination that the class action procedure is

8   inapplicable in a particular case is not a resolution of the case on its merits, and does

9   not constitute a favorable termination for malicious prosecution purposes."  *Id.*

10      Defendants respectfully submit that this recent holding and the Court of

11  Appeal's findings on favorable termination and the requirement that it apply to the

12  entire action requires that this Court reconsider its prior rulings on favorable

13  termination in this case.  (Dkts. 88 and 297.)

14  **II.**   **Bifurcation of Issues [L.R. 16-4.3]**

15      Defendants respectfully request that the Court reconsider expediting and

16  economizing issues through a bifurcated jury trial on NIC's first claim for malicious

17  prosecution.  On April 17, 2018, this Court denied the NTG Defendants' motion to

18  bifurcate the malicious prosecution claim from the RICO claims and that the

19  malicious prosecution claim be tried first (Dkt. 630), but there have been significant

20  developments since that ruling that warrant reconsideration and support bifurcation.

21      First, NIC now intends to try this case as a long cause.  In 2018, NIC's

22  counsel estimated that trial on all issues – for both the plaintiff and the defense –

23  would require only two weeks.  (Dkt. 1176-2 [Reporter's Transcript of Proceedings

24  on May 14, 2018 at 38:10-39:9].  However, during the L.R. 16-2 meeting of

25  counsel, NIC's counsel estimated that trial will now require three weeks on NIC's

26  case in chief alone.  While even three weeks for NIC's case appears to be

27  unrealistic, particularly since NIC has identified 52 witnesses (25 of which NIC

28  "will call") and 927 exhibits (362 of which NIC "will use") for trial (Dkts. 1176-3

and 1176-4), this means that trial will now likely to last at least six weeks and the bulk of this time will be spent addressing other cases and other predicate acts that have nothing to do with the malicious prosecution claim involving *Nilon v. NIC*.  A bifurcated trial would thus allow the foundational claim of malicious prosecution to be decided first and before a long cause trial on the RICO claims.

Second, unlike 2018, a jury trial today (and in the foreseeable future) is complicated by the uncertainties of COVID-19 and the impact that may have on jurors and witnesses, the trial schedule, and the likelihood of reaching a verdict.  At the same time, this Court currently has other cases that may impact trial, including the criminal jury trial of Michael Avenatti, which is now set to proceed before this Court on November 2, 2021, and thus appears to be in conflict with the trial date in this case.  While these may be new realities, Defendants still have a due process right to their day in court and a bifurcated trial on the malicious prosecution claim would allow those matters to be decided earlier and with fewer risks of further delays and a mistrial.  This Court also has "a systemic duty to ensure that there is a 'just, speedy, and inexpensive determination of every action and proceeding.'" (Dkt. 155 at 1 [citing Fed. R. Civ. P. 1].).  Despite this, this litigation has been pending for nearly six years with close to 1,200 docket filings and numerous discovery disputes that have forced defendants to incur millions of dollars in fees and costs.  Trial dates in this case have also repeatedly been set and then continued notwithstanding Defendants' objections and requests that this matter proceed to trial.  Accordingly, Defendants respectfully renew their request for not only a speedy trial, but also a bifurcated trial on the malicious prosecution claim.

Third, a bifurcated trial on the malicious prosecution claim can be completed in far less time than what will be required for a jury trial on all of the other cases and other predicate acts in the RICO claims.  A shorter trial on the malicious prosecution claim also presents fewer risks associated with COVID and the impact that may have on trial.  Hence, if the Court were to bifurcate the claims and allow this matter

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  to first proceed to jury trial on the malicious prosecution claim, there would be

2  fewer trial days and a smaller likelihood of delays, a smaller risk of losing jurors,

3  and a smaller probability of a mistrial.

4      For all of these reasons, Defendants respectfully request that the Court

5  reconsider these issues and order that this matter be bifurcated and proceed to trial

6  first on NIC's claim for malicious prosecution.

7  **III.   <u>Jury Trial [L.R. 16-4.4]</u>**

8      NTG and Ferrell timely demanded a trial by jury on all factual issues raised

9  by NIC's claims in this case.  (Dkt. 1017 at 74).  As noted above, Defendants

10 acknowledge that the elements of probable cause and favorable termination on the

11 malicious prosecution claim, as well as the affirmative defense of estoppel, are to be

12 decided by the court as a matter of law, but that  factual disputes relating to the

13 knowledge and understanding of NTG and Ferrell of facts relevant to probable cause

14 element, as well as the facts and circumstances leading up the dismissal of *Nilon v.*

15 *NIC* relating to the favorable termination element, must first be resolved by the jury.

16 *Fuentes v. Berry,* 38 Cal.App.4th 1800, 1808 (1995).

17     Except for these issues, Defendants contend that all other elements and

18 defenses on NIC's malicious prosecution and RICO claims are to be decided by

19 jury.  To the extent that NIC contends that other claims or issues must be determined

20 by the Court and do not require resolution of disputed facts by the jury, Defendants

21 reserve the right and respectfully request the opportunity to respond to NIC's

22 contentions about the scope and application of those non-jury issues after NIC

23 identifies what those are and the relevant authorities that NIC is relying on.

24 **IV.   <u>Attorneys' Fees [L.R. 16-4.5]</u>**

25     Defendants acknowledge that the civil RICO statute provides for the recovery

26 of reasonable attorney's fees and costs to the prevailing party.  18 U.S.C. § 1964(c).

27 The key requirements here are that NIC prevail on the RICO claim, that any fees

28 and costs that are sought must be associated with that successful RICO claim, and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

that the Court finds that those fees and costs are reasonable.  Defendants obviously dispute both liability and the reasonableness of NIC's fees and costs, particularly given the relatively modest amount in controversy.  Again, not only has NIC stipulated that its request for compensatory damages is limited to no more than the $234,966.52, but even if it prevails on liability, its compensatory damages are likely to be substantially reduced to no more than $72,792.50.  In other words, any request for attorney's fees and costs will have to be measured against the amount of damages that NIC is actually able to obtain.

In addition, even if NIC prevails on both liability and damages (which again are disputed), it still cannot beat the Rule 68 Offer of Judgment that was made by the NTG Defendants on March 20, 2017.  NIC has no doubt run up millions upon millions of dollars in exorbitant attorneys' fees since this Offer of Judgment was served more than four years ago.  This is critical because "the Court must consider the results obtained by the plaintiff after he rejects a Rule 68 offer in determining the reasonableness of any fee award."  *Solomon v. Onyx Acceptance Corp.*, 222 F.R.D. 418, 421-422 (C.D. Cal. 2004).  Hence, if NIC somehow prevails, its fee claim should be limited to only the reasonable fees and costs that were incurred prior to service of the Rule 68 Offer on March 20, 2017.

In another case, this Court considered a request for attorney's fees by a moving party that had not beat a Rule 68 Offer and found that it did not even need to decide whether plaintiff "beat" the Rule 68 Offer because, even if plaintiff did "beat" Defendant's Rule 68 Offer, plaintiff's decision to continue litigating and incurring attorney's fees and costs was still "unreasonable":

> Even if Rule 68(d) were not to expressly prohibit the award of attorneys' fees post-offer, the Court still considers those fees to be unreasonable. "When a plaintiff rejects a Rule 68 offer, the reasonableness of an attorney fee award . . . will depend, at least in part, on the district court's consideration of the results the plaintiff obtained by going to trial compared to the Rule 68 offer." *Haworth v. Nevada*, 56 F.3d 1048, 1052 (9th Cir. 1995). The Ninth Circuit provides guidance for determining whether fees are

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

reasonable in a nonexhaustive list, which includes, "the amount of the Rule 68 offer, the stage of the litigation at which the offer was made, what services were rendered thereafter, the amount obtained by judgment, and whether it was reasonable to continue litigating the case after the Rule 68 offer was made." *Id.* at 1052-53.

*Carrion v. Kirby Oldsmobile, Inc.*, No. SACV1700231JVSJCGX, 2018 WL 6137127, at *2 (C.D. Cal. Nov. 9, 2018)

In this case, the Court has also expressed "substantial doubts as to whether the effort expended is proportional to the amount in controversy."  (Dkt. 758 at 36 [Reporter's Transcript of Proceedings on October 11, 2018 at 36:17-18]; *see also* at 36:19-23 [noting "substantial doubts" regarding whether NIC would be "in a net/net position notwithstanding the likely availability or the possible availability [of] punitive damages, RICO trebling, or attorneys' fees."].)  The Court likewise concluded that "[t]he burden [of this case] is disproportionate to the significance and value of the controversy."  (*Id.* at 37:4-6.)  Significant to this Court's analysis was "the agreement that the compensatory damages are $250,000."  (*Id.* at 39:12-40:5.)

Accordingly, even if NIC prevails at trial on its RICO claims, most of NIC's attorney's fees and costs in pursuing this action should be deemed unreasonable.

## V.     Abandonment of Issues [L.R. 16-4.6]

As noted above, Defendants have withdrawn their affirmative defense of Justification, as well as their affirmative defense of Reasonableness and Good Faith, subject to the limitations described in their Notice re: Affirmative Defenses (Dkt. 575).  However, the withdrawal of these affirmative defenses should not obviate or diminish any aspect of NIC's burden of proving each of the elements in its claims, including but not limited to factual and legal issues relating to probable cause, malice and favorable termination.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Dated:  August 30, 2021                **CALLAHAN & BLAINE, APLC**

2

3                                          By: */s/ David J. Darnell*
                                               Edward Susolik
4                                              David J. Darnell
                                               James M. Sabovich
5                                              Attorneys for Defendants
                                               NEWPORT TRIAL GROUP and
6                                              SCOTT J. FERRELL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28