# EXHIBIT E

# AMERICAN BAR ASSOCIATION
STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY

**Formal Opinion 00-417**                                      **April 7, 2000**
**Settlement Terms Limiting a**
**Lawyer's Use of Information**

> *Although a lawyer may participate in a settlement agreement that prohibits him from revealing information relating to the representation of his client, the lawyer may not participate or comply with a settlement agreement that would prevent him from using information gained during the representation in later representations against the opposing party, or a related party, except in limited circumstances. An agreement not to use information learned during the representation effectively would restrict the lawyer's right to practice and hence would violate Rule 5.6(b).*

The Committee has been asked whether, under the ABA Model Rules of Professional Conduct, a lawyer representing a party in a controversy may agree to a proposal by opposing counsel that settlement of the matter be conditioned on the lawyer not using any of the information learned during the current representation in any future representation against the same opposing party. The proposed settlement would be favorable to the lawyer's client. The Committee notes that, while this particular situation is most likely to arise in litigation, it also could arise in transactional matters.

The Model Rules prohibit a lawyer, as part of the settlement of a controversy, from participating in offering or making an agreement that would restrict the lawyer's right to practice.[1] In ABA Formal Opinion 93-371, this Committee expressed the opinion that a lawyer may not offer, nor may opposing counsel accept, a settlement term that would obligate the latter to refrain from representing either present or future clients who might opt out of a set-

---

1. Model Rule 5.6(b) provides: "A lawyer shall not participate in offering or making an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties." This rule is an expansion of former disciplinary rule DR 2-108(B), which did not proscribe "participating in the offering" as does Model Rule 5.6(b).

---

This opinion is based on the Model Rules of Professional Conduct and, to the extent indicated, the predecessor Model Code of Professional Responsibility of the American Bar Association. The laws, court rules, regulations, codes of professional responsibility, and opinions promulgated in the individual jurisdictions are controlling.

AMERICAN BAR ASSOCIATION STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY, 541 North Fairbanks Court, 14th Floor, Chicago, Illinois 60611-3314 Telephone (312)988-5300 CHAIR: Donald B. Hilliker, Chicago, IL ❏ Loretta C. Argrett, Washington, DC ❏ Jackson M. Bruce, Jr., Milwaukee, WI ❏ William B. Dunn, Detroit, MI ❏ James W. Durham, Philadelphia, PA ❏ Mark I. Harrison, Phoenix, AZ ❏ Daniel W. Hildebrand, Madison, WI ❏ William H. Jeffress, Jr., Washington, DC ❏ Bruce Alan Mann, San Francisco, CA ❏ M. Peter Moser, Baltimore, MD ❏ CENTER FOR PROFESSIONAL RESPONSIBILITY: George A. Kuhlman, Ethics Counsel; Eileen B. Libby, Associate Ethics Counsel

© 2000 by the American Bar Association. All rights reserved.

PLAINTIFF NATURAL IMMUNOGENICS CORP.'S    EXHIBIT E
MOTION TO ENFORCE SETTLEMENT AGREEMENT

tlement of mass tort or class action litigation. Although a lawyer normally would be required, pursuant to Rule 1.2 (Scope of Representation), to abide by the client's instructions to accept a settlement offer, the proscription in Rule 5.6(b) (Restrictions on Right to Practice) makes it impossible for the lawyer to comply with a client's instructions in these circumstances. The Committee later, in Formal Opinion 95-394, specifically affirmed that this Rule 5.6(b) proscription would apply even where one of the parties was a government entity.

A lawyer is a client's representative and must represent the client diligently.[2] Nevertheless, the Model Rules' Preamble makes clear that the lawyer also is "an officer of the legal system and a public citizen having special responsibility for the quality of justice." Although the Committee did not cite the Preamble in Formal Opinion 93-371, it must have had these principles in mind when it stated:

> The rationale of Model Rule 5.6 is clear. First, permitting such agreements restricts the access of the public to lawyers who, by virtue of their background and experience, might be the very best available talent to represent these individuals. Second, the use of such agreements may provide clients with rewards that bear less relationship to the merits of their claims than they do to the desire of the defendant to "buy off " plaintiff's counsel. Third, the offering of such restrictive agreements places the plaintiff's lawyer in a situation where there is conflict between the interests of present clients and those of potential future clients. While the Model Rules generally require that the client's interests be put first, forcing a lawyer to give up future representations may be asking too much, particularly in light of the strong countervailing policy favoring the public's unfettered choice of counsel.[3]

Thus, a lawyer may not, as part of settlement of a controversy on behalf of a client, agree to a limitation on the lawyer's right to represent other clients against the same opposing party.

Here, however, the opposing party's lawyer has not proposed a restriction that, in specific terms, would limit the lawyer's right to represent other clients with similar claims against that party. Rather, the proposed settlement provision would prohibit the lawyer from "using" information learned during the current representation in any future representation against the opposing

---

2. Comment [1] to Rule 1.3 (Diligence) provides that a lawyer "may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor."

3. *See also* David J. Luban, *Settlements and the Erosion of the Public Realm*, 83 GEO. L.J. 2619, 2624 (1995). Luban argues that "[t]he ban on lawyer buyout is virtually the only piece of the ethics codes that recognizes that accumulated legal skills are a public good that should not be squandered on a single favorable settlement."

3  Committee on Ethics and Professional Responsibility          00-417

party.[4] Nevertheless, some jurisdictions have interpreted the prohibition in Rule 5.6(b) to include settlement provisions that, while not outright bars on future representation, would have the effect of limiting the lawyer's right to practice. For example, the District of Columbia Bar Ethics Committee has determined that it is unethical for a lawyer to agree, as part of a settlement, not to refer a potential client to another lawyer if that potential client has a claim against the settling defendant.[5] The Arizona Ethics Committee has determined that a lawyer who represents several franchisees against a franchisor may not enter into a settlement agreement requiring the lawyer to disclose the names of all franchisees that have contacted the lawyer regarding potential representation against the defendant.[6] Recognizing that these and similar limitations indirectly restrict a lawyer's right to practice, the Colorado Ethics Committee has set forth a general principle to guide lawyers in determining when a limitation amounts to a restriction on practice that violates Rule 5.6(b)—"a claimant's attorney should not agree to a settlement restriction giving the attorney significantly less discretion in the prosecution of a claim than an attorney independent of the agreement would have."[7]

In this case, the proposed settlement provision would not be a direct ban on any future representation. Rather, it would forbid the lawyer from using information learned during the representation of the current client in any future representations against this defendant. As a practical matter, however, this proposed limitation effectively would bar the lawyer from future representations because the lawyer's inability to use certain information may materially limit his representation of the future client and, further, may adversely affect that representation. Once the lawyer reaches these conclusions, client consent is ineffective. Rule 1.7(b)[8] would prohibit the representation. Thus, a prohibition against using the information is a restriction upon the lawyer's right to practice.

———————————————

4. Rule 5.6(b) applies only to restrictions imposed as part of settlement of a controversy. Thus, the rule and this opinion have no application to agreements restricting the use of information where the agreement is entered into as a condition of receiving the information. Nor does the rule apply to protective orders imposed during litigation.

5. D.C. Bar Legal Ethics Comm. Op. No. 35 (1977).

6. Ariz. Op. No. 90-6 (1990).

7. Colo. Bar Ethics Comm. Op. No. 92 (1993).

8. Rule 1.7(b) provides:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: the lawyer reasonably believes the representation will not be adversely affected; and the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

PLAINTIFF NATURAL IMMUNOGENICS CORP.'S   EXHIBIT E
MOTION TO ENFORCE SETTLEMENT AGREEMENT

A prohibition on a lawyer's use of information gained during representation of a client is similar to a proposed settlement provision that bars a lawyer in future representations from subpoenaing certain records or fact witnesses, or using certain expert witnesses.[9] Knowledge of the existence of these records, or witnesses, and an agreement not to use such knowledge is tantamount to agreeing not to subpoena or use the information. The Committee believes that each of these restrictions is a restriction on the lawyer's right to practice.

On the other hand, it generally is accepted that offering or agreeing to a bar on the lawyer's disclosure of particular information is not a violation of the Rule 5.6(b) proscription. For example, Rule 5.6(b) does not proscribe a lawyer from agreeing *not to reveal* information about the facts of the particular matter or the terms of its settlement.[10] This information, after all, is information relating to the representation of the attorney's present client, protected initially by Rule 1.6 (Confidentiality of Information) and, after conclusion of the representation, by Rule 1.9(c) (Conflict of Interest: Former Client). With respect to former clients, a lawyer may reveal information relating to the representation only with client consent or in certain limited circumstances not relevant here.[11] A proposed settlement provision, agreed to by the client, that prohibits the lawyer from disclosing information relating to the representation is no more than what is required by the Model Rules absent client consent, and does not necessarily limit the lawyer's future practice in the manner accomplished by a restriction on the *use of information* relating to the opposing party in the matter. Thus, Rule 5.6(b) would not proscribe offering or agreeing to a nondisclosure provision.

Although the Model Rules also place a restraint on the "use" of information relating to the former client's representation, it applies only to use of the information to the disadvantage of the former client.[12] Even in this circum-

---

9. In considering restrictions that may affect a lawyer's right to practice, the Colorado Bar Ethics noted that:

> Prohibited restrictions may include barring a lawyer representing a settling claimant from subpoenaing certain records or fact witnesses in future actions against the defending party, preventing the settling claimant's lawyer from using a certain expert witness in future cases, and imposing forum or venue limitations in future cases brought on behalf of non-settling claimants.

Colo. Bar Ethics Comm. Op. No. 92.

10. *See, e.g.,* Colo. Bar Ethics Comm. Op. No. 92; N.M. Bar Adv. Op. Comm. Op. No. 1985-5 (1985).

11. Model Rule 1.9(c)(2) provides: "A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client."

12. Model Rule 1.9(c)(1) provides: "A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter use information relating to the representation to the disad-

5  Committee on Ethics and Professional Responsibility         00-417

stance, the prohibition does not apply when the information has become generally known or when the limited exceptions of Rule 1.6 or 3.3 (Candor Towards the Tribunal) apply.[13] This prohibition has been interpreted to mean that a lawyer may not use confidential information against a former client to advance the lawyer's own interests, or advance the interests of another client adverse to the interests of the former client.[14] If these circumstances are not applicable, using information acquired in a former representation in a later representation is not a violation of Rule 1.9(c).[15] Thus, from a policy point of view, the subsequent use of information relating to the representation of a former client is treated quite liberally as compared to restrictions regarding disclosure of client information. This fact provides further support for the Committee's determination that a general bar, requested by the opposing party, on the use of such information would restrict the access of the public to lawyers. These lawyers, by virtue of their background and experience, might be the most qualified lawyers available to represent future clients against the same opposing party. As long as the lawyer does not disclose information relating to the representation of the former client to a third party, the lawyer may use that information in subsequent representations, subject to the limited restrictions of Rule 1.9(c)(1).

**Conclusion**

   Although a lawyer may participate in a settlement agreement that prohibits him from revealing information relating to the representation of his client, the lawyer may not participate or comply with a settlement

---

vantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known."

13. The Committee notes that a more stringent rule applies against the use of information during a current representation. The rules do not permit the use of this information to the disadvantage of the client, even if it has become generally known. *See* Model Rule 1.8(b) (Conflict of Interest: Prohibited Transactions).

14. *See* Centerline Indus., Inc. v. Knize, 894 S.W.2d 874, 876 (Tex. App. 1995) (even though all confidences obtained by lawyer from former client had been disclosed in another proceeding, lawyer could not represent individual suing that former client in substantially related matter); *In re* Wood's Case, 137 N.H. 698, 704-06, 634 A.2d 1340, 1344-45 (N.H. 1993) (lawyer censured for using information relating to representation of former client to further his own interests in publicly opposing former client's plan to develop a shopping mall next to lawyer's home).

15. Rule 1.9(c)(1) protects against use of information relating to the representation of a former client to the former client's disadvantage. The former client's disadvantage does not, however, encompass any detriment that might result when a client does not receive a monetary enhancement to a settlement conditioned on his lawyer's agreement not to use information relating to the representation against the opposing party in future representations. The lawyer must be free to use the information in future representations. Otherwise, Rule 5.6(b) could be circumvented by an interpretation of 1.9(c) that was not intended.

00-417  Formal Opinion                                                    6

agreement that would prevent him from using information gained during the representation in later representations against the opposing party, or a related party, except to the limited extent described above. An agreement not to use information learned during the representation would effectively restrict the lawyer's right to practice and hence would violate Rule 5.6(b).