# EXHIBIT F

DC Bar - Ethics Opinion 335

# Ethics Opinion 335

# Whether a Lawyer May, as Part of a Settlement Agreement, Prohibit the Other Party's Lawyer From Disclosing Publicly Available Information About the Case

A settlement agreement may not compel counsel to keep confidential and not further disclose in promotional materials or on law firm websites public information about the case, such as the name of the opponent, the allegations set forth in the complaint on file, or the fact that the case has settled. Such conditions have the purpose and effect of preventing counsel from informing potential clients of their experience and expertise, thereby making it difficult for future clients to identify well-qualified counsel and employ them to bring similar cases. By diminishing the opportunity for the lawyer to represent future clients in similar matters, such conditions violates D.C. Rule 5.6(b), which prohibits lawyers from offering or making a settlement agreement that restricts a lawyer's right to practice. A settlement agreement may provide that the terms of the settlement and other non-public information may be kept confidential, but it may not require that public information be confidential.

**Applicable Rules**

- Rule 1.2 (Scope of Representation)
- Rule 1.6 (Confidentiality)
- Rule 5.6 (Restrictions On Right To Practice)
- Rule 7.1 (Communications Concerning a Lawyer's Services)

**Inquiry**

A defendant wishes to settle the claim of the inquirer's client conditioned on an agreement that the inquirer will keep confidential not only the terms of the settlement but also the fact of the settlement, the identity of the defendant, and the allegations of the complaint. The complaint has been filed and is not under seal. Moreover, the complaint has received substantial media attention. The inquirer's law firm has reported developments in the litigation on its website, we assume with the consent of his client. Discussions about the firm's experience on its website are part of the firm's effort to attract new clients. The inquirer asks whether the defendant can include in a settlement agreement a provision requiring him to remove information about the case from the firm's website and not to disclose further on the website or in other promotional materials, otherwise public

PLAINTIFF NATURAL IMMUNOGENICS CORP.'S
MOTION TO ENFORCE SETTLEMENT AGREEMENT                          EXHIBIT F

information such as the defendant's name, the allegations of the complaint, and the fact (but not the terms) of settlement.

## Discussion

Settlements are frequently conditioned on the confidentiality of their terms. The rationale for this practice is that the terms of a settlement constitute non-public information learned by a lawyer in the course of the representation, which, if the client requests be held inviolate, are "secrets" within the definition of D.C. Rule 1.6(b). Subject to certain exceptions, a lawyer is not permitted to reveal his client's secrets. D.C. Rule 1.6(a).[1] In most instances, we suspect, a plaintiff's request that the terms of a settlement remain confidential results from the defendant's insistence and the plaintiff's indifference. Nonetheless, there are undoubtedly circumstances in which a plaintiff has her own motives for wishing settlement terms to remain confidential, such as preventing other persons from learning precisely how much (or little) she has recovered.

The Inquiry, however, goes beyond the confidentiality of the settlement terms, and raises the question whether, as part of the settlement, one lawyer may prohibit another from further disclosure of already public information, including the name of the defendant and the allegations of the complaint, as well as information that can readily be inferred from the public record, such as the fact that the litigation settled. Once the complaint was filed in court, the name of the defendant and the plaintiff's allegations against it are available to the public. While terms of a settlement are frequently confidential, the fact of settlement rarely is. If a settlement is not announced by the parties, the public record may not actually disclose that it has occurred, although in cases where settlements require court approval, it will. But the voluntary dismissal will alert most knowledgeable persons that there has almost certainly been a settlement, and in most instances, a number of people will become aware that the case has settled.[2]

Nevertheless, a lawyer has a duty to abide by his client's decision whether to accept an offer of settlement. D.C. Rule 1.2(a). This is so even if the lawyer believes the decision to be unwise. D.C. Rule 5.6(b), however, prohibits lawyers from including certain types of terms in settlement agreements: A lawyer may not participate in offering or making "an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between parties." This is generally understood to mean an explicit agreement as part of the settlement prohibiting plaintiff's counsel from representing other persons.[3] Thus, for example, a settlement of a case brought on behalf of consumers against the manufacturer of a product may not be conditioned on plaintiffs' counsel agreeing not to represent other consumers of the product against the settling manufacturer.[4] This same rule, or a similar version, also has been interpreted to prohibit an agreement not to use information learned in the course of the case in a future representation against the same party. Enforcement of such an agreement might effectively prevent the lawyer from representing future clients since the only way for the lawyer to ensure that he does not use information that he has learned is to decline to represent anyone else in a similar case.[5] Other jurisdictions also have prohibited similar clauses in settlement agreements restricting "plaintiff or plaintiff's counsel from using case information to assist other litigants or claimants;"[6] requiring plaintiff's counsel to turn

over her entire file, including her work product, to defense counsel to be sealed;[7] "barring a lawyer representing a settling claimant from subpoenaing certain records or fact witnesses in future actions against the defending party;"[8] or forbidding disclosure of "the business or operations of the defendant corporation"[9] An underlying rationale for all these opinions is that the prohibited provisions restrict the lawyer's right to practice by effectively preventing him or his firm from representing clients in certain kinds of cases against the settling party.

Underlying each of the opinions disapproving restrictions on the future conduct of lawyers, under the rule equivalent to D.C. Rule 5.6, is the intent to preserve the public's access to lawyers who, because of their background and experience, might be the best available talent to represent future litigants in similar cases, perhaps against the same opponent.[10] A similar rationale underlies the interpretation of D.C. Rule 5.6(a), forbidding restrictions on lawyers moving from one firm to another.[11] We believe that the purpose and effect of the proposed condition on the inquirer and his firm[12] is to prevent other potential clients from identifying lawyers with the relevant experience and expertise to bring similar actions. While it places no direct restrictions on the inquirer's ability to bring such an action, even against the same defendant if he is retained to do so, it does restrict his ability to inform potential clients of his experience. As such, it interferes with the basic principle that D.C. Rule 5.6 serves to protect: that clients should have the opportunity to retain the best lawyers they can employ to represent them. Were clauses such as these to be regularly incorporated in settlement agreements, lawyers would be prevented from disclosing their relevant experience, and clients would be hampered in identifying experienced lawyers.

There was a time, of course, before the advent of websites and marketing departments and lawyer advertising, when public disclosures of relevant expertise were frowned upon, if not outright prohibited. Those days are gone.[13] But even then, if asked, a lawyer was able to disclose public information about cases that he had handled if a potential client inquired as to his experience. If the conditions proposed by the defendant could be part of a settlement agreement, why could the defendant not propose that the lawyer never speak of the case again unless compelled to do so by formal process? This would bring about a situation where a lawyer could not reveal to a potential client public record information that would demonstrate his experience and ability. The only restrictions on lawyer advertising in the District of Columbia are that all claims must be truthful and subject to substantiation. D.C. Rule 7.1.[14] The implication of this liberal rule permitting advertising is that the consumers of legal services – like the consumers of other products and services – benefit from the dissemination of accurate information in choosing legal representation. Given that policy, we believe confidentiality provisions in settlement agreements that prohibit a lawyer from disclosing such public information as the name of the defendant, the public allegations, and the fact of settlement would violate D.C. Rule 5.6(b). Such provisions restrict a lawyer's right to practice by interfering with his ability to inform future potential clients of his relevant experience and expertise.

If a client withholds permission for her lawyer to disclose public information, we agree that the lawyer must keep the information secret and that D.C. Rule 1.6 applies.[15] A plaintiff settling a sexual harassment claim, for example, may wish to protect her privacy by not allowing her lawyer to publicize further any information about her case. A settlement agreement may require a lawyer to

keep non-public information confidential. It is well established that non-public information, such as the terms of a settlement, may remain confidential.[16] In addition to settlement terms, other non-public matters can be kept confidential, such as disputes that are never made public but which are decided through confidential arbitration procedures. The line that we draw is that the confidentiality of otherwise public information cannot be part of a settlement agreement even if the lawyer's client agrees that such a provision be included. Once the matter is public, a settlement agreement may not impose confidentiality on otherwise public matters without violating D.C. Rule 5.6(b). A lawyer may not propose or agree to such a confidentiality provision. In drawing this line we are striking a balance consistent with the rationale of the Rules and with widely accepted practices. While it might be argued that a lawyer would be better able to market his services, and a client better able to identify a qualified representative, if no information about any case, including the terms of settlement, could be kept confidential, such a decision is contrary to long-standing accepted practices with respect to settlement agreements. On the other hand, if the parties can agree to keep all public information about all cases confidential, clients' ability to identify qualified lawyers would be greatly restricted. A reasonable resolution is to draw a line between information that is public at the time of settlement and information that remains confidential. New York seems to have taken a similar approach.[17] This balance between the well-accepted practice of keeping non-public settlements confidential, with the concomitant effect on the willingness of parties to settle, and allowing clients to identify experienced counsel by prohibiting confidentiality clauses in settlement agreements of otherwise public information, strikes us as a reasonable application of Rule 5.6(b). It also has the virtue of offering clear guidance to practitioners.

Our broad reading of D.C. Rule 5.6(b) is consistent with the Court of Appeals' equally broad interpretation of Rule 5.6(a). Almost any financial disincentive to a lawyer's changing firms has been determined to be an impediment that violates Rule 5.6(a) because it interferes with clients' ability to choose lawyers.[18] A similar approach leads to the conclusion that the proposed settlement provision, by inhibiting a lawyer's ability to attract clients, interferes with clients' ability to obtain the most competent representation.

We acknowledge that confidentiality provisions, such as the one at issue, might have value that the client can trade in order to get better terms from the other side. If a lawyer may not agree to such a provision, he deprives his client of that value. Yet an agreement that the lawyer will not represent future clients against the settling defendant also has value that his client could trade. In most cases, we suspect the value of the lawyer's agreement not to sue again exceeds the value of the prohibition on further disclosing public information. Yet the Rules of Professional Conduct prohibit such agreements not to sue as part of settlements. This is a policy choice that the value to future clients of the ability to choose the best lawyer to represent them exceeds the harm to the current client of not being able to trade for consideration her lawyer's ability to sue the settling defendant in the future. Moreover, when such settlement terms are taken off the table because they are prohibited, clients are not harmed. If all parties are prohibited from agreeing to such provisions, they have no value. It seems improbable that if such confidentiality clauses are prohibited to all litigants, there would be any measurable effect on the number of settlements or on the value of those settlements.

We emphasize, however, that if a client withholds permission for her lawyer to disclose public information, the lawyer should comply with his client's wishes. D.C. Rule 5.6(b) concerns only settlement agreements. If a client wishes her lawyer not to disclose further public information, she does not need the mechanism of a settlement agreement to enforce her instructions. The only reason to make confidentiality a provision of the settlement agreement is to give the opposing party a mechanism to enforce confidentiality. We believe such opponent-driven secrecy clauses are restrictions on the lawyer's right to practice in violation of Rule 5.6(b).

Approved: May 16, 2006
Published: July 2006

---

1. See ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 00-417 (2000); Colo. Bar Ethics Comm., Formal Op. 92 (1993); N.M. Bar Ethics Adv. Op. Comm., Adv. Op. No. 1985-5 (1985).

2. For example, when a case settles, the prospective witnesses are informed. If the case draws media attention, as this one has, the media becomes aware of the settlement when the case is dismissed.

3. See D.C. Rule 5.6, Comment [2].

4. In re Hager, 812 A.2d 904, 918-19 (D.C. 2002). See generally D.C. Ethics Op. 35 (1977).

5. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 00-417 (2000).

6. Tenn. Bd. of Prof'l Resp., Formal Op. 98-F-141 (1998).

7. N.M. Bar Ethics Adv. Op. Comm., Adv. Op. 1985-5 (1985). This opinion says, cryptically, such a restriction may in some, but not necessarily all, cases inhibit the representation of future clients.

8. Colo. Bar Ethics Comm., Formal Op. 92 (1993).

9. N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 730 (2000).

10. E.g., N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 730 (2000).

11. D.C. Ethics Op. 325 (2004). See Neuman v. Akman, 715 A.2d 127, 131 (D.C. 1998). The court in Newman interpreted D.C. Rule 5.6(a), which prohibits employment agreements restricting a lawyer's right to practice after termination, to apply to a partnership agreement that denied certain financial benefits to departing partners. Such provisions might deter lawyers from joining new firms, which would limit their ability to offer clients their services in an organizational setting that might better serve the clients.

12. Lawyers are generally not parties to settlement agreements, but they must adhere to the confidentiality provisions either because their clients implicitly instruct them to keep matters confidential, with which request the lawyers must comply pursuant to D.C. Rule 1.6, or because violating the confidentiality provision would undo the settlement and damage their clients, in violation of D.C. Rules 1.2 and 1.3(b).

13. Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626 (1985); Bates v. State Bar of Arizona, 433 U.S. 350 (1977).

14. See D.C. Ethics Op. 249 (1994).

15. Cf. Sealed Party v. Sealed Party, 2006 U.S. Dist. LEXIS 28392 (S.D. Tex. 2006) (Under Texas law, a lawyer violates his fiduciary duty to a former client by revealing public information about a case without obtaining the client's consent).

16. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 00-417 (2000); Colo. Bar Ethics Comm., Formal Op. 92 (1993); N.M. Bar Ethics Adv. Op. Comm., Adv. Op. 1985-5 (1985).

17. A settlement agreement may not impose on a lawyer a higher degree of confidentiality than the lawyer owes his own client. N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 730 (2000).

18. See Neuman v. Akman, note 11 supra; D.C. Ethics Op. 241 (1993); D.C. Ethics Op. 325 (2004).



PLAINTIFF NATURAL IMMUNOGENICS CORP.'S                                         EXHIBIT F
MOTION TO ENFORCE SETTLEMENT AGREEMENT