# EXHIBIT G

**FLORIDA BAR ETHICS OPINION**
**OPINION 04-2**
**January 21, 2005**

**Advisory ethics opinions are not binding.**

A lawyer may not propose or agree to either a direct or indirect restriction on the lawyer's right to practice as part of a settlement agreement.  Confidentiality clauses and general releases of liability do not violate the rule.  To determine if an agreement restricts a lawyer's right to practice, the lawyer should consider whether it imposes restrictions on the lawyer broader than the lawyer's own client can impose, whether the provision would limit the lawyer's independent professional judgment in representing other clients, whether the restriction allows an opposing party to indirectly restrict the lawyer's right to practice, whether the restriction benefits the lawyer's own client or the opposing party, and whether the restriction furthers or hinders the public policy behind the rule.

| | |
|---|---|
| **RPC:** | 4-1.9(a), 4-5.6(b), 4-8.4(a) |
| **OPINIONS:** | 88-11 (rec.), ABA Formal 00-417, ABA Formal 93-371, California Formal 1988-104, Colorado 92, Michigan CI-1165, New Mexico 1985-5, New York City 1999-3, New York State 730, North Carolina RPC 179, Oregon 1991-47, Tennessee 97-F-141, Texas 505 |
| **STATUTES:** | F.S. § 69.081 |
| **CASES:** | *Adams v. Bell South Telecommunications, Inc.*, 2001 WL 34032759 (S.D.Fla. Jan. 29, 2001), *Chandris v. Yanakakis,* 668 So.2d 180 (Fla. 1995), *Elser v. Law Office of James Russ, P.A.,* 679 So.2d 309 (Fla. 5th DCA 1996), *Florida Bar v. Fitzgerald,* 541 So.2d 602 (Fla. 1989), *Florida Bar v. Frederick*, 756 So.2d 79 (Fla. 2000), *Lee v. Department of Insurance,* 586 So.2d 1185 (Fla. 1st DCA 1991) |

A member of The Florida Bar has requested an advisory opinion regarding a provision that the opposing party in securities litigation wants to include in a settlement agreement.  The provision at issue states:

> Other than discussions between the parties, their immediate families, their respective attorneys, accountants, government officials, and self-regulatory bodies such as the NASD, all parties and their attorneys and agents agree, acknowledge and consent that they shall not in any method or manner discuss, publish, or disseminate any information concerning the settlement or the terms of this Release with any other party not specifically authorized by this Release to receive such information.  Further, the Claimant and their attorneys and agents agree not to include or involve the Claimant's claims, accounts, or investments in any other claim, dispute, action, negotiation, or proceeding against Respondent, its respective present or former parties and affiliates, and each of their officers, directors, servants, agents, employees, or registered representatives, including but not limited to.....

The inquiring attorney states that he often represents several clients who are pursuing the same broker-dealer.  The inquiring attorney is concerned that this provision impacts his ability to effectively represent other current or future clients.  Thus, the inquiring attorney asks whether he may ethically enter into an agreement containing this provision.

Rule 4-5.6(b) of the Rules of Professional Conduct prohibits clauses in settlement agreements that restrict the lawyer's right to practice. Specifically, the rule states:

A lawyer shall not participate in offering or making:

**(b)**  an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.

The comment regarding this portion of the rule states "[s]ubdivision (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client."

ABA Model Rule 5.6(b) is identical to Rule 4-5.6(b).  In Formal Opinion 93-371, the ABA Ethics Committee stated the three public policy provisions behind the rule:

The rationale of Model Rule 5.6 is clear. First, permitting such agreements restricts the access of the public to lawyers who, by virtue of their background and experience, might be the very best available talent to represent these individuals. Second, the use of such agreements may provide clients with rewards that bear less relationship to the merits of their claims than they do to the desire of the defendant to "buy off" plaintiff's counsel. Third, the offering of such restrictive agreements places the plaintiff's lawyer in a situation where there is conflict between the interests of present clients and those of potential future clients. While the Model Rules generally require that the client's interests be put first, forcing a lawyer to give up future representations may be asking too much, particularly in light of the strong countervailing policy favoring the public's unfettered choice of counsel.

The Professional Ethics Committee has not previously addressed subsection (b) of Rule 4-5.6 or its predecessor in the prior Code of Professional Responsibility, DR 2-108(B)[1].  The only Florida state court case where the rule is discussed in any substance is *Lee v. Florida Department of Insurance*, 586 So. 2d 1185 (Fla. 1st DCA 1991).  However, *Lee* addressed the *legal* rather than the *ethical* implications of Rule 4-5.6(b), and did so in the context of an appeal from an administrative law judge's refusal to disqualify an attorney from representing an agency pursuant to the terms of a prior civil suit settlement agreement.  The administrative law judge had found the restriction violative of Rule 4-5.6(b) and declared it unenforceable by reason thereof.  The appellate court in *Lee* held that the Administrative Procedures Act did not grant administrative law judges jurisdiction to declare contracts void, and that only courts of

---

[1]  DR 2-108(B) stated "[i]n connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law."

competent jurisdiction can do so.  Unfortunately, its holding is obscured by the fact that the paragraph begins with *dictum.*  It reads:

> To use rule 4-5.6 as the basis for invalidating a private contractual provision is manifestly beyond the stated scope of the Rules and their intended legal effect. Until paragraph 8 of the settlement agreement has been voided, canceled, or nullified by a court of competent jurisdiction, it must be treated as valid and binding on all parties legally affected by its terms. Whether attorney Bateman acted unethically in violation of the Rules by participating in the negotiation of a settlement agreement that included the provisions in paragraph 8 and should be disciplined therefor is not the issue in this proceeding.

(Emphasis added; footnote 3 referencing the jurisdictional issue, deleted) 586 So. 2d at 1188-1189.

It should also be noted that  *Lee* preceded and its dictum appears to conflict with the Florida Supreme Court's subsequent decision in  *Chandris v. Yanakakis*, 668 So.2d 180 (Fla. 1995) in which the supreme court held "a contingent fee contract entered into by a member of The Florida Bar must comply with the rule governing contingent fees in order to be enforceable." *Id.* at 185-186.  While the legal validity of a particular agreement is an issue separate from whether the agreement comports with the Rules of Professional Conduct, and *Chandris* dealt with the contingency fee rules rather than Rule 4-5.6(b), *Chandris* indicates that the court is willing to consider ethical considerations in determining whether a particular agreement is enforceable.  *Chandris* was expressly followed in *Elser v. Law Office of James Russ, P.A.*, 679 So.2d 309 (Fla. 5th DCA 1996) (an engagement letter's prospective waiver of a right to complain about invoiced fees if not asserted within 10 days after the date of the invoice, regardless of the date of receipt of the invoice, was held unenforceable as against public policy).

Another case discussing Florida Rule 4-5.6 and also discussing the *Lee* case is an unreported case from the Southern District of Florida, *Adams v. BellSouth Telecommunications, Inc.*, 2001 WL 34032759 (S.D. Fla. Jan. 29, 2001).   In connection with the settlement of the case, lawyers for the plaintiffs entered into an agreement with BellSouth to provide "consulting" services to the telecommunications company. The BellSouth attorneys argued to the District Court that their conduct did not violate Rule 4-5.6(b) because it only involved a "limited" restriction on the right of the plaintiff lawyers to practice which was allowed under the *Lee* decision.   The federal court disagreed, observing:

> For several reasons, this Court therefore does not believe that Lee condones the practice restriction negotiated and agreed to in this case. First, there is no evidence that the practice restriction was designed in any way or constructed in any limited fashion to prevent the disclosure of confidential information. No party has revealed to this Court any serious argument along these lines. Rather, it is clear from the record and the testimony of the lawyers that BellSouth sought a practice restriction on Plaintiffs' counsel to prevent Plaintiffs' counsel from bringing future similar cases against BellSouth with the same kind of terrorist tactics used against BellSouth in this case. In short, the practice restriction was a payoff to Plaintiffs' counsel to make them go away and never come back. As I

explain infra, this type of arrangement is a violation of Rule 4-5.6 for well-grounded public policy reasons.

Second, the practice restriction was not written to protect the clients of Plaintiffs' counsel but rather to protect the opposing party, BellSouth. In fact, the evidence in this case makes clear that Plaintiffs never were informed of the existence, terms, or content of the practice restriction agreement by any of the lawyers. The Lee exception is designed to safeguard a client's confidential disclosures to her lawyer and avoid a potential violation of conflict of interest rules through a lawyer's subsequent representation of a different client in a related case.   Here, the practice agreement was constructed for the benefit of the opposing party (without the knowledge of Plaintiffs' clients) in a manner that placed Plaintiffs' counsel in a direct conflict of interest with their clients a scenario inconsistent with the reasoning of Lee and the spirit of the bar rules. I therefore find the Lee dicta inapposite. Further, I also believe that had BellSouth's lawyers engaged in the appropriate level of research into the issue, it would have been clear to them (if it already was not clear on its face) that the negotiated consulting arrangement was unethical.

2001 WL 34032759 at pp. 5-6 (emphasis in original; footnotes omitted).

While Florida has no ethics opinions as to Rule 4-5.6(b), other jurisdictions do have opinions as to their version of the rule.  These opinions include a number of opinions dealing with settlement agreements directly restricting lawyers from bringing claims against the other party again.  *See*, ABA Formal Opinion 93-371, North Carolina Opinion RPC 179 (1994), California Formal Opinion 1988-104, Oregon Opinion 1991-47, and Michigan Bar, Opinion CI-1165.  All of these opinions found such provisions to be prohibited under their rules.

Other states have dealt with provisions that seek to impose indirect restrictions on an attorney, rather than directly forbidding an attorney from representing others against a certain party.  For example, in Texas Opinion 505 (1995), the Texas Committee determined that a settlement provision barring an attorney from soliciting people to bring suit against the opposing party and from sharing fees with other lawyers in the future in cases against the opposing party to be a violation of its version of the rule.  Similarly, the New York City bar determined that its version of the rule was violated by a settlement provision barring an attorney from encouraging others to bring claims and from assisting or cooperating with other attorneys to bring claims against the opposing party.  Association of the Bar of the City of New York, Opinion 1999-3.

The Colorado Bar in its Opinion 92 (1993) discussed a variety of indirect restrictions that could run afoul of its rule 5.6(b), including "barring a lawyer representing a settling claimant from subpoenaing certain records or fact witnesses in future actions against the defending party, preventing the settling claimant's lawyer from using a certain expert witness in future cases, and imposing forum or venue limitations in future cases brought on behalf of non-settling claimants." The committee formulated a test to use to help determine whether a given provision in a settlement provision improperly restricted a lawyer's right to practice.  As stated by the committee, "the test of the propriety of a settlement provision under Rule 5.6(b) is whether it

would restrain a lawyer's exercise of independent judgment on behalf of other clients to an extent greater than that of an independent attorney not subject to such a limitation."

The ABA issued an opinion determining that a ban on the *use* of information learned from a representation violates Model Rule 5.6(b), but that a ban on *disclosure* of information learned from the representation of a client does not violate Model Rule 5.6.   The ABA committee reasoned that a ban on the use of information effectively prevents a lawyer from representing future clients because the lawyer's inability to use the information would create a conflict with the future clients under Model Rule 1.7(b) that could not be waived.  ABA Formal Opinion 00-417 (2000). Other states have address restrictions on the use or disclosure of information that are made as part of a settlement agreement.  The Tennessee Ethics Committee determined in Opinion 97-F-141 that a provision restricting both a plaintiff and the plaintiff's attorney from assisting others by using case information violated Tennessee Rule DR 1-208(B). Additionally, the New York State Bar Association, in its Opinion 730 (2000) determined that an attorney could not agree to confidentiality provisions in a settlement agreement where the terms of the agreement were broader than the attorney's duty of confidentiality.  The committee stated:

> . . . terms of a settlement agreement may violate DR 2-108(B) if their practical effect is to restrict the lawyer from undertaking future representations and if they involve conditions or restrictions on the lawyer's future practice that the lawyer's own client would not be entitled to impose.

The New Mexico Bar issued an opinion, Advisory Opinion 1985-5 dealing with certain provisions in a settlement agreement.  The first was a confidentiality provision as to the amount and terms of the settlement which the New Mexico Bar stated was permissible.  The second provision required the plaintiff's attorney to give her entire case file to the defense attorney to be sealed.  The third provision required the plaintiff's attorney to agree not to represent any more cases arising out of the same situation (a prison riot).  The opinion concludes that the third provision violates New Mexico Rule 2-108(B) which prohibits a lawyer from entering into an agreement restricting his right to practice law in connection with the settlement of a controversy or lawsuit.  As to the second provision, the opinion notes that under New Mexico law, the case file is the property of the client.[2]  However, the committee noted the file also contained the attorney's work product which remained the attorney's property and to which opposing counsel normally had no access.  The committee determined that by making the provision include the entire file, it necessarily included the attorney work product, and as a result was a violation of Rule 2-1.08(b) because this may inhibit her ability to represent clients in the future and would allow defense counsel to "accomplish indirectly what they cannot accomplish by directly precluding the attorney from representing other plaintiffs with similar claims."

The rule prohibiting settlement agreements restricting a lawyer's right to practice applies to both the attorney making the offer and the attorney accepting it.  *See, e.g.*, ABA Formal Opinion 93-371, Michigan Opinion CI-1165, New Mexico Opinion 1985-5, Colorado Formal

---

[2] Florida law is different.  Under Florida law the case file is considered to be the attorney's property.  See, Ethics Opinion 88-11(rec).  However, due to the resolution of the issue in the New Mexico opinion, this difference in the law does not mean the reasoning of the New Mexico opinion is not relevant.

Opinion 92, New York State Opinion 730, North Carolina Opinion RPC 179, and California Formal Opinion 1988-104.  Additionally, any residual doubt about whether the prohibition applies to both sides of an agreement is resolved by Rule 4-8.4(a) which prohibits an attorney from violating the rules through the acts of another.  Therefore, an attorney who "induces" another attorney to violate an ethics rule would be guilty of violating the ethics rules as well.

While the above discussed authorities from other jurisdictions are not binding on the Professional Ethics Committee, they provide guidance to the Committee in interpreting Florida Rule 4-5.6 and the provision presented by the inquiring attorney.  If the Committee were faced with a provision that directly stated that the inquiring attorney could not represent any other clients before the opposing party, we would find such a direct restriction to be an obvious violation of Rule 4-5.6.  However, the Committee is not reviewing such a provision.  If the provision is prohibited by Rule 4-5.6, it would be as an indirect restriction on the inquiring attorney's ability to practice.

In making such a determination, the provision must be examined carefully.  The tests formulated by other jurisdictions are useful in this analysis.  Does the provision, under the test formulated by the New York State Bar Association in its Opinion 730, seek to impose restrictions or conditions on the inquiring attorney's future practice that the inquiring attorney's own client would not be entitled to insist upon?   Further, as stated by Colorado Opinion 92, does the provision restrain the inquiring attorney's exercise of independent judgment on behalf of his clients to an extent greater than that of an attorney not subject to the provision?  Additionally, as noted in New Mexico Opinion 1985-5, does the provision allow the opposing party to indirectly accomplish what it cannot accomplish directly, namely prevent the inquiring attorney from representing other clients against it in the future?   Consideration should also be given, as the court did in the *Lee* case to whether the clause benefits the inquiring attorney's client or whether it benefits the opposing party instead.   Another consideration that should be made is whether the provision furthers or hinders the public policies Rule 4-5.6(b) seeks to protect.

While these tests are worded differently, they all boil down to one essential question: how does a particular settlement provision affect an attorney's ability to represent another client in a matter involving the same or a related opposing party?   If the provision has no effect on a lawyer's ability to represent such a client, the provision will not run afoul of Rule 4-5.6(b).  On the other hand, if a provision does affect a lawyer's ability to represent another client and that effect is a negative affect, the provision is impermissible under Rule 4-5.6.

Keeping this in mind, the Committee turns now to examine in detail the provision submitted by the inquiring attorney.  The first clause of the settlement provision submitted by the inquiring attorney states:

> Other than discussions between the parties, their immediate families, their respective attorneys, accountants, government officials, and self-regulatory bodies such as the NASD, all parties and their attorneys and agents agree, acknowledge and consent that they shall not in any method or manner discuss, publish, or disseminate any information concerning the settlement or the terms of this

Release with any other party not specifically authorized by this Release to receive such information.

To the extent this clause is merely a confidentiality agreement as to the terms of the settlement it does not pose an ethical problem, provide there is no legal prohibition against confidentiality of a particular settlement.[3]  The clause at issue makes only the terms of the settlement and release itself confidential. Such confidentiality clauses have typically been determined not to violate ethics rules.  *See, e.g.*, New Mexico Opinion 1985-5 and Colorado Opinion 92.  Also, the provision does not contain a provision concerning prohibiting the inquiring attorney from using information about the case itself.  Therefore, it differs from the provisions found to be problematic in ABA Formal Opinion 00-417, Tennessee Opinion 97-F-141 and New York State Bar Association Opinion 730.

The only other possible problem with the clause is the confidentiality provision as to the terms of the release itself.  The Florida Supreme Court has held that agreements seeking to prevent someone from filing a bar grievance are unenforceable and unethical.  *See, The Florida Bar v. Fitzgerald*, 541 So.2d 602 (Fla. 1989) and *The Florida Bar v. Frederick*, 756 So.2d 79 (Fla. 2000).  However, the clause does allow information to be given to "self-regulating bodies" and The Florida Bar is a self-regulating body for attorneys.  Presumably then this sentence does not impose a restriction on any of the signatories' ability to file a bar grievance against any of the attorneys involved in the case.

The second clause of the provision is more problematic. It states:

> Further, the Claimant and their attorneys and agents agree not to include or involve the Claimant's claims, accounts, or investments in any other claim, dispute, action, negotiation, or proceeding against Respondent, its respective present or former parties and affiliates, and each of their officers, directors, servants, agents, employees, or registered representatives, including but not limited to.....

If the provision is intended to be a general release of liability as to the defendants and affiliated parties it would not run afoul of Rule 4-5.6(b).  However, if the provision were merely to release the respondent and the other people listed from future claims by the Claimant, why would the provision include the attorney representing the Claimant?  The inclusion of the attorneys in the provision seems to indicate that the provision is not merely a general release of liability.

Thus, if the provision is not a release of liability, the Committee must examine how this provision will affect the inquiring attorney's ability to represent other clients.  The clause would prohibit the inquiring attorney from including or involving the "Claimant's claims, accounts or investments in any other claim, dispute, action, negotiation or proceeding" against the

---

3   *See, e.g.;* Fla. Stat. § 69.081 ("Sunshine in Litigation Act" which prohibits judgments, agreements and contracts that have the effect of concealing a public hazard).  Whether a provision outside the ethics rules prohibits a confidentiality clause in any given case, is a question of law that is beyond the scope of an advisory ethics opinion.

Respondent and the named affiliates and people.  Rule 4-1.9(a) would allow the inquiring attorney to bring substantially similar claims to those he brought for the client as long as it would not be adverse to the interests of the now former client.  Further, the inquiring attorney would be allowed to use information relating to the representation of the Claimant as long as it was not to the disadvantage of the former client.  The provision appears to be a broader restriction on the inquiring attorney than the client would be entitled to impose under Rule 4-1.9. Additionally, if the inquiring attorney could not bring claims otherwise permissible under Rule 4-1.9, as to his former client's "claims, accounts or investments" against the brokerage firm and its named affiliates his independent professional judgment on behalf of clients who may have claims against the brokerage would be limited in such a manner as to cause a conflict under Rule 4-1.7(b) as to such clients. It is not clear how this provision would benefit the inquiring attorney's current client.  On the other hand, it certainly would benefit the opposing party to prevent the inquiring attorney from representing others against it and its affiliates.  The provision hinders, rather than advances the public policy reasons behind Rule 4-5.6.   In sum, the second clause of the settlement provision submitted by the inquiring attorney runs afoul of Rule 4-5.6. Accordingly, the inquiring attorney may not ethically enter into a settlement containing this clause.

In summary, Rule 4-5.6(b) prohibits Florida attorneys from proposing or agreeing to a restriction on an attorney's right to practice in connection with a settlement of a matter between private parties.  The prohibition applies to both direct and indirect restrictions.  In determining whether a particular provision violates the rule, the effect of the provision on the attorney's ability to represent other clients must be examined.  This determination should include consideration of whether the provision imposes restrictions on the attorney broader than the attorney's own client would be able to insist upon, whether the provision would limit the attorney's independent professional judgment in the representation of other clients, whether the provision allows an opposing party to indirectly achieve a restriction on the lawyer's right to practice, whether the provision benefits the client or the opposing party and whether the provision furthers or hinders the public policy reasons Rule 4-5.6 was founded upon.  This list of considerations is not intended to be all-inclusive as different circumstances may call for different considerations.  Nor is it intended that the considerations listed above form a rote checklist that must be followed before a provision can be found to be ethically impermissible.  This is because, fundamentally, all of the considerations listed above are different ways of asking the same basic question: what is the effect of the provision on a lawyer's ability to represent other clients.   If the provision negatively affects the lawyer's ability to represent other clients, the provision cannot be permissible under Rule 4-5.6.

Taking all of this into consideration in examining the provision before the Committee, the Committee finds that the second clause of the provision is impermissible under Rule 4-5.6(b) because it negatively affects the inquiring attorney's ability to represent other clients.  However, if the parties actually intend the provision to be a release of liability, the portion of the provision referring to the attorneys must be eliminated.  If this portion of the provision is removed, then the provision would not violate Rule 4-5.6(b).