# EXHIBIT H

**NEW HAMPSHIRE BAR ASSOCIATION**

**Settlement Agreements and Restrictions on the Right to Practice**
**<u>Ethics Committee Advisory Opinion #2009-10/06</u>**

**ABSTRACT:**

Settlement agreements afford individuals the opportunity to resolve disputes quickly and with finality in order to avoid the uncertainty and expense of litigation. Settlements typically are private arrangements among disputing parties and, consequently, specific terms often are not public to avoid disclosure of confidential information or facts that would negatively impact a party. During the course of representation and, in particular, during settlement negotiations, an attorney is obligated pursuant to Rule 1.2 to abide by the client's objectives and decisions, subject at all times to the Rules of Professional Conduct. One such rule is Rule 5.6(b), which prohibits an attorney from "offering or making" a settlement agreement that restricts the attorney's "right to practice."

**ANNOTATIONS**:

An attorney's duties to a client during the settlement process are no different than those generally imposed by the Rules of Professional Conduct throughout the attorney-client relationship.

Rule 5.6(b) precludes an attorney from offering or agreeing to a settlement agreement that restricts an attorney's right to practice.

A settlement agreement that seeks to impose a ban on an attorney's ability to represent other clients against the same settling defendant violates Rule 5.6(b).

Settlement agreements that impose restrictions on an attorney's right to practice other than a ban on the representation of other current or future clients still may violate Rule 5.6(b). For instance, a settlement agreement that prohibits plaintiff's counsel from using any information learned during a current controversy, especially against the same defendant, may prevent the attorney from representing future claimants in similar controversies, and an attorney who agrees to refrain from using information gained during the representation may create a conflict of interest between the interests of the current client and those of future clients with similar claims.

Rule 5.6(b) is intended to prohibit both direct and indirect restrictions in settlement agreements on an attorney's right to practice because that interpretation of the Rule serves the important policy consideration of protecting the rights of non-settling clients to identify and hire qualified counsel whose judgment and expertise remains free from restrictive, private settlement arrangements.

Provisions in a settlement agreement that require an attorney to refrain from disclosing specific settlement terms, such as the amount and existence of a settlement, are sufficiently narrow in scope and arguably serve to protect otherwise private information from public disclosure, and in

most cases such provisions will not be an impermissible restriction on the right to practice under Rule 5.6(b).

A settlement agreement that precludes an attorney from disclosing publicly available information about a case violates Rule 5.6(b) if it would have the effect of restricting an attorney's right to practice or of limiting the public's ability to identify qualified legal counsel.

**QUESTION:**

Does Rule 5.6(b) prevent an attorney representing a defendant in a civil suit from insisting in the settlement of the suit that the attorney representing the plaintiff refrain from disclosing publicly available information about the case?

**SHORT ANSWER:**

It would violate New Hampshire Rules of Professional Conduct Rule 5.6(b) for defense counsel to request, as a term of a settlement agreement, that plaintiff's counsel refrain from disclosing information concerning the suit that is public, if doing so would have the effect of restricting the right of plaintiff's counsel to practice law or the public's right to identify and retain qualified legal counsel.

**ANALYSIS:**

The process of reaching a mutually agreeable settlement of an ongoing controversy often requires negotiations between opposing parties and their counsel. An attorney's duties to a client during the settlement process are no different than those generally imposed by the Rules of Professional Conduct throughout the attorney-client relationship. For example, an attorney may not counsel or assist a client to engage in conduct the attorney knows is criminal or fraudulent or otherwise violates a Rule of Professional Conduct. In addition, Rule 1.2 (Scope of Representation) requires an attorney to abide by a client's decisions concerning the objectives of representation. That obligation, however, does not permit the attorney to engage in conduct that would violate another Rule of Professional Conduct.

During the process of resolving a client controversy, an attorney's obligations to a client may raise for consideration Rule 5.6 (Restrictions on Right to Practice). Rule 5.6(b) states:

A lawyer shall not participate in offering or making:

    b.   an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.

When interpreting the interplay between Rule 1.2 and Rule 5.6(b), the American Bar Association Standing Committee on Ethics and Responsibility ("ABA") concluded that Rule 1.2 must be read as "limited by the provisions of Rule 5.6(b)," within the context of settlement negotiations. See ABA Formal Op. 93-371 (1993). The ABA relied upon several policy considerations to support the position that defense counsel could not offer as a settlement condition, nor could plaintiffs

counsel agree, to refrain from representing current and future clients against the same mass-tort defendant. Such a condition would impose an impermissible restriction on the right of plaintiffs counsel to practice under Rule 5.6(b). *See id*.

**Policy Considerations Underlying Rule 5.6(b)**

Formal Opinion 93-371 articulates three policy considerations underlying the Rule 5.6(b) restriction on settlement agreements. First, allowing an attorney to enter into a settlement agreement that limits an attorney's right to practice restricts the public's access to counsel who, by virtue of specific knowledge and experience, may be the most qualified for such representation. Second, a restriction on the right to practice may be motivated by an intent to "buy off" counsel, rather than resolve the controversy. Third, a restriction on the right to practice may place an attorney in a conflict position, pitting the objectives of a present client against the interests of future clients. *See id.; see also accord* ABA Formal Op. 00-417; *see generally*, Colorado Bar Assoc. Ethics Comm. Op. 92 (1993) (a settlement agreement should not be "a facade for creating an actual or potential conflict of interest between the settling claimant's lawyer and his or her non-settling clients, present or future"); and Professional Ethics of the Florida Bar, Op. 04-2 (2005) (citing the policy considerations set forth in ABA Formal Op. 93-371 as part of its 5.6(b) analysis). These policies provide a framework for analyzing the propriety of settlement restrictions which are distinguishable from, but instructive to, the inquiry before this Committee.

**Absolute Ban on Future Representation**

A settlement agreement that seeks to impose a ban on an attorney's ability to represent other clients against the same settling defendant violates Rule 5.6(b). *See generally* ABA Formal Op. 93371. The Vermont Bar Association followed ABA Formal Opinion 93-371 and similarly found that defense counsel could not propose a settlement term that would obligate plaintiff's counsel to decline to represent future clients against the same defendant. *See* Vermont Bar Assoc. Advisory Ethics Op. 95-11 (1995) (citing ABA Formal Op. 93-371). A New Mexico advisory opinion also concluded that it was impermissible for plaintiff's counsel to agree to a settlement condition in a prison riot case that would prevent plaintiff's counsel from representing other clients with claims arising out of the same incident. See New Mexico Advisory Op. 1985-5 (1985) (noting that close scrutiny should be given to the motivation for seeking a restrictive settlement).

By prohibiting attorneys from offering or accepting a restriction on the representation of other clients, Rule 5.6(b) protects the rights of as-yet unknown claimants by preventing defense counsel from buying off plaintiff's counsel, thus ensuring that settlement agreements do not reduce the pool of experienced attorneys available to the public. *See generally*, ABA Formal Opinion 93371.

**Indirect Restrictions on Future Representation**

Settlement agreements that impose restrictions on an attorney's right to practice other than a ban on the representation of other current or future clients still may violate Rule 5.6(b). For instance,

a settlement agreement that prohibits plaintiff's counsel from using any information learned during a current controversy, especially against the same defendant, may prevent the attorney from representing future claimants in similar controversies. The ABA has opined that a bar on the "use" of information gained during the course of a representation could materially limit an attorney's effective representation of future clients and, thus, impair the attorney's ability to provide competent and diligent representation. Consequently, a bar on the use of such information would violate Rule 5.6(b). See ABA Formal Op. 00-417 (noting a client cannot waive, under Rule 1.7(b), the obligation to provide competent and diligent representation).

In addition to violating Rule 5.6(b), restricting an attorney's right to use information gained during the representation of a client raises significant practical problems. It would be difficult, if not impossible, for an attorney to compartmentalize or disregard all that has been learned during such representation or recall with any precision when the information was obtained. As a result, a bar on the use of information gained during a representation would expose an attorney to potential violations of the settlement agreement in virtually every subsequent representation involving similar legal or factual issues.

Moreover, an attorney who agrees to refrain from using information gained during the representation may create a conflict of interest between the interests of the current client and those of future clients with similar claims. *See* ABA Formal Opinion 00-417. To avoid a conflict of interest as well as the risk of violating a ban on use, the safest approach might be for the attorney to refrain from representing future clients whose controversies involve similar issues. But adopting such an approach would be tantamount to agreeing to a ban on future representation, which, as discussed, impermissibly limits the public's access to attorneys who, by virtue of knowledge and independent judgment, may be the most qualified choice. *Id; see also* ABA Formal Op. 93-371 (the protection against conflicts between the interests of current and future clients is a key policy consideration underlying Rule 5.6(b)).

Although not presented with a specific settlement provision to construe, the Colorado Bar Association articulated its own test for evaluating settlement clauses under Rule 5.6(b). The issue "is whether it [the agreement] would restrain a lawyer's exercise of independent judgment on behalf of other clients to an extent greater than that of an independent attorney not subject to such a limitation." *See* Colorado Bar Association Ethics Opinion 92 (alteration in original). Building on prior opinions concerning the impermissibility of settlement agreements that imposed direct restrictions on practice, the Colorado opinion states that settlement agreements that indirectly serve to limit an attorney's ability to diligently represent other clients also run the risk of violating Rule 5.6(b).

A New Mexico Advisory Opinions Committee concluded that a settlement agreement that required plaintiff's counsel to surrender her entire file, including all attorney work product, to defendant's counsel for retention under seal constituted an impermissible restriction on the right to practice and a violation of the New Mexico Code of Professional Responsibility. See New Mexico Advisory Op. 1985-5. The Advisory Committee opined that if an attorney's work product would reveal similar strategies and weaknesses in future client cases, or if counsel could not recreate and use certain work product, then requiring work product to be sealed in the hands

of opposing counsel as a condition of settlement would result in an impermissible, indirect bar on the attorney's ability to represent future clients. *Id*.

This Committee concludes that Rule 5.6(b) is intended to prohibit both direct and indirect restrictions in settlement agreements on an attorney's right to practice because that interpretation of the Rule serves the important policy consideration of protecting the rights of non-settling clients to identify and hire qualified counsel whose judgment and expertise remains free from restrictive, private settlement arrangements. Furthermore, preserving the ability of attorneys to utilize the legal experience and substantive knowledge gained during their practice in a manner that does not risk materially limiting responsibilities to a client under Rule 1.7 (Conflicts of Interest), nor disadvantage a former client under Rule 1.9 (Duties to Former Clients), deserves as much protection under Rule 5.6(b) as does preserving the public's right to choose the most qualified legal counsel.

**Restrictions on the Disclosure of Information**

The inquiry before this Committee concerns the propriety of a settlement agreement, sought by defense counsel, which restricts the right of plaintiffs counsel to disclose publicly available information concerning the case. Circumstances may arise under which maintaining the confidentiality of settlement terms or the mere existence of a settlement agreement is impossible, particularly if a settlement requires court approval or the facts involved have become public. Absent such circumstances, it is not uncommon for the parties to condition a settlement upon the mutual agreement of parties and their counsel to refrain from disclosing certain information in which the parties have a privacy interest.

**Restrictions on Disclosure of Confidential Information Concerning a Settlement**

Rule 5.6(b) precludes an attorney from offering or agreeing to a settlement agreement that restricts an attorney's right to practice. The rule is silent, however, with respect to an agreement that prohibits the disclosure of information about specific settlement terms or facts about the case. Nevertheless, it is well recognized that a settlement agreement may require parties and their counsel to preserve some level of confidentiality relating to the settlement. The ABA has concluded that offering or agreeing to condition a settlement upon an attorney's non-disclosure of particular information, like "the facts of the particular matter or the terms of the settlement[,]" does not violate Rule 5.6(b). *See* ABA Formal Op. 00-417 (alteration in original) (citing Colorado Bar Ethics Comm. Op. No. 92). In fact, a settlement agreement barring an attorney from disclosing information relating to the representation of a client is consistent with the general duty of confidentiality imposed during the attorney-client relationship under Rule 1.6,[1] which duty survives termination of the attorney-client relationship and is separately reinforced under Rule 1.9(c)(2).[2] *See generally* North Carolina 2003 Formal Ethics Op. 9.

Several states concur with the ABA's position that a settlement agreement may be conditioned upon the non-disclosure of certain information relating to the settlement. For instance, a settlement agreement restricting an attorney's ability to disclose information regarding the settlement itself and the terms of a release in a securities case, to all but specific individuals and government agencies, was found to be permissible under Florida's version of Rule 5.6(b). *See*

Florida Ethics Op. 02-2 (2005). The Florida Ethics Committee commented on the limited nature of the confidentiality clause being upheld, noting that it "makes only the terms of the settlement and release itself confidential [and][s]uch confidentiality clauses have typically been determined not to violate ethics rules." *Id.* (alteration in original) (citing New Mexico Op. 1985-5 and Colorado Op. 92); *accord* Los Angeles County Bar Assoc. Formal Op. 512 (2004) (taking guidance from ABA Formal Op. 00-417 to find that a settlement agreement prohibiting the disclosure of the fact or amount of settlement did not restrict an attorney's right to practice); *see also generally* N.Y. St. Bar Assoc. Comm. on Professional Ethics Op. 730 (2000) (acknowledging that, subject to limited exceptions, confidentiality provisions that restrict parties and counsel from disclosing terms of a settlement are "common" and generally permissible). The North Carolina State Bar similarly upheld a narrowly crafted confidentiality clause that restricted an attorney's disclosure of the terms of a settlement agreement without restricting the use of information gained during the representation. See North Carolina 2003 Formal Ethics Op. 9 (citing ABA Opinion 00-417).[3]

Taking guidance from the ABA and state ethics opinions, this Committee concurs that provisions in a settlement agreement that require an attorney to refrain from disclosing specific settlement terms, such as the amount and existence of a settlement, are sufficiently narrow in scope and arguably serve to protect otherwise private information from public disclosure. In most cases, a narrowly drawn settlement agreement that limits the disclosure of specific information in which the parties or a party has a privacy interest will not be an impermissible restriction on the right to practice under Rule 5.6(b).

**Restrictions on the Disclosure of Public Information**

The question presented to this Committee, however, is whether defense counsel may seek to condition a settlement upon opposing counsel's agreement to forego disclosure of publicly available information about the case. Such a settlement agreement is more expansive than the narrower restrictions that traditionally have been permissible under Rule 5.6(b). Unlike a more narrowly drawn settlement agreement that precludes an attorney from disclosing confidential information to avoid potential adverse effects resulting from disclosure, a provision that restricts an attorney's right to disclose public information concerning a case might well violate Rule 5.6(b).

As discussed, Rule 5.6(b) protects against overly restrictive settlement agreements that are motivated by a desire to restrict or restrain opposing counsel's ability to represent other clients. A settlement agreement sought by defense counsel that requires plaintiffs counsel to refrain from disclosing public information might well result in limiting an attorney's ability to disclose his or her expertise, thus limiting the public's ability to identify and obtain the most qualified counsel. Conversely, some non-disclosure agreements concerning public information likely would not result in an impermissible restriction on an attorney's right to practice due to the nature of the information to be protected. One example would be a settlement agreement that bars plaintiff's counsel from disclosing that a company has been sued "x" times, which information is part of public court filings. This restriction does not violate Rule 5.6(b) because the restricted information – the number of times the company has been sued – does not impair the attorney's

ability to effectively represent future clients or the ability of potential clients to identify experienced counsel.

On the other hand, an agreement that precludes plaintiff's counsel from disclosing, for example, a published epidemiological study that resulted in a defendant drug company changing its published warnings concerning a drug, would violate Rule 5.6(b) because it prohibits plaintiff's counsel from discussing the study during the representation of future clients with claims against the same drug company. Similarly, an agreement that restricts an attorney's ability to disclose the fact that the attorney had previously sued the drug company also would violate the Rule because it would impermissibly limit the public's ability to identify the most experienced counsel for representation.

Accordingly, in the absence of countervailing considerations such as those described above, this Committee finds that if a settlement agreement that precludes plaintiff's counsel from disclosing publicly available information about a case would have the effect of restricting an attorney's right to practice or of limiting the public's ability to identify qualified legal counsel, then the settlement agreement would be a violation of Rule 5.6(b).

**ENDNOTES:**

[1] "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)." N.H. Rules of Professional Conduct, Rule 1.6(a).

[2] "A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: … (2) reveal information relating to the representation except as the Rules would permit or require with respect to a client." N.H. Rules of Professional Conduct, Rule 1.9(c)(2).

[3] The committee went on to note that the provision at issue, e.g., requiring confidentiality of the essence of a settlement agreement and its underlying terms, is consistent with a lawyer's duties not to reveal confidential information under Rule 1.6 and 1.9(c).

**NH RULES OF PROFESSIONAL CONDUCT:**

Rule 1.2
Rule 1.6
Rule 1.7
Rule 1.9
Rule 5.6

**SUBJECTS:**

Allocation of Authority between Client and Lawyer
Confidentiality of Information

Conflicts of Interest
Duties to Former Clients
Restrictions on Right to Practice

- **By the NHBA Ethics Committee**
  *This opinion was submitted for publication to the NHBA Board of Governors.*