**PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]**

Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Eric J. Awerbuch, Esq. (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Plaintiff*

<div style="border:1px solid black; display:inline-block; padding:4px; text-align:center;">

**PUBLIC REDACTED VERSION
FILED PURSUANT TO COURT
ORDER IN DKT. 1268**

</div>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., <br><br> Plaintiff, <br><br> v. <br><br> PACIFIC TRIAL ATTORNEYS, et al., <br><br> Defendants. | Case No. 8:15-cv-02034-JVS (JCG) <br><br> **PLAINTIFF NATURAL IMMUNOGENICS CORP.'S MEMORANDUM IN SUPPORT OF MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT** <br><br><br> Hearing Date:    June 6, 2022 <br> Judge:    Hon. James V. Selna |

**PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]**

## <u>TABLE OF CONTENTS</u>

I.   FACTS .................................................................................................3

II.  ARGUMENT ......................................................................................7

   A. The Court Has Jurisdiction and Authority to Enforce a
      Binding Term Sheet ......................................................................7

   B. The Term Sheet Is Enforceable.................................................7

      1. ███████████████████████████████
         ███████████████ ...................................................11

      2. ███████████████████████████
         ████ .........................................................................13

   C. ███████████████████████████████
      ███ .................................................................................15

   D. Sanctions Are Appropriate for NTG's Improper Conduct in
      Settlement Discussions Resulting in this Motion .......................20

III. Conclusion ........................................................................................22

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Johns-Manville*, 876 F.2d 702 (9th Cir. 1989)............................................7

*Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769 (9th Cir.
    2003) ............................................................................................................14

*Badie v. Bank of Am.*, 67 Cal. 1pp. 4th 779 (1998) .................................................14

*Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*, No. 16-CV-01152,
    2017 WL 956650 (N.D. Cal. Mar. 13, 2017) ........................................................21

*Blix Street Record, Inc. v. Cassidy*, 191 Cal.App.4th 39 (2010) ...........................8, 9

*Botefur v. City of Eagle Point, Or.*, 7 F.3d 152 (9th Cir. 1993) ..............................14

*Callie v. Near*, 829 F.2d 888 (9th Cir. Oct. 7, 1987) ............................................2, 7

*Cariveau v. Halferty*, 83 Cal. App. 4th 125 (2000) ...........................................15, 19

*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991).......................................................21

*Elite Show Servs., Inc. v. Staffpro, Inc.*, 119 Cal.App.4th 263 (2004) ...................12

*Englebrick v. Worthington Indus. Inc.*, 620 F. App'x 564 (9th Cir.
    2015) .........................................................................................................20, 21

*Erickson v. Newmar Corp.*, 87 F.3d 298 (9th Cir. 1996) .......................................20

*Facebook, Inc. v. Pac., Nw. Software, Inc.*, 640 F.3d 1034 (9th Cir.
    2011) ...............................................................................................8, 11, 12, 13

*Fay Avenue Properties, LLC v. Travelers Property Casualty Co. of
    Am.*, No. 11-cv-2389, 2015 WL 11202633 (S.D. Cal. Aug. 18,
    2015) ...........................................................................................................14

*First Nat. Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058 (9th Cir.
    2011) .............................................................................................................9

*Founding Members of the Newport Beach Country Club v. Newport
    Beach Country Club, Inc.*, 109 Cal. App. 4th 944 (2003)..................................15

*Garret v. Coast & S. Fed. Sav. & Loan Assn.*, 9 Cal 731 (1973)............................12

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

*Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322 (9th Cir.), *cert. denied sub nom. Shell Oil Co. v. Gas-A-Tron of Ariz.*, 429 U.S. 861 (1976)..................................................................................21

*Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*, No. 5:11-CV-03786, 2014 WL 12465441 (N.D. Cal. Mar. 21, 2014).....................................7, 8

*Harper v. Nevada Prop. 1, LLC*, No. 2:19-CV-02069, 2021 WL 3418350 (D. Nev. Aug. 5, 2021).................................................9

In re City Equities Anaheim, Ltd., 22 F.3d 954 (9th Cir. 1994) ..........................7

*In re Qualcomm Litig.*, Case No. 3:17-cv-108, 2019 WL 13159816 (S.D. Cal. Mar. 14, 2019).........................................................15

*J.B.B. Inv. Partners Ltd. v. Fair*, 37 Cal. App. 5th 1 (2019), *as modified* (July 1, 2019)..............................................................9

*Johnson v. City of Atwater*, No. 1:16-cv-1636, 2018 WL 4210309 (E.D. Cal. Aug. 16, 2018)........................................................13

*Kaiaokamalie v. Matson Terminals, Inc.*, No. CV 13-00383, 2016 WL 11407765 (D. Haw. June 20, 2016), *report and recommendation adopted as modified,* No. CV 13-00383, 2016 WL 7476336 (D. Haw. Dec. 29, 2016) .....................................9

*Kallen v. Delug*, 157 Cal. App. 3d 940 (1984) ..........................................15

*Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923 (N.D. Cal. 2019) ..................14

*Lust v. Animal Logic Entm't,* No. LA CV17-00308, 2021 WL 6618677 (C.D. Cal. 2021) ..........................................................14

*McCurley v. Royal Seas Cruises, Inc.*, No. 17-CV-00986, 2020 WL 4436361 (S.D. Cal. July 31, 2020)................................................21

*MetroNet Servs. Corp. v. U.S. West Communications*, 329 F.3d 986 (9th Cir. 2003), *cert. granted and judgment vacated on other grounds by Qwest Corp. v. MetroNet Servs. Corp.*, 540 U.S. 1147 (2004).................................................................................7

*Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047 (9th Cir. 2007) ..............20

*One W. Bank v. Houston Cas. Co.*, No. 14-cv-547, 2015 WL 11090350 (C.D. Cal. Mar. 9, 2015), *aff'd sub nom. OneWest Bank*

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

*v. Houston Cas. Co.*, 676 F. App'x 664 (9th Cir. 2017) ..............................10

*Osumi v. Suttong*, 15 Cal.App.4th 1355 (2007) .........................................13

*Potvin v. Metro. Life Ins. Co.*, 22 Cal. 4th 1060 (2004) ...........................15

*Purcell v. Schweitzer*, 224 Cal. App. 4th 969 (2014) ................................13

*Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309 (9th Cir. 1996) ............10

*Res. Recovery Corp. v. Inductance Energy Corp.*, No. CV-20-00764,
2020 WL 6149844 (D. Ariz. Oct. 20, 2020) ........................................9

*Ridgley v. Topa Thrift & Loan Ass'n*, 73 Cal. Rptr. 2d 378 (1998) .......12

*Rutherford v. Ekta Hospitality*, No. 20-cv-408, 2021 WL 4571986
(C.D. Cal. July 23, 2021)......................................................................14

*S. Cal. Stroke Rehabilitation Assoc., Inc. v. Nautilus, Inc.*, 782 F.
Supp. 2d 1096 (S.D. Cal. 2011).............................................................14

*Thor Seafood Corp. v. Supply Mgmt. Servs.*, 352 F. Supp. 2d 1128
(C.D. Cal. 2005) ....................................................................................14

TNT Mktg., Inc. v. Agresti, 796 F.2d 276 (9th Cir. 1986) .........................7

*Travelers Prop. Cas. Co. of Am. v. Peinado*, No. C 13-04789, 2015
WL 13389942 (N.D. Cal. Mar. 18, 2015) ..............................................7

*United African-Asian Abilities Club v. Regatta Investors, LLC*, No.
2:19-cv-02113, 2019 WL 8807925 (C.D. Cal. Aug. 22, 2019) ..........12

*Vector Media S., LLC v. Starline Tours of Hollywood, Inc.*, No. CV
20-6738, 2021 WL 4916765 (C.D. Cal. Feb. 17, 2021).......................9

*Weddington Productions, Inc. v. Flick*, 60 Cal.App.4th 793 (1998) ........8

*Whitley v. Siemens Industry, Inc.*, No. 2:14-cv-00099, 2015 WL
3488168 (E.D. Cal. June 2, 2015) .........................................................8

*Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107
(2008).....................................................................................................14

**Statutes**

28 U.S.C. § 1927 ..................................................................................2, 20

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

Cal. Civ. Code § 1638 ................................................................15

Cal. Civ. Code. § 1671(b) ...........................................................12

**Rules**

California Rule of Professional Conduct 5.6(a)(2) ......................... passim

**Other Authorities**

1 B.E. Witkin *Summary of California Law, Contracts* § 137 (10th ed. 2005) ........12

ABA Formal Op. 00-417 ....................................................... 16, 18

CAMBRIDGE DICTIONARY (Cambridge University Press 2022) ...............15

D.C. Bar Ethics Op. 335 ...............................................................16

Florida Bar Ethics Op. 04-2 ...........................................................16

N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 730 (2000) ................18

New Hampshire Bar Ethics Op. 2009-10/06 .................................... 16, 17

Rutter Group, 12(II)-H Cal. Prac. Guide Civ. Pro. Before Trial § 11(b) ...............18

San Francisco Bar Ethics Op. 2012-1 ...............................................16

Tenn. Bd. Of Prof'l Resp., Formal Op. 98-F-141 (1998) ......................18

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

1    Plaintiff Natural Immunogenics Corp. ("NIC") hereby moves for an Order
2    enforcing the settlement Term Sheet executed by the parties on December 6, 2021
3    (*see* Dkt. 1265).[1]
4         The parties participated in mediation before Judge Guilford on December 6,
5    2021.  They reached agreement memorialized in a "binding and enforceable" Term
6    Sheet.  *See* Exh. A (the "Term Sheet").  The Term Sheet included the essential
7    terms of the bargain and is fully enforceable. ████████████████████████████
8    ████████████████████████████████████████████████████████████████████████
9    ████████████████████████████████████████████████████████████████████████
10   ████████████████████████████████████████████████████████
11   ████████████████████████████████████████████████████
12   ████████████████████████████████████████████████████████████████████
13   ████████████████████████████████████████████████████████████████████████
14   ████████████████████████████████████████████████████████████████
15   ████████████████████████████████████████████████████████████████████████
16   ████████████████████████████████████████████████████████████
17   ████████████████████████████████████████████████████████████
18   ████████████████████████████████████████████████████████████
19   ████████████████████████████████████████████████████████████████
20   ████████████████████████████████████████████████████████████████████████
21   ████████████████████████████████████████████████████████
22   ██████
23   ████████████████████████████████████████████ NIC has no option
24   other than filing this motion to enforce the Term Sheet executed at mediation on
25   December 6, 2021.  NIC respectfully requests that this Court bring this litigation to
26   an end by entering an Order enforcing the Term Sheet.
27   ───────────────
28   [1] The parties have met and conferred regarding this motion, and were unable
     to reach a resolution and were unable to reach an agreement that would eliminate
     or narrow the issues in dispute.

**PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]**

1    This Court has inherent authority to do so in a case that has not yet been

2    dismissed.  *See, e.g., Callie v. Near*, 829 F.2d 888, 890 (9th Cir. Oct. 7, 1987).

3    Courts have routinely enforced similar Term Sheets to end litigation where one

4    party refuses to accept agreed upon provisions in the Term Sheet.  Applying

5    California contract law, the Court should enforce the Term Sheet ████████████

6    ███████████████████████████████████████████████████████████████

7    ██████

8        Finally, the Court should award NIC its fees associated with this motion as a

9    reasonable and narrowly tailored sanction for Defendants' ███████████████

10   ███████████████████████████████████████████████████████████████

11   ███████████████████████████████████████████████████████████████

12   ███████████████████████████████████████████████████████████████

13   ███████████████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████████

18   ███████████████████████████████████████████

19   NIC therefore respectfully asks that this Court enter an Order as follows:

20       (1)    Hold that the Parties' December 6, 2021 Term Sheet a binding

21   and enforceable agreement on all terms where parties have agreed:

22       (2)    Rule that any terms not present or articulated in the Term Sheet

23   are immaterial under Ninth Circuit law;

24       (3)    Compel NTG to abide by all terms appearing in the "binding

25   and enforceable" Term Sheet, including ████████████████████████████

26   ████████████████████████████; and

27

28

---

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

(4)     Award NIC its reasonable costs and fees incurred in pursuit of this motion (including the forthcoming Reply brief) as an appropriate sanction for NTG's ████████████████████████ which necessitated this filing.

## I.   FACTS

This Court ordered the parties to mediate before Judge Guilford.  *See* Dkt. 1252 at 2; PAA Decl. at ¶2.  The mediation occurred on December 6, 2021.  PAA Decl. at ¶2.  It was the fifth mediation in this case.  *Id.* ████████████

█████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████ █

██████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

█████████████████████████████

      ████████████████████████████████

██████████████████████████████████████

███████████████████████████████

█████████████████████████████████████████

████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

---

[2] The mediation proceeded by remote means (Zoom).  NIC's principals participated remotely from Florida, and were thus on Eastern time.  PAA Decl. at ¶3.

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

**PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]**

Hoping to break the impasse, the parties met with Judge Guilford in a supplemental mediation session on March 24, 2022.  *See* PAA Decl. at ¶¶11, 13. Judge Guilford participated only in his role as a mediator, and did not receive full briefing on all legal concerns at issue.  He did not rule or opine on the enforceability of the Term Sheet.  *See* PAA Decl. at ¶13.

**PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]**

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

## II.   ARGUMENT

### A.   The Court Has Jurisdiction and Authority to Enforce a Binding Term Sheet

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie*, 829 F.2d at 890 (collecting cases); *see also Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*, No. 5:11-CV-03786, 2014 WL 12465441, at *2 (N.D. Cal. Mar. 21, 2014) (citing *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) and *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994)). "There is no question that the district court has inherent power to enforce the agreement in settlement of litigation before it." *Guzik*, 12465441, at *2.

"The Court has the inherent power to enforce [a] Settlement Term Sheet, because the case has not been dismissed." *Travelers Prop. Cas. Co. of Am. v. Peinado*, No. C 13-04789, 2015 WL 13389942, at *1 (N.D. Cal. Mar. 18, 2015) (citing *MetroNet Servs. Corp. v. U.S. West Communications*, 329 F.3d 986, 1013-14 (9th Cir. 2003), *cert. granted and judgment vacated on other grounds by Qwest Corp. v. MetroNet Servs. Corp.*, 540 U.S. 1147 (2004)). "The Court evaluates the Settlement Term Sheet under principles applicable to any contract." *Id.* (citing *Adams v. Johns-Manville*, 876 F.2d 702, 704 (9th Cir. 1989)). Under those principles, as explained below, the Term Sheet should be enforced.

### B.   The Term Sheet Is Enforceable

The parties' Term Sheet is enforceable without need to memorialize its provisions in a formal settlement agreement. For the Term Sheet to be binding, it

need only be sufficiently definite to enable a court to give it meaning.  *See Whitley v. Siemens Industry, Inc.*, No. 2:14-cv-00099, 2015 WL 3488168 (E.D. Cal. June 2, 2015) (citing *Weddington Productions, Inc. v. Flick*, 60 Cal.App.4th 793, 811 (1998)).  "[T]he fact that a more formal agreement may be contemplated does not alter the validity of an agreement whose terms meet the requisite definiteness." *Id.* at *3 (citing *Blix Street Record, Inc. v. Cassidy*, 191 Cal.App.4th 39, 48-49 (2010)).  "California law permits parties to bind themselves to a contract even if they anticipate certain aspects of the deal be reduced to a further writing thereafter." *Id.* at *3 (citing *Facebook, Inc. v. Pac., Nw. Software, Inc.*, 640 F.3d 1034, 1038 (9th Cir. 2011)).  For example, in *Whitley*, the parties formed a basic agreement following mediation that read, in pertinent part, "As a result of mediation, [parties] reached agreement to settle [this] lawsuit … subject to the court's approval, with the following general terms, which will be specified with more particularity in a fully documented Settlement Agreement. This Memorandum of Understanding is intended by the Parties to be a binding agreement." *Id.* at *1.  The Court held that the parties reached an agreement sufficiently definite to give it meaning and contained the essential terms of the settlement, even if some "form and documentation were to be determined later." *Id.* at *3. █████████████████████████████████████████████████████
████████████████████████████

"California law permits parties to bind themselves to a contract, even when they anticipate that some material aspects of the deal will be prepared later." *See Guzik*, 2014 WL 12465441, at *5.  "The fact that the parties were to later draft other agreements 'reasonably necessary to effect' the terms of the term sheet, does not make any less binding those terms that *are* agreed to in the signed term sheet." *Id.* (emphasis original) (explaining that the need to "work out the details" of certain aspects does not preclude enforcement of a binding Term Sheet"); *see also Vector Media S., LLC v. Starline Tours of Hollywood, Inc.*, No. CV 20-6738, 2021 WL

4916765, at *3 (C.D. Cal. Feb. 17, 2021) ("That the parties agreed that they would subsequently iron out the particular specifics of the contract does not render the entire contract unenforceable").

Courts have consistently acknowledged their ability to enforce preliminary settlement agreements, term sheets, oral agreements, etc., notwithstanding the parties' failure to eventually complete a final written agreement.  *See, e.g., Harper v. Nevada Prop. 1, LLC*, No. 2:19-CV-02069, 2021 WL 3418350 (D. Nev. Aug. 5, 2021) ("Where the parties represent in open court that a settlement was reached and place the terms on the record, courts are empowered to summarily require the parties to comply with those terms"); *Blix*, 191 Cal. App. 4th at 48–49 ("When parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement."); *J.B.B. Inv. Partners Ltd. v. Fair*, 37 Cal. App. 5th 1, 12 (2019), *as modified* (July 1, 2019) ("[T]he fact that plaintiffs planned to follow up with a formal written agreement, which they did on July 11, 2013, does not render the earlier agreement invalid…"); *First Nat. Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1065 (9th Cir. 2011) ("[A]n agreement is not unenforceable merely because it is subject to the approval of a formal contract."); *Res. Recovery Corp. v. Inductance Energy Corp.*, No. CV-20-00764, 2020 WL 6149844, at *6 (D. Ariz. Oct. 20, 2020) ("[T]he Term Sheet merely states 'the following terms are agreed upon and will be incorporated within a final settlement agreement'… This language does not clearly demonstrate that the terms are not binding *unless* an FSA is executed, but merely indicates the parties' intent to later execute an FDA memorializing the terms.") (emphasis original); *Kaiaokamalie v. Matson Terminals, Inc.*, No. CV 13-00383, 2016 WL 11407765, at *4 (D. Haw. June 20, 2016), *report and recommendation adopted as modified,* No. CV 13-00383, 2016 WL 7476336 (D. Haw. Dec. 29, 2016) ("Although the Term Sheet indicates that certain dates for performance of its terms by Defendant will be based on the completion of a written settlement

**PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]**

1   agreement, this language does not suggest that the Term Sheet itself is not an

2   enforceable agreement."); *One W. Bank v. Houston Cas. Co.*, No. 14-cv-547, 2015

3   WL 11090350, at *11 (C.D. Cal. Mar. 9, 2015), *aff'd sub nom. OneWest Bank v.*

4   *Houston Cas. Co.*, 676 F. App'x 664 (9th Cir. 2017) ("Where all of the essential

5   terms of an agreement are definitely agreed upon in the writing there is a binding

6   contract even though there is an intention that a formal writing will be executed

7   later."); *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 316 (9th Cir. 1996)

8   ("Where a letter says that it is subject to the terms of a contemplated mutual

9   agreement to be written and signed in the future, but other evidence indicates that

10  the parties decided to be bound by the terms of the letter, the letter may amount to

11  a contract.").

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

The Ninth Circuit distinguishes between two types of material terms.

26
*Facebook*, 640 F.3d at 1037-38 (9th Cir. 2011). "A term may be material in one of
27
two ways: it may be a necessary term, without which there can be no contract; or it
28
may be an important term that affects the value of the bargain, which will not

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

1  nullify the contract under California law, so long as the terms that are included

2  allow a court to determine whether a breach has occurred, order specific

3  performance, or award damages." *Id.* (citing *Elite Show Servs., Inc. v. Staffpro,*

4  *Inc.*, 119 Cal.App.4th 263 (2004); 1 B.E. Witkin *Summary of California Law,*

5  *Contracts* § 137 (10th ed. 2005)).

6        The test in *Facebook* is not demanding.  *See Facebook*, 640 F.3d at 1037-38

7  (holding that settlement agreement was enforceable despite the absent of certain

8  "material" terms).  There, the court determined through the language of the

9  Settlement Agreement that the parties intended to bind themselves and each other,

10  even though all parties understood that some of the material aspects of the deal

11  would be prepared later.  *Id.*  The absence of a subset of material terms did not

12  make the agreement unenforceable.  *See United African-Asian Abilities Club v.*

13  *Regatta Investors, LLC*, No. 2:19-cv-02113, 2019 WL 8807925 (C.D. Cal. Aug.

14  22, 2019).

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

California has a strong policy in favor of enforcing settlement agreements. *Johnson v. City of Atwater*, No. 1:16-cv-1636, 2018 WL 4210309 (E.D. Cal. Aug. 16, 2018) (citing *Osumi v. Suttong*, 15 Cal.App.4th 1355, 1357 (2007)). When interpreting a settlement agreement, the principles of state contract law govern.

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

*Rutherford v. Ekta Hospitality*, No. 20-cv-408, 2021 WL 4571986, at *1 (C.D. Cal. July 23, 2021) (citing *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993)).

"Under California law, contract interpretation is a question of law." *S. Cal. Stroke Rehabilitation Assoc., Inc. v. Nautilus, Inc.*, 782 F. Supp. 2d 1096, 1110 (S.D. Cal. 2011). The court should "discern and enforce the parties' mutual intent at the time the contract was formed." *Thor Seafood Corp. v. Supply Mgmt. Servs.*, 352 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005). To that end, courts ordinarily rely solely on the contract's terms to determine the parties' mutual intentions when they entered into the contract. *Lust v. Animal Logic Entm't,* No. LA CV17-00308, 2021 WL 6618677, at *5 (C.D. Cal. 2021) (quoting *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1125 (2008)); *see also Southern California.*, 782 F. Supp. 2d at 1110 ("When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible."). "Where the parties dispute the meaning of specific contract language, 'the court must decide whether the language is 'reasonably susceptible' to the interpretations urged by the parties.'" *Thor Seafood*, 352 F Supp. 2d at 1131 (quoting *Badie v. Bank of Am.*, 67 Cal. 1pp. 4th 779, 798 (1998)). "If the court finds that the contract is not susceptible to alternative meanings, then [the Court] may proceed to determine the issue based on the plain meaning of the contract language." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 777 (9th Cir. 2003). Extrinsic evidence is only admissible if the court finds the material term at issue ambiguous. *Lust*, 2021 WL 6618677 at *5 (quoting *Wolf*, 162 Cal. App. 4th at 1125).[3]

---

[3] Moreover, a parties' subjective belief as to the meaning of a term in a contract is irrelevant. "California recognizes the objective theory of contracts, under which it is the objective intent as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 957 (N.D. Cal. 2019). Thus, "[t]he subjective belief of a party on the meaning of terms in a contract is not admissible." *Fay Avenue Properties, LLC v. Travelers Property Casualty Co. of Am.*, No. 11-cv-2389, 2015 WL 11202633, at *6 (S.D. Cal. Aug. 18, 2015) (citing *Founding Members of the Newport Beach Country Club v. Newport Beach*

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

California courts do not "enforce contract provisions offensive to public policy." *In re Qualcomm Litig.*, Case No. 3:17-cv-108, 2019 WL 13159816 (S.D. Cal. Mar. 14, 2019) (quoting *Potvin v. Metro. Life Ins. Co.*, 22 Cal. 4th 1060 (2004)). A contractual provision is offensive to public policy and not enforceable if it is barred by legislation. *Id.* (quoting *Cariveau v. Halferty*, 83 Cal. App. 4th 125, 131 (2000)). "The term 'legislation' is used here in the broadest since to include any fixed text enacted by a body with authority to promulgate rules…" *Id.* (quoting *Cariveau*, 83 Cal. App. 4th at 131). "Legislation" in this context thus includes rules enacted in State Bar canons. *See Kallen v. Delug*, 157 Cal. App. 3d 940, 951 (1984). At least one California Court has a found a confidentiality clause

_____

*Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003)).

**PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]**

1  unenforceable where abiding by the confidentiality clause would violate

2  legislation. *Cariveau*, 83 Cal. App. 4th at 135–36.

11      California Rules of Professional Conduct 5.6(a)(2) (formerly cited as RPC 1-

12  500) states that a lawyer shall not participate in offering or making of an agreement

13  that imposes a restriction on a lawyer's right to practice in connection with a

14  settlement of a client controversy, or otherwise. *See* Cal. R.P.C. Rule 5.6(a)(2)

15  (adopted Nov. 2018). At least five authoritative licensing bodies have explained in

16  formal ethical opinions that

17            violated RPC 5.6. *See* San Francisco Bar Ethics Op. 2012-1 (Exh. D;

18  ABA Formal Op. 00-417 (Exh. E); D.C. Bar Ethics Op. 335 (Exh. F); Florida Bar

19  Ethics Op. 04-2 (Exh. G); New Hampshire Bar Ethics Op. 2009-10/06 (Exh. H).

20      The San Francisco Bar has explained that Rule 1-500 (now Rule 5.6)

21  "prohibits defense counsel from demanding, and Attorneys from agreeing to, terms

22  in a settlement agreement that would prohibit Attorneys from referencing … public

23  information regarding the fact they have worked on a particular type of case

24  against a specific defendant." *See* Exh. D at 2. "The Committee believes these …

25  principles are applicable even where the prohibition does not affirmatively bar

26  representation against the settling defendant, but only the disclosure of public facts

27  regarding the past representation." *Id.* The ABA Formal Opinion No. 00-417

28  interpreted language that was nearly identical to the California Rule 5.6. *See* Exh.

E. The ABA concluded that "a prohibition against using [public] information is a restriction upon the lawyer's right to practice." *Id.* at 3. "As a practical matter, … this proposed limitation effectively would bar the lawyer from future representations because the lawyer's inability to use certain information may materially limit his representation of the future client and, further, may adversely affect that representation." *Id.* "A prohibition on a lawyer's use of information gained during representation of a client is similar to a proposed settlement provision that bars a lawyer in future representations from subpoenaing certain records or fact witnesses, or using certain expert witnesses." *Id.* ("The Committee believes that each of these restrictions is a restriction on the lawyer's right to practice.").

███████████████████████████████████, "A settlement agreement may not compel counsel to keep confidential and not further disclose in promotional materials or on law firm websites public information about the case…" *See* Exh. F at 1 (explaining that, "such conditions have the purpose and effect of preventing counsel from informing potential clients of their experience and expertise, thereby making it difficult for future clients to identify well-qualified counsel").[4] Put simply, "A settlement agreement may provide that the terms of the settlement and other non-public information may be kept confidential, but it may not require that public information be confidential." *Id.*; *see also* Exh. H, N.H. Adv. Op. 2009-10/06 at 2 ("It would violate [NH Rule 5.6(b)] for defense counsel to request, as a term of a settlement agreement, that plaintiff's counsel refrain from disclosing information concerning the suit that is public, if doing so would have the effect of restricting the right of plaintiff's counsel to practice law or the public's right to identify and retain qualified legal counsel"). "Except where such clauses may be required by protective orders, to the extent such 'secrecy'

---

[4] Counsel for NIC, Jonathan Emord, has been a member in good standing with the D.C. Bar since 1987, and is thus bound by the rules of practice in D.C. *See* PAA Decl. at ¶19.

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

clauses limit the attorney's disclosure to other clients or future clients of the attorney, they probably violate CRPC 5.6 because they indirectly restrict the attorney's right to practice law." *See* Rutter Group, 12(II)-H Cal. Prac. Guide Civ. Pro. Before Trial § 11(b) (citing ABA Form. Opn. 00-417); *see also* N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 730 (2000); Tenn. Bd. Of Prof'l Resp., Formal Op. 98-F-141 (1998) (provision prohibited plaintiff's counsel from using case information to assist other litigants).

Moreover, these restrictions would also

1   ▮▮▮▮. *See* RPC 5.6(b) ("A lawyer shall not participate in offering or making an

2   agreement which precludes the reporting of a violation of these rules").

3       This litigation spanned ten years including the Underlying Action.  The

4   instant matter includes nearly 1,300 docket entries, including hundreds of orders

5   from this court.  The matter involves judicial opinions from multiple jurisdictions

6   including Texas and North Carolina.  The litigation has precedential value and

7   involved an interlocutory appeal to the Ninth Circuit.  At least two dozen recent

8   decisions within California state and federal courts have cited to orders of this

9   Court that were published as part of this case.  The lawsuit involves legal and

10  factual issues of public importance, including well-developed legal decisions on

11  the application and adjudication of privilege concerns.  The lawsuit includes proof

12  of "fraud on the court," which created significant precedent on the application of

13  the crime-fraud exception in the Ninth Circuit.  *See, e.g.,* Dkt. 659. ▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See*

19  *Cariveau*, 83 Cal. App. 4th at 134–36.  In *Cariveau*, the California appellate court

20  addressed a confidentiality agreement that sought to prohibit disclosure of facts

21  that could allow the public to understand or identify improper conduct.  *Id.*  The

22  Court therefore held that a broad confidentiality clause under those circumstances

23  would be against public policy.  *Id.* ("[I]t concealed Hixon's misconduct and other

24  actions harmful to the public in general"). ▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮      The evidence in this case was sufficient to support

28  multiple orders invoking the crime-fraud standards.  *See, e.g.,* Dkt. 659 at 16

**PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]**

(finding sufficient evidence that "Defendants were engaged in a patter or scheme of manufacturing litigation, which threatens to harm the integrity of the judicial process"). Those orders were upheld by the Ninth Circuit [Dkt. 786], and reflect a proven pattern of "fraud on the court." *See, e.g.,* Dkt. Nos. 659, 712, 770, 820, 829, 878. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This Court has ruled that the public has a significant interest in eradicating fraud on the court. *See, e.g.,* Dkt. 788 at 15 ("There is a strong public policy in favor of preventing racketeering activity and fraud on the judicial system"). ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### D.   Sanctions Are Appropriate for NTG's Improper Conduct in Settlement Discussions Resulting in this Motion

Defendant has caused undue delays and increased proceedings in this case unreasonably by stalling settlement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Sanctions are appropriate under 28 U.S.C. § 1927 and this Court's inherent powers.

"Attorneys practicing before the district court must comply with the rules of professional conduct and ethical violations may serve as a basis for imposing sanctions." *Englebrick v. Worthington Indus. Inc.*, 620 F. App'x 564, 567 (9th Cir. 2015) (citing *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1063 (9th Cir. 2007)). Under 28 U.S.C. § 1927, the district court may impose sanctions against anyone "who so multiplies the proceedings in any case unreasonably and vexatiously." *See* 28 U.S.C. § 1927. Federal courts also have inherent powers to manage their own proceedings and to control the conduct of those who appear before them. *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) (citing

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Additionally, the Ninth Circuit "recognized that a district court has the primary responsibility for controlling the conduct of the attorneys who practice before it." *Erickson*, 87 F.3d at 303 (citing *Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322, 1325 (9th Cir.), *cert. denied sub nom. Shell Oil Co. v. Gas-A-Tron of Ariz.*, 429 U.S. 861 (1976)). In *Gas-A-Tron* the court stated: "Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession." *Gas-A-Tron*, 534 F.2d at 1324-25.

Courts have inherent power to impose sanctions for "a full range of litigation abuses." *Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*, No. 16-CV-01152, 2017 WL 956650, at *4 (N.D. Cal. Mar. 13, 2017). Courts have an "arsenal of sanctions" for dealing with unethical conduct by attorneys, including monetary sanctions. *Englebrick*, 620 F. App'x at 567. Because the primary purpose of sanctions is to deter subsequent abuses, it is crucial that a sanctions award be quantifiable with some precision and properly itemized in terms of the perceived misconduct and the sanctioning authority. *McCurley v. Royal Seas Cruises, Inc.*, No. 17-CV-00986, 2020 WL 4436361, at *5 (S.D. Cal. July 31, 2020).

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

[REDACTED] [5]

## III.   **Conclusion**

For the foregoing reasons, this Court should take the following action:

(5)     Hold that the December 6, 2021 Term Sheet is a binding and enforceable agreement on all terms upon which the parties have agreed;

(6)     Rule that any terms not present in the Term Sheet are immaterial under Ninth Circuit law;

(7)     Compel NTG to comply with the Term Sheet by abiding by all terms appearing in the "binding and enforceable" Term Sheet, including [REDACTED];

(8)     Award NIC its reasonable costs and fees incurred in pursuit of this motion (including the forthcoming Reply brief) as an appropriate sanction for NTG's [REDACTED] which necessitated this filing.


Respectfully submitted,


NATURAL IMMUNOGENICS CORP.


By:     _/s/ Peter A. Arhangelsky_
         Peter A. Arhangelsky, Esq. (SBN 291325)

_____

[5] If the Court grants NIC its fees, NIC will submit a request for fees in a specific amount consistent with that authorizing order.

Eric J. Awerbuch, Esq. (pro hac vice)
Attorneys for Plaintiff
*Natural Immunogenics Corp.*

PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2022 the foregoing, **PLAINTIFF NATURAL IMMUNOGENICS CORP.'S MEMORANDUM IN SUPPORT OF MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT** was electronically filed using the Court's CM/ECF system and was sent by that system to the following:

Brendan M. Ford, Esq.
bford@FordDiulio, PC
650 Town Center Dr, Ste 760
Costa Mesa, CA 92625
Tel: (714) 384-5540
Attorney for Andrew Nilon, Giovanni Sandoval,
Sam Schoonover, Matthew Dronkers, Taylor Demulder, and Sam Pfleg,


David J. Darnell, Esq.
ddarnell@callahan-law.com
Edward Susolik, Esq.
es@callahan-law.com
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel: (714) 241-4444
Attorney for Newport Trial Group and Scott Ferrell

Nicole Whyte
nwhyte@bremerwhyte.com
Benjamin Price
bprice@bremerwhyte.com
Kyle A. Riddles
kriddles@bremerwhyte.com
Bremer Whyte Brown & O'Meara, LLP
20320 S.W. Birch Street
Second Floor
Newport Beach, CA 92660
Tel: (949) 211-1000

MEMO IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

**PUBLIC REDACTED VERSION FILED PURSUANT TO ORDER [DKT. 1268]**

Attorneys for Ryan Ferrell, Victoria Knowles, David Reid, and Andrew Baslow

Robert Tauler, Esq.
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Blvd., Suite 510
Los Angeles, CA 90017
Tel: (310) 590-3927
Attorney for David Reid and Victoria Knowles


   */s/ Peter A. Arhangelsky*
Peter A. Arhangelsky, Esq.